# Exhibit A

The
**Hanover**
Insurance Group™

OBCH332709        1304500

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

The
**Hanover**
Insurance Group™

OBCH332709          1304500

Dear Policyholder:

As your local independent Hanover agent and on behalf of the employees of Hanover from coast to coast, thank you for placing your insurance coverage with us.

Since 1852 Hanover has provided quality insurance protection for businesses large and small.  Today, nearly a million people insure their automobiles, homes, boats, businesses and more with one of Hanover's fine companies.

Hanover has a very simple corporate goal: To provide affordable insurance to responsible safety-minded customers - customers like you. We are proud of the excellent rating Hanover has earned within our industry and of their reputation for treating customers responsibly.

Please take time to carefully review your policy, including your Declarations Page which illustrates your coverage selections and limits of protection.  If you have any questions, please contact us.

Sincerely,

**The Hanover**
Insurance Group™

OBCH332709     1304500

# IMPORTANT NOTICE TO POLICYHOLDERS

No coverage is provided by this policyholder notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverage you are provided. If there is any conflict between the policy and this notice, THE PROVISIONS OF THE POLICY SHALL PREVAIL.

## EMPLOYMENT PRACTICES LIABILITY COVERAGE

The Employment Practices Liability Insurance Coverage is designed to protect small commercial businesses with 25 employees or fewer for liability damages and defense costs due to claims brought by employees who allege employment discrimination, wrongful termination, or sexual harassment.

This coverage will be written on any risk that meets the eligibility criteria under the portfolio Employment Practices Liability Coverage. Such eligibility will be determined by state, class and employee count of individual Insureds.

This coverage will attach to all eligible policies, unless waived.  There is a premium charge for this coverage. The coverage provided has an Aggregate Limit of Liability of $25,000 for all losses combined, including defense costs. This coverage has a $5,000 Deductible Amount for each claim. Optional $100,000 and $250,000 Limits of Liability are also available for additional premium charges.

Coverage may be waived by signing and returning the **Employment Practices Liability Coverage Waiver, 391-1205,** to The Hanover Insurance Group, 440 Lincoln Street, Worcester, MA 01653.

Such waiver will continue automatically through subsequent renewals, unless rescinded by the company at your request.

Please contact your agent for additional information or if you have any questions, or if you wish to waive this coverage.

5

The
**Hanover**
Insurance Group™

OBCH332709      1304500

**TO:**          COMMERCIAL PROPERTY/CASUALTY POLICYHOLDERS

**FROM:**     THE HANOVER INSURANCE GROUP,
              MASSACHUSETTS BAY INSURANCE COMPANY,OR
              CITIZENS INSURANCE COMPANY OF AMERICA
              CITIZENS INSURANCE COMPANY OF ILLINOIS

**SUBJECT:**  AVAILABILITY OF LOSS CONTROL SERVICES

Virtually every business concern continually seeks out methods to reduce the cost of conducting business.

The cost of accidents due to motor vehicle operation and defective products and those that result in employee injury, liability to third parties and property damage can harm your business profitability and competitive advantage.

The Loss Control Department of The Hanover Insurance Group offers a wide range of products and services to assist you in your safety efforts.

These services include written and audio/visual materials as well as on-site management consultations.

Hanover Insurance has provided innovative property-casualty insurance solutions to commercial and individual clients since 1852.

For more information, call your agent or your nearest Hanover Branch Office.

LOSS CONTROL IS A RESPONSIBILITY OF YOUR MANAGEMENT. THIS REPORT DOES NOT ATTEMPT TO DEAL WITH EVERY POSSIBLE LEGAL OBLIGATION, CODE VIOLATION, LOSS POTENTIAL OR EXCEPTION TO GOOD PRACTICE. IT IS NOT INTENDED TO IMPLY THAT ALL HAZARDS AND SITUATIONS ARE RESOLVED. THE LIABIL-ITY OF ANY AND ALL OF THE HANOVER INSURANCE GROUPS AND THEIR AFFILIATES AND SUBSIDIARIES IS LIMITED TO THAT WHICH IS COVERED BY THE INSURANCE POLICY. NO LIABILITIES ARE ASSUMED BY REASON OF THIS REPORT WHICH IS PROVIDED FOR INFORMATIONAL PURPOSES ONLY.

* The Hanover Insurance Group * Citizens Insurance Company of America
* Massachusetts Bay Insurance Company * Citizens Insurance Company of Illinois

Executive Offices: Worcester, Massachusetts

171-0741

**The Hanover Insurance Group.**

OBCH332709     1304500

# Thirteen steps to a more secure property.

When a guest, a resident or an employee becomes a victim of crime at one of your properties, who is liable?

Based on recent civil court decisions, it appears commercial property owners can be just as much to blame for violent crimes and robberies as the people who commit them can. And the price of that responsibility is steep: Six-figure verdicts are commonplace.

Owners and operators of apartment and condominium complexes, office buildings, motels, hotels, parking lots and garages, and shopping malls must be diligent in providing security for those who visit their properties.

Some of the reasons for these blockbuster damage awards and the ever-growing number of premises-security lawsuits and insurance claims are:

- The growing and well-publicized tendency of the courts to shift responsibility from the criminals themselves to "negligent" property owners.

- The reluctance or inability of business owners to keep up with advances in security technology. If your systems fall short of what a jury would consider state-of-the-art, you have a potential problem on your hands.

- The failure of commercial property owners to adequately screen employees assigned to high-risk positions. It's easy for juries to second-guess the character of that employee to whom you handed the keys over.

## A safe-premises checklist.

Fortunately, it need not take a lot of time or money to shore up the security of the premises and limit your liability. There are some simple steps you can take, right now.

1. Limit access to your property. How easy is it for unwanted guests to walk or drive in? Consider posting guards at entrances.

2. Consider closed circuit TV. When monitored by people, who can react quickly and decisively to emergencies, the payoffs of CCTV can be immediate and substantial. Be prepared to maintain your equipment, however. Inoperable cameras can actually increase your problems by luring your customers into a false sense of security.

3. Brighten things up. Hallways and parking lots should be well lighted. Potential trouble areas should be bright enough to eliminate shadows and provide for clear CCTV pictures.

4. Build a fence. Good perimeter fencing will keep people from wandering onto your property and mark the boundaries of your area of control.

5. Be careful with your keys. Well-written and enforced key-control plans are crucial and expected in such public-use areas as hotels and office buildings. Yet many managers are surprisingly lax when it comes to keeping track of keys.

6. Check your doors and windows. Locks should look solid and be in good repair. Sliding doors should have track-blocking devices in supplement handle locks. Double cylinder deadbolt locks should be on tenant and guest room doors.

7. Eliminate elevator stops at vacant floors. Program your elevators to by-pass floors that are unoccupied. These are prime locations for criminal assaults.

8. Screen new hires. Conduct background checks on people responsible for safety and security, as well as those with access to master keys (such as housekeeping and security personnel). Depending on the potential employee's level of responsibility, employment history, motor vehicles records and police records are worth checking.

9. Educate your staff. It's crucial that employees know security procedures - and be kept informed of changes. Security is everybody's responsibility.

10. Manage for safety. Management should monitor security controls. When violations are noted, the appropriate employees should be promptly notified, and the situation corrected.

11. Make friends with the police. Do you have a good working relationship with your local police department? Ask them about criminal activity in your neighborhood - or for an appraisal of your security systems and procedures. For information on current security technologies, try a reputable security company.

12. Document your security efforts. Keep careful records of training programs conducted, procedures you put in place and physical enhancements you make to improve security. You'll want this information handy should a problem ever arise. If you ever have to cut back on security measures, be sure to document the reason.

13. Don't overstate the safety of your facility. Avoid inflated claims about the safety of your site and its surroundings - and if warnings are appropriate, make them. Ask an attorney familiar with this area of the law what's safe to say and not to say.

## Concerned about your security.

Proud members of the The Hanover Insurance Group, the Citizens Insurance Company of America and The Hanover Insurance Company have provided innovative property-casualty insurance solutions to commercial and individual clients for a combined total of more than 200 years

Along with independent insurance agents nationwide, Citizens and Hanover can help make your business a safer place for your customers and employees. For more information, call your agent or your nearest Citizens or Hanover branch office.

111-2054 (7-04)

The
**Hanover**
Insurance Group™

OBCH332709          1304500

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## TRADE OR ECONOMIC SANCTIONS ENDORSEMENT

This insurance does not apply to the extent that trade or economic sanctions or other laws or regulations prohibit us from providing insurance, including, but not limited to, the payment of claims.

ALL OTHER TERMS, CONDITIONS, AND EXCLUSIONS REMAIN UNCHANGED.

**The Hanover**
Insurance Group™

OBCH332709        1304500

# IMPORTANT INFORMATION ABOUT YOUR INSURANCE COMPANY

The Home Office address for the Insurance Company shown on the policy Declarations page is:

**Allmerica Financial Alliance Insurance Company**
(A Stock Company)
440 Lincoln Street
Worcester, MA 01653-0002

**Allmerica Financial Benefit Insurance Company**
(A Stock Company)
440 Lincoln Street
Worcester, MA 01653-0002

**Campmed Casualty & Indemnity Company, Inc.**
(A Stock Company)
12100 Sunset Hills Road, Suite 300
Reston, VA 20190-3295

**Citizens Insurance Company of America**
(A Stock Company)
808 North Highlander Way
Howell, MI 48843-1070

**Citizens Insurance Company of Illinois**
(A Stock Company)
333 West Pierce Road, Suite 300
Itasca, IL 60143-3114

**Citizens Insurance Company of the Midwest**
(A Stock Company)
9229 Delegates Row, Suite 100
Indianapolis, IN 46240-3824

**Citizens Insurance Company of Ohio**
(A Stock Company)
1300 East 9th Street, Suite 1010
Cleveland, OH 44114-1506

**The Hanover American Insurance Company**
(A Stock Company)
440 Lincoln Street
Worcester, MA 01653-0002

**The Hanover Insurance Company**
(A Stock Company)
440 Lincoln Street
Worcester, MA 01653-0002

**Hanover Lloyds Insurance Company**
(A Texas Lloyd s Plan Company)
440 Lincoln Street
Worcester, MA 01653-0002

**Massachusetts Bay Insurance Company**
(A Stock Company)
440 Lincoln Street
Worcester, MA 01653-0002

**The Hanover New Jersey Insurance Company**
(A Stock Company)
440 Lincoln Street
Worcester, MA 01653-0002

**Verlan Fire Insurance Company**
(A Stock Company)
440 Lincoln Street
Worcester, MA 01653-0002

**The Hanover**
Insurance Group™

OBCH332709    1304500

THIS NOTICE IS PROVIDED IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS NOTICE DOES NOT GRANT COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF COVERAGE UNDER THE POLICY. IF THERE IS A CONFLICT BETWEEN THIS NOTICE AND THE POLICY, THE PROVISIONS OF THE POLICY SHALL APPLY.

## DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

### Schedule

| Disclosure of Premium: | | |
|---|---|---|
| Total Terrorism Premium | $ | ■■■ |
| Fire Following Premium | $ | ■■■ |
| Other than Fire Following Premium | $ | ■■■ |

**Disclosure of Terrorism Coverage Available**

You are hereby notified that under the Terrorism Risk Insurance Act, as amended, you have a right to purchase insurance coverage for losses resulting from "acts of terrorism" defined in Section 102(1) of the Act as follows:

> Any act or acts that are certified by the Secretary of the Treasury, in consultation with the Secretary of Homeland Security and the Attorney General of the United States, to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States government by coercion.

The premium charged for this coverage is provided in the Schedule above and does not include any charges for the portion of loss that may be covered by the Federal Government as described below.

Your policy may contain other exclusions which could affect your coverage, such as an exclusion for Nuclear Events or Pollution. **Please read your policy carefully**.

**Note for Commercial Property or Commercial Inland Marine Policyholders in Standard Fire States:**

In your state, a terrorism exclusion makes an exception for (and therefore provides coverage for) fire losses resulting from an act of terrorism. If you reject the offer of terrorism coverage, therefore, that rejection does not apply to fire losses resulting from an act of terrorism. Coverage for such fire losses will be provided in your policy. The additional premium just for such fire coverage is shown in the Schedule above.

**Disclosure of Federal Participation in Payment of Terrorism Losses**

The United States government through the Department of the Treasury may pay a share of terrorism losses insured under the federal program under a formula set forth in the Act. Under this formula, the United States government generally reimburses the following percentage of covered terrorism loss which exceeds the statutorily established deductible paid by the insurance company providing the coverage: 85% through 2015; 84% beginning on January 1, 2016; 83% beginning on January 1, 2017; 82% beginning on January 1, 2018; 81% beginning on January 1, 2019; and 80% beginning on January 1, 2020.

**Cap on Insurer Participation in Payment of Terrorism Losses**

The Act contains a $100 billion cap that limits the reimbursement by the United States government as well as insurers' liability for losses resulting from certified acts of terrorism. If the aggregate of insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Act, we will not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion. In such case, insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**Rejection of Terrorism Insurance Coverage**

☐ I decline to purchase terrorism coverage for certified acts of terrorism. I understand that I will have no coverage for losses resulting from certified acts of terrorism.

_____          CITIZENS INSURANCE COMPANY OF AMERICA
Applicant/Policyholder Signature                 **Insurance Company**

_____          OBC-H332709-00
**Print Name**                                    **Quote or Policy Number**

_____
**Date**

The **Hanover**
Insurance Group™

OBCH332709          1304500

# ILLINOIS INQUIRY NOTICE

In accordance with Illinois statute 215 ILCS 5/143c, the following information is provided:

This notice is to advise you that should any complaints arise regarding this insurance, you may contact the following:

The Hanover Insurance Company, Massachusetts Bay Insurance Company, Citizens Insurance Company of America, Citizens Insurance Company of Midwest, Citizens Insurance Company of Illinois, Allmerica Financial Benefit Insurance Company, Allmerica Financial Alliance Insurance Company and The Hanover American Insurance Company, complaint department for policies written through agencies located in the state of Illinois is:

**Complaint Department**
**The Hanover Insurance Group**
**333 W. Pierce Road**
**Suite 300**
**Itasca, Illinois 60143**
**1-800-685-5669**

The address of the Consumer Division or Public Services Section of the Illinois Department of Insurance is:

**Illinois Department of Insurance**
**Consumer Division or Public Services Section**
**320 W. Washington Street**
**Springfield, Illinois 62767**
**Or**

**Illinois Department of Insurance**
**Consumer Division or Public Services Section**
**122 S Michigan Ave 19th Floor**
**Chicago, IL 60603**
**1-312-814-2420**

**Or**

**http://insurance.illinois.gov**

The Hanover Insurance Group

OBCH332709          1304500

## IDENTITY THEFT RESOLUTION SERVICES
### (POWERED BY IDENTITY THEFT 911)

Are you or your resident family members at risk for identity theft? Do you need expert assistance with an identity-related concern? IDENTITY THEFT RESOLUTION SERVICES from Identity Theft 911 give you one-on-one assistance in the following situations:

**Access Phone Number: 800-628-0250**

If you or a resident family member suffer the loss or theft of private personal data, contact Identity Theft 911 for proactive guidance that can include Fraud Alert service. If you wish, a fraud specialist can assist and place a free fraud alert on your credit file to reduce the risk of fraudulent accounts opened in your name. This service also includes additional preventative measures and one-on-one assistance, depending on the risk.

If you or a resident family member suffer the loss or theft of private personal data, contact Identity Theft 911 for Identity Restoration Case Management services. A fraud specialist will guide you through the process of restoring your identity and handle all of the work, including completed documentation and notification assistance. Victims also receive one year of credit monitoring, as well as free fraud monitoring of over 1,000 public databases.

**Learn How to Protect Your Identity**

We recommend that you regularly visit The Hanover Insurance Group and Identity Theft 911 comprehensive resource and knowledge library - www.hanover-identitytheft911.com - for the latest media alerts, identity theft tips, in-depth newsletters and much more.

Keep this access information handy in case you ever need help with an identity-related problem.

**Access Phone Number: 800-628-0250**

The Hanover Insurance Group makes no guarantee of results and assumes no liability in connection with either the information or assistance provided by Identity Theft 911. Any and all external Websites or sources referred to herein are for informational purposes only.



OBCH332709      1304500

## Customer Notice of Privacy Policy and Producer Compensation Practices Disclosures

## Privacy Policy Disclosure

Collection of Information

We collect personal information so that we may offer quality products and services. This information may include, but is not limited to, name, address, Social Security number, and consumer reports from consumer reporting agencies in connection with your application for insurance or any renewal of insurance. For example, we may access driving records, insurance scores or health information. Our information sources will differ depending on your state and/or the product or service we are providing to you. This information may be collected directly from you and/or from affiliated companies, non-affiliated third parties, consumer reporting agencies, medical providers and third parties such as the Medical Information Bureau.

We, and the third parties we partner with, may track some of the web pages you visit through cookies, pixel tagging or other technologies. We currently do not process or comply with any web browser's "do not track" signals or similar mechanisms that request us to take steps to disable online tracking. For additional information regarding online privacy, please see our online privacy statement, located at www.hanover.com      .

Disclosure of Information

We may disclose non-public, personal information you provide, as required to conduct our business and as permitted or required by law. We may share information with our insurance company affiliates or with third parties that assist us in processing and servicing your account. We also may share your information with regulatory or law enforcement agencies, reinsurers and others, as permitted or required by law.

Our insurance companies may share information with their affiliates, but will not share information with non-affiliated third parties who would use the information to market products or services to you.

Our standards for disclosure apply to all of our current and former customers.

Safeguards to Protect Your Personal Information

We recognize the need to prevent unauthorized access to the information we collect, including information held in an electronic format on our computer systems. We maintain physical, electronic and procedural safeguards intended to protect the confidentiality and integrity of all non-public, personal information, including but not limited to social security numbers, driver's license numbers and other personally identifiable information.

Internal Access to Information

Access to personal, non-public information is limited to those people who need the information to provide our customers with products or services. These people are expected to protect this information from inappropriate access, disclosure and modification.

Consumer Reports

In some cases, we may obtain a consumer report in connection with an application for insurance. Depending on the type of policy, a consumer report may include information about you or your business, such as:

- character, general reputation, personal characteristics, mode of living;
- credit history, driving record (including records of any operators who will be insured under the policy); and/or
- an appraisal of your dwelling or place of business that may include photos and comments on its general condition.

Access to Information

Upon written request, we will inform you if we have ordered an investigative consumer report. You have the right to make a written request within a reasonable period for information concerning the nature and scope of the report and to be interviewed as part of its preparation. You may obtain a copy of the report from the reporting agency and, under certain circumstances, you may be entitled to a copy at no cost.

You also may review certain information we have about you or your business in our files. To review information we maintain in our files about you or your business, please write to us, providing your complete name, address and policy number(s), and indicating specifically what you would like to see. If you request actual copies of your file, there may be a nominal charge.

We will tell you to whom we have disclosed the information within the two years prior to your request. If there is not a record indicating that the information was provided to another party, we will tell you to whom such information is normally disclosed.

There is information that we cannot share with you. This may include information collected in order to evaluate a claim under an insurance policy, when the possibility of a lawsuit exists. It may also include medical information that we would have to forward to a licensed medical doctor of your choosing so that it may be properly explained.

Correction of Information

If after reviewing your file you believe information is incorrect, please write to the consumer reporting agency or to us, whichever is applicable, explaining your position. The information in question will be investigated. If appropriate, corrections will be made to your file and the parties to whom the incorrect information was disclosed, if any, will be notified. However, if the investigation substantiates the information in the file, you will be notified of the reasons why the file will not be changed. If you are not satisfied with the evaluation, you have the right to place a statement in the file explaining why you believe the information is incorrect. We also will send a copy of your statement to the parties, if any, to whom we previously disclosed the information and include it in any future disclosures.

Our Commitment to Privacy

In the insurance and financial services business, lasting relationships are built upon mutual respect and trust. With that in mind, we will periodically review and revise our privacy policy and procedures to ensure that we remain compliant with all state and federal requirements. If any provision of our privacy policy is found to be non-compliant, then that provision will be modified to reflect the appropriate state or federal requirement. If any modifications are made, all remaining provisions of this privacy policy will remain in effect. For more detailed information about our customer privacy policy (including any applicable state-specific policies) and our online privacy statement, visit our Web site, located at www.hanover.com      .

Further Information

If you have questions about our customer privacy policy (including any applicable state-specific policies) or our online privacy statement, or if you would like to request information we have on file, please write to us at our Privacy Office, N435, The Hanover Insurance Group, Inc., 440 Lincoln Street, Worcester, MA 01653. Please provide your complete name, address and policy number(s). A copy of our Producer Compensation Disclosure is also available upon written request addressed to the attention of the Corporate Secretary, N435, The Hanover Insurance Group, 440 Lincoln Street, Worcester, MA 01653.

### Producer Compensation Disclosure

Our products are sold through independent agents and brokers, often referred to as "Producers." We may pay Producers a fixed commission for placing and renewing business with our company. We may also pay additional commission and other forms of compensation and incentives to Producers who place and maintain their business with us. Details of our Producer compensation practices may be found at www.hanover.com      .

This notice is being provided on behalf of the following Hanover Companies: The Hanover Insurance Group, Inc. - Allmerica Financial Alliance Insurance Company - Allmerica Financial Benefit Insurance Company - Allmerica Plus Insurance Agency, Inc. - Citizens Insurance Company of America - Citizens Insurance Company of Illinois - Citizens Insurance Company of the Midwest - Citizens Insurance Company of Ohio - Citizens Management, Inc. - AIX Ins. Services of California, Inc.- Campania Insurance Agency Co. Inc. - Campmed Casualty & Indemnity Co. Inc. - Chaucer Syndicates Limited- Educators Insurance Agency, Inc.- Hanover Specialty Insurance Brokers, Inc. - The Hanover American Insurance Company - The Hanover Insurance Company - The Hanover New Jersey Insurance Company - The Hanover National Insurance Company - Hanover Lloyd's Insurance Company - Massachusetts Bay Insurance Company - Opus Investment Management, Inc. - Professionals Direct Insurance Services, Inc. -Professional Underwriters Agency, Inc. - Verlan Fire Insurance Company - Nova Casualty Company - AIX Specialty Insurance Company.

OBCH332709    1304500



# Your Avenues
# Businessowners Insurance Policy

The **Hanover** Insurance Group™

## AVENUES BUSINESSOWNERS DECLARATION
### BUSINESSOWNERS DECLARATIONS

07

| Policy Number | Policy Period | | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| | From | To | | |
| OBC-H332709-00 | 07/31/2020 | 07/31/2021 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

**Agent**

847-307-6100
THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

**Policy Period:  Beginning and Ending at 12:01 a.m. Standard Time at the Location of the Described Premises.**
**Business Type:  CORPORATION (SINGLE).**
**Mortgagee/Loss Payable:**

**Business of the Named Insured:**
SERVICE.

In consideration of the premium, insurance is provided the Named Insured with respect to those premises described in the Schedule below and with respect to those coverages and kinds of property for which a specific Limit of Insurance is shown, subject to all of the terms of this policy including forms and endorsements made a part hereof:

### LOCATION SCHEDULE

**Described Premises:**

NO. 001 001    233 N MICHIGAN AVE SUITE 1430, CHICAGO, IL  60601

| SECTION I - PROPERTY | LIMITS OF INSURANCE | | | | | |
|---|---|---|---|---|---|---|
| | Loc No  001 | Bldg No 001 | Loc No | Bldg No | Loc No | Bldg No |
| **Deductible Amount** | $          1,000 | | $ | | $ | |
| **Building Amount Valuation** | NOT COVERED | | | | | |
| **Business   Personal Property Valuation** | $        201,400 RC | | | | | |
| **Business Income** | ACTUAL BUSINESS LOSS SUSTAINED NOT EXCEEDING 12 CONSECUTIVE MONTHS | | | | | |
| **Business Income Waiting Period** | **Excluded / None / 24 hours / 48 hours /72 hours** 24 HOURS | | | | | |
| **SECTION II - LIABILITY** | LIMITS OF INSURANCE | | | | | |

**Liability and Medical Expenses Limits of Insurance:**
Except for Damage to Premises Rented to You,  each paid claim for the following coverages reduce the Amount of Insurance we provide during the applicable annual  period.  Please refer to  **SECTION II - LIABILITY, D. LIABILITY  AND MEDICAL  EXPENSES LIMITS OF INSURANCE,** paragraph.**4.** of the Businessowners Coverage Form.

| | | | | |
|---|---|---|---|---|
| **Liability and Medical Expenses Limit** | $ 2,000,000 | **Per Occurrence** | $ 4,000,000 | **Aggregate** |
| **Medical Expenses** | $       5,000 | **Each Person** | | |
| **Damage to Premises Rented to You** | $     300,000 | **All Perils** | | |

Date Issued: 07/31/2020                   ORIGINAL/INSURED          Payment Type:  DIRECT BILL
GROUP NAME: TECHNOLOGY - SERVICES              GROUP NUMBER: ZTS

The
**Hanover**
Insurance Group

# AVENUES BUSINESSOWNERS DECLARATION
## BUSINESSOWNERS DECLARATIONS

07

| Policy Number | Policy Period | | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| | From | To | | |
| OBC-H332709-00 | 07/31/2020 | 07/31/2021 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

**Agent**

847-307-6100
THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

**Additional Property Coverages and Extensions:**
> See attached Schedule for Additional Coverages provided for under this Policy.

Audit Frequency: Annual

**Additional Liability Coverages:**  General Liability Broadening Endorsement
**General Liability Class**:  85219
**Description**:  CUSTOM COMPUTER PROGRAMMING
**Liability Exposure**:  $1,800,000     SALES

**Policy Forms, Endorsements and Optional Coverages Attached:**
> See Forms and Endorsements Schedule

| | |
|---|---|
| T O T A L   B O P   C O V E R A G E   P R E M I U M : | $ ■■■■■ |
| B O P   T E R R O R I S M   C O V G   ( I N C L U D E D   I N   T O T A L   P O L I C Y   P R E M I U M ) | $ ■■■■ |
|      O T H E R   T H A N   F I R E   F O L L O W I N G | $ ■■■■ |
|        F I R E   F O L L O W I N G | $ ■■■■ |
| T O T A L   U M B R E L L A   C O V E R A G E   P R E M I U M : | $ ■■■■ |
| U M B   T E R R O R I S M   C O V G   ( I N C L U D E D   I N   T O T A L   P O L I C Y   P R E M I U M ) | $ ■■■■ |
| D E P O S I T   P R E M I U M : | $ ■■■■ |
| T O T A L   P O L I C Y   P R E M I U M   I S : | $ ■■■■■ |

**Countersigned this _____ Day of _____**

_____
**Authorized Representative**

**This Declarations Page with the Policy Contract, Forms and Endorsements, if any,
Complete the Policy.**

Date Issued:  07/31/2020          ORIGINAL/INSURED          Payment Type: DIRECT BILL

**391-1002 08 16**

**The Hanover** Insurance Group™

# ADDITIONAL PROPERTY COVERAGES AND EXTENSIONS
## BUSINESSOWNERS DECLARATIONS

07

| Policy Number | Policy Period | | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| | From | To | | |
| OBC-H332709-00 | 07/31/2020 | 07/31/2021 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

**Agent**

847-307-6100

THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

| Additional Property Coverages & Extensions | Deductible | Amount Included | Additional Amount Increase | Total Limit |
|---|---|---|---|---|
| DEBRIS REMOVAL | NONE | $25,000 | N/A | $25,000 |
| PRESERVATION OF PROPERTY | NONE | 90 DAYS | N/A | 90 DAYS |
| FIRE DEPARTMENT SERVICE CHARGE | NONE | $25,000 | N/A | $25,000 |
| POLLUTANT CLEAN-UP AND REMOVAL | NONE | $25,000 | N/A | $25,000 |
| MONEY ORDERS AND COUNTERFEIT MONEY | $500 | $5,000 | N/A | $5,000 |
| FORGERY OR ALTERATION | $500 | $25,000 | N/A | $25,000 |
| GLASS EXPENSES | $250 | INCLUDED | N/A | INCLUDED |
| REWARDS ARSON, THEFT AND VANDALISM | NONE | $10,000 | N/A | $10,000 |
| TENANT SIGNS | $500 | $5,000 | N/A | $5,000 |
| FIRE PROTECTION EQUIPMENT RECHARGE | NONE | $25,000 | N/A | $25,000 |
| INSTALLATION FLOATER | $1,000 | $5,000 | N/A | $5,000 |
| FINE ARTS | $500 | $10,000 | N/A | $10,000 |
| FENCE AND WALLS | SEE BUILDING AND CONTENTS DEDUCTIBLE | INCLUDED | N/A | INCLUDED |
| SALES REPRESENTATIVE SAMPLES | $1,000 | $5,000 | N/A | $5,000 |
| LEASEHOLD INTEREST (TENANT'S ONLY) | NONE | $10,000 | N/A | $10,000 |
| UNAUTHORIZED BUSINESS CREDIT CARD USE | NONE | $5,000 | N/A | $5,000 |
| UTILITY SERVICES | | | N/A | |
| DIRECT DAMAGE | $500 | $10,000 | N/A | $10,000 |
| BUSINESS INCOME | 24 HOURS | $5,000 | N/A | $5,000 |
| DEFERRED PAYMENTS | NONE | $5,000 | N/A | $5,000 |
| NEWLY ACQUIRED OR CONSTRUCTED PROPERTY | | 180 DAYS | N/A | 180 DAYS |
| BUILDINGS | $500 | $1,000,000 | N/A | $1,000,000 |
| PERSONAL PROPERTY | $500 | $500,000 | N/A | $500,000 |
| BUSINESS INCOME AND EXTRA EXPENSE | SEE WAITING PERIOD | $250,000 | N/A | $250,000 |
| OUTDOOR PROPERTY - TREES, SHRUBS AND PLANTS-$1,000 EACH ITEM | $500 | $10,000 | N/A | $10,000 |

Form  391-1018  (7-02)
Date Issued:  07/31/2020

ORIGINAL/INSURED

**The**
# Hanover
Insurance Group™

# ADDITIONAL PROPERTY COVERAGES AND EXTENSIONS
## BUSINESSOWNERS DECLARATIONS

07

| Policy Number | Policy Period | | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| | From | To | | |
| OBC-H332709-00 | 07/31/2020 | 07/31/2021 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL 60601

**Agent**

847-307-6100

THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL 60010

| Additional Property Coverages & Extensions | Deductible | Amount Included | Additional Amount Increase | Total Limit |
|---|---|---|---|---|
| PERSONAL EFFECTS | $500 | $10,000 | N/A | $10,000 |
| INVENTORY AND LOSS APPRAISAL | NONE | $10,000 | N/A | $10,000 |
| KEY REPLACEMENT AND LOCK REPAIR | NONE | $1,000 | N/A | $1,000 |
| APPURTENANT STRUCTURE | $500 | $50,000 | N/A | $50,000 |
| PERSONAL PROPERTY IN TRANSIT | $1,000 | $10,000 | N/A | $10,000 |
| EXTENDED BUSINESS INCOME | | 30 DAYS | N/A | 30 DAYS |
| EMPLOYEE THEFT INCLUDING ERISA COMPLIANCE | $1,000 | $10,000 | N/A | $10,000 |
| COMMERCIAL TOOLS AND SMALL EQUIP | $500 | $5,000 | N/A | $5,000 |
| PERSONAL PROPERTY OFF PREMISES | $1,000 | $50,000 | N/A | $50,000 |
| BUSINESS INCOME FROM DEPENDENT PROPERTIES | 72 HOURS | $5,000 | N/A | $5,000 |
| TERRORISM | SEE BUILDING AND CONTENTS DEDUCTIBLE | SAME AS PROPERTY LIMITS OF INSURANCE IF COVERED | N/A | SAME AS PROPERTY LIMITS OF INSURANCE IF COVERED |
| INTERRUPTION OF COMPUTER OPERATIONS | SEE WAITING PERIOD | $10,000 | N/A | $10,000 |
| BUSINESS PERSONAL PROPERTY TEMPORARILY IN PORTABLE STORAGE UNITS | $500 | $25,000 | N/A | $25,000 |
| CIVIL AUTHORITY | 72 HOURS | 4 WEEKS | N/A | 4 WEEKS |
| COMPUTER AND FUNDS TRANSFER FRAUD | $500 | $5,000 | N/A | $5,000 |
| LIMITED COVERAGE FOR FUNGI, WET ROT, OR DRY ROT | $500 | $50,000 | N/A | $50,000 |
| PAVED SURFACES | $500 | $25,000 | N/A | $25,000 |
| TENANT BUILDING COVERAGE - REQUIRED BY LEASE | $500 | $25,000 | N/A | $25,000 |
| TENANT BUSINESS PERSONAL PROPERTY COVERAGE - REQUIRED BY LEASE | $500 | $25,000 | N/A | $25,000 |

Form 391-1018 (7-02)
Date Issued: 07/31/2020

**The Hanover Insurance Group™**

# ADDITIONAL PROPERTY COVERAGES AND EXTENSIONS
## BUSINESSOWNERS DECLARATIONS

07

| Policy Number | Policy Period | | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| | From | To | | |
| OBC-H332709-00 | 07/31/2020 | 07/31/2021 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

**Agent**

847-307-6100
THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

| Additional Property Coverages & Extensions | Deductible | Amount Included | Additional Amount Increase | Total Limit |
|---|---|---|---|---|
| THEFT OF TELEPHONIC SERVICES | $500 | $25,000 | N/A | $25,000 |
| UNDERGROUND PIPES | $500 | INCLUDED | N/A | INCLUDED |

Form   391-1018  (7-02)
Date Issued:  07/31/2020

ORIGINAL/INSURED

**The Hanover Insurance Group**

# ADDITIONAL PROPERTY COVERAGES AND EXTENSIONS
## BUSINESSOWNERS DECLARATIONS

07

| Policy Number | Policy Period From | Policy Period To | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| OBC-H332709-00 | 07/31/2020 | 07/31/2021 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

Named Insured and Address
COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

Agent
847-307-6100
THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

| Additional Property Coverages & Extensions | Loc. No. | Bldg. No. | Deductible Amount | Amount Included | Additional Amount | Total Limit |
|---|---|---|---|---|---|---|
| ORDINANCE OR LAW | 001 | 001 | NONE | $5,000 | N/A | $5,000 |
| COMPUTER EQUIPMENT | | | $500 | $35,000 | N/A | $35,000 |
| COMPUTER EQUIPMENT EXTRA EXPENSE | | | NONE | $5,000 | N/A | $5,000 |
| ELECTRONIC VANDALISM | | | $500 | | | |
| OCCURRENCE LIMIT | | | | $10,000 | N/A | $10,000 |
| AGGREGATE LIMIT | | | | $10,000 | N/A | $10,000 |
| VALUABLE PAPERS AND RECORDS (OTHER THAN ELECTRONIC DATA) | | | $1,000 | | | |
| ON PREMISES | | | | $25,000 | N/A | $25,000 |
| OFF PREMISES | | | | $25,000 | N/A | $25,000 |
| ACCOUNTS RECEIVABLE | | | $1,000 | | | |
| ON PREMISES | | | | $25,000 | N/A | $25,000 |
| OFF PREMISES | | | | $25,000 | N/A | $25,000 |
| MONEY AND SECURITIES | | | $500 | | | |
| ON PREMISES | | | | $10,000 | N/A | $10,000 |
| OFF PREMISES | | | | $5,000 | N/A | $5,000 |
| EQUIPMENT BREAKDOWN | | | $1,000 | INCLUDED | N/A | INCLUDED |
| PROTECTIVE DEVICES CREDIT | | | | | | |
| AUTOMATIC SPRINKLER SYSTEM | | | NO | | | |
| AUTOMATIC FIRE ALARM | | | NO | | | |
| CENTRAL STATION SECURITY | | | NO | | | |
| COLLAPSE | | | $500 | INCLUDED | N/A | INCLUDED |
| UTILITY SERVICES | | | | | | |
| DIRECT DAMAGE | | | $500 | $50,000 | N/A | $50,000 |
| TIME-ELEMENT | | | 24 HOURS | $50,000 | N/A | $50,000 |

Form  391-1018A (9-04)
Date Issued:  07/31/2020

ORIGINAL/INSURED

The
**Hanover**
Insurance Group

# AVENUES BUSINESSOWNERS DECLARATION

### BUSINESSOWNERS DECLARATIONS

07

| Policy Number | Policy Period | | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| | From | To | | |
| OBC-H332709-00 | 07/31/2020 | 07/31/2021 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**
COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL 60601

**Agent**
847-307-6100
THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL 60010

## Forms and Endorsements Schedule

| Form Number | Edition Date | Description |
|---|---|---|
| 391-1402 | 08/16 | TECHNOLOGY DELUXE GOLD BROAD |
| 391-1371 | 01/10 | REV INFRINGE OF COPYRIGHT EXCL |
| BP0404 | 01/10 | HIRED AUTO NON-OWNED AUTO LIAB |
| 401-1374 | 01/15 | DISCLOSURE PURSUANT TO TRIA |
| 391-1114 | 01/15 | CAP ON LOSSES FROM TERRORISM |
| 391-1313 | 01/15 | EXCLUSION OF PUNITIVE DAMAGES |
| 391-1006 | 08/16 | LIABILITY SPECIAL BROADENING |
| BP0417 | 01/10 | EMPLYMT RELATED PRACTICES EXCL |
| 231-0475 | 06/89 | PILR NOTICE |
| 391-1003 | 08/16 | BUSINESSOWNERS COVERAGE FORM |
| BP0643 | 04/06 | IL CHANGES - DEFENSE COSTS |
| 391-1901 | 06/18 | ILLINOIS CHANGES |
| 421-0022 | 07/02 | ASBESTOS EXCLUSION |
| 391-1102 | 08/16 | EXCL - FUNGI OR BACTERIA LIAB |
| 331-0053 | 08/16 | ILLINOIS INQUIRY NOTICE |
| 391-1375 | 01/10 | AMEND LIMITS PERSONAL AND ADV |
| 391-1218 | 06/06 | EPLI INSURANCE CVG ENDR ILLINO |
| 391-1206 | 06/06 | EPLI IMPORTANT NOTICE |
| 391-1208 | 03/06 | EPLI SUPPLEMENTAL DEC |
| 401-1504 | 01/20 | CAP LOSSES CERT ACTS OF TERR |
| 391-1440 | 01/15 | DATA BREACH COVERAGE FORM |
| 391-1442 | 12/09 | ASSOC AND FAMILY MBR ADD COV |
| 391-1585 | 12/11 | IDENTITY THEFT NOTICE |
| 391-1854 | 01/15 | IL CHANGES - DATA BREACH |

Form 391-1016 (7-99
Date Issued: 07/31/2020                                    ORIGINAL/INSURED

**COMMERCIAL EMPLOYMENT PRACTICES
LIABILITY INSURANCE COVERAGE ENDORSEMENT
SUPPLEMENTAL DECLARATIONS**



OBCH332709      1304500

Policy Number:  OBC H332709 00
Account Number:  1521871564                                   Agent:  1304500
Named Insured:  COOLER SCREENS INC

---

## NOTICE

- EXCEPT TO SUCH EXTENT AS MAY OTHERWISE BE PROVIDED HEREIN, THE COVERAGE OF THIS COVERAGE ENDORSEMENT IS LIMITED TO LIABILITY FOR ONLY THOSE CLAIMS OR SUITS THAT ARE FIRST MADE AGAINST THE INSUREDS DURING THE EPL COVERAGE PERIOD AND REPORTED IN WRITING TO THE INSURER PURSUANT TO THE TERMS HEREIN. VARIOUS PROVISIONS IN THIS COVERAGE ENDORSEMENT RESTRICT COVERAGE. PLEASE READ THE ENTIRE COVERAGE ENDORSEMENT CAREFULLY TO DETERMINE RIGHTS, DUTIES AND WHAT IS AND IS NOT COVERED.

- THE LIMIT OF LIABILITY AVAILABLE TO PAY JUDGEMENTS OR SETTLEMENTS UNDER THIS COVERAGE ENDORSEMENT SHALL BE REDUCED BY AMOUNTS INCURRED FOR LEGAL DEFENSE. AMOUNTS INCURRED FOR LEGAL DEFENSE SHALL BE APPLIED AGAINST THE DEDUCTIBLE AMOUNT.

---

| | | |
|---|---|---|
| **EPL Coverage Period:** | From: 07/31/2020<br><br>To:    07/31/2021 | At 12:01 A.M. Standard Time at your mailing address shown on the Declarations page of this policy. |
| **EPL Aggregate Limit of Liability:** | $        25,000.00 | Aggregate for all "loss" combined, including "defense costs". |
| **EPL Deductible Amount:** | $         5,000.00 | For "loss" arising from claims or suits alleging the same "wrongful employment act" or "related wrongful employment acts". |
| **EPL Original Inception Date:** | 07/31/2020 | (Enter "original inception date") If no date is shown, "we" will consider the "original inception date" to be the same as the beginning of this coverage endorsement. |

This insurance does not apply to "loss" arising out of a "wrongful employment act" that: (1) commences on or takes place prior to the "original inception date" shown here, or (2) arises out of incidents or circumstance of which "you" had knowledge prior to the "original inception date" shown.

| | |
|---|---|
| **EPL COVERAGE PREMIUM:** | $   |

391-1208 03 06

The
**Hanover**
Insurance Group™

| **NEW BUSINESS POLICY** |
|---|

| **COMMERCIAL UMBRELLA POLICY** |
|---|

THESE DECLARATIONS TOGETHER WITH THE COMMON POLICY CONDITIONS AND COVERAGE FORM(S) COMPLETE THE BELOW NUMBERED POLICY

POLICY NUMBER:  OBC-H332709-00

DECLARATIONS

| **Named Insured and Address** (No., Street, Town, County, State) | **Agent** |
|---|---|
| COOLER SCREENS INC<br>233 N MICHIGAN AVE SUITE 1430<br>CHICAGO, IL  60601 | 130450000<br>THE PLEXUS GROUPE LLC<br>SUITE 300<br>21805 W. FIELD PARKWAY<br>DEER PARK, IL  60010 |

**Policy Period:** (Month, Day, Year)

From  07/31/2020     To  07/31/2021
12:01 AM, standard time at the address of the Named Insured as stated herein.

Form of Business:
☐ Individual   ☐ Partnership   ☒ Corporation   ☐ Limited Liability Company
☐ Organization (Other than Partnership, Joint Venture, or Limited Liability Company

**Business Description:**
**SERVICE.**

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.  THIS PREMIUM MAY BE SUBJECT TO AUDIT.

**Limit of Liability (Section III)**
| | |
|---|---|
| **Each Occurrence Limit** | **$  1,000,000** |
| **General Aggregate Limit** | **$  1,000,000** |
| **Product Completed Operations Aggregate Limit** | **$  1,000,000** |

**Retained Limit      Self-Insured Retention**          **$ NIL**

**Premium Computation**

Annual Premium  $  ███
Advance Premium  $  ███

**Endorsements:**

| | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| CU2130 | 01/15 | CU2156 | 06/06 | CU2136 | 01/15 | 473-1150 | 05/12 | 473-1157 | 01/10 | 473-0004 | 10/05 |
| CU0004 | 05/09 | 473-0016 | 10/05 | 473-0023 | 10/05 | 473-0040 | 10/05 | CU0200 | 12/07 | CU0001 | 12/07 |
| 473-2194 | 08/16 | CU2123 | 02/02 | 473-2211 | 10/16 | CU2125 | 12/01 | CU2255 | 09/00 | CU2127 | 12/04 |
| CU2150 | 03/05 | IL0017 | 11/98 | CU2436 | 12/05 | IL0162 | 09/08 | 473-1125 | 02/09 | CU2186 | 05/14 |

☐ PRE PAID - the total annual premium is due at inception.

☐ HANOCASH - the annual premium is payable according to the term of the Hanocash endorsement attachment

☐ ACCOUNT BILL   ☒ DIRECT BILL   ☐ Annual   ☐ Semi-Annual   ☐ Other
Audit period: Non Auditable Unless indicated by ☐ Annual   ☐ Semi-Annual   ☐ Other
If you cancel this policy, we shall receive and retain not less than  $ as a policy minimum premium.

The
**Hanover**
Insurance Group™

OBCH332709    1304500

| SCHEDULE A - SCHEDULE OF UNDERLYING POLICIES | | |
|---|---|---|
| **Insured:**  COOLER SCREENS INC<br>**Effective on and after: 07/31/2020 ,  12:01 AM Standard Time**<br>**This schedule is part of Policy Number:  OBC-H332709-00** | | |
| CARRIER, POLICY NUMBER & PERIOD | TYPE OF POLICY | APPLICABLE LIMITS OR AMOUNT OF INSURANCE |
| (a)Carrier:<br><br>CITIZENS INSURANCE COMPANY OF AMERICA<br><br>Policy Number:  OBC-H332709-00<br>Policy Period:   07/31/2020    TO 07/31/2021 | Commercial General Liability<br>[X]Non-owned & Hired Autos | $  2,000,000    Each  Occurrence<br>$  4,000,000    General  Aggregate<br>$  4,000,000    Product/Compl eted Operations Aggregate |
| (b) Carrier:<br><br><br>Policy Number:<br>Policy Period: | Comprehensive Automobile Liability | Bodily Injury and Property Damage Liability Combined<br>$              Each Accident<br>Bodily Injury<br>$              Each Person<br>$              Each Accident<br>Property Damage<br>$              Each Accident |
| (c)Carrier:<br><br>EXCLUDED<br>Policy Number:<br>Policy Period: | Standard Workers Compensation & Employers  Liability<br>**Please Note:** The Umbrella Coverage for Workers Compensation and Employers Liability is not applicable in situations where an employee is subject to the New York Workers Compensation Law. | **Coverage B - Employers  Liability**<br>Bodily Injury by Accident<br>$              Each  Accident<br>Bodily Injury by Disease<br>$                 Aggregate<br>$              Each  Employee |
| (d)Carrier:<br><br><br>Policy Number:<br>Policy Period: | Liquor Liability | $              Limit of   Liability |
| (e)Carrier:<br><br><br>Policy Number:<br>Policy Period: | Professional Liability | $              Limit of Liability |
| An "X" marked in the box provided indicates these broadening or optional coverages are provided in the Underlying Insurance | | |
| (f) Carrier:<br><br><br>Policy Number:<br>Policy Period: | Directors & Officers Liability | $              Limit of   Liability |
| (g) Carrier:<br><br><br>Policy Number:<br>Policy Period: | Employee Benefits Liability | $              Limit of   Liability |
| **Countersigned By:** | | |
| **Date:** | | |
| **Authorized Representative of the Company** | | |

473-1103 (11/08)

**The Hanover Insurance Group™**

OBCH332709          1304500

# BUSINESSOWNERS COVERAGE FORM

## Table of Contents

**SECTION I - PROPERTY**

| | Page Number |
|---|---|
| **A. Coverage** | 4 |
| **1. Covered Property** | 4 |
| **2. Property Not Covered** | 5 |
| **3. Covered Causes of Loss** | 6 |
| **4. Limitations** | 6 |
| **5. Additional Coverages** | 7 |
| Business Income | 10 |
| Business Income from Dependent Properties | 17 |
| Civil Authority | 13 |
| Collapse | 8 |
| Commercial Tools and Small Equipment | 27 |
| Computer Equipment | 20 |
| Computer and Funds Transfer Fraud | 34 |
| Debris Removal | 7 |
| Deferred Payments | 31 |
| Electronic Vandalism | 31 |
| Employee Theft including ERISA Compliance | 18 |
| Equipment Breakdown | 22 |
| Extra Expense | 12 |
| Fine Arts | 28 |
| Fire Department Service Charge | 8 |
| Fire Protection Equipment Recharge | 18 |
| Forgery or Alteration | 13 |
| Glass Expenses | 18 |
| Installation | 27 |
| Interruption of Computer Operations | 32 |
| Leasehold Interest (Tenants only) | 29 |
| Limited Coverage for Fungi, Wet Rot, or Dry Rot | 33 |
| Money and Securities | 21 |
| Money Orders and Counterfeit Money | 13 |
| Ordinance or Law | 14 |
| Preservation of Property | 8 |
| Pollutant Clean-Up and Removal | 12 |
| Rewards - Arson, Theft and Vandalism | 20 |
| Sales Representative Samples | 29 |
| Tenant Building Insurance - When Your Lease Requires You to Provide Insurance | 34 |
| Tenant Business Personal Property Insurance - When Your Lease Requires You to Provide Insurance | 34 |
| Tenant Signs (Tenants Only) | 22 |
| Theft of Telephonic Services | 34 |
| Unauthorized Business Credit Card Use | 30 |
| Utility Services | 30 |
| Water Damage, Other Liquids, Powder or Molten Material Damage | 10 |

     **6. Coverage Extensions**........................................................................................ 35

        Accounts Receivable.......................................................................................... 37

        Business Personal Property Temporarily in Portable Storage Units.................... 39

        Appurtenant Structures....................................................................................... 38

        Inventory and Loss Appraisal............................................................................. 39

        Key Replacement and Lock Repair..................................................................... 38

        Newly Acquired or Constructed Property............................................................ 35

        Outdoor Property................................................................................................ 36

        Paved Surfaces.................................................................................................. 39

        Personal Effects................................................................................................. 36

        Personal Property Off Premises.......................................................................... 36

        Personal Property In Transit............................................................................... 38

        Valuable Papers and Records (Other Than Electronic Data)............................. 36

        Underground Pipes............................................................................................. 40

**B. Exclusions**............................................................................................................ 40

**C. Limits of Insurance**.............................................................................................. 45

**D. Deductibles**.......................................................................................................... 46

**E. Property Loss Conditions**.................................................................................... 47

     **1. Abandonment**................................................................................................... 47

     **2. Appraisal**.......................................................................................................... 47

     **3. Duties in the Event of Loss or Damage**........................................................... 47

     **4. Legal Action Against Us**................................................................................... 48

     **5. Loss Payment**................................................................................................... 48

     **6. Recovered Property**.......................................................................................... 50

     **7. Vacancy**............................................................................................................ 50

     **8. Pair, Sets or Parts**............................................................................................ 51

**F. Property General Conditions**................................................................................ 51

     **1. Control of Property**.......................................................................................... 51

     **2. Mortgageholders**.............................................................................................. 51

     **3. No Benefit to Bailee**.......................................................................................... 52

     **4. Policy Period, Coverage Territory**................................................................... 52

     **5. Protective Devices**............................................................................................ 52

     **6. Increase in Hazard**........................................................................................... 52

**G. Property Definitions**............................................................................................. 52


**SECTION II - LIABILITY**

**A. Coverages**............................................................................................................. 59

     **1. Business Liability**............................................................................................. 59

     **2. Medical Expenses**............................................................................................ 61

**B. Exclusions**............................................................................................................ 62

     **1. Applicable to Business Liability Coverage**..................................................... 62

     **2. Additional Exclusions Applicable only to Personal and Advertising Injury**.... 68

     **3. Additional Exclusions Applicable to Medical Expenses Coverage Only**........ 69

     **4. Additional Exclusions Applicable to Both Business Liability Coverage and Medical Expenses Coverage - Nuclear Energy Liability Exclusion**............................................... 70

**C. Who is an Insured**................................................................................................. 71

**D. Liability and Medical Expenses Limits of Insurance**........................................... 72

**The Hanover** Insurance Group

OBCH332709       1304500

E. Liability and Medical Expenses General Conditions................................................................... 73
   1. Bankruptcy................................................................................................................................ 73
   2. Duties in the Event of Occurrence, Offense, Claim or Suit................................................. 73
   3. Legal Action Against Us......................................................................................................... 73
   4. Separation of Insureds........................................................................................................... 73
F. Liability and Medical Expenses Definitions................................................................................ 74

**SECTION III - COMMON POLICY CONDITIONS (APPLICABLE TO SECTION I - PROPERTY AND SECTION II - LIABILITY)**
A. Cancellation.................................................................................................................................. 77
B. Changes........................................................................................................................................ 78
C. Concealment, Misrepresentation or Fraud................................................................................. 78
D. Examination of Your Books and Records................................................................................... 78
E. Inspections and Surveys.............................................................................................................. 78
F. Insurance Under Two or More Coverages................................................................................... 78
G. Liberalization............................................................................................................................... 79
H. Other Insurance........................................................................................................................... 79
I. Premiums....................................................................................................................................... 80
J. Premium Audit.............................................................................................................................. 80
K. Transfer of Rights of Recovery Against Others to Us............................................................... 80
L. Transfer of Your Rights and Duties Under This Policy.............................................................. 81

# BUSINESSOWNERS COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this Coverage Form the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

In **SECTION II - LIABILITY**, the word "insured" means any person or organization qualifying as such under paragraph **C. Who is an Insured**.

Other words and phrases that appear in quotation marks have special meaning. Refer to paragraph **G. Property Definitions** in **SECTION I - PROPERTY** and paragraph **F. Liability and Medical Expenses Definitions** in **SECTION II - LIABILITY**.

## SECTION I - PROPERTY

### A. Coverage

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

**1. Covered Property**

Covered Property includes Buildings as described in paragraph **a.** below, Business Personal Property as described in paragraph **b.** below, or both, depending on whether a Limit of Insurance is shown in the Declarations for that type of property. Regardless of whether coverage is shown in the Declarations for Buildings, Business Personal Property, or both, there is no coverage for property described in **SECTION I - PROPERTY, A. Coverage, 2. Property Not Covered**.

**a.** Buildings, meaning the buildings and structures at the premises described in the Declarations, including:

**(1)** Completed additions;

**(2)** Fixtures, including outdoor fixtures;

**(3)** Permanently installed:

**(a)** Machinery; and

**(b)** Equipment;

**(4)** Your personal property in apartments, rooms or common areas furnished by you as the landlord;

**(5)** Personal property owned by you that is used to maintain or service the buildings or structures or the premises, including:

**(a)** Fire protection equipment;

**(b)** Outdoor furniture;

**(c)** Floor coverings; and

**(d)** Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

**(6)** If not covered by other insurance

**(a)** Additions under construction, alterations and repairs to the buildings or structures;

**(b)** Materials, equipment, supplies and temporary structures, on or within 1,000 feet of the described premises, used for making additions, alterations or repairs to the buildings or structures;

**(7)** Signs, whether or not they are attached to covered buildings or structures;

**(8)** Interior and Exterior Building glass if you are a building owner;

**(9)** Fences and retaining walls located on or within 1,000 feet of a covered building or structure, whether or not attached to buildings or structures, except for retaining walls that are used, in whole or in part, to contain water.

**b.** Business Personal Property located in or on the buildings or structures at the described premises or in the open (or in a vehicle) within 1,000 feet of the building or structures or within 1,000 feet of the premises described in the Declarations, whichever distance is greater, including:

**(1)** Property you own that is used in your business;

**(2)** Property of others that is in your care, custody or control, including the cost of labor, materials or services furnished or arranged by you on personal property of others, except as otherwise provided in **SECTION I -**



OBCH332709    1304500

**PROPERTY, E. Property Loss Condition, 5. Loss Payment** paragraph **d.**, subparagraph **(3)(b)**;

**(3)** Tenant's improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

**(a)** Made a part of the building or structure you occupy but do not own; and

**(b)** You acquired or made at your expense but cannot legally remove.

**(4)** Leased personal property for which you have a written contractual responsibility to insure, unless otherwise provided in paragraph **(2)** above;

**(5)** Exterior building glass, if you are a tenant and no Limit of Insurance is shown in the Declarations for Building property. The glass must be owned by you or in your care, custody or control;

**(6)** Physical damage sustained to a building leased to you caused by or resulting from "theft" or attempted "theft", burglary or robbery of your Business Personal Property.

**2. Property Not Covered**

Covered Property does not include:

**a.** Aircraft, automobiles, motortrucks and other vehicles subject to motor vehicle registration;

**b.** Contractor's equipment, which is used or operated principally away from the premises described in the Declarations, or parts and equipment, whether attached or unattached to contractor's equipment, unless such parts and equipment is held for sale by you, or sold by you but not delivered unless specifically endorsed and scheduled, or as provided for in **SECTION I - PROPERTY, B. Additional Coverages, v. Commercial Tools and Small Equipment**;

**c.** "Money" or "securities" except as provided in the:

**(1)** Money and Securities Additional Coverage; or

**(2)** Employee Theft Additional Coverage;

**d.** Contraband or property in the course of illegal transportation or trade;

**e.** Land, whether or not resurfaced with stone, gravel or similar layer (including land on which the property is located), water, growing crops or lawns (other than lawns which are part of a vegetated roof), except as provided in **SECTION I - PROPERTY, A. Coverage, 6. Coverage Extension, l. Paved Surfaces**;

**f.** Outdoor radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers, trees, shrubs or plants (other than trees, shrubs or plants which are part of a vegetated roof), all except as provided in **SECTION I - PROPERTY, A. Coverage, 6. Coverage Extension, c. Outdoor Property**;

**g.** Watercraft (including motors, equipment and accessories);

**h.** Accounts, bills, food stamps, other evidences of debt, accounts receivable or "valuable papers and records"; except as otherwise provided in this Coverage Form;

**i.** "Computer equipment", which is permanently installed or designed to be permanently installed in any aircraft, watercraft, motortruck or other vehicle subject to motor vehicle registration. This paragraph does not apply to "computer equipment" while held as "stock";

**j.** "Electronic Data", except as provided under the Computer Equipment and Electronic Vandalism Additional Coverages. This paragraph does not apply to your "stock" of prepackaged "software" or to "electronic data" which is integrated in and operates or controls the building's elevator, lighting, heating, ventilation, air conditioning or security system;

**k.** Animals, unless owned by others and boarded by you, or held for sale by you, or sold but not delivered, and only while inside of buildings;

**l.** The cost of excavations, grading, backfilling, or filling;

**m.** Bulkheads, pilings, piers, wharves or docks;

**n.** Retaining walls that are used, in whole or in part, to contain water.

**o.** "Computer Equipment", except as provided for under the:

**(1)** Computer Equipment Additional Coverage;

**(2)** Equipment Breakdown Additional Coverage; or

**(3)** Electronic Vandalism Additional Coverage.

**p.** Commercial tools and small equipment except as provided in **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, v. Commercial Tools and Small Equipment** or for contractor's equipment specifically endorsed and scheduled. This does not apply to your commercial tools and small equipment permanently installed or exclusively used at the described premises;

**q.** Employee tools and small equipment except as provided for in **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, v. Commercial Tools and Small Equipment** or when added by separate endorsement;

**r.** Bridges (unless the bridge is made a part of a covered Building), roadways, walks, patios or other paved surfaces, except as provided in **SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions, l. Paved Surfaces**;

**s.** Underground pipes, flues or drains except as provided in **SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions, m. Underground Pipes**; and

**t.** Personal Property while airborne or waterborne.

**3. Covered Causes of Loss**

Risks of direct physical loss unless the loss is:

**a.** Excluded in **SECTION I - PROPERTY**, **B. Exclusions**; or

**b.** Limited in **SECTION I - PROPERTY**, **A. Coverages**, **4. Limitations**

**4. Limitations**

**a.** We will not pay for loss of or damage to:

**(1)** Property that is missing, where the only evidence of the loss or damage is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property. This limitation does not apply to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, s. Money and Securities**.

**(2)** Property that has been transferred to a person or to a place outside the described premises on the basis of unauthorized instructions.

**(3)** The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

**(a)** The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

**(b)** The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

**(4)** Lawns, trees, shrubs or plants which are part of a vegetated roof, caused by or resulting from:

**(a)** Dampness or dryness of atmosphere or of soil supporting the vegetation;

**(b)** Changes in or extremes of temperature;

**(c)** Disease;

**(d)** Frost or hail; or

**(e)** Rain, snow, ice or sleet.

**b.** We will not pay for loss of or damage to the following types of property unless caused by any of the "specified causes of loss" or building glass breakage:

**(1)** Animals, and then only if they are killed or their destruction is made necessary.

**(2)** Fragile articles such as glassware, statuary, marble, chinaware and porcelain, if broken. This restriction does not apply to:

**(a)** Glass that is part of the exterior or interior of a building or structure;

**(b)** Containers of property held for sale; or

**(c)** Photographic or scientific instrument lenses.

**c.** For loss or damage by "theft", the following types of property are covered only up to the limits shown:

**(1)** $10,000 for furs, fur garments and garments trimmed with fur.

**(2)** $10,000 for jewelry, watches, watch movements, jewels, pearls, precious and semi-precious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth $250 or less per item.



OBCH332709     1304500

5. **Additional Coverages**

   a. **Debris Removal**

      **(1)** Subject to paragraphs **(2)**, **(3)** and **(4)** below, we will pay your expense to remove debris of Covered Property and other debris that is on the described premises, when such debris is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical loss or damage.

      **(2)** Debris Removal does not apply to costs to:

         **(a)** Remove debris of property of yours that is not insured under this Coverage Form, or property in your possession that is not Covered Property;

         **(b)** Remove debris of property owned or leased to the landlord of the building where your described premises are located, unless you have a contractual responsibility to insure such property and it is insured under this Coverage Form;

         **(c)** Remove any property that is Property Not Covered except as provided under the Outdoor Property Coverage Extension;

         **(d)** Remove property of others of a type that would not be Covered Property under this Coverage Form;

         **(e)** Remove deposits of mud or earth from the grounds of the described premises;

         **(f)** Extract "pollutants" from land or water; or

         **(g)** Remove, restore or replace polluted land or water.

      **(3)** Subject to the exceptions in paragraph **(4)** below, the following provisions apply:

         **(a)** The most that we will pay for the total of direct physical loss or damage plus debris removal expense is the Limit of Insurance applicable to the Covered Property that has sustained loss or damage.

         **(b)** Subject to paragraph **(a)** above, the amount we will pay for debris removal expense is limited to 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage. However, if no Covered Property has sustained direct physical loss or damage, the most we will pay for removal of debris of other property (if such removal is covered under this Additional Coverage) is $5,000 at each location.

      **(4)** We will pay up to an additional $25,000 for debris removal expense, for each location, in any one occurrence of physical loss of or damage to Covered Property, if one or both of the following circumstances apply:

         **(a)** The total of the actual debris removal expense plus the amount we pay for direct physical loss or damage exceeds the Limit of Insurance on the Covered Property that has sustained loss or damage.

         **(b)** The actual debris removal expense exceeds 25% of the sum of the deductible plus the amount that we pay for direct physical loss of or damage to the Covered Property that has sustained loss or damage.

      Therefore, if paragraphs **(a)** and/or **(b)** above apply, our total payment for direct physical loss or damage and debris removal expense may reach but will never exceed the Limit of Insurance on the Covered Property that has sustained loss or damage, plus $25,000.

      **(5)** **Examples**

      **Example #1**

      | | |
      |---|---|
      | Limit of Insurance | $ 90,000 |
      | Amount of Deductible | $ 500 |
      | Amount of Loss | $ 50,000 |
      | Amount of Loss Payable ($50,000 - $500) | $ 49,500 |
      | Debris Removal Expense | $ 10,000 |
      | Debris Removal Expense | |

Payable        $ 10,000

($10,000 is 20% of $50,000)

The debris removal expense is less than 25% of the sum of the loss payable plus the deductible. The sum of the loss payable and the debris removal expense ($49,500 + $10,000 = $59,500) is less than the Limit of Insurance. Therefore the full amount of debris removal expense is payable in accordance with the terms of paragraph **(3)** above.

### Example #2

| | |
|---|---|
| Limit of Insurance | $ 90,000 |
| Amount of Deductible | $ 500 |
| Amount of Loss | $ 80,000 |
| Amount of Loss Payable | $ 79,500 |
| ($80,000 - $500) | |
| Debris Removal Expense | $ 40,000 |
| Debris Removal Expense Payable | |
|     Basic Amount | $ 10,500 |
|     Additional Amount | $ 25,000 |

The basic amount payable for debris removal expense under the terms of paragraph **(3)** above is calculated as follows: $80,000 ($79,500 + $500) x .25 = $20,000 (capped at $10,500). The cap applies because the sum of the loss payable ($79,500) and the basic amount payable for debris removal expense ($10,500) cannot exceed the Limit of Insurance ($90,000).

The additional amount payable for debris removal expense is provided in accordance with the terms of paragraph **(4)** above, because the debris removal expense ($40,000) exceeds 25% of the loss payable plus the deductible ($40,000 is 50% of $80,000), and because (from paragraph **(3) (a)**) the sum of the loss payable and debris removal expense ($79,500 + $40,000 = $119,500) would exceed the Limit of Insurance ($90,000). The additional amount of covered debris removal expense is $25,000, the maximum payable under paragraph **(4)** above. Thus the total payable for debris removal expense in this example is $35,500; $4,500 of the

debris removal expense is not covered.

**b. Preservation of Property**

If it is necessary to move Covered Property from the described premises to preserve it from loss or damage by a Covered Cause of Loss, we will pay for any direct physical loss of or damage to that property:

**(1)** While it is being moved or while temporarily stored at another location; and

**(2)** Only if the loss or damage occurs within 90 days after the property is first moved.

This Additional Coverage does not increase the applicable Limit of Insurance.

**c. Fire Department Service Charge**

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $25,000 for service at each premises described in the Declarations, unless a higher Limit of Insurance is shown in the Declarations. Such limit is the most we will pay regardless of the number of responding fire departments or fire units, and regardless of the number or type of services performed.

This Additional Coverage applies to your liability for fire department services charges:

**(1)** Assumed by contract or agreement prior to loss; or

**(2)** Required by local ordinance.

**d. Collapse**

The coverage provided under this Additional Coverage - Collapse applies only to an abrupt collapse as described and limited in paragraphs **(1)**, **(2)**, **(3)**, **(4)**, **(5)**, **(6)** and **(7)** below.

**(1)** For the purpose of this Additional Coverage - Collapse, abrupt collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose.

**(2)** We will pay for direct physical loss of or damage to Covered Property, caused by abrupt collapse of a building or any part of a building that is insured under this policy or that contains Covered Property

The Hanover Insurance Group.

OBCH332709     1304500

insured under this policy, if such collapse is caused by one or more of the following:

**(a)** Building decay that is hidden from view, unless the presence of such decay is known to any insured prior to collapse;

**(b)** Insect or vermin damage that is hidden from view, unless the presence of such damage is known to any insured prior to collapse;

**(c)** Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs during the course of the construction, remodeling or renovation; or

**(d)** Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs after the construction, remodeling or renovation is complete, but only if the collapse is caused in part by:

    **(i)** A cause of loss listed in paragraphs **(a)** or **(b)** above of this Additional Coverage;

    **(ii)** One or more of the "specified causes of loss";

    **(iii)** Breakage of building glass;

    **(iv)** Weight of people or personal property; or

    **(v)** Weight of rain that collects on a roof.

**(3)** This Additional Coverage - Collapse does not apply to:

**(a)** A building or any part of a building that is in danger of falling down or caving in;

**(b)** A part of a building that is standing, even if it has separated from another part of the building; or

**(c)** A building that is standing or any part of a building that is standing, even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**(4)** With respect to the following property:

**(a)** Awnings;

**(b)** Gutters and downspouts;

**(c)** Yard Fixtures;

**(d)** Outdoor swimming pools;

**(e)** Beach or diving platforms or appurtenances;

**(f)** Retaining walls; and

**(g)** Walks, roadways and other paved surfaces;

if an abrupt collapse is caused by a cause of loss listed in paragraph **(2)**, subparagraphs **(a)**, **(b)**, **(c)** and **(d)** of this Additional Coverage, we will pay for loss or damage to that property only if such loss or damage is a direct result of the abrupt collapse of a building insured under this Coverage Form and the property is Covered Property under this Coverage Form.

**(5)** If personal property abruptly falls down or caves in and such collapse is not the result of abrupt collapse of a building, we will pay for loss or damage to Covered Property caused by such collapse of personal property only if:

**(a)** The abrupt collapse of personal property was caused by a cause of loss listed in paragraph **(2)**, subparagraphs **(a)**, **(b)**, **(c)** and **(d)** of this Additional Coverage;

**(b)** The personal property which collapses is inside a building; and

**(c)** The property which collapses is not of a kind listed in paragraph **(4)** above, regardless of whether that kind of property is considered to be personal property or real property.

The coverage stated in paragraph **(5)** does not apply to personal property if marring and/or scratching is the only damage to that personal property caused by the collapse.

**(6)** This Additional Coverage - Collapse does not apply to personal property that has not abruptly fallen down or caved in, even if the personal property shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**(7)** This Additional Coverage - Collapse will not increase **SECTION I - PROPERTY, C. Limits of Insurance**.

**(8)** The term Covered Cause of Loss includes the Additional Coverage -

Collapse as described and limited in paragraphs **(1)**, **(2)**, **(3)**, **(4)**, **(5)**, **(6)** and **(7)** above.

**e. Water Damage, Other Liquids, Powder or Molten Material Damage**

If loss or damage caused by or resulting from covered water or other liquid, powder or molten material damage loss occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes.

We will not pay the cost to repair any defect that caused the loss or damage; but we will pay the cost to repair or replace damaged parts of fire extinguishing equipment if the damage:

**(1)** Results in discharge of any substance from an automatic fire protection system; or

**(2)** Is directly caused by freezing.

**f. Business Income**

When Business Income Coverage is provided under this policy:

**(1) Business Income**

**(a)** We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to a described premises shown in the Declarations and for which a Business Income Limit of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss.

With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 1,000 feet of such premises.

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of a building, your premises mean:

**(i)** The portion of the building which you rent, lease or occupy;

**(ii)** The area within 1,000 feet of the building or within 1,000 feet of the premises described in the Declarations, whichever distance is greater (with respect to loss of or damage to personal property in the open or personal property in a vehicle); and

**(iii)** Any area within the building or at the described premises, if that area services, or is used to gain access to, the portion of the building which you rent, lease or occupy.

**(b)** We will only pay for loss of Business Income that you sustain during the "period of restoration" and that occurs within the designated, consecutive number of months found on the Declarations Page beginning immediately after the date of direct physical loss or damage. For purposes of this insurance, all recoverable loss ceases when the "period of restoration" ends.

**(c) Business Income** means the:

**(i)** Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred if no physical loss or damage had occurred, but not including any Net Income that would likely have been earned as result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses;

**(ii)** Continuing normal operating expenses incurred, including "payroll expenses". However, if your business is not generating any income because you are primarily in research or development or have not yet brought your product to market, your continuing normal operating expenses, including "payroll expenses", will not be offset by the Net Loss; and

**(iii)** "Rental Value".



OBCH332709      1304500

For manufacturing risks, Net Income includes the net sales value of production.

**(2) Extended Business Income**

If no Business Income Coverage is provided under this Coverage Form, then there is no Extended Business Income Coverage afforded under this Coverage Form.

**(a) Extended Business Income - Other Than Rental Value**

If the necessary "suspension" of your "operations" produces a Business Income loss payable under this Coverage Form, we will pay for the actual loss of Business Income you incur during the period that:

**(i)** Begins on the date property (except "finished stock") is actually repaired, rebuilt or replaced (to the extent necessary to resume "operations") and "operations" are resumed; and

**(ii)** Ends on the earlier of:

**1)** The date you could restore your "operations", with reasonable speed, to the level which would generate the Business Income amount that would have existed if no direct physical loss or damage had occurred; or

**2)** The number of consecutive days shown in the Additional Property Coverage Schedule for Extended Business Income after the date determined in **(a) Extended Business Income - Other Than Rental Value,** paragraph **(i)** above.

However, Extended Business Income does not apply to loss of Business Income incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

**(b) Extended Business Income - Rental Value**

If the necessary "suspension" of your "operations" produces a "rental value" loss payable under this Coverage Form, we will pay for the actual loss of "rental value" you incur during the period that:

**(i)** Begins the date property is actually repaired, rebuilt or replaced and tenantability is restored; and

**(ii)** Ends the earlier of:

**1)** The date you could restore tenant occupancy, with reasonable speed, to the level which would generate the "rental value" that would have existed if no direct physical loss or damage had occurred; or

**2)** The number of consecutive days shown in the Additional Property Coverage Schedule for Extended Business Income after the date determined in **(b) Extended Business Income - Rental Value,** paragraph **(i)** above.

However, Extended Business Income does not apply to loss of "rental value" incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

Loss of "rental value" must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

**(iii)** We will reduce the amount of your:

Business Income loss, other than Extra Expense, to the extent you can resume your "operations", in whole or in part, by using damaged or undamaged

property (including merchandise or "stock") at the described premises or elsewhere.

**(iv)** If you do not resume "operations", or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

This Additional Coverage is not subject to **SECTION I - PROPERTY, C. Limits of Insurance**.

**g. Extra Expense**

When Business Income Coverage is provided under this Coverage Form:

**(1)** We will pay the necessary Extra Expense you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 1,000 feet of such premises.

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of a building, your premises mean:

**(a)** The portion of the building which you rent, lease or occupy;

**(b)** The area within 1,000 feet of the building or within 1,000 feet of the premises described in the Declarations, whichever distance is greater (with respect to loss of or damage to personal property in the open or personal property in a vehicle); and

**(c)** Any area within the building or at the described premises, if that area services, or is used to gain access to, the portion of the building which you rent, lease or occupy.

**(2)** Extra Expense means expense incurred:

**(a)** To avoid or minimize the "suspension" of business and

to continue "operations":

**(i)** At the described premises; or

**(ii)** At replacement premises or at temporary locations, including relocation expenses, and costs to equip and operate the replacement or temporary locations.

**(b)** To minimize the "suspension" of business if you cannot continue "operations".

**(c)** To:

**(i)** Repair or replace any property; or

**(ii)** Research, replace or restore the lost information on damaged "valuable papers and records"

to the extent it reduces the amount of loss that otherwise would have been payable under this Additional Coverage or **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverage, f. Business Income**.

With regard to paragraph **(i)** above, we will pay only for those expenses necessary to expedite the repair or replacement of the property. Under this provision we will not pay for any portion of the ordinary and expected cost to actually repair or replace property.

**(3)** We will only pay for Extra Expense that occurs within 12 consecutive months beginning immediately after the date of direct physical loss or damage.

**(4)** We will reduce the amount of your Extra Expense loss payment to the extent you can return "operations" to normal and discontinue such Extra Expense.

**(5)** If you do not resume "operations", or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

This Additional Coverage is not subject to **SECTION I - PROPERTY, C. Limits of Insurance**.

**h. Pollutant Clean-Up and Removal**

We will pay your expense to extract "pollutants" from land or water at the

The Hanover Insurance Group™

OBCH332709    1304500

described premises if the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the Covered Cause of Loss occurs.

This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants". But we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

The most we will pay for each location under this Additional Coverage is $25,000 for the sum of all such expenses arising out of Covered Causes of Loss occurring during each separate 12 month period of this policy.

**i.  Civil Authority**

When Business Income Coverage is provided under this Coverage Form:

**(1)** When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises due to direct physical loss or damage to property within one mile of the described premises, provided that both of the following apply:

**(a)** Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property;

**(b)** The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

**(2)** Civil Authority Coverage for Business Income will begin 72 hours after the time of the

first action of civil authority that prohibits access to the described premises and will apply for a period of up to four consecutive weeks from the date on which such coverage began.

Civil Authority Coverage for Extra Expense will begin immediately after the time of the first action of civil authority that prohibits access to the described premises and will end:

**(a)** Four consecutive weeks after the date of that action; or

**(b)** When your Civil Authority Coverage for Business Income ends;

whichever is later.

**(3)** The definitions of Business Income and Extra Expense contained in **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, f. Business Income;** and **g. Extra Expense** also apply to this Additional Coverage.

**j.  Money Orders and Counterfeit Money**

**(1)** We will pay for loss resulting directly from your having accepted in good faith, in exchange for merchandise, "money" or services:

**(a)** Money orders issued by any post office, express company or "financial institution" that are not paid upon presentation; or

**(b)** "Counterfeit money" that is acquired during the regular course of business.

**(2)** Under this Additional Coverage, all loss:

**(a)** Caused by one or more persons; or

**(b)** Involving a single act or series of related acts;

is considered one occurrence.

**(3)** The most we will pay for any loss under this Additional Coverage is $5,000.

**k.  Forgery or Alteration**

**(1)** We will pay for loss resulting directly from forgery or alteration of any:

**(a)** Check, draft, promissory note, bill of exchange or similar written promises of payment in "money" that you or your agent has issued, or that was issued

by someone who impersonates you or your agent; and

**(b)** Credit, debit or charge slips or documents, including signatures or the entry of a Personal Identification Number (PIN) into a "payment processing device" required with the use of any credit, debit, or charge card issued to you or any "employee" for business purposes.

**(2)** Under this Additional Coverage, all loss:

**(a)** Caused by one or more persons; or

**(b)** Involving a single act or series of related acts;

is considered one occurrence.

**(3)** If you are sued for refusing to pay the check, draft, promissory note, bill of exchange or similar written promises of payment in "money", on the basis that it has been forged or altered, and you have our written consent to defend against the suit, we will pay for any reasonable legal expenses that you incur in that defense.

**(4)** For purposes of this Additional Coverage, check includes a substitute check as defined by the United States Congress in the Check Clearing for the 21st Century Act and will be treated the same as the original it replaced.

**(5)** The most we will pay for any loss, including legal expenses, under this Additional Coverage is $25,000, unless a higher Limit of Insurance is shown in the Schedule of Amended Limits of Insurance.

**I. Ordinance or Law**

**(1)** This Additional Coverage applies only to buildings insured on a replacement cost basis.

**(2) Application of Coverages:**

The coverages provided under this Additional Coverage applies only if paragraphs **(a)** and **(b)** below, are satisfied and are then subject to the qualifications found in **(c)** below.

**(a)** The ordinance or law:

**(i)** Regulates the demolition, construction or repair of buildings, or establishes

zoning or land use requirements at the described premise;

**(ii)** Is in force at the time of loss; and

**(iii)** Was not in force at the time the involved construction was completed.

But coverage under this Additional Coverage applies only in response to the minimum requirements of the ordinance or law. Losses and costs incurred in complying with recommended actions or standards that exceed actual requirements are not covered under this Additional Coverage.

**(b)** The building sustains direct physical damage:

**(i)** That is covered under this Coverage Form and as a result of such damage, you are required to comply with the ordinance or law; or

**(ii)** That is covered under this Coverage Form and direct physical damage that is not covered under this Coverage Form and as a result of the building damage in its entirety, you are required to comply with the ordinance or law.

**(iii)** But if the damage is not covered under this Coverage Form and such damage is the subject of the ordinance or law, then there is no coverage under this Additional Coverage even if building has also sustained covered direct physical damage.

**(c)** In the situation described in **(2) Application of Coverages,** paragraph **(b),** subparagraph **(ii)** above, we will not pay the full amount of loss otherwise payable under the terms of coverages for Coverage for Loss to the Undamaged Portion of the Building, Demolition Cost Coverage or Increased Cost of Construction Coverage. Instead, we will pay a proportion of such loss, meaning the proportion that



OBCH332709     1304500

the covered direct physical damage bears to the total direct physical damage. Paragraph **(7)** of this coverage provides an example of this procedure.

However, if the covered direct physical damage alone would have resulted in a requirement to comply with the ordinance or law, then we will pay the full amount of the loss otherwise payable under the terms of Coverages for Loss to the Undamaged Portion of the Building, Demolition Cost Coverage or Increased Cost of Construction Coverage under this Additional Coverage.

**(3)** We will not pay under this Additional Coverage for:

**(a)** Enforcement of or compliance with any ordinance or law which requires the demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungi", wet rot or dry rot; or

**(b)** The costs associated with the enforcement of or compliance with any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungi", wet rot or dry rot.

**(4) Coverage**

**(a) Coverage for Loss to the Undamaged Portion of the Building**

With respect to the building that has sustained covered direct physical damage, we will pay under this Additional Coverage for the loss in value of the undamaged portion of the building as a consequence of a requirement to comply with an ordinance or law that requires demolition of undamaged parts of the same building. Coverage for Loss to the Undamaged Portion of the Building is included within the Limit of Insurance shown in the

Declarations as applicable to the covered building. Coverage for Loss to the Undamaged Portion of the Building does not increase the Limit of Insurance.

**(b) Demolition Cost Coverage**

With respect to the building that has sustained covered direct physical damage, we will pay the cost to demolish and clear the site of the undamaged parts of the same building, as a consequence of a requirement to comply with an ordinance or law that requires demolition of such undamaged property.

**SECTION I - PROPERTY**, **E. Property Loss Conditions, 5. Loss Payment,** paragraph **d.** does not apply to Demolition Cost Coverage.

**(c) Increased Cost of Construction**

With respect to the building that has sustained covered direct physical damage, we will pay the increased cost to:

**(i)** Repair or reconstruct damaged portions of that building; and/or

**(ii)** Reconstruct or remodel undamaged portions of that building, whether or not demolition is required;

when the increased cost is a consequence of a requirement to comply with the minimum standards of the ordinance or law.

However:

**(i)** This coverage applies only if the restored or remodeled property is intended for similar occupancy as the current property, unless such occupancy is not permitted by zoning or land use ordinance or law.

**(ii)** We will not pay for the increased cost of construction if the building is not repaired, reconstructed or remodeled.

**SECTION I - PROPERTY**, **E. Property Loss Conditions, 5. Loss Payment,** paragraph **d.** does not apply to the Increased Cost of Construction Coverage.

**(5) Loss Payment**

**(a)** Loss Payment provisions **(b), (c), (d)** and **(e)** below are subject to the apportionment procedure set forth in above **Application of Coverages,** paragraph **(2)(c)**.

**(b)** When there is a loss in value of an undamaged portion of the building to which Coverage for Loss to the Undamaged Portion of the Building applies, the loss payment for that building, including damaged and undamaged portions, will be determined as follows:

**(i)** If the property is repaired or replaced on the same or another premise, we will not pay more than the lesser of:

**1)** The amount you actually spend to repair, rebuild or reconstruct the building, but not for more than the amount it would cost to restore the building on the same premises and to the same height, floor area, style and comparable quality of the original property insured; or

**2)** The Limit of Insurance shown in the Declarations as applicable to the covered building.

**(ii)** If the property is not repaired or replaced. We will not pay more than the lesser of:

**1)** The actual cash value of the building at the time of loss; or

**2)** The Limit of Insurance shown in the Declarations as applicable to the covered building.

**(c)** The most we will pay for the total of all covered losses for Demolition Cost Coverage and Increased Cost of Construction is the Limit of Insurance shown in paragraph **(d)** below. Subject to this combined Limit of Insurance, the following loss payment provisions apply:

**(i)** For Demolition Cost Coverage, we will not pay for more than the amount you actually spend to demolish and clear the site of the described premises.

**(ii)** Loss payment under Increased Cost of Construction Coverage will be determined as follows:

**1)** We will not pay for the increased cost of construction until the property is actually repaired or replaced at the same or another premises; and

**2)** Unless the repairs or replacement is made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

**(iii)** If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay for the Increased Cost of Construction Coverage is the lesser of:

**1)** The increased cost of construction at the same premises; or

**2)** The Limit of Insurance described in paragraph **(d)** below.

**(iv)** If the ordinance or law requires relocation to another premise, the most we will pay for the increased cost of construction is the lesser of:

**1)** The increased cost of construction at the new premises; or

**2)** The Limit of Insurance described in paragraph **(d)** below.

**(d)** The most we will pay for the total of all covered losses for Demolition Cost and Increased Cost of Construction for each building described in the Declarations is $5,000 or the amount shown in the Additional Property Schedule.

If a damaged building(s) is covered under a Blanket Limit of Insurance and the Blanket Limit of Insurance applies to more than one building or item of property, then the most we will under this Additional Coverage, for each building, is $5,000, or the amount shown in the Additional Property Coverage Schedule.

**(6)** Under this coverage, we will not pay for loss due to any ordinance or law that:

**(a)** You were required to comply with before the loss, even if the building was undamaged; and

**(b)** You failed to comply with.

**(7)** Example of Proportionate Loss Payment for Ordinance or Law Coverage losses (procedures as set forth in paragraph **(2)(c)** of this Additional Coverage).

Assume:

- Wind is a Covered Cause of Loss; "Flood" is an excluded Cause of Loss

- The building has value of $200,000

- The total direct physical damage to the building: $100,000;

- The ordinance or law in this jurisdiction is enforced when building damage equals or exceeds 50% of the building's value;

- Portion of direct physical damage that is covered (caused by wind): $30,000;

- Portion of direct physical damage that is not covered (caused by "flood"): $70,000; and

- Loss under Increased Cost of Construction: $60,000

**Step 1:** Determine the proportion that the covered direct physical damage bears to the total direct physical damage.

$30,000 divided by $100,000 = .30

**Step 2:** Apply that portion to the Ordinance or Law loss.

$60,000 x .30 = $18,000

In this example, the most we will pay under this Additional Coverage for the Increased Cost of Construction loss is $18,000, subject to the applicable Limit of Insurance and any other applicable provisions.

Note: The same procedure applies to losses under Loss to the Undamaged Portion of the Building and Demolition Cost of this Additional Coverage.

**m. Business Income from Dependent Properties**

When Business Income Coverage is provided under this Coverage Form:

**(1)** We will pay for the actual loss of Business Income you sustain due to direct physical loss or damage at the premises of a "dependent property" caused by or resulting from any Covered Cause of Loss.

However, this Additional Coverage does not apply when the only loss at the premises of a "dependent property" is loss or damage to "electronic data", including destruction or corruption of "electronic data". If the "dependent property" sustains loss or damage to "electronic data" and other property, coverage under this Additional Coverage will not continue once the other property is repaired, rebuilt or replaced.

**(2)** The most we will pay under this Additional Coverage is $5,000 per occurrence, regardless of the number of "dependent properties" affected.

**(3)** We will reduce the amount of your Business Income loss, other than Extra Expense, to the extent you can resume "operations", in whole or in part, by using any other available:

**(a)** Source of materials; or

**(b)** Outlet for your products.

**(4)** If you do not resume "operations", or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

**(5)** The coverage period for Business Income under this Additional Coverage:

**(a)** Begins 72 hours after the time of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the premises of the "dependent property"; and

**(b)** Ends on the date when the property at the premises of the "dependent property" should be repaired, rebuilt or replaced (to the extent necessary to resume "operations") with reasonable speed and similar quality or 12 months immediately following the date of direct physical loss or damage, whichever is shorter.

**(6)** The Business Income coverage period, as stated in paragraph **(4)** above, does not include any increased period required due to the enforcement of or compliance with any ordinance or law that:

**(a)** Regulates the construction, use or repair, or requires the tearing down of any property; or

**(b)** Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

The expiration date of this Coverage Form will not reduce the Business Income coverage period.

**(7)** The definition of Business Income contained in the Business Income Additional Coverage also applies to this Business Income from Dependent Properties Additional Coverage.

**n. Glass Expenses**

When glass is damaged from a Covered Cause of Loss we will pay for your expenses incurred to:

**(1)** Put up temporary plates or board up openings if repair or replacement of damaged glass is delayed;

**(2)** Replace lettering, artwork, sensors or other items permanently affixed to, or a part of, the damaged glass; and

**(3)** Remove or replace obstructions when repairing or replacing glass that is part of a building. This does not include removing or replacing window displays.

**o. Fire Protection Equipment Recharge**

**(1)** We will pay:

**(a)** The cost of recharging or replacing, whichever is less, your fire extinguishers and fire extinguishing systems

(including hydrostatic testing if needed) if they are discharged on or within 1,000 feet of the described premises; and

**(b)** For loss or damage to Covered Property if such loss or damage is the result of an accidental discharge of chemicals from a fire extinguisher or a fire extinguishing system.

**(2)** No coverage will apply if the fire extinguishing system is discharged during installation or testing.

**(3)** The most we will pay under this Additional Coverage is $25,000 in any one occurrence. The deductible does not apply to these expenses.

**p. Employee Theft including ERISA Compliance**

**(1)** We will pay for loss or damage to "money", "securities" and "other property" resulting directly from "theft" committed by an "employee", clergy, or any non-compensated person whether identified or not, acting alone or in collusion with other persons.

For the purposes of this Additional Coverage, "theft" shall also include "forgery".

**(2)** This Additional Coverage terminates as to any "employee" as soon as:

**(a)** You; or

**(b)** Any of your partners, "members", "managers", officers, directors or trustees not in collusion with the "employee";

"Discovered" the "theft" or any other dishonest act committed by the "employee" whether before or after becoming employed by you.

**(3)** Under this Additional Coverage, all loss:

**(a)** Caused by one or more persons; or

**(b)** Involving a single act or series of related acts;

is considered one occurrence.

**(4)** We will pay only for loss you sustain through acts committed or events occurring anytime which is "discovered" by you:

**(a)** During the policy period; or

**(b)** No later than 1 year from the date of termination or cancellation of this insurance. However this extended period to "discover" loss terminates immediately upon the effective date of any other insurance obtained by you, whether from us or another insurer, replacing in whole or in part the coverage afforded under this Additional Coverage, whether or not such other insurance provides coverage for loss sustained prior to its effective date.

**(5)** You may extend this coverage to apply to loss caused by any "employee" while temporarily outside the Coverage Territory for a period of not more than 90 days.

**(6)** The most we will pay for all loss resulting directly from an occurrence is $10,000 or the Limit of Insurance shown in the Additional Property Coverage Schedule. Regardless of the number of years this policy remains in force or the number of premiums paid, no Limit of Insurance cumulates from year to year.

**(7) Special Employee Theft Exclusions**

We will not pay for:

**(a)** Loss resulting from "theft" or any other dishonest act committed by:

**(i)** You; or

**(ii)** Any of your partners or "members";

Whether acting alone or in collusion with other persons.

**(b)** Loss caused by an "employee" if the "employee" has also committed "theft" or any other dishonest act prior to the effective date of this policy and you or any of your partners, "managers", officers, directors or trustees, not in collusion with the "employee", learned of that "theft" or dishonest act prior to the policy period shown in the Declarations.

**(c)** Loss resulting from "theft" or any other dishonest act committed by any of your "employees", "managers", directors, trustees or authorized representatives:

**(i)** Whether acting alone or in collusion with other persons; or

**(ii)** While performing services for you or others;

Except when covered under this Additional Coverage.

**(d)** Loss that is an indirect result of an occurrence covered by this Additional Coverage, including, but not limited to, loss resulting from:

**(i)** Your inability to realize income that you would have realized had there been no loss of or damage to "money", "securities" or "other property";

**(ii)** Payment of damages of any type for which you are legally liable;

**(iii)** Payment of costs, fees or other expenses you incur in establishing either the existence or the amount of loss under this Additional Coverage.

**(e)** Fees, costs and expenses incurred by you which are related to any legal action.

**(f)** Loss or that part of any loss, the proof of which as to its existence or amount is dependent upon:

**(i)** An inventory computation; or

**(ii)** A profit and loss computation.

However, where you establish wholly apart from such computations that you have sustained a loss, then you may offer your inventory records and actual physical count of inventory in support of the amount of loss claimed.

**(g)** Loss resulting from trading, whether in your name or in a genuine or fictitious account.

**(h)** Loss resulting from fraudulent or dishonest signing, issuing, canceling or failing to cancel, a warehouse receipt or any papers connected with it.

**(i)** Loss resulting from:

**(i)** The unauthorized disclosure of your

confidential information including, but not limited to, patents, trade secrets, processing methods or customer lists; or

**(ii)** The unauthorized use or disclosure of confidential information of another person or entity which is held by you including, but not limited to, financial information, personal information, credit card information or similar non public information.

**(8) Welfare and Pension Plan ERISA Compliance**

**(a)** The "employee benefit plan" (hereafter referred to as Plan) is included as an insured under this Additional Coverage.

**(b)** If any Plan is insured jointly with any other entity under this Additional Coverage, you or the Plan Administrator must select a Limit of Insurance for this Additional Coverage that is sufficient to provide a Limit of Insurance for each Plan that is at least equal to that required if each Plan were separately insured.

**(c)** With respect to loss sustained or "discovered" by any such Plan, paragraph **(1)** above, of this Additional Coverage is replaced by the following:

**(1)** We will pay for loss of or damage to "funds" and "other property" resulting directly from fraudulent or dishonest acts committed by an "employee", whether identified or not, acting alone or in collusion with other persons.

**(d)** If the first Named Insured is an entity other than a Plan, any payment we make for loss sustained by any Plan will be made to the Plan sustaining the loss.

**(e)** If two or more Plans are insured under this Additional Coverage, any payment we make for loss:

**(i)** Sustained by two or more Plans; or

**(ii)** Of commingled "funds" or "other property" of two or more Plans;

Resulting from an occurrence, will be made to each Plan sustaining loss in the proportion that the Limit of Insurance required for each Plan bears to the total Limit of Insurance of all Plans sustaining loss.

**(f)** The deductible does not apply to this Additional Coverage.

**q. Rewards - Arson, Theft and Vandalism**

**(1)** We will reimburse you for payment of any reward offered on your behalf and for information that leads to the arrest and conviction of the person or persons responsible for:

**(a)** Arson;

**(b)** "Theft" or

**(c)** Vandalism

to Covered Property.

**(2)** The arrest or conviction must involve a covered loss caused by arson, "theft" or vandalism.

**(3)** The most we will pay under this Additional Coverage is $10,000 unless a higher Limit of Insurance is shown in the Additional Property Coverage Schedule**.** The amount we pay is not increased by the number of persons involved in providing the information.

**(4)** The amount payable under this Additional Coverage is additional insurance.

**(5)** The deductible does not apply to this Additional Coverage.

**r. Computer Equipment**

**(1)** We will pay for direct physical loss of or damage to the following Covered Property which is your property or property in your care, custody or control while at or away from the described premises when loss or damage is caused by or resulting from a Covered Cause of Loss:

**(a)** "Computer equipment"; and

**(b)** Programming documentation and instruction manuals.

**(2)** We will pay for the actual loss of Business Income you sustain as described in the Business Income Additional Coverage and we will pay for any necessary Extra Expense you incur during the "period of restoration"

**The Hanover Insurance Group.**

OBCH332709    1304500

as described in the Extra Expense Additional Coverage.

**(3)** In the event of a loss of or damage to "Computer equipment" by a Covered Cause of Loss, we will pay your costs to modify or replace undamaged "hardware" or "software" when it:

**(a)** Was dependent on the damaged "hardware" or "software" prior to the covered loss; and

**(b)** Is not compatible with the "hardware" or "software" that is replacing the property that was involved in the covered loss.

We will only pay for your costs to modify or replace undamaged "hardware" or "software" at a premises described in the Declarations.

The most we will pay for your costs covered in any one occurrence is $10,000.

**(4)** We will not pay for any loss of or damage to the following property:

**(a)** Property you rent, loan or lease to others while it is away from the described premises;

**(b)** Property you hold for sale, distribute or manufacture except as provided in **SECTION I - PROPERTY, A. Coverage, 1. Covered Property**, paragraph **b.;** or

**(c)** "Software" that cannot be duplicated or replaced with similar property of equal quality and/or substantially similar functionality.

**(5)** If we provide Building coverage only, we will only pay for loss to "computer equipment" that service building operations at the described premises and are located at the described premises.

**(6)** The most we will pay for any loss or damage to property described in paragraphs **(1)** and **(2)** above, is $35,000 unless a higher Limit of Insurance is shown in the Additional Property Coverage Schedule for Computer Equipment. The most we will pay for Extra Expense is $5,000 unless a higher Limit of Insurance is shown in the Additional Property Coverage Schedule for Extra Expense.

**(7)** The following in **SECTION I - PROPERTY, B. Exclusions**, paragraph **1.** do not apply to this Additional Coverage:

**(a)** **b. Earth Movement**; and

**(b)** **g. Water**.

**(8)** **Special Computer Equipment Exclusions**

We will not pay for loss or damage to portable electronic devices when caused by, resulting from, or arising out of "theft" or unexplained loss when the property is checked baggage with a carrier for transit. Portable electronic devices includes laptops, tablets, e-readers, smartphones or other lightweight, hand-held or wearable devices capable of storing, retrieving and processing data.

**s. Money and Securities**

**(1)** We will pay for loss of "money" and "securities":

**(a)** Inside a building at the described premises or "financial institution" resulting directly from "theft" committed by a person present inside a building at the described premises or "financial institution";

**(b)** Inside a building at the described premises or "financial institution" resulting directly from disappearance or destruction; or

**(c)** Outside of a building at or away from the described premises in the care and custody of a "messenger" or an armored motor vehicle company resulting directly from "theft", disappearance or destruction.

**(2)** For the purposes of this Additional Coverage, all loss:

**(a)** Caused by one or more persons; or

**(b)** Involving a single act or series of related acts;

is considered one occurrence.

**(3)** You must keep records of all "money" and "securities" so we can verify the amount of any one loss or damage.

**(4)** The amount payable under this Additional Coverage is additional insurance.

**(5)** The most we will pay for loss in any one occurrence is:

**(a)** $10,000 or the amount shown in the Additional Property Coverage Schedule while:

    **(i)** Inside a building at the described premises; or

    **(ii)** Within a "financial institution" in the Coverage Territory; and

**(b)** $5,000 or the amount shown in the Additional Property Coverage Schedule while outside of a building at the described premises or when away from the described premises in the Coverage Territory.

**(6) Special Money and Securities Exclusions**

We will not pay for loss:

**(a)** Resulting from accounting or arithmetic errors or omissions;

**(b)** Resulting from giving or surrendering of property in any exchange or purchase;

**(c)** Of property contained in any money-operated device unless the amount of "money" deposited in it is recorded by a continuous recording instrument in the device; or

**(d)** Loss or damage to "money" and "securities" following and directly related to the use of any computer to fraudulently cause a transfer of that property.

**t. Tenant Signs (Tenants only)**

**(1)** This Additional Coverage is available only when the Named Insured is a tenant and a Limit of Insurance is shown in the Declarations Page for Business Personal Property.

We will pay for direct physical loss of or damage to all signs:

**(a)** Owned by you; or

**(b)** Owned by others but in your care, custody or control;

when loss or damage is caused by or resulting from a Covered Cause of Loss.

**(2) SECTION I - PROPERTY, A. Coverage, 3. Covered Causes of Loss** does not apply to this Additional Coverage and **SECTION I -**
**PROPERTY**, **B. Exclusions,** paragraph **1.** does not apply to this Additional Coverage except for the following:

**(a) c. Government Action**;

**(b) d. Nuclear Hazard**; and

**(c) f. War and Military Action**.

**(3)** We will not pay for loss or damage caused by or resulting from:

**(a)** Wear and tear;

**(b)** Hidden or latent defect;

**(c)** Rust;

**(d)** Corrosion; or

**(e)** Mechanical Breakdown, except as provided for in **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, u. Equipment Breakdown**.

**(4)** The most we will pay for loss or damage in any one occurrence is $5,000 regardless of the number of locations or buildings involved.

**u. Equipment Breakdown**

**(1)** We will pay for direct physical damage to Covered Property that is the direct result of an "accident" or "electronic circuitry impairment". We will consider "electronic circuitry impairment" to be physical damage to "covered equipment".

**(2)** The following coverages also apply to the direct result of an "accident" or "electronic circuitry impairment". However, with respect to coverage **A.5.u.(2)(h)** Utility Services - Equipment Breakdown (Accident) and **A.5.m.** Business Income from Dependent Properties provided in this coverage form, coverage will apply only to the direct result of an "accident" and will not apply to the direct result of an "electronic circuitry impairment". These coverages do not provide additional amounts of insurance.

**(a) Data Restoration**

We will pay for your reasonable and necessary cost to research, replace and restore lost "data".

The most we will pay for loss or expense under this coverage, including actual loss of Business Income you sustain and

necessary Extra Expense you incur is $50,000.

**(b) Expediting Expenses**

With respect to your damaged Covered Property, we will pay, up to $50,000, the reasonable extra cost to:

**(i)** Make temporary repairs; and

**(ii)** Expedite permanent repairs or permanent replacement.

**(c) Fungi, Wet Rot, or Dry Rot**

**(i)** We will pay the additional cost to repair or replace Covered Property because of contamination by "fungi", wet rot or dry rot. This includes the additional costs to clean up or dispose of such property. This does not include spoilage of personal property that is "perishable goods" to the extent that such spoilage is covered under Spoilage coverage.

**(ii)** As used in this coverage, additional costs mean those beyond what would have been payable under this Equipment Breakdown Coverage had no "fungi", wet rot or dry rot been involved.

**(iii)** We will also pay the cost of testing performed after repair or replacement of the damaged Covered Property is completed only to the extent that there is reason to believe there is the presence of "fungi", wet rot or dry rot.

**(iv)** This coverage does not apply to lawns, trees, shrubs or plants which are part of a vegetated roof.

**(v)** The most we will pay in any "one equipment breakdown" for loss, damage or expense under this coverage, including actual loss of Business Income you sustain and necessary Extra Expense you incur, if shown as covered, is $15,000 even if the "fungi", wet rot or dry rot continues to be present or active or recurs in a later policy period.

**(d) Hazardous Substances**

We will pay for the additional cost to repair or replace Covered Property because of a contamination by a "hazardous substance".

This includes the additional costs to clean up or dispose of such property. This does not include contamination of "perishable goods" by refrigerant, including but not limited to ammonia, which is addressed in **(g) Spoilage** below. Additional costs mean those beyond what would have been payable had no "hazardous substance" been involved. The most we will pay for loss, damage or expense under this coverage, including actual loss of Business Income you sustain, and necessary Extra Expense you incur is $50,000.

**(e) Personal Property Off Premises Equipment Breakdown**

**(i)** Any direct physical damage for personal property off premises provided under Coverage Extension **b.** Personal Property Off Premises, also applies to the direct result of an "accident" or "electronic circuitry impairment".

**(ii)** We will also pay for your reasonable and necessary cost to research, replace and restore lost "electronic data" contained within "covered equipment" when due to covered loss or damage as described in **(i)** above. This amount may not exceed the limit applicable to Data Restoration coverage.

**(iii)** The most we will pay for loss, damage or expense under this coverage, including actual loss of Business Income you sustain and necessary Extra Expense you incur and Data Restoration as described in **(ii)** above is $50,000.

**(f) Public Relations**

**(i)** This coverage only applies if you have sustained an actual loss of Business Income.

**(ii)** We will pay for your reasonable costs for professional services to create and disseminate communications, when the need for such communications arises directly from the interruption of your business. This communication must be directed to one or more of the following:

   **1)** The media;

   **2)** The public; or

   **3)** Your customers, clients or members.

**(iii)** Such costs must be incurred during the "period of restoration" or up to 30 days after the "period of restoration" has ended.

**(iv)** The most we will pay for loss or expense under this coverage is $5,000.

**(g) Spoilage**

**(i)** We will pay for:

   **1)** Physical damage to your "perishable goods" due to spoilage.

   **2)** Physical damage to your "perishable goods" due to contamination from the release of refrigerant, including but not limited to ammonia.

   **3)** Any necessary expenses you incur to reduce the amount of loss under this coverage. We will pay for such expenses to the extent that they do not exceed the amount of loss that otherwise would have been payable under this coverage.

**(ii)** If you are unable to replace "perishable goods" before its anticipated sale, the amount of our payment will be determined on the basis of the sales price of the "perishable goods" at the time of the "accident" or "electronic circuitry impairment", less discounts and expenses you otherwise would have had. Otherwise our payment will be determined in accordance with the Loss Payment Condition.

**(iii)** The most we will pay for loss or damage under this coverage is $50,000.

**(h) Utility Services - Equipment Breakdown (Accident)**

**(i)** Any insurance provided for Business Income, Extra Expense, Data Restoration or Spoilage is extended to apply to your loss, damage or expense caused by a failure or disruption of service. The failure or disruption of service must be caused by an "accident" to equipment, including overhead transmission lines, that is owned by a utility, landlord, a landlord's utility or other supplier who provides you with any of the following services: electrical power, waste disposal, air conditioning, refrigeration, heating, natural gas, compressed air, water, steam, Internet access, telecommunications services, "cloud computing services", wide area networks or data transmission. The equipment must meet the definition of "covered equipment" except that it is not Covered Property.

**(ii)** "Cloud computing services" must be provided by a professional provider with whom you have a contract.

**(iii)** With respect to the Data Restoration portion of this Service Interruption coverage, coverage will also apply to "data" stored in the equipment of a provider of "cloud computing services".

**(iv)** Any insurance provided for Business Income or Data Restoration will not apply

OBCH332709     1304500

under this Service Interruption coverage unless the failure or disruption of service exceeds 24 hours immediately following the "accident". If the interruption exceeds 24 hours, coverage will begin at the time of the disruption, and the applicable deductible will apply.

**(v)** The most we will pay in any "one equipment breakdown" for loss, damage or expense under this coverage is the applicable limit for Business Income, Extra Expense, Data Restoration or Spoilage.

**(3) Conditions**

**(a) Suspension**

When any "covered equipment" is found to be in, or exposed to, a dangerous condition, any of our representatives may immediately suspend the insurance against loss from an "accident" or "electronic circuitry impairment" to that "covered equipment". We can do this by mailing or delivering a written notice of suspension to:

**(i)** Your address as shown in the Declarations; or

**(ii)** The address where the "covered equipment" is located.

Once suspended in this way, your insurance can be reinstated only by an endorsement for that "covered equipment". If we suspend your insurance, you will get a pro rata refund of premium for that "covered equipment". But the suspension will be effective even if we have not yet made or offered a refund.

**(b) Jurisdictional Inspections**

If any property that is "covered equipment" under this Additional Coverage requires inspection to comply with state or municipal boiler and pressure vessel regulations, we agree to perform such inspection on your behalf. We do not warrant that conditions are safe or healthful.

**(c) Environmental, Safety and Efficiency Improvements**

If "covered equipment" requires replacement due to an "accident" or "electronic circuitry impairment", we will pay your additional cost to replace with equipment that is better for the environment, safer for people or more energy or water efficient than the equipment being replaced. However, we will not pay to increase the size or capacity of the equipment and we will not pay more than 150% of what the cost would have been to replace with like kind and quality. This provision does not apply to the replacement of component parts or to any property to which Actual Cash Value applies and does not increase any of the applicable limits.

**(4) Special Equipment Breakdown Exclusions**

**(a)** We will not pay for loss, damage or expense caused by or resulting from a hydrostatic, pneumatic or gas pressure test of any boiler or pressure vessel, or an electrical insulation breakdown test of any type of electrical equipment.

**(b)** With respect to Business Income, Extra Expense and Utility Services coverages, we will also not pay for:

**(i)** Loss caused by your failure to use due diligence and dispatch, and all reasonable means to resume business; or

**(ii)** Any increase in loss resulting from an agreement between you and your customer or supplier.

**(c)** Except as provided under **u.2.(c)** "Fungi", Wet Rot or Dry Rot coverage we will not pay for loss, damage or expense caused directly or indirectly by the following, whether or not caused by or resulting from an "accident" or "electronic circuitry impairment": Any "fungi," wet rot or dry rot, including any presence, growth, proliferation, spread or any activity of "fungi," wet rot or dry rot. This includes, but is not

limited to, costs arising from clean up, removal, or abatement of such "fungi," wet rot or dry rot. However, this exclusion does not apply to spoilage of personal property that is "perishable goods," to the extent that such spoilage is covered under Spoilage coverage.

**(d)** This Additional Coverage - Equipment Breakdown does not apply to an "accident" or "electronic circuitry impairment" caused by or resulting from:

**(i)** Fire (including fire resulting from an "accident" or "electronic circuitry impairment"), or water or other means used to extinguish a fire;

**(ii)** Explosion of gas or unconsumed fuel within the furnace of any boiler or fired vessel or within the passages from that furnace to the atmosphere;

**(iii)** Any other explosion, except as specifically covered under this Additional Coverage;

**(iv)** Vandalism;

**(v)** Lightning; smoke; aircraft or vehicles; riot or civil commotion; sprinkler leakage; elevator collision;

**(vi)** Windstorm or hail; However, this exclusion does not apply when:

**1)** "Covered equipment" located within a building or structure suffers an "accident" or "electronic circuitry impairment" that results from wind-blown rain, snow, sand or dust; and

**2)** The building or structure did not first sustain wind or hail damage to its roof or walls through which the rain, snow, sand or dust entered.

**(vii)** Breakage of glass; falling objects; weight of snow, ice or sleet; freezing (caused by cold weather); collapse or molten material;

**(viii)** "Flood", surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not; mudslide or mudflow; or water that backs up or overflows from a sewer, drain or sump. However, if electrical "covered equipment" requires drying out because of the above, we will pay for the direct expenses of such drying out subject to the applicable Limit of Insurance and deductible for Building or Business Personal Property, whichever applies.

**(ix)** Any earth movement, including but not limited to earthquake, subsidence, sinkhole collapse, landslide, earth sinking, tsunami or volcanic action.

**(e)** Special Equipment Breakdown Exclusions **(5)(d)(v), (5)(d)(vi)** and **(5)(d)(vii)** shall not apply if:

**(i)** The excluded cause of loss occurs away from any covered location and causes an electrical surge or other electrical disturbance.

**(ii)** Such surge or disturbance is transmitted through utility service transmission lines to the covered location and results in an "accident" or "electronic circuitry impairment"; and

**(iii)** The loss, damage or expense caused by such surge or disturbance is not covered elsewhere under the policy.

**(f)** We will not pay under this Additional Coverage for any loss or damage to animals.

The most we will pay for loss, damage or expense arising from any "one equipment breakdown" is the applicable Limit of Insurance shown in the Declarations. This Additional Coverage does not provide an additional amount of insurance.



OBCH332709     1304500

**v.  Commercial Tools and Small Equipment**

**(1)** This Additional Coverage is available only when a Limit of Insurance is shown in the Declarations for Business Personal Property.

**(2)** We will pay for direct physical loss of or damage caused by or resulting from a Covered Cause of Loss to commercial tools and small equipment, including their:

**(a)** Accessories, whether attached or not attached; and

**(b)** Spare parts that are specifically designed and intended for use in the maintenance and operation of property covered under this Additional Coverage;

That is:

**(c)** Your property;

**(d)** The property of others in your care, custody or control; or

**(e)** The property of your "employees".

Damage to the property of your "employees" is limited to while on the described premises.

Commercial Tools and Small Equipment does not include communication devices and diagnostic equipment unless otherwise covered in **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, r. Computer Equipment.**

**(3)** This coverage only applies to any one tool or piece of small equipment with a replacement cost value of $2,500 or less, unless listed on a schedule included with this policy.

**(4)** The most we will pay for any loss under this Additional Coverage in any one occurrence is $5,000 unless a higher Limit of Insurance is shown in the Additional Property Coverage Schedule, but not more than $2,500 for any one tool, tool box or piece of small equipment.

**(5)** In addition to items listed within **SECTION I - PROPERTY, A. Coverage, 2. Property Not Covered**, we will not pay for any loss to the following property:

**(a)** Watercraft or watercraft parts and equipment;

**(b)** Commercial tools and small equipment that are permanently mounted to a vehicle, including trailers;

**(c)** Tires or tire tubes, attached or unattached, for use with commercial tools and small equipment, unless the loss or damage is caused by "theft", malicious mischief, or any of the "specified causes of loss"; or

**(d)** Any property while underground, airborne or waterborne.

**(6)** The following **SECTION I - PROPERTY, B. Exclusions,** in paragraph **1.** do not apply to this Additional Coverage:

**(a) b. Earth Movement**;

**(b) g. Water**.

**(7) Special Commercial Tools and Small Equipment Exclusion**
We will not pay for any loss caused by or resulting from any repair, adjusting, servicing, testing or maintenance process unless fire or explosion ensues, then only for the loss caused by such ensuing fire or explosion.

**w.  Installation**

**(1)** This Additional Coverage is available only when a Limit of Insurance is shown in the Declarations for Business Personal Property.

**(2)** We will pay for direct physical loss of or damage to property sold under an installation agreement where your insurable interest continues until the property is accepted by the purchaser for whom the project is to be performed. Coverage applies under this Additional Coverage when the loss or damage is caused by or resulting from any Covered Cause of Loss.

**(3)** The property under which this insurance applies includes:

**(a)** Materials, supplies, equipment, machinery, fixtures owned by you or in your care, custody or control, and which are to be installed by you or at your direction; and

**(b)** Temporary structures built or assembled on-site, including cribbing, scaffolding and construction forms.

This property is covered while:

**(c)** At any jobsite you do not own, lease or operate;

**(d)** Awaiting and during installation, or awaiting acceptance by the purchaser;

**(e)** "In transit"; or

**(f)** At a temporary storage location.

**(4)** Coverage provided under this Additional Coverage will end when one of the following first occurs:

**(a)** This policy expires or is cancelled;

**(b)** The property covered under this Additional Coverage is accepted by the purchaser;

**(c)** Your interest in the property covered under this Additional Coverage ceases;

**(d)** You abandon the project to be performed by you for the purchaser, with no intention to complete it; or

**(e)** 90 days after the project to be performed by you for the purchaser is completed, unless we specify a different date in writing.

**(5)** In addition to **SECTION I - PROPERTY, A. Coverage, 2. Property Not Covered**, the following property is not covered with respect to this Additional Coverage:

**(a)** An existing building or structure to which an addition, alteration, improvement or repair is being made;

**(b)** Property stored at a permanent premises that you own;

**(c)** A plan, blueprint, design or specification;

**(d)** Trees, grass, sod, shrubbery or plants; and

**(e)** Machinery, tools, equipment, supplies or similar property that does not become a permanent part of the project. This includes contractor's equipment and other tools belonging to a contractor or sub-contractor.

**(6)** **Special Installation Exclusions**

We will not pay for any loss caused by or resulting from:

**(a)** The cost to make good or replace faulty or defective materials or workmanship;

**(b)** Testing. However, if testing results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion;

**(c)** A fault, defect, deficiency, error or omission in a plan, blueprint, design or specification;

**(d)** The weight of a load when it exceeds the designed capacity of any property covered under this Additional Coverage to lift, move or support the load from any position; or

**(e)** Collision, upset or overturn of any property covered under this Additional Coverage to the extent of any loss of or damage to the tires or inner tubes of such property. But we will pay for the loss of or damage to the tires or inner tubes if the same accident causes other covered loss to the same property covered under this Additional Coverage.

**(7)** The following in **SECTION I - PROPERTY, B. Exclusions,** paragraph **1.** do not apply to this Additional Coverage:

**(a)** **b. Earth Movement**; and

**(b)** **g. Water**.

**(8)** The most we will pay for loss of or damage to property covered under this Additional Coverage in any one occurrence is $5,000, regardless if the property is located at a jobsite, while "in transit," or at a temporary storage location.

This Additional Coverage does not increase **SECTION I - PROPERTY, C. Limits of Insurance**.

**x.** **Fine Arts**

**(1)** We will pay for direct physical loss to "fine arts" which are your property or the property of others in your care, custody or control while on the described premises. We also cover your "fine arts" while temporarily on display or exhibit away from the described premises or while "in transit" between the described premises and a location where the

The
**Hanover**
Insurance Group™

OBCH332709    1304500

"fine arts" will be temporarily on display or exhibit.

**(2)** The following of **SECTION I - PROPERTY, B. Exclusions**, paragraph **1.** do not apply to this Additional Coverage:

**(a) b. Earth Movement**; and

**(b) g. Water**

**(3)** The most we will pay for any loss under this Additional Coverage is $10,000 per occurrence regardless of the number of locations or buildings involved.

**(4) Special Fine Arts Exclusion**

We will not pay for any loss caused by or resulting from:

**(a)** Breakage of statuary, glassware, bric-a-brac, marble, porcelain and similar fragile property. But we will pay if the loss or damage is caused directly by a "specified cause of loss", earthquake or "flood"; and

**(b)** Any repairing, restoration or retouching of the "fine arts".

**y. Sales Representative Samples**

**(1)** We will pay for direct physical loss or damage by a Covered Cause of Loss to samples of your "stock" in trade (including containers) while:

**(a)** In the custody of your sales representative, agent or any "employee" who travels with sales samples;

**(b)** In your custody while acting as a sales representative; or

**(c)** "In transit" between the described premises and your sales representatives.

**(2)** The following of **SECTION I - PROPERTY, B. Exclusions**, paragraph **1.** do not apply to this Additional Coverage:

**(a) b. Earth Movement**; and

**(b) g. Water**

**(3)** The most we will pay for any loss or damage under this Additional Coverage is $5,000 unless a higher Limit of Insurance is shown in the Additional Property Coverage Schedule.

**(4)** We will not pay for loss to the following property:

**(a)** Property which has been sold;

**(b)** Jewelry, precious or semiprecious stones, gold, silver, platinum or other precious metals or alloys;

**(c)** Fur, fur garments or garments trimmed with fur; or

**(d)** Any property while waterborne.

**z. Leasehold Interest (Tenants Only)**

**(1)** If your lease is cancelled due to direct physical damage to property at the described premises caused by or resulting from a Covered Cause of Loss, we will pay the net loss you sustain due to increased rent under a replacement lease.

**(2)** The most we will pay for loss because of the cancellation of any lease or leases due to the same covered cause of loss is the lesser of:

**(a)** If your lease is cancelled and either:

**(i)** Your landlord allows you to continue to use your premises under a new lease not to exceed the prevailing lease rate, or

**(ii)** You relocate to other permanent premises and enter into a new lease.

For the duration of the lease in effect at the time of the loss, we will pay the increase in rent between what you were paying at the time of loss and the rent you will be required to pay for equivalent premises under the replacement lease;

**(b)** $10,000; or

**(c)** Nothing if there is not a written or legally binding lease.

**(3)** The following applies to paragraph **(2)**, subparagraphs **(a)(i)** and **(a)(ii)** above:

**(a)** If the lease in effect at the time of the loss contains a renewal option, the expiration date of the renewal option period will replace the expiration of the current lease.

**(b)** If the lease has no end date (open-ended), we will pay the difference in rent for a period of no more than 24 months after the date of the direct physical damage to the property at the described premises.

**(4)** The following applies to paragraph **(2)**, subparagraphs **(a)** and **(b)** above:

**(a)** $10,000 will be the maximum amount payable regardless of the number of leases affected by the same Covered Cause of Loss.

**(b)** Existence of a renewal option will not increase, or have any other effect on this Limit of Insurance.

**(5) Special Leasehold Interest Exclusion**

We will not pay for any loss or damage:

**(a)** If the unit or suite rented or leased to you where direct damage occurs has been vacant more than 60 consecutive days before the loss or damage occurs, and you have not entered into an agreement to sublease the unit or suite.

**(b)** Caused by your cancelling the lease, or

**(c)** Caused by lessors' lease cancellation at the normal expiration date.

**aa. Unauthorized Business Credit Card Use**

**(1)** We will pay for loss resulting from the "theft" or unauthorized use of Business Credit Cards issued to you or registered in your name.

**(2)** We do not cover use of a Business Credit Card:

**(a)** By a person who has been entrusted with the card; or

**(b)** any of your "employees".

**(3)** All loss:

**(a)** Caused by one or more persons; or

**(b)** Involving a single act or series of related acts;

is considered one occurrence regardless of the number of individual unauthorized transactions.

**(4)** If a suit is brought against you for liability, we will pay for reasonable legal expenses incurred in that defense under this Additional Coverage.

**(5)** The most we will pay for any loss including legal expenses, under this

Additional Coverage is $5,000 per occurrence.

**bb. Utility Services**

**(1)** We will pay for loss of or damage to Covered Property caused by an interruption in service to the described premises. The interruption must result from direct physical loss or damage by a Covered Cause of Loss to property not on the described premises that provides the services shown in paragraph **(3)** below.

The most we will pay for loss in any one occurrence under this Additional Coverage is $10,000 at each described premises or the Limit of Insurance shown in the Additional Property Coverage Schedule.

**(2)** We will pay for the actual loss of Business Income you sustain and necessary Extra Expense you incur caused by the interruption of service at the described premises. The interruption must result from direct physical loss or damage by a Covered Cause of Loss to property not on the described premises that provides the services shown in paragraph **(3)** below.

We will only pay for loss you sustain after the first 24 hours following the direct physical loss of or damage to the property described above.

The most we will pay for loss in any one occurrence under this Additional Coverage is $5,000 at each described premises or the Limit of Insurance shown in the Additional Property Coverage Schedule.

**(3)** Services:

**(a)** Water Supply Services, meaning the following types of property supplying water to the described premises:

**(i)** Pumping stations; and

**(ii)** Water mains.

**(b)** Communication Supply Services, meaning the following types of property supplying communication services, including but not limited to telephone, radio, microwave, television services, internet access or access to any electronic, cellular or satellite

**The Hanover Insurance Group™**

OBCH332709     1304500

network to the described premises, such as:

**(i)** Communication transmission lines, including optic fiber transmission lines;

**(ii)** Coaxial cables; and

**(iii)** Microwave radio relays except satellites.

**(c)** Power Supply Services, meaning the following types of property supplying electricity, steam or gas to the described premises:

**(i)** Utility generating plants;

**(ii)** Switching stations;

**(iii)** Substations;

**(iv)** Transformers; and

**(v)** Transmission lines.

**(4)** Services under this Additional Coverage do not include overhead transmission lines that deliver utility services to you. Overhead transmission lines include, but are not limited to:

**(a)** Overhead transmission and distribution lines;

**(b)** Overhead transformers and similar equipment; and

**(c)** Supporting poles and towers.

**(5)** As used in this additional coverage, the term transmission lines includes all lines which serve to transmit communication service or power, including lines which may be identified as distribution lines.

**(6)** This coverage is not an additional amount of insurance.

**(7)** Coverage under this Additional Coverage for loss or damage to Covered Property does not apply to loss or damage to "electronic data", including destruction or corruption of "electronic data".

**(8)** The definitions of Business Income and Extra Expense contained in the Business Income and Extra Expense Additional Coverages also apply to this Utility Services Additional Coverage.

**cc. Deferred Payments**

**(1)** We will pay for your interest in lost or damaged Business Personal Property sold by you under a conditional sale or trust agreement or any installment or deferred payment plan after delivery to buyers. The loss or damage must be caused by a Covered Cause of Loss.

**(2)** When a total loss to that property occurs, deferred payments are valued on the amount shown on your books as due from the buyer. When a partial loss to that property occurs and the buyer refuses to continue payment, forcing you to repossess, deferred payments are valued as follows:

**(a)** If the realized value of the repossessed property is greater than or equal to the amount shown on your books as due from the buyer, we will make no payment; but

**(b)** If the realized value of the repossessed property is less than the amount shown on your books as due from the buyer, we will pay the difference.

**(3)** When loss occurs and the buyer continues to pay you, there will be no loss payment.

**(4)** The most we will pay for loss under this Additional Coverage is $5,000 per occurrence.

**dd. Electronic Vandalism**

**(1)** **SECTION I - PROPERTY, A. Coverage, 2. Property Not Covered,** paragraph **o.** is deleted.

**(2)** We cover direct physical loss of or damage to covered "computer equipment" at the described premises caused by "electronic vandalism".

**(3)** The most we will pay in any one occurrence under this Additional Coverage is $10,000. The most we pay for all covered losses under this Additional Coverage during each separate 12-month period of this policy is $10,000.

**(4)** **Special Electronic Vandalism Exclusions**

We do not cover:

**(a)** Loss of proprietary use of any "electronic data" or "proprietary programs" that have been copied, scanned, or altered;

**(b)** Loss of or reduction in economic or market value of any "electronic

data" or "proprietary programs" that have been copied, scanned, or altered; and

**(c)** "Theft" from your "electronic data" or "proprietary programs" of confidential information through the observation of the "electronic data" or "proprietary programs" by accessing covered "computer equipment" without any alteration or other physical loss of or damage to the records or programs. Confidential information includes, but is not limited to, customer information, processing methods, or trade secrets.

**ee. Interruption of Computer Operations**

This Additional Coverage is only available if Business Income is covered under this Coverage Form.

**(1)** Subject to all provisions of this Additional Coverage, you may extend the insurance that applies to Business Income and Extra Expense to apply to a suspension of "operations" at the described premises caused by an interruption in computer operations due to destruction or corruption of "electronic data" occurring at or away from the described premises resulting from any Covered Cause of Loss.

**(2)** With respect to the coverage provided under this Additional Coverage, the Covered Causes of Loss are subject to the following:

**(a)** With respect to the coverage provided under this Additional Coverage, the Covered Causes of Loss include "electronic vandalism". But there is no coverage for an interruption related to manipulation of a computer system (including "electronic data") by any employee, including a temporary or leased employee, or by an entity retained by you, or for you, to inspect, design, install, modify, maintain, repair or replace that system.

**(b)** If the Businessowners Coverage Form is endorsed to add a Covered Cause of Loss, the additional Covered Cause of Loss does not apply to the coverage provided under this Additional Coverage.

**(3)** The most we will pay under this Additional Coverage - Interruption of Computer Operations for all loss sustained and expense incurred in any one policy year, regardless of the number of interruptions or the number of premises, locations or computer systems involved, is $10,000 unless a higher Limit of Insurance is shown in the Declarations. If loss payment relating to the first interruption does not exhaust this amount, then the balance is available for loss or expense sustained or incurred as a result of subsequent interruptions in that policy year. A balance remaining at the end of a policy year does not increase the amount of insurance in the next policy year. With respect to any interruption which begins in one policy year and continues or results in additional loss or expense in a subsequent policy year(s), all loss and expense is deemed to be sustained or incurred in the policy year in which the interruption began.

**(4)** This Additional Coverage - Interruption of Computer Operations does not apply to loss sustained or expense incurred after the end of the "period of restoration", even if the amount of insurance stated in paragraph **(3)** above has not been exhausted.

**(5)** Coverage for Business Income does not apply when a "suspension"of "operations" is caused by destruction or corruption of "electronic data", or any loss or damage to "electronic data", except as provided under paragraphs **(1), (2), (3)** and **(4)** of this Additional Coverage.

**(6)** Coverage for Extra Expense does not apply when action is taken to avoid or minimize a "suspension" of "operations" caused by "electronic vandalism",except as provided under paragraphs **(1), (2), (3)** and **(4)** of this Additional Coverage.

**(7)** This Additional Coverage - Interruption of Computer Operations does not apply when loss or damage to "electronic data" involves only "electronic data" which is integrated in and operates or controls a building's elevator, lighting, heating, ventilation, air conditioning or security system.

OBCH332709      1304500

**ff.  Limited Coverage for Fungi, Wet Rot, or Dry Rot**

**(1)** The coverage described in paragraphs **(2)** and **(6)** below only applies when the "fungi", wet rot or dry rot is the result of any of the "specified causes of loss" other than fire or lightning that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence.

This Additional Coverage does not apply to lawns, trees, shrubs or plants which are part of a vegetated roof.

**(2)** We will pay for loss or damage by "fungi", wet rot or dry rot. As used in this Limited Coverage, the term loss or damage means:

**(a)** Direct physical loss of or damage to Covered Property caused by "fungi", wet rot or dry rot, including the cost of removal of the "fungi", wet rot or dry rot;

**(b)** The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungi", wet rot or dry rot; and

**(c)** The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that "fungi", wet rot or dry rot is present.

**(3)** The coverage described under this Limited Coverage is limited to $50,000. Regardless of the number of claims, this limit is the most we will pay for the total of all loss or damage arising out of all occurrences caused by or resulting from any of the "specified causes of loss" (other than fire or lightning) which take place in a 12 month period (starting with the beginning of the present policy period). With respect to a particular occurrence of loss which results in "fungi", wet rot or dry rot, we will not pay more than the total of $50,000 even if the "fungi", wet rot or dry rot continues to be present or active, or recurs, in a later policy period.

**(4)** The coverage provided under this Limited Coverage does not increase the applicable Limit of Insurance on any Covered Property. If a particular occurrence results in loss or damage by "fungi", wet rot or dry rot, and other loss or damage, we will not pay more for the total of all loss or damage, than the applicable Limit of Insurance on the affected Covered Property.

If there is covered loss or damage to Covered Property, not caused by "fungi", wet rot or dry rot, loss payment will not be limited by the terms of this Limited Coverage, except to the extent that "fungi", wet rot or dry rot causes an increase in the loss. Any such increase in the loss will be subject to the terms of this Limited Coverage.

**(5)** The terms of this Limited Coverage do not increase or reduce the coverage provided in **SECTION I - PROPERTY, A. Coverage, 5 Additional Coverages, d. Collapse;** and/or **e. Water Damage, Other Liquids, Powder or Molten Material Damage**.

**(6)** The following applies only if Business Income and/or Extra Expense Coverage applies to the described premises and only if the "suspension" of "operations" satisfies all the terms and conditions of the applicable **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, f. Business Income** and/or **g. Extra Expense**:

**(a)** If the loss which resulted in "fungi", wet rot or dry rot does not in itself necessitate a "suspension" of "operations", but such "suspension" is necessary due to loss or damage to property caused by "fungi", wet rot or dry rot, then our payment under **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, f. Business Income** and/or **g. Extra Expense** is limited to the amount of loss and/or expense sustained in a period of not more than 30 days. The days need not be consecutive.

**(b)** If a covered suspension of "operations" was caused by loss or damage other than "fungi", wet

rot or dry rot, but remediation of "fungi", wet rot, dry rot prolongs the "period of restoration", we will pay for loss and/or expense sustained during the delay (regardless of when such a delay occurs during the "period of restoration"), but such coverage is limited to 30 days. The days need not be consecutive.

**gg. Theft of Telephonic Services**

**(1)** We will pay amounts you are obligated to pay that result from the "theft" of your "telephonic services" when someone who is not an "employee" gains unauthorized access to your "telephonic services" used in your business operations.

**(2)** The most we will pay under this Additional Coverage for acts of "theft" of "telephonic services", regardless of the number of "thefts" of "telephonic services" that you sustain in one policy year is $25,000.

**hh. Computer and Funds Transfer Fraud**

**(1)** We will pay for:

**(a)** Loss resulting directly from a fraudulent:

**(i)** Entry of "electronic data" or "computer program" into; or

**(ii)** Change of "electronic data" or "computer program" within;

any "computer equipment" owned, leased or operated by you, provided the fraudulent entry or fraudulent change causes, with regard to **(1)(a)(i)** and **(1)(a)(ii)** in the above paragraph**:**

**(iii)** "Money", "securities" or "other property" to be transferred, paid or delivered; or

**(iv)** Your account at a "financial institution" to be debited or deleted.

**(b)** Loss resulting directly from a "fraudulent instruction" directing a "financial institution" to debit your "transfer account" and to transfer, pay or deliver "money" or "securities" from that account.

**(2)** As used in **(1)(a)** above, fraudulent entry or fraudulent change of "electronic data" or "computer program" shall include such entry or

change made by an "employee" acting, in good faith, upon a "fraudulent instruction" received from a computer software contractor who has a written agreement with you to design, implement or service "computer programs" for "computer equipment" covered under this Insuring Agreement.

**(3)** The most we will pay per occurrence under this Additional Coverage is $5,000 unless a higher Limit of Insurance is shown in the Schedule of Amended Limits of Insurance.

**(4)** Under this Additional Coverage all loss:

**(a)** Caused by one or more persons; or

**(b)** Involving a single act or series of acts:

is considered one occurrence.

**ii. Tenant Building Insurance - When Your Lease Requires You to Provide Insurance**

**(1)** This Additional Coverage is available only when the Named Insured is a tenant and a Limit of Insurance is shown in the Declarations Page for Business Personal Property.

**(2)** We will pay for direct physical loss of or damage to a building on the described premises owned by your landlord and in your care, custody or control for which you have a written contractual responsibility to insure. The loss or damage must be the result of or caused by a Covered Cause of Loss.

**(3)** Regardless of the number of described buildings affected, the most we will pay per insured location under this Additional Coverage is $25,000 in any one occurrence.

**jj. Tenant Business Personal Property Insurance - When Your Lease Requires You to Provide Insurance**

**(1)** This Additional Coverage is available only when the Named Insured is a tenant and a Limit of Insurance is shown in the Declarations Page for Business Personal Property.

**(2)** Subject to **SECTION I - PROPERTY, E. Property Loss Conditions**, 5. **Loss Payment,** paragraph **d.,** subparagraph **(3)(b),** we will pay for

The
**Hanover**
Insurance Group™

OBCH332709     1304500

direct physical loss of or damage to your landlord's personal property located inside of a building on the described premises and in your care, custody or control for which you have a written contractual responsibility to insure. The loss or damage must be the result of or caused by a Covered Cause of Loss.

**(3)** Regardless of the number of buildings where the landlord's personal property is located, the most we will pay per insured location under this Additional Coverage in any one occurrence is $25,000.

**6. Coverage Extensions**

Except as otherwise provided, the following extensions apply to property located in or on the building described in the Declarations or in the open (or in a vehicle) within 1,000 feet of the described premises:

**a. Newly Acquired or Constructed Property**

**(1) Buildings**

If your policy covers Buildings, you may extend the insurance provided under Building to apply to direct physical loss or damage when such loss or damage is caused by a Covered Cause of Loss to:

**(a)** Your new buildings while being built on the described premises; and

**(b)** Buildings you acquire at premises other than the one described, intended for:

**(i)** Similar use as the building described in the Declarations; or

**(ii)** Used as a warehouse.

**(c)** The most we will pay for loss or damage under this Extension for Newly Acquired or Constructed Buildings is $1,000,000 at each building.

**(2) Business Personal Property**

**(a)** If your policy covers Business Personal Property, you may extend the insurance provided under Business Personal Property to apply to direct physical loss or damage when such loss or damage is caused by a Covered Cause of Loss to:

**(i)** Business Personal Property, including such property that you newly acquire, at any location you acquire; or

**(ii)** Business Personal Property, including such property that you newly acquire, located at your newly constructed or acquired buildings at the location described in the Declarations.

**(iii)** Business Personal Property that you newly acquire, located at the described premises.

**(b)** This Extension does not apply to:

**(i)** Personal property of others that is temporarily in your possession in the course of installing or performing work on such property; or

**(ii)** Personal property of others that is temporarily in your possession in the course of your manufacturing or wholesaling activities.

**(c)** This insurance may not be used to increase your Business Personal Property Limit. It does not apply to personal property you acquire as part of your usual customary business dealings whether or not such acquisition was related to anticipated seasonal demands. Under the terms of this Coverage Form, such property is not considered newly acquired, but falls within the provisions for Business Personal Property.

**(d)** The most we will pay for loss or damage under this Extension is $500,000 at each premises.

**(3) Business Income and Extra Expense**

You may extend the insurance that applies to Business Income and Extra Expense to apply to property at any location you acquire. The most we will pay for loss or damage under this Extension is $250,000 at each premise.

**(4) Period of Coverage**

With respect to insurance provided under this Coverage Extension for Newly Acquired or Constructed

Property, coverage will end when any of the following first occurs:

**(a)** This policy expires;

**(b)** 180 days after you acquire the property or begin construction of that part of the building that would qualify as Covered Property; or

**(c)** You report values to us.

We will charge you additional premium for values reported from the date you acquire the property or begin construction of that part of the building that would qualify as Covered Property.

**b. Personal Property Off Premises**

**(1)** If your policy covers Business Personal Property, you may extend the insurance provided in **SECTION I - PROPERTY, A. Coverage, 1. Covered Property, b. Business Personal Property** to apply to direct physical loss or damage when such loss or damage is caused by a Covered Cause of Loss while:

**(a)** At a location you do not own, lease or operate; or

**(b)** At any fair, trade show or exhibition.

**(2)** The most we will pay for loss or damage under this Extension is $50,000 or the amount shown in the Additional Property Coverage Schedule, whichever is greater.

**(3) Special Personal Property Off Premises Exclusions**

This extension does not apply to property:

**(a)** In or on a vehicle; or

**(b)** In the care, custody or control of your sales representative, unless the property is in such care, custody or control at a fair, trade show or exhibition.

**c. Outdoor Property**

**(1)** You may extend insurance provided by this Coverage Form to apply to direct physical loss or damage to your radio and television antennas (including satellite dishes), trees, shrubs, plants and lawns (other than trees, shrubs or plants which are "stock" or are a part of a vegetated roof) including debris removal

expense, caused by or resulting from any of the following causes of loss:

**(a)** Fire;

**(b)** Lightning;

**(c)** Explosion;

**(d)** Riot or civil commotion;

**(e)** Aircraft;

**(f)** Windstorm; or

**(g)** Ice, snow, sleet and hail.

**(2)** Coverage under this Extension does not apply to property held for sale by you.

**(3)** Regardless of the number of described premises involved, the most we will pay for loss or damage under this Extension, including debris removal expense, is $10,000, but not more than $1,000 for any one tree, shrub or plant.

**d. Personal Effects**

**(1)** If your policy covers Business Personal Property, you may extend the insurance provided in **SECTION I - PROPERTY, A. Coverage, 1. Covered Property, b. Business Personal Property** to apply to direct physical loss or damage to personal effects owned by you, your officers, your partners or "members", your "managers" or your "employees" when such loss or damage is caused by a Covered Cause of Loss.

**(2)** This extension does not apply to:

**(a)** Tools or equipment used in your business; and

**(b)** "Employees" tools and small equipment;

**(3)** The most we will pay for loss or damage under this Extension is $10,000 at each described premises.

**e. Valuable Papers and Records (Other Than Electronic Data)**

**(1)** If your policy covers Business Personal Property, you may extend the insurance provided under **SECTION I - PROPERTY, A. Coverage, 1. Covered Property, b. Business Personal Property** to apply to direct physical loss or damage to "valuable papers and records" that you own, or that are in your care, custody or control caused by or resulting from a Covered Cause

OBCH332709      1304500

of Loss. This Coverage Extension includes the cost to research, replace or restore the lost information on "valuable papers and records" for which duplicates do not exist.

**(2)** The most we will pay under this Coverage Extension for loss or damage to "valuable papers and records" in any one occurrence at the described premises is $25,000, unless a higher Limit of Insurance for "valuable papers and records" is shown in the Additional Property Coverage Schedule.

**(3)** The most we will pay under this Coverage Extension for loss or damage to "valuable papers and records" in any one occurrence not at the described premises is $25,000, unless a higher Limit of Insurance for "valuable papers and records" is shown in the Additional Property Coverage Schedule.

**(4)** This Coverage Extension does not apply to:

**(a)** Property held as samples or for delivery after sale; or

**(b)** Property in storage away from the premises shown in the Declarations;

**(5)** **SECTION I - PROPERTY, B. Exclusions** does not apply to this Coverage Extension except for:

**(a)** Paragraph **1.c. Governmental Action**;

**(b)** Paragraph **1.d. Nuclear Hazard**;

**(c)** Paragraph **1.f. War and Military Action**;

**(d)** Paragraph **2.d. Dishonesty**;

**(e)** Paragraph **2.e. False Pretense**;

**(f)** Paragraph **2.k. Errors or Omissions**; and

**(g)** Paragraph **3.a. Weather Conditions, 3.b. Acts or Decisions** and **3.c. Negligent Work.**

**f.   Accounts Receivable**

**(1)** If your policy covers Business Personal Property, you may extend the insurance provided in **SECTION I - PROPERTY, A. Coverage, 1. Covered Property, b. Business Personal Property** to accounts receivable when such loss or damage

is caused by or results from a Covered Cause of Loss. We will pay:

**(a)** All amounts due from your customers that you are unable to collect;

**(b)** Interest charges on any loan required to offset amounts you are unable to collect pending our payment of these amounts;

**(c)** Collection expenses in excess of your normal collection expenses that are made necessary by loss or damage; and

**(d)** Other reasonable expenses that you incur to re-establish your records of accounts receivable;

that result from direct physical loss or damage by any Covered Cause of Loss to your records of accounts receivable.

**(2)** We will pay under this Coverage Extension for loss or damage in any one occurrence at the described premises. The most we will pay is $25,000 for accounts receivable at the described premises, unless a higher Limit of Insurance for accounts receivable is shown in the Additional Property Coverage Schedule.

**(3)** We will pay under this Coverage Extension for loss or damage in any one occurrence not at the described premises. The most we will pay is $25,000 for accounts receivable not at the described premises.

**(4)** **SECTION I - PROPERTY, B. Exclusions** does not apply to this Coverage Extension except for:

**(a)** Paragraph **1.c. Governmental Action**;

**(b)** Paragraph **1.d. Nuclear Hazard**;

**(c)** Paragraph **1.f. War and Military Action**;

**(d)** Paragraph **2.d. Dishonesty**;

**(e)** Paragraph **2.e. False Pretense**; and

**(f)** Paragraph **3.a. Weather Conditions, 3.b. Acts or Decisions** and **3.c. Negligent Work.**

**(5)** **Accounts Receivable Special Exclusion**

We will not pay for:

**(a)** Loss or damage caused by or resulting from alteration, falsification, concealment or destruction of records of accounts receivable done to conceal the wrongful giving, taking or withholding of "money", "securities" or "other property".

This exclusion applies only to the extent of the wrongful giving, taking or withholding.

**(b)** Loss or damage caused by or resulting from bookkeeping, accounting or billing errors or omissions.

**(c)** Any loss or damage that requires any audit of records or any inventory computation to prove its factual existence.

**g. Key Replacement and Lock Repair**

**(1)** You may extend the insurance provided under this Coverage Form to cover the reasonable and necessary expense you incur due to a covered "theft" for:

**(a)** Replacement of keys if they are stolen;

**(b)** Lock repair; or

**(c)** Rekeying, replacing or reprogramming undamaged locks to accept new keys or entry codes when the building security has been compromised.

**(2)** The most we will pay under this Extension is $1,000. The deductible does not apply to this Extension.

**h. Appurtenant Structures**

**(1)** If your policy covers Buildings, you may extend the insurance provided under Building to apply to direct physical loss or damage to garages, carports, storage buildings and other appurtenant structures, including, but not limited to, swimming pools, spas and the associated equipment within 1,000 feet of the described premises when such loss or damage is caused by or results from a Covered Cause of Loss.

**(2)** The most we will pay for loss or damage under this Extension is $50,000 at each described premises regardless of the number of buildings or structures affected.

**i. Personal Property in Transit**

**(1)** If your policy covers Business Personal Property, you may extend the insurance provided in **SECTION I - PROPERTY, A. Coverage, 1. Covered Property, b. Business Personal Property** to apply to direct physical loss or damage to your property or property of others that is in your care, custody or control while "in transit" when such loss or damage is caused by or results from a Covered Cause of Loss.

**(2)** You may extend the insurance that applies to **SECTION I - PROPERTY, A. Coverage, 1. Covered Property, b. Business Personal Property** to apply to direct physical loss or damage, caused by a Covered Cause of Loss, to outgoing shipments that have been rejected, while in due course of transit back to you or while awaiting return shipment to you.

**(3)** This Extension applies to the property while in:

**(a)** A vehicle owned, leased or operated by you; or

**(b)** The custody of a common carrier or contract carrier.

**(4)** The following in **SECTION I - PROPERTY**, **B. Exclusions**, paragraph **1.** do not apply to this Extension:

**(a)** **b. Earth Movement**; and

**(b)** **g. Water**.

**(5)** The most we will pay for loss or damage under this Coverage Extension is $10,000 unless a higher Limit of Insurance is shown in the Schedule of Amended Limits of Insurance.

**(6)** **Special Personal Property In Transit Exclusions**

This Extension does not apply to:

**(a)** Shipments that belong to others that you are transporting for a fee;

**(b)** Property while waterborne;

**(c)** Salesperson's Samples; or

**(d)** Loss to "perishable goods" resulting from a breakdown of refrigeration equipment on any vehicle owned, leased or operated by you or while in the custody of a common or contract carrier.



OBCH332709     1304500

**j. Inventory and Loss Appraisal**

**(1)** We will pay for all reasonable expenses you incur at our written request to assist us in:

    **(a)** The investigation of a claim;

    **(b)** The determination of the amount of loss, such as taking inventory;

    **(c)** The cost of preparing specific loss documents and other supporting exhibits; or

    **(d)** Expenses you incur include costs charged to you by others, including property managers, acting on your behalf to assist us with items listed in paragraph **(1)** above.

**(2)** Regardless of the number of premises involved, the most we will pay under this Extension is $10,000.

**(3)** The deductible does not apply to these expenses.

**(4) Special Inventory and Loss Appraisal Exclusion**

We will not pay for expenses:

    **(a)** Incurred to perform your duties in the event of a loss under **SECTION I - PROPERTY, E. Property Loss Conditions**;

    **(b)** To prove that loss or damage is covered;

    **(c)** Billed by and payable to independent or public adjusters; attorneys; claims advocates; or any of their affiliated or associated entities;

    **(d)** To prepare claims not covered by this Coverage Form; or

    **(e)** Incurred under any appraisal provisions within the Coverage Form.

**k. Business Personal Property Temporarily in Portable Storage Units**

**(1)** If your policy covers Business Personal Property, you may extend the insurance provided in **SECTION I - PROPERTY, A. Coverage, 1. Covered Property, b. Business Personal Property** to apply to direct physical loss or damage to such property while temporarily stored in a portable storage unit (including a detached trailer) located within 1,000 feet of the buildings or structures described in the Declarations or within 1,000 feet of the described premises, whichever distance is greater when such loss or damage is caused by or results from a Covered Cause of Loss.

**(2)** We will not pay for loss of or damage to Business Personal Property temporarily in portable storage units, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

    **(a)** The portable storage unit first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

    **(b)** The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

**(3)** Coverage under this Extension:

    **(a)** Will end 90 days after the Business Personal Property has been placed in the storage unit;

    **(b)** Does not apply if the storage unit itself has been in use at the described premises for more than 90 consecutive days, even if the Business Personal Property has been stored there for 90 or fewer days as of the time of loss or damage.

**(4)** Under this Extension, the most we will pay for the total of all loss or damage to Business Personal Property is $25,000 unless a higher limit is shown in the Additional Property Coverage Schedule for this Extension regardless of the number of storage units.

**(5)** This Extension does not apply to loss or damage otherwise covered under this Coverage Form or any endorsement to this Coverage Form, and does not apply to loss or damage to the storage unit itself.

**l. Paved Surfaces**

**(1)** If your policy covers Buildings, you may extend the insurance provided under **SECTION I - PROPERTY, A. Coverage, 1. Covered Property, a. Building** to apply to direct physical loss or damage to your paved surfaces, including but not limited to bridges, roadways, walks, patios, and parking lots when such loss or

damage is caused by or results from a Covered Cause of Loss.

**(2)** Regardless of the number of described premises involved, the most we will pay for loss or damage in any one occurrence is $25,000.

**(3)** Payment for loss or damage to this property is included in the applicable Limit of Insurance.

**(4) Special Paved Surfaces Exclusion**

We will not pay for loss or damage caused by tree roots, freezing or thawing.

**m. Underground Pipes**

**(1)** If your policy covers Buildings, you may extend the insurance provided in **SECTION I - PROPERTY, A. Coverage, 1. Covered Property, a. Building** to apply to direct physical loss or damage to underground pipes, flues and drains when such loss or damage is caused by or results from a Covered Cause of Loss.

**(2)** The most we will pay for loss under this Coverage Extension is the applicable Limit of Insurance.

**(3)** Payment under this Additional Coverage is included within the Limit of Insurance.

**(4) Special Underground Pipes Exclusion**

We will not pay for loss or damage caused by tree roots.

**B. Exclusions**

**1.** We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

**a. Ordinance or Law**

**(1)** The enforcement of or compliance with any ordinance or law:

**(a)** Regulating the construction, use or repair of any property; or

**(b)** Requiring the tearing down of any property, including the cost of removing its debris.

**(2)** This exclusion, Ordinance or Law, applies whether the loss results from:

**(a)** An ordinance or law that is enforced even if the property has not been damaged; or

**(b)** The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property or removal of its debris, following a physical loss to that property.

This exclusion does not apply to the Ordinance or Law Additional Coverage.

**b. Earth Movement**

**(1)** Earthquake, including tremors and aftershocks and any earth sinking, rising or shifting related to such event;

**(2)** Landslide, including any earth sinking, rising or shifting related to such event;

**(3)** Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

**(4)** Earth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface.

But if Earth Movement, as described in paragraphs **(1), (2), (3)** and **(4)** above, results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

**(5)** Volcanic eruption, explosion or effusion. But if volcanic eruption, explosion or effusion results in fire, building glass breakage or volcanic action, we will pay for the loss or damage caused by that fire, building glass breakage or volcanic action.

Volcanic action means direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

**(a)** Airborne volcanic blast or airborne shock waves;

**(b)** Ash, dust or particulate matter; or

**(c)** Lava flow.

With respect to coverage for volcanic action as set forth in paragraph **(5),** subparagraphs **(a), (b)** and **(c)** above, all volcanic eruptions that occur within

**The**
**Hanover**
Insurance Group™

OBCH332709          1304500

any 168-hour period will constitute a single occurrence.

Volcanic action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss of or damage to Covered Property.

This exclusion applies regardless of whether or not any of the above, in **SECTION I - PROPERTY, B. Exclusions**, paragraph **1., b Earth Movement**, subparagraphs **(1), (2), (3), (4)** and **(5)**, are caused by an act of nature or is otherwise caused.

**c.** **Governmental Action**

Seizure or destruction of property by order of governmental authority.

But we will pay for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this Coverage Form.

**d.** **Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination, however caused.

But if nuclear reaction or radiation, or radioactive contamination, results in fire, we will pay for the loss or damage caused by that fire.

**e.** **Utility Services**

The failure of power, communication, water or other utility service supplied to the described premises, however caused, if the failure:

**(1)** Originates away from the described premises; or

**(2)** Originates at the described premises, but only if such failure involves equipment used to supply the utility services to the described premises from a source away from the described premises.

Failure of any utility service includes lack of sufficient capacity and reduction in supply.

Loss or damage caused by a surge of power is also excluded, if the surge would not have occurred but for an event causing a failure of power.

But if the failure or surge of power, or the failure of communication, water or other utility service, results in a Covered Cause

of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

Communication services include but are not limited to service relating to Internet access or access to any electronic, cellular or satellite network.

This exclusion does not apply to loss or damage to "computer equipment" and "electronic data" or to **SECTION I - PROPERTY, 5. Additional Coverages, bb. Utility Services**.

**f.** **War and Military Action**

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**g.** **Water**

**(1)** "Flood", surface water, waves (including tidal wave or tsunami), tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge);

**(2)** Mudslide or mudflow;

**(3)** Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump; or related equipment;

**(4)** Water under the ground surface pressing on, or flowing or seeping through:

**(a)** Foundations, walls, floors or paved surfaces;

**(b)** Basements, whether paved or not; or

**(c)** Doors, windows or other openings.

**(5)** Waterborne material carried or otherwise moved by any of the water referred to in paragraphs **(1), (3)** or **(4)** above, or material carried or otherwise moved by mudslide or mudflow.

This exclusion applies regardless of whether any of paragraphs **(1), (2), (3), (4)** and **(5)** above, are caused by an act of nature or is otherwise caused. An example

of a situation to which this exclusion applies is the situation where a dam, levee, seawall or other boundary or containment system fails in whole or in part, for any reason, to contain the water.

But if Water, as described in paragraphs **(1)**, **(2)**, **(3)**, **(4)** and **(5)** above, results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage. If electrical "covered equipment" requires drying out because of paragraphs **(1)**, **(2)**, **(3)**, **(4)** and **(5)** above, we will pay for the direct expenses of such drying out subject to the applicable Limit of Insurance and Deductible for Building or Personal Property, whichever applies.

**h. Fungi, Wet Rot or Dry Rot**

Presence, growth, proliferation, spread or any activity of "fungi", wet rot or dry rot.

But if "fungi", wet rot or dry rot results in any of the "specified causes of loss", we will pay for the loss or damage caused by any of the "specified causes of loss".

This exclusion does not apply:

**(1)** When "fungi", wet rot or dry rot results from fire or lightning; or

**(2)** To the extent that coverage is provided in the **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverage, ff. Limited Coverage for Fungi, Wet Rot or Dry Rot**, with respect to loss or damage by a cause of loss other than fire or lightning.

**i. Virus or Bacteria**

**(1)** Any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

**(2)** However, the exclusion in paragraph **(1)** above, does not apply to loss or damage caused by or resulting from "fungi", wet rot or dry rot. Such loss or damage is addressed in **SECTION I - PROPERTY, B. Exclusions**, paragraph **1., h. Fungi, Wet Rot or Dry Rot**.

**(3)** With respect to any loss or damage subject to the exclusion in paragraph **(1)** above, such exclusion supersedes any exclusion relating to "pollutants".

**SECTION I - PROPERTY, B. Exclusions**, paragraphs **1.a., 1.b., 1.c., 1.d., 1.e., 1.f., 1.g., 1.h. and 1.i.** apply whether or not the loss event results in widespread damage or affects a substantial area.

**2.** We will not pay for loss or damage caused by or resulting from any of the following:

**a. Consequential Losses**

Delay, loss of use or loss of market, however caused.

**b. Smoke, Vapor and Gas**

Smoke, vapor or gas from agricultural smudging or industrial operations.

**c. Frozen Plumbing**

Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing, unless:

**(1)** You do your best to maintain heat in the building or structure; or

**(2)** You drain the equipment and shut off the supply if the heat is not maintained.

**d. Dishonesty**

Dishonest or criminal act by you, any of your partners, "members", officers, managers, employees, directors, trustees, authorized representatives or anyone to whom you entrust the property for any purpose:

**(1)** Acting alone or in collusion with others; or

**(2)** Whether or not occurring during the hours of employment.

This exclusion does not apply to acts of destruction by your employees; but "theft" by employees is not covered.

This exclusion does not apply to coverage that is provided under the Employee Theft Including ERISA Additional Coverage.

**e. False Pretense**

Voluntary parting with any property by you or anyone else to whom you have sold, given or otherwise entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

This exclusion does not apply to the Unauthorized Business Card Use Additional Coverage.

**f. Exposed Property**

Rain, snow, ice or sleet to personal property in the open.

**g. Collapse**

The **Hanover** Insurance Group™

OBCH332709    1304500

**(1)** Collapse, including any of the following conditions of property or any part of the property:

  **(a)** An abrupt falling down or caving in;

  **(b)** Loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in; or

  **(c)** Any cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion as such condition relates to paragraphs **(a)** or **(b)** above.

  But if collapse results in a Covered Cause of Loss at the described premises, we will pay for the loss or damage caused by that Covered Cause of Loss.

**(2)** This Exclusion **g.** does not apply:

  **(a)** To the extent that coverage is provided under **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, d. Collapse**; or

  **(b)** To collapse caused by one or more of the following:

    **(i)** Any of the "specified causes of loss"

    **(ii)** Breakage of building glass;

    **(iii)** Weight of rain that collects on a roof; or

    **(iv)** Weight of people or personal property

**h.  Pollution**

Discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss". But if the discharge, dispersal, seepage, migration, release or escape of "pollutants" results in any of the "specified causes of loss", we will pay for the loss or damage caused by any of the "specified causes of loss".

**i.  Neglect**

Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

**j.  Other Types of Loss**

  **(1)** Wear and tear;

**(2)** Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

**(3)** Smog;

**(4)** Settling, cracking, shrinking or expansion;

**(5)** Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals; or

**(6)** Mechanical breakdown, including rupture or bursting caused by centrifugal force.

This exclusion does not apply with respect to the breakdown of "computer equipment".

This exclusion does not apply to the Equipment Breakdown Additional Coverage.

**(7)** The following causes of loss to personal property:

  **(a)** Dampness or dryness of the atmosphere;

  **(b)** Changes in or extremes of temperature; or

  **(c)** Marring or scratching.

But if an excluded cause of loss that is listed in paragraphs **(1)**, **(2)**, **(3)**, **(4)**, **(5)**, **(6)** and **(7)** above, results in any of the "specified causes of loss", "accident", "electronic circuity impairment" or building glass breakage, we will pay for the loss or damage caused by any of the "specified causes of loss", "accident", "electronic circuity impairment" or building glass breakage.

**k.  Errors or Omissions**

Errors or omissions in:

  **(1)** Programming, processing or storing "electronic data" or in any "computer equipment" operations; or

  **(2)** Processing or copying "valuable papers and records".

However, we will pay for direct physical loss or damage caused by resulting fire, "accident", "electronic circuity impairment" or explosion if these causes of loss would be covered by this Coverage Form.

**l.  Installation, Testing, Repair**

Errors or deficiency in design, installation, testing, maintenance, modification or

repair of your "computer equipment" system including "software".

However, we will pay for direct physical loss or damage caused by resulting fire or explosion if these causes of loss would be covered by this Coverage Form.

**m. Electrical Disturbance**

Electrical or magnetic injury, disturbance or erasure of "electronic data", except as provided for in **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages**, and **6. Coverage Extensions**.

However, we will pay for direct loss or damage caused by lightning.

**n. Artificially Generated Electricity**

Artificially generated electric current including electric arcing, that disturbs electrical devices, appliances or wires except as provided for in **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, u. - Equipment Breakdown**. But, if artificially generated electric current results in fire, we will pay for the loss or damage caused by fire.

**o. Computer Processing Exclusion**

**(1)** Errors or omissions in programming or incorrect instructions to "hardware";

**(2)** Electrical or magnetic damage, disturbance of recordings or erasure of electronic recordings, except as provided under **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, u. Equipment Breakdown**. We will also pay for direct loss caused by lightning;

**(3)** Mechanical breakdown or malfunction, component failure, faulty installation or blowouts; except as provided for under **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, u. Equipment Breakdown**; or

**(4)** Faulty instruction or incorrect usage, including changes in arrangements or parts.

**p. Loss of Warranty**

Loss of warranty or similar future or potential benefit even when following a covered loss or covered damage.

**(1)** Loss of this type does not meet direct physical loss or damage.

**(2)** We agree that reasonable repair or reconditioning measures be pursued to ensure soundness of property after loss or damage:

**(a)** Where proper and adequate report or reconditioning method is debated, you and we agree to follow the usual and customary industry repair and reconditioning practices; or

**(b)** For situations not resolved by paragraph **(a)** above, either party may demand that the matter be resolved through Appraisal as provided for elsewhere in the Coverage Form.

**q. Continuous or Repeated Seepage or Leakage of Water**

Continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

**r. Authorized Access**

Loss resulting from a fraudulent:

**(1)** Entry of "electronic data" or "computer program" into; or

**(2)** Change of "electronic data" or "computer program" within;

any "computer equipment" owned, leased or operated by you by a person or organization with authorized access to that "computer equipment", except when covered under **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, hh. Computer and Funds Transfer Fraud**, paragraph **b.**.

**s. Fraudulent Instructions**

Loss resulting from an "employee" or "financial institution" acting upon any instruction to:

**(1)** Transfer, pay or deliver "money", "securities" or "other property"; or

**(2)** Debit or delete your account; which instruction proves to be fraudulent, except when covered under **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, hh. Computer and Funds Transfer Fraud**, paragraphs **a.(2)** and **b.**.

**3.** We will not pay for loss or damage caused by or resulting from paragraphs **a.**, **b.** and **c.** below. But if an excluded cause of loss that is listed in paragraphs **a.**, **b.** and **c.** below, results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**a. Weather Conditions**

The **Hanover**
Insurance Group™

OBCH332709      1304500

But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in **SECTION I - PROPERTY**, **B. Exclusions**, paragraph **1.** to produce the loss or damage.

**b. Acts or Decisions**

Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

**c. Negligent Work**

Faulty, inadequate or defective:

**(1)** Planning, zoning, development, surveying, siting;

**(2)** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

**(3)** Materials used in repair, construction, renovation or remodeling; or

**(4)** Maintenance;

of part or all of any property on or off the described premises.

**4. Additional Exclusion**

The following applies only to the property specified in this Additional Exclusion:

**Loss or Damage to Products**

We will not pay for loss or damage to any merchandise, goods or other product caused by or resulting from error or omission by any person or entity (including those having possession under an arrangement where work or a portion of the work is outsourced) in any stage of the development, production or use of the product, including planning, testing, processing, packaging, installation, maintenance or repair. This exclusion applies to any effect that compromises the form, substance or quality of the product. But if such error or omission results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**5. Business Income and Extra Expense Exclusions**

We will not pay for:

**a.** Any Extra Expense or increase of Business Income loss caused by or resulting from:

**(1)** Delay in rebuilding, repairing or replacing the property or resuming "operations", due to interference at the location of the rebuilding, repair or replacement by strikers or other persons;

**(2)** "Suspension", lapse or cancellation of any license, lease or contract. But if the "suspension", lapse or cancellation is directly caused by the "suspension" of "operations", we will cover such loss that affects your Business Income during the "period of restoration" in accordance with the terms of **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, f. Business Income, (2) Extended Business Income.**

**(3)** Damage or destruction of "finished stock"; the time required to reproduce "finished stock"; or

**(4)** Any other consequential loss.

Paragraph **5.a.(3)** does not apply to Extra Expense.

**C. Limits of Insurance**

**1.** The most we will pay for loss or damage in any one occurrence is the applicable Limits of Insurance of **SECTION I - PROPERTY** shown in the Declarations.

**2.** The amounts of insurance applicable to the Coverage Extensions and the following Additional Coverages apply in accordance with the terms of such coverages and are in addition to **SECTION I - PROPERTY, C. Limits of Insurance**:

**a.** Fire Department Service Charge;

**b.** Pollutant Clean-Up and Removal;

**c.** Civil Authority;

**d.** Money Orders and Counterfeit Money;

**e.** Forgery or Alteration;

**f.** Ordinance or Law;

**g.** Business Income from Dependent Properties;

**h.** Glass Expenses;

**i.** Fire Protection Equipment Recharge

**j.** Employee Theft;

**k.** Rewards - Arson and Theft;

**l.** Computer Equipment;

**m.** Tenant Signs (Tenants Only);

**n.** Commercial Tools and Small Equipment;

**o.** Installation;

**p.** Fine Arts;

**q.** Sales Representative Samples;

**r.** Leasehold Interest (Tenants Only);

**s.** Unauthorized Business Credit Card Use;

**t.** Deferred Payments;

**u.** Money and Securities;

**v.** Electronic Vandalism;

**w.** Interruption of Computer Operations;

**x.** Theft of Telephonic Services;

**y.** Computer and Funds Transfer Fraud;

**z.** Tenant Building Insurance - When Your Lease Requires You to Provide Insurance; or

**aa.** Tenant Business Personal Property Insurance - When Your Lease Requires You to Provide Insurance.

**3. Building Limit - Increase**

If Covered Property is written on a Replacement Cost basis:

**a.** The Limit of Insurance for Buildings will be revised by changes that occurred in the cost of construction during the preceding policy year.

**b.** The amount of increase will be determined by reports of a recognized valuation method.

**c.** We will inform you of such adjusted values. Upon their acceptance, you agree to pay any additional premium for the adjusted limit. Payment of your renewal premium, which includes the revised Limit of Insurance, shall constitute acceptance.

**d.** We will pay the replacement cost value of the damaged portion of the building at the time of loss, but not more than 125% of the Limit of Insurance for Building if:

**(1)** The amount of any loss covered by this Coverage Form exceeds the Limit of Insurance for Building stated in the Declarations for the damaged Building; and

**(2)** The actual repair or replacement is completed within one year of the date of loss.

**e.** The **Building Limit - Increase** clause will not apply if:

**(1)** You do not accept the adjusted value; or

**(2)** You do not inform us of changes to covered Building:

**(a)** Within sixty (60) days of the date any additions, improvements or enlargements to the building are begun, and

**(b)** When the replacement value of the changes are more than 5%of

the Limit of Insurance for the building.

**4. Business Personal Property Limit - Seasonal Increase**

**a.** The Limit of Insurance for Business Personal Property will increase by 25% to provide for seasonal variations.

**b.** This increase will apply only if the Limit of Insurance shown for Business Personal Property in the Declarations is at least 100% of your average monthly values during the lesser of:

**(1)** The 12 months immediately preceding the date the loss or damage occurs; or

**(2)** The period of time you have been in business as of the date the loss or damage occurs.

**D. Deductibles**

**1.** We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds the Deductible shown in the Declarations. We will then pay the amount of loss or damage in excess of the Deductible up to the applicable limit in **SECTION I - PROPERTY, C. Limit of Insurance**.

**2.** No Deductible applies to the following Additional Property Coverages and Extensions of Coverage:

**a.** Fire Department Service Charge;

**b.** Fire Protection Equipment Recharge;

**c.** Business Income;

**d.** Extra Expense;

**e.** Civil Authority;

**f.** Key Replacement and Lock Repair;

**g.** Deferred Payment;

**h.** Debris Removal;

**i.** Rewards - Arson, Theft and Vandalism;

**j.** ERISA Compliance;

**k.** Preservation of Property;

**l.** Pollutant Clean-Up and Removal;

**m.** Ordinance or Law;

**n.** Leasehold Interest (Tenants Only);

**o.** Unauthorized Business Credit Card Use;

**p.** Business Income from Dependent Properties; and

**q.** Inventory and Loss Appraisal.

**3.** A $250 Deductible applies to the following Coverages:

**a.** Glass - Interior and Exterior; and



OBCH332709     1304500

**b.** Glass Expenses.

**4.** A $500 Deductible applies to all of the Additional Property Coverages and Extensions of Coverage scheduled on the Declarations, except Equipment Breakdown, unless otherwise indicated in paragraphs **2.**, **3.** or **5.** of this section.

**5.** A $1,000 Deductible applies to the following Additional Property Coverages and Extensions of Coverage:

**a.** Employee Theft (except ERISA Compliance);

**b.** Sales Representative Samples;

**c.** Installation;

**d.** Personal Property Off Premises;

**e.** Personal Property In Transit.

**6.** The Deductible shown in the Declarations for the Equipment Breakdown Additional Coverage applies to the Additional Coverage for Equipment Breakdown.

**7.** Each Deductible shall be applied separately, but only to the coverage specified. The total Deductible for all losses in one occurrence will be the highest Deductible amount that applies to that occurrence.

**8.** The Business Income Waiting Period shown on the Declarations Page for the Business Income and Civil Authority Additional Coverages is applicable in addition to a Deductible.

**E. Property Loss Conditions**

**1. Abandonment**

There can be no abandonment of any property to us.

**2. Appraisal**

If you and we disagree on the amount of a covered loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

**3. Duties in the Event of Loss or Damage**

**a.** You must see that the following are done in the event of loss or damage to Covered Property:

**(1)** Notify the police if a law may have been broken.

**(2)** Give us prompt notice of the loss or damage. Include a description of the property involved.

**(3)** As soon as possible, give us a description of how, when and where the loss or damage occurred.

**(4)** Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase **SECTION I - PROPERTY, C. Limits of Insurance.** However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

**(5)** At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

**(6)** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

**(7)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

**(8)** Cooperate with us in the investigation or settlement of the claim.

**(9)** Resume all or part of your "operations" as quickly as possible.

**b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter

relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**4. Legal Action Against Us**

No one may bring a legal action against us under this insurance unless:

**a.** There has been full compliance with all of the terms of this insurance; and

**b.** The action is brought within 2 years after the date on which the direct physical loss or damage occurred. The 2 year limitation also applies to indirect or consequential loss covered under this Coverage Form.

**5. Loss Payment**

In the event of loss or damage covered by this Coverage Form:

**a.** At our option, we will either:

**(1)** Pay the value of lost or damaged property;

**(2)** Pay the cost of repairing or replacing the lost or damaged property;

**(3)** Take all or any part of the property at an agreed or appraised value; or

**(4)** Repair, rebuild or replace the property with other property of like kind and quality, subject to paragraph **d.,** subparagraph **(1)(d)** below.

**b.** We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

**c.** We will not pay you more than your financial interest in the Covered Property.

**d.** We will determine the value of Covered Property as follows:

**(1)** At replacement cost without deduction for depreciation except as provided in paragraphs **(2), (3), (4), (5), (6), (7), (8), (9), (10), (11), (12), (13), (14), (15)** and **(16)** below.

**(a)** You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim on a replacement cost basis if you notify us of your intent to do so within 180 days after the loss or damage.

**(b)** We will not pay on a replacement cost basis for any loss or damage:

**(i)** Until the loss or damaged property is actually repaired or replaced;

**(ii)** Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage; and

**(iii)** Unless the repairs or replacement are completed within 24 months for personal property or for buildings and other real property after the loss or damage, unless extended in writing by us.

However, if the cost to repair or replace a damaged building is $2,500 or less we will determine the value at replacement cost without deduction for depreciation.

**(c)** We will not pay more for loss or damage on a replacement cost basis than the least of the following amounts:

**(i)** The cost to replace, on the same premises, the lost or damaged property with other property:

**1)** Of comparable material and quality; and

**2)** Used for the same purpose; or

**(ii)** The amount that you actually spend that is necessary to repair or replace the lost or damaged property.

If a building is rebuilt at a new location, the recoverable amount is limited to the cost which would have been incurred had the building been built at the original premises.

**(d)** The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property.

**(2)** If the Declarations indicate the Actual Cash Value applies to Building or Personal Property, paragraph **(1)** above does not apply to that property. Instead, we will determine the value of that property at the actual cash value.

**(3)** The following property at actual cash value:

**(a)** Used or second-hand merchandise held in storage or for sale;

**(b)** Property of others. However, if an item(s) of personal property of others is subject to a written contract which governs your liability for loss or damage to that item(s), then valuation of that item(s) will be based on the amount for which you are liable under such contract, but not to exceed the lesser of the replacement cost of the property or the applicable Limit of Insurance;

**(c)** Household contents, except personal property in apartments or rooms furnished by you as landlord;

**(d)** Manuscripts;

**(e)** Works of art, "antiques" or rare articles, including but not limited to, etchings, pictures, statuary, marbles, bronzes, porcelains, glassware and bric-a-brac not otherwise covered in **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverage, x. Fine Arts**; or

**(f)** Commercial Tools and Small Equipment and Contractors Tools and Equipment. This does not apply to your Commercial Tools and Small Equipment permanently installed or exclusively used at the described premises.

**(4)** Glass at the cost of replacement with safety glazing material if required by law.

**(5)** Tenant's Improvements and Betterments at:

**(a)** Replacement cost if you make repairs promptly.

**(b)** A proportion of your original cost if you, as the tenant, do not make repairs promptly. We will determine the proportionate value as follows:

**(i)** Multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

**(ii)** Divide the amount determined in paragraph **(i)** above by the number of days from the installation of improvements to the expiration of the lease.

If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

**(c)** Nothing if others pay for repairs or replacement.

**(6)** "Valuable papers and records" at the cost of restoration or replacement, including the cost of data entry, re-programming, computer consultation services and the "media" on which the data or programs reside. To the extent that the contents of the "valuable papers and records" are not restored, the "valuable papers and records" will be valued at the cost of replacement with blank materials of substantially identical type.

**(7)** "Money" at its face value; and

**(8)** "Securities" at their value at the close of business on the day the loss is "discovered".

**(9)** Accounts Receivable:

**(a)** If you cannot accurately establish the amount of accounts receivable outstanding as of the time of loss or damage:

**(i)** We will determine the total of the average monthly amounts of accounts receivable for the 12 months immediately preceding the month in which the loss or damage occurs; and

**(ii)** We will adjust that total for any normal fluctuations in the amount of accounts receivable for the month in which the loss or damage occurred or for any demonstrated variance from the average for that month.

**(b)** The following will be deducted from the total amount of accounts receivable, regardless of how that amount is established:

**(i)** The amount of the accounts for which there is no loss or damage;

**(ii)** The amount of the accounts that you are able to re-establish or collect;

**(iii)** An amount to allow for probable bad debts that you are normally unable to collect; and

**(iv)** All unearned interest and service charges.

**(10)** "Stock" you have sold but not delivered at the selling price less discounts and expenses you otherwise would have had.

**(11)** "Finished stock" you manufactured at selling price less discounts and expenses you otherwise would have had.

**(12)** Personal Property in Transit (other than "stock" you have sold) at the amount of invoice, including your prepaid or advanced freight charges and other charges which may have accrued or become legally due since the shipment. If you have no invoice, actual cash value will apply.

**(13)** Precious metals, such as gold, silver and platinum, at the average market cost of replacements on the date of loss, or the actual cost of the replacement, if less.

**(14)** "Fine Arts"

We will pay the lesser of:

**(a)** The market value at the time of loss or damage;

**(b)** The reasonable cost of repair or restoration to the condition immediately before the covered loss or damage; or

**(c)** The cost of replacement with substantially identical property.

**e.** Our payment for loss of or damage to personal property of others will only be for the account of the owners of the property. We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

**f.** We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

**g.** We will pay for covered loss or damage within 30 days after we receive a properly completed sworn proof of loss, provided you have complied with all of the terms of this Coverage Form, and

**(1)** We have reached agreement with you on the amount of loss; or

**(2)** An appraisal award has been made.

**h.** In settling covered losses involving a party wall, we will pay a proportion of the loss, to the party wall based on your interest in the wall in proportion to the interest of the owner of the adjoining building. A party wall is a wall that separates and is common to adjoining buildings that are owned by different parties. However, if you elect to repair or replace your building and the owner of the adjoining building elects not to repair or replace that building, we will pay you the full value of the loss to the party wall, subject to all applicable policy provisions including Limits of Insurance, the Valuation and all other provisions of this Loss Payment Condition. Our payment under the provisions of this paragraph does not alter any right of subrogation we may have against any entity, including the owner or insurer of the adjoining building, and does not alter the terms of **SECTION III - COMMON POLICY CONDITIONS, K. Transfer of Rights of Recovery Against Others to Us** in this policy.

**6. Recovered Property**

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, you may retain the property. But then you must return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to **SECTION I - PROPERTY, C the Limits of Insurance**.

**7. Vacancy**

**a. Description of Terms**

**(1)** As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in paragraphs **(a)** and **(b)** below:

**(a)** When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such leased space is vacant when it does not contain

enough business personal property to conduct customary "operations".

**(b)** When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

**(i)** Rented to a lessee or sub-lessee and used by the lessee or sub-lessee to conduct its customary operations; and/or

**(ii)** Used by the building owner to conduct customary operation.

**(2)** Buildings under construction or renovation are not considered vacant when customary "operations" cannot be conducted as a direct result of the construction or renovation.

**b. Vacancy Provisions**

If the building or leased space where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

**(1)** We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:

**(a)** Vandalism;

**(b)** Sprinkler leakage due to freezing, unless you have protected the system against freezing;

**(c)** Building glass breakage;

**(d)** Water damage;

**(e)** "Theft"; or

**(f)** Attempted "theft".

**(2)** With respect to Covered Causes of Loss other than those listed in paragraphs **(a), (b), (c), (d), (e) and (f)** above, we will reduce the amount we would otherwise pay for the loss or damage by 15%.

**8. Pair, Sets or Parts**

For pairs or sets, we will either:

**(a)** Repair or replace any part to restore the value and condition of the pair or set to that immediately before the covered loss or damage; or

**(b)** Pay the difference between the value of the pair or set before and after the covered loss or damage.

**(c)** Covered Property consisting of several parts when complete, we will only pay for the value of the lost or damaged part.

**F. Property General Conditions**

**1. Control of Property**

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Form at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

**2. Mortgageholders**

**a.** The term mortgageholder includes trustee.

**b.** We will pay for covered loss of or damage to buildings or structures to each mortgageholder shown in the Declarations in their order of precedence, as interests may appear.

**c.** The mortgageholder has the right to receive loss payment even if the mortgageholder has started foreclosure or similar action on the building or structure.

**d.** If we deny your claim because of your acts or because you have failed to comply with the terms of this Coverage Form, the mortgageholder will still have the right to receive loss payment if the mortgageholder:

**(1)** Pays any premium due under this policy at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgageholder.

All of the terms of this Coverage Form will then apply directly to the mortgageholder.

**e.** If we pay the mortgageholder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Form:

**(1)** The mortgageholder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

**(2)** The mortgageholder's right to recover the full amount of the

mortgageholder's claim will not be impaired.

At our option, we may pay to the mortgageholder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

**f.** If we cancel this policy, we will give written notice to the mortgageholder at least:

**(1)** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

**g.** If we elect not to renew this policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this policy.

**3. No Benefit to Bailee**

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

**4. Policy Period, Coverage Territory**

Under **SECTION I - PROPERTY:**

**a.** We cover loss or damage commencing:

**(1)** During the policy period shown in the Declarations; and

**(2)** Within the coverage territory or, with respect to property "in transit", while it is between points in the coverage territory.

**b.** The coverage territory is:

**(1)** The United States of America (including its territories and possessions);

**(2)** Puerto Rico; and

**(3)** Canada.

**5. Protective Devices**

**a.** If you received a discount to the property premium of this policy because of the existence of one of the following protective devices, you are required to maintain that protective device. Existence of an applicable protective devices credit can be found on the Declarations Page.

**b.** Protective devices include Automatic Sprinkler Systems including related supervisory services, Automatic Fire Alarms and Central Station Security Alarms.

**c.** We will not pay for loss or damage caused by a Covered Cause of Loss which a device is intended to protect against if you:

**(1)** Knew of any suspension or impairment in any protective device and failed to notify us of that fact; or

**(2)** Failed to maintain any protective device over which you had control in complete working order.

If part of an Automatic Sprinkler System is shut off due to breakage, leakage, freezing conditions or opening of sprinkler heads, notification to us will not be necessary if you can restore full protection within 48 hours.

**6. Increase in Hazard**

We will not pay for loss or damage when there has been a material increase in hazard that is within your knowledge or control. This condition applies to any and all portions of a claim.

**G. Property Definitions**

**1.** "Accident"

**a.** "Accident" means a fortuitous event that causes direct physical damage to "covered equipment". The event must be one of the following:

**(1)** Mechanical breakdown, including rupture or bursting caused by centrifugal force;

**(2)** Artificially generated electrical current, including electric arcing, that disturbs electrical devices, appliances or wires;

**(3)** Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control;

**(4)** Loss or damage to steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment; or

**(5)** Loss or damage to hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment.

**b.** None of the following is an "accident":

**(1)** Defect, programming error, programming limitation, computer virus, malicious code, loss of data, loss of access, loss of use, loss of functionality or other condition within

The
**Hanover**
Insurance Group™

OBCH332709     1304500

or involving data or "media" of any kind; or

**(2)** Misalignment, miscalibration, tripping off-line, or any condition which can be corrected by resetting, tightening, adjusting or cleaning, or by the performance of maintenance.

However, if an "accident" results, we will pay for the resulting loss, damage or expense caused by that "accident".

**2.** "Antique" or "antiques" means an object having value because its:

**a.** Craftsmanship is in the style or fashion of former times; and

**b.** Age is 100 years old or older.

**3.** "Cloud computing services" means professional, on-demand, self-service data storage or data processing services provided through the Internet or over telecommunications lines. This includes services known as IaaS (infrastructure as a service), PaaS (platform as a service), Saas (software as a service) and NaaS (network as a service). This includes business models know as public clouds, community clouds and hybrid clouds. "Cloud computing services" include private clouds if such services are owned and operated by a third party.

**4.** "Computer equipment" means:

**a.** "Hardware" and related component parts. Component parts include but are not limited to modems, routers, printers, keyboards, monitors, and scanners;

**b.** "Software"; and

**c.** "Protection and control equipment".

"Computer equipment" does not mean "Computer equipment" used to operate production-type machinery or equipment.

**5.** "Computer hacking" means an unauthorized intrusion by an individual or group of individuals, whether employed by you or not, into "hardware" or "software", a Web site, or a computer network and that results in but is not limited to:

**a.** Deletion, destruction, generation, or modification of "software";

**b.** Alteration, contamination, corruption, degradation, or destruction of the integrity, quality or performance of "software";

**c.** Observation, scanning, or copying of "electronic data", "programs and applications", and "proprietary programs";

**d.** Damage, destruction, inadequacy, malfunction, degradation, or corruption of any "hardware" or "media" used with "hardware"'; or

**e.** Denial of access to or denial of services from "hardware", "software", computer network, or Web site including related "software".

**6.** "Computer program" means a set of related electronic instructions, which direct the operation and function of a computer or devices connected to it, which enable the computer or devices to receive, process, store or send "electronic data".

**7.** "Computer Virus" means the introduction into "hardware", "software", computer network, or Web site of any malicious, self-replicating electronic data processing code or other code and that is intended to result in, but is not limited to:

**a.** Deletion, destruction, generation, or modification of "software";

**b.** Alteration, contamination, corruption, degradation, or destruction of the integrity, quality, or performance of "software";

**c.** Damage, destruction, inadequacy, malfunction, degradation, or corruption of any "hardware" or "media" used with "hardware"; or

**d.** Denial of access to or denial of services from "hardware", "software", computer network, or Web site including related "software".

**8.** "Counterfeit money" means an imitation of "money" that is intended to deceive and to be taken as genuine.

**9.** "Covered equipment" means Covered Property which, during normal usage, operates under vacuum or pressure, other than the weight of its contents, or that generates, transmits or utilizes energy.

"Covered equipment" may utilize conventional design and technology or new or newly commercialized design and technology.

"Covered equipment" does not include:

**a.** Structure, foundation, cabinet or compartment;

**b.** Insulating or refractory material;

**c.** Sewer piping, buried vessels or piping, or piping forming a part of a sprinkler or fire suppression system;

**d.** Water piping other than boiler feedwater piping, boiler condensate return piping or

water piping forming a part of a refrigerating or air conditioning system;

**e.** Dragline, excavation equipment or construction equipment;

**f.** Vehicle, meaning any machine or apparatus that is used for transportation or moves under its own power or any equipment mounted on a vehicle. Vehicle includes but is not limited to: car, truck, bus, trailer, train, aircraft, watercraft, forklift, bulldozer, tractor or harvester. However, any property that is stationary, permanently installed at a covered location and that receives electrical power from an external power supplier will not be considered a vehicle;

**g.** Equipment manufactured by you for sale or

**h.** Satellite, spacecraft or any equipment mounted on a satellite or spacecraft.

**10.** "Data" means a representation of information, knowledge, facts, concepts or instructions which are being processed or have been processed in "computer equipment".

**11.** "Data records" means files, documents and information in an electronic format and that are stored within "electronic data".

**12.** "Denial of service attack" means the malicious direction or a high volume of worthless inquiries to website or e-mail destinations, effectively denying or limiting legitimate access regardless of whether or not damage to "computer equipment" results.

**13.** "Dependent property" or "dependent properties" means the property owned by others whom you depend upon to:

**a.** Deliver materials or services to you or to others for your account. But services do not mean water supply services, wastewater removal services, communication supply services or power supply services;

**b.** Accept your products or services;

**c.** Manufacture products for delivery to your customers under contract of sale; or

**d.** Attract customers to your business.

The "dependent property" must be located in the coverage territory of this Coverage Form.

**14.** "Discover" or "Discovered" means:

**a.** The time when you first become aware of facts which would cause a reasonable person to assume that a loss of a type covered by this policy has been or will be

incurred, regardless of when the act or acts causing or contributing to such loss occurred, even though the exact amount or details may not be known.

**b.** "Discover" or "Discovered" also means the time when you first receive notice of an actual or potential claim in which it is alleged that you are liable to a third party under circumstances which, if true, would constitute a loss under this policy.

**15.** "Electronic circuitry" means microelectronic components, including but not limited to circuit boards, integrated circuits, computer chips and disk drives.

**16.** "Electronic circuitry impairment"

**a.** "Electronic circuitry impairment" means a fortuitous event involving "electronic circuitry" within "covered equipment" that causes the "covered equipment" to suddenly lose its ability to function as it had been functioning immediately before such event. This definition is subject to the conditions specified in **b.**, **c.** and **d.** below.

**b.** We shall determine that the reasonable and appropriate remedy to restore such "covered equipment's" ability to function is the replacement of one or more "electronic circuitry" components of the "covered equipment."

**c.** The "covered equipment" must be owned or leased by you, or operated under your control.

**d.** None of the following is an "electronic circuitry impairment":

**(1)** Any condition that can be reasonably remedied by:

**(a)** Normal maintenance, including but not limited to replacing expendable parts, recharging batteries or cleaning;

**(b)** Rebooting, reloading or updating software or firmware; or

**(c)** Providing necessary power or supply.

**(2)** Any condition caused by or related to:

**(a)** Incompatibility of the "covered equipment" with any software or equipment installed, introduced or networked within the prior 30 days; or

**(b)** Insufficient size, capability or capacity of the "covered equipment."

The
**Hanover**
Insurance Group™

OBCH332709      1304500

(3) Exposure to adverse environmental conditions, including but not limited to change in temperature or humidity, unless such conditions result in an observable loss of functionality. Loss of warranty shall not be considered an observable loss of functionality.

**17.** "Electronic data" means files, documents, information and "programs and applications" in an electronic format and that are stored on "media".

**18.** "Electronic Vandalism" means "computer hacking", "computer virus" or a "denial of service attack". "Electronic vandalism" does not include the "theft" of any property or services.

**19.** "Employee" or "employees" means:

**a.** Any natural person or persons:

(1) While in your service and for 30 days after termination of service; and

(2) Who you compensate directly by salary, wages or commissions; and

(3) Who you have the right to direct and control while performing services for you;

**b.** Any natural person who is furnished temporarily to you:

(1) To substitute for a permanent employee, as defined in paragraph **a.** above, who is on leave; or

(2) To meet seasonal or short-term workload conditions;

**c.** Any natural person or persons who is leased to you under a written agreement between you and a labor leasing firm, to perform duties related to the conduct of your business, but does not mean a temporary "employee" as defined in paragraph **b.** above;

**d.** Any natural person who is a former "employee", partner, "manager", director or trustee retained as a consultant while performing services for you; or

**e.** Any natural person who is a guest student or intern pursuing studies or duties, excluding, however, any such person while having care and custody or property outside the described premises;

**f.** Any natural person who is:

(1) A trustee, officer, employee, administrator or manager, except an administrator or manager who is an independent contractor, of any "employee benefit plan"; and

(2) A director or trustee of yours while that person is engaged in handling "funds" or "other property" of any "employee benefit plan";

"Employee" does not mean any agent, broker, factor, commission merchant, consignee, independent contractor or representative of the same general character not specified in paragraph **14.** of this section.

**20.** "Financial institution" means:

**a.** With regard to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverage, s. Money and Securities**:

(1) A bank, savings bank, savings and loan association, trust company, credit union or similar depository institution; or

(2) An insurance company.

**b.** **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverage, hh. Computer and Funds Transfer Fraud**:

(1) A bank, savings bank, savings and loan association, trust company, credit union or similar depository institution;

(2) An insurance company; or

(3) A stock brokerage firm or investment company.

**c.** Other than **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, s. Money and Securities** and **hh. Computer and Funds Transfer Fraud,** any financial institution.

**21.** "Fine arts" means paintings, etchings, pictures, tapestries, rare art glass, art glass windows, valuable rugs, statuary, sculptures, "antique" jewelry, bric-a-brac, porcelains and similar property of rarity, historical value or artistic merit.

**22.** "Finished stock" means stock you have manufactured. "Finished stock" also includes whiskey and alcoholic products being aged.

"Finished stock" does not include "stock" you have manufactured that is held for sale on the premises of any retail outlet.

**23.** "Flood" means a general and temporary condition of partial or complete inundation of normally dry land areas due to:

**a.** Surface water or waves, tides, tidal waves, tsunami, overflow of any body of water or their spray, all whether driven by wind or not (including storm surge);

**b.** The unusual or rapid accumulation of runoff of surface waters from any source;

**c.** Mudslides or mudflows which are caused by "flood" water. A mudslide or mudflow involves a river of liquid and flowing mud on the surface of normally dry land areas as when earth is carried by a current of water and deposited along the path of the current.

**d.** The release of water impounded by a dam, levee, dike, seawall or "flood" control device, whether driven by wind or not (including storm surge).

When a "flood" is a continuous or protracted event it will constitute a single "flood" occurrence.

**24.** "Forgery" means the signing of the name of another person or organization with intent to deceive; it does not mean a signature which consists in whole or in part of one's own name signed with or without authority, in any capacity, for any purpose.

**25.** "Fraudulent instruction" means:

**a.** An electronic, telegraphic, cable, teletype, tele facsimile or telephone instruction which purports to have been transmitted by you, but which was in fact fraudulently transmitted by someone else without your knowledge or consent;

**b.** A written instruction (other than those described in **SECTION I - PROPERTY**, **A. Coverage**, **5. Additional Coverages**, **k. Forgery or Alteration**) issued by you, which was forged or altered by someone other than you without your knowledge or consent or which purports to have been issued by you, but was in fact fraudulently issued without your knowledge or consent.

**26.** "Funds" means "money" and "securities".

**27.** "Fungi" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by "fungi".

**28.** "Hardware" means a network of electronic machine components (microprocessors) capable of accepting instructions and information, processing the information according the instructions, and producing desired results. "Hardware" includes but is not limited to:

**a.** Mainframe and mid-range computers and servers;

**b.** Personal computers and workstations;

**c.** Portable electronic devices. Portable electronic devices include laptops, tablets, e-readers, smartphones or other lightweight, hand-held or wearable devices capable of storing, retrieving and processing data; and

**d.** Peripheral data processing equipment, including but not limited to printers, keyboards, monitors, and modems.

"Hardware" does not mean electronic items that are not similar to the items listed in **a.**, **b.**, **c.** and **.d.** above. "Hardware" does not include:

**e.** Diagnostic equipment;

**f.** Electronic items that contain a computer to perform functions other than "hardware"; and

**g.** Peripheral data processing equipment valued more than the "hardware" itself.

**29.** "Hazardous substance" means any substance that is hazardous to health or has been declared to be hazardous to health by a governmental agency.

**30.** "In transit" means in the course of shipment from or to the premises shown in the Declarations. It includes such shipments while temporarily stopped or delayed, incidental to the delivery.

**31.** "Manager" or "managers" means a person or persons serving in a directorial capacity for a limited liability company (LLC).

**32.** "Media" means an instrument that is used with "hardware" and on which "electronic data", "programs and applications", and "proprietary programs" can be recorded or stored. "Media" includes, but is not limited to, films, tapes, cards, discs, drums, cartridges, cells, DVDs, CD-ROMs and other portable data devices.

**33.** "Member" or "Members" means an owner of a limited liability company represented by its membership interest, who also may serve as a "manager".

**34.** "Messenger" means you, or a relative of yours, or any of your partners or "members", or any "employee" while having care and custody of property away from the described premises.

**35.** "Money" means:

**a.** Currency, coins and bank notes in current use and having a face value;

**b.** Traveler's checks and money orders held for sale to the public; and

**c.** In addition, includes:

The **Hanover** Insurance Group™

OBCH332709     1304500

**(1)** For the purposes of **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, p. Employee Theft including ERISA Compliance** and **k. Forgery or Alteration,** deposits in your account at any "financial institution"; and

**(2)** For the purposes of **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverage hh. Computer and Funds Transfer Fraud,** deposits in your account at a "financial institution" as defined in **SECTION I - PROPERTY, G. Property Definitions** , paragraph **19.b..**

**36.** "One equipment breakdown" means: If an initial "accident" or "electronic circuitry impairment" causes other "accidents" or "electronic circuitry impairments," all will be considered "one equipment breakdown." All "accidents" or "electronic circuitry impairments" that are the result of the same "accident" or "electronic circuitry impairment" will be considered "one equipment breakdown."

**37.** "Operations" means your business activities occurring at the described premises.

**38.** "Other property" means tangible property other than "money" and "securities" that has intrinsic value. "Other property" does not include computer programs, "electronic data" or any property specifically excluded under this Coverage Form.

**39.** "Payment processing device" means any electronic device used to process credit, debit or charge card transactions, including but not limited to, digital pen pad devices, PIN pad devices, Automatic Teller Machines (ATMs), credit card processing machines.

**40.** "Payroll expense":

**a.** Means payroll expenses for all your "employees" except:

**(1)** Officers;

**(2)** Executive;

**(3)** Department Managers;

**(4)** "Employees" under contract; and

**(5)** Additional Exemptions shown in the Declarations as:

**(a)** Job classifications; or

**(b)** "Employees".

**b.** Includes:

**(1)** Payroll;

**(2)** Employee Benefits, if directly related to payroll;

**(3)** FICA payments you pay;

**(4)** Union dues you pay; and

**(5)** Workers' Compensation premiums.

**41.** "Period of Restoration"

**a.** Means the period of time that:

**(1)** Begins:

**(a)** After the number of hours shown as the Business Income Waiting Period in the Declarations after the time of direct physical loss or damage for Business Income Coverage; or

**(b)** Immediately after the time of direct physical loss or damage for Extra Expense Coverage;

caused by or resulting from any Covered Cause of Loss at the described premises; and

**(2)** Ends on the earlier of:

**(a)** The date when the property at the described premises should be repaired, rebuilt or replaced (to a condition permitting occupancy) with reasonable speed and similar quality; or

**(b)** The date when business is resumed at a new permanent location; or

**(c)** Exhaustion of the number of consecutive months as shown on the Policy Declarations Page.

**b.** Does not include any increased period required due to the enforcement of any ordinance or law that:

**(1)** Regulates the construction, use or repair, or requires the tearing down of any property; or

**(2)** Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of "pollutants".

The expiration date of this policy will not cut short the "period of restoration".

**42.** "Perishable goods" means personal property:

**a.** Maintained under controlled temperature or humidity conditions for preservation; and

**b.** Susceptible to loss or damage if the controlled temperature or humidity conditions change.

43. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

44. "Programs and applications" means operating programs and applications that you purchase and that are:

   **a.** Stored on "media"; or

   **b.** Pre-installed and stored in "hardware".

   Applications include, but are not limited to, programs for word processing, spreadsheet calculations, and graphic design.

45. "Proprietary programs" means proprietary operating programs and applications that you developed or that you had developed specifically for use in your "operations" and that are:

   **a.** Stored on "media"; or

   **b.** Installed and stored in "hardware".

46. "Protection and control equipment" means:

   **a.** Air conditioning or other cooling equipment used exclusively in the operation of the "hardware";

   **b.** Fire protection equipment used for the protection of the "hardware", including automatic and manual fire suppression equipment and smoke and heat detectors; and

   **c.** Uninterruptible power supply system, line conditioner, and voltage regulator.

47. "Rental Value" means Business Income that consists of:

   **a.** New Income (Net Profit or Loss before income taxes) that would have been earned or incurred as rental income from tenant occupancy of the premises described in the Declarations as furnished and equipped by you, including fair rental value of any portion of the described premises which is occupied by you; and

   **b.** Continuing normal operating expenses incurred in connection with that premises, including:

   **(1)** Payroll; and

   **(2)** The amount of charges which are the legal obligation of the tenant(s) but would otherwise be your obligations.

48. "Securities" means negotiable and non-negotiable instruments or contracts representing either "money" or "other property" and includes:

   **a.** Tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and

   **b.** Evidences of debt issued in connection with credit or charge cards, which cards are not issued by you;

   but does not include "money".

49. "Software" means;

   **a.** "Media";

   **b.** "Electronic Data";

   **c.** "Programs and applications"; and

   **d.** "Proprietary programs".

50. "Specified Causes of Loss" means the following:

   Fire; lightning; explosion, windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

   **a.** Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This cause of loss does not include:

   **(1)** The cost of filling sinkholes; or

   **(2)** Sinking or collapse of land into man-made underground cavities.

   **b.** Falling objects does not include loss of or damage to:

   **(1)** Personal property in the open; or

   **(2)** The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

   **c.** Water damage means

   **(1)** Accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of any part of a system or appliance (other than a sump system including its related equipment and parts) containing water or steam; and

   **(2)** Accidental discharge or leakage of water or waterborne material as the direct result of the breaking apart or cracking of a water or sewer pipe that is located off the described premises and is part of a municipal potable water supply system or municipal

sanitary sewer system, if the breakage or cracking is caused by wear or tear.

But water damage does not include loss or damage otherwise excluded in **SECTION I - PROPERTY, B. Exclusions,** paragraph **1. g. Water**.. Therefore, for example, there is no coverage in the situation in which discharge or leakage of water results from breaking apart of cracking of a pipe which was caused by or related to weather-induced "flood" water, even if wear and tear contributed to the breakage or cracking. As another example, and also in accordance with the terms of the Water Exclusion, there is no coverage for loss or damage caused by or related to weather-induced "flood" water which follows or is exacerbated by pipe breakage or cracking attributable to wear and tear.

To the extent that accidental discharge or leakage of water falls within the criteria set forth in paragraphs **(1)** or **(2)** above of this definition of "specified causes of loss", such water is not subject to the provisions of **SECTION I - PROPERTY, B. Exclusions,** paragraph **1., g. Water**, which preclude coverage for surface water or water under the ground surface.

51. "Stock" means merchandise held in storage or for sale, raw materials and in process or finished goods, including supplies used in their packing or shipping.

52. "Suspension" means:

   **a.** The partial slowdown or complete cessation of your business activities; or

   **b.** Part or all of the described premises is rendered untenantable, if coverage for Business Income applies.

53. "Telephonic services" means use of your:

   **a.** Telephone services;

   **b.** Telephone credit cards; or

   **c.** Telephone access cards.

54. "Theft" means the unlawful taking of property to the deprivation of the Insured.

55. "Transfer account" means an account maintained by you at a financial institution from which you can initiate the transfer, payment or delivery of "money" and "securities" by means of:

   **a.** Electronic, telegraphic, cable, teletype, telefacsimile or telephone instructions communicated directly through an electronic funds transfer system; or

   **b.** Written instructions (other than those described in **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, k. Forgery or Alteration**) establishing the conditions under which such transfers are to be initiated by such financial institution through an electronic funds transfer system.

56. "Valuable papers and records" means:

   **a.** Inscribed, printed or written:

      **(1)** Documents;

      **(2)** Manuscripts; and

      **(3)** Records;

      including abstracts, books, deeds, drawings, films, maps or mortgages;

   **b.** If you are a Printer, Publisher or Graphic Artist by trade, "valuable papers and records" means negatives, positives, artwork, separations, plates, dies, molds, forms, stock manuscripts and other similar property usual to the graphic arts, printing or publishing industry, including those which exist on electronic or magnetic "media", other than prepackaged software programs.

   But "valuable papers and records" does not mean "money" or "securities".

## SECTION II - LIABILITY

### A. Coverages

1. **Business Liability**

   **a.** We will pay those sums the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury", to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" or any offense and settle any claim or "suit" that may result. But:

      **(1)** The amount we will pay for damages is limited as described in **SECTION II - LIABILITY, D - Liability and Medical Expenses Limits of Insurance;** and

      **(2)** Our right and duty to defend end when we have used up the applicable Limit of Insurance in the payment of

judgments, settlements or medical expenses.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under **f. Coverage Extension - Supplementary Payments**.

**b.** This insurance applies:

**(1)** To "bodily injury" and "property damage" only if:

**(a)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(b)** The "bodily injury" or "property damage" occurs during the policy period; and

**(c)** Prior to the policy period, no insured listed under **C. Who Is An Insured**, paragraph **1.** and no "employee" authorized by you to give or receive notice of an "occurrence" or claim knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**(2)** To "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under **C. Who Is An Insured,** paragraph **1.** or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under **C. Who Is An Insured,** Paragraph **1.** or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all or any part of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**f. Coverage Extension - Supplementary Payments**

**(1)** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**(a)** All expenses we incur.

**(b)** Up to $2500 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which Business Liability Coverage for "bodily injury" applies. We do not have to furnish these bonds.

**(c)** The cost of bonds to release attachments, but only for bond amounts within our Limit of Insurance. We do not have to furnish these bonds.

**(d)** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $500 a day because of time off from work.

**(e)** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

**(f)** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the Limit of Insurance, we will not pay any

OBCH332709    1304500

prejudgment interest based on that period of time after the offer.

**(g)** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within our Limit of Insurance.

These payments will not reduce the Limit of Insurance described in **SECTION II - LIABILITY, D. Liability and Medical Expenses Limits of Insurance.**

**(2)** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**(a)** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**(b)** This insurance applies to such liability assumed by the insured;

**(c)** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**(d)** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**(e)** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**(f)** The indemnitee:

**(i)** Agrees in writing to:

**1)** Cooperate with us in the investigation, settlement or defense of the "suit";

**2)** Immediately send us copies of any demands, notices, summonses or

legal papers received in connection with the "suit";

**3)** Notify any other insurer whose coverage is available to the indemnitee; and

**4)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

**(ii)** Provides us with written authorization to:

**1)** Obtain records and other information related to the "suit"; and

**2)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of **SECTION II - LIABILITY, B. Exclusions, 1. Applicable to Business Liability Coverage, b. Contractual Liability,** paragraph **(2)**, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

**(g)** We have used up the applicable Limit of Insurance in the payment of judgments or settlements; or

**(h)** The conditions set forth above, or the terms of the agreement described in Paragraph **(2)(f)** above are no longer met.

**2. Medical Expenses**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(a)** The accident takes place in the "coverage territory" and during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable Limits of Insurance as described in **D. Liability and Medical Expenses Limits of Insurance.**

**c.** We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**B. Exclusions**

**1. Applicable To Business Liability Coverage**

This insurance does not apply to:

**a. Expected or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

**(4)** The supervision, hiring, employment, training or monitoring of others by that insured; or

**(5)** Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in paragraphs **(1)**, **(2)** or **(3)** above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

For the purpose of this exclusion, permitting a person to bring alcoholic beverages on your premises for consumption on your premises, whether or



OBCH332709      1304500

not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation and Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar local, state, federal or foreign law or regulation.

**e. Employer's Liability**

"Bodily Injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

    **(a)** Employment by the insured; or

    **(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of paragraph **(1)** above.

This exclusion applies:

**(3)** Whether the insured may be liable as an employer or in any other capacity; and

**(4)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f. Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

    **(a)** At or from any premises, site or location, which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

        **(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the

building's occupants or their guests;

        **(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

        **(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

    **(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

    **(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

        **(i)** Any insured; or

        **(ii)** Any person or organization for whom you may be legally responsible; or

    **(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

        **(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions

necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

**(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto or Watercraft**

**(1) Unmanned Aircraft**

"Bodily injury", "property damage" or "personal and advertising injury" arising out of the ownership, maintenance, use or entrustment to others of any aircraft that is an "unmanned aircraft". Use includes operation and "loading and unloading".

This paragraph **g. (1)** applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" or the offense which caused the "personal and advertising injury" involved the ownership, maintenance, use or entrustment to others of any aircraft that is an "unmanned aircraft".

This paragraph **g. (1)** does not apply to:

**(a)** The use of another's advertising idea in your "advertisement"; or

**(b)** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**(2) Aircraft (Other Than Unmanned Aircraft), Auto or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft (other than "unmanned aircraft"), "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

The
Hanover
Insurance Group.

OBCH332709          1304500

This paragraph **g. (2)** applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" or the offense which caused the "personal and advertising injury" involved the ownership, maintenance, use or entrustment to others of any aircraft (other than "unmanned aircraft"), "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This paragraph **g. (2)** does not apply to:

**(a)** A watercraft while ashore on premises you own or rent;

**(b)** A watercraft you do not own that is:

  **(i)** Less than 51 feet long; and

  **(ii)** Not being used to carry persons or property for a charge;

**(c)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(d)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft (other than "unmanned-aircraft") or watercraft; or

**(e)** "Bodily injury" or "property damage" arising out of:

  **(i)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance or motor vehicle registration law where it is licensed or principally garaged; or

  **(ii)** The operation of any of the following machinery or equipment:

    **1)** Cherry pickers and similar devices mounted on automobile or truck

chassis and used to raise or lower workers; and

    **2)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well-servicing equipment; or

  **(f)** An aircraft (other than "unmanned aircraft") that is:

    **(i)** Chartered by, loaned to, or hired by you with a paid crew; and

    **(ii)** Not owned by any insured.

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition or stunting activity.

**i. War**

"Bodily injury", "property damage" or "personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by government authority in hindering or defending against any of these.

**j. Professional Services**

"Bodily injury", "property damage", "personal and advertising injury" caused by the rendering of or failure to render any professional service, advice or instruction:

**(1)** By you; or

**(2)** On your behalf; or

**(3)** From whom any of you assumed liability by reason of a contract or agreement,

regardless of whether any such service, advice or instruction is ordinary to any insured's profession.

Professional services include but are not limited to:

**(4)** Legal, accounting or advertising services, notary, title abstract, tax preparation, real estate, stockbroker, publishing, architects or insurance services;

**(5)** Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications;

**(6)** Supervisory, inspection or engineering services;

**(7)** Medical, surgical, dental, x-ray or nursing services treatment, advice or instruction;

**(8)** Any health or therapeutic service treatment, advice or instruction;

**(9)** Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement or personal grooming, including use or exposure to any sun lamp, tanning booth or other similar appliance;

**(10)** Optometry or optical or hearing aid services including the prescribing, preparation, fitting, demonstration or distribution of ophthalmic lenses and similar products or hearing aid devices;

**(11)** Body piercing services;

**(12)** Services in the practice of pharmacy;

**(13)** Management, Human Resource, Testing, Media or Public Relations consulting services.

This exclusion applies even if a claim alleges negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering of or failure to render any professional service.

**k. Damage to Property**

"Property damage" to:

**(1)** Property you own, rent or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractor or subcontractor working directly or indirectly on your behalf is performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate Limit of Insurance applies to **Damage to Premises Rented to You** as described in **SECTION II - LIABILITY, D. Liability and Medical Expenses Limit Of Insurance.**

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products - completed operations hazard".

**l. Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**m. Damage to Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products - completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which



the damage arises was performed on your behalf by a subcontractor.

**n. Damage to Impaired Property or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**o. Recall of Products, Work or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**p. Aircraft Products, Grounding and Testing**

**(1)** "Aircraft products " or reliance upon any representation or warranty made with such product;

**(2)** The "grounding" of any aircraft; or

**(3)** The "testing" of any aircraft.

For purposes of this Exclusion, the following definitions apply:

**(4)** "Aircraft Products" means:

**(a)** Aircraft, including but not limited to missiles, spacecraft, or any other aircraft goods or products you manufacture, sell, handle or distribute;

**(b)** Aircraft and any ground support or control equipment used in connection therewith;

**(c)** Any product provided by the insured and installed or used in connection with any aircraft;

**(d)** Any tooling used in respect to any aircraft;

**(e)** Training and navigational aids, instructions, manuals, blueprints, engineering or other data in connection with any aircraft;

**(f)** Any advice, service or labor supplied with any aircraft; or

**(g)** Services you or others trading under your name provide or recommend for use in the manufacture, repair, operation, maintenance or use of any aircraft.

**(5)** "Grounding" means the withdrawal of one or more aircraft from flight operations or the imposition of speed, passenger or load restrictions on such aircraft, due to the existence of or alleged or suspected existence of any defect, fault or condition:

**(a)** In such aircraft or any part sold, handled or distributed by you or that is manufactured, assembled or processed by any other person or organization according to your specifications, plans, suggestions, orders or drawings; or

**(b)** With tools, machinery or other equipment furnished to such persons or organizations by you;

whether such withdrawn aircraft are owned or operated by the same or different persons or organizations.

"Grounding" shall be deemed to commence on the date of an "occurrence" which discloses the necessity of "grounding" or on the date an aircraft is first withdrawn from service because of such condition, whichever comes first.

**(6)** "Testing" means examination, observation, evaluation or measuring of the performance of "aircraft products", while either in the air or on the ground.

**q. Distribution of Material in Violation of Statutes**

"Bodily injury", "property damage" or "personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

**(4)** Any other laws, statutes ordinances or regulations, that address, prohibit, or limit the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

**r.** **Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

Damages arising out of:

**(1)** Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

**(2)** The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in paragraphs **(1)** or **(2)** above.

However, unless paragraph **(1)** above applies, this exclusion does not apply to damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing

devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

Exclusions **c., d., e., g., h.,** and **k., l., m., n.** and **o.** above do not apply to damage to premises while rented to you or temporarily occupied by you with permission of the owner. A separate Damage to Premises Rented to You Limit of Insurance applies to this coverage as described in **SECTION II - LIABILITY, D. Liability and Medical Expenses Limits of Insurance.**

**2.** **Additional Exclusions Applicable Only to "Personal and Advertising Injury"**

This insurance does not apply to:

**a.** **Knowing Violation of Rights of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b.** **Material Published With Knowledge of Falsity**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

**c.** **Material Published Prior to Policy Period**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

**d.** **Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e.** **Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.



OBCH332709          1304500

**f. Breach of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality or Performance of Goods-Failure to Conform to Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**i. Insureds in Media and Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of web-sites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to **F. Liability and Medical Expenses Definitions, 15. "Personal and Advertising Injury"**, paragraphs **a.**, **b.** and **c.**

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself considered the business of advertising, broadcasting, publishing or telecasting.

**j. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**k. Pollution-Related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean-up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**l. Electronic Chatrooms or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns or over which the insured exercises control.

**m. Infringement of Copyright, Patent, Trademark or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**n. Unauthorized Use of Another's Name of Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatags, or any other similar tactics to mislead another's potential customers.

**3. Additional Exclusions Applicable to Medical Expenses Coverage Only**

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury on Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers' Compensation and Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for

the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletic Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports or athletic contests.

**f. Products-Completed Operations Hazard**

Included within the "products - completed operations hazard".

**g. Otherwise Excluded**

Otherwise Excluded under **SECTION II - LIABILITY, B. Exclusions, 1. Applicable To Business Liability Coverage.**

**4. Additional Exclusions Applicable To Both Business Liability Coverage and Medical Expenses Coverage:**

**Nuclear Energy Liability Exclusion**

This insurance does not apply:

**(1)** Under **Business Liability Coverage**, to "bodily injury" or "property damage":

**(a)** With respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by the Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

**(b)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which:

**(i)** Any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof; or

**(ii)** The insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**(2)** Under **Medical Expenses Coverage,** to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

**(3)** Under **Business Liability Coverage**, to "bodily injury" or "property damage" resulting from the "hazardous properties" of the "nuclear material"; if:

**(a)** The "nuclear material":

**(i)** Is at any "nuclear facility" owned by, or operated by or on behalf of, an insured; or

**(ii)** Has been discharged or dispersed therefrom;

**(b)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

**(c)** The "bodily injury" or "property damage" arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility"; but if such facility is located within the United States of America, its territories or possessions or Canada, this Exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property threat.

**(4)** As used in this exclusion:

**(a)** "By-product material" has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof;

**(b)** "Hazardous properties" include radioactive, toxic or explosive properties;

**(c)** "Nuclear facility" means:

**(i)** Any "nuclear reactor";

**(ii)** Any equipment or device designed or used for:

**1)** Separating the isotopes of uranium or plutonium;

**2)** Processing or utilizing "spent fuel"; or

**3)** Handling, processing or packaging "waste";

**(iii)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the

custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(iv)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

**(d)** "Nuclear material" means "source material", "special nuclear material" or "by-product material";

**(e)** "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

**(f)** "Property damage" includes all forms of radioactive contamination of property.

**(g)** "Source material" has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof;

**(h)** "Special nuclear material" has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof;

**(i)** "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

**(j)** "Waste" means any waste material:

**(i)** Containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content; and

**(ii)** Resulting from the operation by any person or organization of any "nuclear facility" included under paragraphs **(i)** and **(ii)** of the definition of "nuclear facility".

## C. Who Is An Insured

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**2.** Each of the following is also an insured:

**a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business ;

**(b)** To the spouse, child, parent, brother or sister of that co-

"employee" as a consequence of paragraph **(1) (a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in paragraphs **(1)(a)** or **(1)(b);** or

**(d)** Arising out of his or her providing or failing to provide professional services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by; or

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee" or "volunteer worker") or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this policy.

**3.** Any organization you newly acquire or form, acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier; and

**b.** Business Liability Coverage does not apply to:

**(1)** "Bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**(2)** "Personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**D. Liability and Medical Expenses Limits of Insurance**

**1.** The Limits of Insurance under **SECTION II - LIABILITY** shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** Subject to the Aggregate Limit identified in paragraph **5.** below, the most we will pay for the sum of all damages because of all:

**a.** "Bodily injury", "property damage" and medical expenses arising out of any one "occurrence"; and

**b.** "Personal and advertising injury" sustained by any one person or organization;

is the Liability And Medical Expenses Limit shown in the Declarations.

**3.** Subject to the Liability And Medical Expenses Limit, the most we will pay for all medical expenses because of "bodily injury" sustained by any one person is the Medical Expenses Limit shown in the Declarations.

**4.** The Damage to Premises Rented to You Limit shown in the Declarations is the most we will pay for damages because of "property damage" to any one premises while rented to you, or temporarily occupied by you with permission of the owner.

**5. Aggregate Limits**

**a.** The most we will pay for:

**(1)** All "bodily injury" and "property damage" that is included in the "products-completed operations hazard" is twice the Liability And Medical Expenses Limit.

**(2)** All:

**(a)** "Bodily injury" and "property damage" except damages because of "bodily injury" and



"property damage" included in the "products-completed operations hazard";

**(b)** Plus medical expenses;

**(c)** Plus all "personal and advertising injury" caused by offenses committed;

is twice the Liability And Medical Expenses Limit.

**b.** The Aggregate Limits of Insurance apply separately to each of your "locations" owned by or rented to you. "Location" means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

**6.** The Limits of Insurance of **SECTION II - LIABILITY** apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**E. Liability and Medical Expenses General Conditions**

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties in the Event of Occurrence, Offense, Claim or Suit**

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

**(1)** How, when and where the "occurrence" or offense took place;

**(2)** The names and addresses of any injured persons and witnesses; and

**(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation, or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization that may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this policy unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable Limit of Insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Separation of Insureds**

Except with respect to the Limits of Insurance under **SECTION II - LIABILITY,** and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

 Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**F. Liability and Medical Expenses Definitions**

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

   **a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

   **b.** Regarding websites, only that part of a website that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

2. "Auto" means:

   **a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

   **b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

   However, "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time. "Bodily injury" includes mental anguish or other mental injury resulting from "bodily injury".

4. "Coverage territory" means:

   **a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

   **b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

   **c.** All other parts of the world if the injury or damage arises out of:

      **(1)** Goods or products made or sold by you in the territory described in paragraph **a.** above;

      **(2)** The activities of a person whose home is in the territory described in paragraph **a.** above, but is away for a short time on your business; or

      **(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

   provided the insured's responsibility to pay damages is determined in a "suit" on the merits in the territory described in paragraph **a.** above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   **a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   **b.** You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work", or your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

   **a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   **b.** A sidetrack agreement;

   **c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   **d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   **e.** An elevator maintenance agreement;

   **f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization.

The **Hanover** Insurance Group™

OBCH332709          1304500

**Tort liability** means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road beds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in paragraph **(2)** above and supervisory, inspection or engineering services.

**10.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**11.** "Loading or unloading" means the handling of property:

**a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

**b.** While it is in or on an aircraft, watercraft or "auto"; or

**c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**12.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, on which are permanently mounted:

**(1)** Power cranes, shovels, loaders, diggers or drills; or

**(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in paragraphs **a.**, **b.**, **c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in paragraphs **a.**, **b.**, **c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

**(a)** Snow removal;

**(b)** Road maintenance, but not construction or resurfacing; or

**(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility

law or other motor vehicle insurance law in the state where they are licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products - completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

**(a)** When all of the work called for in your contract has been completed.

**(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

**(c)** When that part of the work done at the job site has been put to its intended use by any other person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

The "bodily injury" or "property damage" must occur away from premises you own or rent, unless your business includes the selling, handling or distribution of "your product" for consumption on premises you own or rent.

**b.** Does not include "bodily injury" or "property damage" arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured; or

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials.

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

   **a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

   **b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Unmanned aircraft" means an aircraft that is not:

   **a.** Designed;

   **b.** Manufactured; or

   **c.** Modified after manufacture;

   to be controlled directly by a person from within or on the aircraft.

21. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

22. "Your product":

   **a.** Means:

      **(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

         **(a)** You;

         **(b)** Others trading under your name; or

         **(c)** A person or organization whose business or assets you have acquired; and

      **(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

   **b.** Includes:

      **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

      **(2)** The providing of or failure to provide warnings or instructions.

   **c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

23. "Your work":

   **a.** Means:

      **(1)** Work or operations performed by you or on your behalf; and

      **(2)** Materials, parts or equipment furnished in connection with such work or operations.

   **b.** Includes:

      **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

      **(2)** The providing of or failure to provide warnings or instructions.

**SECTION III - COMMON POLICY CONDITIONS (APPLICABLE TO SECTION I - PROPERTY AND SECTION II - LIABILITY)**

**A. Cancellation**

   **1.** The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

   **2.** We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   **a.** 5 days before the effective date of cancellation if any one of the following conditions exists at any building that is Covered Property in this policy:

      **(1)** The building has been vacant or unoccupied 60 or more consecutive days. This does not apply to:

         **(a)** Seasonal unoccupancy; or

         **(b)** Buildings in the course of construction, renovation or addition.

         Buildings with 65% or more of the rental units or floor area vacant or unoccupied are considered unoccupied under this provision.

      **(2)** After damage by a covered cause of loss, permanent repairs to the building:

         **(a)** Have not started, and

         **(b)** Have not been contracted for,

         within 30 days of initial payment of loss.

**(3)** The building has:

**(a)** An outstanding order to vacate;

**(b)** An outstanding demolition order; or

**(c)** Been declared unsafe by governmental authority.

**(4)** Fixed and salvageable items have been or are being removed from the building and are not being replaced. This does not apply to such removal that is necessary or incidental to any renovation or remodeling.

**(5)** Failure to:

**(a)** Furnish necessary heat, water, sewer service or electricity for 30 consecutive days or more, except during a period of seasonal unoccupancy; or

**(b)** Pay property taxes that are owed and have been outstanding for more than one year following the date due, except that this provision will not apply where you are in a bona fide dispute with the taxing authority regarding payment of such taxes.

**b.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium.

**c.** 30 days before the effective date of cancellation if we cancel for any other reason.

**3.** We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

**4.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

**5.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

**6.** If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Concealment, Misrepresentation or Fraud**

This policy is void in any case of fraud by you as it relates to this policy at any time. It is also void if you or any other insured, at any time, intentionally conceals or misrepresents a material fact concerning:

**1.** This policy;

**2.** The Covered Property;

**3.** Your interest in the Covered Property; or

**4.** A claim under this policy.

**D. Examination of Your Books and Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward. We have the right to make copies of these books and records.

**E. Inspections and Surveys**

**1.** We have the right but not the duty to:

**a.** Make inspections and surveys at any time;

**b.** Give you reports on the conditions we find; and

**c.** Recommend changes.

**2.** We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. We do not warrant that conditions:

**a.** Are safe and healthful; or

**b.** Comply with laws, regulations, codes or standards.

**3.** Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

**4.** Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**F. Insurance Under Two or More Coverages**

If two or more of this policy's coverages apply to the same loss or damage, you may choose only one of these coverages to apply to that loss.

**The Hanover**
Insurance Group™

OBCH332709     1304500

1. **SECTION I - PROPERTY**, if two or more of this coverage part's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

2. **SECTION II - LIABILITY**, it is our stated intent that the various Coverage Parts, forms, endorsements or policies issued to the named insured by us, or any company affiliated with us, do not provide any duplication or overlap of coverage for the same claim, "suit", "occurrence", offense, accident, "wrongful act" or loss. We will not pay more than the actual amount of the loss or damage.

   If this Coverage Part and any other Coverage Part, form, endorsement or policy issued to the named insured by us, or any company affiliated with us, apply to the same claim, "suit", occurrence, offense, accident, "wrongful act" or loss, the maximum Limit of Insurance under all such Coverage Parts, forms, endorsements or policies combined shall not exceed the highest applicable Limit of Insurance under any one Coverage Part, form, endorsement or policy.

   This condition does not apply to any Excess or Umbrella Policy issued by us specifically to apply as excess insurance over this policy.

**G. Liberalization**

If we adopt any revision that would broaden the coverage under this policy without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this policy.

**H. Other Insurance**

1. **SECTION I - PROPERTY**

   If there is other insurance covering the same loss or damage, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But, we will not pay more than the applicable Limit of Insurance of **SECTION I - PROPERTY.**

2. **SECTION II - LIABILITY**

   If other valid and collectible insurance is available to the insured for a loss we cover under **SECTION II - LIABILITY**, our obligations are limited as follows:

   **a. Primary Insurance**

   This insurance is primary except when paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in paragraph **c.** below.

However, if you agree in a written contract, written agreement, or written permit that the insurance provided to any person or organization included as an Additional Insured under this Coverage Part is primary and non-contributory, we will not seek contribution from any other insurance available to that Additional Insured which covers the Additional Insured as a Named Insured except:

**(1)** For the sole negligence of the Additional Insured; or

**(2)** When the Additional Insured is an Additional Insured under another liability policy.

**b. Excess Insurance**

This insurance is excess over:

**(1)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

   **(a)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

   **(b)** That is Property Insurance for premises rented to you or temporarily occupied by you with permission of the owner;

   **(c)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

   **(d)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to **SECTION II - LIABILITY, Exclusion g. Aircraft, Auto or Watercraft**; and

**(2)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under **SECTION II - LIABILITY** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the

insured's rights against all those other insurers.

**c.** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(1)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(2)** The total of all deductible and self-insured amounts under all that other insurance.

**d.** We will share the remaining loss, if any, with any other insurance that is not described in this provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations for this Coverage.

**e. Method of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable Limit of Insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable Limit of Insurance to the total applicable limits of insurance of all insurers.

**f.** When this insurance is excess, we will have no duty under Business Liability Coverage to defend any claim or "suit" that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so; but we will be entitled to the insured's rights against all those other insurers.

**I. Premiums**

**1.** The first Named Insured shown in the Declarations:

**a.** Is responsible for the payment of all premiums; and

**b.** Will be the payee for any return premiums we pay.

**2.** The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

**3.** With our consent, you may continue this policy in force by paying a continuation premium for each successive one-year period. The premium must be:

**a.** Paid to us prior to the anniversary date; and

**b.** Determined in accordance with paragraph **2.** above.

Our forms then in effect will apply. If you do not pay the continuation premium, this policy will expire on the first anniversary date that we have not received the premium.

**4.** Undeclared exposures or change in your business operation, acquisition or use of locations may occur during the policy period that is not shown in the Declarations. If so, we may require an additional premium. That premium will be determined in accordance with our rates and rules then in effect.

**J. Premium Audit**

**1.** This policy is subject to audit if a premium designated as an advance premium is shown in the Declarations. We will compute the final premium due when we determine your actual exposures.

**2.** Premium shown in this policy as advance premium is a deposit premium only. At the close of each audit period, we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**3.** The first Named Insured must keep records of the information we need for premium computation and send us copies at such times as we may request.

**K. Transfer of Rights of Recovery Against Others to Us**

**1.** Applicable to **SECTION I - PROPERTY** Coverage:

If any person or organization to or for whom we make payment under this policy has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

**The Hanover**
Insurance Group™

OBCH332709       1304500

**a.** Prior to a loss to your Covered Property.

**b.** After a loss to your Covered Property only if, at time of loss, that party is one of the following:

**(1)** Someone insured by this insurance;

**(2)** A business firm:

**(a)** Owned or controlled by you; or

**(b)** That owns or controls you; or

**(3)** Your tenant.

You may also accept the usual bills of lading or shipping receipts limiting the liability of carriers.

This will not restrict your insurance.

**2.** Applicable to **SECTION II - LIABILITY** Coverage:

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair such rights. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

We waive any right of recovery we may have against any person or organization with whom you have a written contract, permit or agreement to waive any rights of recovery against such person or organization because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a contract with that person or organization and included in the "products-completed operations hazard".

This condition does not apply to Medical Expenses Coverage.

**L.** **Transfer of Your Rights and Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured. If you die, your rights and duties will be transferred to your legal representative but only while that legal representative is acting within the scope of their duties as your legal representative. Until your legal representative is appointed, anyone with proper temporary custody of your property will have your rights and duties but only with respect to that property.



OBCH332709     1304500

THE ONLY SIGNATURES APPLICABLE TO THIS POLICY ARE THOSE REPRESENTING THE COMPANY NAMED ON THE FIRST PAGE OF THE DECLARATIONS.

**In Witness Whereof,** this company has caused this policy to be signed by its President and Secretary and countersigned on the declarations page, where required, by a duly authorized agent of the company.

John C. Roche
President

Charles Frederick Cronin
Secretary

The **Hanover**
Insurance Group™

OBCH332709      1304500

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# HIRED AUTO AND NON-OWNED AUTO LIABILITY

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**SCHEDULE**

| Coverage | Additional Premium |
|---|---|
| **A.  Hired Auto Liability** | $ ████████ |
| **B.  Non-owned Auto Liability** | $ ████████ |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. ||

**A.** Insurance is provided only for those coverages for which a specific premium charge is shown in the Declarations or in the Schedule.

  **1.  Hired Auto Liability**

  The insurance provided under Paragraph **A.1. Business Liability** in **Section II - Liability** applies to "bodily injury" or "property damage" arising out of the maintenance or use of a "hired auto" by you or your "employees" in the course of your business.

  **2.  Non-owned Auto Liability**

  The insurance provided under Paragraph **A.1. Business Liability** in **Section II - Liability** applies to "bodily injury" or "property damage" arising out of the use of any "non-owned auto" in your business by any person.

**B.** For insurance provided by this endorsement only:

  **1.** The exclusions under Paragraph **B.1. Applicable To Business Liability Coverage** in **Section II - Liability,** other than Exclusions **a., b., d., f.** and **i.** and the **Nuclear Energy Liability Exclusion,** are deleted and replaced by the following:

    **a.** "Bodily injury" to:

      **(1)** An "employee" of the insured arising out of and in the course of:

        **(a)** Employment by the insured; or

        **(b)** Performing duties related to the conduct of the insured's business; or

      **(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

    This exclusion applies:

      **(1)** Whether the insured may be liable as an employer or in any other capacity; and

      **(2)** To any obligation to share damages with or repay someone else who must pay damages because of injury.

    This exclusion does not apply to:

      **(1)** Liability assumed by the insured under an "insured contract"; or

      **(2)** "Bodily injury" arising out of and in the course of domestic employment by the insured unless benefits for such injury are in whole or in part either payable or required to be provided under any workers' compensation law.

    **b.** "Property damage" to:

      **(1)** Property owned or being transported by, or rented or loaned to the insured; or

      **(2)** Property in the care, custody or control of the insured.

Copyright, Insurance Services Office, Inc., 2009

**2.** Paragraph **C. Who Is An Insured** in **Section II - Liability** is replaced by the following:

**1.** Each of the following is an insured under this endorsement to the extent set forth below:

**a.** You;

**b.** Any other person using a "hired auto" with your permission;

**c.** For a "non-owned auto":

**(1)** Any partner or "executive officer" of yours; or

**(2)** Any "employee" of yours;

but only while such "non-owned auto" is being used in your business; and

**d.** Any other person or organization, but only for their liability because of acts or omissions of an insured under **a., b.** or **c.** above.

**2.** None of the following is an insured:

**a.** Any person engaged in the business of his or her employer for "bodily injury" to any co-"employee" of such person injured in the course of employment, or to the spouse, child, parent, brother or sister of that co-"employee" as a consequence of such "bodily injury", or for any obligation to share damages with or repay someone else who must pay damages because of the injury;

**b.** Any partner or "executive officer" for any "auto" owned by such partner or officer or a member of his or her household;

**c.** Any person while employed in or otherwise engaged in duties in connection with an "auto business", other than an "auto business" you operate;

**d.** The owner or lessee (of whom you are a sublessee) of a "hired auto" or the owner of a "non-owned auto" or any agent or "employee" of any such owner or lessee; or

**e.** Any person or organization for the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

**C.** For the purposes of this endorsement only, Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions** is replaced by the following:

This insurance is excess over any primary insurance covering the "hired auto" or "non-owned auto".

**D.** The following additional definitions apply:

**1.** "Auto business" means the business or occupation of selling, repairing, servicing, storing or parking "autos".

**2.** "Hired auto" means any "auto" you lease, hire, rent or borrow. This does not include any "auto" you lease, hire, rent or borrow from any of your "employees", your partners or your "executive officers" or members of their households.

**3.** "Non-owned auto" means any "auto" you do not own, lease, hire, rent or borrow which is used in connection with your business. This includes "autos" owned by your "employees", your partners or your "executive officers", or members of their households, but only while used in your business or your personal affairs.

Copyright, Insurance Services Office, Inc., 2009



OBCH332709    1304500

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# DATA BREACH COVERAGE FORM

Various provisions in this Coverage Form restrict coverage. Read the entire Coverage Form carefully to determine rights, duties and what is and is not covered.

Throughout this coverage form the words "we", "us" and "our" refer to the Company providing this insurance. The words "you" and "your" refer to the Named Insured shown in the Declarations. Other words and phrases that appear in quotation marks have special meaning. Refer to **SECTION F - DEFINITIONS.**

| SCHEDULE | | |
|---|---|---|
| Data Breach Coverage Aggregate Limit of Insurance | $ | 10,000 |
| Data Breach Expense Coverages Aggregate Sublimit of Insurance | $ | 10,000 |
| Additional Expense Coverages Aggregate Sublimit of Insurance | $ | 10,000 |
| Data Breach Coverage Deductible | $ | 1,000 |
| Cyber Business Interruption Waiting Period Deductible | | 24    Hours |
| Premium: | $ | ■ |

## SECTION A - COVERAGES

We will provide Data Breach Services, Data Breach Expense Coverages and Additional Expense Coverages as described below if you have a "data breach" that:

**a.** Is discovered during the "policy period" of this Data Breach Coverage Form; and

**b.** Is reported to us within 30 days of your discovery of the "data breach".

**1. Data Breach Services, Data Breach Expense Coverages, Additional Expense Coverages**

**a. Data Breach Services**

**(1) Consulting Services**

If you contact our Designated Service Provider, they will provide Consulting Services to assist you with:

**(a)** Notification requirements pursuant to "breach notice laws";

**(b)** Drafting your notification letters; and

**(c)** Media interface and press release drafting.

**(2) Help Line**

Provide a toll-free telephone line for "potentially-identified persons" with questions about the "data breach".

**(3) Fraud Alert**

A "potentially-identified person" who contacts our Designated Service Provider can place a Fraud Alert on his or her credit file(s) with the main credit bureaus warning potential credit grantors to check with the "potentially-identified person" before extending credit in his or her name or on his or her behalf.

**(4) Identity Restoration Case Management**

An "identified person" who contacts our Designated Service Provider will be assisted by an identity restoration professional to help to correct his or her credit and other records and to restore control over his or her personal identity.

These Data Breach Services will be provided by our Designated Service Provider, as described in Paragraphs **15.** and **16.** of **Section E. Conditions,** for a period of one year from the date the Data Breach Services are initiated.

Data Breach Services are only available if the jurisdiction or country where the "potentially-identified person" resides maintains "breach notice law" and, in the case of Fraud Alert, an operative credit monitoring service.

**b. Data Breach Expense Coverages**

We will pay your reasonable and necessary expenses incurred for the following Covered Expenses up to the limits of insurance described in **Section C - Limits of Insurance:**

**(1) Notification to Potentially-Identified Persons** - expenses to provide

notification of the "data breach" to "potentially-identified persons":

**(a)** As required by applicable "breach notice law"; or

**(b)** If reasonably necessary to maintain your business.

Covered expenses include the printing, postage and handling of notification letters or other means of disclosing the breach to "potentially-identified persons".

**(2) Forensic Analysis** - expenses to assess:

**(a)** The severity of the "data breach";

**(b)** The nature and extent of the "data breach";

Forensic Analysis expenses do not include the cost of restoration.

**(3) Proactive Monitoring Services Expense Coverage -** Expenses for "proactive monitoring services" provided to "potentially-identified persons" in jurisdictions or countries with operative credit monitoring services as provided through our Designated Service Provider.

Under this coverage we will only pay for expenses that you incur through our Designated Service Provider.

Services provided for Covered Expenses provided in **b.(1), b.(2)** and **b.(3)** above must be approved by us as described in **SECTION E - CONDITIONS,** Paragraph **15. Service Providers.**

**(4) Breach Restoration Expenses**

We will pay "Breach Restoration Expenses" directly resulting from a "data breach" which is first discovered during the "policy period" and which results in the damage, deletion or destruction of "data" owned by you or for which you are legally liable.

**(5) Cyber Business Interruption and Extra Expense**

We will pay actual loss of "business income" and additional "extra expense" incurred by you during the "period of restoration" directly resulting from a "data breach" which is first discovered during the "policy period" and which results in an actual impairment or denial of service of "business operations" during the "policy period".

**c. Additional Expense Coverages**

We will pay your reasonable and necessary expenses incurred for the following Additional Expense Coverages. These expenses are subject to the limits of insurance described in **Section C - Limits of Insurance.**

**(1) Legal Services -** expenses incurred within the first six months following the discovery and reporting of a "data breach" as provided in this Section for approved outside professional legal counsel review and recommendations as to how you should respond to it, including final legal review of the proposed breach notification letter(s). However, we will not pay for expenses for legal counsel to review any third party liability litigation or notification of potential litigation.

**(2) Public Relations -** expenses incurred within the first six months following the discovery and reporting of a "data breach" as provided in this Section for approved outside public relations firm or crisis management firm recommendations for restoring the confidence of your customers and investors in the security of your company and its systems.

**(3) Third Party "Data Breach" -** expenses for notification to "potentially-identified persons" with whom you have a direct relationship when a "data breach" is sustained by a third party to whom you have sent "private personal data" to be under that third party's care, custody and control. This includes a "data breach" that occurs while transmitting or transporting the data to that third party. Covered expenses for this Additional Covered Expense are limited to the printing, postage and handling of notification letters to "potentially-identified persons".

Service providers for Additional Expense Coverage provided in paragraphs **c.(1), c.(2)** and **c.(3)** must be approved by us as described in **SECTION E - CONDITIONS,** Paragraph **15. Service Providers.**

**(4) Data Breach Ransom Coverage -** monies extorted from and paid by you because or a threat or connected series of threats to commit an intentional attack on your computer systems that if so committed, would result in a "data breach". This Data Breach Ransom



OBCH332709     1304500

Coverage is subject to the following conditions:

**(a)** You must receive approval from us prior to the payment of any monies;

**(b)** Any monies paid must only be to terminate or end the threat;

**(c)** The threat must be one which, if carried out, would have led to a "data breach" that would have been covered under this Coverage Form had the monies not been paid;

**(d)** The threat must have been made during the coverage period of this Data Breach Coverage Form;

**(e)** The applicable Federal, state and/or local law enforcement authority was notified of the threat prior to any payment you make for which you are seeking reimbursement under this Additional Expense Coverage;

**(f)** The threat must not have been committed by any of your employees or former employees, vendors or independent contractors hired by you;

**(g)** You must make every reasonable effort not to divulge the existence of this Data Breach Ransom Coverage; and

**(h)** You agree to keep confidential any amounts paid under this Data Breach Ransom Coverage except for any disclosure we approve in advance of that disclosure.

**(5)** **Data Breach Reward Coverage -** monies you pay for information leading to the arrest and conviction of any individual(s) who committed an illegal act(s) related to a "data breach" covered under this Coverage Form.

However, we will not pay for information that was provided by:

**(a)** You;

**(b)** Your internal or external auditors;

**(c)** Any vendor or independent contractor hired by you;

**(d)** Any individual or firm hired by you to investigate the illegal act described above; or

**(e)** Any individual(s) with supervisory or management responsibility of any of the individual(s) described above.

**(6)** **Data Breach Investigations**

We will pay "defense expenses" directly resulting from a "regulatory investigation" regarding a "data breach" first discovered by you during the "policy period".

**(7)** **Data Breach Theft**

We will pay for loss resulting directly from your transfer, payment, or delivery of funds due to the fraudulent input of "data" directly into your "system" or through a "network" into your "system". Loss must first be discovered by you during the "policy period".

## SECTION B - EXCLUSIONS

**1.** The following exclusions apply to Data Breach Services, Data Breach Expense Coverages and Additional Expense Coverages.

This insurance does not apply to:

**a.** **Costs to Research or Correct Deficiencies**

Any costs to research any deficiency, except as specifically provided under **SECTION A - COVERAGES**, Paragraph **1.b.(2) Forensic Analysis**, or any costs to correct any deficiency.

This includes, but is not limited to, any deficiency in your systems, procedures or physical security that may have contributed to a "data breach".

**b.** **Criminal Investigation or Proceedings**

Any costs arising out of criminal investigations or proceedings.

**c.** **Fines, Penalties or Assessments**

Any "fines, penalties, fees or assessments". This includes but is not limited to fees or surcharges from financial institutions.

**d.** **Defense or Legal Liability**

Any fees, costs, settlements, judgments, or liability of any kind arising in the course of, or as a result of a claim for damages, lawsuit, administrative proceedings, or governmental investigation against or involving you, except as provided under **SECTION A - COVERAGES**, Paragraph **1.c.(6) Data Breach Investigations.**

**e. Other Economic Costs**

Any other costs or expenses not expressly provided for under Data Breach Services, Data Breach Expense Coverages and Additional Expense Coverages provided in Paragraphs **1.a.** through **1.c.** Costs or expenses that we do not cover include but are not limited to expense to reissue credit or debit cards.

**f. Consequential Loss**

Any costs, or any other loss, caused by or resulting from delay, loss of use, loss of existing or prospective markets or any other consequential loss. This exclusion does not apply to **SECTION A - COVERAGES**, Paragraph **1.b.(5) Cyber Business Interruption and Extra Expense**.

**g. Contractually Assumed Liability**

Legal obligations arising by reason of assumption of liability in a contract or agreement.

**h. Victim Expenses or Losses**

Costs or losses incurred by a victim of "data breach" or fraud activity except as provided for under Data Breach Services, Data Breach Expense Coverages and Additional Expenses Coverages provided in Paragraphs **1.a.** through **1.c.**

**i. Alternative Travel Arrangements or Fees**

Payment of alternative travel arrangements or additional fees.

**j. Psychological Counseling**

Psychological counseling for victims of a "data breach" or fraud activity.

**k. Legal Advice or Services**

Legal advice or other legal services, except as provided by the Legal Services Additional Expense Coverage, Paragraph **1.c.(1).**

**l. Information Recapture**

Any costs or losses for the recapture of lost, stolen or destroyed information.

**m. Dishonesty**

Any criminal, fraudulent or dishonest act, error or omission, or any intentional or knowing violation of law by you, any of your partners, directors or trustees:

**(1)** Acting alone or in collusion with others; or

**(2)** Whether or not occurring during the hours of employment.

**n. Governmental Action**

Seizure or destruction of property by order of governmental authority. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. This exclusion applies whether or not the loss event results in widespread damage or affects a substantial area.

**o. Intentional or Willful Complicity**

Your intentional or willful complicity in a "data breach".

**p. Prior Discovery**

Any "data breach" discovered prior to the inception of this Data Breach Coverage Form.

**q Threats, Extortion or Blackmail**

Any threat, extortion or blackmail including but not limited to, ransom payments and private security assistance except as provided in the Data Breach Ransom Coverage Additional Expense Coverage under Paragraph **1.(c)(4).**

**r Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination, however caused.

**s. War and Military Action**

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**2.** The following exclusions apply to Breach Restoration Expenses, Cyber Business Interruption and Extra Expense, Data Breach Investigations, and Data Breach Theft only.

This insurance does not apply to:

**a. Investigations**

Costs, fees or expenses incurred or paid by you in establishing the existence of, or amount of loss, damage or expense.

**b. Non-monetary Relief**

Costs of compliance with any order for, grant of or agreement to provide non-monetary relief, including injunctive relief.

**c. Potential Income**

Potential income including interest and dividends not realized by you; however, this Exclusion shall not apply to loss of "business income" as provided under **SECTION A - COVERAGES**, Paragraph **1.b.(5) Cyber Business Interruption and Extra Expense.**



OBCH332709     1304500

**d. Return of Payments**

Return of fees, charges, commissions or other compensation paid to you.

**e. System Changes**

Costs or "expenses" incurred to replace, upgrade, update, improve, or maintain a "system".

**f. Uniform Commercial Code**

Loss, damage, costs or "expenses" you agree to incur or incur on behalf of another natural person or entity when you are not obligated to incur such loss, costs or "expenses" under the Uniform Commercial Code or any other law, statute, rule or code anywhere in the world, including the rules or codes of any clearing or similar entity. This Exclusion does not apply to **SECTION A - COVERAGES**, Paragraph **1.b.(5) Cyber Business Interruption and Extra Expense.**

**SECTION C - LIMITS OF INSURANCE**

**1.** The most we will pay for all Data Breach Expense Coverages and Additional Expense Coverages combined is the Data Breach Coverage Aggregate Limit of Insurance shown in the **SCHEDULE** of this Data Breach Coverage Form. The Data Breach Coverage Aggregate Limit of Insurance is an annual aggregate limit and is the most we will pay for the total of the covered losses and expenses for all "data breach" events discovered by you during the current "policy period" regardless of the number of "data breach" events.

**2.** The Data Breach Expense Coverages Aggregate Sublimit of Insurance shown in the **SCHEDULE** of this Data Breach Coverage Form is the most we will pay under all Data Breach Expense Coverages combined for the total of all covered losses and expenses arising out of all "data breach" events during the "policy period" regardless of the number of "data breach" events. The Data Breach Expense Coverage Aggregate Sublimit of Insurance is part of, and not in addition to, the Data Breach Coverage Aggregate Limit of Insurance

**3.** The Additional Expense Coverages Aggregate Sublimit of Insurance shown in the **SCHEDULE** of this Data Breach Coverage Form is the most we will pay under all Additional Expense Coverages combined for the total of all covered losses and expenses for all "data breach" events during the "policy period" regardless of the number of "data breach" events. The Additional Expense Coverages Aggregate Sublimit of Insurance is part of, and not in addition to, the Data Breach Coverage Aggregate Limit of Insurance.

**4.** Regardless of the number of years this Data Breach Coverage Form remains in force or the number of premiums paid, no limits of insurance cumulate from this "policy period" to subsequent "policy periods".

**5. Discovery Policy Period Limits Apply**

A "data breach" may be first discovered by you in one "policy period", but cause covered loss or expenses in one or more subsequent "policy periods". If so, all covered loss or expenses for the "data breach" will be limited to the Data Breach Coverage Aggregate Limit of Insurance, the Data Breach Expense Coverages Aggregate Sublimit of Insurance and the Additional Expense Coverages Aggregate Sublimit of Insurance described respectively in Paragraphs **1., 2.** and **3.** above that are applicable to the "policy period" when the "data breach was first discovered by you.

**6. Time Limits**

**a.** You must report a "data breach", to us on or within 30 days of your discovery of the "data breach".

**b.** You have up to one year from the date of reporting a "data breach", to initiate the services afforded to you.

**c.** A "potentially-identified person" has up to one year from the date he or she receives notification of a "data breach" to initiate the services afforded to him or her.

**d.** Once initiated, the services afforded to a "potentially-identified person" will continue for one year.

**e.** Data Breach Services under **Section A - Coverages,** Paragraph **1.a.** will be provided by our Designated Service Provider for a period one year from the date the Data Breach Services are initiated.

**SECTION D - DEDUCTIBLE**

The Data Breach Expense Coverages and Additional Expense Coverages provided under this Coverage Form are subject to the Data Breach Coverage Deductible shown in the **SCHEDULE** of this Coverage Form. The Data Breach Coverage Deductible applies to covered loss and expense arising out of each "data breach". Our obligation to make payments under Data Breach Expense Coverages and Additional Expense Coverages applies only to that part of covered loss and expense arising out of a single "data breach" event which is in excess of the Data Breach Coverage Deductible.

The Data Breach Coverage Deductible does not apply to **SECTION A -COVERAGES,** paragraph **1.b.(6) Cyber Business Interruption and Extra Expense**. Losses payable under Cyber Business Interruption and Extra Expense are subject to the Cyber Business Interruption Waiting Period Deductible shown on the **SCHEDULE** of this Coverage Form.

## SECTION E - CONDITIONS

**1.  Duties in the Event of a Data Breach.**

You must see that the following are done in the event of a "data breach":

**a.**  Notify the police if a law may have been broken.

**b.**  Give us prompt notice of the "data breach". As stated in **SECTION A - COVERAGES**, paragraph **b.**, you must report the "data breach" to us within 30 days of the date you first discover it.

**c.**  As soon as possible, give us, and/or our Designated Service Provider, a description of how, when and where the "data breach" occurred, including all of the following information as it becomes known to you:

(1)  The method of "data breach";

(2)  The approximate date and time of the "data breach";

(3)  The approximate number of "potentially-identified persons" compromised as a result of the "data breach";

(4)  A detailed description of the type and nature of the information that was compromised;

(5)  Whether or not the information was encrypted, and, if so, the level of encryption;

(6)  Whether or not law enforcement has been notified;

(7)  If available, the states in which the "potentially-identified persons" are domiciled;

(8)  If available, who received the "private personal data" as a result of the "data breach"; and any other access, information or documentation we reasonably require to investigate or adjust your claim.

**d.**  Take all reasonable steps to protect "private personal data" remaining in your care, custody or control.

**e.**  Preserve all evidence of the "data breach".

**f.**  Permit us to inspect the property and records proving the "data breach".

**g.**  If requested, permit us to question you under oath at such times as may be reasonably required about any matter relating to this insurance or your claim, including your books and records. In such event, your answers must be signed.

**h.**  Send us a signed, sworn statement containing the information we request to investigate the claim. You must do this within 30 days after our request. We will supply you with the necessary forms.

**i.**  Cooperate with us in the investigation or settlement of the claim.

**2.  Concealment, Misrepresentation or Fraud**

This coverage is void in any case of fraud by you as it relates to this Data Breach Coverage Form. It is also void if you intentionally conceal or misrepresent a material fact concerning this Coverage Form or a claim under this Coverage Form.

**3.  Control of Property**

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Form at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

**4.  Two or More Coverage Parts, Forms, Endorsements or Policies Issued By Us**

It is our stated intent that the various coverage parts, forms, endorsements or policies issued to you by us or any company affiliated with us do not provide any duplication or overlap of coverage for the same loss, damage, expense or "data breach". If this coverage form and any other coverage part, form, endorsement or policy issued to you by us or any company affiliated with us apply to the same loss, damage, expense, or "data breach"; the maximum Limit of Insurance under all such coverage parts, forms, endorsements or policies combined shall not exceed the highest applicable Limit of Insurance under any one coverage part, form, endorsement or policy.

If two or more of the coverages provided under this coverage form apply to the same loss, damage, expense or "data breach"; we will not pay more than the actual amount of the loss, damage or expense.

**5.  Legal Action Against Us**

No one may bring a legal action against us under this insurance unless:

**a.**  There has been full compliance with all of the terms of this insurance; and

**b.**  The action is brought within two years after the date of the "data breach" is first discovered by you.

**6.  Liberalization**

If we adopt any revision that would broaden the coverage under this Data Breach Coverage Form without additional premium within 45 days prior to or during the "policy period", the

broadened coverage will immediately apply to this coverage form.

**7. No Benefit to Bailee**

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

**8. Other Insurance**

a. If you may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Data Breach Coverage Form, we will pay only our share of the covered loss, damage or expense. Our share is the proportion that the applicable Limit of Insurance under this Coverage Form bears to the Limits of Insurance of all insurance covering on the same basis.

b. If there is other insurance covering the same "data breach", other than that described in **a.** above, we will pay only for the amount for Data Breach Services, Data Breach Expense Coverages, and Additional Expense Coverages in excess of the amount due from that other insurance. We will not pay more than the applicable Limit of Insurance shown in the **SCHEDULE**.

**9. Policy Period, Coverage Territory**

Under this Endorsement:

**a    Policy Period**

This policy applies only to "data breaches" that are first discovered by you during the "policy period".

**b.    Coverage Territory**

Coverage applies anywhere in the world, provided that no trade or economic sanction, embargo, insurance or other laws or regulations prohibit the "insurer" from covering the loss. The "data breach" must involve "private personal data" that was within your care, custody or control.

Data Breach Services are only available in jurisdictions or countries that maintain "breach notice law" and, in the case of Fraud Alert, an operative credit monitoring service.

**10. Transfer Of Rights Of Recovery Against Others To Us**

If any person or organization to or for whom we make payment under this Coverage Form has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

a. Prior to a loss.

b. After a loss only if, at time of loss, that party is one of the following:

(1) Someone insured by this insurance;

(2) A business firm:

(a) Owned or controlled by you; or

(b) That owns or controls you; or

c. Your tenant.

This will not restrict your insurance.

**11. Cancellation**

With regard to the cancellation of this policy, the provisions outlined in the Common Policy Conditions, Businessowners Coverage Part, Technology Professional Advantage, the Technology Professional Advantage Plus, whichever are included in the policy, shall apply and will automatically include the non-renewal or cancellation of this coverage form. You agree that no further notice regarding termination of this Coverage Form will be required.

**12. Due Diligence**

You agree to use due diligence to prevent and mitigate loss covered under this Coverage Form. This includes, but is not limited to, complying with reasonable and industry-accepted protocols for providing and maintaining the following:

a. Physical security for your premises, computer systems and hard copy files;

b. "Computer" and Internet security;

c. Periodic backups of computer data;

d. Protection, including but not limited to, encryption of data, for transactions such as processing credit card, debit card and check payments; and

e. Disposal of files containing "personal private data", including but not limited to shredding hard copy files and destroying physical media used to store "data".

**13. No Legal Advice Provided**

We are not your legal advisor and do not provide legal counsel to you. None of the services we provide under this Coverage Form constitute legal advice to you by us. Our determination of what is or is not covered under this Coverage Form does not represent legal advice or counsel from us about what you should or should not do.

**14. Pre-Notification Consultation**

You agree to consult with us prior to the issuance of notification to "potentially-identified persons". We assume no responsibility under this Coverage Form for any services promised to "potentially-identified persons" without our prior agreement. You must provide the following at our pre-notification consultation with you:

**a.** The exact list of "potentially-identified persons" to be notified, including contact information.

**b.** Information about the "data breach" that may appropriately be communicated with "potentially-identified persons".

**15. Service Providers**

**a.** We will only provide Data Breach Services through our Designated Service Provider(s). Any such services that are provided by any other individual or entity will not be covered by this Coverage Form.

**b.** We will only pay Data Breach Expense Coverages and Additional Expense Coverages (except for Data Breach Ransom Coverage and Data Breach Reward Coverage) that are provided by service providers approved by us prior to the start of any of these services. If we suggest a service provider(s) but you prefer to use an alternative service provider(s), our coverage is subject to the following limitations:

**(1)** Such alternate service provider(s) must be approved by us; and

**(2)** Our payment for services provided by any alternative service provider(s) will not exceed the amount that we would have paid using the service provider we had suggested.

**c.** You will have a direct relationship with any service provider, including our Designated Service Provider, paid for in whole or in part under this Coverage Form. All service providers work for you.

**16. Data Breach Services**

The following conditions apply with respect to any data breach services provided to you or to any "potentially-identified person" or "identified person" by our designees or any service firm paid for under this Data Breach Coverage Form:

**a.** The effectiveness of data breach services depends on your cooperation and assistance.

**b.** All data breach services may not be available or applicable to all "potentially identified persons" or "identified persons". For example, "potentially identified persons" who are minors or foreign nationals may not have credit records that can be provided or monitored.

**c.** We do not warrant or guarantee that the data breach services paid for in whole or in part by this Coverage Form will end or eliminate all problems associated with a covered "data breach".

**d.** We are not liable for any act or omission by any Designated Service Provider who is not our employee nor the employee of a third party provider of the data breach services described in this Coverage Form. We cannot be held responsible for failure to provide or for the delay in providing services when such failure or delay is caused by conditions beyond our control

**e.** Data Breach Services are only available in jurisdictions or countries that maintain "breach notice law" and, in the case of Fraud Alert, an operative credit monitoring service.

**17. Cooperation**

You agree to cooperate with and provide full disclosure of the circumstances surrounding a "data breach" to applicable federal or state regulators, law enforcement personnel, to us, and to our Designated Service Provider(s).

If you fail to cooperate, we will not be obliged under this contract for any services and expenses that cannot be provided due to your failure to cooperate.

**18. Appraisal**

If we and you disagree on the amount of net income, operating expense or loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of the net income, operating expense and loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

**SECTION F - DEFINITIONS**

**1. Account Takeover**

"Account takeover" means the takeover by a third party of one or more existing deposit accounts, credit card accounts, debit card accounts, ATM cards, or lines of credit in the name of an "identified person".

**2. Breach Notice Law**

"Breach Notice Law" means any federal, state, local or foreign privacy legislation, regulation and their functional equivalent that requires an entity to provide notice to affected natural persons or data protection authorities regarding any actual or potential unauthorized access to "private personal data".



OBCH332709    1304500

3. **Breach Restoration Expenses**

"Breach Restoration Expenses" means the reasonable cost of the blank "media" and the reasonable cost of labor for the actual transcription or copying of "data" or "media" in order to reproduce such "data" or replace such "media" from "data" and/or media of comparable kind or quality.

4. **Business Income**

"Business Income" means your:

   **a.** Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred if there had been no impairment or denial of "business operations" due to a covered "data breach" and

   **b.** Continuing normal operating expenses incurred, including payroll.

"Business income" does not include interest or investment income.

5. **Business Operations**

"Business Operations" means your usual and regular business activities.

6. **Computer**

"Computer" means a device or group of hardware devices on which software, applications, script, code and "computer" programs containing "data" can be operated and viewed.

7. **Cyber Attack**

"Cyber Attack" means the transmission of fraudulent or unauthorized "data" that is intended to and successfully modifies, alters, damages, destroys, deletes, records, transmits, or consumes information within a "system" without authorization, including "data" that is self-replicating or self-propagating, and which causes the disruption of the normal operation of a "system".

8. **Data**

"Data" means a representation of information, knowledge, facts, concepts or instructions which are being processed or have been processed in a "computer"**.**

9. **Data Breach**

"Data breach" means:

   **a.** The loss, theft, accidental release or accidental publication of "private personal data" entrusted to you as respects one or more "potentially-identified persons" if such loss, theft, accidental release or accidental publication has or could reasonably result in the fraudulent use of such information;

   **b.** Failure to protect "private personal data" including a "Cyber Attack" on your "system" or the actions of a "rogue employee" which directly results in the unauthorized disclosure of "private personal data";

   **c.** The theft or negligent loss of hardware, "media", "system output", "data" or other documents owned or controlled by you, or on your behalf, on which "private personal data" is stored or recorded;

   **d.** The failure or violation of the security of your "system" including the impairment or denial of access to your "system", including a "Cyber Attack" or unauthorized acts or omissions by a "rogue employee" which damages or harms your "system" or the "system" of a third party for whom you provide "services" for a fee;

   **e.** The theft or loss of hardware or "media" controlled by you, or on your behalf, on which "data" is stored;

   **f.** Disposal or abandonment of "private personal data" without appropriate safeguards such as shredding or destruction, subject to the following provisions:

   **(1)** Your failure to use appropriate safeguards must be accidental and not intentional, reckless or deliberate and not in violation of your Due Diligence obligations under Paragraph **2. Additional Conditions**, Paragraph **a.**;

   **(2)** Such disposal or abandonment must take place during the time period for which this Data Breach Coverage Form is effective; or

   **g.** The failure to disclose an event described in **a.** thru **f.** above which violates any "breach notice law".

All incidents of "data breach" that are discovered at the same time or arise from the same cause or from a series of similar causes would be considered one "data breach". All theft of "private personal data" caused by any person or in which that person is involved, whether the result of a single act or series of related acts, is considered a single incident of "data breach".

10. **Defense Expenses**

"Defense Expenses" means the reasonable and necessary legal fees and expenses including attorney fees and expert fees incurred by us or by you (other than regular or overtime wages, salaries, fees or benefits of you or your employees) in the investigation, defense, settlement and appeal of a claim, including but not limited to cost of consultants and witnesses, premiums for appeal, injunction, attachment or supersedes bonds regarding such claim.

**11. Electronic Data**

"Electronic data" means information, facts or computer programs stored as or on, created or used on, or transmitted to or from software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

**12. Expense**

"Expense" means "Business Income", "Extra Expense", "Breach Restoration Expenses", and loss payable under the Data Breach Theft coverage incurred by you.

**13. Extra Expense**

"Extra Expense" means the reasonable and necessary expenses you incur during the "period of restoration" in an attempt to continue "business operations" that have been interrupted due to a "data breach" and that are over and above the expenses such you would have incurred if no loss had occurred. "Extra expense" does not include any costs of updating, upgrading or remediation of your "system" that are not otherwise covered under this Coverage Part.

**14. Fines, Penalties or Assessments**

"Fines, penalties or assessments" means any fines, assessments, surcharges, attorneys' fees, court costs or other penalties which you shall be required to pay as a result of a "data breach" or pursuant to any contract, law, regulation or order.

**15. Identified Person**

"Identified person" means a "potentially-identified person" who is or appears to be a victim of "identity theft" or "account takeover" that may reasonably have arisen from a covered "data breach".

**16. Identity Theft**

"Identity theft" means the fraudulent use of "private personal data". This includes the fraudulent use of such information to establish credit accounts, secure loans, enter into contracts or commit crimes.

"Identity theft" does not include the fraudulent use of a business name, d/b/a or any other method of identifying a business activity.

"Identity theft" does not include the use of a valid credit card, credit account or bank account. However, "identity theft" does include the fraudulent alteration of account profile information, such as the address to which statements are sent.

**17. Media**

"Media" means electronic applications, software, scripts and programs on which "data" is stored so that it can be collected, read, retrieved or processed by a "computer". "Media" does not mean paper, or other tangible property, money, debt, equity, instruments, accounts, bonds, bills, records, abstracts, deeds or manuscripts

**18. Network**

"Network" means any services provided by or through the facilities of any electronic or "computer" communication system, allowing the input, output, examination, visualization or transfer of "data" or programs from one "computer" to your "computer". "Network" incudes any shared networks, Internet access facilities, or other similar facilities for such systems, in which you participate.

**19. Period of Restoration**

"Period of Restoration" means:

**a.** The period of time that begins:

  **(1)** For "Extra Expenses", immediately after the actual or potential impairment or denial of "business operations" occurs; and

  **(2)** For the loss of "Business Income", after 24 hours or the number of hours shown as the Cyber Business Interruption Waiting Period Deductible in the **SCHEDULE** on this Coverage Forms, whichever is greater, immediately following the time the actual impairment or denial of "business operations" first occurs.

**b.** The "Period of Restoration" ends on the earlier of the following:

  **(1)** The date "business operations" are restored, with due diligence and dispatch, to the condition that would have existed had there been no impairment or denial; or

  **(2)** Sixty (60) days after the date the actual impairment or denial of "business operations" first occurs;

  The expiration date of this Policy or Coverage Part will not cut short the "period of restoration".

**20. Policy Period**

"Policy Period" means the period of time from the inception date shown the Declarations to the earlier of the expiration date shown in the Declarations or the effective date of termination of the Policy or Data Breach Coverage Form.



OBCH332709     1304500

**21. Potentially-Identified Person**

"Potentially-identified person" means any person who is your current, former or prospective customer, employee, client, member, or patient and whose "private personal data" is lost, stolen, accidentally released or accidentally published by a "data breach" covered under this Coverage Form.

"Potentially-identified person" does not include any business or organization. Only an individual person may be a "potentially-identified person".

A "potentially-identified person" may reside anywhere in the world.

**22. Private Personal Data**

"Private Personal Data" means a natural person's first name or first initial and last name in combination with:

**a.** Non-public personally identifiable information, as defined in applicable federal, state, local or foreign legislation or regulations including, social security number, driver's license number or other personal identification number (including an employee identification number or student identification number);

**b.** Financial account number (including a bank account number, retirement account number or healthcare spending account number);

**c.** Credit, debit or payment card numbers;

**d.** Information related to employment by you;

**e.** Individually identifiable information considered nonpublic personal information pursuant to Title V of the Gramm-Leach Bliley Act of 1999, as amended; or

**f.** Individually identifiable information considered protected health information pursuant to the Health Insurance Portability and Accountability Act of 1996 (HIPAA), as amended;

which is intended to be accessible only by natural persons or entities you have specifically authorized to have such access.

"Private personal data" does not mean or include information that is otherwise available to the public, such as names and addresses with no correlated Social Security numbers or

account numbers.

**23. Proactive Monitoring Services**

"Proactive monitoring services" means the following services if you offer to provide them to "potentially-identified persons" who contact our Designated Service Provider:

**a.** A credit report;

**b.** credit monitoring; and or

**c.** fraud/public records monitoring service or services.

**24. Regulatory Investigation**

"Regulatory Investigation" means a formal request for information, civil investigative demand or civil proceeding, including requests for information related thereto, brought by or on behalf of a state Attorney General, the Federal Trade Commission, the Federal Communications Commission or any other federal, state, local or foreign governmental agency.

**25. Rogue Employee**

"Rogue Employee" means a permanent employee of yours, other than an "executive", who has gained unauthorized access or has exceeded authorized access to a "system" or "private personal data" owned or controlled by you or an entity that is authorized by you to hold, process or store "private personal data" for your exclusive benefit.

**26. Services**

"Services" means "computer" time, data processing, storage functions or other uses of your "system".

**27. System**

"System" means a "computer", "media" and all input, output, processing storage and communication devices controlled, supervised or accessed by operating software that is proprietary to, or licensed to, the owner of the "computer".

**28. System Output**

"System Output" means a tangible substance on which "private personal data" is printed from a "System".

**The Hanover Insurance Group**

OBCH332709        1304500

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# AVENUES BUSINESSOWNERS TECHNOLOGY DELUXE GOLD BROADENING ENDORSEMENT

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The following is added to **SECTION I - PROPERTY**:

The limits applicable to the coverages included in this endorsement may either be in addition to or included within the applicable Limit of Insurance. For application of the limits, refer to each coverage within this endorsement. Words or phrases in quotation marks have special meanings. The meaning of words or phrases in quotation marks is explained within the applicable coverage section. The coverages in this endorsement amend the coverage provided under the Businessowners Coverage Form through new coverages and replace coverage grants. These coverages are subject to the provisions applicable to this policy, except where amended within this endorsement.

If any of the property covered by this endorsement is also covered under any other provisions of the policy of which this endorsement is made a part of, or if more than one coverage under this endorsement applies, in the event of loss or damage, you may choose only one of these coverages to apply to that loss. The most we will pay in this case is the limit of insurance applying to the coverage you select. Coverages included in this endorsement apply either separately to each described premises or on an occurrence basis. Refer to each coverage within this endorsement for application of coverage.

We provide no coverage for Business Income; Extended Business Income; Extra Expense; or Business Income and Extra Expense from Dependent Properties for any of the Coverages included as part of this endorsement unless specifically stated, and then only to the extent provided for within that Scheduled or Blanket Coverage provision.

## I.  COVERAGES

### A.  Scheduled Coverages

| | Scheduled Coverages | Limit | Page |
|---|---|---|---|
| **1.** | Advertising Expense to Regain Customers | $2,500 | 3 |
| **2.** | Brands and Labels | Included | 3 |
| **3.** | Business Income Billable Hours Option | $10,000 | 3 |
| **4.** | Contingent Transit Business Income and Extra Expense | $100,000 | 4 |
| **5.** | Business Income and Extra Expense - Dependent Properties (Including World-Wide Coverage) | $100,000 | 4 |
| **6.** | Business Income from Websites | $50,000 | 5 |
| **7.** | Catastrophe Allowance | $25,000 | 5 |
| **8.** | Commercial Tools and Small Equipment | $25,000 | 5 |
| **9.** | Computer Equipment - In Transit or Off Premises | $75,000 | 5 |
| **10.** | Computer and Funds Transfer Fraud | $10,000 | 6 |
| **11.** | Consequential Loss to Stock | Included | 6 |
| **12.** | Contract Penalties | $25,000 | 6 |
| **13.** | Deferred Payments | $25,000 | 6 |
| **14.** | Denial of Access to Premises | 30 Days; 72 Hour Waiting Period | 6 |
| **15.** | Electronic Vandalism | $25,000 | 6 |
| **16.** | Employee Theft Including ERISA Compliance | $50,000 | 7 |
| **17.** | Employee Tools and Work Clothing | $2,500 Per Item $25,000 Per Occurrence | 7 |

| 18. | Expediting Expenses | $25,000 | 7 |
|---|---|---|---|
| 19. | Extended Business Income | 180 days | 7 |
| 20. | Fine Arts | $50,000 | 8 |
| 21. | Fire Department Service Charge | Included | 8 |
| 22. | Fire Protection Equipment Recharge | Included | 8 |
| 23. | Forgery or Alteration | $50,000 | 8 |
| 24. | Hired Auto - Physical Damage | $50,000 | 8 |
| 25. | Installation Floater | $50,000 | 9 |
| 26. | Interruption of Computer Operations | $50,000 | 9 |
| 27. | Inventory and Loss Appraisal | $20,000 | 10 |
| 28. | Key Replacement and Lock Repair | $25,000 | 10 |
| 29. | Leasehold Interest (Tenants Only) | $25,000 | 10 |
| 30. | Lessor's Lease Cancellation | $10,000 | 10 |
| 31. | Lessor's Tenant Move Expenses | $10,000 / 60 days | 10 |
| 32. | Marring and Scratching | Included | 11 |
| 33. | Money Orders and Counterfeit Money | $25,000 | 11 |
| 34. | Newly Acquired or Constructed Property<br>    Business Personal Property<br>    Business Income and Extra Expense | $1,000,000<br>$500,000 | 11 |
| 35. | Ordinance or Law - Demolition and Increased Cost of Construction | $50,000 | 11 |
| 36. | Ordinance or Law - Increased Period of Restoration | $100,000 | 11 |
| 37. | Ordinance or Law (Tenant's Improvement Extension) | $50,000 | 12 |
| 38. | Outdoor Property<br>    Per Tree, Shrub or Plant | $25,000<br>$2,500 | 12 |
| 39. | Personal Effects | $50,000 | 12 |
| 40. | Portable Electronic Devices Coverage Worldwide | $25,000 | 12 |
| 41. | Precious Metal Theft Payment Changes | $50,000 | 13 |
| 42. | Personal Property in Transit | $50,000 | 13 |
| 43. | Sales Representative Samples | $25,000 | 13 |
| 44. | Soft Costs | $10,000 | 13 |
| 45. | Spoilage | $25,000 | 14 |
| 46. | Temporary Relocation of Property | $50,000 | 15 |
| 47. | Tenant Signs | $25,000 | 15 |
| 48. | Unauthorized Business Credit Card Use | $10,000 | 15 |
| 49. | Underground Water Seepage | $100,000 | 16 |
| 50. | Unnamed Locations - Personal Property and Computer Equipment<br>Unnamed Locations - Business Income and Extra Expense | $10,000 per Occurrence<br>$25,000 Policy Aggregate<br>$10,000 per Occurrence<br>$50,000 Policy Aggregate | 16 |
| 51. | Utility Services<br>    Direct Damage (Including Overhead Transmission Lines)<br>    Business Income (Including Overhead Transmission Lines) | $50,000<br>$50,000 | 18 |
| 52. | Worldwide Property Off Premises | $50,000 | 18 |

| B. | Blanket Coverages | Blanket Limit $250,000 | Page |
|---|---|---|---|
| 1 | Accounts Receivable | Included | 19 |
| 2. | Backup or Overflow of a Sewer, Drain or Sump | Included | 19 |
| 3. | Computer Equipment | Included | 19 |
| 4. | Debris Removal | Included | 19 |
| 5. | Valuable Papers and Records (Other Than Electronic Data) | Included | 20 |

The Blanket Limit of Insurance shown above applies to all Coverages shown in **Section B** of this endorsement. At the time of loss, you may elect to apportion this Blanket Limit of Insurance to one or any combination of the Coverages shown, but under no circumstances will the aggregate apportionment be permitted to exceed the Blanket Limit of Insurance shown above. The Blanket Limit of Insurance applies per occurrence.

**II. DEDUCTIBLES**

Deductibles are subject to the provisions applicable to the Businessowners Coverage Form except as provided below. We will not pay for covered loss or damage in any one occurrence unless the amount of loss or damage exceeds the applicable Deductible amount. We will then pay the amount of loss or damage in excess of the Deductible up to the applicable Limit of Insurance.

**III. COVERED PROPERTY**

**A. Scheduled Coverages**

**1. Advertising Expense to Regain Customers**

The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages**:

**Advertising Expense to Regain Customers**

**(1)** If we make payment for a Covered Cause of Loss under this policy and there is a "suspension" of operations caused by direct physical loss or damage to property, we will pay for necessary advertising expenses you incur solely to regain customer faith and approval.

**(2)** We will only pay the necessary advertising expenses that you incur within 60 consecutive days after the "period of restoration" ends.

**(3)** The most we will pay under this Additional Coverage for all necessary advertising expenses in any one policy year is $2,500.

**2. Brands and Labels**

The following is added to **SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions**:

**Brands and Labels**

**(1)** If Covered Property that has a brand or label is damaged by a Covered Cause of Loss and we elect to take all or any part of the damaged property at an agreed or appraised value, you may extend the insurance that applies to your Business Personal Property to:

**(a)** Pay expenses you incur to:

**(i)** Remove the brand or label and then relabel the damaged property to comply with any applicable law; or

**(ii)** Label or stamp the damaged property Salvage, if doing so will not physically damage the property.

**(b)** Cover any reduction in the salvage value of the damaged property as a result of the removal of the brand or label.

**(2)** Payment under this Extension is included within the Limit of Insurance applicable to your Business Personal Property.

**3. Business Income Billable Hours Option**

The following is added to **SECTION I - PROPERTY, A. Coverage, E. Property Loss Conditions, 5. Loss Payment**:

**Business Income Billable Hours Option**

**(1)** At your option you may choose to settle a covered Business Income and Extra Expense loss, as described under the Business Income, Extra Expense and Utility Services Additional Coverages, as described below in paragraph **(3)**.

**(2)** This loss settlement option is only available to you prior to your submission to us of calculations described under **SECTION I - PROPERTY, A. Coverage, 5.**

**Additional Coverages, f. Business Income.**

**(3)** For the purpose of this Additional Coverage, we will pay up to $500 per day, for billable hours lost, per technology professional, up to a maximum of $1,000 per day, regardless of the number of technology professionals involved, for each normal working day you are unable to conduct operations due to covered loss or damage for up to a maximum of 10 days. We will also pay for your continuing normal operating expenses incurred, including "payroll expenses"; and "Rental Value".

**(4)** If damages are such that limited operations can continue, the per technology professional allowance will be proportionately reduced.

**(5)** For any occurrence, the two available methods for adjusting and calculating Business Income and Extra Expense loss may not be combined. When the alternative per diem approach described above is selected, the maximum coverage under this loss settlement option is $10,000 on an actual loss sustained basis. You are not entitled to make claim for periods beyond 10 days.

**(6)** This optional loss settlement does not waive the Waiting Period shown in the Declarations for Business Income Additional Coverage. This Waiting Period does not apply to Extra Expense.

**4. Contingent Transit Business Income and Extra Expense**

The following is added **SECTION I - PROPERTY, A Coverage, 6. Coverage Extensions;**

**Contingent Transit Business Income and Extra Expense**

You may extend your Business Income or Extra Expense Coverage to apply to the actual loss of Business Income (not including **Extended Business Income**) or Extra Expense you sustain due to direct physical loss of or damage to Business Personal Property of Others, not in your care, custody or control, while "in transit", caused by or resulting from a Covered Cause of Loss.

The most we will pay for loss under this Extension is $100,000.

**5. Business Income and Extra Expense - Dependent Properties (Including World-Wide Coverage)**

**a.** The heading for **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, m. Business Income from Dependent Properties** is replaced by the following:

**m. Business Income and Extra Expense from Dependent Properties**

The following is added to **Business Income and Extra Expense from Dependent Properties**:

We will pay the necessary Extra Expense you incur due to direct physical loss of or damage to "dependent property" caused by or resulting from a Covered Cause of Loss.

The definition of Extra Expense for this Additional Coverage is replaced by the following:

Extra Expense means necessary expenses you incur during the "dependent property period of restoration" that you would not have incurred if there had been no direct physical loss or damage to the premises of any "dependent property" caused by or resulting from a Covered Cause of Loss:

**(1)** To avoid or minimize the "suspension" of business and to continue "operations"; or

**(2)** To minimize the "suspension" of business if you cannot continue "operations".

We will reduce the amount of your Extra Expense loss to the extent you can return "operations" to normal and discontinue such extra expense.

**(3)** Paragraph **(2)** of this Additional Coverage is replaced by the following:

**(2)** The most we will pay under this Additional Coverage is $100,000 per occurrence, regardless of the number of "dependent properties" affected.



**b.** The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, m. Business Income from Dependent Properties:**

The "dependent property" may be located anywhere in the world.

**6. Business Income from Websites**

**a.** The following is added to **SECTION I - PROPERTY A. Coverage, 5. Additional Coverages:**

**Business Income from Websites**

**(1)** You may extend this insurance to apply to a "suspension" of "operations" caused by direct physical loss or damage to property that you depend on for "web site and communications services" from a Covered Cause of Loss.

**(2)** We will not pay for any loss of Business Income you incur during the first 12 hours that immediately follows the time when you first discovered the Covered Cause of Loss. This Waiting Period does not apply to Extra Expense.

**(3)** The most we will pay for the actual loss of Business Income and necessary and reasonable Extra Expense in any one occurrence under this Additional Coverage is $50,000 and only for the 7-day period immediately following the Covered Cause of Loss.

**(4)** Coverage does not apply to Websites unless there is a duplicate or back-up copy of your Web Page stored at a location that is at least 1,000 feet away from the premises of the vendor that provides "web site and communications services".

**(5)** "Web Site and Communication Services" means:

**(a)** Internet access, e-mail, web hosting, value added network services and application software services at the premises of others; or

**(b)** Network and router infrastructure services, including cable and wireless, located more than 1,000 feet from the described premises.

**b.** This Additional Coverage is not subject to **SECTION I - PROPERTY, C. Limits of Insurance.**

**7. Catastrophe Allowance**

The following is added to **SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions:**

**Catastrophe Allowance**

**(1)** This Coverage Extension applies when the direct physical loss or damage to Covered Property from a Covered Cause of Loss is the result of an insured event for which Property Claims Service (PCS) has publicly designated a catastrophe number to the event.

**(2)** You may extend the insurance provided under this Coverage Extension if the Limit of Insurance applicable to Building and Business Personal Property, as shown in the Declarations, are insufficient to compensate you for covered loss or damage you incur as a result of the insured catastrophe event.

**(3)** This Coverage Extension may not be applied to the deductible amount of this policy or any other policy. It also may not be used to cover any loss or damage that would not be covered under this policy.

**(4)** The most we will pay under this Extension in any one occurrence is $25,000.

The most we will pay under this Extension during each separate 12 month period of this policy is $25,000.

**8. Commercial Tools and Small Equipment**

**SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, v. Commercial Tools and Small Equipment**, paragraph **(4)** is replaced by the following:

**(4)** The most we will pay for any loss under this Additional Coverage in any one occurrence is $25,000 but not more than $2,500 for any one tool, tool box or piece of small equipment.

**9. Computer Equipment**

The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, r. Computer Equipment**, paragraph **(4):**

The most we will pay for direct physical loss or damage to Covered Property listed in paragraph **(1)** above in any one occurrence while "in transit" or at a premises other than the described premises is $75,000.

## 10. Computer and Funds Transfer Fraud

**SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, hh. Computer and Funds Transfer Fraud,** paragraph **(3)** is replaced by the following:

**(3)** The most we will pay per occurrence under this Additional Coverage is $10,000 unless a higher Limit of Insurance is shown in the Schedule of Amended Limits of Insurance.

## 11. Consequential Loss to Stock

The following is added to **SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions**:

**Consequential Loss to Stock**

**(1)** You may extend the insurance that applies to your Business Personal Property to apply to the reduction in value of the remaining parts of "stock" in process of manufacture that are physically undamaged but are unmarketable as a complete product because of direct physical loss or damage from a Covered Cause of Loss to other parts of covered "stock" in process of manufacture at an insured location.

**(2)** Should it be determined that such "stock" retains only a salvage value, we retain the option of paying the full value of the "stock" as agreed within this policy, and taking the damaged property for salvage purposes.

**(3)** Payment under this Coverage Extension is included within the applicable Limit of Insurance.

## 12. Contract Penalties

The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages**:

**Contract Penalties**

**(1)** We will pay for contract penalties you are required to pay due to your failure to provide your product or service according to contract terms because of direct physical loss or damage by a Covered Cause of Loss to Covered Property.

**(2)** The most we will pay for all penalties in any one occurrence is $25,000.

**(3)** The amount payable under this Additional Coverage is additional insurance.

## 13. Deferred Payments

**SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages,** paragraph **(4)** is replaced by the following:

**(4)** The most we will pay under this Additional Coverage for loss or damage in any one occurrence at a described premises is $25,000.

## 14. Denial of Access to Premises

The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages**:

**Denial of Access to Premises**

**(1)** We will pay for the actual loss of Business Income you sustain and necessary Extra Expense you incur when ingress to or egress from the described premises is prevented, due to direct physical loss of or damage to property that is away from but within 2000 feet of the described premises, caused by or resulting from any Covered Cause of Loss covered under this policy.

**(2)** The coverage for Business Income will begin 72 hours after the loss or damage to the premises that causes the denial of access and will apply for a period of up to 30 consecutive days after coverage begins.

**(3)** The coverage for Extra Expense will begin immediately after the loss or damage to the premises that causes the denial of access and will end:

**(a)** 30 consecutive days after coverage begins; or

**(b)** When your Business Income coverage ends;

whichever is earlier.

**(4)** The definitions of Business Income and Extra Expense contained in the Business Income Additional Coverage and the Extra Expense Additional Coverage also apply to this Denial of Access to Premises Additional Coverage.

## 15. Electronic Vandalism

**SECTION I - Property, A. Coverage, 5. Additional Coverages, dd. Electronic**



**Vandalism,** paragraph **(3)** is replaced by the following:

**(3)** The most we will pay for loss of or damage to computer "hardware" or "software" in any one occurrence under this Additional Coverage is $5,000. The most we pay for all covered losses to computer "hardware" or "software" under this Additional Coverage during each separate 12-month period of this policy is $25,000.

The most we will pay under this Additional Coverage for all loss or damage sustained in any one policy year, regardless of the number of occurrences of loss or damage or the number of premises, locations or computer systems involved, is $25,000, unless a higher Limit of Insurance is shown in the Declarations. If loss payment on the first occurrence does not exhaust this amount, then the balance is available for subsequent loss or damage sustained in, but not after, that policy year. With respect to an occurrence which begins in one policy year and continues or results in additional loss or damage in a subsequent policy year(s), all loss or damage is deemed to be sustained in the policy year in which the occurrence began.

**16. Employee Theft Including ERISA Compliance**

**SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, p. Employee Theft Including ERISA**, paragraph **(6)** is replaced by the following:

**(6)** The most we will pay for all loss resulting directly from an occurrence is $50,000. Regardless of the number of years this policy remains in force or the number of premiums paid, no Limit of Insurance cumulates from year to year.

**17. Employee Tools and Work Clothing**

The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages**:

**Employee Tools**

**(1)** We will pay for direct physical loss of or damage by a Covered Cause of Loss to tools and work clothing belonging to your "employees" while such tools and work clothing are located at an insured location, your job sites or while in your vehicle "in transit" to and from your job sites.

**(2)** The most we will pay for loss or damage under this Additional Coverage is $25,000 per occurrence but not more than $2,500 for any one tool or item of clothing.

**(3)** The amount payable under this Additional Coverage is additional insurance.

**18. Expediting Expenses**

The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages**:

**Expediting Expenses**

**(1)** When a Covered Cause of Loss occurs to Covered Property, we will pay for the reasonable and necessary additional expenses you incur to:

**(a)** Make temporary repairs;

**(b)** Expedite permanent repair or replacement of damaged property; or

**(c)** Provide training on replacement machines or equipment.

**(2)** The most we will pay for loss under this Additional Coverage in any one occurrence is $25,000.

**(3)** The amount payable under this Additional Coverage is additional insurance.

**19. Extended Business Income**

**SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, f. Business Income, (2) Extended Business Income, (a) Extended Business Income - Other Than Rental Value**, paragraph **(ii)** and **(b) Extended Business Income - Rental Value**, paragraph **(ii)** are replaced by the following:

**(2)(a)** **Extended Business Income - Other Than Rental Value**

**(ii)** Ends on the earlier of:

**1)** The date you could restore your operations, with reasonable speed, to the level which would generate the business income amount that would have existed if no direct physical loss or damage had occurred; or

2) 180 consecutive days after the date determined in **(2)(a)(i)** above.

**(2)(b)** **Extended Business Income - Rental Value**

**(ii)** Ends on the earlier of:

1) The date you could restore tenant occupancy, with reasonable speed, to the level which would generate the "Rental Value" that would have existed if no direct physical loss or damage had occurred; or

2) 180 consecutive days after the date determined in **(2)(b)(i)** above.

**20. Fine Arts**

SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions, x. **Fine Arts**, paragraph **(3)** is replaced by the following:

**(3)** The most we will pay for loss under this Additional Coverage is $50,000 per occurrence regardless of the number of locations or buildings involved.

**21. Fire Department Service Charge**

SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, **c. Fire Department Service Charge** is replaced by the following:

**c.** **Fire Department Service Charge**

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay for your liability for the fire department service charges if:

**(1)** Assumed by contract or agreement prior to the loss; or

**(2)** Required by local ordinance.

**22. Fire Protection Equipment Recharge**

SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions, o. **Fire Protection Systems Recharge**, paragraph **(3)**, is replaced by the following:

**(3)** This Coverage Extension is included within the Limit of Insurance applicable to your covered property at the described premises. This Coverage Extension does not increase the Limits of Insurance.

**23. Forgery or Alteration**

SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, k. **Forgery or Alteration**, paragraph **(4)** is replaced by the following:

**(4)** The most we will pay for any loss, including legal expenses, under this Additional Coverage is $50,000, unless a higher Limit of Insurance is shown in the Schedule of Amended Limits of Insurance.

**24. Hired Auto - Physical Damage**

The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages**:

**Hired Auto - Physical Damage Coverage**

**(1)** We will pay for loss to an "auto" you or an "employee", at your direction, lease, hire or rent without a driver for a period of 30 days or less for the purpose of conducting customary operations for your business. This does not include any "auto" you lease, hire or rent from any of your "employees" or members of their households.

We will pay for loss to a covered "auto" or its equipment caused by:

**(a)** **Comprehensive coverage**

From any cause except:

**(i)** The covered "auto's" collision with another object; or

**(ii)** The covered "auto's" overturn.

**(b)** **Collision coverage**

**(i)** The covered "auto's" collision with another object; or

**(ii)** The covered "auto's" overturn.

**(2)** For the purpose of this Additional Coverage only, **SECTION I - PROPERTY, A. Coverage, 2. Property Not Covered,** paragraph **a.** is replaced by the following:

**a.** Aircraft, automobiles, motortrucks and other vehicles subject to motor vehicle registration and:

**(1)** Any "auto" as described in paragraph **(1)** above, while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity;

The Hanover Insurance Group™

OBCH332709      1304500

**(2)** Tapes, records, discs or other similar audio, visual or data electronic devices designed for use with audio, visual or data electronic equipment;

**(3)** Any device designed or used to detect speed measuring equipment such as radar or laser detectors and any jamming apparatus intended to elude or disrupt speed measurement equipment; or

**(4)** Any electronic equipment, without regard to whether this equipment is permanently installed, that receives or transmits audio, visual or data signals and that is not designed solely for the reproduction of sound.

**(3)** For the purpose of this Additional Coverage only, **SECTION I - PROPERTY, B. Exclusions** does not apply with the exception of the following exclusions:

**(a) 1.d. Nuclear Hazard**;

**(b) 1.f. War and Military Action**

For the purpose of this Additional Coverage only, the following exclusions are added to **SECTION I - PROPERTY, B. Exclusions**:

**1.** We will not pay for loss to a covered "auto" caused by or resulting from someone causing you to voluntarily part with the "auto" by trick or scheme or under false pretenses; or

**2.** We will not pay for loss caused by or resulting from wear and tear, freezing; mechanical or electrical breakdown; blowouts, punctures or other road damage to tires.

**(4)** For the purpose of this Additional Coverage only, the following is added to **SECTION I - PROPERTY, C. Limits of Insurance**:

**Hired Auto Physical Damage Limits of Insurance**

The most we will pay for loss to any one covered "auto" is the lesser of:

**a.** The actual cash value of the damaged or stolen property as of the time of loss;

**b.** The cost of repairing or replacing the damaged or stolen property

with other property of like kind and quality; or

**c.** $50,000.

**(5)** The following is added to **SECTION I - PROPERTY, D. Deductibles,** paragraph **5.**:

Hired Auto - Physical Damage

**(6)** For the purpose of this Additional Coverage only, the following is added to **SECTION I - PROPERTY, G. Property Definitions**:

**1.** "Auto" means a land motor vehicle, trailer or semitrailer that is subject to motor vehicle registration, or designed for travel on public roads, including any attached machinery or equipment.

The amount payable under this Additional Coverage is additional insurance.

This coverage is excess to any other valid insurance whether collectible or not.

**25. Installation Floater**

**SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, w. Installation**, paragraph **(8)** is replaced by the following:

**(8)** The most we will pay for loss of or to damage to property covered under this Additional Coverage in any one occurrence is $50,000, regardless if the property is located at a jobsite, while "in transit", or at a temporary storage location.

**26. Interruption of Computer Operations**

**SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, ee. Interruption of Computer Operations**, paragraph **(3)**, is replaced by the following:

**(3)** The most we will pay under this Additional Coverage - Interruption of Computer Operations for all loss sustained and expense incurred in any one policy year, regardless of the number of interruptions or the number of described premises or computer systems involved, is $50,000 unless a higher Limit of Insurance is shown in the Declarations. If loss payment relating to the first interruption does not exhaust this amount, then the balance is available for loss or expense sustained or incurred as a result of subsequent interruptions in that policy year. A balance remaining at the end of a policy year does not increase the amount of insurance in

the next policy year. With respect to any interruption which begins in one policy year and continues or results in additional loss or expense in a subsequent policy year(s), all loss and expense is deemed to be sustained or incurred in the policy year in which the interruption began.

**27. Inventory and Loss Appraisal**

**SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions, j. Inventory and Loss Appraisal**, paragraph **(2)**, is replaced by the following:

**(2)** Regardless of the number of premises involved, the most we will pay under this Extension is $20,000.

**28. Key Replacement and Lock Repair**

**SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions, g. Key Replacement and Lock Repair**, paragraph **(2)**, is replaced by the following:

**(2)** The most we will pay under this Extension is $25,000. The Deductible does not apply to this Extension.

**29. Leasehold Interest (Tenants Only)**

**a.** **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, z. Leasehold Interest (Tenants Only)**, paragraph **(2)(b)**, is replaced by the following:

**(2)(b)** $25,000;

**b.** **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, z. Leasehold Interest - Tenant**, paragraph **(4)(a)**, is replaced by the following:

**(4)(a)** $25,000 will be the maximum amount payable regardless of the number of leases affected by the same Covered Cause of Loss.

**30. Lessor's Lease Cancellation**

The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages**:

**Lessor's Lease Cancellation**

**(1)** We will pay the actual loss of business income you sustain due to the cancellation of a lease by your tenants in a Covered Building due to untenantability that is caused by direct physical loss or damage to that building from a Covered Cause of Loss.

This Additional Coverage only applies if at the time of loss the building was occupied and business was being conducted by the tenant cancelling the lease or their sub-lessee.

**(2)** We will pay for loss of business income that you sustain after tenantability is restored and until the earlier of:

**(a)** The date you lease the premises to another tenant; or

**(b)** 12 months immediately following the "period of restoration".

**(3)** Regardless of the number of tenants cancelling a lease at the described premises, the most we will pay under this Additional Coverage is $10,000 per occurrence

**(4)** The amount payable under this Additional Coverage is additional insurance.

**(5)** **Special Lease Cancellation Exclusions**

We will not pay for:

**(a)** Lease cancelled after the "period of restoration";

**(b)** Lease cancelled, suspended or allowed to lapse by you;

**(c)** Return of prepaid rent or security and other deposits made by tenants; or

**(d)** Lease cancelled at the normal expiration date.

**31. Lessor's Tenant Move Expenses**

The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages**:

**Lessor's Tenant Move Expenses**

**(1)** In the event that your tenants must temporarily vacate the covered Building at the described premises due to untenantability caused by direct physical loss or damage by a Covered Cause of Loss, we will pay the following expenses you actually incur to move those tenants out of and back into your covered Building.

**(2)** We will only pay for the following expenses:

**(a)** Packing, transporting and unpacking the tenant's Business Personal Property including the cost of insuring the move out

and back and any necessary disassembly and reassembly or setup of furniture and equipment; and

**(b)** The net cost to discontinue and re-establish the tenants' utility and telephone services, after any refunds due the tenants.

**(3)** We will only pay for these expenses that you actually incur within 60 days of the date that the damaged buildings has been repaired or rebuilt.

**(4)** Regardless of the number of tenants involved, the most we will pay under this Additional Coverage is $10,000 per occurrence. This Additional Coverage is not subject to the Limits of Insurance under **SECTION I - PROPERTY.**

**32. Marring and Scratching**

The following is added to **SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions**:

**Marring and Scratching**

**(1)** You may extend the insurance that applies to Business Personal Property to apply to damage caused directly by sudden and accidental marring and scratching of:

**(a)** Your "stock";

**(b)** Your printing plates; or

**(c)** Property of others that is in your care, custody or control.

**(2)** This Coverage Extension does not apply to:

**(a)** Property at other than the described premises; or

**(b)** Personal Property in transit.

**(3)** Payment under this Coverage Extension is included within Limit of Insurance applicable to your Business Personal Property.

**33. Money Orders and Counterfeit Money**

**SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, j. Money Orders and Counterfeit Money**, paragraph **(3)**, is replaced by the following:

**(3)** The most we will pay for any loss under this Additional Coverage is $25,000.

**34. Newly Acquired or Constructed Property**

**SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions, a. Newly Acquired or Constructed Property**, paragraphs, **(2)(c)** and **(3)** are replaced by the following:

**(2) Business Personal Property**

**(c)** The most we will pay for loss or damage under this Extension is $1,000,000 at each premises.

**(3) Business Income and Extra Expense**

You may extend the insurance that applies to Business Income and Extra Expense to apply to property at any location you acquire. The most we will pay for loss or damage under this Extension is $500,000 at each premise.

**35. Ordinance or Law - Demolition Cost and Increased Cost of Construction**

**SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, l. Ordinance or Law, (5) Loss Payment**, paragraph **(d)** is replaced by the following:

**(d)** The most we will pay for the total of all covered losses for Demolition Cost and Increased Cost of Construction for each building described in the Declarations is $50,000 or the amount shown in the Additional Property Schedule. If a damaged building(s) is covered under a Blanket Limit of Insurance and the Blanket Limit of Insurance applies to more than one building or item of property, then the most we will under this Additional Coverage, for each building, is $50,000, or the amount shown in the Additional Property Coverage Schedule.

**36. Ordinance or Law - Increased Period of Restoration**

**a.** The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, l. Ordinance or Law,** paragraph **(4) Coverage:**

If a Covered Cause of Loss occurs to property at the premises described in the Declarations, coverage is extended to include the amount of actual and necessary loss you sustain during the increased period of "suspension" of "operations" caused by or resulting from the enforcement of any ordinance or law that:

**(a)** Regulates the construction or repair of any property;

**(b)** Requires the tearing down of parts of any property not damaged by a Covered Cause of Loss; and

**(c)** Is in force at the time of loss.

However, coverage is not extended under this endorsement to include loss caused by or resulting from the enforcement of any ordinance or law which requires:

**(d)** The demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungi", wet or dry rot or bacteria; or

**(e)** Any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungi", wet or dry rot or bacteria.

**b.** The following is added to **SECTION I - PROPERTY, A. Coverage 5. Additional Coverages, I. Ordinance or Law, (5) Loss Payment**, paragraph **(c)**:

The most we will pay for loss under Increased Period of Restoration in any one occurrence is $100,000 for each described building shown in the Declarations or the amount shown in the Additional Property Coverage Schedule. If a damaged building(s) is covered on a blanket Limit of Insurance which applies to more than one building or item of property, then the most we will pay for Increased Period of Restoration for each described building in any one occurrence is $100,000.

**37. Ordinance or Law (Tenant's Improvement Extension)**

**a.** The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, I. Ordinance or Law, (4) Coverage:**

**(a)** Coverage provided under paragraphs **(a)**, **(b)** and **(c)** above applies to tenant's improvements and betterments but only if a limits of Insurance is shown in the Declarations for Business Personal Property. Business Personal Property must be insured on a replacement cost basis.

**(b)** This extension is provisional and excess to any other valid insurance for tenant's improvements and betterments whether collectible or not.

**b.** The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, I. Ordinance or Law, (5) Loss Payment**, paragraph **(c)**:

Regardless of the number of locations insured or buildings involved, the most we will pay for any loss to tenant's improvements and betterments under this Additional Coverage in any one occurrence is $50,000.

**38. Outdoor Property**

**SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions, c. Outdoor Property**, paragraph **(3)** is replaced by the following:

**(3)** Regardless of the number of described premises involved, the most we will pay for loss or damage under this Extension, including debris removal expense, is $25,000, but not more than $2,500 for any one tree, shrub or plant.

**39. Personal Effects**

**SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions, d. Personal Effects,** paragraph **(3)** is replaced by the following:

**(3)** The most we will pay for loss or damage under this Extension is $50,000 at each described premises.

**40. Portable Electronic Devices Coverage Worldwide**

The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages**:

**Portable Electronic Devices Coverage Worldwide**

**(1)** We will pay for loss or damage caused by or resulting from a Covered Cause of Loss to portable electronic devices while anywhere in the world, including while "in transit".



OBCH332709    1304500

**(2)** For the purpose of this Additional Coverage, the following is added to **SECTION I - PROPERTY, G. Property Definitions**:

Portable electronic devices includes laptops, tablets, e-readers, smartphones or other lightweight, hand-held or wearable devices capable of storing, retrieving and processing data.

**(3)** This coverage is provided when the property is owned by you or owned by others when in your or your "employees" care, custody or control, subject to **SECTION I - PROPERTY, E. Property Loss Conditions, 5. Loss Payment,** paragraph **d.(3)(b).**

**(4)** We will not pay for loss or damage to portable electronic devices when caused by, resulting from, or arising out of "theft" or unexplained loss when the property is checked baggage with a carrier for transit.

**(5)** The provisions for a Business Income loss will be governed by the terms of **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages f. Business Income** except:

   **(a)** There is no requirement that a loss occur within 1,000 feet or at the described premises as stated in paragraph **(1)(a)**; and

   **(b)** The following are not included under this Additional Coverage:

      **(i)** Continuing normal operating expenses incurred, including "payroll expense";

      **(ii)** Extended Business Income.

**(6)** The provisions for Extra Expense loss will be governed by the terms of **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, g. Extra Expense** except:

   **(a)** There is no requirement that a loss occur within 1,000 feet or at the described premises as stated in paragraph **g.(1)** and **g.(2)**.

**(7)** **Limitations**, item **b.** does not apply to this Additional Coverage.

**(8)** **SECTION I - PROPERTY, B. Exclusions, 5. Business Income and Extra Expense Exclusions,** paragraph **(4)** does not apply to this Additional Coverage.

**(9)** Regardless of the number of lost or damaged portable electronic devices, the most we will pay per occurrence including actual loss of Business Income you sustain and necessary Extra Expense you incur, is $25,000.

**(10)** The amount payable under this Additional Coverage is additional insurance.

**41. Precious Metal Theft Payment Changes**

**SECTION I - PROPERTY, A. Coverage, 4. Limitations**, paragraph **c.** is replaced by the following:

   **c.** For loss or damage by "theft", the following types of property are covered only up to the limits shown below:

      **(1)** $10,000 for furs, fur garments and garments trimmed with fur.

      **(2)** $10,000 for jewelry, watches, watch movements, jewels, pearls, precious and semi-precious stones

      This limit does not apply to jewelry and watches worth $250 or less per item.

      **(3)** $50,000 for bullion, gold, silver, platinum and other precious alloys or metals.

**42. Personal Property in Transit**

**SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions, i. Personal Property in Transit**, paragraph **(5)** is replaced by the following:

   **(5)** The most we will pay for loss or damage under this Coverage Extension is $50,000.

**43. Sales Representative Samples**

**SECTION I - PROPERTY, 5. Additional Coverages, y. Sales Representative Samples**, paragraph **(3)** is replaced by the following:

   **(3)** The most we will pay for any loss or damage under this Additional Coverage is $25,000.

**44. Soft Costs**

The following is added to **SECTION I - PROPERTY, A. Coverage, 6 Extensions**: **Soft Costs**

   **(1)** We will pay the actual "soft cost expenses" that arise out of a delay in the construction, erection or fabrication of a Covered Building that

is listed in **SECTION I - PROPERTY**, **A. Coverage**, **1. Covered Property**, paragraph **a.(6)** resulting from direct physical loss or damage to that Covered Building from a Covered Cause of Loss.

**(2)** We will only pay the necessary "soft cost expenses" that are over and above those costs that would have been incurred had there been no delay.

**(3)** The most we will pay under this Extension in any one occurrence is $10,000.

**(4)** "Soft cost expenses" means additional:

**(a)** Realty taxes and other assessments that you incur for the period of time that construction has been extended beyond the projected completion date;

**(b)** Interest on money borrowed to finance construction, remodeling, renovation or repair; and

**(c)** Advertising, public relations and promotional expenses.

**45. Spoilage**

The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages**:

The following provisions (**a.** through **g.** inclusive) apply to the insurance provided by this Additional Coverage:

**a.** For the purpose of this Additional Coverage the following is added to **SECTION I - PROPERTY, A. Coverage, 1. Covered Property**:

Covered Property means "perishable goods" at the insured locations, if the "perishable goods" are:

**a.** Owned by you and used in your business; or

**b.** Owned by others and in your care, custody or control except as otherwise provided in **SECTION I - PROPERTY, E. Property Loss Conditions, 5. Loss Payment**, paragraph **d.(3)(b)**.

**b.** The following is added to **SECTION I - PROPERTY, A. Coverage, 2. Property Not Covered**:

Property located:

**(1)** On the exterior of buildings;

**(2)** In the open; or

**(3)** In vehicles.

**c.** **SECTION I - PROPERTY, A. Coverage, 3. Covered Causes Of Loss** is replaced by the following:

**3.** **Covered Causes of Loss**

Subject to the exclusions described in item **e.** of this Additional Coverage, Covered Causes of Loss means the following:

**a.** Breakdown or Contamination, meaning:

**(1)** Change in temperature or humidity resulting from mechanical breakdown or mechanical failure of refrigerating, cooling or humidity control apparatus or equipment.

Coverage applies only while such apparatus or equipment is at the described premises shown in the Schedule; or

**(2)** Contamination by a refrigerant. Coverage applies only while the refrigerating apparatus or equipment is at the described premises.

Mechanical breakdown and mechanical failure do not mean power interruption, regardless of how or where the interruption is caused and whether or not the interruption is complete or partial.

**b.** Power Outage, meaning change in temperature or humidity resulting from complete or partial interruption of electrical power, either on or off the described premises, due to conditions beyond your control.

**d.** **SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions** does not apply.

e. **SECTION I - PROPERTY, B. Exclusions** paragraph **1.**, does not apply to this Coverage Extension except for:

**(1)** **b.,** Earth Movement;

**(2)** **c.,** Governmental Action;

**(3)** **d.,** Nuclear Hazard;

**(4)** **f.,** War and Military Action; and

**(5)** **g.,** Water.

**(6)** For the purposes of this additional coverage, the following exclusions are added to **SECTION I - PROPERTY, B. Exclusions,** paragraph **2**:

We will not pay for loss or damage caused by or resulting from:

**1.** The disconnection of any refrigerating, cooling or humidity control system from the source of power.

**2.** The deactivation of electrical power caused by the manipulation of any switch or other device used to control the flow of electrical power or current.

**3.** The inability of an electrical utility company or other power source to provide sufficient power due to:

   **a.** Lack of fuel; or

   **b.** Governmental order.

**4.** The inability of a power source at the described premises to provide sufficient power due to lack of generating capacity to meet demand.

**5.** Breaking of any glass that is a permanent part of any refrigerating, cooling or humidity control unit.

f. **Conditions**

For the purpose of this Additional Coverage, **SECTION I - PROPERTY, E. Property Loss Conditions, 5. Loss Payment**, paragraph **d.** is replaced by the following:

   **d.** We will determine the value of Covered Property as follows:

**(1)** For "perishable goods" you have sold but not delivered, at the selling price less discounts and expenses you otherwise would have had;

**(2)** For other "perishable goods", at actual cash value.

f. Regardless of the number of insured locations involved, the most we will pay under this Additional Coverage for loss or damage in any one occurrence is $25,000. This Additional Coverage is not subject to **SECTION I - PROPERTY, C. Limits of Insurance.**

**46. Temporary Relocation of Property**

The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages**:

**Temporary Relocation of Property**

**(1)** We will pay for loss of or damage to Covered Property from a Covered Cause of Loss while it is away from the described premises, if it is being stored temporarily at a location you do not own, lease or operate while the described premises is being renovated or remodeled.

**(2)** This coverage applies for 90 days after the property is first moved, but does not extend past the date on which this policy expires.

**(3)** The most we will pay under this Additional Coverage is $50,000.

**(4)** The amount payable under this Additional Coverage is additional insurance.

**47. Tenant Signs**

**SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, t. Tenant Signs**, paragraph **(4)** is replaced by the following:

**(4)** The most we will pay for loss or damage in any one occurrence is $25,000 regardless of the number of locations or buildings involved.

**48. Unauthorized Business Credit Card Use**

**SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, aa. Unauthorized Business Credit Card Use**, paragraph **(5)** is replaced by the following:

**(5)** The most we will pay for any loss including legal expenses, under this

Additional Coverage is $10,000 per occurrence.

**49. Underground Water Seepage**

The following is added to **SECTION I - PROPERTY**, **A. Coverage, 5. Additional Coverages**:

**Underground Water Seepage**

(1) We will pay for direct physical loss or damage to Covered Property at the described premises caused by or resulting from water under the ground surface pressing on, or flowing or seeping through:

(a) Foundations, walls, floor or paved surfaces;

(b) Basements, whether paved or not; or

(c) Doors, windows or other openings in any building or other structure.

**THIS IS NOT FLOOD INSURANCE OR PROTECTION FROM AN INUNDATION OF SURFACE WATER, HOWEVER CAUSED.**

This coverage is intended to provide insurance for damage by subterranean water when such event is a localized incident - not part of a general, widespread "flood" water event.

We will not pay for loss or damage to property when the subterranean water causing the Underground Water Seepage is itself caused by any "flood" or general flooding conditions - including but not limited to those enumerated under **SECTION I - PROPERTY, B. Exclusions**, paragraph **1.g. Water**.

(2) **SECTION I - PROPERTY, B. Exclusions**, paragraphs **g. Water (4)** is deleted.

(3) The most we will pay for loss in any one occurrence under this Additional Coverage is $100,000.

(4) We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds $1,000. This deductible is to apply separately to:

(a) Each building, including personal property therein;

(b) Personal property in each building if no coverage is provided on the containing building; and

(c) Personal property in the open.

The aggregate amount of this deductible in any one occurrence shall not exceed $5,000.

We will then pay the amount of loss or damage in excess of the deductible up to the applicable Limit of Insurance.

(5) **Special Underground Water Seepage Exclusions**

(a) The **Exclusions** and **Limitations** sections of **SECTION I - PROPERTY** apply to this Additional Coverage except as provided under paragraph **(b)** below.

(b) To the extent that a part of **SECTION I - PROPERTY, B. Exclusions**, paragraph **1.g. Water** might conflict with this Additional Coverage, that part of the **Water** Exclusion does not apply.

(c) This Additional Coverage does not apply to loss or damage resulting from your failure to:

(i) Keep a sump pump or its related equipment in proper working condition; or

(ii) Perform the routine maintenance or repair necessary to keep a sewer or drain free from obstructions.

**50. Unnamed Locations**

The following is added to **SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions**:

**Unnamed Locations**

a. **Personal Property and Computer Equipment**

(1) You may extend the insurance that applies to Business Personal Property and "Computer Equipment" to apply to direct physical loss or damage to Business Personal Property and "Computer Equipment" caused by or resulting from a Covered Cause of Loss while such property is located at a "client or virtual office premises".

(2) This Coverage Extension also applies to Business Personal Property and "Computer Equipment" that are:

(a) Owned by an "employee";



OBCH332709    1304500

and

**(b)** Used for your business;

While such property is located at a "client or virtual office premises" and sustains direct physical loss or damage caused by or resulting from a Covered Cause of Loss.

**(3)** This Coverage Extension does not apply to property otherwise covered under the following Additional Coverages or Coverage Extensions:

**(a)** Accounts Receivable;

**(b)** Fine Arts;

**(c)** Personal Property Off Premises

**(d)** Personal Property in Transit

**(e)** Valuable Papers and Records (Other Than Electronic Data)

**(f)** Portable Electronic Devices Coverage Worldwide

**(g)** Worldwide Property Off Premises

**(4)** The most we will pay under this Coverage Extension in any one occurrence is $10,000 regardless of the number of locations involved. The most we will pay for all covered losses under this Coverage Extension during each separate 12 month period of this policy is $25,000.

This Coverage Extension is not subject to **SECTION I - PROPERTY, C. Limits of Insurance**.

**b. Business Income and Extra Expense**

**(1)** If this policy provides for Business Income and Extra Expense coverages, you may extend the insurance that applies to the actual loss of Business Income (not including Extended Business Income) you sustain and necessary Extra Expense you incur due to the "suspension" of your business activities occurring at a "client or virtual office premises" during the "period of restoration". The "suspension" must be caused by direct physical loss or damage caused by or resulting from a Covered Cause of Loss at a

"client or virtual office premises".

**(2)** We will reduce the amount of your Business Income loss, other than Extra Expense, to the extent that you can resume operations, in whole or in part, by using any other available:

**(a)** Source of materials;

**(b)** Outlet for your products.

**(3)** If you do not resume operations or do not resume operations as quickly as possible, we will pay based on the length of time it would have taken to resume operations as quickly as possible.

**(4)** The coverage period for Business Income under this Coverage Extension:

**(a)** Begins 24 hours after the time of direct physical loss or damage caused by or resulting from a Covered Cause of Loss at the premises of a "client or virtual office premises"; and

**(b)** Ends on the date when the property at the premises of the "client or virtual office premises" should be repaired, rebuilt or replaced (to the extent necessary to resume operations) with reasonable speed and similar quality or 12 months immediately following the date of direct physical loss or damage, whichever is shorter.

**(5)** The Business Income coverage period as stated in paragraph **(a)** above does not include any increased period required due to the enforcement of any ordinance or law that:

**(a)** Regulates the construction, use or repair, or requires the tearing down of any property; or

**(b)** Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

The expiration date of this policy will not reduce the Business Income coverage period.

**(6)** The most we will pay under this Coverage Extension in any one occurrence is $10,000 regardless of the number of locations involved. The most we will pay for all covered losses under this Coverage Extension during each separate 12 month period of this policy is $50,000.

This Coverage Extension is not subject to **SECTION I - PROPERTY, C. Limits of Insurance**.

**(7)** The definition of Business Income contained in the Loss of Business Income Additional Coverage applies to this Coverage Extension.

**c.** For purposes of this Coverage Extension, "client or virtual office premises" means the interior of that portion of any building occupied by an "employee", including

**(1)** An "employee's" residence; or

**(2)** A client's business location located anywhere in the world.

**51. Utility Services (Including Overhead Transmission Lines)**

**a. SECTION I - PROPERTY**, **A. Coverage, 5. Additional Coverages, bb. Utility Services**, paragraphs **(1)** and **(2)** are replaced by the following:

**(1)** We will pay for loss of or damage to Covered Property caused by an interruption in service to the described premises. The interruption must result from direct physical loss or damage by a Covered Cause of Loss to property not on the described premises that provides the services shown in paragraph **(3)** below.

The most we will pay for loss in any one occurrence under this Additional Coverage is $50,000 at each described premises or the Limit of Insurance shown in the Additional Property Coverage Schedule.

**(2)** We will pay for the actual loss of Business Income you sustain and necessary Extra Expense you incur caused by the interruption of service at the described premises. The interruption must result from direct physical loss or damage by a Covered Cause of Loss to property not on the described premises that provides the services shown in paragraph **(3)** below.

We will only pay for loss you sustain after the first 24 hours following the direct physical loss or damage to the property described above.

The most we will pay for loss in any one occurrence under this Additional Coverage is $50,000 at each described premises or the Limit of Insurance shown in the Additional Property Coverage Schedule.

**b. SECTION I - PROPERTY**, **A. Coverage, 5. Additional Coverages, bb. Utility Services**, paragraph **(4)** is deleted.

**52. Worldwide Property Off Premises**

The following is added to **SECTION I - PROPERTY**, **A. Coverage, 6**. **Coverage Extensions**:

**Worldwide Property Off-Premises**

**(1)** You may extend the insurance that applies to your Business Personal Property and Personal Property of Others to apply to that property while it is temporarily outside the coverage territory if it is:

**(a)** Temporarily at a location you do not own, lease or operate;

**(b)** Temporarily on display or exhibit at any fair, trade show or exhibition;

**(c)** Samples of your "stock" in trade in the custody of your sales representatives; or

**(d)** While "in transit" between the described premises and a location described in **(a), (b)** or **(c)** above.

**(2)** The most we will pay for loss or damage under this Extension is $50,000.

**(3)** This Extension provides an additional amount of insurance.



OBCH332709     1304500

## B. Blanket Coverages

### 1. Accounts Receivable

**SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions, f. Accounts Receivable,** paragraph **(2)**, is replaced by the following:

**(2)** The most we will pay under this Coverage Extension for loss or damage in any one occurrence at the described premises or away from the described premises is subject to the Blanket Coverage Limit of Insurance, or the amount shown in the Additional Property Coverage Schedule.

### 2. Backup or Overflow of a Sewer, Drain or Sump

The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages**:

**Backup or Overflow of a Sewer, Drain or Sump**

**(1)** We will pay for direct physical loss or damage to Covered Property at the described premises, solely caused by or resulting from water or waterborne material carried or moved by water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment. The term drain includes a roof drain and its related fixtures.

**(2)** For the purpose of this Additional Coverage only, **SECTION I - PROPERTY, B. Exclusions,** paragraph **g. Water (3)** is deleted.

**(3)** Regardless of the number of insured locations involved, the most we will pay under this Additional Coverage for loss or damage in any one occurrence is subject to the Blanket Limit of Insurance or the amount shown in the Additional Property Coverage Schedule.

**(4) Special Sewer Backup Exclusion**

We will not pay for:

**(a)** Loss or damage from water or other materials that back-up or overflow from any sewer or drain, sump, sump pump or related equipment when it is caused by or results from any "flood", regardless of the proximity of the back-up or overflow to the "flood" condition; or

**(b)** Failure to keep a sump pump or

its related equipment in proper working condition; or

**(c)** Failure to perform routine maintenance or repair necessary to keep a sewer or drain free from obstructions.

### 3. Computer Equipment

**SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, r. Computer Equipment, paragraph (6)** is replaced by the following:

**(6)** Regardless of the number of insured locations involved, the most we will pay for loss or damage under this Additional Coverage to property described in paragraphs **(1)** and **(2)** above in any one occurrence at insured locations is subject to the Blanket Coverage Limit of Insurance, or the amount shown in the Additional Property Coverage Schedule.

The most we will pay for Extra Expense is $5,000 or the amount shown in the Additional Property Coverage Schedule in any one occurrence.

This Additional Coverage is not subject to **SECTION I - PROPERTY, C. Limits of Insurance.**

### 4. Debris Removal

**SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, a. Debris Removal,** paragraph **(4)**, is replaced by the following:

**(4)** We will pay up to the blanket limit of insurance for debris removal expense, for each location, in any one occurrence of physical loss or damage to Covered Property, if one or both of the following circumstances apply:

**(a)** The total of the actual debris removal expense plus the amount we pay for direct physical loss or damage exceeds the Limit of Insurance on the Covered Property that has sustained loss or damage.

**(b)** The actual debris removal expense exceeds 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

Therefore, if Paragraphs **(4)(a)** and/or **(4)(b)** above, apply, our total payment for direct physical loss or damage and debris removal expense may reach but will never exceed the Limit of Insurance on the Covered Property that has sustained loss or damage, plus the blanket limit of insurance.

5. **Valuable Papers and Records (Other Than Electronic Data)**

   SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions, e. Valuable

Papers and Records (Other Than Electronic Data)**, paragraph **(3)** is replaced by the following:

**(3)** Regardless of the number of locations involved, the most we will pay under this Coverage Extension for loss or damage in any one occurrence at the described premises is subject to the Blanket Limit of Insurance, or the amount shown in the Additional Coverage Schedule.

ALL OTHER TERMS, CONDITIONS, AND EXCLUSIONS REMAIN UNCHANGED.



OBCH332709     1304500

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# BUSINESSOWNERS LIABILITY SPECIAL BROADENING ENDORSEMENT

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

| SUMMARY OF COVERAGES | Limits | Page |
|---|---|---|
| 1. Additional Insured by Contract, Agreement or Permit | Included | 1 |
| 2. Additional Insured - Broad Form Vendors | Included | 2 |
| 3. Alienated Premises | Included | 3 |
| 4. Broad Form Property Damage - Borrowed Equipment, Customers Goods and Use of Elevators | Included | 3 |
| 5. Incidental Malpractice (Employed Nurses, EMT's and Paramedics) | Included | 3 |
| 6. Personal and Advertising Injury - Broad Form | Included | 4 |
| 7. Product Recall Expense | Included | 4 |
| Product Recall Expense Each Occurrence Limit | $25,000 Occurrence | 5 |
| Product Recall Expense Aggregate Limit | $50,000 Aggregate | 5 |
| Product Recall Deductible | $500 | 5 |
| 8. Unintentional Failure to Disclose Hazards | Included | 6 |
| 9. Unintentional Failure to Notify | Included | 6 |

This endorsement amends coverages provided under the Businessowners Coverage Form through new coverages and broader coverage grants. This coverage is subject to the provisions applicable to the Businessowners Coverage Form, except as provided below.

The following changes are made to **SECTION II - LIABILITY:**

1. **Additional Insured by Contract, Agreement or Permit**

   The following is added to **SECTION II - LIABILITY, C. Who Is An Insured:**

   **Additional Insured by Contract, Agreement or Permit**

   a. Any person or organization with whom you agreed in a written contract, written agreement or permit to add such person or organization as an additional insured on your policy is an additional insured only with respect to liability for "bodily injury", "property damage", or "personal and advertising injury" caused, in whole or in part, by your acts or omissions, or the acts or omissions of those acting on your behalf, but only with respect to:

   (1) "Your work" for the additional insured(s) designated in the contract, agreement or permit;

   (2) Premises you own, rent, lease or occupy; or

   (3) Your maintenance, operation or use of equipment leased to you.

   b. The insurance afforded to such additional insured described above:

   (1) Only applies to the extent permitted by law; and

   (2) Will not be broader than the insurance which you are required by the contract, agreement or permit to provide for such additional insured.

   (3) Applies on a primary basis if that is required by the written contract, written agreement or permit.

   (4) Will not be broader than coverage provided to any other insured.

   (5) Does not apply if the "bodily injury", "property damage" or "personal and advertising injury" is otherwise excluded from coverage under this Coverage Part, including any endorsements thereto.

**c.** This provision does not apply:

**(1)** Unless the written contract or written agreement was executed or permit was issued prior to the "bodily injury", "property damage", or "personal injury and advertising injury".

**(2)** To any person or organization included as an insured by another endorsement issued by us and made part of this Coverage Part.

**(3)** To any lessor of equipment:

    **(a)** After the equipment lease expires; or

    **(b)** If the "bodily injury", "property damage", "personal and advertising injury" arises out of sole negligence of the lessor.

**(4)** To any:

    **(a)** Owners or other interests from whom land has been leased if the "occurrence" takes place or the offense is committed after the lease for the land expires; or

    **(b)** Managers or lessors of premises if:

        **(i)** The "occurrence" takes place or the offense is committed after you cease to be a tenant in that premises; or

        **(ii)** The "bodily injury", "property damage", "personal injury" or "advertising injury" arises out of structural alterations, new construction or demolition operations performed by or on behalf of the manager or lessor.

**(5)** To "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or the failure to render any professional services.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" or the offense which caused the "personal and advertising injury" involved the rendering of or failure to render any professional services by or for you.

**d.** With respect to the insurance afforded to these additional insureds, the following is added to **SECTION II - LIABILITY, D. Liability and Medical Expense Limits of Insurance**:

The most we will pay on behalf of the additional insured for a covered claim is the lesser of the amount of insurance:

**1.** Required by the contract, agreement or permit described in Paragraph **a.;** or

**2.** Available under the applicable Limits of Insurance shown in the Declarations.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations

**e.** All other insuring agreements, exclusions, and conditions of the policy apply.

**2.** **Additional Insured - Broad Form Vendors**

The following is added to **SECTION II - LIABILITY, C. Who Is An Insured:**

**Additional Insured - Broad Form Vendors**

**a.** Any person or organization that is a vendor with whom you agreed in a written contract or written agreement to include as an additional insured under this Coverage Part is an insured, but only with respect to liability for "bodily injury" or "property damage" arising out of "your products" which are distributed or sold in the regular course of the vendor's business.

**b.** The insurance afforded to such vendor described above:

**(1)** Only applies to the extent permitted by law;

**(2)** Will not be broader than the insurance which you are required by the contract or agreement to provide for such vendor;

**(3)** Will not be broader than coverage provided to any other insured; and

**(4)** Does not apply if the "bodily injury", "property damage" or "personal and advertising injury" is otherwise excluded from coverage under this Coverage Part, including any endorsements thereto

**c.** With respect to insurance afforded to such vendors, the following additional exclusions apply:

The insurance afforded to the vendor does not apply to:

**(1)** "Bodily injury" or "property damage" for which the vendor is obligated to pay damages by reasons of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement;

**(2)** Any express warranty unauthorized by you;

**(3)** Any physical or chemical change in the product made intentionally by the vendor;

**(4)** Repackaging, unless unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instruction from the manufacturer, and then repackaged in the original container;

**(5)** Any failure to make such inspection, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business in connection with the sale of the product;

**(6)** Demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product;

**(7)** Products which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor;

**(8)** "Bodily injury" or "property damage" arising out of the sole negligence of the vendor for its own acts or omissions or those of its employees or anyone else acting on its behalf. However, this exclusion does not apply to:

**(a)** The exceptions contained within the exclusion in subparagraphs **(4)** or **(6)** above; or

**(b)** Such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products.

**(9)** "Bodily injury" or "property damage" arising out of an "occurrence" that took place before you have signed the contract or agreement with the vendor.

**(10)** To any person or organization included as an insured by another endorsement issued by us and made part of this Coverage Part.

**(11)** Any insured person or organization, from whom you have acquired such products, or any ingredient, part or container, entering into, accompanying or containing such products.

**d.** With respect to the insurance afforded to these vendors, the following is added to **SECTION II - LIABILITY, D. Liability and Medical Expense Limits of Insurance**:

The most we will pay on behalf of the vendor for a covered claim is the lesser of the amount of insurance:

**1.** Required by the contract or agreement described in Paragraph **a.**; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

**3. Alienated Premises**

**SECTION II - LIABILITY, B. Exclusions, 1. Applicable To Business Liability Coverage k. Damage to Property,** paragraph **(2)** is replaced by the following:

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises and occurred from hazards that were known by you, or should have reasonably been known by you, at the time the property was transferred or abandoned.

**4. Broad Form Property Damage - Borrowed Equipment, Customers Goods, Use of Elevators**

**a.** The following is added to **SECTION II - LIABILITY, B. Exclusions, 1. Applicable To Business Liability Coverage, k. Damage to Property**:

Paragraph **(4)** does not apply to "property damage" to borrowed equipment while at a jobsite and not being used to perform operations.

Paragraph **(3), (4)** and **(6)** do not apply to "property damage" to "customers goods" while on your premises nor to the use of elevators.

**b.** For the purposes of this endorsement, the following definition is added to **SECTION II - LIABILITY, F. Liability and Medical Expenses Definitions:**

**1.** "Customers goods" means property of your customer on your premises for the purpose of being:

**a.** Worked on; or

**b.** Used in your manufacturing process.

**c.** The insurance afforded under this provision is excess over any other valid and collectible property insurance (including deductible) available to the insured whether primary, excess, contingent or on any other basis.

**5. Incidental Malpractice - Employed Nurses, EMT's and Paramedics**

**SECTION II - LIABILITY, C. Who Is An Insured**, paragraph **2.a.(1)(d)** does not apply to a nurse,

emergency medical technician or paramedic employed by you if you are not engaged in the business or occupation of providing medical, paramedical, surgical, dental, x-ray or nursing services.

6. **Personal Injury - Broad Form**

   a. **SECTION II - LIABILITY, B. Exclusions, 2. Additional Exclusions Applicable only to "Personal and Advertising Injury",** paragraph **e.** is deleted.

   b. **SECTION II - LIABILITY, F. Liability and Medical Expenses Definitions, 14.** "Personal and advertising injury", paragraph **b.** is replaced by the following:

      b. Malicious prosecution or abuse of process.

   c. The following is added to **SECTION II - LIABILITY, F. Liability and Medical Expenses Definitions,** Definition **14.** "Personal and advertising injury":

      "Discrimination" (unless insurance thereof is prohibited by law) that results in injury to the feelings or reputation of a natural person, but only if such "discrimination" is:

      (1) Not done intentionally by or at the direction of:

         (a) The insured;

         (b) Any officer of the corporation, director, stockholder, partner or member of the insured; and

      (2) Not directly or indirectly related to an "employee", not to the employment, prospective employment or termination of any person or persons by an insured.

   d. For purposes of this endorsement, the following definition is added to **SECTION II - LIABILITY, F. Liability and Medical Expenses Definitions:**

      1. "Discrimination" means the unlawful treatment of individuals based upon race, color, ethnic origin, gender, religion, age, or sexual preference. "Discrimination" does not include the unlawful treatment of individuals based upon developmental, physical, cognitive, mental, sensory or emotional impairment or any combination of these.

   e. This coverage does not apply if liability coverage for "personal and advertising injury" is excluded either by the provisions of the Coverage Form or any endorsement thereto.

7. **Product Recall Expense**

   a. **SECTION II - LIABILITY, B. Exclusions, 1. Applicable To Business Liability Coverage,**

   o. **Recall of Products, Work or Impaired Property** is replaced by the following:

   o. **Recall of Products, Work or Impaired Property**

      Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

      (1) "Your product";

      (2) "Your work"; or

      (3) "Impaired property";

      If such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it, but this exclusion does not apply to "product recall expenses" that you incur for the "covered recall" of "your product".

      However, the exception to the exclusion does not apply to "product recall expenses" resulting from:

      (4) Failure of any products to accomplish their intended purpose;

      (5) Breach of warranties of fitness, quality, durability or performance;

      (6) Loss of customer approval, or any cost incurred to regain customer approval;

      (7) Redistribution or replacement of "your product" which has been recalled by like products or substitutes;

      (8) Caprice or whim of the insured;

      (9) A condition likely to cause loss of which any insured knew or had reason to know at the inception of this insurance;

      (10) Asbestos, including loss, damage or clean up resulting from asbestos or asbestos containing materials; or

      (11) Recall of "your products" that have no known or suspected defect solely because a known or suspected defect in another of "your products" has been found.

   b. The following is added to **SECTION II - LIABILITY, C. Who Is An Insured,** paragraph **3.b.:**

      "Product recall expense" arising out of any withdrawal or recall that occurred before you acquired or formed the organization.



OBCH332709    1304500

**c.** The following is added to **SECTION II - LIABILITY, D. Liability and Medical Expenses Limits of Insurance**:

**Product Recall Expense Limits of Insurance**

**a.** The Limits of Insurance shown in the SUMMARY OF COVERAGES of this endorsement and the rules stated below fix the most that we will pay under this Product Recall Expense Coverage regardless of the number of:

    **(1)** Insureds;

    **(2)** "Covered Recalls" initiated; or

    **(3)** Number of "your products" withdrawn**.**

**b.** The Product Recall Expense Aggregate Limit is the most that we will reimburse you for the sum of all "product recall expenses" incurred for all "covered recalls" initiated during the policy period.

**c.** The Product Recall Each Occurrence Limit is the most we will pay in connection with any one defect or deficiency.

**d.** All "product recall expenses" in connection with substantially the same general harmful condition will be deemed to arise out of the same defect or deficiency and considered one "occurrence".

**e.** Any amount reimbursed for "product recall expenses" in connection with any one "occurrence" will reduce the amount of the Product Recall Expense Aggregate Limit available for reimbursement of "product recall expenses" in connection with any other defect or deficiency.

**f.** If the Product Recall Expense Aggregate Limit has been reduced by reimbursement of "product recall expenses" to an amount that is less than the Product Recall Expense Each Occurrence Limit, the remaining Aggregate Limit is the most that will be available for reimbursement of "product recall expenses" in connection with any other defect or deficiency.

**g. Product Recall Deductible**

We will only pay for the amount of "product recall expenses" which are in excess of the $500 Product Recall Deductible. The Product Recall Deductible applies separately to each "covered recall". The limits of insurance will not be reduced by the amount of this deductible.

We may, or will if required by law, pay all or any part of any deductible amount, if applicable. Upon notice of our payment of a deductible amount, you shall promptly reimburse us for the part of the deductible amount we paid.

The Product Recall Expense Limits of Insurance apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for the purposes of determining the Limits of Insurance.

**d.** The following is added to **SECTION II - LIABILITY, E. Liability and Medical Expense General Conditions, 2. Duties in the Event of Occurrence, Offense, Claim or Suit**:

You must see to it that the following are done in the event of an actual or anticipated "covered recall" that may result in "product recall expense":

**(1)** Give us prompt notice of any discovery or notification that "your product" must be withdrawn or recalled. Include a description of "your product" and the reason for the withdrawal or recall;

**(2)** Cease any further release, shipment, consignment or any other method of distribution of like or similar products until it has been determined that all such products are free from defects that could be a cause of loss under this insurance.

**e.** For the purpose of this endorsement, the following definitions are added to **SECTION II - LIABILITY, F. Liability and Medical Expenses Definitions:**

**1.** "Covered recall" means a recall made necessary because you or a government body has determined that a known or suspected defect, deficiency, inadequacy, or dangerous condition in "your product" has resulted or will result in "bodily injury" or "property damage".

**2.** "Product recall expense(s)" means:

    **a.** Necessary and reasonable expenses for:

        **(1)** Communications, including radio or television announcements or printed advertisements including stationary, envelopes and postage;

**(2)** Shipping the recalled products from any purchaser, distributor or user to the place or places designated by you;

**(3)** Remuneration paid to your regular "employees" for necessary overtime;

**(4)** Hiring additional persons, other than your regular "employees";

**(5)** Expenses incurred by "employees" including transportation and accommodations;

**(6)** Expenses to rent additional warehouse or storage space;

**(7)** Disposal of "your product", but only to the extent that specific methods of destruction other than those employed for trash discarding or disposal are required to avoid "bodily injury" or "property damage" as a result of such disposal,

you incur exclusively for the purpose of recalling "your product"; and

**b.** Your lost profit resulting from such "covered recall".

**f.** This Product Recall Expense Coverage does not apply:

**(1)** If the "products - completed operations hazard" is excluded from coverage under this Coverage Part including any endorsement thereto; or

**(2)** To "product recall expense" arising out of any of "your products" that are otherwise excluded from coverage under this Coverage Part including endorsements thereto.

**8. Unintentional Failure to Disclose Hazards**

The following is added to **SECTION II - LIABILITY, E. Liability and Medical Expenses General Conditions:**

**Representations**

We will not disclaim coverage under this Coverage Part if you fail to disclose all hazards existing as of the inception date of the policy provided such failure is not intentional.

**9. Unintentional Failure to Notify**

The following is added to **SECTION II - LIABILITY, E. Liability and Medical Expenses General Conditions, 2. Duties in the Event of Occurrence, Offense, Claim or Suit:**

Your rights afforded under this Coverage Part shall not be prejudiced if you fail to give us notice of an "occurrence", offense, claim or "suit", solely due to your reasonable and documented belief that the "bodily injury", "property damage" or "personal and advertising injury" is not covered under this Policy.

ALL OTHER TERMS, CONDITIONS, AND EXCLUSIONS REMAIN UNCHANGED.

**The Hanover Insurance Group™**

OBCH332709          1304500

---

# NOTICE

---

If a claim is filed on the insured property, information on the claim may be given to the Property Insurance Loss Register (PILR) for use by insurance companies in investigating that claim as well as other claims for loss on the property. Information which may be given to PILR includes name, age and sex, current and previous addresses, loss location, insurance policy information, cause of loss, type of property, and identification of others who have an interest in the property or who are involved in the claimed loss. Such information may be collected by an insurer or an adjuster from you, your spouse, others who have an interest in the property, those who are involved in the claimed loss, and fire department personnel. Information on you may be given by PILR to insurance companies which subscribe to its services. On request, PILR will tell you whether it has information on you, will let you see and copy such information (in person or by mail), and will give you the nature and substance of such information by telephone. PILR may charge a reasonable fee for copies of information provided. If you think information on you is incomplete or inaccurate, you may request PILR to make corrections. PILR will then investigate and: (1) give your correction to subscribers who previously received such information; or (2) inform you that it refuses to make your correction and give you its reasons. If PILR refuses to make your correction, you can have a statement of the reasons for your disagreement placed in PILR; and all subscribers who received or will receive information on you will also receive a copy of the statement. Information on your claim will normally be stored by PILR for five years.

Inquiries to PILR should be addressed:

Property Insurance Loss Register
700 New Brunswick Avenue
Rahway, New Jersey 07065

231-0475 (6-89)

THIS ENDORSMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# ASBESTOS LIABILITY EXCLUSION

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of any actual or alleged:

1.  Inhaling, ingesting or prolonged physical exposure by any person to asbestos or asbestos fibers or goods or products containing asbestos;

2.  Use of asbestos in constructing or manufacturing any good, product or structure;

3.  Intentional or accidental removal including encapsulation, dispersal, sealing or disposal of asbestos or asbestos fibers from any good, product or structure;

4.  Manufacture, transportation, storage or disposal of asbestos or goods or products containing asbestos;

5.  Product manufactured, sold, handled or distributed by or on behalf of the insured which contain asbestos; or

6.  Acts or omissions of the insured in connection with the general supervision of any job involving the removal, enclosure, encapsulation, dispersal, sealing or disposal of asbestos, asbestos fibers or products containing asbestos.

General supervision includes the rendering of or failure to render any instructions, recommendations, warnings or advice.

The **Hanover**
Insurance Group™

OBCH332709          1304500

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION - FUNGI OR BACTERIA (LIABILITY)

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**A.** The following exclusion is added to **SECTION II - LIABILITY, B. Exclusions, 1. Applicable to Business Liability Coverage:**

**"Fungi" or Bacteria**

**(1)** "Bodily injury", "property damage" or "personal and advertising injury" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**(2)** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for consumption.

**B.** For the purpose of this endorsement, the following definition is added to **Section II - Liability** Paragraph **F., Liability and Medical Expenses Definitions**:

**1.** "Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by "fungi".

ALL OTHER TERMS, CONDITIONS, AND EXCLUSIONS REMAIN UNCHANGED.



OBCH332709      1304500

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The following provisions are added to the Businessowners Policy and apply to Property and Liability Coverages:

**A. CAP ON CERTIFIED TERRORISM LOSSES**

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

1. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**B.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for loss or injury or damage that is otherwise excluded under this Policy.

ALL OTHER TERMS, CONDITIONS, AND EXCLUSIONS REMAIN UNCHANGED.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION OF PUNITIVE DAMAGES RELATED TO A CERTIFIED ACT OF TERRORISM

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The following provisions are added to **Section II - Liability** paragraph **B. Exclusions** of the Businessowners Coverage Form **391-1003:**

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM PUNITIVE DAMAGES**

Damages arising, directly or indirectly, out of a "certified act of terrorism" that are awarded as punitive damages.

**B.** The following definition is added:

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**C.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Policy.

ALL OTHER TERMS, CONDITIONS, AND EXCLUSIONS REMAIN UNCHANGED.



OBCH332709     1304500

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ILLINOIS CHANGES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM
EMERGENCY EVENT MANAGEMENT

**A.** The following paragraphs are added to the BUSINESSOWNERS COVERAGE FORM:

**1.** If this Policy covers the following in **a.** and **b.** then paragraphs **2.** and **3.** apply:

**a.** Real property used principally for residential purposes up to and including a four family dwelling; or

**b.** Household or personal property that is usual or incidental to the occupancy of any premises used for residential purposes.

**2.** **SECTION I - PROPERTY, E. Property Loss Conditions, 2. Appraisal,** paragraphs **a.** and **b.** are replaced by the following:

**a.** Each party will pay its own appraiser and bear the other expenses of the appraisal and umpire equally, except as provided in **b.** below.

**b.** We will pay your appraiser's fee and the umpire's appraisal fee, if the following conditions exist:

**(1)** You demanded the appraisal; and

**(2)** The full amount of loss, as set by your appraiser, is agreed to by our appraiser or by the umpire.

**3.** **SECTION III - COMMON POLICY CONDITIONS (APPLICABLE TO SECTION I - PROPERTY AND SECTION II - LIABILITY), C. Concealment, Misrepresentation Or Fraud** is replaced by the following:

**C. Concealment, Misrepresentation Or Fraud**

**1.** This Policy is void if you or any insured commit fraud or conceal or misrepresent a fact in the process leading to the issuance of this insurance, and such fraud, concealment or misrepresentation is stated in the Policy or endorsement or in the written application for this Policy and;

**a.** Was made with actual intent to deceive; or

**b.** Materially affected either our decision to provide this insurance or the hazard we assumed.

However, this condition will not serve as a reason to void this Policy after the Policy has been in effect for one year or one policy term, whichever is less.

**2.** We do not provide coverage under this Policy to you or any other insured who, at any time subsequent to the issuance of this insurance, commit fraud or intentionally conceal or misrepresent a material fact relating to:

**a.** This Policy;

**b.** The Covered Property;

**c.** Your interest in the Covered Property; or

**d.** A claim under this Policy.

**3.** Notwithstanding the limitations stated in **C. Concealment, Misrepresentation or Fraud,** paragraph **1.** above, we may cancel this Policy in accordance with the terms of **SECTION III - COMMON POLICY CONDITIONS (APPLICABLE TO SECTION I - PROPERTY AND SECTION II - LIABILITY), A. Cancellation.**

**B. SECTION I - PROPERTY**

**1.** The following exclusion is added to **SECTION I - PROPERTY, B. Exclusions:**

**a.** We will not pay for loss or damage arising out of any act committed:

**(1)** By or at the direction of any insured; and

**(2)** With the intent to cause a loss.

**b.** However, this exclusion will not apply to deny payment to an innocent co-insured

who did not cooperate in or contribute to the creation of the loss if:

**(1)** The loss arose out of a pattern of criminal domestic violence; and

**(2)** The perpetrator of the loss is criminally prosecuted for the act causing the loss.

**c.** If we pay a claim pursuant to paragraph **B.2.b.** above, our payment to the insured is limited to that insured's insurable interest in the property less any payments we first made to a mortgagee or other party with a legal secured interest in the property. In no event will we pay more than the Limit of Insurance.

**2.** The following is added to **SECTION I - PROPERTY, E. Property Loss Conditions, 4. Legal Action Against Us**:

The two year period for legal action against us is extended by the number of days between the date the proof of loss is filed with us and the date we deny the claim in whole or in part.

**C. SECTION II - LIABILITY**

The term spouse is replaced by the following:

Spouse or party to a civil union recognized under Illinois law.

**D. SECTION III - COMMON POLICY CONDITIONS (APPLICABLE TO SECTION I - PROPERTY AND SECTION II - LIABILITY)**

**1.** **SECTION III - COMMON POLICY CONDITIONS (APPLICABLE TO SECTION I - PROPERTY AND SECTION II - LIABILITY), A. Cancellation** is replaced by the following:

**A. Cancellation**

**1.** The first Named Insured shown in the Declarations may cancel this Policy by mailing to us advance written notice of cancellation.

**2.** If this Policy has been in effect for 60 days or less, except as provided in Paragraphs **8.** and **9.** below, we may cancel this Policy by mailing written notice of cancellation at least:

**a.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**3.** If this Policy has been in effect for more than 60 days, except as provided in Paragraphs **8.** and **9.** below, we may cancel this Policy

only for one or more of the following reasons:

**a.** Nonpayment of premium;

**b.** The Policy was obtained through a material misrepresentation;

**c.** You have violated any of the terms and conditions of the Policy;

**d.** The risk originally accepted has measurably increased;

**e.** Certification to the Director of Insurance of the loss of reinsurance by the insurer which provided coverage to us for all or a substantial part of the underlying risk insured; or

**f.** A determination by the Director of Insurance that the continuation of the Policy could place us in violation of the insurance laws of this State.

If we cancel this Policy based on one or more of the above reasons except for nonpayment of premium, we will mail written notice at least 60 days before the effective date of cancellation. When cancellation is for nonpayment of premium, we will mail written notice at least 10 days before the effective date of cancellation.

**4.** We will mail our notice to you, together with our reason for cancellation, at your last mailing address known to us. Proof of mailing will be sufficient proof of notice.

**5.** Notification of cancellation will also be sent to your broker, if known, or agent of record, if known, and to the mortgagee or lienholder listed on the Policy.

**6.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

**7.** If this Policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

**8.** **Real Property Other Than Residential Properties Occupied By Four Families Or Less**

Includes copyrighted materials of Insurance Services Office, Inc. with its permission.
Copyright 2017 The Hanover Insurance Company. All Rights Reserved.

OBCH332709     1304500

The following applies only if this Policy covers real property other than residential property occupied by four families or less:

If any one or more of the following conditions exists at any building that is Covered Property in this Policy, we may cancel this Policy by mailing to you written notice of cancellation, by both certified and regular mail, if:

**a.** After a fire loss, permanent repairs to the building have not started within 60 days of satisfactory adjustment of loss, unless the delay is due to a labor dispute or weather conditions.

**b.** The building has been unoccupied 60 or more consecutive days. This does not apply to:

**(1)** Seasonal unoccupancy; or

**(2)** Building under repair, construction or reconstruction, if property secured against unauthorized entry.

**c.** The building has:

**(1)** An outstanding order to vacate;

**(2)** An outstanding demolition order; or

**(3)** Been declared unsafe in accordance with the law.

**d.** Heat, water, sewer service or public lighting have not been connected to the building for 30 consecutive days or more.

The Policy will terminate 10 days following receipt of the written notice by the Named Insured(s).

**9. Residential Properties Occupied By Four Families Or Less**

The following applies if this Policy covers residential properties occupied by four families or less:

If this Policy has been in effect for 60 days, or if this is a renewal policy, we may only cancel this Policy for one or more of the following reasons:

**a.** Nonpayment of premium;

**b.** The Policy was obtained by misrepresentation or fraud; or

**c.** Any act that measurably increases the risk originally accepted.

If we cancel this Policy based on one or more of the above reasons except for nonpayment of premium, we will mail written notice at least 30 days before the effective date of cancellation. When cancellation is for nonpayment of premium, we will mail written notice at least 10 days before the effective date of cancellation.

**2. SECTION III - COMMON POLICY CONDITIONS (APPLICABLE TO SECTION I - PROPERTY AND SECTION II - LIABILITY), H. Other Insurance, 1. SECTION I - PROPERTY** is replaced by the following:

**1. SECTION I - PROPERTY**

**a.** You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Form. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage Form bears to the Limit of Insurance of all insurance covering on the same basis.

**b.** If there is other insurance covering the same loss or damage, other than that described in **1.** above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance of **SECTION I - PROPERTY**.

**3.** The following is added to **SECTION III - COMMON POLICY CONDITIONS (APPLICABLE TO SECTION I - PROPERTY AND SECTION II - LIABILITY):**

**Nonrenewal**

**1.** If we decide not to renew or continue this Policy, we will mail to you written notice, stating the reason for nonrenewal. Proof of mailing will be sufficient proof of notice.

**2.** Except as provided in paragraph **6,** below, we will mail you notice of nonrenewal at least 60 days before the end of the policy period.

**3.** If we offer to renew or continue and you do not accept, this Policy will terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

Includes copyrighted materials of Insurance Services Office, Inc. with its permission.
Copyright 2017 The Hanover Insurance Company. All Rights Reserved.

4. If we fail to mail proper written notice of nonrenewal and you obtain other insurance, this Policy will end on the effective date of that insurance.

5. The following provision applies to policies other than those described in paragraph **6.**:

   Notification of nonrenewal will also be sent to your broker, if known, or agent of record, if known, and the mortgagee or lienholder listed on the Policy.

6. The following provision applies only if this Policy covers residential properties occupied by four families or less:

   **a.** If this Policy has been issued to you and in effect with us for five or more years, we may not fail to renew this Policy unless:

   **(1)** The Policy was obtained by misrepresentation or fraud and we mail you notice of nonrenewal at least 30 days before the end of the policy period as provided in **1.** above;

   **(2)** The risk originally accepted has measurably increased and we mail you notice of nonrenewal at least 30 days before the end of the policy period as provided in **1.** above; or

   **(3)** You received 60 days' notice of our intent not to renew as provided in paragraph **1.** above.

**b.** If this Policy has been issued to you and in effect with us for less than five years, we may not fail to renew this Policy unless you receive 30 days' notice as provided in paragraph **1.** above.

**c.** Notification of nonrenewal will also be sent to your broker, if known, or agent of record, if known, and to the last known mortgagee or lienholder.

**d.** The nonrenewal shall not become effective until at least 30 days from the proof of mailing date of the notice to you.

**E.** The following sentence is deleted from all endorsements containing **Hired Auto - Physical Damage Coverage**:

This coverage is excess to any other valid insurance whether collectible or not.

**F.** The following sentence is deleted from all endorsements containing **Ordinance or Law (Tenant's Improvement Extension):**

This extension is provisional and excess to any other valid insurance for tenant's improvements and betterments whether collectible or not.

**G.** Paragraph **G. Additional Conditions** is deleted from EMERGENCY EVENT MANAGEMENT endorsement.

**H.** The following sentence is deleted from BUSINESSOWNERS COVERAGE FORM, **SECTION E. Property Loss Conditions, 2. Appraisal:**

A decision agreed to by any two will be binding.

ALL OTHER TERMS, CONDITIONS, AND EXCLUSIONS REMAIN UNCHANGED.



OBCH332709    1304500

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE FORM
CONDOMINIUM, CO OP AND ASSOCIATION DIRECTORS AND OFFICERS LIABILITY COVERAGE FORM
CYBER LIABILITY COVERAGE PART
DATA BREACH COVERAGE FORM
EMPLOYEE BENEFITS LIABILITY COVERAGE FORM
EMPLOYMENT PRACTICES LIABILITY COVERAGE PART
FOLLOW FORM EXCESS AND UMBRELLA LIABILITY COVERAGE
RELIGIOUS INSTITUTIONS DIRECTORS, OFFICERS AND TRUSTEES LIABILITY COVERAGE PART
SCHOOL AND EDUCATORS LEGAL LIABILITY COVERAGE PART

**A.** If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year (January 1 through December 31) and we have met, or will meet, our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**B.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for loss, injury or damage that is otherwise excluded under this Coverage Part or Coverage Form.

ALL OTHER TERMS, CONDITIONS, AND EXCLUSIONS REMAIN UNCHANGED.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ASSOCIATES AND FAMILY MEMBERS ADDITIONAL COVERAGE ENDORSEMENT

This endorsement modifies insurance provided under the following:

DATA BREACH COVERAGE FORM

The following Additional Coverage is added to **SECTION A - COVERAGES** of the Data Breach Coverage Form:

**A. ASSOCIATES AND FAMILY MEMBERS ADDITIONAL COVERAGE**

As described in Paragraphs **1.** and **2.** below, we will extend certain **Data Breach Covered Services** to your "associates" and to their "family members" whose "private personal data" under the circumstances described below. This Additional Coverage does not apply to a "data breach" involving information owned or controlled by you.

**1.** An "associate" or "family member" whose "private personal data" is lost or stolen by circumstances such as the loss of a credit card, debit card, ATM card, checkbook, driver's license, or passport; or the loss of a wallet, purse, or briefcase containing any of the foregoing, may contact our Designated Service Provider for the Fraud Alert service described in **Section A - Coverages,** paragraph **1.a.(3)** of the Data Breach Coverage Form.

**2.** An "associate" or "family member" who, as a result of loss or theft of "private personal data" described in Paragraph **1.** above, becomes a victim of "identity theft" or "account takeover", may contact our Designated Service Provider for the Identity Restoration Case Management services described in **Section A - Coverages,** paragraph **1.a.(4)** of the Data Breach Coverage Form.

We will provide these services for a period of one year following the data we are notified of the initial loss of "private personal data".

**B. DEFINITIONS**

Under **Section F - Definitions**, Paragraph

**1. Account Takeover** is replaced with the following:

**1. Account Takeover**

"Account takeover", as respects "associates" or "family members", means the takeover by a third party of one or more existing deposit accounts, credit card accounts, debit card accounts, ATM cards, or lines of credit in the name of an "associate" or "family member".

"Account takeover", as respects "associates" or "family members", includes the unauthorized takeover of one or more of the "associate's" existing deposit accounts, credit card accounts, debit card accounts, ATM cards, or lines of credit by a "family member".

Under **Section F - Definitions**, the following Definitions are added:

**1.** "Associate" means an employee of the business insured under this policy.

**2.** "Family Member" means:

**a.** an "associate's" spouse, or Registered Domestic Partner, or the legal equivalent thereof; or

**b.** a relative under 23 years of age who is a dependent of the "associate".

**The Hanover**
Insurance Group™

OBCH332709      1304500

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The following exclusion is added to Paragraph **B.1. Exclusions - Applicable To Business Liability Coverage** in **Section II - Liability:**

This insurance does not apply to "bodily injury" or "personal and advertising injury" to:

**(1)** A person arising out of any:

  **(a)** Refusal to employ that person;

  **(b)** Termination of that person's employment; or

  **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" or "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraph **(a), (b)** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraph **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

   Copyright, Insurance Services Office, Inc., 2009

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES - DEFENSE COSTS

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The following is added to **Section II - Liability** Paragraph **A. Coverages:**

If we initially defend an insured or pay for an insured's defense but later determine that the claim(s) is (are) not covered under this insurance, we will have the right to reimbursement for the defense costs we have incurred.

The right to reimbursement for the defense costs under this provision will only apply to defense costs we have incurred after we notify you in writing that there may not be coverage, and that we are reserving our rights to terminate the defense and seek reimbursement for defense costs.

**BP 06 43 04 06**                Copyright, ISO Properties, Inc., 2005                **Page 1 of 1**



OBCH332709    1304500

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ILLINOIS CHANGES - DATA BREACH COVERAGE FORM

This endorsement modifies insurance provided under the following:

DATA BREACH COVERAGE FORM

**A. SECTION E - CONDITIONS**, paragraph **11.** is replaced by the following:

**11. Cancellation and Non-Renewal:**

**a.** If we decide to cancel this Coverage Part in the first 60 days, we will mail:

**(1)** 10 days' written notice of cancellation for nonpayment of premium; or

**(2)** 30 days' written notice of cancellation for any other reason.

If this Coverage Part has been in effect for 60 days or more or is a renewal of a Coverage Part we issued, then we will mail:

**(3)** 10 days' written notice of cancellation for nonpayment of premium; or

**(4)** 60 days' written notice of cancellation for one for more of the following reasons:

**(a)** The Coverage Part was obtained through a material representation;

**(b)** Any insured violated any of the terms and conditions of the policy;

**(c)** The risk originally accepted has measurably increased;

**(d)** Certification is provided to the Director of Insurance in Illinois of the loss of reinsurance by us which provided coverage to us for a substantial part of the underlying risk insured; or

**(e)** A determination is made by the Director of Insurance in Illinois that the continuation of the policy could place us in violation of the insurance laws of Illinois.

Cancellation notices will state the reason for cancellation and will be mailed to you and the agent or broker of record at the last addresses known to us. We will maintain proof of mailing on a recognized U.S. Post Office form or a form acceptable to the U.S. Post Office or other commercial mail delivery service.

**b.** If we decide not to renew this Coverage Part, we will mail or deliver written notice not less than 60 days before the expiration date to the named insured shown in the Declarations and to the agent or broker of record at the last addresses known to us. Notice will provide an explanation of the reason for nonrenewal. We will maintain proof of mailing on a recognized U.S. Post Office form or a form acceptable to the U.S. Post Office or other commercial mail delivery service.

**B. SECTION E - CONDITIONS**, paragraph **2.** is replaced by the following:

**2. Concealment, Misrepresentation Or Fraud**

**a.** This Coverage Form is void if you or any insured commit fraud or conceal or misrepresent a fact in the process leading to the issuance of this insurance, and such fraud, concealment or misrepresentation is stated in the policy or endorsement or in the written application for this policy and:

**(1)** Was made with actual intent to deceive; or

**(2)** Materially affected either our decision to provide this insurance or the hazard we assumed.

However, this condition will not serve as a reason to void this Coverage Form after the Coverage Form has been in effect for one year or one policy term, whichever is less.

**b.** This Coverage Form is void if you or any other insured, at any time subsequent to the issuance of this insurance, commit fraud or intentionally conceal or misrepresent a material fact relating to:

**(1)** This Coverage Form; or

**(2)** A claim under this Coverage Form.

**c.** Notwithstanding the limitations stated in **2.a.** above, we may cancel the Coverage Form in accordance with the terms of the Cancellation Condition.

**C.** **SECTION E - CONDITIONS,** paragraph **18.** is replaced by the following:

    **18.** **Appraisal**

    If we and you disagree on the amount of net income, operating expense or loss either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of the net income, operating expense and loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will not be binding.

    Each party will:

    **a.** Pay its chosen appraiser; and

    **b.** Bear the other expenses of the appraisal and umpire equally.

    However, we will pay your appraiser's fee and the umpire's appraisal fee, if the following conditions exist:

    **c.** You demanded the appraisal; and

    **d.** The amount of net income, operating expense and loss, as set by your appraiser, is agreed to by our appraiser or by the umpire.

If there is an appraisal, we will still retain our right to deny the claim; and you will retain your right to file suit against us.

**D.** **SECTION E - CONDITIONS,** Paragraph **5.** is replaced by the following:

    **5.** **Legal Action Against Us**

    No one may bring a legal action against us under this insurance unless:

    **a.** There has been full compliance with all of the terms of this insurance; and

    **b.** The action is brought within two years after the date we first deny the claim in whole or in part.

**E.** The following is added to **SECTION F - DEFINITIONS,** Paragraph **10. Defense Expenses:**

    "Defense Expenses" do not include our routine ongoing expenses or overhead such as salaries of our staff or our staff attorneys**.**

**F.** **SECTION E - CONDITIONS** Paragraph **8.** Subparagraph **b.** is replaced by the following**:**

    **b.** If there is other insurance covering the same "data breach", other than that described in **a.** above, we will share proportinatley with such other coverage in the benefits or amounts due for Data Breach Services, Data Breach Expense Coverages, and Additional Expense Coverages. We will not pay more than the applicable Limit of Insurance shown in the **SCHEDULE.**

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.



OBCH332709     1304500

---

| **THIS IS A CLAIMS-MADE AND REPORTED COVERAGE ENDORSEMENT.** |

# EMPLOYMENT PRACTICES LIABILITY
# INSURANCE COVERAGE ENDORSEMENT - ILLINOIS

Throughout this Coverage Endorsement (hereinafter referred to as "EPL Coverage Endorsement"), the words "you" and "your" refer to the "named insured(s)" shown in the Supplemental Declarations of this EPL Coverage Endorsement and any other person(s) or organization(s) qualifying as a "named insured" under this EPL Coverage Endorsement. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under SECTION III. WHO IS AN INSURED.

Other words and phrases that appear in "quotations" have special meaning. Refer to SECTION VII. DEFINITIONS.

The terms and conditions of the Cancellation Clause of the Common Policy Conditions, 391-1003 are hereby incorporated herein and shall apply to coverage as is afforded by this EPL Coverage Endorsement, unless specifically stated otherwise in an endorsement(s) attached hereto.

---

## SECTION I. WHAT IS COVERED

### A. Insuring Agreement

1. "We" shall pay those "losses" arising out of "your" "wrongful employment act" against "your" "employees", to which this insurance applies. The "wrongful employment act" must commence or take place after the "original inception date", but before the end of the "EPL coverage period". A "claim" or "suit" for a "wrongful employment act" must be first made against "you" during the "EPL coverage period" or any Extended Reporting Period (if applicable) and reported to "us" pursuant to the terms of this EPL Coverage Endorsement.

2. A "claim" or "suit" by a person or organization seeking damages will be deemed to have been made at the earlier of the following times:
   a. When written notice of such "claim" or "suit" is received and recorded by any "insured" or by "us", whichever comes first; or
   b. When "we" make any settlement in accordance with the terms of this EPL Coverage Endorsement.

### B. Defense

1. "We" have the right and duty to defend and appoint an attorney to defend any "claim" or "suit" brought against any "insured" for a "wrongful employment act" to which this insurance applies, even if the "claim" or "suit" is groundless or fraudulent.

2. "We" have the right to investigate and settle any "claim" or "suit" that "we" believe is proper. "You" shall be entitled to effectively associate in the defense of any "claim".

3. "We" shall pay all reasonable costs "we" ask the "insured" to incur while helping "us" investigate or defend a "claim" or "suit". "We", however, will not pay more than $100 per day for earnings lost by the "insured" because of time taken off from work.

4. "We" shall pay premiums for appeal bonds, or bonds to release property being used to secure a legal obligation, for a covered "suit". "We" shall only pay, however, for bonds valued up to "our" Aggregate EPL Limit of Liability. "We" shall have no obligation to appeal or to obtain these bonds.

5. Payments for "defense costs" are included within the Aggregate EPL Limit of Liability. They are not in addition to the Aggregate EPL Limit of Liability. "Our" duty to defend or to make payment of any "claim" or "suit pursuant to paragraphs 1-4 above, ends after the Aggregate EPL Limit of Liability has been exhausted by payment of "loss", including "defense costs".

---

## C. Transfer of Control

1. "You" may take over control of any outstanding "claim" or "suit" previously reported to "us", but only if "we", in "our" sole discretion, decide that you should, or if a court orders "you" to do so.

2. Notwithstanding subsection 1 of this Clause C, in all events, if the Aggregate EPL Limit of Liability is exhausted, "we" will notify "you" of all outstanding "claims" or "suits" and "you" will take over control of the defense. "We" will help transfer control of the "claims" and "suits" to "you".

3. "We" shall take whatever steps are necessary to continue the defense of any outstanding "claim" or "suit" and avoid a default judgment during the transfer of control to "you". If "we" do so, "we" shall not waive or give up any of "our" rights. "You" shall pay all reasonable expenses "we" incur for taking such steps after the Aggregate EPL Limit of Liability is exhausted.

## SECTION II. EXCLUSIONS-WHAT IS NOT COVERED

This insurance does not apply to:

## A. Profit or Advantage

Any liability arising out of the gaining of any profit or advantage to which an "insured" was not legally entitled. However, to the extent that a "claim" or "suit" is otherwise covered under this EPL Coverage Endorsement, we will defend a "claim" or "suit" asserting that an "insured" gained a profit or advantage to which the "insured" was not legally entitled, until such time as the "insured" is determined to have gained a profit or advantage to which the "insured" was not legally entitled;

## B. Criminal Acts

Any liability arising out of any dishonest, fraudulent, criminal, or malicious act by or at the direction of any "insured". However, to the extent that a "claim" or "suit" is otherwise covered under this EPL Coverage Endorsement we will defend a "claim" or "suit" asserting a dishonest, fraudulent, criminal or malicious act until such time as the "insured" is determined to have committed such dishonest, fraudulent, criminal or malicious act;

The "wrongful employment act(s)" of an "insured" shall not be imputed to any other "insured" for the purpose of determining the applicability of the foregoing exclusions A and B.

## C. "Property Damage"

Any liability arising out of "property damage";

## D. "Bodily Injury"

Any liability arising out of "bodily injury";

## E. Worker's Compensation, Social Security and Unemployment, Disability and Retirement Benefits

Any liability arising out of any obligation pursuant to any worker's compensation, disability benefits, unemployment compensation, unemployment insurance, retirement benefits, social security benefits or similar law. This exclusion, however, shall not apply to "loss" arising from a "claim" or "suit" for "retaliation";

## F. Contractual Liability

Any liability arising out of any actual or alleged contractual liability of any "insured" under any express contract or agreement. This exclusion, however, shall not apply to the extent any liability does not arise under such express contract or agreement;

## G. ERISA, COBRA, WARN, OSHA and NLRA

Any liability arising out of the "insured's" failure to fulfill any responsibility, duty or obligation imposed by the Employment Retirement Income Security Act of 1974 (ERISA), Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA), Worker's Adjustment and Retraining Notification Act, Public Law 100-379 (1988) (WARN), Occupational Safety and Health Act (OSHA), National Labor Relations Act of 1947 (NLRA), any rules or regulations of the foregoing promulgated thereunder, and amendments thereto or any similar provisions of any federal, state, or local statutory or common law. This exclusion, however, shall not apply to "loss" arising from a "claim" or "suit" for "retaliation";



### H. FLSA

Any liability arising out of any obligation under the Fair Labor Standards Act, or any violations of any federal, state, local or foreign statutory law or common law that governs the same topic or subject and any rules, regulations and amendments thereto (except the Equal Pay Act). This exclusion, however, shall not apply to "loss" arising from a "claim" or "suit" for "retaliation";

Any liability arising out of claims for unpaid wages or overtime pay for hours actually worked or labor actually performed by any "employee" of the "insured", for improper payroll deductions or any violations of any federal, state, local or foreign statutory law or common law that governs the same topic or subject and any rules, regulations and amendments thereto.

### I. Non-Monetary Relief

That part of any "claim" or "suit" seeking any non-monetary relief, including but not limited to: (1) injunctive relief; (2) declaratory relief; (3) disgorgement; (4) job reinstatement; (5) costs or expenses incurred in accommodating any disabled person, pursuant to the Americans with Disabilities Act of 1990 (ADA), including amendments to that law or similar federal, state or local statutory or common law; (6) any liability or costs incurred in connection with any educational, sensitivity or other corporate program, policy or seminar relating to a "claim" or "suit" alleging discrimination or other "wrongful employment act"; or (7) other equitable remedies, including as to all of the above, the cost of compliance therewith; provided, however, if such request for non-monetary relief is part of an otherwise covered "claim" or "suit", "we" will not seek to allocate "defense costs" for the portion of the "claim" or "suit" seeking non-monetary relief;

### J. Certain "Insureds"

Any "claim" or "suit" brought by any "insured". This exclusion, however, shall not apply to a "claim" or "suit" brought by an "employee" of the "insured", other than an "employee" who is or was a director of the "insured";

### K. Prior Knowledge

Any liability arising out of incidents, circumstances or "wrongful employment acts", which an "insured", prior to the "original inception date" as shown in the Supplemental Declarations of this EPL

Coverage Endorsement, had knowledge or which an "insured" could have reasonably foreseen might result in a "claim" or "suit";

### L. Prior Notice

Any liability arising out of the facts alleged, or to the same or "related wrongful employment acts" alleged or contained in any "claim" or "suit" which has been reported, or in any circumstances of which notice has been given, under any policy of which this EPL Coverage Endorsement is a renewal or replacement or which it may succeed in time;

### M. Securities Holder

Any "claim" or "suit" brought by a securities holder of the "insured" in their capacity as such, whether directly, derivatively on behalf of the "insured", or by class action;

### N. Outside Boards

Any liability arising out of any actual or alleged act or omission of an "insured" serving in any capacity, other than as a director, officer or "employee" of the "insured" entity.

## SECTION III. WHO IS AN INSURED

### A. Individual

If "you" are shown in the Supplemental Declarations of this EPL Coverage Endorsement as an individual, "you" and "your" spouse are "insureds", only for the conduct of a business of which "you" are the sole owner.

### B. Corporation

If "you" are shown in the Supplemental Declarations of this EPL Coverage Endorsement as a corporation or organization other than a partnership or joint venture, "you" and "your" "subsidiaries" are "insureds".

### C. Partnership or Joint Venture

If "you" are shown in the Supplemental Declarations of this EPL Coverage Endorsement as a partnership or joint venture, "you" are an "insured". "Your" partners or co-venturers and their spouses are also "insureds", but only for the conduct of "your" business.

### D. "Employees"

"Your" "employee", executive officers and directors are "insureds", only for the conduct of "your" business within the scope of their employment or their duties as executive officers or directors.

**E. Extensions**

1. Subject otherwise to the terms hereof, this EPL Coverage Endorsement shall cover "loss" arising from any "claims" or "suits" made against the estates, heirs, or legal representative of deceased individual "insureds", and the legal representatives of individual "insureds", in the event of incompetency, who were individual "insureds" at the time the "wrongful employment acts", upon which such "claims" or "suits" are based, were committed.

2. Subject otherwise to the terms hereof, this EPL Coverage Endorsement shall cover "loss" arising from all "claims" and "suits" made against the lawful spouse (whether such status is derived by reason of statutory law, common law or otherwise of any applicable jurisdiction in the world) of an individual "insured", including a "claim" or "suit" that seeks damages recoverable from marital community property, property jointly held by the individual "insured" and the spouse, or property transferred from the individual "insured" to the spouse; provided, however, that this extension shall not afford coverage for a "claim" or "suit" arising out of any "wrongful employment act" of the spouse, but shall apply only to "claims" or "suits" arising out of any "wrongful employment acts" of an individual "insured", subject to this EPL Coverage Endorsement's terms, conditions and exclusions.

**SECTION IV. LIMIT OF LIABILITY (including "defense costs")**

A. The Aggregate EPL Limit of Liability shown in the Supplemental Declarations of this EPL Coverage Endorsement and the information contained in this section limits the most "we" shall pay for all "loss" arising out of "claims" and "suits" first made against "insureds" during the "EPL coverage period" or Extended Reporting Period (if applicable), regardless of:

1. the number of persons or organizations covered by this EPL Coverage Endorsement; or

2. the number of "claims" made or "suits" brought; or

3. the length of the "EPL coverage period".

B. The Aggregate EPL Limit of Liability is the most "we" shall pay for all "losses" covered under this EPL Coverage Endorsement, including amounts incurred for "defense costs".

C. The Aggregate EPL Limit of Liability for the Extended Reporting Period shall be part of, and not in addition to the Aggregate EPL Limit of Liability for the "EPL coverage period".

D. All "claims" and "suits" arising from the same or "related wrongful employment acts" shall be treated as arising out of a single "wrongful employment act".

E. All "claims" or "suits" arising out of one "wrongful employment act" shall be deemed to be made on the date that the first such "claim" is made or "suit" is brought. All "claims" asserted in a "class action suit" will be treated as arising out of a single "wrongful employment act".

F. Any "claim" or "suit" which is made subsequent to the "EPL coverage period" or Extended Reporting Period (if applicable) which, pursuant to Section VI, Clause D(3) and (4) is considered made during the "EPL coverage period" or Extended Reporting Period shall also be subject to the one Aggregate EPL Limit of Liability stated in the Supplemental Declarations of this EPL Coverage Endorsement.

**SECTION V. DEDUCTIBLE**

"You" shall be responsible for the deductible amount shown in the Supplemental Declarations of this EPL Coverage Endorsement with respect to each "claim" and "suit" and "you" may not insure against it. A single deductible amount shall apply to "loss" arising from all "claims" and "suits" alleging the same "wrongful employment act" or "related wrongful employment acts". Expenses "we" incur in investigating, defending and settling "claims" and "suits" are included in the deductible. The deductible is not included within the Aggregate EPL Limit of Liability.

**SECTION VI. CONDITIONS**

"We" have no duty to provide coverage under this EPL Coverage Endorsement, unless there has been full compliance with all the Conditions contained in this EPL Coverage Endorsement.

**A. Assignment**

The interest of any "insured" is not assignable. "You" cannot assign or transfer "your" interest in this EPL



OBCH332709      1304500

Coverage Endorsement without "our" written consent attached to the EPL Coverage Endorsement.

**B. Bankruptcy or Insolvency**

"Your" bankruptcy, insolvency or inability to pay, will not relieve "us" from the payment of any "claim" or "suit" covered by this EPL Coverage Endorsement.

Under no circumstances will "your" bankruptcy, insolvency, or inability to pay require "us" to drop down, in any way replace, or assume any of "your" obligations with respect to the Deductible provisions of this EPL Coverage Endorsement.

**C. Coverage Territory**

"We" cover "wrongful employment acts" in the United States of America, its territories and possessions, Puerto Rico, or Canada, but only if the "claim" is made and the "suit" is brought for such "wrongful employment act" in the United States of America, its territories and possessions, Puerto Rico, or Canada.

**D. Duties in the Event of an Incident, "Claim" or "Suit"**

1. If, during the "EPL coverage period", incidents or events occur which "you" reasonably believe may give rise to a "claim" or "suit" for which coverage may be provided hereunder, such belief being based upon either written notice from the potential claimant or the potential claimant's representative; or notice of a complaint filed with EEOC, DOL or OFCCP (or similar federal, state or local agency); or upon a contemporaneously made memorandum of an oral "claim", allegation or threat, "you" shall give written notice to "us" as soon as practicable and either:

   a. anytime during the "EPL coverage period" or the Extended Reporting Period (if applicable); or

   b. within thirty (30) days after the end of the "EPL coverage period" or Extended Reporting Period (if applicable), as long as such "claim" or "suit" is reported no later than thirty (30) days after the date such "claim" or "suit" was first made against an "insured".

2. If a "claim" is made or a "suit" is brought against any "insured", "you" must:

   a. Immediately record the specifics of the "claim" or "suit" and the date received; and

   b. Provide "us" with written notice, as described in subsection 3. below, as soon as practicable.

3. Such written notice of "claim" or "suit" shall contain:

   a. The identity of the person(s) alleging a "wrongful employment act";

   b. The identity of the "insured(s)" who allegedly were involved in the incidents or events;

   c. The date the alleged incidents or events took place; and

   d. The written notice or contemporaneously prepared memorandum referred to above.

   If written notice is given to "us" during the "EPL coverage period" or Extended Reporting Period (if applicable), pursuant to the above requirements, then any "claim" or "suit" which is subsequently made against any "insureds" and reported to "us" alleging, arising out of, based upon or attributable to such circumstances or alleging any "related wrongful employment act" to such circumstances, shall be considered made at the time such notice of such circumstances was first given.

4. If "you" submit written notice of a "claim" or "suit", pursuant to this Clause D, then any "claim" or "suit" that may subsequently be made against an " insured" and reported to "us" alleging the same or a "related wrongful employment act" to the "claim" or "suit" for which such notice has been given shall be deemed, for the purpose of this insurance, to have been first made during the "EPL coverage period" in effect at the time such written notice was first submitted to "us".

5. "You" and any other "insured" must:

   a. Immediately send "us" copies of any demands, notices, summonses or legal papers received in connection with any "claim" or "suit";

   b. Authorize "us" to obtain records and other information;

   c. Cooperate with "us" in the investigation, settlement or defense of the "claim" or "suit";

**d.** Assist "us", upon "our" request, in the enforcement of any right against any person or organization which may be liable to the "insured" because of injury or damage to which this insurance may also apply;

**e.** Take no action, or fail to take any required action, that prejudices the rights of the "insureds" or "us" with respect to such "claim" or "suit".

**6.** No "insureds" will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense without "our" prior written consent.

**E. Transfer of Rights of Recovery Against Others to "Us"**

"You" may be able to recover all or part of a "loss" from someone other than "us". "You", therefore, shall do all that is possible after a "loss" to preserve any such right of recovery. If "we" make a payment under this EPL Coverage Endorsement, that right of recovery shall belong to "us". "You" shall do whatever is necessary, including signing documents, to help "us" obtain that recovery.

**F. Extended Reporting Period**

**1.** Solely with respect to this EPL Coverage Endorsement and except as indicated below, if "you" or "we" shall cancel or refuse to renew this EPL Coverage Endorsement, "you" shall have the right, upon payment of an additional premium of 100% of the full annual premium applicable to this EPL Coverage Endorsement, to buy an Extended Reporting Period Endorsement, providing an Extended Reporting Period of one (1) year following the effective date of the cancellation or nonrenewal, in which to give "us" written notice of "claims" first made or "suits" first brought against the "insureds" during said Extended Reporting Period for any "wrongful employment acts" which take place after the "original inception date" and before the end of the "EPL coverage period" and are otherwise covered by this EPL Coverage Endorsement.

To obtain an Extended Reporting Period Endorsement, "you" must request it in writing and pay the additional premium due, within thirty (30) days of the effective date of cancellation or nonrenewal.

**2.** The Extended Reporting Period Endorsement cannot be canceled by either party, except for nonpayment of premium. The additional premium for the Extended Reporting Period shall be fully earned at the inception of the Extended Reporting Period and this EPL Coverage Endorsement cannot be canceled after such additional premium is paid. If "we" do not receive the written request as required, "you" may not exercise this right at a later date.

**3.** This insurance, provided during the Extended Reporting Period, is excess over any other valid and collectible insurance that begins or continues in effect after the Extended Reporting Period Endorsement becomes effective, whether the other insurance applies on a primary, excess, contingent, or any other basis.

**4.** In the event of cancellation by the Insurer for the non-payment of initial premium for this EPL Coverage Endorsement as indicated in the Supplemental Declarations of this EPL Coverage Endorsement, any monies received by the Insurer as payment for the Extended Reporting Period shall be first applied to such premium owing for the policy. The Extended Reporting Period will not take effect until the premium owing for the policy is paid in full and the premium owing for the Extended Reporting Period is paid promptly when due.

**5.** In the event of a "Transaction", as defined in Clause G below, the "named insured" shall have the right, within thirty (30) days before the end of the "EPL coverage period", to request an offer from "us" of an Extended Reporting Period (with respect to "wrongful employment acts" which take place after the "original inception date" and prior to the effective time of the "Transaction"). We shall offer such Extended Reporting Period pursuant to such terms, conditions, and premium as we may reasonably decide. In the event of a "Transaction", the right to an Extended Reporting Period shall not otherwise exist except as indicated in this paragraph.



OBCH332709     1304500

**G. Change in Control of "Named Insured"**

If during the "EPL coverage period":

1. the "named insured" shall consolidate with or merge into, or sell all or substantially all of its assets to any other person or entity or group of persons or entities acting in concert; or

2. any person or entity or group of persons or entities acting in concert shall acquire an amount of the outstanding securities representing more than fifty (50%) percent of the voting power for the election of directors or General Partners of the "named insured" (in the event the "named insured" is a Partnership), or acquires the voting rights of such an amount of such securities; or

3. a General Partner of the "named insured" (in the event the "named insured" is a partnership) withdraws, resigns or is terminated;

(any of the above events herein referred to as the "Transaction"),

then this EPL Coverage Endorsement shall continue in full force and effect as to "wrongful employment acts" occurring after the "original inception date" and prior to the effective time of the "Transaction", but there shall be no coverage afforded by any provision of this EPL Coverage Endorsement for any actual or alleged "wrongful employment acts" occurring after the effective time of the "Transaction". This EPL Coverage Endorsement may not be canceled after the effective time of the "Transaction" and the entire premium for this EPL Coverage Endorsement shall be deemed earned as of such time. "You" shall also have the right to an offer by "us" of an Extended Reporting Period described in Clause F of this EPL Coverage Endorsement.

"You" shall give "us" written notice of the "Transaction" as soon as practicable, but not later than thirty (30) days after the effective date of the "Transaction".

**H. Legal Action Against "Us"**

No person or organization has the right to join "us" as a party or otherwise bring "us" into a "suit" asking for damages from an "insured".

**I. Other Insurance**

Unless expressly written to be excess over other applicable insurance, it is intended that the insurance provided by this EPL Coverage Endorsement shall be primary.

**J. EPL Coverage Endorsement Changes**

This EPL Coverage Endorsement contains all the agreements between "you" and "us" concerning this insurance. The first "named insured" in the Supplemental Declarations of this EPL Coverage Endorsement is authorized to request changes in this EPL Coverage Endorsement. This EPL Coverage Endorsement can only be changed by a written endorsement "we" issue and make part of this EPL Coverage Endorsement.

**K. Representations**

Any and all relevant provisions of this EPL Coverage Endorsement may be voidable by "us" in any case of fraud, intentional concealment, or misrepresentation of material fact by any "insured".

**L. Special Rights and Duties of the "Named Insured"**

"You" agree that when there is more than one person and/or entity covered under this EPL Coverage Endorsement, the "named insured" in the Supplemental Declarations of this EPL Coverage Endorsement shall act on behalf of all "insureds" as to:

1. Giving of notice of a "claim" or "suit";

2. Giving and receiving notice of cancellation or nonrenewal;

3. Payment of premiums and receipt of return premiums;

4. Acceptance of any endorsements issued to form a part of this EPL Coverage Endorsement; or

5. Purchasing or deciding not to purchase the Extended Reporting Period Endorsement.

**M. Headings**

The description in the headings of this EPL Coverage Endorsement are solely for convenience, and form no part of the terms and conditions of coverage.

---

**SECTION VII. DEFINITIONS**

**A.** "Bodily injury" means physical injury, sickness, or disease, including death resulting therefrom

**B.** "Claim" means a written demand for money. The term "claim" shall also mean an Equal Employment Opportunity Commission (EEOC), Department of Labor (DOL) or Office of Federal Contract Compliance Program (OFCCP) (or similiar

federal, state or local agency) proceeding or investigation commenced by the filing of a notice of charges, service of a complaint or similar document of which notice has been given to "you". However, in no event, shall the term "claim" include any labor or grievance proceeding, which is subject to a collective bargaining agreement.

**C.** "Class Action Suit" means any suit seeking certification or certified as a class action by a federal or state court.

**D.** "Defense Costs" means reasonable and necessary fees, costs and expenses consented to by "us" resulting solely from the investigation, adjustment, defense and appeal of a "claim" or "suit" against "you". In no event shall "Defense Costs" include "your" or "our" routine on-going expenses, including, without limitation, the salaries of "your" "employees", officers or staff attorneys.

**E.** "Employee" means an individual whose labor or service is engaged by and directed by "you" for remuneration, whether such individual is in a supervisory, co-worker or subordinate position or otherwise, including any part-time, seasonal, and temporary "employees". Independent contractors and individuals who are leased to the "insured " are not "employees".

**F.** "Loss(es)" means damages (including front pay and back pay), judgments, settlements, statutory attorney fees, and "defense costs", however, "loss" shall not include: (1) civil or criminal fines or penalties imposed by law; (2) punitive or exemplary damages; (3) the multiplied portion of multiplied damages; (4) taxes; (5) any amount for which the "insureds" are not financially liable or which are without legal recourse to the "insureds"; (6) employment related benefits, stock options, perquisites, deferred compensation or any other type of compensation other than salary, wages or bonus compensation; (7) matters which may be deemed uninsurable under the law pursuant to which this EPL Coverage Endorsement shall be construed; or (8) any pre-judgment or post-judgment interest on any judgment.

**G.** "Named Insured" means the person or organization designated in the Supplemental Declarations page of this EPL Coverage Endorsement.

**H.** "Original inception date" refers to the date specified in the Supplemental Declarations of this EPL Coverage Endorsement.

**I.** "EPL coverage period" means the period commencing on the effective date shown in the Supplemental Declarations of this EPL Coverage Endorsement. This period ends on the earlier of the expiration date or the effective date of cancellation of this EPL Coverage Endorsement. If "you" became an "insured" under this EPL Coverage Endorsement after the effective date, the "EPL coverage period" begins on the date "you" became an "insured".

**J.** "Property Damage" means physical injury to, or destruction of, tangible property including the loss of use thereof, or loss of use of tangible property, which has not been physically injured or destroyed.

**K.** "Related Wrongful Employment Act(s)" means "wrongful employment acts" which are the same, related or continuous, or "wrongful employment acts" which arise from a common nucleus of facts. "Claims" or "suits" can allege "related wrongful employment acts", regardless of whether such "claims" or "suits" involve the same or different claimants, "insureds" or legal causes of actions.

**L.** "Retaliation" means a "wrongful employment act" of an "insured" alleged to be in response to, the actual or attempted exercise by an "employee" of any right that such "employee" has under the law. Provided, however, "retaliation" shall not include the "wrongful employment act" of an "insured" alleged to be in response to the threat of or the actual filing of any claim or suit under the Federal False Claims Act or any other federal state, local or foreign "whistleblower law".

**M.** "Subsidiary" means:

  **1.** Any for-profit organization which, on or before the inception of the "EPL coverage period", is more than 50% owned by the "named insured", either directly or indirectly through one or more of its "subsidiaries"; or

  **2.** A for-profit organization which becomes a "subsidiary" during the "EPL coverage period", but only upon the condition that within 90 days of its becoming a "subsidiary", the "named insured" shall have provided "us" with full particulars of the new "subsidiary" and agreed to any additional premium or amendment of the provisions of this EPL Coverage Endorsement required

The
**Hanover**
Insurance Group™

OBCH332709    1304500

by "us" relating to such new "subsidiary". Further, coverage as shall be afforded to the new "subsidiary" is conditioned upon the "named insured" paying when due any additional premium required by "us" relating to such new "subsidiary".

An organization becomes a "subsidiary" when the "named insured" owns more than fifty (50%) percent ownership interest in such "subsidiary", either directly, or indirectly through one or more of its "subsidiaries". An organization ceases to be a "subsidiary" when the "named insured" ceases to own more than a fifty (50%) percent ownership in such "subsidiary", either directly, or indirectly through one or more of its "subsidiaries".

In all events, coverage as is afforded under this EPL Coverage Endorsement with respect to a "claim" made or "suit" brought against any "subsidiary" or an "insured" of any "subsidiary", shall only apply to "wrongful employment act(s)" commenced or allegedly commenced after the effective time that such "subsidiary" became a "subsidiary", and prior to the time that such "subsidiary" ceased to be a "subsidiary".

**N.** "Suit" means a civil proceeding or an administrative proceeding seeking money damages, and includes an arbitration, mediation or any other alternative dispute resolution procedure seeking such damages, to which the "insured" must submit or may submit with "our" consent. "Suit" shall not include any civil proceeding or administrative proceeding arising from any labor or grievance dispute which is subject to a collective bargaining agreement.

**O.** "Whistleblower law" means a statute, rule or regulation, which protects an employee against discrimination from his or her employer, if the employee discloses or threatens to disclose to a superior or any governmental agency; or who gives testimony relating to, any action with respect to the employer's operations, which may be a violation of public policy as reflected in legislation, administrative rules, regulations or decisions, judicial decisions, and professional codes of ethics.

**P.** "Wrongful Employment Act(s)" means any actual or alleged:

**1.** wrongful dismissal, discharge or termination (either actual or constructive), including breach of an implied contract;

**2.** harassment (including sexual harassment, whether quid pro quo, hostile work environment or otherwise);

**3.** discrimination (including but not limited to discrimination based upon age, gender, race, color, national origin, religion, sexual orientation or preference, pregnancy or disability);

**4.** "retaliation" (including lockouts);

**5.** employment-related misrepresentation(s) to "your" "employee" or applicant for employment with "you";

**6.** employment-related libel, slander, humiliation, mental anguish, infliction of emotional distress, defamation, or invasion of privacy;

**7.** wrongful failure to employ or promote;

**8.** wrongful deprivation of career opportunity, wrongful demotion or negligent "employee" evaluation, including the giving of negative or defamatory statements in connection with an "employee" reference;

**9.** wrongful discipline;

**10.** failure to grant tenure;

**11.** failure to provide or enforce adequate or consistent corporate policies and procedures relating to any "wrongful employment act"

**12.** negligent supervision or hiring by an "insured", relating to any of the above;

**13.** violation of an individual's civil rights relating to any of the above.



OBCH332709        1304500

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## REVISED INFRINGEMENT OF COPYRIGHT, PATENT, TRADEMARK OR TRADE SECRETS EXCLUSION

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

Under **SECTION II - LIABILITY, B. Exclusions,** paragraph **2.m.** is replaced in its entirety with the following:

**m.    Infringement of Copyright, Patent, Trademark or Trade Secret**

Arising out of the theft, misappropriation, misuse, infringement or contributory infringement of any copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**391-1371 01 10**        Includes copyrighted material of Insurance Services Office., Inc., with its permission        **Page 1 of 1**

195

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## AMENDMENT - LIMITS OF INSURANCE PERSONAL AND ADVERTISING INJURY SEPARATE LIMIT

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**A.** Under **SECTION II - LIABILITY, D. Liability and Medical Expenses Limits of Insurance,** Paragraph **2.** is replaced with the following:

**2.** The most we will pay for the sum of all damages because of all "Bodily injury", "property damage" and medical expenses arising out of any one "occurrence" are the Liability limit and the Medical Expenses limit, respectively, shown in the Declarations.

But the most we will pay for all medical expenses because of "bodily injury" sustained by any one person is the Medical Expenses limit shown in the Declarations.

**B.** Under **SECTION II - LIABILITY, D. Liability and Medical Expenses Limits of Insurance,** the following is added:

The most we will pay for the sum of all damages because of "personal and advertising injury" sustained by any one person or organization is the same as the Business Liability Limit shown in the Declarations.



OBCH332709     1304500

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# PRODUCTS-COMPLETED OPERATIONS AGGREGATE LIMIT OF INSURANCE

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

### SCHEDULE

| | | |
|---|---|---|
| **Products-Completed Operations Aggregate Limit Of Insurance:** | $ | 1,000,000 |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | |

**Section III - Limits Of Insurance** is replaced by the following:

1. The Limits Of Insurance shown in the Declarations and the Schedule of this endorsement, and the following rules fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made, "suits" brought, or number of vehicles involved; or

   c. Persons or organizations making claims or bringing "suits".

2. The Aggregate Limit is the most we will pay for the sum of all "ultimate net loss" under:

   a. Coverage **A,** except "ultimate net loss" because of "bodily injury" or "property damage":

      (1) Arising out of the ownership, maintenance or use of a "covered auto"; or

      (2) Included in the "products-completed operations hazard"; and

   b. Coverage **B.**

3. The Products-Completed Operations Aggregate Limit shown in the Schedule of this endorsement is the most we will pay for the sum of all "ultimate net loss" under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of all "ultimate net loss" under Coverage **A** because of all "bodily injury" and "property damage" arising out of any one "occurrence".

5. Subject to Paragraph **2.** above, the Personal and Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all "ultimate net loss" because of all "personal and advertising injury" sustained by any one person or organization.

The Aggregate Limits, as described in Paragraphs **2.** and **3.** above, apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

Copyright, ISO Properties, Inc., 2005



OBCH332709     1304500

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AUTO EXCLUSION OF TERRORISM COVERAGE

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

**A.** The provisions of this endorsement:

**1.** Apply only to "bodily injury" or "property damage" arising out of the ownership, maintenance or use of any "auto" that is a "covered auto" under this Coverage Part; and

**2.** Supersede the provisions of any other endorsement addressing terrorism attached to this Coverage Part only with respect to "bodily injury" or "property damage" arising out of the ownership, maintenance or use of any "auto" that is a "covered auto".

**B.** The following definitions are added and apply under this endorsement wherever the term terrorism, or the phrase any injury or damage, are enclosed in quotation marks:

**1.** "Terrorism" means activities against persons, organizations or property of any nature:

**a.** That involve the following or preparation for the following:

**(1)** Use or threat of force or violence; or

**(2)** Commission or threat of a dangerous act; or

**(3)** Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

**b.** When one or both of the following applies:

**(1)** The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

**(2)** It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

**2.** "Any injury or damage" means any injury or damage covered under any Coverage Part or underlying insurance to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part or underlying insurance.

**C.** The following exclusion is added:

**EXCLUSION OF TERRORISM**

We will not pay for "any injury or damage" caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". "Any injury or damage" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to such injury or damage. **But this exclusion applies only when one or more of the following are attributed to an incident of "terrorism":**

**1.** The "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

**2.** Radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or

**3.** The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

**4.** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials; or

5. The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

6. Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

   a. Physical injury that involves a substantial risk of death; or

   b. Protracted and obvious physical disfigurement; or

   c. Protracted loss of or impairment of the function of a bodily member or organ.

Multiple incidents of "terrorism" which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the thresholds in Paragraphs **C.5.** or **C.6.** are exceeded.

With respect to this Exclusion, Paragraphs **C.5.** and **C.6.** describe the threshold used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply, for the purpose of determining whether this Exclusion will apply to that incident. When the Exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Part.

In the event of any incident of "terrorism" that is not subject to this Exclusion, coverage does not apply to "any injury or damage" that is otherwise excluded under this Coverage Part.

Copyright, ISO Properties, Inc., 2006



OBCH332709     1304500

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION OF PUNITIVE DAMAGES
# RELATED TO A CERTIFIED ACT OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM PUNITIVE DAMAGES**

Damages arising, directly or indirectly, out of a "certified act of terrorism" that are awarded as punitive damages.

**B.** The following definition is added:

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

  **1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

  **2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**C.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.

**CU 21 36 01 15**          Copyright, Insurance Services Office, Inc., 2015          **Page 1 of 1**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# COMMERCIAL UMBRELLA
# "YOUR PRODUCT" AND "YOUR WORK" COVERAGE ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE FORM

**A.** The following is added to **SECTION I - COVERAGES; COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE,** Paragraph **2. Exclusions,** Exclusion **s. Professional Services** and **SECTION I - COVERAGES; COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY,** Paragraph **2. Exclusions,** Exclusion **(15) Professional Services:**

However, this exclusion does not apply to "Bodily Injury", "Property Damage" and "Personal and Advertising Injury" arising out of "your product" and "your work".

**B.** For the purposes of this endorsement, "your product" and "your work" mean any of the following that are created, manufactured, developed, modified, distributed, installed, licensed, leased, performed or sold by you or on your behalf to others**:**

**1.** Computer or telecommunications hardware, components, firmware, software or any related electronic product, equipment or device

**2.** Computer software, including software up-dates, services packs or other maintenance releases

**3.** Application hosting

**4.** Computer facility management

**5.** Custom programming

**6.** Data processing, preparation, management, hosting or storage

**7.** Information technology consulting, project management, staff augmentation or placement

**8.** Network management

**9.** Repair or maintenance of computer products, networks or systems

**10.** System support, systems analysis, design, programming or integration

**11.** Training in the use of any technology products

**12.** Website design, programming, maintenance or hosting

**13.** Digital subscriber lines (DSL) and integrated services digital network (ISDN) services

**14.** Internet connectivity services and internet hosting services

**15.** Local, regional and long distance wireline and wireless dial tone access and switched services, including directory assistance, toll free services, voicemail, call forwarding, call waiting and caller ID

**16.** Paging services

**17.** Telecommunication consulting services

**18.** Video conferencing services

**19.** Voice over internet protocol (VOIP) services

**20.** Application service provider services

**21.** Data backup services

**22.** Domain name registration services

**23.** E-Commerce transaction services

**24.** Email services

**25.** Internet search or navigation

**C.** However, this insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering or failure to render "your product" or "your work" involved with or related to:

**1.** Emergency response systems or services;

**2.** Medical diagnostic services or processes;

**3.** Aviation, aerospace, or military applications or operations, including weapons systems;

**4.** Pollution or environmental control, testing, monitoring or remediation; or

**5.** Physical security including but not limited to fire, sprinkler, smoke, burglar alarm or monitoring systems or access control.

**D.** None of the Additional Insureds given insured status by the "underlying insurance" have any insured status whatsoever for coverage provided by this endorsement.

Notwithstanding any coverage afforded in the "underlying insurance", this policy does not apply to any professional liability coverage afforded by any Technology Professional Advantage for Avenues Coverage Part.

ALL OTHER TERMS, CONDITIONS, AND EXCLUSIONS REMAIN UNCHANGED.

**The Hanover Insurance Group**

OBCH332709          1304500

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

COMMERCIAL UMBRELLA

**REVISED INFRINGEMENT OF COPYRIGHT, PATENT, TRADEMARK OR TRADE SECRETS EXCLUSION**

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE FORM

Under **SECTION I - COVERAGES, COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY 2. Exclusions** paragraph **(9)** is replaced in its entirety with the following:

**(9)    Infringement    of    Copyright,    Patent, Trademark or Trade Secret**

Arising out of the theft, misappropriation, misuse, infringement or contributory infringement of any copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**.

**COMMERCIAL UMBRELLA**

**EXCLUSION - AIRCRAFT PRODUCTS, GROUNDING, AND TESTING**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of:

1. "Aircraft products" or reliance upon any representation or warranty made with such product; or

2. The "Grounding" of any aircraft; or

3. The "Testing" of any aircraft.

"Aircraft products" mean:

1. Aircraft, including but not limited to  missiles or spacecraft, or any other aircraft goods or products you manufacture, sell, handle or distribute; or
2. Aircraft and any ground support or control equipment used in connection therewith; or
3. Any product provided by the insured and installed or used in connection with any aircraft; or
4. Any tooling used in respect to any aircraft; or
5. Training and Navigational aids, instructions, manuals, blueprints, engineering or other data in connection with any aircraft; or
6. Any advice, service or labor supplied in connection with any aircraft; or
7. Services you or others trading under your name provide or recommend for use in the manufacture, repair, operation, maintenance or use of any aircraft.

"Grounding" means:

The withdrawal of one or more aircraft from flight operations or the imposition of speed, passenger or load restrictions on such aircraft, due to the existence of or alleged or suspected existence of:

**a.** any defect, fault or condition in such aircraft or any part sold, handled or distributed by you or that is manufactured, assembled or processed by any other person or organization according to your specifications, plans, suggestions, orders or drawings; or

**b.** any defect, fault or condition with tools, machinery or other equipment furnished to such persons or organizations by you

Whether such withdrawn aircraft are owned or operated by the same or different persons or organizations.

"Grounding" shall be deemed to commence  on the  date  of an  "occurrence"  which discloses the necessity of "grounding" or on the date of an aircraft is first withdrawn from service because of such condition, whichever occurs first.

"Testing", means examination, observation, evaluation or measuring of the performance  of  "aircraft products", while either in the air or on the ground.



OBCH332709    1304500

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# RECORDING AND DISTRIBUTION OF MATERIAL OR INFORMATION IN VIOLATION OF LAW EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

**A.** Exclusion **u.** of Paragraph **2. Exclusions** of Section **I - Coverage A - Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**u. Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA);or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

**B.** Exclusion **a.(17)** of Paragraph **2. Exclusions** of Section **I - Coverage B - Personal And Advertising Injury Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**a.** "Personal and advertising injury":

**(17) Recording And Distribution Of Material Or Information In Violation Of Law**

Arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(a)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(b)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(c)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

**(d)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

 Copyright, Insurance Services Office, Inc., 2008

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**COMMERCIAL UMBRELLA**

**EXCLUSION - LEAD POISONING LIABILITY**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of any actual or alleged lead poisoning due to:

1.  The inhalation of, ingestion of, or prolonged physical exposure to any premises, structure, good, or product containing lead by any person; or

2.  The use of lead in the construction or manufacture of any good, product, or structure; or

3.  Either intentional or accidental removal, including encapsulation, dispersal, sealing, or disposal of any good, product, or structure containing lead; or

4.  The manufacture, transportation, storage, or disposal of good or product containing lead; or

5.  The manufacture, sale, handling, or distribution of any good or product containing lead by or on behalf of an insured; or

6.  An act or omission of an insured in connection with the general supervision of any job which involves the removal, enclosure, encapsulation, dispersal, sealing, or disposal of any premises, structure, good, product, or material containing lead.  General supervision includes the rendering of or failure to render any instructions, recommendations, warnings, or advice.

The
**Hanover**
Insurance Group™

OBCH332709     1304500

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**COMMERCIAL UMBRELLA**

**ASBESTOS LIABILITY EXCLUSION**

This insurance does not apply to "bodily injury", "property damage "or "personal and advertising injury" arising out of any actual or alleged:

1.  Inhaling, ingesting or prolonged physical exposure by any person to asbestos or asbestos fibers or goods or products containing asbestos;

2.  Use of asbestos in constructing or manufacturing any good, product or structure;

3.  Intentional or accidental removal including encapsulation, dispersal, sealing or disposal of asbestos or asbestos fibers from any good, product or structure;

4.  Manufacture, transportation, storage or disposal of asbestos or goods or products containing asbestos;

5.  Product manufactured, sold, handled or distributed by or on behalf of the insured which contain asbestos; or

6.  Acts or omissions of the insured in connection with the general supervision of any job involving the removal, enclosure, encapsulation, dispersal, sealing or disposal of asbestos, asbestos fibers or products containing asbestos.  General supervision includes the rendering of or failure to render any instructions, recommendations, warnings or advice.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**COMMERCIAL UMBRELLA**

**AMENDATORY ENDORSEMENT**

Exclusion **s. (9)** of Paragraph **2. Exclusions of Section I - Coverage A - Bodily Injury and Property Damage Liability** is replaced with the following:

**(9)** Services in the practice of pharmacy.

Exclusion **(15) (i)** of Paragraph **2., Exclusions of  Section I - Coverage B - Personal and Advertising Injury Liability** is replaced with the following:

 **(i)** Services in the practice of pharmacy.

Exclusion **f.** of Paragraph **2**. Exclusions of **Section I - Coverage A - Bodily Injury and Property Damage Liability** is replaced with the following:

**f. Auto Coverages**

**(1)** "Bodily injury" or "property damage" arising out of the ownership, maintenance or use of any "auto" which is not a "covered auto"; or

**(2)** Any loss, cost or expense payable under or resulting from any first party physical damage coverage; no-fault law; personal injury protection or auto medical payments coverage; or uninsured or underinsured motorist law.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any "auto" that is owned or operated by or rented or loaned to any insured.

Paragraph **5 Other Insurance of Section IV - Conditions** is replaced with the following:

**5.  Other Insurance**

This policy shall apply in excess of all "underlying insurance" whether or not valid and collectible.  It shall also apply in excess of other valid and collectible insurance (except other insurance purchased specifically to apply in excess of this insurance) which also applies to any loss for which insurance is provided by this policy.

These excess provisions apply, whether such other insurance is stated to be:

1. Primary;
2. Contributing;
3. Excess; or
4. Contingent.

**13.  Maintenance of Underlying Insurance**

The "underlying insurance" listed in the schedule of "underlying insurance" in the declarations shall remain in full effect throughout the policy period except for reduction of the aggregate limit due to payment of claims, settlement, or judgments.  This means:

1. The terms, conditions and endorsements of "underlying insurance" will not materially change;
2. Renewals or replacements of "underlying insurance" will not be more restrictive in coverage; and
3. "Underlying insurance" may not be canceled or non-renewed without notifying us.

The
**Hanover**
Insurance Group.

OBCH332709     1304500

Failure to maintain "underlying insurance" will not invalidate this insurance.  However, this insurance will apply as if the "underlying insurance" were in full effect.

You must notify us as soon as practicable when any "underlying insurance" is no longer in effect.

**Section V - Definitions**

**1.  9. f. is replaced with the following:**

That part of any contract or agreement entered into, as part of your business, pertaining to the rental or lease, by you or any of your "employees", of any "covered auto". However, such contract or agreement shall not be considered an "insured contract" to the extent that it obligates you or any of your "employees" to pay for "property damage" to any "covered auto" rented or leased by you or any of your "employees".

**2.**  11. "Loading and unloading" is replaced with the following:

**11.**  "Loading or unloading" means the handling of property:
   a.  After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft, or "auto";
   b.  While it is in or on an aircraft, watercraft, or "auto"; or
   c.  While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES - CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

**A.** The **Cancellation** Common Policy Condition is replaced by the following:

**CANCELLATION**

**1.** The first Named Insured shown in the Declarations may cancel this policy by mailing to us advance written notice of cancellation.

**2.** We may cancel this policy by mailing to you written notice stating the reason for cancellation. If we cancel:

  **a.** For nonpayment of premium, we will mail the notice at least 10 days prior to the effective date of cancellation.

  **b.** For a reason other than nonpayment of premium, we will mail the notice at least:

   **(1)** 30 days prior to the effective date of cancellation if the policy has been in effect for 60 days or less.

   **(2)** 60 days prior to the effective date of cancellation if the policy has been in effect for more than 60 days.

**3.** If this policy has been in effect for more than 60 days or is a renewal or continuation policy, we may cancel only for one or more of the following reasons:

  **a.** Nonpayment of premium;

  **b.** The policy was obtained through a material misrepresentation;

  **c.** Any insured has violated any of the terms and conditions of the policy;

  **d.** The risk originally accepted has measurably increased;

  **e.** Certification to the Director of Insurance of the loss of reinsurance by the insurer that provided coverage to us for all or a substantial part of the underlying risk insured; or

  **f.** A determination by the Director of Insurance that the continuation of the policy could place us in violation of the insurance laws of this State.

**4.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

**5.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund will be less than pro rata. The cancellation will be effective even if we have not offered a refund.

**B.** Condition **10. When We Do Not Renew** is replaced by the following:

If we decide not to renew or continue this policy, we will mail you and your agent or broker written notice, stating the reason for nonrenewal, at least 60 days before the end of the policy period. If we offer to renew or continue and you do not accept, this policy will terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

If we fail to mail proper written notice of nonrenewal and you obtain other insurance, this policy will end on the effective date of that insurance.

**C. Mailing Of Notices**

We will mail cancellation and nonrenewal notices to you, and the agent or broker, at the last addresses known to us. Proof of mailing will be sufficient proof of notice.



OBCH332709    1304500

# COMMERCIAL LIABILITY UMBRELLA COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** - Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** - Definitions.

## SECTION I - COVERAGES

## COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

**a.** We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking damages for such "bodily injury" or "property damage" when the "underlying insurance" does not provide coverage or the limits of "underlying insurance" have been exhausted. When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other "suit" seeking damages to which this insurance may apply. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. At our discretion, we may investigate any "occurrence" that may involve this insurance and settle any resultant claim or "suit", for which we have the duty to defend. But:

**(1)** The amount we will pay for the "ultimate net loss" is limited as described in Section **III** - Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages **A** and **B**.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.a.** of Section **II** - Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.a.** of Section **II** - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.a.** of Section **II** - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

## 2. Exclusions

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

This exclusion does not apply to the extent that valid "underlying insurance" for the liquor liability risks described above exists or would have existed but for the exhaustion of underlying limits for "bodily injury" and "property damage". Coverage provided will follow the provisions, exclusions and limitations of the "underlying insurance" unless otherwise directed by this insurance.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. E.R.I.S.A.**

Any obligation of the insured under the Employees' Retirement Income Security Act (E.R.I.S.A.), and any amendments thereto or any similar federal, state or local statute.

**f. Auto Coverages**

**(1)** "Bodily injury" or "property damage" arising out of the ownership, maintenance or use of any "auto" which is not a "covered auto"; or

**(2)** Any loss, cost or expense payable under or resulting from any first party physical damage coverage; no-fault law; personal injury protection or auto medical payments coverage; or uninsured or underinsured motorist law.

**g. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

 Copyright ISO Properties, Inc., 2007 CU 00 01 12 07

This exclusion applies whether the insured may be liable as an employer or in any other capacity, and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

With respect to injury arising out of a "covered auto", this exclusion does not apply to "bodily injury" to domestic "employees" not entitled to workers' compensation benefits. For the purposes of this insurance, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

This exclusion does not apply to the extent that valid "underlying insurance" for the employer's liability risks described above exists or would have existed but for the exhaustion of underlying limits for "bodily injury". Coverage provided will follow the provisions, exclusions and limitations of the "underlying insurance" unless otherwise directed by this insurance.

**h. Employment-Related Practices**

"Bodily injury" to:

**(1)** A person arising out of any:

  **(a)** Refusal to employ that person;

  **(b)** Termination of that person's employment; or

  **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies whether the injury-causing event described in Paragraphs **(a)**, **(b)** or **(c)** above occurs before employment, during employment or after employment of that person.

This exclusion applies whether the insured may be liable as an employer or in any other capacity, and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

**i. Pollution**

**(1)** "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time; or

**(2)** "Pollution cost or expense".

This exclusion does not apply if valid "underlying insurance" for the pollution liability risks described above exists or would have existed but for the exhaustion of underlying limits for "bodily injury" and "property damage". Coverage provided will follow the provisions, exclusions and limitations of the "underlying insurance".

**j. Aircraft Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

  **(a)** Less than 50 feet long; and

  **(b)** Not being used to carry persons or property for a charge;

**(3)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft.

**(4)** The extent that valid "underlying insurance" for the aircraft or watercraft liability risks described above exists or would have existed but for the exhaustion of underlying limits for "bodily injury" or "property damage". Coverage provided will follow the provisions, exclusions and limitations of the "underlying insurance" unless otherwise directed by this insurance; or

Copyright ISO Properties, Inc., 2007

**(5)** Aircraft that is:

    **(a)** Chartered by, loaned to, or hired by you with a paid crew; and

    **(b)** Not owned by any insured.

**k. Racing Activities**

"Bodily injury" or "property damage" arising out of the use of "mobile equipment" or "autos" in, or while in practice for, or while being prepared for, any prearranged professional or organized racing, speed, demolition, or stunting activity or contest.

**l. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**m. Damage To Property**

"Property damage" to:

**(1)** Property:

    **(a)** You own, rent, or occupy including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property; or

    **(b)** Owned or transported by the insured and arising out of the ownership, maintenance or use of a "covered auto".

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those

operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(1)(b), (3), (4), (5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraphs **(3)** and **(4)** of this exclusion do not apply to liability assumed under a written Trailer Interchange agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**n. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**o. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**p. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**q. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

Copyright ISO Properties, Inc., 2007

**The Hanover Insurance Group™**

OBCH332709    1304500

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**r. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**s. Professional Services**

"Bodily injury" or "property damage" due to rendering or failure to render any professional service. This includes but is not limited to:

**(1)** Legal, accounting or advertising services;

**(2)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications by any architect, engineer or surveyor performing services on a project on which you serve as construction manager;

**(3)** Inspection, supervision, quality control, architectural or engineering activities done by or for you on a project on which you serve as construction manager;

**(4)** Engineering services, including related supervisory or inspection services;

**(5)** Medical, surgical, dental, x-ray or nursing services treatment, advice or instruction;

**(6)** Any health or therapeutic service treatment, advice or instruction;

**(7)** Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement, or personal grooming or therapy;

**(8)** Any service, treatment, advice or instruction relating to physical fitness, including service, treatment, advice or instruction in connection with diet, cardio-vascular fitness, body building or physical training programs;

**(9)** Optometry or optical or hearing aid services including the prescribing, preparation, fitting, demonstration or distribution of ophthalmic lenses and similar products or hearing aid devices;

**(10)** Body piercing services;

**(11)** Services in the practice of pharmacy; but this exclusion does not apply if you are a retail druggist or your operations are those of a retail drugstore;

**(12)** Law enforcement or firefighting services; and

**(13)** Handling, embalming, disposal, burial, cremation or disinterment of dead bodies.

**t. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

This exclusion does not apply if valid "underlying insurance" for the electronic data risks described above exists or would have existed but for the exhaustion of underlying limits for "bodily injury" and "property damage". Coverage provided will follow the provisions, exclusions and limitations of the "underlying insurance", unless otherwise directed by this insurance.

**u. Distribution Of Material In Violation Of Statutes**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**(3)** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

Copyright ISO Properties, Inc., 2007

**COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

**a.** We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking damages for such "personal and advertising injury" when the "underlying insurance" does not provide coverage or the limits of "underlying insurance" have been exhausted. When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other "suit" seeking damages to which this insurance may apply. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. At our discretion, we may investigate any offense that may involve this insurance and settle any resultant claim or "suit", for which we have the duty to defend. But:

**(1)** The amount we will pay for the "ultimate net loss" is limited as described in Section **III** - Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages **A** and **B.**

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

**a.** "Personal and advertising injury":

**(1) Knowing Violation Of Rights Of Another**

Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**(2) Material Published With Knowledge Of Falsity**

Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

**(3) Material Published Prior To Policy Period**

Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

**(4) Criminal Acts**

Arising out of a criminal act committed by or at the direction of the insured.

**(5) Contractual Liability**

For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to:

**(a)** Liability for damages that the insured would have in the absence of the contract or agreement.

**(b)** Liability for false arrest, detention or imprisonment assumed in a contract or agreement.

**(6) Breach Of Contract**

Arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**(7) Quality Or Performance Of Goods - Failure To Conform To Statements**

Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**(8) Wrong Description Of Prices**

Arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**(9) Infringement Of Copyright, Patent, Trademark Or Trade Secret**

Arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**(10) Insureds In Media And Internet Type Businesses**

Committed by an insured whose business is:

**(a)** Advertising, broadcasting, publishing or telecasting;

**(b)** Designing or determining content of websites for others; or

Copyright ISO Properties, Inc., 2007

**(c)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**(11) Electronic Chatrooms Or Bulletin Boards**

Arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**(12) Unauthorized Use Of Another's Name Or Product**

Arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**(13) Pollution**

Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**(14) Employment-Related Practices**

To:

**(a)** A person arising out of any:

**(i)** Refusal to employ that person;

**(ii)** Termination of that person's employment; or

**(iii)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(b)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(i), (ii)** or **(iii)** above is directed.

This exclusion applies whether the injury-causing event described in Paragraphs **(i), (ii)** or **(iii)** above occurs before employment, during employment or after employment of that person.

This exclusion applies whether the insured may be liable as an employer or in any other capacity, and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

**(15) Professional Services**

Arising out of the rendering or failure to render any professional service. This includes but is not limited to:

**(a)** Legal, accounting or advertising services;

**(b)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications by any architect, engineer or surveyor performing services on a project on which you serve as construction manager;

**(c)** Inspection, supervision, quality control, architectural or engineering activities done by or for you on a project on which you serve as construction manager.

**(d)** Engineering services, including related supervisory or inspection services;

**(e)** Medical, surgical, dental, x-ray or nursing services treatment, advice or instruction;

**(f)** Any health or therapeutic service treatment, advice or instruction;

**(g)** Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement, or personal grooming or therapy;

**(h)** Any service, treatment, advice or instruction relating to physical fitness, including service, treatment, advice or instruction in connection with diet, cardio-vascular fitness, body building or physical training programs;

**i)** Optometry or optical or hearing aid services including the prescribing, preparation, fitting, demonstration or distribution of ophthalmic lenses and similar products or hearing aid devices;

**(j)** Body piercing services;

**(k)** Services in the practice of pharmacy; but this exclusion does not apply if you are a retail druggist or your operations are those of a retail drugstore;

**(l)** Law enforcement or firefighting services; and

**(m)** Handling, embalming, disposal, burial, cremation or disinterment of dead bodies.

**(16) War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(a)** War, including undeclared or civil war;

**(b)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(c)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**(17) Distribution Of Material In Violation Of Statutes**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(a)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**(b)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**(c)** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

**b.** "Pollution cost or expense".

**SUPPLEMENTARY PAYMENTS - COVERAGES A AND B**

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend, when the duty to defend exists:

**a.** All expenses we incur.

**b.** Up to $2000 for cost of bail bonds (including bonds for related traffic law violations) required because of an "occurrence" we cover. We do not have to furnish these bonds.

**c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**e.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

**f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**2.** When we have the right but not the duty to defend the insured and elect to participate in the defense, we will pay our own expenses but will not contribute to the expenses of the insured or the "underlying insurer".

**3.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

Copyright ISO Properties, Inc., 2007

The **Hanover** Insurance Group.

OBCH332709     1304500

**f.** The indemnitee:

**(1)** Agrees in writing to:

**(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

**(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

**(c)** Notify any other insurer whose coverage is available to the indemnitee; and

**(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

**(2)** Provides us with written authorization to:

**(a)** Obtain records and other information related to the "suit"; and

**(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** - Coverage **A** - Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

## SECTION II - WHO IS AN INSURED

**1.** Except for liability arising out of the ownership, maintenance or use of "covered autos":

**a.** If you are designated in the Declarations as:

**(1)** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**(2)** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**(3)** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**(4)** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**(5)** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**b.** Each of the following is also an insured:

**(1)** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(a)** "Bodily injury" or "personal and advertising injury":

**(i)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" in the course of his or her employment or performing duties related to the conduct of your business or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(ii)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(a)(i)** above; or

**(iii)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs **(a)(i)** or **(ii)** above.

Copyright ISO Properties, Inc., 2007

**(b)** "Property damage" to property:

   **(i)** Owned, occupied or used by,

   **(ii)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

   you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**(2)** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**(3)** Any person or organization having proper temporary custody of your property if you die, but only:

   **(a)** With respect to liability arising out of the maintenance or use of that property; and

   **(b)** Until your legal representative has been appointed.

**(4)** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**c.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**(1)** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**(2)** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**(3)** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

**2.** Only with respect to liability arising out of the ownership, maintenance or use of "covered autos":

   **a.** You are an insured.

**b.** Anyone else while using with your permission a "covered auto" you own, hire or borrow is also an insured except:

**(1)** The owner or anyone else from whom you hire or borrow a "covered auto". This exception does not apply if the "covered auto" is a trailer or semitrailer connected to a "covered auto" you own.

**(2)** Your "employee" if the "covered auto" is owned by that "employee" or a member of his or her household.

**(3)** Someone using a "covered auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

**(4)** Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company), or a lessee or borrower or any of their "employees", while moving property to or from a "covered auto".

**(5)** A partner (if you are a partnership), or a member (if you are a limited liability company) for a "covered auto" owned by him or her or a member of his or her household.

**(6)** "Employees" with respect to "bodily injury" to any fellow "employee" of the insured arising out of and in the course of the fellow "employee's" employment or while performing duties related to the conduct of your business.

**c.** Anyone liable for the conduct of an insured described above is also an insured, but only to the extent of that liability.

**3.** Any additional insured under any policy of "underlying insurance" will automatically be an insured under this insurance.

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance required by the contract, less any amounts payable by any "underlying insurance".

Additional insured coverage provided by this insurance will not be broader than coverage provided by the "underlying insurance".

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

Copyright ISO Properties, Inc., 2007

The
**Hanover**
Insurance Group™

OBCH332709    1304500

## SECTION III - LIMITS OF INSURANCE

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made, "suits" brought, or number of vehicles involved; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** The Aggregate Limit is the most we will pay for the sum of all "ultimate net loss" under:

**a.** Coverage **A,** except "ultimate net loss" because of "bodily injury" or "property damage" arising out of the ownership, maintenance or use of a "covered auto"; and

**b.** Coverage **B.**

**3.** Subject to Paragraph **2.** above, the Each Occurrence Limit is the most we will pay for the sum of all "ultimate net loss" under Coverage **A** because of all "bodily injury" and "property damage" arising out of any one "occurrence".

**4.** Subject to Paragraph **2.** above, the Personal and Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all "ultimate net loss" because of all "personal and advertising injury" sustained by any one person or organization.

**5.** If there is "underlying insurance" with a policy period that is non-concurrent with the policy period of this Commercial Liability Umbrella Coverage Part, the "retained limit(s)" will only be reduced or exhausted by payments for:

**a.** "Bodily injury" or "property damage" which occurs during the policy period of this Coverage Part; or

**b.** "Personal and advertising injury" for offenses that are committed during the policy period of this Coverage Part.

However, if any "underlying insurance" is written on a claims-made basis, the "retained limit(s)" will only be reduced or exhausted by claims for that insurance that are made during the policy period, or any Extended Reporting Period, of this Coverage Part.

The Aggregate Limit, as described in Paragraph **2.** above, applies separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV - CONDITIONS

**1. Appeals**

If the "underlying insurer" or insured elects not to appeal a judgment in excess of the "retained limit", we may do so at our own expense. We will be liable for taxable costs, pre- and post-judgment interest and disbursements.

**2. Bankruptcy**

**a. Bankruptcy Of Insured**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**b. Bankruptcy Of Underlying Insurer**

Bankruptcy or insolvency of the "underlying insurer" will not relieve us of our obligations under this Coverage Part.

However, this insurance will not replace the "underlying insurance" in the event of bankruptcy or insolvency of the "underlying insurer". This insurance will apply as if the "underlying insurance" were in full effect.

**3. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense, regardless of the amount, which may result in a claim. To the extent possible, notice should include:

**(1)** How, when and where the "occurrence" or offense took place;

**(2)** The names and addresses of any injured persons and witnesses; and

**(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**4. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**5. Other Insurance**

**a.** This insurance is excess over, and shall not contribute with any of the other insurance, whether primary, excess, contingent or on any other basis. This condition will not apply to insurance specifically written as excess over this Coverage Part.

When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**b.** When this insurance is excess over other insurance, we will pay only our share of the "ultimate net loss" that exceeds the sum of:

**(1)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(2)** The total of all deductible and self-insured amounts under all that other insurance.

**6. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**7. Representations Or Fraud**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us;

**c.** We have issued this policy in reliance upon your representations; and

**d.** This policy is void in any case of fraud by you as it relates to this policy or any claim under this policy.

**8. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**9. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

Copyright ISO Properties, Inc., 2007



OBCH332709     1304500

### 10. When We Do Not Renew

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

### 11. Loss Payable

Liability under this Coverage Part shall not apply unless and until the insured or insured's "underlying insurer" has become obligated to pay the "retained limit". Such obligation by the insured to pay part of the "ultimate net loss" shall have been previously determined by a final settlement or judgment after an actual trial or written agreement between the insured, claimant, and us.

### 12. Transfer Of Defense

When the underlying limits of insurance have been used up in the payment of judgments or settlements, the duty to defend will be transferred to us. We will cooperate in the transfer of control to us of any outstanding claims or "suits" seeking damages to which this insurance applies which would have been covered by the "underlying insurance" had the applicable limit not been used up.

### 13. Maintenance Of/Changes To Underlying Insurance

The "underlying insurance" listed in the Schedule of "underlying insurance" in the Declarations shall remain in full effect throughout the policy period except for reduction of the aggregate limit due to payment of claims, settlement or judgments.

Failure to maintain "underlying insurance" will not invalidate this insurance. However, this insurance will apply as if the "underlying insurance" were in full effect.

If there is an increase in the scope of coverage of any "underlying insurance" during the term of this policy, our liability will be no more than it would have been if there had been no such increase.

You must notify us as soon as practicable when any "underlying insurance" is no longer in effect or if the limits or scope of coverage of any "underlying insurance" is changed.

### 14. Expanded Coverage Territory

**a.** If a "suit" is brought in a part of the "coverage territory" that is outside the United States of America (including its territories and possessions), Puerto Rico or Canada, and we are prevented by law, or otherwise, from defending the insured, the insured will initiate a defense of the "suit". We will reimburse the insured, under Supplementary Payments, for any reasonable and necessary expenses incurred for the defense of a "suit" seeking damages to which this insurance applies, that we would have paid had we been able to exercise our right and duty to defend.

If the insured becomes legally obligated to pay sums because of damages to which this insurance applies in a part of the "coverage territory" that is outside the United States of America (including its territories and possessions), Puerto Rico or Canada, and we are prevented by law, or otherwise, from paying such sums on the insured's behalf, we will reimburse the insured for such sums.

**b.** All payments or reimbursements we make for damages because of judgments or settlements will be made in U.S. currency at the prevailing exchange rate at the time the insured became legally obligated to pay such sums. All payments or reimbursements we make for expenses under Supplementary Payments will be made in U.S. currency at the prevailing exchange rate at the time the expenses were incurred.

**c.** Any disputes between you and us as to whether there is coverage under this policy must be filed in the courts of the United States of America (including its territories and possessions), Canada or Puerto Rico.

**d.** The insured must fully maintain any coverage required by law, regulation or other governmental authority during the policy period, except for reduction of the aggregate limits due to payments of claims, judgments or settlements.

Failure to maintain such coverage required by law, regulation or other governmental authority will not invalidate this insurance. However, this insurance will apply as if the required coverage by law, regulation or other governmental authority was in full effect.

## SECTION V - DEFINITIONS

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

   a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

   b. Regarding websites, only that part of a website that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

2. "Auto" means:

   a. A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

   b. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

   However, "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, disability, sickness, or disease sustained by a person, including death resulting from any of these at any time. "Bodily injury" includes mental anguish or other mental injury resulting from "bodily injury".

4. "Coverage territory" means anywhere in the world with the exception of any country or jurisdiction which is subject to trade or other economic sanction or embargo by the United States of America.

5. "Covered auto" means only those "autos" to which "underlying insurance" applies.

6. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

7. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work", or your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement;

   f. That part of any contract or agreement entered into, as part of your business, pertaining to the rental or lease, by you or any of your "employees", of any "auto". However, such contract or agreement shall not be considered an "insured contract" to the extent that it obligates you or any of your "employees" to pay for "property damage" to any "auto" rented or leased by you or any of your "employees".

   g. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

   Paragraphs f. and g. do not include that part of any contract or agreement:

   (1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

   (2) That pertains to the loan, lease or rental of an "auto" to you or any of your "employees", if the "auto" is loaned, leased or rented with a driver; or

   (3) That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of a "covered auto" over a route or territory that person or organization is authorized to serve by public authority.

 Copyright ISO Properties, Inc., 2007

The **Hanover** Insurance Group™

OBCH332709     1304500

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

   **a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

   **b.** While it is in or on an aircraft, watercraft or "auto"; or

   **c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

   but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

   **a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

   **b.** Vehicles maintained for use solely on or next to premises you own or rent;

   **c.** Vehicles that travel on crawler treads;

   **d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

      **(1)** Power cranes, shovels, loaders, diggers or drills; or

      **(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

   **e.** Vehicles not described in Paragraph **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

      **(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

      **(2)** Cherry pickers and similar devices used to raise or lower workers;

   **f.** Vehicles not described in Paragraph **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

   **(1)** Equipment designed primarily for:

      **(a)** Snow removal;

      **(b)** Road maintenance, but not construction or resurfacing; or

      **(c)** Street cleaning;

   **(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

   **(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

   **a.** False arrest, detention or imprisonment;

   **b.** Malicious prosecution;

   **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

   **d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   **e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

   **f.** The use of another's advertising idea in your "advertisement"; or

   **g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Pollution cost or expense" means any loss, cost or expense arising out of any:

   a. Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

   b. Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

17. "Products-completed operations hazard":

   a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

      (1) Products that are still in your physical possession; or

      (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

         (a) When all of the work called for in your contract has been completed.

         (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

         (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

      Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

   b. Does not include "bodily injury" or "property damage" arising out of:

      (1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured; or

      (2) The existence of tools, uninstalled equipment or abandoned or unused materials.

18. "Property damage" means:

   a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

   b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

   With respect to the ownership, maintenance or use of "covered autos", property damage also includes "pollution cost or expense", but only to the extent that coverage exists under the "underlying insurance" or would have existed but for the exhaustion of the underlying limits.

   For the purposes of this insurance, with respect to other than the ownership, maintenance or use of "covered autos", electronic data is not tangible property.

   As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), hard or floppy disks, CDROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

19. "Retained limit" means the available limits of "underlying insurance" scheduled in the Declarations or the "self-insured retention", whichever applies.

20. "Self-insured retention" means the dollar amount listed in the Declarations that will be paid by the insured before this insurance becomes applicable only with respect to "occurrences" or offenses not covered by the "underlying insurance". The "self-insured retention" does not apply to "occurrences" or offenses which would have been covered by "underlying insurance" but for the exhaustion of applicable limits.

21. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

   a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

   b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent or the "underlying insurer's" consent.

Copyright ISO Properties, Inc., 2007
CU 00 01 12 07

**The Hanover**
Insurance Group™

OBCH332709     1304500

22. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

23. "Ultimate net loss" means the total sum, after reduction for recoveries or salvages collectible, that the insured becomes legally obligated to pay as damages by reason of settlement or judgments or any arbitration or other alternate dispute method entered into with our consent or the "underlying insurer's" consent.

24. "Underlying insurance" means any policies of insurance listed in the Declarations under the Schedule of "underlying insurance".

25. "Underlying insurer" means any insurer who provides any policy of insurance listed in the Schedule of "underlying insurance".

26. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

27. "Your product":

   a. Means:

   (1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

   (a) You;

   (b) Others trading under your name; or

   (c) A person or organization whose business or assets you have acquired; and

   (2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

   b. Includes:

   (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

   (2) The providing of or failure to provide warnings or instructions.

   c. Does not include vending machines or other property rented to or located for the use of others but not sold.

28. "Your work":

   a. Means:

   (1) Work or operations performed by you or on your behalf; and

   (2) Materials, parts or equipment furnished in connection with such work or operations.

   b. Includes:

   (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

   (2) The providing of or failure to provide warnings or instructions.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION - UNMANNED AIRCRAFT

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

**A. SECTION I - COVERAGES, COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions, j. Aircraft or Watercraft** is replaced by the following:

**j. Aircraft Or Watercraft**

**(1) Unmanned Aircraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft that is an "unmanned aircraft". Use includes operation and "loading or unloading".

This Paragraph **j.(1)** applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft that is an "unmanned aircraft".

**(2) Aircraft (Other Than Unmanned Aircraft) Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft (other than "unmanned aircraft") or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This Paragraph **j.(2)** applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft (other than "unmanned aircraft") or watercraft that is owned or operated by or rented or loaned to any insured.

This Paragraph **j.(2)** does not apply to:

**(a)** A watercraft while ashore on premises you own or rent;

**(b)** A watercraft you do not own that is:

**(i)** Less than 50 feet long; and

**(ii)** Not being used to carry persons or property for a charge;

**(c)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft (other than unmanned aircraft) or watercraft;

**(d)** The extent that valid "underlying insurance" for the aircraft or watercraft liability risks described in this Paragraph **j.(2)** exists or would have existed but for the exhaustion of underlying limits for "bodily injury" or "property damage". To the extent this exclusion does not apply, the insurance provided under this Coverage Part for the aircraft or watercraft risks described in this Paragraph **j.(2)** will follow the same provisions, exclusions and limitations that are contained in the applicable "underlying insurance", unless otherwise directed by this insurance; or

**(e)** Aircraft (other than unmanned aircraft) that is:

**(i)** Chartered by, loaned to, or hired by you with a paid crew; and

**(ii)** Not owned by any insured.

**B.** The following is added to **SECTION I - COVERAGES, COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY, 2. Exclusions**:

**Unmanned Aircraft**

"Personal and advertising injury" arising out of the ownership, maintenance, use or entrustment to others of any aircraft that is an "unmanned aircraft". Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the offense which caused the "personal and advertising injury" involved the ownership, maintenance, use or entrustment to others of any aircraft that is an "unmanned

The **Hanover** Insurance Group™

OBCH332709          1304500

aircraft".

This exclusion does not apply to:

**(1)** The use of another's advertising idea in your "advertisement"; or

**(2)** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**C.** For the purpose of this endorsement, the following is added to **SECTION V - DEFINITIONS:**

**1.** "Unmanned aircraft" means an aircraft that is not:

**a.** Designed;

**b.** Manufactured; or

**c.** Modified after manufacture;

to be controlled directly by a person from within or on the aircraft.

ALL OTHER TERMS, CONDITIONS, AND EXCLUSIONS REMAIN UNCHANGED.

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
**(Broad Form)**

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

**I.** The insurance does not apply:

**A.** Under any Liability Coverage, to "bodily injury" or "property damage":

**(1)** With respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

**(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**B.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

**(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an insured or **(b)** has been discharged or dispersed therefrom;

**(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an insured; or

**(3)** The "bodily injury" or "property damage" arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this Exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

**II.** As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "Special nuclear material" or "by-product material".

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".



OBCH332709      1304500

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

Copyright, ISO Properties, Inc., 2001

**CU 21 23 02**      **02**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability:**

   **2. Exclusions**

   This insurance does not apply to:

   **FUNGI OR BACTERIA**

   **a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

   **b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I - Coverage B - Personal And Advertising Injury Liability:**

   **2. Exclusions**

   This insurance does not apply to:

   **FUNGI OR BACTERIA**

   **a.** "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

   **b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**C.** The following definition is added to the **Definitions** Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

 Copyright, ISO Properties, Inc., 2003



OBCH332709      1304500

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# SILICA OR SILICA-RELATED DUST EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability:**

   **2. Exclusions**

   This insurance does not apply to:

   **SILICA OR SILICA-RELATED DUST**

   **a.** "Bodily injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, "silica" or "silica-related dust".

   **b.** "Property damage" arising, in whole or in part, out of the actual, alleged, threatened or suspected contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

   **c.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I - Coverage B - Personal And Advertising Injury Liability:**

   **2. Exclusions**

   This insurance does not apply to:

   **SILICA OR SILICA-RELATED DUST**

   **a.** "Personal and advertising injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

   **b.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

**C.** The following definitions are added to the **Definitions** Section:

   **1.** "Silica" means silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds.

   **2.** "Silica-related dust" means a mixture or combination of silica and other dust or particles.

  Copyright, ISO Properties, Inc., 2004

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D. Inspections And Surveys**

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**E. Premiums**

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

**F. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

 Copyright, Insurance Services Office, Inc., 1998

**The Hanover**
Insurance Group

OBCH332709     1304500

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES - DEFENSE COSTS

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART   LEGAL LIABILITY COVERAGE FORM
COMMERCIAL PROPERTY COVERAGE PART   MORTGAGEHOLDERS ERRORS AND OMISSIONS
COVERAGE FORM
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK COVERAGE PART

**A.** The provisions of Paragraph **B.** are added to all Insuring Agreements that set forth a duty to defend under:

**1.** Section **I** of the Commercial General Liability, Commercial Liability Umbrella, Employment-Related Practices Liability, Farm, Liquor Liability, Owners And Contractors Protective Liability, Pollution Liability, Products/Completed Operations Liability, Product Withdrawal, Medical Professional Liability, Railroad Protective Liability, Underground Storage Tank Coverage Parts and the Farm Umbrella Liability Policy;

**2.** Section **II** - Liability Coverage in Paragraph **A.** Coverage under the Business Auto, Garage, Motor Carrier and Truckers Coverage Forms;

**3.** Section **A.** Coverage under the Legal Liability Coverage Form; and

**4.** Coverage **C** - Mortgageholder's Liability under the Mortgageholders Errors And Omissions Coverage Form.

**B.** If we initially defend an insured ("insured") or pay for an insured's ("insured's") defense but later determine that the claim(s) is (are) not covered under this insurance, we will have the right to reimbursement for the defense costs we have incurred.

The right to reimbursement for the defense costs under this provision will only apply to defense costs we have incurred after we notify you in writing that there may not be coverage, and that we are reserving our rights to terminate the defense and seek reimbursement for defense costs.

Copyright ISO Properties, Inc., 2007

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY -  WITH LIMITED BODILY INJURY EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

**A.** Exclusion **2.t.** of **Section I - Coverage A - Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**t. Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

Damages arising out of:

**(1)** Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

**(2)** The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **(1)** or **(2)** above.

However, unless Paragraph **(1)** above applies, this exclusion does not apply to damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**B.** The following is added to Paragraph **2. Exclusions** of **Section I - Coverage B - Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Access Or Disclosure Of Confidential Or Personal Information**

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.



OBCH332709    1304500

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

**A.** If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**B.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## ILLINOIS EXCLUSION - ABUSE OR MOLESTATION

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART


The following exclusion is added to **SECTION I - COVERAGES, COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions** and **SECTION I - COVERAGES, COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY, 2. Exclusions:**

**Abuse and Molestation**

This insurance does not apply to any liability or expense arising out of:

**(1)** The actual or threatened abuse or molestation by anyone of any person, whether or not the abuse or molestation was specifically intended or resulted from negligent conduct, or whether or not any insured subjectively intended the injury or damage for which a claim is made.


ALL OTHER TERMS, CONDITIONS, AND EXCLUSIONS REMAIN UNCHANGED.

The **Hanover**
Insurance Group

OBCH332709      1304500

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TOTAL POLLUTION EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

Exclusion **i.** under Paragraph **2., Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

**i. Pollution**

**(1)** "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time; or

**(2)** "Pollution cost or expense".

**CU 21 25 12 01**          Copyright, ISO Properties, Inc., 2001          **Page 1 of 1**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## ILLINOIS CHANGES - POLLUTION EXCLUSION - HOSTILE FIRE EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

The following is added to Exclusion **i.** under Paragraph **2., Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability:**

Paragraph **(1)** of this exclusion does not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a hostile fire unless that hostile fire occurred or originated:

   **(a)** At any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste; or

   **(b)** At any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to, or assess the effects of, "pollutants".

Hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

The **Hanover**
Insurance Group™

OBCH332709          1304500

## COMMON POLICY CONDITIONS
## UMBRELLA AMENDATORY ENDORSEMENT

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

COMMON POLICY CONDITIONS

Common Policy Conditions in form IL 00 17 only apply to the Umbrella Liability Coverage part.
All other Coverage parts contain their own Conditions.

**473-1125 02 09**                                                                 **Page 1 of 1**

The
**Hanover**
Insurance Group.

OBCH332709          1304500

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

The **Hanover**
Insurance Group™

## AVENUES BUSINESSOWNERS DECLARATION

### BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 10/12/2020  NUMBER 01

07

SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
ADDED LENDER LOSS PAYEE

| Policy Number | Policy Period | | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| | **From** | **To** | | |
| OBC-H332709-00 | 07/31/2020 | 07/31/2021 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

**Agent**

847-307-6100
THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

**Policy Period:  Beginning and Ending at 12:01 a.m. Standard Time at the Location of the Described Premises.**

**Business Type:**  CORPORATION (SINGLE).

**Mortgagee/Loss Payable:**

SEE ADDITIONAL INTEREST SCHEDULE

**Business of the Named Insured:**

SERVICE.

In consideration of the premium, insurance is provided the Named Insured with respect to those premises described in the Schedule below and with respect to those coverages and kinds of property for which a specific Limit of Insurance is shown, subject to all of the terms of this policy including forms and endorsements made a part hereof:

### LOCATION SCHEDULE

**Described Premises:**

NO. 001 001   233 N MICHIGAN AVE SUITE 1430, CHICAGO, IL  60601

| SECTION I - PROPERTY | LIMITS OF INSURANCE | | | | | |
|---|---|---|---|---|---|---|
| | **Loc No** 001 | **Bldg No** 001 | **Loc No** | **Bldg No** | **Loc No** | **Bldg No** |
| **Deductible Amount** | $          1,000 | | $ | | $ | |
| **Building Amount Valuation** | NOT COVERED | | | | | |
| **Business Personal Property Valuation** | $        201,400 RC | | | | | |
| **Business Income** | ACTUAL BUSINESS LOSS SUSTAINED NOT EXCEEDING 12 CONSECUTIVE MONTHS | | | | | |
| **Business Income Waiting Period** | Excluded / None / 24 hours / 48 hours /72 hours 24 HOURS | | | | | |
| **SECTION II - LIABILITY** | LIMITS OF INSURANCE | | | | | |

**Liability and Medical Expenses Limits of Insurance:**

Except for Damage to Premises Rented to You,  each paid claim for the following coverages reduce the Amount of Insurance we provide during the applicable annual  period.  Please refer to **SECTION II - LIABILITY, D. LIABILITY  AND MEDICAL  EXPENSES LIMITS OF INSURANCE,** paragraph.**4.** of the Businessowners Coverage Form.

| Liability and Medical Expenses Limit | $ 2,000,000 | Per Occurrence | $ 4,000,000 | Aggregate |
|---|---|---|---|---|
| **Medical Expenses** | $          5,000 | **Each Person** | | |
| **Damage to Premises Rented to You** | $        300,000 | **All Perils** | | |

Date Issued: 10/14/2020          ORIGINAL/INSURED        Payment Type:  DIRECT BILL

GROUP NAME: TECHNOLOGY - SERVICES        GROUP NUMBER: ZTS

**The Hanover Insurance Group**

# AVENUES BUSINESSOWNERS DECLARATION

## BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 10/12/2020  NUMBER 01

07

SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
ADDED LENDER LOSS PAYEE

| Policy Number | Policy Period From | To | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| OBC-H332709-00 | 07/31/2020 | 07/31/2021 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

**Agent**

847-307-6100
THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

**Additional Property Coverages and Extensions:**
　　　　See attached Schedule for Additional Coverages provided for under this Policy.

Audit Frequency: Annual

**Additional Liability Coverages:**  General Liability Broadening Endorsement
**General Liability Class**:  85219
**Description**:  CUSTOM COMPUTER PROGRAMMING
**Liability Exposure**:  $1,800,000　　　SALES

**Policy Forms, Endorsements and Optional Coverages Attached:**
　　　　See Forms and Endorsements Schedule

```
P R E V I O U S   P R E M I U M   I S :                                    $ ▆▆▆▆
N E T   P R E M I U M   C H A N G E   I S :                                  $ ▆
T O T A L   B O P   C O V E R A G E   P R E M I U M :                      $ ▆▆▆▆▆
B O P   T E R R O R I S M   C O V G   ( I N C L U D E D   I N   T O T A L   P O L I C Y   P R E M I U M )   $ ▆▆▆
    O T H E R   T H A N   F I R E   F O L L O W I N G
     F I R E   F O L L O W I N G                                           $ ▆▆▆
T O T A L   U M B R E L L A   C O V E R A G E   P R E M I U M :            $ ▆▆▆
U M B   T E R R O R I S M   C O V G   ( I N C L U D E D   I N   T O T A L   P O L I C Y   P R E M I U M )   $ ▆▆▆
D E P O S I T   P R E M I U M :                                           $ ▆▆▆▆
T H E   T O T A L   A C T U A L   P R E M I U M :                         $ ▆▆▆▆▆
```

**Countersigned this _____ Day of _____**

_____
**Authorized Representative**

**This Declarations Page with the Policy Contract, Forms and Endorsements, if any,
Complete the Policy.**

Date Issued:  10/14/2020　　　　ORIGINAL/INSURED　　　　Payment Type: DIRECT BILL

**The Hanover Insurance Group™**

# ADDITIONAL INTEREST SCHEDULE

## BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 10/12/2020  NUMBER 01

07

SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
ADDED LENDER LOSS PAYEE

| Policy Number | Policy Period | | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| | From | To | | |
| OBC-H332709-00 | 07/31/2020 | 07/31/2021 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**
COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

**Agent**
847-307-6100
THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

| Name And Address | Interest Type | Location | Building |
|---|---|---|---|
| SILICON VALLEY BANK<br>3003 TASMAN DRIVE HF 150<br>SANTA CLARA, CA  95054 | LENDER'S LOSS PAYABLE | 0 0 1 | 0 1 |

Form  391-1014 (7-99)
Date Issued:  10/14/2020                    ORIGINAL/INSURED

**The Hanover** Insurance Group™

# ADDITIONAL PROPERTY COVERAGES AND EXTENSIONS

## BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 10/12/2020  NUMBER 01

07       SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
            ADDED LENDER LOSS PAYEE

| Policy Number | Policy Period From | To | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| OBC-H332709-00 | 07/31/2020 | 07/31/2021 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

**Agent**

847-307-6100

THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

| Additional Property Coverages & Extensions | Deductible | Amount Included | Additional Amount Increase | Total Limit |
|---|---|---|---|---|
| DEBRIS REMOVAL | NONE | $25,000 | N/A | $25,000 |
| PRESERVATION OF PROPERTY | NONE | 90 DAYS | N/A | 90 DAYS |
| FIRE DEPARTMENT SERVICE CHARGE | NONE | $25,000 | N/A | $25,000 |
| POLLUTANT CLEAN-UP AND REMOVAL | NONE | $25,000 | N/A | $25,000 |
| MONEY ORDERS AND COUNTERFEIT MONEY | $500 | $5,000 | N/A | $5,000 |
| FORGERY OR ALTERATION | $500 | $25,000 | N/A | $25,000 |
| GLASS EXPENSES | $250 | INCLUDED | N/A | INCLUDED |
| REWARDS ARSON, THEFT AND VANDALISM | NONE | $10,000 | N/A | $10,000 |
| TENANT SIGNS | $500 | $5,000 | N/A | $5,000 |
| FIRE PROTECTION EQUIPMENT RECHARGE | NONE | $25,000 | N/A | $25,000 |
| INSTALLATION FLOATER | $1,000 | $5,000 | N/A | $5,000 |
| FINE ARTS | $500 | $10,000 | N/A | $10,000 |
| FENCE AND WALLS | SEE BUILDING AND CONTENTS DEDUCTIBLE | INCLUDED | N/A | INCLUDED |
| SALES REPRESENTATIVE SAMPLES | $1,000 | $5,000 | N/A | $5,000 |
| LEASEHOLD INTEREST (TENANT'S ONLY) | NONE | $10,000 | N/A | $10,000 |
| UNAUTHORIZED BUSINESS CREDIT CARD USE | NONE | $5,000 | N/A | $5,000 |
| UTILITY SERVICES | | | N/A | |
|   DIRECT DAMAGE | $500 | $10,000 | N/A | $10,000 |
|   BUSINESS INCOME | 24 HOURS | $5,000 | N/A | $5,000 |
| DEFERRED PAYMENTS | NONE | $5,000 | N/A | $5,000 |
| NEWLY ACQUIRED OR CONSTRUCTED PROPERTY | | 180 DAYS | N/A | 180 DAYS |
|   BUILDINGS | $500 | $1,000,000 | N/A | $1,000,000 |
|   PERSONAL PROPERTY | $500 | $500,000 | N/A | $500,000 |
|   BUSINESS INCOME AND EXTRA EXPENSE | SEE WAITING PERIOD | $250,000 | N/A | $250,000 |
| OUTDOOR PROPERTY - TREES, SHRUBS AND PLANTS-$1,000 EACH ITEM | $500 | $10,000 | N/A | $10,000 |

Form  391-1018  (7-02)
Date Issued:  10/14/2020

ORIGINAL/INSURED

**The Hanover Insurance Group**

# ADDITIONAL PROPERTY COVERAGES AND EXTENSIONS

**BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 10/12/2020 NUMBER 01**

07     SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
    ADDED LENDER LOSS PAYEE

| Policy Number | Policy Period From | To | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| OBC-H332709-00 | 07/31/2020 | 07/31/2021 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

**Agent**

847-307-6100

THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

| Additional Property Coverages & Extensions | Deductible | Amount Included | Additional Amount Increase | Total Limit |
|---|---|---|---|---|
| PERSONAL EFFECTS | $500 | $10,000 | N/A | $10,000 |
| INVENTORY AND LOSS APPRAISAL | NONE | $10,000 | N/A | $10,000 |
| KEY REPLACEMENT AND LOCK REPAIR | NONE | $1,000 | N/A | $1,000 |
| APPURTENANT STRUCTURE | $500 | $50,000 | N/A | $50,000 |
| PERSONAL PROPERTY IN TRANSIT | $1,000 | $10,000 | N/A | $10,000 |
| EXTENDED BUSINESS INCOME | | 30 DAYS | N/A | 30 DAYS |
| EMPLOYEE THEFT INCLUDING ERISA COMPLIANCE | $1,000 | $10,000 | N/A | $10,000 |
| COMMERCIAL TOOLS AND SMALL EQUIP | $500 | $5,000 | N/A | $5,000 |
| PERSONAL PROPERTY OFF PREMISES | $1,000 | $50,000 | N/A | $50,000 |
| BUSINESS INCOME FROM DEPENDENT PROPERTIES | 72 HOURS | $5,000 | N/A | $5,000 |
| TERRORISM | SEE BUILDING AND CONTENTS DEDUCTIBLE | SAME AS PROPERTY LIMITS OF INSURANCE IF COVERED | N/A | SAME AS PROPERTY LIMITS OF INSURANCE IF COVERED |
| INTERRUPTION OF COMPUTER OPERATIONS | SEE WAITING PERIOD | $10,000 | N/A | $10,000 |
| BUSINESS PERSONAL PROPERTY TEMPORARILY IN PORTABLE STORAGE UNITS | $500 | $25,000 | N/A | $25,000 |
| CIVIL AUTHORITY | 72 HOURS | 4 WEEKS | N/A | 4 WEEKS |
| COMPUTER AND FUNDS TRANSFER FRAUD | $500 | $5,000 | N/A | $5,000 |
| LIMITED COVERAGE FOR FUNGI, WET ROT, OR DRY ROT | $500 | $50,000 | N/A | $50,000 |
| PAVED SURFACES | $500 | $25,000 | N/A | $25,000 |
| TENANT BUILDING COVERAGE - REQUIRED BY LEASE | $500 | $25,000 | N/A | $25,000 |
| TENANT BUSINESS PERSONAL PROPERTY COVERAGE - REQUIRED BY LEASE | $500 | $25,000 | N/A | $25,000 |

Form  391-1018  (7-02)
Date Issued:  10/14/2020

ORIGINAL/INSURED

**The Hanover** Insurance Group™

# ADDITIONAL PROPERTY COVERAGES AND EXTENSIONS

**BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 10/12/2020  NUMBER 01**

07        SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
           ADDED LENDER LOSS PAYEE

| Policy Number | Policy Period | | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| | From | To | | |
| OBC-H332709-00 | 07/31/2020 | 07/31/2021 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

**Agent**

847-307-6100

THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

| Additional Property Coverages & Extensions | Deductible | Amount Included | Additional Amount Increase | Total Limit |
|---|---|---|---|---|
| THEFT OF TELEPHONIC SERVICES | $500 | $25,000 | N/A | $25,000 |
| UNDERGROUND PIPES | $500 | INCLUDED | N/A | INCLUDED |

Form  391-1018  (7-02)
Date Issued:  10/14/2020

ORIGINAL/INSURED

**The Hanover**
Insurance Group

# ADDITIONAL PROPERTY COVERAGES AND EXTENSIONS

**BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 10/12/2020 NUMBER 01**

07      SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
ADDED LENDER LOSS PAYEE

| Policy Number | Policy Period | | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| | From | To | | |
| OBC-H332709-00 | 07/31/2020 | 07/31/2021 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

Named Insured and Address                Agent
COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430        847-307-6100
CHICAGO, IL  60601             THE PLEXUS GROUPE LLC
                                SUITE 300
                                21805 W. FIELD PARKWAY
                                DEER PARK, IL  60010

| Additional Property Coverages & Extensions | Loc. No. | Bldg. No. | Deductible Amount | Amount Included | Additional Amount | Total Limit |
|---|---|---|---|---|---|---|
| ORDINANCE OR LAW | 001 | 001 | NONE | $5,000 | N/A | $5,000 |
| COMPUTER EQUIPMENT | | | $500 | $35,000 | N/A | $35,000 |
| COMPUTER EQUIPMENT EXTRA EXPENSE | | | NONE | $5,000 | N/A | $5,000 |
| ELECTRONIC VANDALISM | | | $500 | | | |
|   OCCURRENCE LIMIT | | | | $10,000 | N/A | $10,000 |
|   AGGREGATE LIMIT | | | | $10,000 | N/A | $10,000 |
| VALUABLE PAPERS AND RECORDS (OTHER THAN ELECTRONIC DATA) | | | $1,000 | | | |
|   ON PREMISES | | | | $25,000 | N/A | $25,000 |
|   OFF PREMISES | | | | $25,000 | N/A | $25,000 |
| ACCOUNTS RECEIVABLE | | | $1,000 | | | |
|   ON PREMISES | | | | $25,000 | N/A | $25,000 |
|   OFF PREMISES | | | | $25,000 | N/A | $25,000 |
| MONEY AND SECURITIES | | | $500 | | | |
|   ON PREMISES | | | | $10,000 | N/A | $10,000 |
|   OFF PREMISES | | | | $5,000 | N/A | $5,000 |
| EQUIPMENT BREAKDOWN | | | $1,000 | INCLUDED | N/A | INCLUDED |
| PROTECTIVE DEVICES CREDIT | | | | | | |
|   AUTOMATIC SPRINKLER SYSTEM | | | | NO | | |
|   AUTOMATIC FIRE ALARM | | | | NO | | |
|   CENTRAL STATION SECURITY | | | | NO | | |
| COLLAPSE | | | $500 | INCLUDED | N/A | INCLUDED |
| UTILITY SERVICES | | | | | | |
|   DIRECT DAMAGE | | | $500 | $50,000 | N/A | $50,000 |
|   TIME-ELEMENT | | | 24 HOURS | $50,000 | N/A | $50,000 |

Form  391-1018A (9-04)
Date Issued:  10/14/2020

ORIGINAL/INSURED

The
**Hanover**
Insurance Group™

# AVENUES BUSINESSOWNERS DECLARATION

## BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 10/12/2020  NUMBER 01

07

SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
ADDED LENDER LOSS PAYEE

| Policy Number | Policy Period | | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| | From | To | | |
| OBC-H332709-00 | 07/31/2020 | 07/31/2021 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**
COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

**Agent**
847-307-6100
THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

## Forms and Endorsements Schedule

| Form Number | Edition Date | Description |
|---|---|---|
| 391-1402 | 08/16 | TECHNOLOGY DELUXE GOLD BROAD |
| 391-1371 | 01/10 | REV INFRINGE OF COPYRIGHT EXCL |
| BP0404 | 01/10 | HIRED AUTO NON-OWNED AUTO LIAB |
| 401-1374 | 01/15 | DISCLOSURE PURSUANT TO TRIA |
| 391-1114 | 01/15 | CAP ON LOSSES FROM TERRORISM |
| 391-1313 | 01/15 | EXCLUSION OF PUNITIVE DAMAGES |
| 391-1006 | 08/16 | LIABILITY SPECIAL BROADENING |
| BP0417 | 01/10 | EMPLYMT RELATED PRACTICES EXCL |
| 231-0475 | 06/89 | PILR NOTICE |
| 391-1003 | 08/16 | BUSINESSOWNERS COVERAGE FORM |
| BP0643 | 04/06 | IL CHANGES - DEFENSE COSTS |
| 391-1901 | 06/18 | ILLINOIS CHANGES |
| 421-0022 | 07/02 | ASBESTOS EXCLUSION |
| 391-1102 | 08/16 | EXCL - FUNGI OR BACTERIA LIAB |
| 331-0053 | 08/16 | ILLINOIS INQUIRY NOTICE |
| 391-1375 | 01/10 | AMEND LIMITS PERSONAL AND ADV |
| 391-1218 | 06/06 | EPLI INSURANCE CVG ENDR ILLINO |
| 391-1206 | 06/06 | EPLI IMPORTANT NOTICE |
| 391-1208 | 03/06 | EPLI SUPPLEMENTAL DEC |
| * BP1203 | 01/10 | LOSS PAYABLE PROVISIONS |
| 401-1504 | 01/20 | CAP LOSSES CERT ACTS OF TERR |
| 391-1440 | 01/15 | DATA BREACH COVERAGE FORM |
| 391-1442 | 12/09 | ASSOC AND FAMILY MBR ADD COV |
| 391-1585 | 12/11 | IDENTITY THEFT NOTICE |

Form  391-1016 (7-99

Date Issued:  10/14/2020

ORIGINAL/INSURED

**The Hanover** Insurance Group™

# AVENUES BUSINESSOWNERS DECLARATION

### BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 10/12/2020  NUMBER 01

07

SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
ADDED LENDER LOSS PAYEE

| Policy Number | Policy Period | | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| | From | To | | |
| OBC-H332709-00 | 07/31/2020 | 07/31/2021 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**
COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

**Agent**
847-307-6100
THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

## Forms and Endorsements Schedule

| Form Number | Edition Date | Description |
|---|---|---|
| 391-1854 | 01/15 | IL CHANGES - DATA BREACH |

Form  391-1016 (7-99
Date Issued:  10/14/2020

ORIGINAL/INSURED

**COMMERCIAL EMPLOYMENT PRACTICES
LIABILITY INSURANCE COVERAGE ENDORSEMENT
SUPPLEMENTAL DECLARATIONS**



OBCH332709      1304500

Policy Number:  OBC H332709 00
Account Number:  1521871564
Named Insured:   COOLER SCREENS INC

Agent:  1304500

---

## NOTICE

- EXCEPT TO SUCH EXTENT AS MAY OTHERWISE BE PROVIDED HEREIN, THE COVERAGE OF THIS COVERAGE ENDORSEMENT IS LIMITED TO LIABILITY FOR ONLY THOSE CLAIMS OR SUITS THAT ARE FIRST MADE AGAINST THE INSUREDS DURING THE EPL COVERAGE PERIOD AND REPORTED IN WRITING TO THE INSURER PURSUANT TO THE TERMS HEREIN. VARIOUS PROVISIONS IN THIS COVERAGE ENDORSEMENT RESTRICT COVERAGE. PLEASE READ THE ENTIRE COVERAGE ENDORSEMENT CAREFULLY TO DETERMINE RIGHTS, DUTIES AND WHAT IS AND IS NOT COVERED.

- THE LIMIT OF LIABILITY AVAILABLE TO PAY JUDGEMENTS OR SETTLEMENTS UNDER THIS COVERAGE ENDORSEMENT SHALL BE REDUCED BY AMOUNTS INCURRED FOR LEGAL DEFENSE. AMOUNTS INCURRED FOR LEGAL DEFENSE SHALL BE APPLIED AGAINST THE DEDUCTIBLE AMOUNT.

---

| | | |
|---|---|---|
| **EPL Coverage Period:** | From: 07/31/2020<br><br>To:   07/31/2021 | At 12:01 A.M. Standard Time at your mailing address shown on the Declarations page of this policy. |
| **EPL Aggregate Limit of Liability:** | $      25,000.00 | Aggregate for all "loss" combined, including "defense costs". |
| **EPL Deductible Amount:** | $       5,000.00 | For "loss" arising from claims or suits alleging the same "wrongful employment act" or "related wrongful employment acts". |
| **EPL Original Inception Date:** | 07/31/2020 | (Enter "original inception date") If no date is shown, "we" will consider the "original inception date" to be the same as the beginning of this coverage endorsement. |

This insurance does not apply to "loss" arising out of a "wrongful employment act" that: (1) commences on or takes place prior to the "original inception date" shown here, or (2) arises out of incidents or circumstance of which "you" had knowledge prior to the "original inception date" shown.

| | |
|---|---|
| **EPL COVERAGE PREMIUM:** | $   |

The
**Hanover**
Insurance Group™

| |
|---|
| **NEW BUSINESS POLICY** |
| **COMMERCIAL UMBRELLA POLICY** |
| THESE DECLARATIONS TOGETHER WITH THE COMMON POLICY CONDITIONS AND COVERAGE FORM(S) COMPLETE THE BELOW NUMBERED POLICY |
| POLICY NUMBER:  OBC-H332709-00 |
| DECLARATIONS |

| **Named Insured and Address** (No., Street, Town, County, State) | **Agent** |
|---|---|
| COOLER SCREENS INC<br>233 N MICHIGAN AVE SUITE 1430<br>CHICAGO, IL  60601 | 130450000<br>THE PLEXUS GROUPE LLC<br>SUITE 300<br>21805 W. FIELD PARKWAY<br>DEER PARK, IL  60010 |

**Policy Period:** (Month, Day, Year)

From  07/31/2020    To  07/31/2021
12:01 AM, standard time at the address of the Named Insured as stated herein.

Form of Business:

☐ Individual    ☐ Partnership    ☒ Corporation    ☐ Limited Liability Company
☐ Organization (Other than Partnership, Joint Venture, or Limited Liability Company

**Business Description:**
**SERVICE.**

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.  THIS PREMIUM MAY BE SUBJECT TO AUDIT.

| **Limit of Liability (Section III)** | |
|---|---|
| Each Occurrence Limit | $  1,000,000 |
| General Aggregate Limit | $  1,000,000 |
| Product Completed Operations Aggregate Limit | $  1,000,000 |

| **Retained Limit** | **Self-Insured Retention** | **$ NIL** |
|---|---|---|

**Premium Computation**

Annual Premium   $   ████
Advance Premium  $

**Endorsements:**

| | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| CU2130 | 01/15 | CU2156 | 06/06 | CU2136 | 01/15 | 473-1150 | 05/12 | 473-1157 | 01/10 | 473-0004 | 10/05 |
| CU0004 | 05/09 | 473-0016 | 10/05 | 473-0023 | 10/05 | 473-0040 | 10/05 | CU0200 | 12/07 | CU0001 | 12/07 |
| 473-2194 | 08/16 | CU2123 | 02/02 | 473-2211 | 10/16 | CU2125 | 12/01 | CU2255 | 09/00 | CU2127 | 12/04 |
| CU2150 | 03/05 | IL0017 | 11/98 | CU2436 | 12/05 | IL0162 | 09/08 | 473-1125 | 02/09 | CU2186 | 05/14 |

☐ PRE PAID - the total annual premium is due at inception.
☐ HANOCASH - the annual premium is payable according to the term of the Hanocash endorsement attachment

☐ ACCOUNT BILL   ☒ DIRECT BILL    ☐ Annual    ☐ Semi-Annual    ☐ Other
Audit period: Non Auditable Unless indicated by ☐ Annual   ☐ Semi-Annual   ☐ Other
If you cancel this policy, we shall receive and retain not less than  $ as a policy minimum premium.

473-1102 1108

**The Hanover Insurance Group**

OBCH332709        1304500

## SCHEDULE A - SCHEDULE OF UNDERLYING POLICIES

**Insured:**   COOLER SCREENS INC
**Effective on and after: 07/31/2020 ,  12:01 AM Standard Time**
**This schedule is part of Policy Number:   OBC-H332709-00**

| CARRIER, POLICY NUMBER & PERIOD | TYPE OF POLICY | APPLICABLE LIMITS OR AMOUNT OF INSURANCE |
|---|---|---|
| (a)Carrier: <br><br> CITIZENS INSURANCE COMPANY OF AMERICA <br><br> Policy Number:   OBC-H332709-00 <br> Policy Period:   07/31/2020    TO 07/31/2021 | Commercial General Liability <br> [X]Non-owned & Hired Autos | $ 2,000,000    Each Occurrence <br> $ 4,000,000    General  Aggregate <br> $ 4,000,000    Product/Compl eted Operations Aggregate |
| (b) Carrier: <br><br><br> Policy Number: <br> Policy Period: | Comprehensive Automobile Liability | Bodily Injury and Property Damage Liability Combined <br> $              Each Accident <br> Bodily Injury <br> $                Each Person <br> $                Each Accident <br> Property Damage <br> $                Each Accident |
| (c)Carrier: <br><br> EXCLUDED <br> Policy Number: <br> Policy Period: | Standard Workers Compensation & Employers  Liability **Please Note:** The Umbrella Coverage for Workers Compensation and Employers Liability is not applicable in situations where an employee is subject to the New York Workers Compensation Law. | **Coverage B - Employers  Liability** <br> Bodily Injury by Accident <br> $                Each  Accident <br> Bodily Injury by Disease <br> $                  Aggregate <br> $                Each  Employee |
| (d)Carrier: <br><br><br> Policy Number: <br> Policy Period: | Liquor Liability | $                Limit of  Liability |
| (e)Carrier: <br><br><br> Policy Number: <br> Policy Period: | Professional Liability | $                Limit of Liability |
| An "X" marked in the box provided indicates these broadening or optional coverages are provided in the Underlying Insurance | | |
| (f) Carrier: <br><br><br> Policy Number: <br> Policy Period: | Directors & Officers Liability | $                Limit of  Liability |
| (g) Carrier: <br><br><br> Policy Number: <br> Policy Period: | Employee Benefits Liability | $                Limit of  Liability |
| **Countersigned By:** | | |
| **Date:** | | |
| **Authorized Representative of the Company** | | |

473-1103 (11/08)

The
**Hanover**
Insurance Group™

OBCH332709          1304500

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

The **Hanover**
Insurance Group™

## AVENUES BUSINESSOWNERS DECLARATION

### BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 11/12/2020 NUMBER 02

07

SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
ADDED AI & 30DNOC

| Policy Number | Policy Period | | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| | From | To | | |
| OBC-H332709-00 | 07/31/2020 | 07/31/2021 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL 60601

**Agent**

847-307-6100
THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL 60010

**Policy Period: Beginning and Ending at 12:01 a.m. Standard Time at the Location of the Described Premises.**

**Business Type:** CORPORATION (SINGLE).

**Mortgagee/Loss Payable:**

SEE ADDITIONAL INTEREST SCHEDULE

**Business of the Named Insured:**

SERVICE.

In consideration of the premium, insurance is provided the Named Insured with respect to those premises described in the Schedule below and with respect to those coverages and kinds of property for which a specific Limit of Insurance is shown, subject to all of the terms of this policy including forms and endorsements made a part hereof:

### LOCATION SCHEDULE

**Described Premises:**

NO. 001 001   233 N MICHIGAN AVE SUITE 1430, CHICAGO, IL 60601

| SECTION I - PROPERTY | LIMITS OF INSURANCE | | | | | |
|---|---|---|---|---|---|---|
| | Loc No 001 | Bldg No 001 | Loc No | Bldg No | Loc No | Bldg No |
| **Deductible Amount** | $ 1,000 | | $ | | $ | |
| **Building Amount Valuation** | NOT COVERED | | | | | |
| **Business Personal Property Valuation** | $ 201,400 RC | | | | | |
| **Business Income** | ACTUAL BUSINESS LOSS SUSTAINED NOT EXCEEDING 12 CONSECUTIVE MONTHS | | | | | |
| **Business Income Waiting Period** | Excluded / None / 24 hours / 48 hours /72 hours 24 HOURS | | | | | |
| **SECTION II - LIABILITY** | LIMITS OF INSURANCE | | | | | |

**Liability and Medical Expenses Limits of Insurance:**

Except for Damage to Premises Rented to You,  each paid claim for the following coverages reduce the Amount of Insurance we provide during the applicable annual  period.  Please refer to **SECTION II - LIABILITY, D. LIABILITY  AND MEDICAL  EXPENSES LIMITS OF INSURANCE,** paragraph.**4.** of the Businessowners Coverage Form.

| Liability and Medical Expenses Limit | $ 2,000,000 | Per Occurrence | $ 4,000,000 | Aggregate |
|---|---|---|---|---|
| Medical Expenses | $ 5,000 | Each Person | | |
| Damage to Premises Rented to You | $ 300,000 | All Perils | | |

Date Issued: 11/20/2020          ORIGINAL/INSURED          Payment Type:  DIRECT BILL

GROUP NAME: TECHNOLOGY - SERVICES          GROUP NUMBER: ZTS

391-1002 08 16

The
**Hanover**
Insurance Group™

## AVENUES BUSINESSOWNERS DECLARATION

### BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 11/12/2020  NUMBER 02

07

SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
ADDED AI & 30DNOC

| Policy Number | Policy Period | | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| | From | To | | |
| OBC-H332709-00 | 07/31/2020 | 07/31/2021 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

**Agent**

847-307-6100
THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

**Additional Property Coverages and Extensions:**
See attached Schedule for Additional Coverages provided for under this Policy.

Audit Frequency: Annual

**Additional Liability Coverages:**  General Liability Broadening Endorsement
**General Liability Class**:  85219
**Description**:  CUSTOM COMPUTER PROGRAMMING
**Liability Exposure:**  $1,800,000        SALES

**Policy Forms, Endorsements and Optional Coverages Attached:**
See Forms and Endorsements Schedule

PREVIOUS PREMIUM IS:                                              $ ████████
NET PREMIUM CHANGE IS:                                        $ ████
TOTAL BOP COVERAGE PREMIUM:                          $ ████████
BOP TERRORISM COVG (INCLUDED IN TOTAL POLICY PREMIUM)  $ ████
        OTHER THAN FIRE FOLLOWING                        $ ████
         FIRE FOLLOWING                                          $ ████
TOTAL UMBRELLA COVERAGE PREMIUM:                  $ ████
UMB TERRORISM COVG (INCLUDED IN TOTAL POLICY PREMIUM)  $ ████
DEPOSIT PREMIUM:                                              $ ████████
THE TOTAL ACTUAL PREMIUM:                             $ ████████

**Countersigned this _____ Day of _____**

_____
**Authorized Representative**

**This Declarations Page with the Policy Contract, Forms and Endorsements, if any,
Complete the Policy.**

Date Issued:  11/20/2020           ORIGINAL/INSURED           Payment Type: DIRECT BILL

**391-1002 08 16**                                                                      Page 2 of 2

The Hanover Insurance Group™

# ADDITIONAL INTEREST SCHEDULE

**BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 11/12/2020  NUMBER 02**

07

SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
ADDED AI & 30DNOC

| Policy Number | Policy Period | | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| | From | To | | |
| OBC-H332709-00 | 07/31/2020 | 07/31/2021 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

**Agent**

847-307-6100
THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

| Name And Address | Interest Type | Location | Building |
|---|---|---|---|
| SILICON VALLEY BANK<br>3003 TASMAN DRIVE HF 150<br>SANTA CLARA, CA  95054 | LENDER'S LOSS PAYABLE | 0 0 1 | 0 1 |

Form   391-1014 (7-99)
Date Issued:   11/20/2020                      ORIGINAL/INSURED

**The Hanover**
Insurance Group.

# ADDITIONAL PROPERTY COVERAGES AND EXTENSIONS

**BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 11/12/2020 NUMBER 02**

07  SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
ADDED AI & 30DNOC

| Policy Number | Policy Period | | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| | From | To | | |
| OBC-H332709-00 | 07/31/2020 | 07/31/2021 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

**Agent**

847-307-6100

THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

| Additional Property Coverages & Extensions | Deductible | Amount Included | Additional Amount Increase | Total Limit |
|---|---|---|---|---|
| DEBRIS REMOVAL | NONE | $25,000 | N/A | $25,000 |
| PRESERVATION OF PROPERTY | NONE | 90 DAYS | N/A | 90 DAYS |
| FIRE DEPARTMENT SERVICE CHARGE | NONE | $25,000 | N/A | $25,000 |
| POLLUTANT CLEAN-UP AND REMOVAL | NONE | $25,000 | N/A | $25,000 |
| MONEY ORDERS AND COUNTERFEIT MONEY | $500 | $5,000 | N/A | $5,000 |
| FORGERY OR ALTERATION | $500 | $25,000 | N/A | $25,000 |
| GLASS EXPENSES | $250 | INCLUDED | N/A | INCLUDED |
| REWARDS ARSON, THEFT AND VANDALISM | NONE | $10,000 | N/A | $10,000 |
| TENANT SIGNS | $500 | $5,000 | N/A | $5,000 |
| FIRE PROTECTION EQUIPMENT RECHARGE | NONE | $25,000 | N/A | $25,000 |
| INSTALLATION FLOATER | $1,000 | $5,000 | N/A | $5,000 |
| FINE ARTS | $500 | $10,000 | N/A | $10,000 |
| FENCE AND WALLS | SEE BUILDING AND CONTENTS DEDUCTIBLE | INCLUDED | N/A | INCLUDED |
| SALES REPRESENTATIVE SAMPLES | $1,000 | $5,000 | N/A | $5,000 |
| LEASEHOLD INTEREST (TENANT'S ONLY) | NONE | $10,000 | N/A | $10,000 |
| UNAUTHORIZED BUSINESS CREDIT CARD USE | NONE | $5,000 | N/A | $5,000 |
| UTILITY SERVICES | | | N/A | |
| DIRECT DAMAGE | $500 | $10,000 | N/A | $10,000 |
| BUSINESS INCOME | 24 HOURS | $5,000 | N/A | $5,000 |
| DEFERRED PAYMENTS | NONE | $5,000 | N/A | $5,000 |
| NEWLY ACQUIRED OR CONSTRUCTED PROPERTY | | 180 DAYS | N/A | 180 DAYS |
| BUILDINGS | $500 | $1,000,000 | N/A | $1,000,000 |
| PERSONAL PROPERTY | $500 | $500,000 | N/A | $500,000 |
| BUSINESS INCOME AND EXTRA EXPENSE | SEE WAITING PERIOD | $250,000 | N/A | $250,000 |
| OUTDOOR PROPERTY - TREES, SHRUBS AND PLANTS-$1,000 EACH ITEM | $500 | $10,000 | N/A | $10,000 |

Form  391-1018  (7-02)
Date Issued:  11/20/2020

ORIGINAL/INSURED

**The Hanover** Insurance Group.

# ADDITIONAL PROPERTY COVERAGES AND EXTENSIONS

### BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 11/12/2020 NUMBER 02

07      SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD

ADDED AI & 30DNOC

| Policy Number | Policy Period From | To | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| OBC-H332709-00 | 07/31/2020 | 07/31/2021 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL 60601

**Agent**

847-307-6100

THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL 60010

| Additional Property Coverages & Extensions | Deductible | Amount Included | Additional Amount Increase | Total Limit |
|---|---|---|---|---|
| PERSONAL EFFECTS | $500 | $10,000 | N/A | $10,000 |
| INVENTORY AND LOSS APPRAISAL | NONE | $10,000 | N/A | $10,000 |
| KEY REPLACEMENT AND LOCK REPAIR | NONE | $1,000 | N/A | $1,000 |
| APPURTENANT STRUCTURE | $500 | $50,000 | N/A | $50,000 |
| PERSONAL PROPERTY IN TRANSIT | $1,000 | $10,000 | N/A | $10,000 |
| EXTENDED BUSINESS INCOME | | 30 DAYS | N/A | 30 DAYS |
| EMPLOYEE THEFT INCLUDING ERISA COMPLIANCE | $1,000 | $10,000 | N/A | $10,000 |
| COMMERCIAL TOOLS AND SMALL EQUIP | $500 | $5,000 | N/A | $5,000 |
| PERSONAL PROPERTY OFF PREMISES | $1,000 | $50,000 | N/A | $50,000 |
| BUSINESS INCOME FROM DEPENDENT PROPERTIES | 72 HOURS | $5,000 | N/A | $5,000 |
| TERRORISM | SEE BUILDING AND CONTENTS DEDUCTIBLE | SAME AS PROPERTY LIMITS OF INSURANCE IF COVERED | N/A | SAME AS PROPERTY LIMITS OF INSURANCE IF COVERED |
| INTERRUPTION OF COMPUTER OPERATIONS | SEE WAITING PERIOD | $10,000 | N/A | $10,000 |
| BUSINESS PERSONAL PROPERTY TEMPORARILY IN PORTABLE STORAGE UNITS | $500 | $25,000 | N/A | $25,000 |
| CIVIL AUTHORITY | 72 HOURS | 4 WEEKS | N/A | 4 WEEKS |
| COMPUTER AND FUNDS TRANSFER FRAUD | $500 | $5,000 | N/A | $5,000 |
| LIMITED COVERAGE FOR FUNGI, WET ROT, OR DRY ROT | $500 | $50,000 | N/A | $50,000 |
| PAVED SURFACES | $500 | $25,000 | N/A | $25,000 |
| TENANT BUILDING COVERAGE - REQUIRED BY LEASE | $500 | $25,000 | N/A | $25,000 |
| TENANT BUSINESS PERSONAL PROPERTY COVERAGE - REQUIRED BY LEASE | $500 | $25,000 | N/A | $25,000 |

Form 391-1018 (7-02)
Date Issued: 11/20/2020

ORIGINAL/INSURED

**The Hanover** Insurance Group.

# ADDITIONAL PROPERTY COVERAGES AND EXTENSIONS

**BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 11/12/2020 NUMBER 02**

07      SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
        ADDED AI & 30DNOC

| Policy Number | Policy Period From | To | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| OBC-H332709-00 | 07/31/2020 | 07/31/2021 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

**Agent**

847-307-6100
THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

| Additional Property Coverages & Extensions | Deductible | Amount Included | Additional Amount Increase | Total Limit |
|---|---|---|---|---|
| THEFT OF TELEPHONIC SERVICES | $500 | $25,000 | N/A | $25,000 |
| UNDERGROUND PIPES | $500 | INCLUDED | N/A | INCLUDED |

Form  391-1018  (7-02)
Date Issued:  11/20/2020

**The Hanover** Insurance Group.

# ADDITIONAL PROPERTY COVERAGES AND EXTENSIONS
## BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 11/12/2020  NUMBER 02

07        SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
          ADDED AI & 30DNOC

| Policy Number | Policy Period From | To | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| OBC-H332709-00 | 07/31/2020 | 07/31/2021 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

Named Insured and Address
COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

Agent
847-307-6100
THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

| Additional Property Coverages & Extensions | Loc. No. | Bldg. No. | Deductible Amount | Amount Included | Additional Amount | Total Limit |
|---|---|---|---|---|---|---|
| ORDINANCE OR LAW | 001 | 001 | NONE | $5,000 | N/A | $5,000 |
| COMPUTER EQUIPMENT | | | $500 | $35,000 | N/A | $35,000 |
| COMPUTER EQUIPMENT EXTRA EXPENSE | | | NONE | $5,000 | N/A | $5,000 |
| ELECTRONIC VANDALISM | | | $500 | | | |
| OCCURRENCE LIMIT | | | | $10,000 | N/A | $10,000 |
| AGGREGATE LIMIT | | | | $10,000 | N/A | $10,000 |
| VALUABLE PAPERS AND RECORDS (OTHER THAN ELECTRONIC DATA) | | | $1,000 | | | |
| ON PREMISES | | | | $25,000 | N/A | $25,000 |
| OFF PREMISES | | | | $25,000 | N/A | $25,000 |
| ACCOUNTS RECEIVABLE | | | $1,000 | | | |
| ON PREMISES | | | | $25,000 | N/A | $25,000 |
| OFF PREMISES | | | | $25,000 | N/A | $25,000 |
| MONEY AND SECURITIES | | | $500 | | | |
| ON PREMISES | | | | $10,000 | N/A | $10,000 |
| OFF PREMISES | | | | $5,000 | N/A | $5,000 |
| EQUIPMENT BREAKDOWN | | | $1,000 | INCLUDED | N/A | INCLUDED |
| PROTECTIVE DEVICES CREDIT | | | | | | |
| AUTOMATIC SPRINKLER SYSTEM | | | NO | | | |
| AUTOMATIC FIRE ALARM | | | NO | | | |
| CENTRAL STATION SECURITY | | | NO | | | |
| COLLAPSE | | | $500 | INCLUDED | N/A | INCLUDED |
| UTILITY SERVICES | | | | | | |
| DIRECT DAMAGE | | | $500 | $50,000 | N/A | $50,000 |
| TIME-ELEMENT | | | 24 HOURS | $50,000 | N/A | $50,000 |

Form  391-1018A (9-04)
Date Issued:  11/20/2020

ORIGINAL/INSURED

The **Hanover** Insurance Group™

# AVENUES BUSINESSOWNERS DECLARATION

## BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 11/12/2020  NUMBER 02

07

SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
ADDED AI & 30DNOC

| Policy Number | Policy Period | | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| | From | To | | |
| OBC-H332709-00 | 07/31/2020 | 07/31/2021 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**
COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

**Agent**
847-307-6100
THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

## Forms and Endorsements Schedule

| Form Number | Edition Date | Description |
|---|---|---|
| 391-1402 | 08/16 | TECHNOLOGY DELUXE GOLD BROAD |
| 391-1371 | 01/10 | REV INFRINGE OF COPYRIGHT EXCL |
| BP0404 | 01/10 | HIRED AUTO NON-OWNED AUTO LIAB |
| 401-1374 | 01/15 | DISCLOSURE PURSUANT TO TRIA |
| 391-1114 | 01/15 | CAP ON LOSSES FROM TERRORISM |
| 391-1313 | 01/15 | EXCLUSION OF PUNITIVE DAMAGES |
| 391-1006 | 08/16 | LIABILITY SPECIAL BROADENING |
| BP0417 | 01/10 | EMPLYMT RELATED PRACTICES EXCL |
| 231-0475 | 06/89 | PILR NOTICE |
| 391-1003 | 08/16 | BUSINESSOWNERS COVERAGE FORM |
| BP0643 | 04/06 | IL CHANGES - DEFENSE COSTS |
| 391-1901 | 06/18 | ILLINOIS CHANGES |
| 421-0022 | 07/02 | ASBESTOS EXCLUSION |
| 391-1102 | 08/16 | EXCL - FUNGI OR BACTERIA LIAB |
| 331-0053 | 08/16 | ILLINOIS INQUIRY NOTICE |
| 391-1375 | 01/10 | AMEND LIMITS PERSONAL AND ADV |
| 391-1218 | 06/06 | EPLI INSURANCE CVG ENDR ILLINO |
| 391-1206 | 06/06 | EPLI IMPORTANT NOTICE |
| 391-1208 | 03/06 | EPLI SUPPLEMENTAL DEC |
| BP1203 | 01/10 | LOSS PAYABLE PROVISIONS |
| 401-1504 | 01/20 | CAP LOSSES CERT ACTS OF TERR |
| 391-1440 | 01/15 | DATA BREACH COVERAGE FORM |
| 391-1442 | 12/09 | ASSOC AND FAMILY MBR ADD COV |
| 391-1585 | 12/11 | IDENTITY THEFT NOTICE |

Form  391-1016 (7-99
Date Issued:  11/20/2020

ORIGINAL/INSURED

The **Hanover**
Insurance Group

# AVENUES BUSINESSOWNERS DECLARATION

## BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 11/12/2020  NUMBER 02

07

SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
ADDED AI & 30DNOC

| Policy Number | Policy Period | | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| | From | To | | |
| OBC-H332709-00 | 07/31/2020 | 07/31/2021 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**
COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

**Agent**
847-307-6100
THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

## Forms and Endorsements Schedule

| | Form Number | Edition Date | Description |
|---|---|---|---|
| | 391-1854 | 01/15 | IL CHANGES - DATA BREACH |
| * | 401-1235 | 12/14 | CANCEL NOTICE TO DESIGNATED |
| * | 391-1941 | 08/16 | AI DESIGNATED PER OR ORG |

**COMMERCIAL EMPLOYMENT PRACTICES**
**LIABILITY INSURANCE COVERAGE ENDORSEMENT**
**SUPPLEMENTAL DECLARATIONS**



OBCH332709      1304500

Policy Number:  OBC H332709 00
Account Number:  1521871564
Named Insured:  COOLER SCREENS INC

Agent:  1304500

---

## NOTICE

· EXCEPT TO SUCH EXTENT AS MAY OTHERWISE BE PROVIDED HEREIN, THE COVERAGE OF THIS COVERAGE ENDORSEMENT IS LIMITED TO LIABILITY FOR ONLY THOSE CLAIMS OR SUITS THAT ARE FIRST MADE AGAINST THE INSUREDS DURING THE EPL COVERAGE PERIOD AND REPORTED IN WRITING TO THE INSURER PURSUANT TO THE TERMS HEREIN. VARIOUS PROVISIONS IN THIS COVERAGE ENDORSEMENT RESTRICT COVERAGE. PLEASE READ THE ENTIRE COVERAGE ENDORSEMENT CAREFULLY TO DETERMINE RIGHTS, DUTIES AND WHAT IS AND IS NOT COVERED.

· THE LIMIT OF LIABILITY AVAILABLE TO PAY JUDGEMENTS OR SETTLEMENTS UNDER THIS COVERAGE ENDORSEMENT SHALL BE REDUCED BY AMOUNTS INCURRED FOR LEGAL DEFENSE. AMOUNTS INCURRED FOR LEGAL DEFENSE SHALL BE APPLIED AGAINST THE DEDUCTIBLE AMOUNT.

---

| | | |
|---|---|---|
| **EPL Coverage Period:** | From: 07/31/2020<br><br>To:      07/31/2021 | At 12:01 A.M. Standard Time at your mailing address shown on the Declarations page of this policy. |
| **EPL Aggregate Limit of Liability:** | $          25,000.00 | Aggregate for all "loss" combined, including "defense costs". |
| **EPL Deductible Amount:** | $            5,000.00 | For "loss" arising from claims or suits alleging the same "wrongful employment act" or "related wrongful employment acts". |
| **EPL Original Inception Date:** | 07/31/2020 | (Enter "original inception date") If no date is shown, "we" will consider the "original inception date" to be the same as the beginning of this coverage endorsement. |

This insurance does not apply to "loss" arising out of a "wrongful employment act" that: (1) commences on or takes place prior to the "original inception date" shown here, or (2) arises out of incidents or circumstance of which "you" had knowledge prior to the "original inception date" shown.

| | |
|---|---|
| **EPL COVERAGE PREMIUM:** | $  |

391-1208 03 06

The Hanover Insurance Group™

| |
|---|
| **NEW BUSINESS POLICY** |
| **COMMERCIAL UMBRELLA POLICY** |
| THESE DECLARATIONS TOGETHER WITH THE COMMON POLICY CONDITIONS AND COVERAGE FORM(S) COMPLETE THE BELOW NUMBERED POLICY |
| POLICY NUMBER: OBC-H332709-00 |
| DECLARATIONS |

| **Named Insured and Address** (No., Street, Town, County, State) | **Agent** |
|---|---|
| COOLER SCREENS INC<br>233 N MICHIGAN AVE SUITE 1430<br>CHICAGO, IL 60601 | 130450000<br>THE PLEXUS GROUPE LLC<br>SUITE 300<br>21805 W. FIELD PARKWAY<br>DEER PARK, IL 60010 |

| |
|---|
| **Policy Period:** (Month, Day, Year) |
| From 07/31/2020 To 07/31/2021<br>12:01 AM, standard time at the address of the Named Insured as stated herein. |

Form of Business:

☐ Individual ☐ Partnership ☒ Corporation ☐ Limited Liability Company
☐ Organization (Other than Partnership, Joint Venture, or Limited Liability Company

**Business Description:**
**SERVICE.**

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY. THIS PREMIUM MAY BE SUBJECT TO AUDIT.

| |
|---|
| **Limit of Liability (Section III)**<br> Each Occurrence Limit $ 1,000,000<br> General Aggregate Limit $ 1,000,000<br> Product Completed Operations Aggregate Limit $ 1,000,000 |

| |
|---|
| **Retained Limit     Self-Insured Retention          $ NIL** |

| |
|---|
| **Premium Computation** |

Annual Premium $ ▮
Advance Premium $

**Endorsements:**

| | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| CU2130 | 01/15 | CU2156 | 06/06 | CU2136 | 01/15 | 473-1150 | 05/12 | 473-1157 | 01/10 | 473-0004 | 10/05 |
| CU0004 | 05/09 | 473-0016 | 10/05 | 473-0023 | 10/05 | 473-0040 | 10/05 | CU0200 | 12/07 | CU0001 | 12/07 |
| 473-2194 | 08/16 | CU2123 | 02/02 | 473-2211 | 10/16 | CU2125 | 12/01 | CU2255 | 09/00 | CU2127 | 12/04 |
| CU2150 | 03/05 | IL0017 | 11/98 | CU2436 | 12/05 | IL0162 | 09/08 | 473-1125 | 02/09 | CU2186 | 05/14 |

☐ PRE PAID - the total annual premium is due at inception.
☐ HANOCASH - the annual premium is payable according to the term of the Hanocash endorsement attachment
☐ ACCOUNT BILL   ☒ DIRECT BILL   ☐ Annual   ☐ Semi-Annual   ☐ Other
Audit period: Non Auditable Unless indicated by ☐ Annual   ☐ Semi-Annual   ☐ Other
If you cancel this policy, we shall receive and retain not less than $ as a policy minimum premium.

The Hanover
Insurance Group

OBCH332709     1304500

## SCHEDULE A - SCHEDULE OF UNDERLYING POLICIES

**Insured:**   COOLER SCREENS INC
**Effective on and after: 07/31/2020  ,  12:01 AM Standard Time**
**This schedule is part of Policy Number:  OBC-H332709-00**

| CARRIER, POLICY NUMBER & PERIOD | TYPE OF POLICY | APPLICABLE LIMITS OR AMOUNT OF INSURANCE |
|---|---|---|
| (a)Carrier:<br><br>CITIZENS INSURANCE COMPANY OF AMERICA<br><br>Policy Number:  OBC-H332709-00<br>Policy Period:   07/31/2020    TO  07/31/2021 | Commercial General Liability<br>[X]Non-owned & Hired Autos | $  2,000,000    Each  Occurrence<br>$  4,000,000    General  Aggregate<br>$  4,000,000    Product/Compl eted Operations Aggregate |
| (b) Carrier:<br><br><br>Policy Number:<br>Policy Period: | Comprehensive Automobile Liability | Bodily Injury and Property Damage Liability Combined<br>$                Each Accident<br>Bodily Injury<br>$                Each Person<br>$                Each Accident<br>Property Damage<br>$                Each Accident |
| (c)Carrier:<br><br>EXCLUDED<br>Policy Number:<br>Policy Period: | Standard Workers Compensation & Employers  Liability<br>**Please Note:** The Umbrella Coverage for Workers Compensation and Employers Liability is not applicable in situations where an employee is subject to the New York Workers Compensation Law. | **Coverage B - Employers  Liability**<br>Bodily Injury by Accident<br>$                Each  Accident<br>Bodily Injury by Disease<br>$                Aggregate<br>$                Each  Employee |
| (d)Carrier:<br><br><br>Policy Number:<br>Policy Period: | Liquor Liability | $                Limit of   Liability |
| (e)Carrier:<br><br><br>Policy Number:<br>Policy Period: | Professional Liability | $                Limit of Liability |
| An "X" marked in the box provided indicates these broadening or optional coverages are provided in the Underlying Insurance | | |
| (f) Carrier:<br><br><br>Policy Number:<br>Policy Period: | Directors & Officers Liability | $                Limit of   Liability |
| (g) Carrier:<br><br><br>Policy Number:<br>Policy Period: | Employee Benefits Liability | $                Limit of   Liability |
| **Countersigned By:** | | |
| **Date:** | | |
| **Authorized Representative of the Company** | | |

473-1103 (11/08)

The **Hanover**
Insurance Group™

OBCH332709    1304500

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## NOTICE OF CANCELLATION TO DESIGNATED ENTITY(S)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
HANOVER COMMERCIAL FOLLOW FORM EXCESS AND UMBRELLA POLICY
COMMERCIAL PROPERTY COVERAGE PART
BUSINESS AUTO COVERAGE FORM
BUSINESSOWNERS COVERAGE FORM

### SCHEDULE

| Name of Designated Entity Mailing Address or Email Address | Number Days Notice |
|---|---|
| SILICON VALLEY BANK<br>3003 TASMAN DRIVE<br>HF 150<br>SANTA CLARA, CA<br>95054 | 30 |
| | |
| | |

(Information required to complete this Schedule, if not shown above, will be shown in the Declarations.)

If we cancel this policy for any reason other than nonpayment of premium, we will give written notice of such cancellation to the Designated Entity(s) shown in the Schedule. Such notice may be delivered or sent by any means of our choosing. The notice to the Designated Entity(s) will state the effective date of cancellation.

Unless otherwise noted in the Schedule above, such notice will be provided to the Designated Entity(s) no more than the number of days in advance of the effective date of cancellation that we are required to provide to the Named Insured for such cancellation.

Such notice of cancellation is solely for the purpose of informing the Designated Entity(s) of the effective date of cancellation and does not grant, alter, or extend any rights or obligations under this policy.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

**401-1235 12 14**    Includes copyrighted material of Insurance Services Office, Inc., with its permission.    **Page 1 of 1**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED - DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

### SCHEDULE

| Name of Person or Organization: |
|---|
| S I L I C O N   V A L L E Y   B A N K |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

For the purpose of coverage provided by this endorsement, the following changes are made to **SECTION II - LIABILITY:**

**A.** The following is added to **SECTION II - LIABILITY, C. Who is an Insured:**

Any person or organization shown in the Schedule above is also an additional insured, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf in the performance of your ongoing operations or in connection with your premises owned by or rented to you.

However:

**a.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**b.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** The following is added to **SECTION II - LIABILITY, D. Liability and Medical Expenses Limits of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**a.** Required by the contract or agreement; or

**b.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

ALL OTHER TERMS, CONDITIONS, AND EXCLUSIONS REMAIN UNCHANGED.

The
**Hanover**
Insurance Group℠

OBCH332709          1304500

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

The **Hanover**
Insurance Group™

## AVENUES BUSINESSOWNERS DECLARATION

### BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 02/27/2021 NUMBER 03

07

SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
ADDED LOC#02

| Policy Number | Policy Period | | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| | From | To | | |
| OBC-H332709-00 | 07/31/2020 | 07/31/2021 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

**Agent**

847-307-6100
THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

**Policy Period:  Beginning and Ending at 12:01 a.m. Standard Time at the Location of the Described Premises.**

**Business Type:**  CORPORATION (SINGLE).

**Mortgagee/Loss Payable:**

SEE ADDITIONAL INTEREST SCHEDULE

**Business of the Named Insured:**

SERVICE.

In consideration of the premium, insurance is provided the Named Insured with respect to those premises described in the Schedule below and with respect to those coverages and kinds of property for which a specific Limit of Insurance is shown, subject to all of the terms of this policy including forms and endorsements made a part hereof:

### LOCATION SCHEDULE

**Described Premises:**

NO. 001 001    233 N MICHIGAN AVE SUITE 1430, CHICAGO, IL  60601

NO. 002 001    303.E WACKER SUITE 295, CHICAGO, IL  60601

| SECTION I - PROPERTY | LIMITS OF INSURANCE | | | | | |
|---|---|---|---|---|---|---|
| | Loc No 001 | Bldg No 001 | Loc No 002 | Bldg No 001 | Loc No | Bldg No |
| **Deductible Amount** | $        1,000 | | $        1,000 | | $ | |
| **Building Amount Valuation** | NOT COVERED | | NOT COVERED | | | |
| **Business Personal Property Valuation** | $      201,400 RC | | $      201,400 RC | | | |
| **Business Income** | ACTUAL BUSINESS LOSS SUSTAINED NOT EXCEEDING 12 CONSECUTIVE MONTHS | | | | | |
| **Business Income Waiting Period** | **Excluded / None / 24 hours / 48 hours / 72 hours** 24 HOURS | | | | | |
| **SECTION II - LIABILITY** | LIMITS OF INSURANCE | | | | | |

**Liability and Medical Expenses Limits of Insurance:**

Except for Damage to Premises Rented to You,  each paid claim for the following coverages reduce the Amount of Insurance we provide during the applicable annual  period.  Please refer to **SECTION II - LIABILITY, D. LIABILITY AND MEDICAL EXPENSES LIMITS OF INSURANCE,** paragraph **4.** of the Businessowners Coverage Form.

| | | | | |
|---|---|---|---|---|
| **Liability and Medical Expenses Limit** | $ 2,000,000 | **Per Occurrence** | $ 4,000,000 | **Aggregate** |
| **Medical Expenses** | $        5,000 | **Each Person** | | |
| **Damage to Premises Rented to You** | $      300,000 | **All Perils** | | |

Date Issued: 03/08/2022                    ORIGINAL/INSURED          Payment Type:  DIRECT BILL

GROUP NAME: TECHNOLOGY - SERVICES              GROUP NUMBER: ZTS

**The Hanover** Insurance Group.

# AVENUES BUSINESSOWNERS DECLARATION

## BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 02/27/2021  NUMBER 03

07

SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
ADDED LOC#02

| Policy Number | Policy Period | | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| | From | To | | |
| OBC-H332709-00 | 07/31/2020 | 07/31/2021 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

**Agent**

847-307-6100
THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

**Additional Property Coverages and Extensions:**
See attached Schedule for Additional Coverages provided for under this Policy.

Audit Frequency: Annual

**Additional Liability Coverages:**  General Liability Broadening Endorsement
**General Liability Class**: 85219
**Description**:  CUSTOM COMPUTER PROGRAMMING
**Liability Exposure:**  $1,800,000      SALES

**Policy Forms, Endorsements and Optional Coverages Attached:**
See Forms and Endorsements Schedule

P R E V I O U S   P R E M I U M   I S :                                      $ ▮▮▮▮
N E T   P R E M I U M   C H A N G E   I S :                            $ ▮▮▮▮
T O T A L   B O P   C O V E R A G E   P R E M I U M :           $ ▮▮▮▮
B O P   T E R R O R I S M   C O V G   ( I N C L U D E D   I N   T O T A L   P O L I C Y   P R E M I U M )   $ ▮▮▮▮
     O T H E R   T H A N   F I R E   F O L L O W I N G
      F I R E   F O L L O W I N G                                 $ ▮▮▮▮
T O T A L   U M B R E L L A   C O V E R A G E   P R E M I U M :           $ ▮▮▮▮
U M B   T E R R O R I S M   C O V G   ( I N C L U D E D   I N   T O T A L   P O L I C Y   P R E M I U M )   $ ▮▮▮▮
D E P O S I T   P R E M I U M :                                    $ ▮▮▮▮
T H E   T O T A L   A C T U A L   P R E M I U M :              $ ▮▮▮▮

**Countersigned this _____ Day of _____**                    _____
                                                                                    **Authorized Representative**

**This Declarations Page with the Policy Contract, Forms and Endorsements, if any,
Complete the Policy.**

Date Issued:  03/08/2022          ORIGINAL/INSURED          Payment Type: DIRECT BILL

**391-1002 08 16**                                                                              **Page 2 of 2**

The **Hanover**
Insurance Group.

# ADDITIONAL INTEREST SCHEDULE

**BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 02/27/2021  NUMBER 03**

07

SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
ADDED LOC#02

| Policy Number | Policy Period | | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| | From | To | | |
| OBC-H332709-00 | 07/31/2020 | 07/31/2021 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

**Agent**

847-307-6100
THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

| Name And Address | Interest Type | Location | Building |
|---|---|---|---|
| SILICON VALLEY BANK<br>3003 TASMAN DRIVE HF 150<br>SANTA CLARA, CA  95054 | LENDER'S LOSS PAYABLE | 0 0 1 | 0 1 |

Form   391-1014 (7-99)
Date Issued:   03/08/2022                    ORIGINAL/INSURED

**The Hanover Insurance Group**

# ADDITIONAL PROPERTY COVERAGES AND EXTENSIONS

**BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 02/27/2021  NUMBER 03**

07    SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
        ADDED LOC#02

| Policy Number | Policy Period | | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| | From | To | | |
| OBC-H332709-00 | 07/31/2020 | 07/31/2021 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

**Agent**

847-307-6100

THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

| Additional Property Coverages & Extensions | Deductible | Amount Included | Additional Amount Increase | Total Limit |
|---|---|---|---|---|
| DEBRIS REMOVAL | NONE | $25,000 | N/A | $25,000 |
| PRESERVATION OF PROPERTY | NONE | 90 DAYS | N/A | 90 DAYS |
| FIRE DEPARTMENT SERVICE CHARGE | NONE | $25,000 | N/A | $25,000 |
| POLLUTANT CLEAN-UP AND REMOVAL | NONE | $25,000 | N/A | $25,000 |
| MONEY ORDERS AND COUNTERFEIT MONEY | $500 | $5,000 | N/A | $5,000 |
| FORGERY OR ALTERATION | $500 | $25,000 | N/A | $25,000 |
| GLASS EXPENSES | $250 | INCLUDED | N/A | INCLUDED |
| REWARDS ARSON, THEFT AND VANDALISM | NONE | $10,000 | N/A | $10,000 |
| TENANT SIGNS | $500 | $5,000 | N/A | $5,000 |
| FIRE PROTECTION EQUIPMENT RECHARGE | NONE | $25,000 | N/A | $25,000 |
| INSTALLATION FLOATER | $1,000 | $5,000 | N/A | $5,000 |
| FINE ARTS | $500 | $10,000 | N/A | $10,000 |
| FENCE AND WALLS | SEE BUILDING AND CONTENTS DEDUCTIBLE | INCLUDED | N/A | INCLUDED |
| SALES REPRESENTATIVE SAMPLES | $1,000 | $5,000 | N/A | $5,000 |
| LEASEHOLD INTEREST (TENANT'S ONLY) | NONE | $10,000 | N/A | $10,000 |
| UNAUTHORIZED BUSINESS CREDIT CARD USE | NONE | $5,000 | N/A | $5,000 |
| UTILITY SERVICES | | | N/A | |
|   DIRECT DAMAGE | $500 | $10,000 | N/A | $10,000 |
|   BUSINESS INCOME | 24 HOURS | $5,000 | N/A | $5,000 |
| DEFERRED PAYMENTS | NONE | $5,000 | N/A | $5,000 |
| NEWLY ACQUIRED OR CONSTRUCTED PROPERTY | | 180 DAYS | N/A | 180 DAYS |
|   BUILDINGS | $500 | $1,000,000 | N/A | $1,000,000 |
|   PERSONAL PROPERTY | $500 | $500,000 | N/A | $500,000 |
|   BUSINESS INCOME AND EXTRA EXPENSE | SEE WAITING PERIOD | $250,000 | N/A | $250,000 |
| OUTDOOR PROPERTY - TREES, SHRUBS AND PLANTS-$1,000 EACH ITEM | $500 | $10,000 | N/A | $10,000 |

Form  391-1018  (7-02)
Date Issued:  03/08/2022

**The Hanover Insurance Group.**

# ADDITIONAL PROPERTY COVERAGES AND EXTENSIONS

**BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 02/27/2021 NUMBER 03**

07          SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
            ADDED LOC#02

| Policy Number | Policy Period From | To | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| OBC-H332709-00 | 07/31/2020 | 07/31/2021 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL 60601

**Agent**

847-307-6100

THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL 60010

| Additional Property Coverages & Extensions | Deductible | Amount Included | Additional Amount Increase | Total Limit |
|---|---|---|---|---|
| PERSONAL EFFECTS | $500 | $10,000 | N/A | $10,000 |
| INVENTORY AND LOSS APPRAISAL | NONE | $10,000 | N/A | $10,000 |
| KEY REPLACEMENT AND LOCK REPAIR | NONE | $1,000 | N/A | $1,000 |
| APPURTENANT STRUCTURE | $500 | $50,000 | N/A | $50,000 |
| PERSONAL PROPERTY IN TRANSIT | $1,000 | $10,000 | N/A | $10,000 |
| EXTENDED BUSINESS INCOME | | 30 DAYS | N/A | 30 DAYS |
| EMPLOYEE THEFT INCLUDING ERISA COMPLIANCE | $1,000 | $10,000 | N/A | $10,000 |
| COMMERCIAL TOOLS AND SMALL EQUIP | $500 | $5,000 | N/A | $5,000 |
| PERSONAL PROPERTY OFF PREMISES | $1,000 | $50,000 | N/A | $50,000 |
| BUSINESS INCOME FROM DEPENDENT PROPERTIES | 72 HOURS | $5,000 | N/A | $5,000 |
| TERRORISM | SEE BUILDING AND CONTENTS DEDUCTIBLE | SAME AS PROPERTY LIMITS OF INSURANCE IF COVERED | N/A | SAME AS PROPERTY LIMITS OF INSURANCE IF COVERED |
| INTERRUPTION OF COMPUTER OPERATIONS | SEE WAITING PERIOD | $10,000 | N/A | $10,000 |
| BUSINESS PERSONAL PROPERTY TEMPORARILY IN PORTABLE STORAGE UNITS | $500 | $25,000 | N/A | $25,000 |
| CIVIL AUTHORITY | 72 HOURS | 4 WEEKS | N/A | 4 WEEKS |
| COMPUTER AND FUNDS TRANSFER FRAUD | $500 | $5,000 | N/A | $5,000 |
| LIMITED COVERAGE FOR FUNGI, WET ROT, OR DRY ROT | $500 | $50,000 | N/A | $50,000 |
| PAVED SURFACES | $500 | $25,000 | N/A | $25,000 |
| TENANT BUILDING COVERAGE - REQUIRED BY LEASE | $500 | $25,000 | N/A | $25,000 |
| TENANT BUSINESS PERSONAL PROPERTY COVERAGE - REQUIRED BY LEASE | $500 | $25,000 | N/A | $25,000 |

Form 391-1018 (7-02)
Date Issued: 03/08/2022

**The Hanover**
Insurance Group™

# ADDITIONAL PROPERTY COVERAGES AND EXTENSIONS

**BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 02/27/2021  NUMBER 03**

07       SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
         ADDED LOC#02

| Policy Number | Policy Period From | To | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| OBC-H332709-00 | 07/31/2020 | 07/31/2021 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

**Agent**

847-307-6100
THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

| Additional Property Coverages & Extensions | Deductible | Amount Included | Additional Amount Increase | Total Limit |
|---|---|---|---|---|
| THEFT OF TELEPHONIC SERVICES | $500 | $25,000 | N/A | $25,000 |
| UNDERGROUND PIPES | $500 | INCLUDED | N/A | INCLUDED |

Form  391-1018  (7-02)
Date Issued:  03/08/2022

**The Hanover**
Insurance Group

# ADDITIONAL PROPERTY COVERAGES AND EXTENSIONS

**BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 02/27/2021  NUMBER 03**

07          SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
            ADDED LOC#02

| Policy Number | Policy Period | | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| | From | To | | |
| OBC-H332709-00 | 07/31/2020 | 07/31/2021 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

Named Insured and Address                        Agent
COOLER SCREENS INC                         847-307-6100
233 N MICHIGAN AVE SUITE 1430              THE PLEXUS GROUPE LLC
CHICAGO, IL  60601                         SUITE 300
                                           21805 W. FIELD PARKWAY
                                           DEER PARK, IL  60010

| Additional Property Coverages & Extensions | Loc. No. | Bldg. No. | Deductible Amount | Amount Included | Additional Amount | Total Limit |
|---|---|---|---|---|---|---|
| ORDINANCE OR LAW | 001 | 001 | NONE | $5,000 | N/A | $5,000 |
| COMPUTER EQUIPMENT | | | $500 | $35,000 | N/A | $35,000 |
| COMPUTER EQUIPMENT EXTRA EXPENSE | | | NONE | $5,000 | N/A | $5,000 |
| ELECTRONIC VANDALISM | | | $500 | | | |
| OCCURRENCE LIMIT | | | | $10,000 | N/A | $10,000 |
| AGGREGATE LIMIT | | | | $10,000 | N/A | $10,000 |
| VALUABLE PAPERS AND RECORDS (OTHER THAN ELECTRONIC DATA) | | | $1,000 | | | |
| ON PREMISES | | | | $25,000 | N/A | $25,000 |
| OFF PREMISES | | | | $25,000 | N/A | $25,000 |
| ACCOUNTS RECEIVABLE | | | $1,000 | | | |
| ON PREMISES | | | | $25,000 | N/A | $25,000 |
| OFF PREMISES | | | | $25,000 | N/A | $25,000 |
| MONEY AND SECURITIES | | | $500 | | | |
| ON PREMISES | | | | $10,000 | N/A | $10,000 |
| OFF PREMISES | | | | $5,000 | N/A | $5,000 |
| EQUIPMENT BREAKDOWN | | | $1,000 | INCLUDED | N/A | INCLUDED |
| PROTECTIVE DEVICES CREDIT | | | | | | |
| AUTOMATIC SPRINKLER SYSTEM | | | NO | | | |
| AUTOMATIC FIRE ALARM | | | NO | | | |
| CENTRAL STATION SECURITY | | | NO | | | |
| COLLAPSE | | | $500 | INCLUDED | N/A | INCLUDED |
| UTILITY SERVICES | | | | | | |
| DIRECT DAMAGE | | | $500 | $50,000 | N/A | $50,000 |
| TIME-ELEMENT | | | 24 HOURS | $50,000 | N/A | $50,000 |

Form  391-1018A (9-04)
Date Issued:  03/08/2022

ORIGINAL/INSURED

**The Hanover** Insurance Group™

# ADDITIONAL PROPERTY COVERAGES AND EXTENSIONS

**BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 02/27/2021  NUMBER 03**

07      SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
         ADDED LOC#02

| Policy Number | Policy Period From | To | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| OBC-H332709-00 | 07/31/2020 | 07/31/2021 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

Named Insured and Address
COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

Agent
847-307-6100
THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

| Additional Property Coverages & Extensions | Loc. No. | Bldg. No. | Deductible Amount | Amount Included | Additional Amount | Total Limit |
|---|---|---|---|---|---|---|
| ORDINANCE OR LAW | 002 | 001 | NONE | $5,000 | N/A | $5,000 |
| COMPUTER EQUIPMENT | | | $500 | $35,000 | N/A | $35,000 |
| COMPUTER EQUIPMENT EXTRA EXPENSE | | | NONE | $5,000 | N/A | $5,000 |
| ELECTRONIC VANDALISM | | | $500 | | | |
| OCCURRENCE LIMIT | | | | $10,000 | N/A | $10,000 |
| AGGREGATE LIMIT | | | | $10,000 | N/A | $10,000 |
| VALUABLE PAPERS AND RECORDS (OTHER THAN ELECTRONIC DATA) | | | $1,000 | | | |
| ON PREMISES | | | | $25,000 | N/A | $25,000 |
| OFF PREMISES | | | | $25,000 | N/A | $25,000 |
| ACCOUNTS RECEIVABLE | | | $1,000 | | | |
| ON PREMISES | | | | $25,000 | N/A | $25,000 |
| OFF PREMISES | | | | $25,000 | N/A | $25,000 |
| MONEY AND SECURITIES | | | $500 | | | |
| ON PREMISES | | | | $10,000 | N/A | $10,000 |
| OFF PREMISES | | | | $5,000 | N/A | $5,000 |
| EQUIPMENT BREAKDOWN | | | $1,000 | INCLUDED | N/A | INCLUDED |
| PROTECTIVE DEVICES CREDIT | | | | | | |
| AUTOMATIC SPRINKLER SYSTEM | | | NO | | | |
| AUTOMATIC FIRE ALARM | | | NO | | | |
| CENTRAL STATION SECURITY | | | NO | | | |
| COLLAPSE | | | $500 | INCLUDED | N/A | INCLUDED |
| UTILITY SERVICES | | | | | | |
| DIRECT DAMAGE | | | $500 | $50,000 | N/A | $50,000 |
| TIME-ELEMENT | | | 24 HOURS | $50,000 | N/A | $50,000 |

Form  391-1018A (9-04)
Date Issued:  03/08/2022

ORIGINAL/INSURED

**The Hanover** Insurance Group™

# AVENUES BUSINESSOWNERS DECLARATION

## BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 02/27/2021 NUMBER 03

07

SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
ADDED LOC#02

| Policy Number | Policy Period From | To | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| OBC-H332709-00 | 07/31/2020 | 07/31/2021 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**
COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL 60601

**Agent**
847-307-6100
THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL 60010

## Forms and Endorsements Schedule

| Form Number | Edition Date | Description |
|---|---|---|
| 391-1402 | 08/16 | TECHNOLOGY DELUXE GOLD BROAD |
| 391-1371 | 01/10 | REV INFRINGE OF COPYRIGHT EXCL |
| BP0404 | 01/10 | HIRED AUTO NON-OWNED AUTO LIAB |
| 401-1374 | 01/15 | DISCLOSURE PURSUANT TO TRIA |
| 391-1114 | 01/15 | CAP ON LOSSES FROM TERRORISM |
| 391-1313 | 01/15 | EXCLUSION OF PUNITIVE DAMAGES |
| 391-1006 | 08/16 | LIABILITY SPECIAL BROADENING |
| BP0417 | 01/10 | EMPLYMT RELATED PRACTICES EXCL |
| 231-0475 | 06/89 | PILR NOTICE |
| 391-1003 | 08/16 | BUSINESSOWNERS COVERAGE FORM |
| BP0643 | 04/06 | IL CHANGES - DEFENSE COSTS |
| 391-1901 | 06/18 | ILLINOIS CHANGES |
| 421-0022 | 07/02 | ASBESTOS EXCLUSION |
| 391-1102 | 08/16 | EXCL - FUNGI OR BACTERIA LIAB |
| 331-0053 | 08/16 | ILLINOIS INQUIRY NOTICE |
| 391-1375 | 01/10 | AMEND LIMITS PERSONAL AND ADV |
| 391-1218 | 06/06 | EPLI INSURANCE CVG ENDR ILLINO |
| 391-1206 | 06/06 | EPLI IMPORTANT NOTICE |
| 391-1208 | 03/06 | EPLI SUPPLEMENTAL DEC |
| BP1203 | 01/10 | LOSS PAYABLE PROVISIONS |
| 401-1504 | 01/20 | CAP LOSSES CERT ACTS OF TERR |
| 391-1440 | 01/15 | DATA BREACH COVERAGE FORM |
| 391-1442 | 12/09 | ASSOC AND FAMILY MBR ADD COV |
| 391-1585 | 12/11 | IDENTITY THEFT NOTICE |

Form 391-1016 (7-99
Date Issued: 03/08/2022

ORIGINAL/INSURED

**The Hanover** Insurance Group.

# AVENUES BUSINESSOWNERS DECLARATION

### BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 02/27/2021   NUMBER 03

07

SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
ADDED LOC#02

| Policy Number | Policy Period | | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| | **From** | **To** | | |
| OBC-H332709-00 | 07/31/2020 | 07/31/2021 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**
COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

**Agent**
847-307-6100
THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

## Forms and Endorsements Schedule

| Form Number | Edition Date | Description |
|---|---|---|
| 391-1854 | 01/15 | IL CHANGES - DATA BREACH |
| 401-1235 | 12/14 | CANCEL NOTICE TO DESIGNATED |
| 391-1941 | 08/16 | AI DESIGNATED PER OR ORG |

Form  391-1016 (7-99
Date Issued:  03/08/2022                                    ORIGINAL/INSURED

**COMMERCIAL EMPLOYMENT PRACTICES**
**LIABILITY INSURANCE COVERAGE ENDORSEMENT**
**SUPPLEMENTAL DECLARATIONS**



OBCH332709    1304500

Policy Number:  OBC H332709 00                                Agent:  1304500
Account Number:  1521871564
Named Insured:  COOLER SCREENS INC

---

## NOTICE

· EXCEPT TO SUCH EXTENT AS MAY OTHERWISE BE PROVIDED HEREIN, THE COVERAGE OF THIS COVERAGE ENDORSEMENT IS LIMITED TO LIABILITY FOR ONLY THOSE CLAIMS OR SUITS THAT ARE FIRST MADE AGAINST THE INSUREDS DURING THE EPL COVERAGE PERIOD AND REPORTED IN WRITING TO THE INSURER PURSUANT TO THE TERMS HEREIN. VARIOUS PROVISIONS IN THIS COVERAGE ENDORSEMENT RESTRICT COVERAGE. PLEASE READ THE ENTIRE COVERAGE ENDORSEMENT CAREFULLY TO DETERMINE RIGHTS, DUTIES AND WHAT IS AND IS NOT COVERED.

· THE LIMIT OF LIABILITY AVAILABLE TO PAY JUDGEMENTS OR SETTLEMENTS UNDER THIS COVERAGE ENDORSEMENT SHALL BE REDUCED BY AMOUNTS INCURRED FOR LEGAL DEFENSE. AMOUNTS INCURRED FOR LEGAL DEFENSE SHALL BE APPLIED AGAINST THE DEDUCTIBLE AMOUNT.

---

| | | |
|---|---|---|
| **EPL Coverage Period:** | From: 07/31/2020<br><br>To:    07/31/2021 | At 12:01 A.M. Standard Time at your mailing address shown on the Declarations page of this policy. |
| **EPL Aggregate Limit of Liability:** | $         25,000.00 | Aggregate for all "loss" combined, including "defense costs". |
| **EPL Deductible Amount:** | $          5,000.00 | For "loss" arising from claims or suits alleging the same "wrongful employment act" or "related wrongful employment acts". |
| **EPL Original Inception Date:** | 07/31/2020 | (Enter "original inception date") If no date is shown, "we" will consider the "original inception date" to be the same as the beginning of this coverage endorsement. |

This insurance does not apply to "loss" arising out of a "wrongful employment act" that: (1) commences on or takes place prior to the "original inception date" shown here, or (2) arises out of incidents or circumstance of which "you" had knowledge prior to the "original inception date" shown.

| | |
|---|---|
| **EPL COVERAGE PREMIUM:** | $  |

391-1208 03 06

The **Hanover** Insurance Group™

| |
|---|
| **NEW BUSINESS POLICY** |
| **COMMERCIAL UMBRELLA POLICY** |
| THESE DECLARATIONS TOGETHER WITH THE COMMON POLICY CONDITIONS AND COVERAGE FORM(S) COMPLETE THE BELOW NUMBERED POLICY |
| POLICY NUMBER: OBC-H332709-00 |
| DECLARATIONS |

| **Named Insured and Address** (No., Street, Town, County, State) | **Agent** |
|---|---|
| COOLER SCREENS INC<br>233 N MICHIGAN AVE SUITE 1430<br>CHICAGO, IL 60601 | 130450000<br>THE PLEXUS GROUPE LLC<br>SUITE 300<br>21805 W. FIELD PARKWAY<br>DEER PARK, IL 60010 |

**Policy Period:** (Month, Day, Year)

From 07/31/2020 To 07/31/2021
12:01 AM, standard time at the address of the Named Insured as stated herein.

Form of Business:

☐ Individual ☐ Partnership ☒ Corporation ☐ Limited Liability Company
☐ Organization (Other than Partnership, Joint Venture, or Limited Liability Company

**Business Description:**
**SERVICE.**

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY. THIS PREMIUM MAY BE SUBJECT TO AUDIT.

| **Limit of Liability (Section III)** | |
|---|---|
| Each Occurrence Limit | $ 1,000,000 |
| General Aggregate Limit | $ 1,000,000 |
| Product Completed Operations Aggregate Limit | $ 1,000,000 |

| **Retained Limit** | **Self-Insured Retention** | **$ NIL** |
|---|---|---|

**Premium Computation**

Annual Premium $ █████
Advance Premium $

**Endorsements:**

| | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| CU2130 | 01/15 | CU2156 | 06/06 | CU2136 | 01/15 | 473-1150 | 05/12 | 473-1157 | 01/10 | 473-0004 | 10/05 |
| CU0004 | 05/09 | 473-0016 | 10/05 | 473-0023 | 10/05 | 473-0040 | 10/05 | CU0200 | 12/07 | CU0001 | 12/07 |
| 473-2194 | 08/16 | CU2123 | 02/02 | 473-2211 | 10/16 | CU2125 | 12/01 | CU2255 | 09/00 | CU2127 | 12/04 |
| CU2150 | 03/05 | IL0017 | 11/98 | CU2436 | 12/05 | IL0162 | 09/08 | 473-1125 | 02/09 | CU2186 | 05/14 |

☐ PRE PAID - the total annual premium is due at inception.
☐ HANOCASH - the annual premium is payable according to the term of the Hanocash endorsement attachment
☐ ACCOUNT BILL ☒ DIRECT BILL ☐ Annual ☐ Semi-Annual ☐ Other
Audit period: Non Auditable Unless indicated by ☐ Annual ☐ Semi-Annual ☐ Other
If you cancel this policy, we shall receive and retain not less than $ as a policy minimum premium.

473-1102 1108

**The Hanover**
Insurance Group

OBCH332709     1304500

## SCHEDULE A - SCHEDULE OF UNDERLYING POLICIES

**Insured:** COOLER SCREENS INC
**Effective on and after: 07/31/2020 , 12:01 AM Standard Time**
**This schedule is part of Policy Number: OBC-H332709-00**

| CARRIER, POLICY NUMBER & PERIOD | TYPE OF POLICY | APPLICABLE LIMITS OR AMOUNT OF INSURANCE |
|---|---|---|
| (a) Carrier:<br><br>CITIZENS INSURANCE COMPANY OF AMERICA<br><br>Policy Number:  OBC-H332709-00<br>Policy Period:   07/31/2020    TO 07/31/2021 | Commercial General Liability<br>[X] Non-owned & Hired Autos | $ 2,000,000    Each Occurrence<br>$ 4,000,000    General Aggregate<br>$ 4,000,000    Product/Compl eted Operations Aggregate |
| (b) Carrier:<br><br><br>Policy Number:<br>Policy Period: | Comprehensive Automobile Liability | Bodily Injury and Property Damage Liability Combined<br>$              Each Accident<br>Bodily Injury<br>$               Each Person<br>$               Each Accident<br>Property Damage<br>$               Each Accident |
| (c) Carrier:<br><br>EXCLUDED<br>Policy Number:<br>Policy Period: | Standard Workers Compensation & Employers Liability<br>**Please Note:** The Umbrella Coverage for Workers Compensation and Employers Liability is not applicable in situations where an employee is subject to the New York Workers Compensation Law. | **Coverage B - Employers Liability**<br>Bodily Injury by Accident<br>$              Each Accident<br>Bodily Injury by Disease<br>$                Aggregate<br>$               Each Employee |
| (d) Carrier:<br><br><br>Policy Number:<br>Policy Period: | Liquor Liability | $              Limit of Liability |
| (e) Carrier:<br><br><br>Policy Number:<br>Policy Period: | Professional Liability | $              Limit of Liability |
| An "X" marked in the box provided indicates these broadening or optional coverages are provided in the Underlying Insurance | | |
| (f) Carrier:<br><br><br>Policy Number:<br>Policy Period: | Directors & Officers Liability | $              Limit of Liability |
| (g) Carrier:<br><br><br>Policy Number:<br>Policy Period: | Employee Benefits Liability | $              Limit of Liability |
| **Countersigned By:** | | |
| **Date:** | | |
| **Authorized Representative of the Company** | | |

473-1103 (11/08)

The
**Hanover**
Insurance Group™

OBCH332709          1304500

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

The **Hanover**
Insurance Group™

OBCH332709     1304500

# IMPORTANT NOTICE TO POLICYHOLDERS

No coverage is provided by this policyholder notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverage you are provided. If there is any conflict between the policy and this notice, THE PROVISIONS OF THE POLICY SHALL PREVAIL.

## EMPLOYMENT PRACTICES LIABILITY COVERAGE

The Employment Practices Liability Insurance Coverage is designed to protect small commercial businesses with 25 employees or fewer for liability damages and defense costs due to claims brought by employees who allege employment discrimination, wrongful termination, or sexual harassment.

This coverage will be written on any risk that meets the eligibility criteria under the portfolio Employment Practices Liability Coverage. Such eligibility will be determined by state, class and employee count of individual Insureds.

This coverage will attach to all eligible policies, unless waived. There is a premium charge for this coverage. The coverage provided has an Aggregate Limit of Liability of $25,000 for all losses combined, including defense costs. This coverage has a $5,000 Deductible Amount for each claim. Optional $100,000 and $250,000 Limits of Liability are also available for additional premium charges.

Coverage may be waived by signing and returning the **Employment Practices Liability Coverage Waiver, 391-1205,** to The Hanover Insurance Group, 440 Lincoln Street, Worcester, MA 01653.

Such waiver will continue automatically through subsequent renewals, unless rescinded by the company at your request.

Please contact your agent for additional information or if you have any questions, or if you wish to waive this coverage.

3

The **Hanover**
Insurance Group™

OBCH332709      1304500

## IDENTITY THEFT RESOLUTION SERVICES
### (POWERED BY IDENTITY THEFT 911)

Are you or your resident family members at risk for identity theft? Do you need expert assistance with an identity-related concern? IDENTITY THEFT RESOLUTION SERVICES from Identity Theft 911 give you one-on-one assistance in the following situations:

**Access Phone Number: 800-628-0250**

If you or a resident family member suffer the loss or theft of private personal data, contact Identity Theft 911 for proactive guidance that can include Fraud Alert service. If you wish, a fraud specialist can assist and place a free fraud alert on your credit file to reduce the risk of fraudulent accounts opened in your name. This service also includes additional preventative measures and one-on-one assistance, depending on the risk.

If you or a resident family member suffer the loss or theft of private personal data, contact Identity Theft 911 for Identity Restoration Case Management services. A fraud specialist will guide you through the process of restoring your identity and handle all of the work, including completed documentation and notification assistance. Victims also receive one year of credit monitoring, as well as free fraud monitoring of over 1,000 public databases.

**Learn How to Protect Your Identity**

We recommend that you regularly visit The Hanover Insurance Group and Identity Theft 911 comprehensive resource and knowledge library - www.hanover-identitytheft911.com - for the latest media alerts, identity theft tips, in-depth newsletters and much more.

Keep this access information handy in case you ever need help with an identity-related problem.

**Access Phone Number: 800-628-0250**

The Hanover Insurance Group makes no guarantee of results and assumes no liability in connection with either the information or assistance provided by Identity Theft 911. Any and all external Websites or sources referred to herein are for informational purposes only.

**The Hanover**
Insurance Group™

# AVENUES BUSINESSOWNERS DECLARATION

## BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 02/28/2021  NUMBER 04

07

SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
DELETED LOC#01

| Policy Number | Policy Period | | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| | From | To | | |
| OBC-H332709-00 | 07/31/2020 | 07/31/2021 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

**Agent**

847-307-6100
THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

**Policy Period:  Beginning and Ending at 12:01 a.m. Standard Time at the Location of the Described Premises.**

**Business Type:**  CORPORATION (SINGLE).

**Mortgagee/Loss Payable:**

SEE ADDITIONAL INTEREST SCHEDULE

**Business of the Named Insured:**

SERVICE.

In consideration of the premium, insurance is provided the Named Insured with respect to those premises described in the Schedule below and with respect to those coverages and kinds of property for which a specific Limit of Insurance is shown, subject to all of the terms of this policy including forms and endorsements made a part hereof:

## LOCATION SCHEDULE

**Described Premises:**

NO. 001 001    DELETED LOCATION
NO. 002 001    303.E WACKER SUITE 295, CHICAGO, IL  60601

| SECTION I - PROPERTY | LIMITS OF INSURANCE | | | | | |
|---|---|---|---|---|---|---|
| | Loc No  002 | Bldg No 001 | Loc No | Bldg No | Loc No | Bldg No |
| Deductible Amount | $          1,000 | | $ | | $ | |
| Building Amount Valuation | NOT COVERED | | | | | |
| Business Personal Property Valuation | $       201,400           RC | | | | | |
| Business Income | ACTUAL BUSINESS LOSS SUSTAINED NOT EXCEEDING 12 CONSECUTIVE MONTHS | | | | | |
| Business Income Waiting Period | **Excluded / None / 24 hours / 48 hours /72 hours**  24 HOURS | | | | | |
| SECTION II - LIABILITY | LIMITS OF INSURANCE | | | | | |

**Liability and Medical Expenses Limits of Insurance:**

Except for Damage to Premises Rented to You,  each paid claim for the following coverages reduce the Amount of Insurance we provide during the applicable annual  period.  Please refer to  **SECTION II - LIABILITY, D. LIABILITY  AND MEDICAL  EXPENSES LIMITS OF INSURANCE,** paragraph **4.** of the Businessowners Coverage Form.

| Liability and Medical Expenses Limit | $ 2,000,000 | Per Occurrence | $ 4,000,000 | Aggregate |
|---|---|---|---|---|
| Medical Expenses | $       5,000 | Each Person | | |
| Damage to Premises Rented to You | $     300,000 | All Perils | | |

Date Issued: 03/09/2022          ORIGINAL/INSURED          Payment Type:  DIRECT BILL

GROUP NAME: TECHNOLOGY - SERVICES          GROUP NUMBER: ZTS

391-1002 08 16          Page 1 of 2

**The Hanover Insurance Group**

# AVENUES BUSINESSOWNERS DECLARATION

## BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 02/28/2021  NUMBER 04

07

SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
DELETED LOC#01

| Policy Number | Policy Period | | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| | From | To | | |
| OBC-H332709-00 | 07/31/2020 | 07/31/2021 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

**Agent**

847-307-6100
THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

**Additional Property Coverages and Extensions:**
        See attached Schedule for Additional Coverages provided for under this Policy.

Audit Frequency: Annual

**Additional Liability Coverages:**  General Liability Broadening Endorsement
**General Liability Class**: 85219
**Description**:  CUSTOM COMPUTER PROGRAMMING
**Liability Exposure:**  $1,800,000        SALES

**Policy Forms, Endorsements and Optional Coverages Attached:**
        See Forms and Endorsements Schedule

PREVIOUS PREMIUM IS:                                                    $ ▮▮▮▮
NET PREMIUM CHANGE IS:                                              $ ▮▮▮▮
TOTAL BOP COVERAGE PREMIUM:                                   $ ▮▮▮▮
BOP TERRORISM COVG (INCLUDED IN TOTAL POLICY PREMIUM)  $ ▮▮▮
        OTHER THAN FIRE FOLLOWING                                 ▮▮▮
        FIRE FOLLOWING                                          $ ▮▮▮
TOTAL UMBRELLA COVERAGE PREMIUM:                           $ ▮▮▮
UMB TERRORISM COVG (INCLUDED IN TOTAL POLICY PREMIUM)  $ ▮▮▮
DEPOSIT PREMIUM:                                                   $ ▮▮▮▮
THE TOTAL ACTUAL PREMIUM:                                      $ ▮▮▮▮

**Countersigned this _____ Day of _____**                    _____
                                                                                              **Authorized Representative**

**This Declarations Page with the Policy Contract, Forms and Endorsements, if any,
Complete the Policy.**

Date Issued:  03/09/2022          ORIGINAL/INSURED          Payment Type: DIRECT BILL

**391-1002 08 16**                                                                                              Page 2 of 2

The **Hanover**
Insurance Group™

# ADDITIONAL INTEREST SCHEDULE

**BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 02/28/2021  NUMBER 04**

07

SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
DELETED LOC#01

| Policy Number | Policy Period | | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| | From | To | | |
| OBC-H332709-00 | 07/31/2020 | 07/31/2021 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**
COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

**Agent**
847-307-6100
THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

| Name And Address | Interest Type | Location | Building |
|---|---|---|---|
| SILICON VALLEY BANK | | | |
| 3003 TASMAN DRIVE HF 150 | | | |
| SANTA CLARA, CA  95054 | | | |
| | LENDER'S LOSS PAYABLE | 0 0 2 | 0 1 |

Form  391-1014 (7-99)
Date Issued:  03/09/2022                    ORIGINAL/INSURED

The
**Hanover**
Insurance Group™

# ADDITIONAL PROPERTY COVERAGES AND EXTENSIONS

**BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 02/28/2021  NUMBER 04**

07    SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
DELETED LOC#01

| Policy Number | Policy Period | | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| | From | To | | |
| OBC-H332709-00 | 07/31/2020 | 07/31/2021 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

**Agent**

847-307-6100

THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

| Additional Property Coverages & Extensions | Deductible | Amount Included | Additional Amount Increase | Total Limit |
|---|---|---|---|---|
| DEBRIS REMOVAL | NONE | $25,000 | N/A | $25,000 |
| PRESERVATION OF PROPERTY | NONE | 90 DAYS | N/A | 90 DAYS |
| FIRE DEPARTMENT SERVICE CHARGE | NONE | $25,000 | N/A | $25,000 |
| POLLUTANT CLEAN-UP AND REMOVAL | NONE | $25,000 | N/A | $25,000 |
| MONEY ORDERS AND COUNTERFEIT MONEY | $500 | $5,000 | N/A | $5,000 |
| FORGERY OR ALTERATION | $500 | $25,000 | N/A | $25,000 |
| GLASS EXPENSES | $250 | INCLUDED | N/A | INCLUDED |
| REWARDS ARSON, THEFT AND VANDALISM | NONE | $10,000 | N/A | $10,000 |
| TENANT SIGNS | $500 | $5,000 | N/A | $5,000 |
| FIRE PROTECTION EQUIPMENT RECHARGE | NONE | $25,000 | N/A | $25,000 |
| INSTALLATION FLOATER | $1,000 | $5,000 | N/A | $5,000 |
| FINE ARTS | $500 | $10,000 | N/A | $10,000 |
| FENCE AND WALLS | SEE BUILDING AND CONTENTS DEDUCTIBLE | INCLUDED | N/A | INCLUDED |
| SALES REPRESENTATIVE SAMPLES | $1,000 | $5,000 | N/A | $5,000 |
| LEASEHOLD INTEREST (TENANT'S ONLY) | NONE | $10,000 | N/A | $10,000 |
| UNAUTHORIZED BUSINESS CREDIT    CARD USE | NONE | $5,000 | N/A | $5,000 |
| UTILITY SERVICES | | | N/A | |
| DIRECT DAMAGE | $500 | $10,000 | N/A | $10,000 |
| BUSINESS INCOME | 24 HOURS | $5,000 | N/A | $5,000 |
| DEFERRED PAYMENTS | NONE | $5,000 | N/A | $5,000 |
| NEWLY ACQUIRED OR    CONSTRUCTED PROPERTY | | 180 DAYS | N/A | 180 DAYS |
| BUILDINGS | $500 | $1,000,000 | N/A | $1,000,000 |
| PERSONAL PROPERTY | $500 | $500,000 | N/A | $500,000 |
| BUSINESS INCOME AND EXTRA EXPENSE | SEE WAITING PERIOD | $250,000 | N/A | $250,000 |
| OUTDOOR PROPERTY - TREES, SHRUBS    AND PLANTS-$1,000 EACH ITEM | $500 | $10,000 | N/A | $10,000 |

Form  391-1018  (7-02)
Date Issued:  03/09/2022

**The Hanover Insurance Group™**

# ADDITIONAL PROPERTY COVERAGES AND EXTENSIONS

**BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 02/28/2021 NUMBER 04**

07     SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
DELETED LOC#01

| Policy Number | Policy Period From | To | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| OBC-H332709-00 | 07/31/2020 | 07/31/2021 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL 60601

**Agent**

847-307-6100

THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL 60010

| Additional Property Coverages & Extensions | Deductible | Amount Included | Additional Amount Increase | Total Limit |
|---|---|---|---|---|
| PERSONAL EFFECTS | $500 | $10,000 | N/A | $10,000 |
| INVENTORY AND LOSS APPRAISAL | NONE | $10,000 | N/A | $10,000 |
| KEY REPLACEMENT AND LOCK REPAIR | NONE | $1,000 | N/A | $1,000 |
| APPURTENANT STRUCTURE | $500 | $50,000 | N/A | $50,000 |
| PERSONAL PROPERTY IN TRANSIT | $1,000 | $10,000 | N/A | $10,000 |
| EXTENDED BUSINESS INCOME | | 30 DAYS | N/A | 30 DAYS |
| EMPLOYEE THEFT INCLUDING ERISA COMPLIANCE | $1,000 | $10,000 | N/A | $10,000 |
| COMMERCIAL TOOLS AND SMALL EQUIP | $500 | $5,000 | N/A | $5,000 |
| PERSONAL PROPERTY OFF PREMISES | $1,000 | $50,000 | N/A | $50,000 |
| BUSINESS INCOME FROM DEPENDENT PROPERTIES | 72 HOURS | $5,000 | N/A | $5,000 |
| TERRORISM | SEE BUILDING AND CONTENTS DEDUCTIBLE | SAME AS PROPERTY LIMITS OF INSURANCE IF COVERED | N/A | SAME AS PROPERTY LIMITS OF INSURANCE IF COVERED |
| INTERRUPTION OF COMPUTER OPERATIONS | SEE WAITING PERIOD | $10,000 | N/A | $10,000 |
| BUSINESS PERSONAL PROPERTY TEMPORARILY IN PORTABLE STORAGE UNITS | $500 | $25,000 | N/A | $25,000 |
| CIVIL AUTHORITY | 72 HOURS | 4 WEEKS | N/A | 4 WEEKS |
| COMPUTER AND FUNDS TRANSFER FRAUD | $500 | $5,000 | N/A | $5,000 |
| LIMITED COVERAGE FOR FUNGI, WET ROT, OR DRY ROT | $500 | $50,000 | N/A | $50,000 |
| PAVED SURFACES | $500 | $25,000 | N/A | $25,000 |
| TENANT BUILDING COVERAGE - REQUIRED BY LEASE | $500 | $25,000 | N/A | $25,000 |
| TENANT BUSINESS PERSONAL PROPERTY COVERAGE - REQUIRED BY LEASE | $500 | $25,000 | N/A | $25,000 |

Form 391-1018 (7-02)
Date Issued: 03/09/2022

**The Hanover** Insurance Group™

# ADDITIONAL PROPERTY COVERAGES AND EXTENSIONS

**BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 02/28/2021  NUMBER 04**

07       SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
           DELETED LOC#01

| Policy Number | Policy Period From | To | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| OBC-H332709-00 | 07/31/2020 | 07/31/2021 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

**Agent**

847-307-6100
THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

| Additional Property Coverages & Extensions | Deductible | Amount Included | Additional Amount Increase | Total Limit |
|---|---|---|---|---|
| THEFT OF TELEPHONIC SERVICES | $500 | $25,000 | N/A | $25,000 |
| UNDERGROUND PIPES | $500 | INCLUDED | N/A | INCLUDED |

Form  391-1018  (7-02)
Date Issued:  03/09/2022

**The Hanover**
Insurance Group™

# ADDITIONAL PROPERTY COVERAGES AND EXTENSIONS

**BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 02/28/2021  NUMBER 04**

07      SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
        DELETED LOC#01

| Policy Number | Policy Period From | To | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| OBC-H332709-00 | 07/31/2020 | 07/31/2021 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

Named Insured and Address
COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

Agent
847-307-6100
THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

| Additional Property Coverages & Extensions | Loc. No. | Bldg. No. | Deductible Amount | Amount Included | Additional Amount | Total Limit |
|---|---|---|---|---|---|---|
| ORDINANCE OR LAW | 002 | 001 | NONE | $5,000 | N/A | $5,000 |
| COMPUTER EQUIPMENT | | | $500 | $35,000 | N/A | $35,000 |
| COMPUTER EQUIPMENT EXTRA EXPENSE | | | NONE | $5,000 | N/A | $5,000 |
| ELECTRONIC VANDALISM | | | $500 | | | |
|   OCCURRENCE LIMIT | | | | $10,000 | N/A | $10,000 |
|   AGGREGATE LIMIT | | | | $10,000 | N/A | $10,000 |
| VALUABLE PAPERS AND RECORDS (OTHER THAN ELECTRONIC DATA) | | | $1,000 | | | |
|   ON PREMISES | | | | $25,000 | N/A | $25,000 |
|   OFF PREMISES | | | | $25,000 | N/A | $25,000 |
| ACCOUNTS RECEIVABLE | | | $1,000 | | | |
|   ON PREMISES | | | | $25,000 | N/A | $25,000 |
|   OFF PREMISES | | | | $25,000 | N/A | $25,000 |
| MONEY AND SECURITIES | | | $500 | | | |
|   ON PREMISES | | | | $10,000 | N/A | $10,000 |
|   OFF PREMISES | | | | $5,000 | N/A | $5,000 |
| EQUIPMENT BREAKDOWN | | | $1,000 | INCLUDED | N/A | INCLUDED |
| PROTECTIVE DEVICES CREDIT | | | | | | |
|   AUTOMATIC SPRINKLER SYSTEM | | | | NO | | |
|   AUTOMATIC FIRE ALARM | | | | NO | | |
|   CENTRAL STATION SECURITY | | | | NO | | |
| COLLAPSE | | | $500 | INCLUDED | N/A | INCLUDED |
| UTILITY SERVICES | | | | | | |
|   DIRECT DAMAGE | | | $500 | $50,000 | N/A | $50,000 |
|   TIME-ELEMENT | | | 24 HOURS | $50,000 | N/A | $50,000 |

Form  391-1018A (9-04)
Date Issued:  03/09/2022

ORIGINAL/INSURED

The
**Hanover**
Insurance Group™

# AVENUES BUSINESSOWNERS DECLARATION

### BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 02/28/2021  NUMBER 04

07

SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
DELETED LOC#01

| Policy Number | Policy Period | | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| | From | To | | |
| OBC-H332709-00 | 07/31/2020 | 07/31/2021 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**
COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

**Agent**
847-307-6100
THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

## Forms and Endorsements Schedule

| Form Number | Edition Date | Description |
|---|---|---|
| * 391-1402 | 08/16 | TECHNOLOGY DELUXE GOLD BROAD |
| 391-1371 | 01/10 | REV INFRINGE OF COPYRIGHT EXCL |
| BP0404 | 01/10 | HIRED AUTO NON-OWNED AUTO LIAB |
| 401-1374 | 01/15 | DISCLOSURE PURSUANT TO TRIA |
| 391-1114 | 01/15 | CAP ON LOSSES FROM TERRORISM |
| 391-1313 | 01/15 | EXCLUSION OF PUNITIVE DAMAGES |
| 391-1006 | 08/16 | LIABILITY SPECIAL BROADENING |
| BP0417 | 01/10 | EMPLYMT RELATED PRACTICES EXCL |
| 231-0475 | 06/89 | PILR NOTICE |
| 391-1003 | 08/16 | BUSINESSOWNERS COVERAGE FORM |
| BP0643 | 04/06 | IL CHANGES - DEFENSE COSTS |
| 391-1901 | 06/18 | ILLINOIS CHANGES |
| 421-0022 | 07/02 | ASBESTOS EXCLUSION |
| 391-1102 | 08/16 | EXCL - FUNGI OR BACTERIA LIAB |
| 331-0053 | 08/16 | ILLINOIS INQUIRY NOTICE |
| 391-1375 | 01/10 | AMEND LIMITS PERSONAL AND ADV |
| * 391-1218 | 06/06 | EPLI INSURANCE CVG ENDR ILLINO |
| * 391-1206 | 06/06 | EPLI IMPORTANT NOTICE |
| * 391-1208 | 03/06 | EPLI SUPPLEMENTAL DEC |
| 401-1504 | 01/20 | CAP LOSSES CERT ACTS OF TERR |
| * 391-1440 | 01/15 | DATA BREACH COVERAGE FORM |
| * 391-1442 | 12/09 | ASSOC AND FAMILY MBR ADD COV |
| * 391-1585 | 12/11 | IDENTITY THEFT NOTICE |
| * 391-1854 | 01/15 | IL CHANGES - DATA BREACH |

Form  391-1016 (7-99
Date Issued:  03/09/2022                                    ORIGINAL/INSURED

The **Hanover**
Insurance Group™

## AVENUES BUSINESSOWNERS DECLARATION

### BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 02/28/2021  NUMBER 04

07

SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
DELETED LOC#01

| Policy Number | Policy Period | | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| | From | To | | |
| OBC-H332709-00 | 07/31/2020 | 07/31/2021 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

**Agent**

847-307-6100
THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

### Forms and Endorsements Schedule

| Form Number | Edition Date | Description |
|---|---|---|
| * 401-1235 | 12/14 | CANCEL NOTICE TO DESIGNATED |
| * 391-1941 | 08/16 | AI DESIGNATED PER OR ORG |

Form  391-1016 (7-99
Date Issued:  03/09/2022

ORIGINAL/INSURED

**COMMERCIAL EMPLOYMENT PRACTICES**
**LIABILITY INSURANCE COVERAGE ENDORSEMENT**
**SUPPLEMENTAL DECLARATIONS**



OBCH332709      1304500

Policy Number:  OBC H332709 00
Account Number:  1521871564
Named Insured:  COOLER SCREENS INC

Agent:  1304500

---

### NOTICE

- EXCEPT TO SUCH EXTENT AS MAY OTHERWISE BE PROVIDED HEREIN, THE COVERAGE OF THIS COVERAGE ENDORSEMENT IS LIMITED TO LIABILITY FOR ONLY THOSE CLAIMS OR SUITS THAT ARE FIRST MADE AGAINST THE INSUREDS DURING THE EPL COVERAGE PERIOD AND REPORTED IN WRITING TO THE INSURER PURSUANT TO THE TERMS HEREIN. VARIOUS PROVISIONS IN THIS COVERAGE ENDORSEMENT RESTRICT COVERAGE. PLEASE READ THE ENTIRE COVERAGE ENDORSEMENT CAREFULLY TO DETERMINE RIGHTS, DUTIES AND WHAT IS AND IS NOT COVERED.

- THE LIMIT OF LIABILITY AVAILABLE TO PAY JUDGEMENTS OR SETTLEMENTS UNDER THIS COVERAGE ENDORSEMENT SHALL BE REDUCED BY AMOUNTS INCURRED FOR LEGAL DEFENSE. AMOUNTS INCURRED FOR LEGAL DEFENSE SHALL BE APPLIED AGAINST THE DEDUCTIBLE AMOUNT.

---

| | | |
|---|---|---|
| **EPL Coverage Period:** | From: 07/31/2020<br>To:  07/31/2021 | At 12:01 A.M. Standard Time at your mailing address shown on the Declarations page of this policy. |
| **EPL Aggregate Limit of Liability:** | $     25,000.00 | Aggregate for all "loss" combined, including "defense costs". |
| **EPL Deductible Amount:** | $      5,000.00 | For "loss" arising from claims or suits alleging the same "wrongful employment act" or "related wrongful employment acts". |
| **EPL Original Inception Date:** | 07/31/2020 | (Enter "original inception date") If no date is shown, "we" will consider the "original inception date" to be the same as the beginning of this coverage endorsement. |

This insurance does not apply to "loss" arising out of a "wrongful employment act" that: (1) commences on or takes place prior to the "original inception date" shown here, or (2) arises out of incidents or circumstance of which "you" had knowledge prior to the "original inception date" shown.

| | |
|---|---|
| **EPL COVERAGE PREMIUM:** | $  |

391-1208 03 06

The
**Hanover**
Insurance Group™

| | |
|---|---|
| **NEW BUSINESS POLICY** | |
| **COMMERCIAL UMBRELLA POLICY** | |
| THESE DECLARATIONS TOGETHER WITH THE COMMON POLICY CONDITIONS AND COVERAGE FORM(S) COMPLETE THE BELOW NUMBERED POLICY | |

POLICY NUMBER: OBC-H332709-00

DECLARATIONS

| **Named Insured and Address** (No., Street, Town, County, State) | **Agent** |
|---|---|
| COOLER SCREENS INC<br>233 N MICHIGAN AVE SUITE 1430<br>CHICAGO, IL 60601 | 130450000<br>THE PLEXUS GROUPE LLC<br>SUITE 300<br>21805 W. FIELD PARKWAY<br>DEER PARK, IL 60010 |

**Policy Period:** (Month, Day, Year)

From 07/31/2020 To 07/31/2021
12:01 AM, standard time at the address of the Named Insured as stated herein.

Form of Business:
☐ Individual ☐ Partnership ☒ Corporation ☐ Limited Liability Company
☐ Organization (Other than Partnership, Joint Venture, or Limited Liability Company

**Business Description:**
**SERVICE.**

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY. THIS PREMIUM MAY BE SUBJECT TO AUDIT.

**Limit of Liability (Section III)**
| | |
|---|---|
| **Each Occurrence Limit** | $ 1,000,000 |
| **General Aggregate Limit** | $ 1,000,000 |
| **Product Completed Operations Aggregate Limit** | $ 1,000,000 |

**Retained Limit** **Self-Insured Retention** $ NIL

**Premium Computation**

Annual Premium $ ████
Advance Premium $

**Endorsements:**

| | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| CU2130 | 01/15 | CU2156 | 06/06 | CU2136 | 01/15 | 473-1150 | 05/12 | 473-1157 | 01/10 | 473-0004 | 10/05 |
| CU0004 | 05/09 | 473-0016 | 10/05 | 473-0023 | 10/05 | 473-0040 | 10/05 | CU0200 | 12/07 | CU0001 | 12/07 |
| 473-2194 | 08/16 | CU2123 | 02/02 | 473-2211 | 10/16 | CU2125 | 12/01 | CU2255 | 09/00 | CU2127 | 12/04 |
| CU2150 | 03/05 | IL0017 | 11/98 | CU2436 | 12/05 | IL0162 | 09/08 | 473-1125 | 02/09 | CU2186 | 05/14 |

☐ PRE PAID - the total annual premium is due at inception.
☐ HANOCASH - the annual premium is payable according to the term of the Hanocash endorsement attachment

☐ ACCOUNT BILL ☒ DIRECT BILL ☐ Annual ☐ Semi-Annual ☐ Other
Audit period: Non Auditable Unless indicated by ☐ Annual ☐ Semi-Annual ☐ Other
If you cancel this policy, we shall receive and retain not less than $ as a policy minimum premium.

473-1102 1108

**The Hanover** Insurance Group™

OBCH332709     1304500

---

## SCHEDULE A - SCHEDULE OF UNDERLYING POLICIES

**Insured:**   COOLER SCREENS INC
**Effective on and after: 07/31/2020  ,  12:01 AM Standard Time**
**This schedule is part of Policy Number:   OBC-H332709-00**

| CARRIER, POLICY NUMBER & PERIOD | TYPE OF POLICY | APPLICABLE LIMITS OR AMOUNT OF INSURANCE |
|---|---|---|
| (a)Carrier:<br><br>CITIZENS INSURANCE COMPANY OF AMERICA<br><br>Policy Number:   OBC-H332709-00<br>Policy Period:   07/31/2020    TO 07/31/2021 | Commercial General Liability [X]Non-owned & Hired Autos | $ 2,000,000    Each  Occurrence<br>$ 4,000,000    General  Aggregate<br>$ 4,000,000    Product/Compl eted Operations Aggregate |
| (b) Carrier:<br><br><br>Policy Number:<br>Policy Period: | Comprehensive Automobile Liability | Bodily Injury and Property Damage Liability Combined<br>$              Each Accident<br>Bodily Injury<br>$               Each Person<br>$               Each Accident<br>Property Damage<br>$               Each Accident |
| (c)Carrier:<br><br>EXCLUDED<br>Policy Number:<br>Policy Period: | Standard Workers Compensation & Employers Liability **Please Note:** The Umbrella Coverage for Workers Compensation and Employers Liability is not applicable in situations where an employee is subject to the New York Workers Compensation Law. | **Coverage B - Employers Liability**<br>Bodily Injury by Accident<br>$              Each   Accident<br>Bodily Injury by Disease<br>$                 Aggregate<br>$               Each   Employee |
| (d)Carrier:<br><br><br>Policy Number:<br>Policy Period: | Liquor Liability | $               Limit of   Liability |
| (e)Carrier:<br><br><br>Policy Number:<br>Policy Period: | Professional Liability | $               Limit of Liability |
| An "X" marked in the box provided indicates these broadening or optional coverages are provided in the Underlying Insurance | | |
| (f) Carrier:<br><br><br>Policy Number:<br>Policy Period: | Directors & Officers Liability | $               Limit of   Liability |
| (g) Carrier:<br><br><br>Policy Number:<br>Policy Period: | Employee Benefits Liability | $               Limit of   Liability |

**Countersigned By:**

**Date:**

**Authorized Representative of the Company**

473-1103 (11/08)



OBCH332709    1304500

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# DATA BREACH COVERAGE FORM

Various provisions in this Coverage Form restrict coverage. Read the entire Coverage Form carefully to determine rights, duties and what is and is not covered.

Throughout this coverage form the words "we", "us" and "our" refer to the Company providing this insurance. The words "you" and "your" refer to the Named Insured shown in the Declarations. Other words and phrases that appear in quotation marks have special meaning. Refer to **SECTION F - DEFINITIONS.**

| SCHEDULE | | |
|---|---|---|
| Data Breach Coverage Aggregate Limit of Insurance | $ | **10,000** |
| Data Breach Expense Coverages Aggregate Sublimit of Insurance | $ | **10,000** |
| Additional Expense Coverages Aggregate Sublimit of Insurance | $ | **10,000** |
| Data Breach Coverage Deductible | $ | **1,000** |
| Cyber Business Interruption Waiting Period Deductible | | **24** Hours |
| Premium: | $ | ■ |

## SECTION A - COVERAGES

We will provide Data Breach Services, Data Breach Expense Coverages and Additional Expense Coverages as described below if you have a "data breach" that:

**a.** Is discovered during the "policy period" of this Data Breach Coverage Form; and

**b.** Is reported to us within 30 days of your discovery of the "data breach".

**1. Data Breach Services, Data Breach Expense Coverages, Additional Expense Coverages**

**a. Data Breach Services**

**(1) Consulting Services**

If you contact our Designated Service Provider, they will provide Consulting Services to assist you with:

**(a)** Notification requirements pursuant to "breach notice laws";

**(b)** Drafting your notification letters; and

**(c)** Media interface and press release drafting.

**(2) Help Line**

Provide a toll-free telephone line for "potentially-identified persons" with questions about the "data breach".

**(3) Fraud Alert**

A "potentially-identified person" who contacts our Designated Service Provider can place a Fraud Alert on his or her credit file(s) with the main credit bureaus warning potential credit grantors to check with the "potentially-identified person" before extending credit in his or her name or on his or her behalf.

**(4) Identity Restoration Case Management**

An "identified person" who contacts our Designated Service Provider will be assisted by an identity restoration professional to help to correct his or her credit and other records and to restore control over his or her personal identity.

These Data Breach Services will be provided by our Designated Service Provider, as described in Paragraphs **15.** and **16.** of **Section E. Conditions,** for a period of one year from the date the Data Breach Services are initiated.

Data Breach Services are only available if the jurisdiction or country where the "potentially-identified person" resides maintains "breach notice law" and, in the case of Fraud Alert, an operative credit monitoring service.

**b. Data Breach Expense Coverages**

We will pay your reasonable and necessary expenses incurred for the following Covered Expenses up to the limits of insurance described in **Section C - Limits of Insurance:**

**(1) Notification to Potentially-Identified Persons** - expenses to provide

notification of the "data breach" to "potentially-identified persons":

**(a)** As required by applicable "breach notice law"; or

**(b)** If reasonably necessary to maintain your business.

Covered expenses include the printing, postage and handling of notification letters or other means of disclosing the breach to "potentially-identified persons".

**(2) Forensic Analysis** - expenses to assess:

**(a)** The severity of the "data breach";

**(b)** The nature and extent of the "data breach";

Forensic Analysis expenses do not include the cost of restoration.

**(3) Proactive Monitoring Services Expense Coverage -** Expenses for "proactive monitoring services" provided to "potentially-identified persons" in jurisdictions or countries with operative credit monitoring services as provided through our Designated Service Provider.

Under this coverage we will only pay for expenses that you incur through our Designated Service Provider.

Services provided for Covered Expenses provided in **b.(1)**, **b.(2)** and **b.(3)** above must be approved by us as described in **SECTION E - CONDITIONS,** Paragraph **15. Service Providers.**

**(4) Breach Restoration Expenses**

We will pay "Breach Restoration Expenses" directly resulting from a "data breach" which is first discovered during the "policy period" and which results in the damage, deletion or destruction of "data" owned by you or for which you are legally liable.

**(5) Cyber Business Interruption and Extra Expense**

We will pay actual loss of "business income" and additional "extra expense" incurred by you during the "period of restoration" directly resulting from a "data breach" which is first discovered during the "policy period" and which results in an actual impairment or denial of service of "business operations" during the "policy period".

**c. Additional Expense Coverages**

We will pay your reasonable and necessary expenses incurred for the following Additional Expense Coverages. These expenses are subject to the limits of insurance described in **Section C - Limits of Insurance.**

**(1) Legal Services -** expenses incurred within the first six months following the discovery and reporting of a "data breach" as provided in this Section for approved outside professional legal counsel review and recommendations as to how you should respond to it, including final legal review of the proposed breach notification letter(s). However, we will not pay for expenses for legal counsel to review any third party liability litigation or notification of potential litigation.

**(2) Public Relations -** expenses incurred within the first six months following the discovery and reporting of a "data breach" as provided in this Section for approved outside public relations firm or crisis management firm recommendations for restoring the confidence of your customers and investors in the security of your company and its systems.

**(3) Third Party "Data Breach" -** expenses for notification to "potentially-identified persons" with whom you have a direct relationship when a "data breach" is sustained by a third party to whom you have sent "private personal data" to be under that third party's care, custody and control. This includes a "data breach" that occurs while transmitting or transporting the data to that third party. Covered expenses for this Additional Covered Expense are limited to the printing, postage and handling of notification letters to "potentially-identified persons".

Service providers for Additional Expense Coverage provided in paragraphs **c.(1)**, **c.(2)** and **c.(3)** must be approved by us as described in **SECTION E - CONDITIONS,** Paragraph **15. Service Providers.**

**(4) Data Breach Ransom Coverage -** monies extorted from and paid by you because or a threat or connected series of threats to commit an intentional attack on your computer systems that if so committed, would result in a "data breach". This Data Breach Ransom

The **Hanover** Insurance Group™

OBCH332709      1304500

Coverage is subject to the following conditions:

**(a)** You must receive approval from us prior to the payment of any monies;

**(b)** Any monies paid must only be to terminate or end the threat;

**(c)** The threat must be one which, if carried out, would have led to a "data breach" that would have been covered under this Coverage Form had the monies not been paid;

**(d)** The threat must have been made during the coverage period of this Data Breach Coverage Form;

**(e)** The applicable Federal, state and/or local law enforcement authority was notified of the threat prior to any payment you make for which you are seeking reimbursement under this Additional Expense Coverage;

**(f)** The threat must not have been committed by any of your employees or former employees, vendors or independent contractors hired by you;

**(g)** You must make every reasonable effort not to divulge the existence of this Data Breach Ransom Coverage; and

**(h)** You agree to keep confidential any amounts paid under this Data Breach Ransom Coverage except for any disclosure we approve in advance of that disclosure.

**(5) Data Breach Reward Coverage -** monies you pay for information leading to the arrest and conviction of any individual(s) who committed an illegal act(s) related to a "data breach" covered under this Coverage Form.

However, we will not pay for information that was provided by:

**(a)** You;

**(b)** Your internal or external auditors;

**(c)** Any vendor or independent contractor hired by you;

**(d)** Any individual or firm hired by you to investigate the illegal act described above; or

**(e)** Any individual(s) with supervisory or management responsibility of any of the individual(s) described above.

**(6) Data Breach Investigations**

We will pay "defense expenses" directly resulting from a "regulatory investigation" regarding a "data breach" first discovered by you during the "policy period".

**(7) Data Breach Theft**

We will pay for loss resulting directly from your transfer, payment, or delivery of funds due to the fraudulent input of "data" directly into your "system" or through a "network" into your "system". Loss must first be discovered by you during the "policy period".

**SECTION B - EXCLUSIONS**

1. The following exclusions apply to Data Breach Services, Data Breach Expense Coverages and Additional Expense Coverages.

   This insurance does not apply to:

   **a. Costs to Research or Correct Deficiencies**

   Any costs to research any deficiency, except as specifically provided under **SECTION A - COVERAGES**, Paragraph **1.b.(2) Forensic Analysis**, or any costs to correct any deficiency.

   This includes, but is not limited to, any deficiency in your systems, procedures or physical security that may have contributed to a "data breach".

   **b. Criminal Investigation or Proceedings**

   Any costs arising out of criminal investigations or proceedings.

   **c. Fines, Penalties or Assessments**

   Any "fines, penalties, fees or assessments". This includes but is not limited to fees or surcharges from financial institutions.

   **d. Defense or Legal Liability**

   Any fees, costs, settlements, judgments, or liability of any kind arising in the course of, or as a result of a claim for damages, lawsuit, administrative proceedings, or governmental investigation against or involving you, except as provided under **SECTION A - COVERAGES**, Paragraph **1.c.(6) Data Breach Investigations.**

**e. Other Economic Costs**

Any other costs or expenses not expressly provided for under Data Breach Services, Data Breach Expense Coverages and Additional Expense Coverages provided in Paragraphs **1.a.** through **1.c.** Costs or expenses that we do not cover include but are not limited to expense to reissue credit or debit cards.

**f. Consequential Loss**

Any costs, or any other loss, caused by or resulting from delay, loss of use, loss of existing or prospective markets or any other consequential loss. This exclusion does not apply to **SECTION A - COVERAGES,** Paragraph **1.b.(5) Cyber Business Interruption and Extra Expense**.

**g. Contractually Assumed Liability**

Legal obligations arising by reason of assumption of liability in a contract or agreement.

**h. Victim Expenses or Losses**

Costs or losses incurred by a victim of "data breach" or fraud activity except as provided for under Data Breach Services, Data Breach Expense Coverages and Additional Expenses Coverages provided in Paragraphs **1.a.** through **1.c.**

**i. Alternative Travel Arrangements or Fees**

Payment of alternative travel arrangements or additional fees.

**j. Psychological Counseling**

Psychological counseling for victims of a "data breach" or fraud activity.

**k. Legal Advice or Services**

Legal advice or other legal services, except as provided by the Legal Services Additional Expense Coverage, Paragraph **1.c.(1).**

**l. Information Recapture**

Any costs or losses for the recapture of lost, stolen or destroyed information.

**m. Dishonesty**

Any criminal, fraudulent or dishonest act, error or omission, or any intentional or knowing violation of law by you, any of your partners, directors or trustees:

**(1)** Acting alone or in collusion with others; or

**(2)** Whether or not occurring during the hours of employment.

**n. Governmental Action**

Seizure or destruction of property by order of governmental authority. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. This exclusion applies whether or not the loss event results in widespread damage or affects a substantial area.

**o. Intentional or Willful Complicity**

Your intentional or willful complicity in a "data breach".

**p. Prior Discovery**

Any "data breach" discovered prior to the inception of this Data Breach Coverage Form.

**q Threats, Extortion or Blackmail**

Any threat, extortion or blackmail including but not limited to, ransom payments and private security assistance except as provided in the Data Breach Ransom Coverage Additional Expense Coverage under Paragraph **1.(c)(4).**

**r Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination, however caused.

**s. War and Military Action**

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**2.** The following exclusions apply to Breach Restoration Expenses, Cyber Business Interruption and Extra Expense, Data Breach Investigations, and Data Breach Theft only.

This insurance does not apply to:

**a. Investigations**

Costs, fees or expenses incurred or paid by you in establishing the existence of, or amount of loss, damage or expense.

**b. Non-monetary Relief**

Costs of compliance with any order for, grant of or agreement to provide non-monetary relief, including injunctive relief.

**c. Potential Income**

Potential income including interest and dividends not realized by you; however, this Exclusion shall not apply to loss of "business income" as provided under **SECTION A - COVERAGES**, Paragraph **1.b.(5) Cyber Business Interruption and Extra Expense.**



OBCH332709     1304500

**d. Return of Payments**

Return of fees, charges, commissions or other compensation paid to you.

**e. System Changes**

Costs or "expenses" incurred to replace, upgrade, update, improve, or maintain a "system".

**f. Uniform Commercial Code**

Loss, damage, costs or "expenses" you agree to incur or incur on behalf of another natural person or entity when you are not obligated to incur such loss, costs or "expenses" under the Uniform Commercial Code or any other law, statute, rule or code anywhere in the world, including the rules or codes of any clearing or similar entity. This Exclusion does not apply to **SECTION A - COVERAGES**, Paragraph **1.b.(5) Cyber Business Interruption and Extra Expense.**

## SECTION C - LIMITS OF INSURANCE

1. The most we will pay for all Data Breach Expense Coverages and Additional Expense Coverages combined is the Data Breach Coverage Aggregate Limit of Insurance shown in the **SCHEDULE** of this Data Breach Coverage Form. The Data Breach Coverage Aggregate Limit of Insurance is an annual aggregate limit and is the most we will pay for the total of all covered losses and expenses for all "data breach" events discovered by you during the current "policy period" regardless of the number of "data breach" events.

2. The Data Breach Expense Coverages Aggregate Sublimit of Insurance shown in the **SCHEDULE** of this Data Breach Coverage Form is the most we will pay under all Data Breach Expense Coverages combined for the total of all covered losses and expenses arising out of all "data breach" events during the "policy period" regardless of the number of "data breach" events. The Data Breach Expense Coverage Aggregate Sublimit of Insurance is part of, and not in addition to, the Data Breach Coverage Aggregate Limit of Insurance

3. The Additional Expense Coverages Aggregate Sublimit of Insurance shown in the **SCHEDULE** of this Data Breach Coverage Form is the most we will pay under all Additional Expense Coverages combined for the total of all covered losses and expenses for all "data breach" events during the "policy period" regardless of the number of "data breach" events. The Additional Expense Coverages Aggregate Sublimit of Insurance is part of, and not in addition to, the Data Breach Coverage Aggregate Limit of Insurance.

4. Regardless of the number of years this Data Breach Coverage Form remains in force or the number of premiums paid, no limits of insurance cumulate from this "policy period" to subsequent "policy periods".

5. **Discovery Policy Period Limits Apply**

A "data breach" may be first discovered by you in one "policy period", but cause covered loss or expenses in one or more subsequent "policy periods". If so, all covered loss or expenses for the "data breach" will be limited to the Data Breach Coverage Aggregate Limit of Insurance, the Data Breach Expense Coverages Aggregate Sublimit of Insurance and the Additional Expense Coverages Aggregate Sublimit of Insurance described respectively in Paragraphs **1., 2.** and **3.** above that are applicable to the "policy period" when the "data breach was first discovered by you.

6. **Time Limits**

   a. You must report a "data breach", to us on or within 30 days of your discovery of the "data breach".

   b. You have up to one year from the date of reporting a "data breach", to initiate the services afforded to you.

   c. A "potentially-identified person" has up to one year from the date he or she receives notification of a "data breach" to initiate the services afforded to him or her.

   d. Once initiated, the services afforded to a "potentially-identified person" will continue for one year.

   e. Data Breach Services under **Section A - Coverages,** Paragraph **1.a.** will be provided by our Designated Service Provider for a period one year from the date the Data Breach Services are initiated.

## SECTION D - DEDUCTIBLE

The Data Breach Expense Coverages and Additional Expense Coverages provided under this Coverage Form are subject to the Data Breach Coverage Deductible shown in the **SCHEDULE** of this Coverage Form. The Data Breach Coverage Deductible applies to covered loss and expense arising out of each "data breach". Our obligation to make payments under Data Breach Expense Coverages and Additional Expense Coverages applies only to that part of covered loss and expense arising out of a single "data breach" event which is in excess of the Data Breach Coverage Deductible.

The Data Breach Coverage Deductible does not apply to **SECTION A -COVERAGES,** paragraph **1.b.(6) Cyber Business Interruption and Extra Expense**. Losses payable under Cyber Business Interruption and Extra Expense are subject to the Cyber Business Interruption Waiting Period Deductible shown on the **SCHEDULE** of this Coverage Form.

## SECTION E - CONDITIONS

**1. Duties in the Event of a Data Breach.**

You must see that the following are done in the event of a "data breach":

**a.** Notify the police if a law may have been broken.

**b.** Give us prompt notice of the "data breach". As stated in **SECTION A - COVERAGES**, paragraph **b.**, you must report the "data breach" to us within 30 days of the date you first discover it.

**c.** As soon as possible, give us, and/or our Designated Service Provider, a description of how, when and where the "data breach" occurred, including all of the following information as it becomes known to you:

(1) The method of "data breach";

(2) The approximate date and time of the "data breach";

(3) The approximate number of "potentially-identified persons" compromised as a result of the "data breach";

(4) A detailed description of the type and nature of the information that was compromised;

(5) Whether or not the information was encrypted, and, if so, the level of encryption;

(6) Whether or not law enforcement has been notified;

(7) If available, the states in which the "potentially-identified persons" are domiciled;

(8) If available, who received the "private personal data" as a result of the "data breach"; and any other access, information or documentation we reasonably require to investigate or adjust your claim.

**d.** Take all reasonable steps to protect "private personal data" remaining in your care, custody or control.

**e.** Preserve all evidence of the "data breach".

**f.** Permit us to inspect the property and records proving the "data breach".

**g.** If requested, permit us to question you under oath at such times as may be reasonably required about any matter relating to this insurance or your claim, including your books and records. In such event, your answers must be signed.

**h.** Send us a signed, sworn statement containing the information we request to investigate the claim. You must do this within 30 days after our request. We will supply you with the necessary forms.

**i.** Cooperate with us in the investigation or settlement of the claim.

**2. Concealment, Misrepresentation or Fraud**

This coverage is void in any case of fraud by you as it relates to this Data Breach Coverage Form. It is also void if you intentionally conceal or misrepresent a material fact concerning this Coverage Form or a claim under this Coverage Form.

**3. Control of Property**

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Form at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

**4. Two or More Coverage Parts, Forms, Endorsements or Policies Issued By Us**

It is our stated intent that the various coverage parts, forms, endorsements or policies issued to you by us or any company affiliated with us do not provide any duplication or overlap of coverage for the same loss, damage, expense or "data breach". If this coverage form and any other coverage part, form, endorsement or policy issued to you by us or any company affiliated with us apply to the same loss, damage, expense, or "data breach"; the maximum Limit of Insurance under all such coverage parts, forms, endorsements or policies combined shall not exceed the highest applicable Limit of Insurance under any one coverage part, form, endorsement or policy.

If two or more of the coverages provided under this coverage form apply to the same loss, damage, expense or "data breach"; we will not pay more than the actual amount of the loss, damage or expense.

**5. Legal Action Against Us**

No one may bring a legal action against us under this insurance unless:

**a.** There has been full compliance with all of the terms of this insurance; and

**b.** The action is brought within two years after the date of the "data breach" is first discovered by you.

**6. Liberalization**

If we adopt any revision that would broaden the coverage under this Data Breach Coverage Form without additional premium within 45 days prior to or during the "policy period", the

broadened coverage will immediately apply to this coverage form.

**7. No Benefit to Bailee**

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

**8. Other Insurance**

**a.** If you may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Data Breach Coverage Form, we will pay only our share of the covered loss, damage or expense. Our share is the proportion that the applicable Limit of Insurance under this Coverage Form bears to the Limits of Insurance of all insurance covering on the same basis.

**b.** If there is other insurance covering the same "data breach", other than that described in **a.** above, we will pay only for the amount for Data Breach Services, Data Breach Expense Coverages, and Additional Expense Coverages in excess of the amount due from that other insurance. We will not pay more than the applicable Limit of Insurance shown in the **SCHEDULE**.

**9. Policy Period, Coverage Territory**

Under this Endorsement:

**a Policy Period**

This policy applies only to "data breaches" that are first discovered by you during the "policy period".

**b. Coverage Territory**

Coverage applies anywhere in the world, provided that no trade or economic sanction, embargo, insurance or other laws or regulations prohibit the "insurer" from covering the loss. The "data breach" must involve "private personal data" that was within your care, custody or control.

Data Breach Services are only available in jurisdictions or countries that maintain "breach notice law" and, in the case of Fraud Alert, an operative credit monitoring service.

**10. Transfer Of Rights Of Recovery Against Others To Us**

If any person or organization to or for whom we make payment under this Coverage Form has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

**a.** Prior to a loss.

**b.** After a loss only if, at time of loss, that party is one of the following:

**(1)** Someone insured by this insurance;

**(2)** A business firm:

**(a)** Owned or controlled by you; or

**(b)** That owns or controls you; or

**c.** Your tenant.

This will not restrict your insurance.

**11. Cancellation**

With regard to the cancellation of this policy, the provisions outlined in the Common Policy Conditions, Businessowners Coverage Part, Technology Professional Advantage, the Technology Professional Advantage Plus, whichever are included in the policy, shall apply and will automatically include the non-renewal or cancellation of this coverage form. You agree that no further notice regarding termination of this Coverage Form will be required.

**12. Due Diligence**

You agree to use due diligence to prevent and mitigate loss covered under this Coverage Form. This includes, but is not limited to, complying with reasonable and industry-accepted protocols for providing and maintaining the following:

**a.** Physical security for your premises, computer systems and hard copy files;

**b.** "Computer" and Internet security;

**c.** Periodic backups of computer data;

**d.** Protection, including but not limited to, encryption of data, for transactions such as processing credit card, debit card and check payments; and

**e.** Disposal of files containing "personal private data", including but not limited to shredding hard copy files and destroying physical media used to store "data".

**13. No Legal Advice Provided**

We are not your legal advisor and do not provide legal counsel to you. None of the services we provide under this Coverage Form constitute legal advice to you by us. Our determination of what is or is not covered under this Coverage Form does not represent legal advice or counsel from us about what you should or should not do.

**14. Pre-Notification Consultation**

You agree to consult with us prior to the issuance of notification to "potentially-identified persons". We assume no responsibility under this Coverage Form for any services promised to "potentially-identified persons" without our prior agreement. You must provide the following at our pre-notification consultation with you:

**a.** The exact list of "potentially-identified persons" to be notified, including contact information.

**b.** Information about the "data breach" that may appropriately be communicated with "potentially-identified persons".

**15. Service Providers**

**a.** We will only provide Data Breach Services through our Designated Service Provider(s). Any such services that are provided by any other individual or entity will not be covered by this Coverage Form.

**b.** We will only pay Data Breach Expense Coverages and Additional Expense Coverages (except for Data Breach Ransom Coverage and Data Breach Reward Coverage) that are provided by service providers approved by us prior to the start of any of these services. If we suggest a service provider(s) but you prefer to use an alternative service provider(s), our coverage is subject to the following limitations:

**(1)** Such alternate service provider(s) must be approved by us; and

**(2)** Our payment for services provided by any alternative service provider(s) will not exceed the amount that we would have paid using the service provider we had suggested.

**c.** You will have a direct relationship with any service provider, including our Designated Service Provider, paid for in whole or in part under this Coverage Form. All service providers work for you.

**16. Data Breach Services**

The following conditions apply with respect to any data breach services provided to you or to any "potentially-identified person" or "identified person" by our designees or any service firm paid for under this Data Breach Coverage Form:

**a.** The effectiveness of data breach services depends on your cooperation and assistance.

**b.** All data breach services may not be available or applicable to all "potentially identified persons" or "identified persons". For example, "potentially identified persons" who are minors or foreign nationals may not have credit records that can be provided or monitored.

**c.** We do not warrant or guarantee that the data breach services paid for in whole or in part by this Coverage Form will end or eliminate all problems associated with a covered "data breach".

**d.** We are not liable for any act or omission by any Designated Service Provider who is not our employee nor the employee of a third party provider of the data breach services described in this Coverage Form. We cannot be held responsible for failure to provide or for the delay in providing services when such failure or delay is caused by conditions beyond our control

**e.** Data Breach Services are only available in jurisdictions or countries that maintain "breach notice law" and, in the case of Fraud Alert, an operative credit monitoring service.

**17. Cooperation**

You agree to cooperate with and provide full disclosure of the circumstances surrounding a "data breach" to applicable federal or state regulators, law enforcement personnel, to us, and to our Designated Service Provider(s).

If you fail to cooperate, we will not be obliged under this contract for any services and expenses that cannot be provided due to your failure to cooperate.

**18. Appraisal**

If we and you disagree on the amount of net income, operating expense or loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of the net income, operating expense and loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

**SECTION F - DEFINITIONS**

**1. Account Takeover**

"Account takeover" means the takeover by a third party of one or more existing deposit accounts, credit card accounts, debit card accounts, ATM cards, or lines of credit in the name of an "identified person".

**2. Breach Notice Law**

"Breach Notice Law" means any federal, state, local or foreign privacy legislation, regulation and their functional equivalent that requires an entity to provide notice to affected natural persons or data protection authorities regarding any actual or potential unauthorized access to "private personal data".



OBCH332709     1304500

### 3. Breach Restoration Expenses

"Breach Restoration Expenses" means the reasonable cost of the blank "media" and the reasonable cost of labor for the actual transcription or copying of "data" or "media" in order to reproduce such "data" or replace such "media" from "data" and/or media of comparable kind or quality.

### 4. Business Income

"Business Income" means your:

**a.** Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred if there had been no impairment or denial of "business operations" due to a covered "data breach" and

**b.** Continuing normal operating expenses incurred, including payroll.

"Business income" does not include interest or investment income.

### 5. Business Operations

"Business Operations" means your usual and regular business activities.

### 6. Computer

"Computer" means a device or group of hardware devices on which software, applications, script, code and "computer" programs containing "data" can be operated and viewed.

### 7. Cyber Attack

"Cyber Attack" means the transmission of fraudulent or unauthorized "data" that is intended to and successfully modifies, alters, damages, destroys, deletes, records, transmits, or consumes information within a "system" without authorization, including "data" that is self-replicating or self-propagating, and which causes the disruption of the normal operation of a "system".

### 8. Data

"Data" means a representation of information, knowledge, facts, concepts or instructions which are being processed or have been processed in a "computer"**.**

### 9. Data Breach

"Data breach" means:

**a.** The loss, theft, accidental release or accidental publication of "private personal data" entrusted to you as respects one or more "potentially-identified persons" if such loss, theft, accidental release or accidental publication has or could reasonably result in the fraudulent use of such information;

**b.** Failure to protect "private personal data" including a "Cyber Attack" on your "system" or the actions of a "rogue employee" which

directly results in the unauthorized disclosure of "private personal data";

**c.** The theft or negligent loss of hardware, "media", "system output", "data" or other documents owned or controlled by you, or on your behalf, on which "private personal data" is stored or recorded;

**d.** The failure or violation of the security of your "system" including the impairment or denial of access to your "system", including a "Cyber Attack" or unauthorized acts or omissions by a "rogue employee" which damages or harms your "system" or the "system" of a third party for whom you provide "services" for a fee;

**e.** The theft or loss of hardware or "media" controlled by you, or on your behalf, on which "data" is stored;

**f.** Disposal or abandonment of "private personal data" without appropriate safeguards such as shredding or destruction, subject to the following provisions:

**(1)** Your failure to use appropriate safeguards must be accidental and not intentional, reckless or deliberate and not in violation of your Due Diligence obligations under Paragraph **2. Additional Conditions**, Paragraph **a.**;

**(2)** Such disposal or abandonment must take place during the time period for which this Data Breach Coverage Form is effective; or

**g.** The failure to disclose an event described in **a.** thru **f.** above which violates any "breach notice law".

All incidents of "data breach" that are discovered at the same time or arise from the same cause or from a series of similar causes would be considered one "data breach". All theft of "private personal data" caused by any person or in which that person is involved, whether the result of a single act or series of related acts, is considered a single incident of "data breach".

### 10. Defense Expenses

"Defense Expenses" means the reasonable and necessary legal fees and expenses including attorney fees and expert fees incurred by us or by you (other than regular or overtime wages, salaries, fees or benefits of you or your employees) in the investigation, defense, settlement and appeal of a claim, including but not limited to cost of consultants and witnesses, premiums for appeal, injunction, attachment or supersedes bonds regarding such claim.

**11. Electronic Data**

"Electronic data" means information, facts or computer programs stored as or on, created or used on, or transmitted to or from software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

**12. Expense**

"Expense" means "Business Income", "Extra Expense", "Breach Restoration Expenses", and loss payable under the Data Breach Theft coverage incurred by you.

**13. Extra Expense**

"Extra Expense" means the reasonable and necessary expenses you incur during the "period of restoration" in an attempt to continue "business operations" that have been interrupted due to a "data breach" and that are over and above the expenses such you would have incurred if no loss had occurred. "Extra expense" does not include any costs of updating, upgrading or remediation of your "system" that are not otherwise covered under this Coverage Part.

**14. Fines, Penalties or Assessments**

"Fines, penalties or assessments" means any fines, assessments, surcharges, attorneys' fees, court costs or other penalties which you shall be required to pay as a result of a "data breach" or pursuant to any contract, law, regulation or order.

**15. Identified Person**

"Identified person" means a "potentially-identified person" who is or appears to be a victim of "identity theft" or "account takeover" that may reasonably have arisen from a covered "data breach".

**16. Identity Theft**

"Identity theft" means the fraudulent use of "private personal data". This includes the fraudulent use of such information to establish credit accounts, secure loans, enter into contracts or commit crimes.

"Identity theft" does not include the fraudulent use of a business name, d/b/a or any other method of identifying a business activity.

"Identity theft" does not include the use of a valid credit card, credit account or bank account. However, "identity theft" does include the fraudulent alteration of account profile information, such as the address to which statements are sent.

**17. Media**

"Media" means electronic applications, software, scripts and programs on which "data" is stored so that it can be collected, read, retrieved or processed by a "computer". "Media" does not mean paper, or other tangible property, money, debt, equity, instruments, accounts, bonds, bills, records, abstracts, deeds or manuscripts

**18. Network**

"Network" means any services provided by or through the facilities of any electronic or "computer" communication system, allowing the input, output, examination, visualization or transfer of "data" or programs from one "computer" to your "computer". "Network" incudes any shared networks, Internet access facilities, or other similar facilities for such systems, in which you participate.

**19. Period of Restoration**

"Period of Restoration" means:

**a.** The period of time that begins:

  **(1)** For "Extra Expenses", immediately after the actual or potential impairment or denial of "business operations" occurs; and

  **(2)** For the loss of "Business Income", after 24 hours or the number of hours shown as the Cyber Business Interruption Waiting Period Deductible in the **SCHEDULE** on this Coverage Forms, whichever is greater, immediately following the time the actual impairment or denial of "business operations" first occurs.

**b.** The "Period of Restoration" ends on the earlier of the following:

  **(1)** The date "business operations" are restored, with due diligence and dispatch, to the condition that would have existed had there been no impairment or denial; or

  **(2)** Sixty (60) days after the date the actual impairment or denial of "business operations" first occurs;

  The expiration date of this Policy or Coverage Part will not cut short the "period of restoration".

**20. Policy Period**

"Policy Period" means the period of time from the inception date shown the Declarations to the earlier of the expiration date shown in the Declarations or the effective date of termination of the Policy or Data Breach Coverage Form.



21. **Potentially-Identified Person**

"Potentially-identified person" means any person who is your current, former or prospective customer, employee, client, member, or patient and whose "private personal data" is lost, stolen, accidentally released or accidentally published by a "data breach" covered under this Coverage Form.

"Potentially-identified person" does not include any business or organization. Only an individual person may be a "potentially-identified person".

A "potentially-identified person" may reside anywhere in the world.

22. **Private Personal Data**

"Private Personal Data" means a natural person's first name or first initial and last name in combination with:

a. Non-public personally identifiable information, as defined in applicable federal, state, local or foreign legislation or regulations including, social security number, driver's license number or other personal identification number (including an employee identification number or student identification number);

b. Financial account number (including a bank account number, retirement account number or healthcare spending account number);

c. Credit, debit or payment card numbers;

d. Information related to employment by you;

e. Individually identifiable information considered nonpublic personal information pursuant to Title V of the Gramm-Leach Bliley Act of 1999, as amended; or

f. Individually identifiable information considered protected health information pursuant to the Health Insurance Portability and Accountability Act of 1996 (HIPAA), as amended;

which is intended to be accessible only by natural persons or entities you have specifically authorized to have such access.

"Private personal data" does not mean or include information that is otherwise available to the public, such as names and addresses with no correlated Social Security numbers or account numbers.

23. **Proactive Monitoring Services**

"Proactive monitoring services" means the following services if you offer to provide them to "potentially-identified persons" who contact our Designated Service Provider:

a. A credit report;

b. credit monitoring; and or

c. fraud/public records monitoring service or services.

24. **Regulatory Investigation**

"Regulatory Investigation" means a formal request for information, civil investigative demand or civil proceeding, including requests for information related thereto, brought by or on behalf of a state Attorney General, the Federal Trade Commission, the Federal Communications Commission or any other federal, state, local or foreign governmental agency.

25. **Rogue Employee**

"Rogue Employee" means a permanent employee of yours, other than an "executive", who has gained unauthorized access or has exceeded authorized access to a "system" or "private personal data" owned or controlled by you or an entity that is authorized by you to hold, process or store "private personal data" for your exclusive benefit.

26. **Services**

"Services" means "computer" time, data processing, storage functions or other uses of your "system".

27. **System**

"System" means a "computer", "media" and all input, output, processing storage and communication devices controlled, supervised or accessed by operating software that is proprietary to, or licensed to, the owner of the "computer".

28. **System Output**

"System Output" means a tangible substance on which "private personal data" is printed from a "System".

**The Hanover** Insurance Group.

OBCH332709     1304500

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## NOTICE OF CANCELLATION TO DESIGNATED ENTITY(S)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
HANOVER COMMERCIAL FOLLOW FORM EXCESS AND UMBRELLA POLICY
COMMERCIAL PROPERTY COVERAGE PART
BUSINESS AUTO COVERAGE FORM
BUSINESSOWNERS COVERAGE FORM

### SCHEDULE

| Name of Designated Entity Mailing Address or Email Address | Number Days Notice |
|---|---|
| SILICON VALLEY BANK<br>3003 TASMAN DRIVE<br>HF 150<br>SANTA CLARA, CA<br>95054 | 30 |
| | |
| | |

(Information required to complete this Schedule, if not shown above, will be shown in the Declarations.)

If we cancel this policy for any reason other than nonpayment of premium, we will give written notice of such cancellation to the Designated Entity(s) shown in the Schedule. Such notice may be delivered or sent by any means of our choosing. The notice to the Designated Entity(s) will state the effective date of cancellation.

Unless otherwise noted in the Schedule above, such notice will be provided to the Designated Entity(s) no more than the number of days in advance of the effective date of cancellation that we are required to provide to the Named Insured for such cancellation.

Such notice of cancellation is solely for the purpose of informing the Designated Entity(s) of the effective date of cancellation and does not grant, alter, or extend any rights or obligations under this policy.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED - DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

### SCHEDULE

| Name of Person or Organization: |
|---|
| S I L I C O N   V A L L E Y   B A N K |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

For the purpose of coverage provided by this endorsement, the following changes are made to **SECTION II - LIABILITY:**

**A.** The following is added to **SECTION II - LIABILITY, C. Who is an Insured:**

Any person or organization shown in the Schedule above is also an additional insured, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf in the performance of your ongoing operations or in connection with your premises owned by or rented to you.

However:

**a.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**b.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** The following is added to **SECTION II - LIABILITY, D. Liability and Medical Expenses Limits of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**a.** Required by the contract or agreement; or

**b.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

ALL OTHER TERMS, CONDITIONS, AND EXCLUSIONS REMAIN UNCHANGED.

The
**Hanover**
Insurance Group™

OBCH332709      1304500

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# AVENUES BUSINESSOWNERS TECHNOLOGY DELUXE GOLD BROADENING ENDORSEMENT

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The following is added to **SECTION I - PROPERTY**:

The limits applicable to the coverages included in this endorsement may either be in addition to or included within the applicable Limit of Insurance. For application of the limits, refer to each coverage within this endorsement. Words or phrases in quotation marks have special meanings. The meaning of words or phrases in quotation marks is explained within the applicable coverage section. The coverages in this endorsement amend the coverage provided under the Businessowners Coverage Form through new coverages and replace coverage grants. These coverages are subject to the provisions applicable to this policy, except where amended within this endorsement.

If any of the property covered by this endorsement is also covered under any other provisions of the policy of which this endorsement is made a part of, or if more than one coverage under this endorsement applies, in the event of loss or damage, you may choose only one of these coverages to apply to that loss. The most we will pay in this case is the limit of insurance applying to the coverage you select. Coverages included in this endorsement apply either separately to each described premises or on an occurrence basis. Refer to each coverage within this endorsement for application of coverage.

We provide no coverage for Business Income; Extended Business Income; Extra Expense; or Business Income and Extra Expense from Dependent Properties for any of the Coverages included as part of this endorsement unless specifically stated, and then only to the extent provided for within that Scheduled or Blanket Coverage provision.

## I.   COVERAGES

| | A.   Scheduled Coverages | Limit | Page |
|---|---|---|---|
| **1.** | Advertising Expense to Regain Customers | $2,500 | 3 |
| **2.** | Brands and Labels | Included | 3 |
| **3.** | Business Income Billable Hours Option | $10,000 | 3 |
| **4.** | Contingent Transit Business Income and Extra Expense | $100,000 | 4 |
| **5.** | Business Income and Extra Expense - Dependent Properties (Including World-Wide Coverage) | $100,000 | 4 |
| **6.** | Business Income from Websites | $50,000 | 5 |
| **7.** | Catastrophe Allowance | $25,000 | 5 |
| **8.** | Commercial Tools and Small Equipment | $25,000 | 5 |
| **9.** | Computer Equipment - In Transit or Off Premises | $75,000 | 5 |
| **10.** | Computer and Funds Transfer Fraud | $10,000 | 6 |
| **11.** | Consequential Loss to Stock | Included | 6 |
| **12.** | Contract Penalties | $25,000 | 6 |
| **13.** | Deferred Payments | $25,000 | 6 |
| **14.** | Denial of Access to Premises | 30 Days; 72 Hour Waiting Period | 6 |
| **15.** | Electronic Vandalism | $25,000 | 6 |
| **16.** | Employee Theft Including ERISA Compliance | $50,000 | 7 |
| **17.** | Employee Tools and Work Clothing | $2,500 Per Item $25,000 Per Occurrence | 7 |

| 18. | Expediting Expenses | $25,000 | 7 |
|---|---|---|---|
| 19. | Extended Business Income | 180 days | 7 |
| 20. | Fine Arts | $50,000 | 8 |
| 21. | Fire Department Service Charge | Included | 8 |
| 22. | Fire Protection Equipment Recharge | Included | 8 |
| 23. | Forgery or Alteration | $50,000 | 8 |
| 24. | Hired Auto - Physical Damage | $50,000 | 8 |
| 25. | Installation Floater | $50,000 | 9 |
| 26. | Interruption of Computer Operations | $50,000 | 9 |
| 27. | Inventory and Loss Appraisal | $20,000 | 10 |
| 28. | Key Replacement and Lock Repair | $25,000 | 10 |
| 29. | Leasehold Interest (Tenants Only) | $25,000 | 10 |
| 30. | Lessor's Lease Cancellation | $10,000 | 10 |
| 31. | Lessor's Tenant Move Expenses | $10,000 / 60 days | 10 |
| 32. | Marring and Scratching | Included | 11 |
| 33. | Money Orders and Counterfeit Money | $25,000 | 11 |
| 34. | Newly Acquired or Constructed Property<br>    Business Personal Property<br>    Business Income and Extra Expense | $1,000,000<br>$500,000 | 11 |
| 35. | Ordinance or Law - Demolition and Increased Cost of Construction | $50,000 | 11 |
| 36. | Ordinance or Law - Increased Period of Restoration | $100,000 | 11 |
| 37. | Ordinance or Law (Tenant's Improvement Extension) | $50,000 | 12 |
| 38. | Outdoor Property<br>    Per Tree, Shrub or Plant | $25,000<br>$2,500 | 12 |
| 39. | Personal Effects | $50,000 | 12 |
| 40. | Portable Electronic Devices Coverage Worldwide | $25,000 | 12 |
| 41. | Precious Metal Theft Payment Changes | $50,000 | 13 |
| 42. | Personal Property in Transit | $50,000 | 13 |
| 43. | Sales Representative Samples | $25,000 | 13 |
| 44. | Soft Costs | $10,000 | 13 |
| 45. | Spoilage | $25,000 | 14 |
| 46. | Temporary Relocation of Property | $50,000 | 15 |
| 47. | Tenant Signs | $25,000 | 15 |
| 48. | Unauthorized Business Credit Card Use | $10,000 | 15 |
| 49. | Underground Water Seepage | $100,000 | 16 |
| 50. | Unnamed Locations - Personal Property and Computer Equipment<br>Unnamed Locations - Business Income and Extra Expense | $10,000 per Occurrence<br>$25,000 Policy Aggregate<br>$10,000 per Occurrence<br>$50,000 Policy Aggregate | 16 |
| 51. | Utility Services<br>    Direct Damage (Including Overhead Transmission Lines)<br>    Business Income (Including Overhead Transmission Lines) | $50,000<br>$50,000 | 18 |
| 52. | Worldwide Property Off Premises | $50,000 | 18 |

**The Hanover**
Insurance Group™

OBCH332709      1304500

| B. | Blanket Coverages | Blanket Limit $250,000 | Page |
|---|---|---|---|
| 1 | Accounts Receivable | Included | 19 |
| 2. | Backup or Overflow of a Sewer, Drain or Sump | Included | 19 |
| 3. | Computer Equipment | Included | 19 |
| 4. | Debris Removal | Included | 19 |
| 5. | Valuable Papers and Records (Other Than Electronic Data) | Included | 20 |

The Blanket Limit of Insurance shown above applies to all Coverages shown in **Section B** of this endorsement. At the time of loss, you may elect to apportion this Blanket Limit of Insurance to one or any combination of the Coverages shown, but under no circumstances will the aggregate apportionment be permitted to exceed the Blanket Limit of Insurance shown above. The Blanket Limit of Insurance applies per occurrence.

## II.  DEDUCTIBLES

Deductibles are subject to the provisions applicable to the Businessowners Coverage Form except as provided below. We will not pay for covered loss or damage in any one occurrence unless the amount of loss or damage exceeds the applicable Deductible amount. We will then pay the amount of loss or damage in excess of the Deductible up to the applicable Limit of Insurance.

## III.  COVERED PROPERTY

### A.  Scheduled Coverages

**1.  Advertising Expense to Regain Customers**

The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages**:

**Advertising Expense to Regain Customers**

**(1)** If we make payment for a Covered Cause of Loss under this policy and there is a "suspension" of operations caused by direct physical loss or damage to property, we will pay for necessary advertising expenses you incur solely to regain customer faith and approval.

**(2)** We will only pay the necessary advertising expenses that you incur within 60 consecutive days after the "period of restoration" ends.

**(3)** The most we will pay under this Additional Coverage for all necessary advertising expenses in any one policy year is $2,500.

**2.  Brands and Labels**

The following is added to **SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions**:

**Brands and Labels**

**(1)** If Covered Property that has a brand or label is damaged by a Covered Cause of Loss and we elect to take all or any part of the damaged property at an agreed or appraised value, you may extend the insurance that applies to your Business Personal Property to:

**(a)** Pay expenses you incur to:

**(i)** Remove the brand or label and then relabel the damaged property to comply with any applicable law; or

**(ii)** Label or stamp the damaged property Salvage, if doing so will not physically damage the property.

**(b)** Cover any reduction in the salvage value of the damaged property as a result of the removal of the brand or label.

**(2)** Payment under this Extension is included within the Limit of Insurance applicable to your Business Personal Property.

**3.  Business Income Billable Hours Option**

The following is added to **SECTION I - PROPERTY, A. Coverage, E. Property Loss Conditions, 5. Loss Payment**:

**Business Income Billable Hours Option**

**(1)** At your option you may choose to settle a covered Business Income and Extra Expense loss, as described under the Business Income, Extra Expense and Utility Services Additional Coverages, as described below in paragraph **(3)**.

**(2)** This loss settlement option is only available to you prior to your submission to us of calculations described under **SECTION I - PROPERTY, A. Coverage, 5.**

**Additional Coverages, f. Business Income.**

**(3)** For the purpose of this Additional Coverage, we will pay up to $500 per day, for billable hours lost, per technology professional, up to a maximum of $1,000 per day, regardless of the number of technology professionals involved, for each normal working day you are unable to conduct operations due to covered loss or damage for up to a maximum of 10 days. We will also pay for your continuing normal operating expenses incurred, including "payroll expenses"; and "Rental Value".

**(4)** If damages are such that limited operations can continue, the per technology professional allowance will be proportionately reduced.

**(5)** For any occurrence, the two available methods for adjusting and calculating Business Income and Extra Expense loss may not be combined. When the alternative per diem approach described above is selected, the maximum coverage under this loss settlement option is $10,000 on an actual loss sustained basis. You are not entitled to make claim for periods beyond 10 days.

**(6)** This optional loss settlement does not waive the Waiting Period shown in the Declarations for Business Income Additional Coverage. This Waiting Period does not apply to Extra Expense.

**4.** **Contingent Transit Business Income and Extra Expense**

The following is added **SECTION I - PROPERTY, A Coverage, 6. Coverage Extensions;**

**Contingent Transit Business Income and Extra Expense**

You may extend your Business Income or Extra Expense Coverage to apply to the actual loss of Business Income (not including **Extended Business Income**) or Extra Expense you sustain due to direct physical loss of or damage to Business Personal Property of Others, not in your care, custody or control, while "in transit", caused by or resulting from a Covered Cause of Loss.

The most we will pay for loss under this Extension is $100,000.

**5.** **Business Income and Extra Expense - Dependent Properties (Including World-Wide Coverage)**

**a.** The heading for **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, m. Business Income from Dependent Properties** is replaced by the following:

**m. Business Income and Extra Expense from Dependent Properties**

The following is added to **Business Income and Extra Expense from Dependent Properties**:

We will pay the necessary Extra Expense you incur due to direct physical loss of or damage to "dependent property" caused by or resulting from a Covered Cause of Loss.

The definition of Extra Expense for this Additional Coverage is replaced by the following:

Extra Expense means necessary expenses you incur during the "dependent property period of restoration" that you would not have incurred if there had been no direct physical loss or damage to the premises of any "dependent property" caused by or resulting from a Covered Cause of Loss:

**(1)** To avoid or minimize the "suspension" of business and to continue "operations"; or

**(2)** To minimize the "suspension" of business if you cannot continue "operations".

We will reduce the amount of your Extra Expense loss to the extent you can return "operations" to normal and discontinue such extra expense.

**(3)** Paragraph **(2)** of this Additional Coverage is replaced by the following:

**(2)** The most we will pay under this Additional Coverage is $100,000 per occurrence, regardless of the number of "dependent properties" affected.



OBCH332709    1304500

**b.** The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, m. Business Income from Dependent Properties:**

The "dependent property" may be located anywhere in the world.

**6. Business Income from Websites**

**a.** The following is added to **SECTION I - PROPERTY A. Coverage, 5. Additional Coverages:**

**Business Income from Websites**

**(1)** You may extend this insurance to apply to a "suspension" of "operations" caused by direct physical loss or damage to property that you depend on for "web site and communications services" from a Covered Cause of Loss.

**(2)** We will not pay for any loss of Business Income you incur during the first 12 hours that immediately follows the time when you first discovered the Covered Cause of Loss. This Waiting Period does not apply to Extra Expense.

**(3)** The most we will pay for the actual loss of Business Income and necessary and reasonable Extra Expense in any one occurrence under this Additional Coverage is $50,000 and only for the 7-day period immediately following the Covered Cause of Loss.

**(4)** Coverage does not apply to Websites unless there is a duplicate or back-up copy of your Web Page stored at a location that is at least 1,000 feet away from the premises of the vendor that provides "web site and communications services".

**(5)** "Web Site and Communication Services" means:

**(a)** Internet access, e-mail, web hosting, value added network services and application software services at the premises of others; or

**(b)** Network and router infrastructure services, including cable and wireless, located more than 1,000 feet from the described premises.

**b.** This Additional Coverage is not subject to **SECTION I - PROPERTY, C. Limits of Insurance.**

**7. Catastrophe Allowance**

The following is added to **SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions**:

**Catastrophe Allowance**

**(1)** This Coverage Extension applies when the direct physical loss or damage to Covered Property from a Covered Cause of Loss is the result of an insured event for which Property Claims Service (PCS) has publicly designated a catastrophe number to the event.

**(2)** You may extend the insurance provided under this Coverage Extension if the Limit of Insurance applicable to Building and Business Personal Property, as shown in the Declarations, are insufficient to compensate you for covered loss or damage you incur as a result of the insured catastrophe event.

**(3)** This Coverage Extension may not be applied to the deductible amount of this policy or any other policy. It also may not be used to cover any loss or damage that would not be covered under this policy.

**(4)** The most we will pay under this Extension in any one occurrence is $25,000.

The most we will pay under this Extension during each separate 12 month period of this policy is $25,000.

**8. Commercial Tools and Small Equipment**

**SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, v. Commercial Tools and Small Equipment**, paragraph **(4)** is replaced by the following:

**(4)** The most we will pay for any loss under this Additional Coverage in any one occurrence is $25,000 but not more than $2,500 for any one tool, tool box or piece of small equipment.

**9. Computer Equipment**

The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, r. Computer Equipment**, paragraph **(4)**:

The most we will pay for direct physical loss or damage to Covered Property listed in paragraph **(1)** above in any one occurrence while "in transit" or at a premises other than the described premises is $75,000.

### 10. Computer and Funds Transfer Fraud

**SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, hh. Computer and Funds Transfer Fraud,** paragraph **(3)** is replaced by the following:

**(3)** The most we will pay per occurrence under this Additional Coverage is $10,000 unless a higher Limit of Insurance is shown in the Schedule of Amended Limits of Insurance.

### 11. Consequential Loss to Stock

The following is added to **SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions**:

**Consequential Loss to Stock**

**(1)** You may extend the insurance that applies to your Business Personal Property to apply to the reduction in value of the remaining parts of "stock" in process of manufacture that are physically undamaged but are unmarketable as a complete product because of direct physical loss or damage from a Covered Cause of Loss to other parts of covered "stock" in process of manufacture at an insured location.

**(2)** Should it be determined that such "stock" retains only a salvage value, we retain the option of paying the full value of the "stock" as agreed within this policy, and taking the damaged property for salvage purposes.

**(3)** Payment under this Coverage Extension is included within the applicable Limit of Insurance.

### 12. Contract Penalties

The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages**:

**Contract Penalties**

**(1)** We will pay for contract penalties you are required to pay due to your failure to provide your product or service according to contract terms because of direct physical loss or damage by a Covered Cause of Loss to Covered Property.

**(2)** The most we will pay for all penalties in any one occurrence is $25,000.

**(3)** The amount payable under this Additional Coverage is additional insurance.

### 13. Deferred Payments

**SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages,** paragraph **(4)** is replaced by the following:

**(4)** The most we will pay under this Additional Coverage for loss or damage in any one occurrence at a described premises is $25,000.

### 14. Denial of Access to Premises

The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages**:

**Denial of Access to Premises**

**(1)** We will pay for the actual loss of Business Income you sustain and necessary Extra Expense you incur when ingress to or egress from the described premises is prevented, due to direct physical loss of or damage to property that is away from but within 2000 feet of the described premises, caused by or resulting from any Covered Cause of Loss covered under this policy.

**(2)** The coverage for Business Income will begin 72 hours after the loss or damage to the premises that causes the denial of access and will apply for a period of up to 30 consecutive days after coverage begins.

**(3)** The coverage for Extra Expense will begin immediately after the loss or damage to the premises that causes the denial of access and will end:

**(a)** 30 consecutive days after coverage begins; or

**(b)** When your Business Income coverage ends;

whichever is earlier.

**(4)** The definitions of Business Income and Extra Expense contained in the Business Income Additional Coverage and the Extra Expense Additional Coverage also apply to this Denial of Access to Premises Additional Coverage.

### 15. Electronic Vandalism

**SECTION I - Property, A. Coverage, 5. Additional Coverages, dd. Electronic**



OBCH332709          1304500

**Vandalism,** paragraph **(3)** is replaced by the following:

**(3)** The most we will pay for loss of or damage to computer "hardware" or "software" in any one occurrence under this Additional Coverage is $5,000. The most we pay for all covered losses to computer "hardware" or "software" under this Additional Coverage during each separate 12-month period of this policy is $25,000.

The most we will pay under this Additional Coverage for all loss or damage sustained in any one policy year, regardless of the number of occurrences of loss or damage or the number of premises, locations or computer systems involved, is $25,000, unless a higher Limit of Insurance is shown in the Declarations. If loss payment on the first occurrence does not exhaust this amount, then the balance is available for subsequent loss or damage sustained in, but not after, that policy year. With respect to an occurrence which begins in one policy year and continues or results in additional loss or damage in a subsequent policy year(s), all loss or damage is deemed to be sustained in the policy year in which the occurrence began.

**16. Employee Theft Including ERISA Compliance**

**SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, p. Employee Theft Including ERISA**, paragraph **(6)** is replaced by the following:

**(6)** The most we will pay for all loss resulting directly from an occurrence is $50,000. Regardless of the number of years this policy remains in force or the number of premiums paid, no Limit of Insurance cumulates from year to year.

**17. Employee Tools and Work Clothing**

The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages**:

**Employee Tools**

**(1)** We will pay for direct physical loss of or damage by a Covered Cause of Loss to tools and work clothing belonging to your "employees" while such tools and work clothing are located at an insured location, your job sites or while in your vehicle "in transit" to and from your job sites.

**(2)** The most we will pay for loss or damage under this Additional Coverage is $25,000 per occurrence but not more than $2,500 for any one tool or item of clothing.

**(3)** The amount payable under this Additional Coverage is additional insurance.

**18. Expediting Expenses**

The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages**:

**Expediting Expenses**

**(1)** When a Covered Cause of Loss occurs to Covered Property, we will pay for the reasonable and necessary additional expenses you incur to:

   **(a)** Make temporary repairs;

   **(b)** Expedite permanent repair or replacement of damaged property; or

   **(c)** Provide training on replacement machines or equipment.

**(2)** The most we will pay for loss under this Additional Coverage in any one occurrence is $25,000.

**(3)** The amount payable under this Additional Coverage is additional insurance.

**19. Extended Business Income**

**SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, f. Business Income, (2) Extended Business Income, (a) Extended Business Income - Other Than Rental Value**, paragraph **(ii)** and **(b) Extended Business Income - Rental Value**, paragraph **(ii)** are replaced by the following:

**(2)(a)    Extended Business Income - Other Than Rental Value**

   **(ii)** Ends on the earlier of:

      **1)** The date you could restore your operations, with reasonable speed, to the level which would generate the business income amount that would have existed if no direct physical loss or damage had occurred; or

**2)** 180 consecutive days after the date determined in **(2)(a)(i)** above.

**(2)(b) Extended Business Income - Rental Value**

**(ii)** Ends on the earlier of:

**1)** The date you could restore tenant occupancy, with reasonable speed, to the level which would generate the "Rental Value" that would have existed if no direct physical loss or damage had occurred; or

**2)** 180 consecutive days after the date determined in **(2)(b)(i)** above.

**20. Fine Arts**

SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions, x. **Fine Arts**, paragraph **(3)** is replaced by the following:

**(3)** The most we will pay for loss under this Additional Coverage is $50,000 per occurrence regardless of the number of locations or buildings involved.

**21. Fire Department Service Charge**

SECTION I - PROPERTY, A. Coverage, 5. **Additional Coverages**, c. **Fire Department Service Charge** is replaced by the following:

**c. Fire Department Service Charge**

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay for your liability for the fire department service charges if:

**(1)** Assumed by contract or agreement prior to the loss; or

**(2)** Required by local ordinance.

**22. Fire Protection Equipment Recharge**

SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions, o. **Fire Protection Systems Recharge**, paragraph **(3)**, is replaced by the following:

**(3)** This Coverage Extension is included within the Limit of Insurance applicable to your covered property at the described premises. This Coverage Extension does not increase the Limits of Insurance.

**23. Forgery or Alteration**

SECTION I - PROPERTY, A. Coverage, 5. **Additional Coverages, k. Forgery or Alteration**, paragraph **(4)** is replaced by the following:

**(4)** The most we will pay for any loss, including legal expenses, under this Additional Coverage is $50,000, unless a higher Limit of Insurance is shown in the Schedule of Amended Limits of Insurance.

**24. Hired Auto - Physical Damage**

The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages**:

**Hired Auto - Physical Damage Coverage**

**(1)** We will pay for loss to an "auto" you or an "employee", at your direction, lease, hire or rent without a driver for a period of 30 days or less for the purpose of conducting customary operations for your business. This does not include any "auto" you lease, hire or rent from any of your "employees" or members of their households.

We will pay for loss to a covered "auto" or its equipment caused by:

**(a) Comprehensive coverage**

From any cause except:

**(i)** The covered "auto's" collision with another object; or

**(ii)** The covered "auto's" overturn.

**(b) Collision coverage**

**(i)** The covered "auto's" collision with another object; or

**(ii)** The covered "auto's" overturn.

**(2)** For the purpose of this Additional Coverage only, **SECTION I - PROPERTY, A. Coverage, 2. Property Not Covered,** paragraph **a.** is replaced by the following:

**a.** Aircraft, automobiles, motortrucks and other vehicles subject to motor vehicle registration and:

**(1)** Any "auto" as described in paragraph **(1)** above, while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity;

The **Hanover** Insurance Group™

OBCH332709    1304500

**(2)** Tapes, records, discs or other similar audio, visual or data electronic devices designed for use with audio, visual or data electronic equipment;

**(3)** Any device designed or used to detect speed measuring equipment such as radar or laser detectors and any jamming apparatus intended to elude or disrupt speed measurement equipment; or

**(4)** Any electronic equipment, without regard to whether this equipment is permanently installed, that receives or transmits audio, visual or data signals and that is not designed solely for the reproduction of sound.

**(3)** For the purpose of this Additional Coverage only, **SECTION I - PROPERTY, B. Exclusions** does not apply with the exception of the following exclusions:

**(a)** **1.d. Nuclear Hazard**;

**(b)** **1.f. War and Military Action**

For the purpose of this Additional Coverage only, the following exclusions are added to **SECTION I - PROPERTY, B. Exclusions**:

**1.** We will not pay for loss to a covered "auto" caused by or resulting from someone causing you to voluntarily part with the "auto" by trick or scheme or under false pretenses; or

**2.** We will not pay for loss caused by or resulting from wear and tear, freezing; mechanical or electrical breakdown; blowouts, punctures or other road damage to tires.

**(4)** For the purpose of this Additional Coverage only, the following is added to **SECTION I - PROPERTY, C. Limits of Insurance**:

**Hired Auto Physical Damage Limits of Insurance**

The most we will pay for loss to any one covered "auto" is the lesser of:

**a.** The actual cash value of the damaged or stolen property as of the time of loss;

**b.** The cost of repairing or replacing the damaged or stolen property

with other property of like kind and quality; or

**c.** $50,000.

**(5)** The following is added to **SECTION I - PROPERTY, D. Deductibles,** paragraph **5.**:

Hired Auto - Physical Damage

**(6)** For the purpose of this Additional Coverage only, the following is added to **SECTION I - PROPERTY, G. Property Definitions**:

**1.** "Auto" means a land motor vehicle, trailer or semitrailer that is subject to motor vehicle registration, or designed for travel on public roads, including any attached machinery or equipment.

The amount payable under this Additional Coverage is additional insurance.

This coverage is excess to any other valid insurance whether collectible or not.

**25. Installation Floater**

**SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, w. Installation**, paragraph **(8)** is replaced by the following:

**(8)** The most we will pay for loss of or to damage to property covered under this Additional Coverage in any one occurrence is $50,000, regardless if the property is located at a jobsite, while "in transit", or at a temporary storage location.

**26. Interruption of Computer Operations**

**SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, ee. Interruption of Computer Operations**, paragraph **(3)**, is replaced by the following:

**(3)** The most we will pay under this Additional Coverage - Interruption of Computer Operations for all loss sustained and expense incurred in any one policy year, regardless of the number of interruptions or the number of described premises or computer systems involved, is $50,000 unless a higher Limit of Insurance is shown in the Declarations. If loss payment relating to the first interruption does not exhaust this amount, then the balance is available for loss or expense sustained or incurred as a result of subsequent interruptions in that policy year. A balance remaining at the end of a policy year does not increase the amount of insurance in

the next policy year. With respect to any interruption which begins in one policy year and continues or results in additional loss or expense in a subsequent policy year(s), all loss and expense is deemed to be sustained or incurred in the policy year in which the interruption began.

**27. Inventory and Loss Appraisal**

**SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions, j. Inventory and Loss Appraisal**, paragraph **(2)**, is replaced by the following:

**(2)** Regardless of the number of premises involved, the most we will pay under this Extension is $20,000.

**28. Key Replacement and Lock Repair**

**SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions, g. Key Replacement and Lock Repair**, paragraph **(2)**, is replaced by the following:

**(2)** The most we will pay under this Extension is $25,000. The Deductible does not apply to this Extension.

**29. Leasehold Interest (Tenants Only)**

**a. SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, z. Leasehold Interest (Tenants Only)**, paragraph **(2)(b)**, is replaced by the following:

**(2)(b)** $25,000;

**b. SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, z. Leasehold Interest - Tenant**, paragraph **(4)(a)**, is replaced by the following:

**(4)(a)** $25,000 will be the maximum amount payable regardless of the number of leases affected by the same Covered Cause of Loss.

**30. Lessor's Lease Cancellation**

The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages**:

**Lessor's Lease Cancellation**

**(1)** We will pay the actual loss of business income you sustain due to the cancellation of a lease by your tenants in a Covered Building due to untenantability that is caused by direct physical loss or damage to that building from a Covered Cause of Loss.

This Additional Coverage only applies if at the time of loss the building was occupied and business was being conducted by the tenant cancelling the lease or their sub-lessee.

**(2)** We will pay for loss of business income that you sustain after tenantability is restored and until the earlier of:

**(a)** The date you lease the premises to another tenant; or

**(b)** 12 months immediately following the "period of restoration".

**(3)** Regardless of the number of tenants cancelling a lease at the described premises, the most we will pay under this Additional Coverage is $10,000 per occurrence

**(4)** The amount payable under this Additional Coverage is additional insurance.

**(5) Special Lease Cancellation Exclusions**

We will not pay for:

**(a)** Lease cancelled after the "period of restoration";

**(b)** Lease cancelled, suspended or allowed to lapse by you;

**(c)** Return of prepaid rent or security and other deposits made by tenants; or

**(d)** Lease cancelled at the normal expiration date.

**31. Lessor's Tenant Move Expenses**

The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages**:

**Lessor's Tenant Move Expenses**

**(1)** In the event that your tenants must temporarily vacate the covered Building at the described premises due to untenantability caused by direct physical loss or damage by a Covered Cause of Loss, we will pay the following expenses you actually incur to move those tenants out of and back into your covered Building.

**(2)** We will only pay for the following expenses:

**(a)** Packing, transporting and unpacking the tenant's Business Personal Property including the cost of insuring the move out

The **Hanover** Insurance Group

OBCH332709     1304500

and back and any necessary disassembly and reassembly or setup of furniture and equipment; and

**(b)** The net cost to discontinue and re-establish the tenants' utility and telephone services, after any refunds due the tenants.

**(3)** We will only pay for these expenses that you actually incur within 60 days of the date that the damaged buildings has been repaired or rebuilt.

**(4)** Regardless of the number of tenants involved, the most we will pay under this Additional Coverage is $10,000 per occurrence. This Additional Coverage is not subject to the Limits of Insurance under **SECTION I - PROPERTY.**

**32. Marring and Scratching**

The following is added to **SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions**:

**Marring and Scratching**

**(1)** You may extend the insurance that applies to Business Personal Property to apply to damage caused directly by sudden and accidental marring and scratching of:

**(a)** Your "stock";

**(b)** Your printing plates; or

**(c)** Property of others that is in your care, custody or control.

**(2)** This Coverage Extension does not apply to:

**(a)** Property at other than the described premises; or

**(b)** Personal Property in transit.

**(3)** Payment under this Coverage Extension is included within Limit of Insurance applicable to your Business Personal Property.

**33. Money Orders and Counterfeit Money**

**SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, j. Money Orders and Counterfeit Money**, paragraph **(3)**, is replaced by the following:

**(3)** The most we will pay for any loss under this Additional Coverage is $25,000.

**34. Newly Acquired or Constructed Property**

**SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions, a. Newly Acquired or Constructed Property**, paragraphs, **(2)(c)** and **(3)** are replaced by the following:

**(2) Business Personal Property**

**(c)** The most we will pay for loss or damage under this Extension is $1,000,000 at each premises.

**(3) Business Income and Extra Expense**

You may extend the insurance that applies to Business Income and Extra Expense to apply to property at any location you acquire. The most we will pay for loss or damage under this Extension is $500,000 at each premise.

**35. Ordinance or Law - Demolition Cost and Increased Cost of Construction**

**SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, l. Ordinance or Law, (5) Loss Payment**, paragraph **(d)** is replaced by the following:

**(d)** The most we will pay for the total of all covered losses for Demolition Cost and Increased Cost of Construction for each building described in the Declarations is $50,000 or the amount shown in the Additional Property Schedule. If a damaged building(s) is covered under a Blanket Limit of Insurance and the Blanket Limit of Insurance applies to more than one building or item of property, then the most we will under this Additional Coverage, for each building, is $50,000, or the amount shown in the Additional Property Coverage Schedule.

**36. Ordinance or Law - Increased Period of Restoration**

**a.** The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, l. Ordinance or Law,** paragraph **(4) Coverage:**

If a Covered Cause of Loss occurs to property at the premises described in the Declarations, coverage is extended to include the amount of actual and necessary loss you sustain during the increased period of "suspension" of "operations" caused by or resulting from the enforcement of any ordinance or law that:

**(a)** Regulates the construction or repair of any property;

**(b)** Requires the tearing down of parts of any property not damaged by a Covered Cause of Loss; and

**(c)** Is in force at the time of loss.

However, coverage is not extended under this endorsement to include loss caused by or resulting from the enforcement of any ordinance or law which requires:

**(d)** The demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungi", wet or dry rot or bacteria; or

**(e)** Any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungi", wet or dry rot or bacteria.

**b.** The following is added to **SECTION I - PROPERTY, A. Coverage 5. Additional Coverages, I. Ordinance or Law, (5) Loss Payment**, paragraph **(c)**:

The most we will pay for loss under Increased Period of Restoration in any one occurrence is $100,000 for each described building shown in the Declarations or the amount shown in the Additional Property Coverage Schedule. If a damaged building(s) is covered on a blanket Limit of Insurance which applies to more than one building or item of property, then the most we will pay for Increased Period of Restoration for each described building in any one occurrence is $100,000.

**37. Ordinance or Law (Tenant's Improvement Extension)**

**a.** The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, I. Ordinance or Law, (4) Coverage:**

**(a)** Coverage provided under paragraphs **(a)**, **(b)** and **(c)** above applies to tenant's improvements and betterments but only if a limits of Insurance is shown in the Declarations for Business Personal Property. Business Personal Property must be insured on a replacement cost basis.

**(b)** This extension is provisional and excess to any other valid insurance for tenant's improvements and betterments whether collectible or not.

**b.** The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, I. Ordinance or Law, (5) Loss Payment**, paragraph **(c)**:

Regardless of the number of locations insured or buildings involved, the most we will pay for any loss to tenant's improvements and betterments under this Additional Coverage in any one occurrence is $50,000.

**38. Outdoor Property**

**SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions, c. Outdoor Property,** paragraph **(3)** is replaced by the following:

**(3)** Regardless of the number of described premises involved, the most we will pay for loss or damage under this Extension, including debris removal expense, is $25,000, but not more than $2,500 for any one tree, shrub or plant.

**39. Personal Effects**

**SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions, d. Personal Effects,** paragraph **(3)** is replaced by the following:

**(3)** The most we will pay for loss or damage under this Extension is $50,000 at each described premises.

**40. Portable Electronic Devices Coverage Worldwide**

The following is added to **SECTION I - PROPERTY**, **A. Coverage, 5. Additional Coverages**:

**Portable Electronic Devices Coverage Worldwide**

**(1)** We will pay for loss or damage caused by or resulting from a Covered Cause of Loss to portable electronic devices while anywhere in the world, including while "in transit".



OBCH332709      1304500

**(2)** For the purpose of this Additional Coverage, the following is added to **SECTION I - PROPERTY, G. Property Definitions**:

Portable electronic devices includes laptops, tablets, e-readers, smartphones or other lightweight, hand-held or wearable devices capable of storing, retrieving and processing data.

**(3)** This coverage is provided when the property is owned by you or owned by others when in your car or your "employees" care, custody or control, subject to **SECTION I - PROPERTY, E. Property Loss Conditions, 5. Loss Payment,** paragraph **d.(3)(b).**

**(4)** We will not pay for loss or damage to portable electronic devices when caused by, resulting from, or arising out of "theft" or unexplained loss when the property is checked baggage with a carrier for transit.

**(5)** The provisions for a Business Income loss will be governed by the terms of **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages f. Business Income** except:

**(a)** There is no requirement that a loss occur within 1,000 feet or at the described premises as stated in paragraph **(1)(a)**; and

**(b)** The following are not included under this Additional Coverage:

**(i)** Continuing normal operating expenses incurred, including "payroll expense";

**(ii)** Extended Business Income.

**(6)** The provisions for Extra Expense loss will be governed by the terms of **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, g. Extra Expense** except:

**(a)** There is no requirement that a loss occur within 1,000 feet or at the described premises as stated in paragraph **g.(1)** and **g.(2)**.

**(7)** **Limitations**, item **b.** does not apply to this Additional Coverage.

**(8)** **SECTION I - PROPERTY, B. Exclusions, 5. Business Income and Extra Expense Exclusions,** paragraph **(4)** does not apply to this Additional Coverage.

**(9)** Regardless of the number of lost or damaged portable electronic devices, the most we will pay per occurrence including actual loss of Business Income you sustain and necessary Extra Expense you incur, is $25,000.

**(10)** The amount payable under this Additional Coverage is additional insurance.

**41. Precious Metal Theft Payment Changes**

**SECTION I - PROPERTY, A. Coverage, 4. Limitations**, paragraph **c.** is replaced by the following:

**c.** For loss or damage by "theft", the following types of property are covered only up to the limits shown below:

**(1)** $10,000 for furs, fur garments and garments trimmed with fur.

**(2)** $10,000 for jewelry, watches, watch movements, jewels, pearls, precious and semi-precious stones

This limit does not apply to jewelry and watches worth $250 or less per item.

**(3)** $50,000 for bullion, gold, silver, platinum and other precious alloys or metals.

**42. Personal Property in Transit**

**SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions, i. Personal Property in Transit**, paragraph **(5)** is replaced by the following:

**(5)** The most we will pay for loss or damage under this Coverage Extension is $50,000.

**43. Sales Representative Samples**

**SECTION I - PROPERTY, 5. Additional Coverages, y. Sales Representative Samples**, paragraph **(3)** is replaced by the following:

**(3)** The most we will pay for any loss or damage under this Additional Coverage is $25,000.

**44. Soft Costs**

The following is added to **SECTION I - PROPERTY, A. Coverage, 6 Extensions**: **Soft Costs**

**(1)** We will pay the actual "soft cost expenses" that arise out of a delay in the construction, erection or fabrication of a Covered Building that

is listed in **SECTION I - PROPERTY**, **A. Coverage**, **1. Covered Property**, paragraph **a.(6)** resulting from direct physical loss or damage to that Covered Building from a Covered Cause of Loss.

**(2)** We will only pay the necessary "soft cost expenses" that are over and above those costs that would have been incurred had there been no delay.

**(3)** The most we will pay under this Extension in any one occurrence is $10,000.

**(4)** "Soft cost expenses" means additional:

**(a)** Realty taxes and other assessments that you incur for the period of time that construction has been extended beyond the projected completion date;

**(b)** Interest on money borrowed to finance construction, remodeling, renovation or repair; and

**(c)** Advertising, public relations and promotional expenses.

**45. Spoilage**

The following is added to **SECTION I - PROPERTY**, **A. Coverage**, **5. Additional Coverages**:

The following provisions (**a.** through **g.** inclusive) apply to the insurance provided by this Additional Coverage:

**a.** For the purpose of this Additional Coverage the following is added to **SECTION I - PROPERTY**, **A. Coverage**, **1. Covered Property**:

Covered Property means "perishable goods" at the insured locations, if the "perishable goods" are:

**a.** Owned by you and used in your business; or

**b.** Owned by others and in your care, custody or control except as otherwise provided in **SECTION I - PROPERTY**, **E. Property Loss Conditions**, **5. Loss Payment**, paragraph **d.(3)(b)**.

**b.** The following is added to **SECTION I - PROPERTY**, **A. Coverage**, **2. Property Not Covered**:

Property located:

**(1)** On the exterior of buildings;

**(2)** In the open; or

**(3)** In vehicles.

**c.** **SECTION I - PROPERTY**, **A. Coverage**, **3. Covered Causes Of Loss** is replaced by the following:

**3. Covered Causes of Loss**

Subject to the exclusions described in item **e.** of this Additional Coverage, Covered Causes of Loss means the following:

**a.** Breakdown or Contamination, meaning:

**(1)** Change in temperature or humidity resulting from mechanical breakdown or mechanical failure of refrigerating, cooling or humidity control apparatus or equipment.

Coverage applies only while such apparatus or equipment is at the described premises shown in the Schedule; or

**(2)** Contamination by a refrigerant. Coverage applies only while the refrigerating apparatus or equipment is at the described premises.

Mechanical breakdown and mechanical failure do not mean power interruption, regardless of how or where the interruption is caused and whether or not the interruption is complete or partial.

**b.** Power Outage, meaning change in temperature or humidity resulting from complete or partial interruption of electrical power, either on or off the described premises, due to conditions beyond your control.

**d.** **SECTION I - PROPERTY**, **A. Coverage**, **6. Coverage Extensions** does not apply.

The **Hanover**
Insurance Group™

OBCH332709      1304500

e. **SECTION I - PROPERTY, B. Exclusions** paragraph **1.**, does not apply to this Coverage Extension except for:

**(1) b.,** Earth Movement;

**(2) c.,** Governmental Action;

**(3) d.,** Nuclear Hazard;

**(4) f.,** War and Military Action; and

**(5) g.,** Water.

**(6)** For the purposes of this additional coverage, the following exclusions are added to **SECTION I - PROPERTY, B. Exclusions,** paragraph **2:**

We will not pay for loss or damage caused by or resulting from:

**1.** The disconnection of any refrigerating, cooling or humidity control system from the source of power.

**2.** The deactivation of electrical power caused by the manipulation of any switch or other device used to control the flow of electrical power or current.

**3.** The inability of an electrical utility company or other power source to provide sufficient power due to:

**a.** Lack of fuel; or

**b.** Governmental order.

**4.** The inability of a power source at the described premises to provide sufficient power due to lack of generating capacity to meet demand.

**5.** Breaking of any glass that is a permanent part of any refrigerating, cooling or humidity control unit.

f. **Conditions**

For the purpose of this Additional Coverage, **SECTION I - PROPERTY, E. Property Loss Conditions, 5. Loss Payment**, paragraph **d.** is replaced by the following:

**d.** We will determine the value of Covered Property as follows:

**(1)** For "perishable goods" you have sold but not delivered, at the selling price less discounts and expenses you otherwise would have had;

**(2)** For other "perishable goods", at actual cash value.

f. Regardless of the number of insured locations involved, the most we will pay under this Additional Coverage for loss or damage in any one occurrence is $25,000. This Additional Coverage is not subject to **SECTION I - PROPERTY, C. Limits of Insurance.**

**46. Temporary Relocation of Property**

The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages:**

**Temporary Relocation of Property**

**(1)** We will pay for loss of or damage to Covered Property from a Covered Cause of Loss while it is away from the described premises, if it is being stored temporarily at a location you do not own, lease or operate while the described premises is being renovated or remodeled.

**(2)** This coverage applies for 90 days after the property is first moved, but does not extend past the date on which this policy expires.

**(3)** The most we will pay under this Additional Coverage is $50,000.

**(4)** The amount payable under this Additional Coverage is additional insurance.

**47. Tenant Signs**

**SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, t. Tenant Signs,** paragraph **(4)** is replaced by the following:

**(4)** The most we will pay for loss or damage in any one occurrence is $25,000 regardless of the number of locations or buildings involved.

**48. Unauthorized Business Credit Card Use**

**SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, aa. Unauthorized Business Credit Card Use,** paragraph **(5)** is replaced by the following:

**(5)** The most we will pay for any loss including legal expenses, under this

Additional Coverage is $10,000 per occurrence.

**49. Underground Water Seepage**

The following is added to **SECTION I - PROPERTY**, **A. Coverage, 5. Additional Coverages**:

**Underground Water Seepage**

(1) We will pay for direct physical loss or damage to Covered Property at the described premises caused by or resulting from water under the ground surface pressing on, or flowing or seeping through:

    (a) Foundations, walls, floor or paved surfaces;

    (b) Basements, whether paved or not; or

    (c) Doors, windows or other openings in any building or other structure.

    **THIS IS NOT FLOOD INSURANCE OR PROTECTION FROM AN INUNDATION OF SURFACE WATER, HOWEVER CAUSED.**

    This coverage is intended to provide insurance for damage by subterranean water when such event is a localized incident - not part of a general, widespread "flood" water event.

    We will not pay for loss or damage to property when the subterranean water causing the Underground Water Seepage is itself caused by any "flood" or general flooding conditions - including but not limited to those enumerated under **SECTION I - PROPERTY, B. Exclusions**, paragraph **1.g. Water**.

(2) **SECTION I - PROPERTY, B. Exclusions**, paragraphs **g. Water (4)** is deleted.

(3) The most we will pay for loss in any one occurrence under this Additional Coverage is $100,000.

(4) We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds $1,000. This deductible is to apply separately to:

    (a) Each building, including personal property therein;

    (b) Personal property in each building if no coverage is provided on the containing building; and

    (c) Personal property in the open.

    The aggregate amount of this deductible in any one occurrence shall not exceed $5,000.

    We will then pay the amount of loss or damage in excess of the deductible up to the applicable Limit of Insurance.

(5) **Special Underground Water Seepage Exclusions**

    (a) The **Exclusions** and **Limitations** sections of **SECTION I - PROPERTY** apply to this Additional Coverage except as provided under paragraph **(b)** below.

    (b) To the extent that a part of **SECTION I - PROPERTY, B. Exclusions**, paragraph **1.g. Water** might conflict with this Additional Coverage, that part of the **Water** Exclusion does not apply.

    (c) This Additional Coverage does not apply to loss or damage resulting from your failure to:

        (i) Keep a sump pump or its related equipment in proper working condition; or

        (ii) Perform the routine maintenance or repair necessary to keep a sewer or drain free from obstructions.

**50. Unnamed Locations**

The following is added to **SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions**:

**Unnamed Locations**

**a. Personal Property and Computer Equipment**

(1) You may extend the insurance that applies to Business Personal Property and "Computer Equipment" to apply to direct physical loss or damage to Business Personal Property and "Computer Equipment" caused by or resulting from a Covered Cause of Loss while such property is located at a "client or virtual office premises".

(2) This Coverage Extension also applies to Business Personal Property and "Computer Equipment" that are:

    (a) Owned by an "employee";

The
**Hanover**
Insurance Group™

OBCH332709    1304500

and

**(b)** Used for your business;

While such property is located at a "client or virtual office premises" and sustains direct physical loss or damage caused by or resulting from a Covered Cause of Loss.

**(3)** This Coverage Extension does not apply to property otherwise covered under the following Additional Coverages or Coverage Extensions:

**(a)** Accounts Receivable;

**(b)** Fine Arts;

**(c)** Personal Property Off Premises

**(d)** Personal Property in Transit

**(e)** Valuable Papers and Records (Other Than Electronic Data)

**(f)** Portable Electronic Devices Coverage Worldwide

**(g)** Worldwide Property Off Premises

**(4)** The most we will pay under this Coverage Extension in any one occurrence is $10,000 regardless of the number of locations involved. The most we will pay for all covered losses under this Coverage Extension during each separate 12 month period of this policy is $25,000.

This Coverage Extension is not subject to **SECTION I - PROPERTY, C. Limits of Insurance**.

**b. Business Income and Extra Expense**

**(1)** If this policy provides for Business Income and Extra Expense coverages, you may extend the insurance that applies to the actual loss of Business Income (not including Extended Business Income) you sustain and necessary Extra Expense you incur due to the "suspension" of your business activities occurring at a "client or virtual office premises" during the "period of restoration". The "suspension" must be caused by direct physical loss or damage caused by or resulting from a Covered Cause of Loss at a "client or virtual office premises".

**(2)** We will reduce the amount of your Business Income loss, other than Extra Expense, to the extent that you can resume operations, in whole or in part, by using any other available:

**(a)** Source of materials;

**(b)** Outlet for your products.

**(3)** If you do not resume operations or do not resume operations as quickly as possible, we will pay based on the length of time it would have taken to resume operations as quickly as possible.

**(4)** The coverage period for Business Income under this Coverage Extension:

**(a)** Begins 24 hours after the time of direct physical loss or damage caused by or resulting from a Covered Cause of Loss at the premises of a "client or virtual office premises"; and

**(b)** Ends on the date when the property at the premises of the "client or virtual office premises" should be repaired, rebuilt or replaced (to the extent necessary to resume operations) with reasonable speed and similar quality or 12 months immediately following the date of direct physical loss or damage, whichever is shorter.

**(5)** The Business Income coverage period as stated in paragraph **(a)** above does not include any increased period required due to the enforcement of any ordinance or law that:

**(a)** Regulates the construction, use or repair, or requires the tearing down of any property; or

**(b)** Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

The expiration date of this policy will not reduce the Business Income coverage period.

**(6)** The most we will pay under this Coverage Extension in any one occurrence is $10,000 regardless of the number of locations involved. The most we will pay for all covered losses under this Coverage Extension during each separate 12 month period of this policy is $50,000.

This Coverage Extension is not subject to **SECTION I - PROPERTY, C. Limits of Insurance**.

**(7)** The definition of Business Income contained in the Loss of Business Income Additional Coverage applies to this Coverage Extension.

**c.** For purposes of this Coverage Extension, "client or virtual office premises" means the interior of that portion of any building occupied by an "employee", including

**(1)** An "employee's" residence; or

**(2)** A client's business location located anywhere in the world.

**51. Utility Services (Including Overhead Transmission Lines)**

**a.** **SECTION I - PROPERTY**, **A. Coverage, 5. Additional Coverages, bb. Utility Services**, paragraphs **(1)** and **(2)** are replaced by the following:

**(1)** We will pay for loss of or damage to Covered Property caused by an interruption in service to the described premises. The interruption must result from direct physical loss or damage by a Covered Cause of Loss to property not on the described premises that provides the services shown in paragraph **(3)** below.

The most we will pay for loss in any one occurrence under this Additional Coverage is $50,000 at each described premises or the Limit of Insurance shown in the Additional Property Coverage Schedule.

**(2)** We will pay for the actual loss of Business Income you sustain and necessary Extra Expense you incur caused by the interruption of service at the described premises. The interruption must result from direct physical loss or damage by a Covered Cause of Loss to property not on the described premises that provides the services shown in paragraph **(3)** below.

We will only pay for loss you sustain after the first 24 hours following the direct physical loss or damage to the property described above.

The most we will pay for loss in any one occurrence under this Additional Coverage is $50,000 at each described premises or the Limit of Insurance shown in the Additional Property Coverage Schedule.

**b.** **SECTION I - PROPERTY**, **A. Coverage, 5. Additional Coverages, bb. Utility Services**, paragraph **(4)** is deleted.

**52. Worldwide Property Off Premises**

The following is added to **SECTION I - PROPERTY**, **A. Coverage, 6**. **Coverage Extensions**:

**Worldwide Property Off-Premises**

**(1)** You may extend the insurance that applies to your Business Personal Property and Personal Property of Others to apply to that property while it is temporarily outside the coverage territory if it is:

**(a)** Temporarily at a location you do not own, lease or operate;

**(b)** Temporarily on display or exhibit at any fair, trade show or exhibition;

**(c)** Samples of your "stock" in trade in the custody of your sales representatives; or

**(d)** While "in transit" between the described premises and a location described in **(a), (b)** or **(c)** above.

**(2)** The most we will pay for loss or damage under this Extension is $50,000.

**(3)** This Extension provides an additional amount of insurance.



OBCH332709     1304500

## B. Blanket Coverages

### 1. Accounts Receivable

**SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions, f. Accounts Receivable,** paragraph **(2)**, is replaced by the following:

**(2)** The most we will pay under this Coverage Extension for loss or damage in any one occurrence at the described premises or away from the described premises is subject to the Blanket Coverage Limit of Insurance, or the amount shown in the Additional Property Coverage Schedule.

### 2. Backup or Overflow of a Sewer, Drain or Sump

The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages**:

**Backup or Overflow of a Sewer, Drain or Sump**

**(1)** We will pay for direct physical loss or damage to Covered Property at the described premises, solely caused by or resulting from water or waterborne material carried or moved by water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment. The term drain includes a roof drain and its related fixtures.

**(2)** For the purpose of this Additional Coverage only, **SECTION I - PROPERTY, B. Exclusions,** paragraph **g. Water (3)** is deleted.

**(3)** Regardless of the number of insured locations involved, the most we will pay under this Additional Coverage for loss or damage in any one occurrence is subject to the Blanket Limit of Insurance or the amount shown in the Additional Property Coverage Schedule.

**(4) Special Sewer Backup Exclusion**

We will not pay for:

**(a)** Loss or damage from water or other materials that back-up or overflow from any sewer or drain, sump, sump pump or related equipment when it is caused by or results from any "flood", regardless of the proximity of the back-up or overflow to the "flood" condition; or

**(b)** Failure to keep a sump pump or

its related equipment in proper working condition; or

**(c)** Failure to perform routine maintenance or repair necessary to keep a sewer or drain free from obstructions.

### 3. Computer Equipment

**SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, r. Computer Equipment, paragraph (6)** is replaced by the following:

**(6)** Regardless of the number of insured locations involved, the most we will pay for loss or damage under this Additional Coverage to property described in paragraphs **(1)** and **(2)** above in any one occurrence at insured locations is subject to the Blanket Coverage Limit of Insurance, or the amount shown in the Additional Property Coverage Schedule.

The most we will pay for Extra Expense is $5,000 or the amount shown in the Additional Property Coverage Schedule in any one occurrence.

This Additional Coverage is not subject to **SECTION I - PROPERTY, C. Limits of Insurance.**

### 4. Debris Removal

**SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, a. Debris Removal,** paragraph **(4),** is replaced by the following:

**(4)** We will pay up to the blanket limit of insurance for debris removal expense, for each location, in any one occurrence of physical loss or damage to Covered Property, if one or both of the following circumstances apply:

**(a)** The total of the actual debris removal expense plus the amount we pay for direct physical loss or damage exceeds the Limit of Insurance on the Covered Property that has sustained loss or damage.

**(b)** The actual debris removal expense exceeds 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

Therefore, if Paragraphs **(4)(a)** and/or **(4)(b)** above, apply, our total payment for direct physical loss or damage and debris removal expense may reach but will never exceed the Limit of Insurance on the Covered Property that has sustained loss or damage, plus the blanket limit of insurance.

5. **Valuable Papers and Records (Other Than Electronic Data)**

   **SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions, e. Valuable Papers and Records (Other Than Electronic Data)**, paragraph **(3)** is replaced by the following:

   **(3)** Regardless of the number of locations involved, the most we will pay under this Coverage Extension for loss or damage in any one occurrence at the described premises is subject to the Blanket Limit of Insurance, or the amount shown in the Additional Coverage Schedule.

ALL OTHER TERMS, CONDITIONS, AND EXCLUSIONS REMAIN UNCHANGED.

**The Hanover**
Insurance Group™

OBCH332709     1304500

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## ASSOCIATES AND FAMILY MEMBERS ADDITIONAL COVERAGE ENDORSEMENT

This endorsement modifies insurance provided under the following:

DATA BREACH COVERAGE FORM

The following Additional Coverage is added to **SECTION A - COVERAGES** of the Data Breach Coverage Form:

**A.  ASSOCIATES AND FAMILY MEMBERS ADDITIONAL COVERAGE**

As described in Paragraphs **1.** and **2.** below, we will extend certain **Data Breach Covered Services** to your "associates" and to their "family members" whose "private personal data" under the circumstances described below. This Additional Coverage does not apply to a "data breach" involving information owned or controlled by you.

**1.** An "associate" or "family member" whose "private personal data" is lost or stolen by circumstances such as the loss of a credit card, debit card, ATM card, checkbook, driver's license, or passport; or the loss of a wallet, purse, or briefcase containing any of the foregoing, may contact our Designated Service Provider for the Fraud Alert service described in **Section A - Coverages,** paragraph **1.a.(3)** of the Data Breach Coverage Form.

**2.** An "associate" or "family member" who, as a result of loss or theft of "private personal data" described in Paragraph **1.** above, becomes a victim of "identity theft" or "account takeover", may contact our Designated Service Provider for the Identity Restoration Case Management services described in **Section A - Coverages,** paragraph **1.a.(4)** of the Data Breach Coverage Form.

We will provide these services for a period of one year following the data we are notified of the initial loss of "private personal data".

**B.  DEFINITIONS**

Under **Section F - Definitions**, Paragraph

**1. Account Takeover** is replaced with the following:

**1. Account Takeover**

"Account takeover", as respects "associates" or "family members", means the takeover by a third party of one or more existing deposit accounts, credit card accounts, debit card accounts, ATM cards, or lines of credit in the name of an "associate" or "family member".

"Account takeover", as respects "associates" or "family members", includes the unauthorized takeover of one or more of the "associate's" existing deposit accounts, credit card accounts, debit card accounts, ATM cards, or lines of credit by a "family member".

Under **Section F - Definitions**, the following Definitions are added:

**1.** "Associate" means an employee of the business insured under this policy.

**2.** "Family Member" means:

**a.** an "associate's" spouse, or Registered Domestic Partner, or the legal equivalent thereof; or

**b.** a relative under 23 years of age who is a dependent of the "associate".

Includes copyrighted material of Insurance Services Office, Inc., with its permission



OBCH332709    1304500

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ILLINOIS CHANGES - DATA BREACH COVERAGE FORM

This endorsement modifies insurance provided under the following:

DATA BREACH COVERAGE FORM

**A. SECTION E - CONDITIONS**, paragraph **11.** is replaced by the following:

**11. Cancellation and Non-Renewal:**

    **a.** If we decide to cancel this Coverage Part in the first 60 days, we will mail:

        **(1)** 10 days' written notice of cancellation for nonpayment of premium; or

        **(2)** 30 days' written notice of cancellation for any other reason.

    If this Coverage Part has been in effect for 60 days or more or is a renewal of a Coverage Part we issued, then we will mail:

        **(3)** 10 days' written notice of cancellation for nonpayment of premium; or

        **(4)** 60 days' written notice of cancellation for one for more of the following reasons:

            **(a)** The Coverage Part was obtained through a material representation;

            **(b)** Any insured violated any of the terms and conditions of the policy;

            **(c)** The risk originally accepted has measurably increased;

            **(d)** Certification is provided to the Director of Insurance in Illinois of the loss of reinsurance by us which provided coverage to us for a substantial part of the underlying risk insured; or

            **(e)** A determination is made by the Director of Insurance in Illinois that the continuation of the policy could place us in violation of the insurance laws of Illinois.

    Cancellation notices will state the reason for cancellation and will be mailed to you and the agent or broker of record at the last addresses known to us. We will maintain proof of mailing on a recognized U.S. Post Office form or a form acceptable to the U.S. Post Office or other commercial mail delivery service.

    **b.** If we decide not to renew this Coverage Part, we will mail or deliver written notice not less than 60 days before the expiration date to the named insured shown in the Declarations and to the agent or broker of record at the last addresses known to us. Notice will provide an explanation of the reason for nonrenewal. We will maintain proof of mailing on a recognized U.S. Post Office form or a form acceptable to the U.S. Post Office or other commercial mail delivery service.

**B. SECTION E - CONDITIONS**, paragraph **2.** is replaced by the following:

**2. Concealment, Misrepresentation Or Fraud**

    **a.** This Coverage Form is void if you or any insured commit fraud or conceal or misrepresent a fact in the process leading to the issuance of this insurance, and such fraud, concealment or misrepresentation is stated in the policy or endorsement or in the written application for this policy and:

        **(1)** Was made with actual intent to deceive; or

        **(2)** Materially affected either our decision to provide this insurance or the hazard we assumed.

    However, this condition will not serve as a reason to void this Coverage Form after the Coverage Form has been in effect for one year or one policy term, whichever is less.

    **b.** This Coverage Form is void if you or any other insured, at any time subsequent to the issuance of this insurance, commit fraud or intentionally conceal or misrepresent a material fact relating to:

        **(1)** This Coverage Form; or

        **(2)** A claim under this Coverage Form.

    **c.** Notwithstanding the limitations stated in **2.a.** above, we may cancel the Coverage Form in accordance with the terms of the Cancellation Condition.

**C.** **SECTION E - CONDITIONS,** paragraph **18.** is replaced by the following:

**18. Appraisal**

If we and you disagree on the amount of net income, operating expense or loss either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of the net income, operating expense and loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will not be binding.

Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

However, we will pay your appraiser's fee and the umpire's appraisal fee, if the following conditions exist:

**c.** You demanded the appraisal; and

**d.** The amount of net income, operating expense and loss, as set by your appraiser, is agreed to by our appraiser or by the umpire.

If there is an appraisal, we will still retain our right to deny the claim; and you will retain your right to file suit against us.

**D.** **SECTION E - CONDITIONS,** Paragraph **5.** is replaced by the following:

**5. Legal Action Against Us**

No one may bring a legal action against us under this insurance unless:

**a.** There has been full compliance with all of the terms of this insurance; and

**b.** The action is brought within two years after the date we first deny the claim in whole or in part.

**E.** The following is added to **SECTION F - DEFINITIONS,** Paragraph **10. Defense Expenses:**

"Defense Expenses" do not include our routine ongoing expenses or overhead such as salaries of our staff or our staff attorneys**.**

**F.** **SECTION E - CONDITIONS** Paragraph **8.** Subparagraph **b.** is replaced by the following**:**

**b.** If there is other insurance covering the same "data breach", other than that described in **a.** above, we will share proportionatley with such other coverage in the benefits or amounts due for Data Breach Services, Data Breach Expense Coverages, and Additional Expense Coverages. We will not pay more than the applicable Limit of Insurance shown in the **SCHEDULE.**

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.



OBCH332709      1304500

| THIS IS A CLAIMS-MADE AND REPORTED COVERAGE ENDORSEMENT. |

# EMPLOYMENT PRACTICES LIABILITY
# INSURANCE COVERAGE ENDORSEMENT - ILLINOIS

Throughout this Coverage Endorsement (hereinafter referred to as "EPL Coverage Endorsement"), the words "you" and "your" refer to the "named insured(s)" shown in the Supplemental Declarations of this EPL Coverage Endorsement and any other person(s) or organization(s) qualifying as a "named insured" under this EPL Coverage Endorsement. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under SECTION III. WHO IS AN INSURED.

Other words and phrases that appear in "quotations" have special meaning. Refer to SECTION VII. DEFINITIONS.

The terms and conditions of the Cancellation Clause of the Common Policy Conditions, 391-1003 are hereby incorporated herein and shall apply to coverage as is afforded by this EPL Coverage Endorsement, unless specifically stated otherwise in an endorsement(s) attached hereto.

## SECTION I. WHAT IS COVERED

### A. Insuring Agreement

1. "We" shall pay those "losses" arising out of "your" "wrongful employment act" against "your" "employees", to which this insurance applies. The "wrongful employment act" must commence or take place after the "original inception date", but before the end of the "EPL coverage period". A "claim" or "suit" for a "wrongful employment act" must be first made against "you" during the "EPL coverage period" or any Extended Reporting Period (if applicable) and reported to "us" pursuant to the terms of this EPL Coverage Endorsement.

2. A "claim" or "suit" by a person or organization seeking damages will be deemed to have been made at the earlier of the following times:
   a. When written notice of such "claim" or "suit" is received and recorded by any "insured" or by "us", whichever comes first; or
   b. When "we" make any settlement in accordance with the terms of this EPL Coverage Endorsement.

### B. Defense

1. "We" have the right and duty to defend and appoint an attorney to defend any "claim" or "suit" brought against any "insured" for a "wrongful employment act" to which this insurance applies, even if the "claim" or "suit" is groundless or fraudulent.

2. "We" have the right to investigate and settle any "claim" or "suit" that "we" believe is proper. "You" shall be entitled to effectively associate in the defense of any "claim".

3. "We" shall pay all reasonable costs "we" ask the "insured" to incur while helping "us" investigate or defend a "claim" or "suit". "We", however, will not pay more than $100 per day for earnings lost by the "insured" because of time taken off from work.

4. "We" shall pay premiums for appeal bonds, or bonds to release property being used to secure a legal obligation, for a covered "suit". "We" shall only pay, however, for bonds valued up to "our" Aggregate EPL Limit of Liability. "We" shall have no obligation to appeal or to obtain these bonds.

5. Payments for "defense costs" are included within the Aggregate EPL Limit of Liability. They are not in addition to the Aggregate EPL Limit of Liability. "Our" duty to defend or to make payment of any "claim" or "suit pursuant to paragraphs 1-4 above, ends after the Aggregate EPL Limit of Liability has been exhausted by payment of "loss", including "defense costs".

**C. Transfer of Control**

1. "You" may take over control of any outstanding "claim" or "suit" previously reported to "us", but only if "we", in "our" sole discretion, decide that you should, or if a court orders "you" to do so.

2. Notwithstanding subsection 1 of this Clause C, in all events, if the Aggregate EPL Limit of Liability is exhausted, "we" will notify "you" of all outstanding "claims" or "suits" and "you" will take over control of the defense. "We" will help transfer control of the "claims" and "suits" to "you".

3. "We" shall take whatever steps are necessary to continue the defense of any outstanding "claim" or "suit" and avoid a default judgment during the transfer of control to "you". If "we" do so, "we" shall not waive or give up any of "our" rights. "You" shall pay all reasonable expenses "we" incur for taking such steps after the Aggregate EPL Limit of Liability is exhausted.

## SECTION II. EXCLUSIONS-WHAT IS NOT COVERED

This insurance does not apply to:

**A. Profit or Advantage**

Any liability arising out of the gaining of any profit or advantage to which an "insured" was not legally entitled. However, to the extent that a "claim" or "suit" is otherwise covered under this EPL Coverage Endorsement, we will defend a "claim" or "suit" asserting that an "insured" gained a profit or advantage to which the "insured" was not legally entitled, until such time as the "insured" is determined to have gained a profit or advantage to which the "insured" was not legally entitled;

**B. Criminal Acts**

Any liability arising out of any dishonest, fraudulent, criminal, or malicious act by or at the direction of any "insured". However, to the extent that a "claim" or "suit" is otherwise covered under this EPL Coverage Endorsement we will defend a "claim" or "suit" asserting a dishonest, fraudulent, criminal or malicious act until such time as the "insured" is determined to have committed such dishonest, fraudulent, criminal or malicious act;

The "wrongful employment act(s)" of an "insured" shall not be imputed to any other "insured" for the purpose of determining the applicability of the foregoing exclusions A and B.

**C. "Property Damage"**

Any liability arising out of "property damage";

**D. "Bodily Injury"**

Any liability arising out of "bodily injury";

**E. Worker's Compensation, Social Security and Unemployment, Disability and Retirement Benefits**

Any liability arising out of any obligation pursuant to any worker's compensation, disability benefits, unemployment compensation, unemployment insurance, retirement benefits, social security benefits or similar law. This exclusion, however, shall not apply to "loss" arising from a "claim" or "suit" for "retaliation";

**F. Contractual Liability**

Any liability arising out of any actual or alleged contractual liability of any "insured" under any express contract or agreement. This exclusion, however, shall not apply to the extent any liability does not arise under such express contract or agreement;

**G. ERISA, COBRA, WARN, OSHA and NLRA**

Any liability arising out of the "insured's" failure to fulfill any responsibility, duty or obligation imposed by the Employment Retirement Income Security Act of 1974 (ERISA), Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA), Worker's Adjustment and Retraining Notification Act, Public Law 100-379 (1988) (WARN), Occupational Safety and Health Act (OSHA), National Labor Relations Act of 1947 (NLRA), any rules or regulations of the foregoing promulgated thereunder, and amendments thereto or any similar provisions of any federal, state, or local statutory or common law. This exclusion, however, shall not apply to "loss" arising from a "claim" or "suit" for "retaliation";



OBCH332709    1304500

## H.  FLSA

Any liability arising out of any obligation under the Fair Labor Standards Act, or any violations of any federal, state, local or foreign statutory law or common law that governs the same topic or subject and any rules, regulations and amendments thereto (except the Equal Pay Act). This exclusion, however, shall not apply to "loss" arising from a "claim" or "suit" for "retaliation";

Any liability arising out of claims for unpaid wages or overtime pay for hours actually worked or labor actually performed by any "employee" of the "insured", for improper payroll deductions or any violations of any federal, state, local or foreign statutory law or common law that governs the same topic or subject and any rules, regulations and amendments thereto.

## I.  Non-Monetary Relief

That part of any "claim" or "suit" seeking any non-monetary relief, including but not limited to: (1) injunctive relief; (2) declaratory relief; (3) disgorgement; (4) job reinstatement; (5) costs or expenses incurred in accommodating any disabled person, pursuant to the Americans with Disabilities Act of 1990 (ADA), including amendments to that law or similar federal, state or local statutory or common law; (6) any liability or costs incurred in connection with any educational, sensitivity or other corporate program, policy or seminar relating to a "claim" or "suit" alleging discrimination or other "wrongful employment act"; or (7) other equitable remedies, including as to all of the above, the cost of compliance therewith; provided, however, if such request for non-monetary relief is part of an otherwise covered "claim" or "suit", "we" will not seek to allocate "defense costs" for the portion of the "claim" or "suit" seeking non-monetary relief;

## J.  Certain "Insureds"

Any "claim" or "suit" brought by any "insured". This exclusion, however, shall not apply to a "claim" or "suit" brought by an "employee" of the "insured", other than an "employee" who is or was a director of the "insured";

## K.  Prior Knowledge

Any liability arising out of incidents, circumstances or "wrongful employment acts", which an "insured", prior to the "original inception date" as shown in the Supplemental Declarations of this EPL Coverage Endorsement, had knowledge or which an "insured" could have reasonably foreseen might result in a "claim" or "suit";

## L.  Prior Notice

Any liability arising out of the facts alleged, or to the same or "related wrongful employment acts" alleged or contained in any "claim" or "suit" which has been reported, or in any circumstances of which notice has been given, under any policy of which this EPL Coverage Endorsement is a renewal or replacement or which it may succeed in time;

## M.  Securities Holder

Any "claim" or "suit" brought by a securities holder of the "insured" in their capacity as such, whether directly, derivatively on behalf of the "insured", or by class action;

## N.  Outside Boards

Any liability arising out of any actual or alleged act or omission of an "insured" serving in any capacity, other than as a director, officer or "employee" of the "insured" entity.

## SECTION III. WHO IS AN INSURED

## A.  Individual

If "you" are shown in the Supplemental Declarations of this EPL Coverage Endorsement as an individual, "you" and "your" spouse are "insureds", only for the conduct of a business of which "you" are the sole owner.

## B.  Corporation

If "you" are shown in the Supplemental Declarations of this EPL Coverage Endorsement as a corporation or organization other than a partnership or joint venture, "you" and "your" "subsidiaries" are "insureds".

## C.  Partnership or Joint Venture

If "you" are shown in the Supplemental Declarations of this EPL Coverage Endorsement as a partnership or joint venture, "you" are an "insured". "Your" partners or co-venturers and their spouses are also "insureds", but only for the conduct of "your" business.

## D.  "Employees"

"Your" "employee", executive officers and directors are "insureds", only for the conduct of "your" business within the scope of their employment or their duties as executive officers or directors.

**E. Extensions**

1. Subject otherwise to the terms hereof, this EPL Coverage Endorsement shall cover "loss" arising from any "claims" or "suits" made against the estates, heirs, or legal representative of deceased individual "insureds", and the legal representatives of individual "insureds", in the event of incompetency, who were individual "insureds" at the time the "wrongful employment acts", upon which such "claims" or "suits" are based, were committed.

2. Subject otherwise to the terms hereof, this EPL Coverage Endorsement shall cover "loss" arising from all "claims" and "suits" made against the lawful spouse (whether such status is derived by reason of statutory law, common law or otherwise of any applicable jurisdiction in the world) of an individual "insured", including a "claim" or "suit" that seeks damages recoverable from marital community property, property jointly held by the individual "insured" and the spouse, or property transferred from the individual "insured" to the spouse; provided, however, that this extension shall not afford coverage for a "claim" or "suit" arising out of any "wrongful employment act" of the spouse, but shall apply only to "claims" or "suits" arising out of any "wrongful employment acts" of an individual "insured", subject to this EPL Coverage Endorsement's terms, conditions and exclusions.

**SECTION IV. LIMIT OF LIABILITY (including "defense costs")**

A. The Aggregate EPL Limit of Liability shown in the Supplemental Declarations of this EPL Coverage Endorsement and the information contained in this section limits the most "we" shall pay for all "loss" arising out of "claims" and "suits" first made against "insureds" during the "EPL coverage period" or Extended Reporting Period (if applicable), regardless of:

1. the number of persons or organizations covered by this EPL Coverage Endorsement; or

2. the number of "claims" made or "suits" brought; or

3. the length of the "EPL coverage period".

B. The Aggregate EPL Limit of Liability is the most "we" shall pay for all "losses" covered under this EPL Coverage Endorsement, including amounts incurred for "defense costs".

C. The Aggregate EPL Limit of Liability for the Extended Reporting Period shall be part of, and not in addition to the Aggregate EPL Limit of Liability for the "EPL coverage period".

D. All "claims" and "suits" arising from the same or "related wrongful employment acts" shall be treated as arising out of a single "wrongful employment act".

E. All "claims" or "suits" arising out of one "wrongful employment act" shall be deemed to be made on the date that the first such "claim" is made or "suit" is brought. All "claims" asserted in a "class action suit" will be treated as arising out of a single "wrongful employment act".

F. Any "claim" or "suit" which is made subsequent to the "EPL coverage period" or Extended Reporting Period (if applicable) which, pursuant to Section VI, Clause D(3) and (4) is considered made during the "EPL coverage period" or Extended Reporting Period shall also be subject to the one Aggregate EPL Limit of Liability stated in the Supplemental Declarations of this EPL Coverage Endorsement.

**SECTION V. DEDUCTIBLE**

"You" shall be responsible for the deductible amount shown in the Supplemental Declarations of this EPL Coverage Endorsement with respect to each "claim" and "suit" and "you" may not insure against it. A single deductible amount shall apply to "loss" arising from all "claims" and "suits" alleging the same "wrongful employment act" or "related wrongful employment acts". Expenses "we" incur in investigating, defending and settling "claims" and "suits" are included in the deductible. The deductible is not included within the Aggregate EPL Limit of Liability.

**SECTION VI. CONDITIONS**

"We" have no duty to provide coverage under this EPL Coverage Endorsement, unless there has been full compliance with all the Conditions contained in this EPL Coverage Endorsement.

**A. Assignment**

The interest of any "insured" is not assignable. "You" cannot assign or transfer "your" interest in this EPL



Coverage Endorsement without "our" written consent attached to the EPL Coverage Endorsement.

### B. Bankruptcy or Insolvency

"Your" bankruptcy, insolvency or inability to pay, will not relieve "us" from the payment of any "claim" or "suit" covered by this EPL Coverage Endorsement.

Under no circumstances will "your" bankruptcy, insolvency, or inability to pay require "us" to drop down, in any way replace, or assume any of "your" obligations with respect to the Deductible provisions of this EPL Coverage Endorsement.

### C. Coverage Territory

"We" cover "wrongful employment acts" in the United States of America, its territories and possessions, Puerto Rico, or Canada, but only if the "claim" is made and the "suit" is brought for such "wrongful employment act" in the United States of America, its territories and possessions, Puerto Rico, or Canada.

### D. Duties in the Event of an Incident, "Claim" or "Suit"

1. If, during the "EPL coverage period", incidents or events occur which "you" reasonably believe may give rise to a "claim" or "suit" for which coverage may be provided hereunder, such belief being based upon either written notice from the potential claimant or the potential claimant's representative; or notice of a complaint filed with EEOC, DOL or OFCCP (or similar federal, state or local agency); or upon a contemporaneously made memorandum of an oral "claim", allegation or threat, "you" shall give written notice to "us" as soon as practicable and either:

    a. anytime during the "EPL coverage period" or the Extended Reporting Period (if applicable); or

    b. within thirty (30) days after the end of the "EPL coverage period" or Extended Reporting Period (if applicable), as long as such "claim" or "suit" is reported no later than thirty (30) days after the date such "claim" or "suit" was first made against an "insured".

2. If a "claim" is made or a "suit" is brought against any "insured", "you" must:

    a. Immediately record the specifics of the "claim" or "suit" and the date received; and

    b. Provide "us" with written notice, as described in subsection 3. below, as soon as practicable.

3. Such written notice of "claim" or "suit" shall contain:

    a. The identity of the person(s) alleging a "wrongful employment act";

    b. The identity of the "insured(s)" who allegedly were involved in the incidents or events;

    c. The date the alleged incidents or events took place; and

    d. The written notice or contemporaneously prepared memorandum referred to above.

    If written notice is given to "us" during the "EPL coverage period" or Extended Reporting Period (if applicable), pursuant to the above requirements, then any "claim" or "suit" which is subsequently made against any "insureds" and reported to "us" alleging, arising out of, based upon or attributable to such circumstances or alleging any "related wrongful employment act" to such circumstances, shall be considered made at the time such notice of such circumstances was first given.

4. If "you" submit written notice of a "claim" or "suit", pursuant to this Clause D, then any "claim" or "suit" that may subsequently be made against an " insured" and reported to "us" alleging the same or a "related wrongful employment act" to the "claim" or "suit" for which such notice has been given shall be deemed, for the purpose of this insurance, to have been first made during the "EPL coverage period" in effect at the time such written notice was first submitted to "us".

5. "You" and any other "insured" must:

    a. Immediately send "us" copies of any demands, notices, summonses or legal papers received in connection with any "claim" or "suit";

    b. Authorize "us" to obtain records and other information;

    c. Cooperate with "us" in the investigation, settlement or defense of the "claim" or "suit";

**d.** Assist "us", upon "our" request, in the enforcement of any right against any person or organization which may be liable to the "insured" because of injury or damage to which this insurance may also apply;

**e.** Take no action, or fail to take any required action, that prejudices the rights of the "insureds" or "us" with respect to such "claim" or "suit".

**6.** No "insureds" will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense without "our" prior written consent.

**E. Transfer of Rights of Recovery Against Others to "Us"**

"You" may be able to recover all or part of a "loss" from someone other than "us". "You", therefore, shall do all that is possible after a "loss" to preserve any such right of recovery. If "we" make a payment under this EPL Coverage Endorsement, that right of recovery shall belong to "us". "You" shall do whatever is necessary, including signing documents, to help "us" obtain that recovery.

**F. Extended Reporting Period**

**1.** Solely with respect to this EPL Coverage Endorsement and except as indicated below, if "you" or "we" shall cancel or refuse to renew this EPL Coverage Endorsement, "you" shall have the right, upon payment of an additional premium of 100% of the full annual premium applicable to this EPL Coverage Endorsement, to buy an Extended Reporting Period Endorsement, providing an Extended Reporting Period of one (1) year following the effective date of the cancellation or nonrenewal, in which to give "us" written notice of "claims" first made or "suits" first brought against the "insureds" during said Extended Reporting Period for any "wrongful employment acts" which take place after the "original inception date" and before the end of the "EPL coverage period" and are otherwise covered by this EPL Coverage Endorsement.

To obtain an Extended Reporting Period Endorsement, "you" must request it in writing and pay the additional premium due, within thirty (30) days of the effective date of cancellation or nonrenewal.

**2.** The Extended Reporting Period Endorsement cannot be canceled by either party, except for nonpayment of premium. The additional premium for the Extended Reporting Period shall be fully earned at the inception of the Extended Reporting Period and this EPL Coverage Endorsement cannot be canceled after such additional premium is paid. If "we" do not receive the written request as required, "you" may not exercise this right at a later date.

**3.** This insurance, provided during the Extended Reporting Period, is excess over any other valid and collectible insurance that begins or continues in effect after the Extended Reporting Period Endorsement becomes effective, whether the other insurance applies on a primary, excess, contingent, or any other basis.

**4.** In the event of cancellation by the Insurer for the non-payment of initial premium for this EPL Coverage Endorsement as indicated in the Supplemental Declarations of this EPL Coverage Endorsement, any monies received by the Insurer as payment for the Extended Reporting Period shall be first applied to such premium owing for the policy. The Extended Reporting Period will not take effect until the premium owing for the policy is paid in full and the premium owing for the Extended Reporting Period is paid promptly when due.

**5.** In the event of a "Transaction", as defined in Clause G below, the "named insured" shall have the right, within thirty (30) days before the end of the "EPL coverage period", to request an offer from "us" of an Extended Reporting Period (with respect to "wrongful employment acts" which take place after the "original inception date" and prior to the effective time of the "Transaction"). We shall offer such Extended Reporting Period pursuant to such terms, conditions, and premium as we may reasonably decide. In the event of a "Transaction", the right to an Extended Reporting Period shall not otherwise exist except as indicated in this paragraph.



OBCH332709      1304500

### G. Change in Control of "Named Insured"

If during the "EPL coverage period":

1. the "named insured" shall consolidate with or merge into, or sell all or substantially all of its assets to any other person or entity or group of persons or entities acting in concert; or

2. any person or entity or group of persons or entities acting in concert shall acquire an amount of the outstanding securities representing more than fifty (50%) percent of the voting power for the election of directors or General Partners of the "named insured" (in the event the "named insured" is a Partnership), or acquires the voting rights of such an amount of such securities; or

3. a General Partner of the "named insured" (in the event the "named insured" is a partnership) withdraws, resigns or is terminated;

(any of the above events herein referred to as the "Transaction"),

then this EPL Coverage Endorsement shall continue in full force and effect as to "wrongful employment acts" occurring after the "original inception date" and prior to the effective time of the "Transaction", but there shall be no coverage afforded by any provision of this EPL Coverage Endorsement for any actual or alleged "wrongful employment acts" occurring after the effective time of the "Transaction". This EPL Coverage Endorsement may not be canceled after the effective time of the "Transaction" and the entire premium for this EPL Coverage Endorsement shall be deemed earned as of such time. "You" shall also have the right to an offer by "us" of an Extended Reporting Period described in Clause F of this EPL Coverage Endorsement.

"You" shall give "us" written notice of the "Transaction" as soon as practicable, but not later than thirty (30) days after the effective date of the "Transaction".

### H. Legal Action Against "Us"

No person or organization has the right to join "us" as a party or otherwise bring "us" into a "suit" asking for damages from an "insured".

### I. Other Insurance

Unless expressly written to be excess over other applicable insurance, it is intended that the insurance provided by this EPL Coverage Endorsement shall be primary.

### J. EPL Coverage Endorsement Changes

This EPL Coverage Endorsement contains all the agreements between "you" and "us" concerning this insurance. The first "named insured" in the Supplemental Declarations of this EPL Coverage Endorsement is authorized to request changes in this EPL Coverage Endorsement. This EPL Coverage Endorsement can only be changed by a written endorsement "we" issue and make part of this EPL Coverage Endorsement.

### K. Representations

Any and all relevant provisions of this EPL Coverage Endorsement may be voidable by "us" in any case of fraud, intentional concealment, or misrepresentation of material fact by any "insured".

### L. Special Rights and Duties of the "Named Insured"

"You" agree that when there is more than one person and/or entity covered under this EPL Coverage Endorsement, the "named insured" in the Supplemental Declarations of this EPL Coverage Endorsement shall act on behalf of all "insureds" as to:

1. Giving of notice of a "claim" or "suit";

2. Giving and receiving notice of cancellation or nonrenewal;

3. Payment of premiums and receipt of return premiums;

4. Acceptance of any endorsements issued to form a part of this EPL Coverage Endorsement; or

5. Purchasing or deciding not to purchase the Extended Reporting Period Endorsement.

### M. Headings

The description in the headings of this EPL Coverage Endorsement are solely for convenience, and form no part of the terms and conditions of coverage.

### SECTION VII. DEFINITIONS

A. "Bodily injury" means physical injury, sickness, or disease, including death resulting therefrom

B. "Claim" means a written demand for money. The term "claim" shall also mean an Equal Employment Opportunity Commission (EEOC), Department of Labor (DOL) or Office of Federal Contract Compliance Program (OFCCP) (or similiar

federal, state or local agency) proceeding or investigation commenced by the filing of a notice of charges, service of a complaint or similar document of which notice has been given to "you". However, in no event, shall the term "claim" include any labor or grievance proceeding, which is subject to a collective bargaining agreement.

**C.** "Class Action Suit" means any suit seeking certification or certified as a class action by a federal or state court.

**D.** "Defense Costs" means reasonable and necessary fees, costs and expenses consented to by "us" resulting solely from the investigation, adjustment, defense and appeal of a "claim" or "suit" against "you". In no event shall "Defense Costs" include "your" or "our" routine on-going expenses, including, without limitation, the salaries of "your" "employees", officers or staff attorneys.

**E.** "Employee" means an individual whose labor or service is engaged by and directed by "you" for remuneration, whether such individual is in a supervisory, co-worker or subordinate position or otherwise, including any part-time, seasonal, and temporary "employees". Independent contractors and individuals who are leased to the "insured " are not "employees".

**F.** "Loss(es)" means damages (including front pay and back pay), judgments, settlements, statutory attorney fees, and "defense costs", however, "loss" shall not include: (1) civil or criminal fines or penalties imposed by law; (2) punitive or exemplary damages; (3) the multiplied portion of multiplied damages; (4) taxes; (5) any amount for which the "insureds" are not financially liable or which are without legal recourse to the "insureds"; (6) employment related benefits, stock options, perquisites, deferred compensation or any other type of compensation other than salary, wages or bonus compensation; (7) matters which may be deemed uninsurable under the law pursuant to which this EPL Coverage Endorsement shall be construed; or (8) any pre-judgment or post-judgment interest on any judgment.

**G.** "Named Insured" means the person or organization designated in the Supplemental Declarations page of this EPL Coverage Endorsement.

**H.** "Original inception date" refers to the date specified in the Supplemental Declarations of this EPL Coverage Endorsement.

**I.** "EPL coverage period" means the period commencing on the effective date shown in the Supplemental Declarations of this EPL Coverage Endorsement. This period ends on the earlier of the expiration date or the effective date of cancellation of this EPL Coverage Endorsement. If "you" became an "insured" under this EPL Coverage Endorsement after the effective date, the "EPL coverage period" begins on the date "you" became an "insured".

**J.** "Property Damage" means physical injury to, or destruction of, tangible property including the loss of use of thereof, or loss of use of tangible property, which has not been physically injured or destroyed.

**K.** "Related Wrongful Employment Act(s)" means "wrongful employment acts" which are the same, related or continuous, or "wrongful employment acts" which arise from a common nucleus of facts. "Claims" or "suits" can allege "related wrongful employment acts", regardless of whether such "claims" or "suits" involve the same or different claimants, "insureds" or legal causes of actions.

**L.** "Retaliation" means a "wrongful employment act" of an "insured" alleged to be in response to, the actual or attempted exercise by an "employee" of any right that such "employee" has under the law. Provided, however, "retaliation" shall not include the "wrongful employment act" of an "insured" alleged to be in response to the threat of or the actual filing of any claim or suit under the Federal False Claims Act or any other federal state, local or foreign "whistleblower law".

**M.** "Subsidiary" means:

  **1.** Any for-profit organization which, on or before the inception of the "EPL coverage period", is more than 50% owned by the "named insured", either directly or indirectly through one or more of its "subsidiaries"; or

  **2.** A for-profit organization which becomes a "subsidiary" during the "EPL coverage period", but only upon the condition that within 90 days of its becoming a "subsidiary", the "named insured" shall have provided "us" with full particulars of the new "subsidiary" and agreed to any additional premium or amendment of the provisions of this EPL Coverage Endorsement required

by "us" relating to such new "subsidiary". Further, coverage as shall be afforded to the new "subsidiary" is conditioned upon the "named insured" paying when due any additional premium required by "us" relating to such new "subsidiary".

An organization becomes a "subsidiary" when the "named insured" owns more than fifty (50%) percent ownership interest in such "subsidiary", either directly, or indirectly through one or more of its "subsidiaries". An organization ceases to be a "subsidiary" when the "named insured" ceases to own more than a fifty (50%) percent ownership in such "subsidiary", either directly, or indirectly through one or more of its "subsidiaries".

In all events, coverage as is afforded under this EPL Coverage Endorsement with respect to a "claim" made or "suit" brought against any "subsidiary" or an "insured" of any "subsidiary", shall only apply to "wrongful employment act(s)" commenced or allegedly commenced after the effective time that such "subsidiary" became a "subsidiary", and prior to the time that such "subsidiary" ceased to be a "subsidiary".

**N.** "Suit" means a civil proceeding or an administrative proceeding seeking money damages, and includes an arbitration, mediation or any other alternative dispute resolution procedure seeking such damages, to which the "insured" must submit or may submit with "our" consent. "Suit" shall not include any civil proceeding or administrative proceeding arising from any labor or grievance dispute which is subject to a collective bargaining agreement.

**O.** "Whistleblower law" means a statute, rule or regulation, which protects an employee against discrimination from his or her employer, if the employee discloses or threatens to disclose to a superior or any governmental agency; or who gives testimony relating to, any action with respect to the employer's operations, which may be a violation of public policy as reflected in legislation, administrative rules, regulations or decisions, judicial decisions, and professional codes of ethics.

**P.** "Wrongful Employment Act(s)" means any actual or alleged:

**1.** wrongful dismissal, discharge or termination (either actual or constructive), including breach of an implied contract;

**2.** harassment (including sexual harassment, whether quid pro quo, hostile work environment or otherwise);

**3.** discrimination (including but not limited to discrimination based upon age, gender, race, color, national origin, religion, sexual orientation or preference, pregnancy or disability);

**4.** "retaliation" (including lockouts);

**5.** employment-related misrepresentation(s) to "your" "employee" or applicant for employment with "you";

**6.** employment-related libel, slander, humiliation, mental anguish, infliction of emotional distress, defamation, or invasion of privacy;

**7.** wrongful failure to employ or promote;

**8.** wrongful deprivation of career opportunity, wrongful demotion or negligent "employee" evaluation, including the giving of negative or defamatory statements in connection with an "employee" reference;

**9.** wrongful discipline;

**10.** failure to grant tenure;

**11.** failure to provide or enforce adequate or consistent corporate policies and procedures relating to any "wrongful employment act"

**12.** negligent supervision or hiring by an "insured", relating to any of the above;

**13.** violation of an individual's civil rights relating to any of the above.

The
**Hanover**
Insurance Group™

OBCH332709      1304500

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

The **Hanover**
Insurance Group™

OBCH332709      1304500

# IMPORTANT NOTICE TO POLICYHOLDERS

No coverage is provided by this policyholder notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverage you are provided. If there is any conflict between the policy and this notice, THE PROVISIONS OF THE POLICY SHALL PREVAIL.

## EMPLOYMENT PRACTICES LIABILITY COVERAGE

The Employment Practices Liability Insurance Coverage is designed to protect small commercial businesses with 25 employees or fewer for liability damages and defense costs due to claims brought by employees who allege employment discrimination, wrongful termination, or sexual harassment.

This coverage will be written on any risk that meets the eligibility criteria under the portfolio Employment Practices Liability Coverage. Such eligibility will be determined by state, class and employee count of individual Insureds.

This coverage will attach to all eligible policies, unless waived. There is a premium charge for this coverage. The coverage provided has an Aggregate Limit of Liability of $25,000 for all losses combined, including defense costs. This coverage has a $5,000 Deductible Amount for each claim. Optional $100,000 and $250,000 Limits of Liability are also available for additional premium charges.

Coverage may be waived by signing and returning the **Employment Practices Liability Coverage Waiver, 391-1205,** to The Hanover Insurance Group, 440 Lincoln Street, Worcester, MA 01653.

Such waiver will continue automatically through subsequent renewals, unless rescinded by the company at your request.

Please contact your agent for additional information or if you have any questions, or if you wish to waive this coverage.

3



OBCH332709      1304500

THIS NOTICE IS PROVIDED IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS NOTICE DOES NOT GRANT COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF COVERAGE UNDER THE POLICY. IF THERE IS A CONFLICT BETWEEN THIS NOTICE AND THE POLICY, THE PROVISIONS OF THE POLICY SHALL APPLY.

## DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

### Schedule

| Disclosure of Premium: | |
|---|---|
| Total Terrorism Premium | $ ▮▮▮ |
| Fire Following Premium | $ ▮▮▮ |
| Other than Fire Following Premium | $ ▮▮▮ |
| | |

**Disclosure of Terrorism Coverage Available**

You are hereby notified that under the Terrorism Risk Insurance Act, as amended, you have a right to purchase insurance coverage for losses resulting from "acts of terrorism" defined in Section 102(1) of the Act as follows:

> Any act or acts that are certified by the Secretary of the Treasury, in consultation with the Secretary of Homeland Security and the Attorney General of the United States, to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States government by coercion.

The premium charged for this coverage is provided in the Schedule above and does not include any charges for the portion of loss that may be covered by the Federal Government as described below.

Your policy may contain other exclusions which could affect your coverage, such as an exclusion for Nuclear Events or Pollution. **Please read your policy carefully**.

**Note for Commercial Property or Commercial Inland Marine Policyholders in Standard Fire States:**

In your state, a terrorism exclusion makes an exception for (and therefore provides coverage for) fire losses resulting from an act of terrorism. If you reject the offer of terrorism coverage, therefore, that rejection does not apply to fire losses resulting from an act of terrorism. Coverage for such fire losses will be provided in your policy. The additional premium just for such fire coverage is shown in the Schedule above.

**Disclosure of Federal Participation in Payment of Terrorism Losses**

The United States government through the Department of the Treasury may pay a share of terrorism losses insured under the federal program under a formula set forth in the Act. Under this formula, the United States government generally reimburses the following percentage of covered terrorism loss which exceeds the statutorily established deductible paid by the insurance company providing the coverage: 85% through 2015; 84% beginning on January 1, 2016; 83% beginning on January 1, 2017; 82% beginning on January 1, 2018; 81% beginning on January 1, 2019; and 80% beginning on January 1, 2020.

**Cap on Insurer Participation in Payment of Terrorism Losses**

The Act contains a $100 billion cap that limits the reimbursement by the United States government as well as insurers' liability for losses resulting from certified acts of terrorism. If the aggregate of insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Act, we will not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion. In such case, insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**Rejection of Terrorism Insurance Coverage**

☐   I decline to purchase terrorism coverage for certified acts of terrorism. I understand that I will have no coverage for losses resulting from certified acts of terrorism.

_____

Applicant/Policyholder Signature

_____

**Print Name**

_____

**Date**

CITIZENS INSURANCE COMPANY OF AMERICA

**Insurance Company**

OBC-H332709-00

**Quote or Policy Number**

**The Hanover**
Insurance Group™

OBCH332709      1304500

## IDENTITY THEFT RESOLUTION SERVICES
### (POWERED BY IDENTITY THEFT 911)

Are you or your resident family members at risk for identity theft?  Do you need expert assistance with an identity-related concern?  IDENTITY THEFT RESOLUTION SERVICES from Identity Theft 911 give you one-on-one assistance in the following situations:

**Access Phone Number: 800-628-0250**

If you or a resident family member suffer the loss or theft of private personal data, contact Identity Theft 911 for proactive guidance that can include Fraud Alert service.  If you wish, a fraud specialist can assist and place a free fraud alert on your credit file to reduce the risk of fraudulent accounts opened in  your name. This service also includes additional preventative measures and one-on-one assistance, depending on the risk.

If you or a resident family member suffer the loss or theft of private personal data, contact Identity Theft 911 for Identity Restoration Case Management services. A fraud specialist will guide you through the process of restoring your identity and handle all of the work, including completed documentation and  notification assistance. Victims also receive one year of credit monitoring, as well as free fraud monitoring of over 1,000 public databases.

**Learn How to Protect Your Identity**

We recommend that you regularly visit The Hanover Insurance Group and Identity Theft 911 comprehensive resource and knowledge library - www.hanover-identitytheft911.com - for the latest media alerts, identity theft tips, in-depth newsletters and much more.

Keep this access information handy in case you ever need help with an identity-related problem.

**Access Phone Number: 800-628-0250**

The Hanover Insurance Group makes no guarantee of results and assumes no liability in connection with either the information or assistance provided by Identity Theft 911.  Any and all external Websites or sources referred to herein are for informational purposes only.

**The Hanover Insurance Group**

BR 91

07

# AVENUES BUSINESSOWNERS DECLARATION

### BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 02/28/2021  NUMBER 05

SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
TO BACK OUT ENDT#4

| Policy Number | Policy Period | | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| | From | To | | |
| OBC-H332709-00 | 07/31/2020 | 07/31/2021 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

**Agent**

847-307-6100
THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

**Policy Period:  Beginning and Ending at 12:01 a.m. Standard Time at the Location of the Described Premises.**

**Business Type:**  CORPORATION (SINGLE).

**Mortgagee/Loss Payable:**

SEE ADDITIONAL INTEREST SCHEDULE

**Business of the Named Insured:**

SERVICE.

In consideration of the premium, insurance is provided the Named Insured with respect to those premises described in the Schedule below and with respect to those coverages and kinds of property for which a specific Limit of Insurance is shown, subject to all of the terms of this policy including forms and endorsements made a part hereof:

## LOCATION SCHEDULE

**Described Premises:**

NO. 001 001    233 N MICHIGAN AVE SUITE 1430, CHICAGO, IL  60601
NO. 002 001    303.E WACKER SUITE 295, CHICAGO, IL  60601

| SECTION I - PROPERTY | LIMITS OF INSURANCE | | | | | |
|---|---|---|---|---|---|---|
| | Loc No  001 | Bldg No 001 | Loc No 002 | Bldg No 001 | Loc No | Bldg No |
| **Deductible Amount** | $          1,000 | | $          1,000 | | $ | |
| **Building Amount Valuation** | NOT COVERED | | NOT COVERED | | | |
| **Business   Personal Property Valuation** | $        201,400            RC | | $        201,400            RC | | | |
| **Business Income** | ACTUAL BUSINESS LOSS SUSTAINED NOT EXCEEDING 12 CONSECUTIVE MONTHS | | | | | |
| **Business Income Waiting Period** | **Excluded / None / 24 hours / 48 hours /72 hours** 24 HOURS | | | | | |
| **SECTION II - LIABILITY** | LIMITS OF INSURANCE | | | | | |

**Liability and Medical Expenses Limits of Insurance:**

Except for Damage to Premises Rented to You,  each paid claim for the following coverages reduce the Amount of Insurance we provide during the applicable annual  period.  Please refer to **SECTION II - LIABILITY, D. LIABILITY  AND MEDICAL  EXPENSES LIMITS OF INSURANCE,** paragraph **4.** of the Businessowners Coverage Form.

| Liability and Medical Expenses Limit | $ 2,000,000 | Per Occurrence | $ 4,000,000 | Aggregate |
|---|---|---|---|---|
| Medical Expenses | $          5,000 | Each Person | | |
| Damage to Premises Rented to You | $        300,000 | All Perils | | |

Date Issued: 04/21/2022                    ORIGINAL/INSURED            Payment Type:  DIRECT BILL

GROUP NAME: TECHNOLOGY - SERVICES            GROUP NUMBER: ZTS

**The Hanover Insurance Group**

BR 91

07

## AVENUES BUSINESSOWNERS DECLARATION

### BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 02/28/2021  NUMBER 05

SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
TO BACK OUT ENDT#4

| Policy Number | Policy Period | | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| | **From** | **To** | | |
| OBC-H332709-00 | 07/31/2020 | 07/31/2021 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

**Agent**

847-307-6100
THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

**Additional Property Coverages and Extensions:**
See attached Schedule for Additional Coverages provided for under this Policy.

Audit Frequency: Annual

**Additional Liability Coverages:**  General Liability Broadening Endorsement
**General Liability Class**: 85219
**Description**:  CUSTOM COMPUTER PROGRAMMING
**Liability Exposure**:  $1,800,000      SALES

**Policy Forms, Endorsements and Optional Coverages Attached:**
See Forms and Endorsements Schedule

```
PREVIOUS PREMIUM IS:                                        $ ▇▇▇▇
NET PREMIUM CHANGE IS:                                      $ ▇▇▇
TOTAL BOP COVERAGE PREMIUM:                                 $ ▇▇▇▇▇
BOP TERRORISM COVG (INCLUDED IN TOTAL POLICY PREMIUM)  $ ▇▇▇▇
     OTHER THAN FIRE FOLLOWING                              $ ▇▇▇▇
      FIRE FOLLOWING                                        $ ▇▇▇
TOTAL UMBRELLA COVERAGE PREMIUM:                            $ ▇▇▇
UMB TERRORISM COVG (INCLUDED IN TOTAL POLICY PREMIUM)  $ ▇▇▇
DEPOSIT PREMIUM:                                            $ ▇▇▇
THE TOTAL ACTUAL PREMIUM:                                   $ ▇▇▇▇
```

Countersigned this _____ Day of _____

_____
**Authorized Representative**

**This Declarations Page with the Policy Contract, Forms and Endorsements, if any,
Complete the Policy.**

Date Issued:  04/21/2022        ORIGINAL/INSURED        Payment Type: DIRECT BILL

**391-1002 08 16**

The Hanover Insurance Group™

BR 91

# ADDITIONAL INTEREST SCHEDULE

**BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 02/28/2021  NUMBER 05**

07

SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
TO BACK OUT ENDT#4

| Policy Number | Policy Period | | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| | From | To | | |
| OBC-H332709-00 | 07/31/2020 | 07/31/2021 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**
COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

**Agent**
847-307-6100
THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

| Name And Address | Interest Type | Location | Building |
|---|---|---|---|
| SILICON VALLEY BANK 3003 TASMAN DRIVE HF 150 SANTA CLARA, CA  95054 | LENDER'S LOSS PAYABLE | 0 0 2 | 0 1 |

Form   391-1014 (7-99)
Date Issued:  04/21/2022                    ORIGINAL/INSURED

**The Hanover** Insurance Group.

BR 91

# ADDITIONAL PROPERTY COVERAGES AND EXTENSIONS

## BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 02/28/2021  NUMBER 05

07      SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
TO BACK OUT ENDT#4

| Policy Number | Policy Period From | To | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| OBC-H332709-00 | 07/31/2020 | 07/31/2021 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

**Agent**

847-307-6100

THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

| Additional Property Coverages & Extensions | Deductible | Amount Included | Additional Amount Increase | Total Limit |
|---|---|---|---|---|
| DEBRIS REMOVAL | NONE | $25,000 | N/A | $25,000 |
| PRESERVATION OF PROPERTY | NONE | 90 DAYS | N/A | 90 DAYS |
| FIRE DEPARTMENT SERVICE CHARGE | NONE | $25,000 | N/A | $25,000 |
| POLLUTANT CLEAN-UP AND REMOVAL | NONE | $25,000 | N/A | $25,000 |
| MONEY ORDERS AND COUNTERFEIT MONEY | $500 | $5,000 | N/A | $5,000 |
| FORGERY OR ALTERATION | $500 | $25,000 | N/A | $25,000 |
| GLASS EXPENSES | $250 | INCLUDED | N/A | INCLUDED |
| REWARDS ARSON, THEFT AND VANDALISM | NONE | $10,000 | N/A | $10,000 |
| TENANT SIGNS | $500 | $5,000 | N/A | $5,000 |
| FIRE PROTECTION EQUIPMENT RECHARGE | NONE | $25,000 | N/A | $25,000 |
| INSTALLATION FLOATER | $1,000 | $5,000 | N/A | $5,000 |
| FINE ARTS | $500 | $10,000 | N/A | $10,000 |
| FENCE AND WALLS | SEE BUILDING AND CONTENTS DEDUCTIBLE | INCLUDED | N/A | INCLUDED |
| SALES REPRESENTATIVE SAMPLES | $1,000 | $5,000 | N/A | $5,000 |
| LEASEHOLD INTEREST (TENANT'S ONLY) | NONE | $10,000 | N/A | $10,000 |
| UNAUTHORIZED BUSINESS CREDIT CARD USE | NONE | $5,000 | N/A | $5,000 |
| UTILITY SERVICES | | | N/A | |
|   DIRECT DAMAGE | $500 | $10,000 | N/A | $10,000 |
|   BUSINESS INCOME | 24 HOURS | $5,000 | N/A | $5,000 |
| DEFERRED PAYMENTS | NONE | $5,000 | N/A | $5,000 |
| NEWLY ACQUIRED OR CONSTRUCTED PROPERTY | | 180 DAYS | N/A | 180 DAYS |
|   BUILDINGS | $500 | $1,000,000 | N/A | $1,000,000 |
|   PERSONAL PROPERTY | $500 | $500,000 | N/A | $500,000 |
|   BUSINESS INCOME AND EXTRA EXPENSE | SEE WAITING PERIOD | $250,000 | N/A | $250,000 |
| OUTDOOR PROPERTY - TREES, SHRUBS AND PLANTS-$1,000 EACH ITEM | $500 | $10,000 | N/A | $10,000 |

Form  391-1018  (7-02)
Date Issued:  04/21/2022

The **Hanover** Insurance Group™

BR 91

# ADDITIONAL PROPERTY COVERAGES AND EXTENSIONS

## BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 02/28/2021  NUMBER 05

07      SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
TO BACK OUT ENDT#4

| Policy Number | Policy Period From | To | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| OBC-H332709-00 | 07/31/2020 | 07/31/2021 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

**Agent**

847-307-6100

THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

| Additional Property Coverages & Extensions | Deductible | Amount Included | Additional Amount Increase | Total Limit |
|---|---|---|---|---|
| PERSONAL EFFECTS | $500 | $10,000 | N/A | $10,000 |
| INVENTORY AND LOSS APPRAISAL | NONE | $10,000 | N/A | $10,000 |
| KEY REPLACEMENT AND LOCK REPAIR | NONE | $1,000 | N/A | $1,000 |
| APPURTENANT STRUCTURE | $500 | $50,000 | N/A | $50,000 |
| PERSONAL PROPERTY IN TRANSIT | $1,000 | $10,000 | N/A | $10,000 |
| EXTENDED BUSINESS INCOME | | 30 DAYS | N/A | 30 DAYS |
| EMPLOYEE THEFT INCLUDING ERISA COMPLIANCE | $1,000 | $10,000 | N/A | $10,000 |
| COMMERCIAL TOOLS AND SMALL EQUIP | $500 | $5,000 | N/A | $5,000 |
| PERSONAL PROPERTY OFF PREMISES | $1,000 | $50,000 | N/A | $50,000 |
| BUSINESS INCOME FROM DEPENDENT PROPERTIES | 72 HOURS | $5,000 | N/A | $5,000 |
| TERRORISM | SEE BUILDING AND CONTENTS DEDUCTIBLE | SAME AS PROPERTY LIMITS OF INSURANCE IF COVERED | N/A | SAME AS PROPERTY LIMITS OF INSURANCE IF COVERED |
| INTERRUPTION OF COMPUTER OPERATIONS | SEE WAITING PERIOD | $10,000 | N/A | $10,000 |
| BUSINESS PERSONAL PROPERTY TEMPORARILY IN PORTABLE STORAGE UNITS | $500 | $25,000 | N/A | $25,000 |
| CIVIL AUTHORITY | 72 HOURS | 4 WEEKS | N/A | 4 WEEKS |
| COMPUTER AND FUNDS TRANSFER FRAUD | $500 | $5,000 | N/A | $5,000 |
| LIMITED COVERAGE FOR FUNGI, WET ROT, OR DRY ROT | $500 | $50,000 | N/A | $50,000 |
| PAVED SURFACES | $500 | $25,000 | N/A | $25,000 |
| TENANT BUILDING COVERAGE - REQUIRED BY LEASE | $500 | $25,000 | N/A | $25,000 |
| TENANT BUSINESS PERSONAL PROPERTY COVERAGE - REQUIRED BY LEASE | $500 | $25,000 | N/A | $25,000 |

Form  391-1018  (7-02)
Date Issued:  04/21/2022

**The Hanover Insurance Group™**

BR 91

# ADDITIONAL PROPERTY COVERAGES AND EXTENSIONS

**BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 02/28/2021  NUMBER 05**

07      SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
TO BACK OUT ENDT#4

| Policy Number | Policy Period From | To | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| OBC-H332709-00 | 07/31/2020 | 07/31/2021 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

**Agent**

847-307-6100

THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

| Additional Property Coverages & Extensions | Deductible | Amount Included | Additional Amount Increase | Total Limit |
|---|---|---|---|---|
| THEFT OF TELEPHONIC SERVICES | $500 | $25,000 | N/A | $25,000 |
| UNDERGROUND PIPES | $500 | INCLUDED | N/A | INCLUDED |

Form  391-1018  (7-02)
Date Issued:  04/21/2022

ORIGINAL/INSURED

**The Hanover Insurance Group**

BR 91      ADDITIONAL PROPERTY COVERAGES AND EXTENSIONS

**BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 02/28/2021 NUMBER 05**

07      SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
         TO BACK OUT ENDT#4

| Policy Number | Policy Period From | Policy Period To | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| OBC-H332709-00 | 07/31/2020 | 07/31/2021 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

Named Insured and Address
COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL 60601

Agent
847-307-6100
THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL 60010

| Additional Property Coverages & Extensions | Loc. No. | Bldg. No. | Deductible Amount | Amount Included | Additional Amount | Total Limit |
|---|---|---|---|---|---|---|
| ORDINANCE OR LAW | 001 | 001 | NONE | $5,000 | N/A | $5,000 |
| COMPUTER EQUIPMENT | | | $500 | $35,000 | N/A | $35,000 |
| COMPUTER EQUIPMENT EXTRA EXPENSE | | | NONE | $5,000 | N/A | $5,000 |
| ELECTRONIC VANDALISM | | | $500 | | | |
| OCCURRENCE LIMIT | | | | $10,000 | N/A | $10,000 |
| AGGREGATE LIMIT | | | | $10,000 | N/A | $10,000 |
| VALUABLE PAPERS AND RECORDS (OTHER THAN ELECTRONIC DATA) | | | $1,000 | | | |
| ON PREMISES | | | | $25,000 | N/A | $25,000 |
| OFF PREMISES | | | | $25,000 | N/A | $25,000 |
| ACCOUNTS RECEIVABLE | | | $1,000 | | | |
| ON PREMISES | | | | $25,000 | N/A | $25,000 |
| OFF PREMISES | | | | $25,000 | N/A | $25,000 |
| MONEY AND SECURITIES | | | $500 | | | |
| ON PREMISES | | | | $10,000 | N/A | $10,000 |
| OFF PREMISES | | | | $5,000 | N/A | $5,000 |
| EQUIPMENT BREAKDOWN | | | $1,000 | INCLUDED | N/A | INCLUDED |
| PROTECTIVE DEVICES CREDIT | | | | | | |
| AUTOMATIC SPRINKLER SYSTEM | | | | NO | | |
| AUTOMATIC FIRE ALARM | | | | NO | | |
| CENTRAL STATION SECURITY | | | | NO | | |
| COLLAPSE | | | $500 | INCLUDED | N/A | INCLUDED |
| UTILITY SERVICES | | | | | | |
| DIRECT DAMAGE | | | $500 | $50,000 | N/A | $50,000 |
| TIME-ELEMENT | | | 24 HOURS | $50,000 | N/A | $50,000 |

Form 391-1018A (9-04)
Date Issued: 04/21/2022

ORIGINAL/INSURED

**The Hanover Insurance Group™**

BR 91      ADDITIONAL PROPERTY COVERAGES AND EXTENSIONS

**BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 02/28/2021  NUMBER 05**

07      SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
TO BACK OUT ENDT#4

| Policy Number | Policy Period From | To | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| OBC-H332709-00 | 07/31/2020 | 07/31/2021 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

Named Insured and Address

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

Agent

847-307-6100
THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

| Additional Property Coverages & Extensions | Loc. No. | Bldg. No. | Deductible Amount | Amount Included | Additional Amount | Total Limit |
|---|---|---|---|---|---|---|
| ORDINANCE OR LAW | 002 | 001 | NONE | $5,000 | N/A | $5,000 |
| COMPUTER EQUIPMENT | | | $500 | $35,000 | N/A | $35,000 |
| COMPUTER EQUIPMENT EXTRA EXPENSE | | | NONE | $5,000 | N/A | $5,000 |
| ELECTRONIC VANDALISM | | | $500 | | | |
|   OCCURRENCE LIMIT | | | | $10,000 | N/A | $10,000 |
|   AGGREGATE LIMIT | | | | $10,000 | N/A | $10,000 |
| VALUABLE PAPERS AND RECORDS (OTHER THAN ELECTRONIC DATA) | | | $1,000 | | | |
|   ON PREMISES | | | | $25,000 | N/A | $25,000 |
|   OFF PREMISES | | | | $25,000 | N/A | $25,000 |
| ACCOUNTS RECEIVABLE | | | $1,000 | | | |
|   ON PREMISES | | | | $25,000 | N/A | $25,000 |
|   OFF PREMISES | | | | $25,000 | N/A | $25,000 |
| MONEY AND SECURITIES | | | $500 | | | |
|   ON PREMISES | | | | $10,000 | N/A | $10,000 |
|   OFF PREMISES | | | | $5,000 | N/A | $5,000 |
| EQUIPMENT BREAKDOWN | | | $1,000 | INCLUDED | N/A | INCLUDED |
| PROTECTIVE DEVICES CREDIT | | | | | | |
|   AUTOMATIC SPRINKLER SYSTEM | | | | NO | | |
|   AUTOMATIC FIRE ALARM | | | | NO | | |
|   CENTRAL STATION SECURITY | | | | NO | | |
| COLLAPSE | | | $500 | INCLUDED | N/A | INCLUDED |
| UTILITY SERVICES | | | | | | |
|   DIRECT DAMAGE | | | $500 | $50,000 | N/A | $50,000 |
|   TIME-ELEMENT | | | 24 HOURS | $50,000 | N/A | $50,000 |

Form  391-1018A (9-04)
Date Issued:  04/21/2022

ORIGINAL/INSURED

**The Hanover Insurance Group**

BR 91

# AVENUES BUSINESSOWNERS DECLARATION

### BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 02/28/2021  NUMBER 05

07

SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
TO BACK OUT ENDT#4

| Policy Number | Policy Period From | To | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| OBC-H332709-00 | 07/31/2020 | 07/31/2021 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**
COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

**Agent**
847-307-6100
THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

### Forms and Endorsements Schedule

| | Form Number | Edition Date | Description |
|---|---|---|---|
| | 391-1402 | 08/16 | TECHNOLOGY DELUXE GOLD BROAD |
| * | 391-1371 | 01/10 | REV INFRINGE OF COPYRIGHT EXCL |
| * | BP0404 | 01/10 | HIRED AUTO NON-OWNED AUTO LIAB |
| * | 401-1374 | 01/15 | DISCLOSURE PURSUANT TO TRIA |
| * | 391-1114 | 01/15 | CAP ON LOSSES FROM TERRORISM |
| * | 391-1313 | 01/15 | EXCLUSION OF PUNITIVE DAMAGES |
| | 391-1006 | 08/16 | LIABILITY SPECIAL BROADENING |
| | BP0417 | 01/10 | EMPLYMT RELATED PRACTICES EXCL |
| | 231-0475 | 06/89 | PILR NOTICE |
| | 391-1003 | 08/16 | BUSINESSOWNERS COVERAGE FORM |
| | BP0643 | 04/06 | IL CHANGES - DEFENSE COSTS |
| | 391-1901 | 06/18 | ILLINOIS CHANGES |
| | 421-0022 | 07/02 | ASBESTOS EXCLUSION |
| | 391-1102 | 08/16 | EXCL - FUNGI OR BACTERIA LIAB |
| | 331-0053 | 08/16 | ILLINOIS INQUIRY NOTICE |
| | 391-1375 | 01/10 | AMEND LIMITS PERSONAL AND ADV |
| * | 391-1218 | 06/06 | EPLI INSURANCE CVG ENDR ILLINO |
| * | 391-1206 | 06/06 | EPLI IMPORTANT NOTICE |
| * | 391-1208 | 03/06 | EPLI SUPPLEMENTAL DEC |
| * | BP1203 | 01/10 | LOSS PAYABLE PROVISIONS |
| | 401-1504 | 01/20 | CAP LOSSES CERT ACTS OF TERR |
| * | 391-1440 | 01/15 | DATA BREACH COVERAGE FORM |
| * | 391-1442 | 12/09 | ASSOC AND FAMILY MBR ADD COV |
| * | 391-1585 | 12/11 | IDENTITY THEFT NOTICE |

Form  391-1016 (7-99
Date Issued:  04/21/2022                                      ORIGINAL/INSURED

The **Hanover**
Insurance Group™

BR 91

# AVENUES BUSINESSOWNERS DECLARATION

**BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 02/28/2021 NUMBER 05**

07

SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
TO BACK OUT ENDT#4

| Policy Number | Policy Period | | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| | From | To | | |
| OBC-H332709-00 | 07/31/2020 | 07/31/2021 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**
COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

**Agent**
847-307-6100
THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

## Forms and Endorsements Schedule

| | Form Number | Edition Date | Description |
|---|---|---|---|
| * | 391-1854 | 01/15 | IL CHANGES - DATA BREACH |
| | 401-1235 | 12/14 | CANCEL NOTICE TO DESIGNATED |
| | 391-1941 | 08/16 | AI DESIGNATED PER OR ORG |

Form  391-1016 (7-99
Date Issued:  04/21/2022

ORIGINAL/INSURED

**COMMERCIAL EMPLOYMENT PRACTICES**
**LIABILITY INSURANCE COVERAGE ENDORSEMENT**
**SUPPLEMENTAL DECLARATIONS**

The **Hanover**
Insurance Group.
OBCH332709    1304500

Policy Number:  OBC H332709 00
Account Number:  1521871564
Named Insured:   COOLER SCREENS INC

Agent:  1304500

---

## NOTICE

- EXCEPT TO SUCH EXTENT AS MAY OTHERWISE BE PROVIDED HEREIN, THE COVERAGE OF THIS COVERAGE ENDORSEMENT IS LIMITED TO LIABILITY FOR ONLY THOSE CLAIMS OR SUITS THAT ARE FIRST MADE AGAINST THE INSUREDS DURING THE EPL COVERAGE PERIOD AND REPORTED IN WRITING TO THE INSURER PURSUANT TO THE TERMS HEREIN. VARIOUS PROVISIONS IN THIS COVERAGE ENDORSEMENT RESTRICT COVERAGE. PLEASE READ THE ENTIRE COVERAGE ENDORSEMENT CAREFULLY TO DETERMINE RIGHTS, DUTIES AND WHAT IS AND IS NOT COVERED.

- THE LIMIT OF LIABILITY AVAILABLE TO PAY JUDGEMENTS OR SETTLEMENTS UNDER THIS COVERAGE ENDORSEMENT SHALL BE REDUCED BY AMOUNTS INCURRED FOR LEGAL DEFENSE. AMOUNTS INCURRED FOR LEGAL DEFENSE SHALL BE APPLIED AGAINST THE DEDUCTIBLE AMOUNT.

---

| | | |
|---|---|---|
| **EPL Coverage Period:** | From: 07/31/2020<br><br>To:    07/31/2021 | At 12:01 A.M. Standard Time at your mailing address shown on the Declarations page of this policy. |
| **EPL Aggregate Limit of Liability:** | $      25,000.00 | Aggregate for all "loss" combined, including "defense costs". |
| **EPL Deductible Amount:** | $       5,000.00 | For "loss" arising from claims or suits alleging the same "wrongful employment act" or "related wrongful employment acts". |
| **EPL Original Inception Date:** | 07/31/2020 | (Enter "original inception date") If no date is shown, "we" will consider the "original inception date" to be the same as the beginning of this coverage endorsement. |

This insurance does not apply to "loss" arising out of a "wrongful employment act" that: (1) commences on or takes place prior to the "original inception date" shown here, or (2) arises out of incidents or circumstance of which "you" had knowledge prior to the "original inception date" shown.

| | | |
|---|---|---|
| | **EPL COVERAGE PREMIUM:** | $   |

The Hanover Insurance Group™

| |
|---|
| **NEW BUSINESS POLICY** |
| **COMMERCIAL UMBRELLA POLICY** |
| THESE DECLARATIONS TOGETHER WITH THE COMMON POLICY CONDITIONS AND COVERAGE FORM(S) COMPLETE THE BELOW NUMBERED POLICY |
| POLICY NUMBER: OBC-H332709-00 |
| DECLARATIONS |

| **Named Insured and Address** (No., Street, Town, County, State) | **Agent** |
|---|---|
| COOLER SCREENS INC<br>233 N MICHIGAN AVE SUITE 1430<br>CHICAGO, IL 60601 | 130450000<br>THE PLEXUS GROUPE LLC<br>SUITE 300<br>21805 W. FIELD PARKWAY<br>DEER PARK, IL 60010 |

**Policy Period:** (Month, Day, Year)

From 07/31/2020 To 07/31/2021
12:01 AM, standard time at the address of the Named Insured as stated herein.

Form of Business:
[ ] Individual [ ] Partnership [X] Corporation [ ] Limited Liability Company
[ ] Organization (Other than Partnership, Joint Venture, or Limited Liability Company

**Business Description:**
**SERVICE.**

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY. THIS PREMIUM MAY BE SUBJECT TO AUDIT.

| **Limit of Liability (Section III)** | |
|---|---|
| **Each Occurrence Limit** | **$ 1,000,000** |
| **General Aggregate Limit** | **$ 1,000,000** |
| **Product Completed Operations Aggregate Limit** | **$ 1,000,000** |

| **Retained Limit** | **Self-Insured Retention** | **$ NIL** |
|---|---|---|

**Premium Computation**

Annual Premium $ ███
Advance Premium $

**Endorsements:**

| | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| CU2130 | 01/15 | CU2156 | 06/06 | CU2136 | 01/15 | 473-1150 | 05/12 | 473-1157 | 01/10 | 473-0004 | 10/05 |
| CU0004 | 05/09 | 473-0016 | 10/05 | 473-0023 | 10/05 | 473-0040 | 10/05 | CU0200 | 12/07 | CU0001 | 12/07 |
| 473-2194 | 08/16 | CU2123 | 02/02 | 473-2211 | 10/16 | CU2125 | 12/01 | CU2255 | 09/00 | CU2127 | 12/04 |
| CU2150 | 03/05 | IL0017 | 11/98 | CU2436 | 12/05 | IL0162 | 09/08 | 473-1125 | 02/09 | CU2186 | 05/14 |

[ ] PRE PAID - the total annual premium is due at inception.
[ ] HANOCASH - the annual premium is payable according to the term of the Hanocash endorsement attachment

[ ] ACCOUNT BILL [X] DIRECT BILL [ ] Annual [ ] Semi-Annual [ ] Other
Audit period: Non Auditable Unless indicated by [ ] Annual [ ] Semi-Annual [ ] Other
If you cancel this policy, we shall receive and retain not less than $ as a policy minimum premium.

473-1102 1108

**The Hanover**
Insurance Group™

OBCH332709     1304500

## SCHEDULE A - SCHEDULE OF UNDERLYING POLICIES

**Insured:**   COOLER SCREENS INC
**Effective on and after: 07/31/2020 ,  12:01 AM Standard Time**
**This schedule is part of Policy Number:   OBC-H332709-00**

| CARRIER, POLICY NUMBER & PERIOD | TYPE OF POLICY | APPLICABLE LIMITS OR AMOUNT OF INSURANCE |
|---|---|---|
| (a)Carrier:<br><br>CITIZENS INSURANCE COMPANY OF AMERICA<br><br>Policy Number:   OBC-H332709-00<br>Policy Period:   07/31/2020    TO  07/31/2021 | Commercial General Liability<br>[X]Non-owned & Hired Autos | $ 2,000,000    Each  Occurrence<br>$ 4,000,000    General  Aggregate<br>$ 4,000,000    Product/Compl eted Operations Aggregate |
| (b) Carrier:<br><br><br>Policy Number:<br>Policy Period: | Comprehensive Automobile Liability | Bodily Injury and Property Damage Liability Combined<br>$            Each Accident<br>Bodily Injury<br>$             Each Person<br>$             Each Accident<br>Property Damage<br>$             Each Accident |
| (c)Carrier:<br><br>EXCLUDED<br>Policy Number:<br>Policy Period: | Standard Workers Compensation & Employers Liability<br>**Please Note:** The Umbrella Coverage for Workers Compensation and Employers Liability is not applicable in situations where an employee is subject to the New York Workers Compensation Law. | **Coverage B - Employers Liability**<br>Bodily Injury by Accident<br>$            Each  Accident<br>Bodily Injury by Disease<br>$              Aggregate<br>$            Each  Employee |
| (d)Carrier:<br><br><br>Policy Number:<br>Policy Period: | Liquor Liability | $            Limit of   Liability |
| (e)Carrier:<br><br><br>Policy Number:<br>Policy Period: | Professional Liability | $            Limit of Liability |
| An "X" marked in the box provided indicates these broadening or optional coverages are provided in the Underlying Insurance ||| 
| (f) Carrier:<br><br><br>Policy Number:<br>Policy Period: | Directors & Officers Liability | $            Limit of   Liability |
| (g) Carrier:<br><br><br>Policy Number:<br>Policy Period: | Employee Benefits Liability | $            Limit of   Liability |
| **Countersigned By:** |||
| **Date:** |||
| **Authorized Representative of the Company** |||

473-1103 (11/08)

**The Hanover**
Insurance Group™

OBCH332709     1304500

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# HIRED AUTO AND NON-OWNED AUTO LIABILITY

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**SCHEDULE**

| Coverage | Additional Premium |
|---|---|
| **A.  Hired Auto Liability** | $     INCLUDED |
| **B.  Non-owned Auto Liability** | $     INCLUDED |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A.** Insurance is provided only for those coverages for which a specific premium charge is shown in the Declarations or in the Schedule.

**1. Hired Auto Liability**

The insurance provided under Paragraph **A.1. Business Liability** in **Section II - Liability** applies to "bodily injury" or "property damage" arising out of the maintenance or use of a "hired auto" by you or your "employees" in the course of your business.

**2. Non-owned Auto Liability**

The insurance provided under Paragraph **A.1. Business Liability** in **Section II - Liability** applies to "bodily injury" or "property damage" arising out of the use of any "non-owned auto" in your business by any person.

**B.** For insurance provided by this endorsement only:

**1.** The exclusions under Paragraph **B.1. Applicable To Business Liability Coverage** in **Section II - Liability,** other than Exclusions **a., b., d., f.** and **i.** and the **Nuclear Energy Liability Exclusion,** are deleted and replaced by the following:

**a.** "Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of injury.

This exclusion does not apply to:

**(1)** Liability assumed by the insured under an "insured contract"; or

**(2)** "Bodily injury" arising out of and in the course of domestic employment by the insured unless benefits for such injury are in whole or in part either payable or required to be provided under any workers' compensation law.

**b.** "Property damage" to:

**(1)** Property owned or being transported by, or rented or loaned to the insured; or

**(2)** Property in the care, custody or control of the insured.

Copyright, Insurance Services Office, Inc., 2009

**2.** Paragraph **C. Who Is An Insured** in **Section II - Liability** is replaced by the following:

    **1.** Each of the following is an insured under this endorsement to the extent set forth below:

      **a.** You;

      **b.** Any other person using a "hired auto" with your permission;

      **c.** For a "non-owned auto":

        **(1)** Any partner or "executive officer" of yours; or

        **(2)** Any "employee" of yours;

        but only while such "non-owned auto" is being used in your business; and

      **d.** Any other person or organization, but only for their liability because of acts or omissions of an insured under **a., b.** or **c.** above.

    **2.** None of the following is an insured:

      **a.** Any person engaged in the business of his or her employer for "bodily injury" to any co-"employee" of such person injured in the course of employment, or to the spouse, child, parent, brother or sister of that co-"employee" as a consequence of such "bodily injury", or for any obligation to share damages with or repay someone else who must pay damages because of the injury;

      **b.** Any partner or "executive officer" for any "auto" owned by such partner or officer or a member of his or her household;

      **c.** Any person while employed in or otherwise engaged in duties in connection with an "auto business", other than an "auto business" you operate;

      **d.** The owner or lessee (of whom you are a sublessee) of a "hired auto" or the owner of a "non-owned auto" or any agent or "employee" of any such owner or lessee; or

      **e.** Any person or organization for the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

**C.** For the purposes of this endorsement only, Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions** is replaced by the following:

    This insurance is excess over any primary insurance covering the "hired auto" or "non-owned auto".

**D.** The following additional definitions apply:

    **1.** "Auto business" means the business or occupation of selling, repairing, servicing, storing or parking "autos".

    **2.** "Hired auto" means any "auto" you lease, hire, rent or borrow. This does not include any "auto" you lease, hire, rent or borrow from any of your "employees", your partners or your "executive officers" or members of their households.

    **3.** "Non-owned auto" means any "auto" you do not own, lease, hire, rent or borrow which is used in connection with your business. This includes "autos" owned by your "employees", your partners or your "executive officers", or members of their households, but only while used in your business or your personal affairs.

Copyright, Insurance Services Office, Inc., 2009



OBCH332709    1304500

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# DATA BREACH COVERAGE FORM

Various provisions in this Coverage Form restrict coverage. Read the entire Coverage Form carefully to determine rights, duties and what is and is not covered.

Throughout this coverage form the words "we", "us" and "our" refer to the Company providing this insurance. The words "you" and "your" refer to the Named Insured shown in the Declarations. Other words and phrases that appear in quotation marks have special meaning. Refer to **SECTION F - DEFINITIONS.**

| SCHEDULE | | |
|---|---|---|
| Data Breach Coverage Aggregate Limit of Insurance | $ | **10,000** |
| Data Breach Expense Coverages Aggregate Sublimit of Insurance | $ | **10,000** |
| Additional Expense Coverages Aggregate Sublimit of Insurance | $ | **10,000** |
| Data Breach Coverage Deductible | $ | **1,000** |
| Cyber Business Interruption Waiting Period Deductible | | **24** Hours |
| Premium: | $ | ■ |

## SECTION A - COVERAGES

We will provide Data Breach Services, Data Breach Expense Coverages and Additional Expense Coverages as described below if you have a "data breach" that:

**a.** Is discovered during the "policy period" of this Data Breach Coverage Form; and

**b.** Is reported to us within 30 days of your discovery of the "data breach".

**1. Data Breach Services, Data Breach Expense Coverages, Additional Expense Coverages**

**a. Data Breach Services**

**(1) Consulting Services**

If you contact our Designated Service Provider, they will provide Consulting Services to assist you with:

**(a)** Notification requirements pursuant to "breach notice laws";

**(b)** Drafting your notification letters; and

**(c)** Media interface and press release drafting.

**(2) Help Line**

Provide a toll-free telephone line for "potentially-identified persons" with questions about the "data breach".

**(3) Fraud Alert**

A "potentially-identified person" who contacts our Designated Service Provider can place a Fraud Alert on his or her credit file(s) with the main credit bureaus warning potential credit grantors to check with the "potentially-identified person" before extending credit in his or her name or on his or her behalf.

**(4) Identity Restoration Case Management**

An "identified person" who contacts our Designated Service Provider will be assisted by an identity restoration professional to help to correct his or her credit and other records and to restore control over his or her personal identity.

These Data Breach Services will be provided by our Designated Service Provider, as described in Paragraphs **15.** and **16.** of **Section E. Conditions,** for a period of one year from the date the Data Breach Services are initiated.

Data Breach Services are only available if the jurisdiction or country where the "potentially-identified person" resides maintains "breach notice law" and, in the case of Fraud Alert, an operative credit monitoring service.

**b. Data Breach Expense Coverages**

We will pay your reasonable and necessary expenses incurred for the following Covered Expenses up to the limits of insurance described in **Section C - Limits of Insurance:**

**(1) Notification to Potentially-Identified Persons** - expenses to provide

notification of the "data breach" to "potentially-identified persons":

**(a)** As required by applicable "breach notice law"; or

**(b)** If reasonably necessary to maintain your business.

Covered expenses include the printing, postage and handling of notification letters or other means of disclosing the breach to "potentially-identified persons".

**(2) Forensic Analysis** - expenses to assess:

**(a)** The severity of the "data breach";

**(b)** The nature and extent of the "data breach";

Forensic Analysis expenses do not include the cost of restoration.

**(3) Proactive Monitoring Services Expense Coverage -** Expenses for "proactive monitoring services" provided to "potentially-identified persons" in jurisdictions or countries with operative credit monitoring services as provided through our Designated Service Provider.

Under this coverage we will only pay for expenses that you incur through our Designated Service Provider.

Services provided for Covered Expenses provided in **b.(1)**, **b.(2)** and **b.(3)** above must be approved by us as described in **SECTION E - CONDITIONS,** Paragraph **15. Service Providers.**

**(4) Breach Restoration Expenses**

We will pay "Breach Restoration Expenses" directly resulting from a "data breach" which is first discovered during the "policy period" and which results in the damage, deletion or destruction of "data" owned by you or for which you are legally liable.

**(5) Cyber Business Interruption and Extra Expense**

We will pay actual loss of "business income" and additional "extra expense" incurred by you during the "period of restoration" directly resulting from a "data breach" which is first discovered during the "policy period" and which results in an actual impairment or denial of service of "business operations" during the "policy period".

**c. Additional Expense Coverages**

We will pay your reasonable and necessary expenses incurred for the following Additional Expense Coverages. These expenses are subject to the limits of insurance described in **Section C - Limits of Insurance.**

**(1) Legal Services -** expenses incurred within the first six months following the discovery and reporting of a "data breach" as provided in this Section for approved outside professional legal counsel review and recommendations as to how you should respond to it, including final legal review of the proposed breach notification letter(s). However, we will not pay for expenses for legal counsel to review any third party liability litigation or notification of potential litigation.

**(2) Public Relations -** expenses incurred within the first six months following the discovery and reporting of a "data breach" as provided in this Section for approved outside public relations firm or crisis management firm recommendations for restoring the confidence of your customers and investors in the security of your company and its systems.

**(3) Third Party "Data Breach" -** expenses for notification to "potentially-identified persons" with whom you have a direct relationship when a "data breach" is sustained by a third party to whom you have sent "private personal data" to be under that third party's care, custody and control. This includes a "data breach" that occurs while transmitting or transporting the data to that third party. Covered expenses for this Additional Covered Expense are limited to the printing, postage and handling of notification letters to "potentially-identified persons".

Service providers for Additional Expense Coverage provided in paragraphs **c.(1)**, **c.(2)** and **c.(3)** must be approved by us as described in **SECTION E - CONDITIONS,** Paragraph **15. Service Providers.**

**(4) Data Breach Ransom Coverage -** monies extorted from and paid by you because or a threat or connected series of threats to commit an intentional attack on your computer systems that if so committed, would result in a "data breach". This Data Breach Ransom



OBCH332709    1304500

Coverage is subject to the following conditions:

**(a)** You must receive approval from us prior to the payment of any monies;

**(b)** Any monies paid must only be to terminate or end the threat;

**(c)** The threat must be one which, if carried out, would have led to a "data breach" that would have been covered under this Coverage Form had the monies not been paid;

**(d)** The threat must have been made during the coverage period of this Data Breach Coverage Form;

**(e)** The applicable Federal, state and/or local law enforcement authority was notified of the threat prior to any payment you make for which you are seeking reimbursement under this Additional Expense Coverage;

**(f)** The threat must not have been committed by any of your employees or former employees, vendors or independent contractors hired by you;

**(g)** You must make every reasonable effort not to divulge the existence of this Data Breach Ransom Coverage; and

**(h)** You agree to keep confidential any amounts paid under this Data Breach Ransom Coverage except for any disclosure we approve in advance of that disclosure.

**(5) Data Breach Reward Coverage -** monies you pay for information leading to the arrest and conviction of any individual(s) who committed an illegal act(s) related to a "data breach" covered under this Coverage Form.

However, we will not pay for information that was provided by:

**(a)** You;

**(b)** Your internal or external auditors;

**(c)** Any vendor or independent contractor hired by you;

**(d)** Any individual or firm hired by you to investigate the illegal act described above; or

**(e)** Any individual(s) with supervisory or management responsibility of any of the individual(s) described above.

**(6) Data Breach Investigations**

We will pay "defense expenses" directly resulting from a "regulatory investigation" regarding a "data breach" first discovered by you during the "policy period".

**(7) Data Breach Theft**

We will pay for loss resulting directly from your transfer, payment, or delivery of funds due to the fraudulent input of "data" directly into your "system" or through a "network" into your "system". Loss must first be discovered by you during the "policy period".

## SECTION B - EXCLUSIONS

**1.** The following exclusions apply to Data Breach Services, Data Breach Expense Coverages and Additional Expense Coverages.

This insurance does not apply to:

**a. Costs to Research or Correct Deficiencies**

Any costs to research any deficiency, except as specifically provided under **SECTION A - COVERAGES**, Paragraph **1.b.(2) Forensic Analysis**, or any costs to correct any deficiency.

This includes, but is not limited to, any deficiency in your systems, procedures or physical security that may have contributed to a "data breach".

**b. Criminal Investigation or Proceedings**

Any costs arising out of criminal investigations or proceedings.

**c. Fines, Penalties or Assessments**

Any "fines, penalties, fees or assessments". This includes but is not limited to fees or surcharges from financial institutions.

**d. Defense or Legal Liability**

Any fees, costs, settlements, judgments, or liability of any kind arising in the course of, or as a result of a claim for damages, lawsuit, administrative proceedings, or governmental investigation against or involving you, except as provided under **SECTION A - COVERAGES**, Paragraph **1.c.(6) Data Breach Investigations.**

**e. Other Economic Costs**

Any other costs or expenses not expressly provided for under Data Breach Services, Data Breach Expense Coverages and Additional Expense Coverages provided in Paragraphs **1.a.** through **1.c.** Costs or expenses that we do not cover include but are not limited to expense to reissue credit or debit cards.

**f. Consequential Loss**

Any costs, or any other loss, caused by or resulting from delay, loss of use, loss of existing or prospective markets or any other consequential loss. This exclusion does not apply to **SECTION A - COVERAGES**, Paragraph **1.b.(5) Cyber Business Interruption and Extra Expense**.

**g. Contractually Assumed Liability**

Legal obligations arising by reason of assumption of liability in a contract or agreement.

**h. Victim Expenses or Losses**

Costs or losses incurred by a victim of "data breach" or fraud activity except as provided for under Data Breach Services, Data Breach Expense Coverages and Additional Expenses Coverages provided in Paragraphs **1.a.** through **1.c.**

**i. Alternative Travel Arrangements or Fees**

Payment of alternative travel arrangements or additional fees.

**j. Psychological Counseling**

Psychological counseling for victims of a "data breach" or fraud activity.

**k. Legal Advice or Services**

Legal advice or other legal services, except as provided by the Legal Services Additional Expense Coverage, Paragraph **1.c.(1).**

**l. Information Recapture**

Any costs or losses for the recapture of lost, stolen or destroyed information.

**m. Dishonesty**

Any criminal, fraudulent or dishonest act, error or omission, or any intentional or knowing violation of law by you, any of your partners, directors or trustees:

**(1)** Acting alone or in collusion with others; or

**(2)** Whether or not occurring during the hours of employment.

**n. Governmental Action**

Seizure or destruction of property by order of governmental authority. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. This exclusion applies whether or not the loss event results in widespread damage or affects a substantial area.

**o. Intentional or Willful Complicity**

Your intentional or willful complicity in a "data breach".

**p. Prior Discovery**

Any "data breach" discovered prior to the inception of this Data Breach Coverage Form.

**q Threats, Extortion or Blackmail**

Any threat, extortion or blackmail including but not limited to, ransom payments and private security assistance except as provided in the Data Breach Ransom Coverage Additional Expense Coverage under Paragraph **1.(c)(4).**

**r Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination, however caused.

**s. War and Military Action**

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**2.** The following exclusions apply to Breach Restoration Expenses, Cyber Business Interruption and Extra Expense, Data Breach Investigations, and Data Breach Theft only.

This insurance does not apply to:

**a. Investigations**

Costs, fees or expenses incurred or paid by you in establishing the existence of, or amount of loss, damage or expense.

**b. Non-monetary Relief**

Costs of compliance with any order for, grant of or agreement to provide non-monetary relief, including injunctive relief.

**c. Potential Income**

Potential income including interest and dividends not realized by you; however, this Exclusion shall not apply to loss of "business income" as provided under **SECTION A - COVERAGES**, Paragraph **1.b.(5) Cyber Business Interruption and Extra Expense.**



OBCH332709     1304500

**d. Return of Payments**

Return of fees, charges, commissions or other compensation paid to you.

**e. System Changes**

Costs or "expenses" incurred to replace, upgrade, update, improve, or maintain a "system".

**f. Uniform Commercial Code**

Loss, damage, costs or "expenses" you agree to incur or incur on behalf of another natural person or entity when you are not obligated to incur such loss, costs or "expenses" under the Uniform Commercial Code or any other law, statute, rule or code anywhere in the world, including the rules or codes of any clearing or similar entity. This Exclusion does not apply to **SECTION A - COVERAGES**, Paragraph **1.b.(5) Cyber Business Interruption and Extra Expense.**

**SECTION C - LIMITS OF INSURANCE**

1. The most we will pay for all Data Breach Expense Coverages and Additional Expense Coverages combined is the Data Breach Coverage Aggregate Limit of Insurance shown in the **SCHEDULE** of this Data Breach Coverage Form. The Data Breach Coverage Aggregate Limit of Insurance is an annual aggregate limit and is the most we will pay for the total of all covered losses and expenses for all "data breach" events discovered by you during the current "policy period" regardless of the number of "data breach" events.

2. The Data Breach Expense Coverages Aggregate Sublimit of Insurance shown in the **SCHEDULE** of this Data Breach Coverage Form is the most we will pay under all Data Breach Expense Coverages combined for the total of all covered losses and expenses arising out of all "data breach" events during the "policy period" regardless of the number of "data breach" events. The Data Breach Expense Coverage Aggregate Sublimit of Insurance is part of, and not in addition to, the Data Breach Coverage Aggregate Limit of Insurance

3. The Additional Expense Coverages Aggregate Sublimit of Insurance shown in the **SCHEDULE** of this Data Breach Coverage Form is the most we will pay under all Additional Expense Coverages combined for the total of all covered losses and expenses for all "data breach" events during the "policy period" regardless of the number of "data breach" events. The Additional Expense Coverages Aggregate Sublimit of Insurance is part of, and not in addition to, the Data Breach Coverage Aggregate Limit of Insurance.

4. Regardless of the number of years this Data Breach Coverage Form remains in force or the number of premiums paid, no limits of insurance cumulate from this "policy period" to subsequent "policy periods".

5. **Discovery Policy Period Limits Apply**

A "data breach" may be first discovered by you in one "policy period", but cause covered loss or expenses in one or more subsequent "policy periods". If so, all covered loss or expenses for the "data breach" will be limited to the Data Breach Coverage Aggregate Limit of Insurance, the Data Breach Expense Coverages Aggregate Sublimit of Insurance and the Additional Expense Coverages Aggregate Sublimit of Insurance described respectively in Paragraphs **1., 2.** and **3.** above that are applicable to the "policy period" when the "data breach was first discovered by you.

6. **Time Limits**

**a.** You must report a "data breach", to us on or within 30 days of your discovery of the "data breach".

**b.** You have up to one year from the date of reporting a "data breach", to initiate the services afforded to you.

**c.** A "potentially-identified person" has up to one year from the date he or she receives notification of a "data breach" to initiate the services afforded to him or her.

**d.** Once initiated, the services afforded to a "potentially-identified person" will continue for one year.

**e.** Data Breach Services under **Section A - Coverages,** Paragraph **1.a.** will be provided by our Designated Service Provider for a period one year from the date the Data Breach Services are initiated.

**SECTION D - DEDUCTIBLE**

The Data Breach Expense Coverages and Additional Expense Coverages provided under this Coverage Form are subject to the Data Breach Coverage Deductible shown in the **SCHEDULE** of this Coverage Form. The Data Breach Coverage Deductible applies to covered loss and expense arising out of each "data breach". Our obligation to make payments under Data Breach Expense Coverages and Additional Expense Coverages applies only to that part of covered loss and expense arising out of a single "data breach" event which is in excess of the Data Breach Coverage Deductible.

The Data Breach Coverage Deductible does not apply to **SECTION A -COVERAGES,** paragraph **1.b.(6) Cyber Business Interruption and Extra Expense.** Losses payable under Cyber Business Interruption and Extra Expense are subject to the Cyber Business Interruption Waiting Period Deductible shown on the **SCHEDULE** of this Coverage Form.

## SECTION E - CONDITIONS

**1. Duties in the Event of a Data Breach.**

You must see that the following are done in the event of a "data breach":

**a.** Notify the police if a law may have been broken.

**b.** Give us prompt notice of the "data breach". As stated in **SECTION A - COVERAGES**, paragraph **b.**, you must report the "data breach" to us within 30 days of the date you first discover it.

**c.** As soon as possible, give us, and/or our Designated Service Provider, a description of how, when and where the "data breach" occurred, including all of the following information as it becomes known to you:

**(1)** The method of "data breach";

**(2)** The approximate date and time of the "data breach";

**(3)** The approximate number of "potentially-identified persons" compromised as a result of the "data breach";

**(4)** A detailed description of the type and nature of the information that was compromised;

**(5)** Whether or not the information was encrypted, and, if so, the level of encryption;

**(6)** Whether or not law enforcement has been notified;

**(7)** If available, the states in which the "potentially-identified persons" are domiciled;

**(8)** If available, who received the "private personal data" as a result of the "data breach"; and any other access, information or documentation we reasonably require to investigate or adjust your claim.

**d.** Take all reasonable steps to protect "private personal data" remaining in your care, custody or control.

**e.** Preserve all evidence of the "data breach".

**f.** Permit us to inspect the property and records proving the "data breach".

**g.** If requested, permit us to question you under oath at such times as may be reasonably required about any matter relating to this insurance or your claim, including your books and records. In such event, your answers must be signed.

**h.** Send us a signed, sworn statement containing the information we request to investigate the claim. You must do this within 30 days after our request. We will supply you with the necessary forms.

**i.** Cooperate with us in the investigation or settlement of the claim.

**2. Concealment, Misrepresentation or Fraud**

This coverage is void in any case of fraud by you as it relates to this Data Breach Coverage Form. It is also void if you intentionally conceal or misrepresent a material fact concerning this Coverage Form or a claim under this Coverage Form.

**3. Control of Property**

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Form at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

**4. Two or More Coverage Parts, Forms, Endorsements or Policies Issued By Us**

It is our stated intent that the various coverage parts, forms, endorsements or policies issued to you by us or any company affiliated with us do not provide any duplication or overlap of coverage for the same loss, damage, expense or "data breach". If this coverage form and any other coverage part, form, endorsement or policy issued to you by us or any company affiliated with us apply to the same loss, damage, expense, or "data breach"; the maximum Limit of Insurance under all such coverage parts, forms, endorsements or policies combined shall not exceed the highest applicable Limit of Insurance under any one coverage part, form, endorsement or policy.

If two or more of the coverages provided under this coverage form apply to the same loss, damage, expense or "data breach"; we will not pay more than the actual amount of the loss, damage or expense.

**5. Legal Action Against Us**

No one may bring a legal action against us under this insurance unless:

**a.** There has been full compliance with all of the terms of this insurance; and

**b.** The action is brought within two years after the date of the "data breach" is first discovered by you.

**6. Liberalization**

If we adopt any revision that would broaden the coverage under this Data Breach Coverage Form without additional premium within 45 days prior to or during the "policy period", the

**The Hanover**
Insurance Group™

OBCH332709      1304500

broadened coverage will immediately apply to this coverage form.

**7. No Benefit to Bailee**

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

**8. Other Insurance**

**a.** If you may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Data Breach Coverage Form, we will pay only our share of the covered loss, damage or expense. Our share is the proportion that the applicable Limit of Insurance under this Coverage Form bears to the Limits of Insurance of all insurance covering on the same basis.

**b.** If there is other insurance covering the same "data breach", other than that described in **a.** above, we will pay only for the amount for Data Breach Services, Data Breach Expense Coverages, and Additional Expense Coverages in excess of the amount due from that other insurance. We will not pay more than the applicable Limit of Insurance shown in the **SCHEDULE**.

**9. Policy Period, Coverage Territory**

Under this Endorsement:

**a   Policy Period**

This policy applies only to "data breaches" that are first discovered by you during the "policy period".

**b. Coverage Territory**

Coverage applies anywhere in the world, provided that no trade or economic sanction, embargo, insurance or other laws or regulations prohibit the "insurer" from covering the loss. The "data breach" must involve "private personal data" that was within your care, custody or control.

Data Breach Services are only available in jurisdictions or countries that maintain "breach notice law" and, in the case of Fraud Alert, an operative credit monitoring service.

**10. Transfer Of Rights Of Recovery Against Others To Us**

If any person or organization to or for whom we make payment under this Coverage Form has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

**a.** Prior to a loss.

**b.** After a loss only if, at time of loss, that party is one of the following:

**(1)** Someone insured by this insurance;

**(2)** A business firm:

**(a)** Owned or controlled by you; or

**(b)** That owns or controls you; or

**c.** Your tenant.

This will not restrict your insurance.

**11. Cancellation**

With regard to the cancellation of this policy, the provisions outlined in the Common Policy Conditions, Businessowners Coverage Part, Technology Professional Advantage, the Technology Professional Advantage Plus, whichever are included in the policy, shall apply and will automatically include the non-renewal or cancellation of this coverage form. You agree that no further notice regarding termination of this Coverage Form will be required.

**12. Due Diligence**

You agree to use due diligence to prevent and mitigate loss covered under this Coverage Form. This includes, but is not limited to, complying with reasonable and industry-accepted protocols for providing and maintaining the following:

**a.** Physical security for your premises, computer systems and hard copy files;

**b.** "Computer" and Internet security;

**c.** Periodic backups of computer data;

**d.** Protection, including but not limited to, encryption of data, for transactions such as processing credit card, debit card and check payments; and

**e.** Disposal of files containing "personal private data", including but not limited to shredding hard copy files and destroying physical media used to store "data".

**13. No Legal Advice Provided**

We are not your legal advisor and do not provide legal counsel to you. None of the services we provide under this Coverage Form constitute legal advice to you by us. Our determination of what is or is not covered under this Coverage Form does not represent legal advice or counsel from us about what you should or should not do.

**14. Pre-Notification Consultation**

You agree to consult with us prior to the issuance of notification to "potentially-identified persons". We assume no responsibility under this Coverage Form for any services promised to "potentially-identified persons" without our prior agreement. You must provide the following at our pre-notification consultation with you:

**a.** The exact list of "potentially-identified persons" to be notified, including contact information.

**b.** Information about the "data breach" that may appropriately be communicated with "potentially-identified persons".

**15. Service Providers**

**a.** We will only provide Data Breach Services through our Designated Service Provider(s). Any such services that are provided by any other individual or entity will not be covered by this Coverage Form.

**b.** We will only pay Data Breach Expense Coverages and Additional Expense Coverages (except for Data Breach Ransom Coverage and Data Breach Reward Coverage) that are provided by service providers approved by us prior to the start of any of these services. If we suggest a service provider(s) but you prefer to use an alternative service provider(s), our coverage is subject to the following limitations:

**(1)** Such alternate service provider(s) must be approved by us; and

**(2)** Our payment for services provided by any alternative service provider(s) will not exceed the amount that we would have paid using the service provider we had suggested.

**c.** You will have a direct relationship with any service provider, including our Designated Service Provider, paid for in whole or in part under this Coverage Form. All service providers work for you.

**16. Data Breach Services**

The following conditions apply with respect to any data breach services provided to you or to any "potentially-identified person" or "identified person" by our designees or any service firm paid for under this Data Breach Coverage Form:

**a.** The effectiveness of data breach services depends on your cooperation and assistance.

**b.** All data breach services may not be available or applicable to all "potentially identified persons" or "identified persons". For example, "potentially identified persons" who are minors or foreign nationals may not have credit records that can be provided or monitored.

**c.** We do not warrant or guarantee that the data breach services paid for in whole or in part by this Coverage Form will end or eliminate all problems associated with a covered "data breach".

**d.** We are not liable for any act or omission by any Designated Service Provider who is not our employee nor the employee of a third party provider of the data breach services described in this Coverage Form. We cannot be held responsible for failure to provide or for the delay in providing services when such failure or delay is caused by conditions beyond our control

**e.** Data Breach Services are only available in jurisdictions or countries that maintain "breach notice law" and, in the case of Fraud Alert, an operative credit monitoring service.

**17. Cooperation**

You agree to cooperate with and provide full disclosure of the circumstances surrounding a "data breach" to applicable federal or state regulators, law enforcement personnel, to us, and to our Designated Service Provider(s).

If you fail to cooperate, we will not be obliged under this contract for any services and expenses that cannot be provided due to your failure to cooperate.

**18. Appraisal**

If we and you disagree on the amount of net income, operating expense or loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of the net income, operating expense and loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

**SECTION F - DEFINITIONS**

**1. Account Takeover**

"Account takeover" means the takeover by a third party of one or more existing deposit accounts, credit card accounts, debit card accounts, ATM cards, or lines of credit in the name of an "identified person".

**2. Breach Notice Law**

"Breach Notice Law" means any federal, state, local or foreign privacy legislation, regulation and their functional equivalent that requires an entity to provide notice to affected natural persons or data protection authorities regarding any actual or potential unauthorized access to "private personal data".



**3. Breach Restoration Expenses**

"Breach Restoration Expenses" means the reasonable cost of the blank "media" and the reasonable cost of labor for the actual transcription or copying of "data" or "media" in order to reproduce such "data" or replace such "media" from "data" and/or media of comparable kind or quality.

**4. Business Income**

"Business Income" means your:

**a.** Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred if there had been no impairment or denial of "business operations" due to a covered "data breach" and

**b.** Continuing normal operating expenses incurred, including payroll.

"Business income" does not include interest or investment income.

**5. Business Operations**

"Business Operations" means your usual and regular business activities.

**6. Computer**

"Computer" means a device or group of hardware devices on which software, applications, script, code and "computer" programs containing "data" can be operated and viewed.

**7. Cyber Attack**

"Cyber Attack" means the transmission of fraudulent or unauthorized "data" that is intended to and successfully modifies, alters, damages, destroys, deletes, records, transmits, or consumes information within a "system" without authorization, including "data" that is self-replicating or self-propagating, and which causes the disruption of the normal operation of a "system".

**8. Data**

"Data" means a representation of information, knowledge, facts, concepts or instructions which are being processed or have been processed in a "computer".

**9. Data Breach**

"Data breach" means:

**a.** The loss, theft, accidental release or accidental publication of "private personal data" entrusted to you as respects one or more "potentially-identified persons" if such loss, theft, accidental release or accidental publication has or could reasonably result in the fraudulent use of such information;

**b.** Failure to protect "private personal data" including a "Cyber Attack" on your "system" or the actions of a "rogue employee" which directly results in the unauthorized disclosure of "private personal data";

**c.** The theft or negligent loss of hardware, "media", "system output", "data" or other documents owned or controlled by you, or on your behalf, on which "private personal data" is stored or recorded;

**d.** The failure or violation of the security of your "system" including the impairment or denial of access to your "system", including a "Cyber Attack" or unauthorized acts or omissions by a "rogue employee" which damages or harms your "system" or the "system" of a third party for whom you provide "services" for a fee;

**e.** The theft or loss of hardware or "media" controlled by you, or on your behalf, on which "data" is stored;

**f.** Disposal or abandonment of "private personal data" without appropriate safeguards such as shredding or destruction, subject to the following provisions:

**(1)** Your failure to use appropriate safeguards must be accidental and not intentional, reckless or deliberate and not in violation of your Due Diligence obligations under Paragraph **2. Additional Conditions**, Paragraph **a.**;

**(2)** Such disposal or abandonment must take place during the time period for which this Data Breach Coverage Form is effective; or

**g.** The failure to disclose an event described in **a.** thru **f.** above which violates any "breach notice law".

All incidents of "data breach" that are discovered at the same time or arise from the same cause or from a series of similar causes would be considered one "data breach". All theft of "private personal data" caused by any person or in which that person is involved, whether the result of a single act or series of related acts, is considered a single incident of "data breach".

**10. Defense Expenses**

"Defense Expenses" means the reasonable and necessary legal fees and expenses including attorney fees and expert fees incurred by us or by you (other than regular or overtime wages, salaries, fees or benefits of you or your employees) in the investigation, defense, settlement and appeal of a claim, including but not limited to cost of consultants and witnesses, premiums for appeal, injunction, attachment or supersedes bonds regarding such claim.

**11. Electronic Data**

"Electronic data" means information, facts or computer programs stored as or on, created or used on, or transmitted to or from software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

**12. Expense**

"Expense" means "Business Income", "Extra Expense", "Breach Restoration Expenses", and loss payable under the Data Breach Theft coverage incurred by you.

**13. Extra Expense**

"Extra Expense" means the reasonable and necessary expenses you incur during the "period of restoration" in an attempt to continue "business operations" that have been interrupted due to a "data breach" and that are over and above the expenses such you would have incurred if no loss had occurred. "Extra expense" does not include any costs of updating, upgrading or remediation of your "system" that are not otherwise covered under this Coverage Part.

**14. Fines, Penalties or Assessments**

"Fines, penalties or assessments" means any fines, assessments, surcharges, attorneys' fees, court costs or other penalties which you shall be required to pay as a result of a "data breach" or pursuant to any contract, law, regulation or order.

**15. Identified Person**

"Identified person" means a "potentially-identified person" who is or appears to be a victim of "identity theft" or "account takeover" that may reasonably have arisen from a covered "data breach".

**16. Identity Theft**

"Identity theft" means the fraudulent use of "private personal data". This includes the fraudulent use of such information to establish credit accounts, secure loans, enter into contracts or commit crimes.

"Identity theft" does not include the fraudulent use of a business name, d/b/a or any other method of identifying a business activity.

"Identity theft" does not include the use of a valid credit card, credit account or bank account. However, "identity theft" does include the fraudulent alteration of account profile information, such as the address to which statements are sent.

**17. Media**

"Media" means electronic applications, software, scripts and programs on which "data" is stored so that it can be collected, read, retrieved or processed by a "computer". "Media" does not mean paper, or other tangible property, money, debt, equity, instruments, accounts, bonds, bills, records, abstracts, deeds or manuscripts

**18. Network**

"Network" means any services provided by or through the facilities of any electronic or "computer" communication system, allowing the input, output, examination, visualization or transfer of "data" or programs from one "computer" to your "computer". "Network" incudes any shared networks, Internet access facilities, or other similar facilities for such systems, in which you participate.

**19. Period of Restoration**

"Period of Restoration" means:

**a.** The period of time that begins:

**(1)** For "Extra Expenses", immediately after the actual or potential impairment or denial of "business operations" occurs; and

**(2)** For the loss of "Business Income", after 24 hours or the number of hours shown as the Cyber Business Interruption Waiting Period Deductible in the **SCHEDULE** on this Coverage Forms, whichever is greater, immediately following the time the actual impairment or denial of "business operations" first occurs.

**b.** The "Period of Restoration" ends on the earlier of the following:

**(1)** The date "business operations" are restored, with due diligence and dispatch, to the condition that would have existed had there been no impairment or denial; or

**(2)** Sixty (60) days after the date the actual impairment or denial of "business operations" first occurs;

The expiration date of this Policy or Coverage Part will not cut short the "period of restoration".

**20. Policy Period**

"Policy Period" means the period of time from the inception date shown the Declarations to the earlier of the expiration date shown in the Declarations or the effective date of termination of the Policy or Data Breach Coverage Form.



OBCH332709        1304500

**21. Potentially-Identified Person**

"Potentially-identified person" means any person who is your current, former or prospective customer, employee, client, member, or patient and whose "private personal data" is lost, stolen, accidentally released or accidentally published by a "data breach" covered under this Coverage Form.

"Potentially-identified person" does not include any business or organization. Only an individual person may be a "potentially-identified person".

A "potentially-identified person" may reside anywhere in the world.

**22. Private Personal Data**

"Private Personal Data" means a natural person's first name or first initial and last name in combination with:

**a.** Non-public personally identifiable information, as defined in applicable federal, state, local or foreign legislation or regulations including, social security number, driver's license number or other personal identification number (including an employee identification number or student identification number);

**b.** Financial account number (including a bank account number, retirement account number or healthcare spending account number);

**c.** Credit, debit or payment card numbers;

**d.** Information related to employment by you;

**e.** Individually identifiable information considered nonpublic personal information pursuant to Title V of the Gramm-Leach Bliley Act of 1999, as amended; or

**f.** Individually identifiable information considered protected health information pursuant to the Health Insurance Portability and Accountability Act of 1996 (HIPAA), as amended;

which is intended to be accessible only by natural persons or entities you have specifically authorized to have such access.

"Private personal data" does not mean or include information that is otherwise available to the public, such as names and addresses with no correlated Social Security numbers or account numbers.

**23. Proactive Monitoring Services**

"Proactive monitoring services" means the following services if you offer to provide them to "potentially-identified persons" who contact our Designated Service Provider:

**a.** A credit report;

**b.** credit monitoring; and or

**c.** fraud/public records monitoring service or services.

**24. Regulatory Investigation**

"Regulatory Investigation" means a formal request for information, civil investigative demand or civil proceeding, including requests for information related thereto, brought by or on behalf of a state Attorney General, the Federal Trade Commission, the Federal Communications Commission or any other federal, state, local or foreign governmental agency.

**25. Rogue Employee**

"Rogue Employee" means a permanent employee of yours, other than an "executive", who has gained unauthorized access or has exceeded authorized access to a "system" or "private personal data" owned or controlled by you or an entity that is authorized by you to hold, process or store "private personal data" for your exclusive benefit.

**26. Services**

"Services" means "computer" time, data processing, storage functions or other uses of your "system".

**27. System**

"System" means a "computer", "media" and all input, output, processing storage and communication devices controlled, supervised or accessed by operating software that is proprietary to, or licensed to, the owner of the "computer".

**28. System Output**

"System Output" means a tangible substance on which "private personal data" is printed from a "System".



OBCH332709      1304500

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The following provisions are added to the Businessowners Policy and apply to Property and Liability Coverages:

**A. CAP ON CERTIFIED TERRORISM LOSSES**

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

1. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**B.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for loss or injury or damage that is otherwise excluded under this Policy.

ALL OTHER TERMS, CONDITIONS, AND EXCLUSIONS REMAIN UNCHANGED.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION OF PUNITIVE DAMAGES RELATED TO A CERTIFIED ACT OF TERRORISM

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The following provisions are added to **Section II - Liability** paragraph **B. Exclusions** of the Businessowners Coverage Form **391-1003:**

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM PUNITIVE DAMAGES**

Damages arising, directly or indirectly, out of a "certified act of terrorism" that are awarded as punitive damages.

**B.** The following definition is added:

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**C.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Policy.

ALL OTHER TERMS, CONDITIONS, AND EXCLUSIONS REMAIN UNCHANGED.

The
**Hanover**
Insurance Group™

OBCH332709      1304500

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## ASSOCIATES AND FAMILY MEMBERS ADDITIONAL COVERAGE ENDORSEMENT

This endorsement modifies insurance provided under the following:

DATA BREACH COVERAGE FORM

The following Additional Coverage is added to **SECTION A - COVERAGES** of the Data Breach Coverage Form:

**A. ASSOCIATES AND FAMILY MEMBERS ADDITIONAL COVERAGE**

As described in Paragraphs **1.** and **2.** below, we will extend certain **Data Breach Covered Services** to your "associates" and to their "family members" whose "private personal data" under the circumstances described below. This Additional Coverage does not apply to a "data breach" involving information owned or controlled by you.

**1.** An "associate" or "family member" whose "private personal data" is lost or stolen by circumstances such as the loss of a credit card, debit card, ATM card, checkbook, driver's license, or passport; or the loss of a wallet, purse, or briefcase containing any of the foregoing, may contact our Designated Service Provider for the Fraud Alert service described in **Section A - Coverages,** paragraph **1.a.(3)** of the Data Breach Coverage Form.

**2.** An "associate" or "family member" who, as a result of loss or theft of "private personal data" described in Paragraph **1.** above, becomes a victim of "identity theft" or "account takeover", may contact our Designated Service Provider for the Identity Restoration Case Management services described in **Section A - Coverages,** paragraph **1.a.(4)** of the Data Breach Coverage Form.

We will provide these services for a period of one year following the data we are notified of the initial loss of "private personal data".

**B. DEFINITIONS**

Under **Section F - Definitions**, Paragraph

**1. Account Takeover** is replaced with the following:

**1. Account Takeover**

"Account takeover", as respects "associates" or "family members", means the takeover by a third party of one or more existing deposit accounts, credit card accounts, debit card accounts, ATM cards, or lines of credit in the name of an "associate" or "family member".

"Account takeover", as respects "associates" or "family members", includes the unauthorized takeover of one or more of the "associate's" existing deposit accounts, credit card accounts, debit card accounts, ATM cards, or lines of credit by a "family member".

Under **Section F - Definitions**, the following Definitions are added:

**1.** "Associate" means an employee of the business insured under this policy.

**2.** "Family Member" means:

**a.** an "associate's" spouse, or Registered Domestic Partner, or the legal equivalent thereof; or

**b.** a relative under 23 years of age who is a dependent of the "associate".

Includes copyrighted material of Insurance Services Office, Inc., with its permission



OBCH332709     1304500

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ILLINOIS CHANGES - DATA BREACH COVERAGE FORM

This endorsement modifies insurance provided under the following:

DATA BREACH COVERAGE FORM

**A. SECTION E - CONDITIONS**, paragraph **11.** is replaced by the following:

**11. Cancellation and Non-Renewal:**

    **a.** If we decide to cancel this Coverage Part in the first 60 days, we will mail:

        **(1)** 10 days' written notice of cancellation for nonpayment of premium; or

        **(2)** 30 days' written notice of cancellation for any other reason.

    If this Coverage Part has been in effect for 60 days or more or is a renewal of a Coverage Part we issued, then we will mail:

        **(3)** 10 days' written notice of cancellation for nonpayment of premium; or

        **(4)** 60 days' written notice of cancellation for one for more of the following reasons:

            **(a)** The Coverage Part was obtained through a material representation;

            **(b)** Any insured violated any of the terms and conditions of the policy;

            **(c)** The risk originally accepted has measurably increased;

            **(d)** Certification is provided to the Director of Insurance in Illinois of the loss of reinsurance by us which provided coverage to us for a substantial part of the underlying risk insured; or

            **(e)** A determination is made by the Director of Insurance in Illinois that the continuation of the policy could place us in violation of the insurance laws of Illinois.

    Cancellation notices will state the reason for cancellation and will be mailed to you and the agent or broker of record at the last addresses known to us. We will maintain proof of mailing on a recognized U.S. Post Office form or a form acceptable to the U.S. Post Office or other commercial mail delivery service.

    **b.** If we decide not to renew this Coverage Part, we will mail or deliver written notice not less than 60 days before the expiration date to the named insured shown in the Declarations and to the agent or broker of record at the last addresses known to us. Notice will provide an explanation of the reason for nonrenewal. We will maintain proof of mailing on a recognized U.S. Post Office form or a form acceptable to the U.S. Post Office or other commercial mail delivery service.

**B. SECTION E - CONDITIONS**, paragraph **2.** is replaced by the following:

**2. Concealment, Misrepresentation Or Fraud**

    **a.** This Coverage Form is void if you or any insured commit fraud or conceal or misrepresent a fact in the process leading to the issuance of this insurance, and such fraud, concealment or misrepresentation is stated in the policy or endorsement or in the written application for this policy and:

        **(1)** Was made with actual intent to deceive; or

        **(2)** Materially affected either our decision to provide this insurance or the hazard we assumed.

    However, this condition will not serve as a reason to void this Coverage Form after the Coverage Form has been in effect for one year or one policy term, whichever is less.

    **b.** This Coverage Form is void if you or any other insured, at any time subsequent to the issuance of this insurance, commit fraud or intentionally conceal or misrepresent a material fact relating to:

        **(1)** This Coverage Form; or

        **(2)** A claim under this Coverage Form.

    **c.** Notwithstanding the limitations stated in **2.a.** above, we may cancel the Coverage Form in accordance with the terms of the Cancellation Condition.

**C.** **SECTION E - CONDITIONS,** paragraph **18.** is replaced by the following:

**18. Appraisal**

If we and you disagree on the amount of net income, operating expense or loss either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of the net income, operating expense and loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will not be binding.

Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

However, we will pay your appraiser's fee and the umpire's appraisal fee, if the following conditions exist:

**c.** You demanded the appraisal; and

**d.** The amount of net income, operating expense and loss, as set by your appraiser, is agreed to by our appraiser or by the umpire.

If there is an appraisal, we will still retain our right to deny the claim; and you will retain your right to file suit against us.

**D.** **SECTION E - CONDITIONS,** Paragraph **5.** is replaced by the following:

**5. Legal Action Against Us**

No one may bring a legal action against us under this insurance unless:

**a.** There has been full compliance with all of the terms of this insurance; and

**b.** The action is brought within two years after the date we first deny the claim in whole or in part.

**E.** The following is added to **SECTION F - DEFINITIONS,** Paragraph **10. Defense Expenses:**

"Defense Expenses" do not include our routine ongoing expenses or overhead such as salaries of our staff or our staff attorneys**.**

**F.** **SECTION E - CONDITIONS** Paragraph **8.** Subparagraph **b.** is replaced by the following**:**

**b.** If there is other insurance covering the same "data breach", other than that described in **a.** above, we will share proportionatley with such other coverage in the benefits or amounts due for Data Breach Services, Data Breach Expense Coverages, and Additional Expense Coverages. We will not pay more than the applicable Limit of Insurance shown in the **SCHEDULE.**

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.



OBCH332709     1304500

**THIS IS A CLAIMS-MADE AND REPORTED COVERAGE ENDORSEMENT.**

# EMPLOYMENT PRACTICES LIABILITY
# INSURANCE COVERAGE ENDORSEMENT - ILLINOIS

Throughout this Coverage Endorsement (hereinafter referred to as "EPL Coverage Endorsement"), the words "you" and "your" refer to the "named insured(s)" shown in the Supplemental Declarations of this EPL Coverage Endorsement and any other person(s) or organization(s) qualifying as a "named insured" under this EPL Coverage Endorsement. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under SECTION III. WHO IS AN INSURED.

Other words and phrases that appear in "quotations" have special meaning. Refer to SECTION VII. DEFINITIONS.

The terms and conditions of the Cancellation Clause of the Common Policy Conditions, 391-1003 are hereby incorporated herein and shall apply to coverage as is afforded by this EPL Coverage Endorsement, unless specifically stated otherwise in an endorsement(s) attached hereto.

## SECTION I. WHAT IS COVERED

### A. Insuring Agreement

1. "We" shall pay those "losses" arising out of "your" "wrongful employment act" against "your" "employees", to which this insurance applies. The "wrongful employment act" must commence or take place after the "original inception date", but before the end of the "EPL coverage period". A "claim" or "suit" for a "wrongful employment act" must be first made against "you" during the "EPL coverage period" or any Extended Reporting Period (if applicable) and reported to "us" pursuant to the terms of this EPL Coverage Endorsement.

2. A "claim" or "suit" by a person or organization seeking damages will be deemed to have been made at the earlier of the following times:

   a. When written notice of such "claim" or "suit" is received and recorded by any "insured" or by "us", whichever comes first; or

   b. When "we" make any settlement in accordance with the terms of this EPL Coverage Endorsement.

### B. Defense

1. "We" have the right and duty to defend and appoint an attorney to defend any "claim" or "suit" brought against any "insured" for a "wrongful employment act" to which this insurance applies, even if the "claim" or "suit" is groundless or fraudulent.

2. "We" have the right to investigate and settle any "claim" or "suit" that "we" believe is proper. "You" shall be entitled to effectively associate in the defense of any "claim".

3. "We" shall pay all reasonable costs "we" ask the "insured" to incur while helping "us" investigate or defend a "claim" or "suit". "We", however, will not pay more than $100 per day for earnings lost by the "insured" because of time taken off from work.

4. "We" shall pay premiums for appeal bonds, or bonds to release property being used to secure a legal obligation, for a covered "suit". "We" shall only pay, however, for bonds valued up to "our" Aggregate EPL Limit of Liability. "We" shall have no obligation to appeal or to obtain these bonds.

5. Payments for "defense costs" are included within the Aggregate EPL Limit of Liability. They are not in addition to the Aggregate EPL Limit of Liability. "Our" duty to defend or to make payment of any "claim" or "suit pursuant to paragraphs 1-4 above, ends after the Aggregate EPL Limit of Liability has been exhausted by payment of "loss", including "defense costs".

## C. Transfer of Control

1. "You" may take over control of any outstanding "claim" or "suit" previously reported to "us", but only if "we", in "our" sole discretion, decide that you should, or if a court orders "you" to do so.

2. Notwithstanding subsection 1 of this Clause C, in all events, if the Aggregate EPL Limit of Liability is exhausted, "we" will notify "you" of all outstanding "claims" or "suits" and "you" will take over control of the defense. "We" will help transfer control of the "claims" and "suits" to "you".

3. "We" shall take whatever steps are necessary to continue the defense of any outstanding "claim" or "suit" and avoid a default judgment during the transfer of control to "you". If "we" do so, "we" shall not waive or give up any of "our" rights. "You" shall pay all reasonable expenses "we" incur for taking such steps after the Aggregate EPL Limit of Liability is exhausted.

## SECTION II. EXCLUSIONS-WHAT IS NOT COVERED

This insurance does not apply to:

### A. Profit or Advantage

Any liability arising out of the gaining of any profit or advantage to which an "insured" was not legally entitled. However, to the extent that a "claim" or "suit" is otherwise covered under this EPL Coverage Endorsement, we will defend a "claim" or "suit" asserting that an "insured" gained a profit or advantage to which the "insured" was not legally entitled, until such time as the "insured" is determined to have gained a profit or advantage to which the "insured" was not legally entitled;

### B. Criminal Acts

Any liability arising out of any dishonest, fraudulent, criminal, or malicious act by or at the direction of any "insured". However, to the extent that a "claim" or "suit" is otherwise covered under this EPL Coverage Endorsement we will defend a "claim" or "suit" asserting a dishonest, fraudulent, criminal or malicious act until such time as the "insured" is determined to have committed such dishonest, fraudulent, criminal or malicious act;

The "wrongful employment act(s)" of an "insured" shall not be imputed to any other "insured" for the purpose of determining the applicability of the foregoing exclusions A and B.

### C. "Property Damage"

Any liability arising out of "property damage";

### D. "Bodily Injury"

Any liability arising out of "bodily injury";

### E. Worker's Compensation, Social Security and Unemployment, Disability and Retirement Benefits

Any liability arising out of any obligation pursuant to any worker's compensation, disability benefits, unemployment compensation, unemployment insurance, retirement benefits, social security benefits or similar law. This exclusion, however, shall not apply to "loss" arising from a "claim" or "suit" for "retaliation";

### F. Contractual Liability

Any liability arising out of any actual or alleged contractual liability of any "insured" under any express contract or agreement. This exclusion, however, shall not apply to the extent any liability does not arise under such express contract or agreement;

### G. ERISA, COBRA, WARN, OSHA and NLRA

Any liability arising out of the "insured's" failure to fulfill any responsibility, duty or obligation imposed by the Employment Retirement Income Security Act of 1974 (ERISA), Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA), Worker's Adjustment and Retraining Notification Act, Public Law 100-379 (1988) (WARN), Occupational Safety and Health Act (OSHA), National Labor Relations Act of 1947 (NLRA), any rules or regulations of the foregoing promulgated thereunder, and amendments thereto or any similar provisions of any federal, state, or local statutory or common law. This exclusion, however, shall not apply to "loss" arising from a "claim" or "suit" for "retaliation";



OBCH332709    1304500

### H. FLSA

Any liability arising out of any obligation under the Fair Labor Standards Act, or any violations of any federal, state, local or foreign statutory law or common law that governs the same topic or subject and any rules, regulations and amendments thereto (except the Equal Pay Act). This exclusion, however, shall not apply to "loss" arising from a "claim" or "suit" for "retaliation";

Any liability arising out of claims for unpaid wages or overtime pay for hours actually worked or labor actually performed by any "employee" of the "insured", for improper payroll deductions or any violations of any federal, state, local or foreign statutory law or common law that governs the same topic or subject and any rules, regulations and amendments thereto.

### I. Non-Monetary Relief

That part of any "claim" or "suit" seeking any non-monetary relief, including but not limited to: (1) injunctive relief; (2) declaratory relief; (3) disgorgement; (4) job reinstatement; (5) costs or expenses incurred in accommodating any disabled person, pursuant to the Americans with Disabilities Act of 1990 (ADA), including amendments to that law or similar federal, state or local statutory or common law; (6) any liability or costs incurred in connection with any educational, sensitivity or other corporate program, policy or seminar relating to a "claim" or "suit" alleging discrimination or other "wrongful employment act"; or (7) other equitable remedies, including as to all of the above, the cost of compliance therewith; provided, however, if such request for non-monetary relief is part of an otherwise covered "claim" or "suit", "we" will not seek to allocate "defense costs" for the portion of the "claim" or "suit" seeking non-monetary relief;

### J. Certain "Insureds"

Any "claim" or "suit" brought by any "insured". This exclusion, however, shall not apply to a "claim" or "suit" brought by an "employee" of the "insured", other than an "employee" who is or was a director of the "insured";

### K. Prior Knowledge

Any liability arising out of incidents, circumstances or "wrongful employment acts", which an "insured", prior to the "original inception date" as shown in the Supplemental Declarations of this EPL

Coverage Endorsement, had knowledge or which an "insured" could have reasonably foreseen might result in a "claim" or "suit";

### L. Prior Notice

Any liability arising out of the facts alleged, or to the same or "related wrongful employment acts" alleged or contained in any "claim" or "suit" which has been reported, or in any circumstances of which notice has been given, under any policy of which this EPL Coverage Endorsement is a renewal or replacement or which it may succeed in time;

### M. Securities Holder

Any "claim" or "suit" brought by a securities holder of the "insured" in their capacity as such, whether directly, derivatively on behalf of the "insured", or by class action;

### N. Outside Boards

Any liability arising out of any actual or alleged act or omission of an "insured" serving in any capacity, other than as a director, officer or "employee" of the "insured" entity.

## SECTION III. WHO IS AN INSURED

### A. Individual

If "you" are shown in the Supplemental Declarations of this EPL Coverage Endorsement as an individual, "you" and "your" spouse are "insureds", only for the conduct of a business of which "you" are the sole owner.

### B. Corporation

If "you" are shown in the Supplemental Declarations of this EPL Coverage Endorsement as a corporation or organization other than a partnership or joint venture, "you" and "your" "subsidiaries" are "insureds".

### C. Partnership or Joint Venture

If "you" are shown in the Supplemental Declarations of this EPL Coverage Endorsement as a partnership or joint venture, "you" are an "insured". "Your" partners or co-venturers and their spouses are also "insureds", but only for the conduct of "your" business.

### D. "Employees"

"Your" "employee", executive officers and directors are "insureds", only for the conduct of "your" business within the scope of their employment or their duties as executive officers or directors.

**E. Extensions**

1. Subject otherwise to the terms hereof, this EPL Coverage Endorsement shall cover "loss" arising from any "claims" or "suits" made against the estates, heirs, or legal representative of deceased individual "insureds", and the legal representatives of individual "insureds", in the event of incompetency, who were individual "insureds" at the time the "wrongful employment acts", upon which such "claims" or "suits" are based, were committed.

2. Subject otherwise to the terms hereof, this EPL Coverage Endorsement shall cover "loss" arising from all "claims" and "suits" made against the lawful spouse (whether such status is derived by reason of statutory law, common law or otherwise of any applicable jurisdiction in the world) of an individual "insured", including a "claim" or "suit" that seeks damages recoverable from marital community property, property jointly held by the individual "insured" and the spouse, or property transferred from the individual "insured" to the spouse; provided, however, that this extension shall not afford coverage for a "claim" or "suit" arising out of any "wrongful employment act" of the spouse, but shall apply only to "claims" or "suits" arising out of any "wrongful employment acts" of an individual "insured", subject to this EPL Coverage Endorsement's terms, conditions and exclusions.

**SECTION IV. LIMIT OF LIABILITY (including "defense costs")**

A. The Aggregate EPL Limit of Liability shown in the Supplemental Declarations of this EPL Coverage Endorsement and the information contained in this section limits the most "we" shall pay for all "loss" arising out of "claims" and "suits" first made against "insureds" during the "EPL coverage period" or Extended Reporting Period (if applicable), regardless of:

1. the number of persons or organizations covered by this EPL Coverage Endorsement; or

2. the number of "claims" made or "suits" brought; or

3. the length of the "EPL coverage period".

B. The Aggregate EPL Limit of Liability is the most "we" shall pay for all "losses" covered under this EPL Coverage Endorsement, including amounts incurred for "defense costs".

C. The Aggregate EPL Limit of Liability for the Extended Reporting Period shall be part of, and not in addition to the Aggregate EPL Limit of Liability for the "EPL coverage period".

D. All "claims" and "suits" arising from the same or "related wrongful employment acts" shall be treated as arising out of a single "wrongful employment act".

E. All "claims" or "suits" arising out of one "wrongful employment act" shall be deemed to be made on the date that the first such "claim" is made or "suit" is brought. All "claims" asserted in a "class action suit" will be treated as arising out of a single "wrongful employment act".

F. Any "claim" or "suit" which is made subsequent to the "EPL coverage period" or Extended Reporting Period (if applicable) which, pursuant to Section VI, Clause D(3) and (4) is considered made during the "EPL coverage period" or Extended Reporting Period shall also be subject to the one Aggregate EPL Limit of Liability stated in the Supplemental Declarations of this EPL Coverage Endorsement.

**SECTION V. DEDUCTIBLE**

"You" shall be responsible for the deductible amount shown in the Supplemental Declarations of this EPL Coverage Endorsement with respect to each "claim" and "suit" and "you" may not insure against it. A single deductible amount shall apply to "loss" arising from all "claims" and "suits" alleging the same "wrongful employment act" or "related wrongful employment acts". Expenses "we" incur in investigating, defending and settling "claims" and "suits" are included in the deductible. The deductible is not included within the Aggregate EPL Limit of Liability.

**SECTION VI. CONDITIONS**

"We" have no duty to provide coverage under this EPL Coverage Endorsement, unless there has been full compliance with all the Conditions contained in this EPL Coverage Endorsement.

**A. Assignment**

The interest of any "insured" is not assignable. "You" cannot assign or transfer "your" interest in this EPL



OBCH332709    1304500

Coverage Endorsement without "our" written consent attached to the EPL Coverage Endorsement.

**B. Bankruptcy or Insolvency**

"Your" bankruptcy, insolvency or inability to pay, will not relieve "us" from the payment of any "claim" or "suit" covered by this EPL Coverage Endorsement.

Under no circumstances will "your" bankruptcy, insolvency, or inability to pay require "us" to drop down, in any way replace, or assume any of "your" obligations with respect to the Deductible provisions of this EPL Coverage Endorsement.

**C. Coverage Territory**

"We" cover "wrongful employment acts" in the United States of America, its territories and possessions, Puerto Rico, or Canada, but only if the "claim" is made and the "suit" is brought for such "wrongful employment act" in the United States of America, its territories and possessions, Puerto Rico, or Canada.

**D. Duties in the Event of an Incident, "Claim" or "Suit"**

1. If, during the "EPL coverage period", incidents or events occur which "you" reasonably believe may give rise to a "claim" or "suit" for which coverage may be provided hereunder, such belief being based upon either written notice from the potential claimant or the potential claimant's representative; or notice of a complaint filed with EEOC, DOL or OFCCP (or similar federal, state or local agency); or upon a contemporaneously made memorandum of an oral "claim", allegation or threat, "you" shall give written notice to "us" as soon as practicable and either:

   a. anytime during the "EPL coverage period" or the Extended Reporting Period (if applicable); or

   b. within thirty (30) days after the end of the "EPL coverage period" or Extended Reporting Period (if applicable), as long as such "claim" or "suit" is reported no later than thirty (30) days after the date such "claim" or "suit" was first made against an "insured".

2. If a "claim" is made or a "suit" is brought against any "insured", "you" must:

   a. Immediately record the specifics of the "claim" or "suit" and the date received; and

   b. Provide "us" with written notice, as described in subsection 3. below, as soon as practicable.

3. Such written notice of "claim" or "suit" shall contain:

   a. The identity of the person(s) alleging a "wrongful employment act";

   b. The identity of the "insured(s)" who allegedly were involved in the incidents or events;

   c. The date the alleged incidents or events took place; and

   d. The written notice or contemporaneously prepared memorandum referred to above.

   If written notice is given to "us" during the "EPL coverage period" or Extended Reporting Period (if applicable), pursuant to the above requirements, then any "claim" or "suit" which is subsequently made against any "insureds" and reported to "us" alleging, arising out of, based upon or attributable to such circumstances or alleging any "related wrongful employment act" to such circumstances, shall be considered made at the time such notice of such circumstances was first given.

4. If "you" submit written notice of a "claim" or "suit", pursuant to this Clause D, then any "claim" or "suit" that may subsequently be made against an " insured" and reported to "us" alleging the same or a "related wrongful employment act" to the "claim" or "suit" for which such notice has been given shall be deemed, for the purpose of this insurance, to have been first made during the "EPL coverage period" in effect at the time such written notice was first submitted to "us".

5. "You" and any other "insured" must:

   a. Immediately send "us" copies of any demands, notices, summonses or legal papers received in connection with any "claim" or "suit";

   b. Authorize "us" to obtain records and other information;

   c. Cooperate with "us" in the investigation, settlement or defense of the "claim" or "suit";

    **d.** Assist "us", upon "our" request, in the enforcement of any right against any person or organization which may be liable to the "insured" because of injury or damage to which this insurance may also apply;

    **e.** Take no action, or fail to take any required action, that prejudices the rights of the "insureds" or "us" with respect to such "claim" or "suit".

**6.** No "insureds" will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense without "our" prior written consent.

**E. Transfer of Rights of Recovery Against Others to "Us"**

"You" may be able to recover all or part of a "loss" from someone other than "us". "You", therefore, shall do all that is possible after a "loss" to preserve any such right of recovery. If "we" make a payment under this EPL Coverage Endorsement, that right of recovery shall belong to "us". "You" shall do whatever is necessary, including signing documents, to help "us" obtain that recovery.

**F. Extended Reporting Period**

**1.** Solely with respect to this EPL Coverage Endorsement and except as indicated below, if "you" or "we" shall cancel or refuse to renew this EPL Coverage Endorsement, "you" shall have the right, upon payment of an additional premium of 100% of the full annual premium applicable to this EPL Coverage Endorsement, to buy an Extended Reporting Period Endorsement, providing an Extended Reporting Period of one (1) year following the effective date of the cancellation or nonrenewal, in which to give "us" written notice of "claims" first made or "suits" first brought against the "insureds" during said Extended Reporting Period for any "wrongful employment acts" which take place after the "original inception date" and before the end of the "EPL coverage period" and are otherwise covered by this EPL Coverage Endorsement.

To obtain an Extended Reporting Period Endorsement, "you" must request it in writing and pay the additional premium due, within thirty (30) days of the effective date of cancellation or nonrenewal.

**2.** The Extended Reporting Period Endorsement cannot be canceled by either party, except for nonpayment of premium. The additional premium for the Extended Reporting Period shall be fully earned at the inception of the Extended Reporting Period and this EPL Coverage Endorsement cannot be canceled after such additional premium is paid. If "we" do not receive the written request as required, "you" may not exercise this right at a later date.

**3.** This insurance, provided during the Extended Reporting Period, is excess over any other valid and collectible insurance that begins or continues in effect after the Extended Reporting Period Endorsement becomes effective, whether the other insurance applies on a primary, excess, contingent, or any other basis.

**4.** In the event of cancellation by the Insurer for the non-payment of initial premium for this EPL Coverage Endorsement as indicated in the Supplemental Declarations of this EPL Coverage Endorsement, any monies received by the Insurer as payment for the Extended Reporting Period shall be first applied to such premium owing for the policy. The Extended Reporting Period will not take effect until the premium owing for the policy is paid in full and the premium owing for the Extended Reporting Period is paid promptly when due.

**5.** In the event of a "Transaction", as defined in Clause G below, the "named insured" shall have the right, within thirty (30) days before the end of the "EPL coverage period", to request an offer from "us" of an Extended Reporting Period (with respect to "wrongful employment acts" which take place after the "original inception date" and prior to the effective time of the "Transaction"). We shall offer such Extended Reporting Period pursuant to such terms, conditions, and premium as we may reasonably decide. In the event of a "Transaction", the right to an Extended Reporting Period shall not otherwise exist except as indicated in this paragraph.



**G. Change in Control of "Named Insured"**

If during the "EPL coverage period":

1. the "named insured" shall consolidate with or merge into, or sell all or substantially all of its assets to any other person or entity or group of persons or entities acting in concert; or

2. any person or entity or group of persons or entities acting in concert shall acquire an amount of the outstanding securities representing more than fifty (50%) percent of the voting power for the election of directors or General Partners of the "named insured" (in the event the "named insured" is a Partnership), or acquires the voting rights of such an amount of such securities; or

3. a General Partner of the "named insured" (in the event the "named insured" is a partnership) withdraws, resigns or is terminated;

(any of the above events herein referred to as the "Transaction"),

then this EPL Coverage Endorsement shall continue in full force and effect as to "wrongful employment acts" occurring after the "original inception date" and prior to the effective time of the "Transaction", but there shall be no coverage afforded by any provision of this EPL Coverage Endorsement for any actual or alleged "wrongful employment acts" occurring after the effective time of the "Transaction". This EPL Coverage Endorsement may not be canceled after the effective time of the "Transaction" and the entire premium for this EPL Coverage Endorsement shall be deemed earned as of such time. "You" shall also have the right to an offer by "us" of an Extended Reporting Period described in Clause F of this EPL Coverage Endorsement.

"You" shall give "us" written notice of the "Transaction" as soon as practicable, but not later than thirty (30) days after the effective date of the "Transaction".

**H. Legal Action Against "Us"**

No person or organization has the right to join "us" as a party or otherwise bring "us" into a "suit" asking for damages from an "insured".

**I. Other Insurance**

Unless expressly written to be excess over other applicable insurance, it is intended that the insurance provided by this EPL Coverage Endorsement shall be primary.

**J. EPL Coverage Endorsement Changes**

This EPL Coverage Endorsement contains all the agreements between "you" and "us" concerning this insurance. The first "named insured" in the Supplemental Declarations of this EPL Coverage Endorsement is authorized to request changes in this EPL Coverage Endorsement. This EPL Coverage Endorsement can only be changed by a written endorsement "we" issue and make part of this EPL Coverage Endorsement.

**K. Representations**

Any and all relevant provisions of this EPL Coverage Endorsement may be voidable by "us" in any case of fraud, intentional concealment, or misrepresentation of material fact by any "insured".

**L. Special Rights and Duties of the "Named Insured"**

"You" agree that when there is more than one person and/or entity covered under this EPL Coverage Endorsement, the "named insured" in the Supplemental Declarations of this EPL Coverage Endorsement shall act on behalf of all "insureds" as to:

1. Giving of notice of a "claim" or "suit";

2. Giving and receiving notice of cancellation or nonrenewal;

3. Payment of premiums and receipt of return premiums;

4. Acceptance of any endorsements issued to form a part of this EPL Coverage Endorsement; or

5. Purchasing or deciding not to purchase the Extended Reporting Period Endorsement.

**M. Headings**

The description in the headings of this EPL Coverage Endorsement are solely for convenience, and form no part of the terms and conditions of coverage.

## SECTION VII. DEFINITIONS

**A.** "Bodily injury" means physical injury, sickness, or disease, including death resulting therefrom

**B.** "Claim" means a written demand for money. The term "claim" shall also mean an Equal Employment Opportunity Commission (EEOC), Department of Labor (DOL) or Office of Federal Contract Compliance Program (OFCCP) (or similiar

federal, state or local agency) proceeding or investigation commenced by the filing of a notice of charges, service of a complaint or similar document of which notice has been given to "you". However, in no event, shall the term "claim" include any labor or grievance proceeding, which is subject to a collective bargaining agreement.

**C.** "Class Action Suit" means any suit seeking certification or certified as a class action by a federal or state court.

**D.** "Defense Costs" means reasonable and necessary fees, costs and expenses consented to by "us" resulting solely from the investigation, adjustment, defense and appeal of a "claim" or "suit" against "you". In no event shall "Defense Costs" include "your" or "our" routine on-going expenses, including, without limitation, the salaries of "your" "employees", officers or staff attorneys.

**E.** "Employee" means an individual whose labor or service is engaged by and directed by "you" for remuneration, whether such individual is in a supervisory, co-worker or subordinate position or otherwise, including any part-time, seasonal, and temporary "employees". Independent contractors and individuals who are leased to the "insured " are not "employees".

**F.** "Loss(es)" means damages (including front pay and back pay), judgments, settlements, statutory attorney fees, and "defense costs", however, "loss" shall not include: (1) civil or criminal fines or penalties imposed by law; (2) punitive or exemplary damages; (3) the multiplied portion of multiplied damages; (4) taxes; (5) any amount for which the "insureds" are not financially liable or which are without legal recourse to the "insureds"; (6) employment related benefits, stock options, perquisites, deferred compensation or any other type of compensation other than salary, wages or bonus compensation; (7) matters which may be deemed uninsurable under the law pursuant to which this EPL Coverage Endorsement shall be construed; or (8) any pre-judgment or post-judgment interest on any judgment.

**G.** "Named Insured" means the person or organization designated in the Supplemental Declarations page of this EPL Coverage Endorsement.

**H.** "Original inception date" refers to the date specified in the Supplemental Declarations of this EPL Coverage Endorsement.

**I.** "EPL coverage period" means the period commencing on the effective date shown in the Supplemental Declarations of this EPL Coverage Endorsement. This period ends on the earlier of the expiration date or the effective date of cancellation of this EPL Coverage Endorsement. If "you" became an "insured" under this EPL Coverage Endorsement after the effective date, the "EPL coverage period" begins on the date "you" became an "insured".

**J.** "Property Damage" means physical injury to, or destruction of, tangible property including the loss of use of thereof, or loss of use of tangible property, which has not been physically injured or destroyed.

**K.** "Related Wrongful Employment Act(s)" means "wrongful employment acts" which are the same, related or continuous, or "wrongful employment acts" which arise from a common nucleus of facts. "Claims" or "suits" can allege "related wrongful employment acts", regardless of whether such "claims" or "suits" involve the same or different claimants, "insureds" or legal causes of actions.

**L.** "Retaliation" means a "wrongful employment act" of an "insured" alleged to be in response to, the actual or attempted exercise by an "employee" of any right that such "employee" has under the law. Provided, however, "retaliation" shall not include the "wrongful employment act" of an "insured" alleged to be in response to the threat of or the actual filing of any claim or suit under the Federal False Claims Act or any other federal state, local or foreign "whistleblower law".

**M.** "Subsidiary" means:

  **1.** Any for-profit organization which, on or before the inception of the "EPL coverage period", is more than 50% owned by the "named insured", either directly or indirectly through one or more of its "subsidiaries"; or

  **2.** A for-profit organization which becomes a "subsidiary" during the "EPL coverage period", but only upon the condition that within 90 days of its becoming a "subsidiary", the "named insured" shall have provided "us" with full particulars of the new "subsidiary" and agreed to any additional premium or amendment of the provisions of this EPL Coverage Endorsement required

The **Hanover** Insurance Group™

OBCH332709    1304500

by "us" relating to such new "subsidiary". Further, coverage as shall be afforded to the new "subsidiary" is conditioned upon the "named insured" paying when due any additional premium required by "us" relating to such new "subsidiary".

An organization becomes a "subsidiary" when the "named insured" owns more than fifty (50%) percent ownership interest in such "subsidiary", either directly, or indirectly through one or more of its "subsidiaries". An organization ceases to be a "subsidiary" when the "named insured" ceases to own more than a fifty (50%) percent ownership in such "subsidiary", either directly, or indirectly through one or more of its "subsidiaries".

In all events, coverage as is afforded under this EPL Coverage Endorsement with respect to a "claim" made or "suit" brought against any "subsidiary" or an "insured" of any "subsidiary", shall only apply to "wrongful employment act(s)" commenced or allegedly commenced after the effective time that such "subsidiary" became a "subsidiary", and prior to the time that such "subsidiary" ceased to be a "subsidiary".

**N.** "Suit" means a civil proceeding or an administrative proceeding seeking money damages, and includes an arbitration, mediation or any other alternative dispute resolution procedure seeking such damages, to which the "insured" must submit or may submit with "our" consent. "Suit" shall not include any civil proceeding or administrative proceeding arising from any labor or grievance dispute which is subject to a collective bargaining agreement.

**O.** "Whistleblower law" means a statute, rule or regulation, which protects an employee against discrimination from his or her employer, if the employee discloses or threatens to disclose to a superior or any governmental agency; or who gives testimony relating to, any action with respect to the employer's operations, which may be a violation of public policy as reflected in legislation, administrative rules, regulations or decisions, judicial decisions, and professional codes of ethics.

**P.** "Wrongful Employment Act(s)" means any actual or alleged:

**1.** wrongful dismissal, discharge or termination (either actual or constructive), including breach of an implied contract;

**2.** harassment (including sexual harassment, whether quid pro quo, hostile work environment or otherwise);

**3.** discrimination (including but not limited to discrimination based upon age, gender, race, color, national origin, religion, sexual orientation or preference, pregnancy or disability);

**4.** "retaliation" (including lockouts);

**5.** employment-related misrepresentation(s) to "your" "employee" or applicant for employment with "you";

**6.** employment-related libel, slander, humiliation, mental anguish, infliction of emotional distress, defamation, or invasion of privacy;

**7.** wrongful failure to employ or promote;

**8.** wrongful deprivation of career opportunity, wrongful demotion or negligent "employee" evaluation, including the giving of negative or defamatory statements in connection with an "employee" reference;

**9.** wrongful discipline;

**10.** failure to grant tenure;

**11.** failure to provide or enforce adequate or consistent corporate policies and procedures relating to any "wrongful employment act"

**12.** negligent supervision or hiring by an "insured", relating to any of the above;

**13.** violation of an individual's civil rights relating to any of the above.



OBCH332709          1304500

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## REVISED INFRINGEMENT OF COPYRIGHT, PATENT, TRADEMARK OR TRADE SECRETS EXCLUSION

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

Under **SECTION II - LIABILITY, B. Exclusions,** paragraph **2.m.** is replaced in its entirety with the following:

**m.** **Infringement of Copyright, Patent, Trademark or Trade Secret**

Arising out of the theft, misappropriation, misuse, infringement or contributory infringement of any copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

The **Hanover**
Insurance Group™

OBCH332709          1304500

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

**The Hanover Insurance Group™**

OBCH332709      1304500

## IDENTITY THEFT RESOLUTION SERVICES
### (POWERED BY IDENTITY THEFT 911)

Are you or your resident family members at risk for identity theft?  Do you need expert assistance with an identity-related concern?  IDENTITY THEFT RESOLUTION SERVICES from Identity Theft 911 give you one-on-one assistance in the following situations:

**Access Phone Number: 800-628-0250**

If you or a resident family member suffer the loss or theft of private personal data, contact Identity Theft 911 for proactive guidance that can include Fraud Alert service.  If you wish, a fraud specialist can assist and place a free fraud alert on your credit file to reduce the risk of fraudulent accounts opened in  your name. This service also includes additional preventative measures and one-on-one assistance, depending on the risk.

If you or a resident family member suffer the loss or theft of private personal data, contact Identity Theft 911 for Identity Restoration Case Management services. A fraud specialist will guide you through the process of restoring your identity and handle all of the work, including completed documentation and  notification assistance. Victims also receive one year of credit monitoring, as well as free fraud monitoring of over 1,000 public databases.

**Learn How to Protect Your Identity**

We recommend that you regularly visit The Hanover Insurance Group and Identity Theft 911 comprehensive resource and knowledge library - www.hanover-identitytheft911.com - for the latest media alerts, identity theft tips, in-depth newsletters and much more.

Keep this access information handy in case you ever need help with an identity-related problem.

**Access Phone Number: 800-628-0250**

The Hanover Insurance Group makes no guarantee of results and assumes no liability in connection with either the information or assistance provided by Identity Theft 911.  Any and all external Websites or sources referred to herein are for informational purposes only.

The **Hanover** Insurance Group™

BR 91

07

# AVENUES BUSINESSOWNERS DECLARATION

## BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 02/27/2021  NUMBER 06

SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
TO BACK OUT ENDT#3

| Policy Number | Policy Period | | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| | From | To | | |
| OBC-H332709-00 | 07/31/2020 | 07/31/2021 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

**Agent**

847-307-6100
THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

**Policy Period:  Beginning and Ending at 12:01 a.m. Standard Time at the Location of the Described Premises.**

**Business Type:**  CORPORATION (SINGLE).

**Mortgagee/Loss Payable:**

SEE ADDITIONAL INTEREST SCHEDULE

**Business of the Named Insured:**

SERVICE.

In consideration of the premium, insurance is provided the Named Insured with respect to those premises described in the Schedule below and with respect to those coverages and kinds of property for which a specific Limit of Insurance is shown, subject to all of the terms of this policy including forms and endorsements made a part hereof:

## LOCATION SCHEDULE

**Described Premises:**

NO. 001 001    233 N MICHIGAN AVE SUITE 1430, CHICAGO, IL  60601

NO. 002 001    DELETED LOCATION

| SECTION I - PROPERTY | LIMITS OF INSURANCE | | | | | |
|---|---|---|---|---|---|---|
| | Loc No  001 | Bldg No 001 | Loc No | Bldg No | Loc No | Bldg No |
| **Deductible Amount** | $          1,000 | | $ | | $ | |
| **Building Amount Valuation** | NOT COVERED | | | | | |
| **Business   Personal Property Valuation** | $        201,400 RC | | | | | |
| **Business Income** | ACTUAL BUSINESS LOSS SUSTAINED NOT EXCEEDING 12 CONSECUTIVE MONTHS | | | | | |
| **Business Income Waiting Period** | **Excluded / None / 24 hours / 48 hours /72 hours** 24 HOURS | | | | | |
| **SECTION II - LIABILITY** | LIMITS OF INSURANCE | | | | | |

**Liability and Medical Expenses Limits of Insurance:**

Except for Damage to Premises Rented to You,  each paid claim for the following coverages reduce the Amount of Insurance we provide during the applicable annual  period.  Please refer to **SECTION II - LIABILITY, D. LIABILITY  AND MEDICAL  EXPENSES LIMITS OF INSURANCE,** paragraph **4.** of the Businessowners Coverage Form.

| Liability and Medical Expenses Limit | $ 2,000,000 | Per Occurrence | $ 4,000,000 | Aggregate |
|---|---|---|---|---|
| Medical Expenses | $        5,000 | Each Person | | |
| Damage to Premises Rented to You | $      300,000 | All Perils | | |

Date Issued: 05/02/2022                ORIGINAL/INSURED          Payment Type:  DIRECT BILL

GROUP NAME: TECHNOLOGY - SERVICES          GROUP NUMBER: ZTS

391-1002 08 16

The
**Hanover**
Insurance Group™

BR 91

# AVENUES BUSINESSOWNERS DECLARATION

07

## BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 02/27/2021  NUMBER 06

SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
TO BACK OUT ENDT#3

| Policy Number | Policy Period | | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| | From | To | | |
| OBC-H332709-00 | 07/31/2020 | 07/31/2021 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

**Agent**

847-307-6100
THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

**Additional Property Coverages and Extensions:**
　　　　See attached Schedule for Additional Coverages provided for under this Policy.

Audit Frequency: Annual

**Additional Liability Coverages:**  General Liability Broadening Endorsement
**General Liability Class**:  85219
**Description**:  CUSTOM COMPUTER PROGRAMMING
**Liability Exposure**:  $1,800,000        SALES

**Policy Forms, Endorsements and Optional Coverages Attached:**
　　　　See Forms and Endorsements Schedule

```
P R E V I O U S   P R E M I U M   I S :                                  $ ███
N E T   P R E M I U M   C H A N G E   I S :                              $ ███
T O T A L   B O P   C O V E R A G E   P R E M I U M :                    $ ███
B O P   T E R R O R I S M   C O V G   ( I N C L U D E D   I N   T O T A L   P O L I C Y   P R E M I U M )   $ ███
　　O T H E R   T H A N   F I R E   F O L L O W I N G            $ ███
　　 F I R E   F O L L O W I N G                                 $ ███
T O T A L   U M B R E L L A   C O V E R A G E   P R E M I U M :          $ ███
U M B   T E R R O R I S M   C O V G   ( I N C L U D E D   I N   T O T A L   P O L I C Y   P R E M I U M )   $ ███
D E P O S I T   P R E M I U M :                                          $ ███
T H E   T O T A L   A C T U A L   P R E M I U M :                        $ ███
```

**Countersigned this _____ Day of _____**

_____
**Authorized Representative**

**This Declarations Page with the Policy Contract, Forms and Endorsements, if any,
Complete the Policy.**

Date Issued:  05/02/2022        ORIGINAL/INSURED        Payment Type: DIRECT BILL

**391-1002 08 16**                                                   Page 2 of 2

**The Hanover** Insurance Group.

BR 91

# ADDITIONAL INTEREST SCHEDULE

### BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 02/27/2021  NUMBER 06

07

SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
TO BACK OUT ENDT#3

| Policy Number | Policy Period | | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| | From | To | | |
| OBC-H332709-00 | 07/31/2020 | 07/31/2021 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**
COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

**Agent**
847-307-6100
THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

| Name And Address | Interest Type | Location | Building |
|---|---|---|---|
| SILICON VALLEY BANK<br>3003 TASMAN DRIVE HF 150<br>SANTA CLARA, CA  95054 | | | |
| | LENDER'S LOSS PAYABLE | 002 | 01 |

Form   391-1014 (7-99)
Date Issued:  05/02/2022                    ORIGINAL/INSURED

**The Hanover** Insurance Group.

BR 91

# ADDITIONAL PROPERTY COVERAGES AND EXTENSIONS

### BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 02/27/2021 NUMBER 06

07      SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
TO BACK OUT ENDT#3

| Policy Number | Policy Period From | To | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| OBC-H332709-00 | 07/31/2020 | 07/31/2021 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL 60601

**Agent**

847-307-6100

THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL 60010

| Additional Property Coverages & Extensions | Deductible | Amount Included | Additional Amount Increase | Total Limit |
|---|---|---|---|---|
| DEBRIS REMOVAL | NONE | $25,000 | N/A | $25,000 |
| PRESERVATION OF PROPERTY | NONE | 90 DAYS | N/A | 90 DAYS |
| FIRE DEPARTMENT SERVICE CHARGE | NONE | $25,000 | N/A | $25,000 |
| POLLUTANT CLEAN-UP AND REMOVAL | NONE | $25,000 | N/A | $25,000 |
| MONEY ORDERS AND COUNTERFEIT MONEY | $500 | $5,000 | N/A | $5,000 |
| FORGERY OR ALTERATION | $500 | $25,000 | N/A | $25,000 |
| GLASS EXPENSES | $250 | INCLUDED | N/A | INCLUDED |
| REWARDS ARSON, THEFT AND VANDALISM | NONE | $10,000 | N/A | $10,000 |
| TENANT SIGNS | $500 | $5,000 | N/A | $5,000 |
| FIRE PROTECTION EQUIPMENT RECHARGE | NONE | $25,000 | N/A | $25,000 |
| INSTALLATION FLOATER | $1,000 | $5,000 | N/A | $5,000 |
| FINE ARTS | $500 | $10,000 | N/A | $10,000 |
| FENCE AND WALLS | SEE BUILDING AND CONTENTS DEDUCTIBLE | INCLUDED | N/A | INCLUDED |
| SALES REPRESENTATIVE SAMPLES | $1,000 | $5,000 | N/A | $5,000 |
| LEASEHOLD INTEREST (TENANT'S ONLY) | NONE | $10,000 | N/A | $10,000 |
| UNAUTHORIZED BUSINESS CREDIT CARD USE | NONE | $5,000 | N/A | $5,000 |
| UTILITY SERVICES | | | N/A | |
|   DIRECT DAMAGE | $500 | $10,000 | N/A | $10,000 |
|   BUSINESS INCOME | 24 HOURS | $5,000 | N/A | $5,000 |
| DEFERRED PAYMENTS | NONE | $5,000 | N/A | $5,000 |
| NEWLY ACQUIRED OR CONSTRUCTED PROPERTY | | 180 DAYS | N/A | 180 DAYS |
|   BUILDINGS | $500 | $1,000,000 | N/A | $1,000,000 |
|   PERSONAL PROPERTY | $500 | $500,000 | N/A | $500,000 |
|   BUSINESS INCOME AND EXTRA EXPENSE | SEE WAITING PERIOD | $250,000 | N/A | $250,000 |
| OUTDOOR PROPERTY - TREES, SHRUBS AND PLANTS-$1,000 EACH ITEM | $500 | $10,000 | N/A | $10,000 |

Form 391-1018 (7-02)
Date Issued: 05/02/2022

The **Hanover**
Insurance Group.

BR 91

# ADDITIONAL PROPERTY COVERAGES AND EXTENSIONS

**BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 02/27/2021  NUMBER 06**

07      SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
TO BACK OUT ENDT#3

| Policy Number | Policy Period From | To | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| OBC-H332709-00 | 07/31/2020 | 07/31/2021 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

**Agent**

847-307-6100

THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

| Additional Property Coverages & Extensions | Deductible | Amount Included | Additional Amount Increase | Total Limit |
|---|---|---|---|---|
| PERSONAL EFFECTS | $500 | $10,000 | N/A | $10,000 |
| INVENTORY AND LOSS APPRAISAL | NONE | $10,000 | N/A | $10,000 |
| KEY REPLACEMENT AND LOCK REPAIR | NONE | $1,000 | N/A | $1,000 |
| APPURTENANT STRUCTURE | $500 | $50,000 | N/A | $50,000 |
| PERSONAL PROPERTY IN TRANSIT | $1,000 | $10,000 | N/A | $10,000 |
| EXTENDED BUSINESS INCOME | | 30 DAYS | N/A | 30 DAYS |
| EMPLOYEE THEFT INCLUDING ERISA COMPLIANCE | $1,000 | $10,000 | N/A | $10,000 |
| COMMERCIAL TOOLS AND SMALL EQUIP | $500 | $5,000 | N/A | $5,000 |
| PERSONAL PROPERTY OFF PREMISES | $1,000 | $50,000 | N/A | $50,000 |
| BUSINESS INCOME FROM DEPENDENT PROPERTIES | 72 HOURS | $5,000 | N/A | $5,000 |
| TERRORISM | SEE BUILDING AND CONTENTS DEDUCTIBLE | SAME AS PROPERTY LIMITS OF INSURANCE IF COVERED | N/A | SAME AS PROPERTY LIMITS OF INSURANCE IF COVERED |
| INTERRUPTION OF COMPUTER OPERATIONS | SEE WAITING PERIOD | $10,000 | N/A | $10,000 |
| BUSINESS PERSONAL PROPERTY TEMPORARILY IN PORTABLE STORAGE UNITS | $500 | $25,000 | N/A | $25,000 |
| CIVIL AUTHORITY | 72 HOURS | 4 WEEKS | N/A | 4 WEEKS |
| COMPUTER AND FUNDS TRANSFER FRAUD | $500 | $5,000 | N/A | $5,000 |
| LIMITED COVERAGE FOR FUNGI, WET ROT, OR DRY ROT | $500 | $50,000 | N/A | $50,000 |
| PAVED SURFACES | $500 | $25,000 | N/A | $25,000 |
| TENANT BUILDING COVERAGE - REQUIRED BY LEASE | $500 | $25,000 | N/A | $25,000 |
| TENANT BUSINESS PERSONAL PROPERTY COVERAGE - REQUIRED BY LEASE | $500 | $25,000 | N/A | $25,000 |

Form  391-1018  (7-02)
Date Issued:  05/02/2022

ORIGINAL/INSURED

**The Hanover**
Insurance Group™

BR 91

# ADDITIONAL PROPERTY COVERAGES AND EXTENSIONS

**BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 02/27/2021  NUMBER 06**

07     SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
       TO BACK OUT ENDT#3

| Policy Number | Policy Period | | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| | From | To | | |
| OBC-H332709-00 | 07/31/2020 | 07/31/2021 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

**Agent**

847-307-6100
THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

| Additional Property Coverages & Extensions | Deductible | Amount Included | Additional Amount Increase | Total Limit |
|---|---|---|---|---|
| THEFT OF TELEPHONIC SERVICES | $500 | $25,000 | N/A | $25,000 |
| UNDERGROUND PIPES | $500 | INCLUDED | N/A | INCLUDED |

Form  391-1018  (7-02)
Date Issued:  05/02/2022

ORIGINAL/INSURED

**The Hanover Insurance Group**

BR 91

# ADDITIONAL PROPERTY COVERAGES AND EXTENSIONS

**BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 02/27/2021 NUMBER 06**

07    SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
    TO BACK OUT ENDT#3

| Policy Number | Policy Period From | To | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| OBC-H332709-00 | 07/31/2020 | 07/31/2021 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

Named Insured and Address
COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

Agent
847-307-6100
THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

| Additional Property Coverages & Extensions | Loc. No. | Bldg. No. | Deductible Amount | Amount Included | Additional Amount | Total Limit |
|---|---|---|---|---|---|---|
| ORDINANCE OR LAW | 001 | 001 | NONE | $5,000 | N/A | $5,000 |
| COMPUTER EQUIPMENT | | | $500 | $35,000 | N/A | $35,000 |
| COMPUTER EQUIPMENT EXTRA EXPENSE | | | NONE | $5,000 | N/A | $5,000 |
| ELECTRONIC VANDALISM | | | $500 | | | |
| OCCURRENCE LIMIT | | | | $10,000 | N/A | $10,000 |
| AGGREGATE LIMIT | | | | $10,000 | N/A | $10,000 |
| VALUABLE PAPERS AND RECORDS (OTHER THAN ELECTRONIC DATA) | | | $1,000 | | | |
| ON PREMISES | | | | $25,000 | N/A | $25,000 |
| OFF PREMISES | | | | $25,000 | N/A | $25,000 |
| ACCOUNTS RECEIVABLE | | | $1,000 | | | |
| ON PREMISES | | | | $25,000 | N/A | $25,000 |
| OFF PREMISES | | | | $25,000 | N/A | $25,000 |
| MONEY AND SECURITIES | | | $500 | | | |
| ON PREMISES | | | | $10,000 | N/A | $10,000 |
| OFF PREMISES | | | | $5,000 | N/A | $5,000 |
| EQUIPMENT BREAKDOWN | | | $1,000 | INCLUDED | N/A | INCLUDED |
| PROTECTIVE DEVICES CREDIT | | | | | | |
| AUTOMATIC SPRINKLER SYSTEM | | | NO | | | |
| AUTOMATIC FIRE ALARM | | | NO | | | |
| CENTRAL STATION SECURITY | | | NO | | | |
| COLLAPSE | | | $500 | INCLUDED | N/A | INCLUDED |
| UTILITY SERVICES | | | | | | |
| DIRECT DAMAGE | | | $500 | $50,000 | N/A | $50,000 |
| TIME-ELEMENT | | | 24 HOURS | $50,000 | N/A | $50,000 |

Form  391-1018A (9-04)
Date Issued:  05/02/2022

ORIGINAL/INSURED

The
**Hanover**
Insurance Group™

BR 91

# AVENUES BUSINESSOWNERS DECLARATION

### BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 02/27/2021  NUMBER 06

07

SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
TO BACK OUT ENDT#3

| Policy Number | Policy Period | | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| | From | To | | |
| OBC-H332709-00 | 07/31/2020 | 07/31/2021 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**
COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

**Agent**
847-307-6100
THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

## Forms and Endorsements Schedule

| Form Number | Edition Date | Description |
|---|---|---|
| 391-1402 | 08/16 | TECHNOLOGY DELUXE GOLD BROAD |
| 391-1371 | 01/10 | REV INFRINGE OF COPYRIGHT EXCL |
| BP0404 | 01/10 | HIRED AUTO NON-OWNED AUTO LIAB |
| 401-1374 | 01/15 | DISCLOSURE PURSUANT TO TRIA |
| 391-1114 | 01/15 | CAP ON LOSSES FROM TERRORISM |
| 391-1313 | 01/15 | EXCLUSION OF PUNITIVE DAMAGES |
| 391-1006 | 08/16 | LIABILITY SPECIAL BROADENING |
| BP0417 | 01/10 | EMPLYMT RELATED PRACTICES EXCL |
| 231-0475 | 06/89 | PILR NOTICE |
| 391-1003 | 08/16 | BUSINESSOWNERS COVERAGE FORM |
| BP0643 | 04/06 | IL CHANGES - DEFENSE COSTS |
| 391-1901 | 06/18 | ILLINOIS CHANGES |
| 421-0022 | 07/02 | ASBESTOS EXCLUSION |
| 391-1102 | 08/16 | EXCL - FUNGI OR BACTERIA LIAB |
| 331-0053 | 08/16 | ILLINOIS INQUIRY NOTICE |
| 391-1375 | 01/10 | AMEND LIMITS PERSONAL AND ADV |
| 391-1218 | 06/06 | EPLI INSURANCE CVG ENDR ILLINO |
| 391-1206 | 06/06 | EPLI IMPORTANT NOTICE |
| 391-1208 | 03/06 | EPLI SUPPLEMENTAL DEC |
| BP1203 | 01/10 | LOSS PAYABLE PROVISIONS |
| 401-1504 | 01/20 | CAP LOSSES CERT ACTS OF TERR |
| 391-1440 | 01/15 | DATA BREACH COVERAGE FORM |
| 391-1442 | 12/09 | ASSOC AND FAMILY MBR ADD COV |
| * 391-1585 | 12/11 | IDENTITY THEFT NOTICE |

Form  391-1016 (7-99
Date Issued:  05/02/2022

ORIGINAL/INSURED

**The Hanover**
Insurance Group™

BR 91

# AVENUES BUSINESSOWNERS DECLARATION

**BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 02/27/2021   NUMBER 06**

07

SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
TO BACK OUT ENDT#3

| Policy Number | Policy Period From | To | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| OBC-H332709-00 | 07/31/2020 | 07/31/2021 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**
COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

**Agent**
847-307-6100
THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

## Forms and Endorsements Schedule

| Form Number | Edition Date | Description |
|---|---|---|
| 391-1854 | 01/15 | IL CHANGES - DATA BREACH |
| 401-1235 | 12/14 | CANCEL NOTICE TO DESIGNATED |
| 391-1941 | 08/16 | AI DESIGNATED PER OR ORG |

Form  391-1016 (7-99

Date Issued:  05/02/2022

ORIGINAL/INSURED

**COMMERCIAL EMPLOYMENT PRACTICES**
**LIABILITY INSURANCE COVERAGE ENDORSEMENT**
**SUPPLEMENTAL DECLARATIONS**



OBCH332709      1304500

Policy Number:  OBC H332709 00
Account Number:  1521871564
Named Insured:  COOLER SCREENS INC

Agent:  1304500

---

## NOTICE

- EXCEPT TO SUCH EXTENT AS MAY OTHERWISE BE PROVIDED HEREIN, THE COVERAGE OF THIS COVERAGE ENDORSEMENT IS LIMITED TO LIABILITY FOR ONLY THOSE CLAIMS OR SUITS THAT ARE FIRST MADE AGAINST THE INSUREDS DURING THE EPL COVERAGE PERIOD AND REPORTED IN WRITING TO THE INSURER PURSUANT TO THE TERMS HEREIN. VARIOUS PROVISIONS IN THIS COVERAGE ENDORSEMENT RESTRICT COVERAGE. PLEASE READ THE ENTIRE COVERAGE ENDORSEMENT CAREFULLY TO DETERMINE RIGHTS, DUTIES AND WHAT IS AND IS NOT COVERED.

- THE LIMIT OF LIABILITY AVAILABLE TO PAY JUDGEMENTS OR SETTLEMENTS UNDER THIS COVERAGE ENDORSEMENT SHALL BE REDUCED BY AMOUNTS INCURRED FOR LEGAL DEFENSE. AMOUNTS INCURRED FOR LEGAL DEFENSE SHALL BE APPLIED AGAINST THE DEDUCTIBLE AMOUNT.

---

| | | |
|---|---|---|
| **EPL Coverage Period:** | From: 07/31/2020 <br><br> To:  07/31/2021 | At 12:01 A.M. Standard Time at your mailing address shown on the Declarations page of this policy. |
| **EPL Aggregate Limit of Liability:** | $          25,000.00 | Aggregate for all "loss" combined, including "defense costs". |
| **EPL Deductible Amount:** | $           5,000.00 | For "loss" arising from claims or suits alleging the same "wrongful employment act" or "related wrongful employment acts". |
| **EPL Original Inception Date:** | 07/31/2020 | (Enter "original inception date") If no date is shown, "we" will consider the "original inception date" to be the same as the beginning of this coverage endorsement. |

This insurance does not apply to "loss" arising out of a "wrongful employment act" that: (1) commences on or takes place prior to the "original inception date" shown here, or (2) arises out of incidents or circumstance of which "you" had knowledge prior to the "original inception date" shown.

| | |
|---|---|
| **EPL COVERAGE PREMIUM:** | $   |

391-1208 03 06

**The Hanover Insurance Group.**

| | |
|---|---|
| **NEW BUSINESS POLICY** | |
| **COMMERCIAL UMBRELLA POLICY** | |
| THESE DECLARATIONS TOGETHER WITH THE COMMON POLICY CONDITIONS AND COVERAGE FORM(S) COMPLETE THE BELOW NUMBERED POLICY | |

POLICY NUMBER: OBC-H332709-00

DECLARATIONS

| **Named Insured and Address** (No., Street, Town, County, State) | **Agent** |
|---|---|
| COOLER SCREENS INC<br>233 N MICHIGAN AVE SUITE 1430<br>CHICAGO, IL 60601 | 130450000<br>THE PLEXUS GROUPE LLC<br>SUITE 300<br>21805 W. FIELD PARKWAY<br>DEER PARK, IL 60010 |

**Policy Period:** (Month, Day, Year)

From 07/31/2020 To 07/31/2021
12:01 AM, standard time at the address of the Named Insured as stated herein.

Form of Business:

☐ Individual  ☐ Partnership  ☒ Corporation  ☐ Limited Liability Company
☐ Organization (Other than Partnership, Joint Venture, or Limited Liability Company

**Business Description:**
**SERVICE.**

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY. THIS PREMIUM MAY BE SUBJECT TO AUDIT.

**Limit of Liability (Section III)**
Each Occurrence Limit $ 1,000,000
General Aggregate Limit $ 1,000,000
Product Completed Operations Aggregate Limit $ 1,000,000

**Retained Limit** **Self-Insured Retention** **$ NIL**

**Premium Computation**

Annual Premium $ ▮▮▮▮
Advance Premium $

**Endorsements:**

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| CU2130 | 01/15 | CU2156 | 06/06 | CU2136 | 01/15 | 473-1150 | 05/12 | 473-1157 | 01/10 | 473-0004 | 10/05 |
| CU0004 | 05/09 | 473-0016 | 10/05 | 473-0023 | 10/05 | 473-0040 | 10/05 | CU0200 | 12/07 | CU0001 | 12/07 |
| 473-2194 | 08/16 | CU2123 | 02/02 | 473-2211 | 10/16 | CU2125 | 12/01 | CU2255 | 09/00 | CU2127 | 12/04 |
| CU2150 | 03/05 | IL0017 | 11/98 | CU2436 | 12/05 | IL0162 | 09/08 | 473-1125 | 02/09 | CU2186 | 05/14 |

☐ PRE PAID - the total annual premium is due at inception.
☐ HANOCASH - the annual premium is payable according to the term of the Hanocash endorsement attachment
☐ ACCOUNT BILL ☒ DIRECT BILL ☐ Annual ☐ Semi-Annual ☐ Other
Audit period: Non Auditable Unless indicated by ☐ Annual ☐ Semi-Annual ☐ Other
If you cancel this policy, we shall receive and retain not less than $ as a policy minimum premium.

473-1102 1108

**The Hanover**
Insurance Group™

OBCH332709     1304500

## SCHEDULE A - SCHEDULE OF UNDERLYING POLICIES

**Insured:**  COOLER SCREENS INC
**Effective on and after: 07/31/2020 , 12:01 AM Standard Time**
**This schedule is part of Policy Number:  OBC-H332709-00**

| CARRIER, POLICY NUMBER & PERIOD | TYPE OF POLICY | APPLICABLE LIMITS OR AMOUNT OF INSURANCE |
|---|---|---|
| (a)Carrier:<br><br>CITIZENS INSURANCE COMPANY OF AMERICA<br><br>Policy Number:  OBC-H332709-00<br>Policy Period:  07/31/2020   TO  07/31/2021 | Commercial General Liability<br>[X] Non-owned & Hired Autos | $  2,000,000   Each Occurrence<br>$  4,000,000   General Aggregate<br>$  4,000,000   Product/Compl eted Operations Aggregate |
| (b) Carrier:<br><br><br>Policy Number:<br>Policy Period: | Comprehensive Automobile Liability | Bodily Injury and Property Damage Liability Combined<br>$               Each Accident<br>Bodily Injury<br>$               Each Person<br>$               Each Accident<br>Property Damage<br>$               Each Accident |
| (c)Carrier:<br><br>EXCLUDED<br>Policy Number:<br>Policy Period: | Standard Workers Compensation & Employers Liability<br>**Please Note:** The Umbrella Coverage for Workers Compensation and Employers Liability is not applicable in situations where an employee is subject to the New York Workers Compensation Law. | **Coverage B - Employers Liability**<br>Bodily Injury by Accident<br>$               Each Accident<br>Bodily Injury by Disease<br>$               Aggregate<br>$               Each Employee |
| (d)Carrier:<br><br><br>Policy Number:<br>Policy Period: | Liquor Liability | $               Limit of  Liability |
| (e)Carrier:<br><br><br>Policy Number:<br>Policy Period: | Professional Liability | $               Limit of Liability |
| An "X" marked in the box provided indicates these broadening or optional coverages are provided in the Underlying Insurance | | |
| (f) Carrier:<br><br><br>Policy Number:<br>Policy Period: | Directors & Officers Liability | $               Limit of  Liability |
| (g) Carrier:<br><br><br>Policy Number:<br>Policy Period: | Employee Benefits Liability | $               Limit of  Liability |

**Countersigned By:**

**Date:**

**Authorized Representative of the Company**

473-1103 (11/08)

# Exhibit B

The
**Hanover**
Insurance Group℠

OBCH332709      1304500

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

The
**Hanover**
Insurance Group™

OBCH332709          1304500

Dear Policyholder:

As your local independent agent and on behalf of the employees of The Hanover Insurance Group from coast to coast, thank you for placing your insurance coverage with us.

Since 1852 Hanover has provided quality insurance protection for businesses large and small.  Today, nearly a million people insure their automobiles, homes, boats, businesses and more with one of Hanover's fine companies.

Hanover has a very simple corporate goal: To provide affordable insurance to responsible safety-minded customers - customers like you. We are proud of the excellent rating Hanover has earned within our industry and of their reputation for treating customers responsibly.

Your renewal policy has been prepared with care.  Please take time to review it, including your new Declarations Page which illustrates your coverage selections and limits of protection.  If you have any questions, please contact us.

Sincerely,



OBCH332709     1304500

# IMPORTANT NOTICE TO POLICYHOLDERS

No coverage is provided by this policyholder notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverage you are provided. If there is any conflict between the policy and this notice, THE PROVISIONS OF THE POLICY SHALL PREVAIL.

## EMPLOYMENT PRACTICES LIABILITY COVERAGE

The Employment Practices Liability Insurance Coverage is designed to protect small commercial businesses with 25 employees or fewer for liability damages and defense costs due to claims brought by employees who allege employment discrimination, wrongful termination, or sexual harassment.

This coverage will be written on any risk that meets the eligibility criteria under the portfolio Employment Practices Liability Coverage. Such eligibility will be determined by state, class and employee count of individual Insureds.

This coverage will attach to all eligible policies, unless waived.  There is a premium charge for this coverage. The coverage provided has an Aggregate Limit of Liability of $25,000 for all losses combined, including defense costs. This coverage has a $5,000 Deductible Amount for each claim. Optional $100,000 and $250,000 Limits of Liability are also available for additional premium charges.

Coverage may be waived by signing and returning the **Employment Practices Liability Coverage Waiver, 391-1205,** to The Hanover Insurance Group, 440 Lincoln Street, Worcester, MA 01653.

Such waiver will continue automatically through subsequent renewals, unless rescinded by the company at your request.

Please contact your agent for additional information or if you have any questions, or if you wish to waive this coverage.

5

The
**Hanover**
Insurance Group™

OBCH332709          1304500

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## TRADE OR ECONOMIC SANCTIONS ENDORSEMENT

This insurance does not apply to the extent that trade or economic sanctions or other laws or regulations prohibit us from providing insurance, including, but not limited to, the payment of claims.

ALL OTHER TERMS, CONDITIONS, AND EXCLUSIONS REMAIN UNCHANGED.

**The Hanover**
Insurance Group

OBCH332709     1304500

# IMPORTANT INFORMATION ABOUT YOUR INSURANCE COMPANY

The Home Office address for the Insurance Company shown on the policy Declarations page is:

**Allmerica Financial Alliance Insurance Company**
(A Stock Company)
440 Lincoln Street
Worcester, MA 01653-0002

**The Hanover American Insurance Company**
(A Stock Company)
440 Lincoln Street
Worcester, MA 01653-0002

**Allmerica Financial Benefit Insurance Company**
(A Stock Company)
440 Lincoln Street
Worcester, MA 01653-0002

**The Hanover Insurance Company**
(A Stock Company)
440 Lincoln Street
Worcester, MA 01653-0002

**Campmed Casualty & Indemnity Company, Inc.**
(A Stock Company)
440 Lincoln Street
Worcester, MA 01653-0002

**The Hanover Casualty Company**
(A Stock Company)
440 Lincoln Street
Worcester, MA 01653-0002

**Citizens Insurance Company of America**
(A Stock Company)
808 North Highlander Way
Howell, MI 48843-1070

**Massachusetts Bay Insurance Company**
(A Stock Company)
440 Lincoln Street
Worcester, MA 01653-0002

**Citizens Insurance Company of Illinois**
(A Stock Company)
333 West Pierce Road, Suite 300
Itasca, IL 60143-3114

**The Hanover New Jersey Insurance Company**
(A Stock Company)
440 Lincoln Street
Worcester, MA 01653-0002

**Citizens Insurance Company of the Midwest**
(A Stock Company)
9229 Delegates Row, Suite 100
Indianapolis, IN 46240-3824

**Verlan Fire Insurance Company**
(A Stock Company)
440 Lincoln Street
Worcester, MA 01653-0002

**Citizens Insurance Company of Ohio**
(A Stock Company)
4400 Easton Commons Way, Suite 125
Columbus, OH 43219-6223

**Nova Casualty Company**
(A Stock Company)
440 Lincoln Street
Worcester, MA 01653-0002



OBCH332709     1304500

THIS NOTICE IS PROVIDED IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS NOTICE DOES NOT GRANT COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF COVERAGE UNDER THE POLICY. IF THERE IS A CONFLICT BETWEEN THIS NOTICE AND THE POLICY, THE PROVISIONS OF THE POLICY SHALL APPLY.

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

**SCHEDULE**

| DISCLOSURE OF PREMIUM: | | |
|---|---|---|
| Total Terrorism Premium | $ ▮▮▮▮ | |
| Fire Following Premium | $ ▮▮▮▮ | |
| Other than Fire Following Premium | $ ▮▮▮▮ | |

**Disclosure of Terrorism Coverage Available**

You are hereby notified that under the Terrorism Risk Insurance Act, as amended, you have a right to purchase insurance coverage for losses resulting from "acts of terrorism" defined in Section 102(1) of the Act as follows:

> Any act or acts that are certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

The premium charged for this coverage is provided in the **SCHEDULE** above and does not include any charges for the portion of loss that may be covered by the Federal Government as described below. This premium has been added to your policy and unless this form is signed and returned to us to reject terrorism coverage, coverage for Certified Acts of Terrorism is provided by your policy.

Your policy may contain other exclusions which could affect your coverage, such as an exclusion for Nuclear Events or Pollution. **Please read your policy carefully**.

**Note for Commercial Property or Commercial Inland Marine Policyholders in Standard Fire States:**

In Standard Fire states, terrorism exclusions make an exception for (and therefore provide coverage for) fire losses resulting from an act of terrorism. Any policyholder with a location that we insure in a Standard Fire State that rejects our offer of terrorism coverage in this form will still have coverage with us for fire losses resulting from an act of terrorism.

**Explanation of Premium**

If a dollar amount is shown for Fire Following Premium in the **SCHEDULE** above that means we insure a location of yours in a Standard Fire State. Fire Following Premium is shown in the **SCHEDULE** above regardless of whether a policyholder with a location that we insure in a Standard Fire State accepts or rejects terrorism coverage with us. Fire Following Premium represents the charge for the coverage we provide for fire losses resulting from acts of terrorism. Fire Following Premium does not include Other Than Fire Following Premium. All Other Than Fire Following Premium is shown in the Other Than Fire Following Premium field in the **SCHEDULE** above.

If a dollar amount is shown for Other Than Fire Following Premium in the **SCHEDULE** above that means you have accepted terrorism coverage with us. Other Than Fire Following Premium represents the charge for terrorism coverage. Other Than Fire Following Premium does not include Fire Following Premium. If applicable, all Fire Following Premium is shown in the Fire Following Premium field in the **SCHEDULE** above.

The dollar amount shown for Total Terrorism Premium in the **SCHEDULE** above represents the sum of premium for Fire Following Premium and Other Than Fire Following Premium.

**Disclosure of Federal Participation in Payment of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 80% of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**Cap on Insurer Participation in Payment of Terrorism Losses**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**Rejection of Terrorism Insurance Coverage\***

_____ I decline to purchase terrorism coverage for certified acts of terrorism. I understand that I will have no coverage for losses resulting from certified acts of terrorism.

CITIZENS INSURANCE COMPANY OF AMERICA

| | |
|---|---|
| _____ | _____ |
| Applicant/Policyholder Signature | Insurance Company |
| | OBC-H332709-01 |
| _____ | _____ |
| Print Name | Quote or Policy Number |
| _____ | |
| Date | |

\*If this policy is a renewal and:

**a.** You have previously submitted a signed Rejection, you are not required to submit an additional Rejection at this time; or

**b.** You have previously accepted coverage and now wish to reject, you are required to complete and sign the Rejection of Terrorism Insurance Coverage above.

The **Hanover**
Insurance Group™

OBCH332709     1304500

# ILLINOIS INQUIRY NOTICE

In accordance with Illinois statute 215 ILCS 5/143c, the following information is provided:

This notice is to advise you that should any complaints arise regarding this insurance, you may contact the following:

The Hanover Insurance Company, Massachusetts Bay Insurance Company, Citizens Insurance Company of America, Citizens Insurance Company of Midwest, Citizens Insurance Company of Illinois, Allmerica Financial Benefit Insurance Company, Allmerica Financial Alliance Insurance Company and The Hanover American Insurance Company, complaint department for policies written through agencies located in the state of Illinois is:

**Complaint Department**
**The Hanover Insurance Group**
**333 W. Pierce Road**
**Suite 300**
**Itasca, Illinois 60143**
**1-800-685-5669**

The address of the Consumer Division or Public Services Section of the Illinois Department of Insurance is:

**Illinois Department of Insurance**
**Consumer Division or Public Services Section**
**320 W. Washington Street**
**Springfield, Illinois 62767**
**Or**

**Illinois Department of Insurance**
**Consumer Division or Public Services Section**
**122 S Michigan Ave 19th Floor**
**Chicago, IL 60603**
**1-312-814-2420**

**Or**

**http://insurance.illinois.gov**

**The Hanover**
Insurance Group™

OBCH332709       1304500

## IDENTITY THEFT RESOLUTION SERVICES
### (POWERED BY IDENTITY THEFT 911)

Are you or your resident family members at risk for identity theft?  Do you need expert assistance with an identity-related concern?  IDENTITY THEFT RESOLUTION SERVICES from Identity Theft 911 give you one-on-one assistance in the following situations:

**Access Phone Number: 800-628-0250**

If you or a resident family member suffer the loss or theft of private personal data, contact Identity Theft 911 for proactive guidance that can include Fraud Alert service.  If you wish, a fraud specialist can assist and place a free fraud alert on your credit file to reduce the risk of fraudulent accounts opened in your name. This service also includes additional preventative measures and one-on-one assistance, depending on the risk.

If you or a resident family member suffer the loss or theft of private personal data, contact Identity Theft 911 for Identity Restoration Case Management services. A fraud specialist will guide you through the process of restoring your identity and handle all of the work, including completed documentation and notification assistance. Victims also receive one year of credit monitoring, as well as free fraud monitoring of over 1,000 public databases.

**Learn How to Protect Your Identity**

We recommend that you regularly visit The Hanover Insurance Group and Identity Theft 911 comprehensive resource and knowledge library - www.hanover-identitytheft911.com - for the latest media alerts, identity theft tips, in-depth newsletters and much more.

Keep this access information handy in case you ever need help with an identity-related problem.

**Access Phone Number: 800-628-0250**

The Hanover Insurance Group makes no guarantee of results and assumes no liability in connection with either the information or assistance provided by Identity Theft 911.  Any and all external Websites or sources referred to herein are for informational purposes only.

**391-1585 12 11**          Copyright 2009, The Hanover Insurance Group          **Page 1 of 1**

**The Hanover Insurance Group™**

OBCH332709      1304500

## Customer Notice of Privacy Policy and Producer Compensation Practices Disclosures

## Privacy Policy Disclosure

Collection of Information

We collect personal information so that we may offer quality products and services. This information may include, but is not limited to, name, address, Social Security number, and consumer reports from consumer reporting agencies in connection with your application for insurance or any renewal of insurance. For example, we may access driving records, insurance scores or health information. Our information sources will differ depending on your state and/or the product or service we are providing to you. This information may be collected directly from you and/or from affiliated companies, non-affiliated third parties, consumer reporting agencies, medical providers and third parties such as the Medical Information Bureau.

We, and the third parties we partner with, may track some of the web pages you visit through cookies, pixel tagging or other technologies. We currently do not process or comply with any web browser's "do not track" signals or similar mechanisms that request us to take steps to disable online tracking. For additional information regarding online privacy, please see our online privacy statement, located at www.hanover.com       .

Disclosure of Information

We may disclose non-public, personal information you provide, as required to conduct our business and as permitted or required by law. We may share information with our insurance company affiliates or with third parties that assist us in processing and servicing your account. We also may share your information with regulatory or law enforcement agencies, reinsurers and others, as permitted or required by law.

Our insurance companies may share information with their affiliates, but will not share information with non-affiliated third parties who would use the information to market products or services to you.

Our standards for disclosure apply to all of our current and former customers.

Safeguards to Protect Your Personal Information

We recognize the need to prevent unauthorized access to the information we collect, including information held in an electronic format on our computer systems. We maintain physical, electronic and procedural safeguards intended to protect the confidentiality and integrity of all non-public, personal information, including but not limited to social security numbers, driver's license numbers and other personally identifiable information.

Internal Access to Information

Access to personal, non-public information is limited to those people who need the information to provide our customers with products or services. These people are expected to protect this information from inappropriate access, disclosure and modification.

Consumer Reports

In some cases, we may obtain a consumer report in connection with an application for insurance. Depending on the type of policy, a consumer report may include information about you or your business, such as:

- character, general reputation, personal characteristics, mode of living;
- credit history, driving record (including records of any operators who will be insured under the policy); and/or
- an appraisal of your dwelling or place of business that may include photos and comments on its general condition.

Access to Information

Upon written request, we will inform you if we have ordered an investigative consumer report. You have the right to make a written request within a reasonable period for information concerning the nature and scope of the report and to be interviewed as part of its preparation. You may obtain a copy of the report from the reporting agency and, under certain circumstances, you may be entitled to a copy at no cost.

You also may review certain information we have about you or your business in our files. To review information we maintain in our files about you or your business, please write to us, providing your complete name, address and policy number(s), and indicating specifically what you would like to see. If you request actual copies of your file, there may be a nominal charge.

We will tell you to whom we have disclosed the information within the two years prior to your request. If there is not a record indicating that the information was provided to another party, we will tell you to whom such information is normally disclosed.

There is information that we cannot share with you. This may include information collected in order to evaluate a claim under an insurance policy, when the possibility of a lawsuit exists. It may also include medical information that we would have to forward to a licensed medical doctor of your choosing so that it may be properly explained.

Correction of Information

If after reviewing your file you believe information is incorrect, please write to the consumer reporting agency or to us, whichever is applicable, explaining your position. The information in question will be investigated. If appropriate, corrections will be made to your file and the parties to whom the incorrect information was disclosed, if any, will be notified. However, if the investigation substantiates the information in the file, you will be notified of the reasons why the file will not be changed. If you are not satisfied with the evaluation, you have the right to place a statement in the file explaining why you believe the information is incorrect. We also will send a copy of your statement to the parties, if any, to whom we previously disclosed the information and include it in any future disclosures.

Our Commitment to Privacy

In the insurance and financial services business, lasting relationships are built upon mutual respect and trust. With that in mind, we will periodically review and revise our privacy policy and procedures to ensure that we remain compliant with all state and federal requirements. If any provision of our privacy policy is found to be non-compliant, then that provision will be modified to reflect the appropriate state or federal requirement. If any modifications are made, all remaining provisions of this privacy policy will remain in effect. For more detailed information about our customer privacy policy (including any applicable state-specific policies) and our online privacy statement, visit our Web site, located at www.hanover.com .

Further Information

If you have questions about our customer privacy policy (including any applicable state-specific policies) or our online privacy statement, or if you would like to request information we have on file, please write to us at our Privacy Office, N435, The Hanover Insurance Group, Inc., 440 Lincoln Street, Worcester, MA 01653. Please provide your complete name, address and policy number(s). A copy of our Producer Compensation Disclosure is also available upon written request addressed to the attention of the Corporate Secretary, N435, The Hanover Insurance Group, 440 Lincoln Street, Worcester, MA 01653.

**Producer Compensation Disclosure**

Our products are sold through independent agents and brokers, often referred to as "Producers." We may pay Producers a fixed commission for placing and renewing business with our company. We may also pay additional commission and other forms of compensation and incentives to Producers who place and maintain their business with us. Details of our Producer compensation practices may be found at www.hanover.com .

This notice is being provided on behalf of the following Hanover Companies: The Hanover Insurance Group, Inc. - Allmerica Financial Alliance Insurance Company - Allmerica Financial Benefit Insurance Company - Allmerica Plus Insurance Agency, Inc. - Citizens Insurance Company of America - Citizens Insurance Company of Illinois - Citizens Insurance Company of the Midwest - Citizens Insurance Company of Ohio - Citizens Management, Inc. - AIX Ins. Services of California, Inc.- Campania Insurance Agency Co. Inc. - Campmed Casualty & Indemnity Co. Inc. - Chaucer Syndicates Limited- Educators Insurance Agency, Inc.- Hanover Specialty Insurance Brokers, Inc. - The Hanover American Insurance Company - The Hanover Insurance Company - The Hanover New Jersey Insurance Company - The Hanover National Insurance Company - Hanover Lloyd's Insurance Company - Massachusetts Bay Insurance Company - Opus Investment Management, Inc. - Professionals Direct Insurance Services, Inc. -Professional Underwriters Agency, Inc. - Verlan Fire Insurance Company - Nova Casualty Company - AIX Specialty Insurance Company.

OBCH332709          1304500



# Your Avenues
# Businessowners Insurance Policy

The **Hanover**
Insurance Group™

## AVENUES BUSINESSOWNERS DECLARATION
### BUSINESSOWNERS RENEWAL DECLARATIONS

07

RENEWAL OF OBC H332709

| Policy Number | Policy Period | | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| | From | To | | |
| OBC-H332709-01 | 07/31/2021 | 07/31/2022 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

**Agent**

847-307-6100
THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

**Policy Period:  Beginning and Ending at 12:01 a.m. Standard Time at the Location of the Described Premises.**

**Business Type:**  CORPORATION (SINGLE).

**Mortgagee/Loss Payable:**

SEE ADDITIONAL INTEREST SCHEDULE

**Business of the Named Insured:**

SERVICE.

In consideration of the premium, insurance is provided the Named Insured with respect to those premises described in the Schedule below and with respect to those coverages and kinds of property for which a specific Limit of Insurance is shown, subject to all of the terms of this policy including forms and endorsements made a part hereof:

### LOCATION SCHEDULE

**Described Premises:**

NO. 001 001   233 N MICHIGAN AVE SUITE 1430, CHICAGO, IL  60601

| SECTION I - PROPERTY | LIMITS OF INSURANCE | | | | | |
|---|---|---|---|---|---|---|
| | Loc No  001 | Bldg No 001 | Loc No | Bldg No | Loc No | Bldg No |
| **Deductible Amount** | $         1,000 | | $ | | $ | |
| **Building Amount Valuation** | NOT COVERED | | | | | |
| **Business   Personal Property Valuation** | $        211,470  RC | | | | | |
| **Business Income** | ACTUAL BUSINESS LOSS SUSTAINED NOT EXCEEDING 12 CONSECUTIVE MONTHS | | | | | |
| **Business Income Waiting Period** | **Excluded / None / 24 hours / 48 hours /72 hours** 24 HOURS | | | | | |
| **SECTION II - LIABILITY** | LIMITS OF INSURANCE | | | | | |

**Liability and Medical Expenses Limits of Insurance:**

Except for Damage to Premises Rented to You,  each paid claim for the following coverages reduce the Amount of Insurance we provide during the applicable annual  period.  Please refer to  **SECTION II - LIABILITY, D. LIABILITY  AND MEDICAL  EXPENSES LIMITS OF INSURANCE,** paragraph **4.** of the Businessowners Coverage Form.

| Liability and Medical Expenses Limit | $ 2,000,000 | Per Occurrence | $ 4,000,000 | Aggregate |
|---|---|---|---|---|
| Medical Expenses | $     5,000 | Each Person | | |
| Damage to Premises Rented to You | $   300,000 | All Perils | | |

Date Issued: 05/26/2021           ORIGINAL/INSURED        Payment Type:  DIRECT BILL

GROUP NAME: TECHNOLOGY - SERVICES          GROUP NUMBER: ZTS

391-1002 08 16                                                                                                          Page 1 of 2

**The Hanover**
Insurance Group™

## AVENUES BUSINESSOWNERS DECLARATION
### BUSINESSOWNERS RENEWAL DECLARATIONS

07

RENEWAL OF OBC H332709

| Policy Number | Policy Period | | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| | From | To | | |
| OBC-H332709-01 | 07/31/2021 | 07/31/2022 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL 60601

**Agent**

847-307-6100
THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL 60010

**Additional Property Coverages and Extensions:**
See attached Schedule for Additional Coverages provided for under this Policy.

Audit Frequency: Annual

**Additional Liability Coverages:** General Liability Broadening Endorsement
**General Liability Class**: 85219
**Description**: CUSTOM COMPUTER PROGRAMMING
**Liability Exposure**: $1,872,000 SALES

**Policy Forms, Endorsements and Optional Coverages Attached:**
See Forms and Endorsements Schedule

TOTAL BOP COVERAGE PREMIUM: $ ███████
BOP TERRORISM COVG (INCLUDED IN TOTAL POLICY PREMIUM) $ ███████
   OTHER THAN FIRE FOLLOWING $ ███████
   FIRE FOLLOWING $ ███████
TOTAL UMBRELLA COVERAGE PREMIUM: $ ███████
UMB TERRORISM COVG (INCLUDED IN TOTAL POLICY PREMIUM) $ ███████
DEPOSIT PREMIUM: $ ███████
TOTAL POLICY PREMIUM IS: $ ███████

**Countersigned this _____ Day of _____**

_____
**Authorized Representative**

**This Declarations Page with the Policy Contract, Forms and Endorsements, if any,
Complete the Policy.**

Date Issued: 05/26/2021    ORIGINAL/INSURED    Payment Type: DIRECT BILL

**391-1002 08 16**

**The Hanover**
Insurance Group™

# ADDITIONAL INTEREST SCHEDULE

## BUSINESSOWNERS RENEWAL DECLARATIONS

07

RENEWAL OF OBC H332709

| Policy Number | Policy Period | | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| | From | To | | |
| OBC-H332709-01 | 07/31/2021 | 07/31/2022 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**
COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

**Agent**
847-307-6100
THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

| Name And Address | Interest Type | Location | Building |
|---|---|---|---|
| SILICON VALLEY BANK 3003 TASMAN DRIVE HF 150 SANTA CLARA, CA  95054 | LENDER'S LOSS PAYABLE | 0 0 1 | 0 1 |

Form   391-1014 (7-99)
Date Issued:   05/26/2021                      ORIGINAL/INSURED

**The Hanover** Insurance Group.

# ADDITIONAL PROPERTY COVERAGES AND EXTENSIONS

## BUSINESSOWNERS RENEWAL DECLARATIONS

07          RENEWAL OF OBC H332709

| Policy Number | Policy Period | | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| | From | To | | |
| OBC-H332709-01 | 07/31/2021 | 07/31/2022 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

**Agent**

847-307-6100

THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

| Additional Property Coverages & Extensions | Deductible | Amount Included | Additional Amount Increase | Total Limit |
|---|---|---|---|---|
| DEBRIS REMOVAL | NONE | $25,000 | N/A | $25,000 |
| PRESERVATION OF PROPERTY | NONE | 90 DAYS | N/A | 90 DAYS |
| FIRE DEPARTMENT SERVICE CHARGE | NONE | $25,000 | N/A | $25,000 |
| POLLUTANT CLEAN-UP AND REMOVAL | NONE | $25,000 | N/A | $25,000 |
| MONEY ORDERS AND COUNTERFEIT MONEY | $500 | $5,000 | N/A | $5,000 |
| FORGERY OR ALTERATION | $500 | $25,000 | N/A | $25,000 |
| GLASS EXPENSES | $250 | INCLUDED | N/A | INCLUDED |
| REWARDS ARSON, THEFT AND VANDALISM | NONE | $10,000 | N/A | $10,000 |
| TENANT SIGNS | $500 | $5,000 | N/A | $5,000 |
| FIRE PROTECTION EQUIPMENT RECHARGE | NONE | $25,000 | N/A | $25,000 |
| INSTALLATION FLOATER | $1,000 | $5,000 | N/A | $5,000 |
| FINE ARTS | $500 | $10,000 | N/A | $10,000 |
| FENCE AND WALLS | SEE BUILDING AND CONTENTS DEDUCTIBLE | INCLUDED | N/A | INCLUDED |
| SALES REPRESENTATIVE SAMPLES | $1,000 | $5,000 | N/A | $5,000 |
| LEASEHOLD INTEREST (TENANT'S ONLY) | NONE | $10,000 | N/A | $10,000 |
| UNAUTHORIZED BUSINESS CREDIT CARD USE | NONE | $5,000 | N/A | $5,000 |
| UTILITY SERVICES | | | N/A | |
| DIRECT DAMAGE | $500 | $10,000 | N/A | $10,000 |
| BUSINESS INCOME | 24 HOURS | $5,000 | N/A | $5,000 |
| DEFERRED PAYMENTS | NONE | $5,000 | N/A | $5,000 |
| NEWLY ACQUIRED OR CONSTRUCTED PROPERTY | | 180 DAYS | N/A | 180 DAYS |
| BUILDINGS | $500 | $1,000,000 | N/A | $1,000,000 |
| PERSONAL PROPERTY | $500 | $500,000 | N/A | $500,000 |
| BUSINESS INCOME AND EXTRA EXPENSE | SEE WAITING PERIOD | $250,000 | N/A | $250,000 |
| OUTDOOR PROPERTY - TREES, SHRUBS AND PLANTS-$1,000 EACH ITEM | $500 | $10,000 | N/A | $10,000 |

Form  391-1018  (7-02)
Date Issued:  05/26/2021

**The Hanover** Insurance Group™

# ADDITIONAL PROPERTY COVERAGES AND EXTENSIONS

## BUSINESSOWNERS RENEWAL DECLARATIONS

07          RENEWAL OF OBC H332709

| Policy Number | Policy Period | | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| | From | To | | |
| OBC-H332709-01 | 07/31/2021 | 07/31/2022 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

**Agent**

847-307-6100

THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

| Additional Property Coverages & Extensions | Deductible | Amount Included | Additional Amount Increase | Total Limit |
|---|---|---|---|---|
| PERSONAL EFFECTS | $500 | $10,000 | N/A | $10,000 |
| INVENTORY AND LOSS APPRAISAL | NONE | $10,000 | N/A | $10,000 |
| KEY REPLACEMENT AND LOCK REPAIR | NONE | $1,000 | N/A | $1,000 |
| APPURTENANT STRUCTURE | $500 | $50,000 | N/A | $50,000 |
| PERSONAL PROPERTY IN TRANSIT | $1,000 | $10,000 | N/A | $10,000 |
| EXTENDED BUSINESS INCOME | | 30 DAYS | N/A | 30 DAYS |
| EMPLOYEE THEFT INCLUDING ERISA COMPLIANCE | $1,000 | $10,000 | N/A | $10,000 |
| COMMERCIAL TOOLS AND SMALL EQUIP | $500 | $5,000 | N/A | $5,000 |
| PERSONAL PROPERTY OFF PREMISES | $1,000 | $50,000 | N/A | $50,000 |
| BUSINESS INCOME FROM DEPENDENT PROPERTIES | 72 HOURS | $5,000 | N/A | $5,000 |
| TERRORISM | SEE BUILDING AND CONTENTS DEDUCTIBLE | SAME AS PROPERTY LIMITS OF INSURANCE IF COVERED | N/A | SAME AS PROPERTY LIMITS OF INSURANCE IF COVERED |
| INTERRUPTION OF COMPUTER OPERATIONS | SEE WAITING PERIOD | $10,000 | N/A | $10,000 |
| BUSINESS PERSONAL PROPERTY TEMPORARILY IN PORTABLE STORAGE UNITS | $500 | $25,000 | N/A | $25,000 |
| CIVIL AUTHORITY | 72 HOURS | 4 WEEKS | N/A | 4 WEEKS |
| COMPUTER AND FUNDS TRANSFER FRAUD | $500 | $5,000 | N/A | $5,000 |
| LIMITED COVERAGE FOR FUNGI, WET ROT, OR DRY ROT | $500 | $50,000 | N/A | $50,000 |
| PAVED SURFACES | $500 | $25,000 | N/A | $25,000 |
| TENANT BUILDING COVERAGE - REQUIRED BY LEASE | $500 | $25,000 | N/A | $25,000 |
| TENANT BUSINESS PERSONAL PROPERTY COVERAGE - REQUIRED BY LEASE | $500 | $25,000 | N/A | $25,000 |

Form  391-1018  (7-02)
Date Issued:  05/26/2021

ORIGINAL/INSURED

**The Hanover** Insurance Group™

# ADDITIONAL PROPERTY COVERAGES AND EXTENSIONS

## BUSINESSOWNERS RENEWAL DECLARATIONS

07          RENEWAL OF OBC H332709

| Policy Number | Policy Period From | To | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| OBC-H332709-01 | 07/31/2021 | 07/31/2022 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

**Agent**

847-307-6100
THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

| Additional Property Coverages & Extensions | Deductible | Amount Included | Additional Amount Increase | Total Limit |
|---|---|---|---|---|
| THEFT OF TELEPHONIC SERVICES | $500 | $25,000 | N/A | $25,000 |
| UNDERGROUND PIPES | $500 | INCLUDED | N/A | INCLUDED |

**The Hanover** Insurance Group

# ADDITIONAL PROPERTY COVERAGES AND EXTENSIONS
## BUSINESSOWNERS RENEWAL DECLARATIONS

07        RENEWAL OF OBC H332709

| Policy Number | Policy Period From | To | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| OBC-H332709-01 | 07/31/2021 | 07/31/2022 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

Named Insured and Address
COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

Agent
847-307-6100
THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

| Additional Property Coverages & Extensions | Loc. No. | Bldg. No. | Deductible Amount | Amount Included | Additional Amount | Total Limit |
|---|---|---|---|---|---|---|
| ORDINANCE OR LAW | 001 | 001 | NONE | $5,000 | N/A | $5,000 |
| COMPUTER EQUIPMENT | | | $500 | $35,000 | N/A | $35,000 |
| COMPUTER EQUIPMENT EXTRA EXPENSE | | | NONE | $5,000 | N/A | $5,000 |
| ELECTRONIC VANDALISM | | | $500 | | | |
|   OCCURRENCE LIMIT | | | | $10,000 | N/A | $10,000 |
|   AGGREGATE LIMIT | | | | $10,000 | N/A | $10,000 |
| VALUABLE PAPERS AND RECORDS (OTHER THAN ELECTRONIC DATA) | | | $1,000 | | | |
|   ON PREMISES | | | | $25,000 | N/A | $25,000 |
|   OFF PREMISES | | | | $25,000 | N/A | $25,000 |
| ACCOUNTS RECEIVABLE | | | $1,000 | | | |
|   ON PREMISES | | | | $25,000 | N/A | $25,000 |
|   OFF PREMISES | | | | $25,000 | N/A | $25,000 |
| MONEY AND SECURITIES | | | $500 | | | |
|   ON PREMISES | | | | $10,000 | N/A | $10,000 |
|   OFF PREMISES | | | | $5,000 | N/A | $5,000 |
| EQUIPMENT BREAKDOWN | | | $1,000 | INCLUDED | N/A | INCLUDED |
| PROTECTIVE DEVICES CREDIT | | | | | | |
|   AUTOMATIC SPRINKLER SYSTEM | | | NO | | | |
|   AUTOMATIC FIRE ALARM | | | NO | | | |
|   CENTRAL STATION SECURITY | | | NO | | | |
| COLLAPSE | | | $500 | INCLUDED | N/A | INCLUDED |
| UTILITY SERVICES | | | | | | |
|   DIRECT DAMAGE | | | $500 | $50,000 | N/A | $50,000 |
|   TIME-ELEMENT | | | 24 HOURS | $50,000 | N/A | $50,000 |

Form  391-1018A (9-04)
Date Issued:  05/26/2021

ORIGINAL/INSURED

The Hanover
**Insurance Group**

# AVENUES BUSINESSOWNERS DECLARATION

## BUSINESSOWNERS RENEWAL DECLARATIONS

07

RENEWAL OF OBC H332709

| Policy Number | Policy Period From | To | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| OBC-H332709-01 | 07/31/2021 | 07/31/2022 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**
COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

**Agent**
847-307-6100
THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

## Forms and Endorsements Schedule

| Form Number | Edition Date | Description |
|---|---|---|
| 391-1402 | 08/16 | TECHNOLOGY DELUXE GOLD BROAD |
| 391-1371 | 01/10 | REV INFRINGE OF COPYRIGHT EXCL |
| BP0404 | 01/10 | HIRED AUTO NON-OWNED AUTO LIAB |
| 401-1374 | 12/20 | DISCLOSURE PURSUANT TO TRIA |
| 391-1114 | 01/15 | CAP ON LOSSES FROM TERRORISM |
| 391-1313 | 01/15 | EXCLUSION OF PUNITIVE DAMAGES |
| 391-1006 | 08/16 | LIABILITY SPECIAL BROADENING |
| BP0417 | 01/10 | EMPLYMT RELATED PRACTICES EXCL |
| 231-0475 | 06/89 | PILR NOTICE |
| 391-1003 | 08/16 | BUSINESSOWNERS COVERAGE FORM |
| BP0643 | 04/06 | IL CHANGES - DEFENSE COSTS |
| 391-1901 | 06/18 | ILLINOIS CHANGES |
| 421-0022 | 07/02 | ASBESTOS EXCLUSION |
| 391-1102 | 08/16 | EXCL - FUNGI OR BACTERIA LIAB |
| 331-0053 | 08/16 | ILLINOIS INQUIRY NOTICE |
| 391-1375 | 01/10 | AMEND LIMITS PERSONAL AND ADV |
| 391-1218 | 06/06 | EPLI INSURANCE CVG ENDR ILLINO |
| 391-1206 | 06/06 | EPLI IMPORTANT NOTICE |
| 391-1208 | 03/06 | EPLI SUPPLEMENTAL DEC |
| BP1203 | 01/10 | LOSS PAYABLE PROVISIONS |
| 401-1504 | 01/20 | CAP LOSSES CERT ACTS OF TERR |
| 391-1440 | 01/15 | DATA BREACH COVERAGE FORM |
| 391-1442 | 12/09 | ASSOC AND FAMILY MBR ADD COV |
| 391-1585 | 12/11 | IDENTITY THEFT NOTICE |

Form  391-1016 (7-99
Date Issued:  05/26/2021

ORIGINAL/INSURED

The **Hanover** Insurance Group

# AVENUES BUSINESSOWNERS DECLARATION

### BUSINESSOWNERS RENEWAL DECLARATIONS

07

RENEWAL OF OBC H332709

| Policy Number | Policy Period | | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| | From | To | | |
| OBC-H332709-01 | 07/31/2021 | 07/31/2022 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**
COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

**Agent**
847-307-6100
THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

### Forms and Endorsements Schedule

| Form Number | Edition Date | Description |
|---|---|---|
| 391-1854 | 01/15 | IL CHANGES - DATA BREACH |
| 401-1235 | 12/14 | CANCEL NOTICE TO DESIGNATED |
| 391-1941 | 08/16 | AI DESIGNATED PER OR ORG |

Form  391-1016 (7-99

Date Issued:  05/26/2021

ORIGINAL/INSURED

**COMMERCIAL EMPLOYMENT PRACTICES**
**LIABILITY INSURANCE COVERAGE ENDORSEMENT**
**SUPPLEMENTAL DECLARATIONS**



OBCH332709    1304500

Policy Number:  OBC H332709 01
Account Number:  1521871564
Named Insured:  COOLER SCREENS INC

Agent:  1304500

---

## NOTICE

· EXCEPT TO SUCH EXTENT AS MAY OTHERWISE BE PROVIDED HEREIN, THE COVERAGE OF THIS COVERAGE ENDORSEMENT IS LIMITED TO LIABILITY FOR ONLY THOSE CLAIMS OR SUITS THAT ARE FIRST MADE AGAINST THE INSUREDS DURING THE EPL COVERAGE PERIOD AND REPORTED IN WRITING TO THE INSURER PURSUANT TO THE TERMS HEREIN. VARIOUS PROVISIONS IN THIS COVERAGE ENDORSEMENT RESTRICT COVERAGE. PLEASE READ THE ENTIRE COVERAGE ENDORSEMENT CAREFULLY TO DETERMINE RIGHTS, DUTIES AND WHAT IS AND IS NOT COVERED.

· THE LIMIT OF LIABILITY AVAILABLE TO PAY JUDGEMENTS OR SETTLEMENTS UNDER THIS COVERAGE ENDORSEMENT SHALL BE REDUCED BY AMOUNTS INCURRED FOR LEGAL DEFENSE. AMOUNTS INCURRED FOR LEGAL DEFENSE SHALL BE APPLIED AGAINST THE DEDUCTIBLE AMOUNT.

---

| | | |
|---|---|---|
| **EPL Coverage Period:** | From: 07/31/2021<br><br>To:  07/31/2022 | At 12:01 A.M. Standard Time at your mailing address shown on the Declarations page of this policy. |
| **EPL Aggregate Limit of Liability:** | $  25,000.00 | Aggregate for all "loss" combined, including "defense costs". |
| **EPL Deductible Amount:** | $  5,000.00 | For "loss" arising from claims or suits alleging the same "wrongful employment act" or "related wrongful employment acts". |
| **EPL Original Inception Date:** | 07/31/2020 | (Enter "original inception date") If no date is shown, "we" will consider the "original inception date" to be the same as the beginning of this coverage endorsement. |

This insurance does not apply to "loss" arising out of a "wrongful employment act" that: (1) commences on or takes place prior to the "original inception date" shown here, or (2) arises out of incidents or circumstance of which "you" had knowledge prior to the "original inception date" shown.

| | |
|---|---|
| **EPL COVERAGE PREMIUM:** | $   |

391-1208 03 06

The **Hanover**
Insurance Group™

| RENEWAL OF POLICY |
|---|

| COMMERCIAL UMBRELLA POLICY |
|---|

THESE DECLARATIONS TOGETHER WITH THE COMMON POLICY CONDITIONS AND COVERAGE FORM(S) COMPLETE THE BELOW NUMBERED POLICY

POLICY NUMBER: OBC-H332709-01

DECLARATIONS

| **Named Insured and Address** (No., Street, Town, County, State) | **Agent** |
|---|---|
| COOLER SCREENS INC<br>233 N MICHIGAN AVE SUITE 1430<br>CHICAGO, IL 60601 | 130450000<br>THE PLEXUS GROUPE LLC<br>SUITE 300<br>21805 W. FIELD PARKWAY<br>DEER PARK, IL 60010 |

**Policy Period:** (Month, Day, Year)

From 07/31/2021 To 07/31/2022
12:01 AM, standard time at the address of the Named Insured as stated herein.

Form of Business:

☐ Individual ☐ Partnership ☒ Corporation ☐ Limited Liability Company
☐ Organization (Other than Partnership, Joint Venture, or Limited Liability Company

**Business Description:**
**SERVICE.**

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY. THIS PREMIUM MAY BE SUBJECT TO AUDIT.

| **Limit of Liability (Section III)** | |
|---|---|
| **Each Occurrence Limit** | **$ 1,000,000** |
| **General Aggregate Limit** | **$ 1,000,000** |
| **Product Completed Operations Aggregate Limit** | **$ 1,000,000** |

| **Retained Limit** | **Self-Insured Retention** | **$ NIL** |
|---|---|---|

**Premium Computation**

Annual Premium $ ▮▮▮
Advance Premium $

**Endorsements:**

| CU2130 | 01/15 | CU2156 | 06/06 | CU2136 | 01/15 | 473-1150 | 05/12 | 473-1157 | 01/10 | 473-0004 | 10/05 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| CU0004 | 05/09 | 473-0016 | 10/05 | 473-0023 | 10/05 | 473-0040 | 10/05 | CU0200 | 12/07 | CU0001 | 12/07 |
| 473-2194 | 08/16 | CU2123 | 02/02 | 473-2211 | 10/16 | CU2125 | 12/01 | CU2255 | 09/00 | CU2127 | 12/04 |
| CU2150 | 03/05 | IL0017 | 11/98 | CU2436 | 12/05 | IL0162 | 09/08 | 473-1125 | 02/09 | CU2186 | 05/14 |

☐ PRE PAID - the total annual premium is due at inception.
☐ HANOCASH - the annual premium is payable according to the term of the Hanocash endorsement attachment

☐ ACCOUNT BILL ☒ DIRECT BILL ☐ Annual ☐ Semi-Annual ☐ Other
Audit period: Non Auditable Unless indicated by ☐ Annual ☐ Semi-Annual ☐ Other
If you cancel this policy, we shall receive and retain not less than $ as a policy minimum premium.

The
**Hanover**
Insurance Group™

OBCH332709     1304500

## SCHEDULE A - SCHEDULE OF UNDERLYING POLICIES

**Insured:   COOLER SCREENS INC**
**Effective on and after: 07/31/2021  ,  12:01 AM Standard Time**
**This schedule is part of Policy Number:   OBC-H332709-01**

| CARRIER, POLICY NUMBER & PERIOD | TYPE OF POLICY | APPLICABLE LIMITS OR AMOUNT OF INSURANCE |
|---|---|---|
| (a)Carrier:<br><br>CITIZENS INSURANCE COMPANY OF AMERICA<br><br>Policy Number:   OBC-H332709-01<br>Policy Period:   07/31/2021    TO  07/31/2022 | Commercial General Liability [X]Non-owned & Hired Autos | $ 2,000,000    Each Occurrence<br>$ 4,000,000    General Aggregate<br>$ 4,000,000    Product/Compl eted Operations Aggregate |
| (b) Carrier:<br><br>Policy Number:<br>Policy Period: | Comprehensive Automobile Liability | Bodily Injury and Property Damage Liability Combined<br>$              Each Accident<br>Bodily Injury<br>$              Each Person<br>$              Each Accident<br>Property Damage<br>$              Each Accident |
| (c)Carrier:<br><br>EXCLUDED<br>Policy Number:<br>Policy Period: | Standard Workers Compensation & Employers Liability **Please Note:** The Umbrella Coverage for Workers Compensation and Employers Liability is not applicable in situations where an employee is subject to the New York Workers Compensation Law. | **Coverage B - Employers Liability**<br>Bodily Injury by Accident<br>$              Each Accident<br>Bodily Injury by Disease<br>$              Aggregate<br>$              Each Employee |
| (d)Carrier:<br><br>Policy Number:<br>Policy Period: | Liquor Liability | $              Limit of Liability |
| (e)Carrier:<br><br>Policy Number:<br>Policy Period: | Professional Liability | $              Limit of Liability |
| An "X" marked in the box provided indicates these broadening or optional coverages are provided in the Underlying Insurance | | |
| (f) Carrier:<br><br>Policy Number:<br>Policy Period: | Directors & Officers Liability | $              Limit of Liability |
| (g) Carrier:<br><br>Policy Number:<br>Policy Period: | Employee Benefits Liability | $              Limit of Liability |
| **Countersigned By:** | | |
| **Date:** | | |
| **Authorized Representative of the Company** | | |

473-1103 (11/08)

**The HANOVER Insurance Group™**

OBCH332709     1304500

# BUSINESSOWNERS COVERAGE FORM

## Table of Contents

| SECTION I - PROPERTY | Page Number |
|---|---|
| **A. Coverage** | 4 |
| **1. Covered Property** | 4 |
| **2. Property Not Covered** | 5 |
| **3. Covered Causes of Loss** | 6 |
| **4. Limitations** | 6 |
| **5. Additional Coverages** | 7 |
| Business Income | 10 |
| Business Income from Dependent Properties | 17 |
| Civil Authority | 13 |
| Collapse | 8 |
| Commercial Tools and Small Equipment | 27 |
| Computer Equipment | 20 |
| Computer and Funds Transfer Fraud | 34 |
| Debris Removal | 7 |
| Deferred Payments | 31 |
| Electronic Vandalism | 31 |
| Employee Theft including ERISA Compliance | 18 |
| Equipment Breakdown | 22 |
| Extra Expense | 12 |
| Fine Arts | 28 |
| Fire Department Service Charge | 8 |
| Fire Protection Equipment Recharge | 18 |
| Forgery or Alteration | 13 |
| Glass Expenses | 18 |
| Installation | 27 |
| Interruption of Computer Operations | 32 |
| Leasehold Interest (Tenants only) | 29 |
| Limited Coverage for Fungi, Wet Rot, or Dry Rot | 33 |
| Money and Securities | 21 |
| Money Orders and Counterfeit Money | 13 |
| Ordinance or Law | 14 |
| Preservation of Property | 8 |
| Pollutant Clean-Up and Removal | 12 |
| Rewards - Arson, Theft and Vandalism | 20 |
| Sales Representative Samples | 29 |
| Tenant Building Insurance - When Your Lease Requires You to Provide Insurance | 34 |
| Tenant Business Personal Property Insurance - When Your Lease Requires You to Provide Insurance | 34 |
| Tenant Signs (Tenants Only) | 22 |
| Theft of Telephonic Services | 34 |
| Unauthorized Business Credit Card Use | 30 |
| Utility Services | 30 |
| Water Damage, Other Liquids, Powder or Molten Material Damage | 10 |

|  |  |
|---|---|
| **6. Coverage Extensions** | 35 |
| Accounts Receivable | 37 |
| Business Personal Property Temporarily in Portable Storage Units | 39 |
| Appurtenant Structures | 38 |
| Inventory and Loss Appraisal | 39 |
| Key Replacement and Lock Repair | 38 |
| Newly Acquired or Constructed Property | 35 |
| Outdoor Property | 36 |
| Paved Surfaces | 39 |
| Personal Effects | 36 |
| Personal Property Off Premises | 36 |
| Personal Property In Transit | 38 |
| Valuable Papers and Records (Other Than Electronic Data) | 36 |
| Underground Pipes | 40 |
| **B. Exclusions** | 40 |
| **C. Limits of Insurance** | 45 |
| **D. Deductibles** | 46 |
| **E. Property Loss Conditions** | 47 |
| **1. Abandonment** | 47 |
| **2. Appraisal** | 47 |
| **3. Duties in the Event of Loss or Damage** | 47 |
| **4. Legal Action Against Us** | 48 |
| **5. Loss Payment** | 48 |
| **6. Recovered Property** | 50 |
| **7. Vacancy** | 50 |
| **8. Pair, Sets or Parts** | 51 |
| **F. Property General Conditions** | 51 |
| **1. Control of Property** | 51 |
| **2. Mortgageholders** | 51 |
| **3. No Benefit to Bailee** | 52 |
| **4. Policy Period, Coverage Territory** | 52 |
| **5. Protective Devices** | 52 |
| **6. Increase in Hazard** | 52 |
| **G. Property Definitions** | 52 |
|  |  |
| **SECTION II - LIABILITY** |  |
| **A. Coverages** | 59 |
| **1. Business Liability** | 59 |
| **2. Medical Expenses** | 61 |
| **B. Exclusions** | 62 |
| **1. Applicable to Business Liability Coverage** | 62 |
| **2. Additional Exclusions Applicable only to Personal and Advertising Injury** | 68 |
| **3. Additional Exclusions Applicable to Medical Expenses Coverage Only** | 69 |
| **4. Additional Exclusions Applicable to Both Business Liability Coverage and Medical Expenses Coverage - Nuclear Energy Liability Exclusion** | 70 |
| **C. Who is an Insured** | 71 |
| **D. Liability and Medical Expenses Limits of Insurance** | 72 |

The **Hanover**
Insurance Group.

OBCH332709        1304500

**E. Liability and Medical Expenses General Conditions** ............................................................. 73
    **1. Bankruptcy** ...................................................................................................... 73
    **2. Duties in the Event of Occurrence, Offense, Claim or Suit** ..................... 73
    **3. Legal Action Against Us** ............................................................................ 73
    **4. Separation of Insureds** ............................................................................... 73
**F. Liability and Medical Expenses Definitions** ......................................................................... 74


**SECTION III - COMMON POLICY CONDITIONS (APPLICABLE TO SECTION I - PROPERTY AND SECTION II - LIABILITY)**
**A. Cancellation** ............................................................................................................................. 77
**B. Changes** ................................................................................................................................... 78
**C. Concealment, Misrepresentation or Fraud** .......................................................................... 78
**D. Examination of Your Books and Records** ............................................................................ 78
**E. Inspections and Surveys** ........................................................................................................ 78
**F. Insurance Under Two or More Coverages** ........................................................................... 78
**G. Liberalization** .......................................................................................................................... 79
**H. Other Insurance** ...................................................................................................................... 79
**I. Premiums** .................................................................................................................................. 80
**J. Premium Audit** .......................................................................................................................... 80
**K. Transfer of Rights of Recovery Against Others to Us** ........................................................ 80
**L. Transfer of Your Rights and Duties Under This Policy** ....................................................... 81

# BUSINESSOWNERS COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this Coverage Form the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

In **SECTION II - LIABILITY**, the word "insured" means any person or organization qualifying as such under paragraph **C. Who is an Insured**.

Other words and phrases that appear in quotation marks have special meaning. Refer to paragraph **G. Property Definitions** in **SECTION I - PROPERTY** and paragraph **F. Liability and Medical Expenses Definitions** in **SECTION II - LIABILITY**.

## SECTION I - PROPERTY

### A. Coverage

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

**1. Covered Property**

Covered Property includes Buildings as described in paragraph **a.** below, Business Personal Property as described in paragraph **b.** below, or both, depending on whether a Limit of Insurance is shown in the Declarations for that type of property. Regardless of whether coverage is shown in the Declarations for Buildings, Business Personal Property, or both, there is no coverage for property described in **SECTION I - PROPERTY, A. Coverage, 2. Property Not Covered**.

**a.** Buildings, meaning the buildings and structures at the premises described in the Declarations, including:

**(1)** Completed additions;

**(2)** Fixtures, including outdoor fixtures;

**(3)** Permanently installed:

**(a)** Machinery; and

**(b)** Equipment;

**(4)** Your personal property in apartments, rooms or common areas furnished by you as the landlord;

**(5)** Personal property owned by you that is used to maintain or service the buildings or structures or the premises, including:

**(a)** Fire protection equipment;

**(b)** Outdoor furniture;

**(c)** Floor coverings; and

**(d)** Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

**(6)** If not covered by other insurance

**(a)** Additions under construction, alterations and repairs to the buildings or structures;

**(b)** Materials, equipment, supplies and temporary structures, on or within 1,000 feet of the described premises, used for making additions, alterations or repairs to the buildings or structures;

**(7)** Signs, whether or not they are attached to covered buildings or structures;

**(8)** Interior and Exterior Building glass if you are a building owner;

**(9)** Fences and retaining walls located on or within 1,000 feet of a covered building or structure, whether or not attached to buildings or structures, except for retaining walls that are used, in whole or in part, to contain water.

**b.** Business Personal Property located in or on the buildings or structures at the described premises or in the open (or in a vehicle) within 1,000 feet of the building or structures or within 1,000 feet of the premises described in the Declarations, whichever distance is greater, including:

**(1)** Property you own that is used in your business;

**(2)** Property of others that is in your care, custody or control, including the cost of labor, materials or services furnished or arranged by you on personal property of others, except as otherwise provided in **SECTION I -**



PROPERTY, E. Property Loss Condition, 5. Loss Payment paragraph **d.**, subparagraph **(3)(b)**;

**(3)** Tenant's improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

**(a)** Made a part of the building or structure you occupy but do not own; and

**(b)** You acquired or made at your expense but cannot legally remove.

**(4)** Leased personal property for which you have a written contractual responsibility to insure, unless otherwise provided in paragraph **(2)** above;

**(5)** Exterior building glass, if you are a tenant and no Limit of Insurance is shown in the Declarations for Building property. The glass must be owned by you or in your care, custody or control;

**(6)** Physical damage sustained to a building leased to you caused by or resulting from "theft" or attempted "theft", burglary or robbery of your Business Personal Property.

**2.  Property Not Covered**

Covered Property does not include:

**a.** Aircraft, automobiles, motortrucks and other vehicles subject to motor vehicle registration;

**b.** Contractor's equipment, which is used or operated principally away from the premises described in the Declarations, or parts and equipment, whether attached or unattached to contractor's equipment, unless such parts and equipment is held for sale by you, or sold by you but not delivered unless specifically endorsed and scheduled, or as provided for in **SECTION I - PROPERTY, B. Additional Coverages, v. Commercial Tools and Small Equipment**;

**c.** "Money" or "securities" except as provided in the:

**(1)** Money and Securities Additional Coverage; or

**(2)** Employee Theft Additional Coverage;

**d.** Contraband or property in the course of illegal transportation or trade;

**e.** Land, whether or not resurfaced with stone, gravel or similar layer (including land on which the property is located), water, growing crops or lawns (other than lawns which are part of a vegetated roof), except as provided in **SECTION I - PROPERTY, A. Coverage, 6. Coverage Extension, l. Paved Surfaces**;

**f.** Outdoor radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers, trees, shrubs or plants (other than trees, shrubs or plants which are part of a vegetated roof), all except as provided in **SECTION I - PROPERTY, A. Coverage, 6. Coverage Extension, c. Outdoor Property**;

**g.** Watercraft (including motors, equipment and accessories);

**h.** Accounts, bills, food stamps, other evidences of debt, accounts receivable or "valuable papers and records"; except as otherwise provided in this Coverage Form;

**i.** "Computer equipment", which is permanently installed or designed to be permanently installed in any aircraft, watercraft, motortruck or other vehicle subject to motor vehicle registration. This paragraph does not apply to "computer equipment" while held as "stock";

**j.** "Electronic Data", except as provided under the Computer Equipment and Electronic Vandalism Additional Coverages. This paragraph does not apply to your "stock" of prepackaged "software" or to "electronic data" which is integrated in and operates or controls the building's elevator, lighting, heating, ventilation, air conditioning or security system;

**k.** Animals, unless owned by others and boarded by you, or held for sale by you, or sold but not delivered, and only while inside of buildings;

**l.** The cost of excavations, grading, backfilling, or filling;

**m.** Bulkheads, pilings, piers, wharves or docks;

**n.** Retaining walls that are used, in whole or in part, to contain water.

**o.** "Computer Equipment", except as provided for under the:

**(1)** Computer Equipment Additional Coverage;

**(2)** Equipment Breakdown Additional Coverage; or

**(3)** Electronic Vandalism Additional Coverage.

**p.** Commercial tools and small equipment except as provided in **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, v. Commercial Tools and Small Equipment** or for contractor's equipment specifically endorsed and scheduled. This does not apply to your commercial tools and small equipment permanently installed or exclusively used at the described premises;

**q.** Employee tools and small equipment except as provided for in **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, v. Commercial Tools and Small Equipment** or when added by separate endorsement;

**r.** Bridges (unless the bridge is made a part of a covered Building), roadways, walks, patios or other paved surfaces, except as provided in **SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions, l. Paved Surfaces**;

**s.** Underground pipes, flues or drains except as provided in **SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions, m. Underground Pipes**; and

**t.** Personal Property while airborne or waterborne.

**3. Covered Causes of Loss**

Risks of direct physical loss unless the loss is:

**a.** Excluded in **SECTION I - PROPERTY, B. Exclusions**; or

**b.** Limited in **SECTION I - PROPERTY, A. Coverages, 4. Limitations**

**4. Limitations**

**a.** We will not pay for loss of or damage to:

**(1)** Property that is missing, where the only evidence of the loss or damage is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property. This limitation does not apply to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, s. Money and Securities**.

**(2)** Property that has been transferred to a person or to a place outside the described premises on the basis of unauthorized instructions.

**(3)** The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

**(a)** The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

**(b)** The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

**(4)** Lawns, trees, shrubs or plants which are part of a vegetated roof, caused by or resulting from:

**(a)** Dampness or dryness of atmosphere or of soil supporting the vegetation;

**(b)** Changes in or extremes of temperature;

**(c)** Disease;

**(d)** Frost or hail; or

**(e)** Rain, snow, ice or sleet.

**b.** We will not pay for loss of or damage to the following types of property unless caused by any of the "specified causes of loss" or building glass breakage:

**(1)** Animals, and then only if they are killed or their destruction is made necessary.

**(2)** Fragile articles such as glassware, statuary, marble, chinaware and porcelain, if broken. This restriction does not apply to:

**(a)** Glass that is part of the exterior or interior of a building or structure;

**(b)** Containers of property held for sale; or

**(c)** Photographic or scientific instrument lenses.

**c.** For loss or damage by "theft", the following types of property are covered only up to the limits shown:

**(1)** $10,000 for furs, fur garments and garments trimmed with fur.

**(2)** $10,000 for jewelry, watches, watch movements, jewels, pearls, precious and semi-precious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth $250 or less per item.



OBCH332709    1304500

**5. Additional Coverages**

**a. Debris Removal**

**(1)** Subject to paragraphs **(2)**, **(3)** and **(4)** below, we will pay your expense to remove debris of Covered Property and other debris that is on the described premises, when such debris is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical loss or damage.

**(2)** Debris Removal does not apply to costs to:

**(a)** Remove debris of property of yours that is not insured under this Coverage Form, or property in your possession that is not Covered Property;

**(b)** Remove debris of property owned or leased to the landlord of the building where your described premises are located, unless you have a contractual responsibility to insure such property and it is insured under this Coverage Form;

**(c)** Remove any property that is Property Not Covered except as provided under the Outdoor Property Coverage Extension;

**(d)** Remove property of others of a type that would not be Covered Property under this Coverage Form;

**(e)** Remove deposits of mud or earth from the grounds of the described premises;

**(f)** Extract "pollutants" from land or water; or

**(g)** Remove, restore or replace polluted land or water.

**(3)** Subject to the exceptions in paragraph **(4)** below, the following provisions apply:

**(a)** The most that we will pay for the total of direct physical loss or damage plus debris removal expense is the Limit of Insurance applicable to the Covered Property that has sustained loss or damage.

**(b)** Subject to paragraph **(a)** above, the amount we will pay for debris removal expense is limited to 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage. However, if no Covered Property has sustained direct physical loss or damage, the most we will pay for removal of debris of other property (if such removal is covered under this Additional Coverage) is $5,000 at each location.

**(4)** We will pay up to an additional $25,000 for debris removal expense, for each location, in any one occurrence of physical loss of or damage to Covered Property, if one or both of the following circumstances apply:

**(a)** The total of the actual debris removal expense plus the amount we pay for direct physical loss or damage exceeds the Limit of Insurance on the Covered Property that has sustained loss or damage.

**(b)** The actual debris removal expense exceeds 25% of the sum of the deductible plus the amount that we pay for direct physical loss of or damage to the Covered Property that has sustained loss or damage.

Therefore, if paragraphs **(a)** and/or **(b)** above apply, our total payment for direct physical loss or damage and debris removal expense may reach but will never exceed the Limit of Insurance on the Covered Property that has sustained loss or damage, plus $25,000.

**(5)** Examples

**Example #1**

| | |
|---|---|
| Limit of Insurance | $ 90,000 |
| Amount of Deductible | $ 500 |
| Amount of Loss | $ 50,000 |
| Amount of Loss Payable ($50,000 - $500) | $ 49,500 |
| Debris Removal Expense | $ 10,000 |
| Debris Removal Expense | |

Payable                    $ 10,000
($10,000 is 20% of $50,000)

The debris removal expense is less than 25% of the sum of the loss payable plus the deductible. The sum of the loss payable and the debris removal expense ($49,500 + $10,000 = $59,500) is less than the Limit of Insurance. Therefore the full amount of debris removal expense is payable in accordance with the terms of paragraph **(3)** above.

**Example #2**

Limit of Insurance              $ 90,000
Amount of Deductible            $ 500
Amount of Loss                  $ 80,000
Amount of Loss Payable          $ 79,500
($80,000 - $500)

Debris Removal Expense          $ 40,000

Debris Removal Expense
Payable

    Basic Amount           $ 10,500
    Additional Amount      $ 25,000

The basic amount payable for debris removal expense under the terms of paragraph **(3)** above is calculated as follows: $80,000 ($79,500 + $500) x .25 = $20,000 (capped at $10,500). The cap applies because the sum of the loss payable ($79,500) and the basic amount payable for debris removal expense ($10,500) cannot exceed the Limit of Insurance ($90,000).

The additional amount payable for debris removal expense is provided in accordance with the terms of paragraph **(4)** above, because the debris removal expense ($40,000) exceeds 25% of the loss payable plus the deductible ($40,000 is 50% of $80,000), and because (from paragraph **(3) (a)**) the sum of the loss payable and debris removal expense ($79,500 + $40,000 = $119,500) would exceed the Limit of Insurance ($90,000). The additional amount of covered debris removal expense is $25,000, the maximum payable under paragraph **(4)** above. Thus the total payable for debris removal expense in this example is $35,500; $4,500 of the

debris removal expense is not covered.

**b. Preservation of Property**

If it is necessary to move Covered Property from the described premises to preserve it from loss or damage by a Covered Cause of Loss, we will pay for any direct physical loss of or damage to that property:

**(1)** While it is being moved or while temporarily stored at another location; and

**(2)** Only if the loss or damage occurs within 90 days after the property is first moved.

This Additional Coverage does not increase the applicable Limit of Insurance.

**c. Fire Department Service Charge**

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $25,000 for service at each premises described in the Declarations, unless a higher Limit of Insurance is shown in the Declarations. Such limit is the most we will pay regardless of the number of responding fire departments or fire units, and regardless of the number or type of services performed.

This Additional Coverage applies to your liability for fire department services charges:

**(1)** Assumed by contract or agreement prior to loss; or

**(2)** Required by local ordinance.

**d. Collapse**

The coverage provided under this Additional Coverage - Collapse applies only to an abrupt collapse as described and limited in paragraphs **(1)**, **(2)**, **(3)**, **(4)**, **(5)**, **(6)** and **(7)** below.

**(1)** For the purpose of this Additional Coverage - Collapse, abrupt collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose.

**(2)** We will pay for direct physical loss of or damage to Covered Property, caused by abrupt collapse of a building or any part of a building that is insured under this policy or that contains Covered Property

**The Hanover**
**Insurance Group**
OBCH332709     1304500

insured under this policy, if such collapse is caused by one or more of the following:

**(a)** Building decay that is hidden from view, unless the presence of such decay is known to any insured prior to collapse;

**(b)** Insect or vermin damage that is hidden from view, unless the presence of such damage is known to any insured prior to collapse;

**(c)** Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs during the course of the construction, remodeling or renovation; or

**(d)** Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs after the construction, remodeling or renovation is complete, but only if the collapse is caused in part by:

**(i)** A cause of loss listed in paragraphs **(a)** or **(b)** above of this Additional Coverage;

**(ii)** One or more of the "specified causes of loss";

**(iii)** Breakage of building glass;

**(iv)** Weight of people or personal property; or

**(v)** Weight of rain that collects on a roof.

**(3)** This Additional Coverage - Collapse does not apply to:

**(a)** A building or any part of a building that is in danger of falling down or caving in;

**(b)** A part of a building that is standing, even if it has separated from another part of the building; or

**(c)** A building that is standing or any part of a building that is standing, even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**(4)** With respect to the following property:

**(a)** Awnings;

**(b)** Gutters and downspouts;

**(c)** Yard Fixtures;

**(d)** Outdoor swimming pools;

**(e)** Beach or diving platforms or appurtenances;

**(f)** Retaining walls; and

**(g)** Walks, roadways and other paved surfaces;

if an abrupt collapse is caused by a cause of loss listed in paragraph **(2)**, subparagraphs **(a)**, **(b)**, **(c)** and **(d)** of this Additional Coverage, we will pay for loss or damage to that property only if such loss or damage is a direct result of the abrupt collapse of a building insured under this Coverage Form and the property is Covered Property under this Coverage Form.

**(5)** If personal property abruptly falls down or caves in and such collapse is not the result of abrupt collapse of a building, we will pay for loss or damage to Covered Property caused by such collapse of personal property only if:

**(a)** The abrupt collapse of personal property was caused by a cause of loss listed in paragraph **(2)**, subparagraphs **(a)**, **(b)**, **(c)** and **(d)** of this Additional Coverage;

**(b)** The personal property which collapses is inside a building; and

**(c)** The property which collapses is not of a kind listed in paragraph **(4)** above, regardless of whether that kind of property is considered to be personal property or real property.

The coverage stated in paragraph **(5)** does not apply to personal property if marring and/or scratching is the only damage to that personal property caused by the collapse.

**(6)** This Additional Coverage - Collapse does not apply to personal property that has not abruptly fallen down or caved in, even if the personal property shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**(7)** This Additional Coverage - Collapse will not increase **SECTION I - PROPERTY, C. Limits of Insurance**.

**(8)** The term Covered Cause of Loss includes the Additional Coverage -

Collapse as described and limited in paragraphs **(1)**, **(2)**, **(3)**, **(4)**, **(5)**, **(6)** and **(7)** above.

**e.** **Water Damage, Other Liquids, Powder or Molten Material Damage**

If loss or damage caused by or resulting from covered water or other liquid, powder or molten material damage loss occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes.

We will not pay the cost to repair any defect that caused the loss or damage; but we will pay the cost to repair or replace damaged parts of fire extinguishing equipment if the damage:

**(1)** Results in discharge of any substance from an automatic fire protection system; or

**(2)** Is directly caused by freezing.

**f.** **Business Income**

When Business Income Coverage is provided under this policy:

**(1)** **Business Income**

**(a)** We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to a described premises shown in the Declarations and for which a Business Income Limit of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss.

With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 1,000 feet of such premises.

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of a building, your premises mean:

**(i)** The portion of the building which you rent, lease or occupy;

**(ii)** The area within 1,000 feet of the building or within 1,000 feet of the premises described in the Declarations, whichever distance is greater (with respect to loss of or damage to personal property in the open or personal property in a vehicle); and

**(iii)** Any area within the building or at the described premises, if that area services, or is used to gain access to, the portion of the building which you rent, lease or occupy.

**(b)** We will only pay for loss of Business Income that you sustain during the "period of restoration" and that occurs within the designated, consecutive number of months found on the Declarations Page beginning immediately after the date of direct physical loss or damage. For purposes of this insurance, all recoverable loss ceases when the "period of restoration" ends.

**(c)** **Business Income** means the:

**(i)** Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred if no physical loss or damage had occurred, but not including any Net Income that would likely have been earned as result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses;

**(ii)** Continuing normal operating expenses incurred, including "payroll expenses". However, if your business is not generating any income because you are primarily in research or development or have not yet brought your product to market, your continuing normal operating expenses, including "payroll expenses", will not be offset by the Net Loss; and

**(iii)** "Rental Value".



OBCH332709     1304500

For manufacturing risks, Net Income includes the net sales value of production.

**(2) Extended Business Income**

If no Business Income Coverage is provided under this Coverage Form, then there is no Extended Business Income Coverage afforded under this Coverage Form.

**(a) Extended Business Income - Other Than Rental Value**

If the necessary "suspension" of your "operations" produces a Business Income loss payable under this Coverage Form, we will pay for the actual loss of Business Income you incur during the period that:

**(i)** Begins on the date property (except "finished stock") is actually repaired, rebuilt or replaced (to the extent necessary to resume "operations") and "operations" are resumed; and

**(ii)** Ends on the earlier of:

**1)** The date you could restore your "operations", with reasonable speed, to the level which would generate the Business Income amount that would have existed if no direct physical loss or damage had occurred; or

**2)** The number of consecutive days shown in the Additional Property Coverage Schedule for Extended Business Income after the date determined in **(a) Extended Business Income - Other Than Rental Value,** paragraph **(i)** above.

However, Extended Business Income does not apply to loss of Business Income incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

**(b) Extended Business Income - Rental Value**

If the necessary "suspension" of your "operations" produces a "rental value" loss payable under this Coverage Form, we will pay for the actual loss of "rental value" you incur during the period that:

**(i)** Begins the date property is actually repaired, rebuilt or replaced and tenantability is restored; and

**(ii)** Ends the earlier of:

**1)** The date you could restore tenant occupancy, with reasonable speed, to the level which would generate the "rental value" that would have existed if no direct physical loss or damage had occurred; or

**2)** The number of consecutive days shown in the Additional Property Coverage Schedule for Extended Business Income after the date determined in **(b) Extended Business Income - Rental Value,** paragraph **(i)** above.

However, Extended Business Income does not apply to loss of "rental value" incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

Loss of "rental value" must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

**(iii)** We will reduce the amount of your:

Business Income loss, other than Extra Expense, to the extent you can resume your "operations", in whole or in part, by using damaged or undamaged

property (including merchandise or "stock") at the described premises or elsewhere.

**(iv)** If you do not resume "operations", or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

This Additional Coverage is not subject to **SECTION I - PROPERTY, C. Limits of Insurance**.

**g. Extra Expense**

When Business Income Coverage is provided under this Coverage Form:

**(1)** We will pay the necessary Extra Expense you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 1,000 feet of such premises.

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of a building, your premises mean:

**(a)** The portion of the building which you rent, lease or occupy;

**(b)** The area within 1,000 feet of the building or within 1,000 feet of the premises described in the Declarations, whichever distance is greater (with respect to loss of or damage to personal property in the open or personal property in a vehicle); and

**(c)** Any area within the building or at the described premises, if that area services, or is used to gain access to, the portion of the building which you rent, lease or occupy.

**(2)** Extra Expense means expense incurred:

**(a)** To avoid or minimize the "suspension" of business and

to continue "operations":

**(i)** At the described premises; or

**(ii)** At replacement premises or at temporary locations, including relocation expenses, and costs to equip and operate the replacement or temporary locations.

**(b)** To minimize the "suspension" of business if you cannot continue "operations".

**(c)** To:

**(i)** Repair or replace any property; or

**(ii)** Research, replace or restore the lost information on damaged "valuable papers and records"

to the extent it reduces the amount of loss that otherwise would have been payable under this Additional Coverage or **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverage, f. Business Income**.

With regard to paragraph **(i)** above, we will pay only for those expenses necessary to expedite the repair or replacement of the property. Under this provision we will not pay for any portion of the ordinary and expected cost to actually repair or replace property.

**(3)** We will only pay for Extra Expense that occurs within 12 consecutive months beginning immediately after the date of direct physical loss or damage.

**(4)** We will reduce the amount of your Extra Expense loss payment to the extent you can return "operations" to normal and discontinue such Extra Expense.

**(5)** If you do not resume "operations", or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

This Additional Coverage is not subject to **SECTION I - PROPERTY, C. Limits of Insurance**.

**h. Pollutant Clean-Up and Removal**

We will pay your expense to extract "pollutants" from land or water at the



OBCH332709     1304500

described premises if the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the Covered Cause of Loss occurs.

This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants". But we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

The most we will pay for each location under this Additional Coverage is $25,000 for the sum of all such expenses arising out of Covered Causes of Loss occurring during each separate 12 month period of this policy.

**i.  Civil Authority**

When Business Income Coverage is provided under this Coverage Form:

**(1)** When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises due to direct physical loss or damage to property within one mile of the described premises, provided that both of the following apply:

**(a)** Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property;

**(b)** The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

**(2)** Civil Authority Coverage for Business Income will begin 72 hours after the time of the

first action of civil authority that prohibits access to the described premises and will apply for a period of up to four consecutive weeks from the date on which such coverage began.

Civil Authority Coverage for Extra Expense will begin immediately after the time of the first action of civil authority that prohibits access to the described premises and will end:

**(a)** Four consecutive weeks after the date of that action; or

**(b)** When your Civil Authority Coverage for Business Income ends;

whichever is later.

**(3)** The definitions of Business Income and Extra Expense contained in **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, f. Business Income;** and **g. Extra Expense** also apply to this Additional Coverage.

**j.  Money Orders and Counterfeit Money**

**(1)** We will pay for loss resulting directly from your having accepted in good faith, in exchange for merchandise, "money" or services:

**(a)** Money orders issued by any post office, express company or "financial institution" that are not paid upon presentation; or

**(b)** "Counterfeit money" that is acquired during the regular course of business.

**(2)** Under this Additional Coverage, all loss:

**(a)** Caused by one or more persons; or

**(b)** Involving a single act or series of related acts;

is considered one occurrence.

**(3)** The most we will pay for any loss under this Additional Coverage is $5,000.

**k.  Forgery or Alteration**

**(1)** We will pay for loss resulting directly from forgery or alteration of any:

**(a)** Check, draft, promissory note, bill of exchange or similar written promises of payment in "money" that you or your agent has issued, or that was issued

by someone who impersonates you or your agent; and

**(b)** Credit, debit or charge slips or documents, including signatures or the entry of a Personal Identification Number (PIN) into a "payment processing device" required with the use of any credit, debit, or charge card issued to you or any "employee" for business purposes.

**(2)** Under this Additional Coverage, all loss:

**(a)** Caused by one or more persons; or

**(b)** Involving a single act or series of related acts;

is considered one occurrence.

**(3)** If you are sued for refusing to pay the check, draft, promissory note, bill of exchange or similar written promises of payment in "money", on the basis that it has been forged or altered, and you have our written consent to defend against the suit, we will pay for any reasonable legal expenses that you incur in that defense.

**(4)** For purposes of this Additional Coverage, check includes a substitute check as defined by the United States Congress in the Check Clearing for the 21st Century Act and will be treated the same as the original it replaced.

**(5)** The most we will pay for any loss, including legal expenses, under this Additional Coverage is $25,000, unless a higher Limit of Insurance is shown in the Schedule of Amended Limits of Insurance.

**I. Ordinance or Law**

**(1)** This Additional Coverage applies only to buildings insured on a replacement cost basis.

**(2) Application of Coverages:**

The coverages provided under this Additional Coverage applies only if paragraphs **(a)** and **(b)** below, are satisfied and are then subject to the qualifications found in **(c)** below.

**(a)** The ordinance or law:

**(i)** Regulates the demolition, construction or repair of buildings, or establishes

zoning or land use requirements at the described premise;

**(ii)** Is in force at the time of loss; and

**(iii)** Was not in force at the time the involved construction was completed.

But coverage under this Additional Coverage applies only in response to the minimum requirements of the ordinance or law. Losses and costs incurred in complying with recommended actions or standards that exceed actual requirements are not covered under this Additional Coverage.

**(b)** The building sustains direct physical damage:

**(i)** That is covered under this Coverage Form and as a result of such damage, you are required to comply with the ordinance or law; or

**(ii)** That is covered under this Coverage Form and direct physical damage that is not covered under this Coverage Form and as a result of the building damage in its entirety, you are required to comply with the ordinance or law.

**(iii)** But if the damage is not covered under this Coverage Form and such damage is the subject of the ordinance or law, then there is no coverage under this Additional Coverage even if building has also sustained covered direct physical damage.

**(c)** In the situation described in **(2) Application of Coverages,** paragraph **(b),** subparagraph **(ii)** above, we will not pay the full amount of loss otherwise payable under the terms of coverages for Coverage for Loss to the Undamaged Portion of the Building, Demolition Cost Coverage or Increased Cost of Construction Coverage. Instead, we will pay a proportion of such loss, meaning the proportion that



the covered direct physical damage bears to the total direct physical damage. Paragraph **(7)** of this coverage provides an example of this procedure.

However, if the covered direct physical damage alone would have resulted in a requirement to comply with the ordinance or law, then we will pay the full amount of the loss otherwise payable under the terms of Coverages for Loss to the Undamaged Portion of the Building, Demolition Cost Coverage or Increased Cost of Construction Coverage under this Additional Coverage.

**(3)** We will not pay under this Additional Coverage for:

**(a)** Enforcement of or compliance with any ordinance or law which requires the demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungi", wet rot or dry rot; or

**(b)** The costs associated with the enforcement of or compliance with any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungi", wet rot or dry rot.

**(4) Coverage**

**(a) Coverage for Loss to the Undamaged Portion of the Building**

With respect to the building that has sustained covered direct physical damage, we will pay under this Additional Coverage for the loss in value of the undamaged portion of the building as a consequence of a requirement to comply with an ordinance or law that requires demolition of undamaged parts of the same building. Coverage for Loss to the Undamaged Portion of the Building is included within the Limit of Insurance shown in the

Declarations as applicable to the covered building. Coverage for Loss to the Undamaged Portion of the Building does not increase the Limit of Insurance.

**(b) Demolition Cost Coverage**

With respect to the building that has sustained covered direct physical damage, we will pay the cost to demolish and clear the site of the undamaged parts of the same building, as a consequence of a requirement to comply with an ordinance or law that requires demolition of such undamaged property.

**SECTION I - PROPERTY**, **E. Property Loss Conditions, 5. Loss Payment,** paragraph **d.** does not apply to Demolition Cost Coverage.

**(c) Increased Cost of Construction**

With respect to the building that has sustained covered direct physical damage, we will pay the increased cost to:

**(i)** Repair or reconstruct damaged portions of that building; and/or

**(ii)** Reconstruct or remodel undamaged portions of that building, whether or not demolition is required;

when the increased cost is a consequence of a requirement to comply with the minimum standards of the ordinance or law.

However:

**(i)** This coverage applies only if the restored or remodeled property is intended for similar occupancy as the current property, unless such occupancy is not permitted by zoning or land use ordinance or law.

**(ii)** We will not pay for the increased cost of construction if the building is not repaired, reconstructed or remodeled.

**SECTION I - PROPERTY**, **E. Property Loss Conditions, 5. Loss Payment,** paragraph **d.** does not apply to the Increased Cost of Construction Coverage.

**(5) Loss Payment**

**(a)** Loss Payment provisions **(b), (c), (d)** and **(e)** below are subject to the apportionment procedure set forth in above **Application of Coverages,** paragraph **(2)(c)**.

**(b)** When there is a loss in value of an undamaged portion of the building to which Coverage for Loss to the Undamaged Portion of the Building applies, the loss payment for that building, including damaged and undamaged portions, will be determined as follows:

**(i)** If the property is repaired or replaced on the same or another premise, we will not pay more than the lesser of:

**1)** The amount you actually spend to repair, rebuild or reconstruct the building, but not for more than the amount it would cost to restore the building on the same premises and to the same height, floor area, style and comparable quality of the original property insured; or

**2)** The Limit of Insurance shown in the Declarations as applicable to the covered building.

**(ii)** If the property is not repaired or replaced. We will not pay more than the lesser of:

**1)** The actual cash value of the building at the time of loss; or

**2)** The Limit of Insurance shown in the Declarations as applicable to the covered building.

**(c)** The most we will pay for the total of all covered losses for Demolition Cost Coverage and Increased Cost of Construction is the Limit of Insurance shown in paragraph **(d)** below. Subject to this combined Limit of Insurance, the following loss payment provisions apply:

**(i)** For Demolition Cost Coverage, we will not pay for more than the amount you actually spend to demolish and clear the site of the described premises.

**(ii)** Loss payment under Increased Cost of Construction Coverage will be determined as follows:

**1)** We will not pay for the increased cost of construction until the property is actually repaired or replaced at the same or another premises; and

**2)** Unless the repairs or replacement is made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

**(iii)** If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay for the Increased Cost of Construction Coverage is the lesser of:

**1)** The increased cost of construction at the same premises; or

**2)** The Limit of Insurance described in paragraph **(d)** below.

**(iv)** If the ordinance or law requires relocation to another premise, the most we will pay for the increased cost of construction is the lesser of:

**1)** The increased cost of construction at the new premises; or

**2)** The Limit of Insurance described in paragraph **(d)** below.

**(d)** The most we will pay for the total of all covered losses for Demolition Cost and Increased Cost of Construction for each building described in the Declarations is $5,000 or the amount shown in the Additional Property Schedule.

If a damaged building(s) is covered under a Blanket Limit of Insurance and the Blanket Limit of Insurance applies to more than one building or item of property, then the most we will under this Additional Coverage, for each building, is $5,000, or the amount shown in the Additional Property Coverage Schedule.

**(6)** Under this coverage, we will not pay for loss due to any ordinance or law that:

**(a)** You were required to comply with before the loss, even if the building was undamaged; and

**(b)** You failed to comply with.

**(7)** Example of Proportionate Loss Payment for Ordinance or Law Coverage losses (procedures as set forth in paragraph **(2)(c)** of this Additional Coverage).

Assume:

- Wind is a Covered Cause of Loss; "Flood" is an excluded Cause of Loss

- The building has value of $200,000

- The total direct physical damage to the building: $100,000;

- The ordinance or law in this jurisdiction is enforced when building damage equals or exceeds 50% of the building's value;

- Portion of direct physical damage that is covered (caused by wind): $30,000;

- Portion of direct physical damage that is not covered (caused by "flood"): $70,000; and

- Loss under Increased Cost of Construction: $60,000

**Step 1:** Determine the proportion that the covered direct physical damage bears to the total direct physical damage.

$30,000 divided by $100,000 = .30

**Step 2:** Apply that portion to the Ordinance or Law loss.

$60,000 x .30 = $18,000

In this example, the most we will pay under this Additional Coverage for the Increased Cost of

Construction loss is $18,000, subject to the applicable Limit of Insurance and any other applicable provisions.

Note: The same procedure applies to losses under Loss to the Undamaged Portion of the Building and Demolition Cost of this Additional Coverage.

**m. Business Income from Dependent Properties**

When Business Income Coverage is provided under this Coverage Form:

**(1)** We will pay for the actual loss of Business Income you sustain due to direct physical loss or damage at the premises of a "dependent property" caused by or resulting from any Covered Cause of Loss.

However, this Additional Coverage does not apply when the only loss at the premises of a "dependent property" is loss or damage to "electronic data", including destruction or corruption of "electronic data". If the "dependent property" sustains loss or damage to "electronic data" and other property, coverage under this Additional Coverage will not continue once the other property is repaired, rebuilt or replaced.

**(2)** The most we will pay under this Additional Coverage is $5,000 per occurrence, regardless of the number of "dependent properties" affected.

**(3)** We will reduce the amount of your Business Income loss, other than Extra Expense, to the extent you can resume "operations", in whole or in part, by using any other available:

**(a)** Source of materials; or

**(b)** Outlet for your products.

**(4)** If you do not resume "operations", or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

**(5)** The coverage period for Business Income under this Additional Coverage:

**(a)** Begins 72 hours after the time of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the premises of the "dependent property"; and

**(b)** Ends on the date when the property at the premises of the "dependent property" should be repaired, rebuilt or replaced (to the extent necessary to resume "operations") with reasonable speed and similar quality or 12 months immediately following the date of direct physical loss or damage, whichever is shorter.

**(6)** The Business Income coverage period, as stated in paragraph **(4)** above, does not include any increased period required due to the enforcement of or compliance with any ordinance or law that:

**(a)** Regulates the construction, use or repair, or requires the tearing down of any property; or

**(b)** Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

The expiration date of this Coverage Form will not reduce the Business Income coverage period.

**(7)** The definition of Business Income contained in the Business Income Additional Coverage also applies to this Business Income from Dependent Properties Additional Coverage.

**n. Glass Expenses**

When glass is damaged from a Covered Cause of Loss we will pay for your expenses incurred to:

**(1)** Put up temporary plates or board up openings if repair or replacement of damaged glass is delayed;

**(2)** Replace lettering, artwork, sensors or other items permanently affixed to, or a part of, the damaged glass; and

**(3)** Remove or replace obstructions when repairing or replacing glass that is part of a building. This does not include removing or replacing window displays.

**o. Fire Protection Equipment Recharge**

**(1)** We will pay:

**(a)** The cost of recharging or replacing, whichever is less, your fire extinguishers and fire extinguishing systems

(including hydrostatic testing if needed) if they are discharged on or within 1,000 feet of the described premises; and

**(b)** For loss or damage to Covered Property if such loss or damage is the result of an accidental discharge of chemicals from a fire extinguisher or a fire extinguishing system.

**(2)** No coverage will apply if the fire extinguishing system is discharged during installation or testing.

**(3)** The most we will pay under this Additional Coverage is $25,000 in any one occurrence. The deductible does not apply to these expenses.

**p. Employee Theft including ERISA Compliance**

**(1)** We will pay for loss or damage to "money", "securities" and "other property" resulting directly from "theft" committed by an "employee", clergy, or any non-compensated person whether identified or not, acting alone or in collusion with other persons.

For the purposes of this Additional Coverage, "theft" shall also include "forgery".

**(2)** This Additional Coverage terminates as to any "employee" as soon as:

**(a)** You; or

**(b)** Any of your partners, "members", "managers", officers, directors or trustees not in collusion with the "employee";

"Discovered" the "theft" or any other dishonest act committed by the "employee" whether before or after becoming employed by you.

**(3)** Under this Additional Coverage, all loss:

**(a)** Caused by one or more persons; or

**(b)** Involving a single act or series of related acts;

is considered one occurrence.

**(4)** We will pay only for loss you sustain through acts committed or events occurring anytime which is "discovered" by you:

**(a)** During the policy period; or

**(b)** No later than 1 year from the date of termination or cancellation of this insurance. However this extended period to "discover" loss terminates immediately upon the effective date of any other insurance obtained by you, whether from us or another insurer, replacing in whole or in part the coverage afforded under this Additional Coverage, whether or not such other insurance provides coverage for loss sustained prior to its effective date.

**(5)** You may extend this coverage to apply to loss caused by any "employee" while temporarily outside the Coverage Territory for a period of not more than 90 days.

**(6)** The most we will pay for all loss resulting directly from an occurrence is $10,000 or the Limit of Insurance shown in the Additional Property Coverage Schedule. Regardless of the number of years this policy remains in force or the number of premiums paid, no Limit of Insurance cumulates from year to year.

**(7) Special Employee Theft Exclusions**

We will not pay for:

**(a)** Loss resulting from "theft" or any other dishonest act committed by:

**(i)** You; or

**(ii)** Any of your partners or "members";

Whether acting alone or in collusion with other persons.

**(b)** Loss caused by an "employee" if the "employee" has also committed "theft" or any other dishonest act prior to the effective date of this policy and you or any of your partners, "managers", officers, directors or trustees, not in collusion with the "employee", learned of that "theft" or dishonest act prior to the policy period shown in the Declarations.

**(c)** Loss resulting from "theft" or any other dishonest act committed by any of your "employees", "managers", directors, trustees or authorized representatives:

**(i)** Whether acting alone or in collusion with other persons; or

**(ii)** While performing services for you or others;

Except when covered under this Additional Coverage.

**(d)** Loss that is an indirect result of an occurrence covered by this Additional Coverage, including, but not limited to, loss resulting from:

**(i)** Your inability to realize income that you would have realized had there been no loss of or damage to "money", "securities" or "other property";

**(ii)** Payment of damages of any type for which you are legally liable;

**(iii)** Payment of costs, fees or other expenses you incur in establishing either the existence or the amount of loss under this Additional Coverage.

**(e)** Fees, costs and expenses incurred by you which are related to any legal action.

**(f)** Loss or that part of any loss, the proof of which as to its existence or amount is dependent upon:

**(i)** An inventory computation; or

**(ii)** A profit and loss computation.

However, where you establish wholly apart from such computations that you have sustained a loss, then you may offer your inventory records and actual physical count of inventory in support of the amount of loss claimed.

**(g)** Loss resulting from trading, whether in your name or in a genuine or fictitious account.

**(h)** Loss resulting from fraudulent or dishonest signing, issuing, canceling or failing to cancel, a warehouse receipt or any papers connected with it.

**(i)** Loss resulting from:

**(i)** The unauthorized disclosure of your

confidential information including, but not limited to, patents, trade secrets, processing methods or customer lists; or

**(ii)** The unauthorized use or disclosure of confidential information of another person or entity which is held by you including, but not limited to, financial information, personal information, credit card information or similar non public information.

**(8) Welfare and Pension Plan ERISA Compliance**

**(a)** The "employee benefit plan" (hereafter referred to as Plan) is included as an insured under this Additional Coverage.

**(b)** If any Plan is insured jointly with any other entity under this Additional Coverage, you or the Plan Administrator must select a Limit of Insurance for this Additional Coverage that is sufficient to provide a Limit of Insurance for each Plan that is at least equal to that required if each Plan were separately insured.

**(c)** With respect to loss sustained or "discovered" by any such Plan, paragraph **(1)** above, of this Additional Coverage is replaced by the following:

**(1)** We will pay for loss of or damage to "funds" and "other property" resulting directly from fraudulent or dishonest acts committed by an "employee", whether identified or not, acting alone or in collusion with other persons.

**(d)** If the first Named Insured is an entity other than a Plan, any payment we make for loss sustained by any Plan will be made to the Plan sustaining the loss.

**(e)** If two or more Plans are insured under this Additional Coverage, any payment we make for loss:

**(i)** Sustained by two or more Plans; or

**(ii)** Of commingled "funds" or "other property" of two or more Plans;

Resulting from an occurrence, will be made to each Plan sustaining loss in the proportion that the Limit of Insurance required for each Plan bears to the total Limit of Insurance of all Plans sustaining loss.

**(f)** The deductible does not apply to this Additional Coverage.

**q. Rewards - Arson, Theft and Vandalism**

**(1)** We will reimburse you for payment of any reward offered on your behalf and for information that leads to the arrest and conviction of the person or persons responsible for:

**(a)** Arson;

**(b)** "Theft" or

**(c)** Vandalism

to Covered Property.

**(2)** The arrest or conviction must involve a covered loss caused by arson, "theft" or vandalism.

**(3)** The most we will pay under this Additional Coverage is $10,000 unless a higher Limit of Insurance is shown in the Additional Property Coverage Schedule. The amount we pay is not increased by the number of persons involved in providing the information.

**(4)** The amount payable under this Additional Coverage is additional insurance.

**(5)** The deductible does not apply to this Additional Coverage.

**r. Computer Equipment**

**(1)** We will pay for direct physical loss of or damage to the following Covered Property which is your property or property in your care, custody or control while at or away from the described premises when loss or damage is caused by or resulting from a Covered Cause of Loss:

**(a)** "Computer equipment"; and

**(b)** Programming documentation and instruction manuals.

**(2)** We will pay for the actual loss of Business Income you sustain as described in the Business Income Additional Coverage and we will pay for any necessary Extra Expense you incur during the "period of restoration"

as described in the Extra Expense Additional Coverage.

**(3)** In the event of a loss of or damage to "Computer equipment" by a Covered Cause of Loss, we will pay your costs to modify or replace undamaged "hardware" or "software" when it:

**(a)** Was dependent on the damaged "hardware" or "software" prior to the covered loss; and

**(b)** Is not compatible with the "hardware" or "software" that is replacing the property that was involved in the covered loss.

We will only pay for your costs to modify or replace undamaged "hardware" or "software" at a premises described in the Declarations.

The most we will pay for your costs covered in any one occurrence is $10,000.

**(4)** We will not pay for any loss of or damage to the following property:

**(a)** Property you rent, loan or lease to others while it is away from the described premises;

**(b)** Property you hold for sale, distribute or manufacture except as provided in **SECTION I - PROPERTY, A. Coverage, 1. Covered Property**, paragraph **b.;** or

**(c)** "Software" that cannot be duplicated or replaced with similar property of equal quality and/or substantially similar functionality.

**(5)** If we provide Building coverage only, we will only pay for loss to "computer equipment" that service building operations at the described premises and are located at the described premises.

**(6)** The most we will pay for any loss or damage to property described in paragraphs **(1)** and **(2)** above, is $35,000 unless a higher Limit of Insurance is shown in the Additional Property Coverage Schedule for Computer Equipment. The most we will pay for Extra Expense is $5,000 unless a higher Limit of Insurance is shown in the Additional Property Coverage Schedule for Extra Expense.

**(7)** The following in **SECTION I - PROPERTY, B. Exclusions**, paragraph **1.** do not apply to this Additional Coverage:

**(a)** **b. Earth Movement**; and

**(b)** **g. Water**.

**(8)** **Special Computer Equipment Exclusions**

We will not pay for loss or damage to portable electronic devices when caused by, resulting from, or arising out of "theft" or unexplained loss when the property is checked baggage with a carrier for transit. Portable electronic devices includes laptops, tablets, e-readers, smartphones or other lightweight, hand-held or wearable devices capable of storing, retrieving and processing data.

**s.** **Money and Securities**

**(1)** We will pay for loss of "money" and "securities":

**(a)** Inside a building at the described premises or "financial institution" resulting directly from "theft" committed by a person present inside a building at the described premises or "financial institution";

**(b)** Inside a building at the described premises or "financial institution" resulting directly from disappearance or destruction; or

**(c)** Outside of a building at or away from the described premises in the care and custody of a "messenger" or an armored motor vehicle company resulting directly from "theft", disappearance or destruction.

**(2)** For the purposes of this Additional Coverage, all loss:

**(a)** Caused by one or more persons; or

**(b)** Involving a single act or series of related acts;

is considered one occurrence.

**(3)** You must keep records of all "money" and "securities" so we can verify the amount of any one loss or damage.

**(4)** The amount payable under this Additional Coverage is additional insurance.

**(5)** The most we will pay for loss in any one occurrence is:

**(a)** $10,000 or the amount shown in the Additional Property Coverage Schedule while:

**(i)** Inside a building at the described premises; or

**(ii)** Within a "financial institution" in the Coverage Territory; and

**(b)** $5,000 or the amount shown in the Additional Property Coverage Schedule while outside of a building at the described premises or when away from the described premises in the Coverage Territory.

**(6) Special Money and Securities Exclusions**

We will not pay for loss:

**(a)** Resulting from accounting or arithmetic errors or omissions;

**(b)** Resulting from giving or surrendering of property in any exchange or purchase;

**(c)** Of property contained in any money-operated device unless the amount of "money" deposited in it is recorded by a continuous recording instrument in the device; or

**(d)** Loss or damage to "money" and "securities" following and directly related to the use of any computer to fraudulently cause a transfer of that property.

**t. Tenant Signs (Tenants only)**

**(1)** This Additional Coverage is available only when the Named Insured is a tenant and a Limit of Insurance is shown in the Declarations Page for Business Personal Property.

We will pay for direct physical loss of or damage to all signs:

**(a)** Owned by you; or

**(b)** Owned by others but in your care, custody or control;

when loss or damage is caused by or resulting from a Covered Cause of Loss.

**(2) SECTION I - PROPERTY, A. Coverage, 3. Covered Causes of Loss** does not apply to this Additional Coverage and **SECTION I -**

**PROPERTY, B. Exclusions,** paragraph **1.** does not apply to this Additional Coverage except for the following:

**(a) c. Government Action**;

**(b) d. Nuclear Hazard**; and

**(c) f. War and Military Action**.

**(3)** We will not pay for loss or damage caused by or resulting from:

**(a)** Wear and tear;

**(b)** Hidden or latent defect;

**(c)** Rust;

**(d)** Corrosion; or

**(e)** Mechanical Breakdown, except as provided for in **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, u. Equipment Breakdown**.

**(4)** The most we will pay for loss or damage in any one occurrence is $5,000 regardless of the number of locations or buildings involved.

**u. Equipment Breakdown**

**(1)** We will pay for direct physical damage to Covered Property that is the direct result of an "accident" or "electronic circuitry impairment". We will consider "electronic circuitry impairment" to be physical damage to "covered equipment".

**(2)** The following coverages also apply to the direct result of an "accident" or "electronic circuitry impairment". However, with respect to coverage **A.5.u.(2)(h)** Utility Services - Equipment Breakdown (Accident) and **A.5.m.** Business Income from Dependent Properties provided in this coverage form, coverage will apply only to the direct result of an "accident" and will not apply to the direct result of an "electronic circuitry impairment". These coverages do not provide additional amounts of insurance.

**(a) Data Restoration**

We will pay for your reasonable and necessary cost to research, replace and restore lost "data".

The most we will pay for loss or expense under this coverage, including actual loss of Business Income you sustain and

The
**Hanover**
Insurance Group™

OBCH332709     1304500

necessary Extra Expense you incur is $50,000.

**(b) Expediting Expenses**

With respect to your damaged Covered Property, we will pay, up to $50,000, the reasonable extra cost to:

**(i)** Make temporary repairs; and

**(ii)** Expedite permanent repairs or permanent replacement**.**

**(c) Fungi, Wet Rot, or Dry Rot**

**(i)** We will pay the additional cost to repair or replace Covered Property because of contamination by "fungi", wet rot or dry rot. This includes the additional costs to clean up or dispose of such property. This does not include spoilage of personal property that is "perishable goods" to the extent that such spoilage is covered under Spoilage coverage.

**(ii)** As used in this coverage, additional costs mean those beyond what would have been payable under this Equipment Breakdown Coverage had no "fungi", wet rot or dry rot been involved.

**(iii)** We will also pay the cost of testing performed after repair or replacement of the damaged Covered Property is completed only to the extent that there is reason to believe there is the presence of "fungi", wet rot or dry rot.

**(iv)** This coverage does not apply to lawns, trees, shrubs or plants which are part of a vegetated roof.

**(v)** The most we will pay in any "one equipment breakdown" for loss, damage or expense under this coverage, including actual loss of Business Income you sustain and necessary Extra Expense you incur, if shown as covered, is $15,000 even if the "fungi", wet rot or dry rot continues to be present or active or recurs in a later policy period.

**(d) Hazardous Substances**

We will pay for the additional cost to repair or replace Covered Property because of a contamination by a "hazardous substance".

This includes the additional costs to clean up or dispose of such property. This does not include contamination of "perishable goods" by refrigerant, including but not limited to ammonia, which is addressed in **(g) Spoilage** below. Additional costs mean those beyond what would have been payable had no "hazardous substance" been involved. The most we will pay for loss, damage or expense under this coverage, including actual loss of Business Income you sustain, and necessary Extra Expense you incur is $50,000.

**(e) Personal Property Off Premises Equipment Breakdown**

**(i)** Any direct physical damage for personal property off premises provided under Coverage Extension **b.** Personal Property Off Premises, also applies to the direct result of an "accident" or "electronic circuitry impairment".

**(ii)** We will also pay for your reasonable and necessary cost to research, replace and restore lost "electronic data" contained within "covered equipment" when due to covered loss or damage as described in **(i)** above. This amount may not exceed the limit applicable to Data Restoration coverage.

**(iii)** The most we will pay for loss, damage or expense under this coverage, including actual loss of Business Income you sustain and necessary Extra Expense you incur and Data Restoration as described in **(ii)** above is $50,000.

**(f) Public Relations**

**(i)** This coverage only applies if you have sustained an actual loss of Business Income.

**(ii)** We will pay for your reasonable costs for professional services to create and disseminate communications, when the need for such communications arises directly from the interruption of your business. This communication must be directed to one or more of the following:

    **1)** The media;

    **2)** The public; or

    **3)** Your customers, clients or members.

**(iii)** Such costs must be incurred during the "period of restoration" or up to 30 days after the "period of restoration" has ended.

**(iv)** The most we will pay for loss or expense under this coverage is $5,000.

**(g) Spoilage**

**(i)** We will pay for:

    **1)** Physical damage to your "perishable goods" due to spoilage.

    **2)** Physical damage to your "perishable goods" due to contamination from the release of refrigerant, including but not limited to ammonia.

    **3)** Any necessary expenses you incur to reduce the amount of loss under this coverage. We will pay for such expenses to the extent that they do not exceed the amount of loss that otherwise would have been payable under this coverage.

**(ii)** If you are unable to replace "perishable goods" before its anticipated sale, the amount of our payment will be determined on the basis of the sales price of the "perishable goods" at the time of the "accident" or "electronic circuitry impairment", less discounts and expenses you otherwise would have had. Otherwise our payment will be determined in accordance with the Loss Payment Condition.

**(iii)** The most we will pay for loss or damage under this coverage is $50,000.

**(h) Utility Services - Equipment Breakdown (Accident)**

**(i)** Any insurance provided for Business Income, Extra Expense, Data Restoration or Spoilage is extended to apply to your loss, damage or expense caused by a failure or disruption of service. The failure or disruption of service must be caused by an "accident" to equipment, including overhead transmission lines, that is owned by a utility, landlord, a landlord's utility or other supplier who provides you with any of the following services: electrical power, waste disposal, air conditioning, refrigeration, heating, natural gas, compressed air, water, steam, Internet access, telecommunications services, "cloud computing services", wide area networks or data transmission. The equipment must meet the definition of "covered equipment" except that it is not Covered Property.

**(ii)** "Cloud computing services" must be provided by a professional provider with whom you have a contract.

**(iii)** With respect to the Data Restoration portion of this Service Interruption coverage, coverage will also apply to "data" stored in the equipment of a provider of "cloud computing services".

**(iv)** Any insurance provided for Business Income or Data Restoration will not apply



under this Service Interruption coverage unless the failure or disruption of service exceeds 24 hours immediately following the "accident". If the interruption exceeds 24 hours, coverage will begin at the time of the disruption, and the applicable deductible will apply.

**(v)** The most we will pay in any "one equipment breakdown" for loss, damage or expense under this coverage is the applicable limit for Business Income, Extra Expense, Data Restoration or Spoilage.

**(3) Conditions**

**(a) Suspension**

When any "covered equipment" is found to be in, or exposed to, a dangerous condition, any of our representatives may immediately suspend the insurance against loss from an "accident" or "electronic circuitry impairment" to that "covered equipment". We can do this by mailing or delivering a written notice of suspension to:

**(i)** Your address as shown in the Declarations; or

**(ii)** The address where the "covered equipment" is located.

Once suspended in this way, your insurance can be reinstated only by an endorsement for that "covered equipment". If we suspend your insurance, you will get a pro rata refund of premium for that "covered equipment". But the suspension will be effective even if we have not yet made or offered a refund.

**(b) Jurisdictional Inspections**

If any property that is "covered equipment" under this Additional Coverage requires inspection to comply with state or municipal boiler and pressure vessel regulations, we agree to perform such inspection on your behalf. We do not warrant that conditions are safe or healthful.

**(c) Environmental, Safety and Efficiency Improvements**

If "covered equipment" requires replacement due to an "accident" or "electronic circuitry impairment", we will pay your additional cost to replace with equipment that is better for the environment, safer for people or more energy or water efficient than the equipment being replaced. However, we will not pay to increase the size or capacity of the equipment and we will not pay more than 150% of what the cost would have been to replace with like kind and quality. This provision does not apply to the replacement of component parts or to any property to which Actual Cash Value applies and does not increase any of the applicable limits.

**(4) Special Equipment Breakdown Exclusions**

**(a)** We will not pay for loss, damage or expense caused by or resulting from a hydrostatic, pneumatic or gas pressure test of any boiler or pressure vessel, or an electrical insulation breakdown test of any type of electrical equipment.

**(b)** With respect to Business Income, Extra Expense and Utility Services coverages, we will also not pay for:

**(i)** Loss caused by your failure to use due diligence and dispatch, and all reasonable means to resume business; or

**(ii)** Any increase in loss resulting from an agreement between you and your customer or supplier.

**(c)** Except as provided under **u.2.(c)** "Fungi", Wet Rot or Dry Rot coverage we will not pay for loss, damage or expense caused directly or indirectly by the following, whether or not caused by or resulting from an "accident" or "electronic circuitry impairment": Any fungi," wet rot or dry rot, including any presence, growth, proliferation, spread or any activity of "fungi," wet rot or dry rot. This includes, but is not

limited to, costs arising from clean up, removal, or abatement of such "fungi," wet rot or dry rot. However, this exclusion does not apply to spoilage of personal property that is "perishable goods," to the extent that such spoilage is covered under Spoilage coverage.

**(d)** This Additional Coverage - Equipment Breakdown does not apply to an "accident" or "electronic circuitry impairment" caused by or resulting from:

**(i)** Fire (including fire resulting from an "accident" or "electronic circuitry impairment"), or water or other means used to extinguish a fire;

**(ii)** Explosion of gas or unconsumed fuel within the furnace of any boiler or fired vessel or within the passages from that furnace to the atmosphere;

**(iii)** Any other explosion, except as specifically covered under this Additional Coverage;

**(iv)** Vandalism;

**(v)** Lightning; smoke; aircraft or vehicles; riot or civil commotion; sprinkler leakage; elevator collision;

**(vi)** Windstorm or hail; However, this exclusion does not apply when:

**1)** "Covered equipment" located within a building or structure suffers an "accident" or "electronic circuitry impairment" that results from wind-blown rain, snow, sand or dust; and

**2)** The building or structure did not first sustain wind or hail damage to its roof or walls through which the rain, snow, sand or dust entered.

**(vii)** Breakage of glass; falling objects; weight of snow, ice or sleet; freezing (caused by cold weather); collapse or molten material;

**(viii)** "Flood", surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not; mudslide or mudflow; or water that backs up or overflows from a sewer, drain or sump. However, if electrical "covered equipment" requires drying out because of the above, we will pay for the direct expenses of such drying out subject to the applicable Limit of Insurance and deductible for Building or Business Personal Property, whichever applies.

**(ix)** Any earth movement, including but not limited to earthquake, subsidence, sinkhole collapse, landslide, earth sinking, tsunami or volcanic action.

**(e)** Special Equipment Breakdown Exclusions **(5)(d)(v), (5)(d)(vi)** and **(5)(d)(vii)** shall not apply if:

**(i)** The excluded cause of loss occurs away from any covered location and causes an electrical surge or other electrical disturbance;

**(ii)** Such surge or disturbance is transmitted through utility service transmission lines to the covered location and results in an "accident" or "electronic circuitry impairment"; and

**(iii)** The loss, damage or expense caused by such surge or disturbance is not covered elsewhere under the policy.

**(f)** We will not pay under this Additional Coverage for any loss or damage to animals.

The most we will pay for loss, damage or expense arising from any "one equipment breakdown" is the applicable Limit of Insurance shown in the Declarations. This Additional Coverage does not provide an additional amount of insurance.



OBCH332709    1304500

**v. Commercial Tools and Small Equipment**

**(1)** This Additional Coverage is available only when a Limit of Insurance is shown in the Declarations for Business Personal Property.

**(2)** We will pay for direct physical loss of or damage caused by or resulting from a Covered Cause of Loss to commercial tools and small equipment, including their:

**(a)** Accessories, whether attached or not attached; and

**(b)** Spare parts that are specifically designed and intended for use in the maintenance and operation of property covered under this Additional Coverage;

That is:

**(c)** Your property;

**(d)** The property of others in your care, custody or control; or

**(e)** The property of your "employees".

Damage to the property of your "employees" is limited to while on the described premises.

Commercial Tools and Small Equipment does not include communication devices and diagnostic equipment unless otherwise covered in **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, r. Computer Equipment.**

**(3)** This coverage only applies to any one tool or piece of small equipment with a replacement cost value of $2,500 or less, unless listed on a schedule included in this policy.

**(4)** The most we will pay for any loss under this Additional Coverage in any one occurrence is $5,000 unless a higher Limit of Insurance is shown in the Additional Property Coverage Schedule, but not more than $2,500 for any one tool, tool box or piece of small equipment.

**(5)** In addition to items listed within **SECTION I - PROPERTY, A. Coverage, 2. Property Not Covered,** we will not pay for any loss to the following property:

**(a)** Watercraft or watercraft parts and equipment;

**(b)** Commercial tools and small equipment that are permanently mounted to a vehicle, including trailers;

**(c)** Tires or tire tubes, attached or unattached, for use with commercial tools and small equipment, unless the loss or damage is caused by "theft", malicious mischief, or any of the "specified causes of loss"; or

**(d)** Any property while underground, airborne or waterborne.

**(6)** The following **SECTION I - PROPERTY, B. Exclusions,** in paragraph **1.** do not apply to this Additional Coverage:

**(a) b. Earth Movement**;

**(b) g. Water**.

**(7) Special Commercial Tools and Small Equipment Exclusion**
We will not pay for any loss caused by or resulting from any repair, adjusting, servicing, testing or maintenance process unless fire or explosion ensues, then only for the loss caused by such ensuing fire or explosion.

**w. Installation**

**(1)** This Additional Coverage is available only when a Limit of Insurance is shown in the Declarations for Business Personal Property.

**(2)** We will pay for direct physical loss of or damage to property sold under an installation agreement where your insurable interest continues until the property is accepted by the purchaser for whom the project is to be performed. Coverage applies under this Additional Coverage when the loss or damage is caused by or resulting from any Covered Cause of Loss.

**(3)** The property under which this insurance applies includes:

**(a)** Materials, supplies, equipment, machinery, fixtures owned by you or in your care, custody or control, and which are to be installed by you or at your direction; and

**(b)** Temporary structures built or assembled on-site, including cribbing, scaffolding and construction forms.

This property is covered while:

**(c)** At any jobsite you do not own, lease or operate;

**(d)** Awaiting and during installation, or awaiting acceptance by the purchaser;

**(e)** "In transit"; or

**(f)** At a temporary storage location.

**(4)** Coverage provided under this Additional Coverage will end when one of the following first occurs:

**(a)** This policy expires or is cancelled;

**(b)** The property covered under this Additional Coverage is accepted by the purchaser;

**(c)** Your interest in the property covered under this Additional Coverage ceases;

**(d)** You abandon the project to be performed by you for the purchaser, with no intention to complete it; or

**(e)** 90 days after the project to be performed by you for the purchaser is completed, unless we specify a different date in writing.

**(5)** In addition to **SECTION I - PROPERTY, A. Coverage, 2. Property Not Covered**, the following property is not covered with respect to this Additional Coverage:

**(a)** An existing building or structure to which an addition, alteration, improvement or repair is being made;

**(b)** Property stored at a permanent premises that you own;

**(c)** A plan, blueprint, design or specification;

**(d)** Trees, grass, sod, shrubbery or plants; and

**(e)** Machinery, tools, equipment, supplies or similar property that does not become a permanent part of the project. This includes contractor's equipment and other tools belonging to a contractor or sub-contractor.

**(6)** **Special Installation Exclusions**

We will not pay for any loss caused by or resulting from:

**(a)** The cost to make good or replace faulty or defective materials or workmanship;

**(b)** Testing. However, if testing results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion;

**(c)** A fault, defect, deficiency, error or omission in a plan, blueprint, design or specification;

**(d)** The weight of a load when it exceeds the designed capacity of any property covered under this Additional Coverage to lift, move or support the load from any position; or

**(e)** Collision, upset or overturn of any property covered under this Additional Coverage to the extent of any loss of or damage to the tires or inner tubes of such property. But we will pay for the loss of or damage to the tires or inner tubes if the same accident causes other covered loss to the same property covered under this Additional Coverage.

**(7)** The following in **SECTION I - PROPERTY, B. Exclusions,** paragraph **1.** do not apply to this Additional Coverage:

**(a)** **b. Earth Movement**; and

**(b)** **g. Water**.

**(8)** The most we will pay for loss of or damage to property covered under this Additional Coverage in any one occurrence is $5,000, regardless if the property is located at a jobsite, while "in transit", or at a temporary storage location.

This Additional Coverage does not increase **SECTION I - PROPERTY, C. Limits of Insurance**.

**x. Fine Arts**

**(1)** We will pay for direct physical loss to "fine arts" which are your property or the property of others in your care, custody or control while on the described premises. We also cover your "fine arts" while temporarily on display or exhibit away from the described premises or while "in transit" between the described premises and a location where the

The **Hanover**
Insurance Group™

OBCH332709     1304500

"fine arts" will be temporarily on display or exhibit.

**(2)** The following of **SECTION I - PROPERTY, B. Exclusions**, paragraph **1.** do not apply to this Additional Coverage:

**(a) b. Earth Movement**; and

**(b) g. Water**

**(3)** The most we will pay for any loss under this Additional Coverage is $10,000 per occurrence regardless of the number of locations or buildings involved.

**(4) Special Fine Arts Exclusion**
We will not pay for any loss caused by or resulting from:

**(a)** Breakage of statuary, glassware, bric-a-brac, marble, porcelain and similar fragile property. But we will pay if the loss or damage is caused directly by a "specified cause of loss", earthquake or "flood"; and

**(b)** Any repairing, restoration or retouching of the "fine arts".

**y. Sales Representative Samples**

**(1)** We will pay for direct physical loss or damage by a Covered Cause of Loss to samples of your "stock" in trade (including containers) while:

**(a)** In the custody of your sales representative, agent or any "employee" who travels with sales samples;

**(b)** In your custody while acting as a sales representative; or

**(c)** "In transit" between the described premises and your sales representatives.

**(2)** The following of **SECTION I - PROPERTY, B. Exclusions**, paragraph **1.** do not apply to this Additional Coverage:

**(a) b. Earth Movement**; and

**(b) g. Water**

**(3)** The most we will pay for any loss or damage under this Additional Coverage is $5,000 unless a higher Limit of Insurance is shown in the Additional Property Coverage Schedule.

**(4)** We will not pay for loss to the following property:

**(a)** Property which has been sold;

**(b)** Jewelry, precious or semiprecious stones, gold, silver, platinum or other precious metals or alloys;

**(c)** Fur, fur garments or garments trimmed with fur; or

**(d)** Any property while waterborne.

**z. Leasehold Interest (Tenants Only)**

**(1)** If your lease is cancelled due to direct physical damage to property at the described premises caused by or resulting from a Covered Cause of Loss, we will pay the net loss you sustain due to increased rent under a replacement lease.

**(2)** The most we will pay for loss because of the cancellation of any lease or leases due to the same covered cause of loss is the lesser of:

**(a)** If your lease is cancelled and either:

**(i)** Your landlord allows you to continue to use your premises under a new lease not to exceed the prevailing lease rate, or

**(ii)** You relocate to other permanent premises and enter into a new lease.

For the duration of the lease in effect at the time of the loss, we will pay the increase in rent between what you were paying at the time of loss and the rent you will be required to pay for equivalent premises under the replacement lease;

**(b)** $10,000; or

**(c)** Nothing if there is not a written or legally binding lease.

**(3)** The following applies to paragraph **(2),** subparagraphs **(a)(i)** and **(a)(ii)** above:

**(a)** If the lease in effect at the time of the loss contains a renewal option, the expiration date of the renewal option period will replace the expiration of the current lease.

**(b)** If the lease has no end date (open-ended), we will pay the difference in rent for a period of no more than 24 months after the date of the direct physical damage to the property at the described premises.

**(4)** The following applies to paragraph **(2),** subparagraphs **(a)** and **(b)** above:

**(a)** $10,000 will be the maximum amount payable regardless of the number of leases affected by the same Covered Cause of Loss.

**(b)** Existence of a renewal option will not increase, or have any other effect on this Limit of Insurance.

**(5) Special Leasehold Interest Exclusion**

We will not pay for any loss or damage:

**(a)** If the unit or suite rented or leased to you where direct damage occurs has been vacant more than 60 consecutive days before the loss or damage occurs, and you have not entered into an agreement to sublease the unit or suite.

**(b)** Caused by your cancelling the lease, or

**(c)** Caused by lessors' lease cancellation at the normal expiration date.

**aa. Unauthorized Business Credit Card Use**

**(1)** We will pay for loss resulting from the "theft" or unauthorized use of Business Credit Cards issued to you or registered in your name.

**(2)** We do not cover use of a Business Credit Card:

**(a)** By a person who has been entrusted with the card; or

**(b)** any of your "employees".

**(3)** All loss:

**(a)** Caused by one or more persons; or

**(b)** Involving a single act or series of related acts;

is considered one occurrence regardless of the number of individual unauthorized transactions.

**(4)** If a suit is brought against you for liability, we will pay for reasonable legal expenses incurred in that defense under this Additional Coverage.

**(5)** The most we will pay for any loss including legal expenses, under this

Additional Coverage is $5,000 per occurrence.

**bb. Utility Services**

**(1)** We will pay for loss of or damage to Covered Property caused by an interruption in service to the described premises. The interruption must result from direct physical loss or damage by a Covered Cause of Loss to property not on the described premises that provides the services shown in paragraph **(3)** below.

The most we will pay for loss in any one occurrence under this Additional Coverage is $10,000 at each described premises or the Limit of Insurance shown in the Additional Property Coverage Schedule.

**(2)** We will pay for the actual loss of Business Income you sustain and necessary Extra Expense you incur caused by the interruption of service at the described premises. The interruption must result from direct physical loss or damage by a Covered Cause of Loss to property not on the described premises that provides the services shown in paragraph **(3)** below.

We will only pay for loss you sustain after the first 24 hours following the direct physical loss of or damage to the property described above.

The most we will pay for loss in any one occurrence under this Additional Coverage is $5,000 at each described premises or the Limit of Insurance shown in the Additional Property Coverage Schedule.

**(3)** Services:

**(a)** Water Supply Services, meaning the following types of property supplying water to the described premises:

**(i)** Pumping stations; and

**(ii)** Water mains.

**(b)** Communication Supply Services, meaning the following types of property supplying communication services, including but not limited to telephone, radio, microwave, television services, internet access or access to any electronic, cellular or satellite



OBCH332709    1304500

network to the described premises, such as:

**(i)** Communication transmission lines, including optic fiber transmission lines;

**(ii)** Coaxial cables; and

**(iii)** Microwave radio relays except satellites.

**(c)** Power Supply Services, meaning the following types of property supplying electricity, steam or gas to the described premises:

**(i)** Utility generating plants;

**(ii)** Switching stations;

**(iii)** Substations;

**(iv)** Transformers; and

**(v)** Transmission lines.

**(4)** Services under this Additional Coverage do not include overhead transmission lines that deliver utility services to you. Overhead transmission lines include, but are not limited to:

**(a)** Overhead transmission and distribution lines;

**(b)** Overhead transformers and similar equipment; and

**(c)** Supporting poles and towers.

**(5)** As used in this additional coverage, the term transmission lines includes all lines which serve to transmit communication service or power, including lines which may be identified as distribution lines.

**(6)** This coverage is not an additional amount of insurance.

**(7)** Coverage under this Additional Coverage for loss or damage to Covered Property does not apply to loss or damage to "electronic data", including destruction or corruption of "electronic data".

**(8)** The definitions of Business Income and Extra Expense contained in the Business Income and Extra Expense Additional Coverages also apply to this Utility Services Additional Coverage.

**cc. Deferred Payments**

**(1)** We will pay for your interest in lost or damaged Business Personal Property sold by you under a conditional sale or

trust agreement or any installment or deferred payment plan after delivery to buyers. The loss or damage must be caused by a Covered Cause of Loss.

**(2)** When a total loss to that property occurs, deferred payments are valued on the amount shown on your books as due from the buyer. When a partial loss to that property occurs and the buyer refuses to continue payment, forcing you to repossess, deferred payments are valued as follows:

**(a)** If the realized value of the repossessed property is greater than or equal to the amount shown on your books as due from the buyer, we will make no payment; but

**(b)** If the realized value of the repossessed property is less than the amount shown on your books as due from the buyer, we will pay the difference.

**(3)** When loss occurs and the buyer continues to pay you, there will be no loss payment.

**(4)** The most we will pay for loss under this Additional Coverage is $5,000 per occurrence.

**dd. Electronic Vandalism**

**(1)** **SECTION I - PROPERTY, A. Coverage, 2. Property Not Covered,** paragraph **o.** is deleted.

**(2)** We cover direct physical loss of or damage to covered "computer equipment" at the described premises caused by "electronic vandalism".

**(3)** The most we will pay in any one occurrence under this Additional Coverage is $10,000. The most we pay for all covered losses under this Additional Coverage during each separate 12-month period of this policy is $10,000.

**(4)** **Special Electronic Vandalism Exclusions**

We do not cover:

**(a)** Loss of proprietary use of any "electronic data" or "proprietary programs" that have been copied, scanned, or altered;

**(b)** Loss of or reduction in economic or market value of any "electronic

data" or "proprietary programs" that have been copied, scanned, or altered; and

**(c)** "Theft" from your "electronic data" or "proprietary programs" of confidential information through the observation of the "electronic data" or "proprietary programs" by accessing covered "computer equipment" without any alteration or other physical loss of or damage to the records or programs. Confidential information includes, but is not limited to, customer information, processing methods, or trade secrets.

**ee. Interruption of Computer Operations**

This Additional Coverage is only available if Business Income is covered under this Coverage Form.

**(1)** Subject to all provisions of this Additional Coverage, you may extend the insurance that applies to Business Income and Extra Expense to apply to a suspension of "operations" at the described premises caused by an interruption in computer operations due to destruction or corruption of "electronic data" occurring at or away from the described premises resulting from any Covered Cause of Loss.

**(2)** With respect to the coverage provided under this Additional Coverage, the Covered Causes of Loss are subject to the following:

**(a)** With respect to the coverage provided under this Additional Coverage, the Covered Causes of Loss include "electronic vandalism". But there is no coverage for an interruption related to manipulation of a computer system (including "electronic data") by any employee, including a temporary or leased employee, or by an entity retained by you, or for you, to inspect, design, install, modify, maintain, repair or replace that system.

**(b)** If the Businessowners Coverage Form is endorsed to add a Covered Cause of Loss, the additional Covered Cause of Loss does not apply to the coverage provided under this Additional Coverage.

**(3)** The most we will pay under this Additional Coverage - Interruption of Computer Operations for all loss sustained and expense incurred in any one policy year, regardless of the number of interruptions or the number of premises, locations or computer systems involved, is $10,000 unless a higher Limit of Insurance is shown in the Declarations. If loss payment relating to the first interruption does not exhaust this amount, then the balance is available for loss or expense sustained or incurred as a result of subsequent interruptions in that policy year. A balance remaining at the end of a policy year does not increase the amount of insurance in the next policy year. With respect to any interruption which begins in one policy year and continues or results in additional loss or expense in a subsequent policy year(s), all loss and expense is deemed to be sustained or incurred in the policy year in which the interruption began.

**(4)** This Additional Coverage - Interruption of Computer Operations does not apply to loss sustained or expense incurred after the end of the "period of restoration", even if the amount of insurance stated in paragraph **(3)** above has not been exhausted.

**(5)** Coverage for Business Income does not apply when a "suspension"of "operations" is caused by destruction or corruption of "electronic data", or any loss or damage to "electronic data", except as provided under paragraphs **(1)**, **(2)**, **(3)** and **(4)** of this Additional Coverage.

**(6)** Coverage for Extra Expense does not apply when action is taken to avoid or minimize a "suspension" of "operations" caused by "electronic vandalism",except as provided under paragraphs **(1)**, **(2)**, **(3)** and **(4)** of this Additional Coverage.

**(7)** This Additional Coverage - Interruption of Computer Operations does not apply when loss or damage to "electronic data" involves only "electronic data" which is integrated in and operates or controls a building's elevator, lighting, heating, ventilation, air conditioning or security system.

OBCH332709     1304500

**ff.  Limited Coverage for Fungi, Wet Rot, or Dry Rot**

**(1)** The coverage described in paragraphs **(2)** and **(6)** below only applies when the "fungi", wet rot or dry rot is the result of any of the "specified causes of loss" other than fire or lightning that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence.

This Additional Coverage does not apply to lawns, trees, shrubs or plants which are part of a vegetated roof.

**(2)** We will pay for loss or damage by "fungi", wet rot or dry rot. As used in this Limited Coverage, the term loss or damage means:

**(a)** Direct physical loss of or damage to Covered Property caused by "fungi", wet rot or dry rot, including the cost of removal of the "fungi", wet rot or dry rot;

**(b)** The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungi", wet rot or dry rot; and

**(c)** The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that "fungi", wet rot or dry rot is present.

**(3)** The coverage described under this Limited Coverage is limited to $50,000. Regardless of the number of claims, this limit is the most we will pay for the total of all loss or damage arising out of all occurrences caused by or resulting from any of the "specified causes of loss" (other than fire or lightning) which take place in a 12 month period (starting with the beginning of the present policy period). With respect to a particular occurrence of loss which results in "fungi", wet rot or dry rot, we will not pay more than the total of $50,000 even if the "fungi", wet rot or dry rot continues to be present or active, or recurs, in a later policy period.

**(4)** The coverage provided under this Limited Coverage does not increase the applicable Limit of Insurance on any Covered Property. If a particular occurrence results in loss or damage by "fungi", wet rot or dry rot, and other loss or damage, we will not pay more for the total of all loss or damage, than the applicable Limit of Insurance on the affected Covered Property.

If there is covered loss or damage to Covered Property, not caused by "fungi", wet rot or dry rot, loss payment will not be limited by the terms of this Limited Coverage, except to the extent that "fungi", wet rot or dry rot causes an increase in the loss. Any such increase in the loss will be subject to the terms of this Limited Coverage.

**(5)** The terms of this Limited Coverage do not increase or reduce the coverage provided in **SECTION I - PROPERTY, A. Coverage, 5 Additional Coverages, d. Collapse;** and/or **e. Water Damage, Other Liquids, Powder or Molten Material Damage**.

**(6)** The following applies only if Business Income and/or Extra Expense Coverage applies to the described premises and only if the "suspension" of "operations" satisfies all the terms and conditions of the applicable **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, f. Business Income** and/or **g. Extra Expense**:

**(a)** If the loss which resulted in "fungi", wet rot or dry rot does not in itself necessitate a "suspension" of "operations", but such "suspension" is necessary due to loss or damage to property caused by "fungi", wet rot or dry rot, then our payment under **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, f. Business Income** and/or **g. Extra Expense** is limited to the amount of loss and/or expense sustained in a period of not more than 30 days. The days need not be consecutive.

**(b)** If a covered suspension of "operations"  was caused by loss or damage  other than "fungi", wet

rot or dry rot, but remediation of "fungi", wet rot, dry rot prolongs the "period of restoration", we will pay for loss and/or expense sustained during the delay (regardless of when such a delay occurs during the "period of restoration"), but such coverage is limited to 30 days. The days need not be consecutive.

**gg. Theft of Telephonic Services**

**(1)** We will pay amounts you are obligated to pay that result from the "theft" of your "telephonic services" when someone who is not an "employee" gains unauthorized access to your "telephonic services" used in your business operations.

**(2)** The most we will pay under this Additional Coverage for acts of "theft" of "telephonic services", regardless of the number of "thefts" of "telephonic services" that you sustain in one policy year is $25,000.

**hh. Computer and Funds Transfer Fraud**

**(1)** We will pay for:

**(a)** Loss resulting directly from a fraudulent:

**(i)** Entry of "electronic data" or "computer program" into; or

**(ii)** Change of "electronic data" or "computer program" within;

any "computer equipment" owned, leased or operated by you, provided the fraudulent entry or fraudulent change causes, with regard to **(1)(a)(i)** and **(1)(a)(ii)** in the above paragraph**:**

**(iii)** "Money", "securities" or "other property" to be transferred, paid or delivered; or

**(iv)** Your account at a "financial institution" to be debited or deleted.

**(b)** Loss resulting directly from a "fraudulent instruction" directing a "financial institution" to debit your "transfer account" and to transfer, pay or deliver "money" or "securities" from that account.

**(2)** As used in **(1)(a)** above, fraudulent entry or fraudulent change of "electronic data" or "computer program" shall include such entry or

change made by an "employee" acting, in good faith, upon a "fraudulent instruction" received from a computer software contractor who has a written agreement with you to design, implement or service "computer programs" for "computer equipment" covered under this Insuring Agreement.

**(3)** The most we will pay per occurrence under this Additional Coverage is $5,000 unless a higher Limit of Insurance is shown in the Schedule of Amended Limits of Insurance.

**(4)** Under this Additional Coverage all loss:

**(a)** Caused by one or more persons; or

**(b)** Involving a single act or series of acts:

is considered one occurrence.

**ii. Tenant Building Insurance - When Your Lease Requires You to Provide Insurance**

**(1)** This Additional Coverage is available only when the Named Insured is a tenant and a Limit of Insurance is shown in the Declarations Page for Business Personal Property.

**(2)** We will pay for direct physical loss of or damage to a building on the described premises owned by your landlord and in your care, custody or control for which you have a written contractual responsibility to insure. The loss or damage must be the result of or caused by a Covered Cause of Loss.

**(3)** Regardless of the number of described buildings affected, the most we will pay per insured location under this Additional Coverage is $25,000 in any one occurrence.

**jj. Tenant Business Personal Property Insurance - When Your Lease Requires You to Provide Insurance**

**(1)** This Additional Coverage is available only when the Named Insured is a tenant and a Limit of Insurance is shown in the Declarations Page for Business Personal Property.

**(2)** Subject to **SECTION I - PROPERTY, E. Property Loss Conditions**, 5. **Loss Payment,** paragraph **d.,** subparagraph **(3)(b),** we will pay for

**The Hanover**
Insurance Group™

OBCH332709    1304500

direct physical loss of or damage to your landlord's personal property located inside of a building on the described premises and in your care, custody or control for which you have a written contractual responsibility to insure. The loss or damage must be the result of or caused by a Covered Cause of Loss.

**(3)** Regardless of the number of buildings where the landlord's personal property is located, the most we will pay per insured location under this Additional Coverage in any one occurrence is $25,000.

**6.  Coverage Extensions**

Except as otherwise provided, the following extensions apply to property located in or on the building described in the Declarations or in the open (or in a vehicle) within 1,000 feet of the described premises:

**a.  Newly Acquired or Constructed Property**

**(1) Buildings**

If your policy covers Buildings, you may extend the insurance provided under Building to apply to direct physical loss or damage when such loss or damage is caused by a Covered Cause of Loss to:

**(a)** Your new buildings while being built on the described premises; and

**(b)** Buildings you acquire at premises other than the one described, intended for:

**(i)** Similar use as the building described in the Declarations; or

**(ii)** Used as a warehouse.

**(c)** The most we will pay for loss or damage under this Extension for Newly Acquired or Constructed Buildings is $1,000,000 at each building.

**(2) Business Personal Property**

**(a)** If your policy covers Business Personal Property, you may extend the insurance provided under Business Personal Property to apply to direct physical loss or damage when such loss or damage is caused by a Covered Cause of Loss to:

**(i)** Business Personal Property, including such property that you newly acquire, at any location you acquire; or

**(ii)** Business Personal Property, including such property that you newly acquire, located at your newly constructed or acquired buildings at the location described in the Declarations.

**(iii)** Business Personal Property that you newly acquire, located at the described premises.

**(b)** This Extension does not apply to:

**(i)** Personal property of others that is temporarily in your possession in the course of installing or performing work on such property; or

**(ii)** Personal property of others that is temporarily in your possession in the course of your manufacturing or wholesaling activities.

**(c)** This insurance may not be used to increase your Business Personal Property Limit. It does not apply to personal property you acquire as part of your usual customary business dealings whether or not such acquisition was related to anticipated seasonal demands. Under the terms of this Coverage Form, such property is not considered newly acquired, but falls within the provisions for Business Personal Property.

**(d)** The most we will pay for loss or damage under this Extension is $500,000 at each premises.

**(3) Business Income and Extra Expense**

You may extend the insurance that applies to Business Income and Extra Expense to apply to property at any location you acquire. The most we will pay for loss or damage under this Extension is $250,000 at each premise.

**(4) Period of Coverage**

With respect to insurance provided under this Coverage Extension for Newly Acquired or Constructed

Property, coverage will end when any of the following first occurs:

**(a)** This policy expires;

**(b)** 180 days after you acquire the property or begin construction of that part of the building that would qualify as Covered Property; or

**(c)** You report values to us.

We will charge you additional premium for values reported from the date you acquire the property or begin construction of that part of the building that would qualify as Covered Property.

**b. Personal Property Off Premises**

**(1)** If your policy covers Business Personal Property, you may extend the insurance provided in **SECTION I - PROPERTY, A. Coverage, 1. Covered Property, b. Business Personal Property** to apply to direct physical loss or damage when such loss or damage is caused by a Covered Cause of Loss while:

**(a)** At a location you do not own, lease or operate; or

**(b)** At any fair, trade show or exhibition.

**(2)** The most we will pay for loss or damage under this Extension is $50,000 or the amount shown in the Additional Property Coverage Schedule, whichever is greater.

**(3) Special Personal Property Off Premises Exclusions**

This extension does not apply to property:

**(a)** In or on a vehicle; or

**(b)** In the care, custody or control of your sales representative, unless the property is in such care, custody or control at a fair, trade show or exhibition.

**c. Outdoor Property**

**(1)** You may extend insurance provided by this Coverage Form to apply to direct physical loss or damage to your radio and television antennas (including satellite dishes), trees, shrubs, plants and lawns (other than trees, shrubs or plants which are "stock" or are a part of a vegetated roof) including debris removal

expense, caused by or resulting from any of the following causes of loss:

**(a)** Fire;

**(b)** Lightning;

**(c)** Explosion;

**(d)** Riot or civil commotion;

**(e)** Aircraft;

**(f)** Windstorm; or

**(g)** Ice, snow, sleet and hail.

**(2)** Coverage under this Extension does not apply to property held for sale by you.

**(3)** Regardless of the number of described premises involved, the most we will pay for loss or damage under this Extension, including debris removal expense, is $10,000, but not more than $1,000 for any one tree, shrub or plant.

**d. Personal Effects**

**(1)** If your policy covers Business Personal Property, you may extend the insurance provided in **SECTION I - PROPERTY, A. Coverage, 1. Covered Property, b. Business Personal Property** to apply to direct physical loss or damage to personal effects owned by you, your officers, your partners or "members", your "managers" or your "employees" when such loss or damage is caused by a Covered Cause of Loss.

**(2)** This extension does not apply to:

**(a)** Tools or equipment used in your business; and

**(b)** "Employees" tools and small equipment;

**(3)** The most we will pay for loss or damage under this Extension is $10,000 at each described premises.

**e. Valuable Papers and Records (Other Than Electronic Data)**

**(1)** If your policy covers Business Personal Property, you may extend the insurance provided under **SECTION I - PROPERTY, A. Coverage, 1. Covered Property, b. Business Personal Property** to apply to direct physical loss or damage to "valuable papers and records" that you own, or that are in your care, custody or control caused by or resulting from a Covered Cause

The **Hanover**
Insurance Group™

OBCH332709     1304500

of Loss. This Coverage Extension includes the cost to research, replace or restore the lost information on "valuable papers and records" for which duplicates do not exist.

**(2)** The most we will pay under this Coverage Extension for loss or damage to "valuable papers and records" in any one occurrence at the described premises is $25,000, unless a higher Limit of Insurance for "valuable papers and records" is shown in the Additional Property Coverage Schedule.

**(3)** The most we will pay under this Coverage Extension for loss or damage to "valuable papers and records" in any one occurrence not at the described premises is $25,000, unless a higher Limit of Insurance for "valuable papers and records" is shown in the Additional Property Coverage Schedule.

**(4)** This Coverage Extension does not apply to:

**(a)** Property held as samples or for delivery after sale; or

**(b)** Property in storage away from the premises shown in the Declarations;

**(5)** **SECTION I - PROPERTY, B. Exclusions** does not apply to this Coverage Extension except for:

**(a)** Paragraph **1.c. Governmental Action**;

**(b)** Paragraph **1.d. Nuclear Hazard**;

**(c)** Paragraph **1.f. War and Military Action**;

**(d)** Paragraph **2.d. Dishonesty**;

**(e)** Paragraph **2.e. False Pretense**;

**(f)** Paragraph **2.k. Errors or Omissions**; and

**(g)** Paragraph **3.a. Weather Conditions, 3.b. Acts or Decisions** and **3.c. Negligent Work.**

**f.  Accounts Receivable**

**(1)** If your policy covers Business Personal Property, you may extend the insurance provided in **SECTION I - PROPERTY, A. Coverage, 1. Covered Property, b. Business Personal Property** to accounts receivable when such loss or damage

is caused by or results from a Covered Cause of Loss. We will pay:

**(a)** All amounts due from your customers that you are unable to collect;

**(b)** Interest charges on any loan required to offset amounts you are unable to collect pending our payment of these amounts;

**(c)** Collection expenses in excess of your normal collection expenses that are made necessary by loss or damage; and

**(d)** Other reasonable expenses that you incur to re-establish your records of accounts receivable;

that result from direct physical loss or damage by any Covered Cause of Loss to your records of accounts receivable.

**(2)** We will pay under this Coverage Extension for loss or damage in any one occurrence at the described premises. The most we will pay is $25,000 for accounts receivable at the described premises, unless a higher Limit of Insurance for accounts receivable is shown in the Additional Property Coverage Schedule.

**(3)** We will pay under this Coverage Extension for loss or damage in any one occurrence not at the described premises. The most we will pay is $25,000 for accounts receivable not at the described premises.

**(4)** **SECTION I - PROPERTY, B. Exclusions** does not apply to this Coverage Extension except for:

**(a)** Paragraph **1.c. Governmental Action**;

**(b)** Paragraph **1.d. Nuclear Hazard**;

**(c)** Paragraph **1.f. War and Military Action**;

**(d)** Paragraph **2.d. Dishonesty**;

**(e)** Paragraph **2.e. False Pretense**; and

**(f)** Paragraph **3.a. Weather Conditions, 3.b. Acts or Decisions** and **3.c. Negligent Work.**

**(5)** **Accounts Receivable Special Exclusion**

We will not pay for:

**(a)** Loss or damage caused by or resulting from alteration, falsification, concealment or destruction of records of accounts receivable done to conceal the wrongful giving, taking or withholding of "money", "securities" or "other property".

This exclusion applies only to the extent of the wrongful giving, taking or withholding.

**(b)** Loss or damage caused by or resulting from bookkeeping, accounting or billing errors or omissions.

**(c)** Any loss or damage that requires any audit of records or any inventory computation to prove its factual existence.

**g. Key Replacement and Lock Repair**

**(1)** You may extend the insurance provided under this Coverage Form to cover the reasonable and necessary expense you incur due to a covered "theft" for:

**(a)** Replacement of keys if they are stolen;

**(b)** Lock repair; or

**(c)** Rekeying, replacing or reprogramming undamaged locks to accept new keys or entry codes when the building security has been compromised.

**(2)** The most we will pay under this Extension is $1,000. The deductible does not apply to this Extension.

**h. Appurtenant Structures**

**(1)** If your policy covers Buildings, you may extend the insurance provided under Building to apply to direct physical loss or damage to garages, carports, storage buildings and other appurtenant structures, including, but not limited to, swimming pools, spas and the associated equipment within 1,000 feet of the described premises when such loss or damage is caused by or results from a Covered Cause of Loss.

**(2)** The most we will pay for loss or damage under this Extension is $50,000 at each described premises regardless of the number of buildings or structures affected.

**i. Personal Property in Transit**

**(1)** If your policy covers Business Personal Property, you may extend the insurance provided in **SECTION I - PROPERTY, A. Coverage, 1. Covered Property, b. Business Personal Property** to apply to direct physical loss or damage to your property or property of others that is in your care, custody or control while "in transit" when such loss or damage is caused by or results from a Covered Cause of Loss.

**(2)** You may extend the insurance that applies to **SECTION I - PROPERTY, A. Coverage, 1. Covered Property, b. Business Personal Property** to apply to direct physical loss or damage, caused by a Covered Cause of Loss, to outgoing shipments that have been rejected, while in due course of transit back to you or while awaiting return shipment to you.

**(3)** This Extension applies to the property while in:

**(a)** A vehicle owned, leased or operated by you; or

**(b)** The custody of a common carrier or contract carrier.

**(4)** The following in **SECTION I - PROPERTY, B. Exclusions**, paragraph **1.** do not apply to this Extension:

**(a) b. Earth Movement**; and

**(b) g. Water**.

**(5)** The most we will pay for loss or damage under this Coverage Extension is $10,000 unless a higher Limit of Insurance is shown in the Schedule of Amended Limits of Insurance.

**(6) Special Personal Property In Transit Exclusions**

This Extension does not apply to:

**(a)** Shipments that belong to others that you are transporting for a fee;

**(b)** Property while waterborne;

**(c)** Salesperson's Samples; or

**(d)** Loss to "perishable goods" resulting from a breakdown of refrigeration equipment on any vehicle owned, leased or operated by you or while in the custody of a common or contract carrier.



OBCH332709     1304500

**j.  Inventory and Loss Appraisal**

   **(1)** We will pay for all reasonable expenses you incur at our written request to assist us in:

   **(a)** The investigation of a claim;

   **(b)** The determination of the amount of loss, such as taking inventory;

   **(c)** The cost of preparing specific loss documents and other supporting exhibits; or

   **(d)** Expenses you incur include costs charged to you by others, including property managers, acting on your behalf to assist us with items listed in paragraph **(1)** above.

   **(2)** Regardless of the number of premises involved, the most we will pay under this Extension is $10,000.

   **(3)** The deductible does not apply to these expenses.

   **(4) Special Inventory and Loss Appraisal Exclusion**

   We will not pay for expenses:

   **(a)** Incurred to perform your duties in the event of a loss under **SECTION I - PROPERTY**, **E. Property Loss Conditions**;

   **(b)** To prove that loss or damage is covered;

   **(c)** Billed by and payable to independent or public adjusters; attorneys; claims advocates; or any of their affiliated or associated entities;

   **(d)** To prepare claims not covered by this Coverage Form; or

   **(e)** Incurred under any appraisal provisions within the Coverage Form.

**k.  Business Personal Property Temporarily in Portable Storage Units**

   **(1)** If your policy covers Business Personal Property, you may extend the insurance provided in **SECTION I - PROPERTY, A. Coverage, 1. Covered Property, b. Business Personal Property** to apply to direct physical loss or damage to such property while temporarily stored in a portable storage unit (including a detached trailer) located within 1,000 feet of the buildings or structures described in the Declarations or within 1,000 feet of the described premises, whichever distance is greater when such loss or damage is caused by or results from a Covered Cause of Loss.

   **(2)** We will not pay for loss of or damage to Business Personal Property temporarily in portable storage units, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

   **(a)** The portable storage unit first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

   **(b)** The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

   **(3)** Coverage under this Extension:

   **(a)** Will end 90 days after the Business Personal Property has been placed in the storage unit;

   **(b)** Does not apply if the storage unit itself has been in use at the described premises for more than 90 consecutive days, even if the Business Personal Property has been stored there for 90 or fewer days as of the time of loss or damage.

   **(4)** Under this Extension, the most we will pay for the total of all loss or damage to Business Personal Property is $25,000 unless a higher limit is shown in the Additional Property Coverage Schedule for this Extension regardless of the number of storage units.

   **(5)** This Extension does not apply to loss or damage otherwise covered under this Coverage Form or any endorsement to this Coverage Form, and does not apply to loss or damage to the storage unit itself.

**l.  Paved Surfaces**

   **(1)** If your policy covers Buildings, you may extend the insurance provided under **SECTION I - PROPERTY, A. Coverage, 1. Covered Property, a. Building** to apply to direct physical loss or damage to your paved surfaces, including but not limited to bridges, roadways, walks, patios, and parking lots when such loss or

damage is caused by or results from a Covered Cause of Loss.

**(2)** Regardless of the number of described premises involved, the most we will pay for loss or damage in any one occurrence is $25,000.

**(3)** Payment for loss or damage to this property is included in the applicable Limit of Insurance.

**(4) Special Paved Surfaces Exclusion**

We will not pay for loss or damage caused by tree roots, freezing or thawing.

**m. Underground Pipes**

**(1)** If your policy covers Buildings, you may extend the insurance provided in **SECTION I - PROPERTY, A. Coverage, 1. Covered Property, a. Building** to apply to direct physical loss or damage to underground pipes, flues and drains when such loss or damage is caused by or results from a Covered Cause of Loss.

**(2)** The most we will pay for loss under this Coverage Extension is the applicable Limit of Insurance.

**(3)** Payment under this Additional Coverage is included within the Limit of Insurance.

**(4) Special Underground Pipes Exclusion**

We will not pay for loss or damage caused by tree roots.

**B. Exclusions**

**1.** We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

**a. Ordinance or Law**

**(1)** The enforcement of or compliance with any ordinance or law:

**(a)** Regulating the construction, use or repair of any property; or

**(b)** Requiring the tearing down of any property, including the cost of removing its debris.

**(2)** This exclusion, Ordinance or Law, applies whether the loss results from:

**(a)** An ordinance or law that is enforced even if the property has not been damaged; or

**(b)** The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property or removal of its debris, following a physical loss to that property.

This exclusion does not apply to the Ordinance or Law Additional Coverage.

**b. Earth Movement**

**(1)** Earthquake, including tremors and aftershocks and any earth sinking, rising or shifting related to such event;

**(2)** Landslide, including any earth sinking, rising or shifting related to such event;

**(3)** Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

**(4)** Earth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface.

But if Earth Movement, as described in paragraphs **(1)**, **(2)**, **(3)** and **(4)** above, results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

**(5)** Volcanic eruption, explosion or effusion. But if volcanic eruption, explosion or effusion results in fire, building glass breakage or volcanic action, we will pay for the loss or damage caused by that fire, building glass breakage or volcanic action.

Volcanic action means direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

**(a)** Airborne volcanic blast or airborne shock waves;

**(b)** Ash, dust or particulate matter; or

**(c)** Lava flow.

With respect to coverage for volcanic action as set forth in paragraph **(5)**, subparagraphs **(a)**, **(b)** and **(c)** above, all volcanic eruptions that occur within



OBCH332709        1304500

any 168-hour period will constitute a single occurrence.

Volcanic action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss of or damage to Covered Property.

This exclusion applies regardless of whether or not any of the above, in **SECTION I - PROPERTY, B. Exclusions**, paragraph **1., b Earth Movement**, subparagraphs **(1), (2), (3), (4)** and **(5)**, are caused by an act of nature or is otherwise caused.

**c.  Governmental Action**

Seizure or destruction of property by order of governmental authority.

But we will pay for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this Coverage Form.

**d.  Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination, however caused.

But if nuclear reaction or radiation, or radioactive contamination, results in fire, we will pay for the loss or damage caused by that fire.

**e.  Utility Services**

The failure of power, communication, water or other utility service supplied to the described premises, however caused, if the failure:

**(1)** Originates away from the described premises; or

**(2)** Originates at the described premises, but only if such failure involves equipment used to supply the utility services to the described premises from a source away from the described premises.

Failure of any utility service includes lack of sufficient capacity and reduction in supply.

Loss or damage caused by a surge of power is also excluded, if the surge would not have occurred but for an event causing a failure of power.

But if the failure or surge of power, or the failure of communication, water or other utility service, results in a Covered Cause

of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

Communication services include but are not limited to service relating to Internet access or access to any electronic, cellular or satellite network.

This exclusion does not apply to loss or damage to "computer equipment" and "electronic data" or to **SECTION I - PROPERTY, 5. Additional Coverages, bb. Utility Services**.

**f.  War and Military Action**

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**g.  Water**

**(1)** "Flood", surface water, waves (including tidal wave or tsunami), tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge);

**(2)** Mudslide or mudflow;

**(3)** Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump; or related equipment;

**(4)** Water under the ground surface pressing on, or flowing or seeping through:

**(a)** Foundations, walls, floors or paved surfaces;

**(b)** Basements, whether paved or not; or

**(c)** Doors, windows or other openings.

**(5)** Waterborne material carried or otherwise moved by any of the water referred to in paragraphs **(1)**, **(3)** or **(4)** above, or material carried or otherwise moved by mudslide or mudflow.

This exclusion applies regardless of whether any of paragraphs **(1)**, **(2)**, **(3)**, **(4)** and **(5)** above, are caused by an act of nature or is otherwise caused. An example

of a situation to which this exclusion applies is the situation where a dam, levee, seawall or other boundary or containment system fails in whole or in part, for any reason, to contain the water.

But if Water, as described in paragraphs **(1)**, **(2)**, **(3)**, **(4)** and **(5)** above, results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage. If electrical "covered equipment" requires drying out because of paragraphs **(1)**, **(2)**, **(3)**, **(4)** and **(5)** above, we will pay for the direct expenses of such drying out subject to the applicable Limit of Insurance and Deductible for Building or Personal Property, whichever applies.

**h. Fungi, Wet Rot or Dry Rot**

Presence, growth, proliferation, spread or any activity of "fungi", wet rot or dry rot.

But if "fungi", wet rot or dry rot results in any of the "specified causes of loss", we will pay for the loss or damage caused by any of the "specified causes of loss".

This exclusion does not apply:

**(1)** When "fungi", wet rot or dry rot results from fire or lightning; or

**(2)** To the extent that coverage is provided in the **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverage, ff. Limited Coverage for Fungi, Wet Rot or Dry Rot**, with respect to loss or damage by a cause of loss other than fire or lightning.

**i. Virus or Bacteria**

**(1)** Any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

**(2)** However, the exclusion in paragraph **(1)** above, does not apply to loss or damage caused by or resulting from "fungi", wet rot or dry rot. Such loss or damage is addressed in **SECTION I - PROPERTY, B. Exclusions**, paragraph **1., h. Fungi, Wet Rot or Dry Rot**.

**(3)** With respect to any loss or damage subject to the exclusion in paragraph **(1)** above, such exclusion supersedes any exclusion relating to "pollutants".

**SECTION I - PROPERTY, B. Exclusions**, paragraphs **1.a., 1.b., 1.c., 1.d., 1.e., 1.f., 1.g., 1.h. and 1.i.** apply whether or not the loss

event results in widespread damage or affects a substantial area.

**2.** We will not pay for loss or damage caused by or resulting from any of the following:

**a. Consequential Losses**

Delay, loss of use or loss of market, however caused.

**b. Smoke, Vapor and Gas**

Smoke, vapor or gas from agricultural smudging or industrial operations.

**c. Frozen Plumbing**

Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing, unless:

**(1)** You do your best to maintain heat in the building or structure; or

**(2)** You drain the equipment and shut off the supply if the heat is not maintained.

**d. Dishonesty**

Dishonest or criminal act by you, any of your partners, "members", officers, managers, employees, directors, trustees, authorized representatives or anyone to whom you entrust the property for any purpose:

**(1)** Acting alone or in collusion with others; or

**(2)** Whether or not occurring during the hours of employment.

This exclusion does not apply to acts of destruction by your employees; but "theft" by employees is not covered.

This exclusion does not apply to coverage that is provided under the Employee Theft Including ERISA Additional Coverage.

**e. False Pretense**

Voluntary parting with any property by you or anyone else to whom you have sold, given or otherwise entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

This exclusion does not apply to the Unauthorized Business Card Use Additional Coverage.

**f. Exposed Property**

Rain, snow, ice or sleet to personal property in the open.

**g. Collapse**

**The Hanover Insurance Group™**

OBCH332709     1304500

**(1)** Collapse, including any of the following conditions of property or any part of the property:

**(a)** An abrupt falling down or caving in;

**(b)** Loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in; or

**(c)** Any cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion as such condition relates to paragraphs **(a)** or **(b)** above.

But if collapse results in a Covered Cause of Loss at the described premises, we will pay for the loss or damage caused by that Covered Cause of Loss.

**(2)** This Exclusion **g.** does not apply:

**(a)** To the extent that coverage is provided under **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, d. Collapse**; or

**(b)** To collapse caused by one or more of the following:

**(i)** Any of the "specified causes of loss"

**(ii)** Breakage of building glass;

**(iii)** Weight of rain that collects on a roof; or

**(iv)** Weight of people or personal property

**h. Pollution**

Discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss". But if the discharge, dispersal, seepage, migration, release or escape of "pollutants" results in any of the "specified causes of loss", we will pay for the loss or damage caused by any of the "specified causes of loss".

**i. Neglect**

Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

**j. Other Types of Loss**

**(1)** Wear and tear;

**(2)** Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

**(3)** Smog;

**(4)** Settling, cracking, shrinking or expansion;

**(5)** Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals; or

**(6)** Mechanical breakdown, including rupture or bursting caused by centrifugal force.

This exclusion does not apply with respect to the breakdown of "computer equipment".

This exclusion does not apply to the Equipment Breakdown Additional Coverage.

**(7)** The following causes of loss to personal property:

**(a)** Dampness or dryness of the atmosphere;

**(b)** Changes in or extremes of temperature; or

**(c)** Marring or scratching.

But if an excluded cause of loss that is listed in paragraphs **(1)**, **(2)**, **(3)**, **(4)**, **(5)**, **(6)** and **(7)** above, results in any of the "specified causes of loss", "accident", "electronic circuity impairment" or building glass breakage, we will pay for the loss or damage caused by any of the "specified causes of loss", "accident", "electronic circuity impairment" or building glass breakage.

**k. Errors or Omissions**

Errors or omissions in:

**(1)** Programming, processing or storing "electronic data" or in any "computer equipment" operations; or

**(2)** Processing or copying "valuable papers and records".

However, we will pay for direct physical loss or damage caused by resulting fire, "accident", "electronic circuity impairment" or explosion if these causes of loss would be covered by this Coverage Form.

**l. Installation, Testing, Repair**

Errors or deficiency in design, installation, testing, maintenance, modification or

repair of your "computer equipment" system including "software".

However, we will pay for direct physical loss or damage caused by resulting fire or explosion if these causes of loss would be covered by this Coverage Form.

**m. Electrical Disturbance**

Electrical or magnetic injury, disturbance or erasure of "electronic data", except as provided for in **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages**, and **6. Coverage Extensions**.

However, we will pay for direct loss or damage caused by lightning.

**n. Artificially Generated Electricity**

Artificially generated electric current including electric arcing, that disturbs electrical devices, appliances or wires except as provided for in **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, u. - Equipment Breakdown**. But, if artificially generated electric current results in fire, we will pay for the loss or damage caused by fire.

**o. Computer Processing Exclusion**

**(1)** Errors or omissions in programming or incorrect instructions to "hardware";

**(2)** Electrical or magnetic damage, disturbance of recordings or erasure of electronic recordings, except as provided under **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, u. Equipment Breakdown**. We will also pay for direct loss caused by lightning;

**(3)** Mechanical breakdown or malfunction, component failure, faulty installation or blowouts; except as provided for under **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, u. Equipment Breakdown**; or

**(4)** Faulty instruction or incorrect usage, including changes in arrangements or parts.

**p. Loss of Warranty**

Loss of warranty or similar future or potential benefit even when following a covered loss or covered damage.

**(1)** Loss of this type does not meet direct physical loss or damage.

**(2)** We agree that reasonable repair or reconditioning measures be pursued to ensure soundness of property after loss or damage:

**(a)** Where proper and adequate report or reconditioning method is debated, you and we agree to follow the usual and customary industry repair and reconditioning practices; or

**(b)** For situations not resolved by paragraph **(a)** above, either party may demand that the matter be resolved through Appraisal as provided for elsewhere in the Coverage Form.

**q. Continuous or Repeated Seepage or Leakage of Water**

Continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

**r. Authorized Access**

Loss resulting from a fraudulent:

**(1)** Entry of "electronic data" or "computer program" into; or

**(2)** Change of "electronic data" or "computer program" within;

any "computer equipment" owned, leased or operated by you by a person or organization with authorized access to that "computer equipment", except when covered under **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, hh. Computer and Funds Transfer Fraud**, paragraph **b.**.

**s. Fraudulent Instructions**

Loss resulting from an "employee" or "financial institution" acting upon any instruction to:

**(1)** Transfer, pay or deliver "money", "securities" or "other property"; or

**(2)** Debit or delete your account; which instruction proves to be fraudulent, except when covered under **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, hh. Computer and Funds Transfer Fraud**, paragraphs **a.(2)** and **b.**.

**3.** We will not pay for loss or damage caused by or resulting from paragraphs **a., b.** and **c.** below. But if an excluded cause of loss that is listed in paragraphs **a., b.** and **c.** below, results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**a. Weather Conditions**

But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in **SECTION I - PROPERTY**, **B. Exclusions**, paragraph **1.** to produce the loss or damage.

**b. Acts or Decisions**

Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

**c. Negligent Work**

Faulty, inadequate or defective:

**(1)** Planning, zoning, development, surveying, siting;

**(2)** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

**(3)** Materials used in repair, construction, renovation or remodeling; or

**(4)** Maintenance;

of part or all of any property on or off the described premises.

**4. Additional Exclusion**

The following applies only to the property specified in this Additional Exclusion:

**Loss or Damage to Products**

We will not pay for loss or damage to any merchandise, goods or other product caused by or resulting from error or omission by any person or entity (including those having possession under an arrangement where work or a portion of the work is outsourced) in any stage of the development, production or use of the product, including planning, testing, processing, packaging, installation, maintenance or repair. This exclusion applies to any effect that compromises the form, substance or quality of the product. But if such error or omission results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**5. Business Income and Extra Expense Exclusions**

We will not pay for:

**a.** Any Extra Expense or increase of Business Income loss caused by or resulting from:

**(1)** Delay in rebuilding, repairing or replacing the property or resuming "operations", due to interference at the location of the rebuilding, repair or replacement by strikers or other persons;

**(2)** "Suspension", lapse or cancellation of any license, lease or contract. But if the "suspension", lapse or cancellation is directly caused by the "suspension" of "operations", we will cover such loss that affects your Business Income during the "period of restoration" in accordance with the terms of **SECTION I - PROPERTY**, **A. Coverage**, **5. Additional Coverages, f. Business Income, (2) Extended Business Income.**

**(3)** Damage or destruction of "finished stock"; the time required to reproduce "finished stock"; or

**(4)** Any other consequential loss.

Paragraph **5.a.(3)** does not apply to Extra Expense.

**C. Limits of Insurance**

**1.** The most we will pay for loss or damage in any one occurrence is the applicable Limits of Insurance of **SECTION I - PROPERTY** shown in the Declarations.

**2.** The amounts of insurance applicable to the Coverage Extensions and the following Additional Coverages apply in accordance with the terms of such coverages and are in addition to **SECTION I - PROPERTY, C. Limits of Insurance**:

**a.** Fire Department Service Charge;

**b.** Pollutant Clean-Up and Removal;

**c.** Civil Authority;

**d.** Money Orders and Counterfeit Money;

**e.** Forgery or Alteration;

**f.** Ordinance or Law;

**g.** Business Income from Dependent Properties;

**h.** Glass Expenses;

**i.** Fire Protection Equipment Recharge

**j.** Employee Theft;

**k.** Rewards - Arson and Theft;

**l.** Computer Equipment;

**m.** Tenant Signs (Tenants Only);

**n.** Commercial Tools and Small Equipment;

**o.** Installation;

**p.** Fine Arts;

**q.** Sales Representative Samples;

**r.** Leasehold Interest (Tenants Only);

**s.** Unauthorized Business Credit Card Use;

**t.** Deferred Payments;

**u.** Money and Securities;

**v.** Electronic Vandalism;

**w.** Interruption of Computer Operations;

**x.** Theft of Telephonic Services;

**y.** Computer and Funds Transfer Fraud;

**z.** Tenant Building Insurance - When Your Lease Requires You to Provide Insurance; or

**aa.** Tenant Business Personal Property Insurance - When Your Lease Requires You to Provide Insurance.

**3. Building Limit - Increase**

If Covered Property is written on a Replacement Cost basis:

**a.** The Limit of Insurance for Buildings will be revised by changes that occurred in the cost of construction during the preceding policy year.

**b.** The amount of increase will be determined by reports of a recognized valuation method.

**c.** We will inform you of such adjusted values. Upon their acceptance, you agree to pay any additional premium for the adjusted limit. Payment of your renewal premium, which includes the revised Limit of Insurance, shall constitute acceptance.

**d.** We will pay the replacement cost value of the damaged portion of the building at the time of loss, but not more than 125% of the Limit of Insurance for Building if:

**(1)** The amount of any loss covered by this Coverage Form exceeds the Limit of Insurance for Building stated in the Declarations for the damaged Building; and

**(2)** The actual repair or replacement is completed within one year of the date of loss.

**e.** The **Building Limit - Increase** clause will not apply if:

**(1)** You do not accept the adjusted value; or

**(2)** You do not inform us of changes to covered Building:

**(a)** Within sixty (60) days of the date any additions, improvements or enlargements to the building are begun, and

**(b)** When the replacement value of the changes are more than 5%of

the Limit of Insurance for the building.

**4. Business Personal Property Limit - Seasonal Increase**

**a.** The Limit of Insurance for Business Personal Property will increase by 25% to provide for seasonal variations.

**b.** This increase will apply only if the Limit of Insurance shown for Business Personal Property in the Declarations is at least 100% of your average monthly values during the lesser of:

**(1)** The 12 months immediately preceding the date the loss or damage occurs; or

**(2)** The period of time you have been in business as of the date the loss or damage occurs.

**D. Deductibles**

**1.** We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds the Deductible shown in the Declarations. We will then pay the amount of loss or damage in excess of the Deductible up to the applicable limit in **SECTION I - PROPERTY, C. Limit of Insurance**.

**2.** No Deductible applies to the following Additional Property Coverages and Extensions of Coverage:

**a.** Fire Department Service Charge;

**b.** Fire Protection Equipment Recharge;

**c.** Business Income;

**d.** Extra Expense;

**e.** Civil Authority;

**f.** Key Replacement and Lock Repair;

**g.** Deferred Payment;

**h.** Debris Removal;

**i.** Rewards - Arson, Theft and Vandalism;

**j.** ERISA Compliance;

**k.** Preservation of Property;

**l.** Pollutant Clean-Up and Removal;

**m.** Ordinance or Law;

**n.** Leasehold Interest (Tenants Only);

**o.** Unauthorized Business Credit Card Use;

**p.** Business Income from Dependent Properties; and

**q.** Inventory and Loss Appraisal.

**3.** A $250 Deductible applies to the following Coverages:

**a.** Glass - Interior and Exterior; and

The **Hanover** Insurance Group™

OBCH332709     1304500

    **b.** Glass Expenses.

**4.** A $500 Deductible applies to all of the Additional Property Coverages and Extensions of Coverage scheduled on the Declarations, except Equipment Breakdown, unless otherwise indicated in paragraphs **2.**, **3.** or **5.** of this section.

**5.** A $1,000 Deductible applies to the following Additional Property Coverages and Extensions of Coverage:

    **a.** Employee Theft (except ERISA Compliance);

    **b.** Sales Representative Samples;

    **c.** Installation;

    **d.** Personal Property Off Premises;

    **e.** Personal Property In Transit.

**6.** The Deductible shown in the Declarations for the Equipment Breakdown Additional Coverage applies to the Additional Coverage for Equipment Breakdown.

**7.** Each Deductible shall be applied separately, but only to the coverage specified. The total Deductible for all losses in one occurrence will be the highest Deductible amount that applies to that occurrence.

**8.** The Business Income Waiting Period shown on the Declarations Page for the Business Income and Civil Authority Additional Coverages is applicable in addition to a Deductible.

**E.** **Property Loss Conditions**

  **1.** **Abandonment**

    There can be no abandonment of any property to us.

  **2.** **Appraisal**

    If you and we disagree on the amount of a covered loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

    **a.** Pay its chosen appraiser; and

    **b.** Bear the other expenses of the appraisal and umpire equally.

    If there is an appraisal, we will still retain our right to deny the claim.

**3.** **Duties in the Event of Loss or Damage**

  **a.** You must see that the following are done in the event of loss or damage to Covered Property:

    **(1)** Notify the police if a law may have been broken.

    **(2)** Give us prompt notice of the loss or damage. Include a description of the property involved.

    **(3)** As soon as possible, give us a description of how, when and where the loss or damage occurred.

    **(4)** Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase **SECTION I - PROPERTY, C. Limits of Insurance.** However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

    **(5)** At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

    **(6)** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

    Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

    **(7)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

    **(8)** Cooperate with us in the investigation or settlement of the claim.

    **(9)** Resume all or part of your "operations" as quickly as possible.

  **b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter

relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**4. Legal Action Against Us**

No one may bring a legal action against us under this insurance unless:

**a.** There has been full compliance with all of the terms of this insurance; and

**b.** The action is brought within 2 years after the date on which the direct physical loss or damage occurred. The 2 year limitation also applies to indirect or consequential loss covered under this Coverage Form.

**5. Loss Payment**

In the event of loss or damage covered by this Coverage Form:

**a.** At our option, we will either:

**(1)** Pay the value of lost or damaged property;

**(2)** Pay the cost of repairing or replacing the lost or damaged property;

**(3)** Take all or any part of the property at an agreed or appraised value; or

**(4)** Repair, rebuild or replace the property with other property of like kind and quality, subject to paragraph **d.,** subparagraph **(1)(d)** below.

**b.** We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

**c.** We will not pay you more than your financial interest in the Covered Property.

**d.** We will determine the value of Covered Property as follows:

**(1)** At replacement cost without deduction for depreciation except as provided in paragraphs **(2), (3), (4), (5), (6), (7), (8), (9), (10), (11), (12), (13), (14), (15)** and **(16)** below.

**(a)** You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim on a replacement cost basis if you notify us of your intent to do so within 180 days after the loss or damage.

**(b)** We will not pay on a replacement cost basis for any loss or damage:

**(i)** Until the loss or damaged property is actually repaired or replaced;

**(ii)** Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage; and

**(iii)** Unless the repairs or replacement are completed within 24 months for personal property or for buildings and other real property after the loss or damage, unless extended in writing by us.

However, if the cost to repair or replace a damaged building is $2,500 or less we will determine the value at replacement cost without deduction for depreciation.

**(c)** We will not pay more for loss or damage on a replacement cost basis than the least of the following amounts:

**(i)** The cost to replace, on the same premises, the lost or damaged property with other property:

**1)** Of comparable material and quality; and

**2)** Used for the same purpose; or

**(ii)** The amount that you actually spend that is necessary to repair or replace the lost or damaged property.

If a building is rebuilt at a new location, the recoverable amount is limited to the cost which would have been incurred had the building been built at the original premises.

**(d)** The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property.

**(2)** If the Declarations indicate the Actual Cash Value applies to Building or Personal Property, paragraph **(1)** above does not apply to that property. Instead, we will determine the value of that property at the actual cash value.

**(3)** The following property at actual cash value:

**(a)** Used or second-hand merchandise held in storage or for sale;

**(b)** Property of others. However, if an item(s) of personal property of others is subject to a written contract which governs your liability for loss or damage to that item(s), then valuation of that item(s) will be based on the amount for which you are liable under such contract, but not to exceed the lesser of the replacement cost of the property or the applicable Limit of Insurance;

**(c)** Household contents, except personal property in apartments or rooms furnished by you as landlord;

**(d)** Manuscripts;

**(e)** Works of art, "antiques" or rare articles, including but not limited to, etchings, pictures, statuary, marbles, bronzes, porcelains, glassware and bric-a-brac not otherwise covered in **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverage, x. Fine Arts**; or

**(f)** Commercial Tools and Small Equipment and Contractors Tools and Equipment. This does not apply to your Commercial Tools and Small Equipment permanently installed or exclusively used at the described premises.

**(4)** Glass at the cost of replacement with safety glazing material if required by law.

**(5)** Tenant's Improvements and Betterments at:

**(a)** Replacement cost if you make repairs promptly.

**(b)** A proportion of your original cost if you, as the tenant, do not make repairs promptly. We will determine the proportionate value as follows:

**(i)** Multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

**(ii)** Divide the amount determined in paragraph **(i)** above by the number of days from the installation of improvements to the expiration of the lease.

If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

**(c)** Nothing if others pay for repairs or replacement.

**(6)** "Valuable papers and records" at the cost of restoration or replacement, including the cost of data entry, re-programming, computer consultation services and the "media" on which the data or programs reside. To the extent that the contents of the "valuable papers and records" are not restored, the "valuable papers and records" will be valued at the cost of replacement with blank materials of substantially identical type.

**(7)** "Money" at its face value; and

**(8)** "Securities" at their value at the close of business on the day the loss is "discovered".

**(9)** Accounts Receivable:

**(a)** If you cannot accurately establish the amount of accounts receivable outstanding as of the time of loss or damage:

**(i)** We will determine the total of the average monthly amounts of accounts receivable for the 12 months immediately preceding the month in which the loss or damage occurs; and

**(ii)** We will adjust that total for any normal fluctuations in the amount of accounts receivable for the month in which the loss or damage occurred or for any demonstrated variance from the average for that month.

**(b)** The following will be deducted from the total amount of accounts receivable, regardless of how that amount is established:

**(i)** The amount of the accounts for which there is no loss or damage;

**(ii)** The amount of the accounts that you are able to re-establish or collect;

**(iii)** An amount to allow for probable bad debts that you are normally unable to collect; and

**(iv)** All unearned interest and service charges.

**(10)** "Stock" you have sold but not delivered at the selling price less discounts and expenses you otherwise would have had.

**(11)** "Finished stock" you manufactured at selling price less discounts and expenses you otherwise would have had.

**(12)** Personal Property in Transit (other than "stock" you have sold) at the amount of invoice, including your prepaid or advanced freight charges and other charges which may have accrued or become legally due since the shipment. If you have no invoice, actual cash value will apply.

**(13)** Precious metals, such as gold, silver and platinum, at the average market cost of replacements on the date of loss, or the actual cost of the replacement, if less.

**(14)** "Fine Arts"

We will pay the lesser of:

**(a)** The market value at the time of loss or damage;

**(b)** The reasonable cost of repair or restoration to the condition immediately before the covered loss or damage; or

**(c)** The cost of replacement with substantially identical property.

**e.** Our payment for loss of or damage to personal property of others will only be for the account of the owners of the property. We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

**f.** We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

**g.** We will pay for covered loss or damage within 30 days after we receive a properly completed sworn proof of loss, provided you have complied with all of the terms of this Coverage Form, and

**(1)** We have reached agreement with you on the amount of loss; or

**(2)** An appraisal award has been made.

**h.** In settling covered losses involving a party wall, we will pay a proportion of the loss, to the party wall based on your interest in the wall in proportion to the interest of the owner of the adjoining building. A party wall is a wall that separates and is common to adjoining buildings that are owned by different parties. However, if you elect to repair or replace your building and the owner of the adjoining building elects not to repair or replace that building, we will pay you the full value of the loss to the party wall, subject to all applicable policy provisions including Limits of Insurance, the Valuation and all other provisions of this Loss Payment Condition. Our payment under the provisions of this paragraph does not alter any right of subrogation we may have against any entity, including the owner or insurer of the adjoining building, and does not alter the terms of **SECTION III - COMMON POLICY CONDITIONS, K. Transfer of Rights of Recovery Against Others to Us** in this policy.

**6. Recovered Property**

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, you may retain the property. But then you must return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to **SECTION I - PROPERTY, C the Limits of Insurance**.

**7. Vacancy**

**a. Description of Terms**

**(1)** As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in paragraphs **(a)** and **(b)** below:

**(a)** When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such leased space is vacant when it does not contain



OBCH332709     1304500

enough business personal property to conduct customary "operations".

**(b)** When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

**(i)** Rented to a lessee or sub-lessee and used by the lessee or sub-lessee to conduct its customary operations; and/or

**(ii)** Used by the building owner to conduct customary operation.

**(2)** Buildings under construction or renovation are not considered vacant when customary "operations" cannot be conducted as a direct result of the construction or renovation.

**b. Vacancy Provisions**

If the building or leased space where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

**(1)** We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:

**(a)** Vandalism;

**(b)** Sprinkler leakage due to freezing, unless you have protected the system against freezing;

**(c)** Building glass breakage;

**(d)** Water damage;

**(e)** "Theft"; or

**(f)** Attempted "theft".

**(2)** With respect to Covered Causes of Loss other than those listed in paragraphs **(a), (b), (c), (d), (e) and (f)** above, we will reduce the amount we would otherwise pay for the loss or damage by 15%.

**8. Pair, Sets or Parts**

For pairs or sets, we will either:

**(a)** Repair or replace any part to restore the value and condition of the pair or set to that immediately before the covered loss or damage; or

**(b)** Pay the difference between the value of the pair or set before and after the covered loss or damage.

**(c)** Covered Property consisting of several parts when complete, we will only pay for the value of the lost or damaged part.

**F. Property General Conditions**

**1. Control of Property**

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Form at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

**2. Mortgageholders**

**a.** The term mortgageholder includes trustee.

**b.** We will pay for covered loss of or damage to buildings or structures to each mortgageholder shown in the Declarations in their order of precedence, as interests may appear.

**c.** The mortgageholder has the right to receive loss payment even if the mortgageholder has started foreclosure or similar action on the building or structure.

**d.** If we deny your claim because of your acts or because you have failed to comply with the terms of this Coverage Form, the mortgageholder will still have the right to receive loss payment if the mortgageholder:

**(1)** Pays any premium due under this policy at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgageholder.

All of the terms of this Coverage Form will then apply directly to the mortgageholder.

**e.** If we pay the mortgageholder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Form:

**(1)** The mortgageholder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

**(2)** The mortgageholder's right to recover the full amount of the

mortgageholder's claim will not be impaired.

At our option, we may pay to the mortgageholder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

**f.** If we cancel this policy, we will give written notice to the mortgageholder at least:

   **(1)** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

   **(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

**g.** If we elect not to renew this policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this policy.

**3. No Benefit to Bailee**

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

**4. Policy Period, Coverage Territory**

Under **SECTION I - PROPERTY:**

**a.** We cover loss or damage commencing:

   **(1)** During the policy period shown in the Declarations; and

   **(2)** Within the coverage territory or, with respect to property "in transit", while it is between points in the coverage territory.

**b.** The coverage territory is:

   **(1)** The United States of America (including its territories and possessions);

   **(2)** Puerto Rico; and

   **(3)** Canada.

**5. Protective Devices**

**a.** If you received a discount to the property premium of this policy because of the existence of one of the following protective devices, you are required to maintain that protective device. Existence of an applicable protective devices credit can be found on the Declarations Page.

**b.** Protective devices include Automatic Sprinkler Systems including related supervisory services, Automatic Fire Alarms and Central Station Security Alarms.

**c.** We will not pay for loss or damage caused by a Covered Cause of Loss which a device is intended to protect against if you:

   **(1)** Knew of any suspension or impairment in any protective device and failed to notify us of that fact; or

   **(2)** Failed to maintain any protective device over which you had control in complete working order.

   If part of an Automatic Sprinkler System is shut off due to breakage, leakage, freezing conditions or opening of sprinkler heads, notification to us will not be necessary if you can restore full protection within 48 hours.

**6. Increase in Hazard**

We will not pay for loss or damage when there has been a material increase in hazard that is within your knowledge or control. This condition applies to any and all portions of a claim.

**G. Property Definitions**

**1.** "Accident"

**a.** "Accident" means a fortuitous event that causes direct physical damage to "covered equipment". The event must be one of the following:

   **(1)** Mechanical breakdown, including rupture or bursting caused by centrifugal force;

   **(2)** Artificially generated electrical current, including electric arcing, that disturbs electrical devices, appliances or wires;

   **(3)** Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control;

   **(4)** Loss or damage to steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment; or

   **(5)** Loss or damage to hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment.

**b.** None of the following is an "accident":

   **(1)** Defect, programming error, programming limitation, computer virus, malicious code, loss of data, loss of access, loss of use, loss of functionality or other condition within

OBCH332709    1304500

or involving data or "media" of any kind; or

**(2)** Misalignment, miscalibration, tripping off-line, or any condition which can be corrected by resetting, tightening, adjusting or cleaning, or by the performance of maintenance.

However, if an "accident" results, we will pay for the resulting loss, damage or expense caused by that "accident".

**2.** "Antique" or "antiques" means an object having value because its:

**a.** Craftsmanship is in the style or fashion of former times; and

**b.** Age is 100 years old or older.

**3.** "Cloud computing services" means professional, on-demand, self-service data storage or data processing services provided through the Internet or over telecommunications lines. This includes services known as IaaS (infrastructure as a service), PaaS (platform as a service), Saas (software as a service) and NaaS (network as a service). This includes business models know as public clouds, community clouds and hybrid clouds. "Cloud computing services" include private clouds if such services are owned and operated by a third party.

**4.** "Computer equipment" means:

**a.** "Hardware" and related component parts. Component parts include but are not limited to modems, routers, printers, keyboards, monitors, and scanners;

**b.** "Software"; and

**c.** "Protection and control equipment".

"Computer equipment" does not mean "Computer equipment" used to operate production-type machinery or equipment.

**5.** "Computer hacking" means an unauthorized intrusion by an individual or group of individuals, whether employed by you or not, into "hardware" or "software", a Web site, or a computer network and that results in but is not limited to:

**a.** Deletion, destruction, generation, or modification of "software";

**b.** Alteration, contamination, corruption, degradation, or destruction of the integrity, quality or performance of "software";

**c.** Observation, scanning, or copying of "electronic data", "programs and applications", and "proprietary programs";

**d.** Damage, destruction, inadequacy, malfunction, degradation, or corruption of any "hardware" or "media" used with "hardware"'; or

**e.** Denial of access to or denial of services from "hardware", "software", computer network, or Web site including related "software".

**6.** "Computer program" means a set of related electronic instructions, which direct the operation and function of a computer or devices connected to it, which enable the computer or devices to receive, process, store or send "electronic data".

**7.** "Computer Virus" means the introduction into "hardware", "software", computer network, or Web site of any malicious, self-replicating electronic data processing code or other code and that is intended to result in, but is not limited to:

**a.** Deletion, destruction, generation, or modification of "software";

**b.** Alteration, contamination, corruption, degradation, or destruction of the integrity, quality, or performance of "software";

**c.** Damage, destruction, inadequacy, malfunction, degradation, or corruption of any "hardware" or "media" used with "hardware"; or

**d.** Denial of access to or denial of services from "hardware", "software", computer network, or Web site including related "software".

**8.** "Counterfeit money" means an imitation of "money" that is intended to deceive and to be taken as genuine.

**9.** "Covered equipment" means Covered Property which, during normal usage, operates under vacuum or pressure, other than the weight of its contents, or that generates, transmits or utilizes energy.

"Covered equipment" may utilize conventional design and technology or new or newly commercialized design and technology.

"Covered equipment" does not include:

**a.** Structure, foundation, cabinet or compartment;

**b.** Insulating or refractory material;

**c.** Sewer piping, buried vessels or piping, or piping forming a part of a sprinkler or fire suppression system;

**d.** Water piping other than boiler feedwater piping, boiler condensate return piping or

water piping forming a part of a refrigerating or air conditioning system;

**e.** Dragline, excavation equipment or construction equipment;

**f.** Vehicle, meaning any machine or apparatus that is used for transportation or moves under its own power or any equipment mounted on a vehicle. Vehicle includes but is not limited to: car, truck, bus, trailer, train, aircraft, watercraft, forklift, bulldozer, tractor or harvester. However, any property that is stationary, permanently installed at a covered location and that receives electrical power from an external power supplier will not be considered a vehicle;

**g.** Equipment manufactured by you for sale or

**h.** Satellite, spacecraft or any equipment mounted on a satellite or spacecraft.

**10.** "Data" means a representation of information, knowledge, facts, concepts or instructions which are being processed or have been processed in "computer equipment".

**11.** "Data records" means files, documents and information in an electronic format and that are stored within "electronic data".

**12.** "Denial of service attack" means the malicious direction or a high volume of worthless inquiries to website or e-mail destinations, effectively denying or limiting legitimate access regardless of whether or not damage to "computer equipment" results.

**13.** "Dependent property" or "dependent properties" means the property owned by others whom you depend upon to:

**a.** Deliver materials or services to you or to others for your account. But services do not mean water supply services, wastewater removal services, communication supply services or power supply services;

**b.** Accept your products or services;

**c.** Manufacture products for delivery to your customers under contract of sale; or

**d.** Attract customers to your business.

The "dependent property" must be located in the coverage territory of this Coverage Form.

**14.** "Discover" or "Discovered" means:

**a.** The time when you first become aware of facts which would cause a reasonable person to assume that a loss of a type covered by this policy has been or will be

incurred, regardless of when the act or acts causing or contributing to such loss occurred, even though the exact amount or details may not be known.

**b.** "Discover" or "Discovered" also means the time when you first receive notice of an actual or potential claim in which it is alleged that you are liable to a third party under circumstances which, if true, would constitute a loss under this policy.

**15.** "Electronic circuitry" means microelectronic components, including but not limited to circuit boards, integrated circuits, computer chips and disk drives.

**16.** "Electronic circuitry impairment"

**a.** "Electronic circuitry impairment" means a fortuitous event involving "electronic circuitry" within "covered equipment" that causes the "covered equipment" to suddenly lose its ability to function as it had been functioning immediately before such event. This definition is subject to the conditions specified in **b.**, **c.** and **d.** below.

**b.** We shall determine that the reasonable and appropriate remedy to restore such "covered equipment's" ability to function is the replacement of one or more "electronic circuitry" components of the "covered equipment."

**c.** The "covered equipment" must be owned or leased by you, or operated under your control.

**d.** None of the following is an "electronic circuitry impairment":

**(1)** Any condition that can be reasonably remedied by:

**(a)** Normal maintenance, including but not limited to replacing expendable parts, recharging batteries or cleaning;

**(b)** Rebooting, reloading or updating software or firmware; or

**(c)** Providing necessary power or supply.

**(2)** Any condition caused by or related to:

**(a)** Incompatibility of the "covered equipment" with any software or equipment installed, introduced or networked within the prior 30 days; or

**(b)** Insufficient size, capability or capacity of the "covered equipment."

The Hanover Insurance Group™

OBCH332709     1304500

(3) Exposure to adverse environmental conditions, including but not limited to change in temperature or humidity, unless such conditions result in an observable loss of functionality. Loss of warranty shall not be considered an observable loss of functionality.

**17.** "Electronic data" means files, documents, information and "programs and applications" in an electronic format and that are stored on "media".

**18.** "Electronic Vandalism" means "computer hacking", "computer virus" or a "denial of service attack". "Electronic vandalism" does not include the "theft" of any property or services.

**19.** "Employee" or "employees" means:

**a.** Any natural person or persons:

(1) While in your service and for 30 days after termination of service; and

(2) Who you compensate directly by salary, wages or commissions; and

(3) Who you have the right to direct and control while performing services for you;

**b.** Any natural person who is furnished temporarily to you:

(1) To substitute for a permanent employee, as defined in paragraph **a.** above, who is on leave; or

(2) To meet seasonal or short-term workload conditions;

**c.** Any natural person or persons who is leased to you under a written agreement between you and a labor leasing firm, to perform duties related to the conduct of your business, but does not mean a temporary "employee" as defined in paragraph **b.** above;

**d.** Any natural person who is a former "employee", partner, "manager", director or trustee retained as a consultant while performing services for you; or

**e.** Any natural person who is a guest student or intern pursuing studies or duties, excluding, however, any such person while having care and custody or property outside the described premises;

**f.** Any natural person who is:

(1) A trustee, officer, employee, administrator or manager, except an administrator or manager who is an independent contractor, of any "employee benefit plan"; and

(2) A director or trustee of yours while that person is engaged in handling "funds" or "other property" of any "employee benefit plan";

"Employee" does not mean any agent, broker, factor, commission merchant, consignee, independent contractor or representative of the same general character not specified in paragraph **14.** of this section.

**20.** "Financial institution" means:

**a.** With regard to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverage, s. Money and Securities**:

(1) A bank, savings bank, savings and loan association, trust company, credit union or similar depository institution; or

(2) An insurance company.

**b.** **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverage, hh. Computer and Funds Transfer Fraud**:

(1) A bank, savings bank, savings and loan association, trust company, credit union or similar depository institution;

(2) An insurance company; or

(3) A stock brokerage firm or investment company.

**c.** Other than **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, s. Money and Securities** and **hh. Computer and Funds Transfer Fraud**, any financial institution.

**21.** "Fine arts" means paintings, etchings, pictures, tapestries, rare art glass, art glass windows, valuable rugs, statuary, sculptures, "antique" jewelry, bric-a-brac, porcelains and similar property of rarity, historical value or artistic merit.

**22.** "Finished stock" means stock you have manufactured. "Finished stock" also includes whiskey and alcoholic products being aged.

"Finished stock" does not include "stock" you have manufactured that is held for sale on the premises of any retail outlet.

**23.** "Flood" means a general and temporary condition of partial or complete inundation of normally dry land areas due to:

**a.** Surface water or waves, tides, tidal waves, tsunami, overflow of any body of water or their spray, all whether driven by wind or not (including storm surge);

**b.** The unusual or rapid accumulation of runoff of surface waters from any source;

**c.** Mudslides or mudflows which are caused by "flood" water. A mudslide or mudflow involves a river of liquid and flowing mud on the surface of normally dry land areas as when earth is carried by a current of water and deposited along the path of the current.

**d.** The release of water impounded by a dam, levee, dike, seawall or "flood" control device, whether driven by wind or not (including storm surge).

When a "flood" is a continuous or protracted event it will constitute a single "flood" occurrence.

**24.** "Forgery" means the signing of the name of another person or organization with intent to deceive; it does not mean a signature which consists in whole or in part of one's own name signed with or without authority, in any capacity, for any purpose.

**25.** "Fraudulent instruction" means:

**a.** An electronic, telegraphic, cable, teletype, tele facsimile or telephone instruction which purports to have been transmitted by you, but which was in fact fraudulently transmitted by someone else without your knowledge or consent;

**b.** A written instruction (other than those described in **SECTION I - PROPERTY**, **A. Coverage**, **5. Additional Coverages**, **k. Forgery or Alteration**) issued by you, which was forged or altered by someone other than you without your knowledge or consent or which purports to have been issued by you, but was in fact fraudulently issued without your knowledge or consent.

**26.** "Funds" means "money" and "securities".

**27.** "Fungi" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by "fungi".

**28.** "Hardware" means a network of electronic machine components (microprocessors) capable of accepting instructions and information, processing the information according the instructions, and producing desired results. "Hardware" includes but is not limited to:

**a.** Mainframe and mid-range computers and servers;

**b.** Personal computers and workstations;

**c.** Portable electronic devices. Portable electronic devices include laptops, tablets, e-readers, smartphones or other lightweight, hand-held or wearable devices capable of storing, retrieving and processing data; and

**d.** Peripheral data processing equipment, including but not limited to printers, keyboards, monitors, and modems.

"Hardware" does not mean electronic items that are not similar to the items listed in **a.**, **b.**, **c.** and .**d.** above. "Hardware" does not include:

**e.** Diagnostic equipment;

**f.** Electronic items that contain a computer to perform functions other than "hardware"; and

**g.** Peripheral data processing equipment valued more than the "hardware" itself.

**29.** "Hazardous substance" means any substance that is hazardous to health or has been declared to be hazardous to health by a governmental agency.

**30.** "In transit" means in the course of shipment from or to the premises shown in the Declarations. It includes such shipments while temporarily stopped or delayed, incidental to the delivery.

**31.** "Manager" or "managers" means a person or persons serving in a directorial capacity for a limited liability company (LLC).

**32.** "Media" means an instrument that is used with "hardware" and on which "electronic data", "programs and applications", and "proprietary programs" can be recorded or stored. "Media" includes, but is not limited to, films, tapes, cards, discs, drums, cartridges, cells, DVDs, CD-ROMs and other portable data devices.

**33.** "Member" or "Members" means an owner of a limited liability company represented by its membership interest, who also may serve as a "manager".

**34.** "Messenger" means you, or a relative of yours, or any of your partners or "members", or any "employee" while having care and custody of property away from the described premises.

**35.** "Money" means:

**a.** Currency, coins and bank notes in current use and having a face value;

**b.** Traveler's checks and money orders held for sale to the public; and

**c.** In addition, includes:

**(1)** For the purposes of **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, p. Employee Theft including ERISA Compliance** and **k. Forgery or Alteration,** deposits in your account at any "financial institution"; and

**(2)** For the purposes of **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverage hh. Computer and Funds Transfer Fraud,** deposits in your account at a "financial institution" as defined in **SECTION I - PROPERTY, G. Property Definitions** , paragraph **19.b..**

**36.** "One equipment breakdown" means: If an initial "accident" or "electronic circuitry impairment" causes other "accidents" or "electronic circuitry impairments," all will be considered "one equipment breakdown." All "accidents" or "electronic circuitry impairments" that are the result of the same "accident" or "electronic circuitry impairment" will be considered "one equipment breakdown."

**37.** "Operations" means your business activities occurring at the described premises.

**38.** "Other property" means tangible property other than "money" and "securities" that has intrinsic value. "Other property" does not include computer programs, "electronic data" or any property specifically excluded under this Coverage Form.

**39.** "Payment processing device" means any electronic device used to process credit, debit or charge card transactions, including but not limited to, digital pen pad devices, PIN pad devices, Automatic Teller Machines (ATMs), credit card processing machines.

**40.** "Payroll expense":

**a.** Means payroll expenses for all your "employees" except:

**(1)** Officers;

**(2)** Executive;

**(3)** Department Managers;

**(4)** "Employees" under contract; and

**(5)** Additional Exemptions shown in the Declarations as:

**(a)** Job classifications; or

**(b)** "Employees".

**b.** Includes:

**(1)** Payroll;

**(2)** Employee Benefits, if directly related to payroll;

**(3)** FICA payments you pay;

**(4)** Union dues you pay; and

**(5)** Workers' Compensation premiums.

**41.** "Period of Restoration"

**a.** Means the period of time that:

**(1)** Begins:

**(a)** After the number of hours shown as the Business Income Waiting Period in the Declarations after the time of direct physical loss or damage for Business Income Coverage; or

**(b)** Immediately after the time of direct physical loss or damage for Extra Expense Coverage;

caused by or resulting from any Covered Cause of Loss at the described premises; and

**(2)** Ends on the earlier of:

**(a)** The date when the property at the described premises should be repaired, rebuilt or replaced (to a condition permitting occupancy) with reasonable speed and similar quality; or

**(b)** The date when business is resumed at a new permanent location; or

**(c)** Exhaustion of the number of consecutive months as shown on the Policy Declarations Page.

**b.** Does not include any increased period required due to the enforcement of any ordinance or law that:

**(1)** Regulates the construction, use or repair, or requires the tearing down of any property; or

**(2)** Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of "pollutants".

The expiration date of this policy will not cut short the "period of restoration".

**42.** "Perishable goods" means personal property:

**a.** Maintained under controlled temperature or humidity conditions for preservation; and

**b.** Susceptible to loss or damage if the controlled temperature or humidity conditions change.

43. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

44. "Programs and applications" means operating programs and applications that you purchase and that are:

   **a.** Stored on "media"; or

   **b.** Pre-installed and stored in "hardware".

   Applications include, but are not limited to, programs for word processing, spreadsheet calculations, and graphic design.

45. "Proprietary programs" means proprietary operating programs and applications that you developed or that you had developed specifically for use in your "operations" and that are:

   **a.** Stored on "media"; or

   **b.** Installed and stored in "hardware".

46. "Protection and control equipment" means:

   **a.** Air conditioning or other cooling equipment used exclusively in the operation of the "hardware";

   **b.** Fire protection equipment used for the protection of the "hardware", including automatic and manual fire suppression equipment and smoke and heat detectors; and

   **c.** Uninterruptible power supply system, line conditioner, and voltage regulator.

47. "Rental Value" means Business Income that consists of:

   **a.** New Income (Net Profit or Loss before income taxes) that would have been earned or incurred as rental income from tenant occupancy of the premises described in the Declarations as furnished and equipped by you, including fair rental value of any portion of the described premises which is occupied by you; and

   **b.** Continuing normal operating expenses incurred in connection with that premises, including:

   **(1)** Payroll; and

   **(2)** The amount of charges which are the legal obligation of the tenant(s) but would otherwise be your obligations.

48. "Securities" means negotiable and non-negotiable instruments or contracts representing either "money" or "other property" and includes:

   **a.** Tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and

   **b.** Evidences of debt issued in connection with credit or charge cards, which cards are not issued by you;

   but does not include "money".

49. "Software" means;

   **a.** "Media";

   **b.** "Electronic Data";

   **c.** "Programs and applications"; and

   **d.** "Proprietary programs".

50. "Specified Causes of Loss" means the following:

   Fire; lightning; explosion, windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

   **a.** Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This cause of loss does not include:

   **(1)** The cost of filling sinkholes; or

   **(2)** Sinking or collapse of land into man-made underground cavities.

   **b.** Falling objects does not include loss of or damage to:

   **(1)** Personal property in the open; or

   **(2)** The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

   **c.** Water damage means

   **(1)** Accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of any part of a system or appliance (other than a sump system including its related equipment and parts) containing water or steam; and

   **(2)** Accidental discharge or leakage of water or waterborne material as the direct result of the breaking apart or cracking of a water or sewer pipe that is located off the described premises and is part of a municipal potable water supply system or municipal

sanitary sewer system, if the breakage or cracking is caused by wear or tear.

But water damage does not include loss or damage otherwise excluded in **SECTION I - PROPERTY, B. Exclusions,** paragraph **1. g. Water.**. Therefore, for example, there is no coverage in the situation in which discharge or leakage of water results from breaking apart of cracking of a pipe which was caused by or related to weather-induced "flood" water, even if wear and tear contributed to the breakage or cracking. As another example, and also in accordance with the terms of the Water Exclusion, there is no coverage for loss or damage caused by or related to weather-induced "flood" water which follows or is exacerbated by pipe breakage or cracking attributable to wear and tear.

To the extent that accidental discharge or leakage of water falls within the criteria set forth in paragraphs **(1)** or **(2)** above of this definition of "specified causes of loss", such water is not subject to the provisions of **SECTION I - PROPERTY, B. Exclusions,** paragraph **1., g. Water,** which preclude coverage for surface water or water under the ground surface.

51. "Stock" means merchandise held in storage or for sale, raw materials and in process or finished goods, including supplies used in their packing or shipping.

52. "Suspension" means:

   a. The partial slowdown or complete cessation of your business activities; or

   b. Part or all of the described premises is rendered untenantable, if coverage for Business Income applies.

53. "Telephonic services" means use of your:

   a. Telephone services;

   b. Telephone credit cards; or

   c. Telephone access cards.

54. "Theft" means the unlawful taking of property to the deprivation of the Insured.

55. "Transfer account" means an account maintained by you at a financial institution from which you can initiate the transfer, payment or delivery of "money" and "securities" by means of:

   a. Electronic, telegraphic, cable, teletype, telefacsimile or telephone instructions communicated directly through an electronic funds transfer system; or

   b. Written instructions (other than those described in **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, k. Forgery or Alteration**) establishing the conditions under which such transfers are to be initiated by such financial institution through an electronic funds transfer system.

56. "Valuable papers and records" means:

   a. Inscribed, printed or written:

      **(1)** Documents;

      **(2)** Manuscripts; and

      **(3)** Records;

      including abstracts, books, deeds, drawings, films, maps or mortgages;

   b. If you are a Printer, Publisher or Graphic Artist by trade, "valuable papers and records" means negatives, positives, artwork, separations, plates, dies, molds, forms, stock manuscripts and other similar property usual to the graphic arts, printing or publishing industry, including those which exist on electronic or magnetic "media", other than prepackaged software programs.

   But "valuable papers and records" does not mean "money" or "securities".

## SECTION II - LIABILITY

### A. Coverages

#### 1. Business Liability

   a. We will pay those sums the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury", to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" or any offense and settle any claim or "suit" that may result. But:

      **(1)** The amount we will pay for damages is limited as described in **SECTION II - LIABILITY, D - Liability and Medical Expenses Limits of Insurance;** and

      **(2)** Our right and duty to defend end when we have used up the applicable Limit of Insurance in the payment of

judgments, settlements or medical expenses.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under **f. Coverage Extension - Supplementary Payments**.

**b.** This insurance applies:

**(1)** To "bodily injury" and "property damage" only if:

**(a)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(b)** The "bodily injury" or "property damage" occurs during the policy period; and

**(c)** Prior to the policy period, no insured listed under **C. Who Is An Insured**, paragraph **1.** and no "employee" authorized by you to give or receive notice of an "occurrence" or claim knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**(2)** To "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under **C. Who Is An Insured,** paragraph **1.** or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under **C. Who Is An Insured,** Paragraph **1.** or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all or any part of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**f. Coverage Extension - Supplementary Payments**

**(1)** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**(a)** All expenses we incur.

**(b)** Up to $2500 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which Business Liability Coverage for "bodily injury" applies. We do not have to furnish these bonds.

**(c)** The cost of bonds to release attachments, but only for bond amounts within our Limit of Insurance. We do not have to furnish these bonds.

**(d)** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $500 a day because of time off from work.

**(e)** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

**(f)** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the Limit of Insurance, we will not pay any

prejudgment interest based on that period of time after the offer.

**(g)** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within our Limit of Insurance.

These payments will not reduce the Limit of Insurance described in **SECTION II - LIABILITY, D. Liability and Medical Expenses Limits of Insurance.**

**(2)** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**(a)** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**(b)** This insurance applies to such liability assumed by the insured;

**(c)** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**(d)** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**(e)** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**(f)** The indemnitee:

**(i)** Agrees in writing to:

**1)** Cooperate with us in the investigation, settlement or defense of the "suit";

**2)** Immediately send us copies of any demands, notices, summonses or

legal papers received in connection with the "suit";

**3)** Notify any other insurer whose coverage is available to the indemnitee; and

**4)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

**(ii)** Provides us with written authorization to:

**1)** Obtain records and other information related to the "suit"; and

**2)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of **SECTION II - LIABILITY, B. Exclusions, 1. Applicable to Business Liability Coverage, b. Contractual Liability,** paragraph **(2),** such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

**(g)** We have used up the applicable Limit of Insurance in the payment of judgments or settlements; or

**(h)** The conditions set forth above, or the terms of the agreement described in Paragraph **(2)(f)** above are no longer met.

**2. Medical Expenses**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(a)** The accident takes place in the "coverage territory" and during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable Limits of Insurance as described in **D. Liability and Medical Expenses Limits of Insurance.**

**c.** We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

## B. Exclusions

**1. Applicable To Business Liability Coverage**

This insurance does not apply to:

**a. Expected or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

**(4)** The supervision, hiring, employment, training or monitoring of others by that insured; or

**(5)** Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in paragraphs **(1)**, **(2)** or **(3)** above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

For the purpose of this exclusion, permitting a person to bring alcoholic beverages on your premises for consumption on your premises, whether or



OBCH332709     1304500

not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation and Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar local, state, federal or foreign law or regulation.

**e. Employer's Liability**

"Bodily Injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of paragraph **(1)** above.

This exclusion applies:

**(3)** Whether the insured may be liable as an employer or in any other capacity; and

**(4)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f. Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)** At or from any premises, site or location, which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

**(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

**(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

**(i)** Any insured; or

**(ii)** Any person or organization for whom you may be legally responsible; or

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

**(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions

necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

**(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto or Watercraft**

**(1) Unmanned Aircraft**

"Bodily injury", "property damage" or "personal and advertising injury" arising out of the ownership, maintenance, use or entrustment to others of any aircraft that is an "unmanned aircraft". Use includes operation and "loading and unloading".

This paragraph **g. (1)** applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" or the offense which caused the "personal and advertising injury" involved the ownership, maintenance, use or entrustment to others of any aircraft that is an "unmanned aircraft".

This paragraph **g. (1)** does not apply to:

**(a)** The use of another's advertising idea in your "advertisement"; or

**(b)** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**(2) Aircraft (Other Than Unmanned Aircraft), Auto or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft (other than "unmanned aircraft"), "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

OBCH332709     1304500

This paragraph **g. (2)** applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" or the offense which caused the "personal and advertising injury" involved the ownership, maintenance, use or entrustment to others of any aircraft (other than "unmanned aircraft"), "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This paragraph **g. (2)** does not apply to:

**(a)** A watercraft while ashore on premises you own or rent;

**(b)** A watercraft you do not own that is:

**(i)** Less than 51 feet long; and

**(ii)** Not being used to carry persons or property for a charge;

**(c)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(d)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft (other than "unmanned-aircraft") or watercraft; or

**(e)** "Bodily injury" or "property damage" arising out of:

**(i)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance or motor vehicle registration law where it is licensed or principally garaged; or

**(ii)** The operation of any of the following machinery or equipment:

**1)** Cherry pickers and similar devices mounted on automobile or truck

chassis and used to raise or lower workers; and

**2)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well-servicing equipment; or

**(f)** An aircraft (other than "unmanned aircraft") that is:

**(i)** Chartered by, loaned to, or hired by you with a paid crew; and

**(ii)** Not owned by any insured.

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition or stunting activity.

**i. War**

"Bodily injury", "property damage" or "personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by government authority in hindering or defending against any of these.

**j. Professional Services**

"Bodily injury", "property damage", "personal and advertising injury" caused by the rendering of or failure to render any professional service, advice or instruction:

**(1)** By you; or

**(2)** On your behalf; or

**(3)** From whom any of you assumed liability by reason of a contract or agreement,

regardless of whether any such service, advice or instruction is ordinary to any insured's profession.

Professional services include but are not limited to:

**(4)** Legal, accounting or advertising services, notary, title abstract, tax preparation, real estate, stockbroker, publishing, architects or insurance services;

**(5)** Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications;

**(6)** Supervisory, inspection or engineering services;

**(7)** Medical, surgical, dental, x-ray or nursing services treatment, advice or instruction;

**(8)** Any health or therapeutic service treatment, advice or instruction;

**(9)** Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement or personal grooming, including use or exposure to any sun lamp, tanning booth or other similar appliance;

**(10)** Optometry or optical or hearing aid services including the prescribing, preparation, fitting, demonstration or distribution of ophthalmic lenses and similar products or hearing aid devices;

**(11)** Body piercing services;

**(12)** Services in the practice of pharmacy;

**(13)** Management, Human Resource, Testing, Media or Public Relations consulting services.

This exclusion applies even if a claim alleges negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering of or failure to render any professional service.

**k.  Damage to Property**

"Property damage" to:

**(1)** Property you own, rent or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractor or subcontractor working directly or indirectly on your behalf is performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate Limit of Insurance applies to **Damage to Premises Rented to You** as described in **SECTION II - LIABILITY, D. Liability and Medical Expenses Limit Of Insurance.**

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products - completed operations hazard".

**l.  Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**m.  Damage to Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products - completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which



OBCH332709    1304500

the damage arises was performed on your behalf by a subcontractor.

**n. Damage to Impaired Property or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**o. Recall of Products, Work or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**p. Aircraft Products, Grounding and Testing**

**(1)** "Aircraft products " or reliance upon any representation or warranty made with such product;

**(2)** The "grounding" of any aircraft; or

**(3)** The "testing" of any aircraft.

For purposes of this Exclusion, the following definitions apply:

**(4)** "Aircraft Products" means:

**(a)** Aircraft, including but not limited to missiles, spacecraft, or any other aircraft goods or products you manufacture, sell, handle or distribute;

**(b)** Aircraft and any ground support or control equipment used in connection therewith;

**(c)** Any product provided by the insured and installed or used in connection with any aircraft;

**(d)** Any tooling used in respect to any aircraft;

**(e)** Training and navigational aids, instructions, manuals, blueprints, engineering or other data in connection with any aircraft;

**(f)** Any advice, service or labor supplied with any aircraft; or

**(g)** Services you or others trading under your name provide or recommend for use in the manufacture, repair, operation, maintenance or use of any aircraft.

**(5)** "Grounding" means the withdrawal of one or more aircraft from flight operations or the imposition of speed, passenger or load restrictions on such aircraft, due to the existence of or alleged or suspected existence of any defect, fault or condition:

**(a)** In such aircraft or any part sold, handled or distributed by you or that is manufactured, assembled or processed by any other person or organization according to your specifications, plans, suggestions, orders or drawings; or

**(b)** With tools, machinery or other equipment furnished to such persons or organizations by you;

whether such withdrawn aircraft are owned or operated by the same or different persons or organizations.

"Grounding" shall be deemed to commence on the date of an "occurrence" which discloses the necessity of "grounding" or on the date an aircraft is first withdrawn from service because of such condition, whichever comes first.

**(6)** "Testing" means examination, observation, evaluation or measuring of the performance of "aircraft products", while either in the air or on the ground.

**q. Distribution of Material in Violation of Statutes**

"Bodily injury", "property damage" or "personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

**(4)** Any other laws, statutes ordinances or regulations, that address, prohibit, or limit the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

**r. Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

Damages arising out of:

**(1)** Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

**(2)** The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in paragraphs **(1)** or **(2)** above.

However, unless paragraph **(1)** above applies, this exclusion does not apply to damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing

devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

Exclusions **c., d., e., g., h.,** and **k., l., m., n.** and **o.** above do not apply to damage to premises while rented to you or temporarily occupied by you with permission of the owner. A separate Damage to Premises Rented to You Limit of Insurance applies to this coverage as described in **SECTION II - LIABILITY, D. Liability and Medical Expenses Limits of Insurance.**

**2. Additional Exclusions Applicable Only to "Personal and Advertising Injury"**

This insurance does not apply to:

**a. Knowing Violation of Rights of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge of Falsity**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior to Policy Period**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.



OBCH332709     1304500

**f. Breach of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality or Performance of Goods-Failure to Conform to Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**i. Insureds in Media and Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of web-sites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to **F. Liability and Medical Expenses Definitions, 15. "Personal and Advertising Injury"**, paragraphs **a.**, **b.** and **c.**

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself considered the business of advertising, broadcasting, publishing or telecasting.

**j. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**k. Pollution-Related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean-up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**l. Electronic Chatrooms or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns or over which the insured exercises control.

**m. Infringement of Copyright, Patent, Trademark or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**n. Unauthorized Use of Another's Name of Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatags, or any other similar tactics to mislead another's potential customers.

**3. Additional Exclusions Applicable to Medical Expenses Coverage Only**

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury on Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers' Compensation and Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for

the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletic Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports or athletic contests.

**f. Products-Completed Operations Hazard**

Included within the "products - completed operations hazard".

**g. Otherwise Excluded**

Otherwise Excluded under **SECTION II - LIABILITY, B. Exclusions, 1. Applicable To Business Liability Coverage.**

**4. Additional Exclusions Applicable To Both Business Liability Coverage and Medical Expenses Coverage:**

**Nuclear Energy Liability Exclusion**

This insurance does not apply:

**(1)** Under **Business Liability Coverage**, to "bodily injury" or "property damage":

**(a)** With respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by the Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

**(b)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which:

**(i)** Any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof; or

**(ii)** The insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**(2)** Under **Medical Expenses Coverage**, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear

material" and arising out of the operation of a "nuclear facility" by any person or organization.

**(3)** Under **Business Liability Coverage**, to "bodily injury" or "property damage" resulting from the "hazardous properties" of the "nuclear material"; if:

**(a)** The "nuclear material":

**(i)** Is at any "nuclear facility" owned by, or operated by or on behalf of, an insured; or

**(ii)** Has been discharged or dispersed therefrom;

**(b)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

**(c)** The "bodily injury" or "property damage" arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility"; but if such facility is located within the United States of America, its territories or possessions or Canada, this Exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property threat.

**(4)** As used in this exclusion:

**(a)** "By-product material" has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof;

**(b)** "Hazardous properties" include radioactive, toxic or explosive properties;

**(c)** "Nuclear facility" means:

**(i)** Any "nuclear reactor";

**(ii)** Any equipment or device designed or used for:

**1)** Separating the isotopes of uranium or plutonium;

**2)** Processing or utilizing "spent fuel"; or

**3)** Handling, processing or packaging "waste";

**(iii)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the

The **Hanover** Insurance Group

OBCH332709      1304500

custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(iv)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

**(d)** "Nuclear material" means "source material", "special nuclear material" or "by-product material";

**(e)** "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

**(f)** "Property damage" includes all forms of radioactive contamination of property.

**(g)** "Source material" has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof;

**(h)** "Special nuclear material" has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof;

**(i)** "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

**(j)** "Waste" means any waste material:

**(i)** Containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content; and

**(ii)** Resulting from the operation by any person or organization of any "nuclear facility" included under paragraphs **(i)** and **(ii)** of the definition of "nuclear facility".

**C. Who Is An Insured**

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**2.** Each of the following is also an insured:

**a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business ;

**(b)** To the spouse, child, parent, brother or sister of that co-

"employee" as a consequence of paragraph **(1) (a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in paragraphs **(1)(a)** or **(1)(b);** or

**(d)** Arising out of his or her providing or failing to provide professional services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by; or

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee" or "volunteer worker") or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this policy.

**3.** Any organization you newly acquire or form, acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier; and

**b.** Business Liability Coverage does not apply to:

**(1)** "Bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**(2)** "Personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**D. Liability and Medical Expenses Limits of Insurance**

**1.** The Limits of Insurance under **SECTION II - LIABILITY** shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** Subject to the Aggregate Limit identified in paragraph **5.** below, the most we will pay for the sum of all damages because of all:

**a.** "Bodily injury", "property damage" and medical expenses arising out of any one "occurrence"; and

**b.** "Personal and advertising injury" sustained by any one person or organization;

is the Liability And Medical Expenses Limit shown in the Declarations.

**3.** Subject to the Liability And Medical Expenses Limit, the most we will pay for all medical expenses because of "bodily injury" sustained by any one person is the Medical Expenses Limit shown in the Declarations.

**4.** The Damage to Premises Rented to You Limit shown in the Declarations is the most we will pay for damages because of "property damage" to any one premises while rented to you, or temporarily occupied by you with permission of the owner.

**5. Aggregate Limits**

**a.** The most we will pay for:

**(1)** All "bodily injury" and "property damage" that is included in the "products-completed operations hazard" is twice the Liability And Medical Expenses Limit.

**(2)** All:

**(a)** "Bodily injury" and "property damage" except damages because of "bodily injury" and



OBCH332709     1304500

"property damage" included in the "products-completed operations hazard";

**(b)** Plus medical expenses;

**(c)** Plus all "personal and advertising injury" caused by offenses committed;

is twice the Liability And Medical Expenses Limit.

**b.** The Aggregate Limits of Insurance apply separately to each of your "locations" owned by or rented to you. "Location" means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

**6.** The Limits of Insurance of **SECTION II - LIABILITY** apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**E. Liability and Medical Expenses General Conditions**

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties in the Event of Occurrence, Offense, Claim or Suit**

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

**(1)** How, when and where the "occurrence" or offense took place;

**(2)** The names and addresses of any injured persons and witnesses; and

**(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation, or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization that may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this policy unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable Limit of Insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Separation of Insureds**

Except with respect to the Limits of Insurance under **SECTION II - LIABILITY,** and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**F. Liability and Medical Expenses Definitions**

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

   **a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

   **b.** Regarding websites, only that part of a website that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

2. "Auto" means:

   **a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

   **b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

   However, "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time. "Bodily injury" includes mental anguish or other mental injury resulting from "bodily injury".

4. "Coverage territory" means:

   **a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

   **b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

   **c.** All other parts of the world if the injury or damage arises out of:

      **(1)** Goods or products made or sold by you in the territory described in paragraph **a.** above;

      **(2)** The activities of a person whose home is in the territory described in paragraph **a.** above, but is away for a short time on your business; or

      **(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

   provided the insured's responsibility to pay damages is determined in a "suit" on the merits in the territory described in paragraph **a.** above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   **a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   **b.** You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work", or your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

   **a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   **b.** A sidetrack agreement;

   **c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   **d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   **e.** An elevator maintenance agreement;

   **f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization.

The **Hanover**
Insurance Group™

OBCH332709          1304500

Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road beds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

    (a) Preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; or

    (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

    (3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in paragraph **(2)** above and supervisory, inspection or engineering services.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

    **a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

    **b.** While it is in or on an aircraft, watercraft or "auto"; or

    **c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

    **a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

    **b.** Vehicles maintained for use solely on or next to premises you own or rent;

    **c.** Vehicles that travel on crawler treads;

    **d.** Vehicles, whether self-propelled or not, on which are permanently mounted:

        (1) Power cranes, shovels, loaders, diggers or drills; or

        (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

    **e.** Vehicles not described in paragraphs **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

        (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

        (2) Cherry pickers and similar devices used to raise or lower workers;

    **f.** Vehicles not described in paragraphs **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

    (1) Equipment designed primarily for:

        (a) Snow removal;

        (b) Road maintenance, but not construction or resurfacing; or

        (c) Street cleaning;

    (2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

    (3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility

law or other motor vehicle insurance law in the state where they are licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products - completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

**(a)** When all of the work called for in your contract has been completed.

**(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

**(c)** When that part of the work done at the job site has been put to its intended use by any other person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

The "bodily injury" or "property damage" must occur away from premises you own or rent, unless your business includes the selling, handling or distribution of "your product" for consumption on premises you own or rent.

**b.** Does not include "bodily injury" or "property damage" arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured; or

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials.

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

   **a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

   **b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Unmanned aircraft" means an aircraft that is not:

   **a.** Designed;

   **b.** Manufactured; or

   **c.** Modified after manufacture;

   to be controlled directly by a person from within or on the aircraft.

21. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

22. "Your product":

   **a.** Means:

   **(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

   **(a)** You;

   **(b)** Others trading under your name; or

   **(c)** A person or organization whose business or assets you have acquired; and

   **(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

   **b.** Includes:

   **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

   **(2)** The providing of or failure to provide warnings or instructions.

   **c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

23. "Your work":

   **a.** Means:

   **(1)** Work or operations performed by you or on your behalf; and

   **(2)** Materials, parts or equipment furnished in connection with such work or operations.

   **b.** Includes:

   **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

   **(2)** The providing of or failure to provide warnings or instructions.

**SECTION III - COMMON POLICY CONDITIONS (APPLICABLE TO SECTION I - PROPERTY AND SECTION II - LIABILITY)**

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   **a.** 5 days before the effective date of cancellation if any one of the following conditions exists at any building that is Covered Property in this policy:

   **(1)** The building has been vacant or unoccupied 60 or more consecutive days. This does not apply to:

   **(a)** Seasonal unoccupancy; or

   **(b)** Buildings in the course of construction, renovation or addition.

   Buildings with 65% or more of the rental units or floor area vacant or unoccupied are considered unoccupied under this provision.

   **(2)** After damage by a covered cause of loss, permanent repairs to the building:

   **(a)** Have not started, and

   **(b)** Have not been contracted for,

   within 30 days of initial payment of loss.

**(3)** The building has:

    **(a)** An outstanding order to vacate;

    **(b)** An outstanding demolition order; or

    **(c)** Been declared unsafe by governmental authority.

**(4)** Fixed and salvageable items have been or are being removed from the building and are not being replaced. This does not apply to such removal that is necessary or incidental to any renovation or remodeling.

**(5)** Failure to:

    **(a)** Furnish necessary heat, water, sewer service or electricity for 30 consecutive days or more, except during a period of seasonal unoccupancy; or

    **(b)** Pay property taxes that are owed and have been outstanding for more than one year following the date due, except that this provision will not apply where you are in a bona fide dispute with the taxing authority regarding payment of such taxes.

**b.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium.

**c.** 30 days before the effective date of cancellation if we cancel for any other reason.

**3.** We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

**4.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

**5.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

**6.** If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Concealment, Misrepresentation or Fraud**

This policy is void in any case of fraud by you as it relates to this policy at any time. It is also void if you or any other insured, at any time, intentionally conceals or misrepresents a material fact concerning:

**1.** This policy;

**2.** The Covered Property;

**3.** Your interest in the Covered Property; or

**4.** A claim under this policy.

**D. Examination of Your Books and Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward. We have the right to make copies of these books and records.

**E. Inspections and Surveys**

**1.** We have the right but not the duty to:

    **a.** Make inspections and surveys at any time;

    **b.** Give you reports on the conditions we find; and

    **c.** Recommend changes.

**2.** We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. We do not warrant that conditions:

    **a.** Are safe and healthful; or

    **b.** Comply with laws, regulations, codes or standards.

**3.** Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

**4.** Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**F. Insurance Under Two or More Coverages**

If two or more of this policy's coverages apply to the same loss or damage, you may choose only one of these coverages to apply to that loss.

1. **SECTION I - PROPERTY**, if two or more of this coverage part's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

2. **SECTION II - LIABILITY**, it is our stated intent that the various Coverage Parts, forms, endorsements or policies issued to the named insured by us, or any company affiliated with us, do not provide any duplication or overlap of coverage for the same claim, "suit", "occurrence", offense, accident, "wrongful act" or loss. We will not pay more than the actual amount of the loss or damage.

   If this Coverage Part and any other Coverage Part, form, endorsement or policy issued to the named insured by us, or any company affiliated with us, apply to the same claim, "suit", occurrence, offense, accident, "wrongful act" or loss, the maximum Limit of Insurance under all such Coverage Parts, forms, endorsements or policies combined shall not exceed the highest applicable Limit of Insurance under any one Coverage Part, form, endorsement or policy.

   This condition does not apply to any Excess or Umbrella Policy issued by us specifically to apply as excess insurance over this policy.

**G. Liberalization**

If we adopt any revision that would broaden the coverage under this policy without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this policy.

**H. Other Insurance**

1. **SECTION I - PROPERTY**

   If there is other insurance covering the same loss or damage, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But, we will not pay more than the applicable Limit of Insurance of **SECTION I - PROPERTY.**

2. **SECTION II - LIABILITY**

   If other valid and collectible insurance is available to the insured for a loss we cover under **SECTION II - LIABILITY**, our obligations are limited as follows:

   **a. Primary Insurance**

   This insurance is primary except when paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in paragraph **c.** below.

However, if you agree in a written contract, written agreement, or written permit that the insurance provided to any person or organization included as an Additional Insured under this Coverage Part is primary and non-contributory, we will not seek contribution from any other insurance available to that Additional Insured which covers the Additional Insured as a Named Insured except:

**(1)** For the sole negligence of the Additional Insured; or

**(2)** When the Additional Insured is an Additional Insured under another liability policy.

**b. Excess Insurance**

This insurance is excess over:

**(1)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

   **(a)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

   **(b)** That is Property Insurance for premises rented to you or temporarily occupied by you with permission of the owner;

   **(c)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

   **(d)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to **SECTION II - LIABILITY, Exclusion g. Aircraft, Auto or Watercraft**; and

**(2)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under **SECTION II - LIABILITY** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the

insured's rights against all those other insurers.

**c.** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(1)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(2)** The total of all deductible and self-insured amounts under all that other insurance.

**d.** We will share the remaining loss, if any, with any other insurance that is not described in this provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations for this Coverage.

**e. Method of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable Limit of Insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable Limit of Insurance to the total applicable limits of insurance of all insurers.

**f.** When this insurance is excess, we will have no duty under Business Liability Coverage to defend any claim or "suit" that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so; but we will be entitled to the insured's rights against all those other insurers.

**I. Premiums**

**1.** The first Named Insured shown in the Declarations:

**a.** Is responsible for the payment of all premiums; and

**b.** Will be the payee for any return premiums we pay.

**2.** The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

**3.** With our consent, you may continue this policy in force by paying a continuation premium for each successive one-year period. The premium must be:

**a.** Paid to us prior to the anniversary date; and

**b.** Determined in accordance with paragraph **2.** above.

Our forms then in effect will apply. If you do not pay the continuation premium, this policy will expire on the first anniversary date that we have not received the premium.

**4.** Undeclared exposures or change in your business operation, acquisition or use of locations may occur during the policy period that is not shown in the Declarations. If so, we may require an additional premium. That premium will be determined in accordance with our rates and rules then in effect.

**J. Premium Audit**

**1.** This policy is subject to audit if a premium designated as an advance premium is shown in the Declarations. We will compute the final premium due when we determine your actual exposures.

**2.** Premium shown in this policy as advance premium is a deposit premium only. At the close of each audit period, we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**3.** The first Named Insured must keep records of the information we need for premium computation and send us copies at such times as we may request.

**K. Transfer of Rights of Recovery Against Others to Us**

**1.** Applicable to **SECTION I - PROPERTY** Coverage:

If any person or organization to or for whom we make payment under this policy has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

OBCH332709     1304500

**a.** Prior to a loss to your Covered Property.

**b.** After a loss to your Covered Property only if, at time of loss, that party is one of the following:

**(1)** Someone insured by this insurance;

**(2)** A business firm:

**(a)** Owned or controlled by you; or

**(b)** That owns or controls you; or

**(3)** Your tenant.

You may also accept the usual bills of lading or shipping receipts limiting the liability of carriers.

This will not restrict your insurance.

**2.** Applicable to **SECTION II - LIABILITY** Coverage:

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair such rights. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

We waive any right of recovery we may have against any person or organization with whom you have a written contract, permit or agreement to waive any rights of recovery against such person or organization because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a contract with that person or organization and included in the "products-completed operations hazard".

This condition does not apply to Medical Expenses Coverage.

**L.** **Transfer of Your Rights and Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured. If you die, your rights and duties will be transferred to your legal representative but only while that legal representative is acting within the scope of their duties as your legal representative. Until your legal representative is appointed, anyone with proper temporary custody of your property will have your rights and duties but only with respect to that property.



OBCH332709     1304500

THE ONLY SIGNATURES APPLICABLE TO THIS POLICY ARE THOSE REPRESENTING THE COMPANY NAMED ON THE FIRST PAGE OF THE DECLARATIONS.

**In Witness Whereof,** this company has caused this policy to be signed by its President and Secretary and countersigned on the declarations page, where required, by a duly authorized agent of the company.

John C. Roche
President

Charles Frederick Cronin
Secretary

SIG-1100 11 17                                                                                    Page 1 of 1

**The Hanover**
Insurance Group™

OBCH332709     1304500

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# HIRED AUTO AND NON-OWNED AUTO LIABILITY

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**SCHEDULE**

| Coverage | Additional Premium |
|---|---|
| **A.  Hired Auto Liability** | $ ████████ |
| **B.  Non-owned Auto Liability** | $ ████████ |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A.** Insurance is provided only for those coverages for which a specific premium charge is shown in the Declarations or in the Schedule.

**1.** **Hired Auto Liability**

The insurance provided under Paragraph **A.1. Business Liability** in **Section II - Liability** applies to "bodily injury" or "property damage" arising out of the maintenance or use of a "hired auto" by you or your "employees" in the course of your business.

**2.** **Non-owned Auto Liability**

The insurance provided under Paragraph **A.1. Business Liability** in **Section II - Liability** applies to "bodily injury" or "property damage" arising out of the use of any "non-owned auto" in your business by any person.

**B.** For insurance provided by this endorsement only:

**1.** The exclusions under Paragraph **B.1. Applicable To Business Liability Coverage** in **Section II - Liability,** other than Exclusions **a., b., d., f.** and **i.** and the **Nuclear Energy Liability Exclusion,** are deleted and replaced by the following:

**a.** "Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of injury.

This exclusion does not apply to:

**(1)** Liability assumed by the insured under an "insured contract"; or

**(2)** "Bodily injury" arising out of and in the course of domestic employment by the insured unless benefits for such injury are in whole or in part either payable or required to be provided under any workers' compensation law.

**b.** "Property damage" to:

**(1)** Property owned or being transported by, or rented or loaned to the insured; or

**(2)** Property in the care, custody or control of the insured.

Copyright, Insurance Services Office, Inc., 2009

**2.** Paragraph **C. Who Is An Insured** in **Section II - Liability** is replaced by the following:

**1.** Each of the following is an insured under this endorsement to the extent set forth below:

**a.** You;

**b.** Any other person using a "hired auto" with your permission;

**c.** For a "non-owned auto":

**(1)** Any partner or "executive officer" of yours; or

**(2)** Any "employee" of yours;

but only while such "non-owned auto" is being used in your business; and

**d.** Any other person or organization, but only for their liability because of acts or omissions of an insured under **a., b.** or **c.** above.

**2.** None of the following is an insured:

**a.** Any person engaged in the business of his or her employer for "bodily injury" to any co-"employee" of such person injured in the course of employment, or to the spouse, child, parent, brother or sister of that co-"employee" as a consequence of such "bodily injury", or for any obligation to share damages with or repay someone else who must pay damages because of the injury;

**b.** Any partner or "executive officer" for any "auto" owned by such partner or officer or a member of his or her household;

**c.** Any person while employed in or otherwise engaged in duties in connection with an "auto business", other than an "auto business" you operate;

**d.** The owner or lessee (of whom you are a sublessee) of a "hired auto" or the owner of a "non-owned auto" or any agent or "employee" of any such owner or lessee; or

**e.** Any person or organization for the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

**C.** For the purposes of this endorsement only, Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions** is replaced by the following:

This insurance is excess over any primary insurance covering the "hired auto" or "non-owned auto".

**D.** The following additional definitions apply:

**1.** "Auto business" means the business or occupation of selling, repairing, servicing, storing or parking "autos".

**2.** "Hired auto" means any "auto" you lease, hire, rent or borrow. This does not include any "auto" you lease, hire, rent or borrow from any of your "employees", your partners or your "executive officers" or members of their households.

**3.** "Non-owned auto" means any "auto" you do not own, lease, hire, rent or borrow which is used in connection with your business. This includes "autos" owned by your "employees", your partners or your "executive officers", or members of their households, but only while used in your business or your personal affairs.

Copyright, Insurance Services Office, Inc., 2009



OBCH332709      1304500

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# DATA BREACH COVERAGE FORM

Various provisions in this Coverage Form restrict coverage. Read the entire Coverage Form carefully to determine rights, duties and what is and is not covered.

Throughout this coverage form the words "we", "us" and "our" refer to the Company providing this insurance. The words "you" and "your" refer to the Named Insured shown in the Declarations. Other words and phrases that appear in quotation marks have special meaning. Refer to **SECTION F - DEFINITIONS.**

| SCHEDULE | | |
|---|---|---|
| Data Breach Coverage Aggregate Limit of Insurance | $ | **10,000** |
| Data Breach Expense Coverages Aggregate Sublimit of Insurance | $ | **10,000** |
| Additional Expense Coverages Aggregate Sublimit of Insurance | $ | **10,000** |
| Data Breach Coverage Deductible | $ | **1,000** |
| Cyber Business Interruption Waiting Period Deductible | | **24** Hours |
| Premium: | $ | ■ |

## SECTION A - COVERAGES

We will provide Data Breach Services, Data Breach Expense Coverages and Additional Expense Coverages as described below if you have a "data breach" that:

**a.** Is discovered during the "policy period" of this Data Breach Coverage Form; and

**b.** Is reported to us within 30 days of your discovery of the "data breach".

**1. Data Breach Services, Data Breach Expense Coverages, Additional Expense Coverages**

**a. Data Breach Services**

**(1) Consulting Services**

If you contact our Designated Service Provider, they will provide Consulting Services to assist you with:

**(a)** Notification requirements pursuant to "breach notice laws";

**(b)** Drafting your notification letters; and

**(c)** Media interface and press release drafting.

**(2) Help Line**

Provide a toll-free telephone line for "potentially-identified persons" with questions about the "data breach".

**(3) Fraud Alert**

A "potentially-identified person" who contacts our Designated Service Provider can place a Fraud Alert on his or her credit file(s) with the main credit bureaus warning potential credit grantors to check with the "potentially-identified person" before extending credit in his or her name or on his or her behalf.

**(4) Identity Restoration Case Management**

An "identified person" who contacts our Designated Service Provider will be assisted by an identity restoration professional to help to correct his or her credit and other records and to restore control over his or her personal identity.

These Data Breach Services will be provided by our Designated Service Provider, as described in Paragraphs **15.** and **16.** of **Section E. Conditions,** for a period of one year from the date the Data Breach Services are initiated.

Data Breach Services are only available if the jurisdiction or country where the "potentially-identified person" resides maintains "breach notice law" and, in the case of Fraud Alert, an operative credit monitoring service.

**b. Data Breach Expense Coverages**

We will pay your reasonable and necessary expenses incurred for the following Covered Expenses up to the limits of insurance described in **Section C - Limits of Insurance:**

**(1) Notification to Potentially-Identified Persons** - expenses to provide

notification of the "data breach" to "potentially-identified persons":

**(a)** As required by applicable "breach notice law"; or

**(b)** If reasonably necessary to maintain your business.

Covered expenses include the printing, postage and handling of notification letters or other means of disclosing the breach to "potentially-identified persons".

**(2) Forensic Analysis** - expenses to assess:

**(a)** The severity of the "data breach";

**(b)** The nature and extent of the "data breach";

Forensic Analysis expenses do not include the cost of restoration.

**(3) Proactive Monitoring Services Expense Coverage -** Expenses for "proactive monitoring services" provided to "potentially-identified persons" in jurisdictions or countries with operative credit monitoring services as provided through our Designated Service Provider.

Under this coverage we will only pay for expenses that you incur through our Designated Service Provider.

Services provided for Covered Expenses provided in **b.(1), b.(2)** and **b.(3)** above must be approved by us as described in **SECTION E - CONDITIONS,** Paragraph **15. Service Providers.**

**(4) Breach Restoration Expenses**

We will pay "Breach Restoration Expenses" directly resulting from a "data breach" which is first discovered during the "policy period" and which results in the damage, deletion or destruction of "data" owned by you or for which you are legally liable.

**(5) Cyber Business Interruption and Extra Expense**

We will pay actual loss of "business income" and additional "extra expense" incurred by you during the "period of restoration" directly resulting from a "data breach" which is first discovered during the "policy period" and which results in an actual impairment or denial of service of "business operations" during the "policy period".

**c. Additional Expense Coverages**

We will pay your reasonable and necessary expenses incurred for the following Additional Expense Coverages. These expenses are subject to the limits of insurance described in **Section C - Limits of Insurance.**

**(1) Legal Services -** expenses incurred within the first six months following the discovery and reporting of a "data breach" as provided in this Section for approved outside professional legal counsel review and recommendations as to how you should respond to it, including final legal review of the proposed breach notification letter(s). However, we will not pay for expenses for legal counsel to review any third party liability litigation or notification of potential litigation.

**(2) Public Relations -** expenses incurred within the first six months following the discovery and reporting of a "data breach" as provided in this Section for approved outside public relations firm or crisis management firm recommendations for restoring the confidence of your customers and investors in the security of your company and its systems.

**(3) Third Party "Data Breach" -** expenses for notification to "potentially-identified persons" with whom you have a direct relationship when a "data breach" is sustained by a third party to whom you have sent "private personal data" to be under that third party's care, custody and control. This includes a "data breach" that occurs while transmitting or transporting the data to that third party. Covered expenses for this Additional Covered Expense are limited to the printing, postage and handling of notification letters to "potentially-identified persons".

Service providers for Additional Expense Coverage provided in paragraphs **c.(1), c.(2)** and **c.(3)** must be approved by us as described in **SECTION E - CONDITIONS,** Paragraph **15. Service Providers.**

**(4) Data Breach Ransom Coverage -** monies extorted from and paid by you because or a threat or connected series of threats to commit an intentional attack on your computer systems that if so committed, would result in a "data breach". This Data Breach Ransom

The **Hanover**
Insurance Group™

OBCH332709      1304500

Coverage is subject to the following conditions:

**(a)** You must receive approval from us prior to the payment of any monies;

**(b)** Any monies paid must only be to terminate or end the threat;

**(c)** The threat must be one which, if carried out, would have led to a "data breach" that would have been covered under this Coverage Form had the monies not been paid;

**(d)** The threat must have been made during the coverage period of this Data Breach Coverage Form;

**(e)** The applicable Federal, state and/or local law enforcement authority was notified of the threat prior to any payment you make for which you are seeking reimbursement under this Additional Expense Coverage;

**(f)** The threat must not have been committed by any of your employees or former employees, vendors or independent contractors hired by you;

**(g)** You must make every reasonable effort not to divulge the existence of this Data Breach Ransom Coverage; and

**(h)** You agree to keep confidential any amounts paid under this Data Breach Ransom Coverage except for any disclosure we approve in advance of that disclosure.

**(5) Data Breach Reward Coverage -** monies you pay for information leading to the arrest and conviction of any individual(s) who committed an illegal act(s) related to a "data breach" covered under this Coverage Form.

However, we will not pay for information that was provided by:

**(a)** You;

**(b)** Your internal or external auditors;

**(c)** Any vendor or independent contractor hired by you;

**(d)** Any individual or firm hired by you to investigate the illegal act described above; or

**(e)** Any individual(s) with supervisory or management responsibility of any of the individual(s) described above.

**(6) Data Breach Investigations**

We will pay "defense expenses" directly resulting from a "regulatory investigation" regarding a "data breach" first discovered by you during the "policy period".

**(7) Data Breach Theft**

We will pay for loss resulting directly from your transfer, payment, or delivery of funds due to the fraudulent input of "data" directly into your "system" or through a "network" into your "system". Loss must first be discovered by you during the "policy period".

**SECTION B - EXCLUSIONS**

1.  The following exclusions apply to Data Breach Services, Data Breach Expense Coverages and Additional Expense Coverages.

    This insurance does not apply to:

    **a. Costs to Research or Correct Deficiencies**

    Any costs to research any deficiency, except as specifically provided under **SECTION A - COVERAGES**, Paragraph **1.b.(2) Forensic Analysis**, or any costs to correct any deficiency.

    This includes, but is not limited to, any deficiency in your systems, procedures or physical security that may have contributed to a "data breach".

    **b. Criminal Investigation or Proceedings**

    Any costs arising out of criminal investigations or proceedings.

    **c. Fines, Penalties or Assessments**

    Any "fines, penalties, fees or assessments". This includes but is not limited to fees or surcharges from financial institutions.

    **d. Defense or Legal Liability**

    Any fees, costs, settlements, judgments, or liability of any kind arising in the course of, or as a result of a claim for damages, lawsuit, administrative proceedings, or governmental investigation against or involving you, except as provided under **SECTION A - COVERAGES**, Paragraph **1.c.(6) Data Breach Investigations.**

**e. Other Economic Costs**

Any other costs or expenses not expressly provided for under Data Breach Services, Data Breach Expense Coverages and Additional Expense Coverages provided in Paragraphs **1.a.** through **1.c.** Costs or expenses that we do not cover include but are not limited to expense to reissue credit or debit cards.

**f. Consequential Loss**

Any costs, or any other loss, caused by or resulting from delay, loss of use, loss of existing or prospective markets or any other consequential loss. This exclusion does not apply to **SECTION A - COVERAGES**, Paragraph **1.b.(5) Cyber Business Interruption and Extra Expense**.

**g. Contractually Assumed Liability**

Legal obligations arising by reason of assumption of liability in a contract or agreement.

**h. Victim Expenses or Losses**

Costs or losses incurred by a victim of "data breach" or fraud activity except as provided for under Data Breach Services, Data Breach Expense Coverages and Additional Expenses Coverages provided in Paragraphs **1.a.** through **1.c.**

**i. Alternative Travel Arrangements or Fees**

Payment of alternative travel arrangements or additional fees.

**j. Psychological Counseling**

Psychological counseling for victims of a "data breach" or fraud activity.

**k. Legal Advice or Services**

Legal advice or other legal services, except as provided by the Legal Services Additional Expense Coverage, Paragraph **1.c.(1).**

**l. Information Recapture**

Any costs or losses for the recapture of lost, stolen or destroyed information.

**m. Dishonesty**

Any criminal, fraudulent or dishonest act, error or omission, or any intentional or knowing violation of law by you, any of your partners, directors or trustees:

**(1)** Acting alone or in collusion with others; or

**(2)** Whether or not occurring during the hours of employment.

**n. Governmental Action**

Seizure or destruction of property by order of governmental authority. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. This exclusion applies whether or not the loss event results in widespread damage or affects a substantial area.

**o. Intentional or Willful Complicity**

Your intentional or willful complicity in a "data breach".

**p. Prior Discovery**

Any "data breach" discovered prior to the inception of this Data Breach Coverage Form.

**q Threats, Extortion or Blackmail**

Any threat, extortion or blackmail including but not limited to, ransom payments and private security assistance except as provided in the Data Breach Ransom Coverage Additional Expense Coverage under Paragraph **1.(c)(4).**

**r Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination, however caused.

**s. War and Military Action**

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**2.** The following exclusions apply to Breach Restoration Expenses, Cyber Business Interruption and Extra Expense, Data Breach Investigations, and Data Breach Theft only.

This insurance does not apply to:

**a. Investigations**

Costs, fees or expenses incurred or paid by you in establishing the existence of, or amount of loss, damage or expense.

**b. Non-monetary Relief**

Costs of compliance with any order for, grant of or agreement to provide non-monetary relief, including injunctive relief.

**c. Potential Income**

Potential income including interest and dividends not realized by you; however, this Exclusion shall not apply to loss of "business income" as provided under **SECTION A - COVERAGES**, Paragraph **1.b.(5) Cyber Business Interruption and Extra Expense.**



OBCH332709     1304500

**d. Return of Payments**

Return of fees, charges, commissions or other compensation paid to you.

**e. System Changes**

Costs or "expenses" incurred to replace, upgrade, update, improve, or maintain a "system".

**f. Uniform Commercial Code**

Loss, damage, costs or "expenses" you agree to incur or incur on behalf of another natural person or entity when you are not obligated to incur such loss, costs or "expenses" under the Uniform Commercial Code or any other law, statute, rule or code anywhere in the world, including the rules or codes of any clearing or similar entity. This Exclusion does not apply to **SECTION A - COVERAGES**, Paragraph **1.b.(5) Cyber Business Interruption and Extra Expense.**

## SECTION C - LIMITS OF INSURANCE

1. The most we will pay for all Data Breach Expense Coverages and Additional Expense Coverages combined is the Data Breach Coverage Aggregate Limit of Insurance shown in the **SCHEDULE** of this Data Breach Coverage Form. The Data Breach Coverage Aggregate Limit of Insurance is an annual aggregate limit and is the most we will pay for the total of all covered losses and expenses for all "data breach" events discovered by you during the current "policy period" regardless of the number of "data breach" events.

2. The Data Breach Expense Coverages Aggregate Sublimit of Insurance shown in the **SCHEDULE** of this Data Breach Coverage Form is the most we will pay under all Data Breach Expense Coverages combined for the total of all covered losses and expenses arising out of all "data breach" events during the "policy period" regardless of the number of "data breach" events. The Data Breach Expense Coverage Aggregate Sublimit of Insurance is part of, and not in addition to, the Data Breach Coverage Aggregate Limit of Insurance

3. The Additional Expense Coverages Aggregate Sublimit of Insurance shown in the **SCHEDULE** of this Data Breach Coverage Form is the most we will pay under all Additional Expense Coverages combined for the total of all covered losses and expenses for all "data breach" events during the "policy period" regardless of the number of "data breach" events. The Additional Expense Coverages Aggregate Sublimit of Insurance is part of, and not in addition to, the Data Breach Coverage Aggregate Limit of Insurance.

4. Regardless of the number of years this Data Breach Coverage Form remains in force or the number of premiums paid, no limits of insurance cumulate from this "policy period" to subsequent "policy periods".

5. **Discovery Policy Period Limits Apply**

A "data breach" may be first discovered by you in one "policy period", but cause covered loss or expenses in one or more subsequent "policy periods". If so, all covered loss or expenses for the "data breach" will be limited to the Data Breach Coverage Aggregate Limit of Insurance, the Data Breach Expense Coverages Aggregate Sublimit of Insurance and the Additional Expense Coverages Aggregate Sublimit of Insurance described respectively in Paragraphs **1., 2.** and **3.** above that are applicable to the "policy period" when the "data breach was first discovered by you.

6. **Time Limits**

**a.** You must report a "data breach", to us on or within 30 days of your discovery of the "data breach".

**b.** You have up to one year from the date of reporting a "data breach", to initiate the services afforded to you.

**c.** A "potentially-identified person" has up to one year from the date he or she receives notification of a "data breach" to initiate the services afforded to him or her.

**d.** Once initiated, the services afforded to a "potentially-identified person" will continue for one year.

**e.** Data Breach Services under **Section A - Coverages,** Paragraph **1.a.** will be provided by our Designated Service Provider for a period one year from the date the Data Breach Services are initiated.

## SECTION D - DEDUCTIBLE

The Data Breach Expense Coverages and Additional Expense Coverages provided under this Coverage Form are subject to the Data Breach Coverage Deductible shown in the **SCHEDULE** of this Coverage Form. The Data Breach Coverage Deductible applies to covered loss and expense arising out of each "data breach". Our obligation to make payments under Data Breach Expense Coverages and Additional Expense Coverages applies only to that part of covered loss and expense arising out of a single "data breach" event which is in excess of the Data Breach Coverage Deductible.

The Data Breach Coverage Deductible does not apply to **SECTION A -COVERAGES,** paragraph **1.b.(6) Cyber Business Interruption and Extra Expense**. Losses payable under Cyber Business Interruption and Extra Expense are subject to the Cyber Business Interruption Waiting Period Deductible shown on the **SCHEDULE** of this Coverage Form.

## SECTION E - CONDITIONS

1. **Duties in the Event of a Data Breach.**

   You must see that the following are done in the event of a "data breach":

   **a.** Notify the police if a law may have been broken.

   **b.** Give us prompt notice of the "data breach". As stated in **SECTION A - COVERAGES**, paragraph **b.**, you must report the "data breach" to us within 30 days of the date you first discover it.

   **c.** As soon as possible, give us, and/or our Designated Service Provider, a description of how, when and where the "data breach" occurred, including all of the following information as it becomes known to you:

      **(1)** The method of "data breach";

      **(2)** The approximate date and time of the "data breach";

      **(3)** The approximate number of "potentially-identified persons" compromised as a result of the "data breach";

      **(4)** A detailed description of the type and nature of the information that was compromised;

      **(5)** Whether or not the information was encrypted, and, if so, the level of encryption;

      **(6)** Whether or not law enforcement has been notified;

      **(7)** If available, the states in which the "potentially-identified persons" are domiciled;

      **(8)** If available, who received the "private personal data" as a result of the "data breach"; and any other access, information or documentation we reasonably require to investigate or adjust your claim.

   **d.** Take all reasonable steps to protect "private personal data" remaining in your care, custody or control.

   **e.** Preserve all evidence of the "data breach".

   **f.** Permit us to inspect the property and records proving the "data breach".

   **g.** If requested, permit us to question you under oath at such times as may be reasonably required about any matter relating to this insurance or your claim, including your books and records. In such event, your answers must be signed.

   **h.** Send us a signed, sworn statement containing the information we request to investigate the claim. You must do this within 30 days after our request. We will supply you with the necessary forms.

   **i.** Cooperate with us in the investigation or settlement of the claim.

2. **Concealment, Misrepresentation or Fraud**

   This coverage is void in any case of fraud by you as it relates to this Data Breach Coverage Form. It is also void if you intentionally conceal or misrepresent a material fact concerning this Coverage Form or a claim under this Coverage Form.

3. **Control of Property**

   Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

   The breach of any condition of this Coverage Form at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

4. **Two or More Coverage Parts, Forms, Endorsements or Policies Issued By Us**

   It is our stated intent that the various coverage parts, forms, endorsements or policies issued to you by us or any company affiliated with us do not provide any duplication or overlap of coverage for the same loss, damage, expense or "data breach". If this coverage form and any other coverage part, form, endorsement or policy issued to you by us or any company affiliated with us apply to the same loss, damage, expense, or "data breach"; the maximum Limit of Insurance under all such coverage parts, forms, endorsements or policies combined shall not exceed the highest applicable Limit of Insurance under any one coverage part, form, endorsement or policy.

   If two or more of the coverages provided under this coverage form apply to the same loss, damage, expense or "data breach"; we will not pay more than the actual amount of the loss, damage or expense.

5. **Legal Action Against Us**

   No one may bring a legal action against us under this insurance unless:

   **a.** There has been full compliance with all of the terms of this insurance; and

   **b.** The action is brought within two years after the date of the "data breach" is first discovered by you.

6. **Liberalization**

   If we adopt any revision that would broaden the coverage under this Data Breach Coverage Form without additional premium within 45 days prior to or during the "policy period", the

The Hanover Insurance Group™

OBCH332709     1304500

broadened coverage will immediately apply to this coverage form.

**7. No Benefit to Bailee**

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

**8. Other Insurance**

a. If you may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Data Breach Coverage Form, we will pay only our share of the covered loss, damage or expense. Our share is the proportion that the applicable Limit of Insurance under this Coverage Form bears to the Limits of Insurance of all insurance covering on the same basis.

b. If there is other insurance covering the same "data breach", other than that described in **a.** above, we will pay only for the amount for Data Breach Services, Data Breach Expense Coverages, and Additional Expense Coverages in excess of the amount due from that other insurance. We will not pay more than the applicable Limit of Insurance shown in the **SCHEDULE**.

**9. Policy Period, Coverage Territory**

Under this Endorsement:

a **Policy Period**

This policy applies only to "data breaches" that are first discovered by you during the "policy period".

**b. Coverage Territory**

Coverage applies anywhere in the world, provided that no trade or economic sanction, embargo, insurance or other laws or regulations prohibit the "insurer" from covering the loss. The "data breach" must involve "private personal data" that was within your care, custody or control.

Data Breach Services are only available in jurisdictions or countries that maintain "breach notice law" and, in the case of Fraud Alert, an operative credit monitoring service.

**10. Transfer Of Rights Of Recovery Against Others To Us**

If any person or organization to or for whom we make payment under this Coverage Form has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

a. Prior to a loss.

b. After a loss only if, at time of loss, that party is one of the following:

(1) Someone insured by this insurance;

(2) A business firm:

(a) Owned or controlled by you; or

(b) That owns or controls you; or

c. Your tenant.

This will not restrict your insurance.

**11. Cancellation**

With regard to the cancellation of this policy, the provisions outlined in the Common Policy Conditions, Businessowners Coverage Part, Technology Professional Advantage, the Technology Professional Advantage Plus, whichever are included in the policy, shall apply and will automatically include the non-renewal or cancellation of this coverage form. You agree that no further notice regarding termination of this Coverage Form will be required.

**12. Due Diligence**

You agree to use due diligence to prevent and mitigate loss covered under this Coverage Form. This includes, but is not limited to, complying with reasonable and industry-accepted protocols for providing and maintaining the following:

a. Physical security for your premises, computer systems and hard copy files;

b. "Computer" and Internet security;

c. Periodic backups of computer data;

d. Protection, including but not limited to, encryption of data, for transactions such as processing credit card, debit card and check payments; and

e. Disposal of files containing "personal private data", including but not limited to shredding hard copy files and destroying physical media used to store "data".

**13. No Legal Advice Provided**

We are not your legal advisor and do not provide legal counsel to you. None of the services we provide under this Coverage Form constitute legal advice to you by us. Our determination of what is or is not covered under this Coverage Form does not represent legal advice or counsel from us about what you should or should not do.

**14. Pre-Notification Consultation**

You agree to consult with us prior to the issuance of notification to "potentially-identified persons". We assume no responsibility under this Coverage Form for any services promised to "potentially-identified persons" without our prior agreement. You must provide the following at our pre-notification consultation with you:

**a.** The exact list of "potentially-identified persons" to be notified, including contact information.

**b.** Information about the "data breach" that may appropriately be communicated with "potentially-identified persons".

**15. Service Providers**

**a.** We will only provide Data Breach Services through our Designated Service Provider(s). Any such services that are provided by any other individual or entity will not be covered by this Coverage Form.

**b.** We will only pay Data Breach Expense Coverages and Additional Expense Coverages (except for Data Breach Ransom Coverage and Data Breach Reward Coverage) that are provided by service providers approved by us prior to the start of any of these services. If we suggest a service provider(s) but you prefer to use an alternative service provider(s), our coverage is subject to the following limitations:

**(1)** Such alternate service provider(s) must be approved by us; and

**(2)** Our payment for services provided by any alternative service provider(s) will not exceed the amount that we would have paid using the service provider we had suggested.

**c.** You will have a direct relationship with any service provider, including our Designated Service Provider, paid for in whole or in part under this Coverage Form. All service providers work for you.

**16. Data Breach Services**

The following conditions apply with respect to any data breach services provided to you or to any "potentially-identified person" or "identified person" by our designees or any service firm paid for under this Data Breach Coverage Form:

**a.** The effectiveness of data breach services depends on your cooperation and assistance.

**b.** All data breach services may not be available or applicable to all "potentially identified persons" or "identified persons". For example, "potentially identified persons" who are minors or foreign nationals may not have credit records that can be provided or monitored.

**c.** We do not warrant or guarantee that the data breach services paid for in whole or in part by this Coverage Form will end or eliminate all problems associated with a covered "data breach".

**d.** We are not liable for any act or omission by any Designated Service Provider who is not our employee nor the employee of a third party provider of the data breach services described in this Coverage Form. We cannot be held responsible for failure to provide or for the delay in providing services when such failure or delay is caused by conditions beyond our control

**e.** Data Breach Services are only available in jurisdictions or countries that maintain "breach notice law" and, in the case of Fraud Alert, an operative credit monitoring service.

**17. Cooperation**

You agree to cooperate with and provide full disclosure of the circumstances surrounding a "data breach" to applicable federal or state regulators, law enforcement personnel, to us, and to our Designated Service Provider(s).

If you fail to cooperate, we will not be obliged under this contract for any services and expenses that cannot be provided due to your failure to cooperate.

**18. Appraisal**

If we and you disagree on the amount of net income, operating expense or loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of the net income, operating expense and loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

**SECTION F - DEFINITIONS**

**1. Account Takeover**

"Account takeover" means the takeover by a third party of one or more existing deposit accounts, credit card accounts, debit card accounts, ATM cards, or lines of credit in the name of an "identified person".

**2. Breach Notice Law**

"Breach Notice Law" means any federal, state, local or foreign privacy legislation, regulation and their functional equivalent that requires an entity to provide notice to affected natural persons or data protection authorities regarding any actual or potential unauthorized access to "private personal data".



**3. Breach Restoration Expenses**

"Breach Restoration Expenses" means the reasonable cost of the blank "media" and the reasonable cost of labor for the actual transcription or copying of "data" or "media" in order to reproduce such "data" or replace such "media" from "data" and/or media of comparable kind or quality.

**4. Business Income**

"Business Income" means your:

**a.** Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred if there had been no impairment or denial of "business operations" due to a covered "data breach" and

**b.** Continuing normal operating expenses incurred, including payroll.

"Business income" does not include interest or investment income.

**5. Business Operations**

"Business Operations" means your usual and regular business activities.

**6. Computer**

"Computer" means a device or group of hardware devices on which software, applications, script, code and "computer" programs containing "data" can be operated and viewed.

**7. Cyber Attack**

"Cyber Attack" means the transmission of fraudulent or unauthorized "data" that is intended to and successfully modifies, alters, damages, destroys, deletes, records, transmits, or consumes information within a "system" without authorization, including "data" that is self-replicating or self-propagating, and which causes the disruption of the normal operation of a "system".

**8. Data**

"Data" means a representation of information, knowledge, facts, concepts or instructions which are being processed or have been processed in a "computer".

**9. Data Breach**

"Data breach" means:

**a.** The loss, theft, accidental release or accidental publication of "private personal data" entrusted to you as respects one or more "potentially-identified persons" if such loss, theft, accidental release or accidental publication has or could reasonably result in the fraudulent use of such information;

**b.** Failure to protect "private personal data" including a "Cyber Attack" on your "system" or the actions of a "rogue employee" which directly results in the unauthorized disclosure of "private personal data";

**c.** The theft or negligent loss of hardware, "media", "system output", "data" or other documents owned or controlled by you, or on your behalf, on which "private personal data" is stored or recorded;

**d.** The failure or violation of the security of your "system" including the impairment or denial of access to your "system", including a "Cyber Attack" or unauthorized acts or omissions by a "rogue employee" which damages or harms your "system" or the "system" of a third party for whom you provide "services" for a fee;

**e.** The theft or loss of hardware or "media" controlled by you, or on your behalf, on which "data" is stored;

**f.** Disposal or abandonment of "private personal data" without appropriate safeguards such as shredding or destruction, subject to the following provisions:

**(1)** Your failure to use appropriate safeguards must be accidental and not intentional, reckless or deliberate and not in violation of your Due Diligence obligations under Paragraph **2. Additional Conditions**, Paragraph **a.**;

**(2)** Such disposal or abandonment must take place during the time period for which this Data Breach Coverage Form is effective; or

**g.** The failure to disclose an event described in **a.** thru **f.** above which violates any "breach notice law".

All incidents of "data breach" that are discovered at the same time or arise from the same cause or from a series of similar causes would be considered one "data breach". All theft of "private personal data" caused by any person or in which that person is involved, whether the result of a single act or series of related acts, is considered a single incident of "data breach".

**10. Defense Expenses**

"Defense Expenses" means the reasonable and necessary legal fees and expenses including attorney fees and expert fees incurred by us or by you (other than regular or overtime wages, salaries, fees or benefits of you or your employees) in the investigation, defense, settlement and appeal of a claim, including but not limited to cost of consultants and witnesses, premiums for appeal, injunction, attachment or supersedes bonds regarding such claim.

**11. Electronic Data**

"Electronic data" means information, facts or computer programs stored as or on, created or used on, or transmitted to or from software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

**12. Expense**

"Expense" means "Business Income", "Extra Expense", "Breach Restoration Expenses", and loss payable under the Data Breach Theft coverage incurred by you.

**13. Extra Expense**

"Extra Expense" means the reasonable and necessary expenses you incur during the "period of restoration" in an attempt to continue "business operations" that have been interrupted due to a "data breach" and that are over and above the expenses such you would have incurred if no loss had occurred. "Extra expense" does not include any costs of updating, upgrading or remediation of your "system" that are not otherwise covered under this Coverage Part.

**14. Fines, Penalties or Assessments**

"Fines, penalties or assessments" means any fines, assessments, surcharges, attorneys' fees, court costs or other penalties which you shall be required to pay as a result of a "data breach" or pursuant to any contract, law, regulation or order.

**15. Identified Person**

"Identified person" means a "potentially-identified person" who is or appears to be a victim of "identity theft" or "account takeover" that may reasonably have arisen from a covered "data breach".

**16. Identity Theft**

"Identity theft" means the fraudulent use of "private personal data". This includes the fraudulent use of such information to establish credit accounts, secure loans, enter into contracts or commit crimes.

"Identity theft" does not include the fraudulent use of a business name, d/b/a or any other method of identifying a business activity.

"Identity theft" does not include the use of a valid credit card, credit account or bank account. However, "identity theft" does include the fraudulent alteration of account profile information, such as the address to which statements are sent.

**17. Media**

"Media" means electronic applications, software, scripts and programs on which "data" is stored so that it can be collected, read, retrieved or processed by a "computer". "Media" does not mean paper, or other tangible property, money, debt, equity, instruments, accounts, bonds, bills, records, abstracts, deeds or manuscripts

**18. Network**

"Network" means any services provided by or through the facilities of any electronic or "computer" communication system, allowing the input, output, examination, visualization or transfer of "data" or programs from one "computer" to your "computer". "Network" incudes any shared networks, Internet access facilities, or other similar facilities for such systems, in which you participate.

**19. Period of Restoration**

"Period of Restoration" means:

**a.** The period of time that begins:

**(1)** For "Extra Expenses", immediately after the actual or potential impairment or denial of "business operations" occurs; and

**(2)** For the loss of "Business Income", after 24 hours or the number of hours shown as the Cyber Business Interruption Waiting Period Deductible in the **SCHEDULE** on this Coverage Forms, whichever is greater, immediately following the time the actual impairment or denial of "business operations" first occurs.

**b.** The "Period of Restoration" ends on the earlier of the following:

**(1)** The date "business operations" are restored, with due diligence and dispatch, to the condition that would have existed had there been no impairment or denial; or

**(2)** Sixty (60) days after the date the actual impairment or denial of "business operations" first occurs;

The expiration date of this Policy or Coverage Part will not cut short the "period of restoration".

**20. Policy Period**

"Policy Period" means the period of time from the inception date shown the Declarations to the earlier of the expiration date shown in the Declarations or the effective date of termination of the Policy or Data Breach Coverage Form.



OBCH332709        1304500

**21. Potentially-Identified Person**

"Potentially-identified person" means any person who is your current, former or prospective customer, employee, client, member, or patient and whose "private personal data" is lost, stolen, accidentally released or accidentally published by a "data breach" covered under this Coverage Form.

"Potentially-identified person" does not include any business or organization. Only an individual person may be a "potentially-identified person".

A "potentially-identified person" may reside anywhere in the world.

**22. Private Personal Data**

"Private Personal Data" means a natural person's first name or first initial and last name in combination with:

**a.** Non-public personally identifiable information, as defined in applicable federal, state, local or foreign legislation or regulations including, social security number, driver's license number or other personal identification number (including an employee identification number or student identification number);

**b.** Financial account number (including a bank account number, retirement account number or healthcare spending account number);

**c.** Credit, debit or payment card numbers;

**d.** Information related to employment by you;

**e.** Individually identifiable information considered nonpublic personal information pursuant to Title V of the Gramm-Leach Bliley Act of 1999, as amended; or

**f.** Individually identifiable information considered protected health information pursuant to the Health Insurance Portability and Accountability Act of 1996 (HIPAA), as amended;

which is intended to be accessible only by natural persons or entities you have specifically authorized to have such access.

"Private personal data" does not mean or include information that is otherwise available to the public, such as names and addresses with no correlated Social Security numbers or account numbers.

**23. Proactive Monitoring Services**

"Proactive monitoring services" means the following services if you offer to provide them to "potentially-identified persons" who contact our Designated Service Provider:

**a.** A credit report;

**b.** credit monitoring; and or

**c.** fraud/public records monitoring service or services.

**24. Regulatory Investigation**

"Regulatory Investigation" means a formal request for information, civil investigative demand or civil proceeding, including requests for information related thereto, brought by or on behalf of a state Attorney General, the Federal Trade Commission, the Federal Communications Commission or any other federal, state, local or foreign governmental agency.

**25. Rogue Employee**

"Rogue Employee" means a permanent employee of yours, other than an "executive", who has gained unauthorized access or has exceeded authorized access to a "system" or "private personal data" owned or controlled by you or an entity that is authorized by you to hold, process or store "private personal data" for your exclusive benefit.

**26. Services**

"Services" means "computer" time, data processing, storage functions or other uses of your "system".

**27. System**

"System" means a "computer", "media" and all input, output, processing storage and communication devices controlled, supervised or accessed by operating software that is proprietary to, or licensed to, the owner of the "computer".

**28. System Output**

"System Output" means a tangible substance on which "private personal data" is printed from a "System".



OBCH332709          1304500

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**SCHEDULE**

| Premises Number: | Building Number: | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|
| **Description Of Property:** | | |
| **Loss Payee Name:** | | |
| **Loss Payee Address:** | | |
| **Premises Number:** | **Building Number:** | **Applicable Clause** (Indicate Paragraph A, B, C or D): |
| **Description Of Property:** | | |
| **Loss Payee Name:** | | |
| **Loss Payee Address:** | | |
| **Premises Number:** | **Building Number:** | **Applicable Clause** (Indicate Paragraph A, B, C or D): |
| **Description Of Property:** | | |
| **Loss Payee Name:** | | |
| **Loss Payee Address:** | | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | |

Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

The following is added to the **Loss Payment** Property Loss Condition in **Section I - Property,** as shown in the Declarations or in the Schedule:

**A. Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

 **1.** Adjust losses with you; and

---

**BP 12 03 01 10**          Copyright, Insurance Services Office, Inc., 2009          **Page 1 of 2**

**2.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in that Covered Property is established by such written instruments as:

   **a.** Warehouse receipts;

   **b.** A contract for deed;

   **c.** Bills of lading;

   **d.** Financing statements; or

   **e.** Mortgages, deeds of trust, or security agreements.

**2.** For Covered Property in which both you and a Loss Payee have an insurable interest:

   **a.** We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

   **b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

   **c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

   **(1)** Pays any premium due under this policy at our request if you have failed to do so;

   **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

   **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

   All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

   **d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

   **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

**(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

   At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

   **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

   **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

   **a.** Adjust losses with you; and

   **b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

   For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

Copyright, Insurance Services Office, Inc., 2009          **BP 12 03 01 10**

**The Hanover**
Insurance Group.

OBCH332709    1304500

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# NOTICE OF CANCELLATION TO DESIGNATED ENTITY(S)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
HANOVER COMMERCIAL FOLLOW FORM EXCESS AND UMBRELLA POLICY
COMMERCIAL PROPERTY COVERAGE PART
BUSINESS AUTO COVERAGE FORM
BUSINESSOWNERS COVERAGE FORM

## SCHEDULE

| Name of Designated Entity Mailing Address or Email Address | Number Days Notice |
|---|---|
| SILICON VALLEY BANK<br>3003 TASMAN DRIVE<br>HF 150<br>SANTA CLARA, CA<br>95054 | 30 |
|  |  |
|  |  |

(Information required to complete this Schedule, if not shown above, will be shown in the Declarations.)

If we cancel this policy for any reason other than nonpayment of premium, we will give written notice of such cancellation to the Designated Entity(s) shown in the Schedule. Such notice may be delivered or sent by any means of our choosing. The notice to the Designated Entity(s) will state the effective date of cancellation.

Unless otherwise noted in the Schedule above, such notice will be provided to the Designated Entity(s) no more than the number of days in advance of the effective date of cancellation that we are required to provide to the Named Insured for such cancellation.

Such notice of cancellation is solely for the purpose of informing the Designated Entity(s) of the effective date of cancellation and does not grant, alter, or extend any rights or obligations under this policy.


ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED - DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

### SCHEDULE

| Name of Person or Organization: |
| --- |
| SILICON VALLEY BANK |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

For the purpose of coverage provided by this endorsement, the following changes are made to **SECTION II - LIABILITY:**

**A.** The following is added to **SECTION II - LIABILITY, C. Who is an Insured:**

Any person or organization shown in the Schedule above is also an additional insured, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf in the performance of your ongoing operations or in connection with your premises owned by or rented to you.

However:

**a.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**b.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** The following is added to **SECTION II - LIABILITY, D. Liability and Medical Expenses Limits of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**a.** Required by the contract or agreement; or

**b.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

ALL OTHER TERMS, CONDITIONS, AND EXCLUSIONS REMAIN UNCHANGED.

**The Hanover Insurance Group.**

OBCH332709          1304500

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# AVENUES BUSINESSOWNERS TECHNOLOGY DELUXE GOLD BROADENING ENDORSEMENT

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The following is added to **SECTION I - PROPERTY**:

The limits applicable to the coverages included in this endorsement may either be in addition to or included within the applicable Limit of Insurance. For application of the limits, refer to each coverage within this endorsement. Words or phrases in quotation marks have special meanings. The meaning of words or phrases in quotation marks is explained within the applicable coverage section. The coverages in this endorsement amend the coverage provided under the Businessowners Coverage Form through new coverages and replace coverage grants. These coverages are subject to the provisions applicable to this policy, except where amended within this endorsement.

If any of the property covered by this endorsement is also covered under any other provisions of the policy of which this endorsement is made a part of, or if more than one coverage under this endorsement applies, in the event of loss or damage, you may choose only one of these coverages to apply to that loss. The most we will pay in this case is the limit of insurance applying to the coverage you select. Coverages included in this endorsement apply either separately to each described premises or on an occurrence basis. Refer to each coverage within this endorsement for application of coverage.

We provide no coverage for Business Income; Extended Business Income; Extra Expense; or Business Income and Extra Expense from Dependent Properties for any of the Coverages included as part of this endorsement unless specifically stated, and then only to the extent provided for within that Scheduled or Blanket Coverage provision.

## I.   COVERAGES

### A.   Scheduled Coverages

| | Scheduled Coverages | Limit | Page |
|---|---|---|---|
| **1.** | Advertising Expense to Regain Customers | $2,500 | 3 |
| **2.** | Brands and Labels | Included | 3 |
| **3.** | Business Income Billable Hours Option | $10,000 | 3 |
| **4.** | Contingent Transit Business Income and Extra Expense | $100,000 | 4 |
| **5.** | Business Income and Extra Expense - Dependent Properties (Including World-Wide Coverage) | $100,000 | 4 |
| **6.** | Business Income from Websites | $50,000 | 5 |
| **7.** | Catastrophe Allowance | $25,000 | 5 |
| **8.** | Commercial Tools and Small Equipment | $25,000 | 5 |
| **9.** | Computer Equipment - In Transit or Off Premises | $75,000 | 5 |
| **10.** | Computer and Funds Transfer Fraud | $10,000 | 6 |
| **11.** | Consequential Loss to Stock | Included | 6 |
| **12.** | Contract Penalties | $25,000 | 6 |
| **13.** | Deferred Payments | $25,000 | 6 |
| **14.** | Denial of Access to Premises | 30 Days; 72 Hour Waiting Period | 6 |
| **15.** | Electronic Vandalism | $25,000 | 6 |
| **16.** | Employee Theft Including ERISA Compliance | $50,000 | 7 |
| **17.** | Employee Tools and Work Clothing | $2,500 Per Item $25,000 Per Occurrence | 7 |

| 18. | Expediting Expenses | $25,000 | 7 |
|---|---|---|---|
| 19. | Extended Business Income | 180 days | 7 |
| 20. | Fine Arts | $50,000 | 8 |
| 21. | Fire Department Service Charge | Included | 8 |
| 22. | Fire Protection Equipment Recharge | Included | 8 |
| 23. | Forgery or Alteration | $50,000 | 8 |
| 24. | Hired Auto - Physical Damage | $50,000 | 8 |
| 25. | Installation Floater | $50,000 | 9 |
| 26. | Interruption of Computer Operations | $50,000 | 9 |
| 27. | Inventory and Loss Appraisal | $20,000 | 10 |
| 28. | Key Replacement and Lock Repair | $25,000 | 10 |
| 29. | Leasehold Interest (Tenants Only) | $25,000 | 10 |
| 30. | Lessor's Lease Cancellation | $10,000 | 10 |
| 31. | Lessor's Tenant Move Expenses | $10,000 / 60 days | 10 |
| 32. | Marring and Scratching | Included | 11 |
| 33. | Money Orders and Counterfeit Money | $25,000 | 11 |
| 34. | Newly Acquired or Constructed Property<br>   Business Personal Property<br>   Business Income and Extra Expense | $1,000,000<br>$500,000 | 11 |
| 35. | Ordinance or Law - Demolition and Increased Cost of Construction | $50,000 | 11 |
| 36. | Ordinance or Law - Increased Period of Restoration | $100,000 | 11 |
| 37. | Ordinance or Law (Tenant's Improvement Extension) | $50,000 | 12 |
| 38. | Outdoor Property<br>   Per Tree, Shrub or Plant | $25,000<br>$2,500 | 12 |
| 39. | Personal Effects | $50,000 | 12 |
| 40. | Portable Electronic Devices Coverage Worldwide | $25,000 | 12 |
| 41. | Precious Metal Theft Payment Changes | $50,000 | 13 |
| 42. | Personal Property in Transit | $50,000 | 13 |
| 43. | Sales Representative Samples | $25,000 | 13 |
| 44. | Soft Costs | $10,000 | 13 |
| 45. | Spoilage | $25,000 | 14 |
| 46. | Temporary Relocation of Property | $50,000 | 15 |
| 47. | Tenant Signs | $25,000 | 15 |
| 48. | Unauthorized Business Credit Card Use | $10,000 | 15 |
| 49. | Underground Water Seepage | $100,000 | 16 |
| 50. | Unnamed Locations - Personal Property and Computer Equipment<br>Unnamed Locations - Business Income and Extra Expense | $10,000 per Occurrence<br>$25,000 Policy Aggregate<br>$10,000 per Occurrence<br>$50,000 Policy Aggregate | 16 |
| 51. | Utility Services<br>   Direct Damage (Including Overhead Transmission Lines)<br>   Business Income (Including Overhead Transmission Lines) | $50,000<br>$50,000 | 18 |
| 52. | Worldwide Property Off Premises | $50,000 | 18 |

The Hanover Insurance Group.

OBCH332709        1304500

| B. | Blanket Coverages | Blanket Limit $250,000 | Page |
|----|-------------------|------------------------|------|
| 1 | Accounts Receivable | Included | 19 |
| 2. | Backup or Overflow of a Sewer, Drain or Sump | Included | 19 |
| 3. | Computer Equipment | Included | 19 |
| 4. | Debris Removal | Included | 19 |
| 5. | Valuable Papers and Records  (Other Than Electronic Data) | Included | 20 |

The Blanket Limit of Insurance shown above applies to all Coverages shown in **Section B** of this endorsement. At the time of loss, you may elect to apportion this Blanket Limit of Insurance to one or any combination of the Coverages shown, but under no circumstances will the aggregate apportionment be permitted to exceed the Blanket Limit of Insurance shown above. The Blanket Limit of Insurance applies per occurrence.

## II.  DEDUCTIBLES

Deductibles are subject to the provisions applicable to the Businessowners Coverage Form except as provided below. We will not pay for covered loss or damage in any one occurrence unless the amount of loss or damage exceeds the applicable Deductible amount. We will then pay the amount of loss or damage in excess of the Deductible up to the applicable Limit of Insurance.

## III.  COVERED PROPERTY

### A.  Scheduled Coverages

#### 1.  Advertising Expense to Regain  Customers

The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages**:

**Advertising  Expense to Regain Customers**

**(1)** If we make payment for a Covered Cause of Loss under this policy and there is a "suspension" of operations caused by direct physical loss or damage to property, we will pay for necessary advertising expenses you incur solely to regain customer faith and approval.

**(2)** We will only pay the necessary advertising expenses that you incur within 60 consecutive days after the "period of restoration" ends.

**(3)** The most we will pay under this Additional Coverage for all necessary advertising expenses in any one policy year is $2,500.

#### 2.  Brands and Labels

The following is added to **SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions**:

**Brands and Labels**

**(1)** If Covered Property that has a brand or label is damaged by a Covered Cause of Loss and we elect to take all or any part of the damaged property at an agreed or appraised value, you may extend the insurance that applies to your Business Personal Property to:

**(a)** Pay expenses you incur to:

**(i)** Remove the brand or label and then relabel the damaged property to comply with any applicable law; or

**(ii)** Label or stamp the damaged property Salvage, if doing so will not physically damage the property.

**(b)** Cover any reduction in the salvage value of the damaged property as a result of the removal of the brand or label.

**(2)** Payment under this Extension is included within the Limit of Insurance applicable to your Business Personal Property.

#### 3.  Business Income Billable Hours Option

The following is added to **SECTION I - PROPERTY, A. Coverage, E. Property Loss Conditions, 5. Loss Payment**:

**Business Income Billable Hours Option**

**(1)** At your option you may choose to settle a covered Business Income and Extra Expense loss, as described under the Business Income, Extra Expense and Utility Services Additional Coverages, as described below in paragraph **(3)**.

**(2)** This loss settlement option is only available to you prior to your submission to us of calculations described under **SECTION I - PROPERTY, A. Coverage , 5.**

**Additional Coverages, f. Business Income.**

**(3)** For the purpose of this Additional Coverage, we will pay up to $500 per day, for billable hours lost, per technology professional, up to a maximum of $1,000 per day, regardless of the number of technology professionals involved, for each normal working day you are unable to conduct operations due to covered loss or damage for up to a maximum of 10 days. We will also pay for your continuing normal operating expenses incurred, including "payroll expenses"; and "Rental Value".

**(4)** If damages are such that limited operations can continue, the per technology professional allowance will be proportionately reduced.

**(5)** For any occurrence, the two available methods for adjusting and calculating Business Income and Extra Expense loss may not be combined. When the alternative per diem approach described above is selected, the maximum coverage under this loss settlement option is $10,000 on an actual loss sustained basis. You are not entitled to make claim for periods beyond 10 days.

**(6)** This optional loss settlement does not waive the Waiting Period shown in the Declarations for Business Income Additional Coverage. This Waiting Period does not apply to Extra Expense.

**4. Contingent Transit Business Income and Extra Expense**

The following is added **SECTION I - PROPERTY, A Coverage, 6. Coverage Extensions;**

**Contingent Transit Business Income and Extra Expense**

You may extend your Business Income or Extra Expense Coverage to apply to the actual loss of Business Income (not including **Extended Business Income**) or Extra Expense you sustain due to direct physical loss of or damage to Business Personal Property of Others, not in your care, custody or control, while "in transit", caused by or resulting from a Covered Cause of Loss.

The most we will pay for loss under this Extension is $100,000.

**5. Business Income and Extra Expense - Dependent Properties (Including World-Wide Coverage)**

**a.** The heading for **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, m. Business Income from Dependent Properties** is replaced by the following:

**m. Business Income and Extra Expense from Dependent Properties**

The following is added to **Business Income and Extra Expense from Dependent Properties**:

We will pay the necessary Extra Expense you incur due to direct physical loss of or damage to "dependent property" caused by or resulting from a Covered Cause of Loss.

The definition of Extra Expense for this Additional Coverage is replaced by the following:

Extra Expense means necessary expenses you incur during the "dependent property period of restoration" that you would not have incurred if there had been no direct physical loss or damage to the premises of any "dependent property" caused by or resulting from a Covered Cause of Loss:

**(1)** To avoid or minimize the "suspension" of business and to continue "operations"; or

**(2)** To minimize the "suspension" of business if you cannot continue "operations".

We will reduce the amount of your Extra Expense loss to the extent you can return "operations" to normal and discontinue such extra expense.

**(3)** Paragraph **(2)** of this Additional Coverage is replaced by the following:

**(2)** The most we will pay under this Additional Coverage is $100,000 per occurrence, regardless of the number of "dependent properties" affected.



OBCH332709   1304500

**b.** The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, m. Business Income from Dependent Properties:**

The "dependent property" may be located anywhere in the world.

**6. Business Income from Websites**

**a.** The following is added to **SECTION I - PROPERTY A. Coverage, 5. Additional Coverages:**

**Business Income from Websites**

**(1)** You may extend this insurance to apply to a "suspension" of "operations" caused by direct physical loss or damage to property that you depend on for "web site and communications services" from a Covered Cause of Loss.

**(2)** We will not pay for any loss of Business Income you incur during the first 12 hours that immediately follows the time when you first discovered the Covered Cause of Loss. This Waiting Period does not apply to Extra Expense.

**(3)** The most we will pay for the actual loss of Business Income and necessary and reasonable Extra Expense in any one occurrence under this Additional Coverage is $50,000 and only for the 7-day period immediately following the Covered Cause of Loss.

**(4)** Coverage does not apply to Websites unless there is a duplicate or back-up copy of your Web Page stored at a location that is at least 1,000 feet away from the premises of the vendor that provides "web site and communications services".

**(5)** "Web Site and Communication Services" means:

**(a)** Internet access, e-mail, web hosting, value added network services and application software services at the premises of others; or

**(b)** Network and router infrastructure services, including cable and wireless, located more than 1,000 feet from the described premises.

**b.** This Additional Coverage is not subject to **SECTION I - PROPERTY, C. Limits of Insurance.**

**7. Catastrophe Allowance**

The following is added to **SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions:**

**Catastrophe Allowance**

**(1)** This Coverage Extension applies when the direct physical loss or damage to Covered Property from a Covered Cause of Loss is the result of an insured event for which Property Claims Service (PCS) has publicly designated a catastrophe number to the event.

**(2)** You may extend the insurance provided under this Coverage Extension if the Limit of Insurance applicable to Building and Business Personal Property, as shown in the Declarations, are insufficient to compensate you for covered loss or damage you incur as a result of the insured catastrophe event.

**(3)** This Coverage Extension may not be applied to the deductible amount of this policy or any other policy. It also may not be used to cover any loss or damage that would not be covered under this policy.

**(4)** The most we will pay under this Extension in any one occurrence is $25,000.

The most we will pay under this Extension during each separate 12 month period of this policy is $25,000.

**8. Commercial Tools and Small Equipment**

**SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, v. Commercial Tools and Small Equipment,** paragraph **(4)** is replaced by the following:

**(4)** The most we will pay for any loss under this Additional Coverage in any one occurrence is $25,000 but not more than $2,500 for any one tool, tool box or piece of small equipment.

**9. Computer Equipment**

The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, r. Computer Equipment,** paragraph **(4):**

The most we will pay for direct physical loss or damage to Covered Property listed in paragraph **(1)** above in any one occurrence while "in transit" or at a premises other than the described premises is $75,000.

**10. Computer and Funds Transfer Fraud**

**SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, hh. Computer and Funds Transfer Fraud,** paragraph **(3)** is replaced by the following:

**(3)** The most we will pay per occurrence under this Additional Coverage is $10,000 unless a higher Limit of Insurance is shown in the Schedule of Amended Limits of Insurance.

**11. Consequential Loss to Stock**

The following is added to **SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions**:

**Consequential Loss to Stock**

**(1)** You may extend the insurance that applies to your Business Personal Property to apply to the reduction in value of the remaining parts of "stock" in process of manufacture that are physically undamaged but are unmarketable as a complete product because of direct physical loss or damage from a Covered Cause of Loss to other parts of covered "stock" in process of manufacture at an insured location.

**(2)** Should it be determined that such "stock" retains only a salvage value, we retain the option of paying the full value of the "stock" as agreed within this policy, and taking the damaged property for salvage purposes.

**(3)** Payment under this Coverage Extension is included within the applicable Limit of Insurance.

**12. Contract Penalties**

The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages**:

**Contract Penalties**

**(1)** We will pay for contract penalties you are required to pay due to your failure to provide your product or service according to contract terms because of direct physical loss or damage by a Covered Cause of Loss to Covered Property.

**(2)** The most we will pay for all penalties in any one occurrence is $25,000.

**(3)** The amount payable under this Additional Coverage is additional insurance.

**13. Deferred Payments**

**SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages,** paragraph **(4)** is replaced by the following:

**(4)** The most we will pay under this Additional Coverage for loss or damage in any one occurrence at a described premises is $25,000.

**14. Denial of Access to Premises**

The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages**:

**Denial of Access to Premises**

**(1)** We will pay for the actual loss of Business Income you sustain and necessary Extra Expense you incur when ingress to or egress from the described premises is prevented, due to direct physical loss of or damage to property that is away from but within 2000 feet of the described premises, caused by or resulting from any Covered Cause of Loss covered under this policy.

**(2)** The coverage for Business Income will begin 72 hours after the loss or damage to the premises that causes the denial of access and will apply for a period of up to 30 consecutive days after coverage begins.

**(3)** The coverage for Extra Expense will begin immediately after the loss or damage to the premises that causes the denial of access and will end:

**(a)** 30 consecutive days after coverage begins; or

**(b)** When your Business Income coverage ends;

whichever is earlier.

**(4)** The definitions of Business Income and Extra Expense contained in the Business Income Additional Coverage and the Extra Expense Additional Coverage also apply to this Denial of Access to Premises Additional Coverage.

**15. Electronic Vandalism**
**SECTION I - Property, A. Coverage, 5. Additional Coverages, dd. Electronic**



OBCH332709    1304500

**Vandalism,** paragraph **(3)** is replaced by the following:

**(3)** The most we will pay for loss of or damage to computer "hardware" or "software" in any one occurrence under this Additional Coverage is $5,000. The most we will pay for all covered losses to computer "hardware" or "software" under this Additional Coverage during each separate 12-month period of this policy is $25,000.

The most we will pay under this Additional Coverage for all loss or damage sustained in any one policy year, regardless of the number of occurrences of loss or damage or the number of premises, locations or computer systems involved, is $25,000, unless a higher Limit of Insurance is shown in the Declarations. If loss payment on the first occurrence does not exhaust this amount, then the balance is available for subsequent loss or damage sustained in, but not after, that policy year. With respect to an occurrence which begins in one policy year and continues or results in additional loss or damage in a subsequent policy year(s), all loss or damage is deemed to be sustained in the policy year in which the occurrence began.

**16. Employee Theft Including ERISA Compliance**

**SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, p. Employee Theft Including ERISA**, paragraph **(6)** is replaced by the following:

**(6)** The most we will pay for all loss resulting directly from an occurrence is $50,000. Regardless of the number of years this policy remains in force or the number of premiums paid, no Limit of Insurance cumulates from year to year.

**17. Employee Tools and Work Clothing**

The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages**:

**Employee Tools**

**(1)** We will pay for direct physical loss of or damage by a Covered Cause of Loss to tools and work clothing belonging to your "employees" while such tools and work

clothing are located at an insured location, your job sites or while in your vehicle "in transit" to and from your job sites.

**(2)** The most we will pay for loss or damage under this Additional Coverage is $25,000 per occurrence but not more than $2,500 for any one tool or item of clothing.

**(3)** The amount payable under this Additional Coverage is additional insurance.

**18. Expediting Expenses**

The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages:**

**Expediting Expenses**

**(1)** When a Covered Cause of Loss occurs to Covered Property, we will pay for the reasonable and necessary additional expenses you incur to:

**(a)** Make temporary repairs;

**(b)** Expedite permanent repair or replacement of damaged property; or

**(c)** Provide training on replacement machines or equipment.

**(2)** The most we will pay for loss under this Additional Coverage in any one occurrence is $25,000.

**(3)** The amount payable under this Additional Coverage is additional insurance.

**19. Extended Business Income**

**SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, f. Business Income, (2) Extended Business Income, (a) Extended Business Income - Other Than Rental Value**, paragraph **(ii)** and **(b) Extended Business Income - Rental Value**, paragraph **(ii)** are replaced by the following:

**(2)(a)** **Extended Business Income - Other Than Rental Value**

**(ii)** Ends on the earlier of:

**1)** The date you could restore your operations, with reasonable speed, to the level which would generate the business income amount that would have existed if no direct physical loss or damage had occurred; or

**2)** 180 consecutive days after the date determined in **(2)(a)(i)** above.

**(2)(b) Extended Business Income - Rental Value**

**(ii)** Ends on the earlier of:

**1)** The date you could restore tenant occupancy, with reasonable speed, to the level which would generate the "Rental Value" that would have existed if no direct physical loss or damage had occurred; or

**2)** 180 consecutive days after the date determined in **(2)(b)(i)** above.

**20. Fine Arts**

SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions, x. Fine Arts, paragraph **(3)** is replaced by the following:

**(3)** The most we will pay for loss under this Additional Coverage is $50,000 per occurrence regardless of the number of locations or buildings involved.

**21. Fire Department Service Charge**

SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, c. Fire Department Service Charge is replaced by the following:

**c. Fire Department Service Charge**

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay for your liability for the fire department service charges if:

**(1)** Assumed by contract or agreement prior to the loss; or

**(2)** Required by local ordinance.

**22. Fire Protection Equipment Recharge**

SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions, o. Fire Protection Systems Recharge, paragraph **(3)**, is replaced by the following:

**(3)** This Coverage Extension is included within the Limit of Insurance applicable to your covered property at the described premises. This Coverage Extension does not increase the Limits of Insurance.

**23. Forgery or Alteration**

SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, k. Forgery or Alteration, paragraph **(4)** is replaced by the following:

**(4)** The most we will pay for any loss, including legal expenses, under this Additional Coverage is $50,000, unless a higher Limit of Insurance is shown in the Schedule of Amended Limits of Insurance.

**24. Hired Auto - Physical Damage**

The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages**:

**Hired Auto - Physical Damage Coverage**

**(1)** We will pay for loss to an "auto" you or an "employee", at your direction, lease, hire or rent without a driver for a period of 30 days or less for the purpose of conducting customary operations for your business. This does not include any "auto" you lease, hire or rent from any of your "employees" or members of their households.

We will pay for loss to a covered "auto" or its equipment caused by:

**(a) Comprehensive coverage**

From any cause except:

**(i)** The covered "auto's" collision with another object; or

**(ii)** The covered "auto's" overturn.

**(b) Collision coverage**

**(i)** The covered "auto's" collision with another object; or

**(ii)** The covered "auto's" overturn.

**(2)** For the purpose of this Additional Coverage only, **SECTION I - PROPERTY, A. Coverage, 2. Property Not Covered,** paragraph **a.** is replaced by the following:

**a.** Aircraft, automobiles, motortrucks and other vehicles subject to motor vehicle registration and:

**(1)** Any "auto" as described in paragraph **(1)** above, while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity;

The
**Hanover**
Insurance Group™
OBCH332709    1304500

**(2)** Tapes, records, discs or other similar audio, visual or data electronic devices designed for use with audio, visual or data electronic equipment;

**(3)** Any device designed or used to detect speed measuring equipment such as radar or laser detectors and any jamming apparatus intended to elude or disrupt speed measurement equipment; or

**(4)** Any electronic equipment, without regard to whether this equipment is permanently installed, that receives or transmits audio, visual or data signals and that is not designed solely for the reproduction of sound.

**(3)** For the purpose of this Additional Coverage only, **SECTION I - PROPERTY, B. Exclusions** does not apply with the exception of the following exclusions:

**(a) 1.d. Nuclear Hazard**;

**(b) 1.f. War and Military Action**

For the purpose of this Additional Coverage only, the following exclusions are added to **SECTION I - PROPERTY, B. Exclusions**:

**1.** We will not pay for loss to a covered "auto" caused by or resulting from someone causing you to voluntarily part with the "auto" by trick or scheme or under false pretenses; or

**2.** We will not pay for loss caused by or resulting from wear and tear, freezing; mechanical or electrical breakdown; blowouts, punctures or other road damage to tires.

**(4)** For the purpose of this Additional Coverage only, the following is added to **SECTION I - PROPERTY, C. Limits of Insurance**:

**Hired Auto Physical Damage Limits of Insurance**

The most we will pay for loss to any one covered "auto" is the lesser of:

**a.** The actual cash value of the damaged or stolen property as of the time of loss;

**b.** The cost of repairing or replacing the damaged or stolen property

with other property of like kind and quality; or

**c.** $50,000.

**(5)** The following is added to **SECTION I - PROPERTY, D. Deductibles,** paragraph **5.**:

Hired Auto - Physical Damage

**(6)** For the purpose of this Additional Coverage only, the following is added to **SECTION I - PROPERTY, G. Property Definitions**:

**1.** "Auto" means a land motor vehicle, trailer or semitrailer that is subject to motor vehicle registration, or designed for travel on public roads, including any attached machinery or equipment.

The amount payable under this Additional Coverage is additional insurance.

This coverage is excess to any other valid insurance whether collectible or not.

**25. Installation Floater**

**SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, w. Installation**, paragraph **(8)** is replaced by the following:

**(8)** The most we will pay for loss of or to damage to property covered under this Additional Coverage in any one occurrence is $50,000, regardless if the property is located at a jobsite, while "in transit", or at a temporary storage location.

**26. Interruption of Computer Operations**

**SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, ee. Interruption of Computer Operations**, paragraph **(3)**, is replaced by the following:

**(3)** The most we will pay under this Additional Coverage - Interruption of Computer Operations for all loss sustained and expense incurred in any one policy year, regardless of the number of interruptions or the number of described premises or computer systems involved, is $50,000 unless a higher Limit of Insurance is shown in the Declarations. If loss payment relating to the first interruption does not exhaust this amount, then the balance is available for loss or expense sustained or incurred as a result of subsequent interruptions in that policy year. A balance remaining at the end of a policy year does not increase the amount of insurance in

the next policy year. With respect to any interruption which begins in one policy year and continues or results in additional loss or expense in a subsequent policy year(s), all loss and expense is deemed to be sustained or incurred in the policy year in which the interruption began.

**27. Inventory and Loss Appraisal**

**SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions, j. Inventory and Loss Appraisal**, paragraph **(2)**, is replaced by the following:

**(2)** Regardless of the number of premises involved, the most we will pay under this Extension is $20,000.

**28. Key Replacement and Lock Repair**

**SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions, g. Key Replacement and Lock Repair**, paragraph **(2)**, is replaced by the following:

**(2)** The most we will pay under this Extension is $25,000. The Deductible does not apply to this Extension.

**29. Leasehold Interest (Tenants Only)**

**a.** **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, z. Leasehold Interest (Tenants Only)**, paragraph **(2)(b)**, is replaced by the following:

**(2)(b)** $25,000;

**b.** **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, z. Leasehold Interest - Tenant**, paragraph **(4)(a)**, is replaced by the following:

**(4)(a)** $25,000 will be the maximum amount payable regardless of the number of leases affected by the same Covered Cause of Loss.

**30. Lessor's Lease Cancellation**

The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages:**

**Lessor's Lease Cancellation**

**(1)** We will pay the actual loss of business income you sustain due to the cancellation of a lease by your tenants in a Covered Building due to untenantability that is caused by direct physical loss or damage to that building from a Covered Cause of Loss.

This Additional Coverage only applies if at the time of loss the building was occupied and business was being conducted by the tenant cancelling the lease or their sub-lessee.

**(2)** We will pay for loss of business income that you sustain after tenantability is restored and until the earlier of:

**(a)** The date you lease the premises to another tenant; or

**(b)** 12 months immediately following the "period of restoration".

**(3)** Regardless of the number of tenants cancelling a lease at the described premises, the most we will pay under this Additional Coverage is $10,000 per occurrence

**(4)** The amount payable under this Additional Coverage is additional insurance.

**(5)** **Special Lease Cancellation Exclusions**

We will not pay for:

**(a)** Lease cancelled after the "period of restoration";

**(b)** Lease cancelled, suspended or allowed to lapse by you;

**(c)** Return of prepaid rent or security and other deposits made by tenants; or

**(d)** Lease cancelled at the normal expiration date.

**31. Lessor's Tenant Move Expenses**

The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages**:

**Lessor's Tenant Move Expenses**

**(1)** In the event that your tenants must temporarily vacate the covered Building at the described premises due to untenantability caused by direct physical loss or damage by a Covered Cause of Loss, we will pay the following expenses you actually incur to move those tenants out of and back into your covered Building.

**(2)** We will only pay for the following expenses:

**(a)** Packing, transporting and unpacking the tenant's Business Personal Property including the cost of insuring the move out

and back and any necessary disassembly and reassembly or setup of furniture and equipment; and

**(b)** The net cost to discontinue and re-establish the tenants' utility and telephone services, after any refunds due the tenants.

**(3)** We will only pay for these expenses that you actually incur within 60 days of the date that the damaged buildings has been repaired or rebuilt.

**(4)** Regardless of the number of tenants involved, the most we will pay under this Additional Coverage is $10,000 per occurrence. This Additional Coverage is not subject to the Limits of Insurance under **SECTION I - PROPERTY.**

**32. Marring and Scratching**

The following is added to **SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions**:

**Marring and Scratching**

**(1)** You may extend the insurance that applies to Business Personal Property to apply to damage caused directly by sudden and accidental marring and scratching of:

**(a)** Your "stock";

**(b)** Your printing plates; or

**(c)** Property of others that is in your care, custody or control.

**(2)** This Coverage Extension does not apply to:

**(a)** Property at other than the described premises; or

**(b)** Personal Property in transit.

**(3)** Payment under this Coverage Extension is included within Limit of Insurance applicable to your Business Personal Property.

**33. Money Orders and Counterfeit Money**

**SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, j. Money Orders and Counterfeit Money**, paragraph **(3)**, is replaced by the following:

**(3)** The most we will pay for any loss under this Additional Coverage is $25,000.

**34. Newly Acquired or Constructed Property**

**SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions, a. Newly Acquired or Constructed Property**, paragraphs, **(2)(c)** and **(3)** are replaced by the following:

**(2) Business Personal Property**

**(c)** The most we will pay for loss or damage under this Extension is $1,000,000 at each premises.

**(3) Business Income and Extra Expense**

You may extend the insurance that applies to Business Income and Extra Expense to apply to property at any location you acquire. The most we will pay for loss or damage under this Extension is $500,000 at each premise.

**35. Ordinance or Law - Demolition Cost and Increased Cost of Construction**

**SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, I. Ordinance or Law, (5) Loss Payment**, paragraph **(d)** is replaced by the following:

**(d)** The most we will pay for the total of all covered losses for Demolition Cost and Increased Cost of Construction for each building described in the Declarations is $50,000 or the amount shown in the Additional Property Schedule. If a damaged building(s) is covered under a Blanket Limit of Insurance and the Blanket Limit of Insurance applies to more than one building or item of property, then the most we will under this Additional Coverage, for each building, is $50,000, or the amount shown in the Additional Property Coverage Schedule.

**36. Ordinance or Law - Increased Period of Restoration**

**a.** The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, I. Ordinance or Law,** paragraph **(4) Coverage:**

If a Covered Cause of Loss occurs to property at the premises described in the Declarations, coverage is extended to include the amount of actual and necessary loss you sustain during the increased period of "suspension" of "operations" caused by or resulting from the enforcement of any ordinance or law that:

**(a)** Regulates the construction or repair of any property;

**(b)** Requires the tearing down of parts of any property not damaged by a Covered Cause of Loss; and

**(c)** Is in force at the time of loss.

However, coverage is not extended under this endorsement to include loss caused by or resulting from the enforcement of any ordinance or law which requires:

**(d)** The demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungi", wet or dry rot or bacteria; or

**(e)** Any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungi", wet or dry rot or bacteria.

**b.** The following is added to **SECTION I - PROPERTY, A. Coverage 5. Additional Coverages, I. Ordinance or Law, (5) Loss Payment**, paragraph **(c):**

The most we will pay for loss under Increased Period of Restoration in any one occurrence is $100,000 for each described building shown in the Declarations or the amount shown in the Additional Property Coverage Schedule. If a damaged building(s) is covered on a blanket Limit of Insurance which applies to more than one building or item of property, then the most we will pay for Increased Period of Restoration for each described building in any one occurrence is $100,000.

**37. Ordinance or Law (Tenant's Improvement Extension)**

**a.** The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, I. Ordinance or Law, (4) Coverage:**

**(a)** Coverage provided under paragraphs **(a)**, **(b)** and **(c)** above applies to tenant's improvements and betterments but only if a limits of Insurance is shown in the Declarations for Business Personal Property. Business Personal Property must be insured on a replacement cost basis.

**(b)** This extension is provisional and excess to any other valid insurance for tenant's improvements and betterments whether collectible or not.

**b.** The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, I. Ordinance or Law, (5) Loss Payment**, paragraph **(c):**

Regardless of the number of locations insured or buildings involved, the most we will pay for any loss to tenant's improvements and betterments under this Additional Coverage in any one occurrence is $50,000.

**38. Outdoor Property**

**SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions, c. Outdoor Property,** paragraph **(3)** is replaced by the following:

**(3)** Regardless of the number of described premises involved, the most we will pay for loss or damage under this Extension, including debris removal expense, is $25,000, but not more than $2,500 for any one tree, shrub or plant.

**39. Personal Effects**

**SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions, d. Personal Effects,** paragraph **(3)** is replaced by the following:

**(3)** The most we will pay for loss or damage under this Extension is $50,000 at each described premises.

**40. Portable Electronic Devices Coverage Worldwide**

The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages:**

**Portable Electronic Devices Coverage Worldwide**

**(1)** We will pay for loss or damage caused by or resulting from a Covered Cause of Loss to portable electronic devices while anywhere in the world, including while "in transit".



OBCH332709     1304500

**(2)** For the purpose of this Additional Coverage, the following is added to **SECTION I - PROPERTY, G. Property Definitions**:

Portable electronic devices includes laptops, tablets, e-readers, smartphones or other lightweight, hand-held or wearable devices capable of storing, retrieving and processing data.

**(3)** This coverage is provided when the property is owned by you or owned by others when in your or your "employees" care, custody or control, subject to **SECTION I - PROPERTY, E. Property Loss Conditions, 5. Loss Payment**, paragraph **d.(3)(b).**

**(4)** We will not pay for loss or damage to portable electronic devices when caused by, resulting from, or arising out of "theft" or unexplained loss when the property is checked baggage with a carrier for transit.

**(5)** The provisions for a Business Income loss will be governed by the terms of **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages f. Business Income** except:

**(a)** There is no requirement that a loss occur within 1,000 feet or at the described premises as stated in paragraph **(1)(a)**; and

**(b)** The following are not included under this Additional Coverage:

**(i)** Continuing normal operating expenses incurred, including "payroll expense";

**(ii)** Extended Business Income.

**(6)** The provisions for Extra Expense loss will be governed by the terms of **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, g. Extra Expense** except:

**(a)** There is no requirement that a loss occur within 1,000 feet or at the described premises as stated in paragraph **g.(1)** and **g.(2)**.

**(7)** **Limitations**, item **b.** does not apply to this Additional Coverage.

**(8)** **SECTION I - PROPERTY, B. Exclusions, 5. Business Income and Extra Expense Exclusions,** paragraph **(4)** does not apply to this Additional Coverage.

**(9)** Regardless of the number of lost or damaged portable electronic devices, the most we will pay per occurrence including actual loss of Business Income you sustain and necessary Extra Expense you incur, is $25,000.

**(10)** The amount payable under this Additional Coverage is additional insurance.

**41. Precious Metal Theft Payment Changes**

**SECTION I - PROPERTY, A. Coverage, 4. Limitations**, paragraph **c.** is replaced by the following:

**c.** For loss or damage by "theft", the following types of property are covered only up to the limits shown below:

**(1)** $10,000 for furs, fur garments and garments trimmed with fur.

**(2)** $10,000 for jewelry, watches, watch movements, jewels, pearls, precious and semi-precious stones

This limit does not apply to jewelry and watches worth $250 or less per item.

**(3)** $50,000 for bullion, gold, silver, platinum and other precious alloys or metals.

**42. Personal Property in Transit**

**SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions, i. Personal Property in Transit**, paragraph **(5)** is replaced by the following:

**(5)** The most we will pay for loss or damage under this Coverage Extension is $50,000.

**43. Sales Representative Samples**

**SECTION I - PROPERTY, 5. Additional Coverages, y. Sales Representative Samples**, paragraph **(3)** is replaced by the following:

**(3)** The most we will pay for any loss or damage under this Additional Coverage is $25,000.

**44. Soft Costs**

The following is added to **SECTION I - PROPERTY, A. Coverage, 6 Extensions**: **Soft Costs**

**(1)** We will pay the actual "soft cost expenses" that arise out of a delay in the construction, erection or fabrication of a Covered Building that

is listed in **SECTION I - PROPERTY**, **A. Coverage**, **1. Covered Property**, paragraph **a.(6)** resulting from direct physical loss or damage to that Covered Building from a Covered Cause of Loss.

**(2)** We will only pay the necessary "soft cost expenses" that are over and above those costs that would have been incurred had there been no delay.

**(3)** The most we will pay under this Extension in any one occurrence is $10,000.

**(4)** "Soft cost expenses" means additional:

**(a)** Realty taxes and other assessments that you incur for the period of time that construction has been extended beyond the projected completion date;

**(b)** Interest on money borrowed to finance construction, remodeling, renovation or repair; and

**(c)** Advertising, public relations and promotional expenses.

**45. Spoilage**

The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages**:

The following provisions (**a.** through **g.** inclusive) apply to the insurance provided by this Additional Coverage:

**a.** For the purpose of this Additional Coverage the following is added to **SECTION I - PROPERTY, A. Coverage, 1. Covered Property**:

Covered Property means "perishable goods" at the insured locations, if the "perishable goods" are:

**a.** Owned by you and used in your business; or

**b.** Owned by others and in your care, custody or control except as otherwise provided in **SECTION I - PROPERTY, E. Property Loss Conditions, 5. Loss Payment**, paragraph **d.(3)(b)**.

**b.** The following is added to **SECTION I - PROPERTY, A. Coverage, 2. Property Not Covered**:

Property located:

**(1)** On the exterior of buildings;

**(2)** In the open; or

**(3)** In vehicles.

**c.** **SECTION I - PROPERTY, A. Coverage, 3. Covered Causes Of Loss** is replaced by the following:

**3. Covered Causes of Loss**

Subject to the exclusions described in item **e.** of this Additional Coverage, Covered Causes of Loss means the following:

**a.** Breakdown or Contamination, meaning:

**(1)** Change in temperature or humidity resulting from mechanical breakdown or mechanical failure of refrigerating, cooling or humidity control apparatus or equipment.

Coverage applies only while such apparatus or equipment is at the described premises shown in the Schedule; or

**(2)** Contamination by a refrigerant. Coverage applies only while the refrigerating apparatus or equipment is at the described premises.

Mechanical breakdown and mechanical failure do not mean power interruption, regardless of how or where the interruption is caused and whether or not the interruption is complete or partial.

**b.** Power Outage, meaning change in temperature or humidity resulting from complete or partial interruption of electrical power, either on or off the described premises, due to conditions beyond your control.

**d.** **SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions** does not apply.

The **Hanover**
Insurance Group™

OBCH332709     1304500

e.  **SECTION I - PROPERTY, B. Exclusions** paragraph **1.,** does not apply to this Coverage Extension except for:

(1)  **b.,** Earth Movement;

(2)  **c.,** Governmental Action;

(3)  **d.,** Nuclear Hazard;

(4)  **f.,** War and Military Action; and

(5)  **g.,** Water.

(6)  For the purposes of this additional coverage, the following exclusions are added to **SECTION I - PROPERTY, B. Exclusions,** paragraph **2**:

   We will not pay for loss or damage caused by or resulting from:

   1.  The disconnection of any refrigerating, cooling or humidity control system from the source of power.

   2.  The deactivation of electrical power caused by the manipulation of any switch or other device used to control the flow of electrical power or current.

   3.  The inability of an electrical utility company or other power source to provide sufficient power due to:

      a.  Lack of fuel; or

      b.  Governmental order.

   4.  The inability of a power source at the described premises to provide sufficient power due to lack of generating capacity to meet demand.

   5.  Breaking of any glass that is a permanent part of any refrigerating, cooling or humidity control unit.

f.  **Conditions**

   For the purpose of this Additional Coverage, **SECTION I - PROPERTY, E. Property Loss Conditions, 5. Loss Payment**, paragraph **d.** is replaced by the following:

   d.  We will determine the value of Covered Property as follows:

(1)  For "perishable goods" you have sold but not delivered, at the selling price less discounts and expenses you otherwise would have had;

(2)  For other "perishable goods", at actual cash value.

f.  Regardless of the number of insured locations involved, the most we will pay under this Additional Coverage for loss or damage in any one occurrence is $25,000. This Additional Coverage is not subject to **SECTION I - PROPERTY, C. Limits of Insurance.**

46.  **Temporary Relocation of Property**

   The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages**:

   **Temporary Relocation of Property**

(1)  We will pay for loss of or damage to Covered Property from a Covered Cause of Loss while it is away from the described premises, if it is being stored temporarily at a location you do not own, lease or operate while the described premises is being renovated or remodeled.

(2)  This coverage applies for 90 days after the property is first moved, but does not extend past the date on which this policy expires.

(3)  The most we will pay under this Additional Coverage is $50,000.

(4)  The amount payable under this Additional Coverage is additional insurance.

47.  **Tenant Signs**

   **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, t. Tenant Signs**, paragraph **(4)** is replaced by the following:

(4)  The most we will pay for loss or damage in any one occurrence is $25,000 regardless of the number of locations or buildings involved.

48.  **Unauthorized Business Credit Card Use**

   **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, aa. Unauthorized Business Credit Card Use**, paragraph **(5)** is replaced by the following:

(5)  The most we will pay for any loss including legal expenses, under this

Additional Coverage is $10,000 per occurrence.

**49. Underground Water Seepage**

The following is added to **SECTION I - PROPERTY**, **A. Coverage, 5. Additional Coverages**:

**Underground Water Seepage**

(1) We will pay for direct physical loss or damage to Covered Property at the described premises caused by or resulting from water under the ground surface pressing on, or flowing or seeping through:

(a) Foundations, walls, floor or paved surfaces;

(b) Basements, whether paved or not; or

(c) Doors, windows or other openings in any building or other structure.

**THIS IS NOT FLOOD INSURANCE OR PROTECTION FROM AN INUNDATION OF SURFACE WATER, HOWEVER CAUSED.**

This coverage is intended to provide insurance for damage by subterranean water when such event is a localized incident - not part of a general, widespread "flood" water event.

We will not pay for loss or damage to property when the subterranean water causing the Underground Water Seepage is itself caused by any "flood" or general flooding conditions - including but not limited to those enumerated under **SECTION I - PROPERTY, B. Exclusions**, paragraph **1.g. Water**.

(2) **SECTION I - PROPERTY, B. Exclusions**, paragraphs **g. Water (4)** is deleted.

(3) The most we will pay for loss in any one occurrence under this Additional Coverage is $100,000.

(4) We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds $1,000. This deductible is to apply separately to:

(a) Each building, including personal property therein;

(b) Personal property in each building if no coverage is provided on the containing building; and

(c) Personal property in the open.

The aggregate amount of this

deductible in any one occurrence shall not exceed $5,000.

We will then pay the amount of loss or damage in excess of the deductible up to the applicable Limit of Insurance.

(5) **Special Underground Water Seepage Exclusions**

(a) The **Exclusions** and **Limitations** sections of **SECTION I - PROPERTY** apply to this Additional Coverage except as provided under paragraph **(b)** below.

(b) To the extent that a part of **SECTION I - PROPERTY, B. Exclusions**, paragraph **1.g. Water** might conflict with this Additional Coverage, that part of the **Water** Exclusion does not apply.

(c) This Additional Coverage does not apply to loss or damage resulting from your failure to:

(i) Keep a sump pump or its related equipment in proper working condition; or

(ii) Perform the routine maintenance or repair necessary to keep a sewer or drain free from obstructions.

**50. Unnamed Locations**

The following is added to **SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions**:

**Unnamed Locations**

**a. Personal Property and Computer Equipment**

(1) You may extend the insurance that applies to Business Personal Property and "Computer Equipment" to apply to direct physical loss or damage to Business Personal Property and "Computer Equipment" caused by or resulting from a Covered Cause of Loss while such property is located at a "client or virtual office premises".

(2) This Coverage Extension also applies to Business Personal Property and "Computer Equipment" that are:

(a) Owned by an "employee";



OBCH332709          1304500

and

**(b)** Used for your business;

While such property is located at a "client or virtual office premises" and sustains direct physical loss or damage caused by or resulting from a Covered Cause of Loss.

**(3)** This Coverage Extension does not apply to property otherwise covered under the following Additional Coverages or Coverage Extensions:

**(a)** Accounts Receivable;

**(b)** Fine Arts;

**(c)** Personal Property Off Premises

**(d)** Personal Property in Transit

**(e)** Valuable Papers and Records (Other Than Electronic Data)

**(f)** Portable Electronic Devices Coverage Worldwide

**(g)** Worldwide Property Off Premises

**(4)** The most we will pay under this Coverage Extension in any one occurrence is $10,000 regardless of the number of locations involved. The most we will pay for all covered losses under this Coverage Extension during each separate 12 month period of this policy is $25,000.

This Coverage Extension is not subject to **SECTION I - PROPERTY, C. Limits of Insurance**.

**b. Business Income and Extra Expense**

**(1)** If this policy provides for Business Income and Extra Expense coverages, you may extend the insurance that applies to the actual loss of Business Income (not including Extended Business Income) you sustain and necessary Extra Expense you incur due to the "suspension" of your business activities occurring at a "client or virtual office premises" during the "period of restoration". The "suspension" must be caused by direct physical loss or damage caused by or resulting from a Covered Cause of Loss at a

"client or virtual office premises".

**(2)** We will reduce the amount of your Business Income loss, other than Extra Expense, to the extent that you can resume operations, in whole or in part, by using any other available:

**(a)** Source of materials;

**(b)** Outlet for your products.

**(3)** If you do not resume operations or do not resume operations as quickly as possible, we will pay based on the length of time it would have taken to resume operations as quickly as possible.

**(4)** The coverage period for Business Income under this Coverage Extension:

**(a)** Begins 24 hours after the time of direct physical loss or damage caused by or resulting from a Covered Cause of Loss at the premises of a "client or virtual office premises"; and

**(b)** Ends on the date when the property at the premises of the "client or virtual office premises" should be repaired, rebuilt or replaced (to the extent necessary to resume operations) with reasonable speed and similar quality or 12 months immediately following the date of direct physical loss or damage, whichever is shorter.

**(5)** The Business Income coverage period as stated in paragraph **(a)** above does not include any increased period required due to the enforcement of any ordinance or law that:

**(a)** Regulates the construction, use or repair, or requires the tearing down of any property; or

**(b)** Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

The expiration date of this policy will not reduce the Business Income coverage period.

**(6)** The most we will pay under this Coverage Extension in any one occurrence is $10,000 regardless of the number of locations involved. The most we will pay for all covered losses under this Coverage Extension during each separate 12 month period of this policy is $50,000.

This Coverage Extension is not subject to **SECTION I - PROPERTY, C. Limits of Insurance**.

**(7)** The definition of Business Income contained in the Loss of Business Income Additional Coverage applies to this Coverage Extension.

**c.** For purposes of this Coverage Extension, "client or virtual office premises" means the interior of that portion of any building occupied by an "employee", including

**(1)** An "employee's" residence; or

**(2)** A client's business location located anywhere in the world.

**51. Utility Services (Including Overhead Transmission Lines)**

**a.** **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, bb. Utility Services**, paragraphs **(1)** and **(2)** are replaced by the following:

**(1)** We will pay for loss of or damage to Covered Property caused by an interruption in service to the described premises. The interruption must result from direct physical loss or damage by a Covered Cause of Loss to property not on the described premises that provides the services shown in paragraph **(3)** below.

The most we will pay for loss in any one occurrence under this Additional Coverage is $50,000 at each described premises or the Limit of Insurance shown in the Additional Property Coverage Schedule.

**(2)** We will pay for the actual loss of Business Income you sustain and necessary Extra Expense you incur caused by the interruption of service at the described premises. The interruption must result from direct physical loss or damage by a Covered Cause of Loss to property not on the described premises that provides the services shown in paragraph **(3)** below.

We will only pay for loss you sustain after the first 24 hours following the direct physical loss or damage to the property described above.

The most we will pay for loss in any one occurrence under this Additional Coverage is $50,000 at each described premises or the Limit of Insurance shown in the Additional Property Coverage Schedule.

**b.** **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, bb. Utility Services**, paragraph **(4)** is deleted.

**52. Worldwide Property Off Premises**

The following is added to **SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions**:

**Worldwide Property Off-Premises**

**(1)** You may extend the insurance that applies to your Business Personal Property and Personal Property of Others to apply to that property while it is temporarily outside the coverage territory if it is:

**(a)** Temporarily at a location you do not own, lease or operate;

**(b)** Temporarily on display or exhibit at any fair, trade show or exhibition;

**(c)** Samples of your "stock" in trade in the custody of your sales representatives; or

**(d)** While "in transit" between the described premises and a location described in **(a), (b)** or **(c)** above.

**(2)** The most we will pay for loss or damage under this Extension is $50,000.

**(3)** This Extension provides an additional amount of insurance.



OBCH332709     1304500

## B. Blanket Coverages

### 1. Accounts Receivable

**SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions, f. Accounts Receivable,** paragraph **(2)**, is replaced by the following:

**(2)** The most we will pay under this Coverage Extension for loss or damage in any one occurrence at the described premises or away from the described premises is subject to the Blanket Coverage Limit of Insurance, or the amount shown in the Additional Property Coverage Schedule.

### 2. Backup or Overflow of a Sewer, Drain or Sump

The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages**:

**Backup or Overflow of a Sewer, Drain or Sump**

**(1)** We will pay for direct physical loss or damage to Covered Property at the described premises, solely caused by or resulting from water or waterborne material carried or moved by water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment. The term drain includes a roof drain and its related fixtures.

**(2)** For the purpose of this Additional Coverage only, **SECTION I - PROPERTY, B. Exclusions,** paragraph **g. Water (3)** is deleted.

**(3)** Regardless of the number of insured locations involved, the most we will pay under this Additional Coverage for loss or damage in any one occurrence is subject to the Blanket Limit of Insurance or the amount shown in the Additional Property Coverage Schedule.

**(4) Special Sewer Backup Exclusion**

We will not pay for:

**(a)** Loss or damage from water or other materials that back-up or overflow from any sewer or drain, sump, sump pump or related equipment when it is caused by or results from any "flood", regardless of the proximity of the back-up or overflow to the "flood" condition; or

**(b)** Failure to keep a sump pump or its related equipment in proper working condition; or

**(c)** Failure to perform routine maintenance or repair necessary to keep a sewer or drain free from obstructions.

### 3. Computer Equipment

**SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, r. Computer Equipment, paragraph (6)** is replaced by the following:

**(6)** Regardless of the number of insured locations involved, the most we will pay for loss or damage under this Additional Coverage to property described in paragraphs **(1)** and **(2)** above in any one occurrence at insured locations is subject to the Blanket Coverage Limit of Insurance, or the amount shown in the Additional Property Coverage Schedule.

The most we will pay for Extra Expense is $5,000 or the amount shown in the Additional Property Coverage Schedule in any one occurrence.

This Additional Coverage is not subject to **SECTION I - PROPERTY, C. Limits of Insurance.**

### 4. Debris Removal

**SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, a. Debris Removal,** paragraph **(4)**, is replaced by the following:

**(4)** We will pay up to the blanket limit of insurance for debris removal expense, for each location, in any one occurrence of physical loss or damage to Covered Property, if one or both of the following circumstances apply:

**(a)** The total of the actual debris removal expense plus the amount we pay for direct physical loss or damage exceeds the Limit of Insurance on the Covered Property that has sustained loss or damage.

**(b)** The actual debris removal expense exceeds 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

Therefore, if Paragraphs **(4)(a)** and/or **(4)(b)** above, apply, our total payment for direct physical loss or damage and debris removal expense may reach but will never exceed the Limit of Insurance on the Covered Property that has sustained loss or damage, plus the blanket limit of insurance.

5. **Valuable Papers and Records (Other Than Electronic Data)**

   SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions, e. Valuable **Papers and Records (Other Than Electronic Data)**, paragraph **(3)** is replaced by the following:

   **(3)** Regardless of the number of locations involved, the most we will pay under this Coverage Extension for loss or damage in any one occurrence at the described premises is subject to the Blanket Limit of Insurance, or the amount shown in the Additional Coverage Schedule.

ALL OTHER TERMS, CONDITIONS, AND EXCLUSIONS REMAIN UNCHANGED.



OBCH332709    1304500

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# BUSINESSOWNERS LIABILITY SPECIAL BROADENING ENDORSEMENT

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

| SUMMARY OF COVERAGES | Limits | Page |
|---|---|---|
| 1. Additional Insured by Contract, Agreement or Permit | Included | 1 |
| 2. Additional Insured - Broad Form Vendors | Included | 2 |
| 3. Alienated Premises | Included | 3 |
| 4. Broad Form Property Damage - Borrowed Equipment, Customers Goods and Use of Elevators | Included | 3 |
| 5. Incidental Malpractice (Employed Nurses, EMT's and Paramedics) | Included | 3 |
| 6. Personal and Advertising Injury - Broad Form | Included | 4 |
| 7. Product Recall Expense | Included | 4 |
| Product Recall Expense Each Occurrence Limit | $25,000 Occurrence | 5 |
| Product Recall Expense Aggregate Limit | $50,000 Aggregate | 5 |
| Product Recall Deductible | $500 | 5 |
| 8. Unintentional Failure to Disclose Hazards | Included | 6 |
| 9. Unintentional Failure to Notify | Included | 6 |

This endorsement amends coverages provided under the Businessowners Coverage Form through new coverages and broader coverage grants. This coverage is subject to the provisions applicable to the Businessowners Coverage Form, except as provided below.

The following changes are made to **SECTION II - LIABILITY:**

1. **Additional Insured by Contract, Agreement or Permit**

   The following is added to **SECTION II - LIABILITY, C. Who Is An Insured:**

   **Additional Insured by Contract, Agreement or Permit**

   **a.** Any person or organization with whom you agreed in a written contract, written agreement or permit to add such person or organization as an additional insured on your policy is an additional insured only with respect to liability for "bodily injury", "property damage", or "personal and advertising injury" caused, in whole or in part, by your acts or omissions, or the acts or omissions of those acting on your behalf, but only with respect to:

   **(1)** "Your work" for the additional insured(s) designated in the contract, agreement or permit;

   **(2)** Premises you own, rent, lease or occupy; or

   **(3)** Your maintenance, operation or use of equipment leased to you.

   **b.** The insurance afforded to such additional insured described above:

   **(1)** Only applies to the extent permitted by law; and

   **(2)** Will not be broader than the insurance which you are required by the contract, agreement or permit to provide for such additional insured.

   **(3)** Applies on a primary basis if that is required by the written contract, written agreement or permit.

   **(4)** Will not be broader than coverage provided to any other insured.

   **(5)** Does not apply if the "bodily injury", "property damage" or "personal and advertising injury" is otherwise excluded from coverage under this Coverage Part, including any endorsements thereto.

**c.** This provision does not apply:

**(1)** Unless the written contract or written agreement was executed or permit was issued prior to the "bodily injury", "property damage", or "personal injury and advertising injury".

**(2)** To any person or organization included as an insured by another endorsement issued by us and made part of this Coverage Part.

**(3)** To any lessor of equipment:

**(a)** After the equipment lease expires; or

**(b)** If the "bodily injury", "property damage", "personal and advertising injury" arises out of sole negligence of the lessor.

**(4)** To any:

**(a)** Owners or other interests from whom land has been leased if the "occurrence" takes place or the offense is committed after the lease for the land expires; or

**(b)** Managers or lessors of premises if:

**(i)** The "occurrence" takes place or the offense is committed after you cease to be a tenant in that premises; or

**(ii)** The "bodily injury", "property damage", "personal injury" or "advertising injury" arises out of structural alterations, new construction or demolition operations performed by or on behalf of the manager or lessor.

**(5)** To "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or the failure to render any professional services.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" or the offense which caused the "personal and advertising injury" involved the rendering of or failure to render any professional services by or for you.

**d.** With respect to the insurance afforded to these additional insureds, the following is added to **SECTION II - LIABILITY, D. Liability and Medical Expense Limits of Insurance**:

The most we will pay on behalf of the additional insured for a covered claim is the lesser of the amount of insurance:

**1.** Required by the contract, agreement or permit described in Paragraph **a.;** or

**2.** Available under the applicable Limits of Insurance shown in the Declarations.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations

**e.** All other insuring agreements, exclusions, and conditions of the policy apply.

**2.** **Additional Insured - Broad Form Vendors**

The following is added to **SECTION II - LIABILITY, C. Who Is An Insured:**

**Additional Insured - Broad Form Vendors**

**a.** Any person or organization that is a vendor with whom you agreed in a written contract or written agreement to include as an additional insured under this Coverage Part is an insured, but only with respect to liability for "bodily injury" or "property damage" arising out of "your products" which are distributed or sold in the regular course of the vendor's business.

**b.** The insurance afforded to such vendor described above:

**(1)** Only applies to the extent permitted by law;

**(2)** Will not be broader than the insurance which you are required by the contract or agreement to provide for such vendor;

**(3)** Will not be broader than coverage provided to any other insured; and

**(4)** Does not apply if the "bodily injury", "property damage" or "personal and advertising injury" is otherwise excluded from coverage under this Coverage Part, including any endorsements thereto

**c.** With respect to insurance afforded to such vendors, the following additional exclusions apply:

The insurance afforded to the vendor does not apply to:

**(1)** "Bodily injury" or "property damage" for which the vendor is obligated to pay damages by reasons of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement;

**(2)** Any express warranty unauthorized by you;

**(3)** Any physical or chemical change in the product made intentionally by the vendor;

**(4)** Repackaging, unless unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instruction from the manufacturer, and then repackaged in the original container;

**(5)** Any failure to make such inspection, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business in connection with the sale of the product;

**(6)** Demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product;

**(7)** Products which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor;

**(8)** "Bodily injury" or "property damage" arising out of the sole negligence of the vendor for its own acts or omissions or those of its employees or anyone else acting on its behalf. However, this exclusion does not apply to:

　**(a)** The exceptions contained within the exclusion in subparagraphs **(4)** or **(6)** above; or

　**(b)** Such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products.

**(9)** "Bodily injury" or "property damage" arising out of an "occurrence" that took place before you have signed the contract or agreement with the vendor.

**(10)** To any person or organization included as an insured by another endorsement issued by us and made part of this Coverage Part.

**(11)** Any insured person or organization, from whom you have acquired such products, or any ingredient, part or container, entering into, accompanying or containing such products.

**d.** With respect to the insurance afforded to these vendors, the following is added to **SECTION II - LIABILITY, D. Liability and Medical Expense Limits of Insurance**:

The most we will pay on behalf of the vendor for a covered claim is the lesser of the amount of insurance:

**1.** Required by the contract or agreement described in Paragraph **a.**; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

**3. Alienated Premises**

**SECTION II - LIABILITY, B. Exclusions, 1. Applicable To Business Liability Coverage k. Damage to Property,** paragraph **(2)** is replaced by the following:

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises and occurred from hazards that were known by you, or should have reasonably been known by you, at the time the property was transferred or abandoned.

**4. Broad Form Property Damage - Borrowed Equipment, Customers Goods, Use of Elevators**

**a.** The following is added to **SECTION II - LIABILITY, B. Exclusions, 1. Applicable To Business Liability Coverage, k. Damage to Property**:

Paragraph **(4)** does not apply to "property damage" to borrowed equipment while at a jobsite and not being used to perform operations.

Paragraph **(3), (4)** and **(6)** do not apply to "property damage" to "customers goods" while on your premises nor to the use of elevators.

**b.** For the purposes of this endorsement, the following definition is added to **SECTION II - LIABILITY, F. Liability and Medical Expenses Definitions:**

**1.** "Customers goods" means property of your customer on your premises for the purpose of being:

　**a.** Worked on; or

　**b.** Used in your manufacturing process.

**c.** The insurance afforded under this provision is excess over any other valid and collectible property insurance (including deductible) available to the insured whether primary, excess, contingent or on any other basis.

**5. Incidental Malpractice - Employed Nurses, EMT's and Paramedics**

**SECTION II - LIABILITY, C. Who Is An Insured**, paragraph **2.a.(1)(d)** does not apply to a nurse,

emergency medical technician or paramedic employed by you if you are not engaged in the business or occupation of providing medical, paramedical, surgical, dental, x-ray or nursing services.

6. **Personal Injury - Broad Form**

   **a.** **SECTION II - LIABILITY, B. Exclusions, 2. Additional Exclusions Applicable only to "Personal and Advertising Injury",** paragraph **e.** is deleted.

   **b.** **SECTION II - LIABILITY, F. Liability and Medical Expenses Definitions, 14.** "Personal and advertising injury", paragraph **b.** is replaced by the following:

   **b.** Malicious prosecution or abuse of process.

   **c.** The following is added to **SECTION II - LIABILITY, F. Liability and Medical Expenses Definitions,** Definition **14.** "Personal and advertising injury":

   "Discrimination" (unless insurance thereof is prohibited by law) that results in injury to the feelings or reputation of a natural person, but only if such "discrimination" is:

   **(1)** Not done intentionally by or at the direction of:

   **(a)** The insured;

   **(b)** Any officer of the corporation, director, stockholder, partner or member of the insured; and

   **(2)** Not directly or indirectly related to an "employee", not to the employment, prospective employment or termination of any person or persons by an insured.

   **d.** For purposes of this endorsement, the following definition is added to **SECTION II - LIABILITY, F. Liability and Medical Expenses Definitions:**

   **1.** "Discrimination" means the unlawful treatment of individuals based upon race, color, ethnic origin, gender, religion, age, or sexual preference. "Discrimination" does not include the unlawful treatment of individuals based upon developmental, physical, cognitive, mental, sensory or emotional impairment or any combination of these.

   **e.** This coverage does not apply if liability coverage for "personal and advertising injury" is excluded either by the provisions of the Coverage Form or by any endorsement thereto.

7. **Product Recall Expense**

   **a.** **SECTION II - LIABILITY, B. Exclusions, 1. Applicable To Business Liability Coverage,**

**o. Recall of Products, Work or Impaired Property** is replaced by the following:

**o. Recall of Products, Work or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

If such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it, but this exclusion does not apply to "product recall expenses" that you incur for the "covered recall" of "your product".

However, the exception to the exclusion does not apply to "product recall expenses" resulting from:

**(4)** Failure of any products to accomplish their intended purpose;

**(5)** Breach of warranties of fitness, quality, durability or performance;

**(6)** Loss of customer approval, or any cost incurred to regain customer approval;

**(7)** Redistribution or replacement of "your product" which has been recalled by like products or substitutes;

**(8)** Caprice or whim of the insured;

**(9)** A condition likely to cause loss of which any insured knew or had reason to know at the inception of this insurance;

**(10)** Asbestos, including loss, damage or clean up resulting from asbestos or asbestos containing materials; or

**(11)** Recall of "your products" that have no known or suspected defect solely because a known or suspected defect in another of "your products" has been found.

**b.** The following is added to **SECTION II - LIABILITY, C. Who Is An Insured,** paragraph **3.b.**:

"Product recall expense" arising out of any withdrawal or recall that occurred before you acquired or formed the organization.

OBCH332709     1304500

**c.** The following is added to **SECTION II - LIABILITY, D. Liability and Medical Expenses Limits of Insurance**:

**Product Recall Expense Limits of Insurance**

**a.** The Limits of Insurance shown in the SUMMARY OF COVERAGES of this endorsement and the rules stated below fix the most that we will pay under this Product Recall Expense Coverage regardless of the number of:

   **(1)** Insureds;

   **(2)** "Covered Recalls" initiated; or

   **(3)** Number of "your products" withdrawn.

**b.** The Product Recall Expense Aggregate Limit is the most that we will reimburse you for the sum of all "product recall expenses" incurred for all "covered recalls" initiated during the policy period.

**c.** The Product Recall Each Occurrence Limit is the most we will pay in connection with any one defect or deficiency.

**d.** All "product recall expenses" in connection with substantially the same general harmful condition will be deemed to arise out of the same defect or deficiency and considered one "occurrence".

**e.** Any amount reimbursed for "product recall expenses" in connection with any one "occurrence" will reduce the amount of the Product Recall Expense Aggregate Limit available for reimbursement of "product recall expenses" in connection with any other defect or deficiency.

**f.** If the Product Recall Expense Aggregate Limit has been reduced by reimbursement of "product recall expenses" to an amount that is less than the Product Recall Expense Each Occurrence Limit, the remaining Aggregate Limit is the most that will be available for reimbursement of "product recall expenses" in connection with any other defect or deficiency.

**g. Product Recall Deductible**

We will only pay for the amount of "product recall expenses" which are in excess of the $500 Product Recall Deductible. The Product Recall Deductible applies separately to each "covered recall". The limits of insurance will not be reduced by the amount of this deductible.

We may, or will if required by law, pay all or any part of any deductible amount, if applicable.  Upon notice of our payment

of a deductible amount, you shall promptly reimburse us for the part of the deductible amount we paid.

The Product Recall Expense Limits of Insurance apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for the purposes of determining the Limits of Insurance.

**d.** The following is added to **SECTION II - LIABILITY, E. Liability and Medical Expense General Conditions, 2. Duties in the Event of Occurrence, Offense, Claim or Suit**:

You must see to it that the following are done in the event of an actual or anticipated "covered recall" that may result in "product recall expense":

**(1)** Give us prompt notice of any discovery or notification that "your product" must be withdrawn or recalled. Include a description of "your product" and the reason for the withdrawal or recall;

**(2)** Cease any further release, shipment, consignment or any other method of distribution of like or similar products until it has been determined that all such products are free from defects that could be a cause of loss under this insurance.

**e.** For the purpose of this endorsement, the following definitions are added to **SECTION II - LIABILITY, F. Liability and Medical Expenses Definitions:**

**1.** "Covered recall" means a recall made necessary because you or a government body has determined that a known or suspected defect, deficiency, inadequacy, or dangerous condition in "your product" has resulted or will result in "bodily injury" or "property damage".

**2.** "Product recall expense(s)" means:

   **a.** Necessary and reasonable expenses for:

      **(1)** Communications, including radio or television announcements or printed advertisements including stationary, envelopes and postage;

**(2)** Shipping the recalled products from any purchaser, distributor or user to the place or places designated by you;

**(3)** Remuneration paid to your regular "employees" for necessary overtime;

**(4)** Hiring additional persons, other than your regular "employees";

**(5)** Expenses incurred by "employees" including transportation and accommodations;

**(6)** Expenses to rent additional warehouse or storage space;

**(7)** Disposal of "your product", but only to the extent that specific methods of destruction other than those employed for trash discarding or disposal are required to avoid "bodily injury" or "property damage" as a result of such disposal,

you incur exclusively for the purpose of recalling "your product"; and

**b.** Your lost profit resulting from such "covered recall".

**f.** This Product Recall Expense Coverage does not apply:

**(1)** If the "products - completed operations hazard" is excluded from coverage under this Coverage Part including any endorsement thereto; or

**(2)** To "product recall expense" arising out of any of "your products" that are otherwise excluded from coverage under this Coverage Part including endorsements thereto.

**8.    Unintentional Failure to Disclose Hazards**

The following is added to **SECTION II - LIABILITY, E. Liability and Medical Expenses General Conditions:**

**Representations**

We will not disclaim coverage under this Coverage Part if you fail to disclose all hazards existing as of the inception date of the policy provided such failure is not intentional.

**9.    Unintentional Failure to Notify**

The following is added to **SECTION II - LIABILITY, E. Liability and Medical Expenses General Conditions, 2. Duties in the Event of Occurrence, Offense, Claim or Suit:**

Your rights afforded under this Coverage Part shall not be prejudiced if you fail to give us notice of an "occurrence", offense, claim or "suit", solely due to your reasonable and documented belief that the "bodily injury", "property damage" or "personal and advertising injury" is not covered under this Policy.

ALL OTHER TERMS, CONDITIONS, AND EXCLUSIONS REMAIN UNCHANGED.

The
**Hanover**
Insurance Group

OBCH332709          1304500

---

# NOTICE

---

If a claim is filed on the insured property, information on the claim may be given to the Property Insurance Loss Register (PILR) for use by insurance companies in investigating that claim as well as other claims for loss on the property. Information which may be given to PILR includes name, age and sex, current and previous addresses, loss location, insurance policy information, cause of loss, type of property, and identification of others who have an interest in the property or who are involved in the claimed loss. Such information may be collected by an insurer or an adjuster from you, your spouse, others who have an interest in the property, those who are involved in the claimed loss, and fire department personnel. Information on you may be given by PILR to insurance companies which subscribe to its services. On request, PILR will tell you whether it has information on you, will let you see and copy such information (in person or by mail), and will give you the nature and substance of such information by telephone. PILR may charge a reasonable fee for copies of information provided. If you think information on you is incomplete or inaccurate, you may request PILR to make corrections. PILR will then investigate and: (1) give your correction to subscribers who previously received such information; or (2) inform you that it refuses to make your correction and give you its reasons. If PILR refuses to make your correction, you can have a statement of the reasons for your disagreement placed in PILR; and all subscribers who received or will receive information on you will also receive a copy of the statement. Information on your claim will normally be stored by PILR for five years.

Inquiries to PILR should be addressed:

Property Insurance Loss Register
700 New Brunswick Avenue
Rahway, New Jersey 07065

231-0475 (6-89)

THIS ENDORSMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# ASBESTOS LIABILITY EXCLUSION

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of any actual or alleged:

1. Inhaling, ingesting or prolonged physical exposure by any person to asbestos or asbestos fibers or goods or products containing asbestos;
2. Use of asbestos in constructing or manufacturing any good, product or structure;
3. Intentional or accidental removal including encapsulation, dispersal, sealing or disposal of asbestos or asbestos fibers from any good, product or structure;
4. Manufacture, transportation, storage or disposal of asbestos or goods or products containing asbestos;
5. Product manufactured, sold, handled or distributed by or on behalf of the insured which contain asbestos; or
6. Acts or omissions of the insured in connection with the general supervision of any job involving the removal, enclosure, encapsulation, dispersal, sealing or disposal of asbestos, asbestos fibers or products containing asbestos.

General supervision includes the rendering of or failure to render any instructions, recommendations, warnings or advice.



OBCH332709     1304500

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION - FUNGI OR BACTERIA (LIABILITY)

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**A.** The following exclusion is added to **SECTION II - LIABILITY**, **B. Exclusions, 1. Applicable to Business Liability Coverage:**

**"Fungi" or Bacteria**

**(1)** "Bodily injury", "property damage" or "personal and advertising injury" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**(2)** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for consumption.

**B.** For the purpose of this endorsement, the following definition is added to **Section II - Liability** Paragraph **F., Liability and Medical Expenses Definitions:**

**1.** "Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by "fungi".

ALL OTHER TERMS, CONDITIONS, AND EXCLUSIONS REMAIN UNCHANGED.



OBCH332709    1304500

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The following provisions are added to the Businessowners Policy and apply to Property and Liability Coverages:

**A. CAP ON CERTIFIED TERRORISM LOSSES**

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

1. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**B.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for loss or injury or damage that is otherwise excluded under this Policy.

ALL OTHER TERMS, CONDITIONS, AND EXCLUSIONS REMAIN UNCHANGED.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION OF PUNITIVE DAMAGES RELATED TO A CERTIFIED ACT OF TERRORISM

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The following provisions are added to **Section II - Liability** paragraph **B. Exclusions** of the Businessowners Coverage Form **391-1003**:

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM PUNITIVE DAMAGES**

Damages arising, directly or indirectly, out of a "certified act of terrorism" that are awarded as punitive damages.

**B.** The following definition is added:

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**C.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Policy.

ALL OTHER TERMS, CONDITIONS, AND EXCLUSIONS REMAIN UNCHANGED.



OBCH332709      1304500

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ILLINOIS CHANGES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM
EMERGENCY EVENT MANAGEMENT

**A.** The following paragraphs are added to the BUSINESSOWNERS COVERAGE FORM:

**1.** If this Policy covers the following in **a.** and **b.** then paragraphs **2.** and **3.** apply:

**a.** Real property used principally for residential purposes up to and including a four family dwelling; or

**b.** Household or personal property that is usual or incidental to the occupancy of any premises used for residential purposes.

**2.** **SECTION I - PROPERTY, E. Property Loss Conditions, 2. Appraisal,** paragraphs **a.** and **b.** are replaced by the following:

**a.** Each party will pay its own appraiser and bear the other expenses of the appraisal and umpire equally, except as provided in **b.** below.

**b.** We will pay your appraiser's fee and the umpire's appraisal fee, if the following conditions exist:

**(1)** You demanded the appraisal; and

**(2)** The full amount of loss, as set by your appraiser, is agreed to by our appraiser or by the umpire.

**3.** **SECTION III - COMMON POLICY CONDITIONS (APPLICABLE TO SECTION I - PROPERTY AND SECTION II - LIABILITY), C. Concealment, Misrepresentation Or Fraud** is replaced by the following:

**C. Concealment, Misrepresentation Or Fraud**

**1.** This Policy is void if you or any insured commit fraud or conceal or misrepresent a fact in the process leading to the issuance of this insurance, and such fraud, concealment or misrepresentation is stated in the Policy or endorsement or in the written application for this Policy and;

**a.** Was made with actual intent to deceive; or

**b.** Materially affected either our decision to provide this insurance or the hazard we assumed.

However, this condition will not serve as a reason to void this Policy after the Policy has been in effect for one year or one policy term, whichever is less.

**2.** We do not provide coverage under this Policy to you or any other insured who, at any time subsequent to the issuance of this insurance, commit fraud or intentionally conceal or misrepresent a material fact relating to:
**a.** This Policy;
**b.** The Covered Property;
**c.** Your interest in the Covered Property; or

**d.** A claim under this Policy.

**3.** Notwithstanding the limitations stated in **C. Concealment, Misrepresentation or Fraud,** paragraph **1.** above, we may cancel this Policy in accordance with the terms of **SECTION III - COMMON POLICY CONDITIONS (APPLICABLE TO SECTION I - PROPERTY AND SECTION II - LIABILITY), A. Cancellation**.

**B. SECTION I - PROPERTY**

**1.** The following exclusion is added to **SECTION I - PROPERTY, B. Exclusions:**

**a.** We will not pay for loss or damage arising out of any act committed:

**(1)** By or at the direction of any insured; and

**(2)** With the intent to cause a loss.

**b.** However, this exclusion will not apply to deny payment to an innocent co-insured

who did not cooperate in or contribute to the creation of the loss if:

**(1)** The loss arose out of a pattern of criminal domestic violence; and

**(2)** The perpetrator of the loss is criminally prosecuted for the act causing the loss.

**c.** If we pay a claim pursuant to paragraph **B.2.b.** above, our payment to the insured is limited to that insured's insurable interest in the property less any payments we first made to a mortgagee or other party with a legal secured interest in the property. In no event will we pay more than the Limit of Insurance.

**2.** The following is added to **SECTION I - PROPERTY, E. Property Loss Conditions, 4. Legal Action Against Us**:

The two year period for legal action against us is extended by the number of days between the date the proof of loss is filed with us and the date we deny the claim in whole or in part.

**C. SECTION II - LIABILITY**

The term spouse is replaced by the following:

Spouse or party to a civil union recognized under Illinois law.

**D. SECTION III - COMMON POLICY CONDITIONS (APPLICABLE TO SECTION I - PROPERTY AND SECTION II - LIABILITY)**

**1.** **SECTION III - COMMON POLICY CONDITIONS (APPLICABLE TO SECTION I - PROPERTY AND SECTION II - LIABILITY), A. Cancellation** is replaced by the following:

**A. Cancellation**

**1.** The first Named Insured shown in the Declarations may cancel this Policy by mailing to us advance written notice of cancellation.

**2.** If this Policy has been in effect for 60 days or less, except as provided in Paragraphs **8.** and **9.** below, we may cancel this Policy by mailing written notice of cancellation at least:

**a.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**3.** If this Policy has been in effect for more than 60 days, except as provided in Paragraphs **8.** and **9.** below, we may cancel this Policy

only for one or more of the following reasons:

**a.** Nonpayment of premium;

**b.** The Policy was obtained through a material misrepresentation;

**c.** You have violated any of the terms and conditions of the Policy;

**d.** The risk originally accepted has measurably increased;

**e.** Certification to the Director of Insurance of the loss of reinsurance by the insurer which provided coverage to us for all or a substantial part of the underlying risk insured; or

**f.** A determination by the Director of Insurance that the continuation of the Policy could place us in violation of the insurance laws of this State.

If we cancel this Policy based on one or more of the above reasons except for nonpayment of premium, we will mail written notice at least 60 days before the effective date of cancellation. When cancellation is for nonpayment of premium, we will mail written notice at least 10 days before the effective date of cancellation.

**4.** We will mail our notice to you, together with our reason for cancellation, at your last mailing address known to us. Proof of mailing will be sufficient proof of notice.

**5.** Notification of cancellation will also be sent to your broker, if known, or agent of record, if known, and to the mortgagee or lienholder listed on the Policy.

**6.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

**7.** If this Policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

**8.** **Real Property Other Than Residential Properties Occupied By Four Families Or Less**

The Hanover Insurance Group™

OBCH332709          1304500

The following applies only if this Policy covers real property other than residential property occupied by four families or less:

If any one or more of the following conditions exists at any building that is Covered Property in this Policy, we may cancel this Policy by mailing to you written notice of cancellation, by both certified and regular mail, if:

**a.** After a fire loss, permanent repairs to the building have not started within 60 days of satisfactory adjustment of loss, unless the delay is due to a labor dispute or weather conditions.

**b.** The building has been unoccupied 60 or more consecutive days. This does not apply to:

　**(1)** Seasonal unoccupancy; or

　**(2)** Building under repair, construction or reconstruction, if property secured against unauthorized entry.

**c.** The building has:

　**(1)** An outstanding order to vacate;

　**(2)** An outstanding demolition order; or

　**(3)** Been declared unsafe in accordance with the law.

**d.** Heat, water, sewer service or public lighting have not been connected to the building for 30 consecutive days or more.

The Policy will terminate 10 days following receipt of the written notice by the Named Insured(s).

**9.　Residential Properties Occupied By Four Families Or Less**

The following applies if this Policy covers residential properties occupied by four families or less:

If this Policy has been in effect for 60 days, or if this is a renewal policy, we may only cancel this Policy for one or more of the following reasons:

**a.** Nonpayment of premium;

**b.** The Policy was obtained by misrepresentation or fraud; or

**c.** Any act that measurably increases the risk originally accepted.

If we cancel this Policy based on one or more of the above reasons except for nonpayment of premium, we will mail written notice at least 30 days before the effective date of cancellation. When cancellation is for nonpayment of premium, we will mail written notice at least 10 days before the effective date of cancellation.

**2.　SECTION III - COMMON POLICY CONDITIONS (APPLICABLE TO SECTION I - PROPERTY AND SECTION II - LIABILITY), H. Other Insurance, 1. SECTION I - PROPERTY** is replaced by the following:

**1.　SECTION I - PROPERTY**

　**a.** You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Form. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage Form bears to the Limit of Insurance of all insurance covering on the same basis.

　**b.** If there is other insurance covering the same loss or damage, other than that described in **1.** above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance of **SECTION I - PROPERTY**.

**3.** The following is added to **SECTION III - COMMON POLICY CONDITIONS (APPLICABLE TO SECTION I - PROPERTY AND SECTION II - LIABILITY):**

**Nonrenewal**

**1.** If we decide not to renew or continue this Policy, we will mail to you written notice, stating the reason for nonrenewal. Proof of mailing will be sufficient proof of notice.

**2.** Except as provided in paragraph **6,** below, we will mail you notice of nonrenewal at least 60 days before the end of the policy period.

**3.** If we offer to renew or continue and you do not accept, this Policy will terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

Includes copyrighted materials of Insurance Services Office, Inc. with its permission.
Copyright 2017 The Hanover Insurance Company. All Rights Reserved.

4. If we fail to mail proper written notice of nonrenewal and you obtain other insurance, this Policy will end on the effective date of that insurance.

5. The following provision applies to policies other than those described in paragraph **6.**:

   Notification of nonrenewal will also be sent to your broker, if known, or agent of record, if known, and the mortgagee or lienholder listed on the Policy.

6. The following provision applies only if this Policy covers residential properties occupied by four families or less:

   **a.** If this Policy has been issued to you and in effect with us for five or more years, we may not fail to renew this Policy unless:

      **(1)** The Policy was obtained by misrepresentation or fraud and we mail you notice of nonrenewal at least 30 days before the end of the policy period as provided in **1.** above;

      **(2)** The risk originally accepted has measurably increased and we mail you notice of nonrenewal at least 30 days before the end of the policy period as provided in **1.** above; or

      **(3)** You received 60 days' notice of our intent not to renew as provided in paragraph **1.** above.

   **b.** If this Policy has been issued to you and in effect with us for less than five years, we may not fail to renew this Policy unless you receive 30 days' notice as provided in paragraph **1.** above.

   **c.** Notification of nonrenewal will also be sent to your broker, if known, or agent of record, if known, and to the last known mortgagee or lienholder.

   **d.** The nonrenewal shall not become effective until at least 30 days from the proof of mailing date of the notice to you.

**E.** The following sentence is deleted from all endorsements containing **Hired Auto - Physical Damage Coverage**:

   This coverage is excess to any other valid insurance whether collectible or not.

**F.** The following sentence is deleted from all endorsements containing **Ordinance or Law (Tenant's Improvement Extension):**

   This extension is provisional and excess to any other valid insurance for tenant's improvements and betterments whether collectible or not.

**G.** Paragraph **G. Additional Conditions** is deleted from EMERGENCY EVENT MANAGEMENT endorsement.

**H.** The following sentence is deleted from BUSINESSOWNERS COVERAGE FORM, **SECTION E. Property Loss Conditions, 2. Appraisal:**

   A decision agreed to by any two will be binding.

ALL OTHER TERMS, CONDITIONS, AND EXCLUSIONS REMAIN UNCHANGED.



OBCH332709    1304500

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE FORM
CONDOMINIUM, CO OP AND ASSOCIATION DIRECTORS AND OFFICERS LIABILITY COVERAGE FORM
CYBER LIABILITY COVERAGE PART
DATA BREACH COVERAGE FORM
EMPLOYEE BENEFITS LIABILITY COVERAGE FORM
EMPLOYMENT PRACTICES LIABILITY COVERAGE PART
FOLLOW FORM EXCESS AND UMBRELLA LIABILITY COVERAGE
RELIGIOUS INSTITUTIONS DIRECTORS, OFFICERS AND TRUSTEES LIABILITY COVERAGE PART
SCHOOL AND EDUCATORS LEGAL LIABILITY COVERAGE PART

**A.** If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year (January 1 through December 31) and we have met, or will meet, our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion,  and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**B.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for loss, injury or damage that is otherwise excluded under this Coverage Part or Coverage Form.

ALL OTHER TERMS, CONDITIONS, AND EXCLUSIONS REMAIN UNCHANGED.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## ASSOCIATES AND FAMILY MEMBERS ADDITIONAL COVERAGE ENDORSEMENT

This endorsement modifies insurance provided under the following:

DATA BREACH COVERAGE FORM

The following Additional Coverage is added to **SECTION A - COVERAGES** of the Data Breach Coverage Form:

**A. ASSOCIATES AND FAMILY MEMBERS ADDITIONAL COVERAGE**

As described in Paragraphs **1.** and **2.** below, we will extend certain **Data Breach Covered Services** to your "associates" and to their "family members" whose "private personal data" under the circumstances described below. This Additional Coverage does not apply to a "data breach" involving information owned or controlled by you.

**1.** An "associate" or "family member" whose "private personal data" is lost or stolen by circumstances such as the loss of a credit card, debit card, ATM card, checkbook, driver's license, or passport; or the loss of a wallet, purse, or briefcase containing any of the foregoing, may contact our Designated Service Provider for the Fraud Alert service described in **Section A - Coverages,** paragraph **1.a.(3)** of the Data Breach Coverage Form.

**2.** An "associate" or "family member" who, as a result of loss or theft of "private personal data" described in Paragraph **1.** above, becomes a victim of "identity theft" or "account takeover", may contact our Designated Service Provider for the Identity Restoration Case Management services described in **Section A - Coverages,** paragraph **1.a.(4)** of the Data Breach Coverage Form.

We will provide these services for a period of one year following the data we are notified of the initial loss of "private personal data".

**B. DEFINITIONS**

Under **Section F - Definitions**, Paragraph

**1. Account Takeover** is replaced with the following:

**1. Account Takeover**

"Account takeover", as respects "associates" or "family members", means the takeover by a third party of one or more existing deposit accounts, credit card accounts, debit card accounts, ATM cards, or lines of credit in the name of an "associate" or "family member".

"Account takeover", as respects "associates" or "family members", includes the unauthorized takeover of one or more of the "associate's" existing deposit accounts, credit card accounts, debit card accounts, ATM cards, or lines of credit by a "family member".

Under **Section F - Definitions**, the following Definitions are added:

**1.** "Associate" means an employee of the business insured under this policy.

**2.** "Family Member" means:

**a.** an "associate's" spouse, or Registered Domestic Partner, or the legal equivalent thereof; or

**b.** a relative under 23 years of age who is a dependent of the "associate".

**The Hanover** Insurance Group

OBCH332709       1304500

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The following exclusion is added to Paragraph **B.1. Exclusions - Applicable To Business Liability Coverage** in **Section II - Liability:**

This insurance does not apply to "bodily injury" or "personal and advertising injury" to:

**(1)** A person arising out of any:

**(a)** Refusal to employ that person;

**(b)** Termination of that person's employment; or

**(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" or "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraph **(a), (b)** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraph **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

      Copyright, Insurance Services Office, Inc., 2009

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## ILLINOIS CHANGES - DEFENSE COSTS

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The following is added to **Section II - Liability** Paragraph **A. Coverages:**

If we initially defend an insured or pay for an insured's defense but later determine that the claim(s) is (are) not covered under this insurance, we will have the right to reimbursement for the defense costs we have incurred.

The right to reimbursement for the defense costs under this provision will only apply to defense costs we have incurred after we notify you in writing that there may not be coverage, and that we are reserving our rights to terminate the defense and seek reimbursement for defense costs.

Copyright, ISO Properties, Inc., 2005



OBCH332709     1304500

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ILLINOIS CHANGES - DATA BREACH COVERAGE FORM

This endorsement modifies insurance provided under the following:

DATA BREACH COVERAGE FORM

**A. SECTION E - CONDITIONS**, paragraph **11.** is replaced by the following:

**11. Cancellation and Non-Renewal:**

**a.** If we decide to cancel this Coverage Part in the first 60 days, we will mail:

**(1)** 10 days' written notice of cancellation for nonpayment of premium; or

**(2)** 30 days' written notice of cancellation for any other reason.

If this Coverage Part has been in effect for 60 days or more or is a renewal of a Coverage Part we issued, then we will mail:

**(3)** 10 days' written notice of cancellation for nonpayment of premium; or

**(4)** 60 days' written notice of cancellation for one for more of the following reasons:

**(a)** The Coverage Part was obtained through a material representation;

**(b)** Any insured violated any of the terms and conditions of the policy;

**(c)** The risk originally accepted has measurably increased;

**(d)** Certification is provided to the Director of Insurance in Illinois of the loss of reinsurance by us which provided coverage to us for a substantial part of the underlying risk insured; or

**(e)** A determination is made by the Director of Insurance in Illinois that the continuation of the policy could place us in violation of the insurance laws of Illinois.

Cancellation notices will state the reason for cancellation and will be mailed to you and the agent or broker of record at the last addresses known to us. We will maintain proof of mailing on a recognized U.S. Post Office form or a form acceptable to the U.S. Post Office or other commercial mail delivery service.

**b.** If we decide not to renew this Coverage Part, we will mail or deliver written notice not less than 60 days before the expiration date to the named insured shown in the Declarations and to the agent or broker of record at the last addresses known to us. Notice will provide an explanation of the reason for nonrenewal. We will maintain proof of mailing on a recognized U.S. Post Office form or a form acceptable to the U.S. Post Office or other commercial mail delivery service.

**B. SECTION E - CONDITIONS,** paragraph **2.** is replaced by the following:

**2. Concealment, Misrepresentation Or Fraud**

**a.** This Coverage Form is void if you or any insured commit fraud or conceal or misrepresent a fact in the process leading to the issuance of this insurance, and such fraud, concealment or misrepresentation is stated in the policy or endorsement or in the written application for this policy and:

**(1)** Was made with actual intent to deceive; or

**(2)** Materially affected either our decision to provide this insurance or the hazard we assumed.

However, this condition will not serve as a reason to void this Coverage Form after the Coverage Form has been in effect for one year or one policy term, whichever is less.

**b.** This Coverage Form is void if you or any other insured, at any time subsequent to the issuance of this insurance, commit fraud or intentionally conceal or misrepresent a material fact relating to:

**(1)** This Coverage Form; or

**(2)** A claim under this Coverage Form.

**c.** Notwithstanding the limitations stated in **2.a.** above, we may cancel the Coverage Form in accordance with the terms of the Cancellation Condition.

**C.** **SECTION E - CONDITIONS,** paragraph **18.** is replaced by the following:

**18. Appraisal**

If we and you disagree on the amount of net income, operating expense or loss either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of the net income, operating expense and loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will not be binding.

Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

However, we will pay your appraiser's fee and the umpire's appraisal fee, if the following conditions exist:

**c.** You demanded the appraisal; and

**d.** The amount of net income, operating expense and loss, as set by your appraiser, is agreed to by our appraiser or by the umpire.

If there is an appraisal, we will still retain our right to deny the claim; and you will retain your right to file suit against us.

**D.** **SECTION E - CONDITIONS,** Paragraph **5.** is replaced by the following:

**5. Legal Action Against Us**

No one may bring a legal action against us under this insurance unless:

**a.** There has been full compliance with all of the terms of this insurance; and

**b.** The action is brought within two years after the date we first deny the claim in whole or in part.

**E.** The following is added to **SECTION F - DEFINITIONS,** Paragraph **10. Defense Expenses:**

"Defense Expenses" do not include our routine ongoing expenses or overhead such as salaries of our staff or our staff attorneys**.**

**F.** **SECTION E - CONDITIONS** Paragraph **8.** Subparagraph **b.** is replaced by the following**:**

**b.** If there is other insurance covering the same "data breach", other than that described in **a.** above, we will share proportinatley with such other coverage in the benefits or amounts due for Data Breach Services, Data Breach Expense Coverages, and Additional Expense Coverages. We will not pay more than the applicable Limit of Insurance shown in the **SCHEDULE.**

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.



OBCH332709    1304500

---

**THIS IS A CLAIMS-MADE AND REPORTED COVERAGE ENDORSEMENT.**

---

# EMPLOYMENT PRACTICES LIABILITY INSURANCE COVERAGE ENDORSEMENT - ILLINOIS

Throughout this Coverage Endorsement (hereinafter referred to as "EPL Coverage Endorsement"), the words "you" and "your" refer to the "named insured(s)" shown in the Supplemental Declarations of this EPL Coverage Endorsement and any other person(s) or organization(s) qualifying as a "named insured" under this EPL Coverage Endorsement. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under SECTION III. WHO IS AN INSURED.

Other words and phrases that appear in "quotations" have special meaning. Refer to SECTION VII. DEFINITIONS.

The terms and conditions of the Cancellation Clause of the Common Policy Conditions, 391-1003 are hereby incorporated herein and shall apply to coverage as is afforded by this EPL Coverage Endorsement, unless specifically stated otherwise in an endorsement(s) attached hereto.

---

## SECTION I. WHAT IS COVERED

### A. Insuring Agreement

1. "We" shall pay those "losses" arising out of "your" "wrongful employment act" against "your" "employees", to which this insurance applies. The "wrongful employment act" must commence or take place after the "original inception date", but before the end of the "EPL coverage period". A "claim" or "suit" for a "wrongful employment act" must be first made against "you" during the "EPL coverage period" or any Extended Reporting Period (if applicable) and reported to "us" pursuant to the terms of this EPL Coverage Endorsement.

2. A "claim" or "suit" by a person or organization seeking damages will be deemed to have been made at the earlier of the following times:

   **a.** When written notice of such "claim" or "suit" is received and recorded by any "insured" or by "us", whichever comes first; or

   **b.** When "we" make any settlement in accordance with the terms of this EPL Coverage Endorsement.

### B. Defense

1. "We" have the right and duty to defend and appoint an attorney to defend any "claim" or "suit" brought against any "insured" for a "wrongful employment act" to which this insurance applies, even if the "claim" or "suit" is groundless or fraudulent.

2. "We" have the right to investigate and settle any "claim" or "suit" that "we" believe is proper. "You" shall be entitled to effectively associate in the defense of any "claim".

3. "We" shall pay all reasonable costs "we" ask the "insured" to incur while helping "us" investigate or defend a "claim" or "suit". "We", however, will not pay more than $100 per day for earnings lost by the "insured" because of time taken off from work.

4. "We" shall pay premiums for appeal bonds, or bonds to release property being used to secure a legal obligation, for a covered "suit". "We" shall only pay, however, for bonds valued up to "our" Aggregate EPL Limit of Liability. "We" shall have no obligation to appeal or to obtain these bonds.

5. Payments for "defense costs" are included within the Aggregate EPL Limit of Liability. They are not in addition to the Aggregate EPL Limit of Liability. "Our" duty to defend or to make payment of any "claim" or "suit pursuant to paragraphs 1-4 above, ends after the Aggregate EPL Limit of Liability has been exhausted by payment of "loss", including "defense costs".

---

## C. Transfer of Control

1. "You" may take over control of any outstanding "claim" or "suit" previously reported to "us", but only if "we", in "our" sole discretion, decide that you should, or if a court orders "you" to do so.

2. Notwithstanding subsection 1 of this Clause C, in all events, if the Aggregate EPL Limit of Liability is exhausted, "we" will notify "you" of all outstanding "claims" or "suits" and "you" will take over control of the defense. "We" will help transfer control of the "claims" and "suits" to "you".

3. "We" shall take whatever steps are necessary to continue the defense of any outstanding "claim" or "suit" and avoid a default judgment during the transfer of control to "you". If "we" do so, "we" shall not waive or give up any of "our" rights. "You" shall pay all reasonable expenses "we" incur for taking such steps after the Aggregate EPL Limit of Liability is exhausted.

## SECTION II. EXCLUSIONS-WHAT IS NOT COVERED

This insurance does not apply to:

### A. Profit or Advantage

Any liability arising out of the gaining of any profit or advantage to which an "insured" was not legally entitled. However, to the extent that a "claim" or "suit" is otherwise covered under this EPL Coverage Endorsement, we will defend a "claim" or "suit" asserting that an "insured" gained a profit or advantage to which the "insured" was not legally entitled, until such time as the "insured" is determined to have gained a profit or advantage to which the "insured" was not legally entitled;

### B. Criminal Acts

Any liability arising out of any dishonest, fraudulent, criminal, or malicious act by or at the direction of any "insured". However, to the extent that a "claim" or "suit" is otherwise covered under this EPL Coverage Endorsement we will defend a "claim" or "suit" asserting a dishonest, fraudulent, criminal or malicious act until such time as the "insured" is determined to have committed such dishonest, fraudulent, criminal or malicious act;

The "wrongful employment act(s)" of an "insured" shall not be imputed to any other "insured" for the purpose of determining the applicability of the foregoing exclusions A and B.

### C. "Property Damage"

Any liability arising out of "property damage";

### D. "Bodily Injury"

Any liability arising out of "bodily injury";

### E. Worker's Compensation, Social Security and Unemployment, Disability and Retirement Benefits

Any liability arising out of any obligation pursuant to any worker's compensation, disability benefits, unemployment compensation, unemployment insurance, retirement benefits, social security benefits or similar law. This exclusion, however, shall not apply to "loss" arising from a "claim" or "suit" for "retaliation";

### F. Contractual Liability

Any liability arising out of any actual or alleged contractual liability of any "insured" under any express contract or agreement. This exclusion, however, shall not apply to the extent any liability does not arise under such express contract or agreement;

### G. ERISA, COBRA, WARN, OSHA and NLRA

Any liability arising out of the "insured's" failure to fulfill any responsibility, duty or obligation imposed by the Employment Retirement Income Security Act of 1974 (ERISA), Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA), Worker's Adjustment and Retraining Notification Act, Public Law 100-379 (1988) (WARN), Occupational Safety and Health Act (OSHA), National Labor Relations Act of 1947 (NLRA), any rules or regulations of the foregoing promulgated thereunder, and amendments thereto or any similar provisions of any federal, state, or local statutory or common law. This exclusion, however, shall not apply to "loss" arising from a "claim" or "suit" for "retaliation";



OBCH332709      1304500

### H. FLSA

Any liability arising out of any obligation under the Fair Labor Standards Act, or any violations of any federal, state, local or foreign statutory law or common law that governs the same topic or subject and any rules, regulations and amendments thereto (except the Equal Pay Act). This exclusion, however, shall not apply to "loss" arising from a "claim" or "suit" for "retaliation";

Any liability arising out of claims for unpaid wages or overtime pay for hours actually worked or labor actually performed by any "employee" of the "insured", for improper payroll deductions or any violations of any federal, state, local or foreign statutory law or common law that governs the same topic or subject and any rules, regulations and amendments thereto.

### I. Non-Monetary Relief

That part of any "claim" or "suit" seeking any non-monetary relief, including but not limited to: (1) injunctive relief; (2) declaratory relief; (3) disgorgement; (4) job reinstatement; (5) costs or expenses incurred in accommodating any disabled person, pursuant to the Americans with Disabilities Act of 1990 (ADA), including amendments to that law or similar federal, state or local statutory or common law; (6) any liability or costs incurred in connection with any educational, sensitivity or other corporate program, policy or seminar relating to a "claim" or "suit" alleging discrimination or other "wrongful employment act"; or (7) other equitable remedies, including as to all of the above, the cost of compliance therewith; provided, however, if such request for non-monetary relief is part of an otherwise covered "claim" or "suit", "we" will not seek to allocate "defense costs" for the portion of the "claim" or "suit" seeking non-monetary relief;

### J. Certain "Insureds"

Any "claim" or "suit" brought by any "insured". This exclusion, however, shall not apply to a "claim" or "suit" brought by an "employee" of the "insured", other than an "employee" who is or was a director of the "insured";

### K. Prior Knowledge

Any liability arising out of incidents, circumstances or "wrongful employment acts", which an "insured", prior to the "original inception date" as shown in the Supplemental Declarations of this EPL

Coverage Endorsement, had knowledge or which an "insured" could have reasonably foreseen might result in a "claim" or "suit";

### L. Prior Notice

Any liability arising out of the facts alleged, or to the same or "related wrongful employment acts" alleged or contained in any "claim" or "suit" which has been reported, or in any circumstances of which notice has been given, under any policy of which this EPL Coverage Endorsement is a renewal or replacement or which it may succeed in time;

### M. Securities Holder

Any "claim" or "suit" brought by a securities holder of the "insured" in their capacity as such, whether directly, derivatively on behalf of the "insured", or by class action;

### N. Outside Boards

Any liability arising out of any actual or alleged act or omission of an "insured" serving in any capacity, other than as a director, officer or "employee" of the "insured" entity.

## SECTION III. WHO IS AN INSURED

### A. Individual

If "you" are shown in the Supplemental Declarations of this EPL Coverage Endorsement as an individual, "you" and "your" spouse are "insureds", only for the conduct of a business of which "you" are the sole owner.

### B. Corporation

If "you" are shown in the Supplemental Declarations of this EPL Coverage Endorsement as a corporation or organization other than a partnership or joint venture, "you" and "your" "subsidiaries" are "insureds".

### C. Partnership or Joint Venture

If "you" are shown in the Supplemental Declarations of this EPL Coverage Endorsement as a partnership or joint venture, "you" are an "insured". "Your" partners or co-venturers and their spouses are also "insureds", but only for the conduct of "your" business.

### D. "Employees"

"Your" "employee", executive officers and directors are "insureds", only for the conduct of "your" business within the scope of their employment or their duties as executive officers or directors.

**E. Extensions**

1. Subject otherwise to the terms hereof, this EPL Coverage Endorsement shall cover "loss" arising from any "claims" or "suits" made against the estates, heirs, or legal representative of deceased individual "insureds", and the legal representatives of individual "insureds", in the event of incompetency, who were individual "insureds" at the time the "wrongful employment acts", upon which such "claims" or "suits" are based, were committed.

2. Subject otherwise to the terms hereof, this EPL Coverage Endorsement shall cover "loss" arising from all "claims" and "suits" made against the lawful spouse (whether such status is derived by reason of statutory law, common law or otherwise of any applicable jurisdiction in the world) of an individual "insured", including a "claim" or "suit" that seeks damages recoverable from marital community property, property jointly held by the individual "insured" and the spouse, or property transferred from the individual "insured" to the spouse; provided, however, that this extension shall not afford coverage for a "claim" or "suit" arising out of any "wrongful employment act" of the spouse, but shall apply only to "claims" or "suits" arising out of any "wrongful employment acts" of an individual "insured", subject to this EPL Coverage Endorsement's terms, conditions and exclusions.

## SECTION IV. LIMIT OF LIABILITY (including "defense costs")

A. The Aggregate EPL Limit of Liability shown in the Supplemental Declarations of this EPL Coverage Endorsement and the information contained in this section limits the most "we" shall pay for all "loss" arising out of "claims" and "suits" first made against "insureds" during the "EPL coverage period" or Extended Reporting Period (if applicable), regardless of:

1. the number of persons or organizations covered by this EPL Coverage Endorsement; or

2. the number of "claims" made or "suits" brought; or

3. the length of the "EPL coverage period".

B. The Aggregate EPL Limit of Liability is the most "we" shall pay for all "losses" covered under this EPL Coverage Endorsement, including amounts incurred for "defense costs".

C. The Aggregate EPL Limit of Liability for the Extended Reporting Period shall be part of, and not in addition to the Aggregate EPL Limit of Liability for the "EPL coverage period".

D. All "claims" and "suits" arising from the same or "related wrongful employment acts" shall be treated as arising out of a single "wrongful employment act".

E. All "claims" or "suits" arising out of one "wrongful employment act" shall be deemed to be made on the date that the first such "claim" is made or "suit" is brought. All "claims" asserted in a "class action suit" will be treated as arising out of a single "wrongful employment act".

F. Any "claim" or "suit" which is made subsequent to the "EPL coverage period" or Extended Reporting Period (if applicable) which, pursuant to Section VI, Clause D(3) and (4) is considered made during the "EPL coverage period" or Extended Reporting Period shall also be subject to the one Aggregate EPL Limit of Liability stated in the Supplemental Declarations of this EPL Coverage Endorsement.

## SECTION V. DEDUCTIBLE

"You" shall be responsible for the deductible amount shown in the Supplemental Declarations of this EPL Coverage Endorsement with respect to each "claim" and "suit" and "you" may not insure against it. A single deductible amount shall apply to "loss" arising from all "claims" and "suits" alleging the same "wrongful employment act" or "related wrongful employment acts". Expenses "we" incur in investigating, defending and settling "claims" and "suits" are included in the deductible. The deductible is not included within the Aggregate EPL Limit of Liability.

## SECTION VI. CONDITIONS

"We" have no duty to provide coverage under this EPL Coverage Endorsement, unless there has been full compliance with all the Conditions contained in this EPL Coverage Endorsement.

**A. Assignment**

The interest of any "insured" is not assignable. "You" cannot assign or transfer "your" interest in this EPL



OBCH332709    1304500

Coverage Endorsement without "our" written consent attached to the EPL Coverage Endorsement.

**B. Bankruptcy or Insolvency**

"Your" bankruptcy, insolvency or inability to pay, will not relieve "us" from the payment of any "claim" or "suit" covered by this EPL Coverage Endorsement.

Under no circumstances will "your" bankruptcy, insolvency, or inability to pay require "us" to drop down, in any way replace, or assume any of "your" obligations with respect to the Deductible provisions of this EPL Coverage Endorsement.

**C. Coverage Territory**

"We" cover "wrongful employment acts" in the United States of America, its territories and possessions, Puerto Rico, or Canada, but only if the "claim" is made and the "suit" is brought for such "wrongful employment act" in the United States of America, its territories and possessions, Puerto Rico, or Canada.

**D. Duties in the Event of an Incident, "Claim" or "Suit"**

1. If, during the "EPL coverage period", incidents or events occur which "you" reasonably believe may give rise to a "claim" or "suit" for which coverage may be provided hereunder, such belief being based upon either written notice from the potential claimant or the potential claimant's representative; or notice of a complaint filed with EEOC, DOL or OFCCP (or similar federal, state or local agency); or upon a contemporaneously made memorandum of an oral "claim", allegation or threat, "you" shall give written notice to "us" as soon as practicable and either:

   **a.** anytime during the "EPL coverage period" or the Extended Reporting Period (if applicable); or

   **b.** within thirty (30) days after the end of the "EPL coverage period" or Extended Reporting Period (if applicable), as long as such "claim" or "suit" is reported no later than thirty (30) days after the date such "claim" or "suit" was first made against an "insured".

2. If a "claim" is made or a "suit" is brought against any "insured", "you" must:

   **a.** Immediately record the specifics of the "claim" or "suit" and the date received; and

   **b.** Provide "us" with written notice, as described in subsection 3. below, as soon as practicable.

3. Such written notice of "claim" or "suit" shall contain:

   **a.** The identity of the person(s) alleging a "wrongful employment act";

   **b.** The identity of the "insured(s)" who allegedly were involved in the incidents or events;

   **c.** The date the alleged incidents or events took place; and

   **d.** The written notice or contemporaneously prepared memorandum referred to above.

   If written notice is given to "us" during the "EPL coverage period" or Extended Reporting Period (if applicable), pursuant to the above requirements, then any "claim" or "suit" which is subsequently made against any "insureds" and reported to "us" alleging, arising out of, based upon or attributable to such circumstances or alleging any "related wrongful employment act" to such circumstances, shall be considered made at the time such notice of such circumstances was first given.

4. If "you" submit written notice of a "claim" or "suit", pursuant to this Clause D, then any "claim" or "suit" that may subsequently be made against an " insured" and reported to "us" alleging the same or a "related wrongful employment act" to the "claim" or "suit" for which such notice has been given shall be deemed, for the purpose of this insurance, to have been first made during the "EPL coverage period" in effect at the time such written notice was first submitted to "us".

5. "You" and any other "insured" must:

   **a.** Immediately send "us" copies of any demands, notices, summonses or legal papers received in connection with any "claim" or "suit";

   **b.** Authorize "us" to obtain records and other information;

   **c.** Cooperate with "us" in the investigation, settlement or defense of the "claim" or "suit";

d. Assist "us", upon "our" request, in the enforcement of any right against any person or organization which may be liable to the "insured" because of injury or damage to which this insurance may also apply;

e. Take no action, or fail to take any required action, that prejudices the rights of the "insureds" or "us" with respect to such "claim" or "suit".

6. No "insureds" will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense without "our" prior written consent.

**E. Transfer of Rights of Recovery Against Others to "Us"**

"You" may be able to recover all or part of a "loss" from someone other than "us". "You", therefore, shall do all that is possible after a "loss" to preserve any such right of recovery. If "we" make a payment under this EPL Coverage Endorsement, that right of recovery shall belong to "us". "You" shall do whatever is necessary, including signing documents, to help "us" obtain that recovery.

**F. Extended Reporting Period**

1. Solely with respect to this EPL Coverage Endorsement and except as indicated below, if "you" or "we" shall cancel or refuse to renew this EPL Coverage Endorsement, "you" shall have the right, upon payment of an additional premium of 100% of the full annual premium applicable to this EPL Coverage Endorsement, to buy an Extended Reporting Period Endorsement, providing an Extended Reporting Period of one (1) year following the effective date of the cancellation or nonrenewal, in which to give "us" written notice of "claims" first made or "suits" first brought against the "insureds" during said Extended Reporting Period for any "wrongful employment acts" which take place after the "original inception date" and before the end of the "EPL coverage period" and are otherwise covered by this EPL Coverage Endorsement.

To obtain an Extended Reporting Period Endorsement, "you" must request it in writing and pay the additional premium due, within thirty (30) days of the effective date of cancellation or nonrenewal.

2. The Extended Reporting Period Endorsement cannot be canceled by either party, except for nonpayment of premium. The additional premium for the Extended Reporting Period shall be fully earned at the inception of the Extended Reporting Period and this EPL Coverage Endorsement cannot be canceled after such additional premium is paid. If "we" do not receive the written request as required, "you" may not exercise this right at a later date.

3. This insurance, provided during the Extended Reporting Period, is excess over any other valid and collectible insurance that begins or continues in effect after the Extended Reporting Period Endorsement becomes effective, whether the other insurance applies on a primary, excess, contingent, or any other basis.

4. In the event of cancellation by the Insurer for the non-payment of initial premium for this EPL Coverage Endorsement as indicated in the Supplemental Declarations of this EPL Coverage Endorsement, any monies received by the Insurer as payment for the Extended Reporting Period shall be first applied to such premium owing for the policy. The Extended Reporting Period will not take effect until the premium owing for the policy is paid in full and the premium owing for the Extended Reporting Period is paid promptly when due.

5. In the event of a "Transaction", as defined in Clause G below, the "named insured" shall have the right, within thirty (30) days before the end of the "EPL coverage period", to request an offer from "us" of an Extended Reporting Period (with respect to "wrongful employment acts" which take place after the "original inception date" and prior to the effective time of the "Transaction"). We shall offer such Extended Reporting Period pursuant to such terms, conditions, and premium as we may reasonably decide. In the event of a "Transaction", the right to an Extended Reporting Period shall not otherwise exist except as indicated in this paragraph.



OBCH332709     1304500

**G. Change in Control of "Named Insured"**

If during the "EPL coverage period":

1. the "named insured" shall consolidate with or merge into, or sell all or substantially all of its assets to any other person or entity or group of persons or entities acting in concert; or

2. any person or entity or group of persons or entities acting in concert shall acquire an amount of the outstanding securities representing more than fifty (50%) percent of the voting power for the election of directors or General Partners of the "named insured" (in the event the "named insured" is a Partnership), or acquires the voting rights of such an amount of such securities; or

3. a General Partner of the "named insured" (in the event the "named insured" is a partnership) withdraws, resigns or is terminated;

(any of the above events herein referred to as the "Transaction"),

then this EPL Coverage Endorsement shall continue in full force and effect as to "wrongful employment acts" occurring after the "original inception date" and prior to the effective time of the "Transaction", but there shall be no coverage afforded by any provision of this EPL Coverage Endorsement for any actual or alleged "wrongful employment acts" occurring after the effective time of the "Transaction". This EPL Coverage Endorsement may not be canceled after the effective time of the "Transaction" and the entire premium for this EPL Coverage Endorsement shall be deemed earned as of such time. "You" shall also have the right to an offer by "us" of an Extended Reporting Period described in Clause F of this EPL Coverage Endorsement.

"You" shall give "us" written notice of the "Transaction" as soon as practicable, but not later than thirty (30) days after the effective date of the "Transaction".

**H. Legal Action Against "Us"**

No person or organization has the right to join "us" as a party or otherwise bring "us" into a "suit" asking for damages from an "insured".

**I. Other Insurance**

Unless expressly written to be excess over other applicable insurance, it is intended that the insurance provided by this EPL Coverage Endorsement shall be primary.

**J. EPL Coverage Endorsement Changes**

This EPL Coverage Endorsement contains all the agreements between "you" and "us" concerning this insurance. The first "named insured" in the Supplemental Declarations of this EPL Coverage Endorsement is authorized to request changes in this EPL Coverage Endorsement. This EPL Coverage Endorsement can only be changed by a written endorsement "we" issue and make part of this EPL Coverage Endorsement.

**K. Representations**

Any and all relevant provisions of this EPL Coverage Endorsement may be voidable by "us" in any case of fraud, intentional concealment, or misrepresentation of material fact by any "insured".

**L. Special Rights and Duties of the "Named Insured"**

"You" agree that when there is more than one person and/or entity covered under this EPL Coverage Endorsement, the "named insured" in the Supplemental Declarations of this EPL Coverage Endorsement shall act on behalf of all "insureds" as to:

1. Giving of notice of a "claim" or "suit";

2. Giving and receiving notice of cancellation or nonrenewal;

3. Payment of premiums and receipt of return premiums;

4. Acceptance of any endorsements issued to form a part of this EPL Coverage Endorsement; or

5. Purchasing or deciding not to purchase the Extended Reporting Period Endorsement.

**M. Headings**

The description in the headings of this EPL Coverage Endorsement are solely for convenience, and form no part of the terms and conditions of coverage.

## SECTION VII. DEFINITIONS

**A.** "Bodily injury" means physical injury, sickness, or disease, including death resulting therefrom

**B.** "Claim" means a written demand for money. The term "claim" shall also mean an Equal Employment Opportunity Commission (EEOC), Department of Labor (DOL) or Office of Federal Contract Compliance Program (OFCCP) (or similiar

federal, state or local agency) proceeding or investigation commenced by the filing of a notice of charges, service of a complaint or similar document of which notice has been given to "you". However, in no event, shall the term "claim" include any labor or grievance proceeding, which is subject to a collective bargaining agreement.

**C.** "Class Action Suit" means any suit seeking certification or certified as a class action by a federal or state court.

**D.** "Defense Costs" means reasonable and necessary fees, costs and expenses consented to by "us" resulting solely from the investigation, adjustment, defense and appeal of a "claim" or "suit" against "you". In no event shall "Defense Costs" include "your" or "our" routine on-going expenses, including, without limitation, the salaries of "your" "employees", officers or staff attorneys.

**E.** "Employee" means an individual whose labor or service is engaged by and directed by "you" for remuneration, whether such individual is in a supervisory, co-worker or subordinate position or otherwise, including any part-time, seasonal, and temporary "employees". Independent contractors and individuals who are leased to the "insured " are not "employees".

**F.** "Loss(es)" means damages (including front pay and back pay), judgments, settlements, statutory attorney fees, and "defense costs", however, "loss" shall not include: (1) civil or criminal fines or penalties imposed by law; (2) punitive or exemplary damages; (3) the multiplied portion of multiplied damages; (4) taxes; (5) any amount for which the "insureds" are not financially liable or which are without legal recourse to the "insureds"; (6) employment related benefits, stock options, perquisites, deferred compensation or any other type of compensation other than salary, wages or bonus compensation; (7) matters which may be deemed uninsurable under the law pursuant to which this EPL Coverage Endorsement shall be construed; or (8) any pre-judgment or post-judgment interest on any judgment.

**G.** "Named Insured" means the person or organization designated in the Supplemental Declarations page of this EPL Coverage Endorsement.

**H.** "Original inception date" refers to the date specified in the Supplemental Declarations of this EPL Coverage Endorsement.

**I.** "EPL coverage period" means the period commencing on the effective date shown in the Supplemental Declarations of this EPL Coverage Endorsement. This period ends on the earlier of the expiration date or the effective date of cancellation of this EPL Coverage Endorsement. If "you" became an "insured" under this EPL Coverage Endorsement after the effective date, the "EPL coverage period" begins on the date "you" became an "insured".

**J.** "Property Damage" means physical injury to, or destruction of, tangible property including the loss of use of thereof, or loss of use of tangible property, which has not been physically injured or destroyed.

**K.** "Related Wrongful Employment Act(s)" means "wrongful employment acts" which are the same, related or continuous, or "wrongful employment acts" which arise from a common nucleus of facts. "Claims" or "suits" can allege "related wrongful employment acts", regardless of whether such "claims" or "suits" involve the same or different claimants, "insureds" or legal causes of actions.

**L.** "Retaliation" means a "wrongful employment act" of an "insured" alleged to be in response to, the actual or attempted exercise by an "employee" of any right that such "employee" has under the law. Provided, however, "retaliation" shall not include the "wrongful employment act" of an "insured" alleged to be in response to the threat of or the actual filing of any claim or suit under the Federal False Claims Act or any other federal state, local or foreign "whistleblower law".

**M.** "Subsidiary" means:

**1.** Any for-profit organization which, on or before the inception of the "EPL coverage period", is more than 50% owned by the "named insured", either directly or indirectly through one or more of its "subsidiaries"; or

**2.** A for-profit organization which becomes a "subsidiary" during the "EPL coverage period", but only upon the condition that within 90 days of its becoming a "subsidiary", the "named insured" shall have provided "us" with full particulars of the new "subsidiary" and agreed to any additional premium or amendment of the provisions of this EPL Coverage Endorsement required

by "us" relating to such new "subsidiary". Further, coverage as shall be afforded to the new "subsidiary" is conditioned upon the "named insured" paying when due any additional premium required by "us" relating to such new "subsidiary".

An organization becomes a "subsidiary" when the "named insured" owns more than fifty (50%) percent ownership interest in such "subsidiary", either directly, or indirectly through one or more of its "subsidiaries". An organization ceases to be a "subsidiary" when the "named insured" ceases to own more than a fifty (50%) percent ownership in such "subsidiary", either directly, or indirectly through one or more of its "subsidiaries".

In all events, coverage as is afforded under this EPL Coverage Endorsement with respect to a "claim" made or "suit" brought against any "subsidiary" or an "insured" of any "subsidiary", shall only apply to "wrongful employment act(s)" commenced or allegedly commenced after the effective time that such "subsidiary" became a "subsidiary", and prior to the time that such "subsidiary" ceased to be a "subsidiary".

**N.** "Suit" means a civil proceeding or an administrative proceeding seeking money damages, and includes an arbitration, mediation or any other alternative dispute resolution procedure seeking such damages, to which the "insured" must submit or may submit with "our" consent. "Suit" shall not include any civil proceeding or administrative proceeding arising from any labor or grievance dispute which is subject to a collective bargaining agreement.

**O.** "Whistleblower law" means a statute, rule or regulation, which protects an employee against discrimination from his or her employer, if the employee discloses or threatens to disclose to a superior or any governmental agency; or who gives testimony relating to, any action with respect to the employer's operations, which may be a violation of public policy as reflected in legislation, administrative rules, regulations or decisions, judicial decisions, and professional codes of ethics.

**P.** "Wrongful Employment Act(s)" means any actual or alleged:

**1.** wrongful dismissal, discharge or termination (either actual or constructive), including breach of an implied contract;

**2.** harassment (including sexual harassment, whether quid pro quo, hostile work environment or otherwise);

**3.** discrimination (including but not limited to discrimination based upon age, gender, race, color, national origin, religion, sexual orientation or preference, pregnancy or disability);

**4.** "retaliation" (including lockouts);

**5.** employment-related misrepresentation(s) to "your" "employee" or applicant for employment with "you";

**6.** employment-related libel, slander, humiliation, mental anguish, infliction of emotional distress, defamation, or invasion of privacy;

**7.** wrongful failure to employ or promote;

**8.** wrongful deprivation of career opportunity, wrongful demotion or negligent "employee" evaluation, including the giving of negative or defamatory statements in connection with an "employee" reference;

**9.** wrongful discipline;

**10.** failure to grant tenure;

**11.** failure to provide or enforce adequate or consistent corporate policies and procedures relating to any "wrongful employment act"

**12.** negligent supervision or hiring by an "insured", relating to any of the above;

**13.** violation of an individual's civil rights relating to any of the above.



OBCH332709        1304500

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## REVISED INFRINGEMENT OF COPYRIGHT, PATENT, TRADEMARK OR TRADE SECRETS EXCLUSION

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

Under **SECTION II - LIABILITY, B. Exclusions,** paragraph **2.m.** is replaced in its entirety with the following:

**m.** **Infringement of Copyright, Patent, Trademark or Trade Secret**

Arising out of the theft, misappropriation, misuse, infringement or contributory infringement of any copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**391-1371 01 10**        Includes copyrighted material of Insurance Services Office., Inc., with its permission        **Page 1 of 1**

199

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## AMENDMENT - LIMITS OF INSURANCE PERSONAL AND ADVERTISING INJURY SEPARATE LIMIT

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**A.** Under **SECTION II - LIABILITY, D. Liability and Medical Expenses Limits of Insurance,** Paragraph **2.** is replaced with the following:

**2.** The most we will pay for the sum of all damages because of all "Bodily injury", "property damage" and medical expenses arising out of any one "occurrence" are the Liability limit and the Medical Expenses limit, respectively, shown in the Declarations.

But the most we will pay for all medical expenses because of "bodily injury" sustained by any one person is the Medical Expenses limit shown in the Declarations.

**B.** Under **SECTION II - LIABILITY, D. Liability and Medical Expenses Limits of Insurance,** the following is added:

The most we will pay for the sum of all damages because of "personal and advertising injury" sustained by any one person or organization is the same as the Business Liability Limit shown in the Declarations.



OBCH332709     1304500

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PRODUCTS-COMPLETED OPERATIONS AGGREGATE LIMIT OF INSURANCE

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

**SCHEDULE**

| | |
|---|---|
| **Products-Completed Operations Aggregate Limit Of Insurance:** | $    1,000,000 |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**Section III - Limits Of Insurance** is replaced by the following:

1. The Limits Of Insurance shown in the Declarations and the Schedule of this endorsement, and the following rules fix the most we will pay regardless of the number of:

   **a.** Insureds;

   **b.** Claims made, "suits" brought, or number of vehicles involved; or

   **c.** Persons or organizations making claims or bringing "suits".

2. The Aggregate Limit is the most we will pay for the sum of all "ultimate net loss" under:

   **a.** Coverage **A,** except "ultimate net loss" because of "bodily injury" or "property damage":

      **(1)** Arising out of the ownership, maintenance or use of a "covered auto"; or

      **(2)** Included in the "products-completed operations hazard"; and

   **b.** Coverage **B.**

3. The Products-Completed Operations Aggregate Limit shown in the Schedule of this endorsement is the most we will pay for the sum of all "ultimate net loss" under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of all "ultimate net loss" under Coverage **A** because of all "bodily injury" and "property damage" arising out of any one "occurrence".

5. Subject to Paragraph **2.** above, the Personal and Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all "ultimate net loss" because of all "personal and advertising injury" sustained by any one person or organization.

The Aggregate Limits, as described in Paragraphs **2.** and **3.** above, apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**The Hanover Insurance Group™**

OBCH332709      1304500

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AUTO EXCLUSION OF TERRORISM COVERAGE

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

**A.** The provisions of this endorsement:

**1.** Apply only to "bodily injury" or "property damage" arising out of the ownership, maintenance or use of any "auto" that is a "covered auto" under this Coverage Part; and

**2.** Supersede the provisions of any other endorsement addressing terrorism attached to this Coverage Part only with respect to "bodily injury" or "property damage" arising out of the ownership, maintenance or use of any "auto" that is a "covered auto".

**B.** The following definitions are added and apply under this endorsement wherever the term terrorism, or the phrase any injury or damage, are enclosed in quotation marks:

**1.** "Terrorism" means activities against persons, organizations or property of any nature:

**a.** That involve the following or preparation for the following:

**(1)** Use or threat of force or violence; or

**(2)** Commission or threat of a dangerous act; or

**(3)** Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

**b.** When one or both of the following applies:

**(1)** The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

**(2)** It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic

objectives or to express (or express opposition to) a philosophy or ideology.

**2.** "Any injury or damage" means any injury or damage covered under any Coverage Part or underlying insurance to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part or underlying insurance.

**C.** The following exclusion is added:

**EXCLUSION OF TERRORISM**

We will not pay for "any injury or damage" caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". "Any injury or damage" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to such injury or damage. **But this exclusion applies only when one or more of the following are attributed to an incident of "terrorism":**

**1.** The "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

**2.** Radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or

**3.** The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

**4.** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials; or

5. The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

6. Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

    a. Physical injury that involves a substantial risk of death; or

    b. Protracted and obvious physical disfigurement; or

    c. Protracted loss of or impairment of the function of a bodily member or organ.

Multiple incidents of "terrorism" which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the thresholds in Paragraphs **C.5.** or **C.6.** are exceeded.

With respect to this Exclusion, Paragraphs **C.5.** and **C.6.** describe the threshold used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply, for the purpose of determining whether this Exclusion will apply to that incident. When the Exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Part.

In the event of any incident of "terrorism" that is not subject to this Exclusion, coverage does not apply to "any injury or damage" that is otherwise excluded under this Coverage Part.

Copyright, ISO Properties, Inc., 2006

**CU 21 56 06 06**

The **Hanover**
Insurance Group™

OBCH332709     1304500

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF PUNITIVE DAMAGES
# RELATED TO A CERTIFIED ACT OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM PUNITIVE DAMAGES**

Damages arising, directly or indirectly, out of a "certified act of terrorism" that are awarded as punitive damages.

**B.** The following definition is added:

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**C.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.

**CU 21 36 01 15**     Copyright, Insurance Services Office, Inc., 2015     **Page 1 of 1**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# COMMERCIAL UMBRELLA
# "YOUR PRODUCT" AND "YOUR WORK" COVERAGE ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE FORM

**A.** The following is added to **SECTION I - COVERAGES; COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE,** Paragraph **2. Exclusions,** Exclusion **s. Professional Services** and **SECTION I - COVERAGES; COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY,** Paragraph **2. Exclusions,** Exclusion **(15) Professional Services:**

However, this exclusion does not apply to "Bodily Injury", "Property Damage" and "Personal and Advertising Injury" arising out of "your product" and "your work".

**B.** For the purposes of this endorsement, "your product" and "your work" mean any of the following that are created, manufactured, developed, modified, distributed, installed, licensed, leased, performed or sold by you or on your behalf to others**:**

1. Computer or telecommunications hardware, components, firmware, software or any related electronic product, equipment or device

2. Computer software, including software updates, services packs or other maintenance releases

3. Application hosting

4. Computer facility management

5. Custom programming

6. Data processing, preparation, management, hosting or storage

7. Information technology consulting, project management, staff augmentation or placement

8. Network management

9. Repair or maintenance of computer products, networks or systems

10. System support, systems analysis, design, programming or integration

11. Training in the use of any technology products

12. Website design, programming, maintenance or hosting

13. Digital subscriber lines (DSL) and integrated services digital network (ISDN) services

14. Internet connectivity services and internet hosting services

15. Local, regional and long distance wireline and wireless dial tone access and switched services, including directory assistance, toll free services, voicemail, call forwarding, call waiting and caller ID

16. Paging services

17. Telecommunication consulting services

18. Video conferencing services

19. Voice over internet protocol (VOIP) services

20. Application service provider services

21. Data backup services

22. Domain name registration services

23. E-Commerce transaction services

24. Email services

25. Internet search or navigation

**C.** However, this insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering or failure to render "your product" or "your work" involved with or related to:

1. Emergency response systems or services;

2. Medical diagnostic services or processes;

3. Aviation, aerospace, or military applications or operations, including weapons systems;

4. Pollution or environmental control, testing, monitoring or remediation; or

5. Physical security including but not limited to fire, sprinkler, smoke, burglar alarm or monitoring systems or access control.

**D.** None of the Additional Insureds given insured status by the "underlying insurance" have any insured status whatsoever for coverage provided by this endorsement.

Notwithstanding any coverage afforded in the "underlying insurance", this policy does not apply to any professional liability coverage afforded by any Technology Professional Advantage for Avenues Coverage Part.

ALL OTHER TERMS, CONDITIONS, AND EXCLUSIONS REMAIN UNCHANGED.

The **Hanover** Insurance Group™

OBCH332709          1304500

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

COMMERCIAL UMBRELLA

**REVISED INFRINGEMENT OF COPYRIGHT, PATENT, TRADEMARK OR TRADE SECRETS EXCLUSION**

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE FORM

Under **SECTION I - COVERAGES, COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY 2. Exclusions** paragraph **(9)** is replaced in its entirety with the following:

**(9)     Infringement of Copyright, Patent, Trademark or Trade Secret**

Arising out of the theft, misappropriation, misuse, infringement or contributory infringement of any copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**.

**COMMERCIAL UMBRELLA**

**EXCLUSION - AIRCRAFT PRODUCTS, GROUNDING, AND TESTING**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of:

1. "Aircraft products" or reliance upon any representation or warranty made with such product; or

2. The "Grounding" of any aircraft; or

3. The "Testing" of any aircraft.

"Aircraft products" mean:

1.  Aircraft, including but not limited to  missiles or spacecraft, or any other aircraft goods or products you manufacture, sell, handle or distribute; or
2.  Aircraft and any ground support or control equipment used in connection therewith; or
3.  Any product provided by the insured and installed or used in connection with any aircraft; or
4.  Any tooling used in respect to any aircraft; or
5.  Training and Navigational aids, instructions, manuals, blueprints, engineering or other data in connection with any aircraft; or
6.  Any advice, service or labor supplied in connection with any aircraft; or
7.  Services you or others trading under your name provide or recommend for use in the manufacture, repair, operation, maintenance or use of any aircraft.

"Grounding" means:

The withdrawal of one or more aircraft from flight operations or the imposition of speed, passenger or load restrictions on such aircraft, due to the existence of or alleged or suspected existence of:

**a.**  any defect, fault or condition in such aircraft or any part sold, handled or distributed by you or that is manufactured, assembled or processed by any other person or organization according to your specifications, plans, suggestions, orders or drawings; or

**b.**  any defect, fault or condition with tools, machinery or other equipment furnished to such persons or organizations by you

Whether such withdrawn aircraft are owned or operated by the same or different persons or organizations.

"Grounding" shall be deemed to commence on the date of an "occurrence" which discloses the necessity of "grounding" or on the date of an aircraft is first withdrawn from service because of such condition, whichever occurs first.

"Testing", means examination, observation, evaluation or measuring of the performance  of  "aircraft products", while either in the air or on the ground.



OBCH332709    1304500

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# RECORDING AND DISTRIBUTION OF MATERIAL OR INFORMATION IN VIOLATION OF LAW EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

**A.** Exclusion **u.** of Paragraph **2. Exclusions** of Section **I - Coverage A - Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**u. Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA);or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

**B.** Exclusion **a.(17)** of Paragraph **2. Exclusions** of Section **I - Coverage B - Personal And Advertising Injury Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**a.** "Personal and advertising injury":

**(17) Recording And Distribution Of Material Or Information In Violation Of Law**

Arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(a)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(b)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(c)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

**(d)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

    Copyright, Insurance Services Office, Inc., 2008

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**COMMERCIAL UMBRELLA**

**EXCLUSION - LEAD POISONING LIABILITY**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of any actual or alleged lead poisoning due to:

1.  The inhalation of, ingestion of, or prolonged physical exposure to any premises, structure, good, or product containing lead by any person; or

2.  The use of lead in the construction or manufacture of any good, product, or structure; or

3.  Either intentional or accidental removal, including encapsulation, dispersal, sealing, or disposal of any good, product, or structure containing lead; or

4.  The manufacture, transportation, storage, or disposal of good or product containing lead; or

5.  The manufacture, sale, handling, or distribution of any good or product containing lead by or on behalf of an insured; or

6.  An act or omission of an insured in connection with the general supervision of any job which involves the removal, enclosure, encapsulation, dispersal, sealing, or disposal of any premises, structure, good, product, or material containing lead.  General supervision includes the rendering of or failure to render any instructions, recommendations, warnings, or advice.

**The Hanover**
Insurance Group™

OBCH332709     1304500

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**COMMERCIAL UMBRELLA**

**ASBESTOS LIABILITY EXCLUSION**

This insurance does not apply to "bodily injury", "property damage "or "personal and advertising injury" arising out of any actual or alleged:

1.  Inhaling, ingesting or prolonged physical exposure by any person to asbestos or asbestos fibers or goods or products containing asbestos;

2.  Use of asbestos in constructing or manufacturing any good, product or structure;

3.  Intentional or accidental removal including encapsulation, dispersal, sealing or disposal of asbestos or asbestos fibers from any good, product or structure;

4.  Manufacture, transportation, storage or disposal of asbestos or goods or products containing asbestos;

5.  Product manufactured, sold, handled or distributed by or on behalf of the insured which contain asbestos; or

6.  Acts or omissions of the insured in connection with the general supervision of any job involving the removal, enclosure, encapsulation, dispersal, sealing or disposal of asbestos, asbestos fibers or products containing asbestos.  General supervision includes the rendering of or failure to render any instructions, recommendations, warnings or advice.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**COMMERCIAL UMBRELLA**

**AMENDATORY ENDORSEMENT**

Exclusion **s. (9)** of Paragraph **2. Exclusions of Section I - Coverage A - Bodily Injury and Property Damage Liability** is replaced with the following:

**(9)** Services in the practice of pharmacy.

Exclusion **(15) (i)** of Paragraph **2., Exclusions of  Section I - Coverage B - Personal and Advertising Injury Liability** is replaced with the following:

 **(i)** Services in the practice of pharmacy.

Exclusion **f.** of Paragraph **2**. Exclusions of **Section I - Coverage A - Bodily Injury and Property Damage Liability** is replaced with the following:

**f. Auto Coverages**

**(1)** "Bodily injury" or "property damage" arising out of the ownership, maintenance or use of any "auto" which is not a "covered auto"; or

**(2)** Any loss, cost or expense payable under or resulting from any first party physical damage coverage; no-fault law; personal injury protection or auto medical payments coverage; or uninsured or underinsured motorist law.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any "auto" that is owned or operated by or rented or loaned to any insured.

Paragraph **5 Other Insurance of Section IV - Conditions** is replaced with the following:

**5.  Other Insurance**

This policy shall apply in excess of all "underlying insurance" whether or not valid and collectible.  It shall also apply in excess of other valid and collectible insurance (except other insurance purchased specifically to apply in excess of this insurance) which also applies to any loss for which insurance is provided by this policy.

These excess provisions apply, whether such other insurance is stated to be:

1. Primary;
2. Contributing;
3. Excess; or
4. Contingent.

**13.  Maintenance of Underlying Insurance**

The "underlying insurance" listed in the schedule of "underlying insurance" in the declarations shall remain in full effect throughout the policy period except for reduction of the aggregate limit due to payment of claims, settlement, or judgments.  This means:

1. The terms, conditions and endorsements of "underlying insurance" will not materially change;
2. Renewals or replacements of "underlying insurance" will not be more restrictive in coverage; and
3. "Underlying insurance" may not be canceled or non-renewed without notifying us.

**The Hanover** Insurance Group™

OBCH332709     1304500

Failure to maintain "underlying insurance" will not invalidate this insurance.  However, this insurance will apply as if the "underlying insurance" were in full effect.

You must notify us as soon as practicable when any "underlying insurance" is no longer in effect.

**Section V - Definitions**

**1.  9. f. is replaced with the following:**

That part of any contract or agreement entered into, as part of your business, pertaining to the rental or lease, by you or any of your "employees", of any "covered auto". However, such contract or agreement shall not be considered an "insured contract" to the extent that it obligates you or any of your "employees" to pay for "property damage" to any "covered auto" rented or leased by you or any of your "employees".

**2.**  11. "Loading and unloading" is replaced with the following:

**11.**  "Loading or unloading" means the handling of property:
   a.  After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft, or "auto";
   b.  While it is in or on an aircraft, watercraft, or "auto"; or
   c.  While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES - CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

**A.** The **Cancellation** Common Policy Condition is replaced by the following:

**CANCELLATION**

**1.** The first Named Insured shown in the Declarations may cancel this policy by mailing to us advance written notice of cancellation.

**2.** We may cancel this policy by mailing to you written notice stating the reason for cancellation. If we cancel:

  **a.** For nonpayment of premium, we will mail the notice at least 10 days prior to the effective date of cancellation.

  **b.** For a reason other than nonpayment of premium, we will mail the notice at least:

    **(1)** 30 days prior to the effective date of cancellation if the policy has been in effect for 60 days or less.

    **(2)** 60 days prior to the effective date of cancellation if the policy has been in effect for more than 60 days.

**3.** If this policy has been in effect for more than 60 days or is a renewal or continuation policy, we may cancel only for one or more of the following reasons:

  **a.** Nonpayment of premium;

  **b.** The policy was obtained through a material misrepresentation;

  **c.** Any insured has violated any of the terms and conditions of the policy;

  **d.** The risk originally accepted has measurably increased;

  **e.** Certification to the Director of Insurance of the loss of reinsurance by the insurer that provided coverage to us for all or a substantial part of the underlying risk insured; or

  **f.** A determination by the Director of Insurance that the continuation of the policy could place us in violation of the insurance laws of this State.

**4.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

**5.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund will be less than pro rata. The cancellation will be effective even if we have not offered a refund.

**B.** Condition **10. When We Do Not Renew** is replaced by the following:

If we decide not to renew or continue this policy, we will mail you and your agent or broker written notice, stating the reason for nonrenewal, at least 60 days before the end of the policy period. If we offer to renew or continue and you do not accept, this policy will terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

If we fail to mail proper written notice of nonrenewal and you obtain other insurance, this policy will end on the effective date of that insurance.

**C. Mailing Of Notices**

We will mail cancellation and nonrenewal notices to you, and the agent or broker, at the last addresses known to us. Proof of mailing will be sufficient proof of notice.

Copyright ISO Properties, Inc., 2007



OBCH332709    1304500

# COMMERCIAL LIABILITY UMBRELLA COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** - Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** - Definitions.

## SECTION I - COVERAGES

## COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

**a.** We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking damages for such "bodily injury" or "property damage" when the "underlying insurance" does not provide coverage or the limits of "underlying insurance" have been exhausted. When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other "suit" seeking damages to which this insurance may apply. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. At our discretion, we may investigate any "occurrence" that may involve this insurance and settle any resultant claim or "suit", for which we have the duty to defend. But:

**(1)** The amount we will pay for the "ultimate net loss" is limited as described in Section **III** - Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages **A** and **B**.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.a.** of Section **II** - Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.a.** of Section **II** - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.a.** of Section **II** - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

## 2. Exclusions

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

This exclusion does not apply to the extent that valid "underlying insurance" for the liquor liability risks described above exists or would have existed but for the exhaustion of underlying limits for "bodily injury" and "property damage". Coverage provided will follow the provisions, exclusions and limitations of the "underlying insurance" unless otherwise directed by this insurance.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. E.R.I.S.A.**

Any obligation of the insured under the Employees' Retirement Income Security Act (E.R.I.S.A.), and any amendments thereto or any similar federal, state or local statute.

**f. Auto Coverages**

**(1)** "Bodily injury" or "property damage" arising out of the ownership, maintenance or use of any "auto" which is not a "covered auto"; or

**(2)** Any loss, cost or expense payable under or resulting from any first party physical damage coverage; no-fault law; personal injury protection or auto medical payments coverage; or uninsured or underinsured motorist law.

**g. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

Copyright ISO Properties, Inc., 2007
CU 00 01 12 07

The
**Hanover**
Insurance Group.

OBCH332709    1304500

This exclusion applies whether the insured may be liable as an employer or in any other capacity, and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

With respect to injury arising out of a "covered auto", this exclusion does not apply to "bodily injury" to domestic "employees" not entitled to workers' compensation benefits. For the purposes of this insurance, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

This exclusion does not apply to the extent that valid "underlying insurance" for the employer's liability risks described above exists or would have existed but for the exhaustion of underlying limits for "bodily injury". Coverage provided will follow the provisions, exclusions and limitations of the "underlying insurance" unless otherwise directed by this insurance.

**h. Employment-Related Practices**

"Bodily injury" to:

**(1)** A person arising out of any:

**(a)** Refusal to employ that person;

**(b)** Termination of that person's employment; or

**(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies whether the injury-causing event described in Paragraphs **(a)**, **(b)** or **(c)** above occurs before employment, during employment or after employment of that person.

This exclusion applies whether the insured may be liable as an employer or in any other capacity, and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

**i. Pollution**

**(1)** "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time; or

**(2)** "Pollution cost or expense".

This exclusion does not apply if valid "underlying insurance" for the pollution liability risks described above exists or would have existed but for the exhaustion of underlying limits for "bodily injury" and "property damage". Coverage provided will follow the provisions, exclusions and limitations of the "underlying insurance".

**j. Aircraft Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 50 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft.

**(4)** The extent that valid "underlying insurance" for the aircraft or watercraft liability risks described above exists or would have existed but for the exhaustion of underlying limits for "bodily injury" or "property damage". Coverage provided will follow the provisions, exclusions and limitations of the "underlying insurance" unless otherwise directed by this insurance; or

**(5)** Aircraft that is:

    **(a)** Chartered by, loaned to, or hired by you with a paid crew; and

    **(b)** Not owned by any insured.

**k. Racing Activities**

"Bodily injury" or "property damage" arising out of the use of "mobile equipment" or "autos" in, or while in practice for, or while being prepared for, any prearranged professional or organized racing, speed, demolition, or stunting activity or contest.

**l. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**m. Damage To Property**

"Property damage" to:

**(1)** Property:

    **(a)** You own, rent, or occupy including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property; or

    **(b)** Owned or transported by the insured and arising out of the ownership, maintenance or use of a "covered auto".

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(1)(b), (3), (4), (5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraphs **(3)** and **(4)** of this exclusion do not apply to liability assumed under a written Trailer Interchange agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**n. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**o. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**p. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**q. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

Copyright ISO Properties, Inc., 2007

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**r. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**s. Professional Services**

"Bodily injury" or "property damage" due to rendering or failure to render any professional service. This includes but is not limited to:

**(1)** Legal, accounting or advertising services;

**(2)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications by any architect, engineer or surveyor performing services on a project on which you serve as construction manager;

**(3)** Inspection, supervision, quality control, architectural or engineering activities done by or for you on a project on which you serve as construction manager;

**(4)** Engineering services, including related supervisory or inspection services;

**(5)** Medical, surgical, dental, x-ray or nursing services treatment, advice or instruction;

**(6)** Any health or therapeutic service treatment, advice or instruction;

**(7)** Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement, or personal grooming or therapy;

**(8)** Any service, treatment, advice or instruction relating to physical fitness, including service, treatment, advice or instruction in connection with diet, cardio-vascular fitness, body building or physical training programs;

**(9)** Optometry or optical or hearing aid services including the prescribing, preparation, fitting, demonstration or distribution of ophthalmic lenses and similar products or hearing aid devices;

**(10)** Body piercing services;

**(11)** Services in the practice of pharmacy; but this exclusion does not apply if you are a retail druggist or your operations are those of a retail drugstore;

**(12)** Law enforcement or firefighting services; and

**(13)** Handling, embalming, disposal, burial, cremation or disinterment of dead bodies.

**t. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

This exclusion does not apply if valid "underlying insurance" for the electronic data risks described above exists or would have existed but for the exhaustion of underlying limits for "bodily injury" and "property damage". Coverage provided will follow the provisions, exclusions and limitations of the "underlying insurance", unless otherwise directed by this insurance.

**u. Distribution Of Material In Violation Of Statutes**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**(3)** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

Copyright ISO Properties, Inc., 2007

## COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY

### 1. Insuring Agreement

**a.** We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking damages for such "personal and advertising injury" when the "underlying insurance" does not provide coverage or the limits of "underlying insurance" have been exhausted. When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other "suit" seeking damages to which this insurance may apply. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. At our discretion, we may investigate any offense that may involve this insurance and settle any resultant claim or "suit", for which we have the duty to defend. But:

**(1)** The amount we will pay for the "ultimate net loss" is limited as described in Section **III** - Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages **A** and **B.**

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

### 2. Exclusions

This insurance does not apply to:

**a.** "Personal and advertising injury":

**(1) Knowing Violation Of Rights Of Another**

Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**(2) Material Published With Knowledge Of Falsity**

Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

**(3) Material Published Prior To Policy Period**

Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

**(4) Criminal Acts**

Arising out of a criminal act committed by or at the direction of the insured.

**(5) Contractual Liability**

For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to:

**(a)** Liability for damages that the insured would have in the absence of the contract or agreement.

**(b)** Liability for false arrest, detention or imprisonment assumed in a contract or agreement.

**(6) Breach Of Contract**

Arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**(7) Quality Or Performance Of Goods - Failure To Conform To Statements**

Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**(8) Wrong Description Of Prices**

Arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**(9) Infringement Of Copyright, Patent, Trademark Or Trade Secret**

Arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**(10) Insureds In Media And Internet Type Businesses**

Committed by an insured whose business is:

**(a)** Advertising, broadcasting, publishing or telecasting;

**(b)** Designing or determining content of websites for others; or

**(c)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**(11) Electronic Chatrooms Or Bulletin Boards**

Arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**(12) Unauthorized Use Of Another's Name Or Product**

Arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**(13) Pollution**

Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**(14) Employment-Related Practices**

To:

**(a)** A person arising out of any:

**(i)** Refusal to employ that person;

**(ii)** Termination of that person's employment; or

**(iii)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(b)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(i), (ii)** or **(iii)** above is directed.

This exclusion applies whether the injury-causing event described in Paragraphs **(i), (ii)** or **(iii)** above occurs before employment, during employment or after employment of that person.

This exclusion applies whether the insured may be liable as an employer or in any other capacity, and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

**(15) Professional Services**

Arising out of the rendering or failure to render any professional service. This includes but is not limited to:

**(a)** Legal, accounting or advertising services;

**(b)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications by any architect, engineer or surveyor performing services on a project on which you serve as construction manager;

**(c)** Inspection, supervision, quality control, architectural or engineering activities done by or for you on a project on which you serve as construction manager.

**(d)** Engineering services, including related supervisory or inspection services;

**(e)** Medical, surgical, dental, x-ray or nursing services treatment, advice or instruction;

**(f)** Any health or therapeutic service treatment, advice or instruction;

**(g)** Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement, or personal grooming or therapy;

**(h)** Any service, treatment, advice or instruction relating to physical fitness, including service, treatment, advice or instruction in connection with diet, cardio-vascular fitness, body building or physical training programs;

**i)** Optometry or optical or hearing aid services including the prescribing, preparation, fitting, demonstration or distribution of ophthalmic lenses and similar products or hearing aid devices;

**(j)** Body piercing services;

**(k)** Services in the practice of pharmacy; but this exclusion does not apply if you are a retail druggist or your operations are those of a retail drugstore;

**(l)** Law enforcement or firefighting services; and

**(m)** Handling, embalming, disposal, burial, cremation or disinterment of dead bodies.

**(16) War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(a)** War, including undeclared or civil war;

**(b)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(c)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**(17) Distribution Of Material In Violation Of Statutes**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(a)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**(b)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**(c)** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

**b.** "Pollution cost or expense".

**SUPPLEMENTARY PAYMENTS - COVERAGES A AND B**

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend, when the duty to defend exists:

**a.** All expenses we incur.

**b.** Up to $2000 for cost of bail bonds (including bonds for related traffic law violations) required because of an "occurrence" we cover. We do not have to furnish these bonds.

**c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**e.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

**f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**2.** When we have the right but not the duty to defend the insured and elect to participate in the defense, we will pay our own expenses but will not contribute to the expenses of the insured or the "underlying insurer".

**3.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and



**f.** The indemnitee:

**(1)** Agrees in writing to:

**(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

**(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

**(c)** Notify any other insurer whose coverage is available to the indemnitee; and

**(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

**(2)** Provides us with written authorization to:

**(a)** Obtain records and other information related to the "suit"; and

**(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** - Coverage **A** - Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

## SECTION II - WHO IS AN INSURED

**1.** Except for liability arising out of the ownership, maintenance or use of "covered autos":

**a.** If you are designated in the Declarations as:

**(1)** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**(2)** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**(3)** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**(4)** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**(5)** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**b.** Each of the following is also an insured:

**(1)** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(a)** "Bodily injury" or "personal and advertising injury":

**(i)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" in the course of his or her employment or performing duties related to the conduct of your business or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(ii)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(a)(i)** above; or

**(iii)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs **(a)(i)** or **(ii)** above.

 Copyright ISO Properties, Inc., 2007

   **(b)** "Property damage" to property:

     **(i)** Owned, occupied or used by,

     **(ii)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

     you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**(2)** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**(3)** Any person or organization having proper temporary custody of your property if you die, but only:

   **(a)** With respect to liability arising out of the maintenance or use of that property; and

   **(b)** Until your legal representative has been appointed.

**(4)** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**c.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**(1)** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**(2)** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**(3)** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

**2.** Only with respect to liability arising out of the ownership, maintenance or use of "covered autos":

   **a.** You are an insured.

**b.** Anyone else while using with your permission a "covered auto" you own, hire or borrow is also an insured except:

**(1)** The owner or anyone else from whom you hire or borrow a "covered auto". This exception does not apply if the "covered auto" is a trailer or semitrailer connected to a "covered auto" you own.

**(2)** Your "employee" if the "covered auto" is owned by that "employee" or a member of his or her household.

**(3)** Someone using a "covered auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

**(4)** Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company), or a lessee or borrower or any of their "employees", while moving property to or from a "covered auto".

**(5)** A partner (if you are a partnership), or a member (if you are a limited liability company) for a "covered auto" owned by him or her or a member of his or her household.

**(6)** "Employees" with respect to "bodily injury" to any fellow "employee" of the insured arising out of and in the course of the fellow "employee's" employment or while performing duties related to the conduct of your business.

**c.** Anyone liable for the conduct of an insured described above is also an insured, but only to the extent of that liability.

**3.** Any additional insured under any policy of "underlying insurance" will automatically be an insured under this insurance.

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance required by the contract, less any amounts payable by any "underlying insurance".

Additional insured coverage provided by this insurance will not be broader than coverage provided by the "underlying insurance".

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

      Copyright ISO Properties, Inc., 2007       **CU 00 01 12 07**



OBCH332709    1304500

## SECTION III - LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   **a.** Insureds;

   **b.** Claims made, "suits" brought, or number of vehicles involved; or

   **c.** Persons or organizations making claims or bringing "suits".

2. The Aggregate Limit is the most we will pay for the sum of all "ultimate net loss" under:

   **a.** Coverage **A,** except "ultimate net loss" because of "bodily injury" or "property damage" arising out of the ownership, maintenance or use of a "covered auto"; and

   **b.** Coverage **B.**

3. Subject to Paragraph **2.** above, the Each Occurrence Limit is the most we will pay for the sum of all "ultimate net loss" under Coverage **A** because of all "bodily injury" and "property damage" arising out of any one "occurrence".

4. Subject to Paragraph **2.** above, the Personal and Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all "ultimate net loss" because of all "personal and advertising injury" sustained by any one person or organization.

5. If there is "underlying insurance" with a policy period that is non-concurrent with the policy period of this Commercial Liability Umbrella Coverage Part, the "retained limit(s)" will only be reduced or exhausted by payments for:

   **a.** "Bodily injury" or "property damage" which occurs during the policy period of this Coverage Part; or

   **b.** "Personal and advertising injury" for offenses that are committed during the policy period of this Coverage Part.

   However, if any "underlying insurance" is written on a claims-made basis, the "retained limit(s)" will only be reduced or exhausted by claims for that insurance that are made during the policy period, or any Extended Reporting Period, of this Coverage Part.

The Aggregate Limit, as described in Paragraph **2.** above, applies separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV - CONDITIONS

1. **Appeals**

   If the "underlying insurer" or insured elects not to appeal a judgment in excess of the "retained limit", we may do so at our own expense. We will be liable for taxable costs, pre- and post-judgment interest and disbursements.

2. **Bankruptcy**

   **a. Bankruptcy Of Insured**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

   **b. Bankruptcy Of Underlying Insurer**

   Bankruptcy or insolvency of the "underlying insurer" will not relieve us of our obligations under this Coverage Part.

   However, this insurance will not replace the "underlying insurance" in the event of bankruptcy or insolvency of the "underlying insurer". This insurance will apply as if the "underlying insurance" were in full effect.

3. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   **a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense, regardless of the amount, which may result in a claim. To the extent possible, notice should include:

   **(1)** How, when and where the "occurrence" or offense took place;

   **(2)** The names and addresses of any injured persons and witnesses; and

   **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

   **b.** If a claim is made or "suit" is brought against any insured, you must:

   **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

   **(2)** Notify us as soon as practicable.

   You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   **c.** You and any other involved insured must:

   **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

   **(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**4. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**5. Other Insurance**

**a.** This insurance is excess over, and shall not contribute with any of the other insurance, whether primary, excess, contingent or on any other basis. This condition will not apply to insurance specifically written as excess over this Coverage Part.

When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**b.** When this insurance is excess over other insurance, we will pay only our share of the "ultimate net loss" that exceeds the sum of:

**(1)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(2)** The total of all deductible and self-insured amounts under all that other insurance.

**6. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**7. Representations Or Fraud**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us;

**c.** We have issued this policy in reliance upon your representations; and

**d.** This policy is void in any case of fraud by you as it relates to this policy or any claim under this policy.

**8. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**9. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

Copyright ISO Properties, Inc., 2007



OBCH332709    1304500

## 10. When We Do Not Renew

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## 11. Loss Payable

Liability under this Coverage Part shall not apply unless and until the insured or insured's "underlying insurer" has become obligated to pay the "retained limit". Such obligation by the insured to pay part of the "ultimate net loss" shall have been previously determined by a final settlement or judgment after an actual trial or written agreement between the insured, claimant, and us.

## 12. Transfer Of Defense

When the underlying limits of insurance have been used up in the payment of judgments or settlements, the duty to defend will be transferred to us. We will cooperate in the transfer of control to us of any outstanding claims or "suits" seeking damages to which this insurance applies which would have been covered by the "underlying insurance" had the applicable limit not been used up.

## 13. Maintenance Of/Changes To Underlying Insurance

The "underlying insurance" listed in the Schedule of "underlying insurance" in the Declarations shall remain in full effect throughout the policy period except for reduction of the aggregate limit due to payment of claims, settlement or judgments.

Failure to maintain "underlying insurance" will not invalidate this insurance. However, this insurance will apply as if the "underlying insurance" were in full effect.

If there is an increase in the scope of coverage of any "underlying insurance" during the term of this policy, our liability will be no more than it would have been if there had been no such increase.

You must notify us as soon as practicable when any "underlying insurance" is no longer in effect or if the limits or scope of coverage of any "underlying insurance" is changed.

## 14. Expanded Coverage Territory

**a.** If a "suit" is brought in a part of the "coverage territory" that is outside the United States of America (including its territories and possessions), Puerto Rico or Canada, and we are prevented by law, or otherwise, from defending the insured, the insured will initiate a defense of the "suit". We will reimburse the insured, under Supplementary Payments, for any reasonable and necessary expenses incurred for the defense of a "suit" seeking damages to which this insurance applies, that we would have paid had we been able to exercise our right and duty to defend.

If the insured becomes legally obligated to pay sums because of damages to which this insurance applies in a part of the "coverage territory" that is outside the United States of America (including its territories and possessions), Puerto Rico or Canada, and we are prevented by law, or otherwise, from paying such sums on the insured's behalf, we will reimburse the insured for such sums.

**b.** All payments or reimbursements we make for damages because of judgments or settlements will be made in U.S. currency at the prevailing exchange rate at the time the insured became legally obligated to pay such sums. All payments or reimbursements we make for expenses under Supplementary Payments will be made in U.S. currency at the prevailing exchange rate at the time the expenses were incurred.

**c.** Any disputes between you and us as to whether there is coverage under this policy must be filed in the courts of the United States of America (including its territories and possessions), Canada or Puerto Rico.

**d.** The insured must fully maintain any coverage required by law, regulation or other governmental authority during the policy period, except for reduction of the aggregate limits due to payments of claims, judgments or settlements.

Failure to maintain such coverage required by law, regulation or other governmental authority will not invalidate this insurance. However, this insurance will apply as if the required coverage by law, regulation or other governmental authority was in full effect.

## SECTION V - DEFINITIONS

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

   a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

   b. Regarding websites, only that part of a website that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

2. "Auto" means:

   a. A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

   b. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

   However, "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, disability, sickness, or disease sustained by a person, including death resulting from any of these at any time. "Bodily injury" includes mental anguish or other mental injury resulting from "bodily injury".

4. "Coverage territory" means anywhere in the world with the exception of any country or jurisdiction which is subject to trade or other economic sanction or embargo by the United States of America.

5. "Covered auto" means only those "autos" to which "underlying insurance" applies.

6. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

7. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work", or your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement;

   f. That part of any contract or agreement entered into, as part of your business, pertaining to the rental or lease, by you or any of your "employees", of any "auto". However, such contract or agreement shall not be considered an "insured contract" to the extent that it obligates you or any of your "employees" to pay for "property damage" to any "auto" rented or leased by you or any of your "employees".

   g. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

   Paragraphs f. and g. do not include that part of any contract or agreement:

   (1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

   (2) That pertains to the loan, lease or rental of an "auto" to you or any of your "employees", if the "auto" is loaned, leased or rented with a driver; or

   (3) That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of a "covered auto" over a route or territory that person or organization is authorized to serve by public authority.

Copyright ISO Properties, Inc., 2007

CU 00 01 12 07

**The**
**Hanover**
Insurance Group℠

OBCH332709    1304500

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

   **a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

   **b.** While it is in or on an aircraft, watercraft or "auto"; or

   **c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

   but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

   **a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

   **b.** Vehicles maintained for use solely on or next to premises you own or rent;

   **c.** Vehicles that travel on crawler treads;

   **d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

   **(1)** Power cranes, shovels, loaders, diggers or drills; or

   **(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

   **e.** Vehicles not described in Paragraph **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

   **(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

   **(2)** Cherry pickers and similar devices used to raise or lower workers;

   **f.** Vehicles not described in Paragraph **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

   **(1)** Equipment designed primarily for:

   **(a)** Snow removal;

   **(b)** Road maintenance, but not construction or resurfacing; or

   **(c)** Street cleaning;

   **(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

   **(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

   **a.** False arrest, detention or imprisonment;

   **b.** Malicious prosecution;

   **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

   **d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   **e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

   **f.** The use of another's advertising idea in your "advertisement"; or

   **g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Pollution cost or expense" means any loss, cost or expense arising out of any:

   **a.** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

   **b.** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

17. "Products-completed operations hazard":

   **a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

   **(1)** Products that are still in your physical possession; or

   **(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

   **(a)** When all of the work called for in your contract has been completed.

   **(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

   **(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

   Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

   **b.** Does not include "bodily injury" or "property damage" arising out of:

   **(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured; or

   **(2)** The existence of tools, uninstalled equipment or abandoned or unused materials.

18. "Property damage" means:

   **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

   **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

   With respect to the ownership, maintenance or use of "covered autos", property damage also includes "pollution cost or expense", but only to the extent that coverage exists under the "underlying insurance" or would have existed but for the exhaustion of the underlying limits.

   For the purposes of this insurance, with respect to other than the ownership, maintenance or use of "covered autos", electronic data is not tangible property.

   As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), hard or floppy disks, CDROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

19. "Retained limit" means the available limits of "underlying insurance" scheduled in the Declarations or the "self-insured retention", whichever applies.

20. "Self-insured retention" means the dollar amount listed in the Declarations that will be paid by the insured before this insurance becomes applicable only with respect to "occurrences" or offenses not covered by the "underlying insurance". The "self-insured retention" does not apply to "occurrences" or offenses which would have been covered by "underlying insurance" but for the exhaustion of applicable limits.

21. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

   **a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

   **b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent or the "underlying insurer's" consent.

Copyright ISO Properties, Inc., 2007

The **Hanover**
Insurance Group™

OBCH332709        1304500

22. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

23. "Ultimate net loss" means the total sum, after reduction for recoveries or salvages collectible, that the insured becomes legally obligated to pay as damages by reason of settlement or judgments or any arbitration or other alternate dispute method entered into with our consent or the "underlying insurer's" consent.

24. "Underlying insurance" means any policies of insurance listed in the Declarations under the Schedule of "underlying insurance".

25. "Underlying insurer" means any insurer who provides any policy of insurance listed in the Schedule of "underlying insurance".

26. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

27. "Your product":

   a. Means:

      (1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

         (a) You;

         (b) Others trading under your name; or

         (c) A person or organization whose business or assets you have acquired; and

      (2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

   b. Includes:

      (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

      (2) The providing of or failure to provide warnings or instructions.

   c. Does not include vending machines or other property rented to or located for the use of others but not sold.

28. "Your work":

   a. Means:

      (1) Work or operations performed by you or on your behalf; and

      (2) Materials, parts or equipment furnished in connection with such work or operations.

   b. Includes:

      (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

      (2) The providing of or failure to provide warnings or instructions.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION - UNMANNED AIRCRAFT

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

**A. SECTION I - COVERAGES, COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions, j. Aircraft or Watercraft** is replaced by the following:

**j. Aircraft Or Watercraft**

**(1) Unmanned Aircraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft that is an "unmanned aircraft". Use includes operation and "loading or unloading".

This Paragraph **j.(1)** applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft that is an "unmanned aircraft".

**(2) Aircraft (Other Than Unmanned Aircraft) Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft (other than "unmanned aircraft") or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This Paragraph **j.(2)** applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft (other than "unmanned aircraft") or watercraft that is owned or operated by or rented or loaned to any insured.

This Paragraph **j.(2)** does not apply to:

**(a)** A watercraft while ashore on premises you own or rent;

**(b)** A watercraft you do not own that is:

**(i)** Less than 50 feet long; and

**(ii)** Not being used to carry persons or property for a charge;

**(c)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft (other than unmanned aircraft) or watercraft;

**(d)** The extent that valid "underlying insurance" for the aircraft or watercraft liability risks described in this Paragraph **j.(2)** exists or would have existed but for the exhaustion of underlying limits for "bodily injury" or "property damage". To the extent this exclusion does not apply, the insurance provided under this Coverage Part for the aircraft or watercraft risks described in this Paragraph **j.(2)** will follow the same provisions, exclusions and limitations that are contained in the applicable "underlying insurance", unless otherwise directed by this insurance; or

**(e)** Aircraft (other than unmanned aircraft) that is:

**(i)** Chartered by, loaned to, or hired by you with a paid crew; and

**(ii)** Not owned by any insured.

**B.** The following is added to **SECTION I - COVERAGES, COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY, 2. Exclusions**:

**Unmanned Aircraft**

"Personal and advertising injury" arising out of the ownership, maintenance, use or entrustment to others of any aircraft that is an "unmanned aircraft". Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the offense which caused the "personal and advertising injury" involved the ownership, maintenance, use or entrustment to others of any aircraft that is an "unmanned

The **Hanover**
Insurance Group™

OBCH332709       1304500

aircraft".

This exclusion does not apply to:

**(1)** The use of another's advertising idea in your "advertisement"; or

**(2)** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**C.** For the purpose of this endorsement, the following is added to **SECTION V - DEFINITIONS:**

**1.** "Unmanned aircraft" means an aircraft that is not:

**a.** Designed;

**b.** Manufactured; or

**c.** Modified after manufacture;

to be controlled directly by a person from within or on the aircraft.

ALL OTHER TERMS, CONDITIONS, AND EXCLUSIONS REMAIN UNCHANGED.

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT

**(Broad Form)**

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

**I.** The insurance does not apply:

**A.** Under any Liability Coverage, to "bodily injury" or "property damage":

**(1)** With respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

**(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**B.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

**(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an insured or **(b)** has been discharged or dispersed therefrom;

**(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an insured; or

**(3)** The "bodily injury" or "property damage" arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this Exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

**II.** As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "Special nuclear material" or "by-product material".

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

Copyright, ISO Properties, Inc., 2001



OBCH332709      1304500

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

          Copyright, ISO Properties, Inc., 2001          **CU 21 23 02**    **02**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**FUNGI OR BACTERIA**

**a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I - Coverage B - Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**FUNGI OR BACTERIA**

**a.** "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

**b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**C.** The following definition is added to the **Definitions** Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

The
**Hanover**
Insurance Group™

OBCH332709      1304500

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# SILICA OR SILICA-RELATED DUST EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability:**

  **2. Exclusions**

    This insurance does not apply to:

    **SILICA OR SILICA-RELATED DUST**

    **a.** "Bodily injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, "silica" or "silica-related dust".

    **b.** "Property damage" arising, in whole or in part, out of the actual, alleged, threatened or suspected contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

    **c.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I - Coverage B - Personal And Advertising Injury Liability:**

  **2. Exclusions**

    This insurance does not apply to:

    **SILICA OR SILICA-RELATED DUST**

    **a.** "Personal and advertising injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

    **b.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

**C.** The following definitions are added to the **Definitions** Section:

  **1.** "Silica" means silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds.

  **2.** "Silica-related dust" means a mixture or combination of silica and other dust or particles.

 Copyright, ISO Properties, Inc., 2004

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D. Inspections And Surveys**

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**E. Premiums**

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

**F. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.



OBCH332709    1304500

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES - DEFENSE COSTS

This endorsement modifies insurance provided under the following:

    COMMERCIAL AUTOMOBILE COVERAGE PART
    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
    COMMERCIAL PROPERTY COVERAGE PART   LEGAL LIABILITY COVERAGE FORM
    COMMERCIAL PROPERTY COVERAGE PART   MORTGAGEHOLDERS ERRORS AND OMISSIONS
    COVERAGE FORM
    EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
    FARM COVERAGE PART
    FARM UMBRELLA LIABILITY POLICY
    LIQUOR LIABILITY COVERAGE PART
    MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
    OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
    POLLUTION LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
    PRODUCT WITHDRAWAL COVERAGE PART
    RAILROAD PROTECTIVE LIABILITY COVERAGE PART
    UNDERGROUND STORAGE TANK COVERAGE PART

**A.** The provisions of Paragraph **B.** are added to all Insuring Agreements that set forth a duty to defend under:

  **1.** Section **I** of the Commercial General Liability, Commercial Liability Umbrella, Employment-Related Practices Liability, Farm, Liquor Liability, Owners And Contractors Protective Liability, Pollution Liability, Products/Completed Operations Liability, Product Withdrawal, Medical Professional Liability, Railroad Protective Liability, Underground Storage Tank Coverage Parts and the Farm Umbrella Liability Policy;

  **2.** Section **II** - Liability Coverage in Paragraph **A.** Coverage under the Business Auto, Garage, Motor Carrier and Truckers Coverage Forms;

  **3.** Section **A.** Coverage under the Legal Liability Coverage Form; and

  **4.** Coverage **C** - Mortgageholder's Liability under the Mortgageholders Errors And Omissions Coverage Form.

**B.** If we initially defend an insured ("insured") or pay for an insured's ("insured's") defense but later determine that the claim(s) is (are) not covered under this insurance, we will have the right to reimbursement for the defense costs we have incurred.

The right to reimbursement for the defense costs under this provision will only apply to defense costs we have incurred after we notify you in writing that there may not be coverage, and that we are reserving our rights to terminate the defense and seek reimbursement for defense costs.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY - WITH LIMITED BODILY INJURY EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

**A.** Exclusion **2.t.** of **Section I - Coverage A - Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**t. Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

Damages arising out of:

**(1)** Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

**(2)** The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **(1)** or **(2)** above.

However, unless Paragraph **(1)** above applies, this exclusion does not apply to damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**B.** The following is added to Paragraph **2. Exclusions** of **Section I - Coverage B - Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Access Or Disclosure Of Confidential Or Personal Information**

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

 Copyright, Insurance Services Office, Inc., 2013



OBCH332709       1304500

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

**A.** If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**B.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## ILLINOIS EXCLUSION - ABUSE OR MOLESTATION

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

The following exclusion is added to **SECTION I - COVERAGES, COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions** and **SECTION I - COVERAGES, COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY, 2. Exclusions:**

**Abuse and Molestation**

This insurance does not apply to any liability or expense arising out of:

**(1)** The actual or threatened abuse or molestation by anyone of any person, whether or not the abuse or molestation was specifically intended or resulted from negligent conduct, or whether or not any insured subjectively intended the injury or damage for which a claim is made.

ALL OTHER TERMS, CONDITIONS, AND EXCLUSIONS REMAIN UNCHANGED.

**The Hanover**
Insurance Group™

OBCH332709      1304500

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TOTAL POLLUTION EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

Exclusion **i.** under Paragraph **2., Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

**i. Pollution**

**(1)** "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time; or

**(2)** "Pollution cost or expense".

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## ILLINOIS CHANGES - POLLUTION EXCLUSION - HOSTILE FIRE EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

The following is added to Exclusion **i.** under Paragraph **2., Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability:**

Paragraph **(1)** of this exclusion does not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a hostile fire unless that hostile fire occurred or originated:

  **(a)** At any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste; or

  **(b)** At any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to, or assess the effects of, "pollutants".

Hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

The **Hanover**
Insurance Group™

OBCH332709      1304500

# COMMON POLICY CONDITIONS
# UMBRELLA AMENDATORY ENDORSEMENT

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

COMMON POLICY CONDITIONS

Common Policy Conditions in form IL 00 17 only apply to the Umbrella Liability Coverage part.
All other Coverage parts contain their own Conditions.

The **Hanover**
Insurance Group

OBCH332709          1304500

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

**The Hanover Insurance Group**

# AVENUES BUSINESSOWNERS DECLARATION

## BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 07/31/2021  NUMBER 01

07

SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
ADDED WOS

| Policy Number | Policy Period | | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| | From | To | | |
| OBC-H332709-01 | 07/31/2021 | 07/31/2022 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

**Agent**

847-307-6100
THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

**Policy Period:  Beginning and Ending at 12:01 a.m. Standard Time at the Location of the Described Premises.**

**Business Type:**  CORPORATION (SINGLE).

**Mortgagee/Loss Payable:**

SEE ADDITIONAL INTEREST SCHEDULE

**Business of the Named Insured:**

SERVICE.

In consideration of the premium, insurance is provided the Named Insured with respect to those premises described in the Schedule below and with respect to those coverages and kinds of property for which a specific Limit of Insurance is shown, subject to all of the terms of this policy including forms and endorsements made a part hereof:

## LOCATION SCHEDULE

**Described Premises:**

NO. 001 001   233 N MICHIGAN AVE SUITE 1430, CHICAGO, IL  60601

| SECTION I - PROPERTY | LIMITS OF INSURANCE | | | | | |
|---|---|---|---|---|---|---|
| | Loc No  001 | Bldg No 001 | Loc No | Bldg No | Loc No | Bldg No |
| Deductible Amount | $          1,000 | | $ | | $ | |
| Building Amount Valuation | NOT COVERED | | | | | |
| Business Personal Property Valuation | $       211,470 RC | | | | | |
| Business Income | ACTUAL BUSINESS LOSS SUSTAINED NOT EXCEEDING 12 CONSECUTIVE MONTHS | | | | | |
| Business Income Waiting Period | **Excluded / None / 24 hours / 48 hours /72 hours** 24 HOURS | | | | | |
| SECTION II - LIABILITY | LIMITS OF INSURANCE | | | | | |

**Liability and Medical Expenses Limits of Insurance:**

Except for Damage to Premises Rented to You,  each paid claim for the following coverages reduce the Amount of Insurance we provide during the applicable annual  period.  Please refer to **SECTION II - LIABILITY, D. LIABILITY  AND MEDICAL  EXPENSES LIMITS OF INSURANCE,** paragraph **4.** of the Businessowners Coverage Form.

| Liability and Medical Expenses Limit | $ 2,000,000 | Per Occurrence | $ 4,000,000 | Aggregate |
|---|---|---|---|---|
| Medical Expenses | $       5,000 | Each Person | | |
| Damage to Premises Rented to You | $     300,000 | All Perils | | |

Date Issued: 08/25/2021          ORIGINAL/INSURED        Payment Type:  DIRECT BILL

GROUP NAME: TECHNOLOGY - SERVICES          GROUP NUMBER: ZTS

The **Hanover** Insurance Group™

# AVENUES BUSINESSOWNERS DECLARATION

### BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 07/31/2021  NUMBER 01

07

SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD ADDED WOS

| Policy Number | Policy Period | | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| | From | To | | |
| OBC-H332709-01 | 07/31/2021 | 07/31/2022 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

**Agent**

847-307-6100
THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

**Additional Property Coverages and Extensions:**
See attached Schedule for Additional Coverages provided for under this Policy.

Audit Frequency: Annual

**Additional Liability Coverages:**  General Liability Broadening Endorsement
**General Liability Class**: 85219
**Description**:  CUSTOM COMPUTER PROGRAMMING
**Liability Exposure:**  $1,872,000        SALES

**Policy Forms, Endorsements and Optional Coverages Attached:**
See Forms and Endorsements Schedule

PREVIOUS PREMIUM IS:                                        $ ▮▮▮▮▮
NET PREMIUM CHANGE IS:                                   $ ▮▮▮▮
TOTAL BOP COVERAGE PREMIUM:                       $ ▮▮▮▮▮
BOP TERRORISM COVG (INCLUDED IN TOTAL POLICY PREMIUM)  $ ▮▮▮
   OTHER THAN FIRE FOLLOWING                         $ ▮▮▮
   FIRE FOLLOWING                                          $ ▮▮▮
TOTAL UMBRELLA COVERAGE PREMIUM:               $ ▮▮▮▮
UMB TERRORISM COVG (INCLUDED IN TOTAL POLICY PREMIUM)  $ ▮▮▮▮
DEPOSIT PREMIUM:                                              $ ▮▮▮▮▮
THE TOTAL ACTUAL PREMIUM:                             $ ▮▮▮▮▮

**Countersigned this** ____ **Day of** _____

_____
**Authorized Representative**

**This Declarations Page with the Policy Contract, Forms and Endorsements, if any,
Complete the Policy.**

Date Issued:  08/25/2021          ORIGINAL/INSURED          Payment Type: DIRECT BILL

**391-1002 08 16**                                                                                    Page 2 of 2

**The Hanover Insurance Group**

# ADDITIONAL INTEREST SCHEDULE

## BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 07/31/2021  NUMBER 01

07

SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD

ADDED WOS

| Policy Number | Policy Period | | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| | From | To | | |
| OBC-H332709-01 | 07/31/2021 | 07/31/2022 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**
COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

**Agent**
847-307-6100
THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

| Name And Address | Interest Type | Location | Building |
|---|---|---|---|
| SILICON VALLEY BANK<br>3003 TASMAN DRIVE HF 150<br>SANTA CLARA, CA  95054 | LENDER'S LOSS PAYABLE | 0 0 1 | 0 1 |

Form   391-1014 (7-99)
Date Issued:  08/25/2021                    ORIGINAL/INSURED

**The Hanover** Insurance Group™

# ADDITIONAL PROPERTY COVERAGES AND EXTENSIONS

**BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 07/31/2021 NUMBER 01**

07     SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
ADDED WOS

| Policy Number | Policy Period From | To | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| OBC-H332709-01 | 07/31/2021 | 07/31/2022 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

**Agent**

847-307-6100

THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

| Additional Property Coverages & Extensions | Deductible | Amount Included | Additional Amount Increase | Total Limit |
|---|---|---|---|---|
| DEBRIS REMOVAL | NONE | $25,000 | N/A | $25,000 |
| PRESERVATION OF PROPERTY | NONE | 90 DAYS | N/A | 90 DAYS |
| FIRE DEPARTMENT SERVICE CHARGE | NONE | $25,000 | N/A | $25,000 |
| POLLUTANT CLEAN-UP AND REMOVAL | NONE | $25,000 | N/A | $25,000 |
| MONEY ORDERS AND COUNTERFEIT MONEY | $500 | $5,000 | N/A | $5,000 |
| FORGERY OR ALTERATION | $500 | $25,000 | N/A | $25,000 |
| GLASS EXPENSES | $250 | INCLUDED | N/A | INCLUDED |
| REWARDS ARSON, THEFT AND VANDALISM | NONE | $10,000 | N/A | $10,000 |
| TENANT SIGNS | $500 | $5,000 | N/A | $5,000 |
| FIRE PROTECTION EQUIPMENT RECHARGE | NONE | $25,000 | N/A | $25,000 |
| INSTALLATION FLOATER | $1,000 | $5,000 | N/A | $5,000 |
| FINE ARTS | $500 | $10,000 | N/A | $10,000 |
| FENCE AND WALLS | SEE BUILDING AND CONTENTS DEDUCTIBLE | INCLUDED | N/A | INCLUDED |
| SALES REPRESENTATIVE SAMPLES | $1,000 | $5,000 | N/A | $5,000 |
| LEASEHOLD INTEREST (TENANT'S ONLY) | NONE | $10,000 | N/A | $10,000 |
| UNAUTHORIZED BUSINESS CREDIT CARD USE | NONE | $5,000 | N/A | $5,000 |
| UTILITY SERVICES | | | N/A | |
|   DIRECT DAMAGE | $500 | $10,000 | N/A | $10,000 |
|   BUSINESS INCOME | 24 HOURS | $5,000 | N/A | $5,000 |
| DEFERRED PAYMENTS | NONE | $5,000 | N/A | $5,000 |
| NEWLY ACQUIRED OR CONSTRUCTED PROPERTY | | 180 DAYS | N/A | 180 DAYS |
|   BUILDINGS | $500 | $1,000,000 | N/A | $1,000,000 |
|   PERSONAL PROPERTY | $500 | $500,000 | N/A | $500,000 |
|   BUSINESS INCOME AND EXTRA EXPENSE | SEE WAITING PERIOD | $250,000 | N/A | $250,000 |
| OUTDOOR PROPERTY - TREES, SHRUBS AND PLANTS-$1,000 EACH ITEM | $500 | $10,000 | N/A | $10,000 |

Form  391-1018  (7-02)
Date Issued:  08/25/2021

ORIGINAL/INSURED

**The Hanover** Insurance Group™

# ADDITIONAL PROPERTY COVERAGES AND EXTENSIONS

**BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 07/31/2021 NUMBER 01**

07    SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
      ADDED WOS

| Policy Number | Policy Period | | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| | From | To | | |
| OBC-H332709-01 | 07/31/2021 | 07/31/2022 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

**Agent**

847-307-6100

THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

| Additional Property Coverages & Extensions | Deductible | Amount Included | Additional Amount Increase | Total Limit |
|---|---|---|---|---|
| PERSONAL EFFECTS | $500 | $10,000 | N/A | $10,000 |
| INVENTORY AND LOSS APPRAISAL | NONE | $10,000 | N/A | $10,000 |
| KEY REPLACEMENT AND LOCK REPAIR | NONE | $1,000 | N/A | $1,000 |
| APPURTENANT STRUCTURE | $500 | $50,000 | N/A | $50,000 |
| PERSONAL PROPERTY IN TRANSIT | $1,000 | $10,000 | N/A | $10,000 |
| EXTENDED BUSINESS INCOME | | 30 DAYS | N/A | 30 DAYS |
| EMPLOYEE THEFT INCLUDING ERISA COMPLIANCE | $1,000 | $10,000 | N/A | $10,000 |
| COMMERCIAL TOOLS AND SMALL EQUIP | $500 | $5,000 | N/A | $5,000 |
| PERSONAL PROPERTY OFF PREMISES | $1,000 | $50,000 | N/A | $50,000 |
| BUSINESS INCOME FROM DEPENDENT PROPERTIES | 72 HOURS | $5,000 | N/A | $5,000 |
| TERRORISM | SEE BUILDING AND CONTENTS DEDUCTIBLE | SAME AS PROPERTY LIMITS OF INSURANCE IF COVERED | N/A | SAME AS PROPERTY LIMITS OF INSURANCE IF COVERED |
| INTERRUPTION OF COMPUTER OPERATIONS | SEE WAITING PERIOD | $10,000 | N/A | $10,000 |
| BUSINESS PERSONAL PROPERTY TEMPORARILY IN PORTABLE STORAGE UNITS | $500 | $25,000 | N/A | $25,000 |
| CIVIL AUTHORITY | 72 HOURS | 4 WEEKS | N/A | 4 WEEKS |
| COMPUTER AND FUNDS TRANSFER FRAUD | $500 | $5,000 | N/A | $5,000 |
| LIMITED COVERAGE FOR FUNGI, WET ROT, OR DRY ROT | $500 | $50,000 | N/A | $50,000 |
| PAVED SURFACES | $500 | $25,000 | N/A | $25,000 |
| TENANT BUILDING COVERAGE - REQUIRED BY LEASE | $500 | $25,000 | N/A | $25,000 |
| TENANT BUSINESS PERSONAL PROPERTY COVERAGE - REQUIRED BY LEASE | $500 | $25,000 | N/A | $25,000 |

Form  391-1018  (7-02)
Date Issued:  08/25/2021

**The Hanover** Insurance Group™

# ADDITIONAL PROPERTY COVERAGES AND EXTENSIONS

**BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 07/31/2021  NUMBER 01**

07 SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
ADDED WOS

| Policy Number | Policy Period | | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| | From | To | | |
| OBC-H332709-01 | 07/31/2021 | 07/31/2022 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

**Agent**

847-307-6100

THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

| Additional Property Coverages & Extensions | Deductible | Amount Included | Additional Amount Increase | Total Limit |
|---|---|---|---|---|
| THEFT OF TELEPHONIC SERVICES | $500 | $25,000 | N/A | $25,000 |
| UNDERGROUND PIPES | $500 | INCLUDED | N/A | INCLUDED |

Form  391-1018  (7-02)
Date Issued:  08/25/2021

The **Hanover**
Insurance Group™

# ADDITIONAL PROPERTY COVERAGES AND EXTENSIONS

**BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 07/31/2021  NUMBER 01**

07          SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
            ADDED WOS

| Policy Number | Policy Period From | To | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| OBC-H332709-01 | 07/31/2021 | 07/31/2022 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

Named Insured and Address                                    Agent
COOLER SCREENS INC                          847-307-6100
233 N MICHIGAN AVE SUITE 1430               THE PLEXUS GROUPE LLC
CHICAGO, IL  60601                          SUITE 300
                                            21805 W. FIELD PARKWAY
                                            DEER PARK, IL  60010

| Additional Property Coverages & Extensions | Loc. No. | Bldg. No. | Deductible Amount | Amount Included | Additional Amount | Total Limit |
|---|---|---|---|---|---|---|
| ORDINANCE OR LAW | 001 | 001 | NONE | $5,000 | N/A | $5,000 |
| COMPUTER EQUIPMENT | | | $500 | $35,000 | N/A | $35,000 |
| COMPUTER EQUIPMENT EXTRA EXPENSE | | | NONE | $5,000 | N/A | $5,000 |
| ELECTRONIC VANDALISM | | | $500 | | | |
|   OCCURRENCE LIMIT | | | | $10,000 | N/A | $10,000 |
|   AGGREGATE LIMIT | | | | $10,000 | N/A | $10,000 |
| VALUABLE PAPERS AND RECORDS (OTHER THAN ELECTRONIC DATA) | | | $1,000 | | | |
|   ON PREMISES | | | | $25,000 | N/A | $25,000 |
|   OFF PREMISES | | | | $25,000 | N/A | $25,000 |
| ACCOUNTS RECEIVABLE | | | $1,000 | | | |
|   ON PREMISES | | | | $25,000 | N/A | $25,000 |
|   OFF PREMISES | | | | $25,000 | N/A | $25,000 |
| MONEY AND SECURITIES | | | $500 | | | |
|   ON PREMISES | | | | $10,000 | N/A | $10,000 |
|   OFF PREMISES | | | | $5,000 | N/A | $5,000 |
| EQUIPMENT BREAKDOWN | | | $1,000 | INCLUDED | N/A | INCLUDED |
| PROTECTIVE DEVICES CREDIT | | | | | | |
|   AUTOMATIC SPRINKLER SYSTEM | | | | NO | | |
|   AUTOMATIC FIRE ALARM | | | | NO | | |
|   CENTRAL STATION SECURITY | | | | NO | | |
| COLLAPSE | | | $500 | INCLUDED | N/A | INCLUDED |
| UTILITY SERVICES | | | | | | |
|   DIRECT DAMAGE | | | $500 | $50,000 | N/A | $50,000 |
|   TIME-ELEMENT | | | 24 HOURS | $50,000 | N/A | $50,000 |

Form  391-1018A (9-04)
Date Issued:  08/25/2021

ORIGINAL/INSURED

The **Hanover**
Insurance Group™

# AVENUES BUSINESSOWNERS DECLARATION

### BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 07/31/2021  NUMBER 01

07

SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
ADDED WOS

| Policy Number | Policy Period | | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| | From | To | | |
| OBC-H332709-01 | 07/31/2021 | 07/31/2022 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**
COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

**Agent**
847-307-6100
THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

## Forms and Endorsements Schedule

| Form Number | Edition Date | Description |
|---|---|---|
| 391-1402 | 08/16 | TECHNOLOGY DELUXE GOLD BROAD |
| 391-1371 | 01/10 | REV INFRINGE OF COPYRIGHT EXCL |
| BP0404 | 01/10 | HIRED AUTO NON-OWNED AUTO LIAB |
| 401-1374 | 12/20 | DISCLOSURE PURSUANT TO TRIA |
| 391-1114 | 01/15 | CAP ON LOSSES FROM TERRORISM |
| 391-1313 | 01/15 | EXCLUSION OF PUNITIVE DAMAGES |
| 391-1006 | 08/16 | LIABILITY SPECIAL BROADENING |
| BP0417 | 01/10 | EMPLYMT RELATED PRACTICES EXCL |
| 231-0475 | 06/89 | PILR NOTICE |
| 391-1003 | 08/16 | BUSINESSOWNERS COVERAGE FORM |
| BP0643 | 04/06 | IL CHANGES - DEFENSE COSTS |
| 391-1901 | 06/18 | ILLINOIS CHANGES |
| 421-0022 | 07/02 | ASBESTOS EXCLUSION |
| 391-1102 | 08/16 | EXCL - FUNGI OR BACTERIA LIAB |
| 331-0053 | 08/16 | ILLINOIS INQUIRY NOTICE |
| 391-1375 | 01/10 | AMEND LIMITS PERSONAL AND ADV |
| 391-1218 | 06/06 | EPLI INSURANCE CVG ENDR ILLINO |
| 391-1206 | 06/06 | EPLI IMPORTANT NOTICE |
| 391-1208 | 03/06 | EPLI SUPPLEMENTAL DEC |
| BP1203 | 01/10 | LOSS PAYABLE PROVISIONS |
| 401-1504 | 01/20 | CAP LOSSES CERT ACTS OF TERR |
| 391-1440 | 01/15 | DATA BREACH COVERAGE FORM |
| 391-1442 | 12/09 | ASSOC AND FAMILY MBR ADD COV |
| 391-1585 | 12/11 | IDENTITY THEFT NOTICE |

Form  391-1016 (7-99
Date Issued:  08/25/2021

ORIGINAL/INSURED

The **Hanover**
Insurance Group™

# AVENUES BUSINESSOWNERS DECLARATION

**BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 07/31/2021   NUMBER 01**

07

SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
ADDED WOS

| Policy Number | Policy Period From | To | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| OBC-H332709-01 | 07/31/2021 | 07/31/2022 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

**Agent**

847-307-6100
THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

## Forms and Endorsements Schedule

| | Form Number | Edition Date | Description |
|---|---|---|---|
| | 391-1854 | 01/15 | IL CHANGES - DATA BREACH |
| | 401-1235 | 12/14 | CANCEL NOTICE TO DESIGNATED |
| | 391-1941 | 08/16 | AI DESIGNATED PER OR ORG |
| * | BP0497 | 07/02 | WAIVER OF TRANSFER OF RIGHTS |

Form  391-1016 (7-99
Date Issued:  08/25/2021

ORIGINAL/INSURED

**COMMERCIAL EMPLOYMENT PRACTICES**
**LIABILITY INSURANCE COVERAGE ENDORSEMENT**
**SUPPLEMENTAL DECLARATIONS**



OBCH332709      1304500

Policy Number:  OBC H332709 01
Account Number:  1521871564
Named Insured:  COOLER SCREENS INC

Agent:  1304500

---

### NOTICE

· EXCEPT TO SUCH EXTENT AS MAY OTHERWISE BE PROVIDED HEREIN, THE COVERAGE OF THIS COVERAGE ENDORSEMENT IS LIMITED TO LIABILITY FOR ONLY THOSE CLAIMS OR SUITS THAT ARE FIRST MADE AGAINST THE INSUREDS DURING THE EPL COVERAGE PERIOD AND REPORTED IN WRITING TO THE INSURER PURSUANT TO THE TERMS HEREIN. VARIOUS PROVISIONS IN THIS COVERAGE ENDORSEMENT RESTRICT COVERAGE. PLEASE READ THE ENTIRE COVERAGE ENDORSEMENT CAREFULLY TO DETERMINE RIGHTS, DUTIES AND WHAT IS AND IS NOT COVERED.

· THE LIMIT OF LIABILITY AVAILABLE TO PAY JUDGEMENTS OR SETTLEMENTS UNDER THIS COVERAGE ENDORSEMENT SHALL BE REDUCED BY AMOUNTS INCURRED FOR LEGAL DEFENSE. AMOUNTS INCURRED FOR LEGAL DEFENSE SHALL BE APPLIED AGAINST THE DEDUCTIBLE AMOUNT.

---

| | | |
|---|---|---|
| **EPL Coverage Period:** | From: 07/31/2021<br>To:      07/31/2022 | At 12:01 A.M. Standard Time at your mailing address shown on the Declarations page of this policy. |
| **EPL Aggregate Limit of Liability:** | $          25,000.00 | Aggregate for all "loss" combined, including "defense costs". |
| **EPL Deductible Amount:** | $           5,000.00 | For "loss" arising from claims or suits alleging the same "wrongful employment act" or "related wrongful employment acts". |
| **EPL Original Inception Date:** | 07/31/2020 | (Enter "original inception date") If no date is shown, "we" will consider the "original inception date" to be the same as the beginning of this coverage endorsement. |

This insurance does not apply to "loss" arising out of a "wrongful employment act" that: (1) commences on or takes place prior to the "original inception date" shown here, or (2) arises out of incidents or circumstance of which "you" had knowledge prior to the "original inception date" shown.

| | | |
|---|---|---|
| | **EPL COVERAGE PREMIUM:** | $   |

391-1208 03 06

The **Hanover** Insurance Group™

| RENEWAL OF POLICY |
|---|
| **COMMERCIAL UMBRELLA POLICY** |
| THESE DECLARATIONS TOGETHER WITH THE COMMON POLICY CONDITIONS AND COVERAGE FORM(S) COMPLETE THE BELOW NUMBERED POLICY |

POLICY NUMBER: OBC-H332709-01

DECLARATIONS

| **Named Insured and Address** (No., Street, Town, County, State) | **Agent** |
|---|---|
| COOLER SCREENS INC<br>233 N MICHIGAN AVE SUITE 1430<br>CHICAGO, IL 60601 | 130450000<br>THE PLEXUS GROUPE LLC<br>SUITE 300<br>21805 W. FIELD PARKWAY<br>DEER PARK, IL 60010 |

**Policy Period:** (Month, Day, Year)

From 07/31/2021 To 07/31/2022
12:01 AM, standard time at the address of the Named Insured as stated herein.

Form of Business:

☐ Individual ☐ Partnership ☒ Corporation ☐ Limited Liability Company
☐ Organization (Other than Partnership, Joint Venture, or Limited Liability Company

**Business Description:**
**SERVICE.**

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY. THIS PREMIUM MAY BE SUBJECT TO AUDIT.

| **Limit of Liability (Section III)** | |
|---|---|
| Each Occurrence Limit | $ 1,000,000 |
| General Aggregate Limit | $ 1,000,000 |
| Product Completed Operations Aggregate Limit | $ 1,000,000 |

| **Retained Limit** | **Self-Insured Retention** | **$ NIL** |
|---|---|---|

**Premium Computation**

Annual Premium $ ▮▮▮
Advance Premium $

**Endorsements:**

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| CU2130 | 01/15 | CU2156 | 06/06 | CU2136 | 01/15 | 473-1150 | 05/12 | 473-1157 | 01/10 | 473-0004 | 10/05 |
| CU0004 | 05/09 | 473-0016 | 10/05 | 473-0023 | 10/05 | 473-0040 | 10/05 | CU0200 | 12/07 | CU0001 | 12/07 |
| 473-2194 | 08/16 | CU2123 | 02/02 | 473-2211 | 10/16 | CU2125 | 12/01 | CU2255 | 09/00 | CU2127 | 12/04 |
| CU2150 | 03/05 | IL0017 | 11/98 | CU2436 | 12/05 | IL0162 | 09/08 | 473-1125 | 02/09 | CU2186 | 05/14 |

☐ PRE PAID - the total annual premium is due at inception.

☐ HANOCASH - the annual premium is payable according to the term of the Hanocash endorsement attachment

☐ ACCOUNT BILL ☒ DIRECT BILL ☐ Annual ☐ Semi-Annual ☐ Other

Audit period: Non Auditable Unless indicated by ☐ Annual ☐ Semi-Annual ☐ Other

If you cancel this policy, we shall receive and retain not less than $ as a policy minimum premium.

473-1102 1108

**The Hanover**
Insurance Group™

OBCH332709          1304500

| SCHEDULE A - SCHEDULE OF UNDERLYING POLICIES | | | |
|---|---|---|---|
| **Insured:**   COOLER SCREENS INC | | | |
| **Effective on and after: 07/31/2021  ,  12:01 AM Standard Time** | | | |
| **This schedule is part of Policy Number:  OBC-H332709-01** | | | |
| CARRIER, POLICY NUMBER & PERIOD | TYPE OF POLICY | APPLICABLE LIMITS OR AMOUNT OF INSURANCE | |
| (a)Carrier:<br><br>CITIZENS INSURANCE COMPANY OF AMERICA<br><br>Policy Number:   OBC-H332709-01<br>Policy Period:   07/31/2021    TO  07/31/2022 | Commercial General Liability<br>[X]Non-owned & Hired Autos | $  2,000,000     Each  Occurrence<br>$  4,000,000     General   Aggregate<br>$  4,000,000     Product/Completed Operations Aggregate | |
| (b) Carrier:<br><br><br>Policy Number:<br>Policy Period: | Comprehensive Automobile Liability | Bodily Injury and Property Damage Liability Combined<br>$                      Each Accident<br>Bodily Injury<br>$                      Each Person<br>$                      Each Accident<br>Property Damage<br>$                      Each Accident | |
| (c)Carrier:<br><br>EXCLUDED<br>Policy Number:<br>Policy Period: | Standard Workers Compensation & Employers  Liability<br>**Please Note:** The Umbrella Coverage for Workers Compensation and Employers Liability is not applicable in situations where an employee is subject to the New York Workers Compensation Law. | **Coverage B - Employers  Liability**<br>Bodily Injury by Accident<br>$                      Each  Accident<br>Bodily Injury by Disease<br>$                          Aggregate<br>$                      Each  Employee | |
| (d)Carrier:<br><br><br>Policy Number:<br>Policy Period: | Liquor Liability | $                      Limit of   Liability | |
| (e)Carrier:<br><br><br>Policy Number:<br>Policy Period: | Professional Liability | $                      Limit of Liability | |
| An "X" marked in the box provided indicates these broadening or optional coverages are provided in the Underlying Insurance | | | |
| (f) Carrier:<br><br><br>Policy Number:<br>Policy Period: | Directors & Officers Liability | $                      Limit of   Liability | |
| (g) Carrier:<br><br><br>Policy Number:<br>Policy Period: | Employee Benefits Liability | $                      Limit of   Liability | |
| **Countersigned By:** | | | |
| **Date:** | | | |
| **Authorized Representative of the Company** | | | |



OBCH332709      1304500

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**SCHEDULE\***

| **Name Of Person Or Organization:** |
| --- |
| AS PER WRITTEN CONTRACT |

| \* Information required to complete this Schedule, if not shown on this endorsement, will be shown in the Declarations. |
| --- |

Paragraph **K. Transfer Of Rights Of Recovery Against Others To Us** in **Section III - Common Policy** Conditions is amended by the addition of the following:

We waive any right of recovery we may have against the person or organization shown in the Schedule above because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a contract with that person or organization and included in the "products-completed operations hazard". This waiver applies only to the person or organization shown in the Schedule above.

                    Copyright, ISO Properties, Inc.,  2001

The **Hanover** Insurance Group™

OBCH332709        1304500

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

**The Hanover Insurance Group™**

## AVENUES BUSINESSOWNERS DECLARATION

### BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 07/31/2021  NUMBER 02

07

SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
ADDED LOC#02

| Policy Number | Policy Period | | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| | From | To | | |
| OBC-H332709-01 | 07/31/2021 | 07/31/2022 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

**Agent**

847-307-6100
THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

**Policy Period:  Beginning and Ending at 12:01 a.m. Standard Time at the Location of the Described Premises.**

**Business Type:**  CORPORATION (SINGLE).

**Mortgagee/Loss Payable:**

SEE ADDITIONAL INTEREST SCHEDULE

**Business of the Named Insured:**

SERVICE.

In consideration of the premium, insurance is provided the Named Insured with respect to those premises described in the Schedule below and with respect to those coverages and kinds of property for which a specific Limit of Insurance is shown, subject to all of the terms of this policy including forms and endorsements made a part hereof:

## LOCATION SCHEDULE

**Described Premises:**

NO. 001 001    233 N MICHIGAN AVE SUITE 1430, CHICAGO, IL  60601

NO. 002 001    303.E WACKER SUITE 295, CHICAGO, IL  60601

| SECTION I - PROPERTY | LIMITS OF INSURANCE | | | | | |
|---|---|---|---|---|---|---|
| | **Loc No** 001 | **Bldg No** 001 | **Loc No** 002 | **Bldg No** 001 | **Loc No** | **Bldg No** |
| **Deductible Amount** | $     1,000 | | $     1,000 | | $ | |
| **Building Amount Valuation** | NOT COVERED | | NOT COVERED | | | |
| **Business Personal Property Valuation** | $     211,470 RC | | $     211,470 RC | | | |
| **Business Income** | ACTUAL BUSINESS LOSS SUSTAINED NOT EXCEEDING 12 CONSECUTIVE MONTHS | | | | | |
| **Business Income Waiting Period** | **Excluded / None / 24 hours / 48 hours /72 hours** 24 HOURS | | | | | |
| **SECTION II - LIABILITY** | LIMITS OF INSURANCE | | | | | |

**Liability and Medical Expenses Limits of Insurance:**

Except for Damage to Premises Rented to You,  each paid claim for the following coverages reduce the Amount of Insurance we provide during the applicable annual  period.  Please refer to  **SECTION II - LIABILITY, D. LIABILITY  AND MEDICAL  EXPENSES LIMITS OF INSURANCE,** paragraph **4.** of the Businessowners Coverage Form.

| Liability and Medical Expenses Limit | $ 2,000,000 | Per Occurrence | $ 4,000,000 | Aggregate |
|---|---|---|---|---|
| Medical Expenses | $     5,000 | Each Person | | |
| Damage to Premises Rented to You | $     300,000 | All Perils | | |

Date Issued: 03/08/2022              ORIGINAL/INSURED          Payment Type:  DIRECT BILL

GROUP NAME: TECHNOLOGY - SERVICES              GROUP NUMBER: ZTS

**The Hanover Insurance Group.**

## AVENUES BUSINESSOWNERS DECLARATION

### BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 07/31/2021 NUMBER 02

07

SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD ADDED LOC#02

| Policy Number | Policy Period | | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| | From | To | | |
| OBC-H332709-01 | 07/31/2021 | 07/31/2022 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

**Agent**

847-307-6100
THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

**Additional Property Coverages and Extensions:**
See attached Schedule for Additional Coverages provided for under this Policy.

Audit Frequency: Annual

**Additional Liability Coverages:**  General Liability Broadening Endorsement
**General Liability Class:**  85219
**Description:**  CUSTOM COMPUTER PROGRAMMING
**Liability Exposure:**  $1,872,000      SALES

**Policy Forms, Endorsements and Optional Coverages Attached:**
See Forms and Endorsements Schedule

```
PREVIOUS PREMIUM IS:                                    $ ███
NET PREMIUM CHANGE IS:                                  $ ███
TOTAL BOP COVERAGE PREMIUM:                             $ ███
BOP TERRORISM COVG (INCLUDED IN TOTAL POLICY PREMIUM)   $ ███
     OTHER THAN FIRE FOLLOWING                          $ ███
      FIRE FOLLOWING                                    $ ███
TOTAL UMBRELLA COVERAGE PREMIUM:                        $ ███
UMB TERRORISM COVG (INCLUDED IN TOTAL POLICY PREMIUM)   $ ███
DEPOSIT PREMIUM:                                        $ ███
THE TOTAL ACTUAL PREMIUM:                               $ ███
```

Countersigned this ____ Day of _____

_____
**Authorized Representative**

**This Declarations Page with the Policy Contract, Forms and Endorsements, if any, Complete the Policy.**

Date Issued:  03/08/2022          ORIGINAL/INSURED          Payment Type: DIRECT BILL

**391-1002 08 16**                                                    Page 2 of 2

**The Hanover Insurance Group.**

# ADDITIONAL INTEREST SCHEDULE

## BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 07/31/2021  NUMBER 02

07

SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
ADDED LOC#02

| Policy Number | Policy Period | | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| | From | To | | |
| OBC-H332709-01 | 07/31/2021 | 07/31/2022 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**
COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

**Agent**
847-307-6100
THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

| Name And Address | Interest Type | Location | Building |
|---|---|---|---|
| SILICON VALLEY BANK | | | |
| 3003 TASMAN DRIVE HF 150 | | | |
| SANTA CLARA, CA  95054 | | | |
| | LENDER'S LOSS PAYABLE | 0 0 1 | 0 1 |

Form   391-1014 (7-99)
Date Issued:  03/08/2022                    ORIGINAL/INSURED

**The Hanover** Insurance Group™

# ADDITIONAL PROPERTY COVERAGES AND EXTENSIONS

**BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 07/31/2021 NUMBER 02**

07      SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
         ADDED LOC#02

| Policy Number | Policy Period From | To | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| OBC-H332709-01 | 07/31/2021 | 07/31/2022 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

**Agent**

847-307-6100

THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

| Additional Property Coverages & Extensions | Deductible | Amount Included | Additional Amount Increase | Total Limit |
|---|---|---|---|---|
| DEBRIS REMOVAL | NONE | $25,000 | N/A | $25,000 |
| PRESERVATION OF PROPERTY | NONE | 90 DAYS | N/A | 90 DAYS |
| FIRE DEPARTMENT SERVICE CHARGE | NONE | $25,000 | N/A | $25,000 |
| POLLUTANT CLEAN-UP AND REMOVAL | NONE | $25,000 | N/A | $25,000 |
| MONEY ORDERS AND COUNTERFEIT MONEY | $500 | $5,000 | N/A | $5,000 |
| FORGERY OR ALTERATION | $500 | $25,000 | N/A | $25,000 |
| GLASS EXPENSES | $250 | INCLUDED | N/A | INCLUDED |
| REWARDS ARSON, THEFT AND VANDALISM | NONE | $10,000 | N/A | $10,000 |
| TENANT SIGNS | $500 | $5,000 | N/A | $5,000 |
| FIRE PROTECTION EQUIPMENT RECHARGE | NONE | $25,000 | N/A | $25,000 |
| INSTALLATION FLOATER | $1,000 | $5,000 | N/A | $5,000 |
| FINE ARTS | $500 | $10,000 | N/A | $10,000 |
| FENCE AND WALLS | SEE BUILDING AND CONTENTS DEDUCTIBLE | INCLUDED | N/A | INCLUDED |
| SALES REPRESENTATIVE SAMPLES | $1,000 | $5,000 | N/A | $5,000 |
| LEASEHOLD INTEREST (TENANT'S ONLY) | NONE | $10,000 | N/A | $10,000 |
| UNAUTHORIZED BUSINESS CREDIT CARD USE | NONE | $5,000 | N/A | $5,000 |
| UTILITY SERVICES | | | N/A | |
|   DIRECT DAMAGE | $500 | $10,000 | N/A | $10,000 |
|   BUSINESS INCOME | 24 HOURS | $5,000 | N/A | $5,000 |
| DEFERRED PAYMENTS | NONE | $5,000 | N/A | $5,000 |
| NEWLY ACQUIRED OR CONSTRUCTED PROPERTY | | 180 DAYS | N/A | 180 DAYS |
|   BUILDINGS | $500 | $1,000,000 | N/A | $1,000,000 |
|   PERSONAL PROPERTY | $500 | $500,000 | N/A | $500,000 |
|   BUSINESS INCOME AND EXTRA EXPENSE | SEE WAITING PERIOD | $250,000 | N/A | $250,000 |
| OUTDOOR PROPERTY - TREES, SHRUBS AND PLANTS-$1,000 EACH ITEM | $500 | $10,000 | N/A | $10,000 |

Form 391-1018 (7-02)
Date Issued: 03/08/2022

**The Hanover** Insurance Group™

## ADDITIONAL PROPERTY COVERAGES AND EXTENSIONS

**BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 07/31/2021  NUMBER 02**

07  SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
ADDED LOC#02

| Policy Number | Policy Period | | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| | From | To | | |
| OBC-H332709-01 | 07/31/2021 | 07/31/2022 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

**Agent**

847-307-6100

THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

| Additional Property Coverages & Extensions | Deductible | Amount Included | Additional Amount Increase | Total Limit |
|---|---|---|---|---|
| PERSONAL EFFECTS | $500 | $10,000 | N/A | $10,000 |
| INVENTORY AND LOSS APPRAISAL | NONE | $10,000 | N/A | $10,000 |
| KEY REPLACEMENT AND LOCK REPAIR | NONE | $1,000 | N/A | $1,000 |
| APPURTENANT STRUCTURE | $500 | $50,000 | N/A | $50,000 |
| PERSONAL PROPERTY IN TRANSIT | $1,000 | $10,000 | N/A | $10,000 |
| EXTENDED BUSINESS INCOME | | 30 DAYS | N/A | 30 DAYS |
| EMPLOYEE THEFT INCLUDING ERISA COMPLIANCE | $1,000 | $10,000 | N/A | $10,000 |
| COMMERCIAL TOOLS AND SMALL EQUIP | $500 | $5,000 | N/A | $5,000 |
| PERSONAL PROPERTY OFF PREMISES | $1,000 | $50,000 | N/A | $50,000 |
| BUSINESS INCOME FROM DEPENDENT PROPERTIES | 72 HOURS | $5,000 | N/A | $5,000 |
| TERRORISM | SEE BUILDING AND CONTENTS DEDUCTIBLE | SAME AS PROPERTY LIMITS OF INSURANCE IF COVERED | N/A | SAME AS PROPERTY LIMITS OF INSURANCE IF COVERED |
| INTERRUPTION OF COMPUTER OPERATIONS | SEE WAITING PERIOD | $10,000 | N/A | $10,000 |
| BUSINESS PERSONAL PROPERTY TEMPORARILY IN PORTABLE STORAGE UNITS | $500 | $25,000 | N/A | $25,000 |
| CIVIL AUTHORITY | 72 HOURS | 4 WEEKS | N/A | 4 WEEKS |
| COMPUTER AND FUNDS TRANSFER FRAUD | $500 | $5,000 | N/A | $5,000 |
| LIMITED COVERAGE FOR FUNGI, WET ROT, OR DRY ROT | $500 | $50,000 | N/A | $50,000 |
| PAVED SURFACES | $500 | $25,000 | N/A | $25,000 |
| TENANT BUILDING COVERAGE - REQUIRED BY LEASE | $500 | $25,000 | N/A | $25,000 |
| TENANT BUSINESS PERSONAL PROPERTY COVERAGE - REQUIRED BY LEASE | $500 | $25,000 | N/A | $25,000 |

Form  391-1018  (7-02)
Date Issued:  03/08/2022

**The Hanover** Insurance Group

# ADDITIONAL PROPERTY COVERAGES AND EXTENSIONS

**BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 07/31/2021 NUMBER 02**

07     SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
       ADDED LOC#02

| Policy Number | Policy Period | | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| | From | To | | |
| OBC-H332709-01 | 07/31/2021 | 07/31/2022 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL 60601

**Agent**

847-307-6100

THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL 60010

| Additional Property Coverages & Extensions | Deductible | Amount Included | Additional Amount Increase | Total Limit |
|---|---|---|---|---|
| THEFT OF TELEPHONIC SERVICES | $500 | $25,000 | N/A | $25,000 |
| UNDERGROUND PIPES | $500 | INCLUDED | N/A | INCLUDED |

Form 391-1018 (7-02)
Date Issued: 03/08/2022

ORIGINAL/INSURED

**The Hanover Insurance Group™**

# ADDITIONAL PROPERTY COVERAGES AND EXTENSIONS

**BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 07/31/2021  NUMBER 02**

07          SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
             ADDED LOC#02

| Policy Number | Policy Period From | To | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| OBC-H332709-01 | 07/31/2021 | 07/31/2022 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

Named Insured and Address
COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

Agent
847-307-6100
THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

| Additional Property Coverages & Extensions | Loc. No. | Bldg. No. | Deductible Amount | Amount Included | Additional Amount | Total Limit |
|---|---|---|---|---|---|---|
| ORDINANCE OR LAW | 001 | 001 | NONE | $5,000 | N/A | $5,000 |
| COMPUTER EQUIPMENT | | | $500 | $35,000 | N/A | $35,000 |
| COMPUTER EQUIPMENT EXTRA EXPENSE | | | NONE | $5,000 | N/A | $5,000 |
| ELECTRONIC VANDALISM | | | $500 | | | |
|   OCCURRENCE LIMIT | | | | $10,000 | N/A | $10,000 |
|   AGGREGATE LIMIT | | | | $10,000 | N/A | $10,000 |
| VALUABLE PAPERS AND RECORDS (OTHER THAN ELECTRONIC DATA) | | | $1,000 | | | |
|   ON PREMISES | | | | $25,000 | N/A | $25,000 |
|   OFF PREMISES | | | | $25,000 | N/A | $25,000 |
| ACCOUNTS RECEIVABLE | | | $1,000 | | | |
|   ON PREMISES | | | | $25,000 | N/A | $25,000 |
|   OFF PREMISES | | | | $25,000 | N/A | $25,000 |
| MONEY AND SECURITIES | | | $500 | | | |
|   ON PREMISES | | | | $10,000 | N/A | $10,000 |
|   OFF PREMISES | | | | $5,000 | N/A | $5,000 |
| EQUIPMENT BREAKDOWN | | | $1,000 | INCLUDED | N/A | INCLUDED |
| PROTECTIVE DEVICES CREDIT | | | | | | |
|   AUTOMATIC SPRINKLER SYSTEM | | | NO | | | |
|   AUTOMATIC FIRE ALARM | | | NO | | | |
|   CENTRAL STATION SECURITY | | | NO | | | |
| COLLAPSE | | | $500 | INCLUDED | N/A | INCLUDED |
| UTILITY SERVICES | | | | | | |
|   DIRECT DAMAGE | | | $500 | $50,000 | N/A | $50,000 |
|   TIME-ELEMENT | | | 24 HOURS | $50,000 | N/A | $50,000 |

Form  391-1018A (9-04)
Date Issued:  03/08/2022

ORIGINAL/INSURED

**The Hanover Insurance Group.**

# ADDITIONAL PROPERTY COVERAGES AND EXTENSIONS

**BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 07/31/2021  NUMBER 02**

07          SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
ADDED LOC#02

| Policy Number | Policy Period From | To | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| OBC-H332709-01 | 07/31/2021 | 07/31/2022 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

Named Insured and Address
COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

Agent
847-307-6100
THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

| Additional Property Coverages & Extensions | Loc. No. | Bldg. No. | Deductible Amount | Amount Included | Additional Amount | Total Limit |
|---|---|---|---|---|---|---|
| ORDINANCE OR LAW | 002 | 001 | NONE | $5,000 | N/A | $5,000 |
| COMPUTER EQUIPMENT | | | $500 | $35,000 | N/A | $35,000 |
| COMPUTER EQUIPMENT EXTRA EXPENSE | | | NONE | $5,000 | N/A | $5,000 |
| ELECTRONIC VANDALISM | | | $500 | | | |
| OCCURRENCE LIMIT | | | | $10,000 | N/A | $10,000 |
| AGGREGATE LIMIT | | | | $10,000 | N/A | $10,000 |
| VALUABLE PAPERS AND RECORDS (OTHER THAN ELECTRONIC DATA) | | | $1,000 | | | |
| ON PREMISES | | | | $25,000 | N/A | $25,000 |
| OFF PREMISES | | | | $25,000 | N/A | $25,000 |
| ACCOUNTS RECEIVABLE | | | $1,000 | | | |
| ON PREMISES | | | | $25,000 | N/A | $25,000 |
| OFF PREMISES | | | | $25,000 | N/A | $25,000 |
| MONEY AND SECURITIES | | | $500 | | | |
| ON PREMISES | | | | $10,000 | N/A | $10,000 |
| OFF PREMISES | | | | $5,000 | N/A | $5,000 |
| EQUIPMENT BREAKDOWN | | | $1,000 | INCLUDED | N/A | INCLUDED |
| PROTECTIVE DEVICES CREDIT | | | | | | |
| AUTOMATIC SPRINKLER SYSTEM | | | NO | | | |
| AUTOMATIC FIRE ALARM | | | NO | | | |
| CENTRAL STATION SECURITY | | | NO | | | |
| COLLAPSE | | | $500 | INCLUDED | N/A | INCLUDED |
| UTILITY SERVICES | | | | | | |
| DIRECT DAMAGE | | | $500 | $50,000 | N/A | $50,000 |
| TIME-ELEMENT | | | 24 HOURS | $50,000 | N/A | $50,000 |

Form  391-1018A (9-04)
Date Issued:  03/08/2022

ORIGINAL/INSURED

**The Hanover Insurance Group**

# AVENUES BUSINESSOWNERS DECLARATION

### BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 07/31/2021   NUMBER 02

07

SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
ADDED LOC#02

| Policy Number | Policy Period | | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| | From | To | | |
| OBC-H332709-01 | 07/31/2021 | 07/31/2022 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**
COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

**Agent**
847-307-6100
THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

## Forms and Endorsements Schedule

| Form Number | Edition Date | Description |
|---|---|---|
| 391-1402 | 08/16 | TECHNOLOGY DELUXE GOLD BROAD |
| 391-1371 | 01/10 | REV INFRINGE OF COPYRIGHT EXCL |
| BP0404 | 01/10 | HIRED AUTO NON-OWNED AUTO LIAB |
| 401-1374 | 12/20 | DISCLOSURE PURSUANT TO TRIA |
| 391-1114 | 01/15 | CAP ON LOSSES FROM TERRORISM |
| 391-1313 | 01/15 | EXCLUSION OF PUNITIVE DAMAGES |
| 391-1006 | 08/16 | LIABILITY SPECIAL BROADENING |
| BP0417 | 01/10 | EMPLYMT RELATED PRACTICES EXCL |
| 231-0475 | 06/89 | PILR NOTICE |
| 391-1003 | 08/16 | BUSINESSOWNERS COVERAGE FORM |
| BP0643 | 04/06 | IL CHANGES - DEFENSE COSTS |
| 391-1901 | 06/18 | ILLINOIS CHANGES |
| 421-0022 | 07/02 | ASBESTOS EXCLUSION |
| 391-1102 | 08/16 | EXCL - FUNGI OR BACTERIA LIAB |
| 331-0053 | 08/16 | ILLINOIS INQUIRY NOTICE |
| 391-1375 | 01/10 | AMEND LIMITS PERSONAL AND ADV |
| 391-1218 | 06/06 | EPLI INSURANCE CVG ENDR ILLINO |
| 391-1206 | 06/06 | EPLI IMPORTANT NOTICE |
| 391-1208 | 03/06 | EPLI SUPPLEMENTAL DEC |
| BP1203 | 01/10 | LOSS PAYABLE PROVISIONS |
| 401-1504 | 01/20 | CAP LOSSES CERT ACTS OF TERR |
| 391-1440 | 01/15 | DATA BREACH COVERAGE FORM |
| 391-1442 | 12/09 | ASSOC AND FAMILY MBR ADD COV |
| 391-1585 | 12/11 | IDENTITY THEFT NOTICE |

Form  391-1016 (7-99
Date Issued:  03/08/2022

ORIGINAL/INSURED

The **Hanover**
Insurance Group™

# AVENUES BUSINESSOWNERS DECLARATION

## BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 07/31/2021  NUMBER 02

07

SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
ADDED LOC#02

| Policy Number | Policy Period | | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| | From | To | | |
| OBC-H332709-01 | 07/31/2021 | 07/31/2022 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

**Agent**

847-307-6100
THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

### Forms and Endorsements Schedule

| Form Number | Edition Date | Description |
|---|---|---|
| 391-1854 | 01/15 | IL CHANGES - DATA BREACH |
| 401-1235 | 12/14 | CANCEL NOTICE TO DESIGNATED |
| 391-1941 | 08/16 | AI DESIGNATED PER OR ORG |
| BP0497 | 07/02 | WAIVER OF TRANSFER OF RIGHTS |

Form  391-1016 (7-99
Date Issued:  03/08/2022                                    ORIGINAL/INSURED

**COMMERCIAL EMPLOYMENT PRACTICES
LIABILITY INSURANCE COVERAGE ENDORSEMENT
SUPPLEMENTAL DECLARATIONS**



OBCH332709      1304500

Policy Number:  OBC H332709 01
Account Number:  1521871564
Named Insured:   COOLER SCREENS INC

Agent:  1304500

---

### NOTICE

- EXCEPT TO SUCH EXTENT AS MAY OTHERWISE BE PROVIDED HEREIN, THE COVERAGE OF THIS COVERAGE ENDORSEMENT IS LIMITED TO LIABILITY FOR ONLY THOSE CLAIMS OR SUITS THAT ARE FIRST MADE AGAINST THE INSUREDS DURING THE EPL COVERAGE PERIOD AND REPORTED IN WRITING TO THE INSURER PURSUANT TO THE TERMS HEREIN. VARIOUS PROVISIONS IN THIS COVERAGE ENDORSEMENT RESTRICT COVERAGE. PLEASE READ THE ENTIRE COVERAGE ENDORSEMENT CAREFULLY TO DETERMINE RIGHTS, DUTIES AND WHAT IS AND IS NOT COVERED.

- THE LIMIT OF LIABILITY AVAILABLE TO PAY JUDGEMENTS OR SETTLEMENTS UNDER THIS COVERAGE ENDORSEMENT SHALL BE REDUCED BY AMOUNTS INCURRED FOR LEGAL DEFENSE. AMOUNTS INCURRED FOR LEGAL DEFENSE SHALL BE APPLIED AGAINST THE DEDUCTIBLE AMOUNT.

---

| | | |
|---|---|---|
| **EPL Coverage Period:** | From: 07/31/2021<br><br>To: 07/31/2022 | At 12:01 A.M. Standard Time at your mailing address shown on the Declarations page of this policy. |
| **EPL Aggregate Limit of Liability:** | $ 25,000.00 | Aggregate for all "loss" combined, including "defense costs". |
| **EPL Deductible Amount:** | $ 5,000.00 | For "loss" arising from claims or suits alleging the same "wrongful employment act" or "related wrongful employment acts". |
| **EPL Original Inception Date:** | 07/31/2020 | (Enter "original inception date") If no date is shown, "we" will consider the "original inception date" to be the same as the beginning of this coverage endorsement. |

This insurance does not apply to "loss" arising out of a "wrongful employment act" that: (1) commences on or takes place prior to the "original inception date" shown here, or (2) arises out of incidents or circumstance of which "you" had knowledge prior to the "original inception date" shown.

| | | |
|---|---|---|
| | **EPL COVERAGE PREMIUM:** | $  |

The Hanover Insurance Group™

| RENEWAL OF POLICY |
| --- |
| **COMMERCIAL UMBRELLA POLICY** |
| THESE DECLARATIONS TOGETHER WITH THE COMMON POLICY CONDITIONS AND COVERAGE FORM(S) COMPLETE THE BELOW NUMBERED POLICY |

POLICY NUMBER: OBC-H332709-01

DECLARATIONS

| **Named Insured and Address** (No., Street, Town, County, State) | **Agent** |
| --- | --- |
| COOLER SCREENS INC<br>233 N MICHIGAN AVE SUITE 1430<br>CHICAGO, IL 60601 | 130450000<br>THE PLEXUS GROUPE LLC<br>SUITE 300<br>21805 W. FIELD PARKWAY<br>DEER PARK, IL 60010 |

**Policy Period:** (Month, Day, Year)

From 07/31/2021   To 07/31/2022
12:01 AM, standard time at the address of the Named Insured as stated herein.

Form of Business:

[ ] Individual   [ ] Partnership   [X] Corporation   [ ] Limited Liability Company
[ ] Organization (Other than Partnership, Joint Venture, or Limited Liability Company

**Business Description:**
**SERVICE.**

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY. THIS PREMIUM MAY BE SUBJECT TO AUDIT.

| **Limit of Liability (Section III)** | |
| --- | --- |
| **Each Occurrence Limit** | **$ 1,000,000** |
| **General Aggregate Limit** | **$ 1,000,000** |
| **Product Completed Operations Aggregate Limit** | **$ 1,000,000** |

**Retained Limit      Self-Insured Retention            $ NIL**

**Premium Computation**

Annual Premium  $
Advance Premium  $

**Endorsements:**

| | | | | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| CU2130 | 01/15 | CU2156 | 06/06 | CU2136 | 01/15 | 473-1150 | 05/12 | 473-1157 | 01/10 | 473-0004 | 10/05 |
| CU0004 | 05/09 | 473-0016 | 10/05 | 473-0023 | 10/05 | 473-0040 | 10/05 | CU0200 | 12/07 | CU0001 | 12/07 |
| 473-2194 | 08/16 | CU2123 | 02/02 | 473-2211 | 10/16 | CU2125 | 12/01 | CU2255 | 09/00 | CU2127 | 12/04 |
| CU2150 | 03/05 | IL0017 | 11/98 | CU2436 | 12/05 | IL0162 | 09/08 | 473-1125 | 02/09 | CU2186 | 05/14 |

[ ] PRE PAID - the total annual premium is due at inception.

[ ] HANOCASH - the annual premium is payable according to the term of the Hanocash endorsement attachment

[ ] ACCOUNT BILL   [X] DIRECT BILL   [ ] Annual   [ ] Semi-Annual   [ ] Other
Audit period: Non Auditable Unless indicated by [ ] Annual   [ ] Semi-Annual   [ ] Other
If you cancel this policy, we shall receive and retain not less than $ as a policy minimum premium.

The **Hanover**
Insurance Group™

OBCH332709     1304500

## SCHEDULE A - SCHEDULE OF UNDERLYING POLICIES

**Insured:**   COOLER SCREENS INC
**Effective on and after: 07/31/2021  ,  12:01 AM Standard Time**
**This schedule is part of Policy Number:   OBC-H332709-01**

| CARRIER, POLICY NUMBER & PERIOD | TYPE OF POLICY | APPLICABLE LIMITS OR AMOUNT OF INSURANCE |
|---|---|---|
| (a)Carrier:<br><br>CITIZENS INSURANCE COMPANY OF AMERICA<br><br>Policy Number:   OBC-H332709-01<br>Policy Period:   07/31/2021    TO  07/31/2022 | Commercial General Liability<br>[X]Non-owned & Hired Autos | $  2,000,000    Each  Occurrence<br>$  4,000,000    General  Aggregate<br>$  4,000,000    Product/Compl eted Operations Aggregate |
| (b) Carrier:<br><br><br>Policy Number:<br>Policy Period: | Comprehensive Automobile Liability | Bodily Injury and Property Damage Liability Combined<br>$              Each Accident<br>Bodily Injury<br>$              Each Person<br>$              Each Accident<br>Property Damage<br>$              Each Accident |
| (c)Carrier:<br><br>EXCLUDED<br>Policy Number:<br>Policy Period: | Standard Workers Compensation & Employers Liability<br>**Please Note:** The Umbrella Coverage for Workers Compensation and Employers Liability is not applicable in situations where an employee is subject to the New York Workers Compensation Law. | **Coverage B - Employers Liability**<br>Bodily Injury by Accident<br>$              Each  Accident<br>Bodily Injury by Disease<br>$                   Aggregate<br>$              Each  Employee |
| (d)Carrier:<br><br><br>Policy Number:<br>Policy Period: | Liquor Liability | $              Limit of   Liability |
| (e)Carrier:<br><br><br>Policy Number:<br>Policy Period: | Professional Liability | $              Limit of Liability |

An "X" marked in the box provided indicates these broadening or optional coverages are provided in the Underlying Insurance

| | | |
|---|---|---|
| (f) Carrier:<br><br><br>Policy Number:<br>Policy Period: | Directors & Officers Liability | $              Limit of   Liability |
| (g) Carrier:<br><br><br>Policy Number:<br>Policy Period: | Employee Benefits Liability | $              Limit of   Liability |

**Countersigned By:**

**Date:**

**Authorized Representative of the Company**

473-1103 (11/08)

The
**Hanover**
Insurance Group™

OBCH332709          1304500

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

**The Hanover**
Insurance Group℠

OBCH332709      1304500

# IMPORTANT NOTICE TO POLICYHOLDERS

No coverage is provided by this policyholder notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverage you are provided. If there is any conflict between the policy and this notice, <u>THE</u> <u>PROVISIONS OF THE POLICY SHALL PREVAIL.</u>

## EMPLOYMENT PRACTICES LIABILITY COVERAGE

The Employment Practices Liability Insurance Coverage is designed to protect small commercial businesses with 25 employees or fewer for liability damages and defense costs due to claims brought by employees who allege employment discrimination, wrongful termination, or sexual harassment.

This coverage will be written on any risk that meets the eligibility criteria under the portfolio Employment Practices Liability Coverage. Such eligibility will be determined by state, class and employee count of individual Insureds.

This coverage will attach to all eligible policies, unless waived. There is a premium charge for this coverage. The coverage provided has an Aggregate Limit of Liability of $25,000 for all losses combined, including defense costs. This coverage has a $5,000 Deductible Amount for each claim. Optional $100,000 and $250,000 Limits of Liability are also available for additional premium charges.

Coverage may be waived by signing and returning the **Employment Practices Liability Coverage Waiver, 391-1205,** to The Hanover Insurance Group, 440 Lincoln Street, Worcester, MA 01653.

Such waiver will continue automatically through subsequent renewals, unless rescinded by the company at your request.

Please contact your agent for additional information or if you have any questions, or if you wish to waive this coverage.

3

The **Hanover**
Insurance Group™

OBCH332709        1304500

## IDENTITY THEFT RESOLUTION SERVICES
### (POWERED BY IDENTITY THEFT 911)

Are you or your resident family members at risk for identity theft?  Do you need expert assistance with an identity-related concern?  IDENTITY THEFT RESOLUTION SERVICES from Identity Theft 911 give you one-on-one assistance in the following situations:

**Access Phone Number: 800-628-0250**

If you or a resident family member suffer the loss or theft of private personal data, contact Identity Theft 911 for proactive guidance that can include Fraud Alert service.  If you wish, a fraud specialist can assist and place a free fraud alert on your credit file to reduce the risk of fraudulent accounts opened in  your name. This service also includes additional preventative measures and one-on-one assistance, depending on the risk.

If you or a resident family member suffer the loss or theft of private personal data, contact Identity Theft 911 for Identity Restoration Case Management services. A fraud specialist will guide you through the process of restoring your identity and handle all of the work, including completed documentation and  notification assistance. Victims also receive one year of credit monitoring, as well as free fraud monitoring of over 1,000 public databases.

**Learn How to Protect Your Identity**

We recommend that you regularly visit The Hanover Insurance Group and Identity Theft 911 comprehensive resource and knowledge library - www.hanover-identitytheft911.com - for the latest media alerts, identity theft tips, in-depth newsletters and much more.

Keep this access information handy in case you ever need help with an identity-related problem.

**Access Phone Number: 800-628-0250**

The Hanover Insurance Group makes no guarantee of results and assumes no liability in connection with either the information or assistance provided by Identity Theft 911.  Any and all external Websites or sources referred to herein are for informational purposes only.

**The Hanover Insurance Group.**

## AVENUES BUSINESSOWNERS DECLARATION

### BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 07/31/2021  NUMBER 03

07

SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
DELETED LOC#01

| Policy Number | Policy Period | | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| | From | To | | |
| OBC-H332709-01 | 07/31/2021 | 07/31/2022 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

**Agent**

847-307-6100
THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

**Policy Period:  Beginning and Ending at 12:01 a.m. Standard Time at the Location of the Described Premises.**

**Business Type:**  CORPORATION (SINGLE).

**Mortgagee/Loss Payable:**

SEE ADDITIONAL INTEREST SCHEDULE

**Business of the Named Insured:**

SERVICE.

In consideration of the premium, insurance is provided the Named Insured with respect to those premises described in the Schedule below and with respect to those coverages and kinds of property for which a specific Limit of Insurance is shown, subject to all of the terms of this policy including forms and endorsements made a part hereof:

### LOCATION SCHEDULE

**Described Premises:**

NO. 001 001    DELETED LOCATION
NO. 002 001    303.E WACKER SUITE 295, CHICAGO, IL  60601

| SECTION I - PROPERTY | LIMITS OF INSURANCE | | | | | |
|---|---|---|---|---|---|---|
| | Loc No  002 | Bldg No 001 | Loc No | Bldg No | Loc No | Bldg No |
| **Deductible Amount** | $         1,000 | | $ | | $ | |
| **Building Amount Valuation** | NOT COVERED | | | | | |
| **Business Personal Property Valuation** | $       211,470  RC | | | | | |
| **Business Income** | ACTUAL BUSINESS LOSS SUSTAINED NOT EXCEEDING 12 CONSECUTIVE MONTHS | | | | | |
| **Business Income Waiting Period** | Excluded / None / 24 hours / 48 hours /72 hours  24 HOURS | | | | | |
| **SECTION II - LIABILITY** | LIMITS OF INSURANCE | | | | | |

**Liability and Medical Expenses Limits of Insurance:**

Except for Damage to Premises Rented to You,  each paid claim for the following coverages reduce the Amount of Insurance we provide during the applicable annual  period.  Please refer to **SECTION II - LIABILITY, D. LIABILITY  AND MEDICAL  EXPENSES LIMITS OF INSURANCE,** paragraph.**4.** of the Businessowners Coverage Form.

| Liability and Medical Expenses Limit | $ 2,000,000 | Per Occurrence | $ 4,000,000 | Aggregate |
|---|---|---|---|---|
| Medical Expenses | $       5,000 | Each Person | | |
| Damage to Premises Rented to You | $     300,000 | All Perils | | |

Date Issued:  03/09/2022          ORIGINAL/INSURED          Payment Type:  DIRECT BILL

GROUP NAME: TECHNOLOGY - SERVICES          GROUP NUMBER: ZTS

The **Hanover**
Insurance Group™

# AVENUES BUSINESSOWNERS DECLARATION

## BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 07/31/2021  NUMBER 03

07

SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
DELETED LOC#01

| Policy Number | Policy Period | | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| | From | To | | |
| OBC-H332709-01 | 07/31/2021 | 07/31/2022 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

**Agent**

847-307-6100
THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

**Additional Property Coverages and Extensions:**
　　　　See attached Schedule for Additional Coverages provided for under this Policy.

Audit Frequency: Annual

**Additional Liability Coverages:**  General Liability Broadening Endorsement
**General Liability Class**: 85219
**Description**:  CUSTOM COMPUTER PROGRAMMING
**Liability Exposure:**  $1,872,000        SALES

**Policy Forms, Endorsements and Optional Coverages Attached:**
　　　　See Forms and Endorsements Schedule

P R E V I O U S   P R E M I U M   I S :                              $ ▓▓▓▓
N E T   P R E M I U M   C H A N G E   I S :                     $ ▓▓▓▓▓
T O T A L   B O P   C O V E R A G E   P R E M I U M :           $ ▓▓▓▓▓
BOP TERRORISM COVG (INCLUDED IN TOTAL POLICY PREMIUM)  $ ▓▓▓
　　　O T H E R   T H A N   F I R E   F O L L O W I N G           $ ▓▓▓
　　　　F I R E   F O L L O W I N G                              $ ▓▓▓
T O T A L   U M B R E L L A   C O V E R A G E   P R E M I U M :      $ ▓▓▓
UMB TERRORISM COVG (INCLUDED IN TOTAL POLICY PREMIUM)  $ ▓▓▓
D E P O S I T   P R E M I U M :                                 $ ▓▓▓▓
T H E   T O T A L   A C T U A L   P R E M I U M :                 $ ▓▓▓▓

**Countersigned this _____ Day of _____**

_____
**Authorized Representative**

**This Declarations Page with the Policy Contract, Forms and Endorsements, if any,
Complete the Policy.**

Date Issued:  03/09/2022          ORIGINAL/INSURED          Payment Type: DIRECT BILL

**391-1002 08 16**

**The Hanover Insurance Group**

# ADDITIONAL INTEREST SCHEDULE

## BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 07/31/2021  NUMBER 03

07

SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
DELETED LOC#01

| Policy Number | Policy Period | | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| | From | To | | |
| OBC-H332709-01 | 07/31/2021 | 07/31/2022 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**
COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

**Agent**
847-307-6100
THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

| Name And Address | Interest Type | Location | Building |
|---|---|---|---|
| SILICON VALLEY BANK 3003 TASMAN DRIVE HF 150 SANTA CLARA, CA  95054 | LENDER'S LOSS PAYABLE | 0 0 2 | 0 1 |

Form   391-1014 (7-99)
Date Issued:   03/09/2022                    ORIGINAL/INSURED

**The Hanover** Insurance Group™

## ADDITIONAL PROPERTY COVERAGES AND EXTENSIONS

**BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 07/31/2021  NUMBER 03**

07          SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
            DELETED LOC#01

| Policy Number | Policy Period | | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| | From | To | | |
| OBC-H332709-01 | 07/31/2021 | 07/31/2022 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

**Agent**

847-307-6100

THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

| Additional Property Coverages & Extensions | Deductible | Amount Included | Additional Amount Increase | Total Limit |
|---|---|---|---|---|
| DEBRIS REMOVAL | NONE | $25,000 | N/A | $25,000 |
| PRESERVATION OF PROPERTY | NONE | 90 DAYS | N/A | 90 DAYS |
| FIRE DEPARTMENT SERVICE CHARGE | NONE | $25,000 | N/A | $25,000 |
| POLLUTANT CLEAN-UP AND REMOVAL | NONE | $25,000 | N/A | $25,000 |
| MONEY ORDERS AND COUNTERFEIT MONEY | $500 | $5,000 | N/A | $5,000 |
| FORGERY OR ALTERATION | $500 | $25,000 | N/A | $25,000 |
| GLASS EXPENSES | $250 | INCLUDED | N/A | INCLUDED |
| REWARDS ARSON, THEFT AND VANDALISM | NONE | $10,000 | N/A | $10,000 |
| TENANT SIGNS | $500 | $5,000 | N/A | $5,000 |
| FIRE PROTECTION EQUIPMENT RECHARGE | NONE | $25,000 | N/A | $25,000 |
| INSTALLATION FLOATER | $1,000 | $5,000 | N/A | $5,000 |
| FINE ARTS | $500 | $10,000 | N/A | $10,000 |
| FENCE AND WALLS | SEE BUILDING AND CONTENTS DEDUCTIBLE | INCLUDED | N/A | INCLUDED |
| SALES REPRESENTATIVE SAMPLES | $1,000 | $5,000 | N/A | $5,000 |
| LEASEHOLD INTEREST (TENANT'S ONLY) | NONE | $10,000 | N/A | $10,000 |
| UNAUTHORIZED BUSINESS CREDIT CARD USE | NONE | $5,000 | N/A | $5,000 |
| UTILITY SERVICES | | | N/A | |
| DIRECT DAMAGE | $500 | $10,000 | N/A | $10,000 |
| BUSINESS INCOME | 24 HOURS | $5,000 | N/A | $5,000 |
| DEFERRED PAYMENTS | NONE | $5,000 | N/A | $5,000 |
| NEWLY ACQUIRED OR CONSTRUCTED PROPERTY | | 180 DAYS | N/A | 180 DAYS |
| BUILDINGS | $500 | $1,000,000 | N/A | $1,000,000 |
| PERSONAL PROPERTY | $500 | $500,000 | N/A | $500,000 |
| BUSINESS INCOME AND EXTRA EXPENSE | SEE WAITING PERIOD | $250,000 | N/A | $250,000 |
| OUTDOOR PROPERTY - TREES, SHRUBS AND PLANTS-$1,000 EACH ITEM | $500 | $10,000 | N/A | $10,000 |

Form  391-1018  (7-02)
Date Issued:  03/09/2022

**The Hanover Insurance Group**

# ADDITIONAL PROPERTY COVERAGES AND EXTENSIONS

### BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 07/31/2021 NUMBER 03

07 SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
DELETED LOC#01

| Policy Number | Policy Period From | To | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| OBC-H332709-01 | 07/31/2021 | 07/31/2022 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL 60601

**Agent**

847-307-6100

THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL 60010

| Additional Property Coverages & Extensions | Deductible | Amount Included | Additional Amount Increase | Total Limit |
|---|---|---|---|---|
| PERSONAL EFFECTS | $500 | $10,000 | N/A | $10,000 |
| INVENTORY AND LOSS APPRAISAL | NONE | $10,000 | N/A | $10,000 |
| KEY REPLACEMENT AND LOCK REPAIR | NONE | $1,000 | N/A | $1,000 |
| APPURTENANT STRUCTURE | $500 | $50,000 | N/A | $50,000 |
| PERSONAL PROPERTY IN TRANSIT | $1,000 | $10,000 | N/A | $10,000 |
| EXTENDED BUSINESS INCOME | | 30 DAYS | N/A | 30 DAYS |
| EMPLOYEE THEFT INCLUDING ERISA COMPLIANCE | $1,000 | $10,000 | N/A | $10,000 |
| COMMERCIAL TOOLS AND SMALL EQUIP | $500 | $5,000 | N/A | $5,000 |
| PERSONAL PROPERTY OFF PREMISES | $1,000 | $50,000 | N/A | $50,000 |
| BUSINESS INCOME FROM DEPENDENT PROPERTIES | 72 HOURS | $5,000 | N/A | $5,000 |
| TERRORISM | SEE BUILDING AND CONTENTS DEDUCTIBLE | SAME AS PROPERTY LIMITS OF INSURANCE IF COVERED | N/A | SAME AS PROPERTY LIMITS OF INSURANCE IF COVERED |
| INTERRUPTION OF COMPUTER OPERATIONS | SEE WAITING PERIOD | $10,000 | N/A | $10,000 |
| BUSINESS PERSONAL PROPERTY TEMPORARILY IN PORTABLE STORAGE UNITS | $500 | $25,000 | N/A | $25,000 |
| CIVIL AUTHORITY | 72 HOURS | 4 WEEKS | N/A | 4 WEEKS |
| COMPUTER AND FUNDS TRANSFER FRAUD | $500 | $5,000 | N/A | $5,000 |
| LIMITED COVERAGE FOR FUNGI, WET ROT, OR DRY ROT | $500 | $50,000 | N/A | $50,000 |
| PAVED SURFACES | $500 | $25,000 | N/A | $25,000 |
| TENANT BUILDING COVERAGE - REQUIRED BY LEASE | $500 | $25,000 | N/A | $25,000 |
| TENANT BUSINESS PERSONAL PROPERTY COVERAGE - REQUIRED BY LEASE | $500 | $25,000 | N/A | $25,000 |

Form 391-1018 (7-02)
Date Issued: 03/09/2022

**The Hanover Insurance Group**

## ADDITIONAL PROPERTY COVERAGES AND EXTENSIONS

**BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 07/31/2021  NUMBER 03**

07      SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
        DELETED LOC#01

| Policy Number | Policy Period | | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| | From | To | | |
| OBC-H332709-01 | 07/31/2021 | 07/31/2022 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

**Agent**

847-307-6100

THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

| Additional Property Coverages & Extensions | Deductible | Amount Included | Additional Amount Increase | Total Limit |
|---|---|---|---|---|
| THEFT OF TELEPHONIC SERVICES | $500 | $25,000 | N/A | $25,000 |
| UNDERGROUND PIPES | $500 | INCLUDED | N/A | INCLUDED |

Form  391-1018  (7-02)
Date Issued:  03/09/2022

**The Hanover** Insurance Group.

# ADDITIONAL PROPERTY COVERAGES AND EXTENSIONS

**BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 07/31/2021  NUMBER 03**

07           SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
             DELETED LOC#01

| Policy Number | Policy Period | | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| | From | To | | |
| OBC-H332709-01 | 07/31/2021 | 07/31/2022 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

Named Insured and Address                                    Agent
COOLER SCREENS INC                                    847-307-6100
233 N MICHIGAN AVE SUITE 1430                         THE PLEXUS GROUPE LLC
CHICAGO, IL  60601                                    SUITE 300
                                                      21805 W. FIELD PARKWAY
                                                      DEER PARK, IL  60010

| Additional Property Coverages & Extensions | Loc. No. | Bldg. No. | Deductible Amount | Amount Included | Additional Amount | Total Limit |
|---|---|---|---|---|---|---|
| ORDINANCE OR LAW | 002 | 001 | NONE | $5,000 | N/A | $5,000 |
| COMPUTER EQUIPMENT | | | $500 | $35,000 | N/A | $35,000 |
| COMPUTER EQUIPMENT EXTRA EXPENSE | | | NONE | $5,000 | N/A | $5,000 |
| ELECTRONIC VANDALISM | | | $500 | | | |
| OCCURRENCE LIMIT | | | | $10,000 | N/A | $10,000 |
| AGGREGATE LIMIT | | | | $10,000 | N/A | $10,000 |
| VALUABLE PAPERS AND RECORDS (OTHER THAN ELECTRONIC DATA) | | | $1,000 | | | |
| ON PREMISES | | | | $25,000 | N/A | $25,000 |
| OFF PREMISES | | | | $25,000 | N/A | $25,000 |
| ACCOUNTS RECEIVABLE | | | $1,000 | | | |
| ON PREMISES | | | | $25,000 | N/A | $25,000 |
| OFF PREMISES | | | | $25,000 | N/A | $25,000 |
| MONEY AND SECURITIES | | | $500 | | | |
| ON PREMISES | | | | $10,000 | N/A | $10,000 |
| OFF PREMISES | | | | $5,000 | N/A | $5,000 |
| EQUIPMENT BREAKDOWN | | | $1,000 | INCLUDED | N/A | INCLUDED |
| PROTECTIVE DEVICES CREDIT | | | | | | |
| AUTOMATIC SPRINKLER SYSTEM | | | | NO | | |
| AUTOMATIC FIRE ALARM | | | | NO | | |
| CENTRAL STATION SECURITY | | | | NO | | |
| COLLAPSE | | | $500 | INCLUDED | N/A | INCLUDED |
| UTILITY SERVICES | | | | | | |
| DIRECT DAMAGE | | | $500 | $50,000 | N/A | $50,000 |
| TIME-ELEMENT | | | 24 HOURS | $50,000 | N/A | $50,000 |

Form  391-1018A (9-04)
Date Issued:  03/09/2022

ORIGINAL/INSURED

The **Hanover** Insurance Group

# AVENUES BUSINESSOWNERS DECLARATION

## BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 07/31/2021  NUMBER 03

07

SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
DELETED LOC#01

| Policy Number | Policy Period | | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| | From | To | | |
| OBC-H332709-01 | 07/31/2021 | 07/31/2022 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**
COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

**Agent**
847-307-6100
THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

## Forms and Endorsements Schedule

| | Form Number | Edition Date | Description |
|---|---|---|---|
| * | 391-1402 | 08/16 | TECHNOLOGY DELUXE GOLD BROAD |
| | 391-1371 | 01/10 | REV INFRINGE OF COPYRIGHT EXCL |
| | BP0404 | 01/10 | HIRED AUTO NON-OWNED AUTO LIAB |
| | 401-1374 | 12/20 | DISCLOSURE PURSUANT TO TRIA |
| | 391-1114 | 01/15 | CAP ON LOSSES FROM TERRORISM |
| | 391-1313 | 01/15 | EXCLUSION OF PUNITIVE DAMAGES |
| | 391-1006 | 08/16 | LIABILITY SPECIAL BROADENING |
| | BP0417 | 01/10 | EMPLYMT RELATED PRACTICES EXCL |
| | 231-0475 | 06/89 | PILR NOTICE |
| | 391-1003 | 08/16 | BUSINESSOWNERS COVERAGE FORM |
| | BP0643 | 04/06 | IL CHANGES - DEFENSE COSTS |
| | 391-1901 | 06/18 | ILLINOIS CHANGES |
| | 421-0022 | 07/02 | ASBESTOS EXCLUSION |
| | 391-1102 | 08/16 | EXCL - FUNGI OR BACTERIA LIAB |
| | 331-0053 | 08/16 | ILLINOIS INQUIRY NOTICE |
| | 391-1375 | 01/10 | AMEND LIMITS PERSONAL AND ADV |
| * | 391-1218 | 06/06 | EPLI INSURANCE CVG ENDR ILLINO |
| * | 391-1206 | 06/06 | EPLI IMPORTANT NOTICE |
| * | 391-1208 | 03/06 | EPLI SUPPLEMENTAL DEC |
| | 401-1504 | 01/20 | CAP LOSSES CERT ACTS OF TERR |
| * | 391-1440 | 01/15 | DATA BREACH COVERAGE FORM |
| * | 391-1442 | 12/09 | ASSOC AND FAMILY MBR ADD COV |
| * | 391-1585 | 12/11 | IDENTITY THEFT NOTICE |
| * | 391-1854 | 01/15 | IL CHANGES - DATA BREACH |

Form  391-1016 (7-99
Date Issued:  03/09/2022

ORIGINAL/INSURED

The **Hanover**
Insurance Group.

## AVENUES BUSINESSOWNERS DECLARATION

### BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 07/31/2021  NUMBER 03

07

SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
DELETED LOC#01

| Policy Number | Policy Period | | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| | From | To | | |
| OBC-H332709-01 | 07/31/2021 | 07/31/2022 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**
COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

**Agent**
847-307-6100
THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

### Forms and Endorsements Schedule

| | Form Number | Edition Date | Description |
|---|---|---|---|
| * | 401-1235 | 12/14 | CANCEL NOTICE TO DESIGNATED |
| * | 391-1941 | 08/16 | AI DESIGNATED PER OR ORG |
| * | BP0497 | 07/02 | WAIVER OF TRANSFER OF RIGHTS |

Form  391-1016 (7-99
Date Issued:  03/09/2022

ORIGINAL/INSURED

**COMMERCIAL EMPLOYMENT PRACTICES**
**LIABILITY INSURANCE COVERAGE ENDORSEMENT**
**SUPPLEMENTAL DECLARATIONS**



OBCH332709    1304500

Policy Number:  OBC H332709 01                                    Agent:  1304500
Account Number:  1521871564
Named Insured:  COOLER SCREENS INC

---

## NOTICE

- EXCEPT TO SUCH EXTENT AS MAY OTHERWISE BE PROVIDED HEREIN, THE COVERAGE OF THIS COVERAGE ENDORSEMENT IS LIMITED TO LIABILITY FOR ONLY THOSE CLAIMS OR SUITS THAT ARE FIRST MADE AGAINST THE INSUREDS DURING THE EPL COVERAGE PERIOD AND REPORTED IN WRITING TO THE INSURER PURSUANT TO THE TERMS HEREIN. VARIOUS PROVISIONS IN THIS COVERAGE ENDORSEMENT RESTRICT COVERAGE. PLEASE READ THE ENTIRE COVERAGE ENDORSEMENT CAREFULLY TO DETERMINE RIGHTS, DUTIES AND WHAT IS AND IS NOT COVERED.

- THE LIMIT OF LIABILITY AVAILABLE TO PAY JUDGEMENTS OR SETTLEMENTS UNDER THIS COVERAGE ENDORSEMENT SHALL BE REDUCED BY AMOUNTS INCURRED FOR LEGAL DEFENSE. AMOUNTS INCURRED FOR LEGAL DEFENSE SHALL BE APPLIED AGAINST THE DEDUCTIBLE AMOUNT.

---

| | | |
|---|---|---|
| **EPL Coverage Period:** | From: 07/31/2021<br>To:      07/31/2022 | At 12:01 A.M. Standard Time at your mailing address shown on the Declarations page of this policy. |
| **EPL Aggregate Limit of Liability:** | $         25,000.00 | Aggregate for all "loss" combined, including "defense costs". |
| **EPL Deductible Amount:** | $          5,000.00 | For "loss" arising from claims or suits alleging the same "wrongful employment act" or "related wrongful employment acts". |
| **EPL Original Inception Date:** | 07/31/2020 | (Enter "original inception date") If no date is shown, "we" will consider the "original inception date" to be the same as the beginning of this coverage endorsement. |

This insurance does not apply to "loss" arising out of a "wrongful employment act" that: (1) commences on or takes place prior to the "original inception date" shown here, or (2) arises out of incidents or circumstance of which "you" had knowledge prior to the "original inception date" shown.

|  | |
|---|---|
| **EPL COVERAGE PREMIUM:** | $  |

391-1208 03 06

**The Hanover** Insurance Group™

| |
|---|
| **RENEWAL OF POLICY** |
| **COMMERCIAL UMBRELLA POLICY** |
| THESE DECLARATIONS TOGETHER WITH THE COMMON POLICY CONDITIONS AND COVERAGE FORM(S) COMPLETE THE BELOW NUMBERED POLICY |

POLICY NUMBER: OBC-H332709-01

DECLARATIONS

| **Named Insured and Address** (No., Street, Town, County, State) | **Agent** |
|---|---|
| COOLER SCREENS INC<br>233 N MICHIGAN AVE SUITE 1430<br>CHICAGO, IL  60601 | 130450000<br>THE PLEXUS GROUPE LLC<br>SUITE 300<br>21805 W. FIELD PARKWAY<br>DEER PARK, IL  60010 |

**Policy Period:** (Month, Day, Year)

From  07/31/2021    To  07/31/2022
12:01 AM, standard time at the address of the Named Insured as stated herein.

Form of Business:
☐ Individual    ☐ Partnership    ☒ Corporation    ☐ Limited Liability Company
☐ Organization (Other than Partnership, Joint Venture, or Limited Liability Company

**Business Description:**
**SERVICE.**

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.  THIS PREMIUM MAY BE SUBJECT TO AUDIT.

**Limit of Liability (Section III)**
| | |
|---|---|
| Each Occurrence Limit | $ 1,000,000 |
| General Aggregate Limit | $ 1,000,000 |
| Product Completed Operations Aggregate Limit | $ 1,000,000 |

**Retained Limit       Self-Insured Retention                    $ NIL**

**Premium Computation**

Annual Premium  $  ████
Advance Premium  $

**Endorsements:**

| | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| CU2130 | 01/15 | CU2156 | 06/06 | CU2136 | 01/15 | 473-1150 | 05/12 | 473-1157 | 01/10 | 473-0004 | 10/05 |
| CU0004 | 05/09 | 473-0016 | 10/05 | 473-0023 | 10/05 | 473-0040 | 10/05 | CU0200 | 12/07 | CU0001 | 12/07 |
| 473-2194 | 08/16 | CU2123 | 02/02 | 473-2211 | 10/16 | CU2125 | 12/01 | CU2255 | 09/00 | CU2127 | 12/04 |
| CU2150 | 03/05 | IL0017 | 11/98 | CU2436 | 12/05 | IL0162 | 09/08 | 473-1125 | 02/09 | CU2186 | 05/14 |

☐ PRE PAID - the total annual premium is due at inception.

☐ HANOCASH - the annual premium is payable according to the term of the Hanocash endorsement attachment

☐ ACCOUNT BILL   ☒ DIRECT BILL   ☐ Annual   ☐ Semi-Annual   ☐ Other
Audit period: Non Auditable Unless indicated by ☐ Annual   ☐ Semi-Annual   ☐ Other
If you cancel this policy, we shall receive and retain not less than  $ as a policy minimum premium.

473-1102 1108

**The Hanover**
Insurance Group™

OBCH332709     1304500

| SCHEDULE A - SCHEDULE OF UNDERLYING POLICIES | | |
|---|---|---|
| **Insured:** COOLER SCREENS INC<br>**Effective on and after: 07/31/2021 , 12:01 AM Standard Time**<br>**This schedule is part of Policy Number: OBC-H332709-01** | | |
| CARRIER, POLICY NUMBER & PERIOD | TYPE OF POLICY | APPLICABLE LIMITS OR AMOUNT OF INSURANCE |
| (a)Carrier:<br><br>CITIZENS INSURANCE COMPANY OF AMERICA<br><br>Policy Number: OBC-H332709-01<br>Policy Period: 07/31/2021 TO 07/31/2022 | Commercial General Liability<br>[X]Non-owned & Hired Autos | $ 2,000,000 Each Occurrence<br>$ 4,000,000 General Aggregate<br>$ 4,000,000 Product/Compl eted Operations Aggregate |
| (b) Carrier:<br><br><br>Policy Number:<br>Policy Period: | Comprehensive Automobile Liability | Bodily Injury and Property Damage Liability Combined<br>$ Each Accident<br>Bodily Injury<br>$ Each Person<br>$ Each Accident<br>Property Damage<br>$ Each Accident |
| (c)Carrier:<br><br>EXCLUDED<br><br>Policy Number:<br>Policy Period: | Standard Workers Compensation & Employers Liability<br>**Please Note:** The Umbrella Coverage for Workers Compensation and Employers Liability is not applicable in situations where an employee is subject to the New York Workers Compensation Law. | **Coverage B - Employers Liability**<br>Bodily Injury by Accident<br>$ Each Accident<br>Bodily Injury by Disease<br>$ Aggregate<br>$ Each Employee |
| (d)Carrier:<br><br><br>Policy Number:<br>Policy Period: | Liquor Liability | $ Limit of Liability |
| (e)Carrier:<br><br><br>Policy Number:<br>Policy Period: | Professional Liability | $ Limit of Liability |
| An "X" marked in the box provided indicates these broadening or optional coverages are provided in the Underlying Insurance | | |
| (f) Carrier:<br><br><br>Policy Number:<br>Policy Period: | Directors & Officers Liability | $ Limit of Liability |
| (g) Carrier:<br><br><br>Policy Number:<br>Policy Period: | Employee Benefits Liability | $ Limit of Liability |
| **Countersigned By:** | | |
| **Date:** | | |
| **Authorized Representative of the Company** | | |

473-1103 (11/08)



OBCH332709      1304500

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# DATA BREACH COVERAGE FORM

Various provisions in this Coverage Form restrict coverage. Read the entire Coverage Form carefully to determine rights, duties and what is and is not covered.

Throughout this coverage form the words "we", "us" and "our" refer to the Company providing this insurance. The words "you" and "your" refer to the Named Insured shown in the Declarations. Other words and phrases that appear in quotation marks have special meaning. Refer to **SECTION F - DEFINITIONS.**

| SCHEDULE | | |
|---|---|---|
| Data Breach Coverage Aggregate Limit of Insurance | $ | 10,000 |
| Data Breach Expense Coverages Aggregate Sublimit of Insurance | $ | 10,000 |
| Additional Expense Coverages Aggregate Sublimit of Insurance | $ | 10,000 |
| Data Breach Coverage Deductible | $ | 1,000 |
| Cyber Business Interruption Waiting Period Deductible | | 24 Hours |
| Premium: | $ | ■ |

## SECTION A - COVERAGES

We will provide Data Breach Services, Data Breach Expense Coverages and Additional Expense Coverages as described below if you have a "data breach" that:

**a.** Is discovered during the "policy period" of this Data Breach Coverage Form; and

**b.** Is reported to us within 30 days of your discovery of the "data breach".

### 1. Data Breach Services, Data Breach Expense Coverages, Additional Expense Coverages

#### a. Data Breach Services

**(1) Consulting Services**

If you contact our Designated Service Provider, they will provide Consulting Services to assist you with:

**(a)** Notification requirements pursuant to "breach notice laws";

**(b)** Drafting your notification letters; and

**(c)** Media interface and press release drafting.

**(2) Help Line**

Provide a toll-free telephone line for "potentially-identified persons" with questions about the "data breach".

**(3) Fraud Alert**

A "potentially-identified person" who contacts our Designated Service Provider can place a Fraud Alert on his or her credit file(s) with the main credit bureaus warning potential credit grantors to check with the "potentially-identified person" before extending credit in his or her name or on his or her behalf.

**(4) Identity Restoration Case Management**

An "identified person" who contacts our Designated Service Provider will be assisted by an identity restoration professional to help to correct his or her credit and other records and to restore control over his or her personal identity.

These Data Breach Services will be provided by our Designated Service Provider, as described in Paragraphs **15.** and **16.** of **Section E. Conditions,** for a period of one year from the date the Data Breach Services are initiated.

Data Breach Services are only available if the jurisdiction or country where the "potentially-identified person" resides maintains "breach notice law" and, in the case of Fraud Alert, an operative credit monitoring service.

#### b. Data Breach Expense Coverages

We will pay your reasonable and necessary expenses incurred for the following Covered Expenses up to the limits of insurance described in **Section C - Limits of Insurance:**

**(1) Notification to Potentially-Identified Persons** - expenses to provide

notification of the "data breach" to "potentially-identified persons":

**(a)** As required by applicable "breach notice law"; or

**(b)** If reasonably necessary to maintain your business.

Covered expenses include the printing, postage and handling of notification letters or other means of disclosing the breach to "potentially-identified persons".

**(2)** **Forensic Analysis** - expenses to assess:

**(a)** The severity of the "data breach";

**(b)** The nature and extent of the "data breach";

Forensic Analysis expenses do not include the cost of restoration.

**(3)** **Proactive Monitoring Services Expense Coverage -** Expenses for "proactive monitoring services" provided to "potentially-identified persons" in jurisdictions or countries with operative credit monitoring services as provided through our Designated Service Provider.

Under this coverage we will only pay for expenses that you incur through our Designated Service Provider.

Services provided for Covered Expenses provided in **b.(1)**, **b.(2)** and **b.(3)** above must be approved by us as described in **SECTION E - CONDITIONS,** Paragraph **15. Service Providers.**

**(4)** **Breach Restoration Expenses**

We will pay "Breach Restoration Expenses" directly resulting from a "data breach" which is first discovered during the "policy period" and which results in the damage, deletion or destruction of "data" owned by you or for which you are legally liable.

**(5)** **Cyber Business Interruption and Extra Expense**

We will pay actual loss of "business income" and additional "extra expense" incurred by you during the "period of restoration" directly resulting from a "data breach" which is first discovered during the "policy period" and which results in an actual impairment or denial of service of "business operations" during the "policy period".

**c.** **Additional Expense Coverages**

We will pay your reasonable and necessary expenses incurred for the following Additional Expense Coverages. These expenses are subject to the limits of insurance described in **Section C - Limits of Insurance.**

**(1)** **Legal Services -** expenses incurred within the first six months following the discovery and reporting of a "data breach" as provided in this Section for approved outside professional legal counsel review and recommendations as to how you should respond to it, including final legal review of the proposed breach notification letter(s). However, we will not pay for expenses for legal counsel to review any third party liability litigation or notification of potential litigation.

**(2)** **Public Relations -** expenses incurred within the first six months following the discovery and reporting of a "data breach" as provided in this Section for approved outside public relations firm or crisis management firm recommendations for restoring the confidence of your customers and investors in the security of your company and its systems.

**(3)** **Third Party "Data Breach" -** expenses for notification to "potentially-identified persons" with whom you have a direct relationship when a "data breach" is sustained by a third party to whom you have sent "private personal data" to be under that third party's care, custody and control. This includes a "data breach" that occurs while transmitting or transporting the data to that third party. Covered expenses for this Additional Covered Expense are limited to the printing, postage and handling of notification letters to "potentially-identified persons".

Service providers for Additional Expense Coverage provided in paragraphs **c.(1)**, **c.(2)** and **c.(3)** must be approved by us as described in **SECTION E - CONDITIONS,** Paragraph **15. Service Providers.**

**(4)** **Data Breach Ransom Coverage -** monies extorted from and paid by you because or a threat or connected series of threats to commit an intentional attack on your computer systems that if so committed, would result in a "data breach". This Data Breach Ransom

**The Hanover Insurance Group**

OBCH332709    1304500

Coverage is subject to the following conditions:

**(a)** You must receive approval from us prior to the payment of any monies;

**(b)** Any monies paid must only be to terminate or end the threat;

**(c)** The threat must be one which, if carried out, would have led to a "data breach" that would have been covered under this Coverage Form had the monies not been paid;

**(d)** The threat must have been made during the coverage period of this Data Breach Coverage Form;

**(e)** The applicable Federal, state and/or local law enforcement authority was notified of the threat prior to any payment you make for which you are seeking reimbursement under this Additional Expense Coverage;

**(f)** The threat must not have been committed by any of your employees or former employees, vendors or independent contractors hired by you;

**(g)** You must make every reasonable effort not to divulge the existence of this Data Breach Ransom Coverage; and

**(h)** You agree to keep confidential any amounts paid under this Data Breach Ransom Coverage except for any disclosure we approve in advance of that disclosure.

**(5) Data Breach Reward Coverage -** monies you pay for information leading to the arrest and conviction of any individual(s) who committed an illegal act(s) related to a "data breach" covered under this Coverage Form.

However, we will not pay for information that was provided by:

**(a)** You;

**(b)** Your internal or external auditors;

**(c)** Any vendor or independent contractor hired by you;

**(d)** Any individual or firm hired by you to investigate the illegal act described above; or

**(e)** Any individual(s) with supervisory or management responsibility of any of the individual(s) described above.

**(6) Data Breach Investigations**

We will pay "defense expenses" directly resulting from a "regulatory investigation" regarding a "data breach" first discovered by you during the "policy period".

**(7) Data Breach Theft**

We will pay for loss resulting directly from your transfer, payment, or delivery of funds due to the fraudulent input of "data" directly into your "system" or through a "network" into your "system". Loss must first be discovered by you during the "policy period".

## SECTION B - EXCLUSIONS

1. The following exclusions apply to Data Breach Services, Data Breach Expense Coverages and Additional Expense Coverages.

   This insurance does not apply to:

   **a. Costs to Research or Correct Deficiencies**

   Any costs to research any deficiency, except as specifically provided under **SECTION A - COVERAGES**, Paragraph **1.b.(2) Forensic Analysis**, or any costs to correct any deficiency.

   This includes, but is not limited to, any deficiency in your systems, procedures or physical security that may have contributed to a "data breach".

   **b. Criminal Investigation or Proceedings**

   Any costs arising out of criminal investigations or proceedings.

   **c. Fines, Penalties or Assessments**

   Any "fines, penalties, fees or assessments". This includes but is not limited to fees or surcharges from financial institutions.

   **d. Defense or Legal Liability**

   Any fees, costs, settlements, judgments, or liability of any kind arising in the course of, or as a result of a claim for damages, lawsuit, administrative proceedings, or governmental investigation against or involving you, except as provided under **SECTION A - COVERAGES**, Paragraph **1.c.(6) Data Breach Investigations**.

**e. Other Economic Costs**

Any other costs or expenses not expressly provided for under Data Breach Services, Data Breach Expense Coverages and Additional Expense Coverages provided in Paragraphs **1.a.** through **1.c.** Costs or expenses that we do not cover include but are not limited to expense to reissue credit or debit cards.

**f. Consequential Loss**

Any costs, or any other loss, caused by or resulting from delay, loss of use, loss of existing or prospective markets or any other consequential loss. This exclusion does not apply to **SECTION A - COVERAGES,** Paragraph **1.b.(5) Cyber Business Interruption and Extra Expense**.

**g. Contractually Assumed Liability**

Legal obligations arising by reason of assumption of liability in a contract or agreement.

**h. Victim Expenses or Losses**

Costs or losses incurred by a victim of "data breach" or fraud activity except as provided for under Data Breach Services, Data Breach Expense Coverages and Additional Expenses Coverages provided in Paragraphs **1.a.** through **1.c.**

**i. Alternative Travel Arrangements or Fees**

Payment of alternative travel arrangements or additional fees.

**j. Psychological Counseling**

Psychological counseling for victims of a "data breach" or fraud activity.

**k. Legal Advice or Services**

Legal advice or other legal services, except as provided by the Legal Services Additional Expense Coverage, Paragraph **1.c.(1).**

**l. Information Recapture**

Any costs or losses for the recapture of lost, stolen or destroyed information.

**m. Dishonesty**

Any criminal, fraudulent or dishonest act, error or omission, or any intentional or knowing violation of law by you, any of your partners, directors or trustees:

**(1)** Acting alone or in collusion with others; or

**(2)** Whether or not occurring during the hours of employment.

**n. Governmental Action**

Seizure or destruction of property by order of governmental authority. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. This exclusion applies whether or not the loss event results in widespread damage or affects a substantial area.

**o. Intentional or Willful Complicity**

Your intentional or willful complicity in a "data breach".

**p. Prior Discovery**

Any "data breach" discovered prior to the inception of this Data Breach Coverage Form.

**q Threats, Extortion or Blackmail**

Any threat, extortion or blackmail including but not limited to, ransom payments and private security assistance except as provided in the Data Breach Ransom Coverage Additional Expense Coverage under Paragraph **1.(c)(4).**

**r Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination, however caused.

**s. War and Military Action**

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**2.** The following exclusions apply to Breach Restoration Expenses, Cyber Business Interruption and Extra Expense, Data Breach Investigations, and Data Breach Theft only.

This insurance does not apply to:

**a. Investigations**

Costs, fees or expenses incurred or paid by you in establishing the existence of, or amount of loss, damage or expense.

**b. Non-monetary Relief**

Costs of compliance with any order for, grant of or agreement to provide non-monetary relief, including injunctive relief.

**c. Potential Income**

Potential income including interest and dividends not realized by you; however, this Exclusion shall not apply to loss of "business income" as provided under **SECTION A - COVERAGES**, Paragraph **1.b.(5) Cyber Business Interruption and Extra Expense.**



OBCH332709     1304500

**d. Return of Payments**

Return of fees, charges, commissions or other compensation paid to you.

**e. System Changes**

Costs or "expenses" incurred to replace, upgrade, update, improve, or maintain a "system".

**f. Uniform Commercial Code**

Loss, damage, costs or "expenses" you agree to incur or incur on behalf of another natural person or entity when you are not obligated to incur such loss, costs or "expenses" under the Uniform Commercial Code or any other law, statute, rule or code anywhere in the world, including the rules or codes of any clearing or similar entity. This Exclusion does not apply to **SECTION A - COVERAGES**, Paragraph **1.b.(5) Cyber Business Interruption and Extra Expense.**

## SECTION C - LIMITS OF INSURANCE

1. The most we will pay for all Data Breach Expense Coverages and Additional Expense Coverages combined is the Data Breach Coverage Aggregate Limit of Insurance shown in the **SCHEDULE** of this Data Breach Coverage Form. The Data Breach Coverage Aggregate Limit of Insurance is an annual aggregate limit and is the most we will pay for the total of all covered losses and expenses for all "data breach" events discovered by you during the current "policy period" regardless of the number of "data breach" events.

2. The Data Breach Expense Coverages Aggregate Sublimit of Insurance shown in the **SCHEDULE** of this Data Breach Coverage Form is the most we will pay under all Data Breach Expense Coverages combined for the total of all covered losses and expenses arising out of all "data breach" events during the "policy period" regardless of the number of "data breach" events. The Data Breach Expense Coverage Aggregate Sublimit of Insurance is part of, and not in addition to, the Data Breach Coverage Aggregate Limit of Insurance

3. The Additional Expense Coverages Aggregate Sublimit of Insurance shown in the **SCHEDULE** of this Data Breach Coverage Form is the most we will pay under all Additional Expense Coverages combined for the total of all covered losses and expenses for all "data breach" events during the "policy period" regardless of the number of "data breach" events. The Additional Expense Coverages Aggregate Sublimit of Insurance is part of, and not in addition to, the Data Breach Coverage Aggregate Limit of Insurance.

4. Regardless of the number of years this Data Breach Coverage Form remains in force or the number of premiums paid, no limits of insurance cumulate from this "policy period" to subsequent "policy periods".

5. **Discovery Policy Period Limits Apply**

A "data breach" may be first discovered by you in one "policy period", but cause covered loss or expenses in one or more subsequent "policy periods". If so, all covered loss or expenses for the "data breach" will be limited to the Data Breach Coverage Aggregate Limit of Insurance, the Data Breach Expense Coverages Aggregate Sublimit of Insurance and the Additional Expense Coverages Aggregate Sublimit of Insurance described respectively in Paragraphs **1., 2.** and **3.** above that are applicable to the "policy period" when the "data breach was first discovered by you.

6. **Time Limits**

   **a.** You must report a "data breach", to us on or within 30 days of your discovery of the "data breach".

   **b.** You have up to one year from the date of reporting a "data breach", to initiate the services afforded to you.

   **c.** A "potentially-identified person" has up to one year from the date he or she receives notification of a "data breach" to initiate the services afforded to him or her.

   **d.** Once initiated, the services afforded to a "potentially-identified person" will continue for one year.

   **e.** Data Breach Services under **Section A - Coverages,** Paragraph **1.a.** will be provided by our Designated Service Provider for a period one year from the date the Data Breach Services are initiated.

## SECTION D - DEDUCTIBLE

The Data Breach Expense Coverages and Additional Expense Coverages provided under this Coverage Form are subject to the Data Breach Coverage Deductible shown in the **SCHEDULE** of this Coverage Form. The Data Breach Coverage Deductible applies to covered loss and expense arising out of each "data breach". Our obligation to make payments under Data Breach Expense Coverages and Additional Expense Coverages applies only to that part of covered loss and expense arising out of a single "data breach" event which is in excess of the Data Breach Coverage Deductible.

The Data Breach Coverage Deductible does not apply to **SECTION A -COVERAGES,** paragraph **1.b.(6) Cyber Business Interruption and Extra Expense**. Losses payable under Cyber Business Interruption and Extra Expense are subject to the Cyber Business Interruption Waiting Period Deductible shown on the **SCHEDULE** of this Coverage Form.

**SECTION E - CONDITIONS**

**1. Duties in the Event of a Data Breach.**

You must see that the following are done in the event of a "data breach":

**a.** Notify the police if a law may have been broken.

**b.** Give us prompt notice of the "data breach". As stated in **SECTION A - COVERAGES**, paragraph **b.**, you must report the "data breach" to us within 30 days of the date you first discover it.

**c.** As soon as possible, give us, and/or our Designated Service Provider, a description of how, when and where the "data breach" occurred, including all of the following information as it becomes known to you:

(1) The method of "data breach";

(2) The approximate date and time of the "data breach";

(3) The approximate number of "potentially-identified persons" compromised as a result of the "data breach";

(4) A detailed description of the type and nature of the information that was compromised;

(5) Whether or not the information was encrypted, and, if so, the level of encryption;

(6) Whether or not law enforcement has been notified;

(7) If available, the states in which the "potentially-identified persons" are domiciled;

(8) If available, who received the "private personal data" as a result of the "data breach"; and any other access, information or documentation we reasonably require to investigate or adjust your claim.

**d.** Take all reasonable steps to protect "private personal data" remaining in your care, custody or control.

**e.** Preserve all evidence of the "data breach".

**f.** Permit us to inspect the property and records proving the "data breach".

**g.** If requested, permit us to question you under oath at such times as may be reasonably required about any matter relating to this insurance or your claim, including your books and records. In such event, your answers must be signed.

**h.** Send us a signed, sworn statement containing the information we request to investigate the claim. You must do this within 30 days after our request. We will supply you with the necessary forms.

**i.** Cooperate with us in the investigation or settlement of the claim.

**2. Concealment, Misrepresentation or Fraud**

This coverage is void in any case of fraud by you as it relates to this Data Breach Coverage Form. It is also void if you intentionally conceal or misrepresent a material fact concerning this Coverage Form or a claim under this Coverage Form.

**3. Control of Property**

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Form at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

**4. Two or More Coverage Parts, Forms, Endorsements or Policies Issued By Us**

It is our stated intent that the various coverage parts, forms, endorsements or policies issued to you by us or any company affiliated with us do not provide any duplication or overlap of coverage for the same loss, damage, expense or "data breach". If this coverage form and any other coverage part, form, endorsement or policy issued to you by us or any company affiliated with us apply to the same loss, damage, expense, or "data breach"; the maximum Limit of Insurance under all such coverage parts, forms, endorsements or policies combined shall not exceed the highest applicable Limit of Insurance under any one coverage part, form, endorsement or policy.

If two or more of the coverages provided under this coverage form apply to the same loss, damage, expense or "data breach"; we will not pay more than the actual amount of the loss, damage or expense.

**5. Legal Action Against Us**

No one may bring a legal action against us under this insurance unless:

**a.** There has been full compliance with all of the terms of this insurance; and

**b.** The action is brought within two years after the date of the "data breach" is first discovered by you.

**6. Liberalization**

If we adopt any revision that would broaden the coverage under this Data Breach Coverage Form without additional premium within 45 days prior to or during the "policy period", the

The
**Hanover**
Insurance Group™

OBCH332709     1304500

broadened coverage will immediately apply to this coverage form.

**7. No Benefit to Bailee**

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

**8. Other Insurance**

**a.** If you may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Data Breach Coverage Form, we will pay only our share of the covered loss, damage or expense. Our share is the proportion that the applicable Limit of Insurance under this Coverage Form bears to the Limits of Insurance of all insurance covering on the same basis.

**b.** If there is other insurance covering the same "data breach", other than that described in **a.** above, we will pay only for the amount for Data Breach Services, Data Breach Expense Coverages, and Additional Expense Coverages in excess of the amount due from that other insurance. We will not pay more than the applicable Limit of Insurance shown in the **SCHEDULE**.

**9. Policy Period, Coverage Territory**

Under this Endorsement:

**a Policy Period**

This policy applies only to "data breaches" that are first discovered by you during the "policy period".

**b. Coverage Territory**

Coverage applies anywhere in the world, provided that no trade or economic sanction, embargo, insurance or other laws or regulations prohibit the "insurer" from covering the loss. The "data breach" must involve "private personal data" that was within your care, custody or control.

Data Breach Services are only available in jurisdictions or countries that maintain "breach notice law" and, in the case of Fraud Alert, an operative credit monitoring service.

**10. Transfer Of Rights Of Recovery Against Others To Us**

If any person or organization to or for whom we make payment under this Coverage Form has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

**a.** Prior to a loss.

**b.** After a loss only if, at time of loss, that party is one of the following:

**(1)** Someone insured by this insurance;

**(2)** A business firm:

**(a)** Owned or controlled by you; or

**(b)** That owns or controls you; or

**c.** Your tenant.

This will not restrict your insurance.

**11. Cancellation**

With regard to the cancellation of this policy, the provisions outlined in the Common Policy Conditions, Businessowners Coverage Part, Technology Professional Advantage, the Technology Professional Advantage Plus, whichever are included in the policy, shall apply and will automatically include the non-renewal or cancellation of this coverage form. You agree that no further notice regarding termination of this Coverage Form will be required.

**12. Due Diligence**

You agree to use due diligence to prevent and mitigate loss covered under this Coverage Form. This includes, but is not limited to, complying with reasonable and industry-accepted protocols for providing and maintaining the following:

**a.** Physical security for your premises, computer systems and hard copy files;

**b.** "Computer" and Internet security;

**c.** Periodic backups of computer data;

**d.** Protection, including but not limited to, encryption of data, for transactions such as processing credit card, debit card and check payments; and

**e.** Disposal of files containing "personal private data", including but not limited to shredding hard copy files and destroying physical media used to store "data".

**13. No Legal Advice Provided**

We are not your legal advisor and do not provide legal counsel to you. None of the services we provide under this Coverage Form constitute legal advice to you by us. Our determination of what is or is not covered under this Coverage Form does not represent legal advice or counsel from us about what you should or should not do.

**14. Pre-Notification Consultation**

You agree to consult with us prior to the issuance of notification to "potentially-identified persons". We assume no responsibility under this Coverage Form for any services promised to "potentially-identified persons" without our prior agreement. You must provide the following at our pre-notification consultation with you:

**a.** The exact list of "potentially-identified persons" to be notified, including contact information.

**b.** Information about the "data breach" that may appropriately be communicated with "potentially-identified persons".

### 15. Service Providers

**a.** We will only provide Data Breach Services through our Designated Service Provider(s). Any such services that are provided by any other individual or entity will not be covered by this Coverage Form.

**b.** We will only pay Data Breach Expense Coverages and Additional Expense Coverages (except for Data Breach Ransom Coverage and Data Breach Reward Coverage) that are provided by service providers approved by us prior to the start of any of these services. If we suggest a service provider(s) but you prefer to use an alternative service provider(s), our coverage is subject to the following limitations:

**(1)** Such alternate service provider(s) must be approved by us; and

**(2)** Our payment for services provided by any alternative service provider(s) will not exceed the amount that we would have paid using the service provider we had suggested.

**c.** You will have a direct relationship with any service provider, including our Designated Service Provider, paid for in whole or in part under this Coverage Form. All service providers work for you.

### 16. Data Breach Services

The following conditions apply with respect to any data breach services provided to you or to any "potentially-identified person" or "identified person" by our designees or any service firm paid for under this Data Breach Coverage Form:

**a.** The effectiveness of data breach services depends on your cooperation and assistance.

**b.** All data breach services may not be available or applicable to all "potentially identified persons" or "identified persons". For example, "potentially identified persons" who are minors or foreign nationals may not have credit records that can be provided or monitored.

**c.** We do not warrant or guarantee that the data breach services paid for in whole or in part by this Coverage Form will end or eliminate all problems associated with a covered "data breach".

**d.** We are not liable for any act or omission by any Designated Service Provider who is not our employee nor the employee of a third party provider of the data breach services described in this Coverage Form. We cannot be held responsible for failure to provide or for the delay in providing services when such failure or delay is caused by conditions beyond our control

**e.** Data Breach Services are only available in jurisdictions or countries that maintain "breach notice law" and, in the case of Fraud Alert, an operative credit monitoring service.

### 17. Cooperation

You agree to cooperate with and provide full disclosure of the circumstances surrounding a "data breach" to applicable federal or state regulators, law enforcement personnel, to us, and to our Designated Service Provider(s).

If you fail to cooperate, we will not be obliged under this contract for any services and expenses that cannot be provided due to your failure to cooperate.

### 18. Appraisal

If we and you disagree on the amount of net income, operating expense or loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of the net income, operating expense and loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

### SECTION F - DEFINITIONS

### 1. Account Takeover

"Account takeover" means the takeover by a third party of one or more existing deposit accounts, credit card accounts, debit card accounts, ATM cards, or lines of credit in the name of an "identified person".

### 2. Breach Notice Law

"Breach Notice Law" means any federal, state, local or foreign privacy legislation, regulation and their functional equivalent that requires an entity to provide notice to affected natural persons or data protection authorities regarding any actual or potential unauthorized access to "private personal data".



OBCH332709        1304500

3. **Breach Restoration Expenses**

"Breach Restoration Expenses" means the reasonable cost of the blank "media" and the reasonable cost of labor for the actual transcription or copying of "data" or "media" in order to reproduce such "data" or replace such "media" from "data" and/or media of comparable kind or quality.

4. **Business Income**

"Business Income" means your:

**a.** Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred if there had been no impairment or denial of "business operations" due to a covered "data breach" and

**b.** Continuing normal operating expenses incurred, including payroll.

"Business income" does not include interest or investment income.

5. **Business Operations**

"Business Operations" means your usual and regular business activities.

6. **Computer**

"Computer" means a device or group of hardware devices on which software, applications, script, code and "computer" programs containing "data" can be operated and viewed.

7. **Cyber Attack**

"Cyber Attack" means the transmission of fraudulent or unauthorized "data" that is intended to and successfully modifies, alters, damages, destroys, deletes, records, transmits, or consumes information within a "system" without authorization, including "data" that is self-replicating or self-propagating, and which causes the disruption of the normal operation of a "system".

8. **Data**

"Data" means a representation of information, knowledge, facts, concepts or instructions which are being processed or have been processed in a "computer".

9. **Data Breach**

"Data breach" means:

**a.** The loss, theft, accidental release or accidental publication of "private personal data" entrusted to you as respects one or more "potentially-identified persons" if such loss, theft, accidental release or accidental publication has or could reasonably result in the fraudulent use of such information;

**b.** Failure to protect "private personal data" including a "Cyber Attack" on your "system" or the actions of a "rogue employee" which

directly results in the unauthorized disclosure of "private personal data";

**c.** The theft or negligent loss of hardware, "media", "system output", "data" or other documents owned or controlled by you, or on your behalf, on which "private personal data" is stored or recorded;

**d.** The failure or violation of the security of your "system" including the impairment or denial of access to your "system", including a "Cyber Attack" or unauthorized acts or omissions by a "rogue employee" which damages or harms your "system" or the "system" of a third party for whom you provide "services" for a fee;

**e.** The theft or loss of hardware or "media" controlled by you, or on your behalf, on which "data" is stored;

**f.** Disposal or abandonment of "private personal data" without appropriate safeguards such as shredding or destruction, subject to the following provisions:

  **(1)** Your failure to use appropriate safeguards must be accidental and not intentional, reckless or deliberate and not in violation of your Due Diligence obligations under Paragraph **2. Additional Conditions**, Paragraph **a.**;

  **(2)** Such disposal or abandonment must take place during the time period for which this Data Breach Coverage Form is effective; or

**g.** The failure to disclose an event described in **a.** thru **f.** above which violates any "breach notice law".

All incidents of "data breach" that are discovered at the same time or arise from the same cause or from a series of similar causes would be considered one "data breach". All theft of "private personal data" caused by any person or in which that person is involved, whether the result of a single act or series of related acts, is considered a single incident of "data breach".

10. **Defense Expenses**

"Defense Expenses" means the reasonable and necessary legal fees and expenses including attorney fees and expert fees incurred by us or by you (other than regular or overtime wages, salaries, fees or benefits of you or your employees) in the investigation, defense, settlement and appeal of a claim, including but not limited to cost of consultants and witnesses, premiums for appeal, injunction, attachment or supersedes bonds regarding such claim.

## 11. Electronic Data

"Electronic data" means information, facts or computer programs stored as or on, created or used on, or transmitted to or from software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

## 12. Expense

"Expense" means "Business Income", "Extra Expense", "Breach Restoration Expenses", and loss payable under the Data Breach Theft coverage incurred by you.

## 13. Extra Expense

"Extra Expense" means the reasonable and necessary expenses you incur during the "period of restoration" in an attempt to continue "business operations" that have been interrupted due to a "data breach" and that are over and above the expenses such you would have incurred if no loss had occurred. "Extra expense" does not include any costs of updating, upgrading or remediation of your "system" that are not otherwise covered under this Coverage Part.

## 14. Fines, Penalties or Assessments

"Fines, penalties or assessments" means any fines, assessments, surcharges, attorneys' fees, court costs or other penalties which you shall be required to pay as a result of a "data breach" or pursuant to any contract, law, regulation or order.

## 15. Identified Person

"Identified person" means a "potentially-identified person" who is or appears to be a victim of "identity theft" or "account takeover" that may reasonably have arisen from a covered "data breach".

## 16. Identity Theft

"Identity theft" means the fraudulent use of "private personal data". This includes the fraudulent use of such information to establish credit accounts, secure loans, enter into contracts or commit crimes.

"Identity theft" does not include the fraudulent use of a business name, d/b/a or any other method of identifying a business activity.

"Identity theft" does not include the use of a valid credit card, credit account or bank account. However, "identity theft" does include the fraudulent alteration of account profile information, such as the address to which statements are sent.

## 17. Media

"Media" means electronic applications, software, scripts and programs on which "data" is stored so that it can be collected, read, retrieved or processed by a "computer". "Media" does not mean paper, or other tangible property, money, debt, equity, instruments, accounts, bonds, bills, records, abstracts, deeds or manuscripts

## 18. Network

"Network" means any services provided by or through the facilities of any electronic or "computer" communication system, allowing the input, output, examination, visualization or transfer of "data" or programs from one "computer" to your "computer". "Network" incudes any shared networks, Internet access facilities, or other similar facilities for such systems, in which you participate.

## 19. Period of Restoration

"Period of Restoration" means:

**a.** The period of time that begins:

**(1)** For "Extra Expenses", immediately after the actual or potential impairment or denial of "business operations" occurs; and

**(2)** For the loss of "Business Income", after 24 hours or the number of hours shown as the Cyber Business Interruption Waiting Period Deductible in the **SCHEDULE** on this Coverage Forms, whichever is greater, immediately following the time the actual impairment or denial of "business operations" first occurs.

**b.** The "Period of Restoration" ends on the earlier of the following:

**(1)** The date "business operations" are restored, with due diligence and dispatch, to the condition that would have existed had there been no impairment or denial; or

**(2)** Sixty (60) days after the date the actual impairment or denial of "business operations" first occurs;

The expiration date of this Policy or Coverage Part will not cut short the "period of restoration".

## 20. Policy Period

"Policy Period" means the period of time from the inception date shown the Declarations to the earlier of the expiration date shown in the Declarations or the effective date of termination of the Policy or Data Breach Coverage Form.



OBCH332709     1304500

**21. Potentially-Identified Person**

"Potentially-identified person" means any person who is your current, former or prospective customer, employee, client, member, or patient and whose "private personal data" is lost, stolen, accidentally released or accidentally published by a "data breach" covered under this Coverage Form.

"Potentially-identified person" does not include any business or organization. Only an individual person may be a "potentially-identified person".

A "potentially-identified person" may reside anywhere in the world.

**22. Private Personal Data**

"Private Personal Data" means a natural person's first name or first initial and last name in combination with:

**a.** Non-public personally identifiable information, as defined in applicable federal, state, local or foreign legislation or regulations including, social security number, driver's license number or other personal identification number (including an employee identification number or student identification number);

**b.** Financial account number (including a bank account number, retirement account number or healthcare spending account number);

**c.** Credit, debit or payment card numbers;

**d.** Information related to employment by you;

**e.** Individually identifiable information considered nonpublic personal information pursuant to Title V of the Gramm-Leach Bliley Act of 1999, as amended; or

**f.** Individually identifiable information considered protected health information pursuant to the Health Insurance Portability and Accountability Act of 1996 (HIPAA), as amended;

which is intended to be accessible only by natural persons or entities you have specifically authorized to have such access.

"Private personal data" does not mean or include information that is otherwise available to the public, such as names and addresses with no correlated Social Security numbers or account numbers.

**23. Proactive Monitoring Services**

"Proactive monitoring services" means the following services if you offer to provide them to "potentially-identified persons" who contact our Designated Service Provider:

**a.** A credit report;

**b.** credit monitoring; and or

**c.** fraud/public records monitoring service or services.

**24. Regulatory Investigation**

"Regulatory Investigation" means a formal request for information, civil investigative demand or civil proceeding, including requests for information related thereto, brought by or on behalf of a state Attorney General, the Federal Trade Commission, the Federal Communications Commission or any other federal, state, local or foreign governmental agency.

**25. Rogue Employee**

"Rogue Employee" means a permanent employee of yours, other than an "executive", who has gained unauthorized access or has exceeded authorized access to a "system" or "private personal data" owned or controlled by you or an entity that is authorized by you to hold, process or store "private personal data" for your exclusive benefit.

**26. Services**

"Services" means "computer" time, data processing, storage functions or other uses of your "system".

**27. System**

"System" means a "computer", "media" and all input, output, processing storage and communication devices controlled, supervised or accessed by operating software that is proprietary to, or licensed to, the owner of the "computer".

**28. System Output**

"System Output" means a tangible substance on which "private personal data" is printed from a "System".

The **Hanover**
Insurance Group™

OBCH332709     1304500

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# NOTICE OF CANCELLATION TO DESIGNATED ENTITY(S)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
HANOVER COMMERCIAL FOLLOW FORM EXCESS AND UMBRELLA POLICY
COMMERCIAL PROPERTY COVERAGE PART
BUSINESS AUTO COVERAGE FORM
BUSINESSOWNERS COVERAGE FORM

**SCHEDULE**

| Name of Designated Entity Mailing Address or Email Address | Number Days Notice |
|---|---|
| SILICON VALLEY BANK<br>3003 TASMAN DRIVE<br>HF 150<br>SANTA CLARA, CA<br>95054 | 30 |
| | |
| | |

(Information required to complete this Schedule, if not shown above, will be shown in the Declarations.)

If we cancel this policy for any reason other than nonpayment of premium, we will give written notice of such cancellation to the Designated Entity(s) shown in the Schedule. Such notice may be delivered or sent by any means of our choosing. The notice to the Designated Entity(s) will state the effective date of cancellation.

Unless otherwise noted in the Schedule above, such notice will be provided to the Designated Entity(s) no more than the number of days in advance of the effective date of cancellation that we are required to provide to the Named Insured for such cancellation.

Such notice of cancellation is solely for the purpose of informing the Designated Entity(s) of the effective date of cancellation and does not grant, alter, or extend any rights or obligations under this policy.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED - DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

## SCHEDULE

| Name of Person or Organization: |
| --- |
| S I L I C O N   V A L L E Y   B A N K |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

For the purpose of coverage provided by this endorsement, the following changes are made to **SECTION II - LIABILITY:**

**A.** The following is added to **SECTION II - LIABILITY, C. Who is an Insured:**

Any person or organization shown in the Schedule above is also an additional insured, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf in the performance of your ongoing operations or in connection with your premises owned by or rented to you.

However:

**a.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**b.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** The following is added to **SECTION II - LIABILITY, D. Liability and Medical Expenses Limits of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**a.** Required by the contract or agreement; or

**b.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

ALL OTHER TERMS, CONDITIONS, AND EXCLUSIONS REMAIN UNCHANGED.



OBCH332709      1304500

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**SCHEDULE\***

| Name Of Person Or Organization: |
| --- |
| AS PER WRITTEN CONTRACT |

| \* Information required to complete this Schedule, if not shown on this endorsement, will be shown in the Declarations. |
| --- |

Paragraph **K. Transfer Of Rights Of Recovery Against Others To Us** in **Section III - Common Policy** Conditions is amended by the addition of the following:

We waive any right of recovery we may have against the person or organization shown in the Schedule above because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a contract with that person or organization and included in the "products-completed operations hazard". This waiver applies only to the person or organization shown in the Schedule above.

**The Hanover**
Insurance Group

OBCH332709      1304500

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# AVENUES BUSINESSOWNERS TECHNOLOGY DELUXE GOLD BROADENING ENDORSEMENT

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The following is added to **SECTION I - PROPERTY**:

The limits applicable to the coverages included in this endorsement may either be in addition to or included within the applicable Limit of Insurance. For application of the limits, refer to each coverage within this endorsement. Words or phrases in quotation marks have special meanings. The meaning of words or phrases in quotation marks is explained within the applicable coverage section. The coverages in this endorsement amend the coverage provided under the Businessowners Coverage Form through new coverages and replace coverage grants. These coverages are subject to the provisions applicable to this policy, except where amended within this endorsement.

If any of the property covered by this endorsement is also covered under any other provisions of the policy of which this endorsement is made a part of, or if more than one coverage under this endorsement applies, in the event of loss or damage, you may choose only one of these coverages to apply to that loss. The most we will pay in this case is the limit of insurance applying to the coverage you select. Coverages included in this endorsement apply either separately to each described premises or on an occurrence basis. Refer to each coverage within this endorsement for application of coverage.

We provide no coverage for Business Income; Extended Business Income; Extra Expense; or Business Income and Extra Expense from Dependent Properties for any of the Coverages included as part of this endorsement unless specifically stated, and then only to the extent provided for within that Scheduled or Blanket Coverage provision.

## I.  COVERAGES

### A.  Scheduled Coverages

| | Scheduled Coverages | Limit | Page |
|---|---|---|---|
| 1. | Advertising Expense to Regain Customers | $2,500 | 3 |
| 2. | Brands and Labels | Included | 3 |
| 3. | Business Income Billable Hours Option | $10,000 | 3 |
| 4. | Contingent Transit Business Income and Extra Expense | $100,000 | 4 |
| 5. | Business Income and Extra Expense - Dependent Properties (Including World-Wide Coverage) | $100,000 | 4 |
| 6. | Business Income from Websites | $50,000 | 5 |
| 7. | Catastrophe Allowance | $25,000 | 5 |
| 8. | Commercial Tools and Small Equipment | $25,000 | 5 |
| 9. | Computer Equipment - In Transit or Off Premises | $75,000 | 5 |
| 10. | Computer and Funds Transfer Fraud | $10,000 | 6 |
| 11. | Consequential Loss to Stock | Included | 6 |
| 12. | Contract Penalties | $25,000 | 6 |
| 13. | Deferred Payments | $25,000 | 6 |
| 14. | Denial of Access to Premises | 30 Days; 72 Hour Waiting Period | 6 |
| 15. | Electronic Vandalism | $25,000 | 6 |
| 16. | Employee Theft Including ERISA Compliance | $50,000 | 7 |
| 17. | Employee Tools and Work Clothing | $2,500 Per Item $25,000 Per Occurrence | 7 |

| 18. | Expediting Expenses | $25,000 | 7 |
|---|---|---|---|
| 19. | Extended Business Income | 180 days | 7 |
| 20. | Fine Arts | $50,000 | 8 |
| 21. | Fire Department Service Charge | Included | 8 |
| 22. | Fire Protection Equipment Recharge | Included | 8 |
| 23. | Forgery or Alteration | $50,000 | 8 |
| 24. | Hired Auto - Physical Damage | $50,000 | 8 |
| 25. | Installation Floater | $50,000 | 9 |
| 26. | Interruption of Computer Operations | $50,000 | 9 |
| 27. | Inventory and Loss Appraisal | $20,000 | 10 |
| 28. | Key Replacement and Lock Repair | $25,000 | 10 |
| 29. | Leasehold Interest (Tenants Only) | $25,000 | 10 |
| 30. | Lessor's Lease Cancellation | $10,000 | 10 |
| 31. | Lessor's Tenant Move Expenses | $10,000 / 60 days | 10 |
| 32. | Marring and Scratching | Included | 11 |
| 33. | Money Orders and Counterfeit Money | $25,000 | 11 |
| 34. | Newly Acquired or Constructed Property<br>Business Personal Property<br>Business Income and Extra Expense | $1,000,000<br>$500,000 | 11 |
| 35. | Ordinance or Law - Demolition and Increased Cost of Construction | $50,000 | 11 |
| 36. | Ordinance or Law - Increased Period of Restoration | $100,000 | 11 |
| 37. | Ordinance or Law (Tenant's Improvement Extension) | $50,000 | 12 |
| 38. | Outdoor Property<br>Per Tree, Shrub or Plant | $25,000<br>$2,500 | 12 |
| 39. | Personal Effects | $50,000 | 12 |
| 40. | Portable Electronic Devices Coverage Worldwide | $25,000 | 12 |
| 41. | Precious Metal Theft Payment Changes | $50,000 | 13 |
| 42. | Personal Property in Transit | $50,000 | 13 |
| 43. | Sales Representative Samples | $25,000 | 13 |
| 44. | Soft Costs | $10,000 | 13 |
| 45. | Spoilage | $25,000 | 14 |
| 46. | Temporary Relocation of Property | $50,000 | 15 |
| 47. | Tenant Signs | $25,000 | 15 |
| 48. | Unauthorized Business Credit Card Use | $10,000 | 15 |
| 49. | Underground Water Seepage | $100,000 | 16 |
| 50. | Unnamed Locations - Personal Property and Computer Equipment<br>Unnamed Locations - Business Income and Extra Expense | $10,000 per Occurrence<br>$25,000 Policy Aggregate<br>$10,000 per Occurrence<br>$50,000 Policy Aggregate | 16 |
| 51. | Utility Services<br>Direct Damage (Including Overhead Transmission Lines)<br>Business Income (Including Overhead Transmission Lines) | $50,000<br>$50,000 | 18 |
| 52. | Worldwide Property Off Premises | $50,000 | 18 |

The **Hanover**
Insurance Group.

OBCH332709      1304500

| B. | Blanket Coverages | Blanket Limit $250,000 | Page |
|---|---|---|---|
| 1 | Accounts Receivable | Included | 19 |
| 2. | Backup or Overflow of a Sewer, Drain or Sump | Included | 19 |
| 3. | Computer Equipment | Included | 19 |
| 4. | Debris Removal | Included | 19 |
| 5. | Valuable Papers and Records (Other Than Electronic Data) | Included | 20 |

The Blanket Limit of Insurance shown above applies to all Coverages shown in **Section B** of this endorsement. At the time of loss, you may elect to apportion this Blanket Limit of Insurance to one or any combination of the Coverages shown, but under no circumstances will the aggregate apportionment be permitted to exceed the Blanket Limit of Insurance shown above. The Blanket Limit of Insurance applies per occurrence.

## II. DEDUCTIBLES

Deductibles are subject to the provisions applicable to the Businessowners Coverage Form except as provided below. We will not pay for covered loss or damage in any one occurrence unless the amount of loss or damage exceeds the applicable Deductible amount. We will then pay the amount of loss or damage in excess of the Deductible up to the applicable Limit of Insurance.

## III. COVERED PROPERTY

### A. Scheduled Coverages

#### 1. Advertising Expense to Regain Customers

The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages**:

**Advertising Expense to Regain Customers**

(1) If we make payment for a Covered Cause of Loss under this policy and there is a "suspension" of operations caused by direct physical loss or damage to property, we will pay for necessary advertising expenses you incur solely to regain customer faith and approval.

(2) We will only pay the necessary advertising expenses that you incur within 60 consecutive days after the "period of restoration" ends.

(3) The most we will pay under this Additional Coverage for all necessary advertising expenses in any one policy year is $2,500.

#### 2. Brands and Labels

The following is added to **SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions**:

**Brands and Labels**

(1) If Covered Property that has a brand or label is damaged by a Covered Cause of Loss and we elect to take all or any part of the damaged property at an agreed or appraised value, you may extend the insurance that applies to your Business Personal Property to:

(a) Pay expenses you incur to:

(i) Remove the brand or label and then relabel the damaged property to comply with any applicable law; or

(ii) Label or stamp the damaged property Salvage, if doing so will not physically damage the property.

(b) Cover any reduction in the salvage value of the damaged property as a result of the removal of the brand or label.

(2) Payment under this Extension is included within the Limit of Insurance applicable to your Business Personal Property.

#### 3. Business Income Billable Hours Option

The following is added to **SECTION I - PROPERTY, A. Coverage, E. Property Loss Conditions, 5. Loss Payment**:

**Business Income Billable Hours Option**

(1) At your option you may choose to settle a covered Business Income and Extra Expense loss, as described under the Business Income, Extra Expense and Utility Services Additional Coverages, as described below in paragraph **(3)**.

(2) This loss settlement option is only available to you prior to your submission to us of calculations described under **SECTION I - PROPERTY, A. Coverage, 5.**

**Additional Coverages, f. Business Income.**

**(3)** For the purpose of this Additional Coverage, we will pay up to $500 per day, for billable hours lost, per technology professional, up to a maximum of $1,000 per day, regardless of the number of technology professionals involved, for each normal working day you are unable to conduct operations due to covered loss or damage for up to a maximum of 10 days. We will also pay for your continuing normal operating expenses incurred, including "payroll expenses"; and "Rental Value".

**(4)** If damages are such that limited operations can continue, the per technology professional allowance will be proportionately reduced.

**(5)** For any occurrence, the two available methods for adjusting and calculating Business Income and Extra Expense loss may not be combined. When the alternative per diem approach described above is selected, the maximum coverage under this loss settlement option is $10,000 on an actual loss sustained basis. You are not entitled to make claim for periods beyond 10 days.

**(6)** This optional loss settlement does not waive the Waiting Period shown in the Declarations for Business Income Additional Coverage. This Waiting Period does not apply to Extra Expense.

**4. Contingent Transit Business Income and Extra Expense**

The following is added **SECTION I - PROPERTY, A Coverage, 6. Coverage Extensions;**

**Contingent Transit Business Income and Extra Expense**

You may extend your Business Income or Extra Expense Coverage to apply to the actual loss of Business Income (not including **Extended Business Income**) or Extra Expense you sustain due to direct physical loss of or damage to Business Personal Property of Others, not in your care, custody or control, while "in transit", caused by or resulting from a Covered Cause of Loss.

The most we will pay for loss under this Extension is $100,000.

**5. Business Income and Extra Expense - Dependent Properties (Including World-Wide Coverage)**

**a.** The heading for **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, m. Business Income from Dependent Properties** is replaced by the following:

**m. Business Income and Extra Expense from Dependent Properties**

The following is added to **Business Income and Extra Expense from Dependent Properties**:

We will pay the necessary Extra Expense you incur due to direct physical loss of or damage to "dependent property" caused by or resulting from a Covered Cause of Loss.

The definition of Extra Expense for this Additional Coverage is replaced by the following:

Extra Expense means necessary expenses you incur during the "dependent property period of restoration" that you would not have incurred if there had been no direct physical loss or damage to the premises of any "dependent property" caused by or resulting from a Covered Cause of Loss:

**(1)** To avoid or minimize the "suspension" of business and to continue "operations"; or

**(2)** To minimize the "suspension" of business if you cannot continue "operations".

We will reduce the amount of your Extra Expense loss to the extent you can return "operations" to normal and discontinue such extra expense.

**(3)** Paragraph **(2)** of this Additional Coverage is replaced by the following:

**(2)** The most we will pay under this Additional Coverage is $100,000 per occurrence, regardless of the number of "dependent properties" affected.



OBCH332709    1304500

**b.** The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, m. Business Income from Dependent Properties:**

The "dependent property" may be located anywhere in the world.

**6. Business Income from Websites**

**a.** The following is added to **SECTION I - PROPERTY A. Coverage, 5. Additional Coverages:**

**Business Income from Websites**

**(1)** You may extend this insurance to apply to a "suspension" of "operations" caused by direct physical loss or damage to property that you depend on for "web site and communications services" from a Covered Cause of Loss.

**(2)** We will not pay for any loss of Business Income you incur during the first 12 hours that immediately follows the time when you first discovered the Covered Cause of Loss. This Waiting Period does not apply to Extra Expense.

**(3)** The most we will pay for the actual loss of Business Income and necessary and reasonable Extra Expense in any one occurrence under this Additional Coverage is $50,000 and only for the 7-day period immediately following the Covered Cause of Loss.

**(4)** Coverage does not apply to Websites unless there is a duplicate or back-up copy of your Web Page stored at a location that is at least 1,000 feet away from the premises of the vendor that provides "web site and communications services".

**(5)** "Web Site and Communication Services" means:

**(a)** Internet access, e-mail, web hosting, value added network services and application software services at the premises of others; or

**(b)** Network and router infrastructure services, including cable and wireless, located more than 1,000 feet from the described premises.

**b.** This Additional Coverage is not subject to **SECTION I - PROPERTY, C. Limits of Insurance.**

**7. Catastrophe Allowance**

The following is added to **SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions**:

**Catastrophe Allowance**

**(1)** This Coverage Extension applies when the direct physical loss or damage to Covered Property from a Covered Cause of Loss is the result of an insured event for which Property Claims Service (PCS) has publicly designated a catastrophe number to the event.

**(2)** You may extend the insurance provided under this Coverage Extension if the Limit of Insurance applicable to Building and Business Personal Property, as shown in the Declarations, are insufficient to compensate you for covered loss or damage you incur as a result of the insured catastrophe event.

**(3)** This Coverage Extension may not be applied to the deductible amount of this policy or any other policy. It also may not be used to cover any loss or damage that would not be covered under this policy.

**(4)** The most we will pay under this Extension in any one occurrence is $25,000.

The most we will pay under this Extension during each separate 12 month period of this policy is $25,000.

**8. Commercial Tools and Small Equipment**

**SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, v. Commercial Tools and Small Equipment**, paragraph **(4)** is replaced by the following:

**(4)** The most we will pay for any loss under this Additional Coverage in any one occurrence is $25,000 but not more than $2,500 for any one tool, tool box or piece of small equipment.

**9. Computer Equipment**

The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, r. Computer Equipment**, paragraph **(4):**

The most we will pay for direct physical loss or damage to Covered Property listed in paragraph **(1)** above in any one occurrence while "in transit" or at a premises other than the described premises is $75,000.

**10. Computer and Funds Transfer Fraud**

**SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, hh. Computer and Funds Transfer Fraud,** paragraph **(3)** is replaced by the following:

**(3)** The most we will pay per occurrence under this Additional Coverage is $10,000 unless a higher Limit of Insurance is shown in the Schedule of Amended Limits of Insurance.

**11. Consequential Loss to Stock**

The following is added to **SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions**:

**Consequential Loss to Stock**

**(1)** You may extend the insurance that applies to your Business Personal Property to apply to the reduction in value of the remaining parts of "stock" in process of manufacture that are physically undamaged but are unmarketable as a complete product because of direct physical loss or damage from a Covered Cause of Loss to other parts of covered "stock" in process of manufacture at an insured location.

**(2)** Should it be determined that such "stock" retains only a salvage value, we retain the option of paying the full value of the "stock" as agreed within this policy, and taking the damaged property for salvage purposes.

**(3)** Payment under this Coverage Extension is included within the applicable Limit of Insurance.

**12. Contract Penalties**

The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages**:

**Contract Penalties**

**(1)** We will pay for contract penalties you are required to pay due to your failure to provide your product or service according to contract terms because of direct physical loss or damage by a Covered Cause of Loss to Covered Property.

**(2)** The most we will pay for all penalties in any one occurrence is $25,000.

**(3)** The amount payable under this Additional Coverage is additional insurance.

**13. Deferred Payments**

**SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages,** paragraph **(4)** is replaced by the following:

**(4)** The most we will pay under this Additional Coverage for loss or damage in any one occurrence at a described premises is $25,000.

**14. Denial of Access to Premises**

The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages**:

**Denial of Access to Premises**

**(1)** We will pay for the actual loss of Business Income you sustain and necessary Extra Expense you incur when ingress to or egress from the described premises is prevented, due to direct physical loss of or damage to property that is away from but within 2000 feet of the described premises, caused by or resulting from any Covered Cause of Loss covered under this policy.

**(2)** The coverage for Business Income will begin 72 hours after the loss or damage to the premises that causes the denial of access and will apply for a period of up to 30 consecutive days after coverage begins.

**(3)** The coverage for Extra Expense will begin immediately after the loss or damage to the premises that causes the denial of access and will end:

**(a)** 30 consecutive days after coverage begins; or

**(b)** When your Business Income coverage ends;

whichever is earlier.

**(4)** The definitions of Business Income and Extra Expense contained in the Business Income Additional Coverage and the Extra Expense Additional Coverage also apply to this Denial of Access to Premises Additional Coverage.

**15. Electronic Vandalism**
**SECTION I - Property, A. Coverage, 5. Additional Coverages, dd. Electronic**



OBCH332709        1304500

**Vandalism,** paragraph **(3)** is replaced by the following:

**(3)** The most we will pay for loss of or damage to computer "hardware" or "software" in any one occurrence under this Additional Coverage is $5,000. The most we pay for all covered losses to computer "hardware" or "software" under this Additional Coverage during each separate 12-month period of this policy is $25,000.

The most we will pay under this Additional Coverage for all loss or damage sustained in any one policy year, regardless of the number of occurrences of loss or damage or the number of premises, locations or computer systems involved, is $25,000, unless a higher Limit of Insurance is shown in the Declarations. If loss payment on the first occurrence does not exhaust this amount, then the balance is available for subsequent loss or damage sustained in, but not after, that policy year. With respect to an occurrence which begins in one policy year and continues or results in additional loss or damage in a subsequent policy year(s), all loss or damage is deemed to be sustained in the policy year in which the occurrence began.

**16. Employee Theft Including ERISA Compliance**

**SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, p. Employee Theft Including ERISA**, paragraph **(6)** is replaced by the following:

**(6)** The most we will pay for all loss resulting directly from an occurrence is $50,000. Regardless of the number of years this policy remains in force or the number of premiums paid, no Limit of Insurance cumulates from year to year.

**17. Employee Tools and Work Clothing**

The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages**:

**Employee Tools**

**(1)** We will pay for direct physical loss of or damage by a Covered Cause of Loss to tools and work clothing belonging to your "employees" while such tools and work

clothing are located at an insured location, your job sites or while in your vehicle "in transit" to and from your job sites.

**(2)** The most we will pay for loss or damage under this Additional Coverage is $25,000 per occurrence but not more than $2,500 for any one tool or item of clothing.

**(3)** The amount payable under this Additional Coverage is additional insurance.

**18. Expediting Expenses**

The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages :**

**Expediting Expenses**

**(1)** When a Covered Cause of Loss occurs to Covered Property, we will pay for the reasonable and necessary additional expenses you incur to:

**(a)** Make temporary repairs;

**(b)** Expedite permanent repair or replacement of damaged property; or

**(c)** Provide training on replacement machines or equipment.

**(2)** The most we will pay for loss under this Additional Coverage in any one occurrence is $25,000.

**(3)** The amount payable under this Additional Coverage is additional insurance.

**19. Extended Business Income**

**SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, f. Business Income, (2) Extended Business Income, (a) Extended Business Income - Other Than Rental Value**, paragraph **(ii)** and **(b) Extended Business Income - Rental Value**, paragraph **(ii)** are replaced by the following:

**(2)(a)** **Extended Business Income - Other Than Rental Value**

**(ii)** Ends on the earlier of:

**1)** The date you could restore your operations, with reasonable speed, to the level which would generate the business income amount that would have existed if no direct physical loss or damage had occurred; or

**2)** 180 consecutive days after the date determined in **(2)(a)(i)** above.

**(2)(b)** **Extended Business Income - Rental Value**

**(ii)** Ends on the earlier of:

**1)** The date you could restore tenant occupancy, with reasonable speed, to the level which would generate the "Rental Value" that would have existed if no direct physical loss or damage had occurred; or

**2)** 180 consecutive days after the date determined in **(2)(b)(i)** above.

**20. Fine Arts**

**SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions, x. Fine Arts,** paragraph **(3)** is replaced by the following:

**(3)** The most we will pay for loss under this Additional Coverage is $50,000 per occurrence regardless of the number of locations or buildings involved.

**21. Fire Department Service Charge**

**SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, c. Fire Department Service Charge** is replaced by the following:

**c. Fire Department Service Charge**

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay for your liability for the fire department service charges if:

**(1)** Assumed by contract or agreement prior to the loss; or

**(2)** Required by local ordinance.

**22. Fire Protection Equipment Recharge**

**SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions, o. Fire Protection Systems Recharge,** paragraph **(3),** is replaced by the following:

**(3)** This Coverage Extension is included within the Limit of Insurance applicable to your covered property at the described premises. This Coverage Extension does not increase the Limits of Insurance.

**23. Forgery or Alteration**

**SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, k. Forgery or Alteration,** paragraph **(4)** is replaced by the following:

**(4)** The most we will pay for any loss, including legal expenses, under this Additional Coverage is $50,000, unless a higher Limit of Insurance is shown in the Schedule of Amended Limits of Insurance.

**24. Hired Auto - Physical Damage**

The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages:**

**Hired Auto - Physical Damage Coverage**

**(1)** We will pay for loss to an "auto" you or an "employee", at your direction, lease, hire or rent without a driver for a period of 30 days or less for the purpose of conducting customary operations for your business. This does not include any "auto" you lease, hire or rent from any of your "employees" or members of their households.

We will pay for loss to a covered "auto" or its equipment caused by:

**(a)** **Comprehensive coverage**

From any cause except:

**(i)** The covered "auto's" collision with another object; or

**(ii)** The covered "auto's" overturn.

**(b)** **Collision coverage**

**(i)** The covered "auto's" collision with another object; or

**(ii)** The covered "auto's" overturn.

**(2)** For the purpose of this Additional Coverage only, **SECTION I - PROPERTY, A. Coverage, 2. Property Not Covered,** paragraph **a.** is replaced by the following:

**a.** Aircraft, automobiles, motortrucks and other vehicles subject to motor vehicle registration and:

**(1)** Any "auto" as described in paragraph **(1)** above, while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity;

The
**Hanover**
Insurance Group

OBCH332709    1304500

**(2)** Tapes, records, discs or other similar audio, visual or data electronic devices designed for use with audio, visual or data electronic equipment;

**(3)** Any device designed or used to detect speed measuring equipment such as radar or laser detectors and any jamming apparatus intended to elude or disrupt speed measurement equipment; or

**(4)** Any electronic equipment, without regard to whether this equipment is permanently installed, that receives or transmits audio, visual or data signals and that is not designed solely for the reproduction of sound.

**(3)** For the purpose of this Additional Coverage only, **SECTION I - PROPERTY, B. Exclusions** does not apply with the exception of the following exclusions:

**(a) 1.d. Nuclear Hazard**;

**(b) 1.f. War and Military Action**

For the purpose of this Additional Coverage only, the following exclusions are added to **SECTION I - PROPERTY, B. Exclusions**:

**1.** We will not pay for loss to a covered "auto" caused by or resulting from someone causing you to voluntarily part with the "auto" by trick or scheme or under false pretenses; or

**2.** We will not pay for loss caused by or resulting from wear and tear, freezing; mechanical or electrical breakdown; blowouts, punctures or other road damage to tires.

**(4)** For the purpose of this Additional Coverage only, the following is added to **SECTION I - PROPERTY, C. Limits of Insurance**:

**Hired Auto Physical Damage Limits of Insurance**

The most we will pay for loss to any one covered "auto" is the lesser of:

**a.** The actual cash value of the damaged or stolen property as of the time of loss;

**b.** The cost of repairing or replacing the damaged or stolen property

with other property of like kind and quality; or

**c.** $50,000.

**(5)** The following is added to **SECTION I - PROPERTY, D. Deductibles,** paragraph **5.**:

Hired Auto - Physical Damage

**(6)** For the purpose of this Additional Coverage only, the following is added to **SECTION I - PROPERTY, G. Property Definitions**:

**1.** "Auto" means a land motor vehicle, trailer or semitrailer that is subject to motor vehicle registration, or designed for travel on public roads, including any attached machinery or equipment.

The amount payable under this Additional Coverage is additional insurance.

This coverage is excess to any other valid insurance whether collectible or not.

**25. Installation Floater**

**SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, w. Installation**, paragraph **(8)** is replaced by the following:

**(8)** The most we will pay for loss of or to damage to property covered under this Additional Coverage in any one occurrence is $50,000, regardless if the property is located at a jobsite, while "in transit", or at a temporary storage location.

**26. Interruption of Computer Operations**

**SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, ee. Interruption of Computer Operations**, paragraph **(3)**, is replaced by the following:

**(3)** The most we will pay under this Additional Coverage - Interruption of Computer Operations for all loss sustained and expense incurred in any one policy year, regardless of the number of interruptions or the number of described premises or computer systems involved, is $50,000 unless a higher Limit of Insurance is shown in the Declarations. If loss payment relating to the first interruption does not exhaust this amount, then the balance is available for loss or expense sustained or incurred as a result of subsequent interruptions in that policy year. A balance remaining at the end of a policy year does not increase the amount of insurance in

the next policy year. With respect to any interruption which begins in one policy year and continues or results in additional loss or expense in a subsequent policy year(s), all loss and expense is deemed to be sustained or incurred in the policy year in which the interruption began.

**27. Inventory and Loss Appraisal**

**SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions, j. Inventory and Loss Appraisal**, paragraph **(2)**, is replaced by the following:

**(2)** Regardless of the number of premises involved, the most we will pay under this Extension is $20,000.

**28. Key Replacement and Lock Repair**

**SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions, g. Key Replacement and Lock Repair**, paragraph **(2)**, is replaced by the following:

**(2)** The most we will pay under this Extension is $25,000. The Deductible does not apply to this Extension.

**29. Leasehold Interest (Tenants Only)**

**a. SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, z. Leasehold Interest (Tenants Only)**, paragraph **(2)(b)**, is replaced by the following:

**(2)(b)** $25,000;

**b. SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, z. Leasehold Interest - Tenant**, paragraph **(4)(a)**, is replaced by the following:

**(4)(a)** $25,000 will be the maximum amount payable regardless of the number of leases affected by the same Covered Cause of Loss.

**30. Lessor's Lease Cancellation**

The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages**:

**Lessor's Lease Cancellation**

**(1)** We will pay the actual loss of business income you sustain due to the cancellation of a lease by your tenants in a Covered Building due to untenantability that is caused by direct physical loss or damage to that building from a Covered Cause of Loss.

This Additional Coverage only applies if at the time of loss the building was occupied and business was being conducted by the tenant cancelling the lease or their sub-lessee.

**(2)** We will pay for loss of business income that you sustain after tenantability is restored and until the earlier of:

**(a)** The date you lease the premises to another tenant; or

**(b)** 12 months immediately following the "period of restoration".

**(3)** Regardless of the number of tenants cancelling a lease at the described premises, the most we will pay under this Additional Coverage is $10,000 per occurrence

**(4)** The amount payable under this Additional Coverage is additional insurance.

**(5) Special Lease Cancellation Exclusions**

We will not pay for:

**(a)** Lease cancelled after the "period of restoration";

**(b)** Lease cancelled, suspended or allowed to lapse by you;

**(c)** Return of prepaid rent or security and other deposits made by tenants; or

**(d)** Lease cancelled at the normal expiration date.

**31. Lessor's Tenant Move Expenses**

The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages**:

**Lessor's Tenant Move Expenses**

**(1)** In the event that your tenants must temporarily vacate the covered Building at the described premises due to untenantability caused by direct physical loss or damage by a Covered Cause of Loss, we will pay the following expenses you actually incur to move those tenants out of and back into your covered Building.

**(2)** We will only pay for the following expenses:

**(a)** Packing, transporting and unpacking the tenant's Business Personal Property including the cost of insuring the move out

The **Hanover** Insurance Group™

OBCH332709     1304500

and back and any necessary disassembly and reassembly or setup of furniture and equipment; and

**(b)** The net cost to discontinue and re-establish the tenants' utility and telephone services, after any refunds due the tenants.

**(3)** We will only pay for these expenses that you actually incur within 60 days of the date that the damaged buildings has been repaired or rebuilt.

**(4)** Regardless of the number of tenants involved, the most we will pay under this Additional Coverage is $10,000 per occurrence. This Additional Coverage is not subject to the Limits of Insurance under **SECTION I - PROPERTY.**

**32. Marring and Scratching**

The following is added to **SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions**:

**Marring and Scratching**

**(1)** You may extend the insurance that applies to Business Personal Property to apply to damage caused directly by sudden and accidental marring and scratching of:

**(a)** Your "stock";

**(b)** Your printing plates; or

**(c)** Property of others that is in your care, custody or control.

**(2)** This Coverage Extension does not apply to:

**(a)** Property at other than the described premises; or

**(b)** Personal Property in transit.

**(3)** Payment under this Coverage Extension is included within Limit of Insurance applicable to your Business Personal Property.

**33. Money Orders and Counterfeit Money**

**SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, j. Money Orders and Counterfeit Money**, paragraph **(3)**, is replaced by the following:

**(3)** The most we will pay for any loss under this Additional Coverage is $25,000.

**34. Newly Acquired or Constructed Property**

**SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions, a. Newly Acquired or Constructed Property**, paragraphs, **(2)(c)** and **(3)** are replaced by the following:

**(2) Business Personal Property**

**(c)** The most we will pay for loss or damage under this Extension is $1,000,000 at each premises.

**(3) Business Income and Extra Expense**

You may extend the insurance that applies to Business Income and Extra Expense to apply to property at any location you acquire. The most we will pay for loss or damage under this Extension is $500,000 at each premise.

**35. Ordinance or Law - Demolition Cost and Increased Cost of Construction**

**SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, l. Ordinance or Law, (5) Loss Payment**, paragraph **(d)** is replaced by the following:

**(d)** The most we will pay for the total of all covered losses for Demolition Cost and Increased Cost of Construction for each building described in the Declarations is $50,000 or the amount shown in the Additional Property Schedule. If a damaged building(s) is covered under a Blanket Limit of Insurance and the Blanket Limit of Insurance applies to more than one building or item of property, then the most we will under this Additional Coverage, for each building, is $50,000, or the amount shown in the Additional Property Coverage Schedule.

**36. Ordinance or Law - Increased Period of Restoration**

**a.** The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, l. Ordinance or Law,** paragraph **(4) Coverage:**

If a Covered Cause of Loss occurs to property at the premises described in the Declarations, coverage is extended to include the amount of actual and necessary loss you sustain during the increased period of "suspension" of "operations" caused by or resulting from the enforcement of any ordinance or law that:

**(a)** Regulates the construction or repair of any property;

**(b)** Requires the tearing down of parts of any property not damaged by a Covered Cause of Loss; and

**(c)** Is in force at the time of loss.

However, coverage is not extended under this endorsement to include loss caused by or resulting from the enforcement of any ordinance or law which requires:

**(d)** The demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungi", wet or dry rot or bacteria; or

**(e)** Any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungi", wet or dry rot or bacteria.

**b.** The following is added to **SECTION I - PROPERTY, A. Coverage 5. Additional Coverages, I. Ordinance or Law, (5) Loss Payment**, paragraph **(c):**

The most we will pay for loss under Increased Period of Restoration in any one occurrence is $100,000 for each described building shown in the Declarations or the amount shown in the Additional Property Coverage Schedule. If a damaged building(s) is covered on a blanket Limit of Insurance which applies to more than one building or item of property, then the most we will pay for Increased Period of Restoration for each described building in any one occurrence is $100,000.

**37. Ordinance or Law (Tenant's Improvement Extension)**

**a.** The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, I. Ordinance or Law, (4) Coverage:**

**(a)** Coverage provided under paragraphs **(a)**, **(b)** and **(c)** above applies to tenant's improvements and betterments but only if a limits of Insurance is shown in the Declarations for Business Personal Property. Business Personal Property must be insured on a replacement cost basis.

**(b)** This extension is provisional and excess to any other valid insurance for tenant's improvements and betterments whether collectible or not.

**b.** The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, I. Ordinance or Law, (5) Loss Payment**, paragraph **(c):**

Regardless of the number of locations insured or buildings involved, the most we will pay for any loss to tenant's improvements and betterments under this Additional Coverage in any one occurrence is $50,000.

**38. Outdoor Property**

**SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions, c. Outdoor Property,** paragraph **(3)** is replaced by the following:

**(3)** Regardless of the number of described premises involved, the most we will pay for loss or damage under this Extension, including debris removal expense, is $25,000, but not more than $2,500 for any one tree, shrub or plant.

**39. Personal Effects**

**SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions, d. Personal Effects,** paragraph **(3)** is replaced by the following:

**(3)** The most we will pay for loss or damage under this Extension is $50,000 at each described premises.

**40. Portable Electronic Devices Coverage Worldwide**

The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages:**

**Portable Electronic Devices Coverage Worldwide**

**(1)** We will pay for loss or damage caused by or resulting from a Covered Cause of Loss to portable electronic devices while anywhere in the world, including while "in transit".



OBCH332709    1304500

**(2)** For the purpose of this Additional Coverage, the following is added to **SECTION I - PROPERTY, G. Property Definitions**:

Portable electronic devices includes laptops, tablets, e-readers, smartphones or other lightweight, hand-held or wearable devices capable of storing, retrieving and processing data.

**(3)** This coverage is provided when the property is owned by you or owned by others when in your or your "employees" care, custody or control, subject to **SECTION I - PROPERTY, E. Property Loss Conditions, 5. Loss Payment,** paragraph **d.(3)(b).**

**(4)** We will not pay for loss or damage to portable electronic devices when caused by, resulting from, or arising out of "theft" or unexplained loss when the property is checked baggage with a carrier for transit.

**(5)** The provisions for a Business Income loss will be governed by the terms of **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages f. Business Income** except:

**(a)** There is no requirement that a loss occur within 1,000 feet or at the described premises as stated in paragraph **(1)(a)**; and

**(b)** The following are not included under this Additional Coverage:

**(i)** Continuing normal operating expenses incurred, including "payroll expense";

**(ii)** Extended Business Income.

**(6)** The provisions for Extra Expense loss will be governed by the terms of **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, g. Extra Expense** except:

**(a)** There is no requirement that a loss occur within 1,000 feet or at the described premises as stated in paragraph **g.(1)** and **g.(2)**.

**(7)** **Limitations**, item **b.** does not apply to this Additional Coverage.

**(8)** **SECTION I - PROPERTY, B. Exclusions, 5. Business Income and Extra Expense Exclusions,** paragraph **(4)** does not apply to this Additional Coverage.

**(9)** Regardless of the number of lost or damaged portable electronic devices, the most we will pay per occurrence including actual loss of Business Income you sustain and necessary Extra Expense you incur, is $25,000.

**(10)** The amount payable under this Additional Coverage is additional insurance.

**41. Precious Metal Theft Payment Changes**

**SECTION I - PROPERTY, A. Coverage, 4. Limitations**, paragraph **c.** is replaced by the following:

**c.** For loss or damage by "theft", the following types of property are covered only up to the limits shown below:

**(1)** $10,000 for furs, fur garments and garments trimmed with fur.

**(2)** $10,000 for jewelry, watches, watch movements, jewels, pearls, precious and semi-precious stones

This limit does not apply to jewelry and watches worth $250 or less per item.

**(3)** $50,000 for bullion, gold, silver, platinum and other precious alloys or metals.

**42. Personal Property in Transit**

**SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions**, **i. Personal Property in Transit**, paragraph **(5)** is replaced by the following:

**(5)** The most we will pay for loss or damage under this Coverage Extension is $50,000.

**43. Sales Representative Samples**

**SECTION I - PROPERTY, 5. Additional Coverages, y. Sales Representative Samples**, paragraph **(3)** is replaced by the following:

**(3)** The most we will pay for any loss or damage under this Additional Coverage is $25,000.

**44. Soft Costs**

The following is added to **SECTION I - PROPERTY, A. Coverage, 6 Extensions**: **Soft Costs**

**(1)** We will pay the actual "soft cost expenses" that arise out of a delay in the construction, erection or fabrication of a Covered Building that

is listed in **SECTION I - PROPERTY**, **A. Coverage**, **1. Covered Property**, paragraph **a.(6)** resulting from direct physical loss or damage to that Covered Building from a Covered Cause of Loss.

**(2)** We will only pay the necessary "soft cost expenses" that are over and above those costs that would have been incurred had there been no delay.

**(3)** The most we will pay under this Extension in any one occurrence is $10,000.

**(4)** "Soft cost expenses" means additional:

**(a)** Realty taxes and other assessments that you incur for the period of time that construction has been extended beyond the projected completion date;

**(b)** Interest on money borrowed to finance construction, remodeling, renovation or repair; and

**(c)** Advertising, public relations and promotional expenses.

**45. Spoilage**

The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages**:

The following provisions (**a.** through **g.** inclusive) apply to the insurance provided by this Additional Coverage:

**a.** For the purpose of this Additional Coverage the following is added to **SECTION I - PROPERTY, A. Coverage, 1. Covered Property**:

Covered Property means "perishable goods" at the insured locations, if the "perishable goods" are:

**a.** Owned by you and used in your business; or

**b.** Owned by others and in your care, custody or control except as otherwise provided in **SECTION I - PROPERTY, E. Property Loss Conditions, 5. Loss Payment**, paragraph **d.(3)(b)**.

**b.** The following is added to **SECTION I - PROPERTY, A. Coverage, 2. Property Not Covered**:

Property located:

**(1)** On the exterior of buildings;

**(2)** In the open; or

**(3)** In vehicles.

**c.** **SECTION I - PROPERTY, A. Coverage, 3. Covered Causes Of Loss** is replaced by the following:

**3. Covered Causes of Loss**

Subject to the exclusions described in item **e.** of this Additional Coverage, Covered Causes of Loss means the following:

**a.** Breakdown or Contamination, meaning:

**(1)** Change in temperature or humidity resulting from mechanical breakdown or mechanical failure of refrigerating, cooling or humidity control apparatus or equipment.

Coverage applies only while such apparatus or equipment is at the described premises shown in the Schedule; or

**(2)** Contamination by a refrigerant. Coverage applies only while the refrigerating apparatus or equipment is at the described premises.

Mechanical breakdown and mechanical failure do not mean power interruption, regardless of how or where the interruption is caused and whether or not the interruption is complete or partial.

**b.** Power Outage, meaning change in temperature or humidity resulting from complete or partial interruption of electrical power, either on or off the described premises, due to conditions beyond your control.

**d.** **SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions** does not apply.

The **Hanover** Insurance Group

OBCH332709     1304500

**e.** **SECTION I - PROPERTY, B. Exclusions** paragraph **1.**, does not apply to this Coverage Extension except for:

**(1)** **b.,** Earth Movement;

**(2)** **c.,** Governmental Action;

**(3)** **d.,** Nuclear Hazard;

**(4)** **f.,** War and Military Action; and

**(5)** **g.,** Water.

**(6)** For the purposes of this additional coverage, the following exclusions are added to **SECTION I - PROPERTY, B. Exclusions,** paragraph **2**:

We will not pay for loss or damage caused by or resulting from:

**1.** The disconnection of any refrigerating, cooling or humidity control system from the source of power.

**2.** The deactivation of electrical power caused by the manipulation of any switch or other device used to control the flow of electrical power or current.

**3.** The inability of an electrical utility company or other power source to provide sufficient power due to:

**a.** Lack of fuel; or

**b.** Governmental order.

**4.** The inability of a power source at the described premises to provide sufficient power due to lack of generating capacity to meet demand.

**5.** Breaking of any glass that is a permanent part of any refrigerating, cooling or humidity control unit.

**f.** **Conditions**

For the purpose of this Additional Coverage, **SECTION I - PROPERTY, E. Property Loss Conditions, 5. Loss Payment**, paragraph **d.** is replaced by the following:

**d.** We will determine the value of Covered Property as follows:

**(1)** For "perishable goods" you have sold but not delivered, at the selling price less discounts and expenses you otherwise would have had;

**(2)** For other "perishable goods", at actual cash value.

**f.** Regardless of the number of insured locations involved, the most we will pay under this Additional Coverage for loss or damage in any one occurrence is $25,000. This Additional Coverage is not subject to **SECTION I - PROPERTY, C. Limits of Insurance.**

**46. Temporary Relocation of Property**

The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages**:

**Temporary Relocation of Property**

**(1)** We will pay for loss of or damage to Covered Property from a Covered Cause of Loss while it is away from the described premises, if it is being stored temporarily at a location you do not own, lease or operate while the described premises is being renovated or remodeled.

**(2)** This coverage applies for 90 days after the property is first moved, but does not extend past the date on which this policy expires.

**(3)** The most we will pay under this Additional Coverage is $50,000.

**(4)** The amount payable under this Additional Coverage is additional insurance.

**47. Tenant Signs**

**SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, t. Tenant Signs**, paragraph **(4)** is replaced by the following:

**(4)** The most we will pay for loss or damage in any one occurrence is $25,000 regardless of the number of locations or buildings involved.

**48. Unauthorized Business Credit Card Use**

**SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, aa. Unauthorized Business Credit Card Use**, paragraph **(5)** is replaced by the following:

**(5)** The most we will pay for any loss including legal expenses, under this

Additional Coverage is $10,000 per occurrence.

**49. Underground Water Seepage**

The following is added to **SECTION I - PROPERTY**, **A. Coverage, 5. Additional Coverages**:

**Underground Water Seepage**

(1) We will pay for direct physical loss or damage to Covered Property at the described premises caused by or resulting from water under the ground surface pressing on, or flowing or seeping through:

    (a) Foundations, walls, floor or paved surfaces;

    (b) Basements, whether paved or not; or

    (c) Doors, windows or other openings in any building or other structure.

    **THIS IS NOT FLOOD INSURANCE OR PROTECTION FROM AN INUNDATION OF SURFACE WATER, HOWEVER CAUSED.**

    This coverage is intended to provide insurance for damage by subterranean water when such event is a localized incident - not part of a general, widespread "flood" water event.

    We will not pay for loss or damage to property when the subterranean water causing the Underground Water Seepage is itself caused by any "flood" or general flooding conditions - including but not limited to those enumerated under **SECTION I - PROPERTY, B. Exclusions**, paragraph **1.g. Water**.

(2) **SECTION I - PROPERTY, B. Exclusions,** paragraphs **g. Water (4)** is deleted.

(3) The most we will pay for loss in any one occurrence under this Additional Coverage is $100,000.

(4) We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds $1,000. This deductible is to apply separately to:

    (a) Each building, including personal property therein;

    (b) Personal property in each building if no coverage is provided on the containing building; and

    (c) Personal property in the open.

    The aggregate amount of this deductible in any one occurrence shall not exceed $5,000.

    We will then pay the amount of loss or damage in excess of the deductible up to the applicable Limit of Insurance.

(5) **Special Underground Water Seepage Exclusions**

    (a) The **Exclusions** and **Limitations** sections of **SECTION I - PROPERTY** apply to this Additional Coverage except as provided under paragraph **(b)** below.

    (b) To the extent that a part of **SECTION I - PROPERTY, B. Exclusions,** paragraph **1.g. Water** might conflict with this Additional Coverage, that part of the **Water** Exclusion does not apply.

    (c) This Additional Coverage does not apply to loss or damage resulting from your failure to:

        (i) Keep a sump pump or its related equipment in proper working condition; or

        (ii) Perform the routine maintenance or repair necessary to keep a sewer or drain free from obstructions.

**50. Unnamed Locations**

The following is added to **SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions**:

**Unnamed Locations**

**a. Personal Property and Computer Equipment**

(1) You may extend the insurance that applies to Business Personal Property and "Computer Equipment" to apply to direct physical loss or damage to Business Personal Property and "Computer Equipment" caused by or resulting from a Covered Cause of Loss while such property is located at a "client or virtual office premises".

(2) This Coverage Extension also applies to Business Personal Property and "Computer Equipment" that are:

    (a) Owned by an "employee";



OBCH332709     1304500

and

(b) Used for your business;

While such property is located at a "client or virtual office premises" and sustains direct physical loss or damage caused by or resulting from a Covered Cause of Loss.

(3) This Coverage Extension does not apply to property otherwise covered under the following Additional Coverages or Coverage Extensions:

(a) Accounts Receivable;

(b) Fine Arts;

(c) Personal Property Off Premises

(d) Personal Property in Transit

(e) Valuable Papers and Records (Other Than Electronic Data)

(f) Portable Electronic Devices Coverage Worldwide

(g) Worldwide Property Off Premises

(4) The most we will pay under this Coverage Extension in any one occurrence is $10,000 regardless of the number of locations involved. The most we will pay for all covered losses under this Coverage Extension during each separate 12 month period of this policy is $25,000.

This Coverage Extension is not subject to **SECTION I - PROPERTY, C. Limits of Insurance**.

**b. Business Income and Extra Expense**

(1) If this policy provides for Business Income and Extra Expense coverages, you may extend the insurance that applies to the actual loss of Business Income (not including Extended Business Income) you sustain and necessary Extra Expense you incur due to the "suspension" of your business activities occurring at a "client or virtual office premises" during the "period of restoration". The "suspension" must be caused by direct physical loss or damage caused by or resulting from a Covered Cause of Loss at a "client or virtual office premises".

(2) We will reduce the amount of your Business Income loss, other than Extra Expense, to the extent that you can resume operations, in whole or in part, by using any other available:

(a) Source of materials;

(b) Outlet for your products.

(3) If you do not resume operations or do not resume operations as quickly as possible, we will pay based on the length of time it would have taken to resume operations as quickly as possible.

(4) The coverage period for Business Income under this Coverage Extension:

(a) Begins 24 hours after the time of direct physical loss or damage caused by or resulting from a Covered Cause of Loss at the premises of a "client or virtual office premises"; and

(b) Ends on the date when the property at the premises of the "client or virtual office premises" should be repaired, rebuilt or replaced (to the extent necessary to resume operations) with reasonable speed and similar quality or 12 months immediately following the date of direct physical loss or damage, whichever is shorter.

(5) The Business Income coverage period as stated in paragraph **(a)** above does not include any increased period required due to the enforcement of any ordinance or law that:

(a) Regulates the construction, use or repair, or requires the tearing down of any property; or

(b) Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

The expiration date of this policy will not reduce the Business Income coverage period.

**(6)** The most we will pay under this Coverage Extension in any one occurrence is $10,000 regardless of the number of locations involved. The most we will pay for all covered losses under this Coverage Extension during each separate 12 month period of this policy is $50,000.

This Coverage Extension is not subject to **SECTION I - PROPERTY, C. Limits of Insurance**.

**(7)** The definition of Business Income contained in the Loss of Business Income Additional Coverage applies to this Coverage Extension.

**c.** For purposes of this Coverage Extension, "client or virtual office premises" means the interior of that portion of any building occupied by an "employee", including

**(1)** An "employee's" residence; or

**(2)** A client's business location located anywhere in the world.

**51. Utility Services (Including Overhead Transmission Lines)**

**a.** **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, bb. Utility Services**, paragraphs **(1)** and **(2)** are replaced by the following:

**(1)** We will pay for loss of or damage to Covered Property caused by an interruption in service to the described premises. The interruption must result from direct physical loss or damage by a Covered Cause of Loss to property not on the described premises that provides the services shown in paragraph **(3)** below.

The most we will pay for loss in any one occurrence under this Additional Coverage is $50,000 at each described premises or the Limit of Insurance shown in the Additional Property Coverage Schedule.

**(2)** We will pay for the actual loss of Business Income you sustain and necessary Extra Expense you incur caused by the interruption of service at the described premises. The interruption must result from direct physical loss or damage by a Covered Cause of Loss to property not on the described premises that provides the services shown in paragraph **(3)** below.

We will only pay for loss you sustain after the first 24 hours following the direct physical loss or damage to the property described above.

The most we will pay for loss in any one occurrence under this Additional Coverage is $50,000 at each described premises or the Limit of Insurance shown in the Additional Property Coverage Schedule.

**b.** **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, bb. Utility Services**, paragraph **(4)** is deleted.

**52. Worldwide Property Off Premises**

The following is added to **SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions**:

**Worldwide Property Off-Premises**

**(1)** You may extend the insurance that applies to your Business Personal Property and Personal Property of Others to apply to that property while it is temporarily outside the coverage territory if it is:

**(a)** Temporarily at a location you do not own, lease or operate;

**(b)** Temporarily on display or exhibit at any fair, trade show or exhibition;

**(c)** Samples of your "stock" in trade in the custody of your sales representatives; or

**(d)** While "in transit" between the described premises and a location described in **(a), (b)** or **(c)** above.

**(2)** The most we will pay for loss or damage under this Extension is $50,000.

**(3)** This Extension provides an additional amount of insurance.



OBCH332709      1304500

**B. Blanket Coverages**

1. **Accounts Receivable**

   **SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions, f. Accounts Receivable,** paragraph **(2)**, is replaced by the following:

   **(2)** The most we will pay under this Coverage Extension for loss or damage in any one occurrence at the described premises or away from the described premises is subject to the Blanket Coverage Limit of Insurance, or the amount shown in the Additional Property Coverage Schedule.

2. **Backup or Overflow of a Sewer, Drain or Sump**

   The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages**:

   **Backup or Overflow of a Sewer, Drain or Sump**

   **(1)** We will pay for direct physical loss or damage to Covered Property at the described premises, solely caused by or resulting from water or waterborne material carried or moved by water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment. The term drain includes a roof drain and its related fixtures.

   **(2)** For the purpose of this Additional Coverage only, **SECTION I - PROPERTY, B. Exclusions,** paragraph **g. Water (3)** is deleted.

   **(3)** Regardless of the number of insured locations involved, the most we will pay under this Additional Coverage for loss or damage in any one occurrence is subject to the Blanket Limit of Insurance or the amount shown in the Additional Property Coverage Schedule.

   **(4) Special Sewer Backup Exclusion**

   We will not pay for:

   **(a)** Loss or damage from water or other materials that back-up or overflow from any sewer or drain, sump, sump pump or related equipment when it is caused by or results from any "flood", regardless of the proximity of the back-up or overflow to the "flood" condition; or

   **(b)** Failure to keep a sump pump or

   its related equipment in proper working condition; or

   **(c)** Failure to perform routine maintenance or repair necessary to keep a sewer or drain free from obstructions.

3. **Computer Equipment**

   **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, r. Computer Equipment, paragraph (6)** is replaced by the following:

   **(6)** Regardless of the number of insured locations involved, the most we will pay for loss or damage under this Additional Coverage to property described in paragraphs **(1)** and **(2)** above in any one occurrence at insured locations is subject to the Blanket Coverage Limit of Insurance, or the amount shown in the Additional Property Coverage Schedule.

   The most we will pay for Extra Expense is $5,000 or the amount shown in the Additional Property Coverage Schedule in any one occurrence.

   This Additional Coverage is not subject to **SECTION I - PROPERTY, C. Limits of Insurance.**

4. **Debris Removal**

   **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, a. Debris Removal,** paragraph **(4),** is replaced by the following:

   **(4)** We will pay up to the blanket limit of insurance for debris removal expense, for each location, in any one occurrence of physical loss or damage to Covered Property, if one or both of the following circumstances apply:

   **(a)** The total of the actual debris removal expense plus the amount we pay for direct physical loss or damage exceeds the Limit of Insurance on the Covered Property that has sustained loss or damage.

   **(b)** The actual debris removal expense exceeds 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

Therefore, if Paragraphs **(4)(a)** and/or **(4)(b)** above, apply, our total payment for direct physical loss or damage and debris removal expense may reach but will never exceed the Limit of Insurance on the Covered Property that has sustained loss or damage, plus the blanket limit of insurance.

5. **Valuable Papers and Records (Other Than Electronic Data)**

SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions, e. Valuable Papers and Records (Other Than Electronic Data), paragraph **(3)** is replaced by the following:

**(3)** Regardless of the number of locations involved, the most we will pay under this Coverage Extension for loss or damage in any one occurrence at the described premises is subject to the Blanket Limit of Insurance, or the amount shown in the Additional Coverage Schedule.

ALL OTHER TERMS, CONDITIONS, AND EXCLUSIONS REMAIN UNCHANGED.

**The Hanover** Insurance Group™

OBCH332709        1304500

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## ASSOCIATES AND FAMILY MEMBERS ADDITIONAL COVERAGE ENDORSEMENT

This endorsement modifies insurance provided under the following:

DATA BREACH COVERAGE FORM

The following Additional Coverage is added to **SECTION A - COVERAGES** of the Data Breach Coverage Form:

**A. ASSOCIATES AND FAMILY MEMBERS ADDITIONAL COVERAGE**

As described in Paragraphs **1.** and **2.** below, we will extend certain **Data Breach Covered Services** to your "associates" and to their "family members" whose "private personal data" under the circumstances described below. This Additional Coverage does not apply to a "data breach" involving information owned or controlled by you.

**1.** An "associate" or "family member" whose "private personal data" is lost or stolen by circumstances such as the loss of a credit card, debit card, ATM card, checkbook, driver's license, or passport; or the loss of a wallet, purse, or briefcase containing any of the foregoing, may contact our Designated Service Provider for the Fraud Alert service described in **Section A - Coverages,** paragraph **1.a.(3)** of the Data Breach Coverage Form.

**2.** An "associate" or "family member" who, as a result of loss or theft of "private personal data" described in Paragraph **1.** above, becomes a victim of "identity theft" or "account takeover", may contact our Designated Service Provider for the Identity Restoration Case Management services described in **Section A - Coverages,** paragraph **1.a.(4)** of the Data Breach Coverage Form.

We will provide these services for a period of one year following the data we are notified of the initial loss of "private personal data".

**B. DEFINITIONS**

Under **Section F - Definitions**, Paragraph

**1. Account Takeover** is replaced with the following:

**1. Account Takeover**

"Account takeover", as respects "associates" or "family members", means the takeover by a third party of one or more existing deposit accounts, credit card accounts, debit card accounts, ATM cards, or lines of credit in the name of an "associate" or "family member".

"Account takeover", as respects "associates" or "family members", includes the unauthorized takeover of one or more of the "associate's" existing deposit accounts, credit card accounts, debit card accounts, ATM cards, or lines of credit by a "family member".

Under **Section F - Definitions**, the following Definitions are added:

**1.** "Associate" means an employee of the business insured under this policy.

**2.** "Family Member" means:

**a.** an "associate's" spouse, or Registered Domestic Partner, or the legal equivalent thereof; or

**b.** a relative under 23 years of age who is a dependent of the "associate".



OBCH332709      1304500

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ILLINOIS CHANGES - DATA BREACH COVERAGE FORM

This endorsement modifies insurance provided under the following:

DATA BREACH COVERAGE FORM

**A. SECTION E - CONDITIONS**, paragraph **11.** is replaced by the following:

**11. Cancellation and Non-Renewal:**

**a.** If we decide to cancel this Coverage Part in the first 60 days, we will mail:

**(1)** 10 days' written notice of cancellation for nonpayment of premium; or

**(2)** 30 days' written notice of cancellation for any other reason.

If this Coverage Part has been in effect for 60 days or more or is a renewal of a Coverage Part we issued, then we will mail:

**(3)** 10 days' written notice of cancellation for nonpayment of premium; or

**(4)** 60 days' written notice of cancellation for one for more of the following reasons:

**(a)** The Coverage Part was obtained through a material representation;

**(b)** Any insured violated any of the terms and conditions of the policy;

**(c)** The risk originally accepted has measurably increased;

**(d)** Certification is provided to the Director of Insurance in Illinois of the loss of reinsurance by us which provided coverage to us for a substantial part of the underlying risk insured; or

**(e)** A determination is made by the Director of Insurance in Illinois that the continuation of the policy could place us in violation of the insurance laws of Illinois.

Cancellation notices will state the reason for cancellation and will be mailed to you and the agent or broker of record at the last addresses known to us. We will maintain proof of mailing on a recognized U.S. Post Office form or a form acceptable to the U.S. Post Office or other commercial mail delivery service.

**b.** If we decide not to renew this Coverage Part, we will mail or deliver written notice not less than 60 days before the expiration date to the named insured shown in the Declarations and to the agent or broker of record at the last addresses known to us. Notice will provide an explanation of the reason for nonrenewal. We will maintain proof of mailing on a recognized U.S. Post Office form or a form acceptable to the U.S. Post Office or other commercial mail delivery service.

**B. SECTION E - CONDITIONS**, paragraph **2.** is replaced by the following:

**2. Concealment, Misrepresentation Or Fraud**

**a.** This Coverage Form is void if you or any insured commit fraud or conceal or misrepresent a fact in the process leading to the issuance of this insurance, and such fraud, concealment or misrepresentation is stated in the policy or endorsement or in the written application for this policy and:

**(1)** Was made with actual intent to deceive; or

**(2)** Materially affected either our decision to provide this insurance or the hazard we assumed.

However, this condition will not serve as a reason to void this Coverage Form after the Coverage Form has been in effect for one year or one policy term, whichever is less.

**b.** This Coverage Form is void if you or any other insured, at any time subsequent to the issuance of this insurance, commit fraud or intentionally conceal or misrepresent a material fact relating to:

**(1)** This Coverage Form; or

**(2)** A claim under this Coverage Form.

**c.** Notwithstanding the limitations stated in **2.a.** above, we may cancel the Coverage Form in accordance with the terms of the Cancellation Condition.

**C.** **SECTION E - CONDITIONS,** paragraph **18.** is replaced by the following:

**18. Appraisal**

If we and you disagree on the amount of net income, operating expense or loss either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of the net income, operating expense and loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will not be binding.

Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

However, we will pay your appraiser's fee and the umpire's appraisal fee, if the following conditions exist:

**c.** You demanded the appraisal; and

**d.** The amount of net income, operating expense and loss, as set by your appraiser, is agreed to by our appraiser or by the umpire.

If there is an appraisal, we will still retain our right to deny the claim; and you will retain your right to file suit against us.

**D.** **SECTION E - CONDITIONS,** Paragraph **5.** is replaced by the following:

**5. Legal Action Against Us**

No one may bring a legal action against us under this insurance unless:

**a.** There has been full compliance with all of the terms of this insurance; and

**b.** The action is brought within two years after the date we first deny the claim in whole or in part.

**E.** The following is added to **SECTION F - DEFINITIONS,** Paragraph **10. Defense Expenses:**

"Defense Expenses" do not include our routine ongoing expenses or overhead such as salaries of our staff or our staff attorneys**.**

**F.** **SECTION E - CONDITIONS** Paragraph **8.** Subparagraph **b.** is replaced by the following**:**

**b.** If there is other insurance covering the same "data breach", other than that described in **a.** above, we will share proportionatley with such other coverage in the benefits or amounts due for Data Breach Services, Data Breach Expense Coverages, and Additional Expense Coverages. We will not pay more than the applicable Limit of Insurance shown in the **SCHEDULE.**

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.



OBCH332709          1304500

---

**THIS IS A CLAIMS-MADE AND REPORTED COVERAGE ENDORSEMENT.**

---

# EMPLOYMENT PRACTICES LIABILITY
# INSURANCE COVERAGE ENDORSEMENT - ILLINOIS

Throughout this Coverage Endorsement (hereinafter referred to as "EPL Coverage Endorsement"), the words "you" and "your" refer to the "named insured(s)" shown in the Supplemental Declarations of this EPL Coverage Endorsement and any other person(s) or organization(s) qualifying as a "named insured" under this EPL Coverage Endorsement. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under SECTION III. WHO IS AN INSURED.

Other words and phrases that appear in "quotations" have special meaning. Refer to SECTION VII. DEFINITIONS.

The terms and conditions of the Cancellation Clause of the Common Policy Conditions, 391-1003 are hereby incorporated herein and shall apply to coverage as is afforded by this EPL Coverage Endorsement, unless specifically stated otherwise in an endorsement(s) attached hereto.

## SECTION I. WHAT IS COVERED

### A. Insuring Agreement

1. "We" shall pay those "losses" arising out of "your" "wrongful employment act" against "your" "employees", to which this insurance applies. The "wrongful employment act" must commence or take place after the "original inception date", but before the end of the "EPL coverage period". A "claim" or "suit" for a "wrongful employment act" must be first made against "you" during the "EPL coverage period" or any Extended Reporting Period (if applicable) and reported to "us" pursuant to the terms of this EPL Coverage Endorsement.

2. A "claim" or "suit" by a person or organization seeking damages will be deemed to have been made at the earlier of the following times:

   a. When written notice of such "claim" or "suit" is received and recorded by any "insured" or by "us", whichever comes first; or

   b. When "we" make any settlement in accordance with the terms of this EPL Coverage Endorsement.

### B. Defense

1. "We" have the right and duty to defend and appoint an attorney to defend any "claim" or "suit" brought against any "insured" for a "wrongful employment act" to which this insurance applies, even if the "claim" or "suit" is groundless or fraudulent.

2. "We" have the right to investigate and settle any "claim" or "suit" that "we" believe is proper. "You" shall be entitled to effectively associate in the defense of any "claim".

3. "We" shall pay all reasonable costs "we" ask the "insured" to incur while helping "us" investigate or defend a "claim" or "suit". "We", however, will not pay more than $100 per day for earnings lost by the "insured" because of time taken off from work.

4. "We" shall pay premiums for appeal bonds, or bonds to release property being used to secure a legal obligation, for a covered "suit". "We" shall only pay, however, for bonds valued up to "our" Aggregate EPL Limit of Liability. "We" shall have no obligation to appeal or to obtain these bonds.

5. Payments for "defense costs" are included within the Aggregate EPL Limit of Liability. They are not in addition to the Aggregate EPL Limit of Liability. "Our" duty to defend or to make payment of any "claim" or "suit pursuant to paragraphs 1-4 above, ends after the Aggregate EPL Limit of Liability has been exhausted by payment of "loss", including "defense costs".

---

### C. Transfer of Control

1. "You" may take over control of any outstanding "claim" or "suit" previously reported to "us", but only if "we", in "our" sole discretion, decide that you should, or if a court orders "you" to do so.

2. Notwithstanding subsection 1 of this Clause C, in all events, if the Aggregate EPL Limit of Liability is exhausted, "we" will notify "you" of all outstanding "claims" or "suits" and "you" will take over control of the defense. "We" will help transfer control of the "claims" and "suits" to "you".

3. "We" shall take whatever steps are necessary to continue the defense of any outstanding "claim" or "suit" and avoid a default judgment during the transfer of control to "you". If "we" do so, "we" shall not waive or give up any of "our" rights. "You" shall pay all reasonable expenses "we" incur for taking such steps after the Aggregate EPL Limit of Liability is exhausted.

## SECTION II. EXCLUSIONS-WHAT IS NOT COVERED

This insurance does not apply to:

### A. Profit or Advantage

Any liability arising out of the gaining of any profit or advantage to which an "insured" was not legally entitled. However, to the extent that a "claim" or "suit" is otherwise covered under this EPL Coverage Endorsement, we will defend a "claim" or "suit" asserting that an "insured" gained a profit or advantage to which the "insured" was not legally entitled, until such time as the "insured" is determined to have gained a profit or advantage to which the "insured" was not legally entitled;

### B. Criminal Acts

Any liability arising out of any dishonest, fraudulent, criminal, or malicious act by or at the direction of any "insured". However, to the extent that a "claim" or "suit" is otherwise covered under this EPL Coverage Endorsement we will defend a "claim" or "suit" asserting a dishonest, fraudulent, criminal or malicious act until such time as the "insured" is determined to have committed such dishonest, fraudulent, criminal or malicious act;

The "wrongful employment act(s)" of an "insured" shall not be imputed to any other "insured" for the purpose of determining the applicability of the foregoing exclusions A and B.

### C. "Property Damage"

Any liability arising out of "property damage";

### D. "Bodily Injury"

Any liability arising out of "bodily injury";

### E. Worker's Compensation, Social Security and Unemployment, Disability and Retirement Benefits

Any liability arising out of any obligation pursuant to any worker's compensation, disability benefits, unemployment compensation, unemployment insurance, retirement benefits, social security benefits or similar law. This exclusion, however, shall not apply to "loss" arising from a "claim" or "suit" for "retaliation";

### F. Contractual Liability

Any liability arising out of any actual or alleged contractual liability of any "insured" under any express contract or agreement. This exclusion, however, shall not apply to the extent any liability does not arise under such express contract or agreement;

### G. ERISA, COBRA, WARN, OSHA and NLRA

Any liability arising out of the "insured's" failure to fulfill any responsibility, duty or obligation imposed by the Employment Retirement Income Security Act of 1974 (ERISA), Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA), Worker's Adjustment and Retraining Notification Act, Public Law 100-379 (1988) (WARN), Occupational Safety and Health Act (OSHA), National Labor Relations Act of 1947 (NLRA), any rules or regulations of the foregoing promulgated thereunder, and amendments thereto or any similar provisions of any federal, state, or local statutory or common law. This exclusion, however, shall not apply to "loss" arising from a "claim" or "suit" for "retaliation";



OBCH332709    1304500

## H. FLSA

Any liability arising out of any obligation under the Fair Labor Standards Act, or any violations of any federal, state, local or foreign statutory law or common law that governs the same topic or subject and any rules, regulations and amendments thereto (except the Equal Pay Act). This exclusion, however, shall not apply to "loss" arising from a "claim" or "suit" for "retaliation";

Any liability arising out of claims for unpaid wages or overtime pay for hours actually worked or labor actually performed by any "employee" of the "insured", for improper payroll deductions or any violations of any federal, state, local or foreign statutory law or common law that governs the same topic or subject and any rules, regulations and amendments thereto.

## I. Non-Monetary Relief

That part of any "claim" or "suit" seeking any non-monetary relief, including but not limited to: (1) injunctive relief; (2) declaratory relief; (3) disgorgement; (4) job reinstatement; (5) costs or expenses incurred in accommodating any disabled person, pursuant to the Americans with Disabilities Act of 1990 (ADA), including amendments to that law or similar federal, state or local statutory or common law; (6) any liability or costs incurred in connection with any educational, sensitivity or other corporate program, policy or seminar relating to a "claim" or "suit" alleging discrimination or other "wrongful employment act"; or (7) other equitable remedies, including as to all of the above, the cost of compliance therewith; provided, however, if such request for non-monetary relief is part of an otherwise covered "claim" or "suit", "we" will not seek to allocate "defense costs" for the portion of the "claim" or "suit" seeking non-monetary relief;

## J. Certain "Insureds"

Any "claim" or "suit" brought by any "insured". This exclusion, however, shall not apply to a "claim" or "suit" brought by an "employee" of the "insured", other than an "employee" who is or was a director of the "insured";

## K. Prior Knowledge

Any liability arising out of incidents, circumstances or "wrongful employment acts", which an "insured", prior to the "original inception date" as shown in the Supplemental Declarations of this EPL

Coverage Endorsement, had knowledge or which an "insured" could have reasonably foreseen might result in a "claim" or "suit";

## L. Prior Notice

Any liability arising out of the facts alleged, or to the same or "related wrongful employment acts" alleged or contained in any "claim" or "suit" which has been reported, or in any circumstances of which notice has been given, under any policy of which this EPL Coverage Endorsement is a renewal or replacement or which it may succeed in time;

## M. Securities Holder

Any "claim" or "suit" brought by a securities holder of the "insured" in their capacity as such, whether directly, derivatively on behalf of the "insured", or by class action;

## N. Outside Boards

Any liability arising out of any actual or alleged act or omission of an "insured" serving in any capacity, other than as a director, officer or "employee" of the "insured" entity.

## SECTION III. WHO IS AN INSURED

## A. Individual

If "you" are shown in the Supplemental Declarations of this EPL Coverage Endorsement as an individual, "you" and "your" spouse are "insureds", only for the conduct of a business of which "you" are the sole owner.

## B. Corporation

If "you" are shown in the Supplemental Declarations of this EPL Coverage Endorsement as a corporation or organization other than a partnership or joint venture, "you" and "your" "subsidiaries" are "insureds".

## C. Partnership or Joint Venture

If "you" are shown in the Supplemental Declarations of this EPL Coverage Endorsement as a partnership or joint venture, "you" are an "insured". "Your" partners or co-venturers and their spouses are also "insureds", but only for the conduct of "your" business.

## D. "Employees"

"Your" "employee", executive officers and directors are "insureds", only for the conduct of "your" business within the scope of their employment or their duties as executive officers or directors.

**E. Extensions**

1. Subject otherwise to the terms hereof, this EPL Coverage Endorsement shall cover "loss" arising from any "claims" or "suits" made against the estates, heirs, or legal representative of deceased individual "insureds", and the legal representatives of individual "insureds", in the event of incompetency, who were individual "insureds" at the time the "wrongful employment acts", upon which such "claims" or "suits" are based, were committed.

2. Subject otherwise to the terms hereof, this EPL Coverage Endorsement shall cover "loss" arising from all "claims" and "suits" made against the lawful spouse (whether such status is derived by reason of statutory law, common law or otherwise of any applicable jurisdiction in the world) of an individual "insured", including a "claim" or "suit" that seeks damages recoverable from marital community property, property jointly held by the individual "insured" and the spouse, or property transferred from the individual "insured" to the spouse; provided, however, that this extension shall not afford coverage for a "claim" or "suit" arising out of any "wrongful employment act" of the spouse, but shall apply only to "claims" or "suits" arising out of any "wrongful employment acts" of an individual "insured", subject to this EPL Coverage Endorsement's terms, conditions and exclusions.

## SECTION IV. LIMIT OF LIABILITY (including "defense costs")

**A.** The Aggregate EPL Limit of Liability shown in the Supplemental Declarations of this EPL Coverage Endorsement and the information contained in this section limits the most "we" shall pay for all "loss" arising out of "claims" and "suits" first made against "insureds" during the "EPL coverage period" or Extended Reporting Period (if applicable), regardless of:

1. the number of persons or organizations covered by this EPL Coverage Endorsement; or

2. the number of "claims" made or "suits" brought; or

3. the length of the "EPL coverage period".

**B.** The Aggregate EPL Limit of Liability is the most "we" shall pay for all "losses" covered under this EPL Coverage Endorsement, including amounts incurred for "defense costs".

**C.** The Aggregate EPL Limit of Liability for the Extended Reporting Period shall be part of, and not in addition to the Aggregate EPL Limit of Liability for the "EPL coverage period".

**D.** All "claims" and "suits" arising from the same or "related wrongful employment acts" shall be treated as arising out of a single "wrongful employment act".

**E.** All "claims" or "suits" arising out of one "wrongful employment act" shall be deemed to be made on the date that the first such "claim" is made or "suit" is brought. All "claims" asserted in a "class action suit" will be treated as arising out of a single "wrongful employment act".

**F.** Any "claim" or "suit" which is made subsequent to the "EPL coverage period" or Extended Reporting Period (if applicable) which, pursuant to Section VI, Clause D(3) and (4) is considered made during the "EPL coverage period" or Extended Reporting Period shall also be subject to the one Aggregate EPL Limit of Liability stated in the Supplemental Declarations of this EPL Coverage Endorsement.

## SECTION V. DEDUCTIBLE

"You" shall be responsible for the deductible amount shown in the Supplemental Declarations of this EPL Coverage Endorsement with respect to each "claim" and "suit" and "you" may not insure against it. A single deductible amount shall apply to "loss" arising from all "claims" and "suits" alleging the same "wrongful employment act" or "related wrongful employment acts". Expenses "we" incur in investigating, defending and settling "claims" and "suits" are included in the deductible. The deductible is not included within the Aggregate EPL Limit of Liability.

## SECTION VI. CONDITIONS

"We" have no duty to provide coverage under this EPL Coverage Endorsement, unless there has been full compliance with all the Conditions contained in this EPL Coverage Endorsement.

**A. Assignment**

The interest of any "insured" is not assignable. "You" cannot assign or transfer "your" interest in this EPL

Coverage Endorsement without "our" written consent attached to the EPL Coverage Endorsement.

## B. Bankruptcy or Insolvency

"Your" bankruptcy, insolvency or inability to pay, will not relieve "us" from the payment of any "claim" or "suit" covered by this EPL Coverage Endorsement.

Under no circumstances will "your" bankruptcy, insolvency, or inability to pay require "us" to drop down, in any way replace, or assume any of "your" obligations with respect to the Deductible provisions of this EPL Coverage Endorsement.

## C. Coverage Territory

"We" cover "wrongful employment acts" in the United States of America, its territories and possessions, Puerto Rico, or Canada, but only if the "claim" is made and the "suit" is brought for such "wrongful employment act" in the United States of America, its territories and possessions, Puerto Rico, or Canada.

## D. Duties in the Event of an Incident, "Claim" or "Suit"

1. If, during the "EPL coverage period", incidents or events occur which "you" reasonably believe may give rise to a "claim" or "suit" for which coverage may be provided hereunder, such belief being based upon either written notice from the potential claimant or the potential claimant's representative; or notice of a complaint filed with EEOC, DOL or OFCCP (or similar federal, state or local agency); or upon a contemporaneously made memorandum of an oral "claim", allegation or threat, "you" shall give written notice to "us" as soon as practicable and either:

   a. anytime during the "EPL coverage period" or the Extended Reporting Period (if applicable); or

   b. within thirty (30) days after the end of the "EPL coverage period" or Extended Reporting Period (if applicable), as long as such "claim" or "suit" is reported no later than thirty (30) days after the date such "claim" or "suit" was first made against an "insured".

2. If a "claim" is made or a "suit" is brought against any "insured", "you" must:

   a. Immediately record the specifics of the "claim" or "suit" and the date received; and

   b. Provide "us" with written notice, as described in subsection 3. below, as soon as practicable.

3. Such written notice of "claim" or "suit" shall contain:

   a. The identity of the person(s) alleging a "wrongful employment act";

   b. The identity of the "insured(s)" who allegedly were involved in the incidents or events;

   c. The date the alleged incidents or events took place; and

   d. The written notice or contemporaneously prepared memorandum referred to above.

   If written notice is given to "us" during the "EPL coverage period" or Extended Reporting Period (if applicable), pursuant to the above requirements, then any "claim" or "suit" which is subsequently made against any "insureds" and reported to "us" alleging, arising out of, based upon or attributable to such circumstances or alleging any "related wrongful employment act" to such circumstances, shall be considered made at the time such notice of such circumstances was first given.

4. If "you" submit written notice of a "claim" or "suit", pursuant to this Clause D, then any "claim" or "suit" that may subsequently be made against an "insured" and reported to "us" alleging the same or a "related wrongful employment act" to the "claim" or "suit" for which such notice has been given shall be deemed, for the purpose of this insurance, to have been first made during the "EPL coverage period" in effect at the time such written notice was first submitted to "us".

5. "You" and any other "insured" must:

   a. Immediately send "us" copies of any demands, notices, summonses or legal papers received in connection with any "claim" or "suit";

   b. Authorize "us" to obtain records and other information;

   c. Cooperate with "us" in the investigation, settlement or defense of the "claim" or "suit";

d. Assist "us", upon "our" request, in the enforcement of any right against any person or organization which may be liable to the "insured" because of injury or damage to which this insurance may also apply;

e. Take no action, or fail to take any required action, that prejudices the rights of the "insureds" or "us" with respect to such "claim" or "suit".

6. No "insureds" will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense without "our" prior written consent.

**E. Transfer of Rights of Recovery Against Others to "Us"**

"You" may be able to recover all or part of a "loss" from someone other than "us". "You", therefore, shall do all that is possible after a "loss" to preserve any such right of recovery. If "we" make a payment under this EPL Coverage Endorsement, that right of recovery shall belong to "us". "You" shall do whatever is necessary, including signing documents, to help "us" obtain that recovery.

**F. Extended Reporting Period**

1. Solely with respect to this EPL Coverage Endorsement and except as indicated below, if "you" or "we" shall cancel or refuse to renew this EPL Coverage Endorsement, "you" shall have the right, upon payment of an additional premium of 100% of the full annual premium applicable to this EPL Coverage Endorsement, to buy an Extended Reporting Period Endorsement, providing an Extended Reporting Period of one (1) year following the effective date of the cancellation or nonrenewal, in which to give "us" written notice of "claims" first made or "suits" first brought against the "insureds" during said Extended Reporting Period for any "wrongful employment acts" which take place after the "original inception date" and before the end of the "EPL coverage period" and are otherwise covered by this EPL Coverage Endorsement.

To obtain an Extended Reporting Period Endorsement, "you" must request it in writing and pay the additional premium due, within thirty (30) days of the effective date of cancellation or nonrenewal.

2. The Extended Reporting Period Endorsement cannot be canceled by either party, except for nonpayment of premium. The additional premium for the Extended Reporting Period shall be fully earned at the inception of the Extended Reporting Period and this EPL Coverage Endorsement cannot be canceled after such additional premium is paid. If "we" do not receive the written request as required, "you" may not exercise this right at a later date.

3. This insurance, provided during the Extended Reporting Period, is excess over any other valid and collectible insurance that begins or continues in effect after the Extended Reporting Period Endorsement becomes effective, whether the other insurance applies on a primary, excess, contingent, or any other basis.

4. In the event of cancellation by the Insurer for the non-payment of initial premium for this EPL Coverage Endorsement as indicated in the Supplemental Declarations of this EPL Coverage Endorsement, any monies received by the Insurer as payment for the Extended Reporting Period shall be first applied to such premium owing for the policy. The Extended Reporting Period will not take effect until the premium owing for the policy is paid in full and the premium owing for the Extended Reporting Period is paid promptly when due.

5. In the event of a "Transaction", as defined in Clause G below, the "named insured" shall have the right, within thirty (30) days before the end of the "EPL coverage period", to request an offer from "us" of an Extended Reporting Period (with respect to "wrongful employment acts" which take place after the "original inception date" and prior to the effective time of the "Transaction"). We shall offer such Extended Reporting Period pursuant to such terms, conditions, and premium as we may reasonably decide. In the event of a "Transaction", the right to an Extended Reporting Period shall not otherwise exist except as indicated in this paragraph.



OBCH332709      1304500

### G. Change in Control of "Named Insured"

If during the "EPL coverage period":

1. the "named insured" shall consolidate with or merge into, or sell all or substantially all of its assets to any other person or entity or group of persons or entities acting in concert; or

2. any person or entity or group of persons or entities acting in concert shall acquire an amount of the outstanding securities representing more than fifty (50%) percent of the voting power for the election of directors or General Partners of the "named insured" (in the event the "named insured" is a Partnership), or acquires the voting rights of such an amount of such securities; or

3. a General Partner of the "named insured" (in the event the "named insured" is a partnership) withdraws, resigns or is terminated;

(any of the above events herein referred to as the "Transaction"),

then this EPL Coverage Endorsement shall continue in full force and effect as to "wrongful employment acts" occurring after the "original inception date" and prior to the effective time of the "Transaction", but there shall be no coverage afforded by any provision of this EPL Coverage Endorsement for any actual or alleged "wrongful employment acts" occurring after the effective time of the "Transaction". This EPL Coverage Endorsement may not be canceled after the effective time of the "Transaction" and the entire premium for this EPL Coverage Endorsement shall be deemed earned as of such time. "You" shall also have the right to an offer by "us" of an Extended Reporting Period described in Clause F of this EPL Coverage Endorsement.

"You" shall give "us" written notice of the "Transaction" as soon as practicable, but not later than thirty (30) days after the effective date of the "Transaction".

### H. Legal Action Against "Us"

No person or organization has the right to join "us" as a party or otherwise bring "us" into a "suit" asking for damages from an "insured".

### I. Other Insurance

Unless expressly written to be excess over other applicable insurance, it is intended that the insurance provided by this EPL Coverage Endorsement shall be primary.

### J. EPL Coverage Endorsement Changes

This EPL Coverage Endorsement contains all the agreements between "you" and "us" concerning this insurance. The first "named insured" in the Supplemental Declarations of this EPL Coverage Endorsement is authorized to request changes in this EPL Coverage Endorsement. This EPL Coverage Endorsement can only be changed by a written endorsement "we" issue and make part of this EPL Coverage Endorsement.

### K. Representations

Any and all relevant provisions of this EPL Coverage Endorsement may be voidable by "us" in any case of fraud, intentional concealment, or misrepresentation of material fact by any "insured".

### L. Special Rights and Duties of the "Named Insured"

"You" agree that when there is more than one person and/or entity covered under this EPL Coverage Endorsement, the "named insured" in the Supplemental Declarations of this EPL Coverage Endorsement shall act on behalf of all "insureds" as to:

1. Giving of notice of a "claim" or "suit";

2. Giving and receiving notice of cancellation or nonrenewal;

3. Payment of premiums and receipt of return premiums;

4. Acceptance of any endorsements issued to form a part of this EPL Coverage Endorsement; or

5. Purchasing or deciding not to purchase the Extended Reporting Period Endorsement.

### M. Headings

The description in the headings of this EPL Coverage Endorsement are solely for convenience, and form no part of the terms and conditions of coverage.

### SECTION VII. DEFINITIONS

A. "Bodily injury" means physical injury, sickness, or disease, including death resulting therefrom

B. "Claim" means a written demand for money. The term "claim" shall also mean an Equal Employment Opportunity Commission (EEOC), Department of Labor (DOL) or Office of Federal Contract Compliance Program (OFCCP) (or similiar

federal, state or local agency) proceeding or investigation commenced by the filing of a notice of charges, service of a complaint or similar document of which notice has been given to "you". However, in no event, shall the term "claim" include any labor or grievance proceeding, which is subject to a collective bargaining agreement.

**C.** "Class Action Suit" means any suit seeking certification or certified as a class action by a federal or state court.

**D.** "Defense Costs" means reasonable and necessary fees, costs and expenses consented to by "us" resulting solely from the investigation, adjustment, defense and appeal of a "claim" or "suit" against "you". In no event shall "Defense Costs" include "your" or "our" routine on-going expenses, including, without limitation, the salaries of "your" "employees", officers or staff attorneys.

**E.** "Employee" means an individual whose labor or service is engaged by and directed by "you" for remuneration, whether such individual is in a supervisory, co-worker or subordinate position or otherwise, including any part-time, seasonal, and temporary "employees". Independent contractors and individuals who are leased to the "insured " are not "employees".

**F.** "Loss(es)" means damages (including front pay and back pay), judgments, settlements, statutory attorney fees, and "defense costs", however, "loss" shall not include: (1) civil or criminal fines or penalties imposed by law; (2) punitive or exemplary damages; (3) the multiplied portion of multiplied damages; (4) taxes; (5) any amount for which the "insureds" are not financially liable or which are without legal recourse to the "insureds"; (6) employment related benefits, stock options, perquisites, deferred compensation or any other type of compensation other than salary, wages or bonus compensation; (7) matters which may be deemed uninsurable under the law pursuant to which this EPL Coverage Endorsement shall be construed; or (8) any pre-judgment or post-judgment interest on any judgment.

**G.** "Named Insured" means the person or organization designated in the Supplemental Declarations page of this EPL Coverage Endorsement.

**H.** "Original inception date" refers to the date specified in the Supplemental Declarations of this EPL Coverage Endorsement.

**I.** "EPL coverage period" means the period commencing on the effective date shown in the Supplemental Declarations of this EPL Coverage Endorsement. This period ends on the earlier of the expiration date or the effective date of cancellation of this EPL Coverage Endorsement. If "you" became an "insured" under this EPL Coverage Endorsement after the effective date, the "EPL coverage period" begins on the date "you" became an "insured".

**J.** "Property Damage" means physical injury to, or destruction of, tangible property including the loss of use of thereof, or loss of use of tangible property, which has not been physically injured or destroyed.

**K.** "Related Wrongful Employment Act(s)" means "wrongful employment acts" which are the same, related or continuous, or "wrongful employment acts" which arise from a common nucleus of facts. "Claims" or "suits" can allege "related wrongful employment acts", regardless of whether such "claims" or "suits" involve the same or different claimants, "insureds" or legal causes of actions.

**L.** "Retaliation" means a "wrongful employment act" of an "insured" alleged to be in response to, the actual or attempted exercise by an "employee" of any right that such "employee" has under the law. Provided, however, "retaliation" shall not include the "wrongful employment act" of an "insured" alleged to be in response to the threat of or the actual filing of any claim or suit under the Federal False Claims Act or any other federal state, local or foreign "whistleblower law".

**M.** "Subsidiary" means:

**1.** Any for-profit organization which, on or before the inception of the "EPL coverage period", is more than 50% owned by the "named insured", either directly or indirectly through one or more of its "subsidiaries"; or

**2.** A for-profit organization which becomes a "subsidiary" during the "EPL coverage period", but only upon the condition that within 90 days of its becoming a "subsidiary", the "named insured" shall have provided "us" with full particulars of the new "subsidiary" and agreed to any additional premium or amendment of the provisions of this EPL Coverage Endorsement required

by "us" relating to such new "subsidiary". Further, coverage as shall be afforded to the new "subsidiary" is conditioned upon the "named insured" paying when due any additional premium required by "us" relating to such new "subsidiary".

An organization becomes a "subsidiary" when the "named insured" owns more than fifty (50%) percent ownership interest in such "subsidiary", either directly, or indirectly through one or more of its "subsidiaries". An organization ceases to be a "subsidiary" when the "named insured" ceases to own more than a fifty (50%) percent ownership in such "subsidiary", either directly, or indirectly through one or more of its "subsidiaries".

In all events, coverage as is afforded under this EPL Coverage Endorsement with respect to a "claim" made or "suit" brought against any "subsidiary" or an "insured" of any "subsidiary", shall only apply to "wrongful employment act(s)" commenced or allegedly commenced after the effective time that such "subsidiary" became a "subsidiary", and prior to the time that such "subsidiary" ceased to be a "subsidiary".

**N.** "Suit" means a civil proceeding or an administrative proceeding seeking money damages, and includes an arbitration, mediation or any other alternative dispute resolution procedure seeking such damages, to which the "insured" must submit or may submit with "our" consent. "Suit" shall not include any civil proceeding or administrative proceeding arising from any labor or grievance dispute which is subject to a collective bargaining agreement.

**O.** "Whistleblower law" means a statute, rule or regulation, which protects an employee against discrimination from his or her employer, if the employee discloses or threatens to disclose to a superior or any governmental agency; or who gives testimony relating to, any action with respect to the employer's operations, which may be a violation of public policy as reflected in legislation, administrative rules, regulations or decisions, judicial decisions, and professional codes of ethics.

**P.** "Wrongful Employment Act(s)" means any actual or alleged:

**1.** wrongful dismissal, discharge or termination (either actual or constructive), including breach of an implied contract;

**2.** harassment (including sexual harassment, whether quid pro quo, hostile work environment or otherwise);

**3.** discrimination (including but not limited to discrimination based upon age, gender, race, color, national origin, religion, sexual orientation or preference, pregnancy or disability);

**4.** "retaliation" (including lockouts);

**5.** employment-related misrepresentation(s) to "your" "employee" or applicant for employment with "you";

**6.** employment-related libel, slander, humiliation, mental anguish, infliction of emotional distress, defamation, or invasion of privacy;

**7.** wrongful failure to employ or promote;

**8.** wrongful deprivation of career opportunity, wrongful demotion or negligent "employee" evaluation, including the giving of negative or defamatory statements in connection with an "employee" reference;

**9.** wrongful discipline;

**10.** failure to grant tenure;

**11.** failure to provide or enforce adequate or consistent corporate policies and procedures relating to any "wrongful employment act"

**12.** negligent supervision or hiring by an "insured", relating to any of the above;

**13.** violation of an individual's civil rights relating to any of the above.

The
**Hanover**
Insurance Group™

OBCH332709      1304500

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

The
**Hanover**
Insurance Group™

OBCH332709     1304500

# IMPORTANT NOTICE TO POLICYHOLDERS

No coverage is provided by this policyholder notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverage you are provided. If there is any conflict between the policy and this notice, THE PROVISIONS OF THE POLICY SHALL PREVAIL.

## EMPLOYMENT PRACTICES LIABILITY COVERAGE

The Employment Practices Liability Insurance Coverage is designed to protect small commercial businesses with 25 employees or fewer for liability damages and defense costs due to claims brought by employees who allege employment discrimination, wrongful termination, or sexual harassment.

This coverage will be written on any risk that meets the eligibility criteria under the portfolio Employment Practices Liability Coverage. Such eligibility will be determined by state, class and employee count of individual Insureds.

This coverage will attach to all eligible policies, unless waived.  There is a premium charge for this coverage. The coverage provided has an Aggregate Limit of Liability of $25,000 for all losses combined, including defense costs. This coverage has a $5,000 Deductible Amount for each claim. Optional $100,000 and $250,000 Limits of Liability are also available for additional premium charges.

Coverage may be waived by signing and returning the **Employment Practices Liability Coverage Waiver, 391-1205,** to The Hanover Insurance Group, 440 Lincoln Street, Worcester, MA 01653.

Such waiver will continue automatically through subsequent renewals, unless rescinded by the company at your request.

Please contact your agent for additional information or if you have any questions, or if you wish to waive this coverage.

3



OBCH332709    1304500

THIS NOTICE IS PROVIDED IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS NOTICE DOES NOT GRANT COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF COVERAGE UNDER THE POLICY. IF THERE IS A CONFLICT BETWEEN THIS NOTICE AND THE POLICY, THE PROVISIONS OF THE POLICY SHALL APPLY.

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

## SCHEDULE

| DISCLOSURE OF PREMIUM: | | |
|---|---|---|
| Total Terrorism Premium | $ ███████ | |
| Fire Following Premium | $ ███████ | |
| Other than Fire Following Premium | $ ███████ | |

**Disclosure of Terrorism Coverage Available**

You are hereby notified that under the Terrorism Risk Insurance Act, as amended, you have a right to purchase insurance coverage for losses resulting from "acts of terrorism" defined in Section 102(1) of the Act as follows:

Any act or acts that are certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

The premium charged for this coverage is provided in the **SCHEDULE** above and does not include any charges for the portion of loss that may be covered by the Federal Government as described below. This premium has been added to your policy and unless this form is signed and returned to us to reject terrorism coverage, coverage for Certified Acts of Terrorism is provided by your policy.

Your policy may contain other exclusions which could affect your coverage, such as an exclusion for Nuclear Events or Pollution. **Please read your policy carefully**.

**Note for Commercial Property or Commercial Inland Marine Policyholders in Standard Fire States:**

In Standard Fire states, terrorism exclusions make an exception for (and therefore provide coverage for) fire losses resulting from an act of terrorism. Any policyholder with a location that we insure in a Standard Fire State that rejects our offer of terrorism coverage in this form will still have coverage with us for fire losses resulting from an act of terrorism.

**Explanation of Premium**

If a dollar amount is shown for Fire Following Premium in the **SCHEDULE** above that means we insure a location of yours in a Standard Fire State. Fire Following Premium is shown in the **SCHEDULE** above regardless of whether a policyholder with a location that we insure in a Standard Fire State accepts or rejects terrorism coverage with us. Fire Following Premium represents the charge for the coverage we provide for fire losses resulting from acts of terrorism. Fire Following Premium does not include Other Than Fire Following Premium. All Other Than Fire Following Premium is shown in the Other Than Fire Following Premium field in the **SCHEDULE** above.

If a dollar amount is shown for Other Than Fire Following Premium in the **SCHEDULE** above that means you have accepted terrorism coverage with us. Other Than Fire Following Premium represents the charge for terrorism coverage. Other Than Fire Following Premium does not include Fire Following Premium. If applicable, all Fire Following Premium is shown in the Fire Following Premium field in the **SCHEDULE** above.

The dollar amount shown for Total Terrorism Premium in the **SCHEDULE** above represents the sum of premium for Fire Following Premium and Other Than Fire Following Premium.

**Disclosure of Federal Participation in Payment of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 80% of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**Cap on Insurer Participation in Payment of Terrorism Losses**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**Rejection of Terrorism Insurance Coverage\***

_____    I decline to purchase terrorism coverage for certified acts of terrorism. I understand that I will have no coverage for losses resulting from certified acts of terrorism.

CITIZENS INSURANCE COMPANY OF AMERICA

_____     _____
Applicant/Policyholder Signature     Insurance Company

                                     OBC-H332709-01
_____     _____
Print Name                           Quote or Policy Number

_____
Date

\*If this policy is a renewal and:

**a.** You have previously submitted a signed Rejection, you are not required to submit an additional Rejection at this time; or

**b.** You have previously accepted coverage and now wish to reject, you are required to complete and sign the Rejection of Terrorism Insurance Coverage above.

The **Hanover**
Insurance Group™

OBCH332709        1304500

## IDENTITY THEFT RESOLUTION SERVICES
### (POWERED BY IDENTITY THEFT 911)

Are you or your resident family members at risk for identity theft? Do you need expert assistance with an identity-related concern? IDENTITY THEFT RESOLUTION SERVICES from Identity Theft 911 give you one-on-one assistance in the following situations:

**Access Phone Number: 800-628-0250**

If you or a resident family member suffer the loss or theft of private personal data, contact Identity Theft 911 for proactive guidance that can include Fraud Alert service. If you wish, a fraud specialist can assist and place a free fraud alert on your credit file to reduce the risk of fraudulent accounts opened in your name. This service also includes additional preventative measures and one-on-one assistance, depending on the risk.

If you or a resident family member suffer the loss or theft of private personal data, contact Identity Theft 911 for Identity Restoration Case Management services. A fraud specialist will guide you through the process of restoring your identity and handle all of the work, including completed documentation and notification assistance. Victims also receive one year of credit monitoring, as well as free fraud monitoring of over 1,000 public databases.

**Learn How to Protect Your Identity**

We recommend that you regularly visit The Hanover Insurance Group and Identity Theft 911 comprehensive resource and knowledge library - www.hanover-identitytheft911.com - for the latest media alerts, identity theft tips, in-depth newsletters and much more.

Keep this access information handy in case you ever need help with an identity-related problem.

**Access Phone Number: 800-628-0250**

The Hanover Insurance Group makes no guarantee of results and assumes no liability in connection with either the information or assistance provided by Identity Theft 911. Any and all external Websites or sources referred to herein are for informational purposes only.

**The Hanover Insurance Group™**

BR 91

07

# AVENUES BUSINESSOWNERS DECLARATION

### BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 07/31/2021  NUMBER 04

SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD TO BACK OUT ENDT#3&2

| Policy Number | Policy Period | | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| | From | To | | |
| OBC-H332709-01 | 07/31/2021 | 07/31/2022 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

**Agent**

847-307-6100
THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

**Policy Period:  Beginning and Ending at 12:01 a.m. Standard Time at the Location of the Described Premises.**

**Business Type:**  CORPORATION (SINGLE).

**Mortgagee/Loss Payable:**

SEE ADDITIONAL INTEREST SCHEDULE

**Business of the Named Insured:**

SERVICE.

In consideration of the premium, insurance is provided the Named Insured with respect to those premises described in the Schedule below and with respect to those coverages and kinds of property for which a specific Limit of Insurance is shown, subject to all of the terms of this policy including forms and endorsements made a part hereof:

### LOCATION SCHEDULE

**Described Premises:**

NO. 001 001    233 N MICHIGAN AVE SUITE 1430, CHICAGO, IL  60601

NO. 002 001    DELETED LOCATION

| SECTION I - PROPERTY | LIMITS OF INSURANCE | | | | | |
|---|---|---|---|---|---|---|
| | Loc No  001 | Bldg No 001 | Loc No | Bldg No | Loc No | Bldg No |
| **Deductible Amount** | $       1,000 | | $ | | $ | |
| **Building Amount Valuation** | NOT COVERED | | | | | |
| **Business Personal Property Valuation** | $      211,470 RC | | | | | |
| **Business Income** | ACTUAL BUSINESS LOSS SUSTAINED NOT EXCEEDING 12 CONSECUTIVE MONTHS | | | | | |
| **Business Income Waiting Period** | **Excluded / None / 24 hours / 48 hours /72 hours** 24 HOURS | | | | | |
| **SECTION II - LIABILITY** | LIMITS OF INSURANCE | | | | | |

**Liability and Medical Expenses Limits of Insurance:**

Except for Damage to Premises Rented to You,  each paid claim for the following coverages reduce the Amount of Insurance we provide during the applicable annual  period.  Please refer to  **SECTION II - LIABILITY, D. LIABILITY  AND MEDICAL  EXPENSES LIMITS OF INSURANCE,** paragraph.**4.** of the Businessowners Coverage Form.

| Liability and Medical Expenses Limit | $ 2,000,000 | Per Occurrence | $ 4,000,000 | Aggregate |
|---|---|---|---|---|
| **Medical Expenses** | $       5,000 | Each Person | | |
| **Damage to Premises Rented to You** | $      300,000 | All Perils | | |

Date Issued: 04/21/2022                     ORIGINAL/INSURED              Payment Type:   DIRECT BILL

GROUP NAME: TECHNOLOGY - SERVICES                  GROUP NUMBER: ZTS

The **Hanover** Insurance Group™

BR 91

07

# AVENUES BUSINESSOWNERS DECLARATION

## BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 07/31/2021  NUMBER 04

SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
TO BACK OUT ENDT#3&2

| Policy Number | Policy Period | | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| | From | To | | |
| OBC-H332709-01 | 07/31/2021 | 07/31/2022 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

**Agent**

847-307-6100
THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

**Additional Property Coverages and Extensions:**
See attached Schedule for Additional Coverages provided for under this Policy.

Audit Frequency: Annual

**Additional Liability Coverages:**  General Liability Broadening Endorsement
**General Liability Class**:  85219
**Description**:  CUSTOM COMPUTER PROGRAMMING
**Liability Exposure**:  $1,872,000      SALES

**Policy Forms, Endorsements and Optional Coverages Attached:**
See Forms and Endorsements Schedule

```
P R E V I O U S   P R E M I U M   I S :                                    $ ███████
N E T   P R E M I U M   C H A N G E   I S :                                  $ ██████
T O T A L   B O P   C O V E R A G E   P R E M I U M :                     $ ███████████
B O P   T E R R O R I S M   C O V G   ( I N C L U D E D   I N   T O T A L   P O L I C Y   P R E M I U M )   $ █████
      O T H E R   T H A N   F I R E   F O L L O W I N G                    $ █████
       F I R E   F O L L O W I N G                                         $ █████
T O T A L   U M B R E L L A   C O V E R A G E   P R E M I U M :            $ ██████
U M B   T E R R O R I S M   C O V G   ( I N C L U D E D   I N   T O T A L   P O L I C Y   P R E M I U M )   $ █████
D E P O S I T   P R E M I U M :                                           $ ████
T H E   T O T A L   A C T U A L   P R E M I U M :                         $ ████████
```

**Countersigned this _____ Day of _____**                    _____
                                                                        **Authorized Representative**

**This Declarations Page with the Policy Contract, Forms and Endorsements, if any,
Complete the Policy.**

Date Issued:  04/21/2022         ORIGINAL/INSURED         Payment Type: DIRECT BILL

**391-1002 08 16**                                                               **Page 2 of 2**

**The Hanover Insurance Group**

BR 91

# ADDITIONAL INTEREST SCHEDULE

**BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 07/31/2021  NUMBER 04**

07

SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
TO BACK OUT ENDT#3&2

| Policy Number | Policy Period | | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| | From | To | | |
| OBC-H332709-01 | 07/31/2021 | 07/31/2022 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**
COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

**Agent**
847-307-6100
THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

| Name And Address | Interest Type | Location | Building |
|---|---|---|---|
| SILICON VALLEY BANK<br>3003 TASMAN DRIVE HF 150<br>SANTA CLARA, CA  95054 | | | |
| | LENDER'S LOSS PAYABLE | 0 0 2 | 0 1 |

Form  391-1014 (7-99)
Date Issued:  04/21/2022                          ORIGINAL/INSURED

The **Hanover**
Insurance Group™

BR 91      **ADDITIONAL PROPERTY COVERAGES AND EXTENSIONS**

**BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 07/31/2021  NUMBER 04**

07      SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
TO BACK OUT ENDT#3&2

| Policy Number | Policy Period From | To | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| OBC-H332709-01 | 07/31/2021 | 07/31/2022 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

**Agent**

847-307-6100

THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

| Additional Property Coverages & Extensions | Deductible | Amount Included | Additional Amount Increase | Total Limit |
|---|---|---|---|---|
| DEBRIS REMOVAL | NONE | $25,000 | N/A | $25,000 |
| PRESERVATION OF PROPERTY | NONE | 90 DAYS | N/A | 90 DAYS |
| FIRE DEPARTMENT SERVICE CHARGE | NONE | $25,000 | N/A | $25,000 |
| POLLUTANT CLEAN-UP AND REMOVAL | NONE | $25,000 | N/A | $25,000 |
| MONEY ORDERS AND COUNTERFEIT MONEY | $500 | $5,000 | N/A | $5,000 |
| FORGERY OR ALTERATION | $500 | $25,000 | N/A | $25,000 |
| GLASS EXPENSES | $250 | INCLUDED | N/A | INCLUDED |
| REWARDS ARSON, THEFT AND VANDALISM | NONE | $10,000 | N/A | $10,000 |
| TENANT SIGNS | $500 | $5,000 | N/A | $5,000 |
| FIRE PROTECTION EQUIPMENT RECHARGE | NONE | $25,000 | N/A | $25,000 |
| INSTALLATION FLOATER | $1,000 | $5,000 | N/A | $5,000 |
| FINE ARTS | $500 | $10,000 | N/A | $10,000 |
| FENCE AND WALLS | SEE BUILDING AND CONTENTS DEDUCTIBLE | INCLUDED | N/A | INCLUDED |
| SALES REPRESENTATIVE SAMPLES | $1,000 | $5,000 | N/A | $5,000 |
| LEASEHOLD INTEREST (TENANT'S ONLY) | NONE | $10,000 | N/A | $10,000 |
| UNAUTHORIZED BUSINESS CREDIT CARD USE | NONE | $5,000 | N/A | $5,000 |
| UTILITY SERVICES | | | N/A | |
|   DIRECT DAMAGE | $500 | $10,000 | N/A | $10,000 |
|   BUSINESS INCOME | 24 HOURS | $5,000 | N/A | $5,000 |
| DEFERRED PAYMENTS | NONE | $5,000 | N/A | $5,000 |
| NEWLY ACQUIRED OR CONSTRUCTED PROPERTY | | 180 DAYS | N/A | 180 DAYS |
|   BUILDINGS | $500 | $1,000,000 | N/A | $1,000,000 |
|   PERSONAL PROPERTY | $500 | $500,000 | N/A | $500,000 |
|   BUSINESS INCOME AND EXTRA EXPENSE | SEE WAITING PERIOD | $250,000 | N/A | $250,000 |
| OUTDOOR PROPERTY - TREES, SHRUBS AND PLANTS-$1,000 EACH ITEM | $500 | $10,000 | N/A | $10,000 |

Form  391-1018  (7-02)
Date Issued:  04/21/2022

The Hanover
Insurance Group™

BR 91      **ADDITIONAL PROPERTY COVERAGES AND EXTENSIONS**

**BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 07/31/2021 NUMBER 04**

07      SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
     TO BACK OUT ENDT#3&2

| Policy Number | Policy Period From | To | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| OBC-H332709-01 | 07/31/2021 | 07/31/2022 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL 60601

**Agent**

847-307-6100

THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL 60010

| Additional Property Coverages & Extensions | Deductible | Amount Included | Additional Amount Increase | Total Limit |
|---|---|---|---|---|
| PERSONAL EFFECTS | $500 | $10,000 | N/A | $10,000 |
| INVENTORY AND LOSS APPRAISAL | NONE | $10,000 | N/A | $10,000 |
| KEY REPLACEMENT AND LOCK REPAIR | NONE | $1,000 | N/A | $1,000 |
| APPURTENANT STRUCTURE | $500 | $50,000 | N/A | $50,000 |
| PERSONAL PROPERTY IN TRANSIT | $1,000 | $10,000 | N/A | $10,000 |
| EXTENDED BUSINESS INCOME | | 30 DAYS | N/A | 30 DAYS |
| EMPLOYEE THEFT INCLUDING ERISA COMPLIANCE | $1,000 | $10,000 | N/A | $10,000 |
| COMMERCIAL TOOLS AND SMALL EQUIP | $500 | $5,000 | N/A | $5,000 |
| PERSONAL PROPERTY OFF PREMISES | $1,000 | $50,000 | N/A | $50,000 |
| BUSINESS INCOME FROM DEPENDENT PROPERTIES | 72 HOURS | $5,000 | N/A | $5,000 |
| TERRORISM | SEE BUILDING AND CONTENTS DEDUCTIBLE | SAME AS PROPERTY LIMITS OF INSURANCE IF COVERED | N/A | SAME AS PROPERTY LIMITS OF INSURANCE IF COVERED |
| INTERRUPTION OF COMPUTER OPERATIONS | SEE WAITING PERIOD | $10,000 | N/A | $10,000 |
| BUSINESS PERSONAL PROPERTY TEMPORARILY IN PORTABLE STORAGE UNITS | $500 | $25,000 | N/A | $25,000 |
| CIVIL AUTHORITY | 72 HOURS | 4 WEEKS | N/A | 4 WEEKS |
| COMPUTER AND FUNDS TRANSFER FRAUD | $500 | $5,000 | N/A | $5,000 |
| LIMITED COVERAGE FOR FUNGI, WET ROT, OR DRY ROT | $500 | $50,000 | N/A | $50,000 |
| PAVED SURFACES | $500 | $25,000 | N/A | $25,000 |
| TENANT BUILDING COVERAGE - REQUIRED BY LEASE | $500 | $25,000 | N/A | $25,000 |
| TENANT BUSINESS PERSONAL PROPERTY COVERAGE - REQUIRED BY LEASE | $500 | $25,000 | N/A | $25,000 |

Form 391-1018 (7-02)
Date Issued: 04/21/2022

ORIGINAL/INSURED

**The Hanover** Insurance Group™

BR 91

# ADDITIONAL PROPERTY COVERAGES AND EXTENSIONS

**BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 07/31/2021  NUMBER 04**

07
SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
TO BACK OUT ENDT#3&2

| Policy Number | Policy Period From | To | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| OBC-H332709-01 | 07/31/2021 | 07/31/2022 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

**Agent**

847-307-6100
THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

| Additional Property Coverages & Extensions | Deductible | Amount Included | Additional Amount Increase | Total Limit |
|---|---|---|---|---|
| THEFT OF TELEPHONIC SERVICES | $500 | $25,000 | N/A | $25,000 |
| UNDERGROUND PIPES | $500 | INCLUDED | N/A | INCLUDED |

Form  391-1018  (7-02)
Date Issued:  04/21/2022

ORIGINAL/INSURED

**The Hanover**
Insurance Group™

BR 91     ADDITIONAL PROPERTY COVERAGES AND EXTENSIONS

**BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 07/31/2021  NUMBER 04**

07     SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
TO BACK OUT ENDT#3&2

| Policy Number | Policy Period From | To | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| OBC-H332709-01 | 07/31/2021 | 07/31/2022 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

Named Insured and Address        Agent

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

847-307-6100
THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

| Additional Property Coverages & Extensions | Loc. No. | Bldg. No. | Deductible Amount | Amount Included | Additional Amount | Total Limit |
|---|---|---|---|---|---|---|
| ORDINANCE OR LAW | 001 | 001 | NONE | $5,000 | N/A | $5,000 |
| COMPUTER EQUIPMENT | | | $500 | $35,000 | N/A | $35,000 |
| COMPUTER EQUIPMENT EXTRA EXPENSE | | | NONE | $5,000 | N/A | $5,000 |
| ELECTRONIC VANDALISM | | | $500 | | | |
|   OCCURRENCE LIMIT | | | | $10,000 | N/A | $10,000 |
|   AGGREGATE LIMIT | | | | $10,000 | N/A | $10,000 |
| VALUABLE PAPERS AND RECORDS (OTHER THAN ELECTRONIC DATA) | | | $1,000 | | | |
|   ON PREMISES | | | | $25,000 | N/A | $25,000 |
|   OFF PREMISES | | | | $25,000 | N/A | $25,000 |
| ACCOUNTS RECEIVABLE | | | $1,000 | | | |
|   ON PREMISES | | | | $25,000 | N/A | $25,000 |
|   OFF PREMISES | | | | $25,000 | N/A | $25,000 |
| MONEY AND SECURITIES | | | $500 | | | |
|   ON PREMISES | | | | $10,000 | N/A | $10,000 |
|   OFF PREMISES | | | | $5,000 | N/A | $5,000 |
| EQUIPMENT BREAKDOWN | | | $1,000 | INCLUDED | N/A | INCLUDED |
| PROTECTIVE DEVICES CREDIT | | | | | | |
|   AUTOMATIC SPRINKLER SYSTEM | | | NO | | | |
|   AUTOMATIC FIRE ALARM | | | NO | | | |
|   CENTRAL STATION SECURITY | | | NO | | | |
| COLLAPSE | | | $500 | INCLUDED | N/A | INCLUDED |
| UTILITY SERVICES | | | | | | |
|   DIRECT DAMAGE | | | $500 | $50,000 | N/A | $50,000 |
|   TIME-ELEMENT | | | 24 HOURS | $50,000 | N/A | $50,000 |

Form  391-1018A (9-04)
Date Issued:  04/21/2022

**The Hanover** Insurance Group™

BR 91        **AVENUES BUSINESSOWNERS DECLARATION**

**BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 07/31/2021  NUMBER 04**

07

SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
TO BACK OUT ENDT#3&2

| Policy Number | Policy Period | | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| | From | To | | |
| OBC-H332709-01 | 07/31/2021 | 07/31/2022 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**
COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

**Agent**
847-307-6100
THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

## Forms and Endorsements Schedule

| | Form Number | Edition Date | Description |
|---|---|---|---|
| * | 391-1402 | 08/16 | TECHNOLOGY DELUXE GOLD BROAD |
| * | 391-1371 | 01/10 | REV INFRINGE OF COPYRIGHT EXCL |
| * | BP0404 | 01/10 | HIRED AUTO NON-OWNED AUTO LIAB |
| * | 401-1374 | 12/20 | DISCLOSURE PURSUANT TO TRIA |
| * | 391-1114 | 01/15 | CAP ON LOSSES FROM TERRORISM |
| * | 391-1313 | 01/15 | EXCLUSION OF PUNITIVE DAMAGES |
| | 391-1006 | 08/16 | LIABILITY SPECIAL BROADENING |
| | BP0417 | 01/10 | EMPLYMT RELATED PRACTICES EXCL |
| | 231-0475 | 06/89 | PILR NOTICE |
| | 391-1003 | 08/16 | BUSINESSOWNERS COVERAGE FORM |
| | BP0643 | 04/06 | IL CHANGES - DEFENSE COSTS |
| | 391-1901 | 06/18 | ILLINOIS CHANGES |
| | 421-0022 | 07/02 | ASBESTOS EXCLUSION |
| | 391-1102 | 08/16 | EXCL - FUNGI OR BACTERIA LIAB |
| | 331-0053 | 08/16 | ILLINOIS INQUIRY NOTICE |
| | 391-1375 | 01/10 | AMEND LIMITS PERSONAL AND ADV |
| * | 391-1218 | 06/06 | EPLI INSURANCE CVG ENDR ILLINO |
| * | 391-1206 | 06/06 | EPLI IMPORTANT NOTICE |
| * | 391-1208 | 03/06 | EPLI SUPPLEMENTAL DEC |
| * | BP1203 | 01/10 | LOSS PAYABLE PROVISIONS |
| | 401-1504 | 01/20 | CAP LOSSES CERT ACTS OF TERR |
| * | 391-1440 | 01/15 | DATA BREACH COVERAGE FORM |
| * | 391-1442 | 12/09 | ASSOC AND FAMILY MBR ADD COV |
| * | 391-1585 | 12/11 | IDENTITY THEFT NOTICE |

Form  391-1016 (7-99
Date Issued:  04/21/2022                  ORIGINAL/INSURED

The **Hanover**
Insurance Group™

BR 91      **AVENUES BUSINESSOWNERS DECLARATION**

**BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 07/31/2021  NUMBER 04**

07

     SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
TO BACK OUT ENDT#3&2

| Policy Number | Policy Period | | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| | From | To | | |
| OBC-H332709-01 | 07/31/2021 | 07/31/2022 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

**Agent**

847-307-6100
THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

### Forms and Endorsements Schedule

| | Form Number | Edition Date | Description |
|---|---|---|---|
| * | 391-1854 | 01/15 | IL CHANGES - DATA BREACH |
| | 401-1235 | 12/14 | CANCEL NOTICE TO DESIGNATED |
| | 391-1941 | 08/16 | AI DESIGNATED PER OR ORG |
| | BP0497 | 07/02 | WAIVER OF TRANSFER OF RIGHTS |

Form  391-1016 (7-99
Date Issued:  04/21/2022             ORIGINAL/INSURED

**COMMERCIAL EMPLOYMENT PRACTICES**
**LIABILITY INSURANCE COVERAGE ENDORSEMENT**
**SUPPLEMENTAL DECLARATIONS**



OBCH332709      1304500

Policy Number:  OBC H332709 01
Account Number:  1521871564                                          Agent:  1304500
Named Insured:  COOLER SCREENS INC

---

## NOTICE

· EXCEPT TO SUCH EXTENT AS MAY OTHERWISE BE PROVIDED HEREIN, THE COVERAGE OF THIS COVERAGE ENDORSEMENT IS LIMITED TO LIABILITY FOR ONLY THOSE CLAIMS OR SUITS THAT ARE FIRST MADE AGAINST THE INSUREDS DURING THE EPL COVERAGE PERIOD AND REPORTED IN WRITING TO THE INSURER PURSUANT TO THE TERMS HEREIN. VARIOUS PROVISIONS IN THIS COVERAGE ENDORSEMENT RESTRICT COVERAGE. PLEASE READ THE ENTIRE COVERAGE ENDORSEMENT CAREFULLY TO DETERMINE RIGHTS, DUTIES AND WHAT IS AND IS NOT COVERED.

· THE LIMIT OF LIABILITY AVAILABLE TO PAY JUDGEMENTS OR SETTLEMENTS UNDER THIS COVERAGE ENDORSEMENT SHALL BE REDUCED BY AMOUNTS INCURRED FOR LEGAL DEFENSE. AMOUNTS INCURRED FOR LEGAL DEFENSE SHALL BE APPLIED AGAINST THE DEDUCTIBLE AMOUNT.

---

| | | |
|---|---|---|
| **EPL Coverage Period:** | From: 07/31/2021<br><br>To:    07/31/2022 | At 12:01 A.M. Standard Time at your mailing address shown on the Declarations page of this policy. |
| **EPL Aggregate Limit of Liability:** | $      25,000.00 | Aggregate for all "loss" combined, including "defense costs". |
| **EPL Deductible Amount:** | $       5,000.00 | For "loss" arising from claims or suits alleging the same "wrongful employment act" or "related wrongful employment acts". |
| **EPL Original Inception Date:** | 07/31/2020 | (Enter "original inception date") If no date is shown, "we" will consider the "original inception date" to be the same as the beginning of this coverage endorsement. |

This insurance does not apply to "loss" arising out of a "wrongful employment act" that: (1) commences on or takes place prior to the "original inception date" shown here, or (2) arises out of incidents or circumstance of which "you" had knowledge prior to the "original inception date" shown.

| | |
|---|---|
| **EPL COVERAGE PREMIUM:** | $    |

391-1208 03 06

The
**Hanover**
Insurance Group™

| RENEWAL OF POLICY |
|---|
| **COMMERCIAL UMBRELLA POLICY** |
| THESE DECLARATIONS TOGETHER WITH THE COMMON POLICY CONDITIONS AND COVERAGE FORM(S) COMPLETE THE BELOW NUMBERED POLICY |

POLICY NUMBER: OBC-H332709-01

DECLARATIONS

| **Named Insured and Address** (No., Street, Town, County, State) | **Agent** |
|---|---|
| COOLER SCREENS INC<br>233 N MICHIGAN AVE SUITE 1430<br>CHICAGO, IL 60601 | 130450000<br>THE PLEXUS GROUPE LLC<br>SUITE 300<br>21805 W. FIELD PARKWAY<br>DEER PARK, IL 60010 |

**Policy Period:** (Month, Day, Year)

From 07/31/2021 To 07/31/2022
12:01 AM, standard time at the address of the Named Insured as stated herein.

Form of Business:
☐ Individual  ☐ Partnership  ☒ Corporation  ☐ Limited Liability Company
☐ Organization (Other than Partnership, Joint Venture, or Limited Liability Company

**Business Description:**
**SERVICE.**

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY. THIS PREMIUM MAY BE SUBJECT TO AUDIT.

| **Limit of Liability (Section III)** | |
|---|---|
| Each Occurrence Limit | $ 1,000,000 |
| General Aggregate Limit | $ 1,000,000 |
| Product Completed Operations Aggregate Limit | $ 1,000,000 |

| **Retained Limit** | **Self-Insured Retention** | **$ NIL** |
|---|---|---|

**Premium Computation**

Annual Premium $ ▇▇▇
Advance Premium $ ▇▇▇

**Endorsements:**

| | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| CU2130 | 01/15 | CU2156 | 06/06 | CU2136 | 01/15 | 473-1150 | 05/12 | 473-1157 | 01/10 | 473-0004 | 10/05 |
| CU0004 | 05/09 | 473-0016 | 10/05 | 473-0023 | 10/05 | 473-0040 | 10/05 | CU0200 | 12/07 | CU0001 | 12/07 |
| 473-2194 | 08/16 | CU2123 | 02/02 | 473-2211 | 10/16 | CU2125 | 12/01 | CU2255 | 09/00 | CU2127 | 12/04 |
| CU2150 | 03/05 | IL0017 | 11/98 | CU2436 | 12/05 | IL0162 | 09/08 | 473-1125 | 02/09 | CU2186 | 05/14 |

☐ PRE PAID - the total annual premium is due at inception.

☐ HANOCASH - the annual premium is payable according to the term of the Hanocash endorsement attachment

☐ ACCOUNT BILL  ☒ DIRECT BILL  ☐ Annual  ☐ Semi-Annual  ☐ Other
Audit period: Non Auditable Unless indicated by ☐ Annual  ☐ Semi-Annual  ☐ Other
If you cancel this policy, we shall receive and retain not less than $ as a policy minimum premium.

**The Hanover** Insurance Group™

OBCH332709    1304500

## SCHEDULE A - SCHEDULE OF UNDERLYING POLICIES

**Insured:**    COOLER SCREENS INC

**Effective on and after:  07/31/2021  ,  12:01 AM Standard Time**

**This schedule is part of Policy Number:   OBC-H332709-01**

| CARRIER, POLICY NUMBER & PERIOD | TYPE OF POLICY | APPLICABLE LIMITS OR AMOUNT OF INSURANCE |
|---|---|---|
| (a)Carrier:<br><br>CITIZENS INSURANCE COMPANY OF AMERICA<br><br>Policy Number:   OBC-H332709-01<br>Policy Period:   07/31/2021    TO  07/31/2022 | Commercial General Liability<br>[X]Non-owned & Hired Autos | $  2,000,000    Each  Occurrence<br>$  4,000,000    General  Aggregate<br>$  4,000,000    Product/Compl eted Operations Aggregate |
| (b) Carrier:<br><br><br>Policy Number:<br>Policy Period: | Comprehensive Automobile Liability | Bodily Injury and Property Damage Liability Combined<br>$                Each Accident<br>Bodily Injury<br>$                Each Person<br>$                Each Accident<br>Property Damage<br>$                Each Accident |
| (c)Carrier:<br><br>EXCLUDED<br>Policy Number:<br>Policy Period: | Standard Workers Compensation & Employers Liability<br>**Please Note:** The Umbrella Coverage for Workers Compensation and Employers Liability is not applicable in situations where an employee is subject to the New York Workers Compensation Law. | **Coverage B - Employers Liability**<br>Bodily Injury by Accident<br>$                Each  Accident<br>Bodily Injury by Disease<br>$                Aggregate<br>$                Each  Employee |
| (d)Carrier:<br><br><br>Policy Number:<br>Policy Period: | Liquor Liability | $                Limit of   Liability |
| (e)Carrier:<br><br><br>Policy Number:<br>Policy Period: | Professional Liability | $                Limit of Liability |
| An "X" marked in the box provided indicates these broadening or optional coverages are provided in the Underlying Insurance | | |
| (f) Carrier:<br><br><br>Policy Number:<br>Policy Period: | Directors & Officers Liability | $                Limit of   Liability |
| (g) Carrier:<br><br><br>Policy Number:<br>Policy Period: | Employee Benefits Liability | $                Limit of   Liability |

**Countersigned By:**

**Date:**

**Authorized Representative of the Company**

473-1103 (11/08)

The **Hanover** Insurance Group™

OBCH332709     1304500

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# HIRED AUTO AND NON-OWNED AUTO LIABILITY

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**SCHEDULE**

| Coverage | Additional Premium |
|---|---|
| **A.  Hired Auto Liability** | $ |
| **B.  Non-owned Auto Liability** | $ |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. ||

**A.** Insurance is provided only for those coverages for which a specific premium charge is shown in the Declarations or in the Schedule.

**1. Hired Auto Liability**

The insurance provided under Paragraph **A.1. Business Liability** in **Section II - Liability** applies to "bodily injury" or "property damage" arising out of the maintenance or use of a "hired auto" by you or your "employees" in the course of your business.

**2. Non-owned Auto Liability**

The insurance provided under Paragraph **A.1. Business Liability** in **Section II - Liability** applies to "bodily injury" or "property damage" arising out of the use of any "non-owned auto" in your business by any person.

**B.** For insurance provided by this endorsement only:

**1.** The exclusions under Paragraph **B.1. Applicable To Business Liability Coverage** in **Section II - Liability,** other than Exclusions **a., b., d., f.** and **i.** and the **Nuclear Energy Liability Exclusion,** are deleted and replaced by the following:

**a.** "Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of injury.

This exclusion does not apply to:

**(1)** Liability assumed by the insured under an "insured contract"; or

**(2)** "Bodily injury" arising out of and in the course of domestic employment by the insured unless benefits for such injury are in whole or in part either payable or required to be provided under any workers' compensation law.

**b.** "Property damage" to:

**(1)** Property owned or being transported by, or rented or loaned to the insured; or

**(2)** Property in the care, custody or control of the insured.

Copyright, Insurance Services Office, Inc., 2009

**2.** Paragraph **C. Who Is An Insured** in **Section II - Liability** is replaced by the following:

**1.** Each of the following is an insured under this endorsement to the extent set forth below:

**a.** You;

**b.** Any other person using a "hired auto" with your permission;

**c.** For a "non-owned auto":

**(1)** Any partner or "executive officer" of yours; or

**(2)** Any "employee" of yours;

but only while such "non-owned auto" is being used in your business; and

**d.** Any other person or organization, but only for their liability because of acts or omissions of an insured under **a., b.** or **c.** above.

**2.** None of the following is an insured:

**a.** Any person engaged in the business of his or her employer for "bodily injury" to any co-"employee" of such person injured in the course of employment, or to the spouse, child, parent, brother or sister of that co-"employee" as a consequence of such "bodily injury", or for any obligation to share damages with or repay someone else who must pay damages because of the injury;

**b.** Any partner or "executive officer" for any "auto" owned by such partner or officer or a member of his or her household;

**c.** Any person while employed in or otherwise engaged in duties in connection with an "auto business", other than an "auto business" you operate;

**d.** The owner or lessee (of whom you are a sublessee) of a "hired auto" or the owner of a "non-owned auto" or any agent or "employee" of any such owner or lessee; or

**e.** Any person or organization for the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

**C.** For the purposes of this endorsement only, Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions** is replaced by the following:

This insurance is excess over any primary insurance covering the "hired auto" or "non-owned auto".

**D.** The following additional definitions apply:

**1.** "Auto business" means the business or occupation of selling, repairing, servicing, storing or parking "autos".

**2.** "Hired auto" means any "auto" you lease, hire, rent or borrow. This does not include any "auto" you lease, hire, rent or borrow from any of your "employees", your partners or your "executive officers" or members of their households.

**3.** "Non-owned auto" means any "auto" you do not own, lease, hire, rent or borrow which is used in connection with your business. This includes "autos" owned by your "employees", your partners or your "executive officers", or members of their households, but only while used in your business or your personal affairs.

 Copyright, Insurance Services Office, Inc., 2009



OBCH332709    1304500

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# DATA BREACH COVERAGE FORM

Various provisions in this Coverage Form restrict coverage. Read the entire Coverage Form carefully to determine rights, duties and what is and is not covered.

Throughout this coverage form the words "we", "us" and "our" refer to the Company providing this insurance. The words "you" and "your" refer to the Named Insured shown in the Declarations. Other words and phrases that appear in quotation marks have special meaning. Refer to **SECTION F - DEFINITIONS.**

| SCHEDULE | | |
|---|---|---|
| Data Breach Coverage Aggregate Limit of Insurance | $ | 10,000 |
| Data Breach Expense Coverages Aggregate Sublimit of Insurance | $ | 10,000 |
| Additional Expense Coverages Aggregate Sublimit of Insurance | $ | 10,000 |
| Data Breach Coverage Deductible | $ | 1,000 |
| Cyber Business Interruption Waiting Period Deductible | | 24    Hours |
| Premium: | $ | ▮▮▮ |

## SECTION A - COVERAGES

We will provide Data Breach Services, Data Breach Expense Coverages and Additional Expense Coverages as described below if you have a "data breach" that:

**a.** Is discovered during the "policy period" of this Data Breach Coverage Form; and

**b.** Is reported to us within 30 days of your discovery of the "data breach".

**1. Data Breach Services, Data Breach Expense Coverages, Additional Expense Coverages**

    **a. Data Breach Services**

      **(1) Consulting Services**

        If you contact our Designated Service Provider, they will provide Consulting Services to assist you with:

        **(a)** Notification requirements pursuant to "breach notice laws";

        **(b)** Drafting your notification letters; and

        **(c)** Media interface and press release drafting.

      **(2) Help Line**

        Provide a toll-free telephone line for "potentially-identified persons" with questions about the "data breach".

      **(3) Fraud Alert**

        A "potentially-identified person" who contacts our Designated Service Provider can place a Fraud Alert on his or her credit file(s) with the main credit bureaus warning potential credit grantors to check with the "potentially-identified person" before extending credit in his or her name or on his or her behalf.

      **(4) Identity Restoration Case Management**

        An "identified person" who contacts our Designated Service Provider will be assisted by an identity restoration professional to help to correct his or her credit and other records and to restore control over his or her personal identity.

        These Data Breach Services will be provided by our Designated Service Provider, as described in Paragraphs **15.** and **16.** of **Section E. Conditions,** for a period of one year from the date the Data Breach Services are initiated.

    Data Breach Services are only available if the jurisdiction or country where the "potentially-identified person" resides maintains "breach notice law" and, in the case of Fraud Alert, an operative credit monitoring service.

    **b. Data Breach Expense Coverages**

      We will pay your reasonable and necessary expenses incurred for the following Covered Expenses up to the limits of insurance described in **Section C - Limits of Insurance:**

      **(1) Notification to Potentially-Identified Persons** - expenses to provide

notification of the "data breach" to "potentially-identified persons":

**(a)** As required by applicable "breach notice law"; or

**(b)** If reasonably necessary to maintain your business.

Covered expenses include the printing, postage and handling of notification letters or other means of disclosing the breach to "potentially-identified persons".

**(2) Forensic Analysis** - expenses to assess:

**(a)** The severity of the "data breach";

**(b)** The nature and extent of the "data breach";

Forensic Analysis expenses do not include the cost of restoration.

**(3) Proactive Monitoring Services Expense Coverage -** Expenses for "proactive monitoring services" provided to "potentially-identified persons" in jurisdictions or countries with operative credit monitoring services as provided through our Designated Service Provider.

Under this coverage we will only pay for expenses that you incur through our Designated Service Provider.

Services provided for Covered Expenses provided in **b.(1)**, **b.(2)** and **b.(3)** above must be approved by us as described in **SECTION E - CONDITIONS,** Paragraph **15. Service Providers.**

**(4) Breach Restoration Expenses**

We will pay "Breach Restoration Expenses" directly resulting from a "data breach" which is first discovered during the "policy period" and which results in the damage, deletion or destruction of "data" owned by you or for which you are legally liable.

**(5) Cyber Business Interruption and Extra Expense**

We will pay actual loss of "business income" and additional "extra expense" incurred by you during the "period of restoration" directly resulting from a "data breach" which is first discovered during the "policy period" and which results in an actual impairment or denial of service of "business operations" during the "policy period".

**c.** **Additional Expense Coverages**

We will pay your reasonable and necessary expenses incurred for the following Additional Expense Coverages. These expenses are subject to the limits of insurance described in **Section C - Limits of Insurance.**

**(1) Legal Services -** expenses incurred within the first six months following the discovery and reporting of a "data breach" as provided in this Section for approved outside professional legal counsel review and recommendations as to how you should respond to it, including final legal review of the proposed breach notification letter(s). However, we will not pay for expenses for legal counsel to review any third party liability litigation or notification of potential litigation.

**(2) Public Relations -** expenses incurred within the first six months following the discovery and reporting of a "data breach" as provided in this Section for approved outside public relations firm or crisis management firm recommendations for restoring the confidence of your customers and investors in the security of your company and its systems.

**(3) Third Party "Data Breach" -** expenses for notification to "potentially-identified persons" with whom you have a direct relationship when a "data breach" is sustained by a third party to whom you have sent "private personal data" to be under that third party's care, custody and control. This includes a "data breach" that occurs while transmitting or transporting the data to that third party. Covered expenses for this Additional Covered Expense are limited to the printing, postage and handling of notification letters to "potentially-identified persons".

Service providers for Additional Expense Coverage provided in paragraphs **c.(1)**, **c.(2)** and **c.(3)** must be approved by us as described in **SECTION E - CONDITIONS,** Paragraph **15. Service Providers.**

**(4) Data Breach Ransom Coverage -** monies extorted from and paid by you because or a threat or connected series of threats to commit an intentional attack on your computer systems that if so committed, would result in a "data breach". This Data Breach Ransom

The **Hanover** Insurance Group™

OBCH332709      1304500

Coverage is subject to the following conditions:

**(a)** You must receive approval from us prior to the payment of any monies;

**(b)** Any monies paid must only be to terminate or end the threat;

**(c)** The threat must be one which, if carried out, would have led to a "data breach" that would have been covered under this Coverage Form had the monies not been paid;

**(d)** The threat must have been made during the coverage period of this Data Breach Coverage Form;

**(e)** The applicable Federal, state and/or local law enforcement authority was notified of the threat prior to any payment you make for which you are seeking reimbursement under this Additional Expense Coverage;

**(f)** The threat must not have been committed by any of your employees or former employees, vendors or independent contractors hired by you;

**(g)** You must make every reasonable effort not to divulge the existence of this Data Breach Ransom Coverage; and

**(h)** You agree to keep confidential any amounts paid under this Data Breach Ransom Coverage except for any disclosure we approve in advance of that disclosure.

**(5) Data Breach Reward Coverage -** monies you pay for information leading to the arrest and conviction of any individual(s) who committed an illegal act(s) related to a "data breach" covered under this Coverage Form.

However, we will not pay for information that was provided by:

**(a)** You;

**(b)** Your internal or external auditors;

**(c)** Any vendor or independent contractor hired by you;

**(d)** Any individual or firm hired by you to investigate the illegal act described above; or

**(e)** Any individual(s) with supervisory or management responsibility of any of the individual(s) described above.

**(6) Data Breach Investigations**

We will pay "defense expenses" directly resulting from a "regulatory investigation" regarding a "data breach" first discovered by you during the "policy period".

**(7) Data Breach Theft**

We will pay for loss resulting directly from your transfer, payment, or delivery of funds due to the fraudulent input of "data" directly into your "system" or through a "network" into your "system". Loss must first be discovered by you during the "policy period".

## SECTION B - EXCLUSIONS

**1.** The following exclusions apply to Data Breach Services, Data Breach Expense Coverages and Additional Expense Coverages.

This insurance does not apply to:

**a. Costs to Research or Correct Deficiencies**

Any costs to research any deficiency, except as specifically provided under **SECTION A - COVERAGES**, Paragraph **1.b.(2) Forensic Analysis**, or any costs to correct any deficiency.

This includes, but is not limited to, any deficiency in your systems, procedures or physical security that may have contributed to a "data breach".

**b. Criminal Investigation or Proceedings**

Any costs arising out of criminal investigations or proceedings.

**c. Fines, Penalties or Assessments**

Any "fines, penalties, fees or assessments". This includes but is not limited to fees or surcharges from financial institutions.

**d. Defense or Legal Liability**

Any fees, costs, settlements, judgments, or liability of any kind arising in the course of, or as a result of a claim for damages, lawsuit, administrative proceedings, or governmental investigation against or involving you, except as provided under **SECTION A - COVERAGES**, Paragraph **1.c.(6) Data Breach Investigations.**

**e. Other Economic Costs**

Any other costs or expenses not expressly provided for under Data Breach Services, Data Breach Expense Coverages and Additional Expense Coverages provided in Paragraphs **1.a.** through **1.c.** Costs or expenses that we do not cover include but are not limited to expense to reissue credit or debit cards.

**f. Consequential Loss**

Any costs, or any other loss, caused by or resulting from delay, loss of use, loss of existing or prospective markets or any other consequential loss. This exclusion does not apply to **SECTION A - COVERAGES**, Paragraph **1.b.(5) Cyber Business Interruption and Extra Expense**.

**g. Contractually Assumed Liability**

Legal obligations arising by reason of assumption of liability in a contract or agreement.

**h. Victim Expenses or Losses**

Costs or losses incurred by a victim of "data breach" or fraud activity except as provided for under Data Breach Services, Data Breach Expense Coverages and Additional Expenses Coverages provided in Paragraphs **1.a.** through **1.c.**

**i. Alternative Travel Arrangements or Fees**

Payment of alternative travel arrangements or additional fees.

**j. Psychological Counseling**

Psychological counseling for victims of a "data breach" or fraud activity.

**k. Legal Advice or Services**

Legal advice or other legal services, except as provided by the Legal Services Additional Expense Coverage, Paragraph **1.c.(1).**

**l. Information Recapture**

Any costs or losses for the recapture of lost, stolen or destroyed information.

**m. Dishonesty**

Any criminal, fraudulent or dishonest act, error or omission, or any intentional or knowing violation of law by you, any of your partners, directors or trustees:

**(1)** Acting alone or in collusion with others; or

**(2)** Whether or not occurring during the hours of employment.

**n. Governmental Action**

Seizure or destruction of property by order of governmental authority. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. This exclusion applies whether or not the loss event results in widespread damage or affects a substantial area.

**o. Intentional or Willful Complicity**

Your intentional or willful complicity in a "data breach".

**p. Prior Discovery**

Any "data breach" discovered prior to the inception of this Data Breach Coverage Form.

**q Threats, Extortion or Blackmail**

Any threat, extortion or blackmail including but not limited to, ransom payments and private security assistance except as provided in the Data Breach Ransom Coverage Additional Expense Coverage under Paragraph **1.(c)(4).**

**r Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination, however caused.

**s. War and Military Action**

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**2.** The following exclusions apply to Breach Restoration Expenses, Cyber Business Interruption and Extra Expense, Data Breach Investigations, and Data Breach Theft only.

This insurance does not apply to:

**a. Investigations**

Costs, fees or expenses incurred or paid by you in establishing the existence of, or amount of loss, damage or expense.

**b. Non-monetary Relief**

Costs of compliance with any order for, grant of or agreement to provide non-monetary relief, including injunctive relief.

**c. Potential Income**

Potential income including interest and dividends not realized by you; however, this Exclusion shall not apply to loss of "business income" as provided under **SECTION A - COVERAGES**, Paragraph **1.b.(5) Cyber Business Interruption and Extra Expense.**



**d. Return of Payments**

Return of fees, charges, commissions or other compensation paid to you.

**e. System Changes**

Costs or "expenses" incurred to replace, upgrade, update, improve, or maintain a "system".

**f. Uniform Commercial Code**

Loss, damage, costs or "expenses" you agree to incur or incur on behalf of another natural person or entity when you are not obligated to incur such loss, costs or "expenses" under the Uniform Commercial Code or any other law, statute, rule or code anywhere in the world, including the rules or codes of any clearing or similar entity. This Exclusion does not apply to **SECTION A - COVERAGES**, Paragraph **1.b.(5) Cyber Business Interruption and Extra Expense.**

**SECTION C - LIMITS OF INSURANCE**

1. The most we will pay for all Data Breach Expense Coverages and Additional Expense Coverages combined is the Data Breach Coverage Aggregate Limit of Insurance shown in the **SCHEDULE** of this Data Breach Coverage Form. The Data Breach Coverage Aggregate Limit of Insurance is an annual aggregate limit and is the most we will pay for the total of all covered losses and expenses for all "data breach" events discovered by you during the current "policy period" regardless of the number of "data breach" events.

2. The Data Breach Expense Coverages Aggregate Sublimit of Insurance shown in the **SCHEDULE** of this Data Breach Coverage Form is the most we will pay under all Data Breach Expense Coverages combined for the total of all covered losses and expenses arising out of all "data breach" events during the "policy period" regardless of the number of "data breach" events. The Data Breach Expense Coverage Aggregate Sublimit of Insurance is part of, and not in addition to, the Data Breach Coverage Aggregate Limit of Insurance

3. The Additional Expense Coverages Aggregate Sublimit of Insurance shown in the **SCHEDULE** of this Data Breach Coverage Form is the most we will pay under all Additional Expense Coverages combined for the total of all covered losses and expenses for all "data breach" events during the "policy period" regardless of the number of "data breach" events. The Additional Expense Coverages Aggregate Sublimit of Insurance is part of, and not in addition to, the Data Breach Coverage Aggregate Limit of Insurance.

4. Regardless of the number of years this Data Breach Coverage Form remains in force or the number of premiums paid, no limits of insurance cumulate from this "policy period" to subsequent "policy periods".

5. **Discovery Policy Period Limits Apply**

A "data breach" may be first discovered by you in one "policy period", but cause covered loss or expenses in one or more subsequent "policy periods". If so, all covered loss or expenses for the "data breach" will be limited to the Data Breach Coverage Aggregate Limit of Insurance, the Data Breach Expense Coverages Aggregate Sublimit of Insurance and the Additional Expense Coverages Aggregate Sublimit of Insurance described respectively in Paragraphs **1.**, **2.** and **3.** above that are applicable to the "policy period" when the "data breach was first discovered by you.

6. **Time Limits**

**a.** You must report a "data breach", to us on or within 30 days of your discovery of the "data breach".

**b.** You have up to one year from the date of reporting a "data breach", to initiate the services afforded to you.

**c.** A "potentially-identified person" has up to one year from the date he or she receives notification of a "data breach" to initiate the services afforded to him or her.

**d.** Once initiated, the services afforded to a "potentially-identified person" will continue for one year.

**e.** Data Breach Services under **Section A - Coverages,** Paragraph **1.a.** will be provided by our Designated Service Provider for a period one year from the date the Data Breach Services are initiated.

**SECTION D - DEDUCTIBLE**

The Data Breach Expense Coverages and Additional Expense Coverages provided under this Coverage Form are subject to the Data Breach Coverage Deductible shown in the **SCHEDULE** of this Coverage Form. The Data Breach Coverage Deductible applies to covered loss and expense arising out of each "data breach". Our obligation to make payments under Data Breach Expense Coverages and Additional Expense Coverages applies only to that part of covered loss and expense arising out of a single "data breach" event which is in excess of the Data Breach Coverage Deductible.

The Data Breach Coverage Deductible does not apply to **SECTION A -COVERAGES,** paragraph **1.b.(6) Cyber Business Interruption and Extra Expense**. Losses payable under Cyber Business Interruption and Extra Expense are subject to the Cyber Business Interruption Waiting Period Deductible shown on the **SCHEDULE** of this Coverage Form.

## SECTION E - CONDITIONS

1. **Duties in the Event of a Data Breach.**

   You must see that the following are done in the event of a "data breach":

   **a.** Notify the police if a law may have been broken.

   **b.** Give us prompt notice of the "data breach". As stated in **SECTION A - COVERAGES**, paragraph **b.**, you must report the "data breach" to us within 30 days of the date you first discover it.

   **c.** As soon as possible, give us, and/or our Designated Service Provider, a description of how, when and where the "data breach" occurred, including all of the following information as it becomes known to you:

      **(1)** The method of "data breach";

      **(2)** The approximate date and time of the "data breach";

      **(3)** The approximate number of "potentially-identified persons" compromised as a result of the "data breach";

      **(4)** A detailed description of the type and nature of the information that was compromised;

      **(5)** Whether or not the information was encrypted, and, if so, the level of encryption;

      **(6)** Whether or not law enforcement has been notified;

      **(7)** If available, the states in which the "potentially-identified persons" are domiciled;

      **(8)** If available, who received the "private personal data" as a result of the "data breach"; and any other access, information or documentation we reasonably require to investigate or adjust your claim.

   **d.** Take all reasonable steps to protect "private personal data" remaining in your care, custody or control.

   **e.** Preserve all evidence of the "data breach".

   **f.** Permit us to inspect the property and records proving the "data breach".

   **g.** If requested, permit us to question you under oath at such times as may be reasonably required about any matter relating to this insurance or your claim, including your books and records. In such event, your answers must be signed.

   **h.** Send us a signed, sworn statement containing the information we request to investigate the claim. You must do this within 30 days after our request. We will supply you with the necessary forms.

   **i.** Cooperate with us in the investigation or settlement of the claim.

2. **Concealment, Misrepresentation or Fraud**

   This coverage is void in any case of fraud by you as it relates to this Data Breach Coverage Form. It is also void if you intentionally conceal or misrepresent a material fact concerning this Coverage Form or a claim under this Coverage Form.

3. **Control of Property**

   Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

   The breach of any condition of this Coverage Form at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

4. **Two or More Coverage Parts, Forms, Endorsements or Policies Issued By Us**

   It is our stated intent that the various coverage parts, forms, endorsements or policies issued to you by us or any company affiliated with us do not provide any duplication or overlap of coverage for the same loss, damage, expense or "data breach". If this coverage form and any other coverage part, form, endorsement or policy issued to you by us or any company affiliated with us apply to the same loss, damage, expense, or "data breach"; the maximum Limit of Insurance under all such coverage parts, forms, endorsements or policies combined shall not exceed the highest applicable Limit of Insurance under any one coverage part, form, endorsement or policy.

   If two or more of the coverages provided under this coverage form apply to the same loss, damage, expense or "data breach"; we will not pay more than the actual amount of the loss, damage or expense.

5. **Legal Action Against Us**

   No one may bring a legal action against us under this insurance unless:

   **a.** There has been full compliance with all of the terms of this insurance; and

   **b.** The action is brought within two years after the date of the "data breach" is first discovered by you.

6. **Liberalization**

   If we adopt any revision that would broaden the coverage under this Data Breach Coverage Form without additional premium within 45 days prior to or during the "policy period", the

broadened coverage will immediately apply to this coverage form.

**7. No Benefit to Bailee**

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

**8. Other Insurance**

**a.** If you may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Data Breach Coverage Form, we will pay only our share of the covered loss, damage or expense. Our share is the proportion that the applicable Limit of Insurance under this Coverage Form bears to the Limits of Insurance of all insurance covering on the same basis.

**b.** If there is other insurance covering the same "data breach", other than that described in **a.** above, we will pay only for the amount for Data Breach Services, Data Breach Expense Coverages, and Additional Expense Coverages in excess of the amount due from that other insurance. We will not pay more than the applicable Limit of Insurance shown in the **SCHEDULE**.

**9. Policy Period, Coverage Territory**

Under this Endorsement:

**a   Policy Period**

This policy applies only to "data breaches" that are first discovered by you during the "policy period".

**b. Coverage Territory**

Coverage applies anywhere in the world, provided that no trade or economic sanction, embargo, insurance or other laws or regulations prohibit the "insurer" from covering the loss. The "data breach" must involve "private personal data" that was within your care, custody or control.

Data Breach Services are only available in jurisdictions or countries that maintain "breach notice law" and, in the case of Fraud Alert, an operative credit monitoring service.

**10. Transfer Of Rights Of Recovery Against Others To Us**

If any person or organization to or for whom we make payment under this Coverage Form has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

**a.** Prior to a loss.

**b.** After a loss only if, at time of loss, that party is one of the following:

**(1)** Someone insured by this insurance;

**(2)** A business firm:

**(a)** Owned or controlled by you; or

**(b)** That owns or controls you; or

**c.** Your tenant.

This will not restrict your insurance.

**11. Cancellation**

With regard to the cancellation of this policy, the provisions outlined in the Common Policy Conditions, Businessowners Coverage Part, Technology Professional Advantage, the Technology Professional Advantage Plus, whichever are included in the policy, shall apply and will automatically include the non-renewal or cancellation of this coverage form. You agree that no further notice regarding termination of this Coverage Form will be required.

**12. Due Diligence**

You agree to use due diligence to prevent and mitigate loss covered under this Coverage Form. This includes, but is not limited to, complying with reasonable and industry-accepted protocols for providing and maintaining the following:

**a.** Physical security for your premises, computer systems and hard copy files;

**b.** "Computer" and Internet security;

**c.** Periodic backups of computer data;

**d.** Protection, including but not limited to, encryption of data, for transactions such as processing credit card, debit card and check payments; and

**e.** Disposal of files containing "personal private data", including but not limited to shredding hard copy files and destroying physical media used to store "data".

**13. No Legal Advice Provided**

We are not your legal advisor and do not provide legal counsel to you. None of the services we provide under this Coverage Form constitute legal advice to you by us. Our determination of what is or is not covered under this Coverage Form does not represent legal advice or counsel from us about what you should or should not do.

**14. Pre-Notification Consultation**

You agree to consult with us prior to the issuance of notification to "potentially-identified persons". We assume no responsibility under this Coverage Form for any services promised to "potentially-identified persons" without our prior agreement. You must provide the following at our pre-notification consultation with you:

**a.** The exact list of "potentially-identified persons" to be notified, including contact information.

**b.** Information about the "data breach" that may appropriately be communicated with "potentially-identified persons".

**15. Service Providers**

**a.** We will only provide Data Breach Services through our Designated Service Provider(s). Any such services that are provided by any other individual or entity will not be covered by this Coverage Form.

**b.** We will only pay Data Breach Expense Coverages and Additional Expense Coverages (except for Data Breach Ransom Coverage and Data Breach Reward Coverage) that are provided by service providers approved by us prior to the start of any of these services. If we suggest a service provider(s) but you prefer to use an alternative service provider(s), our coverage is subject to the following limitations:

**(1)** Such alternate service provider(s) must be approved by us; and

**(2)** Our payment for services provided by any alternative service provider(s) will not exceed the amount that we would have paid using the service provider we had suggested.

**c.** You will have a direct relationship with any service provider, including our Designated Service Provider, paid for in whole or in part under this Coverage Form. All service providers work for you.

**16. Data Breach Services**

The following conditions apply with respect to any data breach services provided to you or to any "potentially-identified person" or "identified person" by our designees or any service firm paid for under this Data Breach Coverage Form:

**a.** The effectiveness of data breach services depends on your cooperation and assistance.

**b.** All data breach services may not be available or applicable to all "potentially identified persons" or "identified persons". For example, "potentially identified persons" who are minors or foreign nationals may not have credit records that can be provided or monitored.

**c.** We do not warrant or guarantee that the data breach services paid for in whole or in part by this Coverage Form will end or eliminate all problems associated with a covered "data breach".

**d.** We are not liable for any act or omission by any Designated Service Provider who is not our employee nor the employee of a third party provider of the data breach services described in this Coverage Form. We cannot be held responsible for failure to provide or for the delay in providing services when such failure or delay is caused by conditions beyond our control

**e.** Data Breach Services are only available in jurisdictions or countries that maintain "breach notice law" and, in the case of Fraud Alert, an operative credit monitoring service.

**17. Cooperation**

You agree to cooperate with and provide full disclosure of the circumstances surrounding a "data breach" to applicable federal or state regulators, law enforcement personnel, to us, and to our Designated Service Provider(s).

If you fail to cooperate, we will not be obliged under this contract for any services and expenses that cannot be provided due to your failure to cooperate.

**18. Appraisal**

If we and you disagree on the amount of net income, operating expense or loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of the net income, operating expense and loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

**SECTION F - DEFINITIONS**

**1. Account Takeover**

"Account takeover" means the takeover by a third party of one or more existing deposit accounts, credit card accounts, debit card accounts, ATM cards, or lines of credit in the name of an "identified person".

**2. Breach Notice Law**

"Breach Notice Law" means any federal, state, local or foreign privacy legislation, regulation and their functional equivalent that requires an entity to provide notice to affected natural persons or data protection authorities regarding any actual or potential unauthorized access to "private personal data".



OBCH332709    1304500

**3. Breach Restoration Expenses**

"Breach Restoration Expenses" means the reasonable cost of the blank "media" and the reasonable cost of labor for the actual transcription or copying of "data" or "media" in order to reproduce such "data" or replace such "media" from "data" and/or media of comparable kind or quality.

**4. Business Income**

"Business Income" means your:

**a.** Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred if there had been no impairment or denial of "business operations" due to a covered "data breach" and

**b.** Continuing normal operating expenses incurred, including payroll.

"Business income" does not include interest or investment income.

**5. Business Operations**

"Business Operations" means your usual and regular business activities.

**6. Computer**

"Computer" means a device or group of hardware devices on which software, applications, script, code and "computer" programs containing "data" can be operated and viewed.

**7. Cyber Attack**

"Cyber Attack" means the transmission of fraudulent or unauthorized "data" that is intended to and successfully modifies, alters, damages, destroys, deletes, records, transmits, or consumes information within a "system" without authorization, including "data" that is self-replicating or self-propagating, and which causes the disruption of the normal operation of a "system".

**8. Data**

"Data" means a representation of information, knowledge, facts, concepts or instructions which are being processed or have been processed in a "computer"**.**

**9. Data Breach**

"Data breach" means:

**a.** The loss, theft, accidental release or accidental publication of "private personal data" entrusted to you as respects one or more "potentially-identified persons" if such loss, theft, accidental release or accidental publication has or could reasonably result in the fraudulent use of such information;

**b.** Failure to protect "private personal data" including a "Cyber Attack" on your "system" or the actions of a "rogue employee" which

directly results in the unauthorized disclosure of "private personal data";

**c.** The theft or negligent loss of hardware, "media", "system output", "data" or other documents owned or controlled by you, or on your behalf, on which "private personal data" is stored or recorded;

**d.** The failure or violation of the security of your "system" including the impairment or denial of access to your "system", including a "Cyber Attack" or unauthorized acts or omissions by a "rogue employee" which damages or harms your "system" or the "system" of a third party for whom you provide "services" for a fee;

**e.** The theft or loss of hardware or "media" controlled by you, or on your behalf, on which "data" is stored;

**f.** Disposal or abandonment of "private personal data" without appropriate safeguards such as shredding or destruction, subject to the following provisions:

**(1)** Your failure to use appropriate safeguards must be accidental and not intentional, reckless or deliberate and not in violation of your Due Diligence obligations under Paragraph **2. Additional Conditions**, Paragraph **a.**;

**(2)** Such disposal or abandonment must take place during the time period for which this Data Breach Coverage Form is effective; or

**g.** The failure to disclose an event described in **a.** thru **f.** above which violates any "breach notice law".

All incidents of "data breach" that are discovered at the same time or arise from the same cause or from a series of similar causes would be considered one "data breach". All theft of "private personal data" caused by any person or in which that person is involved, whether the result of a single act or series of related acts, is considered a single incident of "data breach".

**10. Defense Expenses**

"Defense Expenses" means the reasonable and necessary legal fees and expenses including attorney fees and expert fees incurred by us or by you (other than regular or overtime wages, salaries, fees or benefits of you or your employees) in the investigation, defense, settlement and appeal of a claim, including but not limited to cost of consultants and witnesses, premiums for appeal, injunction, attachment or supersedes bonds regarding such claim.

**11. Electronic Data**

"Electronic data" means information, facts or computer programs stored as or on, created or used on, or transmitted to or from software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

**12. Expense**

"Expense" means "Business Income", "Extra Expense", "Breach Restoration Expenses", and loss payable under the Data Breach Theft coverage incurred by you.

**13. Extra Expense**

"Extra Expense" means the reasonable and necessary expenses you incur during the "period of restoration" in an attempt to continue "business operations" that have been interrupted due to a "data breach" and that are over and above the expenses such you would have incurred if no loss had occurred. "Extra expense" does not include any costs of updating, upgrading or remediation of your "system" that are not otherwise covered under this Coverage Part.

**14. Fines, Penalties or Assessments**

"Fines, penalties or assessments" means any fines, assessments, surcharges, attorneys' fees, court costs or other penalties which you shall be required to pay as a result of a "data breach" or pursuant to any contract, law, regulation or order.

**15. Identified Person**

"Identified person" means a "potentially-identified person" who is or appears to be a victim of "identity theft" or "account takeover" that may reasonably have arisen from a covered "data breach".

**16. Identity Theft**

"Identity theft" means the fraudulent use of "private personal data". This includes the fraudulent use of such information to establish credit accounts, secure loans, enter into contracts or commit crimes.

"Identity theft" does not include the fraudulent use of a business name, d/b/a or any other method of identifying a business activity.

"Identity theft" does not include the use of a valid credit card, credit account or bank account. However, "identity theft" does include the fraudulent alteration of account profile information, such as the address to which statements are sent.

**17. Media**

"Media" means electronic applications, software, scripts and programs on which "data" is stored so that it can be collected, read, retrieved or processed by a "computer". "Media" does not mean paper, or other tangible property, money, debt, equity, instruments, accounts, bonds, bills, records, abstracts, deeds or manuscripts

**18. Network**

"Network" means any services provided by or through the facilities of any electronic or "computer" communication system, allowing the input, output, examination, visualization or transfer of "data" or programs from one "computer" to your "computer". "Network" incudes any shared networks, Internet access facilities, or other similar facilities for such systems, in which you participate.

**19. Period of Restoration**

"Period of Restoration" means:

**a.** The period of time that begins:

   **(1)** For "Extra Expenses", immediately after the actual or potential impairment or denial of "business operations" occurs; and

   **(2)** For the loss of "Business Income", after 24 hours or the number of hours shown as the Cyber Business Interruption Waiting Period Deductible in the **SCHEDULE** on this Coverage Forms, whichever is greater, immediately following the time the actual impairment or denial of "business operations" first occurs.

**b.** The "Period of Restoration" ends on the earlier of the following:

   **(1)** The date "business operations" are restored, with due diligence and dispatch, to the condition that would have existed had there been no impairment or denial; or

   **(2)** Sixty (60) days after the date the actual impairment or denial of "business operations" first occurs;

The expiration date of this Policy or Coverage Part will not cut short the "period of restoration".

**20. Policy Period**

"Policy Period" means the period of time from the inception date shown the Declarations to the earlier of the expiration date shown in the Declarations or the effective date of termination of the Policy or Data Breach Coverage Form.



OBCH332709     1304500

**21. Potentially-Identified Person**

"Potentially-identified person" means any person who is your current, former or prospective customer, employee, client, member, or patient and whose "private personal data" is lost, stolen, accidentally released or accidentally published by a "data breach" covered under this Coverage Form.

"Potentially-identified person" does not include any business or organization. Only an individual person may be a "potentially-identified person".

A "potentially-identified person" may reside anywhere in the world.

**22. Private Personal Data**

"Private Personal Data" means a natural person's first name or first initial and last name in combination with:

**a.** Non-public personally identifiable information, as defined in applicable federal, state, local or foreign legislation or regulations including, social security number, driver's license number or other personal identification number (including an employee identification number or student identification number);

**b.** Financial account number (including a bank account number, retirement account number or healthcare spending account number);

**c.** Credit, debit or payment card numbers;

**d.** Information related to employment by you;

**e.** Individually identifiable information considered nonpublic personal information pursuant to Title V of the Gramm-Leach Bliley Act of 1999, as amended; or

**f.** Individually identifiable information considered protected health information pursuant to the Health Insurance Portability and Accountability Act of 1996 (HIPAA), as amended;

which is intended to be accessible only by natural persons or entities you have specifically authorized to have such access.

"Private personal data" does not mean or include information that is otherwise available to the public, such as names and addresses with no correlated Social Security numbers or account numbers.

**23. Proactive Monitoring Services**

"Proactive monitoring services" means the following services if you offer to provide them to "potentially-identified persons" who contact our Designated Service Provider:

**a.** A credit report;

**b.** credit monitoring; and or

**c.** fraud/public records monitoring service or services.

**24. Regulatory Investigation**

"Regulatory Investigation" means a formal request for information, civil investigative demand or civil proceeding, including requests for information related thereto, brought by or on behalf of a state Attorney General, the Federal Trade Commission, the Federal Communications Commission or any other federal, state, local or foreign governmental agency.

**25. Rogue Employee**

"Rogue Employee" means a permanent employee of yours, other than an "executive", who has gained unauthorized access or has exceeded authorized access to a "system" or "private personal data" owned or controlled by you or an entity that is authorized by you to hold, process or store "private personal data" for your exclusive benefit.

**26. Services**

"Services" means "computer" time, data processing, storage functions or other uses of your "system".

**27. System**

"System" means a "computer", "media" and all input, output, processing storage and communication devices controlled, supervised or accessed by operating software that is proprietary to, or licensed to, the owner of the "computer".

**28. System Output**

"System Output" means a tangible substance on which "private personal data" is printed from a "System".

**The Hanover**
Insurance Group™

OBCH332709      1304500

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# AVENUES BUSINESSOWNERS TECHNOLOGY DELUXE GOLD BROADENING ENDORSEMENT

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The following is added to **SECTION I - PROPERTY**:

The limits applicable to the coverages included in this endorsement may either be in addition to or included within the applicable Limit of Insurance. For application of the limits, refer to each coverage within this endorsement. Words or phrases in quotation marks have special meanings. The meaning of words or phrases in quotation marks is explained within the applicable coverage section. The coverages in this endorsement amend the coverage provided under the Businessowners Coverage Form through new coverages and replace coverage grants. These coverages are subject to the provisions applicable to this policy, except where amended within this endorsement.

If any of the property covered by this endorsement is also covered under any other provisions of the policy of which this endorsement is made a part of, or if more than one coverage under this endorsement applies, in the event of loss or damage, you may choose only one of these coverages to apply to that loss. The most we will pay in this case is the limit of insurance applying to the coverage you select. Coverages included in this endorsement apply either separately to each described premises or on an occurrence basis. Refer to each coverage within this endorsement for application of coverage.

We provide no coverage for Business Income; Extended Business Income; Extra Expense; or Business Income and Extra Expense from Dependent Properties for any of the Coverages included as part of this endorsement unless specifically stated, and then only to the extent provided for within that Scheduled or Blanket Coverage provision.

## I.   COVERAGES

### A.   Scheduled Coverages

| | Scheduled Coverages | Limit | Page |
|---|---|---|---|
| 1. | Advertising Expense to Regain Customers | $2,500 | 3 |
| 2. | Brands and Labels | Included | 3 |
| 3. | Business Income Billable Hours Option | $10,000 | 3 |
| 4. | Contingent Transit Business Income and Extra Expense | $100,000 | 4 |
| 5. | Business Income and Extra Expense - Dependent Properties (Including World-Wide Coverage) | $100,000 | 4 |
| 6. | Business Income from Websites | $50,000 | 5 |
| 7. | Catastrophe Allowance | $25,000 | 5 |
| 8. | Commercial Tools and Small Equipment | $25,000 | 5 |
| 9. | Computer Equipment - In Transit or Off Premises | $75,000 | 5 |
| 10. | Computer and Funds Transfer Fraud | $10,000 | 6 |
| 11. | Consequential Loss to Stock | Included | 6 |
| 12. | Contract Penalties | $25,000 | 6 |
| 13. | Deferred Payments | $25,000 | 6 |
| 14. | Denial of Access to Premises | 30 Days; 72 Hour Waiting Period | 6 |
| 15. | Electronic Vandalism | $25,000 | 6 |
| 16. | Employee Theft Including ERISA Compliance | $50,000 | 7 |
| 17. | Employee Tools and Work Clothing | $2,500 Per Item $25,000 Per Occurrence | 7 |

| 18. | Expediting Expenses | $25,000 | 7 |
|---|---|---|---|
| 19. | Extended Business Income | 180 days | 7 |
| 20. | Fine Arts | $50,000 | 8 |
| 21. | Fire Department Service Charge | Included | 8 |
| 22. | Fire Protection Equipment Recharge | Included | 8 |
| 23. | Forgery or Alteration | $50,000 | 8 |
| 24. | Hired Auto - Physical Damage | $50,000 | 8 |
| 25. | Installation Floater | $50,000 | 9 |
| 26. | Interruption of Computer Operations | $50,000 | 9 |
| 27. | Inventory and Loss Appraisal | $20,000 | 10 |
| 28. | Key Replacement and Lock Repair | $25,000 | 10 |
| 29. | Leasehold Interest (Tenants Only) | $25,000 | 10 |
| 30. | Lessor's Lease Cancellation | $10,000 | 10 |
| 31. | Lessor's Tenant Move Expenses | $10,000 / 60 days | 10 |
| 32. | Marring and Scratching | Included | 11 |
| 33. | Money Orders and Counterfeit Money | $25,000 | 11 |
| 34. | Newly Acquired or Constructed Property<br>Business Personal Property<br>Business Income and Extra Expense | $1,000,000<br>$500,000 | 11 |
| 35. | Ordinance or Law - Demolition and Increased Cost of Construction | $50,000 | 11 |
| 36. | Ordinance or Law - Increased Period of Restoration | $100,000 | 11 |
| 37. | Ordinance or Law (Tenant's Improvement Extension) | $50,000 | 12 |
| 38. | Outdoor Property<br>Per Tree, Shrub or Plant | $25,000<br>$2,500 | 12 |
| 39. | Personal Effects | $50,000 | 12 |
| 40. | Portable Electronic Devices Coverage Worldwide | $25,000 | 12 |
| 41. | Precious Metal Theft Payment Changes | $50,000 | 13 |
| 42. | Personal Property in Transit | $50,000 | 13 |
| 43. | Sales Representative Samples | $25,000 | 13 |
| 44. | Soft Costs | $10,000 | 13 |
| 45. | Spoilage | $25,000 | 14 |
| 46. | Temporary Relocation of Property | $50,000 | 15 |
| 47. | Tenant Signs | $25,000 | 15 |
| 48. | Unauthorized Business Credit Card Use | $10,000 | 15 |
| 49. | Underground Water Seepage | $100,000 | 16 |
| 50. | Unnamed Locations - Personal Property and Computer Equipment<br>Unnamed Locations - Business Income and Extra Expense | $10,000 per Occurrence<br>$25,000 Policy Aggregate<br>$10,000 per Occurrence<br>$50,000 Policy Aggregate | 16 |
| 51. | Utility Services<br>Direct Damage (Including Overhead Transmission Lines)<br>Business Income (Including Overhead Transmission Lines) | $50,000<br>$50,000 | 18 |
| 52. | Worldwide Property Off Premises | $50,000 | 18 |

The **Hanover**
Insurance Group™

OBCH332709          1304500

| B. | Blanket Coverages | Blanket Limit $250,000 | Page |
|---|---|---|---|
| 1 | Accounts Receivable | Included | 19 |
| 2. | Backup or Overflow of a Sewer, Drain or Sump | Included | 19 |
| 3. | Computer Equipment | Included | 19 |
| 4. | Debris Removal | Included | 19 |
| 5. | Valuable Papers and Records  (Other Than Electronic Data) | Included | 20 |

The Blanket Limit of Insurance shown above applies to all Coverages shown in **Section B** of this endorsement. At the time of loss, you may elect to apportion this Blanket Limit of Insurance to one or any combination of the Coverages shown, but under no circumstances will the aggregate apportionment be permitted to exceed the Blanket Limit of Insurance shown above. The Blanket Limit of Insurance applies per occurrence.

## II.  DEDUCTIBLES

Deductibles are subject to the provisions applicable to the Businessowners Coverage Form except as provided below. We will not pay for covered loss or damage in any one occurrence unless the amount of loss or damage exceeds the applicable Deductible amount. We will then pay the amount of loss or damage in excess of the Deductible up to the applicable Limit of Insurance.

## III.  COVERED PROPERTY

### A.  Scheduled Coverages

1.  **Advertising Expense to Regain  Customers**

    The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages**:

    **Advertising  Expense to Regain Customers**

    **(1)** If we make payment for a Covered Cause of Loss under this policy and there is a "suspension" of operations caused by direct physical loss or damage to property, we will pay for necessary advertising expenses you incur solely to regain customer faith and approval.

    **(2)** We will only pay the necessary advertising expenses that you incur within 60 consecutive days after the "period of restoration" ends.

    **(3)** The most we will pay under this Additional Coverage for all necessary advertising expenses in any one policy year is $2,500.

2.  **Brands and Labels**

    The following is added to **SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions**:

    **Brands and Labels**

**(1)** If Covered Property that has a brand or label is damaged by a Covered Cause of Loss and we elect to take all or any part of the damaged property at an agreed or appraised value, you may extend the insurance that applies to your Business Personal Property to:

  **(a)** Pay expenses you incur to:

    **(i)** Remove the brand or label and then relabel the damaged property to comply with any applicable law; or

    **(ii)** Label or stamp the damaged property Salvage, if doing so will not physically damage the property.

  **(b)** Cover any reduction in the salvage value of the damaged property as a result of the removal of the brand or label.

**(2)** Payment under this Extension is included within the Limit of Insurance applicable to your Business Personal Property.

3.  **Business Income Billable Hours Option**

    The following is added to **SECTION I - PROPERTY, A. Coverage, E. Property Loss Conditions, 5. Loss Payment**:

    **Business Income Billable Hours Option**

    **(1)** At your option you may choose to settle a covered Business Income and Extra Expense loss, as described under the Business Income, Extra Expense and Utility Services Additional Coverages, as described below in paragraph **(3)**.

    **(2)** This loss settlement option is only available to you prior to your submission to us of calculations described under **SECTION I - PROPERTY, A. Coverage, 5.**

**Additional Coverages, f. Business Income.**

**(3)** For the purpose of this Additional Coverage, we will pay up to $500 per day, for billable hours lost, per technology professional, up to a maximum of $1,000 per day, regardless of the number of technology professionals involved, for each normal working day you are unable to conduct operations due to covered loss or damage for up to a maximum of 10 days. We will also pay for your continuing normal operating expenses incurred, including "payroll expenses"; and "Rental Value".

**(4)** If damages are such that limited operations can continue, the per technology professional allowance will be proportionately reduced.

**(5)** For any occurrence, the two available methods for adjusting and calculating Business Income and Extra Expense loss may not be combined. When the alternative per diem approach described above is selected, the maximum coverage under this loss settlement option is $10,000 on an actual loss sustained basis. You are not entitled to make claim for periods beyond 10 days.

**(6)** This optional loss settlement does not waive the Waiting Period shown in the Declarations for Business Income Additional Coverage. This Waiting Period does not apply to Extra Expense.

**4. Contingent Transit Business Income and Extra Expense**

The following is added **SECTION I - PROPERTY, A Coverage, 6. Coverage Extensions;**

**Contingent Transit Business Income and Extra Expense**

You may extend your Business Income or Extra Expense Coverage to apply to the actual loss of Business Income (not including **Extended Business Income**) or Extra Expense you sustain due to direct physical loss of or damage to Business Personal Property of Others, not in your care, custody or control, while "in transit", caused by or resulting from a Covered Cause of Loss.

The most we will pay for loss under this Extension is $100,000.

**5. Business Income and Extra Expense - Dependent Properties (Including World-Wide Coverage)**

**a.** The heading for **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, m. Business Income from Dependent Properties** is replaced by the following:

**m. Business Income and Extra Expense from Dependent Properties**

The following is added to **Business Income and Extra Expense from Dependent Properties**:

We will pay the necessary Extra Expense you incur due to direct physical loss of or damage to "dependent property" caused by or resulting from a Covered Cause of Loss.

The definition of Extra Expense for this Additional Coverage is replaced by the following:

Extra Expense means necessary expenses you incur during the "dependent property period of restoration" that you would not have incurred if there had been no direct physical loss or damage to the premises of any "dependent property" caused by or resulting from a Covered Cause of Loss:

**(1)** To avoid or minimize the "suspension" of business and to continue "operations"; or

**(2)** To minimize the "suspension" of business if you cannot continue "operations".

We will reduce the amount of your Extra Expense loss to the extent you can return "operations" to normal and discontinue such extra expense.

**(3)** Paragraph **(2)** of this Additional Coverage is replaced by the following:

**(2)** The most we will pay under this Additional Coverage is $100,000 per occurrence, regardless of the number of "dependent properties" affected.



OBCH332709    1304500

**b.** The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, m. Business Income from Dependent Properties:**

The "dependent property" may be located anywhere in the world.

**6. Business Income from Websites**

**a.** The following is added to **SECTION I - PROPERTY A. Coverage, 5. Additional Coverages:**

**Business Income from Websites**

**(1)** You may extend this insurance to apply to a "suspension" of "operations" caused by direct physical loss or damage to property that you depend on for "web site and communications services" from a Covered Cause of Loss.

**(2)** We will not pay for any loss of Business Income you incur during the first 12 hours that immediately follows the time when you first discovered the Covered Cause of Loss. This Waiting Period does not apply to Extra Expense.

**(3)** The most we will pay for the actual loss of Business Income and necessary and reasonable Extra Expense in any one occurrence under this Additional Coverage is $50,000 and only for the 7-day period immediately following the Covered Cause of Loss.

**(4)** Coverage does not apply to Websites unless there is a duplicate or back-up copy of your Web Page stored at a location that is at least 1,000 feet away from the premises of the vendor that provides "web site and communications services".

**(5)** "Web Site and Communication Services" means:

**(a)** Internet access, e-mail, web hosting, value added network services and application software services at the premises of others; or

**(b)** Network and router infrastructure services, including cable and wireless, located more than 1,000 feet from the described premises.

**b.** This Additional Coverage is not subject to **SECTION I - PROPERTY, C. Limits of Insurance.**

**7. Catastrophe Allowance**

The following is added to **SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions:**

**Catastrophe Allowance**

**(1)** This Coverage Extension applies when the direct physical loss or damage to Covered Property from a Covered Cause of Loss is the result of an insured event for which Property Claims Service (PCS) has publicly designated a catastrophe number to the event.

**(2)** You may extend the insurance provided under this Coverage Extension if the Limit of Insurance applicable to Building and Business Personal Property, as shown in the Declarations, are insufficient to compensate you for covered loss or damage you incur as a result of the insured catastrophe event.

**(3)** This Coverage Extension may not be applied to the deductible amount of this policy or any other policy. It also may not be used to cover any loss or damage that would not be covered under this policy.

**(4)** The most we will pay under this Extension in any one occurrence is $25,000.

The most we will pay under this Extension during each separate 12 month period of this policy is $25,000.

**8. Commercial Tools and Small Equipment**

**SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, v. Commercial Tools and Small Equipment**, paragraph **(4)** is replaced by the following:

**(4)** The most we will pay for any loss under this Additional Coverage in any one occurrence is $25,000 but not more than $2,500 for any one tool, tool box or piece of small equipment.

**9. Computer Equipment**

The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, r. Computer Equipment**, paragraph **(4):**

The most we will pay for direct physical loss or damage to Covered Property listed in paragraph **(1)** above in any one occurrence while "in transit" or at a premises other than the described premises is $75,000.

## 10. Computer and Funds Transfer Fraud

**SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, hh. Computer and Funds Transfer Fraud,** paragraph **(3)** is replaced by the following:

**(3)** The most we will pay per occurrence under this Additional Coverage is $10,000 unless a higher Limit of Insurance is shown in the Schedule of Amended Limits of Insurance.

## 11. Consequential Loss to Stock

The following is added to **SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions**:

**Consequential Loss to Stock**

**(1)** You may extend the insurance that applies to your Business Personal Property to apply to the reduction in value of the remaining parts of "stock" in process of manufacture that are physically undamaged but are unmarketable as a complete product because of direct physical loss or damage from a Covered Cause of Loss to other parts of covered "stock" in process of manufacture at an insured location.

**(2)** Should it be determined that such "stock" retains only a salvage value, we retain the option of paying the full value of the "stock" as agreed within this policy, and taking the damaged property for salvage purposes.

**(3)** Payment under this Coverage Extension is included within the applicable Limit of Insurance.

## 12. Contract Penalties

The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages**:

**Contract Penalties**

**(1)** We will pay for contract penalties you are required to pay due to your failure to provide your product or service according to contract terms because of direct physical loss or damage by a Covered Cause of Loss to Covered Property.

**(2)** The most we will pay for all penalties in any one occurrence is $25,000.

**(3)** The amount payable under this Additional Coverage is additional insurance.

## 13. Deferred Payments

**SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages,** paragraph **(4)** is replaced by the following:

**(4)** The most we will pay under this Additional Coverage for loss or damage in any one occurrence at a described premises is $25,000.

## 14. Denial of Access to Premises

The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages**:

**Denial of Access to Premises**

**(1)** We will pay for the actual loss of Business Income you sustain and necessary Extra Expense you incur when ingress to or egress from the described premises is prevented, due to direct physical loss of or damage to property that is away from but within 2000 feet of the described premises, caused by or resulting from any Covered Cause of Loss covered under this policy.

**(2)** The coverage for Business Income will begin 72 hours after the loss or damage to the premises that causes the denial of access and will apply for a period of up to 30 consecutive days after coverage begins.

**(3)** The coverage for Extra Expense will begin immediately after the loss or damage to the premises that causes the denial of access and will end:

**(a)** 30 consecutive days after coverage begins; or

**(b)** When your Business Income coverage ends;

whichever is earlier.

**(4)** The definitions of Business Income and Extra Expense contained in the Business Income Additional Coverage and the Extra Expense Additional Coverage also apply to this Denial of Access to Premises Additional Coverage.

## 15. Electronic Vandalism

**SECTION I - Property, A. Coverage, 5. Additional Coverages, dd. Electronic**

The Hanover Insurance Group™

OBCH332709    1304500

**Vandalism,** paragraph **(3)** is replaced by the following:

**(3)** The most we will pay for loss of or damage to computer "hardware" or "software" in any one occurrence under this Additional Coverage is $5,000. The most we pay for all covered losses to computer "hardware" or "software" under this Additional Coverage during each separate 12-month period of this policy is $25,000.

The most we will pay under this Additional Coverage for all loss or damage sustained in any one policy year, regardless of the number of occurrences of loss or damage or the number of premises, locations or computer systems involved, is $25,000, unless a higher Limit of Insurance is shown in the Declarations. If loss payment on the first occurrence does not exhaust this amount, then the balance is available for subsequent loss or damage sustained in, but not after, that policy year. With respect to an occurrence which begins in one policy year and continues or results in additional loss or damage in a subsequent policy year(s), all loss or damage is deemed to be sustained in the policy year in which the occurrence began.

**16. Employee Theft Including ERISA Compliance**

**SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, p. Employee Theft Including ERISA**, paragraph **(6)** is replaced by the following:

**(6)** The most we will pay for all loss resulting directly from an occurrence is $50,000. Regardless of the number of years this policy remains in force or the number of premiums paid, no Limit of Insurance cumulates from year to year.

**17. Employee Tools and Work Clothing**

The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages**:

**Employee Tools**

**(1)** We will pay for direct physical loss of or damage by a Covered Cause of Loss to tools and work clothing belonging to your "employees" while such tools and work clothing are located at an insured location, your job sites or while in your vehicle "in transit" to and from your job sites.

**(2)** The most we will pay for loss or damage under this Additional Coverage is $25,000 per occurrence but not more than $2,500 for any one tool or item of clothing.

**(3)** The amount payable under this Additional Coverage is additional insurance.

**18. Expediting Expenses**

The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages:**

**Expediting Expenses**

**(1)** When a Covered Cause of Loss occurs to Covered Property, we will pay for the reasonable and necessary additional expenses you incur to:

**(a)** Make temporary repairs;

**(b)** Expedite permanent repair or replacement of damaged property; or

**(c)** Provide training on replacement machines or equipment.

**(2)** The most we will pay for loss under this Additional Coverage in any one occurrence is $25,000.

**(3)** The amount payable under this Additional Coverage is additional insurance.

**19. Extended Business Income**

**SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, f. Business Income, (2) Extended Business Income, (a) Extended Business Income - Other Than Rental Value**, paragraph **(ii)** and **(b) Extended Business Income - Rental Value**, paragraph **(ii)** are replaced by the following:

**(2)(a)    Extended Business Income - Other Than Rental Value**

**(ii)** Ends on the earlier of:

**1)** The date you could restore your operations, with reasonable speed, to the level which would generate the business income amount that would have existed if no direct physical loss or damage had occurred; or

**2)** 180 consecutive days after the date determined in **(2)(a)(i)** above.

**(2)(b)** **Extended Business Income - Rental Value**

**(ii)** Ends on the earlier of:

**1)** The date you could restore tenant occupancy, with reasonable speed, to the level which would generate the "Rental Value" that would have existed if no direct physical loss or damage had occurred; or

**2)** 180 consecutive days after the date determined in **(2)(b)(i)** above.

**20. Fine Arts**

SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions, x. Fine Arts, paragraph **(3)** is replaced by the following:

**(3)** The most we will pay for loss under this Additional Coverage is $50,000 per occurrence regardless of the number of locations or buildings involved.

**21. Fire Department Service Charge**

SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, c. Fire Department Service Charge is replaced by the following:

**c. Fire Department Service Charge**

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay for your liability for the fire department service charges if:

**(1)** Assumed by contract or agreement prior to the loss; or

**(2)** Required by local ordinance.

**22. Fire Protection Equipment Recharge**

SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions, o. Fire Protection Systems Recharge, paragraph **(3)**, is replaced by the following:

**(3)** This Coverage Extension is included within the Limit of Insurance applicable to your covered property at the described premises. This Coverage Extension does not increase the Limits of Insurance.

**23. Forgery or Alteration**

SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, k. Forgery or Alteration, paragraph **(4)** is replaced by the following:

**(4)** The most we will pay for any loss, including legal expenses, under this Additional Coverage is $50,000, unless a higher Limit of Insurance is shown in the Schedule of Amended Limits of Insurance.

**24. Hired Auto - Physical Damage**

The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages**:

**Hired Auto - Physical Damage Coverage**

**(1)** We will pay for loss to an "auto" you or an "employee", at your direction, lease, hire or rent without a driver for a period of 30 days or less for the purpose of conducting customary operations for your business. This does not include any "auto" you lease, hire or rent from any of your "employees" or members of their households.

We will pay for loss to a covered "auto" or its equipment caused by:

**(a)** **Comprehensive coverage**

From any cause except:

**(i)** The covered "auto's" collision with another object; or

**(ii)** The covered "auto's" overturn.

**(b)** **Collision coverage**

**(i)** The covered "auto's" collision with another object; or

**(ii)** The covered "auto's" overturn.

**(2)** For the purpose of this Additional Coverage only, **SECTION I - PROPERTY, A. Coverage, 2. Property Not Covered,** paragraph **a.** is replaced by the following:

**a.** Aircraft, automobiles, motortrucks and other vehicles subject to motor vehicle registration and:

**(1)** Any "auto" as described in paragraph **(1)** above, while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity;

**(2)** Tapes, records, discs or other similar audio, visual or data electronic devices designed for use with audio, visual or data electronic equipment;

**(3)** Any device designed or used to detect speed measuring equipment such as radar or laser detectors and any jamming apparatus intended to elude or disrupt speed measurement equipment; or

**(4)** Any electronic equipment, without regard to whether this equipment is permanently installed, that receives or transmits audio, visual or data signals and that is not designed solely for the reproduction of sound.

**(3)** For the purpose of this Additional Coverage only, **SECTION I - PROPERTY, B. Exclusions** does not apply with the exception of the following exclusions:

**(a)** **1.d. Nuclear Hazard**;

**(b)** **1.f. War and Military Action**

For the purpose of this Additional Coverage only, the following exclusions are added to **SECTION I - PROPERTY, B. Exclusions**:

**1.** We will not pay for loss to a covered "auto" caused by or resulting from someone causing you to voluntarily part with the "auto" by trick or scheme or under false pretenses; or

**2.** We will not pay for loss caused by or resulting from wear and tear, freezing; mechanical or electrical breakdown; blowouts, punctures or other road damage to tires.

**(4)** For the purpose of this Additional Coverage only, the following is added to **SECTION I - PROPERTY, C. Limits of Insurance**:

**Hired Auto Physical Damage Limits of Insurance**

The most we will pay for loss to any one covered "auto" is the lesser of:

**a.** The actual cash value of the damaged or stolen property as of the time of loss;

**b.** The cost of repairing or replacing the damaged or stolen property

with other property of like kind and quality; or

**c.** $50,000.

**(5)** The following is added to **SECTION I - PROPERTY, D. Deductibles,** paragraph **5.**:

Hired Auto - Physical Damage

**(6)** For the purpose of this Additional Coverage only, the following is added to **SECTION I - PROPERTY, G. Property Definitions**:

**1.** "Auto" means a land motor vehicle, trailer or semitrailer that is subject to motor vehicle registration, or designed for travel on public roads, including any attached machinery or equipment.

The amount payable under this Additional Coverage is additional insurance.

This coverage is excess to any other valid insurance whether collectible or not.

**25. Installation Floater**

**SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, w. Installation**, paragraph **(8)** is replaced by the following:

**(8)** The most we will pay for loss of or to damage to property covered under this Additional Coverage in any one occurrence is $50,000, regardless if the property is located at a jobsite, while "in transit", or at a temporary storage location.

**26. Interruption of Computer Operations**

**SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, ee. Interruption of Computer Operations**, paragraph **(3)**, is replaced by the following:

**(3)** The most we will pay under this Additional Coverage - Interruption of Computer Operations for all loss sustained and expense incurred in any one policy year, regardless of the number of interruptions or the number of described premises or computer systems involved, is $50,000 unless a higher Limit of Insurance is shown in the Declarations. If loss payment relating to the first interruption does not exhaust this amount, then the balance is available for loss or expense sustained or incurred as a result of subsequent interruptions in that policy year. A balance remaining at the end of a policy year does not increase the amount of insurance in

the next policy year. With respect to any interruption which begins in one policy year and continues or results in additional loss or expense in a subsequent policy year(s), all loss and expense is deemed to be sustained or incurred in the policy year in which the interruption began.

**27. Inventory and Loss Appraisal**

**SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions, j. Inventory and Loss Appraisal**, paragraph **(2)**, is replaced by the following:

**(2)** Regardless of the number of premises involved, the most we will pay under this Extension is $20,000.

**28. Key Replacement and Lock Repair**

**SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions, g. Key Replacement and Lock Repair**, paragraph **(2)**, is replaced by the following:

**(2)** The most we will pay under this Extension is $25,000. The Deductible does not apply to this Extension.

**29. Leasehold Interest (Tenants Only)**

**a.** **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, z. Leasehold Interest (Tenants Only)**, paragraph **(2)(b)**, is replaced by the following:

**(2)(b)** $25,000;

**b.** **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, z. Leasehold Interest - Tenant**, paragraph **(4)(a)**, is replaced by the following:

**(4)(a)** $25,000 will be the maximum amount payable regardless of the number of leases affected by the same Covered Cause of Loss.

**30. Lessor's Lease Cancellation**

The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages**:

**Lessor's Lease Cancellation**

**(1)** We will pay the actual loss of business income you sustain due to the cancellation of a lease by your tenants in a Covered Building due to untenantability that is caused by direct physical loss or damage to that building from a Covered Cause of Loss.

This Additional Coverage only applies if at the time of loss the building was occupied and business was being conducted by the tenant cancelling the lease or their sub-lessee.

**(2)** We will pay for loss of business income that you sustain after tenantability is restored and until the earlier of:

**(a)** The date you lease the premises to another tenant; or

**(b)** 12 months immediately following the "period of restoration".

**(3)** Regardless of the number of tenants cancelling a lease at the described premises, the most we will pay under this Additional Coverage is $10,000 per occurrence

**(4)** The amount payable under this Additional Coverage is additional insurance.

**(5)** **Special Lease Cancellation Exclusions**

We will not pay for:

**(a)** Lease cancelled after the "period of restoration";

**(b)** Lease cancelled, suspended or allowed to lapse by you;

**(c)** Return of prepaid rent or security and other deposits made by tenants; or

**(d)** Lease cancelled at the normal expiration date.

**31. Lessor's Tenant Move Expenses**

The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages**:

**Lessor's Tenant Move Expenses**

**(1)** In the event that your tenants must temporarily vacate the covered Building at the described premises due to untenantability caused by direct physical loss or damage by a Covered Cause of Loss, we will pay the following expenses you actually incur to move those tenants out of and back into your covered Building.

**(2)** We will only pay for the following expenses:

**(a)** Packing, transporting and unpacking the tenant's Business Personal Property including the cost of insuring the move out

and back and any necessary disassembly and reassembly or setup of furniture and equipment; and

**(b)** The net cost to discontinue and re-establish the tenants' utility and telephone services, after any refunds due the tenants.

**(3)** We will only pay for these expenses that you actually incur within 60 days of the date that the damaged buildings has been repaired or rebuilt.

**(4)** Regardless of the number of tenants involved, the most we will pay under this Additional Coverage is $10,000 per occurrence. This Additional Coverage is not subject to the Limits of Insurance under **SECTION I - PROPERTY.**

## 32. Marring and Scratching

The following is added to **SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions**:

**Marring and Scratching**

**(1)** You may extend the insurance that applies to Business Personal Property to apply to damage caused directly by sudden and accidental marring and scratching of:

**(a)** Your "stock";

**(b)** Your printing plates; or

**(c)** Property of others that is in your care, custody or control.

**(2)** This Coverage Extension does not apply to:

**(a)** Property at other than the described premises; or

**(b)** Personal Property in transit.

**(3)** Payment under this Coverage Extension is included within Limit of Insurance applicable to your Business Personal Property.

## 33. Money Orders and Counterfeit Money

**SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, j. Money Orders and Counterfeit Money**, paragraph **(3)**, is replaced by the following:

**(3)** The most we will pay for any loss under this Additional Coverage is $25,000.

## 34. Newly Acquired or Constructed Property

**SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions, a. Newly Acquired or Constructed Property**, paragraphs, **(2)(c)** and **(3)** are replaced by the following:

**(2) Business Personal Property**

**(c)** The most we will pay for loss or damage under this Extension is $1,000,000 at each premises.

**(3) Business Income and Extra Expense**

You may extend the insurance that applies to Business Income and Extra Expense to apply to property at any location you acquire. The most we will pay for loss or damage under this Extension is $500,000 at each premise.

## 35. Ordinance or Law - Demolition Cost and Increased Cost of Construction

**SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, l. Ordinance or Law, (5) Loss Payment**, paragraph **(d)** is replaced by the following:

**(d)** The most we will pay for the total of all covered losses for Demolition Cost and Increased Cost of Construction for each building described in the Declarations is $50,000 or the amount shown in the Additional Property Schedule. If a damaged building(s) is covered under a Blanket Limit of Insurance and the Blanket Limit of Insurance applies to more than one building or item of property, then the most we will under this Additional Coverage, for each building, is $50,000, or the amount shown in the Additional Property Coverage Schedule.

## 36. Ordinance or Law - Increased Period of Restoration

**a.** The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, l. Ordinance or Law,** paragraph **(4) Coverage:**

If a Covered Cause of Loss occurs to property at the premises described in the Declarations, coverage is extended to include the amount of actual and necessary loss you sustain during the increased period of "suspension" of "operations" caused by or resulting from the enforcement of any ordinance or law that:

**(a)** Regulates the construction or repair of any property;

**(b)** Requires the tearing down of parts of any property not damaged by a Covered Cause of Loss; and

**(c)** Is in force at the time of loss.

However, coverage is not extended under this endorsement to include loss caused by or resulting from the enforcement of any ordinance or law which requires:

**(d)** The demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungi", wet or dry rot or bacteria; or

**(e)** Any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungi", wet or dry rot or bacteria.

**b.** The following is added to **SECTION I - PROPERTY, A. Coverage 5. Additional Coverages, I. Ordinance or Law, (5) Loss Payment**, paragraph **(c)**:

The most we will pay for loss under Increased Period of Restoration in any one occurrence is $100,000 for each described building shown in the Declarations or the amount shown in the Additional Property Coverage Schedule. If a damaged building(s) is covered on a blanket Limit of Insurance which applies to more than one building or item of property, then the most we will pay for Increased Period of Restoration for each described building in any one occurrence is $100,000.

**37. Ordinance or Law (Tenant's Improvement Extension)**

**a.** The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, I. Ordinance or Law, (4) Coverage:**

**(a)** Coverage provided under paragraphs **(a)**, **(b)** and **(c)** above applies to tenant's improvements and betterments but only if a limits of Insurance is shown in the Declarations for Business Personal Property. Business Personal Property must be insured on a replacement cost basis.

**(b)** This extension is provisional and excess to any other valid insurance for tenant's improvements and betterments whether collectible or not.

**b.** The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, I. Ordinance or Law, (5) Loss Payment**, paragraph **(c)**:

Regardless of the number of locations insured or buildings involved, the most we will pay for any loss to tenant's improvements and betterments under this Additional Coverage in any one occurrence is $50,000.

**38. Outdoor Property**

**SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions, c. Outdoor Property**, paragraph **(3)** is replaced by the following:

**(3)** Regardless of the number of described premises involved, the most we will pay for loss or damage under this Extension, including debris removal expense, is $25,000, but not more than $2,500 for any one tree, shrub or plant.

**39. Personal Effects**

**SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions, d. Personal Effects,** paragraph **(3)** is replaced by the following:

**(3)** The most we will pay for loss or damage under this Extension is $50,000 at each described premises.

**40. Portable Electronic Devices Coverage Worldwide**

The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages**:

**Portable Electronic Devices Coverage Worldwide**

**(1)** We will pay for loss or damage caused by or resulting from a Covered Cause of Loss to portable electronic devices while anywhere in the world, including while "in transit".

The **Hanover**
Insurance Group™

OBCH332709          1304500

**(2)** For the purpose of this Additional Coverage, the following is added to **SECTION I - PROPERTY, G. Property Definitions**:

Portable electronic devices includes laptops, tablets, e-readers, smartphones or other lightweight, hand-held or wearable devices capable of storing, retrieving and processing data.

**(3)** This coverage is provided when the property is owned by you or owned by others when in your care, custody or control, subject to **SECTION I - PROPERTY, E. Property Loss Conditions, 5. Loss Payment,** paragraph **d.(3)(b).**

**(4)** We will not pay for loss or damage to portable electronic devices when caused by, resulting from, or arising out of "theft" or unexplained loss when the property is checked baggage with a carrier for transit.

**(5)** The provisions for a Business Income loss will be governed by the terms of **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages f. Business Income** except:

 **(a)** There is no requirement that a loss occur within 1,000 feet or at the described premises as stated in paragraph **(1)(a)**; and

 **(b)** The following are not included under this Additional Coverage:

  **(i)** Continuing normal operating expenses incurred, including "payroll expense";

  **(ii)** Extended Business Income.

**(6)** The provisions for Extra Expense loss will be governed by the terms of **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, g. Extra Expense** except:

 **(a)** There is no requirement that a loss occur within 1,000 feet or at the described premises as stated in paragraph **g.(1)** and **g.(2)**.

**(7)** **Limitations**, item **b.** does not apply to this Additional Coverage.

**(8)** **SECTION I - PROPERTY, B. Exclusions, 5. Business Income and Extra Expense Exclusions,** paragraph **(4)** does not apply to this Additional Coverage.

**(9)** Regardless of the number of lost or damaged portable electronic devices, the most we will pay per occurrence including actual loss of Business Income you sustain and necessary Extra Expense you incur, is $25,000.

**(10)** The amount payable under this Additional Coverage is additional insurance.

**41. Precious Metal Theft Payment Changes**

 **SECTION I - PROPERTY, A. Coverage, 4. Limitations**, paragraph **c.** is replaced by the following:

 **c.** For loss or damage by "theft", the following types of property are covered only up to the limits shown below:

  **(1)** $10,000 for furs, fur garments and garments trimmed with fur.

  **(2)** $10,000 for jewelry, watches, watch movements, jewels, pearls, precious and semi-precious stones

   This limit does not apply to jewelry and watches worth $250 or less per item.

  **(3)** $50,000 for bullion, gold, silver, platinum and other precious alloys or metals.

**42. Personal Property in Transit**

 **SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions, i. Personal Property in Transit**, paragraph **(5)** is replaced by the following:

 **(5)** The most we will pay for loss or damage under this Coverage Extension is $50,000.

**43. Sales Representative Samples**

 **SECTION I - PROPERTY, 5. Additional Coverages, y. Sales Representative Samples**, paragraph **(3)** is replaced by the following:

 **(3)** The most we will pay for any loss or damage under this Additional Coverage is $25,000.

**44. Soft Costs**

 The following is added to **SECTION I - PROPERTY, A. Coverage, 6 Extensions**: **Soft Costs**

 **(1)** We will pay the actual "soft cost expenses" that arise out of a delay in the construction, erection or fabrication of a Covered Building that

is listed in **SECTION I - PROPERTY**, **A. Coverage**, **1. Covered Property**, paragraph **a.(6)** resulting from direct physical loss or damage to that Covered Building from a Covered Cause of Loss.

**(2)** We will only pay the necessary "soft cost expenses" that are over and above those costs that would have been incurred had there been no delay.

**(3)** The most we will pay under this Extension in any one occurrence is $10,000.

**(4)** "Soft cost expenses" means additional:

**(a)** Realty taxes and other assessments that you incur for the period of time that construction has been extended beyond the projected completion date;

**(b)** Interest on money borrowed to finance construction, remodeling, renovation or repair; and

**(c)** Advertising, public relations and promotional expenses.

**45. Spoilage**

The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages**:

The following provisions (**a.** through **g.** inclusive) apply to the insurance provided by this Additional Coverage:

**a.** For the purpose of this Additional Coverage the following is added to **SECTION I - PROPERTY, A. Coverage, 1. Covered Property**:

Covered Property means "perishable goods" at the insured locations, if the "perishable goods" are:

**a.** Owned by you and used in your business; or

**b.** Owned by others and in your care, custody or control except as otherwise provided in **SECTION I - PROPERTY, E. Property Loss Conditions, 5. Loss Payment**, paragraph **d.(3)(b)**.

**b.** The following is added to **SECTION I - PROPERTY, A. Coverage, 2. Property Not Covered**:

Property located:

**(1)** On the exterior of buildings;

**(2)** In the open; or

**(3)** In vehicles.

**c.** **SECTION I - PROPERTY, A. Coverage, 3. Covered Causes Of Loss** is replaced by the following:

**3.** **Covered Causes of Loss**

Subject to the exclusions described in item **e.** of this Additional Coverage, Covered Causes of Loss means the following:

**a.** Breakdown or Contamination, meaning:

**(1)** Change in temperature or humidity resulting from mechanical breakdown or mechanical failure of refrigerating, cooling or humidity control apparatus or equipment.

Coverage applies only while such apparatus or equipment is at the described premises shown in the Schedule; or

**(2)** Contamination by a refrigerant. Coverage applies only while the refrigerating apparatus or equipment is at the described premises.

Mechanical breakdown and mechanical failure do not mean power interruption, regardless of how or where the interruption is caused and whether or not the interruption is complete or partial.

**b.** Power Outage, meaning change in temperature or humidity resulting from complete or partial interruption of electrical power, either on or off the described premises, due to conditions beyond your control.

**d.** **SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions** does not apply.

e. **SECTION I - PROPERTY, B. Exclusions** paragraph **1.**, does not apply to this Coverage Extension except for:

(1) **b.,** Earth Movement;

(2) **c.,** Governmental Action;

(3) **d.,** Nuclear Hazard;

(4) **f.,** War and Military Action; and

(5) **g.,** Water.

(6) For the purposes of this additional coverage, the following exclusions are added to **SECTION I - PROPERTY, B. Exclusions,** paragraph **2**:

We will not pay for loss or damage caused by or resulting from:

1. The disconnection of any refrigerating, cooling or humidity control system from the source of power.

2. The deactivation of electrical power caused by the manipulation of any switch or other device used to control the flow of electrical power or current.

3. The inability of an electrical utility company or other power source to provide sufficient power due to:

   a. Lack of fuel; or

   b. Governmental order.

4. The inability of a power source at the described premises to provide sufficient power due to lack of generating capacity to meet demand.

5. Breaking of any glass that is a permanent part of any refrigerating, cooling or humidity control unit.

f. **Conditions**

For the purpose of this Additional Coverage, **SECTION I - PROPERTY, E. Property Loss Conditions, 5. Loss Payment**, paragraph **d.** is replaced by the following:

d. We will determine the value of Covered Property as follows:

(1) For "perishable goods" you have sold but not delivered, at the selling price less discounts and expenses you otherwise would have had;

(2) For other "perishable goods", at actual cash value.

f. Regardless of the number of insured locations involved, the most we will pay under this Additional Coverage for loss or damage in any one occurrence is $25,000. This Additional Coverage is not subject to **SECTION I - PROPERTY, C. Limits of Insurance.**

46. **Temporary Relocation of Property**

The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages**:

**Temporary Relocation of Property**

(1) We will pay for loss of or damage to Covered Property from a Covered Cause of Loss while it is away from the described premises, if it is being stored temporarily at a location you do not own, lease or operate while the described premises is being renovated or remodeled.

(2) This coverage applies for 90 days after the property is first moved, but does not extend past the date on which this policy expires.

(3) The most we will pay under this Additional Coverage is $50,000.

(4) The amount payable under this Additional Coverage is additional insurance.

47. **Tenant Signs**

**SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, t. Tenant Signs**, paragraph **(4)** is replaced by the following:

(4) The most we will pay for loss or damage in any one occurrence is $25,000 regardless of the number of locations or buildings involved.

48. **Unauthorized Business Credit Card Use**

**SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, aa. Unauthorized Business Credit Card Use**, paragraph **(5)** is replaced by the following:

(5) The most we will pay for any loss including legal expenses, under this

Additional Coverage is $10,000 per occurrence.

**49. Underground Water Seepage**

The following is added to **SECTION I - PROPERTY**, **A. Coverage, 5. Additional Coverages**:

**Underground Water Seepage**

**(1)** We will pay for direct physical loss or damage to Covered Property at the described premises caused by or resulting from water under the ground surface pressing on, or flowing or seeping through:

**(a)** Foundations, walls, floor or paved surfaces;

**(b)** Basements, whether paved or not; or

**(c)** Doors, windows or other openings in any building or other structure.

**THIS IS NOT FLOOD INSURANCE OR PROTECTION FROM AN INUNDATION OF SURFACE WATER, HOWEVER CAUSED.**

This coverage is intended to provide insurance for damage by subterranean water when such event is a localized incident - not part of a general, widespread "flood" water event.

We will not pay for loss or damage to property when the subterranean water causing the Underground Water Seepage is itself caused by any "flood" or general flooding conditions - including but not limited to those enumerated under **SECTION I - PROPERTY, B. Exclusions**, paragraph **1.g. Water**.

**(2)** **SECTION I - PROPERTY, B. Exclusions,** paragraphs **g. Water (4)** is deleted.

**(3)** The most we will pay for loss in any one occurrence under this Additional Coverage is $100,000.

**(4)** We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds $1,000. This deductible is to apply separately to:

**(a)** Each building, including personal property therein;

**(b)** Personal property in each building if no coverage is provided on the containing building; and

**(c)** Personal property in the open.

The aggregate amount of this deductible in any one occurrence shall not exceed $5,000.

We will then pay the amount of loss or damage in excess of the deductible up to the applicable Limit of Insurance.

**(5)** **Special Underground Water Seepage Exclusions**

**(a)** The **Exclusions** and **Limitations** sections of **SECTION I - PROPERTY** apply to this Additional Coverage except as provided under paragraph **(b)** below.

**(b)** To the extent that a part of **SECTION I - PROPERTY, B. Exclusions**, paragraph **1.g. Water** might conflict with this Additional Coverage, that part of the **Water** Exclusion does not apply.

**(c)** This Additional Coverage does not apply to loss or damage resulting from your failure to:

**(i)** Keep a sump pump or its related equipment in proper working condition; or

**(ii)** Perform the routine maintenance or repair necessary to keep a sewer or drain free from obstructions.

**50. Unnamed Locations**

The following is added to **SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions**:

**Unnamed Locations**

**a. Personal Property and Computer Equipment**

**(1)** You may extend the insurance that applies to Business Personal Property and "Computer Equipment" to apply to direct physical loss or damage to Business Personal Property and "Computer Equipment" caused by or resulting from a Covered Cause of Loss while such property is located at a "client or virtual office premises".

**(2)** This Coverage Extension also applies to Business Personal Property and "Computer Equipment" that are:

**(a)** Owned by an "employee";



OBCH332709 1304500

and

 **(b)** Used for your business;

While such property is located at a "client or virtual office premises" and sustains direct physical loss or damage caused by or resulting from a Covered Cause of Loss.

**(3)** This Coverage Extension does not apply to property otherwise covered under the following Additional Coverages or Coverage Extensions:

 **(a)** Accounts Receivable;

 **(b)** Fine Arts;

 **(c)** Personal Property Off Premises

 **(d)** Personal Property in Transit

 **(e)** Valuable Papers and Records (Other Than Electronic Data)

 **(f)** Portable Electronic Devices Coverage Worldwide

 **(g)** Worldwide Property Off Premises

**(4)** The most we will pay under this Coverage Extension in any one occurrence is $10,000 regardless of the number of locations involved. The most we will pay for all covered losses under this Coverage Extension during each separate 12 month period of this policy is $25,000.

This Coverage Extension is not subject to **SECTION I - PROPERTY, C. Limits of Insurance**.

**b. Business Income and Extra Expense**

**(1)** If this policy provides for Business Income and Extra Expense coverages, you may extend the insurance that applies to the actual loss of Business Income (not including Extended Business Income) you sustain and necessary Extra Expense you incur due to the "suspension" of your business activities occurring at a "client or virtual office premises" during the "period of restoration". The "suspension" must be caused by direct physical loss or damage caused by or resulting from a Covered Cause of Loss at a

"client or virtual office premises".

**(2)** We will reduce the amount of your Business Income loss, other than Extra Expense, to the extent that you can resume operations, in whole or in part, by using any other available:

 **(a)** Source of materials;

 **(b)** Outlet for your products.

**(3)** If you do not resume operations or do not resume operations as quickly as possible, we will pay based on the length of time it would have taken to resume operations as quickly as possible.

**(4)** The coverage period for Business Income under this Coverage Extension:

 **(a)** Begins 24 hours after the time of direct physical loss or damage caused by or resulting from a Covered Cause of Loss at the premises of a "client or virtual office premises"; and

 **(b)** Ends on the date when the property at the premises of the "client or virtual office premises" should be repaired, rebuilt or replaced (to the extent necessary to resume operations) with reasonable speed and similar quality or 12 months immediately following the date of direct physical loss or damage, whichever is shorter.

**(5)** The Business Income coverage period as stated in paragraph **(a)** above does not include any increased period required due to the enforcement of any ordinance or law that:

 **(a)** Regulates the construction, use or repair, or requires the tearing down of any property; or

 **(b)** Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

The expiration date of this policy will not reduce the Business Income coverage period.

**(6)** The most we will pay under this Coverage Extension in any one occurrence is $10,000 regardless of the number of locations involved. The most we will pay for all covered losses under this Coverage Extension during each separate 12 month period of this policy is $50,000.

This Coverage Extension is not subject to **SECTION I - PROPERTY, C. Limits of Insurance**.

**(7)** The definition of Business Income contained in the Loss of Business Income Additional Coverage applies to this Coverage Extension.

**c.** For purposes of this Coverage Extension, "client or virtual office premises" means the interior of that portion of any building occupied by an "employee", including

**(1)** An "employee's" residence; or

**(2)** A client's business location located anywhere in the world.

**51. Utility Services (Including Overhead Transmission Lines)**

**a.** **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, bb. Utility Services**, paragraphs **(1)** and **(2)** are replaced by the following:

**(1)** We will pay for loss of or damage to Covered Property caused by an interruption in service to the described premises. The interruption must result from direct physical loss or damage by a Covered Cause of Loss to property not on the described premises that provides the services shown in paragraph **(3)** below.

The most we will pay for loss in any one occurrence under this Additional Coverage is $50,000 at each described premises or the Limit of Insurance shown in the Additional Property Coverage Schedule.

**(2)** We will pay for the actual loss of Business Income you sustain and necessary Extra Expense you incur caused by the interruption of service at the described premises. The interruption must result from direct physical loss or damage by a Covered Cause of Loss to property not on the described premises that provides the services shown in paragraph **(3)** below.

We will only pay for loss you sustain after the first 24 hours following the direct physical loss or damage to the property described above.

The most we will pay for loss in any one occurrence under this Additional Coverage is $50,000 at each described premises or the Limit of Insurance shown in the Additional Property Coverage Schedule.

**b.** **SECTION I - PROPERTY**, **A. Coverage, 5. Additional Coverages, bb. Utility Services**, paragraph **(4)** is deleted.

**52. Worldwide Property Off Premises**

The following is added to **SECTION I - PROPERTY**, **A. Coverage, 6**. **Coverage Extensions**:

**Worldwide Property Off-Premises**

**(1)** You may extend the insurance that applies to your Business Personal Property and Personal Property of Others to apply to that property while it is temporarily outside the coverage territory if it is:

**(a)** Temporarily at a location you do not own, lease or operate;

**(b)** Temporarily on display or exhibit at any fair, trade show or exhibition;

**(c)** Samples of your "stock" in trade in the custody of your sales representatives; or

**(d)** While "in transit" between the described premises and a location described in **(a), (b)** or **(c)** above.

**(2)** The most we will pay for loss or damage under this Extension is $50,000.

**(3)** This Extension provides an additional amount of insurance.

 Includes copyrighted material of Insurance Services Office, Inc., with its permission.



OBCH332709      1304500

**B. Blanket Coverages**

1. **Accounts Receivable**

    **SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions, f. Accounts Receivable,** paragraph **(2),** is replaced by the following:

    **(2)** The most we will pay under this Coverage Extension for loss or damage in any one occurrence at the described premises or away from the described premises is subject to the Blanket Coverage Limit of Insurance, or the amount shown in the Additional Property Coverage Schedule.

2. **Backup or Overflow of a Sewer, Drain or Sump**

    The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages**:

    **Backup or Overflow of a Sewer, Drain or Sump**

    **(1)** We will pay for direct physical loss or damage to Covered Property at the described premises, solely caused by or resulting from water or waterborne material carried or moved by water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment. The term drain includes a roof drain and its related fixtures.

    **(2)** For the purpose of this Additional Coverage only, **SECTION I - PROPERTY, B. Exclusions,** paragraph **g. Water (3)** is deleted.

    **(3)** Regardless of the number of insured locations involved, the most we will pay under this Additional Coverage for loss or damage in any one occurrence is subject to the Blanket Limit of Insurance or the amount shown in the Additional Property Coverage Schedule.

    **(4) Special Sewer Backup Exclusion**

    We will not pay for:

    **(a)** Loss or damage from water or other materials that back-up or overflow from any sewer or drain, sump, sump pump or related equipment when it is caused by or results from any "flood", regardless of the proximity of the back-up or overflow to the "flood" condition; or

    **(b)** Failure to keep a sump pump or its related equipment in proper working condition; or

    **(c)** Failure to perform routine maintenance or repair necessary to keep a sewer or drain free from obstructions.

3. **Computer Equipment**

    **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, r. Computer Equipment, paragraph (6)** is replaced by the following:

    **(6)** Regardless of the number of insured locations involved, the most we will pay for loss or damage under this Additional Coverage to property described in paragraphs **(1)** and **(2)** above in any one occurrence at insured locations is subject to the Blanket Coverage Limit of Insurance, or the amount shown in the Additional Property Coverage Schedule.

    The most we will pay for Extra Expense is $5,000 or the amount shown in the Additional Property Coverage Schedule in any one occurrence.

    This Additional Coverage is not subject to **SECTION I - PROPERTY, C. Limits of Insurance.**

4. **Debris Removal**

    **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, a. Debris Removal,** paragraph **(4),** is replaced by the following:

    **(4)** We will pay up to the blanket limit of insurance for debris removal expense, for each location, in any one occurrence of physical loss or damage to Covered Property, if one or both of the following circumstances apply:

    **(a)** The total of the actual debris removal expense plus the amount we pay for direct physical loss or damage exceeds the Limit of Insurance on the Covered Property that has sustained loss or damage.

    **(b)** The actual debris removal expense exceeds 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

Therefore, if Paragraphs **(4)(a)** and/or **(4)(b)** above, apply, our total payment for direct physical loss or damage and debris removal expense may reach but will never exceed the Limit of Insurance on the Covered Property that has sustained loss or damage, plus the blanket limit of insurance.

5. **Valuable Papers and Records (Other Than Electronic Data)**

    SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions, e. Valuable Papers and Records (Other Than Electronic Data), paragraph **(3)** is replaced by the following:

    **(3)** Regardless of the number of locations involved, the most we will pay under this Coverage Extension for loss or damage in any one occurrence at the described premises is subject to the Blanket Limit of Insurance, or the amount shown in the Additional Coverage Schedule.

ALL OTHER TERMS, CONDITIONS, AND EXCLUSIONS REMAIN UNCHANGED.



OBCH332709     1304500

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The following provisions are added to the Businessowners Policy and apply to Property and Liability Coverages:

**A. CAP ON CERTIFIED TERRORISM LOSSES**

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**B.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for loss or injury or damage that is otherwise excluded under this Policy.

ALL OTHER TERMS, CONDITIONS, AND EXCLUSIONS REMAIN UNCHANGED.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION OF PUNITIVE DAMAGES RELATED TO A CERTIFIED ACT OF TERRORISM

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The following provisions are added to **Section II - Liability** paragraph **B. Exclusions** of the Businessowners Coverage Form **391-1003:**

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM PUNITIVE DAMAGES**

Damages arising, directly or indirectly, out of a "certified act of terrorism" that are awarded as punitive damages.

**B.** The following definition is added:

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**C.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Policy.

ALL OTHER TERMS, CONDITIONS, AND EXCLUSIONS REMAIN UNCHANGED.

**The Hanover**
Insurance Group™

OBCH332709      1304500

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## ASSOCIATES AND FAMILY MEMBERS ADDITIONAL COVERAGE ENDORSEMENT

This endorsement modifies insurance provided under the following:

DATA BREACH COVERAGE FORM

The following Additional Coverage is added to **SECTION A - COVERAGES** of the Data Breach Coverage Form:

**A. ASSOCIATES AND FAMILY MEMBERS ADDITIONAL COVERAGE**

As described in Paragraphs **1.** and **2.** below, we will extend certain **Data Breach Covered Services** to your "associates" and to their "family members" whose "private personal data" under the circumstances described below. This Additional Coverage does not apply to a "data breach" involving information owned or controlled by you.

**1.** An "associate" or "family member" whose "private personal data" is lost or stolen by circumstances such as the loss of a credit card, debit card, ATM card, checkbook, driver's license, or passport; or the loss of a wallet, purse, or briefcase containing any of the foregoing, may contact our Designated Service Provider for the Fraud Alert service described in **Section A - Coverages,** paragraph **1.a.(3)** of the Data Breach Coverage Form.

**2.** An "associate" or "family member" who, as a result of loss or theft of "private personal data" described in Paragraph **1.** above, becomes a victim of "identity theft" or "account takeover", may contact our Designated Service Provider for the Identity Restoration Case Management services described in **Section A - Coverages,** paragraph **1.a.(4)** of the Data Breach Coverage Form.

We will provide these services for a period of one year following the data we are notified of the initial loss of "private personal data".

**B. DEFINITIONS**

Under **Section F - Definitions**, Paragraph

**1. Account Takeover** is replaced with the following:

**1. Account Takeover**

"Account takeover", as respects "associates" or "family members", means the takeover by a third party of one or more existing deposit accounts, credit card accounts, debit card accounts, ATM cards, or lines of credit in the name of an "associate" or "family member".

"Account takeover", as respects "associates" or "family members", includes the unauthorized takeover of one or more of the "associate's" existing deposit accounts, credit card accounts, debit card accounts, ATM cards, or lines of credit by a "family member".

Under **Section F - Definitions**, the following Definitions are added:

**1.** "Associate" means an employee of the business insured under this policy.

**2.** "Family Member" means:

**a.** an "associate's" spouse, or Registered Domestic Partner, or the legal equivalent thereof; or

**b.** a relative under 23 years of age who is a dependent of the "associate".

Includes copyrighted material of Insurance Services Office, Inc., with its permission



OBCH332709     1304500

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ILLINOIS CHANGES - DATA BREACH COVERAGE FORM

This endorsement modifies insurance provided under the following:

DATA BREACH COVERAGE FORM

**A. SECTION E - CONDITIONS**, paragraph **11.** is replaced by the following:

**11. Cancellation and Non-Renewal:**

   **a.** If we decide to cancel this Coverage Part in the first 60 days, we will mail:

     **(1)** 10 days' written notice of cancellation for nonpayment of premium; or

     **(2)** 30 days' written notice of cancellation for any other reason.

   If this Coverage Part has been in effect for 60 days or more or is a renewal of a Coverage Part we issued, then we will mail:

     **(3)** 10 days' written notice of cancellation for nonpayment of premium; or

     **(4)** 60 days' written notice of cancellation for one for more of the following reasons:

      **(a)** The Coverage Part was obtained through a material representation;

      **(b)** Any insured violated any of the terms and conditions of the policy;

      **(c)** The risk originally accepted has measurably increased;

      **(d)** Certification is provided to the Director of Insurance in Illinois of the loss of reinsurance by us which provided coverage to us for a substantial part of the underlying risk insured; or

      **(e)** A determination is made by the Director of Insurance in Illinois that the continuation of the policy could place us in violation of the insurance laws of Illinois.

   Cancellation notices will state the reason for cancellation and will be mailed to you and the agent or broker of record at the last addresses known to us. We will maintain proof of mailing on a recognized U.S. Post Office form or a form acceptable to the U.S. Post Office or other commercial mail delivery service.

   **b.** If we decide not to renew this Coverage Part, we will mail or deliver written notice not less than 60 days before the expiration date to the named insured shown in the Declarations and to the agent or broker of record at the last addresses known to us. Notice will provide an explanation of the reason for nonrenewal. We will maintain proof of mailing on a recognized U.S. Post Office form or a form acceptable to the U.S. Post Office or other commercial mail delivery service.

**B. SECTION E - CONDITIONS**, paragraph **2.** is replaced by the following:

**2. Concealment, Misrepresentation Or Fraud**

   **a.** This Coverage Form is void if you or any insured commit fraud or conceal or misrepresent a fact in the process leading to the issuance of this insurance, and such fraud, concealment or misrepresentation is stated in the policy or endorsement or in the written application for this policy and:

     **(1)** Was made with actual intent to deceive; or

     **(2)** Materially affected either our decision to provide this insurance or the hazard we assumed.

   However, this condition will not serve as a reason to void this Coverage Form after the Coverage Form has been in effect for one year or one policy term, whichever is less.

   **b.** This Coverage Form is void if you or any other insured, at any time subsequent to the issuance of this insurance, commit fraud or intentionally conceal or misrepresent a material fact relating to:

     **(1)** This Coverage Form; or

     **(2)** A claim under this Coverage Form.

   **c.** Notwithstanding the limitations stated in **2.a.** above, we may cancel the Coverage Form in accordance with the terms of the Cancellation Condition.

**C.** **SECTION E - CONDITIONS,** paragraph **18.** is replaced by the following:

**18. Appraisal**

If we and you disagree on the amount of net income, operating expense or loss either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of the net income, operating expense and loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will not be binding.

Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

However, we will pay your appraiser's fee and the umpire's appraisal fee, if the following conditions exist:

**c.** You demanded the appraisal; and

**d.** The amount of net income, operating expense and loss, as set by your appraiser, is agreed to by our appraiser or by the umpire.

If there is an appraisal, we will still retain our right to deny the claim; and you will retain your right to file suit against us.

**D.** **SECTION E - CONDITIONS,** Paragraph **5.** is replaced by the following:

**5. Legal Action Against Us**

No one may bring a legal action against us under this insurance unless:

**a.** There has been full compliance with all of the terms of this insurance; and

**b.** The action is brought within two years after the date we first deny the claim in whole or in part.

**E.** The following is added to **SECTION F - DEFINITIONS,** Paragraph **10. Defense Expenses:**

"Defense Expenses" do not include our routine ongoing expenses or overhead such as salaries of our staff or our staff attorneys**.**

**F.** **SECTION E - CONDITIONS** Paragraph **8.** Subparagraph **b.** is replaced by the following**:**

**b.** If there is other insurance covering the same "data breach", other than that described in **a.** above, we will share proportionatley with such other coverage in the benefits or amounts due for Data Breach Services, Data Breach Expense Coverages, and Additional Expense Coverages. We will not pay more than the applicable Limit of Insurance shown in the **SCHEDULE.**

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.



OBCH332709     1304500

**THIS IS A CLAIMS-MADE AND REPORTED COVERAGE ENDORSEMENT.**

# EMPLOYMENT PRACTICES LIABILITY INSURANCE COVERAGE ENDORSEMENT - ILLINOIS

Throughout this Coverage Endorsement (hereinafter referred to as "EPL Coverage Endorsement"), the words "you" and "your" refer to the "named insured(s)" shown in the Supplemental Declarations of this EPL Coverage Endorsement and any other person(s) or organization(s) qualifying as a "named insured" under this EPL Coverage Endorsement. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under SECTION III. WHO IS AN INSURED.

Other words and phrases that appear in "quotations" have special meaning. Refer to SECTION VII. DEFINITIONS.

The terms and conditions of the Cancellation Clause of the Common Policy Conditions, 391-1003 are hereby incorporated herein and shall apply to coverage as is afforded by this EPL Coverage Endorsement, unless specifically stated otherwise in an endorsement(s) attached hereto.

## SECTION I. WHAT IS COVERED

### A. Insuring Agreement

1. "We" shall pay those "losses" arising out of "your" "wrongful employment act" against "your" "employees", to which this insurance applies. The "wrongful employment act" must commence or take place after the "original inception date", but before the end of the "EPL coverage period". A "claim" or "suit" for a "wrongful employment act" must be first made against "you" during the "EPL coverage period" or any Extended Reporting Period (if applicable) and reported to "us" pursuant to the terms of this EPL Coverage Endorsement.

2. A "claim" or "suit" by a person or organization seeking damages will be deemed to have been made at the earlier of the following times:

   a. When written notice of such "claim" or "suit" is received and recorded by any "insured" or by "us", whichever comes first; or

   b. When "we" make any settlement in accordance with the terms of this EPL Coverage Endorsement.

### B. Defense

1. "We" have the right and duty to defend and appoint an attorney to defend any "claim" or "suit" brought against any "insured" for a "wrongful employment act" to which this insurance applies, even if the "claim" or "suit" is groundless or fraudulent.

2. "We" have the right to investigate and settle any "claim" or "suit" that "we" believe is proper. "You" shall be entitled to effectively associate in the defense of any "claim".

3. "We" shall pay all reasonable costs "we" ask the "insured" to incur while helping "us" investigate or defend a "claim" or "suit". "We", however, will not pay more than $100 per day for earnings lost by the "insured" because of time taken off from work.

4. "We" shall pay premiums for appeal bonds, or bonds to release property being used to secure a legal obligation, for a covered "suit". "We" shall only pay, however, for bonds valued up to "our" Aggregate EPL Limit of Liability. "We" shall have no obligation to appeal or to obtain these bonds.

5. Payments for "defense costs" are included within the Aggregate EPL Limit of Liability. They are not in addition to the Aggregate EPL Limit of Liability. "Our" duty to defend or to make payment of any "claim" or "suit pursuant to paragraphs 1-4 above, ends after the Aggregate EPL Limit of Liability has been exhausted by payment of "loss", including "defense costs".

**C. Transfer of Control**

1. "You" may take over control of any outstanding "claim" or "suit" previously reported to "us", but only if "we", in "our" sole discretion, decide that you should, or if a court orders "you" to do so.

2. Notwithstanding subsection 1 of this Clause C, in all events, if the Aggregate EPL Limit of Liability is exhausted, "we" will notify "you" of all outstanding "claims" or "suits" and "you" will take over control of the defense. "We" will help transfer control of the "claims" and "suits" to "you".

3. "We" shall take whatever steps are necessary to continue the defense of any outstanding "claim" or "suit" and avoid a default judgment during the transfer of control to "you". If "we" do so, "we" shall not waive or give up any of "our" rights. "You" shall pay all reasonable expenses "we" incur for taking such steps after the Aggregate EPL Limit of Liability is exhausted.

## SECTION II. EXCLUSIONS-WHAT IS NOT COVERED

This insurance does not apply to:

**A. Profit or Advantage**

Any liability arising out of the gaining of any profit or advantage to which an "insured" was not legally entitled. However, to the extent that a "claim" or "suit" is otherwise covered under this EPL Coverage Endorsement, we will defend a "claim" or "suit" asserting that an "insured" gained a profit or advantage to which the "insured" is determined to have gained a profit or advantage to which the "insured" was not legally entitled;

**B. Criminal Acts**

Any liability arising out of any dishonest, fraudulent, criminal, or malicious act by or at the direction of any "insured". However, to the extent that a "claim" or "suit" is otherwise covered under this EPL Coverage Endorsement we will defend a "claim" or "suit" asserting a dishonest, fraudulent, criminal or malicious act until such time as the "insured" is determined to have committed such dishonest, fraudulent, criminal or malicious act;

The "wrongful employment act(s)" of an "insured" shall not be imputed to any other "insured" for the purpose of determining the applicability of the foregoing exclusions A and B.

**C. "Property Damage"**

Any liability arising out of "property damage";

**D. "Bodily Injury"**

Any liability arising out of "bodily injury";

**E. Worker's Compensation, Social Security and Unemployment, Disability and Retirement Benefits**

Any liability arising out of any obligation pursuant to any worker's compensation, disability benefits, unemployment compensation, unemployment insurance, retirement benefits, social security benefits or similar law. This exclusion, however, shall not apply to "loss" arising from a "claim" or "suit" for "retaliation";

**F. Contractual Liability**

Any liability arising out of any actual or alleged contractual liability of any "insured" under any express contract or agreement. This exclusion, however, shall not apply to the extent any liability does not arise under such express contract or agreement;

**G. ERISA, COBRA, WARN, OSHA and NLRA**

Any liability arising out of the "insured's" failure to fulfill any responsibility, duty or obligation imposed by the Employment Retirement Income Security Act of 1974 (ERISA), Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA), Worker's Adjustment and Retraining Notification Act, Public Law 100-379 (1988) (WARN), Occupational Safety and Health Act (OSHA), National Labor Relations Act of 1947 (NLRA), any rules or regulations of the foregoing promulgated thereunder, and amendments thereto or any similar provisions of any federal, state, or local statutory or common law. This exclusion, however, shall not apply to "loss" arising from a "claim" or "suit" for "retaliation";



OBCH332709    1304500

### H. FLSA

Any liability arising out of any obligation under the Fair Labor Standards Act, or any violations of any federal, state, local or foreign statutory law or common law that governs the same topic or subject and any rules, regulations and amendments thereto (except the Equal Pay Act). This exclusion, however, shall not apply to "loss" arising from a "claim" or "suit" for "retaliation";

Any liability arising out of claims for unpaid wages or overtime pay for hours actually worked or labor actually performed by any "employee" of the "insured", for improper payroll deductions or any violations of any federal, state, local or foreign statutory law or common law that governs the same topic or subject and any rules, regulations and amendments thereto.

### I. Non-Monetary Relief

That part of any "claim" or "suit" seeking any non-monetary relief, including but not limited to: (1) injunctive relief; (2) declaratory relief; (3) disgorgement; (4) job reinstatement; (5) costs or expenses incurred in accommodating any disabled person, pursuant to the Americans with Disabilities Act of 1990 (ADA), including amendments to that law or similar federal, state or local statutory or common law; (6) any liability or costs incurred in connection with any educational, sensitivity or other corporate program, policy or seminar relating to a "claim" or "suit" alleging discrimination or other "wrongful employment act"; or (7) other equitable remedies, including as to all of the above, the cost of compliance therewith; provided, however, if such request for non-monetary relief is part of an otherwise covered "claim" or "suit", "we" will not seek to allocate "defense costs" for the portion of the "claim" or "suit" seeking non-monetary relief;

### J. Certain "Insureds"

Any "claim" or "suit" brought by any "insured". This exclusion, however, shall not apply to a "claim" or "suit" brought by an "employee" of the "insured", other than an "employee" who is or was a director of the "insured";

### K. Prior Knowledge

Any liability arising out of incidents, circumstances or "wrongful employment acts", which an "insured", prior to the "original inception date" as shown in the Supplemental Declarations of this EPL

Coverage Endorsement, had knowledge or which an "insured" could have reasonably foreseen might result in a "claim" or "suit";

### L. Prior Notice

Any liability arising out of the facts alleged, or to the same or "related wrongful employment acts" alleged or contained in any "claim" or "suit" which has been reported, or in any circumstances of which notice has been given, under any policy of which this EPL Coverage Endorsement is a renewal or replacement or which it may succeed in time;

### M. Securities Holder

Any "claim" or "suit" brought by a securities holder of the "insured" in their capacity as such, whether directly, derivatively on behalf of the "insured", or by class action;

### N. Outside Boards

Any liability arising out of any actual or alleged act or omission of an "insured" serving in any capacity, other than as a director, officer or "employee" of the "insured" entity.

## SECTION III. WHO IS AN INSURED

### A. Individual

If "you" are shown in the Supplemental Declarations of this EPL Coverage Endorsement as an individual, "you" and "your" spouse are "insureds", only for the conduct of a business of which "you" are the sole owner.

### B. Corporation

If "you" are shown in the Supplemental Declarations of this EPL Coverage Endorsement as a corporation or organization other than a partnership or joint venture, "you" and "your" "subsidiaries" are "insureds".

### C. Partnership or Joint Venture

If "you" are shown in the Supplemental Declarations of this EPL Coverage Endorsement as a partnership or joint venture, "you" are an "insured". "Your" partners or co-venturers and their spouses are also "insureds", but only for the conduct of "your" business.

### D. "Employees"

"Your" "employee", executive officers and directors are "insureds", only for the conduct of "your" business within the scope of their employment or their duties as executive officers or directors.

**E. Extensions**

1. Subject otherwise to the terms hereof, this EPL Coverage Endorsement shall cover "loss" arising from any "claims" or "suits" made against the estates, heirs, or legal representative of deceased individual "insureds", and the legal representatives of individual "insureds", in the event of incompetency, who were individual "insureds" at the time the "wrongful employment acts", upon which such "claims" or "suits" are based, were committed.

2. Subject otherwise to the terms hereof, this EPL Coverage Endorsement shall cover "loss" arising from all "claims" and "suits" made against the lawful spouse (whether such status is derived by reason of statutory law, common law or otherwise of any applicable jurisdiction in the world) of an individual "insured", including a "claim" or "suit" that seeks damages recoverable from marital community property, property jointly held by the individual "insured" and the spouse, or property transferred from the individual "insured" to the spouse; provided, however, that this extension shall not afford coverage for a "claim" or "suit" arising out of any "wrongful employment act" of the spouse, but shall apply only to "claims" or "suits" arising out of any "wrongful employment acts" of an individual "insured", subject to this EPL Coverage Endorsement's terms, conditions and exclusions.

## SECTION IV. LIMIT OF LIABILITY (including "defense costs")

**A.** The Aggregate EPL Limit of Liability shown in the Supplemental Declarations of this EPL Coverage Endorsement and the information contained in this section limits the most "we" shall pay for all "loss" arising out of "claims" and "suits" first made against "insureds" during the "EPL coverage period" or Extended Reporting Period (if applicable), regardless of:

1. the number of persons or organizations covered by this EPL Coverage Endorsement; or

2. the number of "claims" made or "suits" brought; or

3. the length of the "EPL coverage period".

**B.** The Aggregate EPL Limit of Liability is the most "we" shall pay for all "losses" covered under this EPL Coverage Endorsement, including amounts incurred for "defense costs".

**C.** The Aggregate EPL Limit of Liability for the Extended Reporting Period shall be part of, and not in addition to the Aggregate EPL Limit of Liability for the "EPL coverage period".

**D.** All "claims" and "suits" arising from the same or "related wrongful employment acts" shall be treated as arising out of a single "wrongful employment act".

**E.** All "claims" or "suits" arising out of one "wrongful employment act" shall be deemed to be made on the date that the first such "claim" is made or "suit" is brought. All "claims" asserted in a "class action suit" will be treated as arising out of a single "wrongful employment act".

**F.** Any "claim" or "suit" which is made subsequent to the "EPL coverage period" or Extended Reporting Period (if applicable) which, pursuant to Section VI, Clause D(3) and (4) is considered made during the "EPL coverage period" or Extended Reporting Period shall also be subject to the one Aggregate EPL Limit of Liability stated in the Supplemental Declarations of this EPL Coverage Endorsement.

## SECTION V. DEDUCTIBLE

"You" shall be responsible for the deductible amount shown in the Supplemental Declarations of this EPL Coverage Endorsement with respect to each "claim" and "suit" and "you" may not insure against it. A single deductible amount shall apply to "loss" arising from all "claims" and "suits" alleging the same "wrongful employment act" or "related wrongful employment acts". Expenses "we" incur in investigating, defending and settling "claims" and "suits" are included in the deductible. The deductible is not included within the Aggregate EPL Limit of Liability.

## SECTION VI. CONDITIONS

"We" have no duty to provide coverage under this EPL Coverage Endorsement, unless there has been full compliance with all the Conditions contained in this EPL Coverage Endorsement.

**A. Assignment**

The interest of any "insured" is not assignable. "You" cannot assign or transfer "your" interest in this EPL

The Hanover Insurance Group™

OBCH332709    1304500

Coverage Endorsement without "our" written consent attached to the EPL Coverage Endorsement.

**B. Bankruptcy or Insolvency**

"Your" bankruptcy, insolvency or inability to pay, will not relieve "us" from the payment of any "claim" or "suit" covered by this EPL Coverage Endorsement.

Under no circumstances will "your" bankruptcy, insolvency, or inability to pay require "us" to drop down, in any way replace, or assume any of "your" obligations with respect to the Deductible provisions of this EPL Coverage Endorsement.

**C. Coverage Territory**

"We" cover "wrongful employment acts" in the United States of America, its territories and possessions, Puerto Rico, or Canada, but only if the "claim" is made and the "suit" is brought for such "wrongful employment act" in the United States of America, its territories and possessions, Puerto Rico, or Canada.

**D. Duties in the Event of an Incident, "Claim" or "Suit"**

1. If, during the "EPL coverage period", incidents or events occur which "you" reasonably believe may give rise to a "claim" or "suit" for which coverage may be provided hereunder, such belief being based upon either written notice from the potential claimant or the potential claimant's representative; or notice of a complaint filed with EEOC, DOL or OFCCP (or similar federal, state or local agency); or upon a contemporaneously made memorandum of an oral "claim", allegation or threat, "you" shall give written notice to "us" as soon as practicable and either:

   a. anytime during the "EPL coverage period" or the Extended Reporting Period (if applicable); or

   b. within thirty (30) days after the end of the "EPL coverage period" or Extended Reporting Period (if applicable), as long as such "claim" or "suit" is reported no later than thirty (30) days after the date such "claim" or "suit" was first made against an "insured".

2. If a "claim" is made or a "suit" is brought against any "insured", "you" must:

   a. Immediately record the specifics of the "claim" or "suit" and the date received; and

   b. Provide "us" with written notice, as described in subsection 3. below, as soon as practicable.

3. Such written notice of "claim" or "suit" shall contain:

   a. The identity of the person(s) alleging a "wrongful employment act";

   b. The identity of the "insured(s)" who allegedly were involved in the incidents or events;

   c. The date the alleged incidents or events took place; and

   d. The written notice or contemporaneously prepared memorandum referred to above.

   If written notice is given to "us" during the "EPL coverage period" or Extended Reporting Period (if applicable), pursuant to the above requirements, then any "claim" or "suit" which is subsequently made against any "insureds" and reported to "us" alleging, arising out of, based upon or attributable to such circumstances or alleging any "related wrongful employment act" to such circumstances, shall be considered made at the time such notice of such circumstances was first given.

4. If "you" submit written notice of a "claim" or "suit", pursuant to this Clause D, then any "claim" or "suit" that may subsequently be made against an " insured" and reported to "us" alleging the same or a "related wrongful employment act" to the "claim" or "suit" for which such notice has been given shall be deemed, for the purpose of this insurance, to have been first made during the "EPL coverage period" in effect at the time such written notice was first submitted to "us".

5. "You" and any other "insured" must:

   a. Immediately send "us" copies of any demands, notices, summonses or legal papers received in connection with any "claim" or "suit";

   b. Authorize "us" to obtain records and other information;

   c. Cooperate with "us" in the investigation, settlement or defense of the "claim" or "suit";

**d.** Assist "us", upon "our" request, in the enforcement of any right against any person or organization which may be liable to the "insured" because of injury or damage to which this insurance may also apply;

**e.** Take no action, or fail to take any required action, that prejudices the rights of the "insureds" or "us" with respect to such "claim" or "suit".

**6.** No "insureds" will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense without "our" prior written consent.

### E. Transfer of Rights of Recovery Against Others to "Us"

"You" may be able to recover all or part of a "loss" from someone other than "us". "You", therefore, shall do all that is possible after a "loss" to preserve any such right of recovery. If "we" make a payment under this EPL Coverage Endorsement, that right of recovery shall belong to "us". "You" shall do whatever is necessary, including signing documents, to help "us" obtain that recovery.

### F. Extended Reporting Period

**1.** Solely with respect to this EPL Coverage Endorsement and except as indicated below, if "you" or "we" shall cancel or refuse to renew this EPL Coverage Endorsement, "you" shall have the right, upon payment of an additional premium of 100% of the full annual premium applicable to this EPL Coverage Endorsement, to buy an Extended Reporting Period Endorsement, providing an Extended Reporting Period of one (1) year following the effective date of the cancellation or nonrenewal, in which to give "us" written notice of "claims" first made or "suits" first brought against the "insureds" during said Extended Reporting Period for any "wrongful employment acts" which take place after the "original inception date" and before the end of the "EPL coverage period" and are otherwise covered by this EPL Coverage Endorsement.

To obtain an Extended Reporting Period Endorsement, "you" must request it in writing and pay the additional premium due, within thirty (30) days of the effective date of cancellation or nonrenewal.

**2.** The Extended Reporting Period Endorsement cannot be canceled by either party, except for nonpayment of premium. The additional premium for the Extended Reporting Period shall be fully earned at the inception of the Extended Reporting Period and this EPL Coverage Endorsement cannot be canceled after such additional premium is paid. If "we" do not receive the written request as required, "you" may not exercise this right at a later date.

**3.** This insurance, provided during the Extended Reporting Period, is excess over any other valid and collectible insurance that begins or continues in effect after the Extended Reporting Period Endorsement becomes effective, whether the other insurance applies on a primary, excess, contingent, or any other basis.

**4.** In the event of cancellation by the Insurer for the non-payment of initial premium for this EPL Coverage Endorsement as indicated in the Supplemental Declarations of this EPL Coverage Endorsement, any monies received by the Insurer as payment for the Extended Reporting Period shall be first applied to such premium owing for the policy. The Extended Reporting Period will not take effect until the premium owing for the policy is paid in full and the premium owing for the Extended Reporting Period is paid promptly when due.

**5.** In the event of a "Transaction", as defined in Clause G below, the "named insured" shall have the right, within thirty (30) days before the end of the "EPL coverage period", to request an offer from "us" of an Extended Reporting Period (with respect to "wrongful employment acts" which take place after the "original inception date" and prior to the effective time of the "Transaction"). We shall offer such Extended Reporting Period pursuant to such terms, conditions, and premium as we may reasonably decide. In the event of a "Transaction", the right to an Extended Reporting Period shall not otherwise exist except as indicated in this paragraph.



OBCH332709      1304500

### G. Change in Control of "Named Insured"

If during the "EPL coverage period":

1. the "named insured" shall consolidate with or merge into, or sell all or substantially all of its assets to any other person or entity or group of persons or entities acting in concert; or

2. any person or entity or group of persons or entities acting in concert shall acquire an amount of the outstanding securities representing more than fifty (50%) percent of the voting power for the election of directors or General Partners of the "named insured" (in the event the "named insured" is a Partnership), or acquires the voting rights of such an amount of such securities; or

3. a General Partner of the "named insured" (in the event the "named insured" is a partnership) withdraws, resigns or is terminated;

(any of the above events herein referred to as the "Transaction"),

then this EPL Coverage Endorsement shall continue in full force and effect as to "wrongful employment acts" occurring after the "original inception date" and prior to the effective time of the "Transaction", but there shall be no coverage afforded by any provision of this EPL Coverage Endorsement for any actual or alleged "wrongful employment acts" occurring after the effective time of the "Transaction". This EPL Coverage Endorsement may not be canceled after the effective time of the "Transaction" and the entire premium for this EPL Coverage Endorsement shall be deemed earned as of such time. "You" shall also have the right to an offer by "us" of an Extended Reporting Period described in Clause F of this EPL Coverage Endorsement.

"You" shall give "us" written notice of the "Transaction" as soon as practicable, but not later than thirty (30) days after the effective date of the "Transaction".

### H. Legal Action Against "Us"

No person or organization has the right to join "us" as a party or otherwise bring "us" into a "suit" asking for damages from an "insured".

### I. Other Insurance

Unless expressly written to be excess over other applicable insurance, it is intended that the insurance provided by this EPL Coverage Endorsement shall be primary.

### J. EPL Coverage Endorsement Changes

This EPL Coverage Endorsement contains all the agreements between "you" and "us" concerning this insurance. The first "named insured" in the Supplemental Declarations of this EPL Coverage Endorsement is authorized to request changes in this EPL Coverage Endorsement. This EPL Coverage Endorsement can only be changed by a written endorsement "we" issue and make part of this EPL Coverage Endorsement.

### K. Representations

Any and all relevant provisions of this EPL Coverage Endorsement may be voidable by "us" in any case of fraud, intentional concealment, or misrepresentation of material fact by any "insured".

### L. Special Rights and Duties of the "Named Insured"

"You" agree that when there is more than one person and/or entity covered under this EPL Coverage Endorsement, the "named insured" in the Supplemental Declarations of this EPL Coverage Endorsement shall act on behalf of all "insureds" as to:

1. Giving of notice of a "claim" or "suit";

2. Giving and receiving notice of cancellation or nonrenewal;

3. Payment of premiums and receipt of return premiums;

4. Acceptance of any endorsements issued to form a part of this EPL Coverage Endorsement; or

5. Purchasing or deciding not to purchase the Extended Reporting Period Endorsement.

### M. Headings

The description in the headings of this EPL Coverage Endorsement are solely for convenience, and form no part of the terms and conditions of coverage.

### SECTION VII. DEFINITIONS

A. "Bodily injury" means physical injury, sickness, or disease, including death resulting therefrom

B. "Claim" means a written demand for money. The term "claim" shall also mean an Equal Employment Opportunity Commission (EEOC), Department of Labor (DOL) or Office of Federal Contract Compliance Program (OFCCP) (or similiar

federal, state or local agency) proceeding or investigation commenced by the filing of a notice of charges, service of a complaint or similar document of which notice has been given to "you". However, in no event, shall the term "claim" include any labor or grievance proceeding, which is subject to a collective bargaining agreement.

**C.** "Class Action Suit" means any suit seeking certification or certified as a class action by a federal or state court.

**D.** "Defense Costs" means reasonable and necessary fees, costs and expenses consented to by "us" resulting solely from the investigation, adjustment, defense and appeal of a "claim" or "suit" against "you". In no event shall "Defense Costs" include "your" or "our" routine on-going expenses, including, without limitation, the salaries of "your" "employees", officers or staff attorneys.

**E.** "Employee" means an individual whose labor or service is engaged by and directed by "you" for remuneration, whether such individual is in a supervisory, co-worker or subordinate position or otherwise, including any part-time, seasonal, and temporary "employees". Independent contractors and individuals who are leased to the "insured " are not "employees".

**F.** "Loss(es)" means damages (including front pay and back pay), judgments, settlements, statutory attorney fees, and "defense costs", however, "loss" shall not include: (1) civil or criminal fines or penalties imposed by law; (2) punitive or exemplary damages; (3) the multiplied portion of multiplied damages; (4) taxes; (5) any amount for which the "insureds" are not financially liable or which are without legal recourse to the "insureds"; (6) employment related benefits, stock options, perquisites, deferred compensation or any other type of compensation other than salary, wages or bonus compensation; (7) matters which may be deemed uninsurable under the law pursuant to which this EPL Coverage Endorsement shall be construed; or (8) any pre-judgment or post-judgment interest on any judgment.

**G.** "Named Insured" means the person or organization designated in the Supplemental Declarations page of this EPL Coverage Endorsement.

**H.** "Original inception date" refers to the date specified in the Supplemental Declarations of this EPL Coverage Endorsement.

**I.** "EPL coverage period" means the period commencing on the effective date shown in the Supplemental Declarations of this EPL Coverage Endorsement. This period ends on the earlier of the expiration date or the effective date of cancellation of this EPL Coverage Endorsement. If "you" became an "insured" under this EPL Coverage Endorsement after the effective date, the "EPL coverage period" begins on the date "you" became an "insured".

**J.** "Property Damage" means physical injury to, or destruction of, tangible property including the loss of use of thereof, or loss of use of tangible property, which has not been physically injured or destroyed.

**K.** "Related Wrongful Employment Act(s)" means "wrongful employment acts" which are the same, related or continuous, or "wrongful employment acts" which arise from a common nucleus of facts. "Claims" or "suits" can allege "related wrongful employment acts", regardless of whether such "claims" or "suits" involve the same or different claimants, "insureds" or legal causes of actions.

**L.** "Retaliation" means a "wrongful employment act" of an "insured" alleged to be in response to, the actual or attempted exercise by an "employee" of any right that such "employee" has under the law. Provided, however, "retaliation" shall not include the "wrongful employment act" of an "insured" alleged to be in response to the threat of or the actual filing of any claim or suit under the Federal False Claims Act or any other federal state, local or foreign "whistleblower law".

**M.** "Subsidiary" means:

**1.** Any for-profit organization which, on or before the inception of the "EPL coverage period", is more than 50% owned by the "named insured", either directly or indirectly through one or more of its "subsidiaries"; or

**2.** A for-profit organization which becomes a "subsidiary" during the "EPL coverage period", but only upon the condition that within 90 days of its becoming a "subsidiary", the "named insured" shall have provided "us" with full particulars of the new "subsidiary" and agreed to any additional premium or amendment of the provisions of this EPL Coverage Endorsement required

The **Hanover** Insurance Group™

OBCH332709    1304500

by "us" relating to such new "subsidiary". Further, coverage as shall be afforded to the new "subsidiary" is conditioned upon the "named insured" paying when due any additional premium required by "us" relating to such new "subsidiary".

An organization becomes a "subsidiary" when the "named insured" owns more than fifty (50%) percent ownership interest in such "subsidiary", either directly, or indirectly through one or more of its "subsidiaries". An organization ceases to be a "subsidiary" when the "named insured" ceases to own more than a fifty (50%) percent ownership in such "subsidiary", either directly, or indirectly through one or more of its "subsidiaries".

In all events, coverage as is afforded under this EPL Coverage Endorsement with respect to a "claim" made or "suit" brought against any "subsidiary" or an "insured" of any "subsidiary", shall only apply to "wrongful employment act(s)" commenced or allegedly commenced after the effective time that such "subsidiary" became a "subsidiary", and prior to the time that such "subsidiary" ceased to be a "subsidiary".

**N.** "Suit" means a civil proceeding or an administrative proceeding seeking money damages, and includes an arbitration, mediation or any other alternative dispute resolution procedure seeking such damages, to which the "insured" must submit or may submit with "our" consent. "Suit" shall not include any civil proceeding or administrative proceeding arising from any labor or grievance dispute which is subject to a collective bargaining agreement.

**O.** "Whistleblower law" means a statute, rule or regulation, which protects an employee against discrimination from his or her employer, if the employee discloses or threatens to disclose to a superior or any governmental agency; or who gives testimony relating to, any action with respect to the employer's operations, which may be a violation of public policy as reflected in legislation, administrative rules, regulations or decisions, judicial decisions, and professional codes of ethics.

**P.** "Wrongful Employment Act(s)" means any actual or alleged:

**1.** wrongful dismissal, discharge or termination (either actual or constructive), including breach of an implied contract;

**2.** harassment (including sexual harassment, whether quid pro quo, hostile work environment or otherwise);

**3.** discrimination (including but not limited to discrimination based upon age, gender, race, color, national origin, religion, sexual orientation or preference, pregnancy or disability);

**4.** "retaliation" (including lockouts);

**5.** employment-related misrepresentation(s) to "your" "employee" or applicant for employment with "you";

**6.** employment-related libel, slander, humiliation, mental anguish, infliction of emotional distress, defamation, or invasion of privacy;

**7.** wrongful failure to employ or promote;

**8.** wrongful deprivation of career opportunity, wrongful demotion or negligent "employee" evaluation, including the giving of negative or defamatory statements in connection with an "employee" reference;

**9.** wrongful discipline;

**10.** failure to grant tenure;

**11.** failure to provide or enforce adequate or consistent corporate policies and procedures relating to any "wrongful employment act"

**12.** negligent supervision or hiring by an "insured", relating to any of the above;

**13.** violation of an individual's civil rights relating to any of the above.



OBCH332709        1304500

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## REVISED INFRINGEMENT OF COPYRIGHT, PATENT, TRADEMARK OR TRADE SECRETS EXCLUSION

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

Under **SECTION II - LIABILITY, B. Exclusions,** paragraph **2.m.** is replaced in its entirety with the following:

**m.  Infringement of Copyright, Patent, Trademark or Trade Secret**

Arising out of the theft, misappropriation, misuse, infringement or contributory infringement of any copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

The
**Hanover**
Insurance Group™

OBCH332709     1304500

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

The
**Hanover**
Insurance Group™

OBCH332709      1304500

## IDENTITY THEFT RESOLUTION SERVICES
**(POWERED BY IDENTITY THEFT 911)**

Are you or your resident family members at risk for identity theft? Do you need expert assistance with an identity-related concern? IDENTITY THEFT RESOLUTION SERVICES from Identity Theft 911 give you one-on-one assistance in the following situations:

**Access Phone Number: 800-628-0250**

If you or a resident family member suffer the loss or theft of private personal data, contact Identity Theft 911 for proactive guidance that can include Fraud Alert service. If you wish, a fraud specialist can assist and place a free fraud alert on your credit file to reduce the risk of fraudulent accounts opened in your name. This service also includes additional preventative measures and one-on-one assistance, depending on the risk.

If you or a resident family member suffer the loss or theft of private personal data, contact Identity Theft 911 for Identity Restoration Case Management services. A fraud specialist will guide you through the process of restoring your identity and handle all of the work, including completed documentation and notification assistance. Victims also receive one year of credit monitoring, as well as free fraud monitoring of over 1,000 public databases.

**Learn How to Protect Your Identity**

We recommend that you regularly visit The Hanover Insurance Group and Identity Theft 911 comprehensive resource and knowledge library - www.hanover-identitytheft911.com - for the latest media alerts, identity theft tips, in-depth newsletters and much more.

Keep this access information handy in case you ever need help with an identity-related problem.

**Access Phone Number: 800-628-0250**

The Hanover Insurance Group makes no guarantee of results and assumes no liability in connection with either the information or assistance provided by Identity Theft 911. Any and all external Websites or sources referred to herein are for informational purposes only.

**The Hanover Insurance Group™**

BR 91

07

# AVENUES BUSINESSOWNERS DECLARATION

### BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 02/27/2022  NUMBER 05

SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
TO ADD BACK LOCATION  2

| Policy Number | Policy Period | | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| | From | To | | |
| OBC-H332709-01 | 07/31/2021 | 07/31/2022 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

**Agent**

847-307-6100
THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

**Policy Period:  Beginning and Ending at 12:01 a.m. Standard Time at the Location of the Described Premises.**

**Business Type:**  CORPORATION (SINGLE).

**Mortgagee/Loss Payable:**

SEE ADDITIONAL INTEREST SCHEDULE

**Business of the Named Insured:**

SERVICE.

In consideration of the premium, insurance is provided the Named Insured with respect to those premises described in the Schedule below and with respect to those coverages and kinds of property for which a specific Limit of Insurance is shown, subject to all of the terms of this policy including forms and endorsements made a part hereof:

## LOCATION SCHEDULE

**Described Premises:**

NO. 001 001    233 N MICHIGAN AVE SUITE 1430, CHICAGO, IL  60601

NO. 002 001    303.E WACKER SUITE 295, CHICAGO, IL  60601

| SECTION I - PROPERTY | LIMITS OF INSURANCE | | | | | |
|---|---|---|---|---|---|---|
| | Loc No 001 | Bldg No 001 | Loc No 002 | Bldg No 001 | Loc No | Bldg No |
| **Deductible Amount** | $      1,000 | | $      1,000 | | $ | |
| **Building Amount Valuation** | NOT COVERED | | NOT COVERED | | | |
| **Business Personal Property Valuation** | $    211,470  RC | | $    211,470  RC | | | |
| **Business Income** | ACTUAL BUSINESS LOSS SUSTAINED NOT EXCEEDING 12 CONSECUTIVE MONTHS | | | | | |
| **Business Income Waiting Period** | Excluded / None / 24 hours / 48 hours /72 hours  24 HOURS | | | | | |
| **SECTION II - LIABILITY** | LIMITS OF INSURANCE | | | | | |

**Liability and Medical Expenses Limits of Insurance:**

Except for Damage to Premises Rented to You,  each paid claim for the following coverages reduce the Amount of Insurance we provide during the applicable annual  period.  Please refer to  **SECTION II - LIABILITY, D. LIABILITY  AND MEDICAL  EXPENSES LIMITS OF INSURANCE,** paragraph.**4.** of the Businessowners Coverage Form.

| Liability and Medical Expenses Limit | $ 2,000,000 | Per Occurrence | $ 4,000,000 | Aggregate |
|---|---|---|---|---|
| **Medical Expenses** | $      5,000 | Each Person | | |
| **Damage to Premises Rented to You** | $    300,000 | All Perils | | |

Date Issued: 04/27/2022                    ORIGINAL/INSURED              Payment Type:  DIRECT BILL

GROUP NAME: TECHNOLOGY - SERVICES              GROUP NUMBER: ZTS

**The Hanover Insurance Group™**

BR 91

07

# AVENUES BUSINESSOWNERS DECLARATION

### BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 02/27/2022  NUMBER 05

SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD TO ADD BACK LOCATION  2

| Policy Number | Policy Period | | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| | From | To | | |
| OBC-H332709-01 | 07/31/2021 | 07/31/2022 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

**Agent**

847-307-6100
THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

**Additional Property Coverages and Extensions:**
See attached Schedule for Additional Coverages provided for under this Policy.

Audit Frequency: Annual

**Additional Liability Coverages:**  General Liability Broadening Endorsement
**General Liability Class**:  85219
**Description**:  CUSTOM COMPUTER PROGRAMMING
**Liability Exposure:**  $1,872,000      SALES

**Policy Forms, Endorsements and Optional Coverages Attached:**
See Forms and Endorsements Schedule

```
P R E V I O U S   P R E M I U M   I S :                              $ ████████
N E T   P R E M I U M   C H A N G E   I S :                          $ ███████
T O T A L   B O P   C O V E R A G E   P R E M I U M :                $ ██████████
B O P   T E R R O R I S M   C O V G   ( I N C L U D E D   I N   T O T A L   P O L I C Y   P R E M I U M )   $ ██████
       O T H E R   T H A N   F I R E   F O L L O W I N G             $ █████
        F I R E   F O L L O W I N G                                  $ █████████
T O T A L   U M B R E L L A   C O V E R A G E   P R E M I U M :      $ █████████
U M B   T E R R O R I S M   C O V G   ( I N C L U D E D   I N   T O T A L   P O L I C Y   P R E M I U M )   $ ████████
D E P O S I T   P R E M I U M :                                      $ █████
T H E   T O T A L   A C T U A L   P R E M I U M :                    $ ████████
```

**Countersigned this _____ Day of _____**

_____
**Authorized Representative**

**This Declarations Page with the Policy Contract, Forms and Endorsements, if any, Complete the Policy.**

Date Issued:  04/27/2022          ORIGINAL/INSURED          Payment Type: DIRECT BILL

**391-1002 08 16**                                                                                      **Page 2 of 2**

**The Hanover Insurance Group**

BR 91

# ADDITIONAL INTEREST SCHEDULE

**BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 02/27/2022  NUMBER 05**

07

SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
TO ADD BACK LOCATION  2

| Policy Number | Policy Period | | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| | From | To | | |
| OBC-H332709-01 | 07/31/2021 | 07/31/2022 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**
COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

**Agent**
847-307-6100
THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

| Name And Address | Interest Type | Location | Building |
|---|---|---|---|
| SILICON VALLEY BANK<br>3003 TASMAN DRIVE HF 150<br>SANTA CLARA, CA  95054 | LENDER'S LOSS PAYABLE | 0 0 2 | 0 1 |

Form   391-1014 (7-99)
Date Issued:  04/27/2022                    ORIGINAL/INSURED

**The Hanover** Insurance Group.

BR 91      **ADDITIONAL PROPERTY COVERAGES AND EXTENSIONS**

**BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 02/27/2022  NUMBER 05**

07      SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
TO ADD BACK LOCATION  2

| Policy Number | Policy Period | | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| | From | To | | |
| OBC-H332709-01 | 07/31/2021 | 07/31/2022 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

**Agent**

847-307-6100

THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

| Additional Property Coverages & Extensions | Deductible | Amount Included | Additional Amount Increase | Total Limit |
|---|---|---|---|---|
| DEBRIS REMOVAL | NONE | $25,000 | N/A | $25,000 |
| PRESERVATION OF PROPERTY | NONE | 90 DAYS | N/A | 90 DAYS |
| FIRE DEPARTMENT SERVICE CHARGE | NONE | $25,000 | N/A | $25,000 |
| POLLUTANT CLEAN-UP AND REMOVAL | NONE | $25,000 | N/A | $25,000 |
| MONEY ORDERS AND COUNTERFEIT MONEY | $500 | $5,000 | N/A | $5,000 |
| FORGERY OR ALTERATION | $500 | $25,000 | N/A | $25,000 |
| GLASS EXPENSES | $250 | INCLUDED | N/A | INCLUDED |
| REWARDS ARSON, THEFT AND VANDALISM | NONE | $10,000 | N/A | $10,000 |
| TENANT SIGNS | $500 | $5,000 | N/A | $5,000 |
| FIRE PROTECTION EQUIPMENT RECHARGE | NONE | $25,000 | N/A | $25,000 |
| INSTALLATION FLOATER | $1,000 | $5,000 | N/A | $5,000 |
| FINE ARTS | $500 | $10,000 | N/A | $10,000 |
| FENCE AND WALLS | SEE BUILDING AND CONTENTS DEDUCTIBLE | INCLUDED | N/A | INCLUDED |
| SALES REPRESENTATIVE SAMPLES | $1,000 | $5,000 | N/A | $5,000 |
| LEASEHOLD INTEREST (TENANT'S ONLY) | NONE | $10,000 | N/A | $10,000 |
| UNAUTHORIZED BUSINESS CREDIT   CARD USE | NONE | $5,000 | N/A | $5,000 |
| UTILITY SERVICES | | | N/A | |
|   DIRECT DAMAGE | $500 | $10,000 | N/A | $10,000 |
|   BUSINESS INCOME | 24 HOURS | $5,000 | N/A | $5,000 |
| DEFERRED PAYMENTS | NONE | $5,000 | N/A | $5,000 |
| NEWLY ACQUIRED OR   CONSTRUCTED PROPERTY | | 180 DAYS | N/A | 180 DAYS |
|   BUILDINGS | $500 | $1,000,000 | N/A | $1,000,000 |
|   PERSONAL PROPERTY | $500 | $500,000 | N/A | $500,000 |
|   BUSINESS INCOME AND EXTRA EXPENSE | SEE WAITING PERIOD | $250,000 | N/A | $250,000 |
| OUTDOOR PROPERTY - TREES, SHRUBS   AND PLANTS-$1,000 EACH ITEM | $500 | $10,000 | N/A | $10,000 |

Form  391-1018  (7-02)
Date Issued:  04/27/2022

ORIGINAL/INSURED

**The Hanover**
Insurance Group™

BR 91

# ADDITIONAL PROPERTY COVERAGES AND EXTENSIONS

**BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 02/27/2022 NUMBER 05**

07 SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
TO ADD BACK LOCATION 2

| Policy Number | Policy Period From | To | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| OBC-H332709-01 | 07/31/2021 | 07/31/2022 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL 60601

**Agent**

847-307-6100

THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL 60010

| Additional Property Coverages & Extensions | Deductible | Amount Included | Additional Amount Increase | Total Limit |
|---|---|---|---|---|
| PERSONAL EFFECTS | $500 | $10,000 | N/A | $10,000 |
| INVENTORY AND LOSS APPRAISAL | NONE | $10,000 | N/A | $10,000 |
| KEY REPLACEMENT AND LOCK REPAIR | NONE | $1,000 | N/A | $1,000 |
| APPURTENANT STRUCTURE | $500 | $50,000 | N/A | $50,000 |
| PERSONAL PROPERTY IN TRANSIT | $1,000 | $10,000 | N/A | $10,000 |
| EXTENDED BUSINESS INCOME | | 30 DAYS | N/A | 30 DAYS |
| EMPLOYEE THEFT INCLUDING ERISA COMPLIANCE | $1,000 | $10,000 | N/A | $10,000 |
| COMMERCIAL TOOLS AND SMALL EQUIP | $500 | $5,000 | N/A | $5,000 |
| PERSONAL PROPERTY OFF PREMISES | $1,000 | $50,000 | N/A | $50,000 |
| BUSINESS INCOME FROM DEPENDENT PROPERTIES | 72 HOURS | $5,000 | N/A | $5,000 |
| TERRORISM | SEE BUILDING AND CONTENTS DEDUCTIBLE | SAME AS PROPERTY LIMITS OF INSURANCE IF COVERED | N/A | SAME AS PROPERTY LIMITS OF INSURANCE IF COVERED |
| INTERRUPTION OF COMPUTER OPERATIONS | SEE WAITING PERIOD | $10,000 | N/A | $10,000 |
| BUSINESS PERSONAL PROPERTY TEMPORARILY IN PORTABLE STORAGE UNITS | $500 | $25,000 | N/A | $25,000 |
| CIVIL AUTHORITY | 72 HOURS | 4 WEEKS | N/A | 4 WEEKS |
| COMPUTER AND FUNDS TRANSFER FRAUD | $500 | $5,000 | N/A | $5,000 |
| LIMITED COVERAGE FOR FUNGI, WET ROT, OR DRY ROT | $500 | $50,000 | N/A | $50,000 |
| PAVED SURFACES | $500 | $25,000 | N/A | $25,000 |
| TENANT BUILDING COVERAGE - REQUIRED BY LEASE | $500 | $25,000 | N/A | $25,000 |
| TENANT BUSINESS PERSONAL PROPERTY COVERAGE - REQUIRED BY LEASE | $500 | $25,000 | N/A | $25,000 |

Form 391-1018 (7-02)
Date Issued: 04/27/2022

The **Hanover**
Insurance Group™

BR 91

# ADDITIONAL PROPERTY COVERAGES AND EXTENSIONS

**BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 02/27/2022 NUMBER 05**

07      SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
TO ADD BACK LOCATION 2

| Policy Number | Policy Period From | To | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| OBC-H332709-01 | 07/31/2021 | 07/31/2022 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL 60601

**Agent**

847-307-6100
THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL 60010

| Additional Property Coverages & Extensions | Deductible | Amount Included | Additional Amount Increase | Total Limit |
|---|---|---|---|---|
| THEFT OF TELEPHONIC SERVICES | $500 | $25,000 | N/A | $25,000 |
| UNDERGROUND PIPES | $500 | INCLUDED | N/A | INCLUDED |

Form 391-1018 (7-02)
Date Issued: 04/27/2022

ORIGINAL/INSURED

**The Hanover Insurance Group**

BR 91      # ADDITIONAL PROPERTY COVERAGES AND EXTENSIONS

**BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 02/27/2022  NUMBER 05**

07      SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
        TO ADD BACK LOCATION  2

| Policy Number | Policy Period From | Policy Period To | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| OBC-H332709-01 | 07/31/2021 | 07/31/2022 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

Named Insured and Address

COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

Agent

847-307-6100
THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

| Additional Property Coverages & Extensions | Loc. No. | Bldg. No. | Deductible Amount | Amount Included | Additional Amount | Total Limit |
|---|---|---|---|---|---|---|
| ORDINANCE OR LAW | 001 | 001 | NONE | $5,000 | N/A | $5,000 |
| COMPUTER EQUIPMENT | | | $500 | $35,000 | N/A | $35,000 |
| COMPUTER EQUIPMENT EXTRA EXPENSE | | | NONE | $5,000 | N/A | $5,000 |
| ELECTRONIC VANDALISM | | | $500 | | | |
|   OCCURRENCE LIMIT | | | | $10,000 | N/A | $10,000 |
|   AGGREGATE LIMIT | | | | $10,000 | N/A | $10,000 |
| VALUABLE PAPERS AND RECORDS (OTHER THAN ELECTRONIC DATA) | | | $1,000 | | | |
|   ON PREMISES | | | | $25,000 | N/A | $25,000 |
|   OFF PREMISES | | | | $25,000 | N/A | $25,000 |
| ACCOUNTS RECEIVABLE | | | $1,000 | | | |
|   ON PREMISES | | | | $25,000 | N/A | $25,000 |
|   OFF PREMISES | | | | $25,000 | N/A | $25,000 |
| MONEY AND SECURITIES | | | $500 | | | |
|   ON PREMISES | | | | $10,000 | N/A | $10,000 |
|   OFF PREMISES | | | | $5,000 | N/A | $5,000 |
| EQUIPMENT BREAKDOWN | | | $1,000 | INCLUDED | N/A | INCLUDED |
| PROTECTIVE DEVICES CREDIT | | | | | | |
|   AUTOMATIC SPRINKLER SYSTEM | | | NO | | | |
|   AUTOMATIC FIRE ALARM | | | NO | | | |
|   CENTRAL STATION SECURITY | | | NO | | | |
| COLLAPSE | | | $500 | INCLUDED | N/A | INCLUDED |
| UTILITY SERVICES | | | | | | |
|   DIRECT DAMAGE | | | $500 | $50,000 | N/A | $50,000 |
|   TIME-ELEMENT | | | 24 HOURS | $50,000 | N/A | $50,000 |

Form  391-1018A (9-04)
Date Issued:  04/27/2022

ORIGINAL/INSURED

**The Hanover** Insurance Group.

BR 91

# ADDITIONAL PROPERTY COVERAGES AND EXTENSIONS

**BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 02/27/2022  NUMBER 05**

07      SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
         TO ADD BACK LOCATION  2

| Policy Number | Policy Period From | To | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| OBC-H332709-01 | 07/31/2021 | 07/31/2022 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

Named Insured and Address
COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

Agent
847-307-6100
THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

| Additional Property Coverages & Extensions | Loc. No. | Bldg. No. | Deductible Amount | Amount Included | Additional Amount | Total Limit |
|---|---|---|---|---|---|---|
| ORDINANCE OR LAW | 002 | 001 | NONE | $5,000 | N/A | $5,000 |
| COMPUTER EQUIPMENT | | | $500 | $35,000 | N/A | $35,000 |
| COMPUTER EQUIPMENT EXTRA EXPENSE | | | NONE | $5,000 | N/A | $5,000 |
| ELECTRONIC VANDALISM | | | $500 | | | |
|   OCCURRENCE LIMIT | | | | $10,000 | N/A | $10,000 |
|   AGGREGATE LIMIT | | | | $10,000 | N/A | $10,000 |
| VALUABLE PAPERS AND RECORDS (OTHER THAN ELECTRONIC DATA) | | | $1,000 | | | |
|   ON PREMISES | | | | $25,000 | N/A | $25,000 |
|   OFF PREMISES | | | | $25,000 | N/A | $25,000 |
| ACCOUNTS RECEIVABLE | | | $1,000 | | | |
|   ON PREMISES | | | | $25,000 | N/A | $25,000 |
|   OFF PREMISES | | | | $25,000 | N/A | $25,000 |
| MONEY AND SECURITIES | | | $500 | | | |
|   ON PREMISES | | | | $10,000 | N/A | $10,000 |
|   OFF PREMISES | | | | $5,000 | N/A | $5,000 |
| EQUIPMENT BREAKDOWN | | | $1,000 | INCLUDED | N/A | INCLUDED |
| PROTECTIVE DEVICES CREDIT | | | | | | |
|   AUTOMATIC SPRINKLER SYSTEM | | | NO | | | |
|   AUTOMATIC FIRE ALARM | | | NO | | | |
|   CENTRAL STATION SECURITY | | | NO | | | |
| COLLAPSE | | | $500 | INCLUDED | N/A | INCLUDED |
| UTILITY SERVICES | | | | | | |
|   DIRECT DAMAGE | | | $500 | $50,000 | N/A | $50,000 |
|   TIME-ELEMENT | | | 24 HOURS | $50,000 | N/A | $50,000 |

Form  391-1018A (9-04)
Date Issued:  04/27/2022

ORIGINAL/INSURED

**The Hanover Insurance Group.™**

BR 91

# AVENUES BUSINESSOWNERS DECLARATION

## BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 02/27/2022  NUMBER 05

07

SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
TO ADD BACK LOCATION  2

| Policy Number | Policy Period | | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| | From | To | | |
| OBC-H332709-01 | 07/31/2021 | 07/31/2022 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**
COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

**Agent**
847-307-6100
THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

## Forms and Endorsements Schedule

| Form Number | Edition Date | Description |
|---|---|---|
| 391-1402 | 08/16 | TECHNOLOGY DELUXE GOLD BROAD |
| 391-1371 | 01/10 | REV INFRINGE OF COPYRIGHT EXCL |
| BP0404 | 01/10 | HIRED AUTO NON-OWNED AUTO LIAB |
| 401-1374 | 12/20 | DISCLOSURE PURSUANT TO TRIA |
| 391-1114 | 01/15 | CAP ON LOSSES FROM TERRORISM |
| 391-1313 | 01/15 | EXCLUSION OF PUNITIVE DAMAGES |
| 391-1006 | 08/16 | LIABILITY SPECIAL BROADENING |
| BP0417 | 01/10 | EMPLYMT RELATED PRACTICES EXCL |
| 231-0475 | 06/89 | PILR NOTICE |
| 391-1003 | 08/16 | BUSINESSOWNERS COVERAGE FORM |
| BP0643 | 04/06 | IL CHANGES - DEFENSE COSTS |
| 391-1901 | 06/18 | ILLINOIS CHANGES |
| 421-0022 | 07/02 | ASBESTOS EXCLUSION |
| 391-1102 | 08/16 | EXCL - FUNGI OR BACTERIA LIAB |
| 331-0053 | 08/16 | ILLINOIS INQUIRY NOTICE |
| 391-1375 | 01/10 | AMEND LIMITS PERSONAL AND ADV |
| 391-1218 | 06/06 | EPLI INSURANCE CVG ENDR ILLINO |
| 391-1206 | 06/06 | EPLI IMPORTANT NOTICE |
| 391-1208 | 03/06 | EPLI SUPPLEMENTAL DEC |
| BP1203 | 01/10 | LOSS PAYABLE PROVISIONS |
| 401-1504 | 01/20 | CAP LOSSES CERT ACTS OF TERR |
| 391-1440 | 01/15 | DATA BREACH COVERAGE FORM |
| 391-1442 | 12/09 | ASSOC AND FAMILY MBR ADD COV |
| * 391-1585 | 12/11 | IDENTITY THEFT NOTICE |

Form  391-1016 (7-99
Date Issued:  04/27/2022

ORIGINAL/INSURED

**The Hanover** Insurance Group.

BR 91

# AVENUES BUSINESSOWNERS DECLARATION

### BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 02/27/2022  NUMBER 05

07

SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
TO ADD BACK LOCATION  2

| Policy Number | Policy Period | | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| | From | To | | |
| OBC-H332709-01 | 07/31/2021 | 07/31/2022 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**
COOLER SCREENS INC
233 N MICHIGAN AVE SUITE 1430
CHICAGO, IL  60601

**Agent**
847-307-6100
THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

### Forms and Endorsements Schedule

| Form Number | Edition Date | Description |
|---|---|---|
| 391-1854 | 01/15 | IL CHANGES - DATA BREACH |
| 401-1235 | 12/14 | CANCEL NOTICE TO DESIGNATED |
| 391-1941 | 08/16 | AI DESIGNATED PER OR ORG |
| BP0497 | 07/02 | WAIVER OF TRANSFER OF RIGHTS |

Form  391-1016 (7-99
Date Issued:  04/27/2022

ORIGINAL/INSURED

**COMMERCIAL EMPLOYMENT PRACTICES**
**LIABILITY INSURANCE COVERAGE ENDORSEMENT**
**SUPPLEMENTAL DECLARATIONS**



The **Hanover**
Insurance Group™

OBCH332709    1304500

Policy Number:  OBC H332709 01
Account Number:  1521871564                             Agent:  1304500
Named Insured:  COOLER SCREENS INC

---

## NOTICE

· EXCEPT TO SUCH EXTENT AS MAY OTHERWISE BE PROVIDED HEREIN, THE COVERAGE OF THIS COVERAGE ENDORSEMENT IS LIMITED TO LIABILITY FOR ONLY THOSE CLAIMS OR SUITS THAT ARE FIRST MADE AGAINST THE INSUREDS DURING THE EPL COVERAGE PERIOD AND REPORTED IN WRITING TO THE INSURER PURSUANT TO THE TERMS HEREIN. VARIOUS PROVISIONS IN THIS COVERAGE ENDORSEMENT RESTRICT COVERAGE. PLEASE READ THE ENTIRE COVERAGE ENDORSEMENT CAREFULLY TO DETERMINE RIGHTS, DUTIES AND WHAT IS AND IS NOT COVERED.

· THE LIMIT OF LIABILITY AVAILABLE TO PAY JUDGEMENTS OR SETTLEMENTS UNDER THIS COVERAGE ENDORSEMENT SHALL BE REDUCED BY AMOUNTS INCURRED FOR LEGAL DEFENSE. AMOUNTS INCURRED FOR LEGAL DEFENSE SHALL BE APPLIED AGAINST THE DEDUCTIBLE AMOUNT.

---

| | | |
|---|---|---|
| **EPL Coverage Period:** | From: 07/31/2021<br><br>To:    07/31/2022 | At 12:01 A.M. Standard Time at your mailing address shown on the Declarations page of this policy. |
| **EPL Aggregate Limit of Liability:** | $        25,000.00 | Aggregate for all "loss" combined, including "defense costs". |
| **EPL Deductible Amount:** | $         5,000.00 | For "loss" arising from claims or suits alleging the same "wrongful employment act" or "related wrongful employment acts". |
| **EPL Original Inception Date:** | 07/31/2020 | (Enter "original inception date") If no date is shown, "we" will consider the "original inception date" to be the same as the beginning of this coverage endorsement. |

This insurance does not apply to "loss" arising out of a "wrongful employment act" that: (1) commences on or takes place prior to the "original inception date" shown here, or (2) arises out of incidents or circumstance of which "you" had knowledge prior to the "original inception date" shown.

| | | |
|---|---|---|
| | **EPL COVERAGE PREMIUM:** | $    |

391-1208 03 06

The **Hanover** Insurance Group™

| RENEWAL OF POLICY |
|---|
| **COMMERCIAL UMBRELLA POLICY** |
| THESE DECLARATIONS TOGETHER WITH THE COMMON POLICY CONDITIONS AND COVERAGE FORM(S) COMPLETE THE BELOW NUMBERED POLICY |

POLICY NUMBER: OBC-H332709-01

DECLARATIONS

| **Named Insured and Address** (No., Street, Town, County, State) | **Agent** |
|---|---|
| COOLER SCREENS INC<br>233 N MICHIGAN AVE SUITE 1430<br>CHICAGO, IL 60601 | 130450000<br>THE PLEXUS GROUPE LLC<br>SUITE 300<br>21805 W. FIELD PARKWAY<br>DEER PARK, IL 60010 |

**Policy Period:** (Month, Day, Year)

From 07/31/2021   To 07/31/2022
12:01 AM, standard time at the address of the Named Insured as stated herein.

Form of Business:

☐ Individual   ☐ Partnership   ☒ Corporation   ☐ Limited Liability Company
☐ Organization (Other than Partnership, Joint Venture, or Limited Liability Company

**Business Description:**
**SERVICE.**

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY. THIS PREMIUM MAY BE SUBJECT TO AUDIT.

| **Limit of Liability (Section III)** | |
|---|---|
| Each Occurrence Limit | $ 1,000,000 |
| General Aggregate Limit | $ 1,000,000 |
| Product Completed Operations Aggregate Limit | $ 1,000,000 |

| **Retained Limit** | **Self-Insured Retention** | **$ NIL** |
|---|---|---|

**Premium Computation**

Annual Premium $ ██████
Advance Premium $

**Endorsements:**

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| CU2130 | 01/15 | CU2156 | 06/06 | CU2136 | 01/15 | 473-1150 | 05/12 | 473-1157 | 01/10 | 473-0004 10/05 |
| CU0004 | 05/09 | 473-0016 | 10/05 | 473-0023 | 10/05 | 473-0040 | 10/05 | CU0200 | 12/07 | CU0001 12/07 |
| 473-2194 | 08/16 | CU2123 | 02/02 | 473-2211 | 10/16 | CU2125 | 12/01 | CU2255 | 09/00 | CU2127 12/04 |
| CU2150 | 03/05 | IL0017 | 11/98 | CU2436 | 12/05 | IL0162 | 09/08 | 473-1125 | 02/09 | CU2186 05/14 |

☐ PRE PAID - the total annual premium is due at inception.

☐ HANOCASH - the annual premium is payable according to the term of the Hanocash endorsement attachment

☐ ACCOUNT BILL   ☒ DIRECT BILL   ☐ Annual   ☐ Semi-Annual   ☐ Other
Audit period: Non Auditable Unless indicated by ☐ Annual   ☐ Semi-Annual   ☐ Other
If you cancel this policy, we shall receive and retain not less than $ as a policy minimum premium.

473-1102 1108

**The Hanover** Insurance Group™

OBCH332709      1304500

## SCHEDULE A - SCHEDULE OF UNDERLYING POLICIES

**Insured:**   COOLER SCREENS INC
**Effective on and after: 07/31/2021  ,  12:01 AM Standard Time**
**This schedule is part of Policy Number:  OBC-H332709-01**

| CARRIER, POLICY NUMBER & PERIOD | TYPE OF POLICY | APPLICABLE LIMITS OR AMOUNT OF INSURANCE |
|---|---|---|
| (a)Carrier:<br><br>CITIZENS INSURANCE COMPANY OF AMERICA<br><br>Policy Number:  OBC-H332709-01<br>Policy Period:  07/31/2021    TO 07/31/2022 | Commercial General Liability<br>[X]Non-owned & Hired Autos | $ 2,000,000    Each  Occurrence<br>$ 4,000,000    General  Aggregate<br>$ 4,000,000    Product/Compl eted Operations Aggregate |
| (b) Carrier:<br><br><br>Policy Number:<br>Policy Period: | Comprehensive Automobile Liability | Bodily Injury and Property Damage Liability Combined<br>$            Each Accident<br>Bodily Injury<br>$            Each Person<br>$            Each Accident<br>Property Damage<br>$            Each Accident |
| (c)Carrier:<br><br>EXCLUDED<br>Policy Number:<br>Policy Period: | Standard Workers Compensation & Employers Liability<br>**Please Note:** The Umbrella Coverage for Workers Compensation and Employers Liability is not applicable in situations where an employee is subject to the New York Workers Compensation Law. | **Coverage B - Employers Liability**<br>Bodily Injury by Accident<br>$            Each  Accident<br>Bodily Injury by Disease<br>$                Aggregate<br>$            Each  Employee |
| (d)Carrier:<br><br><br>Policy Number:<br>Policy Period: | Liquor Liability | $            Limit of  Liability |
| (e)Carrier:<br><br><br>Policy Number:<br>Policy Period: | Professional Liability | $            Limit of Liability |
| An "X" marked in the box provided indicates these broadening or optional coverages are provided in the Underlying Insurance | | |
| (f) Carrier:<br><br><br>Policy Number:<br>Policy Period: | Directors & Officers Liability | $            Limit of   Liability |
| (g) Carrier:<br><br><br>Policy Number:<br>Policy Period: | Employee Benefits Liability | $            Limit of   Liability |

**Countersigned By:**

**Date:**

**Authorized Representative of the Company**

473-1103 (11/08)

The Hanover
Insurance Group™

OBCH332709      1304500

COOLER SCREENS INC
303. E  WACKER  SUITE  295
CHICAGO IL  60601

COOLER SCREENS INC
303. E  WACKER  SUITE  295
CHICAGO IL  60601

COOLER SCREENS INC
303. E  WACKER  SUITE  295
CHICAGO IL  60601

The **Hanover**
Insurance Group™

OBCH332709     1304500

# IMPORTANT NOTICE TO POLICYHOLDERS

No coverage is provided by this policyholder notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverage you are provided. If there is any conflict between the policy and this notice, THE PROVISIONS OF THE POLICY SHALL PREVAIL.

## EMPLOYMENT PRACTICES LIABILITY COVERAGE

The Employment Practices Liability Insurance Coverage is designed to protect small commercial businesses with 25 employees or fewer for liability damages and defense costs due to claims brought by employees who allege employment discrimination, wrongful termination, or sexual harassment.

This coverage will be written on any risk that meets the eligibility criteria under the portfolio Employment Practices Liability Coverage. Such eligibility will be determined by state, class and employee count of individual Insureds.

This coverage will attach to all eligible policies, unless waived.  There is a premium charge for this coverage. The coverage provided has an Aggregate Limit of Liability of $25,000 for all losses combined, including defense costs. This coverage has a $5,000 Deductible Amount for each claim. Optional $100,000 and $250,000 Limits of Liability are also available for additional premium charges.

Coverage may be waived by signing and returning the **Employment Practices Liability Coverage Waiver, 391-1205,** to The Hanover Insurance Group, 440 Lincoln Street, Worcester, MA 01653.

Such waiver will continue automatically through subsequent renewals, unless rescinded by the company at your request.

Please contact your agent for additional information or if you have any questions, or if you wish to waive this coverage.

3

**The Hanover**
Insurance Group™

OBCH332709          1304500

## IDENTITY THEFT RESOLUTION SERVICES
### (POWERED BY IDENTITY THEFT 911)

Are you or your resident family members at risk for identity theft? Do you need expert assistance with an identity-related concern? IDENTITY THEFT RESOLUTION SERVICES from Identity Theft 911 give you one-on-one assistance in the following situations:

**Access Phone Number: 800-628-0250**

If you or a resident family member suffer the loss or theft of private personal data, contact Identity Theft 911 for proactive guidance that can include Fraud Alert service. If you wish, a fraud specialist can assist and place a free fraud alert on your credit file to reduce the risk of fraudulent accounts opened in your name. This service also includes additional preventative measures and one-on-one assistance, depending on the risk.

If you or a resident family member suffer the loss or theft of private personal data, contact Identity Theft 911 for Identity Restoration Case Management services. A fraud specialist will guide you through the process of restoring your identity and handle all of the work, including completed documentation and notification assistance. Victims also receive one year of credit monitoring, as well as free fraud monitoring of over 1,000 public databases.

**Learn How to Protect Your Identity**

We recommend that you regularly visit The Hanover Insurance Group and Identity Theft 911 comprehensive resource and knowledge library - www.hanover-identitytheft911.com - for the latest media alerts, identity theft tips, in-depth newsletters and much more.

Keep this access information handy in case you ever need help with an identity-related problem.

**Access Phone Number: 800-628-0250**

The Hanover Insurance Group makes no guarantee of results and assumes no liability in connection with either the information or assistance provided by Identity Theft 911. Any and all external Websites or sources referred to herein are for informational purposes only.

**391-1585 12 11**          Copyright 2009, The Hanover Insurance Group          **Page 1 of 1**

The **Hanover** Insurance Group™

## AVENUES BUSINESSOWNERS DECLARATION

### BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 02/28/2022  NUMBER 06

07

SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
TO DELETE LOCATION 1

| Policy Number | Policy Period | | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| | From | To | | |
| OBC-H332709-01 | 07/31/2021 | 07/31/2022 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**

COOLER SCREENS INC
303. E  WACKER  SUITE  295
CHICAGO IL  60601

**Agent**

847-307-6100
THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

**Policy Period:  Beginning and Ending at 12:01 a.m. Standard Time at the Location of the Described Premises.**

**Business Type:**  CORPORATION (SINGLE).

**Mortgagee/Loss Payable:**

SEE ADDITIONAL INTEREST SCHEDULE

**Business of the Named Insured:**

SERVICE.

In consideration of the premium, insurance is provided the Named Insured with respect to those premises described in the Schedule below and with respect to those coverages and kinds of property for which a specific Limit of Insurance is shown, subject to all of the terms of this policy including forms and endorsements made a part hereof:

### LOCATION SCHEDULE

**Described Premises:**

NO. 001 001    DELETED LOCATION
NO. 002 001    303.E WACKER SUITE 295, CHICAGO, IL  60601

| SECTION I - PROPERTY | LIMITS OF INSURANCE | | | | | |
|---|---|---|---|---|---|---|
| | Loc No  002 | Bldg No 001 | Loc No | Bldg No | Loc No | Bldg No |
| **Deductible Amount** | $        1,000 | | $ | | $ | |
| **Building Amount Valuation** | NOT COVERED | | | | | |
| **Business   Personal Property Valuation** | $       211,470 RC | | | | | |
| **Business Income** | ACTUAL BUSINESS LOSS SUSTAINED NOT EXCEEDING 12 CONSECUTIVE MONTHS | | | | | |
| **Business Income Waiting Period** | Excluded / None / 24 hours / 48 hours /72 hours 24 HOURS | | | | | |
| **SECTION II - LIABILITY** | LIMITS OF INSURANCE | | | | | |

**Liability and Medical Expenses Limits of Insurance:**

Except for Damage to Premises Rented to You,  each paid claim for the following coverages reduce the Amount of Insurance we provide during the applicable annual  period.  Please refer to  **SECTION II - LIABILITY, D. LIABILITY  AND MEDICAL  EXPENSES LIMITS OF INSURANCE,** paragraph **4.** of the Businessowners Coverage Form.

| Liability and Medical Expenses Limit | $ 2,000,000 | Per Occurrence | $ 4,000,000 | Aggregate |
|---|---|---|---|---|
| Medical Expenses | $    5,000 | Each Person | | |
| Damage to Premises Rented to You | $    300,000 | All Perils | | |

Date Issued: 04/28/2022                ORIGINAL/INSURED          Payment Type:  DIRECT BILL

GROUP NAME: TECHNOLOGY - SERVICES                GROUP NUMBER: ZTS

The **Hanover** Insurance Group™

# AVENUES BUSINESSOWNERS DECLARATION

### BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 02/28/2022  NUMBER 06

07

SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
TO DELETE LOCATION 1

| Policy Number | Policy Period From | To | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| OBC-H332709-01 | 07/31/2021 | 07/31/2022 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**

COOLER SCREENS INC
303. E  WACKER  SUITE  295
CHICAGO IL  60601

**Agent**

847-307-6100
THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

**Additional Property Coverages and Extensions:**
See attached Schedule for Additional Coverages provided for under this Policy.

Audit Frequency: Annual

**Additional Liability Coverages:**  General Liability Broadening Endorsement
**General Liability Class**:  85219
**Description**:  CUSTOM COMPUTER PROGRAMMING
**Liability Exposure**:  $1,872,000       SALES

**Policy Forms, Endorsements and Optional Coverages Attached:**
See Forms and Endorsements Schedule

PREVIOUS PREMIUM IS:                                       $ ███
NET PREMIUM CHANGE IS:                                     $ ███
TOTAL BOP COVERAGE PREMIUM:                                $ ███
BOP TERRORISM COVG (INCLUDED IN TOTAL POLICY PREMIUM) $ ███
        OTHER THAN FIRE FOLLOWING                          $ ███
         FIRE FOLLOWING                                    $ ███
TOTAL UMBRELLA COVERAGE PREMIUM:                           $ ███
UMB TERRORISM COVG (INCLUDED IN TOTAL POLICY PREMIUM) $ ███
DEPOSIT PREMIUM:                                           $ ███
THE TOTAL ACTUAL PREMIUM:                                  $ ███

**Countersigned this _____ Day of _____**

_____
**Authorized Representative**

**This Declarations Page with the Policy Contract, Forms and Endorsements, if any,
Complete the Policy.**

Date Issued:  04/28/2022          ORIGINAL/INSURED          Payment Type: DIRECT BILL

The **Hanover**
Insurance Group

# ADDITIONAL INTEREST SCHEDULE

### BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 02/28/2022  NUMBER 06

07

SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
TO DELETE LOCATION 1

| Policy Number | Policy Period | | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| | From | To | | |
| OBC-H332709-01 | 07/31/2021 | 07/31/2022 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**

COOLER SCREENS INC
303. E  WACKER  SUITE  295
CHICAGO IL  60601

**Agent**

847-307-6100
THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

| Name And Address | Interest Type | Location | Building |
|---|---|---|---|
| SILICON VALLEY BANK 3003 TASMAN DRIVE HF 150 SANTA CLARA, CA  95054 | LENDER'S LOSS PAYABLE | 0 0 2 | 0 1 |

Form   391-1014 (7-99)
Date Issued:  04/28/2022          ORIGINAL/INSURED

**The Hanover Insurance Group.**

## ADDITIONAL PROPERTY COVERAGES AND EXTENSIONS

### BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 02/28/2022  NUMBER 06

07　　SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
　　　TO DELETE LOCATION 1

| Policy Number | Policy Period From | To | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| OBC-H332709-01 | 07/31/2021 | 07/31/2022 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**

COOLER SCREENS INC
303. E WACKER SUITE 295
CHICAGO IL 60601

**Agent**

847-307-6100

THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL 60010

| Additional Property Coverages & Extensions | Deductible | Amount Included | Additional Amount Increase | Total Limit |
|---|---|---|---|---|
| DEBRIS REMOVAL | NONE | $25,000 | N/A | $25,000 |
| PRESERVATION OF PROPERTY | NONE | 90 DAYS | N/A | 90 DAYS |
| FIRE DEPARTMENT SERVICE CHARGE | NONE | $25,000 | N/A | $25,000 |
| POLLUTANT CLEAN-UP AND REMOVAL | NONE | $25,000 | N/A | $25,000 |
| MONEY ORDERS AND COUNTERFEIT MONEY | $500 | $5,000 | N/A | $5,000 |
| FORGERY OR ALTERATION | $500 | $25,000 | N/A | $25,000 |
| GLASS EXPENSES | $250 | INCLUDED | N/A | INCLUDED |
| REWARDS ARSON, THEFT AND VANDALISM | NONE | $10,000 | N/A | $10,000 |
| TENANT SIGNS | $500 | $5,000 | N/A | $5,000 |
| FIRE PROTECTION EQUIPMENT RECHARGE | NONE | $25,000 | N/A | $25,000 |
| INSTALLATION FLOATER | $1,000 | $5,000 | N/A | $5,000 |
| FINE ARTS | $500 | $10,000 | N/A | $10,000 |
| FENCE AND WALLS | SEE BUILDING AND CONTENTS DEDUCTIBLE | INCLUDED | N/A | INCLUDED |
| SALES REPRESENTATIVE SAMPLES | $1,000 | $5,000 | N/A | $5,000 |
| LEASEHOLD INTEREST (TENANT'S ONLY) | NONE | $10,000 | N/A | $10,000 |
| UNAUTHORIZED BUSINESS CREDIT CARD USE | NONE | $5,000 | N/A | $5,000 |
| UTILITY SERVICES | | | N/A | |
|   DIRECT DAMAGE | $500 | $10,000 | N/A | $10,000 |
|   BUSINESS INCOME | 24 HOURS | $5,000 | N/A | $5,000 |
| DEFERRED PAYMENTS | NONE | $5,000 | N/A | $5,000 |
| NEWLY ACQUIRED OR CONSTRUCTED PROPERTY | | 180 DAYS | N/A | 180 DAYS |
|   BUILDINGS | $500 | $1,000,000 | N/A | $1,000,000 |
|   PERSONAL PROPERTY | $500 | $500,000 | N/A | $500,000 |
|   BUSINESS INCOME AND EXTRA EXPENSE | SEE WAITING PERIOD | $250,000 | N/A | $250,000 |
| OUTDOOR PROPERTY - TREES, SHRUBS AND PLANTS-$1,000 EACH ITEM | $500 | $10,000 | N/A | $10,000 |

Form 391-1018 (7-02)
Date Issued: 04/28/2022

**The Hanover Insurance Group™**

# ADDITIONAL PROPERTY COVERAGES AND EXTENSIONS

**BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 02/28/2022 NUMBER 06**

07       SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
         TO DELETE LOCATION 1

| Policy Number | Policy Period From | To | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| OBC-H332709-01 | 07/31/2021 | 07/31/2022 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**

COOLER SCREENS INC
303. E WACKER SUITE 295
CHICAGO IL 60601

**Agent**

847-307-6100

THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL 60010

| Additional Property Coverages & Extensions | Deductible | Amount Included | Additional Amount Increase | Total Limit |
|---|---|---|---|---|
| PERSONAL EFFECTS | $500 | $10,000 | N/A | $10,000 |
| INVENTORY AND LOSS APPRAISAL | NONE | $10,000 | N/A | $10,000 |
| KEY REPLACEMENT AND LOCK REPAIR | NONE | $1,000 | N/A | $1,000 |
| APPURTENANT STRUCTURE | $500 | $50,000 | N/A | $50,000 |
| PERSONAL PROPERTY IN TRANSIT | $1,000 | $10,000 | N/A | $10,000 |
| EXTENDED BUSINESS INCOME | | 30 DAYS | N/A | 30 DAYS |
| EMPLOYEE THEFT INCLUDING ERISA COMPLIANCE | $1,000 | $10,000 | N/A | $10,000 |
| COMMERCIAL TOOLS AND SMALL EQUIP | $500 | $5,000 | N/A | $5,000 |
| PERSONAL PROPERTY OFF PREMISES | $1,000 | $50,000 | N/A | $50,000 |
| BUSINESS INCOME FROM DEPENDENT PROPERTIES | 72 HOURS | $5,000 | N/A | $5,000 |
| TERRORISM | SEE BUILDING AND CONTENTS DEDUCTIBLE | SAME AS PROPERTY LIMITS OF INSURANCE IF COVERED | N/A | SAME AS PROPERTY LIMITS OF INSURANCE IF COVERED |
| INTERRUPTION OF COMPUTER OPERATIONS | SEE WAITING PERIOD | $10,000 | N/A | $10,000 |
| BUSINESS PERSONAL PROPERTY TEMPORARILY IN PORTABLE STORAGE UNITS | $500 | $25,000 | N/A | $25,000 |
| CIVIL AUTHORITY | 72 HOURS | 4 WEEKS | N/A | 4 WEEKS |
| COMPUTER AND FUNDS TRANSFER FRAUD | $500 | $5,000 | N/A | $5,000 |
| LIMITED COVERAGE FOR FUNGI, WET ROT, OR DRY ROT | $500 | $50,000 | N/A | $50,000 |
| PAVED SURFACES | $500 | $25,000 | N/A | $25,000 |
| TENANT BUILDING COVERAGE - REQUIRED BY LEASE | $500 | $25,000 | N/A | $25,000 |
| TENANT BUSINESS PERSONAL PROPERTY COVERAGE - REQUIRED BY LEASE | $500 | $25,000 | N/A | $25,000 |

Form  391-1018  (7-02)
Date Issued:  04/28/2022

**The Hanover** Insurance Group™

# ADDITIONAL PROPERTY COVERAGES AND EXTENSIONS

**BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 02/28/2022  NUMBER 06**

07          SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
              TO DELETE LOCATION 1

| Policy Number | Policy Period | | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| | From | To | | |
| OBC-H332709-01 | 07/31/2021 | 07/31/2022 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**

COOLER SCREENS INC
303. E WACKER SUITE 295
CHICAGO IL 60601

**Agent**

847-307-6100

THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL 60010

| Additional Property Coverages & Extensions | Deductible | Amount Included | Additional Amount Increase | Total Limit |
|---|---|---|---|---|
| THEFT OF TELEPHONIC SERVICES | $500 | $25,000 | N/A | $25,000 |
| UNDERGROUND PIPES | $500 | INCLUDED | N/A | INCLUDED |

Form   391-1018  (7-02)
Date Issued:  04/28/2022

**The Hanover** Insurance Group

# ADDITIONAL PROPERTY COVERAGES AND EXTENSIONS

**BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 02/28/2022  NUMBER 06**

07          SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
              TO DELETE LOCATION 1

| Policy Number | Policy Period From | To | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| OBC-H332709-01 | 07/31/2021 | 07/31/2022 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

Named Insured and Address
COOLER SCREENS INC
303. E  WACKER  SUITE  295
CHICAGO IL  60601

Agent
847-307-6100
THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

| Additional Property Coverages & Extensions | Loc. No. | Bldg. No. | Deductible Amount | Amount Included | Additional Amount | Total Limit |
|---|---|---|---|---|---|---|
| ORDINANCE OR LAW | 002 | 001 | NONE | $5,000 | N/A | $5,000 |
| COMPUTER EQUIPMENT | | | $500 | $35,000 | N/A | $35,000 |
| COMPUTER EQUIPMENT EXTRA EXPENSE | | | NONE | $5,000 | N/A | $5,000 |
| ELECTRONIC VANDALISM | | | $500 | | | |
| OCCURRENCE LIMIT | | | | $10,000 | N/A | $10,000 |
| AGGREGATE LIMIT | | | | $10,000 | N/A | $10,000 |
| VALUABLE PAPERS AND RECORDS (OTHER THAN ELECTRONIC DATA) | | | $1,000 | | | |
| ON PREMISES | | | | $25,000 | N/A | $25,000 |
| OFF PREMISES | | | | $25,000 | N/A | $25,000 |
| ACCOUNTS RECEIVABLE | | | $1,000 | | | |
| ON PREMISES | | | | $25,000 | N/A | $25,000 |
| OFF PREMISES | | | | $25,000 | N/A | $25,000 |
| MONEY AND SECURITIES | | | $500 | | | |
| ON PREMISES | | | | $10,000 | N/A | $10,000 |
| OFF PREMISES | | | | $5,000 | N/A | $5,000 |
| EQUIPMENT BREAKDOWN | | | $1,000 | INCLUDED | N/A | INCLUDED |
| PROTECTIVE DEVICES CREDIT | | | | | | |
| AUTOMATIC SPRINKLER SYSTEM | | | NO | | | |
| AUTOMATIC FIRE ALARM | | | NO | | | |
| CENTRAL STATION SECURITY | | | NO | | | |
| COLLAPSE | | | $500 | INCLUDED | N/A | INCLUDED |
| UTILITY SERVICES | | | | | | |
| DIRECT DAMAGE | | | $500 | $50,000 | N/A | $50,000 |
| TIME-ELEMENT | | | 24 HOURS | $50,000 | N/A | $50,000 |

Form  391-1018A (9-04)
Date Issued:  04/28/2022

The
**Hanover**
Insurance Group™

# AVENUES BUSINESSOWNERS DECLARATION

## BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 02/28/2022  NUMBER 06

07
SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
TO DELETE LOCATION 1

| Policy Number | Policy Period | | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| | From | To | | |
| OBC-H332709-01 | 07/31/2021 | 07/31/2022 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**
COOLER SCREENS INC
303. E WACKER  SUITE  295
CHICAGO IL  60601

**Agent**
847-307-6100
THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

## Forms and Endorsements Schedule

| | Form Number | Edition Date | | Description |
|---|---|---|---|---|
| * | 391-1402 | 08/16 | | TECHNOLOGY DELUXE GOLD BROAD |
| | 391-1371 | 01/10 | | REV INFRINGE OF COPYRIGHT EXCL |
| | BP0404 | 01/10 | | HIRED AUTO NON-OWNED AUTO LIAB |
| | 401-1374 | 12/20 | | DISCLOSURE PURSUANT TO TRIA |
| | 391-1114 | 01/15 | | CAP ON LOSSES FROM TERRORISM |
| | 391-1313 | 01/15 | | EXCLUSION OF PUNITIVE DAMAGES |
| | 391-1006 | 08/16 | | LIABILITY SPECIAL BROADENING |
| | BP0417 | 01/10 | | EMPLYMT RELATED PRACTICES EXCL |
| | 231-0475 | 06/89 | | PILR NOTICE |
| | 391-1003 | 08/16 | | BUSINESSOWNERS COVERAGE FORM |
| | BP0643 | 04/06 | | IL CHANGES - DEFENSE COSTS |
| | 391-1901 | 06/18 | | ILLINOIS CHANGES |
| | 421-0022 | 07/02 | | ASBESTOS EXCLUSION |
| | 391-1102 | 08/16 | | EXCL - FUNGI OR BACTERIA LIAB |
| | 331-0053 | 08/16 | | ILLINOIS INQUIRY NOTICE |
| | 391-1375 | 01/10 | | AMEND LIMITS PERSONAL AND ADV |
| * | 391-1218 | 06/06 | | EPLI INSURANCE CVG ENDR ILLINO |
| * | 391-1206 | 06/06 | | EPLI IMPORTANT NOTICE |
| * | 391-1208 | 03/06 | | EPLI SUPPLEMENTAL DEC |
| | 401-1504 | 01/20 | | CAP LOSSES CERT ACTS OF TERR |
| | 391-1440 | 01/15 | | DATA BREACH COVERAGE FORM |
| | 391-1442 | 12/09 | | ASSOC AND FAMILY MBR ADD COV |
| * | 391-1585 | 12/11 | | IDENTITY THEFT NOTICE |
| | 391-1854 | 01/15 | | IL CHANGES - DATA BREACH |

Form  391-1016 (7-99
Date Issued:  04/28/2022

ORIGINAL/INSURED

**The Hanover**
Insurance Group™

## AVENUES BUSINESSOWNERS DECLARATION

**BUSINESSOWNERS AMENDED DECLARATIONS EFFECTIVE 02/28/2022  NUMBER 06**

07

SUPERSEDES ANY PREVIOUS DECLARATIONS BEARING THE SAME NO. FOR THIS POLICY PERIOD
TO DELETE LOCATION 1

| Policy Number | Policy Period From | To | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| OBC-H332709-01 | 07/31/2021 | 07/31/2022 | CITIZENS INSURANCE COMPANY OF AMERICA | 130450000 |

**Named Insured and Address**
COOLER SCREENS INC
303. E WACKER  SUITE  295
CHICAGO IL  60601

**Agent**
847-307-6100
THE PLEXUS GROUPE LLC
SUITE 300
21805 W. FIELD PARKWAY
DEER PARK, IL  60010

### Forms and Endorsements Schedule

| Form Number | Edition Date | Description |
|---|---|---|
| 401-1235 | 12/14 | CANCEL NOTICE TO DESIGNATED |
| 391-1941 | 08/16 | AI DESIGNATED PER OR ORG |
| BP0497 | 07/02 | WAIVER OF TRANSFER OF RIGHTS |

**COMMERCIAL EMPLOYMENT PRACTICES
LIABILITY INSURANCE COVERAGE ENDORSEMENT
SUPPLEMENTAL DECLARATIONS**



OBCH332709     1304500

Policy Number:  OBC H332709 01                                            Agent:  1304500
Account Number:  1521871564
Named Insured:  COOLER SCREENS INC

---

### NOTICE

- EXCEPT TO SUCH EXTENT AS MAY OTHERWISE BE PROVIDED HEREIN, THE COVERAGE OF THIS COVERAGE ENDORSEMENT IS LIMITED TO LIABILITY FOR ONLY THOSE CLAIMS OR SUITS THAT ARE FIRST MADE AGAINST THE INSUREDS DURING THE EPL COVERAGE PERIOD AND REPORTED IN WRITING TO THE INSURER PURSUANT TO THE TERMS HEREIN. VARIOUS PROVISIONS IN THIS COVERAGE ENDORSEMENT RESTRICT COVERAGE. PLEASE READ THE ENTIRE COVERAGE ENDORSEMENT CAREFULLY TO DETERMINE RIGHTS, DUTIES AND WHAT IS AND IS NOT COVERED.

- THE LIMIT OF LIABILITY AVAILABLE TO PAY JUDGEMENTS OR SETTLEMENTS UNDER THIS COVERAGE ENDORSEMENT SHALL BE REDUCED BY AMOUNTS INCURRED FOR LEGAL DEFENSE. AMOUNTS INCURRED FOR LEGAL DEFENSE SHALL BE APPLIED AGAINST THE DEDUCTIBLE AMOUNT.

---

| | | |
|---|---|---|
| **EPL Coverage Period:** | From: 07/31/2021<br><br>To:     07/31/2022 | At 12:01 A.M. Standard Time at your mailing address shown on the Declarations page of this policy. |
| **EPL Aggregate Limit of Liability:** | $       25,000.00 | Aggregate for all "loss" combined, including "defense costs". |
| **EPL Deductible Amount:** | $        5,000.00 | For "loss" arising from claims or suits alleging the same "wrongful employment act" or "related wrongful employment acts". |
| **EPL Original Inception Date:** | 07/31/2020 | (Enter "original inception date") If no date is shown, "we" will consider the "original inception date" to be the same as the beginning of this coverage endorsement. |

This insurance does not apply to "loss" arising out of a "wrongful employment act" that: (1) commences on or takes place prior to the "original inception date" shown here, or (2) arises out of incidents or circumstance of which "you" had knowledge prior to the "original inception date" shown.

| | |
|---|---|
| **EPL COVERAGE PREMIUM:** | $   |

The Hanover Insurance Group™

| **RENEWAL OF POLICY** |
|---|
| **COMMERCIAL UMBRELLA POLICY** |
| THESE DECLARATIONS TOGETHER WITH THE COMMON POLICY CONDITIONS AND COVERAGE FORM(S) COMPLETE THE BELOW NUMBERED POLICY |

POLICY NUMBER: OBC-H332709-01

DECLARATIONS

| **Named Insured and Address** (No., Street, Town, County, State) | **Agent** |
|---|---|
| COOLER SCREENS INC<br>303. E WACKER SUITE 295<br>CHICAGO IL 60601 | 130450000<br>THE PLEXUS GROUPE LLC<br>SUITE 300<br>21805 W. FIELD PARKWAY<br>DEER PARK, IL 60010 |

**Policy Period:** (Month, Day, Year)

From 07/31/2021 To 07/31/2022
12:01 AM, standard time at the address of the Named Insured as stated herein.

Form of Business:

[ ] Individual [ ] Partnership [X] Corporation [ ] Limited Liability Company
[ ] Organization (Other than Partnership, Joint Venture, or Limited Liability Company

**Business Description:**
**SERVICE.**

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY. THIS PREMIUM MAY BE SUBJECT TO AUDIT.

| **Limit of Liability (Section III)** | |
|---|---|
| **Each Occurrence Limit** | $ 1,000,000 |
| **General Aggregate Limit** | $ 1,000,000 |
| **Product Completed Operations Aggregate Limit** | $ 1,000,000 |

| **Retained Limit** | **Self-Insured Retention** | **$ NIL** |
|---|---|---|

**Premium Computation**

Annual Premium $ ▇▇▇
Advance Premium $

**Endorsements:**

| | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| CU2130 | 01/15 | CU2156 | 06/06 | CU2136 | 01/15 | 473-1150 | 05/12 | 473-1157 | 01/10 | 473-0004 | 10/05 |
| CU0004 | 05/09 | 473-0016 | 10/05 | 473-0023 | 10/05 | 473-0040 | 10/05 | CU0200 | 12/07 | CU0001 | 12/07 |
| 473-2194 | 08/16 | CU2123 | 02/02 | 473-2211 | 10/16 | CU2125 | 12/01 | CU2255 | 09/00 | CU2127 | 12/04 |
| CU2150 | 03/05 | IL0017 | 11/98 | CU2436 | 12/05 | IL0162 | 09/08 | 473-1125 | 02/09 | CU2186 | 05/14 |

[ ] PRE PAID - the total annual premium is due at inception.

[ ] HANOCASH - the annual premium is payable according to the term of the Hanocash endorsement attachment

[ ] ACCOUNT BILL [X] DIRECT BILL [ ] Annual [ ] Semi-Annual [ ] Other
Audit period: Non Auditable Unless indicated by [ ] Annual [ ] Semi-Annual [ ] Other
If you cancel this policy, we shall receive and retain not less than $ as a policy minimum premium.

473-1102 1108

The **Hanover**
Insurance Group™

OBCH332709      1304500

| SCHEDULE A - SCHEDULE OF UNDERLYING POLICIES | | |
|---|---|---|
| **Insured:**   COOLER SCREENS INC<br>**Effective on and after: 07/31/2021 ,  12:01 AM Standard Time**<br>**This schedule is part of Policy Number:   OBC-H332709-01** | | |
| CARRIER, POLICY NUMBER & PERIOD | TYPE OF POLICY | APPLICABLE LIMITS OR AMOUNT OF INSURANCE |
| (a)Carrier:<br><br>CITIZENS INSURANCE COMPANY OF AMERICA<br><br>Policy Number:   OBC-H332709-01<br>Policy Period:   07/31/2021    TO 07/31/2022 | Commercial General Liability<br>X Non-owned & Hired Autos | $  2,000,000    Each  Occurrence<br>$  4,000,000    General  Aggregate<br>$  4,000,000    Product/Compl eted Operations Aggregate |
| (b) Carrier:<br><br><br>Policy Number:<br>Policy Period: | Comprehensive Automobile Liability | Bodily Injury and Property Damage Liability Combined<br>$              Each Accident<br>Bodily Injury<br>$              Each Person<br>$              Each Accident<br>Property Damage<br>$              Each Accident |
| (c)Carrier:<br><br>EXCLUDED<br>Policy Number:<br>Policy Period: | Standard Workers Compensation & Employers Liability<br>**Please Note:** The Umbrella Coverage for Workers Compensation and Employers Liability is not applicable in situations where an employee is subject to the New York Workers Compensation Law. | **Coverage B - Employers  Liability**<br>Bodily Injury by Accident<br>$              Each  Accident<br>Bodily Injury by Disease<br>$                Aggregate<br>$              Each  Employee |
| (d)Carrier:<br><br><br>Policy Number:<br>Policy Period: | Liquor Liability | $              Limit of   Liability |
| (e)Carrier:<br><br><br>Policy Number:<br>Policy Period: | Professional Liability | $              Limit of Liability |
| An "X" marked in the box provided indicates these broadening or optional coverages are provided in the Underlying Insurance | | |
| (f) Carrier:<br><br><br>Policy Number:<br>Policy Period: | Directors & Officers Liability | $              Limit of   Liability |
| (g) Carrier:<br><br><br>Policy Number:<br>Policy Period: | Employee Benefits Liability | $              Limit of   Liability |
| **Countersigned By:** | | |
| **Date:** | | |
| **Authorized Representative of the Company** | | |

473-1103 (11/08)

The **Hanover**
Insurance Group™

OBCH332709      1304500

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# AVENUES BUSINESSOWNERS TECHNOLOGY DELUXE GOLD BROADENING ENDORSEMENT

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The following is added to **SECTION I - PROPERTY**:

The limits applicable to the coverages included in this endorsement may either be in addition to or included within the applicable Limit of Insurance. For application of the limits, refer to each coverage within this endorsement. Words or phrases in quotation marks have special meanings. The meaning of words or phrases in quotation marks is explained within the applicable coverage section. The coverages in this endorsement amend the coverage provided under the Businessowners Coverage Form through new coverages and replace coverage grants. These coverages are subject to the provisions applicable to this policy, except where amended within this endorsement.

If any of the property covered by this endorsement is also covered under any other provisions of the policy of which this endorsement is made a part of, or if more than one coverage under this endorsement applies, in the event of loss or damage, you may choose only one of these coverages to apply to that loss. The most we will pay in this case is the limit of insurance applying to the coverage you select. Coverages included in this endorsement apply either separately to each described premises or on an occurrence basis. Refer to each coverage within this endorsement for application of coverage.

We provide no coverage for Business Income; Extended Business Income; Extra Expense; or Business Income and Extra Expense from Dependent Properties for any of the Coverages included as part of this endorsement unless specifically stated, and then only to the extent provided for within that Scheduled or Blanket Coverage provision.

**I. COVERAGES**

**A. Scheduled Coverages**

| | Scheduled Coverages | Limit | Page |
|---|---|---|---|
| **1.** | Advertising Expense to Regain Customers | $2,500 | 3 |
| **2.** | Brands and Labels | Included | 3 |
| **3.** | Business Income Billable Hours Option | $10,000 | 3 |
| **4.** | Contingent Transit Business Income and Extra Expense | $100,000 | 4 |
| **5.** | Business Income and Extra Expense - Dependent Properties (Including World-Wide Coverage) | $100,000 | 4 |
| **6.** | Business Income from Websites | $50,000 | 5 |
| **7.** | Catastrophe Allowance | $25,000 | 5 |
| **8.** | Commercial Tools and Small Equipment | $25,000 | 5 |
| **9.** | Computer Equipment - In Transit or Off Premises | $75,000 | 5 |
| **10.** | Computer and Funds Transfer Fraud | $10,000 | 6 |
| **11.** | Consequential Loss to Stock | Included | 6 |
| **12.** | Contract Penalties | $25,000 | 6 |
| **13.** | Deferred Payments | $25,000 | 6 |
| **14.** | Denial of Access to Premises | 30 Days; 72 Hour Waiting Period | 6 |
| **15.** | Electronic Vandalism | $25,000 | 6 |
| **16.** | Employee Theft Including ERISA Compliance | $50,000 | 7 |
| **17.** | Employee Tools and Work Clothing | $2,500 Per Item $25,000 Per Occurrence | 7 |

 Includes copyrighted material of Insurance Services Office, Inc., with its permission.

| 18. | Expediting Expenses | $25,000 | 7 |
|---|---|---|---|
| 19. | Extended Business Income | 180 days | 7 |
| 20. | Fine Arts | $50,000 | 8 |
| 21. | Fire Department Service Charge | Included | 8 |
| 22. | Fire Protection Equipment Recharge | Included | 8 |
| 23. | Forgery or Alteration | $50,000 | 8 |
| 24. | Hired Auto - Physical Damage | $50,000 | 8 |
| 25. | Installation Floater | $50,000 | 9 |
| 26. | Interruption of Computer Operations | $50,000 | 9 |
| 27. | Inventory and Loss Appraisal | $20,000 | 10 |
| 28. | Key Replacement and Lock Repair | $25,000 | 10 |
| 29. | Leasehold Interest (Tenants Only) | $25,000 | 10 |
| 30. | Lessor's Lease Cancellation | $10,000 | 10 |
| 31. | Lessor's Tenant Move Expenses | $10,000 / 60 days | 10 |
| 32. | Marring and Scratching | Included | 11 |
| 33. | Money Orders and Counterfeit Money | $25,000 | 11 |
| 34. | Newly Acquired or Constructed Property<br>　Business Personal Property<br>　Business Income and Extra Expense | $1,000,000<br>$500,000 | 11 |
| 35. | Ordinance or Law - Demolition and Increased Cost of Construction | $50,000 | 11 |
| 36. | Ordinance or Law - Increased Period of Restoration | $100,000 | 11 |
| 37. | Ordinance or Law (Tenant's Improvement Extension) | $50,000 | 12 |
| 38. | Outdoor Property<br>　Per Tree, Shrub or Plant | $25,000<br>$2,500 | 12 |
| 39. | Personal Effects | $50,000 | 12 |
| 40. | Portable Electronic Devices Coverage Worldwide | $25,000 | 12 |
| 41. | Precious Metal Theft Payment Changes | $50,000 | 13 |
| 42. | Personal Property in Transit | $50,000 | 13 |
| 43. | Sales Representative Samples | $25,000 | 13 |
| 44. | Soft Costs | $10,000 | 13 |
| 45. | Spoilage | $25,000 | 14 |
| 46. | Temporary Relocation of Property | $50,000 | 15 |
| 47. | Tenant Signs | $25,000 | 15 |
| 48. | Unauthorized Business Credit Card Use | $10,000 | 15 |
| 49. | Underground Water Seepage | $100,000 | 16 |
| 50. | Unnamed Locations - Personal Property and Computer Equipment<br>Unnamed Locations - Business Income and Extra Expense | $10,000 per Occurrence<br>$25,000 Policy Aggregate<br>$10,000 per Occurrence<br>$50,000 Policy Aggregate | 16 |
| 51. | Utility Services<br>　Direct Damage (Including Overhead Transmission Lines)<br>　Business Income (Including Overhead Transmission Lines) | $50,000<br>$50,000 | 18 |
| 52. | Worldwide Property Off Premises | $50,000 | 18 |

The **Hanover**
Insurance Group™

OBCH332709    1304500

| B. | Blanket Coverages | Blanket Limit $250,000 | Page |
|----|-------------------|------------------------|------|
| 1 | Accounts Receivable | Included | 19 |
| 2. | Backup or Overflow of a Sewer, Drain or Sump | Included | 19 |
| 3. | Computer Equipment | Included | 19 |
| 4. | Debris Removal | Included | 19 |
| 5. | Valuable Papers and Records  (Other Than Electronic Data) | Included | 20 |

The Blanket Limit of Insurance shown above applies to all Coverages shown in **Section B** of this endorsement. At the time of loss, you may elect to apportion this Blanket Limit of Insurance to one or any combination of the Coverages shown, but under no circumstances will the aggregate apportionment be permitted to exceed the Blanket Limit of Insurance shown above. The Blanket Limit of Insurance applies per occurrence.

## II.  DEDUCTIBLES

Deductibles are subject to the provisions applicable to the Businessowners Coverage Form except as provided below. We will not pay for covered loss or damage in any one occurrence unless the amount of loss or damage exceeds the applicable Deductible amount. We will then pay the amount of loss or damage in excess of the Deductible up to the applicable Limit of Insurance.

## III.  COVERED PROPERTY

### A.  Scheduled Coverages

**1.  Advertising Expense to Regain  Customers**

The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages**:

**Advertising  Expense to Regain Customers**

**(1)** If we make payment for a Covered Cause of Loss under this policy and there is a "suspension" of operations caused by direct physical loss or damage to property, we will pay for necessary advertising expenses you incur solely to regain customer faith and approval.

**(2)** We will only pay the necessary advertising expenses that you incur within 60 consecutive days after the "period of restoration" ends.

**(3)** The most we will pay under this Additional Coverage for all necessary advertising expenses in any one policy year is $2,500.

**2.  Brands and Labels**

The following is added to **SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions**:

**Brands and Labels**

**(1)** If Covered Property that has a brand or label is damaged by a Covered Cause of Loss and we elect to take all or any part of the damaged property at an agreed or appraised value, you may extend the insurance that applies to your Business Personal Property to:

**(a)** Pay expenses you incur to:

**(i)** Remove the brand or label and then relabel the damaged property to comply with any applicable law; or

**(ii)** Label or stamp the damaged property Salvage, if doing so will not physically damage the property.

**(b)** Cover any reduction in the salvage value of the damaged property as a result of the removal of the brand or label.

**(2)** Payment under this Extension is included within the Limit of Insurance applicable to your Business Personal Property.

**3.  Business Income Billable Hours Option**

The following is added to **SECTION I - PROPERTY, A. Coverage, E. Property Loss Conditions, 5. Loss Payment**:

**Business Income Billable Hours Option**

**(1)** At your option you may choose to settle a covered Business Income and Extra Expense loss, as described under the Business Income, Extra Expense and Utility Services Additional Coverages, as described below in paragraph **(3)**.

**(2)** This loss settlement option is only available to you prior to your submission to us of calculations described under **SECTION I - PROPERTY, A. Coverage , 5.**

**Additional Coverages, f. Business Income.**

**(3)** For the purpose of this Additional Coverage, we will pay up to $500 per day, for billable hours lost, per technology professional, up to a maximum of $1,000 per day, regardless of the number of technology professionals involved, for each normal working day you are unable to conduct operations due to covered loss or damage for up to a maximum of 10 days. We will also pay for your continuing normal operating expenses incurred, including "payroll expenses"; and "Rental Value".

**(4)** If damages are such that limited operations can continue, the per technology professional allowance will be proportionately reduced.

**(5)** For any occurrence, the two available methods for adjusting and calculating Business Income and Extra Expense loss may not be combined. When the alternative per diem approach described above is selected, the maximum coverage under this loss settlement option is $10,000 on an actual loss sustained basis. You are not entitled to make claim for periods beyond 10 days.

**(6)** This optional loss settlement does not waive the Waiting Period shown in the Declarations for Business Income Additional Coverage. This Waiting Period does not apply to Extra Expense.

**4. Contingent Transit Business Income and Extra Expense**

The following is added **SECTION I - PROPERTY, A Coverage, 6. Coverage Extensions;**

**Contingent Transit Business Income and Extra Expense**

You may extend your Business Income or Extra Expense Coverage to apply to the actual loss of Business Income (not including **Extended Business Income**) or Extra Expense you sustain due to direct physical loss of or damage to Business Personal Property of Others, not in your care, custody or control, while "in transit", caused by or resulting from a Covered Cause of Loss.

The most we will pay for loss under this Extension is $100,000.

**5. Business Income and Extra Expense - Dependent Properties (Including World-Wide Coverage)**

**a.** The heading for **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, m. Business Income from Dependent Properties** is replaced by the following:

**m. Business Income and Extra Expense from Dependent Properties**

The following is added to **Business Income and Extra Expense from Dependent Properties**:

We will pay the necessary Extra Expense you incur due to direct physical loss of or damage to "dependent property" caused by or resulting from a Covered Cause of Loss.

The definition of Extra Expense for this Additional Coverage is replaced by the following:

Extra Expense means necessary expenses you incur during the "dependent property period of restoration" that you would not have incurred if there had been no direct physical loss or damage to the premises of any "dependent property" caused by or resulting from a Covered Cause of Loss:

**(1)** To avoid or minimize the "suspension" of business and to continue "operations"; or

**(2)** To minimize the "suspension" of business if you cannot continue "operations".

We will reduce the amount of your Extra Expense loss to the extent you can return "operations" to normal and discontinue such extra expense.

**(3)** Paragraph **(2)** of this Additional Coverage is replaced by the following:

**(2)** The most we will pay under this Additional Coverage is $100,000 per occurrence, regardless of the number of "dependent properties" affected.



OBCH332709 1304500

**b.** The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, m. Business Income from Dependent Properties:**

The "dependent property" may be located anywhere in the world.

**6. Business Income from Websites**

**a.** The following is added to **SECTION I - PROPERTY A. Coverage, 5. Additional Coverages:**

**Business Income from Websites**

**(1)** You may extend this insurance to apply to a "suspension" of "operations" caused by direct physical loss or damage to property that you depend on for "web site and communications services" from a Covered Cause of Loss.

**(2)** We will not pay for any loss of Business Income you incur during the first 12 hours that immediately follows the time when you first discovered the Covered Cause of Loss. This Waiting Period does not apply to Extra Expense.

**(3)** The most we will pay for the actual loss of Business Income and necessary and reasonable Extra Expense in any one occurrence under this Additional Coverage is $50,000 and only for the 7-day period immediately following the Covered Cause of Loss.

**(4)** Coverage does not apply to Websites unless there is a duplicate or back-up copy of your Web Page stored at a location that is at least 1,000 feet away from the premises of the vendor that provides "web site and communications services".

**(5)** "Web Site and Communication Services" means:

**(a)** Internet access, e-mail, web hosting, value added network services and application software services at the premises of others; or

**(b)** Network and router infrastructure services, including cable and wireless, located more than 1,000 feet from the described premises.

**b.** This Additional Coverage is not subject to **SECTION I - PROPERTY, C. Limits of Insurance.**

**7. Catastrophe Allowance**

The following is added to **SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions:**

**Catastrophe Allowance**

**(1)** This Coverage Extension applies when the direct physical loss or damage to Covered Property from a Covered Cause of Loss is the result of an insured event for which Property Claims Service (PCS) has publicly designated a catastrophe number to the event.

**(2)** You may extend the insurance provided under this Coverage Extension if the Limit of Insurance applicable to Building and Business Personal Property, as shown in the Declarations, are insufficient to compensate you for covered loss or damage you incur as a result of the insured catastrophe event.

**(3)** This Coverage Extension may not be applied to the deductible amount of this policy or any other policy. It also may not be used to cover any loss or damage that would not be covered under this policy.

**(4)** The most we will pay under this Extension in any one occurrence is $25,000.

The most we will pay under this Extension during each separate 12 month period of this policy is $25,000.

**8. Commercial Tools and Small Equipment**

**SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, v. Commercial Tools and Small Equipment**, paragraph **(4)** is replaced by the following:

**(4)** The most we will pay for any loss under this Additional Coverage in any one occurrence is $25,000 but not more than $2,500 for any one tool, tool box or piece of small equipment.

**9. Computer Equipment**

The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, r. Computer Equipment**, paragraph **(4):**

The most we will pay for direct physical loss or damage to Covered Property listed in paragraph **(1)** above in any one occurrence while "in transit" or at a premises other than the described premises is $75,000.

**10. Computer and Funds Transfer Fraud**

**SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, hh. Computer and Funds Transfer Fraud,** paragraph **(3)** is replaced by the following:

**(3)** The most we will pay per occurrence under this Additional Coverage is $10,000 unless a higher Limit of Insurance is shown in the Schedule of Amended Limits of Insurance.

**11. Consequential Loss to Stock**

The following is added to **SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions**:

**Consequential Loss to Stock**

**(1)** You may extend the insurance that applies to your Business Personal Property to apply to the reduction in value of the remaining parts of "stock" in process of manufacture that are physically undamaged but are unmarketable as a complete product because of direct physical loss or damage from a Covered Cause of Loss to other parts of covered "stock" in process of manufacture at an insured location.

**(2)** Should it be determined that such "stock" retains only a salvage value, we retain the option of paying the full value of the "stock" as agreed within this policy, and taking the damaged property for salvage purposes.

**(3)** Payment under this Coverage Extension is included within the applicable Limit of Insurance.

**12. Contract Penalties**

The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages**:

**Contract Penalties**

**(1)** We will pay for contract penalties you are required to pay due to your failure to provide your product or service according to contract terms because of direct physical loss or damage by a Covered Cause of Loss to Covered Property.

**(2)** The most we will pay for all penalties in any one occurrence is $25,000.

**(3)** The amount payable under this Additional Coverage is additional insurance.

**13. Deferred Payments**

**SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages,** paragraph **(4)** is replaced by the following:

**(4)** The most we will pay under this Additional Coverage for loss or damage in any one occurrence at a described premises is $25,000.

**14. Denial of Access to Premises**

The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages**:

**Denial of Access to Premises**

**(1)** We will pay for the actual loss of Business Income you sustain and necessary Extra Expense you incur when ingress to or egress from the described premises is prevented, due to direct physical loss of or damage to property that is away from but within 2000 feet of the described premises, caused by or resulting from any Covered Cause of Loss covered under this policy.

**(2)** The coverage for Business Income will begin 72 hours after the loss or damage to the premises that causes the denial of access and will apply for a period of up to 30 consecutive days after coverage begins.

**(3)** The coverage for Extra Expense will begin immediately after the loss or damage to the premises that causes the denial of access and will end:

**(a)** 30 consecutive days after coverage begins; or

**(b)** When your Business Income coverage ends;

whichever is earlier.

**(4)** The definitions of Business Income and Extra Expense contained in the Business Income Additional Coverage and the Extra Expense Additional Coverage also apply to this Denial of Access to Premises Additional Coverage.

**15. Electronic Vandalism**
    **SECTION I - Property, A. Coverage, 5. Additional Coverages, dd. Electronic**



OBCH332709      1304500

**Vandalism,** paragraph **(3)** is replaced by the following:

**(3)** The most we will pay for loss of or damage to computer "hardware" or "software" in any one occurrence under this Additional Coverage is $5,000. The most we pay for all covered losses to computer "hardware" or "software" under this Additional Coverage during each separate 12-month period of this policy is $25,000.

The most we will pay under this Additional Coverage for all loss or damage sustained in any one policy year, regardless of the number of occurrences of loss or damage or the number of premises, locations or computer systems involved, is $25,000, unless a higher Limit of Insurance is shown in the Declarations. If loss payment on the first occurrence does not exhaust this amount, then the balance is available for subsequent loss or damage sustained in, but not after, that policy year. With respect to an occurrence which begins in one policy year and continues or results in additional loss or damage in a subsequent policy year(s), all loss or damage is deemed to be sustained in the policy year in which the occurrence began.

**16. Employee Theft Including ERISA Compliance**

**SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, p. Employee Theft Including ERISA**, paragraph **(6)** is replaced by the following:

**(6)** The most we will pay for all loss resulting directly from an occurrence is $50,000. Regardless of the number of years this policy remains in force or the number of premiums paid, no Limit of Insurance cumulates from year to year.

**17. Employee Tools and Work Clothing**

The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages**:

**Employee Tools**

**(1)** We will pay for direct physical loss of or damage by a Covered Cause of Loss to tools and work clothing belonging to your "employees" while such tools and work

clothing are located at an insured location, your job sites or while in your vehicle "in transit" to and from your job sites.

**(2)** The most we will pay for loss or damage under this Additional Coverage is $25,000 per occurrence but not more than $2,500 for any one tool or item of clothing.

**(3)** The amount payable under this Additional Coverage is additional insurance.

**18. Expediting Expenses**

The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages**:

**Expediting Expenses**

**(1)** When a Covered Cause of Loss occurs to Covered Property, we will pay for the reasonable and necessary additional expenses you incur to:

**(a)** Make temporary repairs;

**(b)** Expedite permanent repair or replacement of damaged property; or

**(c)** Provide training on replacement machines or equipment.

**(2)** The most we will pay for loss under this Additional Coverage in any one occurrence is $25,000.

**(3)** The amount payable under this Additional Coverage is additional insurance.

**19. Extended Business Income**

**SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, f. Business Income, (2) Extended Business Income, (a) Extended Business Income - Other Than Rental Value**, paragraph **(ii)** and **(b) Extended Business Income - Rental Value**, paragraph **(ii)** are replaced by the following:

**(2)(a) Extended Business Income - Other Than Rental Value**

**(ii)** Ends on the earlier of:

**1)** The date you could restore your operations, with reasonable speed, to the level which would generate the business income amount that would have existed if no direct physical loss or damage had occurred; or

**2)** 180 consecutive days after the date determined in **(2)(a)(i)** above.

**(2)(b)** **Extended Business Income - Rental Value**

**(ii)** Ends on the earlier of:

**1)** The date you could restore tenant occupancy, with reasonable speed, to the level which would generate the "Rental Value" that would have existed if no direct physical loss or damage had occurred; or

**2)** 180 consecutive days after the date determined in **(2)(b)(i)** above.

## 20. Fine Arts

**SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions, x. Fine Arts**, paragraph **(3)** is replaced by the following:

**(3)** The most we will pay for loss under this Additional Coverage is $50,000 per occurrence regardless of the number of locations or buildings involved.

## 21. Fire Department Service Charge

**SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, c. Fire Department Service Charge** is replaced by the following:

**c.** **Fire Department Service Charge**

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay for your liability for the fire department service charges if:

**(1)** Assumed by contract or agreement prior to the loss; or

**(2)** Required by local ordinance.

## 22. Fire Protection Equipment Recharge

**SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions, o. Fire Protection Systems Recharge**, paragraph **(3)**, is replaced by the following:

**(3)** This Coverage Extension is included within the Limit of Insurance applicable to your covered property at the described premises. This Coverage Extension does not increase the Limits of Insurance.

## 23. Forgery or Alteration

**SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, k. Forgery or Alteration**, paragraph **(4)** is replaced by the following:

**(4)** The most we will pay for any loss, including legal expenses, under this Additional Coverage is $50,000, unless a higher Limit of Insurance is shown in the Schedule of Amended Limits of Insurance.

## 24. Hired Auto - Physical Damage

The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages**:

**Hired Auto - Physical Damage Coverage**

**(1)** We will pay for loss to an "auto" you or an "employee", at your direction, lease, hire or rent without a driver for a period of 30 days or less for the purpose of conducting customary operations for your business. This does not include any "auto" you lease, hire or rent from any of your "employees" or members of their households.

We will pay for loss to a covered "auto" or its equipment caused by:

**(a)** **Comprehensive coverage**

From any cause except:

**(i)** The covered "auto's" collision with another object; or

**(ii)** The covered "auto's" overturn.

**(b)** **Collision coverage**

**(i)** The covered "auto's" collision with another object; or

**(ii)** The covered "auto's" overturn.

**(2)** For the purpose of this Additional Coverage only, **SECTION I - PROPERTY, A. Coverage, 2. Property Not Covered,** paragraph **a.** is replaced by the following:

**a.** Aircraft, automobiles, motortrucks and other vehicles subject to motor vehicle registration and:

**(1)** Any "auto" as described in paragraph **(1)** above, while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity;

The Hanover Insurance Group

OBCH332709     1304500

**(2)** Tapes, records, discs or other similar audio, visual or data electronic devices designed for use with audio, visual or data electronic equipment;

**(3)** Any device designed or used to detect speed measuring equipment such as radar or laser detectors and any jamming apparatus intended to elude or disrupt speed measurement equipment; or

**(4)** Any electronic equipment, without regard to whether this equipment is permanently installed, that receives or transmits audio, visual or data signals and that is not designed solely for the reproduction of sound.

**(3)** For the purpose of this Additional Coverage only, **SECTION I - PROPERTY, B. Exclusions** does not apply with the exception of the following exclusions:

**(a) 1.d. Nuclear Hazard**;

**(b) 1.f. War and Military Action**

For the purpose of this Additional Coverage only, the following exclusions are added to **SECTION I - PROPERTY, B. Exclusions**:

**1.** We will not pay for loss to a covered "auto" caused by or resulting from someone causing you to voluntarily part with the "auto" by trick or scheme or under false pretenses; or

**2.** We will not pay for loss caused by or resulting from wear and tear, freezing; mechanical or electrical breakdown; blowouts, punctures or other road damage to tires.

**(4)** For the purpose of this Additional Coverage only, the following is added to **SECTION I - PROPERTY, C. Limits of Insurance**:

**Hired Auto Physical Damage Limits of Insurance**

The most we will pay for loss to any one covered "auto" is the lesser of:

**a.** The actual cash value of the damaged or stolen property as of the time of loss;

**b.** The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality; or

**c.** $50,000.

**(5)** The following is added to **SECTION I - PROPERTY, D. Deductibles,** paragraph **5.**:

Hired Auto - Physical Damage

**(6)** For the purpose of this Additional Coverage only, the following is added to **SECTION I - PROPERTY, G. Property Definitions**:

**1.** "Auto" means a land motor vehicle, trailer or semitrailer that is subject to motor vehicle registration, or designed for travel on public roads, including any attached machinery or equipment.

The amount payable under this Additional Coverage is additional insurance.

This coverage is excess to any other valid insurance whether collectible or not.

**25. Installation Floater**

**SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, w. Installation**, paragraph **(8)** is replaced by the following:

**(8)** The most we will pay for loss of or to damage to property covered under this Additional Coverage in any one occurrence is $50,000, regardless if the property is located at a jobsite, while "in transit", or at a temporary storage location.

**26. Interruption of Computer Operations**

**SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, ee. Interruption of Computer Operations**, paragraph **(3)**, is replaced by the following:

**(3)** The most we will pay under this Additional Coverage - Interruption of Computer Operations for all loss sustained and expense incurred in any one policy year, regardless of the number of interruptions or the number of described premises or computer systems involved, is $50,000 unless a higher Limit of Insurance is shown in the Declarations. If loss payment relating to the first interruption does not exhaust this amount, then the balance is available for loss or expense sustained or incurred as a result of subsequent interruptions in that policy year. A balance remaining at the end of a policy year does not increase the amount of insurance in

the next policy year. With respect to any interruption which begins in one policy year and continues or results in additional loss or expense in a subsequent policy year(s), all loss and expense is deemed to be sustained or incurred in the policy year in which the interruption began.

**27. Inventory and Loss Appraisal**

SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions, j. Inventory and Loss Appraisal, paragraph **(2)**, is replaced by the following:

**(2)** Regardless of the number of premises involved, the most we will pay under this Extension is $20,000.

**28. Key Replacement and Lock Repair**

SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions, g. Key Replacement and Lock Repair, paragraph **(2)**, is replaced by the following:

**(2)** The most we will pay under this Extension is $25,000. The Deductible does not apply to this Extension.

**29. Leasehold Interest (Tenants Only)**

**a.** SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, z. Leasehold Interest (Tenants Only), paragraph **(2)(b)**, is replaced by the following:

**(2)(b)** $25,000;

**b.** SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, z. Leasehold Interest - Tenant, paragraph **(4)(a)**, is replaced by the following:

**(4)(a)** $25,000 will be the maximum amount payable regardless of the number of leases affected by the same Covered Cause of Loss.

**30. Lessor's Lease Cancellation**

The following is added to SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages:

**Lessor's Lease Cancellation**

**(1)** We will pay the actual loss of business income you sustain due to the cancellation of a lease by your tenants in a Covered Building due to untenantability that is caused by direct physical loss or damage to that building from a Covered Cause of Loss.

This Additional Coverage only applies if at the time of loss the building was occupied and business was being conducted by the tenant cancelling the lease or their sub-lessee.

**(2)** We will pay for loss of business income that you sustain after tenantability is restored and until the earlier of:

**(a)** The date you lease the premises to another tenant; or

**(b)** 12 months immediately following the "period of restoration".

**(3)** Regardless of the number of tenants cancelling a lease at the described premises, the most we will pay under this Additional Coverage is $10,000 per occurrence

**(4)** The amount payable under this Additional Coverage is additional insurance.

**(5) Special Lease Cancellation Exclusions**

We will not pay for:

**(a)** Lease cancelled after the "period of restoration";

**(b)** Lease cancelled, suspended or allowed to lapse by you;

**(c)** Return of prepaid rent or security and other deposits made by tenants; or

**(d)** Lease cancelled at the normal expiration date.

**31. Lessor's Tenant Move Expenses**

The following is added to SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages:

**Lessor's Tenant Move Expenses**

**(1)** In the event that your tenants must temporarily vacate the covered Building at the described premises due to untenantability caused by direct physical loss or damage by a Covered Cause of Loss, we will pay the following expenses you actually incur to move those tenants out of and back into your covered Building.

**(2)** We will only pay for the following expenses:

**(a)** Packing, transporting and unpacking the tenant's Business Personal Property including the cost of insuring the move out



and back and any necessary disassembly and reassembly or setup of furniture and equipment; and

**(b)** The net cost to discontinue and re-establish the tenants' utility and telephone services, after any refunds due the tenants.

**(3)** We will only pay for these expenses that you actually incur within 60 days of the date that the damaged buildings has been repaired or rebuilt.

**(4)** Regardless of the number of tenants involved, the most we will pay under this Additional Coverage is $10,000 per occurrence. This Additional Coverage is not subject to the Limits of Insurance under **SECTION I - PROPERTY.**

**32. Marring and Scratching**

The following is added to **SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions**:

**Marring and Scratching**

**(1)** You may extend the insurance that applies to Business Personal Property to apply to damage caused directly by sudden and accidental marring and scratching of:

**(a)** Your "stock";

**(b)** Your printing plates; or

**(c)** Property of others that is in your care, custody or control.

**(2)** This Coverage Extension does not apply to:

**(a)** Property at other than the described premises; or

**(b)** Personal Property in transit.

**(3)** Payment under this Coverage Extension is included within Limit of Insurance applicable to your Business Personal Property.

**33. Money Orders and Counterfeit Money**

**SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, j. Money Orders and Counterfeit Money**, paragraph **(3)**, is replaced by the following:

**(3)** The most we will pay for any loss under this Additional Coverage is $25,000.

**34. Newly Acquired or Constructed Property**

**SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions, a. Newly Acquired or Constructed Property**, paragraphs, **(2)(c)** and **(3)** are replaced by the following:

**(2) Business Personal Property**

**(c)** The most we will pay for loss or damage under this Extension is $1,000,000 at each premises.

**(3) Business Income and Extra Expense**

You may extend the insurance that applies to Business Income and Extra Expense to apply to property at any location you acquire. The most we will pay for loss or damage under this Extension is $500,000 at each premise.

**35. Ordinance or Law - Demolition Cost and Increased Cost of Construction**

**SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, l. Ordinance or Law, (5) Loss Payment**, paragraph **(d)** is replaced by the following:

**(d)** The most we will pay for the total of all covered losses for Demolition Cost and Increased Cost of Construction for each building described in the Declarations is $50,000 or the amount shown in the Additional Property Schedule. If a damaged building(s) is covered under a Blanket Limit of Insurance and the Blanket Limit of Insurance applies to more than one building or item of property, then the most we will under this Additional Coverage, for each building, is $50,000, or the amount shown in the Additional Property Coverage Schedule.

**36. Ordinance or Law - Increased Period of Restoration**

**a.** The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, l. Ordinance or Law,** paragraph **(4) Coverage:**

If a Covered Cause of Loss occurs to property at the premises described in the Declarations, coverage is extended to include the amount of actual and necessary loss you sustain during the increased period of "suspension" of "operations" caused by or resulting from the enforcement of any ordinance or law that:

**(a)** Regulates the construction or repair of any property;

**(b)** Requires the tearing down of parts of any property not damaged by a Covered Cause of Loss; and

**(c)** Is in force at the time of loss.

However, coverage is not extended under this endorsement to include loss caused by or resulting from the enforcement of any ordinance or law which requires:

**(d)** The demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungi", wet or dry rot or bacteria; or

**(e)** Any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungi", wet or dry rot or bacteria.

**b.** The following is added to **SECTION I - PROPERTY, A. Coverage 5. Additional Coverages, I. Ordinance or Law, (5) Loss Payment**, paragraph **(c):**

The most we will pay for loss under Increased Period of Restoration in any one occurrence is $100,000 for each described building shown in the Declarations or the amount shown in the Additional Property Coverage Schedule. If a damaged building(s) is covered on a blanket Limit of Insurance which applies to more than one building or item of property, then the most we will pay for Increased Period of Restoration for each described building in any one occurrence is $100,000.

**37. Ordinance or Law (Tenant's Improvement Extension)**

**a.** The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, I. Ordinance or Law, (4) Coverage:**

**(a)** Coverage provided under paragraphs **(a)**, **(b)** and **(c)** above applies to tenant's improvements and betterments but only if a limits of Insurance is shown in the Declarations for Business Personal Property. Business Personal Property must be insured on a replacement cost basis.

**(b)** This extension is provisional and excess to any other valid insurance for tenant's improvements and betterments whether collectible or not.

**b.** The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, I. Ordinance or Law, (5) Loss Payment**, paragraph **(c):**

Regardless of the number of locations insured or buildings involved, the most we will pay for any loss to tenant's improvements and betterments under this Additional Coverage in any one occurrence is $50,000.

**38. Outdoor Property**

**SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions, c. Outdoor Property**, paragraph **(3)** is replaced by the following:

**(3)** Regardless of the number of described premises involved, the most we will pay for loss or damage under this Extension, including debris removal expense, is $25,000, but not more than $2,500 for any one tree, shrub or plant.

**39. Personal Effects**

**SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions, d. Personal Effects,** paragraph **(3)** is replaced by the following:

**(3)** The most we will pay for loss or damage under this Extension is $50,000 at each described premises.

**40. Portable Electronic Devices Coverage Worldwide**

The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages**:

**Portable Electronic Devices Coverage Worldwide**

**(1)** We will pay for loss or damage caused by or resulting from a Covered Cause of Loss to portable electronic devices while anywhere in the world, including while "in transit".



OBCH332709        1304500

**(2)** For the purpose of this Additional Coverage, the following is added to **SECTION I - PROPERTY, G. Property Definitions**:

Portable electronic devices includes laptops, tablets, e-readers, smartphones or other lightweight, hand-held or wearable devices capable of storing, retrieving and processing data.

**(3)** This coverage is provided when the property is owned by you or owned by others when in your or your "employees" care, custody or control, subject to **SECTION I - PROPERTY, E. Property Loss Conditions, 5. Loss Payment,** paragraph **d.(3)(b).**

**(4)** We will not pay for loss or damage to portable electronic devices when caused by, resulting from, or arising out of "theft" or unexplained loss when the property is checked baggage with a carrier for transit.

**(5)** The provisions for a Business Income loss will be governed by the terms of **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages f. Business Income** except:

**(a)** There is no requirement that a loss occur within 1,000 feet or at the described premises as stated in paragraph **(1)(a)**; and

**(b)** The following are not included under this Additional Coverage:

**(i)** Continuing normal operating expenses incurred, including "payroll expense";

**(ii)** Extended Business Income.

**(6)** The provisions for Extra Expense loss will be governed by the terms of **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, g. Extra Expense** except:

**(a)** There is no requirement that a loss occur within 1,000 feet or at the described premises as stated in paragraph **g.(1)** and **g.(2)**.

**(7)** **Limitations**, item **b.** does not apply to this Additional Coverage.

**(8)** **SECTION I - PROPERTY, B. Exclusions, 5. Business Income and Extra Expense Exclusions,** paragraph **(4)** does not apply to this Additional Coverage.

**(9)** Regardless of the number of lost or damaged portable electronic devices, the most we will pay per occurrence including actual loss of Business Income you sustain and necessary Extra Expense you incur, is $25,000.

**(10)** The amount payable under this Additional Coverage is additional insurance.

**41. Precious Metal Theft Payment Changes**

**SECTION I - PROPERTY, A. Coverage, 4. Limitations**, paragraph **c.** is replaced by the following:

**c.** For loss or damage by "theft", the following types of property are covered only up to the limits shown below:

**(1)** $10,000 for furs, fur garments and garments trimmed with fur.

**(2)** $10,000 for jewelry, watches, watch movements, jewels, pearls, precious and semi-precious stones

This limit does not apply to jewelry and watches worth $250 or less per item.

**(3)** $50,000 for bullion, gold, silver, platinum and other precious alloys or metals.

**42. Personal Property in Transit**

**SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions, i. Personal Property in Transit**, paragraph **(5)** is replaced by the following:

**(5)** The most we will pay for loss or damage under this Coverage Extension is $50,000.

**43. Sales Representative Samples**

**SECTION I - PROPERTY, 5. Additional Coverages, y. Sales Representative Samples**, paragraph **(3)** is replaced by the following:

**(3)** The most we will pay for any loss or damage under this Additional Coverage is $25,000.

**44. Soft Costs**

The following is added to **SECTION I - PROPERTY, A. Coverage, 6 Extensions**: **Soft Costs**

**(1)** We will pay the actual "soft cost expenses" that arise out of a delay in the construction, erection or fabrication of a Covered Building that

is listed in **SECTION I - PROPERTY**, **A. Coverage**, **1. Covered Property**, paragraph **a.(6)** resulting from direct physical loss or damage to that Covered Building from a Covered Cause of Loss.

**(2)** We will only pay the necessary "soft cost expenses" that are over and above those costs that would have been incurred had there been no delay.

**(3)** The most we will pay under this Extension in any one occurrence is $10,000.

**(4)** "Soft cost expenses" means additional:

**(a)** Realty taxes and other assessments that you incur for the period of time that construction has been extended beyond the projected completion date;

**(b)** Interest on money borrowed to finance construction, remodeling, renovation or repair; and

**(c)** Advertising, public relations and promotional expenses.

**45. Spoilage**

The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages**:

The following provisions (**a.** through **g.** inclusive) apply to the insurance provided by this Additional Coverage:

**a.** For the purpose of this Additional Coverage the following is added to **SECTION I - PROPERTY, A. Coverage, 1. Covered Property**:

Covered Property means "perishable goods" at the insured locations, if the "perishable goods" are:

**a.** Owned by you and used in your business; or

**b.** Owned by others and in your care, custody or control except as otherwise provided in **SECTION I - PROPERTY, E. Property Loss Conditions, 5. Loss Payment**, paragraph **d.(3)(b)**.

**b.** The following is added to **SECTION I - PROPERTY, A. Coverage, 2. Property Not Covered**:

Property located:

**(1)** On the exterior of buildings;

**(2)** In the open; or

**(3)** In vehicles.

**c.** **SECTION I - PROPERTY, A. Coverage, 3. Covered Causes Of Loss** is replaced by the following:

**3.** **Covered Causes of Loss**

Subject to the exclusions described in item **e.** of this Additional Coverage, Covered Causes of Loss means the following:

**a.** Breakdown or Contamination, meaning:

**(1)** Change in temperature or humidity resulting from mechanical breakdown or mechanical failure of refrigerating, cooling or humidity control apparatus or equipment.

Coverage applies only while such apparatus or equipment is at the described premises shown in the Schedule; or

**(2)** Contamination by a refrigerant. Coverage applies only while the refrigerating apparatus or equipment is at the described premises.

Mechanical breakdown and mechanical failure do not mean power interruption, regardless of how or where the interruption is caused and whether or not the interruption is complete or partial.

**b.** Power Outage, meaning change in temperature or humidity resulting from complete or partial interruption of electrical power, either on or off the described premises, due to conditions beyond your control.

**d.** **SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions** does not apply.

The **Hanover**
Insurance Group™

OBCH332709      1304500

**e.** **SECTION I - PROPERTY, B. Exclusions** paragraph **1.**, does not apply to this Coverage Extension except for:

**(1)** **b.,** Earth Movement;

**(2)** **c.,** Governmental Action;

**(3)** **d.,** Nuclear Hazard;

**(4)** **f.,** War and Military Action; and

**(5)** **g.,** Water.

**(6)** For the purposes of this additional coverage, the following exclusions are added to **SECTION I - PROPERTY, B. Exclusions,** paragraph **2**:

We will not pay for loss or damage caused by or resulting from:

**1.** The disconnection of any refrigerating, cooling or humidity control system from the source of power.

**2.** The deactivation of electrical power caused by the manipulation of any switch or other device used to control the flow of electrical power or current.

**3.** The inability of an electrical utility company or other power source to provide sufficient power due to:

**a.** Lack of fuel; or

**b.** Governmental order.

**4.** The inability of a power source at the described premises to provide sufficient power due to lack of generating capacity to meet demand.

**5.** Breaking of any glass that is a permanent part of any refrigerating, cooling or humidity control unit.

**f.** **Conditions**

For the purpose of this Additional Coverage, **SECTION I - PROPERTY, E. Property Loss Conditions, 5. Loss Payment**, paragraph **d.** is replaced by the following:

**d.** We will determine the value of Covered Property as follows:

**(1)** For "perishable goods" you have sold but not delivered, at the selling price less discounts and expenses you otherwise would have had;

**(2)** For other "perishable goods", at actual cash value.

**f.** Regardless of the number of insured locations involved, the most we will pay under this Additional Coverage for loss or damage in any one occurrence is $25,000. This Additional Coverage is not subject to **SECTION I - PROPERTY, C. Limits of Insurance.**

**46.** **Temporary Relocation of Property**

The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages**:

**Temporary Relocation of Property**

**(1)** We will pay for loss of or damage to Covered Property from a Covered Cause of Loss while it is away from the described premises, if it is being stored temporarily at a location you do not own, lease or operate while the described premises is being renovated or remodeled.

**(2)** This coverage applies for 90 days after the property is first moved, but does not extend past the date on which this policy expires.

**(3)** The most we will pay under this Additional Coverage is $50,000.

**(4)** The amount payable under this Additional Coverage is additional insurance.

**47.** **Tenant Signs**

**SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, t. Tenant Signs**, paragraph **(4)** is replaced by the following:

**(4)** The most we will pay for loss or damage in any one occurrence is $25,000 regardless of the number of locations or buildings involved.

**48.** **Unauthorized Business Credit Card Use**

**SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, aa. Unauthorized Business Credit Card Use**, paragraph **(5)** is replaced by the following:

**(5)** The most we will pay for any loss including legal expenses, under this

Additional Coverage is $10,000 per occurrence.

**49. Underground Water Seepage**

The following is added to **SECTION I - PROPERTY**, **A. Coverage, 5. Additional Coverages**:

**Underground Water Seepage**

(1) We will pay for direct physical loss or damage to Covered Property at the described premises caused by or resulting from water under the ground surface pressing on, or flowing or seeping through:

(a) Foundations, walls, floor or paved surfaces;

(b) Basements, whether paved or not; or

(c) Doors, windows or other openings in any building or other structure.

**THIS IS NOT FLOOD INSURANCE OR PROTECTION FROM AN INUNDATION OF SURFACE WATER, HOWEVER CAUSED.**

This coverage is intended to provide insurance for damage by subterranean water when such event is a localized incident - not part of a general, widespread "flood" water event.

We will not pay for loss or damage to property when the subterranean water causing the Underground Water Seepage is itself caused by any "flood" or general flooding conditions - including but not limited to those enumerated under **SECTION I - PROPERTY, B. Exclusions**, paragraph **1.g. Water**.

(2) **SECTION I - PROPERTY, B. Exclusions**, paragraphs **g. Water (4)** is deleted.

(3) The most we will pay for loss in any one occurrence under this Additional Coverage is $100,000.

(4) We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds $1,000. This deductible is to apply separately to:

(a) Each building, including personal property therein;

(b) Personal property in each building if no coverage is provided on the containing building; and

(c) Personal property in the open.

The aggregate amount of this

deductible in any one occurrence shall not exceed $5,000.

We will then pay the amount of loss or damage in excess of the deductible up to the applicable Limit of Insurance.

(5) **Special Underground Water Seepage Exclusions**

(a) The **Exclusions** and **Limitations** sections of **SECTION I - PROPERTY** apply to this Additional Coverage except as provided under paragraph **(b)** below.

(b) To the extent that a part of **SECTION I - PROPERTY, B. Exclusions**, paragraph **1.g. Water** might conflict with this Additional Coverage, that part of the **Water** Exclusion does not apply.

(c) This Additional Coverage does not apply to loss or damage resulting from your failure to:

(i) Keep a sump pump or its related equipment in proper working condition; or

(ii) Perform the routine maintenance or repair necessary to keep a sewer or drain free from obstructions.

**50. Unnamed Locations**

The following is added to **SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions**:

**Unnamed Locations**

**a. Personal Property and Computer Equipment**

(1) You may extend the insurance that applies to Business Personal Property and "Computer Equipment" to apply to direct physical loss or damage to Business Personal Property and "Computer Equipment" caused by or resulting from a Covered Cause of Loss while such property is located at a "client or virtual office premises".

(2) This Coverage Extension also applies to Business Personal Property and "Computer Equipment" that are:

(a) Owned by an "employee";



OBCH332709     1304500

and

**(b)** Used for your business;

While such property is located at a "client or virtual office premises" and sustains direct physical loss or damage caused by or resulting from a Covered Cause of Loss.

**(3)** This Coverage Extension does not apply to property otherwise covered under the following Additional Coverages or Coverage Extensions:

**(a)** Accounts Receivable;

**(b)** Fine Arts;

**(c)** Personal Property Off Premises

**(d)** Personal Property in Transit

**(e)** Valuable Papers and Records (Other Than Electronic Data)

**(f)** Portable Electronic Devices Coverage Worldwide

**(g)** Worldwide Property Off Premises

**(4)** The most we will pay under this Coverage Extension in any one occurrence is $10,000 regardless of the number of locations involved. The most we will pay for all covered losses under this Coverage Extension during each separate 12 month period of this policy is $25,000.

This Coverage Extension is not subject to **SECTION I - PROPERTY, C. Limits of Insurance**.

**b. Business Income and Extra Expense**

**(1)** If this policy provides for Business Income and Extra Expense coverages, you may extend the insurance that applies to the actual loss of Business Income (not including Extended Business Income) you sustain and necessary Extra Expense you incur due to the "suspension" of your business activities occurring at a "client or virtual office premises" during the "period of restoration". The "suspension" must be caused by direct physical loss or damage caused by or resulting from a Covered Cause of Loss at a "client or virtual office premises".

**(2)** We will reduce the amount of your Business Income loss, other than Extra Expense, to the extent that you can resume operations, in whole or in part, by using any other available:

**(a)** Source of materials;

**(b)** Outlet for your products.

**(3)** If you do not resume operations or do not resume operations as quickly as possible, we will pay based on the length of time it would have taken to resume operations as quickly as possible.

**(4)** The coverage period for Business Income under this Coverage Extension:

**(a)** Begins 24 hours after the time of direct physical loss or damage caused by or resulting from a Covered Cause of Loss at the premises of a "client or virtual office premises"; and

**(b)** Ends on the date when the property at the premises of the "client or virtual office premises" should be repaired, rebuilt or replaced (to the extent necessary to resume operations) with reasonable speed and similar quality or 12 months immediately following the date of direct physical loss or damage, whichever is shorter.

**(5)** The Business Income coverage period as stated in paragraph **(a)** above does not include any increased period required due to the enforcement of any ordinance or law that:

**(a)** Regulates the construction, use or repair, or requires the tearing down of any property; or

**(b)** Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

The expiration date of this policy will not reduce the Business Income coverage period.

**(6)** The most we will pay under this Coverage Extension in any one occurrence is $10,000 regardless of the number of locations involved. The most we will pay for all covered losses under this Coverage Extension during each separate 12 month period of this policy is $50,000.

This Coverage Extension is not subject to **SECTION I - PROPERTY, C. Limits of Insurance**.

**(7)** The definition of Business Income contained in the Loss of Business Income Additional Coverage applies to this Coverage Extension.

**c.** For purposes of this Coverage Extension, "client or virtual office premises" means the interior of that portion of any building occupied by an "employee", including

**(1)** An "employee's" residence; or

**(2)** A client's business location located anywhere in the world.

**51. Utility Services (Including Overhead Transmission Lines)**

**a.** **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, bb. Utility Services**, paragraphs **(1)** and **(2)** are replaced by the following:

**(1)** We will pay for loss of or damage to Covered Property caused by an interruption in service to the described premises. The interruption must result from direct physical loss or damage by a Covered Cause of Loss to property not on the described premises that provides the services shown in paragraph **(3)** below.

The most we will pay for loss in any one occurrence under this Additional Coverage is $50,000 at each described premises or the Limit of Insurance shown in the Additional Property Coverage Schedule.

**(2)** We will pay for the actual loss of Business Income you sustain and necessary Extra Expense you incur caused by the interruption of service at the described premises. The interruption must result from direct physical loss or damage by a Covered Cause of Loss to property not on the described premises that provides the services shown in paragraph **(3)** below.

We will only pay for loss you sustain after the first 24 hours following the direct physical loss or damage to the property described above.

The most we will pay for loss in any one occurrence under this Additional Coverage is $50,000 at each described premises or the Limit of Insurance shown in the Additional Property Coverage Schedule.

**b.** **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, bb. Utility Services**, paragraph **(4)** is deleted.

**52. Worldwide Property Off Premises**

The following is added to **SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions**:

**Worldwide Property Off-Premises**

**(1)** You may extend the insurance that applies to your Business Personal Property and Personal Property of Others to apply to that property while it is temporarily outside the coverage territory if it is:

**(a)** Temporarily at a location you do not own, lease or operate;

**(b)** Temporarily on display or exhibit at any fair, trade show or exhibition;

**(c)** Samples of your "stock" in trade in the custody of your sales representatives; or

**(d)** While "in transit" between the described premises and a location described in **(a), (b)** or **(c)** above.

**(2)** The most we will pay for loss or damage under this Extension is $50,000.

**(3)** This Extension provides an additional amount of insurance.



OBCH332709     1304500

**B. Blanket Coverages**

1. **Accounts Receivable**

   **SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions, f. Accounts Receivable,** paragraph **(2)**, is replaced by the following:

   **(2)** The most we will pay under this Coverage Extension for loss or damage in any one occurrence at the described premises or away from the described premises is subject to the Blanket Coverage Limit of Insurance, or the amount shown in the Additional Property Coverage Schedule.

2. **Backup or Overflow of a Sewer, Drain or Sump**

   The following is added to **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages**:

   **Backup or Overflow of a Sewer, Drain or Sump**

   **(1)** We will pay for direct physical loss or damage to Covered Property at the described premises, solely caused by or resulting from water or waterborne material carried or moved by water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment. The term drain includes a roof drain and its related fixtures.

   **(2)** For the purpose of this Additional Coverage only, **SECTION I - PROPERTY, B. Exclusions,** paragraph **g. Water (3)** is deleted.

   **(3)** Regardless of the number of insured locations involved, the most we will pay under this Additional Coverage for loss or damage in any one occurrence is subject to the Blanket Limit of Insurance or the amount shown in the Additional Property Coverage Schedule.

   **(4) Special Sewer Backup Exclusion**

   We will not pay for:

   **(a)** Loss or damage from water or other materials that back-up or overflow from any sewer or drain, sump, sump pump or related equipment when it is caused by or results from any "flood", regardless of the proximity of the back-up or overflow to the "flood" condition; or

   **(b)** Failure to keep a sump pump or its related equipment in proper working condition; or

   **(c)** Failure to perform routine maintenance or repair necessary to keep a sewer or drain free from obstructions.

3. **Computer Equipment**

   **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, r. Computer Equipment, paragraph (6)** is replaced by the following:

   **(6)** Regardless of the number of insured locations involved, the most we will pay for loss or damage under this Additional Coverage to property described in paragraphs **(1)** and **(2)** above in any one occurrence at insured locations is subject to the Blanket Coverage Limit of Insurance, or the amount shown in the Additional Property Coverage Schedule.

   The most we will pay for Extra Expense is $5,000 or the amount shown in the Additional Property Coverage Schedule in any one occurrence.

   This Additional Coverage is not subject to **SECTION I - PROPERTY, C. Limits of Insurance.**

4. **Debris Removal**

   **SECTION I - PROPERTY, A. Coverage, 5. Additional Coverages, a. Debris Removal,** paragraph **(4),** is replaced by the following:

   **(4)** We will pay up to the blanket limit of insurance for debris removal expense, for each location, in any one occurrence of physical loss or damage to Covered Property, if one or both of the following circumstances apply:

   **(a)** The total of the actual debris removal expense plus the amount we pay for direct physical loss or damage exceeds the Limit of Insurance on the Covered Property that has sustained loss or damage.

   **(b)** The actual debris removal expense exceeds 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

Therefore, if Paragraphs **(4)(a)** and/or **(4)(b)** above, apply, our total payment for direct physical loss or damage and debris removal expense may reach but will never exceed the Limit of Insurance on the Covered Property that has sustained loss or damage, plus the blanket limit of insurance.

5. **Valuable Papers and Records (Other Than Electronic Data)**

SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions, e. Valuable **Papers and Records (Other Than Electronic Data)**, paragraph **(3)** is replaced by the following:

**(3)** Regardless of the number of locations involved, the most we will pay under this Coverage Extension for loss or damage in any one occurrence at the described premises is subject to the Blanket Limit of Insurance, or the amount shown in the Additional Coverage Schedule.

ALL OTHER TERMS, CONDITIONS, AND EXCLUSIONS REMAIN UNCHANGED.



OBCH332709      1304500

---

**THIS IS A CLAIMS-MADE AND REPORTED COVERAGE ENDORSEMENT.**

---

# EMPLOYMENT PRACTICES LIABILITY
# INSURANCE COVERAGE ENDORSEMENT - ILLINOIS

Throughout this Coverage Endorsement (hereinafter referred to as "EPL Coverage Endorsement"), the words "you" and "your" refer to the "named insured(s)" shown in the Supplemental Declarations of this EPL Coverage Endorsement and any other person(s) or organization(s) qualifying as a "named insured" under this EPL Coverage Endorsement. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under SECTION III. WHO IS AN INSURED.

Other words and phrases that appear in "quotations" have special meaning. Refer to SECTION VII. DEFINITIONS.

The terms and conditions of the Cancellation Clause of the Common Policy Conditions, 391-1003 are hereby incorporated herein and shall apply to coverage as is afforded by this EPL Coverage Endorsement, unless specifically stated otherwise in an endorsement(s) attached hereto.

## SECTION I. WHAT IS COVERED

### A. Insuring Agreement

1. "We" shall pay those "losses" arising out of "your" "wrongful employment act" against "your" "employees", to which this insurance applies. The "wrongful employment act" must commence or take place after the "original inception date", but before the end of the "EPL coverage period". A "claim" or "suit" for a "wrongful employment act" must be first made against "you" during the "EPL coverage period" or any Extended Reporting Period (if applicable) and reported to "us" pursuant to the terms of this EPL Coverage Endorsement.

2. A "claim" or "suit" by a person or organization seeking damages will be deemed to have been made at the earlier of the following times:

   a. When written notice of such "claim" or "suit" is received and recorded by any "insured" or by "us", whichever comes first; or

   b. When "we" make any settlement in accordance with the terms of this EPL Coverage Endorsement.

### B. Defense

1. "We" have the right and duty to defend and appoint an attorney to defend any "claim" or "suit" brought against any "insured" for a "wrongful employment act" to which this insurance applies, even if the "claim" or "suit" is groundless or fraudulent.

2. "We" have the right to investigate and settle any "claim" or "suit" that "we" believe is proper. "You" shall be entitled to effectively associate in the defense of any "claim".

3. "We" shall pay all reasonable costs "we" ask the "insured" to incur while helping "us" investigate or defend a "claim" or "suit". "We", however, will not pay more than $100 per day for earnings lost by the "insured" because of time taken off from work.

4. "We" shall pay premiums for appeal bonds, or bonds to release property being used to secure a legal obligation, for a covered "suit". "We" shall only pay, however, for bonds valued up to "our" Aggregate EPL Limit of Liability. "We" shall have no obligation to appeal or to obtain these bonds.

5. Payments for "defense costs" are included within the Aggregate EPL Limit of Liability. They are not in addition to the Aggregate EPL Limit of Liability. "Our" duty to defend or to make payment of any "claim" or "suit pursuant to paragraphs 1-4 above, ends after the Aggregate EPL Limit of Liability has been exhausted by payment of "loss", including "defense costs".

**C. Transfer of Control**

1. "You" may take over control of any outstanding "claim" or "suit" previously reported to "us", but only if "we", in "our" sole discretion, decide that you should, or if a court orders "you" to do so.

2. Notwithstanding subsection 1 of this Clause C, in all events, if the Aggregate EPL Limit of Liability is exhausted, "we" will notify "you" of all outstanding "claims" or "suits" and "you" will take over control of the defense. "We" will help transfer control of the "claims" and "suits" to "you".

3. "We" shall take whatever steps are necessary to continue the defense of any outstanding "claim" or "suit" and avoid a default judgment during the transfer of control to "you". If "we" do so, "we" shall not waive or give up any of "our" rights. "You" shall pay all reasonable expenses "we" incur for taking such steps after the Aggregate EPL Limit of Liability is exhausted.

## SECTION II. EXCLUSIONS-WHAT IS NOT COVERED

This insurance does not apply to:

**A. Profit or Advantage**

Any liability arising out of the gaining of any profit or advantage to which an "insured" was not legally entitled. However, to the extent that a "claim" or "suit" is otherwise covered under this EPL Coverage Endorsement, we will defend a "claim" or "suit" asserting that an "insured" gained a profit or advantage to which the "insured" was not legally entitled, until such time as the "insured" is determined to have gained a profit or advantage to which the "insured" was not legally entitled;

**B. Criminal Acts**

Any liability arising out of any dishonest, fraudulent, criminal, or malicious act by or at the direction of any "insured". However, to the extent that a "claim" or "suit" is otherwise covered under this EPL Coverage Endorsement we will defend a "claim" or "suit" asserting a dishonest, fraudulent, criminal or malicious act until such time as the "insured" is determined to have committed such dishonest, fraudulent, criminal or malicious act;

The "wrongful employment act(s)" of an "insured" shall not be imputed to any other "insured" for the purpose of determining the applicability of the foregoing exclusions A and B.

**C. "Property Damage"**

Any liability arising out of "property damage";

**D. "Bodily Injury"**

Any liability arising out of "bodily injury";

**E. Worker's Compensation, Social Security and Unemployment, Disability and Retirement Benefits**

Any liability arising out of any obligation pursuant to any worker's compensation, disability benefits, unemployment compensation, unemployment insurance, retirement benefits, social security benefits or similar law. This exclusion, however, shall not apply to "loss" arising from a "claim" or "suit" for "retaliation";

**F. Contractual Liability**

Any liability arising out of any actual or alleged contractual liability of any "insured" under any express contract or agreement. This exclusion, however, shall not apply to the extent any liability does not arise under such express contract or agreement;

**G. ERISA, COBRA, WARN, OSHA and NLRA**

Any liability arising out of the "insured's" failure to fulfill any responsibility, duty or obligation imposed by the Employment Retirement Income Security Act of 1974 (ERISA), Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA), Worker's Adjustment and Retraining Notification Act, Public Law 100-379 (1988) (WARN), Occupational Safety and Health Act (OSHA), National Labor Relations Act of 1947 (NLRA), any rules or regulations of the foregoing promulgated thereunder, and amendments thereto or any similar provisions of any federal, state, or local statutory or common law. This exclusion, however, shall not apply to "loss" arising from a "claim" or "suit" for "retaliation";



OBCH332709    1304500

## H. FLSA

Any liability arising out of any obligation under the Fair Labor Standards Act, or any violations of any federal, state, local or foreign statutory law or common law that governs the same topic or subject and any rules, regulations and amendments thereto (except the Equal Pay Act). This exclusion, however, shall not apply to "loss" arising from a "claim" or "suit" for "retaliation";

Any liability arising out of claims for unpaid wages or overtime pay for hours actually worked or labor actually performed by any "employee" of the "insured", for improper payroll deductions or any violations of any federal, state, local or foreign statutory law or common law that governs the same topic or subject and any rules, regulations and amendments thereto.

## I. Non-Monetary Relief

That part of any "claim" or "suit" seeking any non-monetary relief, including but not limited to: (1) injunctive relief; (2) declaratory relief; (3) disgorgement; (4) job reinstatement; (5) costs or expenses incurred in accommodating any disabled person, pursuant to the Americans with Disabilities Act of 1990 (ADA), including amendments to that law or similar federal, state or local statutory or common law; (6) any liability or costs incurred in connection with any educational, sensitivity or other corporate program, policy or seminar relating to a "claim" or "suit" alleging discrimination or other "wrongful employment act"; or (7) other equitable remedies, including as to all of the above, the cost of compliance therewith; provided, however, if such request for non-monetary relief is part of an otherwise covered "claim" or "suit", "we" will not seek to allocate "defense costs" for the portion of the "claim" or "suit" seeking non-monetary relief;

## J. Certain "Insureds"

Any "claim" or "suit" brought by any "insured". This exclusion, however, shall not apply to a "claim" or "suit" brought by an "employee" of the "insured", other than an "employee" who is or was a director of the "insured";

## K. Prior Knowledge

Any liability arising out of incidents, circumstances or "wrongful employment acts", which an "insured", prior to the "original inception date" as shown in the Supplemental Declarations of this EPL

Coverage Endorsement, had knowledge or which an "insured" could have reasonably foreseen might result in a "claim" or "suit";

## L. Prior Notice

Any liability arising out of the facts alleged, or to the same or "related wrongful employment acts" alleged or contained in any "claim" or "suit" which has been reported, or in any circumstances of which notice has been given, under any policy of which this EPL Coverage Endorsement is a renewal or replacement or which it may succeed in time;

## M. Securities Holder

Any "claim" or "suit" brought by a securities holder of the "insured" in their capacity as such, whether directly, derivatively on behalf of the "insured", or by class action;

## N. Outside Boards

Any liability arising out of any actual or alleged act or omission of an "insured" serving in any capacity, other than as a director, officer or "employee" of the "insured" entity.

## SECTION III. WHO IS AN INSURED

## A. Individual

If "you" are shown in the Supplemental Declarations of this EPL Coverage Endorsement as an individual, "you" and "your" spouse are "insureds", only for the conduct of a business of which "you" are the sole owner.

## B. Corporation

If "you" are shown in the Supplemental Declarations of this EPL Coverage Endorsement as a corporation or organization other than a partnership or joint venture, "you" and "your" "subsidiaries" are "insureds".

## C. Partnership or Joint Venture

If "you" are shown in the Supplemental Declarations of this EPL Coverage Endorsement as a partnership or joint venture, "you" are an "insured". "Your" partners or co-venturers and their spouses are also "insureds", but only for the conduct of "your" business.

## D. "Employees"

"Your" "employee", executive officers and directors are "insureds", only for the conduct of "your" business within the scope of their employment or their duties as executive officers or directors.

**E. Extensions**

1. Subject otherwise to the terms hereof, this EPL Coverage Endorsement shall cover "loss" arising from any "claims" or "suits" made against the estates, heirs, or legal representative of deceased individual "insureds", and the legal representatives of individual "insureds", in the event of incompetency, who were individual "insureds" at the time the "wrongful employment acts", upon which such "claims" or "suits" are based, were committed.

2. Subject otherwise to the terms hereof, this EPL Coverage Endorsement shall cover "loss" arising from all "claims" and "suits" made against the lawful spouse (whether such status is derived by reason of statutory law, common law or otherwise of any applicable jurisdiction in the world) of an individual "insured", including a "claim" or "suit" that seeks damages recoverable from marital community property, property jointly held by the individual "insured" and the spouse, or property transferred from the individual "insured" to the spouse; provided, however, that this extension shall not afford coverage for a "claim" or "suit" arising out of any "wrongful employment act" of the spouse, but shall apply only to "claims" or "suits" arising out of any "wrongful employment acts" of an individual "insured", subject to this EPL Coverage Endorsement's terms, conditions and exclusions.

**SECTION IV. LIMIT OF LIABILITY (including "defense costs")**

A. The Aggregate EPL Limit of Liability shown in the Supplemental Declarations of this EPL Coverage Endorsement and the information contained in this section limits the most "we" shall pay for all "loss" arising out of "claims" and "suits" first made against "insureds" during the "EPL coverage period" or Extended Reporting Period (if applicable), regardless of:

1. the number of persons or organizations covered by this EPL Coverage Endorsement; or

2. the number of "claims" made or "suits" brought; or

3. the length of the "EPL coverage period".

B. The Aggregate EPL Limit of Liability is the most "we" shall pay for all "losses" covered under this EPL Coverage Endorsement, including amounts incurred for "defense costs".

C. The Aggregate EPL Limit of Liability for the Extended Reporting Period shall be part of, and not in addition to the Aggregate EPL Limit of Liability for the "EPL coverage period".

D. All "claims" and "suits" arising from the same or "related wrongful employment acts" shall be treated as arising out of a single "wrongful employment act".

E. All "claims" or "suits" arising out of one "wrongful employment act" shall be deemed to be made on the date that the first such "claim" is made or "suit" is brought. All "claims" asserted in a "class action suit" will be treated as arising out of a single "wrongful employment act".

F. Any "claim" or "suit" which is made subsequent to the "EPL coverage period" or Extended Reporting Period (if applicable) which, pursuant to Section VI, Clause D(3) and (4) is considered made during the "EPL coverage period" or Extended Reporting Period shall also be subject to the one Aggregate EPL Limit of Liability stated in the Supplemental Declarations of this EPL Coverage Endorsement.

**SECTION V. DEDUCTIBLE**

"You" shall be responsible for the deductible amount shown in the Supplemental Declarations of this EPL Coverage Endorsement with respect to each "claim" and "suit" and "you" may not insure against it. A single deductible amount shall apply to "loss" arising from all "claims" and "suits" alleging the same "wrongful employment act" or "related wrongful employment acts". Expenses "we" incur in investigating, defending and settling "claims" and "suits" are included in the deductible. The deductible is not included within the Aggregate EPL Limit of Liability.

**SECTION VI. CONDITIONS**

"We" have no duty to provide coverage under this EPL Coverage Endorsement, unless there has been full compliance with all the Conditions contained in this EPL Coverage Endorsement.

**A. Assignment**

The interest of any "insured" is not assignable. "You" cannot assign or transfer "your" interest in this EPL

Coverage Endorsement without "our" written consent attached to the EPL Coverage Endorsement.

### B. Bankruptcy or Insolvency

"Your" bankruptcy, insolvency or inability to pay, will not relieve "us" from the payment of any "claim" or "suit" covered by this EPL Coverage Endorsement.

Under no circumstances will "your" bankruptcy, insolvency, or inability to pay require "us" to drop down, in any way replace, or assume any of "your" obligations with respect to the Deductible provisions of this EPL Coverage Endorsement.

### C. Coverage Territory

"We" cover "wrongful employment acts" in the United States of America, its territories and possessions, Puerto Rico, or Canada, but only if the "claim" is made and the "suit" is brought for such "wrongful employment act" in the United States of America, its territories and possessions, Puerto Rico, or Canada.

### D. Duties in the Event of an Incident, "Claim" or "Suit"

1. If, during the "EPL coverage period", incidents or events occur which "you" reasonably believe may give rise to a "claim" or "suit" for which coverage may be provided hereunder, such belief being based upon either written notice from the potential claimant or the potential claimant's representative; or notice of a complaint filed with EEOC, DOL or OFCCP (or similar federal, state or local agency); or upon a contemporaneously made memorandum of an oral "claim", allegation or threat, "you" shall give written notice to "us" as soon as practicable and either:

   a. anytime during the "EPL coverage period" or the Extended Reporting Period (if applicable); or

   b. within thirty (30) days after the end of the "EPL coverage period" or Extended Reporting Period (if applicable), as long as such "claim" or "suit" is reported no later than thirty (30) days after the date such "claim" or "suit" was first made against an "insured".

2. If a "claim" is made or a "suit" is brought against any "insured", "you" must:

   a. Immediately record the specifics of the "claim" or "suit" and the date received; and

   b. Provide "us" with written notice, as described in subsection 3. below, as soon as practicable.

3. Such written notice of "claim" or "suit" shall contain:

   a. The identity of the person(s) alleging a "wrongful employment act";

   b. The identity of the "insured(s)" who allegedly were involved in the incidents or events;

   c. The date the alleged incidents or events took place; and

   d. The written notice or contemporaneously prepared memorandum referred to above.

   If written notice is given to "us" during the "EPL coverage period" or Extended Reporting Period (if applicable), pursuant to the above requirements, then any "claim" or "suit" which is subsequently made against any "insureds" and reported to "us" alleging, arising out of, based upon or attributable to such circumstances or alleging any "related wrongful employment act" to such circumstances, shall be considered made at the time such notice of such circumstances was first given.

4. If "you" submit written notice of a "claim" or "suit", pursuant to this Clause D, then any "claim" or "suit" that may subsequently be made against an " insured" and reported to "us" alleging the same or a "related wrongful employment act" to the "claim" or "suit" for which such notice has been given shall be deemed, for the purpose of this insurance, to have been first made during the "EPL coverage period" in effect at the time such written notice was first submitted to "us".

5. "You" and any other "insured" must:

   a. Immediately send "us" copies of any demands, notices, summonses or legal papers received in connection with any "claim" or "suit";

   b. Authorize "us" to obtain records and other information;

   c. Cooperate with "us" in the investigation, settlement or defense of the "claim" or "suit";

d. Assist "us", upon "our" request, in the enforcement of any right against any person or organization which may be liable to the "insured" because of injury or damage to which this insurance may also apply;

e. Take no action, or fail to take any required action, that prejudices the rights of the "insureds" or "us" with respect to such "claim" or "suit".

6. No "insureds" will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense without "our" prior written consent.

**E. Transfer of Rights of Recovery Against Others to "Us"**

"You" may be able to recover all or part of a "loss" from someone other than "us". "You", therefore, shall do all that is possible after a "loss" to preserve any such right of recovery. If "we" make a payment under this EPL Coverage Endorsement, that right of recovery shall belong to "us". "You" shall do whatever is necessary, including signing documents, to help "us" obtain that recovery.

**F. Extended Reporting Period**

1. Solely with respect to this EPL Coverage Endorsement and except as indicated below, if "you" or "we" shall cancel or refuse to renew this EPL Coverage Endorsement, "you" shall have the right, upon payment of an additional premium of 100% of the full annual premium applicable to this EPL Coverage Endorsement, to buy an Extended Reporting Period Endorsement, providing an Extended Reporting Period of one (1) year following the effective date of the cancellation or nonrenewal, in which to give "us" written notice of "claims" first made or "suits" first brought against the "insureds" during said Extended Reporting Period for any "wrongful employment acts" which take place after the "original inception date" and before the end of the "EPL coverage period" and are otherwise covered by this EPL Coverage Endorsement.

To obtain an Extended Reporting Period Endorsement, "you" must request it in writing and pay the additional premium due, within thirty (30) days of the effective date of cancellation or nonrenewal.

2. The Extended Reporting Period Endorsement cannot be canceled by either party, except for nonpayment of premium. The additional premium for the Extended Reporting Period shall be fully earned at the inception of the Extended Reporting Period and this EPL Coverage Endorsement cannot be canceled after such additional premium is paid. If "we" do not receive the written request as required, "you" may not exercise this right at a later date.

3. This insurance, provided during the Extended Reporting Period, is excess over any other valid and collectible insurance that begins or continues in effect after the Extended Reporting Period Endorsement becomes effective, whether the other insurance applies on a primary, excess, contingent, or any other basis.

4. In the event of cancellation by the Insurer for the non-payment of initial premium for this EPL Coverage Endorsement as indicated in the Supplemental Declarations of this EPL Coverage Endorsement, any monies received by the Insurer as payment for the Extended Reporting Period shall be first applied to such premium owing for the policy. The Extended Reporting Period will not take effect until the premium owing for the policy is paid in full and the premium owing for the Extended Reporting Period is paid promptly when due.

5. In the event of a "Transaction", as defined in Clause G below, the "named insured" shall have the right, within thirty (30) days before the end of the "EPL coverage period", to request an offer from "us" of an Extended Reporting Period (with respect to "wrongful employment acts" which take place after the "original inception date" and prior to the effective time of the "Transaction"). We shall offer such Extended Reporting Period pursuant to such terms, conditions, and premium as we may reasonably decide. In the event of a "Transaction", the right to an Extended Reporting Period shall not otherwise exist except as indicated in this paragraph.



OBCH332709    1304500

### G. Change in Control of "Named Insured"

If during the "EPL coverage period":

1. the "named insured" shall consolidate with or merge into, or sell all or substantially all of its assets to any other person or entity or group of persons or entities acting in concert; or

2. any person or entity or group of persons or entities acting in concert shall acquire an amount of the outstanding securities representing more than fifty (50%) percent of the voting power for the election of directors or General Partners of the "named insured" (in the event the "named insured" is a Partnership), or acquires the voting rights of such an amount of such securities; or

3. a General Partner of the "named insured" (in the event the "named insured" is a partnership) withdraws, resigns or is terminated;

(any of the above events herein referred to as the "Transaction"),

then this EPL Coverage Endorsement shall continue in full force and effect as to "wrongful employment acts" occurring after the "original inception date" and prior to the effective time of the "Transaction", but there shall be no coverage afforded by any provision of this EPL Coverage Endorsement for any actual or alleged "wrongful employment acts" occurring after the effective time of the "Transaction". This EPL Coverage Endorsement may not be canceled after the effective time of the "Transaction" and the entire premium for this EPL Coverage Endorsement shall be deemed earned as of such time. "You" shall also have the right to an offer by "us" of an Extended Reporting Period described in Clause F of this EPL Coverage Endorsement.

"You" shall give "us" written notice of the "Transaction" as soon as practicable, but not later than thirty (30) days after the effective date of the "Transaction".

### H. Legal Action Against "Us"

No person or organization has the right to join "us" as a party or otherwise bring "us" into a "suit" asking for damages from an "insured".

### I. Other Insurance

Unless expressly written to be excess over other applicable insurance, it is intended that the insurance provided by this EPL Coverage Endorsement shall be primary.

### J. EPL Coverage Endorsement Changes

This EPL Coverage Endorsement contains all the agreements between "you" and "us" concerning this insurance. The first "named insured" in the Supplemental Declarations of this EPL Coverage Endorsement is authorized to request changes in this EPL Coverage Endorsement. This EPL Coverage Endorsement can only be changed by a written endorsement "we" issue and make part of this EPL Coverage Endorsement.

### K. Representations

Any and all relevant provisions of this EPL Coverage Endorsement may be voidable by "us" in any case of fraud, intentional concealment, or misrepresentation of material fact by any "insured".

### L. Special Rights and Duties of the "Named Insured"

"You" agree that when there is more than one person and/or entity covered under this EPL Coverage Endorsement, the "named insured" in the Supplemental Declarations of this EPL Coverage Endorsement shall act on behalf of all "insureds" as to:

1. Giving of notice of a "claim" or "suit";

2. Giving and receiving notice of cancellation or nonrenewal;

3. Payment of premiums and receipt of return premiums;

4. Acceptance of any endorsements issued to form a part of this EPL Coverage Endorsement; or

5. Purchasing or deciding not to purchase the Extended Reporting Period Endorsement.

### M. Headings

The description in the headings of this EPL Coverage Endorsement are solely for convenience, and form no part of the terms and conditions of coverage.

---

## SECTION VII. DEFINITIONS

A. "Bodily injury" means physical injury, sickness, or disease, including death resulting therefrom

B. "Claim" means a written demand for money. The term "claim" shall also mean an Equal Employment Opportunity Commission (EEOC), Department of Labor (DOL) or Office of Federal Contract Compliance Program (OFCCP) (or similiar

federal, state or local agency) proceeding or investigation commenced by the filing of a notice of charges, service of a complaint or similar document of which notice has been given to "you". However, in no event, shall the term "claim" include any labor or grievance proceeding, which is subject to a collective bargaining agreement.

**C.** "Class Action Suit" means any suit seeking certification or certified as a class action by a federal or state court.

**D.** "Defense Costs" means reasonable and necessary fees, costs and expenses consented to by "us" resulting solely from the investigation, adjustment, defense and appeal of a "claim" or "suit" against "you". In no event shall "Defense Costs" include "your" or "our" routine on-going expenses, including, without limitation, the salaries of "your" "employees", officers or staff attorneys.

**E.** "Employee" means an individual whose labor or service is engaged by and directed by "you" for remuneration, whether such individual is in a supervisory, co-worker or subordinate position or otherwise, including any part-time, seasonal, and temporary "employees". Independent contractors and individuals who are leased to the "insured" are not "employees".

**F.** "Loss(es)" means damages (including front pay and back pay), judgments, settlements, statutory attorney fees, and "defense costs", however, "loss" shall not include: (1) civil or criminal fines or penalties imposed by law; (2) punitive or exemplary damages; (3) the multiplied portion of multiplied damages; (4) taxes; (5) any amount for which the "insureds" are not financially liable or which are without legal recourse to the "insureds"; (6) employment related benefits, stock options, perquisites, deferred compensation or any other type of compensation other than salary, wages or bonus compensation; (7) matters which may be deemed uninsurable under the law pursuant to which this EPL Coverage Endorsement shall be construed; or (8) any pre-judgment or post-judgment interest on any judgment.

**G.** "Named Insured" means the person or organization designated in the Supplemental Declarations page of this EPL Coverage Endorsement.

**H.** "Original inception date" refers to the date specified in the Supplemental Declarations of this EPL Coverage Endorsement.

**I.** "EPL coverage period" means the period commencing on the effective date shown in the Supplemental Declarations of this EPL Coverage Endorsement. This period ends on the earlier of the expiration date or the effective date of cancellation of this EPL Coverage Endorsement. If "you" became an "insured" under this EPL Coverage Endorsement after the effective date, the "EPL coverage period" begins on the date "you" became an "insured".

**J.** "Property Damage" means physical injury to, or destruction of, tangible property including the loss of use of thereof, or loss of use of tangible property, which has not been physically injured or destroyed.

**K.** "Related Wrongful Employment Act(s)" means "wrongful employment acts" which are the same, related or continuous, or "wrongful employment acts" which arise from a common nucleus of facts. "Claims" or "suits" can allege "related wrongful employment acts", regardless of whether such "claims" or "suits" involve the same or different claimants, "insureds" or legal causes of actions.

**L.** "Retaliation" means a "wrongful employment act" of an "insured" alleged to be in response to, the actual or attempted exercise by an "employee" of any right that such "employee" has under the law. Provided, however, "retaliation" shall not include the "wrongful employment act" of an "insured" alleged to be in response to the threat of or the actual filing of any claim or suit under the Federal False Claims Act or any other federal state, local or foreign "whistleblower law".

**M.** "Subsidiary" means:

**1.** Any for-profit organization which, on or before the inception of the "EPL coverage period", is more than 50% owned by the "named insured", either directly or indirectly through one or more of its "subsidiaries"; or

**2.** A for-profit organization which becomes a "subsidiary" during the "EPL coverage period", but only upon the condition that within 90 days of its becoming a "subsidiary", the "named insured" shall have provided "us" with full particulars of the new "subsidiary" and agreed to any additional premium or amendment of the provisions of this EPL Coverage Endorsement required

The
**Hanover**
Insurance Group

OBCH332709      1304500

by "us" relating to such new "subsidiary". Further, coverage as shall be afforded to the new "subsidiary" is conditioned upon the "named insured" paying when due any additional premium required by "us" relating to such new "subsidiary".

An organization becomes a "subsidiary" when the "named insured" owns more than fifty (50%) percent ownership interest in such "subsidiary", either directly, or indirectly through one or more of its "subsidiaries". An organization ceases to be a "subsidiary" when the "named insured" ceases to own more than a fifty (50%) percent ownership in such "subsidiary", either directly, or indirectly through one or more of its "subsidiaries".

In all events, coverage as is afforded under this EPL Coverage Endorsement with respect to a "claim" made or "suit" brought against any "subsidiary" or an "insured" of any "subsidiary", shall only apply to "wrongful employment act(s)" commenced or allegedly commenced after the effective time that such "subsidiary" became a "subsidiary", and prior to the time that such "subsidiary" ceased to be a "subsidiary".

**N.** "Suit" means a civil proceeding or an administrative proceeding seeking money damages, and includes an arbitration, mediation or any other alternative dispute resolution procedure seeking such damages, to which the "insured" must submit or may submit with "our" consent. "Suit" shall not include any civil proceeding or administrative proceeding arising from any labor or grievance dispute which is subject to a collective bargaining agreement.

**O.** "Whistleblower law" means a statute, rule or regulation, which protects an employee against discrimination from his or her employer, if the employee discloses or threatens to disclose to a superior or any governmental agency; or who gives testimony relating to, any action with respect to the employer's operations, which may be a violation of public policy as reflected in legislation, administrative rules, regulations or decisions, judicial decisions, and professional codes of ethics.

**P.** "Wrongful Employment Act(s)" means any actual or alleged:

**1.** wrongful dismissal, discharge or termination (either actual or constructive), including breach of an implied contract;

**2.** harassment (including sexual harassment, whether quid pro quo, hostile work environment or otherwise);

**3.** discrimination (including but not limited to discrimination based upon age, gender, race, color, national origin, religion, sexual orientation or preference, pregnancy or disability);

**4.** "retaliation" (including lockouts);

**5.** employment-related misrepresentation(s) to "your" "employee" or applicant for employment with "you";

**6.** employment-related libel, slander, humiliation, mental anguish, infliction of emotional distress, defamation, or invasion of privacy;

**7.** wrongful failure to employ or promote;

**8.** wrongful deprivation of career opportunity, wrongful demotion or negligent "employee" evaluation, including the giving of negative or defamatory statements in connection with an "employee" reference;

**9.** wrongful discipline;

**10.** failure to grant tenure;

**11.** failure to provide or enforce adequate or consistent corporate policies and procedures relating to any "wrongful employment act"

**12.** negligent supervision or hiring by an "insured", relating to any of the above;

**13.** violation of an individual's civil rights relating to any of the above.

# Exhibit C

Hearing Date: 7/1/2022 10:00 AM
Location: Court Room 2410
Judge: Loftus, Anna M.

FILED
3/3/2022 10:16 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2022CH01824
Calendar, 15
16929297

FILED DATE: 3/3/2022 10:16 AM    2022CH01824

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

REBECCA ROBERTS,
*individually and on behalf of all*
*others similarly situated,*

       Plaintiff,

    v

COOLER SCREENS INCORPORATED,

       Defendant.

Case No.

**2022CH01824**

### CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Rebecca Roberts ("Plaintiff"), individually and on behalf of all other persons similarly situated, by and through undersigned counsel, brings this class action lawsuit for violations of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA"), against Defendant Cooler Screens, Incorporated ("Cooler Screens"). Plaintiff alleges the following facts based upon personal knowledge and/or the investigation of her counsel:

### NATURE OF THE ACTION

1.    Plaintiff brings this action for damages and other legal and equitable remedies resulting from the illegal actions of Cooler Screens in capturing, collecting, storing, and using Plaintiff's and other similarly situated individuals' biometric identifiers[1] and biometric information[2] (collectively, "biometrics") without first obtaining informed written consent or providing the requisite data retention and destruction policies, in direct violation of BIPA.

2.    Cooler Screens, Inc. is the developer of "Smart Coolers," which are interactive

---

[1] A "biometric identifier" is defined as "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." 740 ILCS 14/10.
[2] "Biometric information" means "any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual." 740 ILCS 14/10.

1

FILED DATE: 3/3/2022 10:16 AM    2022CH01824

digital displays currently replacing glass doors in retail store aisles[3] and support "the world's largest in-store digital retail media platform."[4]

3.      In November of 2018, Illinois residents were exposed to Cooler Screen's Smart Cooler for the first time, as they began to be installed Walgreens locations. To a consumer unfamiliar with the Smart Cooler, it functions like a new-age television screen which displays advertisements for the items available for sale within the cooler. An example of a retailer's Smart Cooler display[5] appears as follows:



*Figure 1*

4.      But Cooler Screens' Smart Cooler is more than simply point-of-sale advertising – by bringing the dynamic nature of digitized marketing into the retail shopping experience, Cooler Screens has developed a new medium for deploying targeted advertising to consumers at their most vulnerable moment and increase the pressure to make an impulse purchase.

5.      According to Cooler Screens, Inc.: "Over 75% of shopping in brick-and-mortar stores is impulse purchasing. Research shows that impulse decisions are highly influenced by in-store messaging, and that most of that in-store impulse shopping occurs at retail product containers,

---

[3] Cooler Screens, https://www.coolerscreens.com/ (accessed 2/23/22).
[4] Cooler Screens, *Platform*, https://www.coolerscreens.com/platform (accessed 2/23/22).
[5] Cooler Screens, *Ecosystem*, https://www.coolerscreens.com/ecosystem (accessed 2/28/22).

such as coolers and freezers."[6]

6.  The Smart Cooler employs a "camera which feeds images of each customer into a computer that guesstimates her sex and age. In addition, the system uses an iris tracker to detect exactly where the customer is looking."[7] The cameras in the Smart Coolers are extremely subtle, such that most consumers would not realize it is monitoring and analyzing her person – much less predicting which advertisements will most effectively influence her to purchase.

7.  The technology monitors shoppers using its Customer Detection Hardware ("CDH") and interprets the data collected from them using a "facial profiling system[8]," which can detect the age, gender, and emotional response[9] of over 3 million verified daily viewers. [10]

8.  Multiple Smart Coolers can be linked together to form a single system using a "controller/data collector" ("C/DC"), which receives a data feed from various sensors embedded into each Smart Cooler. The C/DC not only links a set of Smart Coolers together, but also communicates with each Smart Cooler independently, analyzing the data stream it receives from each cooler and, depending on the type of customer standing before a particular door, predict which advertisements will most likely lead to a purchase.[11]

---

[6] USPTO, *Intelligent Marketing and Advertising Platform*, https://uspto.report/patent/app/20190122263#D00000 (accessed 2/20/22).
[7] Boston Globe, *Cooler Screens Display Cases Scan your Face Size to Size up Buying Habits* https://www.bostonglobe.com/business/2019/03/10/cooler-screens-display-cases-scan-your-face-size-your-buying-habits/qNN4bCb7NYhhE7TE3GjxwK/story.html (accessed 2/20/22).
[8] *Id.*
[9] Fast Company, *It's Not Just Google or Facebook: The Freezer Aisle is Ad Targeting You Now*, https://www.fastcompany.com/90302382/its-not-just-google-or-facebook-the-freezer-aisle-is-ad-targeting-you-too (accessed 2/23/22).
[10] Cooler Screens, *Cooler Screens* (accessed 2/23/22).
[11] USPTO, (accessed 2/20/22).

FILED DATE: 3/3/2022 10:16 AM   2022CH01824

FILED DATE: 3/3/2022 10:16 AM 2022CH01824



*Figure 2*
*(The C/DC operates as a central hub for a set of Retail Product Containers
("RPCs"), normally coolers or freezers)*

9.     The entire Cooler Systems ecosystem is built around the concept that serving the right advertisement at the right time and *to the right consumer* will move the needle and sell more products.  As part of this service, Cooler Screens performs a variety of analytics to accurately predict the success of an advertising campaign.  Cooler Screens leverages this data and its analytics to pitch the optimal conditions and the optimal audience for specific advertising. [12]



*Figure 3*

---

[12] Cooler Screens, *Platform*, (accessed 2/20/22).

4

FILED DATE: 3/3/2022 10:16 AM    2022CH01824

10.     However, Cooler Screens provides its advertising service in violation of Illinois law.  BIPA has strict requirements regarding what disclosures must be made and how consent must be obtained *before* biometrics are obtained from the user.  Cooler Screens does not provide sufficient disclosures and does not obtain consent. Further, Cooler Screens does not meaningfully explain how it retains the biometrics it obtains.

11.     Accordingly, Cooler Screen's conduct violates BIPA.

12.     In promulgating BIPA over a decade ago, the Illinois Legislature declared that "[b]iometrics are unlike other unique identifiers that are used to access finances or other sensitive information." 740 ILCS 14/5(c). "For example, social security numbers, when compromised, can be changed. Biometrics, however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions." *Id.*

13.     In recognition of these and other concerns over the security of individuals' biometrics, the Illinois Legislature enacted BIPA, which provides, *inter alia*, that a private entity—like Cooler Screens—may *not* obtain and/or possess an individual's biometrics unless it first establishes a written and publicly-available retention schedule. 740 ILCS 14/15(a). Additionally, it must also: (1) inform the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored; (2) inform the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and (3) receive a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative. 740 ILCS 14/15(b).  The entity is expressly prohibited from selling, leasing, trading or otherwise profiting from the individual's

FILED DATE: 3/3/2022 10:16 AM    2022CH01824

biometrics. 740 ILCS 14/15(c). Nor may the entity disclose, redisclose, or otherwise disseminate an individual's biometrics absent written consent. 740 ILCS 14/15(d).

14.　Further, the entity must store, transmit and protect an individual's biometric identifiers and biometric information using the same standard of care in the industry and in a manner at least as protective as the means used to protect other confidential and sensitive information. 740 ILCS 14/15(e).

15.　In direct violation of BIPA, Cooler Screens is actively collecting, capturing, storing, using, and profiting from the facial geometry and associated personally identifying information (including biometrics) of potentially tens of thousands of persons, without providing notice, obtaining informed written consent, or publishing data retention policies.

16.　Plaintiff, on behalf of herself and the class as defined herein, brings this action to prevent Cooler Screens from further violating the privacy rights of citizens within the state of Illinois, and to recover statutory damages for Cooler Screens' unauthorized collection, capture, storage and use of individuals' biometrics in violation of BIPA.

## JURISDICTION AND VENUE

17.　Defendant Cooler Screens is subject to the personal jurisdiction of this Court because it is headquartered in the State of Illinois and regularly transacts business within the State of Illinois. Further, the biometrics that give rise to this lawsuit (1) belong to Illinois residents, and (2) were collected by Defendant from customers shopping in front of Smart Coolers in Illinois.

18.　Venue is proper in this County pursuant to 735 ILCS 5/2-101 because Defendant is a resident of this County and a substantial part of the events giving rise to Plaintiff's cause of action occurred in this County.

## PARTIES

FILED DATE: 3/3/2022 10:16 AM   2022CH01824

19.     Plaintiff Rebecca Roberts is, and has been at all relevant times, a resident of Illinois.

20.     Defendant Cooler Screens is an advertising and technology corporation based in Chicago, Illinois. Cooler Screens does business in the State of Illinois.   Specifically, Cooler Screens has installed many of its Smart Coolers in the State of Illinois.

## BACKGROUND

### I.      The Illinois Biometric Information Privacy Act

21.     In 2008, Illinois enacted BIPA due to the "very serious need [for] protections for the citizens of Illinois when it [comes to their] biometric information." Illinois House Transcript, 2008 Reg. Sess. No. 276.

22.     A "biometric identifier" is defined as "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." 740 ILCS 14/10.

23.     In turn, "biometric information" means "any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual." 740 ILCS 14/10.

24.     BIPA makes it unlawful for a company to, *inter alia*, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometrics, unless it first:

> (1) informs the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored;
>
> (2) informs the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and
>
> (3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative.

740 ILCS 14/15 (b).

7

FILED DATE: 3/3/2022 10:16 AM 2022CH01824

25. Section 15(a) of BIPA also provides that:

> A private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first. Absent a valid warrant or subpoena issued by a court of competent jurisdiction, a private entity in possession of biometric identifiers or biometric information must comply with its established retention schedule and destruction guidelines.

*Id.* at 14/15(a).

26. Further, BIPA prohibits a "private entity in possession of a biometric identifier or biometric information" from "sell[ing], leas[ing], trad[ing], or otherwise profit[ing] from a person's or a customer's biometric identifier or biometric information." 740 Ill. Comp. Stat. Ann. 14/15(c).

27. Nor may a private entity "disclose, redisclose, or otherwise disseminate an individual's biometrics absent written consent." 740 ILCS 14/15(d).

28. Finally, BIPA places significant security requirements on private entities that acquire individuals' biometrics, stating that they must: "(1) store, transmit, and protect from disclosure all biometric identifiers and biometric information using the reasonable standard of care within the private entity's industry; and (2) store, transmit, and protect from disclosure all biometric identifiers and biometric information in a manner that is the same as or more protective than the manner in which the private entity stores, transmits, and protects other confidential and sensitive information." 740 ILCS 14/15(e).

## II. Cooler Screens' BIPA-Violative Conduct

### A. Cooler Screens Use of "face sensors or scanners" and iris tracking hardware amounts to a collection of biometrics.

8

FILED DATE: 3/3/2022 10:16 AM    2022CH01824

### i.    Facial Detection, Generally

29.    Facial detection "is the first and essential step for face recognition," and is used as a preliminary step to detect faces in images. It is a part of object detection and is used in many areas, including biometrics.[13] Facial detection "is used to detect faces in real time for surveillance and tracking of [a] person or objects."[14]

30.    Typically, facial detection technology uses algorithms and machine-learning to locate human faces within larger images. [15] Face detection algorithms, such as the algorithm employed by Cooler Screens, Inc., begin by scanning a collected image to locate human eyes – one of the easiest features to detect. The technology then attempts to detect other features of the face, such as eyebrows, the mouth, nose, nostrils, and the iris." [16]

31.    When an algorithm has successfully classified a sufficient number of facial data points within an image (i.e., eyes, mouth, nose, nostrils, and iris), it applies additional tests to confirm the object within the image is, in fact, a face. [17]

32.    In training an algorithm to recognize the types of features to identify as belonging to a face, thousands of images are "fed" to the algorithm for it to determine whether a feature belongs to a specific portion of a face, even between images of different faces (i.e., recognizing that an object is a "nose" in an image of Kim Kardashian as well as in an image of Abraham Lincoln). If data collected from subsequent images sufficiently track the mapped data points from

---

[13] *See,* Divyanch Dwivedi, *Face Detection for Beginners,* Towards Data Science (available at https://towardsdatascience.com/face-detection-for-beginners-e58e8f21aad9) (last accessed 2/23/22)
[14] *Id.*
[15] *See, generally,* Corrine Bernstein, *Face Detection,* Search Enterprise AI (available at https://searchenterpriseai.techtarget.com/definition/face-detection) (last accessed June 2, 2021)
[16] *Id.; see, also,* OpenCV, *Cascade Classifier,* (available at https://docs.opencv.org/3.4/db/d28/tutorial_cascade_classifier.html) (last accessed June 2, 2021)
[17] *See, generally,* Bernstein, *Face Detection,* fn 8, *supra.*

9

FILED DATE: 3/3/2022 10:16 AM    2022CH01824

prior images of faces, the machine-learning algorithm can successfully detect whether an image contains a face. [18]

33.     The above-described procedures rely on "facial landmark detection," which is a method of identifying specific "landmarks" on the face (eyes, nose, cheeks, etc.) for facial detection. [19] But facial landmark detection is capable of even more sophisticated analyses of the facial geometry scans it acquires, enabling technology companies like Cooler Screens to evaluate images and make judgments about the physical qualities of the person in the image. [20]

34.     Facial landmark detection is critical for technology employed by Cooler Screens, Inc., such as its iris-scanner, which is embedded in the Smart Cooler. [21] Like facial detection more broadly, facial landmark detection necessarily relies on the expansive collection of facial data points (i.e., facial geometry) and analysis of those data points to divine unique attributes of the scanned individual, as illustrated below:[22]



Zoomed output

*Figure 4*

---

[18] *See, generally,* Bernstein, *Face Detection, supra.*
[19] *See,* Oluwatosin, *Facial Landmarks and Face Detection in Python with OpenCV, supra.*
[20] *Id.*
[21] *Id.*
[22] *Id.*

FILED DATE: 3/3/2022 10:16 AM 2022CH01824

ii.     **The Cooler Screens Experience**

35.     Cooler Screens was designed with the goal to create a "consumer experience" which generated a "continuous loop" of advertising and purchasing.[23] The Smart Coolers are intended to draw a shopper towards the Retail Product Container, engage with the customer, and ultimately supply the extra push to make an impulse purchase.

36.     The system was deliberately designed to lure customers closer to the products' and, as illustrated by Figure 5, initiate a continuous engagement loop with the products.[24]



*Figure 5*

37.     The cooler displays bright, exciting full-screen or multi-door ads when no consumers are nearby. as a consumer approaches the screen, it will replace the full-screen or multi-door advertisement with an image reflecting all items available within the RPC and their prices. The system also displays more subtle advertising as well, such as providing nutritional product information or whether the product is organic or locally produced.[25]

38.     The system is capable of displaying five types of advertising[26]: full screen ads, multi-door/wall ads, banner ads, hotspot ads, and promotional labels, tags, and animations.

---

[23] Cooler Screens, *Experience*, https://www.coolerscreens.com/experience (accessed 2/28/22).
[24] *Id.*
[25] Tech Crunch, *Cooler Screens Raises $80M to Bring Interactive Screens into Cooler Aisles*, https://techcrunch.com/2020/10/05/cooler-screens-series-c/, (accessed 2/20/22). *see also* Cooler Screens, Platform, (accessed 2/20/22).
[26] Cooler Screens, *Platform*, (accessed 2/20/22).

11

FILED DATE: 3/3/2022 10:16 AM   2022CH01824

39.     The system is also capable of ensuring the advertising on the screen represents accurate information, such as updated prices, promotional bargains, and accurate representations of inventory within the RPC.[27]

### iii.     Cooler Screens Collects Scans of Facial Geometry

40.     Each Smart Cooler delivers a variety of information to the C/DC through various sensors, including what Cooler Screens calls "Customer Detecting Hardware." This hardware includes "one or more proximity sensors (such as heat maps), cameras, facial sensors or scanners, and eye-sensors."[28]

41.     In particular, the system detects the presence of a customer using a proximity sensor, and when in close range of the cooler door, will begin collecting images of the consumer using its cameras.  It will also capture information about the consumer using its face sensors or scanners, and its eye-sensors.[29]

42.     Along with other sensors within the Retail Product Container, the customer's physical appearance will be collected and analyzed and then associated the customer's behavior, tracking whether a product was viewed or selected.  Sensors in the Smart Cooler "can tell how close shoppers are to the screen and can also gauge if they've seen an ad, what they're looking for, if they open and close a door, and if they've gone for a diet coke or a kombucha."[30]

43.     The system will collect images of the consumer within the C/DC and perform a local analysis of the image to determine the customer's age, sex, and, and emotional state.[31] Specifically: "[a] camera feeds images of each customer into a computer that guesstimates

---

[27] Marketing Brew, *Are Cooler Screens the Fridge of the Future*,
https://www.morningbrew.com/marketing/stories/2021/10/25/are-cooler-screens-the-fridge-of-the-future (last accessed February 20, 2022)
[28] USPTO, at 0035 (accessed 2/20/22).
[29] *Id.*
[30] Marketing Brew, (accessed 2/20/22).
[31] USPTO, (accessed 2/20/22).

his or her sex and age. In addition, the system uses an iris tracker to detect exactly where the customer is looking. Do the eyes come to rest on a bottle of Mountain Dew, or does the shopper fancy a Diet Snapple?"[32]

44.     "The cameras analyze faces to make inferences about the shoppers' age and gender. First the camera takes their picture, which an AI system will measure and analyze, say, the width of someone's eyes, the distance between their lips and nose, and other micro measurements. From there, the system can estimate if the person who opened the door is, say, a woman in her early 20s or a male in his late 50s. It's analysis, not recognition."[33]

45.     Further, the Smart Cooler system requires its cameras to satisfy certain metrics in order to provide its analytics:

> For example, its cameras "should have a depth of view of 20 feet or more, range of field of view of 170 degrees with 150 degrees of facial recognition ability. Preferably software is employed in association with the cameras to monitor shopper interactions, serve up relevant advertisement content on the displays, and track advertisement engagement in-store."[34]

46.     The Customer Detection Hardware monitors the customer and feeds its data to the C/DC via a wired or wireless connection.[35] The C/DC analyzes the data feed locally, but also transmits the data remotely for additional analysis in the cloud which permits Cooler Screens to "push more relevant/targeted content, tailored for the consumer."[36]

47.     Critically, a customer in a store that has installed a set of cooler screens has no ability to avoid collection of her biometrics as the system is constantly in operation, and, even

---

[32] Boston Globe, (accessed 2/20/22).
[33] The Atlantic, *Now your Groceries See you, Too.*
https://www.theatlantic.com/technology/archive/2019/01/walgreens-tests-new-smart-coolers/581248/ (accessed 2/20/22).
[34] USPTO, at 0036 (accessed 2/20/22).
[35] *Id.*
[36] *Id*, at 0053.

FILED DATE: 3/3/2022 10:16 AM   2022CH01824

FILED DATE: 3/3/2022 10:16 AM 2022CH01824

more invasive, the system is designed in such a way that a consumer has no obvious warning a camera, face scanner, and iris tracker are collecting and analyzing her image.

> iv. **Cooler Screens Provides No Notice and Obtains No Consent from the Consumer**

48.    However, Cooler Screens takes no steps to provide notice to consumers, or anyone for that matter, that it collects biometric identifiers or biometric information. In fact, Cooler Screens' Privacy Policy does not even mention the acquisition of biometrics. [37]

49.    Not only does it fail to notify the public it collects scans of face geometry, but it also fails to include a retention policy for biometric data and fails to include guidelines for the destruction of biometric data – both of which are required under 740 ILCS 14/15(a).[38]

50.    Cooler Screens takes no effort to obtain informed written consent from consumers as required by 740 ILCS 14/15(b). Cooler Screens provides no written notice that its Smart Cooler and associated equipment collect biometric information or biometric identifiers, the specific purpose and length of term for which the biometric data will be stored or used and does not attempt to obtain a written release from the subject of the scan of face geometry.

> **B. Cooler Screens Scans Facial Geometry to Serve Targeted Advertising**

51.    Cooler Screens is quite transparent about the purpose of its technology, as illustrated by its own language:

> "The intelligent marketing and advertising platform disclosed herein effectively prides for at least the following: the convergence of a brick and mortar retail establishment with e-commerce; in-store promotions as an electronic marketplace; real time and algorithmic-driven pricing and promotions; *self-learning/machine-learning artificial intelligence algorithm-driven advertising which is personalized to a given consumer; behavior response and external data (i.e. weather, events, competition, etc.)*; and smart-

---

[37] Cooler Screens, *Privacy Policy*, https://www.coolerscreens.com/privacy-policy, (accessed 2/20/22) (effective date January 7, 2020).
[38] *Id.*

14

FILED DATE: 3/3/2022 10:16 AM   2022CH01824

sensor and digital merchandising for planogram compliance, automatic-restock, in-store audits, etc."[39]

52.     In fact, Cooler Screens' entire business model is based on the collection and analysis of consumers' faces and predicting their purchasing interests based on its estimates of gender, age, and mood, and serving relevant advertising.  Its ecosystem is built around the concept that serving the right advertisement at the right time and to the right consumer will move the needle and sell more products.

53.     According to Cooler Screens' patent applied for in 2019 and granted in 2020, the company developed an "intelligent marketing and advertising platform"("IMAP"), which is designed to capture and evaluate data in order to provide the consumer with the most effective advertisement to obtain a purchase.[40]  Upon detecting the presence of a customer, the customer-facing camera will direct the C/DC to display the planogram of available items and will suggest banner ads and hot spots depending on what information it gleans from the analysis of the customer.[41] Cooler Screens illustrates this functionality on its website:

---

[39] USPTO, (accessed 2/20/22) (emphasis added).
[40] Id.
[41] Id.

15

FILED DATE: 3/3/2022 10:16 AM 2022CH01824



*Figure 6*

54. The system is further designed to improve as consumers repeatedly engage with it. Cooler Screens engages in sophisticated analytics of the data it collects, including the demographic data it collects on retail shoppers, the types of ads displayed for particular demographics including the location of the retail establishment, the time of day, and the frequency with which the advertisement led to a purchase.[42]

55. "If, for example, Pepsi launched an ad campaign targeting young women, it could use smart-cooler data to see if its campaign was working. These machines can draw all kinds of useful inferences: maybe young men buy more Sprite if it's displayed next to Mountain Dew. Maybe older women buy more ice cream on Thursday nights than any other day of the week. The tech also has "iris tracking" capabilities, meaning the company can collect data on which displayed items are the most looked at."[43]

---

[42] Cooler Screens, *Platform*, (accessed 2/20/22).
[43] The Atlantic, (accessed 2/20/22).

16

FILED DATE: 3/3/2022 10:16 AM   2022CH01824

56.     Cooler Screens then works with advertisers to provide analytics of the type of advertising displayed and report back how well the advertisement transitioned a consumer to make an actual purchase.[44] This gives the system the ability to employ strategies similar to those used in the online marketing platform which allows suppliers to monitor mouse movements and page and advertisement clicks.  Instead of monitoring a consumer's online behavior, however, the Smart Cooler monitors the consumer's physical attributes and predicts which ad may be most effective.[45]

57.     "The Cooler Screens system instantly analyzes all of this data, then starts displaying ads on the cooler door. A middle-aged woman might see a suggestion that she pick up a pint of Ben & Jerry's ice cream to go with her Diet Coke; a twenty-something male could be enticed with a discount on frozen pizza."[46]

**Plaintiff's Experience**

58.     Plaintiff often shops at the Walgreens on 1200 N Dearborn St in Chicago, Illinois. At some point during the last year, the traditional transparent glass doors on the refrigerators were replaced with Cooler Screens' Smart Cooler. Since that time, Plaintiff has made frequent trips to this Walgreens and stepped in front of a Cooler Screens Smart Cooler where her biometrics were obtained by Cooler Screens without her consent.

59.     Plaintiff is an Illinois resident who had her biometrics taken by Cooler Screens' Smart Cooler while in the state of Illinois. Plaintiff's only option to avoid the Smart Cooler was to not shop in her neighborhood Walgreens at all. Plaintiff was not aware the Smart Cooler was capturing her age, gender, and mood in order to target her with advertisements.

---

[44] Cooler Screens, *Platform*, (accessed 2/20/22).
[45] Boston Globe, (accessed 2/20/22).
[46] *Id.*

17

60.     In the course of shopping at Walgreens, Plaintiff was scanned by Cooler Screens Customer Detecting Hardware and analyzed by Cooler Screens' software in a manner substantially similar—if not identical—to the processes set forth in paragraphs 29-57.

61.     In so doing, Defendant's technology scanned, captured and collected Plaintiff's facial geometry—along with any other biometrics—and stored this data.

62.     Defendant did not inform Plaintiff in writing that it was capturing and collecting her biometrics, the purpose and length of time for such collection, nor did Defendant obtain Plaintiff's written consent before capturing her biometrics. Plaintiff never consented, agreed or gave permission—written or otherwise—to Defendant for the collection or storage of Plaintiff's biometrics.

63.     Likewise, Defendant never provided Plaintiff with the requisite statutory disclosures nor an opportunity to prohibit or to prevent the collection, storage or use of her biometrics.

64.     By collecting her biometrics without Plaintiff's consent, Defendant invaded Plaintiff's statutorily protected right to privacy in her biometrics.

## CLASS ALLEGATIONS

65.     Plaintiff brings this action pursuant to Illinois Code of Civil Procedure Section 2-801 on behalf of a class of similarly situated individuals, defined as follows (the "Class"):

> All individuals who are Illinois residents who had their biometrics
> collected, captured, received, or otherwise obtained, by Defendant
> in the State of Illinois during the statutory period.

66.     **Numerosity**: the number of persons within the Class is substantial, believed to amount to thousands of persons or more. It is, therefore, impractical to join each member of the Class as a named Plaintiff. Accordingly, utilization of the class action mechanism is the most

FILED DATE: 3/3/2022 10:16 AM   2022CH01824

FILED DATE: 3/3/2022 10:16 AM  2022CH01824

economically feasible means of determining and adjudicating the merits of this litigation. Moreover, the Class is ascertainable and identifiable from advertisements and self-identifying affidavits.

67. **Commonality & Predominance**: there are well-defined common questions of fact and law that exist as to all members of the Class and that predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary from Class member to Class member, and which may be determined without reference to the individual circumstances of any class member, include, but are not limited to, the following:

  (a) whether Defendant captured, collected, or otherwise obtained
      Plaintiff's and the Class's biometrics;

  (b) whether Defendant properly informed Plaintiff and the Class that it
      captured, collected, used, and stored their biometrics;

  (c) whether Defendant obtained a written release to capture, collect, use,
      and store Plaintiff's and the Class's biometrics;

  (d) whether Defendant discloses, rediscloses, or otherwise disseminates
      Plaintiff's and the Class's biometrics absent consent; and

  (e) whether Defendant's violations of BIPA were committed intentionally,
      recklessly, or negligently.

68. **Typicality and Adequate Representation**: Plaintiff, who like other members of the putative class, had her biometrics captured and retained by Defendant, has claims that are typical of the class. Plaintiff has retained and is represented by qualified and competent counsel who are highly experienced in complex privacy class action litigation. Plaintiff and her counsel are committed to vigorously prosecuting this class action. Moreover, Plaintiff is able to fairly and adequately represent and protect the interests of such a Class. Neither Plaintiff nor her counsel have any interest adverse to, or in conflict with, the interests of the absent members of the Class. Plaintiff has raised viable statutory claims of the type reasonably expected to be raised by members

19

FILED DATE: 3/3/2022 10:16 AM   2022CH01824

of the Class and will vigorously pursue those claims. If necessary, Plaintiff may seek leave of this Court to amend this Class Action Complaint to include additional Class representatives to represent the Class or additional claims as may be appropriate.

69.    **Propriety of Class Treatment**: a class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all Class members is impracticable. Even if every member of the Class could afford to invest the time and expense necessary to pursue individual litigation, the Court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual and legal issues. By contrast, the maintenance of this action as a class action presents few management difficulties, conserves the resources of the parties and of the court system and protects the rights of each member of the Class. Plaintiff anticipates no difficulty in the management of this action as a class action. Class-wide relief is essential to compliance with BIPA.

## CLAIMS FOR RELIEF

### COUNT I
### VIOLATION OF 740 ILCS 14/15(b)
### Failure to Obtain Informed Written Consent
### and Release Before Obtaining Biometrics

70.    Plaintiff incorporated the foregoing allegations as if fully set forth herein.

71.    BIPA requires a private entity in possession of biometrics to publish a retention schedule and guidelines for the destruction of biometric data. Cooler Screens publishes a privacy policy on its website which applies to a user of the website in addition to any person who interacts with the Smart Coolers.

20

FILED DATE: 3/3/2022 10:16 AM   2022CH01824

72.     Cooler Screens patent and features indicate analysis of the consumers' physical person is collected to provide relevant advertising.

73.     Cooler Screens has no statements related to retention periods for any data nor does it include statements related to the destruction of any data collected by its website or its coolers.

74.     On behalf of herself and the Class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Defendant to comply with BIPA's requirements for the collection, storage, use and dissemination of biometrics as described herein; (3) statutory damages of $5,000 for each intentional and/or reckless violation of BIPA or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA; and (4) reasonable attorneys' fees and costs and other litigation expenses. *See* 740 ILCS 14/20.

## COUNT II
### VIOLATION OF 740 ILCS 14/15(b)
#### *Failure to Obtain Informed Written Consent*
#### *and Release Before Obtaining Biometrics*

75.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

76.     BIPA requires companies to obtain informed written consent from employees before acquiring their biometric data. Specifically, BIPA makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information unless [the entity] first: (1) informs the subject...in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject...in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; **and** (3) receives a written release executed by the subject of the biometric identifier or biometric information..." 740 ILCS 14/15(b) (emphasis added).

21

FILED DATE: 3/3/2022 10:16 AM 2022CH01824

77.     Defendant fails to comply with these BIPA mandates.

78.     Defendant systematically and automatically captured, collected, used, stored and disseminated Plaintiff's and the Class's biometrics without first obtaining the written release required by 740 ILCS 14/15.

79.     Defendant never informed Plaintiff and the Class in writing that their biometrics were being captured, collected, stored, used and disseminated, nor did Defendant inform Plaintiff and the Class in writing of the specific purpose(s) and length of term for which their biometrics were being collected, stored, used and disseminated as required by 740 ILCS 14/15.

80.     By capturing, collecting, storing, using and disseminating Plaintiff's and the Class's biometrics as described herein, Defendant violated Plaintiff's and the Class's rights to privacy in their biometrics as set forth in BIPA. *See* 740 ILCS 14/1, *et seq.*

81.     On behalf of herself and the Class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Defendant to comply with BIPA's requirements for the collection, storage, use and dissemination of biometrics as described herein; (3) statutory  damages of $5,000 for each intentional and/or reckless violation of BIPA or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA; and (4) reasonable attorneys' fees and costs and other litigation expenses. *See* 740 ILCS 14/20.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of herself and the proposed Class, respectfully requests that this Court enter an Order:

> A.      Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff as representative of the Class, and appointing her counsel as Class Counsel;

FILED DATE: 3/3/2022 10:16 AM  2022CH01824

B.  Declaring that Defendant's actions, as set out above, violate BIPA, 740 ILCS 14/1, *et seq.*;

C.  Awarding statutory damages of $5,000.00 for each and every intentional and reckless violation of BIPA, or alternatively, statutory damages of $1,000.00 for each and every negligent violation of BIPA;

D.  Awarding injunctive and other equitable relief as is necessary to protect the interests of the Class, including, *inter alia*, an Order requiring Defendant to comply with BIPA;

E.  Awarding Plaintiff and the Class their reasonable attorneys' fees and costs and other litigation expenses;

F.  Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable; and

G.  Awarding such other and further relief as equity and justice may require.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

FILED DATE: 3/3/2022 10:16 AM   2022CH01824

Dated: March 3, 2022

Respectfully submitted,

s/ Courtney E. Ross
Plaintiff's Attorney

Courtney E. Ross (Bar No. 6340021)
CARNEY BATES AND PULLIAM, PLLC
519 W. 7th St.
Little Rock, AR 72201
T: 501.312.8500
cross@cbplaw.com

*Counsel for Plaintiff and the proposed class*

24

# Exhibit D

Hearing Date: 10/14/2022 9:30 AM
Location: Court Room 2502
Judge: Demacopoulos, Anna Helen

FILED
6/16/2022 12:09 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2022CH05810
Calendar, 13
18316061

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**CHANCERY DIVISION**

| | |
|---|---|
| REBECCA WHITE AND KRISTEN YUKNA, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | ) ) ) ) ) |
| *Plaintiffs,* | ) ) |
| v. | ) Case No.: **2022CH05810** |
| COOLER SCREENS INC., | ) ) ) |
| *Defendant.* | ) |

**CLASS ACTION COMPLAINT**

Plaintiffs Rebecca White and Kristen Yukna (hereinafter "Plaintiffs"), brings this Class Action Complaint individually and on behalf of all others similarly situated against Defendant Cooler Screens Inc. (hereinafter "Cooler Screens" or "Defendant") to stop Defendant's unlawful collection, use, and storage of Plaintiff's and the proposed Class' sensitive, private, and personal biometric data. Plaintiffs allege as follows upon personal knowledge as to themselves and their own acts and experiences and, as to all other matters, upon information and belief including investigation conducted by her attorneys. Further, Plaintiff alleges as follows:

**PARTIES, JURISDICTION, AND VENUE**

1.    Plaintiff Rebecca White is a natural person and citizen of Illinois.

2.    Plaintiff Kristen Yukna is a natural person and citizen of Illinois.

3.    Defendant Cooler Screens Inc. is a Delaware corporation registered to do business in Illinois by the Illinois Secretary of State. Defendant Cooler Screens Inc. is also headquartered in Chicago, Illinois.

4.    Defendant Cooler Screens Inc. may be served through its registered agent, Arsen Avakian, 250 E. Pearson St., #1601, Chicago, Illinois 60611.

1

FILED DATE: 6/16/2022 12:09 PM   2022CH05810

5.     Jurisdiction is proper in this Court as Plaintiff is a citizen of Illinois and Defendant is a Delaware corporation that does business in Illinois, as well is headquartered in Illinois.

6.     Venue is proper in this Court pursuant to 735 ILCS 5/2-101 as the actions giving rise to this controversy occurred in this County.

## INTRODUCTION

7.     Cooler Screens Inc., the developer of "Smart Coolers" is proprietary technology platform company that delivers a shopping experience with retail coolers that have IoT enabled screens that capture individual identification through biometric authentication. In fact, Cooler Screens Inc. touts itself as a "first-of-its kind" converged shopping experience and creates the world's first digital media and merchandising platform for retail point-of-sale.[1]



---

[1]

https://www.coolerscreens.com/faq#:~:text=Cooler%20Screens%20is%20a%20proprietary,retail%20point%2Dof%2Dsale.

2

8. Cooler Screens achieves this accomplishment through employing a "camera which feeds images of each customer into a computer that guesstimates her sex and age. In addition, the system uses an iris tracker to detect exactly where the customer is looking." [2]

9. Unfortunately, while Cooler Screens acknowledges that its technology monitors shoppers using its Customer Detection Hardware ("CDH") and interprets the data collection from them using a "facial Profiling system" which can detect an individual's "age, gender and emotional response,"[3] and acknowledges collecting the sensitive, private, and personal biometric data encompassed in an individual's facial scan, upon information and belief, Cooler Screens has failed – and continues to fail – to follow Illinois' Biometric Information Privacy Act, 740 ILCS 14/1, *et seq*. This failure is of great concern to Plaintiffs because it exposes Plaintiffs to serious and irreversible privacy risks.

10. The State of Illinois takes the privacy of biometric data seriously. The State's approach is not particularly surprising in light of recent events related to biometric identifiers.

11. If a biometric database is hacked, breached, or otherwise exposed – such as in the recent Equifax, and Marriott data breaches or misused such as the recent SolarWinds hack by Russian agents that exposed hundreds of companies' data – violated individuals have **_no_** means by which to prevent identity theft, unauthorized tracking, and other improper or unlawful use of this highly personal and private information.

12. Hackers regularly target biometric databases. In 2015, a data breach at the United States Office of Personnel Management exposed the personal identification information, including biometric data, of over 21.5 million federal employees, contractors, and job applicants.[4]

---

[2] https://washingtonguardian.org/articles/display-screens-can-faces-to-size-up-buying-habits

[3] https://www.bostonglobe.com/business/2019/03/10/cooler-screens-display-cases-scan-your-face-size-your-buying-habits/qNN4bCb7NYhhE7TE3GjxwK/story.html

[4] U.S. Off. of Personnel Mgmt., *Cybersecurity Incidents* (2018), available at www.opm.gov/cybersecurity/cybersecurity-incidents.

FILED DATE: 6/16/2022 12:09 PM   2022CH05810

FILED DATE: 6/16/2022 12:09 PM  2022CH05810

13.     Moreover, an illegal market already exists for biometric data. For example, hackers and identity thieves have targeted Aadhaar, the largest biometric database in the world.  That database contains the personal and biometric data – including fingerprints, iris scans, and a facial photograph – of over a billion Indian citizens.[5]  In January 2018, an Indian newspaper reported that the information housed in Aadhaar was available for purchase for less than $8 and could be obtained in as little as 10 minutes.[6]

14.     Unlike written passwords or social security numbers – which can be changed or replaced if stolen or compromised – biometrics are unique, permanent biometric identifiers associated with each individual.

15.     There is no realistic way, absent surgery, to reassign someone's biometric data. A person can obtain a new social security number, but not a new face, which makes the protection of, and control over, biometric identifiers and biometric information particularly important.

16.     Recognizing the need to protect its citizens from situations like these, Illinois enacted the Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq.*, specifically to regulate companies that collect and store Illinois citizens' biometrics.

17.     Cooler Screens captures facial scans, one of the specifically enumerated forms of biometric identifiers set forth in BIPA, both directly and indirectly, from any and all individuals whose face is collected by Cooler Screens or Cooler Screens' affiliates.  Cooler Screens collects and retains these facial scans in a database.

18.     Notwithstanding the clear and unequivocal requirements of Illinois law, Cooler Screens violates Illinois individuals' statutorily protected privacy rights and unlawfully collects, stores,

---

[5] *See* Vidhi Doshi, *A Security Breach in India Has Left a Billion People at Risk of Identity Theft*, The Washington Post (Jan. 4, 2018), available at https://www.washingtonpost.com/news/worldviews/wp/2018/01/04/a-security-breach-inindiahas-left-a-billion-people-at-risk-of-identity-theft/?utm_term=.b3c70259fl38.

[6] Rachna Khaira, *Rs 500, 10 Minutes, and You Have Access to Billion Aadhaar Details*, The Tribune (Jan. 4, 2018), available at http://www.tribuneindia.com/news/nation/rs-500-10-minutes-and-you-haveaccessto-billion-aadhaar-details/523361.html

4

FILED DATE: 6/16/2022 12:09 PM   2022CH05810

and uses those individuals' biometric data in violation of BIPA. In particular, Cooler Screens has violated and continues to violate BIPA because it did not and, upon information and belief, continues not to:

    a.   Properly inform Plaintiffs and others similarly situated in writing of the specific purpose and length of time for which their facial scans were being collected, stored, disseminated and used, as required by BIPA;

    b.   Provide a publicly available retention schedule and guidelines for permanently destroying Plaintiffs' and other similarly-situated individuals' facial scans, as required by BIPA;

    c.   Receive a written release from Plaintiffs and others similarly situated to collect, store, disseminate or otherwise use their facial scans, as required by BIPA; and

    d.   Obtain a written release from Plaintiffs and others similarly situated to disclose, redisclose, or otherwise disseminate their biometric identifiers and/or biometric information to a third party as required by BIPA.

19.    Plaintiffs and the putative Class are aggrieved by Coolers Screens' failure to destroy their biometric data when the initial purpose for collecting or obtaining such data has been satisfied or within three years of individual's last interactions with the entity.

20.    Accordingly, this Complaint seeks an Order: (i) requiring Cooler Screens to cease the unlawful activities discussed herein; and (ii) awarding actual and/or statutory damages to Plaintiffs and the proposed Class.

**ILLINOIS'S STRONG STANCE ON PROTECTION OF BIOMETRIC INFORMATION**

21.    BIPA provides valuable privacy rights, protections, and benefits to citizens of Illinois.

22.    In passing BIPA, the Illinois General Assembly found that major national corporations started using Chicago and other locations in Illinois in the early 2000s to test "new applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias" 740 ILCS 14/5(b). Given its relative infancy, an overwhelming portion of the public became weary of this then- growing yet unregulated technology. See 740 ILCS 14/5.

FILED DATE: 6/16/2022 12:09 PM   2022CH05810

23.     In late 2007, a biometrics company called Pay by Touch, which provided major retailers throughout the State of Illinois with fingerprint scanners to facilitate consumer transactions, filed for bankruptcy. The bankruptcy was alarming to the Illinois General Assembly because there was suddenly a serious risk that millions of fingerprint records – which, similar to other unique biometric identifiers, can be linked to people's sensitive financial and personal data – could now be sold, distributed, or otherwise shared through the bankruptcy proceedings without adequate protections for Illinois citizens. The bankruptcy also highlighted the fact that most consumers who used the company's fingerprint scanners were completely unaware the scanners were not transmitting fingerprint data to the retailer who deployed the scanner, but rather to the now- bankrupt company, and that their unique biometric identifiers could now be sold to unknown third parties.

24.     Recognizing the "very serious need [for] protections for the citizens of Illinois when it [came to their] biometric information," Illinois enacted BIPA in 2008. See Illinois House Transcript, 2008 Reg. Sess. No. 276; 740 ILCS 14/5.

25.     The Illinois General Assembly explicitly acknowledged that Biometrics "are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions." 740 ILCS 14/5(c)

26.     BIPA provides individuals with a private right of action, protecting their right to privacy regarding their biometrics as well as protecting their rights to know the precise nature for which their biometrics are used and how they are being stored and ultimately destroyed. Unlike other statutes that only create a right of action if there is a qualifying data breach, BIPA strictly regulates the manner in which entities may collect, store, use, and disseminate biometrics and creates a private right of action for lack of statutory compliance.

FILED DATE: 6/16/2022 12:09 PM   2022CH05810

27. To ensure such compliance, BIPA provides that, for each violation, the prevailing party may recover $1,000 or actual damages, whichever is greater, for negligent violations and $5,000, or actual damages, whichever is greater, for intentional or reckless violations. 740 ILCS 14/20.

28. BIPA is an informed consent statute which achieves its goal by making it unlawful for a company to, among other things, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it first:

    a. Informs the subject in writing that a biometric identifier or biometric information is being collected or stored;

    b. Informs the subject in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

    c. Receives a written release executed by the subject of the biometric identifier or biometric information."

See 740 ILCS 14/15(b).

29. Biometric identifiers include "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." See 740 ILCS 14/10. Biometric information is separately defined to include any information based on an individual's biometric identifier that is used to identify an individual. *Id*.

30. BIPA also establishes standards for how companies must handle Illinois citizens' biometric identifiers and biometric information. See, e.g., 740 ILCS 14/15(c)-(d). For example, BIPA prohibits private entities from disclosing a person's or customer's biometric identifier or biometric information without first obtaining consent for that disclosure. *See*, 740 ILCS 14/15(d)(1).

31. BIPA also prohibits selling, leasing, trading, or otherwise profiting from a person's biometric identifiers or biometric information (740 ILCS 14/15(c)) and requires companies to develop and comply with a written policy – made available to the public – establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the

FILED DATE: 6/16/2022 12:09 PM 2022CH05810

initial purpose for collecting such identifiers or information has been satisfied or within three years of the individual's last interaction with the company, whichever occurs first. 740 ILCS 14/15(a).

32.     Plaintiffs, like the Illinois General Assembly, recognizes how imperative it is to keep biometric information secure. Biometric information, unlike other personal identifiers such as a social security number, cannot be changed or replaced if hacked or stolen.

### PLAINTIFFS SPECIFIC ALLEGATIONS

33.     Plaintiffs and the class are customers of many major retailers, which include Walgreens, CVS, Kroger and Walmart, who, upon information and belief, utilizes Cooler Screen's Smart Coolers for its identification verification of customer's sex, age and emotional responses, through biometric authentication.[7]

34.     Cooler Screens offer its retail customers "controller/data collector" ("C/DC"), which allows its major retailers to track their customers and interpret the data collected from them by using a "facial profiling system.".[8]

35.     Cooler Screens uses a menu of technology including proximity sensors and cameras, iris tracking and heat maps, cooler door open and close sensors and real-time traffic and sales figures.[9]

36.     Upon information and belief, Plaintiffs have had their biometric data collected by Cooler Screens since Cooler Screen installed "Smart Coolers" in November 2018, when they first were introduced to various Walgreens locations.

37.     Upon information and belief, Cooler Screens, either directly or indirectly, collected, utilized and stored the Plaintiffs' facial biometric identifiers in its database(s).

---

[7] https://uspto.report/patent/grant/10,769,666 and https://uspto.report/patent/app/20190122263#D00000
[8] Boston Globe, *Cooler Screens Display Cases Scan your Face Size to Size Up Buying Habits*
https://www.bostonglobe.com/business/2019/03/10/cooler-screens-display-cases,scan-your-face-size-your-buying-habits/qNN4bCb7NYhh#7TE3GjxwK/story.html
[9] *Id*

FILED DATE: 6/16/2022 12:09 PM 2022CH05810

38. Storing Plaintiffs' facial biometric identifiers has value to Cooler Screens because the larger the database, the more accurate and useful the biometric database becomes to not only Cooler Screens, but also to Cooler Screens' retailers.

39. Plaintiffs have never been informed of the specific limited purposes or length of time for which Cooler Screens collected, stored, or used their biometrics.

40. Plaintiffs have never been informed of any biometric data retention policy developed by Defendant, nor have they ever been informed of whether Cooler Screens will ever permanently delete their biometrics.

41. Plaintiffs have never been provided with nor ever signed a written release allowing Cooler Screens to collect, capture, store, or otherwise obtain their facial scans or other biometrics.

42. Plaintiffs have continuously and repeatedly been exposed to the risks and harmful conditions created by Cooler Screens' violations of BIPA alleged herein.

43. BIPA protects individuals like Plaintiffs and the putative Class from this precise conduct, and Cooler Screens had no right to secure this data.

44. Through BIPA, the Illinois General Assembly has created a right – a right to receive certain information prior to an entity securing their highly personal, private and proprietary biometric data – and an injury – not receiving this extremely critical information.

45. Pursuant to 740 ILCS 14/15(b), Plaintiffs and the putative Class were entitled to receive certain information prior to Cooler Screens securing their biometric data; namely, information advising them of the specific limited purpose(s) and length of time for which it/they collect(s), store(s), and use(s) their facial scans and any biometrics derived therefrom; information regarding Defendant's biometric retention policy; and, a written release allowing Defendant to collect and store their private biometric data.

FILED DATE: 6/16/2022 12:09 PM    2022CH05810

46.     No amount of time or money can compensate Plaintiffs if their biometric data is compromised by the lax procedures through which Cooler Screens captured, stored, used, and disseminated Plaintiffs' and other similarly-situated individuals' biometrics, and Plaintiffs would not have provided their biometric data to Coolers Screens and various retailers if they had known that Cooler Screens would retain such information for an indefinite period of time without her consent.

47.     A showing of actual damages is not necessary in order to state a claim under BIPA. *See Rosenbach v. Six Flags Ent. Corp.*, 2019 IL 123186, ¶ 40 ("[A]n individual need not allege some actual injury or adverse effect, beyond violation of his or her rights under the Act, in order to qualify as "aggrieved" person and be entitled to seek liquidated damages and injunctive relief pursuant to the Act").

48.     As Plaintiffs are not required to allege or prove actual damages in order to state a claim under BIPA, they seeks statutory damages under BIPA as compensation for the injuries caused by Defendant. *Rosenbach*, 2019 IL 123186, ¶ 40.

### DEFENDANT'S BIOMETRIC FACE-SCANNING OF ILLINOIS CITIZENS

49.     Cooler Screens provides its affiliates, such as Walgreens, CVS, Kroger and Walmart, with the means to achieve identity verification of those affiliates' customers through biometric authentication.

50.     Cooler Screens achieves this "biometric authentication" through Customer Detection Hardware ("CDH") and interprets the data collected from them using a "facial Profiling system", [9] which can detect the age, gender and emotional response[10] of over 3 million verified daily viewers. [11]

---

[10] Fast Company, *It's Not Just Google or Facebook: The Freezer Aisle is Ad Targeting You Now.*
https://www.fastcompany.com/90302382/its-not-just-google-or-facebook-the-freezer-aisle-is-ad-targeting-you-too
[11] Cooler Screens, *Cooler Screens*

FILED DATE: 6/16/2022 12:09 PM   2022CH05810

51.     Specifically, Coolers Screens has made it so that multiple Smart Coolers can be linked together to form a single system using a "controller/data collector" (C/DC"), which receives data feed from various sensors embedded into each Smart Cooler. The C/DC not only links a set of Smart Coolers together, but also communicates with each Smart Cooler independently, analyzing the data stream it receives from each cooler and, depending on the type of customer standing before a particular door, predict which advertisements will most likely lead to a purchase.[12]

52.     Cooler Screens describes its ecosystem as being built around the concept that serving the right advertisement at the right time and to the right customer will move the needle and sell more products. As part of this service, Cooler Screens performs a variety of analytics to accurately predict of the success of an advertising campaign and then leverages this data and its analytics to pitch the optimal conditions and optimal audience for specific advertising. [13] The digital screens on the coolers further give retailers the ability to make real-time changes to pricing and promotions. Alerts to out of stocks is touted as another benefit.[14]

53.     According to The Atlantic, Cooler Screens acknowledges that its technology collects facial scans but because it doesn't identify individuals and only takes facial scans to gain interferences of this make-up,[15] which is wrong as they are collecting sensitive, private, and personal biometric data both directly and indirectly.

54.     Directly, Cooler Screens not only collects facial biometrics through their products, but also has "iris tracking" capabilities, meaning the company can collect data on which displayed items are looked at the most."[16]

---

[12] USTPO *Id*
[13] Cooler Screens, *Platform*
[14] https://retailerwire.com/discussion/walgreens-tests-tech-that-sort-of-recognizes-you-in-store/
[15] *Id*
[16] https://www.theatlantic.com/technology/archive/2019/01/walgreens-tests-new-smart-coolers/581248.

FILED DATE: 6/16/2022 12:09 PM   2022CH05810

55.     Cooler Screens uses an AI system that takes micro-measurements about someone's facial features and estimates if the customer is a man in this 20s versus a women in her 50s. The technology uses iris tracking, heat sensors and proximity sensors, according to Cooler Screens.[17]

56.     Thus, Cooler Screens captures and uses facial scans, one of the specifically enumerated forms of biometric identifiers set forth in BIPA, both directly and indirectly, from any and all individuals whose facial scans are collected by Cooler Screens or Cooler Screens' affiliates, which would include retailers such as Walgreens, CVS, Kroger and Walmart.  Cooler Screens collects and retains these facial scans in a Cooler Screens database.

57.     Cooler Screens has caused these biometrics to be associated with certain individuals' identities, along with other personal, private information for each individual.

58.     On information and belief, despite capturing, collecting and retaining these biometrics, Cooler Screens does not:

    a.  Inform its affiliates' customers in writing that Cooler Screens is capturing, obtaining, collecting, or storing biometric information or biometric identifiers;

    b.  Inform its affiliates' customers in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; or

    c.  Receive a written release executed by its affiliates' customers consenting to collection, capture, obtainment, purchase, storage, or retention of biometric information or biometric identifiers.

59.     On information and belief, Cooler Screens' website does not have a written, publicly available policy identifying its biometrics retention schedule.

---

[17] https://insights.globalspec.com/article/11060/smart-coolers-display-drinks-and-targeted-ads-to-customers

FILED DATE: 6/16/2022 12:09 PM   2022CH05810

60.     Cooler Screens did not at any time, on information and belief: inform Plaintiffs in writing (or otherwise) that a biometric identifier and biometric information was being obtained, captured, collected, and/or stored, or of the specific purposes and length of term for which a biometric identifier or biometric information was being collected, captured, stored, and/or used; obtain from Plaintiffs consent required by BIPA to the capture, collection, storage, obtainment, and/or use of Plaintiffs' facial scans or associated biometrics.

61.     Nor did Plaintiffs know or fully understand that Cooler Screens was collecting, capturing, and/or storing biometrics when Plaintiffs were utilizing the facial identity verification; nor did Plaintiffs know or could Plaintiffs know all of the uses or purposes for which Plaintiffs' biometrics were taken.

62.     The Pay by Touch bankruptcy that catalyzed the passage of BIPA highlights why conduct such as Defendant's – where individuals are aware that they are providing a biometric but not aware of to whom or for what purposes they are doing so – is dangerous.

63.     That bankruptcy spurred Illinois citizens and legislators into realizing that it is crucial for individuals to understand when providing biometric identifiers or information such as a finger scan, and/or data derived therefrom, who exactly is collecting their biometric data, where it will be transmitted and for what purposes, and for how long.

64.     Thus, BIPA is the Illinois General Assembly's expression that Illinois citizens have biometric privacy rights, as created by BIPA.

65.     Cooler Screens disregarded these obligations and instead unlawfully captured, collected, stored, and used individual's biometric identifiers and information, without ever receiving those individual's informed written consent as required by BIPA.

66.     Because Cooler Screens neither published a BIPA-mandated data retention policy nor disclosed the purposes for their collection of biometric data, the customers' of Cooler Screens'

FILED DATE: 6/16/2022 12:09 PM    2022CH05810

affiliates have no idea whether Defendant sells, discloses, re-discloses, or otherwise disseminates their biometric data.

67.     Nor are Plaintiffs and the putative Class told to whom Cooler Screens currently discloses their biometric data, or what might happen to their biometric data in the event of a buyout, merger, or a bankruptcy.

68.     By and through the actions detailed above, Cooler Screens has not only disregarded the Class' privacy rights, but it has also violated BIPA.

**CLASS ALLEGATIONS**

69.     Plaintiffs brings this action on behalf of themselves and pursuant to 735 ILCS 5/2-801 on behalf of a class (hereinafter the "Class") defined as follows:

> All Illinois residents who directly or indirectly used Cooler Screens' biometric authentication products and subsequently had his or her face captured, collected, stored, or otherwise obtained by Cooler Screens' during the applicable statutory period.

Excluded from the class are Defendant's officers and directors, Plaintiffs' counsel, and any member of the judiciary presiding over this action.

70.     **Numerosity:** The exact number of class members is unknown and is not available to Plaintiffs at this time, but upon information and belief, there are in excess of forty potential class members, and individual joinder in this case is impracticable. Class members can easily be identified through Defendant's records and allowing this matter to proceed on a class basis will prevent any retaliation by Defendant against individuals who are currently having their BIPA rights violated.

71.     **Common Questions:** There are several questions of law and fact common to the claims of Plaintiffs and the Class members, and those questions predominate over any questions that may affect individual Class members. Common questions include, but are not limited to, the following:

a.     whether Defendant collected, captured, received, or otherwise obtained Plaintiffs' and the Class' biometric identifiers;

14

FILED DATE: 6/16/2022 12:09 PM   2022CH05810

b.  whether Defendant properly informed Plaintiffs and the Class that it collected, used, and stored their biometric identifiers;

c.  whether Defendant developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within three years of the individual's last interaction with Defendant, whichever occurs first;

d.  whether Defendant obtained an executed written release (as defined in 740 ILCS 14/10) from Plaintiffs and the Class to collect, capture, or otherwise obtain their biometric identifiers;;

e.  whether Defendant obtained an executed written release (as defined in 740 ILCS 14/10) from Plaintiffs and the Class  before capturing, collecting, converting, sharing, storing or using individuals' biometrics;

f.  whether Defendant provided a writing disclosing to Plaintiffs and the Class the specific purposes for which the biometrics are being collected, stored, and used;

g.  whether Defendant provided a writing disclosing to Plaintiffs and the Class the length of time for which the biometrics are being collected, stored, and used;

h.  whether Defendant's conduct violates BIPA;

i.  whether Defendant's conduct was negligent, reckless, or willful;

j.  whether Plaintiffs and Class members are entitled to damages, and what is the proper measure of damages;

72.  **Adequacy of Representation:** Plaintiffs will fairly and adequately represent and protect the interest of the class and has retained competent counsel experienced in complex litigation and class action litigation. Plaintiffs have no interests antagonistic to those of the class, and Defendant has no defenses unique to Plaintiffs.

73.  **Appropriateness:** Class proceedings are also superior to all other available methods for the fair and efficient adjudication of this controversy because joinder of all parties is impracticable. Further, it would be virtually impossible for the individual members of the Class to obtain effective relief because of the fear and likelihood of retaliation by Defendant against individuals bringing a civil action as an individual. Even if Class members were able or willing to pursue such individual litigation, a class action would still be preferable due to the fact that a multiplicity of individual actions would

FILED DATE: 6/16/2022 12:09 PM   2022CH05810

likely increase the expense and time of litigation given the complex legal and factual controversies presented in this Class Action Complaint. A class action, on the other hand, provides the benefits of fewer management difficulties, single adjudication, economy of scale, and comprehensive supervision before a single Court, and would result in reduced time, effort and expense for all parties and the Court, and ultimately, the uniformity of decisions.

**COUNT I – FOR DAMAGES AGAINST DEFENDANT**
**VIOLATION OF 740 ILCS 14/15(a) – FAILURE TO INSTITUTE, MAINTAIN, AND ADHERE TO**
**PUBLICLY AVAILABLE RETENTION SCHEDULE**

74.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

75.     BIPA mandates that companies in possession of biometric data establish and maintain a satisfactory biometric data retention – and, importantly, deletion – policy. Specifically, those companies must: (i) make publicly available a written policy establishing a retention schedule and guidelines for permanent deletion of biometric data (at most three years after the company's last interaction with the individual); and (ii) actually adhere to that retention schedule and actually delete the biometric information. See 740 ILCS 14/15(a).

76.     Defendant fails to comply with these BIPA mandates.

77.     Defendant is a Delaware corporation registered to do business in Illinois by the Illinois Secretary of State and thus qualifies as a "private entity" under BIPA. See 740 ILCS 14/10.

78.     Plaintiffs and the Class are individuals who have had their "biometric identifiers" collected by Defendant, as explained in detail in above. See 740 ILCS 14/10.

79.     Plaintiffs' biometric identifiers were used to identify Plaintiffs and, therefore, constitute "biometric information" as defined by BIPA. See 740 ILCS 14/10.

80.     Defendant failed to provide a publicly available retention schedule or guidelines for permanently destroying biometric identifiers and biometric information as specified by BIPA. See 740 ILCS 14/15(a).

FILED DATE: 6/16/2022 12:09 PM   2022CH05810

81.     Upon information and belief, Defendant lacks retention schedules and guidelines for permanently destroying Plaintiffs' and the Class' biometric data and have not and will not destroy Plaintiffs' and the Class' biometric data when the initial purpose for collecting or obtaining such data has been satisfied or within three years of the individual's last interaction with the company.

82.     On behalf of herself and the Class, Plaintiffs seek: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiffs and the Class by requiring the Defendant to comply with BIPA's requirements for the collection, storage, and use of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each intentional and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

## COUNT II – FOR DAMAGES AGAINST DEFENDANT
### VIOLATION OF 740 ILCS 14/15(b) – FAILURE TO OBTAIN INFORMED WRITTEN CONSENT AND RELEASE BEFORE OBTAINING BIOMETRIC IDENTIFIERS OR INFORMATION

83.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

84.     BIPA requires companies to obtain informed written consent from Illinois citizens before acquiring their biometric data. Specifically, BIPA makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information unless [the entity] first: (1) informs the subject…in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject…in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; **and** (3) receives a written release executed by the subject of the biometric identifier or biometric information…" 740 ILCS 14/15(b) (emphasis added).

85.     Defendant fails to comply with these BIPA mandates.

86.     Defendant is a Delaware corporation registered to do business in Illinois by the Illinois Secretary of State and thus qualifies as a "private entity" under BIPA. See 740 ILCS 14/10.

87.     Plaintiffs and the Class are individuals who have had their "biometric identifiers" collected by Defendant, as explained in detail above. *See* 740 ILCS 14/10.

88.     Plaintiffs' and the Class' biometric identifiers were used to identify them and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS 14/10.

89.     Defendant systematically and automatically collected, used, stored and disseminated Plaintiffs' and the Class' biometric identifiers and/or biometric information without first obtaining the written release required by 740 ILCS 14/15(b)(3).

90.     Defendant never informed Plaintiffs and the Class in writing that their biometric identifiers and/or biometric information were being collected, stored, used and disseminated, nor did Defendant inform Plaintiffs and the Class in writing of the specific purpose(s) and length of term for which their biometric identifiers and/or biometric information were being collected, stored, used and disseminated as required by 740 ILCS 14/15(b)(1)-(2).

91.     By collecting, storing, using and disseminating Plaintiffs' and the Class' biometric identifiers and biometric information as described herein, Defendant violated Plaintiffs' and the Class' rights to privacy in their biometric identifiers and/or biometric information as set forth in BIPA. *See* 740 ILCS 14/1, *et seq*.

92.     On behalf of herself and the Class, Plaintiffs seek: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiffs and the Class by requiring Defendant to comply with BIPA's requirements for the collection, storage, use and dissemination of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each intentional and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS

FILED DATE: 6/16/2022 12:09 PM   2022CH05810

14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

### COUNT III – FOR DAMAGES AGAINST DEFENDANTS
### VIOLATION OF 740 ILCS 14/15(d) – DISCLOSURE OF BIOMETRIC IDENTIFIERS AND INFORMATION BEFORE OBTAINING CONSENT

93.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

94.    BIPA prohibits private entities from disclosing a person's or customer's biometric identifier or biometric information without first obtaining consent for that disclosure. *See* 740 ILCS 14/15(d)(1).

95.    Defendant fails to comply with this BIPA mandate.

96.    Defendant is a Delaware corporation registered to do business in Illinois and thus each qualifies as a "private entity" under BIPA. *See* 740 ILCS 14/10.

97.    Plaintiffs and the Class are individuals who have had their "biometric identifiers" collected by Defendant, as explained in detail above. *See* 740 ILCS § 14/10.

98.    Plaintiffs' and the Class's biometric identifiers were used to identify them and, therefore, constitute "biometric information" as defined by BIPA. See 740 ILCS § 14/10.

99.    Defendant systematically disclosed, redisclosed, or otherwise disseminated Plaintiffs' and the Class's biometric identifiers and/or biometric information without first obtaining the consent required by 740 ILCS 14/15(d)(1).

100.    By disclosing, redisclosing, or otherwise disseminating Plaintiffs' and the Class's biometric identifiers and biometric information as described herein, Defendant violated Plaintiffs' and the Class's rights to privacy in their biometric identifiers and/or biometric information as set forth in BIPA. *See* 740 ILCS 14/1, *et seq.*

101.    On behalf of herself and the Class, Plaintiffs seek: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiffs and the Class by requiring

FILED DATE: 6/16/2022 12:09 PM    2022CH05810

19

FILED DATE: 6/16/2022 12:09 PM    2022CH05810

Defendants to comply with BIPA's requirements for the collection, storage, use and dissemination of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each intentional and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS § 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS § 14/20(3).

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of the Class of similarly situated individuals, pray for an Order as follows:

A. Finding this action satisfies the prerequisites for maintenance as a class action set forth in 735 ILCS 5/2-801, *et seq.*, and certifying the Class as defined herein;

B. Designating and appointing Plaintiffs as representative of the Class and Plaintiffs' undersigned counsel as Class Counsel;

C. Declaring that Defendant's actions, as set forth above, violate BIPA;

D. Awarding Plaintiffs and the Class members statutory damages of $5,000 for *each* intentional and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2); statutory damages of $1,000 per *each* negligent violation of BIPA pursuant to 740 ILCS 14/20(1);

E. Declaring that Defendant's actions, as set forth above, were intentional or reckless;

F. Declaring that Defendant's actions, as set forth above, were negligent;

G. Awarding injunctive and other equitable relief as is necessary to protect the interests of Plaintiffs and the Class, including an Order requiring Defendant to collect, store, use and disseminate biometric identifiers and/or biometric information in compliance with BIPA;

H. Awarding Plaintiffs and the Class members reasonable attorneys' fees and costs incurred in this litigation pursuant to 740 ILCS 14/20(3);

I. Awarding Plaintiffs and the Class pre- and post-judgment interest, to the extent allowable; and

J. Granting all such other and further relief as the Court deems just and appropriate.

FILED DATE: 6/16/2022 12:09 PM   2022CH05810

Dated: June 16, 2022

Respectfully submitted,

By: */s/ Brandon M. Wise*
Brandon M. Wise – IL Bar # 6319580
PEIFFER WOLF CARR
KANE CONWAY & WISE, LLP
818 Lafayette Ave., Floor 2
St. Louis, MO 63104
Ph: 314-833-4825
Email: bwise@peifferwolf.com

Aaron Siri, Esq. (*Pro Hac Vice To Be Filed*)
Mason Barney, Esq. (*Pro Hac Vice To Be Filed*)
SIRI & GLIMSTAD LLP
200 Park Avenue, 17th Floor
New York, NY 10166
Telephone:  212-532-1091
Email: aaron@sirillp.com
Email: mbarney@sirillp.com

COUNSEL FOR THE PLAINTIFF AND THE
PUTATIVE CLASS